# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG SEMICONDUCTOR, INC. | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 21-1453-RGA ) ) JURY TRIAL DEMANDED |
| NETLIST, INC., | ) ) |
| Defendant. | ) ) |

**OPENING BRIEF IN SUPPORT OF NETLIST, INC.'S MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (D.I. 14)**

Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 N Market St, 12th Floor
Wilmington, Delaware 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Defendant Netlist, Inc.*

Dated: February 16, 2022

# **TABLE OF CONTENTS**

**Page**

NATURE AND STAGE OF PROCEEDINGS ........................................................... 1

SUMMARY OF ARGUMENT ............................................................................... 4

STATEMENT OF FACTS AND ARGUMENT ....................................................... 5

I.     Counts I-XII Should Be Dismissed for Lack of Subject Matter Jurisdiction ................. 5

     A.     This Court Does Not Have Subject Matter Jurisdiction Because Samsung Fails to Show "a Case or Controversy" of Sufficient Immediacy ........................ 5

          1.     Counts I-III: Non-Infringement of the '523, '595, and '218 Patents ........ 6

          2.     Count IV: Non-Infringement of the '912 Patent ...................................... 7

          3.     Other Litigation Cannot Create Jurisdiction ............................................. 7

          4.     Counts V-VII: Non-Infringement of the Texas Action Patents ............... 8

          5.     Counts VIII-XI: Unenforceability Claims ................................................ 9

          6.     Count XII: Breach of Contract ................................................................ 10

II.     The Court Should Exercise Discretion to Dismiss the Declaratory Judgment Claims ............................................................................................................... 10

     A.     The FAC Interferes with the Jurisdiction of Judge Scarsi ................................. 11

     B.     The FAC Interferes with the Jurisdiction of Judge Seeborg .............................. 12

     C.     Complete Resolution Is Only Possible in the Eastern District ........................... 12

     D.     Claims as to the Texas Patents Are Barred by the First-Filed Rule ................... 14

          1.     The Texas '918 Patent ........................................................................... 14

          2.     The Texas '339 and '506 Patents ........................................................... 16

III.     The FAC Fails to State Plausible Claims for Inequitable Conduct and Unclean Hands ............................................................................................................... 17

     A.     The Inequitable Conduct and Unclean Hands Claims as to the '912 Patent Fail .................................................................................................................. 18

     B.     Samsung's Inequitable Conduct and Unclean Hands Claims as to the Remaining Patents (Counts VIII, IX, XI) Fail .................................................. 18

**Page**

      1.    Samsung Fails to Adequately Plead "But-for" Materiality....................18

      2.    Samsung Fails to Allege Specific Intent to Deceive the PTO ...............19

IV.    Samsung Fails to State a Claim for Breach of the JEDEC Patent Policies....................20

CONCLUSION....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acorn Semi, LLC v. Samsung Elecs. Co., Ltd. et al.*,
 No. 2:19-cv-347, D.I. 14 (E.D. Tex. Feb. 12, 2020)...............................................13

*Analog Devices, Inc. v. Xilinx, Inc.*,
 No. 19-v-2225, 2021 WL 466859 (D. Del. Feb. 9, 2021) .......................................19

*Anza Tech., Inc. v. Mushkin, Inc.*,
 934 F.3d 1359 (Fed. Cir. 2019)...................................................................15, 16, 17

*Apple Inc. v. Motorola, Inc.*,
 757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds*,
 *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) .......................21

*Arbor Global Strategies LLC v. Samsung Elecs. Co., Ltd. et al.*,
 No. 2:19-cv-333, D.I. 43 (E.D. Tex. Apr. 27, 2020) ...............................................13

*Benitec Austl., Ltd. v. Nucleonics, Inc.*,
 495 F.3d 1340 (Fed. Cir. 2007)..................................................................................6

*Brinkmeier v. BIC Corp.*,
 733 F. Supp. 2d 552 (D. Del. 2010)..........................................................................20

*Cisco Sys., Inc. v. Sprint Commc'ns Co., L.P.*,
 No. 15-cv-431, 2016 WL 690939 (D. Del. Feb. 19, 2016).........................................7

*Citizen Elecs. Co. v. Osram GmbH*,
 377 F. Supp. 2d 149 (D.D.C. 2005) ............................................................................7

*Commc'ns Test Design, Inc. v. Contec, LLC*,
 952 F.3d 1356 (Fed. Cir. 2020).................................................................................10

*Edmunds Holding Co. v. Autobytel Inc.*,
 598 F. Supp. 2d 606 (D. Del. 2009)............................................................................6

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
 575 F.3d 1312 (Fed. Cir. 2009)..............................................................17, 18, 19, 20

*Goodman Mfg. Co., L.P. v. Carrier Corp.*,
 No. 13-cv-2014, 2014 WL 4954281 (D. Del. Sept. 23, 2014).................................10

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
 541 U.S. 567 (2004)....................................................................................................9

*Halo Elecs., Inc. v. Bel Fuse Inc.*,
    No. 07-cv-6222, 2008 WL 1991094 (N.D. Cal. May 5, 2008) .............................................. 15

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
    599 F.3d 1377 (Fed. Cir. 2010) ......................................................................................... 9

*Kreider Dairy Farms, Inc. v. Glickman*,
    190 F.3d 113 (3d Cir. 1999) ............................................................................................... 9

*Lannett Co. Inc. v. KV Pharm.*,
    No. 08-cv-338, 2009 WL 10737496 (D. Del. Feb. 4, 2009) ............................................... 9

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
    800 F.3d 99 (3d Cir. 2015) ............................................................................................... 10

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
    No. 09-cv-80, 2015 WL 2406061 (D. Del. May 18, 2015) ............................................... 18

*Merial Ltd. v. Cipla Ltd.*,
    681 F.3d 1283 (Fed. Cir. 2012) ....................................................................................... 14

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014) ............................................................................. 3, 5, 7, 12

*Microsoft Corp. v. SynKloud Techs., LLC*,
    484 F. Supp. 3d 171 (D. Del. 2020) ................................................................................. 7, 8

*Panavise Prod., Inc., v. Nat'l Prod., Inc.*,
    306 F. App'x 570 (Fed. Cir. 2009) ..................................................................................... 8

*Robocast, Inc. v. Apple Inc.*,
    39 F. Supp. 3d 552 (D. Del. 2014) ................................................................................... 18

*Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*,
    550 F.3d 1121 (Fed. Cir. 2008) ....................................................................................... 10

*Serco Servs. Co., L.P. v. Kelley Co., Inc.*,
    51 F.3d 1037 (Fed. Cir. 1995) ......................................................................................... 13

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ......................................................................................................... 10

*SunPower Corp. v. PaneClaw, Inc.*,
    No. 12-cv-1633, 2016 WL 5107029 (D. Del. Sept. 19, 2016) .......................................... 18

*Therasense, Inc. v. Becton*,
    649 F.3d 1276 (Fed. Cir. 2011) ....................................................................................... 20

*Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*,
    292 F.3d 384 (3d Cir. 2002).........................................................................11

*Woodbolt Distrib., LLC v. Nat. Alternatives Int'l, Inc.*
    No. 11-cv-1266, 2013 WL 247041 (D. Del. Jan. 23, 2013) ......................13

**Statutes**

28 U.S.C. § 1367(a) .........................................................................................10

35 U.S.C. § 271(a) ...........................................................................................13

**Rules**

Fed. R. Civ. P. 8(c) ..........................................................................................12

Fed. R. Civ. P. 9(b) ..........................................................................................18

Fed. R. Civ. P. 12(b)(6).....................................................................................5

Fed. R. Civ. P. 13(a) .........................................................................................11

Fed. R. Civ. P. 15(c)(1)(B) ...............................................................................14

Fed. R. Civ. P. 15(d) ...........................................................................................9

## NATURE AND STAGE OF PROCEEDINGS

On October 15, 2021, Plaintiffs Samsung Electronics Co., Ltd. ("SEC") and Samsung Semiconductor, Inc. ("SSI," and collectively, "Samsung") brought this action for declaratory judgment ("Declaratory Judgment Action") against Netlist, Inc. ("Netlist") for an improper purpose: to evade an unfavorable summary judgement ruling from a federal judge in the Central District of California (the "Central District"). The Central District Court found as a matter of law that Samsung materially breached an agreement with Netlist that gave Samsung certain rights to Netlist patents, and that Netlist properly terminated that agreement. D.I. 21-3 (*Netlist, Inc. v. Samsung Elec. Co., Ltd.*, No. 20-cv-993 (C.D. Cal. Oct. 14, 2021) (Scarsi, J.) (Ex. 2)). To affect this strategy, Samsung sought declarations of non-infringement on patents over which there was no immediate controversy properly before this Court. Samsung then appended to these improper claims a state-law claim for breach of contract that directly attempts to subvert Judge Scarsi's ruling in the Central District. Although dramatically different in size, Samsung and Netlist sell competing products to the same potential customers. They are competitors. And this is a suit by an enraged competitor that did not get its way in front of Judge Scarsi and seeks greener pastures.

Netlist and Samsung were parties to a Joint Development License Agreement ("JDLA"). The JDLA involved access to Netlist's newly developed product designs, as well as a long-term product-supply commitment and payment from Samsung. According to Samsung, the JDLA granted Samsung certain rights to Netlist patents. D.I. 14 ¶ 2. On October 14, 2021, Judge Scarsi in the Central District entered a summary judgment order finding that Netlist properly terminated the JDLA after Samsung materially breached the Agreement. D.I. 21-3 at 20–21. Samsung rushed to bring the instant declaratory judgment action *the day after* Judge Scarsi's unfavorable decision. Samsung sought a declaration of non-infringement for four Netlist patents: United States Patent Nos. 10,217,523 ("'523 patent"), 10,474,595 ("'595 patent"), 9,858,218 ("'218 patent"), and

7,619,912 ("'912 patent") (collectively the "Declaratory Judgment Patents").  D.I. 1 at 80–81.
There is no proper legal controversy before this Court on these patents.  The purpose of Samsung's
strategy was to append a state law breach-of-contract claim in an attempt to subvert Judge Scarsi's
rulings.  On December 20, 2021, Netlist moved to dismiss Samsung's original complaint.  D.I. 10.

On December 20, Netlist also brought a separate patent infringement action in the Eastern
District of Texas against SEC, SSI, and an important additional defendant not present here,
Samsung Electronics America, Inc. ("SEA").  As between Delaware, the Central District, and
Texas, Texas is the only jurisdiction in which both a patent infringement suit against all three
Samsung entities is proper and the sole location of semiconductor manufacture for Samsung in the
United States.  Netlist alleged infringement of patents that are in entirely different families and
directed at different aspects of memory technology from the Declaratory Judgment Patents: U.S.
Patent Nos. 10,860,506 ("'506 patent"), 10,949,339 ("'339 patent"), and 11,016,918 ("'918
patent") (collectively the "Texas Action Patents").  D.I. 21-2 (*Netlist v. Samsung*, No. 21-cv-463
(E.D. Tex.) ("Texas Action").

The Declaratory Judgment claims that Samsung used as an excuse to run to this Court are,
to state it mildly, wholly improper and a transparent attempt to evade the proper jurisdiction of
other Courts.  The '523, '595, and '218 patents were listed in correspondence sent by Netlist
associated with the termination of the JDLA **12 months before** Samsung filed its original
complaint.  If Samsung had a reasonable anticipation of suit on those patents, it should have
presented those concerns to Judge Scarsi.  Further, the '912 patent was never the subject of
Netlist's communication with Samsung.  Samsung's asserted controversy involving this patent is
the alleged indemnification requests made by Google and a Google contractor based on a litigation
that has been pending for 13 years in the Northern District of California, where Netlist served

Google with infringement contentions *4 months before* Samsung filed its original complaint here. *See Netlist, Inc. v. Google LLC*, No. 09-cv-5718, D.I. 1 (N.D. Cal. Dec. 4, 2009). The Federal Circuit explicitly holds that Samsung's only option for the '912 patent on these facts was to intervene in the lawsuit between Netlist and Google. *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014).

Not coincidentally, Google now claims the Northern District of California case, which has been pending for 13 years, should be stayed pending this instant action. *Google*, No. 09-cv-5718, D.I. 218, at 2 n.1 ("Google notes that Samsung recently filed a declaratory judgment action against Netlist for non-infringement of the '912 Patent. . . . [J]udicial efficiency favors staying this case and allowing Samsung's action to proceed. . . .").

Samsung's legally defective Declaratory Judgment claims are window dressing. The purpose is to allow Samsung to bring a pendant state-law claim—for which there is no diversity jurisdiction—alleging that Netlist is in breach of its obligations to a standards body, JEDEC, by terminating the JDLA:

> Netlist and Samsung dispute whether Samsung has a license to Netlist's patents, including the Patents-in-Suit, under the Agreement. Netlist has taken the position that Samsung's license under the Agreement has been terminated. Yet Netlist has failed to offer Samsung a license to patents allegedly essential to the DDR4 Standards, including the Patents-in-Suit, on RAND terms and conditions.

D.I. 1, ¶ 313.[1] This claim is directed at conduct that was the express subject of the case before Judge Scarsi: the JDLA's termination. D.I. 21-3. On February 15, 2022, the Court entered final judgment confirming that Samsung has no rights in Netlist's patents. Ex. 2 ("Netlist terminated the JDLA pursuant to JDLA § 13.2, and Samsung's licenses and rights under the JDLA have

---

[1] Samsung also brought a series of inequitable conduct claims based on these same patents that are parasitic on the Declaratory Judgment Patents. D.I. 1 at 41–77.

ceased.").

Given Samsung's transparent attempt to evade the negative rulings in Judge Scarsi's court, Netlist moved to dismiss Samsung's original complaint for lack of subject matter jurisdiction and failure to state a claim.  D.I. 10.  On January 18, 2022, Samsung filed the First Amended Complaint ("FAC"), failing to address the basic jurisdictional defects in its original complaint, but asserting additional declaratory judgment claims as to three Texas Action Patents.  D.I. 14.

Samsung's fresh attempt to subvert another district court's authority—this time the Eastern District of Texas—is similarly improper on its face.  Samsung's behavior in Texas, however, confirms that litigation tactics are afoot.  SEC (a foreign entity) insisted that SEC, SSI, and SEA receive a 90-day extension to respond to Netlist's complaint in the Texas Action.  In exchange, all three parties agreed to appear and reserved the right to answer or move to dismiss, but did not reserve the right to use the extension to bring a collateral action in another forum. D.I. 21-4.  After receiving the extension, Samsung sought to add the Texas Action Patents here.  Simply put, Samsung sought to intentionally delay the Texas Court's progress so that it could play a procedural game with this Court via its FAC.

The Delaware Action is a litigation tactic designed to interfere with the jurisdiction of three different Federal judges: Judge Scarsi, who has now entered final judgment confirming the termination of the JDLA; Judge Seeborg, who is hearing the '912 patent action; and Judge Gilstrap, whose court represents the only forum where SEC, SEA, and SSI can all be sued, where the relevant products were manufactured, and where the '506, '339, and '918 patents were first asserted against Samsung's infringing conduct.

Netlist moves to dismiss the FAC for lack of jurisdiction and failure to state a claim.

## SUMMARY OF ARGUMENT

1.  This Court lacks subject matter jurisdiction over this case because Samsung's FAC

cannot show a case or controversy with sufficient immediacy between Netlist and Samsung. The '523, '595, and '218 patents were the subject of correspondence between Netlist and Samsung over a year ago relating to the termination of the JDLA, while the California Action was pending. If Samsung had a good faith, reasonable apprehension of a lawsuit, it should have brought its compulsory counterclaim before Judge Scarsi seeking a declaration of non-infringement. Samsung never did. And Netlist has not sued Samsung based on these patents.

2. This Court does not have jurisdiction over Samsung's claims relating to the '912 patent. Samsung pleads indemnification requests from its customer and the customer's supplier, but this is insufficient to confer subject matter jurisdiction; instead, Samsung's only option is to intervene in the lawsuit between Netlist and Samsung's customer if it owes an indemnification obligation to the customer. *See Microsoft Corp.*, 755 F.3d at 904.

3. Samsung's FAC adding the Texas Action Patents should be dismissed because at the time Samsung filed its original complaint, there was no controversy as to the Texas Action Patents.

4. Samsung's state law claim for breach of contract should be dismissed because this Court has no diversity or supplemental jurisdiction. This claim is logically connected to the enforceability of the JDLA's termination and was a compulsory counterclaim or required affirmative defense that Samsung should have presented before Judge Scarsi in the California Action. Alternatively, these claims should be dismissed under Rule 12(b)(6).

5. The inequitable conduct and unclean hands claims should be dismissed for lack subject matter jurisdiction and under Rule 12(b)(6) because the FAC fails to state a plausible claim.

6. Alternatively, this case should be dismissed by discretion and under the first-filed rule.

## STATEMENT OF FACTS AND ARGUMENT

### I.   Counts I-XII Should Be Dismissed for Lack of Subject Matter Jurisdiction

#### A.   This Court Does Not Have Subject Matter Jurisdiction Because Samsung Fails

to Show "a Case or Controversy" of Sufficient Immediacy

Samsung cannot carry its burden of proving the existence of "a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007).

### 1.    Counts I-III: Non-Infringement of the '523, '595, and '218 Patents

Samsung alleges that on July 15, 2020, Netlist sent a letter terminating any license to Netlist's patents Samsung may have enjoyed under the JDLA.  FAC ¶ 28.  This was 15 months before Samsung filed the original complaint.  Samsung also contends that on October 15, 2020, Netlist identified the '523, '595, and '218 patents as Netlist intellectual property and invited Samsung to engage in "formal licensing discussions."  *Id.* ¶ 31.  This was 12 months before the original complaint was filed.  Netlist has never sued Samsung on these patents.  These facts indicate the lack of substantial controversy of sufficient immediacy here.

Despite Samsung's contention that the JDLA covers the '523, '595, and '218 patents, Samsung did not seek a declaration of non-infringement or counterclaim in the California Action that was ongoing at the time the correspondence was sent.  This fact evidences Samsung's strategic decision to delay this Declaratory Judgment Action, which "cuts against [Samsung's] argument that its alleged controversy with [Netlist] is sufficiently immediate as to require adjudication now." *Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606, 610–11 (D. Del. 2009) (dismissing declaratory judgment because circumstances allegedly supporting plaintiff's declaratory judgment complaint" had been in existence but plaintiff delayed in bringing suit).  Samsung's deliberate "failure to take prompt action in the face of what it claims to be a real threat of an infringement suit" makes clear there is no substantial controversy of sufficient immediacy. *Id.* (citing *Citizen Elecs. Co. v. Osram GmbH*, 377 F. Supp. 2d 149 (D.D.C. 2005)).

### 2. Count IV: Non-Infringement of the '912 Patent

Samsung does not allege that Netlist accused Samsung of infringing the '912 patent. Instead, it relies on Netlist's suit against Google (*Netlist, Inc. v. Google Inc.*, No. 09-cv-05718 (N.D. Cal.) ("Google Action") that has been pending for over a decade as the sole basis for jurisdiction. Specifically, Samsung pleads that declaratory judgment jurisdiction exists because "on July 6, 2021, Google made an indemnification request to SSI," and "on July 19, 2021, Lenovo made an indemnification request to SSI." FAC ¶¶ 43–44 (Lenovo is Google's subcontractor). This claim is legally defective for two reasons. **First**, Samsung does not claim it has an actual indemnification obligation regarding this patent. *Cisco Sys., Inc. v. Sprint Commc'ns Co., L.P.*, No. 15-cv-431, 2016 WL 690939, at *3 (D. Del. Feb. 19, 2016) ("[The Federal Circuit] specifically rejected the attempt in that case to broaden its precedent by granting standing based on customer requests *without regard to the merits of such requests*.") (emphasis added); *Microsoft Corp. v. SynKloud Techs., LLC*, 484 F. Supp. 3d 171, 179 (D. Del. 2020) ("A customer request to indemnify against patent infringement does not create subject matter jurisdiction."). **Second**, if Samsung did have an indemnification obligation, the proper course of action is for Samsung to intervene in the proceeding before Judge Seeborg. As the Federal Circuit previously held:

> Importantly, even if there were such an obligation—to indemnify a customer already sued by the patentee in Texas—it would not justify what Appellees seek here. A case has already been filed against these customers in the Eastern District of Texas. Appellees cannot seek a declaration from a New York court on behalf of customers they must indemnify where a suit against these very same customers on all the same issues was *already* underway in a Texas court. . . . By agreeing to indemnify any one of their customers, Microsoft could defend its customers and efficiently and effectively participate in *the Texas action.*

*Microsoft*, 755 F.3d at 904 (emphasis in original) (citation omitted).

### 3. Other Litigation Cannot Create Jurisdiction

Samsung's FAC discusses Netlist's litigation against Micron Technology, Inc. ("Micron"). FAC ¶¶ 17–18; *Netlist, Inc. v. Micron Tech., Inc.*, No. 21-cv-430 (W.D. Tex. Apr. 28, 2021);

*Netlist, Inc. v. Micron Tech., Inc.*, No. 21-cv-431 (W.D. Tex. Apr. 28, 2021). Samsung made no reference to this litigation in its original complaint; its discussion in the FAC should be viewed with a jaundiced eye. Netlist sued Micron on April 28, 2021, long before Samsung filed the original complaint in this Action. *See Panavise Prod., Inc., v. Nat'l Prod., Inc.*, 306 F. App'x 570, 573 (Fed. Cir. 2009) (lawsuits filed more than one year prior to the declaratory judgment action insufficient to support subject matter jurisdiction). Moreover, Samsung does not allege that the Micron Actions involve any patents asserted in the FAC. D.I. 14 ¶¶ 17–18. Mere allegations of a "litigation campaign" do not confer jurisdiction. *SynKloud Techs., LLC*, 484 F. Supp. 3d at 181–83 ("SynKloud's . . . litigation against Microsoft's competitors Adobe and Dropbox [for related patents] is insufficient to create jurisdiction in this case between Microsoft and SynKloud").

Samsung's allegations regarding the *SK Hynix* litigations and *Inphi* litigation suffer from even more extreme defects. Netlist asserted the '523, '595, and '218 patents against SK Hynix on June 15, 2020 and March 17, 2020 respectively, in the Western District of Texas, where Samsung has its manufacturing facilities. FAC ¶ 54. It has now been nearly two years since these assertions, and Netlist has still not sued Samsung for these patents. There is no immediacy. *Panavise*, 306 F. App'x at 573; *supra* at 6. The same holds for the *Inphi* suit regarding the '912 patent, which was asserted 12 years ago in the Central District. *Netlist Inc. v. Inphi Corp.*, No. 9-cv-6900, D.I. 15 (C.D. Cal. Dec. 23, 2009). Samsung sat silent for over a decade. Moreover, Inphi does not make memory modules like Samsung. *Id.* ¶ 8.

### 4.    Counts V-VII: Non-Infringement of the Texas Action Patents

 "[J]urisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004). "[L]ater events may not create jurisdiction where none existed at the time of filing of the complaint." *Lannett Co. Inc. v. KV Pharm.*, No. 08-cv-338, 2009 WL 10737496, at *5 (D. Del. Feb. 4, 2009). Samsung

does not plead in the FAC that at the time the original complaint was filed there was a controversy regarding the distinct Texas Action Patents.  Therefore, Counts V-VII must be dismissed.

Samsung cannot argue that events occurring after the original complaint, but subsequently memorialized in the FAC, relate back and cure the jurisdictional defects in the original complaint.[2] The Federal Circuit is clear: "unless there was jurisdiction at the filing of the original complaint, jurisdiction could not be carried back to the date of the original filing."  *Innovative Therapies, Inc. v. Kinetic Concepts, Inc*., 599 F.3d 1377, 1384 (Fed. Cir. 2010) (the filing of an infringement suit after a declaratory judgment suit does not create retroactive declaratory judgment jurisdiction: "we agree with the district court that these acts after the filing of ITI's original complaint did not establish that an actual controversy existed at that earlier time.").  Further, Samsung took the position in its Motion for Leave to File the SAC (D.I. 18) that its amended complaints should relate back to the ***original complaint***'s filing date of October 15, 2021.  D.I. 19 at 5 ("On January 18, 2022, Samsung filed an amend[ment] to, *inter alia*, include declaratory judgment claims for the three patents asserted in Netlist's Texas complaint. Samsung's claims with respect to those patents relate back to Samsung's original filing.").  If Samsung is attempting to relate its FAC back to its ***original complaint***, it must establish jurisdiction at the time of the original complaint.  *See Kreider Dairy Farms, Inc. v. Glickman*, 190 F.3d 113, 121 (3d Cir. 1999) (dismissing amended complaint "that purports to relate back to an original complaint . . . filed on a date upon which the court would have lacked jurisdiction").  It did not, and so the FAC should be dismissed.

### 5.    Counts VIII-XI: Unenforceability Claims

Because Samsung cannot establish jurisdiction for its non-infringement claims, the related inequitable conduct and unclean hands claims must also be dismissed.  *See Goodman Mfg. Co.,*

---

[2] If Samsung did want to supplement its pleading to refer to facts arising after the complaint was file, the proper step was to seek leave under F.R.C.P. 15(d). But that does not relate back either.

*L.P. v. Carrier Corp.*, No. 13-cv-2014, 2014 WL 4954281, at *3 (D. Del. Sept. 23, 2014).

### 6.    Count XII: Breach of Contract

Because there is no jurisdiction over Samsung's declaratory judgment claims, Samsung's state law claim for breach of contract should also be dismissed.  No diversity jurisdiction exists between the parties in this action—SSI is a California corporation; SEC is a foreign entity; and Netlist is a California resident with its principal place of business located in Irvine, California. D.I. 14 ¶ 5; D.I. 21-2 ¶ 3; *see Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (28 U.S.C. § 1332 provides that "no plaintiff may be a citizen of the same state as any defendant").  Nor can Samsung rely on supplemental jurisdiction.  *Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*, 550 F.3d 1121, 1133 (Fed. Cir. 2008) ("[S]upplemental jurisdiction cannot be exercised when a court does not have original jurisdiction over at least one claim in the suit, 28 U.S.C. § 1367(a).").

Additionally, Samsung has not pled standing to bring a claim on behalf of Google as to an injunction sought against Google in the Google Action.  FAC ¶ 449.  Samsung fails to allege that it suffered an "injury in fact" that is "fairly traceable to" Netlist's injunction sought in the Google Action to show standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  The injunction Netlist sought applies to modules owned by Google and would not apply to modules owned by Samsung.

## II.    <u>The Court Should Exercise Discretion to Dismiss the Declaratory Judgment Claims</u>

This Court should exercise its discretion to decline declaratory judgment jurisdiction in this matter because it is an attempt to interfere with the jurisdiction of three Federal Judges. *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362–63 (Fed. Cir. 2020) ("[D]istrict courts enjoy a 'double dose' of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action *and* discretion when considering and applying the first-to-file rule and its equitable exceptions.") (citation omitted).

- 10 -

### A.    The FAC Interferes with the Jurisdiction of Judge Scarsi

Samsung's original complaint and its FAC make it clear that Samsung filed the Declaratory

Judgment Action in Delaware solely because of its losses before Judge Scarsi.  D.I. 21-3.  Samsung

openly admits this in its pleading:

> Samsung requests this relief **because Netlist has, without justification, unilaterally attempted to terminate a November 2015 Joint Development and License Agreement ("Agreement")** in which Netlist granted Samsung a perpetual, paid-up, worldwide license to, among others, the Patents-in-Suit. **Samsung believes that it is licensed to the Patents-in-Suit under the Agreement**.  D.I. 1 ¶ 2; FAC ¶ 2 (emphasis added).

Count VIII of the original complaint (FAC Count XII) brings a claim alleging that the termination

affirmed by Judge Scarsi is ineffective because Samsung's rights in the patents persist:

> Netlist and Samsung dispute whether Samsung has a license to Netlist's patents, including the Patents-in-Suit, under the [JDLA]. Netlist has taken the position that Samsung's license under the Agreement has been terminated. Yet, while **Samsung maintains that the termination was not effective and that it has a license to the Patents-in-Suit**. In any event, Netlist has failed to offer Samsung a license to [its standard essential patents.]. D.I. 1 ¶ 313 (emphasis added).

The JDLA includes a clause expressly granting each party the right to terminate on material breach.

D.I. 21-3 at 18 (JDLA § 13.2 states "the other Party shall have a right to terminate this Agreement

upon written notice").  The JDLA was terminated on July 15, 2020—***19 months ago***.  Samsung

did not raise an argument before Judge Scarsi that JEDEC policy required Netlist to perpetually

hold open a license offer to its patents to a party who materially and intentionally breached (thus

rendering the termination moot).  If post-termination Samsung felt it had residual rights to Netlist's

patents, that claim is logically connected to the claims before Judge Scarsi and therefore

compulsory.  Fed. R. Civ. P. 13(a); *Transamerica Occidental Life Ins. Co. v. Aviation Office of

Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002) ("For a claim to qualify as a compulsory counterclaim,

there need not be precise identity of issues and facts between the claim and the counterclaim; rather

the relevant inquiry is whether the counterclaim bears a logical relationship to an opposing party's

claim.") (quotation omitted).  And it was a required affirmative defense that needed to have been plead.  Fed. R. Civ. P. 8(c) (listing "license").  The judgement Judge Scarsi entered on February 15, 2022 is unambiguous: Samsung has no rights in the patents covered by the JDLA.  Ex. 2 at 3.

If Samsung had concerns about the implications of Judge Scarsi's grant of summary judgment terminating the JDLA, believed that certain rights in Netlist patents persisted regardless of the summary judgment, or had concerns over the patents that Netlist identified in its termination correspondence over a year ago, Samsung should have properly presented this to Judge Scarsi.

### B.    The FAC Interferes with the Jurisdiction of Judge Seeborg

Netlist and Google have been involved in a lawsuit relating to the '912 patent for 13 years.  It was stayed for 10 years while Netlist prevailed twice before the PTAB and finally before the Federal Circuit.  Samsung's declaratory judgment claim of non-infringement is based on indemnification requests received from Google and Google's middleman, Lenovo.  Moreover, its inequitable conduct claim relating to the '912 patent (Count X) is essentially a verbatim copy of a claim Google is attempting to bring before Judge Seeborg.  Ex. 1 at 19–21 (Netlist's Opposition to Google's Motion for Leave to Amend).  On March 3, 2022, Judge Seeborg is holding a hearing as to the legal sufficiency of the claim.  There is strong reason to believe that Samsung brought the claims on the '912 patent as a tool to evade the jurisdiction of the Northern District, because its customer Google is now threatening to use the FAC as a basis to bring a motion to stay before Judge Seeborg.  *Google*, No. 09-cv-5718, D.I. 218, at 2 n.1 ("[J]udicial efficiency favors staying this case and allowing Samsung's action to proceed. . . .").  The Federal Circuit has rejected this exact litigation tactic.  *Microsoft*, 755 F.3d at 904.

### C.    Complete Resolution Is Only Possible in the Eastern District

The Texas Action brings claim against three entities: SEC (a foreign entity), SSI (a California corporation with all fabrication plants in Texas), and SEA (major facilities in Texas).

- 12 -

SEA is not a party to the Declaratory Judgment Complaint and cannot be sued for patent infringement in Delaware—it has no physical location in Delaware and is registered as a New York entity.  D.I. 21-2 ¶ 5.  But SEC, SSI, and SEA can all be sued in Texas where they have an extensive presence.  Texas is the location of all of Samsung's chip manufacturing facilities in the United States.  D.I. 21-13 at 4 ("Austin, Texas, is home to Samsung Electronics' only two semiconductor fabrication plants outside South Korea. The first plant, called Fab 1, was built in 1997 and produces DRAM chips on 200mm wafers; they're used in PCs and computer servers.").  SEC, SEA, and SSI also repeatedly agree to defend patent actions in the Eastern District of Texas.[3]

As part of its pending motion to amend, Samsung attached a self-serving hearsay declaration claiming that SEA "is not involved in the design, development, or manufacture of the Accused Memory Modules" or their "marketing, sale, or importation."  D.I. 20, ¶¶ 5–6.  This ignores the plain terms of 35 U.S.C. § 271(a), which identifies use as an independent act of infringement.  In the Texas Action, Netlist has alleged that SEA infringed by using the infringing products.  D.I. 21-2 ¶ 10.  The record will show that SEA would be unable to run its business without the use of the infringing products.  Discretionary dismissal is proper under these circumstances.  *See Woodbolt Distrib., LLC v. Nat. Alternatives Int'l, Inc.*, No. 11-cv-1266, 2013 WL 247041, at *2 (D. Del. Jan. 23, 2013) (dismissing declaratory judgment case where the plaintiff engaged in forum shopping and where a later-filed action in Texas was poised to resolve all parties' disputes and presented a more convenient forum for both the Texas-based declaratory judgment plaintiff and the California-based defendant); *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039–40 (Fed. Cir. 1995) (upholding district court decision withholding jurisdiction to allow

---

[3] *See, e.g.*, Answer ¶ 10, *Arbor Global Strategies LLC v. Samsung Elecs. Co.*, *Ltd. et al.*, No. 2:19-cv-333, D.I. 43 (E.D. Tex. Apr. 27, 2020) (not contesting venue); Answer ¶ 29, *Acorn Semi, LLC v. Samsung Elecs. Co.*, *Ltd. et al.*, No. 2:19-cv-347, D.I. 14 (E.D. Tex. Feb. 12, 2020) (same).

the later-filed infringement case to proceed at a more convenient forum).

**D.    Claims as to the Texas Patents Are Barred by the First-Filed Rule**

The first-filed rule "favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).  Netlist initiated the Texas Action on December 20, 2021.  Samsung filed the FAC on January 18, 2022 to add the Texas Action Patents.  The Texas Action is the first-filed as to the Texas Patents because the claims of the Texas Patents do not arise "out of the conduct, transaction, or occurrence set out [] in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

**1.    The Texas '918 Patent**

Titled "Flash-DRAM Hybrid Memory Module," the '918 patent is directed to on-DIMM power management integrated circuits ("PMIC").  D.I. 14-1 at 235 ('918 Patent, claim 1) ("A memory module comprising . . . first [second and third] buck converters configured to provide a first [second and third] regulated voltage having a first [second and third] voltage amplitude[, respectively] . . . [and] a converter circuit configured to provide a fourth regulated voltage having a fourth regulated voltage amplitude").  The on-module PMIC is a unique feature for DDR5 DIMMs, which "boosts power management efficiency and power supply stability."  D.I. 21-8 at 6.  Earlier memory generations put the power management on the motherboard.  D.I. 21-6 at 3.  This "marks a radical change in voltage regulation." *Id.*  DDR5 DIMMs' motherboard is no longer responsible for voltage regulation because each memory module has a PMIC, which greatly simplifies the motherboard's power distribution.

***First***, the '918 patent and the Declaratory Judgment Patents implicate different memory module products.  Samsung's original complaint only asked the Court to declare that Samsung's **_DDR4_** DIMMs did not infringe the Declaratory Judgment Patents.  D.I. 1 ¶¶ 92, 102.  By contrast, in the Texas Action, Netlist asserted the '918 patent ***only against*** **DDR5** RDIMMs, DDR

- 14 -

LRDIMMs, DDR5 SODIMMs, and DDR5 UDIMMs.  D.I. 21-2 ¶¶ 33, 68.  "[I]t is improbable that allegations regarding different products, involving different patents, would have a common core operative facts."  *Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1372–73 (Fed. Cir. 2019) ("Courts that have addressed the issue of whether newly alleged claims, based on separate patents, relate back to the date of the original complaint, have regarded the presence of newly accused products as a ***substantial factor weighing against the application of the relation back doctrine***.") (emphasis added); *Halo Elecs., Inc. v. Bel Fuse Inc.*, No. 07-cv-6222, 2008 WL 1991094, at *3 (N.D. Cal. May 5, 2008) (no relation back where the newly asserted patent had different titles, addressed different technologies, and covered different products).

**Second**, the '918 patent belongs to a different patent family than the Declaratory Judgment Patents.  They do not share priority to common filings and are not continuations of each other.

**Third**, the '918 patent and Declaratory Judgment Patents implicate different functionalities based on different generations of standard-based DDR memory technologies.  Thus, litigating the '918 patent and the Declaratory Judgment Patents would require knowledge of, and inquiry into, different memory technologies.  The FAC admits that the Delaware Declaratory Judgment Patent and the Texas '918 patent map to entirely different JEDEC specifications, one set for DDR4 and one set for DDR5.

| Declaratory Judgment Patents[4] | Texas '918 Patent |
|---|---|
| '523 patent: JESD82-32 DDR4 Data Buffer Definition.  FAC ¶ 63.<br><br>'595/'218 patents: JESD 82-31 DDR4 Registering Clock Driver Definition. FAC ¶ 70. | JESD 301-1 PMIC for DDR5. FAC ¶ 57.<br><br>JESD 82-511 DDR5 Registering Clock Driver Definition. FAC ¶ 57.<br><br>JESD 79-5 DDR5 SDRAM.  FAC ¶ 57. |

**Fourth,** DDR5 and DDR4 were developed a decade apart.  The JEDEC standards for

---

[4] Because not even Samsung contends its action is the first-filed action regarding the '912 patent before Judge Seeborg, Netlist does not include it in the charts.

DDR4 were published in 2012, whereas the DDR5 SDRAM specification was first published in 2020. D.I. 21-8 at 1. There is no factual overlap between the events leading to the adoption of each distinct standard or Netlist's JEDEC participation, which are the basis of Samsung's unenforceability allegations. *Compare* D.I. 14 ¶ 124 ("Netlist never specifically disclosed the '912 patent in connection with any of the ***DDR4 Standards***") *with* ¶ 130 ("Netlist never specifically disclosed the '918 patent in connection with any of the ***DDR5 Standards***").

**Fifth**, Netlist asserted the '918 patent in Texas against an important additional party not included here: SEA. Only the Texas Action can resolve the patent infringement disputes among Netlist and all the defendants and provide complete relief.

## 2. The Texas '339 and '506 Patents

The Texas '339 patent is titled "Memory Module With Controlled Byte-Wise Buffers" and discloses a memory module featuring "a plurality of byte-wise buffers controlled by the set of module control signals to actively drive respective byte-wise sections of each data signal associated with the read or write operation between the memory controller and the selected rank." D.I. 14-1 at 153 ('339 Patent). The Texas '506 patent, titled "Memory Module With Timing-Controlled Data Buffering," discloses a memory module featuring a plurality of buffer circuits, where each buffer circuit "includes a delay circuit configured to delay the respective set of data signals by an amount determined based on at least one of the module control signals." D.I. 14-1 at 109 ('506 Patent). Both claim distinct inventions unrelated to the Declaratory Judgment Patents.

**First**, neither the Texas '339 nor the Texas '506 patent is in the same family as the Declaratory Judgment Patents. Instead, the '339 and '506 patents each claims priority to unique, distinct, priority chains different from those of the Declaratory Judgment Patents.

**Second**, Netlist has asserted the '339 and '506 patents against SEA in the Texas Action.

**Third**, the Federal Circuit teaches that one of the factors that weigh against relation back

- 16 -

is when there will need to be "a substantially different evidentiary showing to prove infringement of the claims asserted in the second amended complaint." *Anza*, 934 F.3d at 1371. Here, the patents are directed to distinct aspects of memory module technologies. The Declaratory Judgement '595 and '218 patents describe "a method of establishing a handshake mechanism based on notification signaling" that "can be implemented by adding a new interface (notifying) signal between the MCH [i.e., system memory controller] and the memory subsystem controller," and that this interface "can be an open drain signaling from the memory subsystem controller to the MCH." FAC ¶ 65. Both patents address reliably initializing and communicating to the memory controller the status of memory modules upon initialization. *Id*. The Declaratory Judgement '523 patent "relates to a self-testing memory module for testing a plurality of memory devices mounted thereon." *Id.* ¶ 60. By contrast, the Texas '339 and '506 patents relate to load-reducing data buffers on a DDR4 LRDIMM. D.I. 21-2 ¶ 20 (the '506 patent is directed to memory modules featuring a "buffer circuit [that] includes a delay circuit configured to delay the respective set of data signals by an amount determined based on at least one of the module control signals"); *id.* ¶ 24 (the '339 Patent is directed to memory modules "optimized to reduce the load experienced by a system memory controller via the use of configurable data transmission circuits").

**Fourth**, Samsung's own pleading shows that the Delaware Declaratory Judgment Patents and the Texas '506 and '339 patents relate to entirely distinct portions of specifications.

| Declaratory Judgment Patents | Texas '506 and '339 Patents |
|---|---|
| '523 patent: JESD82-32 [§ 2.1.8.5] DB-to-DRAM Write Delay Training. FAC ¶ 63.<br><br>'595/'218 patents: JESD82-31 [§2.12] CA Bus Training Modes (Clock-to-CA training). FAC ¶ 70. | '506 patent: JESD82-32A § 2.14 Read Commands and MPR Override Reads. FAC ¶ 56; D.I. 21-2 ¶¶ 46, 53.<br><br>'339 patent: JESD79-4C § 4.25.5 Write Burst Operation and § 4.24.2 Read Burst Operation; JESD 21C § 6.1 Signal Groups; and JESD82-32A § 2.13 Write Commands, § 4.61 Logic Diagram, § 10.5 Output Timing Requirements. FAC ¶ 56; D.I. 21-2 ¶¶ 59–63. |

## III.    The FAC Fails to State Plausible Claims for Inequitable Conduct and Unclean Hands

The FAC does not cure the defects in Samsung's original complaint.  It fails to plead with particularity: "(1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326–27 (Fed. Cir. 2009) (citing Fed. R. Civ. P. 9(b)).[5]

### A.    The Inequitable Conduct and Unclean Hands Claims as to the '912 Patent Fail

Count X is a mirror image of a claim that is the subject of a threshold motion before Judge Seeborg.  The claim is legally defective for the same reasons presented to Judge Seeborg.  Ex. 1 at 19–21.  Samsung's claim is based on Netlist's counsel argument during the '912 patent's reexamination proceeding, which is an insufficient basis to show inequitable conduct.  *SunPower Corp. v. PaneClaw, Inc.*, No. 12-cv-1633, 2016 WL 5107029, at *10 (D. Del. Sept. 19, 2016) (denying inequitable conduct claim when the "examiner had the expertise to examine the prior art reference and consider [the patentee's] argument against the rejection"); *Masimo Corp. v. Philips Elec. N. Am. Corp.*, No. 09-cv-80, 2015 WL 2406061, at *12 (D. Del. May 18, 2015) (same).

### B.    Samsung's Inequitable Conduct and Unclean Hands Claims as to the Remaining Patents (Counts VIII, IX, XI) Fail

#### 1.    Samsung Fails to Adequately Plead "But-for" Materiality

The FAC fails to allege facts showing "***but-for***" Netlist's alleged failure to disclose the alleged prior art—Ellsberry, Jeddeloh752, JEDEC documents, and IPR references—the PTO would not have issued the '523, '218, '595, and '506 patents.  Instead of showing "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims," *Exergen*, 575 F.3d at 1329–30, Samsung vaguely alleges that the prior art is not cumulative, without any attempt to compare it to any prior

---

[5] Samsung's unclean hands allegations are also insufficient for the same reasons.  *Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 570 (D. Del. 2014).

art Netlist had presented before the examiner.  Below are a few examples:

- Ellsberry [the prior art] is material and not cumulative of other art or information before the examiner of the application that issued as the '523 patent.  FAC ¶ 270.  The Patent Office would not have allowed at least one claim of the '523 patent to issue had it been aware of Ellsberry, at least because it would have found a claim obvious over that art, as explained in SK hynix's IPR petition . . .  *Id.* ¶ 271

- Jeddeloh752 is material and not cumulative. . . .  The references considered by the examiner did not provide the same disclosure.  *Id.* ¶ 274.  The Patent Office would not have allowed at least one claim of the '523 patent to issue had it been aware of Jeddeloh752, at least because it would have found a claim obvious over that art in combination with Ellsberry, as explained in SK hynix's IPR petition. . . . *Id.* ¶ 275.

*See also* FAC ¶¶ 338, 340, 345, 346, 351, 353, 358–359, 432, 434, 435.

Samsung's inequitable conduct claims must fail because it did not identify "the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record."  *Exergen*, 575 F.3d at 1329; *see also Analog Devices, Inc. v. Xilinx, Inc.*, No. 19-v-2225, 2021 WL 466859, at *2–*3 (D. Del. Feb. 9, 2021) (conclusory assertion that "[b]ut for Mr. Levi's material omission, the USPTO would not have granted one or more claims of the '184 patent" insufficient: "[f]rom these allegations, there is nothing one can infer about ***the contents of the prior art*** before the PTO and whether the Levi Reference fills any gaps therein"). Netlist's arguments during the reexamination are not properly considered for materiality.

### 2.     Samsung Fails to Allege Specific Intent to Deceive the PTO

Despite Samsung's scorched-earth approach to assert that the named Netlist employees or counsel had knowledge of the prior art, Samsung never alleges facts showing their intent to deceive the PTO.  Counts VIII, IX, and XI only regurgitate the same boilerplate, conclusory allegation:

> On information and belief, Hyun Lee specifically intended to deceive the Patent Office into believing that Hyun Lee was the sole inventor of the '218 and '595 patents ['506 patent], and/or that the claims of those patents are otherwise patentable, by withholding [relevant prior art] from the patent examiner during prosecution of the applications that issued as the '218 and '595 patents ['506 patent]. On information and belief, Hyun Lee engaged in this conduct as part of a scheme to monetize Netlist's patents through litigation against the industry.  FAC ¶¶ 341, 354, 360; *see also id.* ¶¶ 272, 276, 436.

- 19 -

Simply showing that "the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO" is not sufficient.  *Therasense, Inc. v. Becton*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).  Samsung fails to "include sufficient allegations of ***underlying facts*** from which a court may reasonably infer" that the named individuals withheld information specifically intending "to deceive the PTO."  *Exergen*, 575 F.3d at 1329 ("The mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct."); *Brinkmeier v. BIC Corp.*, 733 F. Supp. 2d 552, 565 (D. Del. 2010) ("a plaintiff may plead based upon information and belief, but only if the pleading sets forth the specific facts upon which the belief is reasonably based").

## IV.    Samsung Fails to State a Claim for Breach of the JEDEC Patent Policies

Count XII asserts breach of contract based on Netlist's alleged failure to offer Samsung a license to its standard essential patents.  Samsung pleads itself out of the claim by alleging that Netlist provided Samsung a license via the JDLA, and that Netlist asked it to take a license after termination.  FAC ¶¶ 31-32.  The FAC also asserts breach of contract, based on Netlist's separate lawsuit seeking an injunction against Google.  *Id*. ¶¶ 448–50.  Samsung pleads no basis in the JEDEC Patent Policy or Netlist's RAND letters for an obligation not to seek injunctive relief, much less an obligation to refrain from doing so against a third-party.  Samsung assumes a *per se* rule preventing SSO participants from seeking injunctive relief relating to SEPs, which the Federal Circuit has clearly rejected.  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331 (Fed. Cir. 2014), *overruled on other grounds*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).

## CONCLUSION

For the reasons stated above, Samsung's First Amended Complaint cannot cure the defects in its original pleading and should be dismissed, with prejudice and without leave to amend.

Respectfully submitted,

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 N Market St, 12th Floor
Wilmington, Delaware 19801
(302) 298-0700
kkeller@shawkeller.com

Dated:  February 16, 2022          *Attorneys for Defendant Netlist, Inc.*

# Exhibit 1

# REDACTED VERSION OF DOCUMENT
# SOUGHT TO BE SEALED

IRELL & MANELLA LLP
Jason G. Sheasby (CA SBN 205455)
jsheasby@irell.com
Andrew J. Strabone (CA SBN 301659)
astrabone@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Plaintiff Netlist, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 4:09-cv-05718-SBA <br><br> **NETLIST'S OPPOSITION TO DEFENDANT'S MOTION TO AMEND ANSWER AND COUNTERCLAIMS (Dkt. 206) [REDACTED]** <br><br> Date: November 10, 2021 <br><br> Time: 2:00 PM <br><br> Location: Oakland Courthouse |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO 4:09-CV-05718-SBA

## <u>STATEMENT OF THE ISSUES TO BE DECIDED</u>

Whether Google should be granted leave to file the Amended Answer to Plaintiff's Complaint for Patent Infringement; and Assertion of Counterclaims?

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION ........................................................................ | 1 |
| II. | LEGAL STANDARD ................................................................... | 3 |
| III. | ARGUMENT ............................................................................... | 3 |
| | A. Google Should Not Be Allowed to Add a Late Unfair Competition Counterclaim ....................................................... | 3 |
| | 1. Google Cannot Show Good Cause in Asserting an Unfair Competition Claim Based on Facts Occurring Before this Case Was Stayed ................................ | 3 |
| | 2. Google's Proposed Unfair Competition Claim Is Futile ........................... | 4 |
| | (a) Google Fails to State a Claim Under the "Unlawful" Prong ........................ | 7 |
| | (b) Google Fails to State a Claim Under the "Unfair" Prong ........................ | 7 |
| | (c) Google Fails to State a Claim Under the "Fraud" Prong ........................ | 9 |
| | B. Google's Should Not Be Granted Leave to Add the Inequitable Conduct Defense Because Google's Proposed Amendment Is Futile ................ | 10 |
| | 1. Google Fails to Allege a Material Misrepresentation ..................... | 11 |
| | (a) Attorney Argument Is Not Basis for Inequitable Conduct ........................ | 11 |
| | (b) Google Has Not Identified Any False Statement .......................... | 12 |
| | (c) Google Has Not Alleged the Requisite Materiality ..................... | 12 |
| | 2. Google Fails to Allege Specific Facts to Show Deceptive Intent ........................ | 13 |
| | C. Google Should Not Be Allowed to Add a Generic Intervening Rights Defense ........................................................ | 13 |
| IV. | CONCLUSION ............................................................................ | 15 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO 4:09-CV-05718-SBA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ...............................................................9, 10

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
465 F.3d 946 (9th Cir. 2006).........................................................................................3

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) .........................................................................9

*Apple Inc. v. Samsung Elec. Co.*,
No. 11-cv-1846, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011)...............................8, 9

*Apple, Inc. v. Motorola Mobility, Inc.*,
No. 11-CV-178, 2011 WL 7324582 (W.D. Wis. June 7, 2011) ..................................9

*Aryeh v. Canon Bus. Solutions, Inc.*,
55 Cal. 4th 1185 (2013)................................................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................13

*Avago Techs. U.S. Inc. v. IPtronics Inc.*,
No. 10-cv-2863, 2014 WL 12650655 (N.D. Cal. Dec. 10, 2014)................................4

*Barrington v. A. H. Robins Co.*,
39 Cal.3d 146 .............................................................................................................6

*Berryman v. Merit Prop. Mgmt., Inc.*,
62 Cal. Rptr. 3d 177 (2007) .........................................................................................9

*Blackberry Ltd. v. Typo Prod. LLC*,
No. 14-cv-23, 2014 WL 1867009 (N.D. Cal. May 8, 2014) ......................................13

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .........................................................................6

*Cancer Rsch. Tech. Ltd. v. Barr Lab'ys, Inc.*,
625 F.3d 724 (Fed. Cir. 2010) ...................................................................................13

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999)..................................................................................................7

*Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prod., Inc.*,
No. 19-cv-802, 2021 WL 1405477 (N.D. Cal. Apr. 14, 2021) .................................13

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

**Page(s)**

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
No. 13-cv-1300, 2019 WL 8333452 (N.D. Cal. Dec. 17, 2019) ................4

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
72 F. Supp. 3d 1012 (N.D. Cal. 2014) .................8, 9

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008)................5

*Davenport v. Litton Loan Servicing, LP*,
725 F. Supp. 2d 862 (N.D. Cal. 2010) ................6

*Dror v. Kenu, Inc.*,
No. 19-cv-3043, 2019 WL 5684520 (N.D. Cal. Nov. 1, 2019) ................10

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)................10, 13

*Fitbit, Inc. v. Aliphcom, Inc.*,
No. IPR2016-00607, 2017 WL 3525349 (P.T.A.B. Aug. 15, 2017) ................12

*Garrison v. Oracle Corporation*,
159 F. Supp. 3d 1044 (N.D. Cal. 2016) ................5

*Google LLC v. Netlist, Inc.*,
810 F. App'x 902 (Fed. Cir. 2020)................13

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018)................9

*Hum. Genome Scis., Inc. v. Genentech, Inc.*,
No. 11-cv-6519, 2011 WL 7461786 (C.D. Cal. Dec. 9, 2011) ................11, 13

*Intel Corp. v. Fortress Inv. Grp. LLC*,
511 F. Supp. 3d 1006 (N.D. Cal. 2021) ................8

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990)................4

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992)................3, 14

*Kearns v. Ford Motor Co.*,
567 F. 3d 1120 (9th Cir. 2009)................7, 9

*Miller v. Rykoff-Sexton, Inc.*,
845 F.2d 209 (9th Cir. 1988)................3

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
10 F.4th 1358 (Fed. Cir. 2021)................15

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- iii -

**Page(s)**

*Nuvo Rsch. Inc. v. McGrath*,
No. 11-cv-4006, 2012 WL 1965870 (N.D. Cal. May 31, 2012) ............................................4, 7

*Parks Sch. of Bus., Inc. v. Symington*,
51 F.3d 1480 (9th Cir. 1995) ..................................................................................................8

*Phillips. Convolve, Inc. v. Compaq Comput. Corp.*,
812 F.3d 1313 (Fed. Cir. 2016) ........................................................................................2, 12

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*,
815 F.3d 734 (Fed. Cir. 2016) ..............................................................................................12

*Presidio Comp., Inc. v. Am. Tech. Ceramics Corp.*,
No. 14-cv-2061, 2016 WL 7319533 (S.D. Cal. Feb. 10, 2016) ..............................................13

*Qureshi v. Countrywide Home Loans, Inc.*,
No. 09-cv-4198, 2010 WL 841669 (N.D. Cal. Mar.10, 2010) .................................................7

*Rambus, Inc. v. FTC*,
522 F.3d 456 (D.C. Cir. 2008) ...............................................................................................8

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) .............................................................................7, 10

*Rothman v. Target Corp.*,
556 F.3d 1310 (Fed. Cir. 2009) ............................................................................................11

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) ..................................................................................................7

*Stoll v. Runyon*,
165 F.3d 1238 (9th Cir. 1999) ................................................................................................5

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ..................................................................................................3

*Takeda Pharm. Co. v. TWi Pharm., Inc.*,
87 F. Supp. 3d 1263 (N.D. Cal. 2015) ...................................................................................11

*TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*,
No. 14-cv-0341, 2016 WL 7049263 (C.D. Cal. Aug. 9, 2016) .................................................6

*Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*,
No. 11-cv-4100, 2012 WL 1094324 (N.D. Cal. Mar. 29, 2012) .............................................13

*Therasense, Inc. v. Becton, Dickinson and Co.*,
649 F.3d 1276 (Fed. Cir. 2011) ..............................................................................10, 11, 12

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ..........................................................................................................10

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- iv -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION TO AMEND ANSWER
CASE NO 4:09-CV-05718-SBA

|  | **Page(s)** |
|---|---|
| *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966 (N.D. Cal. 2019) | 7 |
| *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716 (9th Cir. 2013) | 3 |
| *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012 (S.D. Cal. 2019) | 9 |
| *Williams v. Boeing Co.*, 517 F.3d 1120 (9th Cir. 2008) | 6 |
| *Young v. Lumenis, Inc.*, 492 F.3d 1336 (Fed. Cir. 2007) | 2, 11 |

**Statutes**

| | |
|---|---|
| Cal. Bus. & Prof. Code § 17200 | 6 |
| Cal. Bus. & Prof. Code § 17204 | 6 |
| Cal. Bus. & Prof. Code § 17208 | 4 |

**Rules**

| | |
|---|---|
| Fed. R. Civ. P. 9(b) | 9, 10 |
| Fed. R. Civ. P. 12(b)(6) | 3 |
| Fed. R. Civ. P. 13(f) | 3 |
| Fed. R. Civ. P. 15(a) | 3, 14 |
| Fed. R. Civ. P. 15(c) | 6 |
| Fed. R. Civ. P. 16(b) | 3 |

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- v -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION TO AMEND ANSWER
CASE NO 4:09-CV-05718-SBA

## I.  INTRODUCTION

Google has filed what is on its face a ***non***-dispositive motion on intervening rights. Dkt. 155. It has used this as an excuse to delay the entire progress of a case that is incredibly important to Netlist. Google evinces annoyance at having to file a motion to amend. Dkt. 206 (the "Motion"). The Federal Rules say otherwise.

Netlist focuses its opposition to the motion to amend on four narrow but important elements of Google's proposed Amended Answer and Counterclaims (Dkt. 206-2, "AA" or "AC") that fail even the most lenient characterization of the standard for granting leave to amend. The other new elements of the Amended Answer and Counterclaims not addressed in this opposition are more appropriately resolved on a motion for judgment on the pleadings or summary judgment.

***First***, Google should not be permitted to supplement its pleading as to facts or claims that in good faith could have been alleged before the Court granted a stay in this matter 11 years ago. This implicates Google's new state law unfair competition claim (the "UCL claim"), and its supplemental allegations involving interactions between JEDEC and Netlist that occurred before the stay. For facts that did not arise until after the stay, Google should be entitled to plead these facts.[1] This is the exact same rule Netlist has applied to its amended infringement contentions in this matter. Long ***after*** the stay of this proceeding,                                    . Ex. 1, at 72-73 (                                   ). After the stay was lifted, and over a month before the deadline to amend infringement contentions, Netlist presented its contentions that claim 16 reads on certain DDR4 DIMM products. Ex. 6. Netlist does not maintain that claim 16 reads on any earlier Google product. Google has feigned outrage over the fact that after the stay was entered, it began infringing claim 16 of the '912 patent. As it wrote with crocodile tears in its motion to strike Netlist's infringement contentions:

> "Netlist's attempt to assert a new claim at this stage of the litigation amounts to nothing more than an effort to start over and impose burdensome discovery and litigation on Google and the Court." Dkt. 153 at 6.

> "Netlist first argues that there is no prejudice because this case is in an 'early stage.'

---

[1] As discussed below, there are substantial technical defects with Google's UCL and inequitable conduct claims that, as currently pleaded, also render them futile.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 1 -

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO 4:09-CV-05718-SBA

1   See Opp. at 12. That argument ignores the reality of the case[.]" Dkt. 181 at 5.

2   Now, when it benefits Google, it tells the Court that: "This case was stayed for over ten years

3   between January 26, 2011 and February 17, 2021, and therefore this case is still in its early stages."

4   Motion at 7. Google is obviously willing to say to the Court whatever it thinks will achieve the

5   outcome it desires, regardless of how contradictory it is with the position previously taken. Claim

6   16 could not have been asserted before the claim. The UCL claim could have been.

7   **Second,** Google's UCL claim as pleaded is barred on its face by the statute of limitations

8   and controlling authority. As a result, it is futile and leave to amend should be denied.

9   **Third,** Google's inequitable conduct allegations are futile. Google is alleging that Netlist is

10  committing fraud based on the following: Noting that in the context of a reexamination—during

11  which the broadest reasonable interpretation standard was applied—the claims were narrowed via

12  amendment; and noting before this Court that the amendments to the claims did not narrow the

13  claims to a scope narrower than the meaning of the original claims under the *Phillips* standard.

14  Google can disagree with this position, but the cavalier way in which it accuses members of the bar

15  of this Court with committing a fraud reflects poorly on the Defendant. It also has no basis in law:

16  It is settled Federal Circuit law that attorney argument cannot provide the basis for inequitable

17  conduct. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007).

18  **Fourth,** Google declines to disclose to the Court the true purpose of its attempt to amend its

19  answer to add affirmative defenses of intervening rights while a motion for summary judgment on

20  the same subject is pending.

21

22

23

24

25  . Dkt. 155. At the same time, Google

26  apparently wants to preserve an argument that intervening rights exist as to these undisclosed

27  products by raising a generic affirmative defense,

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 2 -

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO 4:09-CV-05718-SBA

1   [REDACTED]. Google was required by Judge Spero to respond "in

2   full" to Netlist's interrogatory on intervening rights.  Dkt. 145.  [REDACTED]

3   [REDACTED]. Google must be limited to its complete contention interrogatory

4   response, and its intervening rights defenses should apply solely to the products which Google

5   actually identified and produced required information regarding in these responses.

6   ## II.   LEGAL STANDARD

7   Google seeks to amend its answer under Federal Rule of Civil Procedure 16(b)'s "good

8   cause" standard.  Motion at 14 (ECF).  Rule 16(b) focuses on "the moving party's reasons for

9   seeking modification," and "[i]f that party was not diligent, the inquiry should end." *In re W. States

10  Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 736 (9th Cir. 2013).  Only once the party has

11  demonstrated good cause under Rule 16(b), the party must then also demonstrate that amendment

12  is proper under Rule 15. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).

13  In assessing whether to grant leave to amend under Rule 15(a), courts consider whether the proposed

14  amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue

15  delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946,

16  951 (9th Cir. 2006).[2]  In assessing futility, courts apply the same standard as under Rule 12(b)(6).

17  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).  Futility alone is a sufficient basis

18  to deny leave to amend. *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007).

19  ## III.   ARGUMENT

20  ### A.   Google Should Not Be Allowed to Add a Late Unfair Competition Counterclaim

21  #### 1.   Google Cannot Show Good Cause in Asserting an Unfair Competition Claim Based on Facts Occurring Before this Case Was Stayed

22  Google attempts to raise a completely new UCL claim twelve years after this case

23  commenced, even though as pleaded, this claim allegedly existed before the stay.  With two limited

24  exceptions (that are not necessary to make out the UCL claim as pleaded), all the allegations in

25  support of the UCL claim existed before the stay in this case.  Motion at 16.  For example, the

26

27  [2] Google states "Rule 13(f) governs the procedure for counterclaims."  Mot. at 9.  This

28  is wrong.  Rule 13(f) has been abrogated since December 1, 2009.  "An amendment to add a counterclaim is governed by Rule 15."  Adv. Comm. Notes on 2009 Amend. to Fed. R. Civ. P. 13.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO 4:09-CV-05718-SBA

- 3 -

relevant section of the Amended Counterclaims lists JEDEC meetings minutes from 2007 and letters Netlist sent to JEDEC from 2008 to 2011. *E.g.* AA ¶¶ 25-34. Google cannot explain why it could not have asserted the UCL claim based on these facts occurring before the stayed issued on January 26, 2011, either a decade ago or right after this case reopened on February 17, 2021. Google fails to show good cause for its delayed assertion of the UCL claim, and therefore, should be prevented from doing so now. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (denying amendment for an "inexplicable and unjustified" seven-month delay); *Avago Techs. U.S. Inc. v. IPtronics Inc.*, No. 10-cv-2863, 2014 WL 12650655, at *7 (N.D. Cal. Dec. 10, 2014) (finding the defendant unduly delayed in seeking leave to amend to add additional facts which occurred *before* the case was stayed since the defendant was not prevented by the stay from filing the motion sooner).

### 2. Google's Proposed Unfair Competition Claim Is Futile

Google's UCL claim should be denied also because it is futile.

**First**, Google's UCL claim is barred by the four-year statute of limitations. Cal. Bus. & Prof. Code § 17208; *Nuvo Rsch. Inc. v. McGrath*, No. 11-cv-4006, 2012 WL 1965870, at *6 (N.D. Cal. May 31, 2012) (Armstrong, J.). Google pleads that Netlist disclosed the patent in suit to JEDEC on April 1, 2010. AC ¶ 31. Google alleges in its UCL count that Netlist's conduct harmed "manufacturers and end-users of DDR2, DDR3 and DDR4 memory modules." *Id.* ¶ 64. Google alleges that JEDEC adopted DDR2 before Netlist's disclosure of the '912 patent in April 2010. *Id.* ¶ 31. Likewise, Google claims Netlist made a disclosure relating to the DDR3 and the '912 patent on November 22, 2010. *Id.* ¶ 33. Google concedes in its motion that the relevant DDR2, DDR3, and DDR4 standards were adopted on or before 2014. *See* Motion, 12-13. Accepting these allegations as true, the UCL claim as pleaded is time-barred because the alleged harm occurred when the standards were adopted. *See ChriMar Sys. Inc. v. Cisco Sys., Inc.*, No. 13-cv-1300, 2019 WL 8333452, at *17 (N.D. Cal. Dec. 17, 2019) (finding that harm caused by a patentee's failure to disclose a patent to a SSO "would have occurred at the time the standards were ratified").

The stay of this case in 2011 does not allow Google to invoke the "equitable tolling" doctrine. Google has not pleaded facts showing that Google was "prevented from asserting a claim by [Netlist's] wrongful conduct" or "extraordinary circumstances beyond [Google's] control [that]

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 4 -

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO. 4:09-CV-05718-SBA

made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). Google could have brought a separate action for a UCL claim.

Likewise, the "delayed discovery rule" is of limited protection to Google. The court explains in *Garrison v. Oracle Corporation* that the delayed discovery rule "might be appropriate for UCL claims based on allegations of fraud, but [it] does not apply to UCL claims based purely on allegations of unfair competition." 159 F. Supp. 3d 1044, 1082 (N.D. Cal. 2016). Google's UCL count is purely focused on unfair competition without stating "fraud" at all. *See* AC ¶¶ 63-65.

Even if Google's UCL count involves any claim of fraud, the discovery rule does not apply because Google did or could have reasonably discovered the cause of action underlying the UCL claim more than four years ago, and Google cannot affirmatively "excuse [its] failure to discover" such basis. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). First, after the decade-long litigation and reexamination proceeding since 2009, Google has become familiar with the '912 patent published as early as 2008 and knew or should have known that the '912 patent applies to DDR2–4 standards, because the patent states on its face that it can apply to "DDR1, DDR2, DDR3, *and beyond*." Ex. 8 at 12:27-29; AC ¶ 30 (emphasis added). Second, Google admitted that all relevant DDR standards were finalized by 2014, Motion at 12-13, and as a JEDEC member, Google participated in the standard setting process. AC ¶ 41. Further, to the extent Google alleges that it did not know that the '912 patent also reads on DDR4 DIMMs until after seeing Netlist's amended infringement contentions, this does not save Google's case because Google's Amended Counterclaims confirms that the UCL count is also premised on alleged harms to manufacturers and consumers of DDR2 and DDR3 modules. AC ¶¶ 63-65.

Additionally, Google cannot rely on the continuous accrual rule to avoid being time barred. Under California law, continuous accrual applies when "there is a continuing or recurring obligation." *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1199 (2013). Google contends that Netlist has a duty to disclose "*before* the technology is voted on by its members," Motion at 11 (emphasis original), and it does not allege that Netlist had any recurring disclosure obligation. It is settled law that continuous accrual does not apply to allegedly continuing obligation to avoid illegal behavior. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 137-38 (N.D. Cal. 2020) (collecting cases).

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 5 -

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO  4:09-CV-05718-SBA

Finally, neither the Federal nor state relation-back rule applies. California law allows relation back only if the amendment "(1) rests on the same general set of facts as the original complaint; and (2) refers to the same accident and same injuries as the original complaint." *Barrington v. A. H. Robins Co.*, 39 Cal.3d 146, 151(1985). The federal rule requires the amendment to assert "a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleadings." Fed. R. Civ. P. 15(c)(1)(B). A comparison of the amended and original answers shows that Google originally pleaded facts focusing on Netlist's alleged failure to timely disclose the '912 patent at all; whereas Google's new allegations are that JEDEC policies require Netlist to continuously identify its subjective belief as to the relationship between the patent and each new version of the DDR standard. Ex. 9 at 21; AC ¶¶ 40-41. That Google is attempting to plead additional facts, including allegations of Netlist's new conducts and resulting harms, to support its new UCL count is strong evidence that the claim cannot relate back. *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (rejecting relation back a "new legal theory depending on different facts").

**Second**, Google has not sufficiently pleaded standing to sue under the UCL. A party has standing to challenge a business practice under the UCL only if it (1) "suffered injury in fact" and (2) "has lost money or property as a result of" the asserted unfair competition. Cal. Bus. & Prof. Code § 17204. Google states no specific fact to show any "injury in fact" or that Google "**has lost money or property.**" *See* AC ¶ 64 (generally asserting potential injury or damages that "will result"). Mere "hypothetical injury" that Google would incur or "litigation expenses" in defending this patent litigation are insufficient. *TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson*, No. 14-cv-0341, 2016 WL 7049263, at *4 (C.D. Cal. Aug. 9, 2016) (the *Noerr-Pennington* doctrine prevents using litigation expenses as basis for standing).

**Third**, Google's proposed amendment fails on its face because Google has not identified which particular prong of the UCL it is relying on. The UCL prohibits business acts or practices that are (1) fraudulent, (2) unlawful, or (3) unfair. *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 878 (N.D. Cal. 2010). "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F. 3d 1120, 1127 (9th Cir. 2009). Google only vaguely

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 6 -

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO 4:09-CV-05718-SBA

quotes the statutory language to allege that Netlist has committed "unlawful, unfair, or fraudulent business acts" based on "Netlist's failure to timely disclose the '912 patent as required by the JEDEC Patent Policy." Motion at 20; AC § 62 ("The above-described conduct of Netlist constitutes unfair competition in violation of . . . § 17299[sic] *et seq*."). This defect by itself warrants dismissal and renders Google's amendment futile. *Nuvo Rsch.*, 2012 WL 1965870, at *6 ("Plaintiffs fail to identify which prong or prongs of the UCL on which they are attempting to predicate Defendant's liability. Their failure to do so improperly deprives [Defendant] of 'fair notice' of the claims alleged against him."); *Qureshi v. Countrywide Home Loans, Inc.,* No. 09-cv-4198, 2010 WL 841669, at *7 (N.D. Cal. Mar.10, 2010) (Armstrong, J.) (dismissing the UCL claim for the same reason).

*Fourth*, to the extent Google bases its UCL claim on positions Netlist takes in this litigation, including that claim 16 covers certain embodiments of DDR4, this constitutes petitioning activity protected by the *Noerr-Pennington* doctrine and cannot serve as a basis for liability. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006); *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 980 & n.11 (N.D. Cal. 2019) (*Noerr-Pennington* doctrine applies to UCL claims).

*Fifth*, Google has not sufficiently pleaded facts to state a claim under any UCL prong:

### (a)     Google Fails to State a Claim Under the "Unlawful" Prong

To raise a UCL claim for unlawfulness, Google must plead a violation of another statute or common law. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1117 (N.D. Cal. 2016) ("As Plaintiff fails to state a claim under either statute, she necessarily cannot state a UCL unlawful prong claim."). Google's UCL count does not purports to rely on violations of other laws. AC ¶¶ 62-65.

### (b)     Google Fails to State a Claim Under the "Unfair" Prong

Under the unfairness prong, a party must plead "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999). A UCL claim based on unfairness cannot survive unless the party alleges conduct violating antitrust laws. *See ChriMar Sys., Inc. v. Cisco Sys., Inc.*, 72 F. Supp. 3d 1012, 1020 (N.D. Cal. 2014).

Google does not dispute that Netlist had already disclosed the '912 patent to the relevant

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 7 -

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO. 4:09-CV-05718-SBA

JEDEC committees. Google only asserts that Netlist failed to disclose the '912 again and identify specifically its relevance to DDR3 and DDR4 standards in a timely manner. Motion at 12; AC ¶¶ 32-33. However, Google does not plead any applicable JEDEC contractual obligation to make this type of serial disclosure. *See* Dkt. 169-4, at 11. The actual patent policy must be considered in assessing the futility of Google's amendment, because Google has incorporated it by reference into its amended answer. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

The JEDEC patent policy provides that "disclosure and licensing obligations of Committee Members and Participants are limited to Standards developed in the particular JEDEC committees in which and while they Participate." Dkt. 206-7 at 3. Google's proposed amendment does not identify any portion of the policy that requires a re-declaration each time the same committee adopts a new version of DDR from a JEDEC member. On its face, Google fails to allege that Netlist breached the JEDEC patent policy.

Even if Google had sufficiently alleged that Netlist had an obligation to make **additional** disclosure of the '912 patent for each separate DDR generation and that Netlist breached that obligation, as a general matter, a breach of an SSO commitment does not rise to the level of an antitrust violation." *Intel Corp. v. Fortress Inv. Grp. LLC*, 511 F. Supp. 3d 1006, 1030 (N.D. Cal. 2021); *see also Rambus, Inc. v. FTC*, 522 F.3d 456, 462 (D.C. Cir. 2008) (overturning an FTC order finding that Rambus engaged in unlawful monopolization based on its failure to disclose its patent to the SSO). In the limited instances where courts allow claims for antitrust law violations based on a "failure to disclose patents to SSO" theory, the claimant must allege that the patentee's failure to disclose "**induced** the SSO to set the standard incorporating the essential patent," and more specifically, "must allege that there was an **alternative technology** that the SSO was considering during the standard setting process and that the **SSO would have adopted an alternative standard** had it known of the patent holder's intellectual property rights." *Apple Inc. v. Samsung Elec. Co.*, No. 11-cv-1846, 2011 WL 4948567, at *5-6 (N.D. Cal. Oct. 18, 2011). Google has not alleged that JEDEC was considering any alternatives during any DDR standard-setting process, or that JEDEC would have adopted an alternative standard had Netlist disclosed the '912 patent for a third time. *Compare id*, at *5-6 ("merely conclusory statements" insufficient); *ChriMar Sys.*, 72 F. Supp. 3d at

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO 4:09-CV-05718-SBA

1019 (dismissing antitrust counterclaim where defendants "fail to clearly allege that the IEEE would have adopted an alternative standard had it known about the [ChriMar's] patent and ChriMar's position with respect to [the patent]"); *with Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1022-23, 1025 (S.D. Cal. 2019) (finding LG sufficiently alleged Sherman Act and UCL claims where LG "allege[d] in detail . . . the specific alternative technology that the SSOs could have adopted"). Google only relies on a single case to support its UCL claim, *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-CV-178, 2011 WL 7324582 (W.D. Wis. June 7, 2011). This out-of-circuit authority is inconsistent with the law of this district.

### (c) Google Fails to State a Claim Under the "Fraud" Prong

To state a claim under the "fraud" prong of the UCL, Google "must allege facts showing that members of the public are likely to be deceived by the alleged fraudulent business practice." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016) (quotation omitted). "[A] failure to disclose a fact one has no affirmative duty to disclose is [not] likely to deceive anyone with the meaning of the UCL." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (citing *Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 188 (2007)). A UCL claim based on fraud is subject to Rule 9(b)'s particularity requirement. *Kearns*, 567 F.3d at 1125. Thus, to state a fraud claim based on omission, Google must plead specific facts showing that: (1) Netlist "must have concealed or suppressed a material fact"; (2) Netlist "must have been under a duty to disclose the fact"; (3) Netlist "must have intentionally concealed or suppressed the fact with the intent to defraud" Google; (4) Google "must have been unaware of the fact and would not have acted as [it] did if [Google] had known of the concealed or suppressed fact"; and (5) "as a result of the concealment or suppression of the fact, [Google] must have sustained damages." *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 561 (N.D. Cal. 2019) (citations omitted).

In the Amended Answer, Google fails to allege sufficient facts showing that Netlist's purported failure to disclose was made with "the intent to defraud" Google. Google did not even plead facts showing that Netlist had knowledge of the '912 patent's relevance to DDR4 standards before the standards were finalized in 2014. *See Apple*, 411 F. Supp. 3d at 565-66 (dismissing a fraud claim based on omission because the plaintiff failed to adequately plead actual knowledge and

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO 4:09-CV-05718-SBA

"[c]onstructive knowledge is insufficient to state a claim based on omissions").

Further, as to the reliance element, Google's Amended Counterclaims does no more than baldly assert that "JEDEC, including Google" relied on Netlist's "silence" in adoption of relevant standards. AC ¶ 42. Google does not plead facts showing that *Google* or JEDEC would have changed any position had Netlist acted in a way differently than alleged in the counter-claim. Google's UCL claim based on fraud fails. *See Apple*, 411 F. Supp. 3d at 561; *Dror v. Kenu, Inc.*, No. 19-cv-3043, 2019 WL 5684520, at *13 (N.D. Cal. Nov. 1, 2019) (a plaintiff prosecuting a private enforcement action under the UCL's fraud prong must show its "*own* reliance" of any alleged fraud) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)).

## B. Google's Should Not Be Granted Leave to Add the Inequitable Conduct Defense Because Google's Proposed Amendment Is Futile

Inequitable conduct requires that the "applicant misrepresented or omitted material information with the specific intent to deceive the PTO." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011). Inequitable conduct must be pleaded with particularity under Rule 9(b), which requires allegation of the specific "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

Google's inequitable conduct allegations are premised solely on Netlist's arguments regarding the scope of the asserted claims. Motion at 19. Google points out that during the reexamination, Netlist stated that it had "narrowed its claims to define its precise inventive contributions over the prior art." *Id.* Google contends that this is in "direct contradiction" to Netlist's position in the current litigation "that the amendments made to those same claims merely made express the inherent functions of the [original limitation], and thus did not substantially change the scope of the claims." *Id.* Based on these two facts alone, Google then alleges that "Netlist made a material misrepresentation and had specific intent to deceive the Board and the Federal Circuit." *Id.* These allegations fail to meet either prong of *Exergen*.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 10 -

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO. 4:09-CV-05718-SBA

1. **Google Fails to Allege a Material Misrepresentation**

    (a) **Attorney Argument Is Not Basis for Inequitable Conduct**

As an initial matter, the only alleged misrepresentation Google identifies is arguments made during reexamination. *See Young*, 492 F.3d at 1349 (patentee's statements distinguishing the claims from the prior art constituted "attorney argument and an interpretation of what the prior art discloses"). It is settled Federal Circuit law that that attorney argument cannot constitute a material misrepresentation supporting inequitable conduct. *Id.* (patentee's arguments are not affirmative misrepresentations of material fact because the reference was in front of the examiner and thus "the examiner was free to reach his own conclusions and accept or reject [the patentee's] arguments"). This holding reflects the reality of patent prosecution. If all relevant information is presented to the USPTO, the Board, or the Federal Circuit, the appropriate body can reach its own conclusion, and "[a]n applicant cannot be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner." *Takeda Pharm. Co. v. TWi Pharm., Inc.*, 87 F. Supp. 3d 1263, 1286 (N.D. Cal. 2015). A rule to the contrary would conflict with clear Federal Circuit precedent protecting patent prosecutors from "confront[ing] the specter of inequitable conduct charges." *Therasense,* 649 F.3d at 1289-90. Google "cannot drop the atomic bomb" by asserting "prosecution attorney's zealous arguments were inequitable conduct." *Hum. Genome Scis., Inc. v. Genentech, Inc.*, No. 11-cv-6519, 2011 WL 7461786, at *4, 6 (C.D. Cal. Dec. 9, 2011) ("Attorneys prosecuting a patent should be able to correct mistakes, change their opinion, or adjust their argument to convince the examiner without risking invalidation of the patent by a later finding of inequitable conduct.") (citations omitted).

To be clear, Google has not alleged that Netlist hid any references from the Patent Office. To the contrary, Netlist presented the original and amended claims, prior art, and related arguments to the Board and Federal Circuit for their consideration. This open-book behavior cannot support a claim of inequitable conduct, and Google's amendment is thus futile. *Takeda*, 87 F. Supp. 3d at 1286; *Rothman v. Target Corp.*, 556 F.3d 1310, 1328-29 (Fed. Cir. 2009) ("While the law prohibits genuine misrepresentations of material fact, a prosecuting attorney is free to present argument in favor of patentability without fear of committing inequitable conduct.").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 11 -

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO: 4:09-CV-05718-SBA

**(b)     Google Has Not Identified Any False Statement**

Even if attorney argument could provide the basis for an inequitable conduct claim, Google's proposed amendment fails to allege the requisite falsity.  Google argues that Netlist's earlier statement regarding the scope of the amended claims must be false because Netlist's litigation arguments are in "direct contradiction."  Motion at 19.  Google once again fails to understand the different claim construction standards applied in reexamination (broadest reasonable interpretation ("BRI")) and in assessing whether intervening rights exist in a district court (*Phillips*). The BRI standard requires the PTO to select the broadest of "multiple reasonable interpretations in light of the specification."  *Fitbit, Inc. v. Aliphcom, Inc.*, No. IPR2016-00607, 2017 WL 3525349, at *9 (P.T.A.B. Aug. 15, 2017).  The *Phillips* standard by contrast requires district courts to determine "the correct construction" in light of the claims and specifications.  *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 734, 740 (Fed. Cir. 2016) (citations omitted).

During prosecution, the claims were amended to exclude constructions that the PTO believe were encompassed by BRI.  Netlist admits this fact in its briefing before this Court.  Dkt. 197 at 32 ("In its Federal Circuit brief, Netlist explained that '[it] did what patent owners are expected to do during a reexamination—it narrowed its claims to define its precise inventive contributions over the prior art.'  This appeal was under the ***BRI*** standard.").  But the issue before this Court is intervening rights.  The Federal Circuit has made clear that in the context of intervening rights, the question is whether the claims as amended are narrower than the construction the original claims would have received under *Phillips*.  *Convolve, Inc. v. Compaq Comput. Corp.*, 812 F.3d 1313, 1325 (Fed. Cir. 2016).  What Google glibly calls a fraud is black letter Federal Circuit law: A claim narrowed during prosecution under BRI can still have the same scope as the original claim under *Phillips*.

**(c)     Google Has Not Alleged the Requisite Materiality**

Inequitable conduct requires a showing of "but-for materiality."  *Therasense*, 649 F.3d at 1291.  Google fails to allege *any* factual basis for its assertion that Netlist's statements were material to the Board's or Federal Circuit's determinations.  Instead, Google conclusively contends—without any citation to the Board's or the Federal Circuit's decisions or other basis—that "[b]ut for Netlist's statements . . . the Federal Circuit and the Board would have found these claims obvious and would

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 12 -

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO  4:09-CV-05718-SBA

not have allowed them to issue." Motion at 19; AA ¶ 33. Google's contention is merely a legal conclusion disagreeing with Netlist's claim construction, which need not be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Genentech*, 2011 WL 7461786, at *4 (legal conclusions insufficient to state materiality). Further, nothing in the record supports this argument: the Board's 44-page opinion makes no mention of the Board's reliance on Netlist's characterization of the claims, *see generally* Ex. 2; and the Federal Circuit summarily affirmed the Board in a one-line order. *Google LLC v. Netlist, Inc.*, 810 F. App'x 902 (Fed. Cir. 2020). Google fails to allege but-for materiality. *See Presidio Comp., Inc. v. Am. Tech. Ceramics Corp.,* No. 14-cv-2061, 2016 WL 7319533, at *16 (S.D. Cal. Feb. 10, 2016) (dismissing inequitable conduct defense where the PTO did not rely on the alleged misrepresentation about "what the scope of the original claims were under [the court's] claim construction rulings").

### 2. Google Fails to Allege Specific Facts to Show Deceptive Intent

*First*, Google has not identified any "individual" who made an allegedly false statement. This alone renders Google's proposed amendment futile as a matter of law. *See Exergen*, 575 F.3d at 1329 (asserting "Exergen, its agents and/or attorneys" had committed inequitable conduct was insufficient); *Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prod., Inc.*, No. 19-cv-802, 2021 WL 1405477, at *6 (N.D. Cal. Apr. 14, 2021) (referring to the patentee or outside counsel is insufficient).

*Second*, Google alleges no separate facts to show that Netlist's representations were made with the specific intent to deceive. AA ¶¶ 17-34 (alleging Netlist "knowingly misrepresented the amendments" by allegedly failing to disclose "its intention not to narrow the claims at all in order to distinguish the prior art," which is information "material to the patentability of the claims"). Materiality and intent are separate, and "intent to deceive cannot be found based on materiality alone. *Cancer Rsch. Tech. Ltd. v. Barr Lab'ys, Inc.*, 625 F.3d 724, 733 (Fed. Cir. 2010). Google's "conclusory allegation of specific intent is insufficient." *Blackberry Ltd. v. Typo Prod. LLC*, No. 14-cv-23, 2014 WL 1867009, at *3 (N.D. Cal. May 8, 2014)); *see also Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*, No. 11-cv-4100, 2012 WL 1094324, at *4 (N.D. Cal. Mar. 29, 2012).

### C. Google Should Not Be Allowed to Add a Generic Intervening Rights Defense

Google's broad assertion of intervening rights at this stage, after the parties briefed this issue,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 13 -

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO: 4:09-CV-05718-SBA

1  demonstrates Google's bad faith. *Johnson*, 975 F.2d at 608 (considering bad faith in assessing leave

2  to amend pleadings under Rule 15(a)). Specifically, Google may not add an intervening rights

3  defense **generically**; it should be limited to the specific products it disclosed in the interrogatory

4  response Google has provided before the intervening rights briefing completed.

5       Shortly after the Court entered an order setting the briefing schedule for intervening rights,

6  on April 19, 2021, Netlist served interrogatories on Google seeking information regarding Google's

7  DIMMs and the "full factual and legal basis" for Google's intervening rights defense (ROG. No. 3).

8  Ex. 7 at 6-7. Google repeatedly relied on the expected intervening rights briefing schedule as a basis

9  to refuse to substantially engage in the discovery proceeding. Ex. 3 at 10. At the June 25, 2021

10  hearing, Judge Spero ordered Google to respond to ROG No. 3 "in full." Dkt. 145. Google

11  thereafter committed, in a stipulation filed with the Court, to "a complete document production

12  based on a reasonable investigation relevant to equitable intervening rights by July 30." Dkt. 149.

13       Google strategically decided to not comply with its discovery obligation in attempt to hide

14  certain classes of products from Netlist. For example, Netlist's amended infringement contentions

15  accuse DDR4 RDIMMs, DDR4 LRDIMMs, DDR4 NVDIMMs, DDR3 LRDIMMs, and DDR2

16  FBDIMMs that meet certain portions of JEDEC standards, and "products that operate in

17  **substantially similar manner**." Ex. 4 at 2 (emphasis added). ▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮, even though the discovery request, which Google was ordered by Judge

20  Spero to respond to, was not limited to products explicitly listed in the infringement contentions. In

21  particular, the discovery request seeks information of all Google's "Memory Module," which was

22  defined to include any "printed circuit board which is connectable to a computer system, with a

23  plurality of [DDR] memory devices, and at least one circuit that sends a clock signal." Ex. 7 at 2.

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *E.g.*

26  Ex. 1; Ex. 5 at 13, 18. Google has also made the unilateral determination that what it describes as

27  "8-rank" and "16-rank" DIMMs do not fit within this definition of the accused products, even

28

1  though they are covered by Netlist's amended infringement contentions. *See, e.g.*, Dkt. 208 at 19.[3]

2  In addition, Google refused to provide any information as to products purchased, used or made by

3  subsidiaries or affiliates of Google LLC. *E.g.* Ex. 5 at 2 (objecting to the definition of "Google"

4  and "You" as overbroad, and "interpret[ing] these terms to mean Defendant Google LLC").

5      In Google's summary judgment brief, despite bearing the burden to identify products

6  covered by Google's alleged intervening rights,

7  ████████████████████████████████████████████████████████. Dkt. 155.

8  Google apparently wants to amend its answer to preserve the ability to argue absolute and equitable

9  intervening rights as to these products at a later date. Google is attempting to hide information on

10  ████████████████████ for a tactical reason. ████████████████████████

11  ███████████████████████████████████████████████████████████████████.

12  Google does not contend these licenses apply to instances in which ████████████████

13  ████. It wants to obfuscate the existence of ██████████████████████ because their existence

14  eviscerates its license defense. Google should be prevented from doing so, because under similar

15  circumstances, failure to respond to discovery requests or timely provide information in damages

16  contentions precludes use of such information later at trial. *E.g. MLC Intell. Prop., LLC v. Micron*

17  *Tech., Inc*., 10 F.4th 1358 (Fed. Cir. 2021) (striking expert report where Plaintiff failed to disclose

18  "factual underpinnings and evidence underlying its damages theory" during fact discovery).

19  **IV.    CONCLUSION**

20      Netlist respectfully requests that the Court deny Google's Motion to Amend (Dkt. 206).

21

22      [3] Netlist's original complaint referenced "4-rank" FBDIMM products. Dkt. 1 at 3. Netlist

23  maintained in its infringement contentions that "[a]ll the Accused Instrumentalities constitute "4-Rank Fully-Buffered Dual In-Line Memory Modules" as that term is used in the Complaint." Ex.

24  4 at 2. As apparent from the broad language in the amended infringement contentions—which

25  accuse DDR4 RDIMMs, DDR4 LRDIMMs, DDR4 NVDIMMs, DDR3 LRDIMMs, DDR2 FBDIMMs that meet certain portions of JEDEC standards, and "products that operate in

26  *substantially similar manner*"—Netlist was not limiting its contentions to what Google arbitrarily defines as "4-rank" versus "8-rank" versus "16-rank" DIMMs. *Id.* In fact, the portions of the

27  standards cited in the contentions reference what Google describes as "8-rank" and "16-rank" DIMMs. *E.g.* Ex. 6 at 10 (reproducing Figure 10 from JEDEC Standard No. 21C showing common

28  layout of a "4-rank" "8-rank" or "16-rank" DIMM).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 15 -

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO 4:09-CV-05718-SBA

1   Dated: October 1, 2021             IRELL & MANELLA LLP

2

3                                      By: /s/   Jason G. Sheasby
                                           Jason G. Sheasby
4                                          jsheasby@irell.com
                                           Andrew J. Strabone
5                                          astrabone@irell.com
                                           IRELL & MANELLA LLP
6                                          1800 Avenue of the Stars, Suite 900
                                           Los Angeles, California 90067
7                                          Telephone: (310) 277-1010
                                           Facsimile: (310) 203-7199
8

9                                          *Attorneys for Plaintiff Netlist, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

# **CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2021, I caused the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will automatically email notification of such filing to all counsel of record who have made a formal appearance.  I further certify that on October 1, 2021, the unredacted version of the foregoing were served on counsel of record who have made a formal appearance.

By: */s/          Yanan Zhao          *
Yanan Zhao

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S OPPOSITION TO DEFENDANT'S
MOTION TO AMEND ANSWER
CASE NO  4:09-CV-05718-SBA

- 1 -

Exhibit 2

1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9            CENTRAL DISTRICT OF CALIFORNIA
10
| | |
|---|---|
| NETLIST INC., a Delaware corporation, | Case No. 8:20-cv-00993-MCS-ADS |
| Plaintiff, | **JUDGMENT** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, | |
| Defendant. | |

1  Pursuant to the jury's Verdict, the Court's Order Re: Motions for Summary

2  Judgment and Related Applications, and the Court's Order Re: Motions for Entry of

3  Judgment, it is ordered, adjudged and decreed:

4  1.  Judgment is entered in favor of Plaintiff Netlist Inc. and against Defendant

5  Samsung Electronics Co., Ltd., on Netlist's first claim for breach of the supply provision

6  in the parties' contract, Joint Development and Licensing Agreement ("JDLA") § 6.2.

7  Netlist shall recover nominal damages in the amount of $1.00.

8  2.  Judgment is entered in favor of Netlist and against Samsung on Netlist's

9  second claim for breach of the NRE fee payment obligation, JDLA §§ 3.1–.2. Netlist

10  shall recover nominal damages in the amount of $1.00.

11  3.  Judgment is entered in favor of Netlist and against Samsung on Netlist's

12  third claim for declaratory relief. Netlist terminated the JDLA pursuant to JDLA § 13.2,

13  and Samsung's licenses and rights under the JDLA have ceased.

14

15  **IT IS SO ORDERED.**

16

17  Dated: February 15, 2022

18  _____
   MARK C. SCARSI

19  UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28