# EXHIBIT 9

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETLIST, INC., | Case No: 4:09-cv-05718 RS |
| Plaintiff, | **ORDER DENYING NETLIST'S MOTION FOR LEAVE TO AMEND INFRINGMENT CONTENTIONS AND GRANTING IN PART GOOGLE'S MOTION TO STAY** |
| vs. | |
| GOOGLE LLC, | |
| Defendant. | **REDACTED** |
| AND RELATED COUNTERCLAIM. | |

## I.    INTRODUCTION

Netlist brings the instant action against Google for infringement of U.S. Patent No. 7,619,912 ("the '912 patent"), which relates to "double data rate" or "DDR" memory module technology.  A memory module (also known as a "dual in-line memory module" or "DIMM") contains individual memory devices (e.g., "dynamic random-access memory" or "DRAM") that are combined into sets or "ranks" to increase the capacity of the module.

Presently pending is Netlist's motion for leave to amend its infringement contentions to accuse 8- and 16-rank DIMMs, Dkt. 269, which is denied for lack of diligence.  Also pending is Google's motion to stay this action pending resolution of a separate declaratory infringement action between Netlist and a supplier from whom Google obtains the accused DDR4 DIMMs. Dkt. 292.  The motion to stay is granted in part, and this action shall be stayed for 90 days from the date this order is issued.  Unless a motion is brought to extend the stay, it will expire at the end of the 90-day period.  These matters are suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## II.     MOTION TO AMEND INFRINGMENT CONTENTIONS

### A.   RELEVANT BACKGROUND

Netlist filed a Complaint for Patent Infringement on December 4, 2009. Dkt. 1. The alleged acts of infringement of the '912 patent "include without limitation its use of 4-Rank Fully Buffered Dual In-Line Memory Modules (4-Rank FBDIMMs) in its server computers." Id. ¶ 9; see also id. ¶ 11. On April 8, 2010, Netlist served a Disclosure of Asserted Claims and Infringement Contentions in accordance with Patent Local Rule ("PLR") 3-1. Dkt. 152-6. In it, Netlist asserted 34 claims of the '912 patent. Regarding the accused instrumentalities, Netlist stated the asserted claims were "infringed by Google's 4-rank FBDIMMs." Id. at 1.

On October 21, 2010, Google filed a request for *inter partes* reexamination of the '912 patent, challenging each of the 34 claims originally asserted by Netlist. Dkt. 153-6. The PTO granted Google's request on January 18, 2011, and this action was stayed pending completion of the reexamination proceedings. Dkt. 68. The reexamination proceedings and resulting appeal lasted more than a decade. During those proceedings, the Patent Trial & Appeal Board ("PTAB") invalided nearly all of the original claims of the '912 patent. As a result, Netlist canceled or amended each of the 34 claims it had originally asserted against Google in this action. The Patent and Trademark Office ("PTO") issued a reexamination certification on February 8, 2021, and this case reopened on February 17, 2021. Dkt. 111.

On March 4, 2021, the parties filed a Joint Case Management Conference Statement, wherein they recognized that the reexamination proceedings may have given rise to a defense of intervening rights and requested early resolution of the issue. Dkt. 115 at 3. Given that the memory modules used by Google likely changed during the pendency of the stay, the parties proposed that Netlist take targeted discovery to identify the memory modules currently in use and then serve "amended infringement contentions," after which they would brief the issue of intervening rights. Id. at 3-4, 5. The parties' proposal was adopted and the deadline for Netlist to serve amended infringement contentions was set for June 18, 2021. Dkt. 117.

In April 2021, Netlist propounded discovery to identify every type of "Memory Module" Google had purchased or used from November 17, 2008 through the present. See

Dkt. 269-3 at 6-7. Netlist framed its discovery requests broadly, defining "Memory Module" as "a printed circuit board which is connectable to a computer system, with a plurality of double-data rate ('DDR') memory devices, and at least one circuit that sends a clock signal." Id. at 2. On May 19, 2021, Google served responses, wherein it objected to Netlist's definition of "Memory Module," stating it would interpret the term to mean the class of products Netlist has accused of infringing the '912 patent. Dkt. 211-6 at 3. Google provided information related to its use of 4-rank DIMMs. Id. at 5-11.

On June 18, 2021, Netlist served the operative Amended Disclosure of Asserted Claims and Infringement Contentions ("Amended Disclosure"), which first asserted infringement of claim 16. Dkt. 288-3. The Amended Disclosure states that "[a]ll the Accused Instrumentalities constitute '4-Rank Fully-Buffered Dual In-Line Memory Modules' as that term is used in the Complaint." Id. at 1-2. With respect to claim 16, it specifies as follows:

> The memory modules incorporated in Google's servers include, without limitation, memory modules compliant with certain portions of the JEDEC Solid State Technology Association ("JEDEC") standards and specifications for Double Data Rate 4 ("DDR4") Synchronous DRAM ("SDRAM") Registered Dual In-Line Memory Modules ("RDIMMs"), DDR4 SDRAM Load Reduced Dual In-Line Memory Modules ("LRDIMMs") and DDR4 SDRAM Non-Volatile Dual In-Line Memory Modules ("NVDIMMs"), and products that operate in a substantially similar manner.

Id. at 2.

According to Netlist, in July 2021, Google produced documents suggesting its use of 8-rank DDR4 DIMMs. A dispute then arose as to whether Google was required to provide information related to 8- and 16-rank DIMMs. Around that time, and in no event later than August 30, 2021, Google made clear its position that the Amended Disclosure accuses only 4-rank DIMMs and that it is not required to provide information on products not accused in this action. Dkt. 269-8 at 1. After additional meet and confer discussions, Google agreed to provide certain information regarding its use of 8- and 16-rank DIMMs, while maintaining its objection that such products are not accused. On October 12, 2021, Google provided information regarding its purchase of 8-rank DIMMs and informed Netlist it has not purchased or used 16-rank DIMMs. Dkt. 284-3 at 81-83.

1        In the meantime, on July 30, 2021, Google filed a motion to strike the newly asserted

2 claim 16 and the parties filed their respective motions for summary judgment on Google's

3 defense of absolute intervening rights. In connection with its summary judgment motion,

4 Google provided evidence regarding the dates of use of the accused categories of 4-rank

5 memory modules. Dkt. 154-4 at 14-24. In its opposition brief, Netlist argued that Google's

6 identification of products covered by absolute intervening rights was defective because, *inter*

7 *alia*, it had not properly disclosed all accused products. Dkt. 196-4 at 24. According to Netlist,

8 Google "withheld information on its 8-rank and 16-rank DIMM products despite having been

9 ordered to disclose these products." Id. Netlist argued that 8- and 16-rank DIMM products

10 were thus not properly part of Google's motion for summary judgment. Id. Google responded

11 that "Netlist's operative infringement contentions (i.e., those set forth in the Amended

12 Disclosure) are limited to 4-Rank memory modules, with no allegations against 8-Rank or 16-

13 Rank products." Dkt. 208 at 15. Google argued it was entitled to rely on those contentions

14 when filing its motion for summary judgment. Id. Google also noted that "Netlist has never

15 asked the Court for leave to amend to accuse 8-Rank or 16-Rank products, and Netlist cannot

16 do so now in an effort to avoid summary judgment." Id.

17        On May 5, 2022, an order issued denying Google's motion to strike claim 16 and

18 granting summary judgment in favor of Netlist on Google's defense of absolute intervening

19 rights as to that claim ("May 5 Order"). Dkt. 258. The order granted summary judgment in

20 favor of Google on its defense of absolute intervening rights as to all asserted claims but claim

21 16. Regarding the accused products, the order stated: "Insofar as Google has withheld

22 [information on 8-Rank and 16-Rank DIMMs], Netlist should seek resolution of this issue

23 before the magistrate judge assigned for discovery. At present, however, Netlist has only

24 accused the five categories of 4-Rank DIMMs addressed in Google's motion. Google need not

25 address products not presently at issue." Id. at 36.

26        Shortly thereafter, on May 17, 2022, Netlist filed the instant motion for leave to amend

27 its infringement contentions further. Dkt. 269. Its ostensible justification is to clarify its

28 infringement contentions to make clear it accuses Google's 8- and 16-rank DDR4 DIMMs.

**B.** **LEGAL STANDARD**

Patent Local Rule 3-1 requires that a party claiming patent infringement serve a "Disclosure of Asserted Claims and Infringement Contentions" within 14 days of the initial case management conference. Rule 3-1 includes subparts requiring, *inter alia*, the disclosure of each claim of the patent allegedly infringed; for each claim alleged, specific infringement contentions; and the priority date to which each claim is entitled. See also O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1359 (Fed. Cir. 2006) (the local patent rules "require parties to state early in the litigation and with specificity their contentions with respect to infringement and invalidity"). The purpose of these rules "is to ensure early crystallization of the parties' theories, and specifically, to place the burden on the plaintiff to quickly decide on and disclose the contours of its case." OpenTV, Inc. v. Apple, Inc., No. 15-CV-02008-EJD (NC), 2016 WL 3196643, at *3 (N.D. Cal. June 9, 2016).

The Patent Local Rules seek to "balance the right to develop new information in discovery with the need for certainty as to the legal theories." O2 Micro, 467 F.3d at 1366. Accordingly, amendment of infringement contentions "may be made only by order of the Court upon a timely showing of good cause." PLR 3-6; see also O2 Micro, 467 F.3d at 1366 (affirming validity of patent rule that requires early disclosure of infringement contentions and good cause to amend the same); Verinata Health, Inc. v. Ariosa Diagnostics, Inc., 236 F. Supp. 3d 110, 1113 (N.D. Cal. 2017) (noting that, in contrast to the more liberal standard for amending pleadings, the standard to amend claim charts is decidedly conservative, and designed to prevent the "shifting sands" approach to claim construction). "In determining whether good cause exists, courts consider (1) whether the moving party was diligent in moving to amend its contentions and (2) whether the non-moving party would suffer prejudice if leave to amend were granted." Koninklijke Philips N.V. v. Acer Inc., No. 18-CV-01885-HSG, 2019 WL 652868, at *1 (N.D. Cal. Feb. 15, 2019).

The party moving to amend bears the burden of demonstrating diligence, both in discovering the basis for the amendment and in seeking leave to amend once that basis has been discovered. Verinata Health, 236 F. Supp. 3d at 1113. If the moving party satisfies its

1   burden, the Court must then consider prejudice to the opposing party in determining whether to

2   grant leave to amend. Advanced Micro Devices, Inc. v. LG Elecs., Inc., No. 14-CV-01012-SI,

3   2017 WL 732896, at *2 (N.D. Cal. Feb. 24, 2017). Prejudice is typically found when

4   amendment stands to disrupt the case schedule or other court orders. Id. (citing Karl Storz

5   Endoscopy-Am. V. Stryker Corp., No. 14-0876-RS (JSC), 2016 WL 7386136, at *8 (N.D. Cal.

6   Dec. 21, 2016)). "'Courts have allowed amendments when the movant made an honest

7   mistake, the request to amend did not appear to be motivated by gamesmanship, or where there

8   was still ample time left in discovery.'" Id. (quoting Karl Storz, 2016 WL 7386136, at *8).

9           C.      DISCUSSION

10          Netlist moves to amend its infringement contentions to include 8- and 16-rank DIMMs,

11  arguing that the proposed amendment is supported by good cause. The first inquiry in the good

12  cause analysis is whether Netlist acted with diligence in pursuing this amendment. In arguing

13  it has acted with diligence, Netlist vacillates between a) asserting the Amended Disclosure,

14  filed in June 2021, already encompasses 8- and 16-rank DIMMs, and b) attempting to

15  demonstrate that events subsequent to June 2021 justify further amendment of its infringement

16  contentions. As discussed below, these arguments prove uncompelling.

17          Netlist relies on PLR 3-6(c), which provides that, absent undue prejudice to the non-

18  moving party, a finding of good cause may be supported by the "[r]ecent discovery of

19  nonpublic information about the Accused Instrumentality which was not discovered, despite

20  diligent efforts, before the service of the Infringement Contentions." Google disputes that

21  Netlist required nonpublic information to accuse 8- or 16-rank DIMMs in light of the fact that

22  Netlist's proposed amendments cite exclusively to public materials (e.g., certain JEDEC

23  standards) that were available as of June 2021, when the operative Amended Disclosure was

24  served. As noted by Google, "the connection between the proposed amendments and the

25  newly discovered evidence" is "critical to [the diligence] inquiry." Finjan, Inc. v. SonicWall,

26  Inc., No. 17-cv-04467-BLF (VKD), 2020 WL 1139641, at *4 (N.D. Cal. Mar. 9, 2020)

27  (denying motion for leave to amend infringement contentions where the plaintiff failed to tie

28  any information belatedly produced by the defendant to the proposed amended contentions,

1    which were supported entirely with citations to previously available materials).  Because

2    Netlist's newly proposed infringement contentions are supported entirely by citations to the

3    JEDEC standards, it appears Netlist could have accused 8- and 16-rank DIMMS in June 2021.

4    Indeed, this argument is bolstered by Netlist's contention that the Amended Disclosure *already*

5    *accuses* (or at least that Netlist intended it to accuse) 8- and 16-rank DIMMs.

6          Even assuming discovery provided by Google was needed to accuse 8- and 16-rank

7    DIMMs—if only on the premise that it confirmed Google's use of such memory modules—

8    Netlist faces another obstacle in demonstrating diligence.  By Netlist's own account, it obtained

9    the necessary discovery as early as July 2021 and in no event later than October 12, 2021.  Yet

10   Netlist did not file the instant motion for leave to amend until May 17, 2022, some seven

11   months later.  "[Netlist] bears the burden of establishing that it was diligent in seeking

12   amendment of its contentions in these circumstances."  Finjan, 2020 WL 1139641, at *4

13   (denying motion for leave to amend infringement contentions filed eight months after

14   discovery of new evidence).  It fails to do so.

15         Netlist argues it's motion to amend is timely because discovery was stayed pending the

16   outcome of the parties' motions for summary judgment on the issue of intervening rights and

17   Google's motion to strike claim 16.  According to Netlist, the May 5 Order effectively lifted

18   that stay and Netlist filed its motion for leave to amend shortly thereafter.  This argument is

19   unsupported.  Although discovery on issues other than intervening rights was stayed, discovery

20   regarding the memory modules used by Google was not only allowed to proceed, but critical to

21   Netlist's service of amended infringement contentions and resolution of the aforesaid motions.

22   The discovery upon which Netlist now relies obviously was completed.  Moreover, the stay did

23   not extend to prevent the filing of motions.  In fact, Google filed a motion to amend its answer

24   and counterclaims in September 2021, during the pendency of the discovery stay, because

25   Netlist would not agree to allow Google to delay filing the motion until after the May 5 Order

26   issued.[1]  In short, the discovery stay in no way prevented Netlist from filing the instant motion.

27

28         [1] Netlist also filed, and then later withdrew, a motion to transfer.  See Dkt. 224.

- 7 -

Netlist appears to concede as much when it states that the instant motion was filed, not in response to the lifting of the discovery stay, but rather, in response to the finding in the May 5 Order that Netlist presently accuses only 4-Rank DIMMs. See Mot. at 1 ("In light of this passage from the opinion, and in an excess of caution, Netlist files this motion to amend its infringement contentions to resolve any dispute on this issue.").

Anticipating the argument that it should have accused 8- and 16-rank DIMMs in the operative Amended Disclosure or, alternatively, in July 2021, when it first became aware of Google's use of such products, Netlist offers two rebuttals. First, Netlist argues the Amended Disclosure is not limited to 4-rank DIMMs. Mot. at 8. In support of this argument, Netlist relies on language in the Amended Disclosure describing the memory modules relevant to claim 16 (i.e., DDR4 SDRAM RDIMMs, LRDIMMs, and NVDIMM), with particular emphasis on the language "and products that operate in a substantially similar manner." Id. Tellingly, Netlist omits the language directly preceding that portion of the Amended Disclosure, which states: "All the Accused Instrumentalities constitute '4-Rank Fully-Buffered Dual In-Line Memory Modules' as that term is used in the Complaint." Dkt. 288-3 at 1-2. Thus, it cannot reasonably be asserted that the Amended Disclosure already encompasses 8- and 16-rank DIMMs.

Cognizant of the fact that the May 5 Order found only 4-rank DIMMs accused in the Amended Disclosure, Netlist falls back on the assertion that, at a minimum, it "reasonably believed that 4-rank, 8-rank and 16-rank DIMMs fell within the scope of its definition of the accused instrumentalities, until this Court's May 5, 2022 Order stated otherwise." Mot. at 8. This assertion is "not credible." Finjan, 2020 WL 1139641, at *3 (rejecting patentee's assertion that it could not have known of the need to seek leave to amend until a court order made clear that the infringement contentions at issue were "new" and not merely clarifying). Even if Netlist initially operated under that misapprehension, however, it was notified no later than August 30, 2021, that Google deemed the accused instrumentalities to be limited to 4-rank DIMMs. Netlist failed to seek resolution of that dispute for nearly nine months. This does not constitute diligence. See Vasudevan Software, Inc. v. Microstrategy, Inc., No. C 11-06637 RS,

1    2012 WL 12920633, at *4 (N.D. Cal. Nov. 21, 2012) (finding lack of diligence where, even if

2    patentee had not known its infringement contentions were incomplete when it served them,

3    accused infringer raised the issue more than six months before the motion to amend was filed);

4    Speedtrack, Inc. v. Endeca Techs., Inc., 524 F. App'x 651, 659 (Fed. Cir. 2013) (affirming

5    denial of leave to amend where, "[r]ather than acting diligently," patentee waited six months to

6    move for leave to amend after being put on notice of the issue by accused infringer).

7          Lastly, Netlist asserts that it "repeatedly made clear to Google in correspondence that its

8    contentions encompassed 8-rank and 16-rank DIMMs." Mot. at 9. Although this argument

9    might bear on whether Google would suffer prejudice—a question that need not be reached

10    absent a showing of diligence by Netlist—it does not bear on the diligence inquiry. Finjan,

11    2020 WL 1139641, at *5 (rejecting assertion that the patentee's failure to seek leave to amend

12    earlier should be excused because the accused infringer "had the benefit" of the proposed

13    contentions for some time) (citing O2 Micro, 467 F.3d at 1368 (affirming district court's denial

14    of leave to amend infringement contentions upon finding lack of diligence without reaching

15    question of prejudice)). As noted in Finjan, one of the principal objectives of the Patent Local

16    Rules is to achieve certainty as to the parties' theories of infringement and invalidity early in

17    the case. Id. Netlist's conduct regarding the proposed amendment contravenes that objective.

18    Although the good cause standard does not require "perfect diligence," Facebook, Inc. v.

19    BlackBerry Ltd., No. 18-cv-05434-JSW (JSC), 2020 WL 864934, at *5 (N.D. Cal. Feb. 13,

20    2020), report and recommendation adopted, 2020 WL 9422395 (N.D. Cal. Mar. 30, 2020), it

21    requires greater diligence than Netlist exercised here. Leave to amend is therefore denied.

22   **III.**    **MOTION TO STAY**

23       **A.**    **RELEVANT BACKGROUND**

24           **1.**      **Infringement Contentions**

25      Netlist's Amended Disclosure of Asserted Claims and Infringement Contentions

26    identifies the following accused instrumentalities for the asserted claims:

27          •   Claim 16: 4-Rank DDR4 SDRAM RDIMMs, LRDIMMs, NVDIMMs, and

28             "products that operate in a substantially similar manner."

- • All other claims: 4-Rank DDR3 SDRAM LRDIMMs, 4-Rank DDR2 SDRAM FBDIMMs, and "products that operate in a substantially similar manner."

Dkt. 288-3 at 2.

As stated above, however, the May 5 Order resolved the issue of absolute intervening rights and, in doing so, substantially streamlined the action. Specifically, the order found that, as to all asserted claims but claim 16, the accused products purchased and/or used prior to February 8, 2021 are subject to absolute intervening rights. The order also found that Google stopped using the accused DDR2 FBDIMMs in 2017, and that it had never purchased or used the accused DDR3 LRDIMMs or DDR4 NVDIMMs. Thus, as a result, the accused instrumentalities have been narrowed to the DDR4 RDIMMs and LRDIMMs.

Google has produced discovery showing that it purchases the accused DDR4 RDIMMs and LRDIMMs ███████████████████████████████████████ ███████████████.[2] See Dkt. 290-8, 290-10, 290-12. Google does not ██████████ ████████████████████████████████████████████████████████████. Id.

**2.** ██████████

███████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
███████████████████████████████████████████

---

[2] In certain instances, ████████████████████████████████████████████████████████████████████████.

1                        **3.        Samsung**

2        On November 12, 2015, Netlist and Samsung entered into a Joint Development and

3   License Agreement.  Dkt. 205-18.  On May 28, 2020, Netlist filed a complaint alleging

4   Samsung had breached that license agreement.  Netlist Inc. v. Samsung Elecs. Co., Ltd., No.

5   8:20-cv-00993-JAK (C.D. Cal.), Dkt. 1.  Netlist filed an amended complaint in that action on

6   August 31, 2020, further seeking declaratory relief that it had properly terminated the

7   agreement and that "all licenses and other rights previously granted to Samsung had ceased on

8   June 20, 2020."  Id., Dkt. 23 at 7.  On October 13, 2021, the district court granted summary

9   judgment in favor of Netlist, finding, *inter alia*, that Samsung had breached, and that Netlist

10  had properly terminated, the agreement.  Id., Dkt. 186 at 22.  Judgement was entered on

11  February 15, 2022, and Samsung filed a notice of appeal on February 25, 2022.  Id., Dkt. 306,

12  309.  The appeal has been docketed, with briefing set to close on September 12, 2022.  Netlist

13  Inc. v. Samsung Elecs. Co., Ltd., No. 22-55247 (9th Cir.), Dkt. 1.

14        On October 15, 2021, Samsung filed a complaint against Netlist, seeking, *inter alia*,

15  declaratory judgment of non-infringement of the '912 patent, as well as six other patents.

16  Samsung Elecs. Co., Ltd. v. Netlist, Inc., No. 1:21-cv-01453-RGA (D. Del.), Dkt. 1.  In the

17  first amended complaint filed January 18, 2022, Samsung alleges that Netlist has accused

18  Google of infringing the '912 patent through its use of Samsung-supplied DDR4 LRDIMM and

19  RDIMM memory modules, including modules incorporated into servers obtained from Lenovo.

20  Id., Dkt. 14 ¶¶ 14, 44.  As the supplier of those modules, Samsung seeks a declaratory

21  judgment that the modules do not infringe the '912 patent, including claim 16.  Id. ¶¶ 176-189.

22  The first amended complaint also includes claims for a declaratory judgment of

23  unenforceability for the '912 patent due to inequitable conduct and unclean hands and for

24  breach of contract due to Netlist's failure to license the patent on reasonable and non-

25  discriminatory terms as required under certain JEDEC policies.  Id. ¶¶ 99-118.  Pending in that

26  action is a motion to dismiss, which seeks, inter alia, to dismiss Samsung's claim as to the '912

27  patent for lack of subject matter jurisdiction.  Id., Dkt 24.  That motion is fully briefed.

28

On February 17, 2022, Samsung also filed a petition for *inter partes* review ("IPR"), asking the PTO to invalidate claim 16 of the '912 patent on three separate grounds. Dkt. 292-8. The PTO will decide whether to institute IPR proceedings by October 21, 2022.

### B.   LEGAL STANDARD

It is well settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Whether to issue a stay in a case is based on the court's sound discretion and basic principles of equity, fairness, efficiency, and conservation of judicial resources. Filtrol Corp. v. Kelleher, 467 F.2d 242, 244 (9th Cir. 1972). Competing interests to be weighed include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Id.

Another consideration may be at issue in patent litigation. "When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take[s] precedence." In re Nintendo of Am., Inc., 756 F.3d 1363, 1365 (Fed. Cir. 2014) (citing Spread Spectrum Screening LLC v. Eastman Kodak Co., 657 F.3d 1439, 1357 (Fed. Cir. 2011); Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990)). This so-called "customer-suit" exception to the "first-to-file" rule "exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." Id. (quoting Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737-38 (1st Cir. 1997)).

"[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy[.]" Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys., 458 F.3d 1335, 1343 (Fed. Cir. 2006). In evaluating the customer-suit exception, the primary question is whether the issues and parties are such that disposition of the manufacturer's declaratory judgment action will dispose of the major issues in the infringement action against

its customers.  <u>Katz</u>, 909 F.2d at 1463, 1464.  Although additional issues may remain as to the customers in the infringement suit, their prosecution should be advanced or perhaps mooted by resolution of the issues litigated in the declaratory judgment action.  <u>Id.</u>

### C.  DISCUSSION

As stated above, Google argues that there can be no liability for the purchase or use of accused DIMMs ████████████████████████████████.  Invoking the customer-suit exception, Google thus moves to stay this action pending resolution of Samsung's declaratory judgment action.  Google argues that a stay will simplify the remaining issues in this case, if not resolve it completely.  In particular, the declaratory judgment action will resolve the key issue before this Court: whether the accused DIMMs that Samsung supplies to Google infringe claim 16 of the '912 patent.  Google asserts that Samsung is in the best position to litigate the issue of non-infringement because it designs, manufactures, and supplies the accused DIMMs.  According to Google, a stay of this action will achieve further efficiencies through the avoidance of duplicative discovery, potentially inconsistent rulings, and double recovery.[3]

#### 1.  DataTern

As a threshold matter, Netlist eschews the prevailing authorities regarding the customer suit doctrine, arguing that "[t]he controlling Federal Circuit precedent on how to approach the Samsung declaratory judgment action" is <u>Microsoft Corp. v. DataTern, Inc.</u>, 755 F.3d 899 (Fed. Cir. 2014).  Opp'n at 13, Dkt. 301.  A brief overview of <u>DataTern</u> is helpful.

DataTern sued several customers of Microsoft and SAP (collectively "Suppliers"), alleging infringement of two patents based on the customers' use of software provided by Suppliers.  Suppliers thereafter filed separate, and later consolidated, noninfringement and invalidity declaratory judgment actions against DataTern.  DataTern then moved to dismiss the declaratory relief action for lack of subject matter jurisdiction.  The Federal Circuit held that

---

[3] In passing, Google argues that a stay also will simplify this case by allowing for resolution of the appeal in the Netlist-Samsung licensing dispute and by allowing the PTO to act on Samsung's petition to institute IPR proceedings to invalidate claim 16.  These arguments are not sufficiently developed for consideration as an independent basis for a stay.

1    the district court had jurisdiction over Suppliers' challenge to one of the patents, as well as

2    SAP's challenge, but not Microsoft's challenge, to the second patent.

3          Importantly, the Federal Circuit noted there was no assertion of a case or controversy

4    between DataTern and Suppliers on direct infringement.  As to the challenges for which

5    jurisdiction was held to exist, however, there was a case or controversy as to Suppliers' liability

6    for induced or contributory infringement based on the allegation of direct infringement against

7    their customers for the sale or use of their software.  In such cases, standing to bring a

8    declaratory judgment action does not arise solely because a supplier's customer is sued for

9    direct infringement.  Rather, the elements of a claim of induced infringement must be analyzed

10   to determine whether there is an implied assertion of inducement.  As to Microsoft's challenge

11   against the second patent, the allegation of direct infringement against its customers did not

12   give rise to such an assertion.  The Federal Circuit noted that, simply selling a product *capable*

13   of being used in an infringing manner is not sufficient to create a substantial controversy

14   regarding inducement.

15         Lastly (in the portion of the opinion invoked by Netlist), the Federal Circuit noted that,

16   if Suppliers had an obligation to indemnify their customers, that would confer standing to bring

17   suit.  Because there was no obligation, however, customers' mere requests for indemnification,

18   which Suppliers conceded were not valid, did not confer standing.  In *dicta*, the Federal Circuit

19   further noted that, even if there were an obligation to indemnify a customer, it would "not

20   justify" what Suppliers sought—i.e., "a declaration from a New York court on behalf of

21   customers they must indemnify where a suit against these very same customers on all the same

22   issues was *already* underway in a Texas court."  Id. at 904.  "By agreeing to indemnify any one

23   of their customers, Microsoft could defend its customers and efficiently and effectively

24   participate in *the Texas action*."  Id.

25         According to Netlist, DataTern requires that Samsung appear in this Court to defend

26   any legitimate interest it may have as to the '912 patent.  Netlist asserts the operative complaint

27   in the Samsung declaratory judgment action pleads the existence of subject matter jurisdiction

28   over its challenge regarding the '912 patent based on Google and Lenovo's indemnification

- 14 -

1   requests to Samsung for this action.  Netlist thus argues that Samsung's declaratory judgment

2   action is "improper," Opp'n at 14, and that Google is seeking a stay of this action "based on a

3   case in District of Delaware that should not even exist," id. at 1 (noting that the district court in

4   the declaratory judgment action has not yet ruled on a pending motion to dismiss the challenge

5   to the '912 patent).  For the reasons discussed below, such a finding in this action would be

6   inappropriate and, based on the record presented, is unsupported.

7         Contrary to Netlist's assertion, DataTern is not controlling here.  DataTern concerns the

8   case or controversy requirement for bringing a noninfringement or invalidity declaratory

9   judgment action against a patentee.  Whether Samsung has standing to bring a declaratory

10  relief action challenging the '912 patent, and whether it has brought that action in the proper

11  forum, are matters to be decided by the District of Delaware.  Furthermore, even if it were not

12  improper for this Court to make such a determination, Netlist has not made the requisite

13  showing based on the record presented.[4]  To be sure, Samsung alleges in its declaratory

14  judgment action that Google and Lenovo have made indemnification requests based on

15  Netlist's prosecution of this action.  Dkt. 301-4 ¶¶ 14, 43-44.  However, those indemnification

16  requests are only one piece of the puzzle.

17        Samsung sets forth numerous allegations bearing on whether subject matter jurisdiction

18  exists in the declaratory judgment action (e.g., that Netlist terminated Samsung's prior license

19  to its suite of patents, that Netlist asserts infringement of the '912 patent by JEDEC standard-

20  compliant DDR4 memory modules, etc.).  These allegations distinguish the Samsung

21  declaratory relief action from DataTern, where the Federal Circuit specifically noted that

22  DataTern had no history with Suppliers and had never approached them regarding a license.

23  DataTern, 755 F.3d at 903.  Here, Netlist terminated Samsung's license covering the '912

24  patent, and the two parties were already engaged in litigation.  DataTern also alleged

25  infringement of certain method claims against Suppliers' customers based on the use of

26

27        [4] Netlist relies on the operative pleading in the declaratory judgment action to make its
    argument.  Notably, Samsung is not before this Court, and Google is not necessarily in a
28  position to argue Samsung's cause.

software that was *capable* of being used in an infringing manner. <u>Id.</u> at 903-04. Here, Netlist alleges that JEDEC standard-compliant DIMMs supplied by Samsung infringe an apparatus claim of the '912 patent. In view of these distinctions, a case or controversy may exist between Netlist and Samsung on direct, contributory, and/or induced infringement of the '912 patent.

As stated above, ultimately this is a matter to be resolved by the District of Delaware. For present purposes, however, it is sufficient to conclude that the record before this Court does not support a finding that the declaratory judgment action is "improper" or "should not even exist."

### 2. Customer Suit Doctrine

Turning to the customer suit exception, Google fails to demonstrate that a stay pending resolution of the Samsung declaratory judgment action is warranted at this juncture. However, a shorter stay of 90 days is justified. Netlist opposes a stay on the grounds that "(1) it would significantly prejudice Netlist; (2) this Court has invested substantial judicial resources in this case which would be wasted; and (3) the stay will not simplify the issues in question and the trial of this case." Opp'n at 15. The first two grounds are not entirely compelling. The resources expended to date were not wasted, but rather, advanced this action. In particular, the May 5 Order substantially altered the landscape of the case by allowing the newly asserted claim 16 to go forward and eliminating liability as to all other claims.

Regarding prejudice, certain of Netlist's arguments (i.e., that it may be unable to collect damages against Samsung) are speculative, while others (i.e., that the allegation Google willfully infringed is unique to this case) appear overstated. Samsung's declaratory judgment action need not dispose of *every* issue for a stay to advance this case, <u>see</u> <u>Katz</u>, 909 F.2d at 1464, and Netlist does not show that delay in resolving the issue of willfulness itself would be prejudicial. The issue of prejudice need not be resolved definitively at this time, however, because the current procedural posture militates against the lengthy stay requested by Google.

1    Specifically, given the pending motion to dismiss, questions remain as to whether Samsung's

2    declaratory judgment action will resolve the major issues in this case.[5]

3    　　　　The above notwithstanding, Google's argument that Samsung's declaratory judgment

4    action *has the potential* to streamline this action is not without merit. Indeed, as currently pled,

5    that action will address the key issues underlying this action, i.e., whether the DDR4 DIMMs

6    Google obtains from Samsung infringe the '912 patent. Additionally, trying both actions might

7    result in inefficiencies in conducting discovery (e.g., third-party discovery will need to be taken

8    from Samsung in this action) and use of judicial resources. It also raises the specter of

9    inconsistent results. Given the stage of the Samsung declaratory judgment action and in view

10   of the foregoing, a brief stay of 90 days is justified and not unduly prejudicial. Netlist's

11   concerns about a stay—following the prior stay pending resolution of the IPR proceedings

12   instituted by Google—are not taken lightly. It should be noted, however, that the only claim

13   now at issue in this action, claim 16, was accused for the first time in 2021, after the prior stay

14   was lifted. Thus, the history of the action prior to 2021 is of limited relevance at this juncture.

15   **IV.** 　**CONCLUSION**

16   　　　　For the reasons set forth above, it is hereby ordered that:

17   　　　1. 　　Netlist's motion for leave to amend its infringement contentions is denied.

18   　　　2. 　　Google's motion to stay this action is granted in part and the action shall be

19   stayed for a period of 90 days. The stay will expire at that time unless a motion to extend the

20   same is filed prior to its expiration.

21

22   　　　[5] In addition to arguing that Samsung's action is improper—a matter properly decided
     by the District of Delaware—Netlist argues that the declaratory relief action will not resolve
23   the issues in this case because Samsung is not the only source from which Google obtains the
     accused DDR4 DIMMs. At a minimum, ███████████████████████████████████.
24   Google argues that resolution of this issue is all but a formality because ████████████
     ████████████████████████████████████████████████████. Netlist responds
25   that this defense has yet to be formally resolved. Netlist does not dispute that ███████████
     ████████████, however, and it should be a relatively straightforward matter to resolve the issue
26   of whether ███████████████████████████████████████████████████████████.
     Although this action will be stayed for 90 days, the parties are welcome to meet and confer
27   informally on this issue. Any determination as to whether resolution of the ███████████████
     ██████ militates against the issuance of a longer stay pending resolution of the Samsung
28   declaratory judgment action is deferred at this time.

3.     In light of the stay, the further case management conference scheduled for July

14 is continued to October 27, 2022, at 10:00 a.m.

4.     This order terminates Docket Nos. 269 and 292.

IT IS SO ORDERED.

Dated:   July 13, 2022

_____
Honorable Richard Seeborg
Chief United States District Judge

- 18 -