# Exhibit 8

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG SEMICONDUCTOR, INC. <br><br> Plaintiffs, <br><br> v. <br><br> NETLIST, INC., <br><br> Defendant. | ) ) ) ) ) ) C.A. No. 21-1453-RGA ) ) JURY TRIAL DEMANDED ) ) ) |

## OPENING BRIEF IN SUPPORT OF NETLIST, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (D.I. 14)

Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 N Market St, 12th Floor
Wilmington, Delaware 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Defendant Netlist, Inc.*

Dated:  February 16, 2022

**TABLE OF CONTENTS**

Page

NATURE AND STAGE OF PROCEEDINGS .......................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................... 4

STATEMENT OF FACTS AND ARGUMENT .......................................................................... 5

I.     Counts I-XII Should Be Dismissed for Lack of Subject Matter Jurisdiction .................. 5

      A.     This Court Does Not Have Subject Matter Jurisdiction Because Samsung
           Fails to Show "a Case or Controversy" of Sufficient Immediacy ........................ 5

           1.     Counts I-III: Non-Infringement of the '523, '595, and '218 Patents........ 6

           2.     Count IV: Non-Infringement of the '912 Patent...................................... 7

           3.     Other Litigation Cannot Create Jurisdiction .............................................. 7

           4.     Counts V-VII: Non-Infringement of the Texas Action Patents ............... 8

           5.     Counts VIII-XI: Unenforceability Claims ................................................. 9

           6.     Count XII: Breach of Contract ................................................................. 10

II.    The Court Should Exercise Discretion to Dismiss the Declaratory Judgment
      Claims ........................................................................................................................ 10

      A.     The FAC Interferes with the Jurisdiction of Judge Scarsi ................................. 11

      B.     The FAC Interferes with the Jurisdiction of Judge Seeborg .............................. 12

      C.     Complete Resolution Is Only Possible in the Eastern District ........................... 12

      D.     Claims as to the Texas Patents Are Barred by the First-Filed Rule.................... 14

           1.     The Texas '918 Patent ............................................................................ 14

           2.     The Texas '339 and '506 Patents............................................................. 16

III.   The FAC Fails to State Plausible Claims for Inequitable Conduct and Unclean
      Hands ......................................................................................................................... 17

      A.     The Inequitable Conduct and Unclean Hands Claims as to the '912 Patent
           Fail ................................................................................................................... 18

      B.     Samsung's Inequitable Conduct and Unclean Hands Claims as to the
           Remaining Patents (Counts VIII, IX, XI) Fail................................................... 18

- i -

**Page**

1.       Samsung Fails to Adequately Plead "But-for" Materiality ................... 18

2.       Samsung Fails to Allege Specific Intent to Deceive the PTO ............... 19

IV.    Samsung Fails to State a Claim for Breach of the JEDEC Patent Policies ................... 20

CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acorn Semi, LLC v. Samsung Elecs. Co., Ltd. et al.*,
No. 2:19-cv-347, D.I. 14 (E.D. Tex. Feb. 12, 2020)................................................................13

*Analog Devices, Inc. v. Xilinx, Inc.*,
No. 19-v-2225, 2021 WL 466859 (D. Del. Feb. 9, 2021) ......................................................19

*Anza Tech., Inc. v. Mushkin, Inc.*,
934 F.3d 1359 (Fed. Cir. 2019)....................................................................................15, 16, 17

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds*,
*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ......................................21

*Arbor Global Strategies LLC v. Samsung Elecs. Co., Ltd. et al.*,
No. 2:19-cv-333, D.I. 43 (E.D. Tex. Apr. 27, 2020) .............................................................13

*Benitec Austl., Ltd. v. Nucleonics, Inc.*,
495 F.3d 1340 (Fed. Cir. 2007).................................................................................................6

*Brinkmeier v. BIC Corp.*,
733 F. Supp. 2d 552 (D. Del. 2010)........................................................................................20

*Cisco Sys., Inc. v. Sprint Commc'ns Co., L.P.*,
No. 15-cv-431, 2016 WL 690939 (D. Del. Feb. 19, 2016)......................................................7

*Citizen Elecs. Co. v. Osram GmbH*,
377 F. Supp. 2d 149 (D.D.C. 2005) ..........................................................................................7

*Commc'ns Test Design, Inc. v. Contec, LLC*,
952 F.3d 1356 (Fed. Cir. 2020)...............................................................................................10

*Edmunds Holding Co. v. Autobytel Inc.*,
598 F. Supp. 2d 606 (D. Del. 2009).........................................................................................6

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)..............................................................................17, 18, 19, 20

*Goodman Mfg. Co., L.P. v. Carrier Corp.*,
No. 13-cv-2014, 2014 WL 4954281 (D. Del. Sept. 23, 2014)................................................10

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
541 U.S. 567 (2004)....................................................................................................................9

*Halo Elecs., Inc. v. Bel Fuse Inc.*,
   No. 07-cv-6222, 2008 WL 1991094 (N.D. Cal. May 5, 2008)...............................................15

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
   599 F.3d 1377 (Fed. Cir. 2010)...........................................................................................9

*Kreider Dairy Farms, Inc. v. Glickman*,
   190 F.3d 113 (3d Cir. 1999)...............................................................................................9

*Lannett Co. Inc. v. KV Pharm.*,
   No. 08-cv-338, 2009 WL 10737496 (D. Del. Feb. 4, 2009)....................................................9

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
   800 F.3d 99 (3d Cir. 2015)................................................................................................10

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
   No. 09-cv-80, 2015 WL 2406061 (D. Del. May 18, 2015) ....................................................18

*Merial Ltd. v. Cipla Ltd.*,
   681 F.3d 1283 (Fed. Cir. 2012).........................................................................................14

*Microsoft Corp. v. DataTern, Inc.*,
   755 F.3d 899 (Fed. Cir. 2014)...............................................................................3, 5, 7, 12

*Microsoft Corp. v. SynKloud Techs., LLC*,
   484 F. Supp. 3d 171 (D. Del. 2020)...................................................................................7, 8

*Panavise Prod., Inc., v. Nat'l Prod., Inc.*,
   306 F. App'x 570 (Fed. Cir. 2009) .......................................................................................8

*Robocast, Inc. v. Apple Inc.*,
   39 F. Supp. 3d 552 (D. Del. 2014).....................................................................................18

*Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*,
   550 F.3d 1121 (Fed. Cir. 2008).........................................................................................10

*Serco Servs. Co., L.P. v. Kelley Co., Inc.*,
   51 F.3d 1037 (Fed. Cir. 1995)...........................................................................................13

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)...........................................................................................................10

*SunPower Corp. v. PaneClaw, Inc.*,
   No. 12-cv-1633, 2016 WL 5107029 (D. Del. Sept. 19, 2016)................................................18

*Therasense, Inc. v. Becton*,
   649 F.3d 1276 (Fed. Cir. 2011).........................................................................................20

*Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.,*
   292 F.3d 384 (3d Cir. 2002) ..................................................................... 11

*Woodbolt Distrib., LLC v. Nat. Alternatives Int'l, Inc.*
   No. 11-cv-1266, 2013 WL 247041 (D. Del. Jan. 23, 2013) ............................ 13

**Statutes**

28 U.S.C. § 1367(a) .................................................................................... 10

35 U.S.C. § 271(a) ...................................................................................... 13

**Rules**

Fed. R. Civ. P. 8(c) ..................................................................................... 12

Fed. R. Civ. P. 9(b) ..................................................................................... 18

Fed. R. Civ. P. 12(b)(6) ................................................................................. 5

Fed. R. Civ. P. 13(a) ................................................................................... 11

Fed. R. Civ. P. 15(c)(1)(B) ........................................................................... 14

Fed. R. Civ. P. 15(d) ..................................................................................... 9

## NATURE AND STAGE OF PROCEEDINGS

On October 15, 2021, Plaintiffs Samsung Electronics Co., Ltd. ("SEC") and Samsung Semiconductor, Inc. ("SSI," and collectively, "Samsung") brought this action for declaratory judgment ("Declaratory Judgment Action") against Netlist, Inc. ("Netlist") for an improper purpose: to evade an unfavorable summary judgement ruling from a federal judge in the Central District of California (the "Central District"). The Central District Court found as a matter of law that Samsung materially breached an agreement with Netlist that gave Samsung certain rights to Netlist patents, and that Netlist properly terminated that agreement. D.I. 21-3 (*Netlist, Inc. v. Samsung Elec. Co., Ltd.*, No. 20-cv-993 (C.D. Cal. Oct. 14, 2021) (Scarsi, J.) (Ex. 2)). To affect this strategy, Samsung sought declarations of non-infringement on patents over which there was no immediate controversy properly before this Court. Samsung then appended to these improper claims a state-law claim for breach of contract that directly attempts to subvert Judge Scarsi's ruling in the Central District. Although dramatically different in size, Samsung and Netlist sell competing products to the same potential customers. They are competitors. And this is a suit by an enraged competitor that did not get its way in front of Judge Scarsi and seeks greener pastures.

Netlist and Samsung were parties to a Joint Development License Agreement ("JDLA"). The JDLA involved access to Netlist's newly developed product designs, as well as a long-term product-supply commitment and payment from Samsung. According to Samsung, the JDLA granted Samsung certain rights to Netlist patents. D.I. 14 ¶ 2. On October 14, 2021, Judge Scarsi in the Central District entered a summary judgment order finding that Netlist properly terminated the JDLA after Samsung materially breached the Agreement. D.I. 21-3 at 20–21. Samsung rushed to bring the instant declaratory judgment action *the day after* Judge Scarsi's unfavorable decision. Samsung sought a declaration of non-infringement for four Netlist patents: United States Patent Nos. 10,217,523 ("'523 patent"), 10,474,595 ("'595 patent"), 9,858,218 ("'218 patent"), and

7,619,912 ("'912 patent") (collectively the "Declaratory Judgment Patents").  D.I. 1 at 80–81.  There is no proper legal controversy before this Court on these patents.  The purpose of Samsung's strategy was to append a state law breach-of-contract claim in an attempt to subvert Judge Scarsi's rulings.  On December 20, 2021, Netlist moved to dismiss Samsung's original complaint.  D.I. 10.

On December 20, Netlist also brought a separate patent infringement action in the Eastern District of Texas against SEC, SSI, and an important additional defendant not present here, Samsung Electronics America, Inc. ("SEA").  As between Delaware, the Central District, and Texas, Texas is the only jurisdiction in which both a patent infringement suit against all three Samsung entities is proper and the sole location of semiconductor manufacture for Samsung in the United States.  Netlist alleged infringement of patents that are in entirely different families and directed at different aspects of memory technology from the Declaratory Judgment Patents: U.S. Patent Nos. 10,860,506 ("'506 patent"), 10,949,339 ("'339 patent"), and 11,016,918 ("'918 patent") (collectively the "Texas Action Patents").  D.I. 21-2 (*Netlist v. Samsung*, No. 21-cv-463 (E.D. Tex.) ("Texas Action").

The Declaratory Judgment claims that Samsung used as an excuse to run to this Court are, to state it mildly, wholly improper and a transparent attempt to evade the proper jurisdiction of other Courts.  The '523, '595, and '218 patents were listed in correspondence sent by Netlist associated with the termination of the JDLA ***12 months before*** Samsung filed its original complaint.  If Samsung had a reasonable anticipation of suit on those patents, it should have presented those concerns to Judge Scarsi.  Further, the '912 patent was never the subject of Netlist's communication with Samsung.  Samsung's asserted controversy involving this patent is the alleged indemnification requests made by Google and a Google contractor based on a litigation that has been pending for 13 years in the Northern District of California, where Netlist served

Google with infringement contentions ***4 months before*** Samsung filed its original complaint here. *See Netlist, Inc. v. Google LLC*, No. 09-cv-5718, D.I. 1 (N.D. Cal. Dec. 4, 2009). The Federal Circuit explicitly holds that Samsung's only option for the '912 patent on these facts was to intervene in the lawsuit between Netlist and Google. *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014).

Not coincidentally, Google now claims the Northern District of California case, which has been pending for 13 years, should be stayed pending this instant action. *Google*, No. 09-cv-5718, D.I. 218, at 2 n.1 ("Google notes that Samsung recently filed a declaratory judgment action against Netlist for non-infringement of the '912 Patent. . . . [J]udicial efficiency favors staying this case and allowing Samsung's action to proceed. . . .").

Samsung's legally defective Declaratory Judgment claims are window dressing. The purpose is to allow Samsung to bring a pendant state-law claim—for which there is no diversity jurisdiction—alleging that Netlist is in breach of its obligations to a standards body, JEDEC, by terminating the JDLA:

> Netlist and Samsung dispute whether Samsung has a license to Netlist's patents, including the Patents-in-Suit, under the Agreement. Netlist has taken the position that Samsung's license under the Agreement has been terminated. Yet Netlist has failed to offer Samsung a license to patents allegedly essential to the DDR4 Standards, including the Patents-in-Suit, on RAND terms and conditions.

D.I. 1, ¶ 313.[1] This claim is directed at conduct that was the express subject of the case before Judge Scarsi: the JDLA's termination. D.I. 21-3. On February 15, 2022, the Court entered final judgment confirming that Samsung has no rights in Netlist's patents. Ex. 2 ("Netlist terminated the JDLA pursuant to JDLA § 13.2, and Samsung's licenses and rights under the JDLA have

---

[1] Samsung also brought a series of inequitable conduct claims based on these same patents that are parasitic on the Declaratory Judgment Patents. D.I. 1 at 41–77.

ceased.").

Given Samsung's transparent attempt to evade the negative rulings in Judge Scarsi's court, Netlist moved to dismiss Samsung's original complaint for lack of subject matter jurisdiction and failure to state a claim. D.I. 10. On January 18, 2022, Samsung filed the First Amended Complaint ("FAC"), failing to address the basic jurisdictional defects in its original complaint, but asserting additional declaratory judgment claims as to three Texas Action Patents. D.I. 14.

Samsung's fresh attempt to subvert another district court's authority—this time the Eastern District of Texas—is similarly improper on its face. Samsung's behavior in Texas, however, confirms that litigation tactics are afoot. SEC (a foreign entity) insisted that SEC, SSI, and SEA receive a 90-day extension to respond to Netlist's complaint in the Texas Action. In exchange, all three parties agreed to appear and reserved the right to answer or move to dismiss, but did not reserve the right to use the extension to bring a collateral action in another forum. D.I. 21-4. After receiving the extension, Samsung sought to add the Texas Action Patents here. Simply put, Samsung sought to intentionally delay the Texas Court's progress so that it could play a procedural game with this Court via its FAC.

The Delaware Action is a litigation tactic designed to interfere with the jurisdiction of three different Federal judges: Judge Scarsi, who has now entered final judgment confirming the termination of the JDLA; Judge Seeborg, who is hearing the '912 patent action; and Judge Gilstrap, whose court represents the only forum where SEC, SEA, and SSI can all be sued, where the relevant products were manufactured, and where the '506, '339, and '918 patents were first asserted against Samsung's infringing conduct.

Netlist moves to dismiss the FAC for lack of jurisdiction and failure to state a claim.

## SUMMARY OF ARGUMENT

1. This Court lacks subject matter jurisdiction over this case because Samsung's FAC

cannot show a case or controversy with sufficient immediacy between Netlist and Samsung. The '523, '595, and '218 patents were the subject of correspondence between Netlist and Samsung over a year ago relating to the termination of the JDLA, while the California Action was pending. If Samsung had a good faith, reasonable apprehension of a lawsuit, it should have brought its compulsory counterclaim before Judge Scarsi seeking a declaration of non-infringement. Samsung never did. And Netlist has not sued Samsung based on these patents.

2. This Court does not have jurisdiction over Samsung's claims relating to the '912 patent. Samsung pleads indemnification requests from its customer and the customer's supplier, but this is insufficient to confer subject matter jurisdiction; instead, Samsung's only option is to intervene in the lawsuit between Netlist and Samsung's customer if it owes an indemnification obligation to the customer. *See Microsoft Corp.*, 755 F.3d at 904.

3. Samsung's FAC adding the Texas Action Patents should be dismissed because at the time Samsung filed its original complaint, there was no controversy as to the Texas Action Patents.

4. Samsung's state law claim for breach of contract should be dismissed because this Court has no diversity or supplemental jurisdiction. This claim is logically connected to the enforceability of the JDLA's termination and was a compulsory counterclaim or required affirmative defense that Samsung should have presented before Judge Scarsi in the California Action. Alternatively, these claims should be dismissed under Rule 12(b)(6).

5. The inequitable conduct and unclean hands claims should be dismissed for lack subject matter jurisdiction and under Rule 12(b)(6) because the FAC fails to state a plausible claim.

6. Alternatively, this case should be dismissed by discretion and under the first-filed rule.

## STATEMENT OF FACTS AND ARGUMENT

### I.  Counts I-XII Should Be Dismissed for Lack of Subject Matter Jurisdiction

#### A.  This Court Does Not Have Subject Matter Jurisdiction Because Samsung Fails

to Show "a Case or Controversy" of Sufficient Immediacy

Samsung cannot carry its burden of proving the existence of "a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007).

### 1.    Counts I-III: Non-Infringement of the '523, '595, and '218 Patents

Samsung alleges that on July 15, 2020, Netlist sent a letter terminating any license to Netlist's patents Samsung may have enjoyed under the JDLA.  FAC ¶ 28.  This was 15 months before Samsung filed the original complaint.  Samsung also contends that on October 15, 2020, Netlist identified the '523, '595, and '218 patents as Netlist intellectual property and invited Samsung to engage in "formal licensing discussions."  *Id.* ¶ 31.  This was 12 months before the original complaint was filed.  Netlist has never sued Samsung on these patents.  These facts indicate the lack of substantial controversy of sufficient immediacy here.

Despite Samsung's contention that the JDLA covers the '523, '595, and '218 patents, Samsung did not seek a declaration of non-infringement or counterclaim in the California Action that was ongoing at the time the correspondence was sent.  This fact evidences Samsung's strategic decision to delay this Declaratory Judgment Action, which "cuts against [Samsung's] argument that its alleged controversy with [Netlist] is sufficiently immediate as to require adjudication now." *Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606, 610–11 (D. Del. 2009) (dismissing declaratory judgment because circumstances allegedly supporting plaintiff's declaratory judgment complaint" had been in existence but plaintiff delayed in bringing suit).  Samsung's deliberate "failure to take prompt action in the face of what it claims to be a real threat of an infringement suit" makes clear there is no substantial controversy of sufficient immediacy. *Id.* (citing *Citizen Elecs. Co. v. Osram GmbH*, 377 F. Supp. 2d 149 (D.D.C. 2005)).

### 2. Count IV: Non-Infringement of the '912 Patent

Samsung does not allege that Netlist accused Samsung of infringing the '912 patent. Instead, it relies on Netlist's suit against Google (*Netlist, Inc. v. Google Inc.*, No. 09-cv-05718 (N.D. Cal.) ("Google Action") that has been pending for over a decade as the sole basis for jurisdiction. Specifically, Samsung pleads that declaratory judgment jurisdiction exists because "on July 6, 2021, Google made an indemnification request to SSI," and "on July 19, 2021, Lenovo made an indemnification request to SSI." FAC ¶¶ 43–44 (Lenovo is Google's subcontractor). This claim is legally defective for two reasons. ***First***, Samsung does not claim it has an actual indemnification obligation regarding this patent. *Cisco Sys., Inc. v. Sprint Commc'ns Co., L.P.*, No. 15-cv-431, 2016 WL 690939, at *3 (D. Del. Feb. 19, 2016) ("[The Federal Circuit] specifically rejected the attempt in that case to broaden its precedent by granting standing based on customer requests ***without regard to the merits of such requests***.") (emphasis added); *Microsoft Corp. v. SynKloud Techs., LLC*, 484 F. Supp. 3d 171, 179 (D. Del. 2020) ("A customer request to indemnify against patent infringement does not create subject matter jurisdiction."). ***Second***, if Samsung did have an indemnification obligation, the proper course of action is for Samsung to intervene in the proceeding before Judge Seeborg. As the Federal Circuit previously held:

> Importantly, even if there were such an obligation—to indemnify a customer already sued by the patentee in Texas—it would not justify what Appellees seek here. A case has already been filed against these customers in the Eastern District of Texas. Appellees cannot seek a declaration from a New York court on behalf of customers they must indemnify where a suit against these very same customers on all the same issues was *already* underway in a Texas court. . . . By agreeing to indemnify any one of their customers, Microsoft could defend its customers and efficiently and effectively participate in *the Texas action.*

*Microsoft*, 755 F.3d at 904 (emphasis in original) (citation omitted).

### 3. Other Litigation Cannot Create Jurisdiction

Samsung's FAC discusses Netlist's litigation against Micron Technology, Inc. ("Micron"). FAC ¶¶ 17–18; *Netlist, Inc. v. Micron Tech., Inc.*, No. 21-cv-430 (W.D. Tex. Apr. 28, 2021);

*Netlist, Inc. v. Micron Tech., Inc.*, No. 21-cv-431 (W.D. Tex. Apr. 28, 2021). Samsung made no reference to this litigation in its original complaint; its discussion in the FAC should be viewed with a jaundiced eye. Netlist sued Micron on April 28, 2021, long before Samsung filed the original complaint in this Action. *See Panavise Prod., Inc., v. Nat'l Prod., Inc.*, 306 F. App'x 570, 573 (Fed. Cir. 2009) (lawsuits filed more than one year prior to the declaratory judgment action insufficient to support subject matter jurisdiction). Moreover, Samsung does not allege that the Micron Actions involve any patents asserted in the FAC. D.I. 14 ¶¶ 17–18. Mere allegations of a "litigation campaign" do not confer jurisdiction. *SynKloud Techs., LLC*, 484 F. Supp. 3d at 181–83 ("SynKloud's . . . litigation against Microsoft's competitors Adobe and Dropbox [for related patents] is insufficient to create jurisdiction in this case between Microsoft and SynKloud").

Samsung's allegations regarding the *SK Hynix* litigations and *Inphi* litigation suffer from even more extreme defects. Netlist asserted the '523, '595, and '218 patents against SK Hynix on June 15, 2020 and March 17, 2020 respectively, in the Western District of Texas, where Samsung has its manufacturing facilities. FAC ¶ 54. It has now been nearly two years since these assertions, and Netlist has still not sued Samsung for these patents. There is no immediacy. *Panavise*, 306 F. App'x at 573; *supra* at 6. The same holds for the *Inphi* suit regarding the '912 patent, which was asserted 12 years ago in the Central District. *Netlist Inc. v. Inphi Corp.*, No. 9-cv-6900, D.I. 15 (C.D. Cal. Dec. 23, 2009). Samsung sat silent for over a decade. Moreover, Inphi does not make memory modules like Samsung. *Id.* ¶ 8.

### 4.    Counts V-VII: Non-Infringement of the Texas Action Patents

"[J]urisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004). "[L]ater events may not create jurisdiction where none existed at the time of filing of the complaint." *Lannett Co. Inc. v. KV Pharm.*, No. 08-cv-338, 2009 WL 10737496, at *5 (D. Del. Feb. 4, 2009). Samsung

does not plead in the FAC that at the time the original complaint was filed there was a controversy regarding the distinct Texas Action Patents.  Therefore, Counts V-VII must be dismissed.

Samsung cannot argue that events occurring after the original complaint, but subsequently memorialized in the FAC, relate back and cure the jurisdictional defects in the original complaint.[2] The Federal Circuit is clear: "unless there was jurisdiction at the filing of the original complaint, jurisdiction could not be carried back to the date of the original filing."  *Innovative Therapies, Inc. v. Kinetic Concepts, Inc*., 599 F.3d 1377, 1384 (Fed. Cir. 2010) (the filing of an infringement suit after a declaratory judgment suit does not create retroactive declaratory judgment jurisdiction: "we agree with the district court that these acts after the filing of ITI's original complaint did not establish that an actual controversy existed at that earlier time.").  Further, Samsung took the position in its Motion for Leave to File the SAC (D.I. 18) that its amended complaints should relate back to the **original complaint**'s filing date of October 15, 2021.  D.I. 19 at 5 ("On January 18, 2022, Samsung filed an amend[ment] to, *inter alia*, include declaratory judgment claims for the three patents asserted in Netlist's Texas complaint. Samsung's claims with respect to those patents relate back to Samsung's original filing.").  If Samsung is attempting to relate its FAC back to its **original complaint**, it must establish jurisdiction at the time of the original complaint.  *See Kreider Dairy Farms, Inc. v. Glickman*, 190 F.3d 113, 121 (3d Cir. 1999) (dismissing amended complaint "that purports to relate back to an original complaint . . . filed on a date upon which the court would have lacked jurisdiction").  It did not, and so the FAC should be dismissed.

### 5.    Counts VIII-XI: Unenforceability Claims

Because Samsung cannot establish jurisdiction for its non-infringement claims, the related inequitable conduct and unclean hands claims must also be dismissed.  *See Goodman Mfg. Co.,*

---

[2] If Samsung did want to supplement its pleading to refer to facts arising after the complaint was file, the proper step was to seek leave under F.R.C.P. 15(d). But that does not relate back either.

*L.P. v. Carrier Corp.*, No. 13-cv-2014, 2014 WL 4954281, at \*3 (D. Del. Sept. 23, 2014).

### 6.   Count XII: Breach of Contract

Because there is no jurisdiction over Samsung's declaratory judgment claims, Samsung's state law claim for breach of contract should also be dismissed.  No diversity jurisdiction exists between the parties in this action—SSI is a California corporation; SEC is a foreign entity; and Netlist is a California resident with its principal place of business located in Irvine, California. D.I. 14 ¶ 5; D.I. 21-2 ¶ 3; *see Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (28 U.S.C. § 1332 provides that "no plaintiff may be a citizen of the same state as any defendant").  Nor can Samsung rely on supplemental jurisdiction.  *Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*, 550 F.3d 1121, 1133 (Fed. Cir. 2008) ("[S]upplemental jurisdiction cannot be exercised when a court does not have original jurisdiction over at least one claim in the suit, 28 U.S.C. § 1367(a).").

Additionally, Samsung has not pled standing to bring a claim on behalf of Google as to an injunction sought against Google in the Google Action.  FAC ¶ 449.  Samsung fails to allege that it suffered an "injury in fact" that is "fairly traceable to" Netlist's injunction sought in the Google Action to show standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  The injunction Netlist sought applies to modules owned by Google and would not apply to modules owned by Samsung.

## II.   <u>The Court Should Exercise Discretion to Dismiss the Declaratory Judgment Claims</u>

This Court should exercise its discretion to decline declaratory judgment jurisdiction in this matter because it is an attempt to interfere with the jurisdiction of three Federal Judges. *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362–63 (Fed. Cir. 2020) ("[D]istrict courts enjoy a 'double dose' of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action *and* discretion when considering and applying the first-to-file rule and its equitable exceptions.") (citation omitted).

- 10 -

## A.    The FAC Interferes with the Jurisdiction of Judge Scarsi

Samsung's original complaint and its FAC make it clear that Samsung filed the Declaratory

Judgment Action in Delaware solely because of its losses before Judge Scarsi.  D.I. 21-3.  Samsung

openly admits this in its pleading:

> Samsung requests this relief ***because Netlist has, without justification, unilaterally
> attempted to terminate a November 2015 Joint Development and License Agreement
> ("Agreement")*** in which Netlist granted Samsung a perpetual, paid-up, worldwide license
> to, among others, the Patents-in-Suit. ***Samsung believes that it is licensed to the Patents-
> in-Suit under the Agreement***.  D.I. 1 ¶ 2; FAC ¶ 2 (emphasis added).

Count VIII of the original complaint (FAC Count XII) brings a claim alleging that the termination

affirmed by Judge Scarsi is ineffective because Samsung's rights in the patents persist:

> Netlist and Samsung dispute whether Samsung has a license to Netlist's patents, including
> the Patents-in-Suit, under the [JDLA]. Netlist has taken the position that Samsung's license
> under the Agreement has been terminated. Yet, while ***Samsung maintains that the
> termination was not effective and that it has a license to the Patents-in-Suit***. In any event,
> Netlist has failed to offer Samsung a license to [its standard essential patents.]. D.I. 1 ¶ 313
> (emphasis added).

The JDLA includes a clause expressly granting each party the right to terminate on material breach.

D.I. 21-3 at 18 (JDLA § 13.2 states "the other Party shall have a right to terminate this Agreement

upon written notice").  The JDLA was terminated on July 15, 2020—***19 months ago***.  Samsung

did not raise an argument before Judge Scarsi that JEDEC policy required Netlist to perpetually

hold open a license offer to its patents to a party who materially and intentionally breached (thus

rendering the termination moot).  If post-termination Samsung felt it had residual rights to Netlist's

patents, that claim is logically connected to the claims before Judge Scarsi and therefore

compulsory.  Fed. R. Civ. P. 13(a); *Transamerica Occidental Life Ins. Co. v. Aviation Office of

Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002) ("For a claim to qualify as a compulsory counterclaim,

there need not be precise identity of issues and facts between the claim and the counterclaim; rather

the relevant inquiry is whether the counterclaim bears a logical relationship to an opposing party's

claim.") (quotation omitted).  And it was a required affirmative defense that needed to have been plead.  Fed. R. Civ. P. 8(c) (listing "license").  The judgement Judge Scarsi entered on February 15, 2022 is unambiguous: Samsung has no rights in the patents covered by the JDLA.   Ex. 2 at 3.

If Samsung had concerns about the implications of Judge Scarsi's grant of summary judgment terminating the JDLA, believed that certain rights in Netlist patents persisted regardless of the summary judgment, or had concerns over the patents that Netlist identified in its termination correspondence over a year ago, Samsung should have properly presented this to Judge Scarsi.

### B.      The FAC Interferes with the Jurisdiction of Judge Seeborg

Netlist and Google have been involved in a lawsuit relating to the '912 patent for 13 years. It was stayed for 10 years while Netlist prevailed twice before the PTAB and finally before the Federal Circuit.   Samsung's declaratory judgment claim of non-infringement is based on indemnification requests received from Google and Google's middleman, Lenovo.  Moreover, its inequitable conduct claim relating to the '912 patent (Count X) is essentially a verbatim copy of a claim Google is attempting to bring before Judge Seeborg.  Ex. 1 at 19–21 (Netlist's Opposition to Google's Motion for Leave to Amend).  On March 3, 2022, Judge Seeborg is holding a hearing as to the legal sufficiency of the claim.  There is strong reason to believe that Samsung brought the claims on the '912 patent as a tool to evade the jurisdiction of the Northern District, because its customer Google is now threatening to use the FAC as a basis to bring a motion to stay before Judge Seeborg.  *Google*, No. 09-cv-5718, D.I. 218, at 2 n.1 ("[J]udicial efficiency favors staying this case and allowing Samsung's action to proceed. . . .").  The Federal Circuit has rejected this exact litigation tactic.  *Microsoft*, 755 F.3d at 904.

### C.      Complete Resolution Is Only Possible in the Eastern District

The Texas Action brings claim against three entities: SEC (a foreign entity), SSI (a California corporation with all fabrication plants in Texas), and SEA (major facilities in Texas).

SEA is not a party to the Declaratory Judgment Complaint and cannot be sued for patent infringement in Delaware—it has no physical location in Delaware and is registered as a New York entity.  D.I. 21-2 ¶ 5.  But SEC, SSI, and SEA can all be sued in Texas where they have an extensive presence.  Texas is the location of all of Samsung's chip manufacturing facilities in the United States.  D.I. 21-13 at 4 ("Austin, Texas, is home to Samsung Electronics' only two semiconductor fabrication plants outside South Korea. The first plant, called Fab 1, was built in 1997 and produces DRAM chips on 200mm wafers; they're used in PCs and computer servers.").  SEC, SEA, and SSI also repeatedly agree to defend patent actions in the Eastern District of Texas.[3]

As part of its pending motion to amend, Samsung attached a self-serving hearsay declaration claiming that SEA "is not involved in the design, development, or manufacture of the Accused Memory Modules" or their "marketing, sale, or importation."  D.I. 20, ¶¶ 5–6.  This ignores the plain terms of 35 U.S.C. § 271(a), which identifies use as an independent act of infringement.  In the Texas Action, Netlist has alleged that SEA infringed by using the infringing products.  D.I. 21-2 ¶ 10.  The record will show that SEA would be unable to run its business without the use of the infringing products.  Discretionary dismissal is proper under these circumstances.  *See Woodbolt Distrib., LLC v. Nat. Alternatives Int'l, Inc.*, No. 11-cv-1266, 2013 WL 247041, at *2 (D. Del. Jan. 23, 2013) (dismissing declaratory judgment case where the plaintiff engaged in forum shopping and where a later-filed action in Texas was poised to resolve all parties' disputes and presented a more convenient forum for both the Texas-based declaratory judgment plaintiff and the California-based defendant); *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039–40 (Fed. Cir. 1995) (upholding district court decision withholding jurisdiction to allow

---

[3] *See, e.g.*, Answer ¶ 10, *Arbor Global Strategies LLC v. Samsung Elecs. Co.*, *Ltd. et al.*, No. 2:19-cv-333, D.I. 43 (E.D. Tex. Apr. 27, 2020) (not contesting venue); Answer ¶ 29, *Acorn Semi, LLC v. Samsung Elecs. Co.*, *Ltd. et al.*, No. 2:19-cv-347, D.I. 14 (E.D. Tex. Feb. 12, 2020) (same).

the later-filed infringement case to proceed at a more convenient forum).

### D. Claims as to the Texas Patents Are Barred by the First-Filed Rule

The first-filed rule "favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). Netlist initiated the Texas Action on December 20, 2021. Samsung filed the FAC on January 18, 2022 to add the Texas Action Patents. The Texas Action is the first-filed as to the Texas Patents because the claims of the Texas Patents do not arise "out of the conduct, transaction, or occurrence set out [] in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

#### 1. The Texas '918 Patent

Titled "Flash-DRAM Hybrid Memory Module," the '918 patent is directed to on-DIMM power management integrated circuits ("PMIC"). D.I. 14-1 at 235 ('918 Patent, claim 1) ("A memory module comprising . . . first [second and third] buck converters configured to provide a first [second and third] regulated voltage having a first [second and third] voltage amplitude[, respectively] . . . [and] a converter circuit configured to provide a fourth regulated voltage having a fourth regulated voltage amplitude"). The on-module PMIC is a unique feature for DDR5 DIMMs, which "boosts power management efficiency and power supply stability." D.I. 21-8 at 6. Earlier memory generations put the power management on the motherboard. D.I. 21-6 at 3. This "marks a radical change in voltage regulation." *Id.* DDR5 DIMMs' motherboard is no longer responsible for voltage regulation because each memory module has a PMIC, which greatly simplifies the motherboard's power distribution.

***First***, the '918 patent and the Declaratory Judgment Patents implicate different memory module products. Samsung's original complaint only asked the Court to declare that Samsung's **_DDR4_** DIMMs did not infringe the Declaratory Judgment Patents. D.I. 1 ¶¶ 92, 102. By contrast, in the Texas Action, Netlist asserted the '918 patent ***only against*** **DDR5** RDIMMs, DDR

- 14 -

LRDIMMs, DDR5 SODIMMs, and DDR5 UDIMMs.  D.I. 21-2 ¶¶ 33, 68.  "[I]t is improbable that allegations regarding different products, involving different patents, would have a common core operative facts."  *Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1372–73 (Fed. Cir. 2019) ("Courts that have addressed the issue of whether newly alleged claims, based on separate patents, relate back to the date of the original complaint, have regarded the presence of newly accused products as a ***substantial factor weighing against the application of the relation back doctrine***.") (emphasis added); *Halo Elecs., Inc. v. Bel Fuse Inc.*, No. 07-cv-6222, 2008 WL 1991094, at *3 (N.D. Cal. May 5, 2008) (no relation back where the newly asserted patent had different titles, addressed different technologies, and covered different products).

*Second*, the '918 patent belongs to a different patent family than the Declaratory Judgment Patents.  They do not share priority to common filings and are not continuations of each other.

*Third*, the '918 patent and Declaratory Judgment Patents implicate different functionalities based on different generations of standard-based DDR memory technologies.  Thus, litigating the '918 patent and the Declaratory Judgment Patents would require knowledge of, and inquiry into, different memory technologies.  The FAC admits that the Delaware Declaratory Judgment Patent and the Texas '918 patent map to entirely different JEDEC specifications, one set for DDR4 and one set for DDR5.

| Declaratory Judgment Patents[4] | Texas '918 Patent |
|---|---|
| '523 patent: JESD82-32 DDR4 Data Buffer Definition.  FAC ¶ 63.<br><br>'595/'218 patents: JESD 82-31 DDR4 Registering Clock Driver Definition. FAC ¶ 70. | JESD 301-1 PMIC for DDR5. FAC ¶ 57.<br><br>JESD 82-511 DDR5 Registering Clock Driver Definition. FAC ¶ 57.<br><br>JESD 79-5 DDR5 SDRAM.  FAC ¶ 57. |

*Fourth,* DDR5 and DDR4 were developed a decade apart.  The JEDEC standards for

---

[4] Because not even Samsung contends its action is the first-filed action regarding the '912 patent before Judge Seeborg, Netlist does not include it in the charts.

DDR4 were published in 2012, whereas the DDR5 SDRAM specification was first published in 2020. D.I. 21-8 at 1. There is no factual overlap between the events leading to the adoption of each distinct standard or Netlist's JEDEC participation, which are the basis of Samsung's unenforceability allegations. *Compare* D.I. 14 ¶ 124 ("Netlist never specifically disclosed the '912 patent in connection with any of the ***DDR4 Standards***") *with* ¶ 130 ("Netlist never specifically disclosed the '918 patent in connection with any of the ***DDR5 Standards***").

***Fifth***, Netlist asserted the '918 patent in Texas against an important additional party not included here: SEA. Only the Texas Action can resolve the patent infringement disputes among Netlist and all the defendants and provide complete relief.

### 2.    The Texas '339 and '506 Patents

The Texas '339 patent is titled "Memory Module With Controlled Byte-Wise Buffers" and discloses a memory module featuring "a plurality of byte-wise buffers controlled by the set of module control signals to actively drive respective byte-wise sections of each data signal associated with the read or write operation between the memory controller and the selected rank." D.I. 14-1 at 153 ('339 Patent). The Texas '506 patent, titled "Memory Module With Timing-Controlled Data Buffering," discloses a memory module featuring a plurality of buffer circuits, where each buffer circuit "includes a delay circuit configured to delay the respective set of data signals by an amount determined based on at least one of the module control signals." D.I. 14-1 at 109 ('506 Patent). Both claim distinct inventions unrelated to the Declaratory Judgment Patents.

***First***, neither the Texas '339 nor the Texas '506 patent is in the same family as the Declaratory Judgment Patents. Instead, the '339 and '506 patents each claims priority to unique, distinct, priority chains different from those of the Declaratory Judgment Patents.

***Second***, Netlist has asserted the '339 and '506 patents against SEA in the Texas Action.

***Third***, the Federal Circuit teaches that one of the factors that weigh against relation back

- 16 -

is when there will need to be "a substantially different evidentiary showing to prove infringement of the claims asserted in the second amended complaint." *Anza*, 934 F.3d at 1371. Here, the patents are directed to distinct aspects of memory module technologies. The Declaratory Judgement '595 and '218 patents describe "a method of establishing a handshake mechanism based on notification signaling" that "can be implemented by adding a new interface (notifying) signal between the MCH [i.e., system memory controller] and the memory subsystem controller," and that this interface "can be an open drain signaling from the memory subsystem controller to the MCH." FAC ¶ 65. Both patents address reliably initializing and communicating to the memory controller the status of memory modules upon initialization. *Id*. The Declaratory Judgement '523 patent "relates to a self-testing memory module for testing a plurality of memory devices mounted thereon." *Id.* ¶ 60. By contrast, the Texas '339 and '506 patents relate to load-reducing data buffers on a DDR4 LRDIMM. D.I. 21-2 ¶ 20 (the '506 patent is directed to memory modules featuring a "buffer circuit [that] includes a delay circuit configured to delay the respective set of data signals by an amount determined based on at least one of the module control signals"); *id.* ¶ 24 (the '339 Patent is directed to memory modules "optimized to reduce the load experienced by a system memory controller via the use of configurable data transmission circuits").

**Fourth**, Samsung's own pleading shows that the Delaware Declaratory Judgment Patents and the Texas '506 and '339 patents relate to entirely distinct portions of specifications.

| Declaratory Judgment Patents | Texas '506 and '339 Patents |
|---|---|
| '523 patent: JESD82-32 [§ 2.1.8.5] DB-to-DRAM Write Delay Training. FAC ¶ 63. | '506 patent: JESD82-32A § 2.14 Read Commands and MPR Override Reads. FAC ¶ 56; D.I. 21-2 ¶¶ 46, 53. |
| '595/'218 patents: JESD82-31 [§2.12] CA Bus Training Modes (Clock-to-CA training). FAC ¶ 70. | '339 patent: JESD79-4C § 4.25.5 Write Burst Operation and § 4.24.2 Read Burst Operation; JESD 21C § 6.1 Signal Groups; and JESD82-32A § 2.13 Write Commands, § 4.61 Logic Diagram, § 10.5 Output Timing Requirements. FAC ¶ 56; D.I. 21-2 ¶¶ 59–63. |

### III.   The FAC Fails to State Plausible Claims for Inequitable Conduct and Unclean Hands

The FAC does not cure the defects in Samsung's original complaint. It fails to plead with particularity: "(1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326–27 (Fed. Cir. 2009) (citing Fed. R. Civ. P. 9(b)).[5]

## A. The Inequitable Conduct and Unclean Hands Claims as to the '912 Patent Fail

Count X is a mirror image of a claim that is the subject of a threshold motion before Judge Seeborg. The claim is legally defective for the same reasons presented to Judge Seeborg. Ex. 1 at 19–21. Samsung's claim is based on Netlist's counsel argument during the '912 patent's reexamination proceeding, which is an insufficient basis to show inequitable conduct. *SunPower Corp. v. PaneClaw, Inc.*, No. 12-cv-1633, 2016 WL 5107029, at *10 (D. Del. Sept. 19, 2016) (denying inequitable conduct claim when the "examiner had the expertise to examine the prior art reference and consider [the patentee's] argument against the rejection"); *Masimo Corp. v. Philips Elec. N. Am. Corp.*, No. 09-cv-80, 2015 WL 2406061, at *12 (D. Del. May 18, 2015) (same).

## B. Samsung's Inequitable Conduct and Unclean Hands Claims as to the Remaining Patents (Counts VIII, IX, XI) Fail

### 1. Samsung Fails to Adequately Plead "But-for" Materiality

The FAC fails to allege facts showing "***but-for***" Netlist's alleged failure to disclose the alleged prior art—Ellsberry, Jeddeloh752, JEDEC documents, and IPR references—the PTO would not have issued the '523, '218, '595, and '506 patents. Instead of showing "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims," *Exergen*, 575 F.3d at 1329–30, Samsung vaguely alleges that the prior art is not cumulative, without any attempt to compare it to any prior

---

[5] Samsung's unclean hands allegations are also insufficient for the same reasons. *Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 570 (D. Del. 2014).

art Netlist had presented before the examiner.  Below are a few examples:

- Ellsberry [the prior art] is material and not cumulative of other art or information before the examiner of the application that issued as the '523 patent.  FAC ¶ 270.  The Patent Office would not have allowed at least one claim of the '523 patent to issue had it been aware of Ellsberry, at least because it would have found a claim obvious over that art, as explained in SK hynix's IPR petition . . .  *Id.* ¶ 271

- Jeddeloh752 is material and not cumulative. . . . The references considered by the examiner did not provide the same disclosure.  *Id.* ¶ 274.  The Patent Office would not have allowed at least one claim of the '523 patent to issue had it been aware of Jeddeloh752, at least because it would have found a claim obvious over that art in combination with Ellsberry, as explained in SK hynix's IPR petition. . . . *Id.* ¶ 275.

*See also* FAC ¶¶ 338, 340, 345, 346, 351, 353, 358–359, 432, 434, 435.

Samsung's inequitable conduct claims must fail because it did not identify "the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record."  *Exergen*, 575 F.3d at 1329; *see also Analog Devices, Inc. v. Xilinx, Inc.*, No. 19-v-2225, 2021 WL 466859, at *2–*3 (D. Del. Feb. 9, 2021) (conclusory assertion that "[b]ut for Mr. Levi's material omission, the USPTO would not have granted one or more claims of the '184 patent" insufficient: "[f]rom these allegations, there is nothing one can infer about ***the contents of the prior art*** before the PTO and whether the Levi Reference fills any gaps therein"). Netlist's arguments during the reexamination are not properly considered for materiality.

### 2.    Samsung Fails to Allege Specific Intent to Deceive the PTO

Despite Samsung's scorched-earth approach to assert that the named Netlist employees or counsel had knowledge of the prior art, Samsung never alleges facts showing their intent to deceive the PTO.  Counts VIII, IX, and XI only regurgitate the same boilerplate, conclusory allegation:

> On information and belief, Hyun Lee specifically intended to deceive the Patent Office into believing that Hyun Lee was the sole inventor of the '218 and '595 patents ['506 patent], and/or that the claims of those patents are otherwise patentable, by withholding [relevant prior art] from the patent examiner during prosecution of the applications that issued as the '218 and '595 patents ['506 patent]. On information and belief, Hyun Lee engaged in this conduct as part of a scheme to monetize Netlist's patents through litigation against the industry.  FAC ¶¶ 341, 354, 360; *see also id.* ¶¶ 272, 276, 436.

- 19 -

Simply showing that "the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO" is not sufficient.  *Therasense, Inc. v. Becton*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).  Samsung fails to "include sufficient allegations of ***underlying facts*** from which a court may reasonably infer" that the named individuals withheld information specifically intending "to deceive the PTO."  *Exergen*, 575 F.3d at 1329 ("The mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct."); *Brinkmeier v. BIC Corp.*, 733 F. Supp. 2d 552, 565 (D. Del. 2010) ("a plaintiff may plead based upon information and belief, but only if the pleading sets forth the specific facts upon which the belief is reasonably based").

## IV.     Samsung Fails to State a Claim for Breach of the JEDEC Patent Policies

Count XII asserts breach of contract based on Netlist's alleged failure to offer Samsung a license to its standard essential patents.  Samsung pleads itself out of the claim by alleging that Netlist provided Samsung a license via the JDLA, and that Netlist asked it to take a license after termination.  FAC ¶¶ 31-32.  The FAC also asserts breach of contract, based on Netlist's separate lawsuit seeking an injunction against Google.  *Id*. ¶¶ 448–50.  Samsung pleads no basis in the JEDEC Patent Policy or Netlist's RAND letters for an obligation not to seek injunctive relief, much less an obligation to refrain from doing so against a third-party.  Samsung assumes a *per se* rule preventing SSO participants from seeking injunctive relief relating to SEPs, which the Federal Circuit has clearly rejected.  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331 (Fed. Cir. 2014), *overruled on other grounds*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).

## CONCLUSION

For the reasons stated above, Samsung's First Amended Complaint cannot cure the defects in its original pleading and should be dismissed, with prejudice and without leave to amend.

Respectfully submitted,

_/s/ Karen E. Keller_
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 N Market St, 12th Floor
Wilmington, Delaware 19801
(302) 298-0700
kkeller@shawkeller.com
Dated:  February 16, 2022           *Attorneys for Defendant Netlist, Inc.*