# EXHIBIT 21

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |  |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:22-cv-203-JRG |
| | ) | |
| MICRON TECHNOLOGY, INC.; | ) | JURY TRIAL DEMANDED |
| MICRON SEMICONDUCTOR | ) | |
| PRODUCTS, INC.; MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF NETLIST, INC.'S OPPOSITION TO
## DEFENDANTS' MOTION TO SEVER AND STAY (Dkt. 28)

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. FACTUAL BACKGROUND ..................................................................................... 2

    A. The EDTX Actions against Samsung and Micron Involve the Same Patents ........................................................................................... 2

    B. The WDTX Actions .................................................................................. 3

    C. WDTX Actions and This Proceeding Represent Separate Causes of Action ...................................................................................................... 3

        1. WDTX Patents and the EDTX I Patents Involve Different Technologies ................................................................................ 3

        2. The WDTX Patents and the EDTX I Patents Cover Different Products .......................................................................... 4

        3. WDTX Patents and EDTX I Patents Require Claim Construction of Different Terms ................................................ 5

III. ARGUMENT ............................................................................................................ 6

    A. The First-to-File Rule Does Not Apply ..................................................... 6

        1. The EDTX Samsung I/Micron I Patents Have Not Been Pled in the Stayed WDTX Actions ................................................ 6

        2. Micron Did Not Plead the Compulsory Counterclaims of Non-Infringement, Invalidity, or Unenforceability in this Action ............ 7

        3. No Substantial Overlap between the WDTX Actions and Micron I ...................................................................................... 7

            a) The '918/'054 Patents (PMIC Family) Cover Different Products and Technologies from Those of the WDTX Patents ................................................................ 8

            b) The '506 Patent Is Distinct from the WDTX Patents .......... 9

            c) Micron Cannot Demonstrate Substantial Overlap ............. 10

        4. Even if the First-to-File Rule Applied, this Action Should Proceed ....................................................................................... 12

            a) A Related Action before this Court Involves the Identical Patents ..................................................................... 12

            b) The WDTX Actions Are Stayed Pending IPRs and Appeals ................................................................................. 14

    B. Micron Cannot Meet the Traditional Standards for a Stay or Sever ........... 14

IV. CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re ASM Int'l, N.V.*,
    774 F. App'x 650 (Fed. Cir. 2019) ....................................................................................8, 11

*Aventis Pharmaceuticals Inc. v. Teva Pharmaceuticals USA Inc.*,
    No. 2:06-CV-469, 2007 WL 2823296 (E.D. Tex. Sept. 27, 2007) ...................................12

*BridgeLux, Inc. v. Cree, Inc.*,
    No. 9;06-cv-240, 2007 WL 9724143 (E.D. Tex. Feb. 5, 2007) .........................................15

*Datamize, Inc. v. Fid. Brokerage Servs., LLC*,
    No. 03-cv-321, 2004 WL 1683171 (E.D. Tex. Apr. 22, 2004) ..........................................11

*DataTreasury Corp. v. First Data Corp.*,
    243 F.Supp.2d 591 (N.D. Tex. 2003) ........................................................................8, 9, 12, 14

*Document Generation Corp. v. Allscripts, LLC*,
    No. 08-CV-479, 2009 WL 2824741 (E.D. Tex. Aug. 27, 2009) ................................. 11, 12

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*,
    No. 16-cv-618, 2017 WL 365398 (E.D. Tex. Jan. 25, 2017)..............................................13

*Halo Elecs., Inc. v. Bel Fuse Inc.*,
    No. 07-cv-6222, 2008 WL 1991094 (N.D. Cal. May 5, 2008) .............................................5

*Harris Corp. v. Huawei Device USA, Inc.*,
    No. 2:18-cv-439, 2019 WL 8135570 (E.D. Tex. June 12, 2019) ........................................15

*Leap Wireless Int'l, Inc. v. MetroPCS Commc'ns, Inc.*,
    No. 06-cv-240, 2007 WL 541428 (E.D. Tex. Feb. 15, 2007)...............................................7

*LifeNet, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
    No. 22-cv-162, 2022 WL 2959715 (E.D. Tex. July 26, 2022) ......................................6, 14

*Mobility Elecs., Inc. v. Am. Power Conversion Corp.*,
    No. 07-cv-83, 2007 WL 9724768 (E.D. Tex. Oct. 10, 2007).......................................2, 13

*Network-1 Sec. Solutions, Inc. v. D-Link Corp.*,
    433 F.Supp.2d 795 (E.D. Tex. 2006)..................................................................................14

*Polymer Indus. Prod. Co. v. Bridgestone/Firestone, Inc.*,
    347 F.3d 935 (Fed. Cir. 2003)........................................................................................7, 12

**Page**

*Rembrandt Wireless Techs., LP v. Apple Inc.*,
No. 19-cv-25, 2019 WL 6344471 (E.D. Tex. Nov. 27, 2019) .............................................. 15

*Salomon S.A. v. Scott USA Ltd. P'ship*,
117 F.R.D. 320 (D. Mass. 1987) ....................................................................................... 15

*SAS Inst. Inc. v. World Programming Ltd.*,
No. 18-cv-295, 2019 WL 8331447 (E.D. Tex. Apr. 4, 2019) ............................................. 15

*SimpleAir Inc. v. Google LLC*,
884 F.3d 1160 (Fed. Cir. 2018) ........................................................................................ 10

*SIPCO, LLC v. Emerson Elec. Co.*,
No. 15-cv-907, 2016 WL 7743496 (E.D. Tex. Jul. 1, 2016) ..................................... 9, 11, 13

*Swimways Corp. v. Zuru, Inc.*,
No. 13-cv-334, 2014 WL 12603190 (E.D. Va. June 6, 2014) ............................................. 7

*In re Telebrands Corp.*,
773 F. App'x 600 (Fed. Cir. 2016) ................................................................................ 6, 11

*Virtual Fleet Mgmt., LLC v. Position Logic, LLC*,
No. 17-cv-14, 2017 WL 10276708 (E.D. Tex. May 17, 2017) ............................................ 8

*Wellogix Tech. Licensing LLC v. Automatic Data Processing, Inc.*,
No. 11-cv-401, 2013 WL 1729606 (E.D. Tex. Mar. 19, 2013) .......................................... 14

**Rules**

Fed. R. Civ. P. 13(a) ............................................................................................................ 7

**Other Authorities**

6 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 1410 (2d ed. 1990) ........................... 7

Netlist's Opposition to Defendants' Motion to Sever and Stay
Case No. 22-cv-203-JRG (E.D.Tex.)

## I.    INTRODUCTION

Netlist has brought mirror-image claims against Samsung[1] and Micron[2] in this Court on U.S. Patent Nos. 10,860,506 ("'506 patent"); 10,949,339 ("'339 patent"); 11,016,918 ("'918 patent"); 11,232,054 ("'054 patent"); 8,787,060 ("'060 patent"); and 9,318,160 ("'160 patent"). Micron wants to peel off four of these patents—'506, '339, '918, and '054 (collectively "EDTX I Patents")—and attach them to an indefinitely stayed proceeding in the WDTX. This Court is the appropriate forum to adjudicate all patents asserted against Samsung and Micron together. The Samsung I action is already at an advanced stage before this Court. The *Markman* hearing is set for November 4, fact discovery closes on December 12, and trial starts on May 1, 2023. As to the Micron case, the Court has provided a tentative schedule setting the *Markman* hearing for July 19, 2023; the fact discovery cut-off for September 5, 2023; and the first day of trial for January 22, 2024. Ex. 19.

Micron's motion contends that two actions that Netlist filed against Micron in the Western District of Texas (WDTX) in April 2021[3] are the first filed actions. But those actions involve a completely different set of patents: U.S. Patent Nos. 8,301,833 ("'833 patent"); 9,824,035 ("'035 patent"); 10,268,608 ("'608 patent"); and 10,489,314 ("'314 patent") (collectively "WDTX Patents"). At Micron's request, the WDTX Actions are stayed indefinitely pending the outcome of IPR proceedings and any appeal to the Federal Circuit. *See* Ex. 1 (order granting opposed motions to stay). In an attempt to evade this Court's jurisdiction, Micron filed a motion to temporarily lift the stay in one of the WDTX Actions (22-cv-136) so that it may seek to amend its counterclaims there to add the EDTX I Patents. The WDTX Court has not granted this motion. Ex. 2 (docket sheet).

The first-to-file rule does not apply here because Micron has not been allowed to add the EDTX I Patents in the WDTX. Micron also fails to demonstrate a substantial overlap between this

---

[1] *Netlist, Inc. v. Samsung Elec. Co., Ltd., et. al.*, No. 21-cv- 463-JRG (E.D. Tex.) ("Samsung I").
[2] *Netlist, Inc. v. Micron Tech., Inc. et. al.*, No. 22-cv-203-JRG (E. D. Tex.) ("Micron I").
[3] *Netlist, Inc. v. Micron Tech., Inc. et. al.*, No. 22-cv-136, 22-cv-134 (W.D. Tex.) ("WDTX Actions").

case and the WDTX Actions. The EDTX I Patents and the WDTX Patents cover different technologies, require construction of different claim terms, involve different products, and are subject to IPR petitions filed by different petitioners at different stages. Further, compelling circumstances exist for this Court to decline the application of the first-to-file rule based on the related Samsung I Action. Having this court preside over both actions involving the same patents will drastically conserve judicial resources and avoid any potential inconsistency. *Mobility Elecs., Inc. v. Am. Power Conversion Corp.*, No. 07-cv-83, 2007 WL 9724768, at *4 (E.D. Tex. Oct. 10, 2007) (a court's "involvement in two related proceedings favors denying [the transfer] motion" under the first-to-file rule because "federal courts will recognize the wisdom of allowing a judge who has familiarity with the subject matter at issue to preside over subsequent litigation").

## II.      FACTUAL BACKGROUND

### A.       The EDTX Actions against Samsung and Micron Involve the Same Patents

In December 2021, Netlist brought a patent infringement action against Samsung Electronics, Co., Ltd. ("SEC") and its subsidiaries Samsung Semiconductor, Inc. ("SSI") and Samsung Electronics America, Inc. ("SEA") in this District asserting the same '506, '339, '918, '054, '060, and '160 patents at issue in Micron I. *Samsung-I*, No. 21-cv-463 (E.D. Tex. Dec. 20, 2021). Netlist asserted these patents against Samsung's DDR4 (LRDIMMs), DDR5 (*e.g.*, RDIMMs, LRDIMMs, SODIMMs, UDIMMs), and high bandwidth memory ("HBM") products. *Id.* The *Markman* hearing for Samsung I is set on November 4, fact discovery closes on December 12, and trial starts on May 1, 2023.

Netlist determined that Micron's DDR4, DDR5, and HBM products infringe the same patents, and brought this Action on June 10, 2022. The DDR4 and DDR5 products in the two suits are substantially similar and Micron is not seeking to sever or delay the HBM patents. Netlist filed Micron I in this Court because Micron is present in this District and the related Samsung I Action is already at an advanced stage. It is thus most efficient to have this Court adjudicate both cases involving

the same patents. Micron does not dispute that venue in this District is proper and convenient.

### B. The WDTX Actions

On April 28, 2021, Netlist filed two actions in the Western District of Texas against Micron on four patents: the '833, '035, '608, and '314 patents. *Netlist, Inc. v. Micron Tech., Inc.*, No. 22-cv-134, 22-cv-136, Dkt. 1. Micron never sought to consolidate the two actions. Micron filed IPR petitions as to each of the WDTX Patents. IPR2022-418 ('833); IPR2022-236 ('035); IPR2022-237 ('608); and IPR2022-00745 & 2022-744 ('314). On April 1, 2022, Micron moved to stay the WDTX Actions pending resolution of these petitions. *WDTX Actions*, Dkt. 59. The court granted Micron's motion to stay on May 11, 2022, which is still in place as of today.[4] Ex. 1 (Order staying the WDTX Actions).

Despite the stay of the case initiated by Micron, on September 2, 2022, Micron moved to temporarily lift the stay and asked for leave to amend its counterclaims to add the EDTX I Patents (together with the patents at issue in Micron II) to one of the WDTX Actions. Ex. 3 (22-cv-136 Dkt. 72, Micron's motion). Micron did not move to lift the stay in the WDTX-134 Action involving the '833 patent, or seek leave to add counterclaims there. The WDTX court has not agreed to lift the stay, much less to grant leave to add the counterclaims.

### C. WDTX Actions and This Proceeding Represent Separate Causes of Action

#### 1. WDTX Patents and the EDTX I Patents Involve Different Technologies

Micron does not dispute that the '339, '060, and '160 patents are not related to any of the WDTX Patents. Although the '918/'054 patents are continuations-in-part of the '833 patent and the '506 patent shares the same disclosures as the '608 and '035 patents, they cover different technologies:

| WDTX Patent | Relevant Technology | EDTX Patent | Relevant Technology |
|---|---|---|---|
| '833 | clock frequencies for different | '918/'054 | on-module voltage regulation for |

---

[4] The USPTO instituted IPRs on the '035 and '833 patents on July 19 and September 1, 2022 respectively, but did not institute IPR as to the '608 patent. No decision has been issued as to the '314 patent. The deadline for USPTO's final written decisions would be July 19 and September 1, 2023.

| WDTX Patent | Relevant Technology | EDTX Patent | Relevant Technology |
|---|---|---|---|
| | operating modes in an NVDIMM system | (CIP of '833) | providing regulated voltages to components on a memory module (applicable to DDR5 DIMMs) |
| '035/ '608 | '035: controlling timing of the respective data and strobe signals on the data paths for transmitting respective data and strobe signals[5] associated with a memory operation<br>'608: delaying a data signal through a data path that corresponds to a data signal line[6] | '506 patent (continuation of '608) | delaying, by a data buffer, a read data strobe signal (used for validating data signals) and using, by data buffer, the delayed read data strobes to sample data passing through the data buffer.[4] The reads strobe signal at issue in the '506 patent is not the same as the strobe signal in '035 patent |
| '314 | regulating the timing of data bursts and data strobe signals sent from a controller to the memory module "at a specified data rate" in response to a command from the host | | |
| | | '339 | timed enablement (and/or disablement) of data paths in data buffers for data transmission through the data buffers[7] |

Dr. Mangione-Smith Decl. ("MS Decl."), ¶¶ 19-30.

### 2. The WDTX Patents and the EDTX I Patents Cover Different Products

Netlist has accused different products for infringement of the EDTX I and WDTX Patents.

| Product | EDTX I Patents | WDTX Patents |
|---|---|---|
| DDR5 SODIMMs, UDIMMs, RDIMMs, LRDIMMs | Yes | No |
| DDR4 NVDIMMs | No | Yes |
| DDR4 LRDIMMs | Yes | Yes |

Micron only pointed out one overlapping product, DDR4 LRDIMMs, but ignored the differences in other product families. Mtn. at 4. As explained by Netlist's expert, Dr. William

---

[5] Data strobe signals are for validating data signals transmitted on adjacent parallel lines. There are different data strobe signals: the ones at issue in the '506 patent are for use by the data buffer to sample read data; and the ones at issue in the 035 patent are for use by the host.

[6] In '035 patent, the recited data paths are for transmitting data and strobe signals, while in the '608, a data path corresponds to a data signal line. Strobe signals are not transmitted on data signal lines.

[7] '060 and '160 patents are not subject to the motion and they relate to HBM products.

Mangione-Smith, a dual in-line memory module ("DIMM") is an assembly of individual memory devices (DRAMs) interconnected with other components (such as a registering clock driver ("RCD"), and data buffers) on a printed circuit board. MS Decl., ¶¶ 10, 12-13. Much like the category "smartphone," DIMMs encompass numerous different designs based on the generation of DRAM on the module (*i.e.*, DDR5, DDR4, etc.) and the module design (*i.e.*, LRDIMM, RDIMM, UDIMM, SODIMM), which in turn affects not only the design of the memory devices themselves but also the types and designs of components on the modules interacting with the memory devices. *Id.* Indeed, when evaluating a similar request from Samsung, Judge Andrews from the District of Delaware expressly rejected an attempt to relate all DIMM patents as substantially similar:

> Technology such as memory modules can be described with varying levels of granularity. Some descriptions are so broad as to be meaningless. Others are so technical that every patent is distinguishable. In this case, I think that Samsung's **characterization of the underlying technology as "computer memory modules" is too broad to support relation back**. As Netlist argues, "under Samsung's theory its original complaint would sweep in every patent that Netlist ever obtains relating to the memory modules."

Ex. 4 at 9-10 (Dkt. 37 in *Samsung Elec. Co., Ltd. v. Netlist, Inc.*, No. 21-cv-1453 (D. Del.)); *see also Halo Elecs., Inc. v. Bel Fuse Inc.*, No. 07-cv-6222, 2008 WL 1991094, at *3 (N.D. Cal. May 5, 2008).

### 3. WDTX Patents and EDTX I Patents Require Claim Construction of Different Terms

As mentioned above, the Samsung I action pending before this Court involves the identical patents asserted against Micron. Samsung and Netlist have submitted the Joint P.R. 4-3 Claim Construction and Prehearing Statement. Ex. 5. Unsurprisingly, given the differences in technology, the claim terms here that require construction are completely different from those terms at issue in the WDTX Actions. Ex. 6 (Ex. A to the joint claim construction statement in the WDTX Actions).

| WDTX | | EDTX | |
|---|---|---|---|
| **Pat** | **Terms** | **Pat** | **Terms** |
| '833 | • "Volatile memory subsystem"<br>• "Non-volatile memory subsystem" | '918/<br>'054 | • "first" / "second" / "third" / "fourth" "regulated voltages"<br>• "first" / "second" / "third" / "fourth" "voltage amplitude" |

| | • "Controller configured to decouple the non-volatile memory subsystem from the volatile memory subsystem in the first mode of operation and to couple the non-volatile memory subsystem to the volatile memory subsystem to the volatile memory subsystem in the second mode of operation." | | • "at least three regulated voltages"<br>• "plurality of regulated voltages"<br>• "dual buck converter"<br>• "pre-regulated input voltage"<br>• "a second plurality of address and control signals" |
|---|---|---|---|
| '035/ '608 | • "Module control device"<br>• "Logic"<br>• "Command processing circuit" | '506 | "[the method further comprising,] before receiving the input C/A signals corresponding to the memory read operation, determining the first predetermined amount based at least on signals received by the first data buffer" |

Thus, litigating the EDTX I Patents in this Court would not result in duplication of the work that may ultimately occur in the WDTX once the stay is lifted.

## III.    ARGUMENT

### A.    The First-to-File Rule Does Not Apply

The first-to-file rule applies "when two cases are the same or very similar," and "efficiency concerns dictate that only one court decide both cases." *In re Telebrands Corp.*, 773 F. App'x 600, 602 (Fed. Cir. 2016). It is a "'discretionary doctrine' based on 'principles of comity and sound judicial administration.'" *LifeNet, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 22-cv-162, 2022 WL 2959715, at *4 (E.D. Tex. July 26, 2022).

#### 1.    The EDTX Samsung I/Micron I Patents Have Not Been Pled in the Stayed WDTX Actions

Netlist did not assert the EDTX I Patents in the WDTX Actions, which are indefinitely stayed at Micron's request and over Netlist's objection. Ex. 1. Although Micron has moved to temporarily lift the stay so it can file an amended answer asserting the six EDTX I Patents as counterclaims, the WDTX court has not granted Micron's request to lift the stay or for leave to amend. *Id.*; Ex. 3; Ex. 2. Thus, the EDTX I Patents are not "filed," let alone "first filed" in the WDTX Action.

### 2. Micron Did Not Plead the Compulsory Counterclaims of Non-Infringement, Invalidity, or Unenforceability in this Action

Micron filed its answer to this Action on August 4, 2022, but chose not to raise any counterclaims for declaratory judgment of noninfringement, invalidity, or unenforceability of the EDTX I Patents. Dkt. 13. These counterclaims are "compulsory" because they arise "out of the transaction or occurrence that is the subject matter of" Netlist's patent infringement claims. Fed. R. Civ. P. 13(a); *see also Leap Wireless Int'l, Inc. v. MetroPCS Commc'ns, Inc.*, No. 06-cv-240, 2007 WL 541428, at *15 (E.D. Tex. Feb. 15, 2007) (defendants' counterclaim for patent invalidity is compulsory); *Swimways Corp. v. Zuru, Inc.*, No. 13-cv-334, 2014 WL 12603190, at *1 (E.D. Va. June 6, 2014) (Zuru's "counterclaim alleging patent invalidity and non-infringement, involving the same patents at issue in the Plaintiff's Complaint . . . is considered compulsory"); 6 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 1410, at 73 (2d ed. 1990) ("Any counterclaim involving the same patent as involved in the original action usually is considered to arise from the same transaction as the main claim.").

Micron thus waived its counterclaims for noninfringement, invalidity, and unenforceability as to the EDTX I Patents and cannot now improperly assert them in the WDTX Action. *See Polymer Indus. Prod. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003) ("[A] party that does not assert its compulsory counterclaim in the first proceeding has waived its right to bring the counterclaim and is forever barred from asserting that claim in future litigation.").

### 3. No Substantial Overlap between the WDTX Actions and Micron I

The first-to-file rule does not apply because Micron cannot show a substantial overlap between this Action and the WDTX proceedings. Neither can Micron's proposed declaratory judgment claims over the EDTX I Patents relate back to the claims already at issue in the WDTX Action. As illustrated in detail above, *supra* II-C, this Action and the WDTX Actions involve different patents, require construction of different terms, cover different accused products, and involve different damages calculations. There is minimal, if any, risk of duplication of work by this Court and the WDTX court.

*See In re ASM Int'l, N.V.*, 774 F. App'x 650, 652 (Fed. Cir. 2019) (affirming the district court's decision denying to apply the first-to-file rule where this case "involves different asserted patents, claim terms, and technology than are at issue" in the first action); *Cf. Virtual Fleet Mgmt., LLC v. Position Logic, LLC*, No. 17-cv-14, 2017 WL 10276708, at *2 (E.D. Tex. May 17, 2017) (transferring the case to the court presiding over a parallel litigation involving the identical patent).

**a)**      **The '918/'054 Patents (PMIC Family) Cover Different Products and Technologies from Those of the WDTX Patents**

The PMIC Family is directed to power management integrated circuits ("PMICs") that are located on the memory module. MS Decl., ¶¶ 18-19. Earlier memory generations put the power management on the motherboard. *Id.* ¶ 19. Bringing the PMIC function onto the module itself "marks a radical change in voltage regulation." Ex. 7 at 3. The motherboard of DDR5 DIMMs is no longer responsible for voltage regulation and power management, while DDR4 DIMMs' power management functionality resides in the motherboard and outside the memory module. MS Decl., ¶ 19. This subject matter is undoubtedly unrelated to the WDTX Action.

**First**, Netlist's WDTX complaint only asserted the allegedly related '833 patent against **DDR4** NVDIMMs. Ex. 8 (22-cv-134 Dkt. 1), at 3. In contrast, in this Action, Netlist asserts the PMIC Family **only** against **DDR5** DIMMs. *Id.* at 30; Dkt. 23 ¶¶ 36, 41.

**Second**, the PMIC Family and the WDTX Patents implicate different functionalities based on different generations of DDR memory technologies. By way of example, Netlist's PICs for the PMIC patents reference different JEDEC Standards and specifications from those in WDTX:

| EDTX PMIC Family Patents | WDTX |
|---|---|
| JESD 301-1A Power Management IC Specification; JESD 79-5A, DDR5 SDRAM; JESD 82-511, DDR5 RCD Definition; JESD 82-521 DDR5 Data Buffer Definition | JESD 82-32A; JESD79-4B; JESD 79-4C; JESD82-31A; JESD 21C; |

**Third**, the claims of the '918 and '054 patents recite generating regulated voltages for use by on-board components. *See* Ex. 17 at 38:18-52 ('918, cl.1); Ex. 18 at 38:19-44 ('054, cl.1). The WDTX

Patents simply do not touch on this subject. For instance, the '833 patent claims are directed to different clock frequencies depending on the mode of operation, not to the on-module voltage regulation system claimed in the PMIC patents. *See* Ex. 9 ('918 IPR Pet.) at 7. Due to the fundamental differences in technology and products, the PMIC Family and WDTX Patents will also not overlap in their damages analyses. Moreover, Micron has not even sought to add counterclaims as to the '918/'054 patents in the WDTX-134 Action involving the '833 patent. Instead, it only sought to add them to the WDTX-136 Action that does not involve any patents related to the '918/'054 patents.

**b)** **The '506 Patent Is Distinct from the WDTX Patents**

The fact that the '506 is a continuation of the '608 and '035 patents does not require that they be litigated by the same court in the same proceeding. *See SIPCO, LLC v. Emerson Elec. Co.*, No. 15-cv-907, 2016 WL 7743496, at *3 (E.D. Tex. Jul. 1, 2016) ("Merely stating that the patents in the second-filed case are in the same patent family as the patents in the first-filed case is not sufficient to demonstrate substantial similarity under the first-to- file rule."). For example, the '506 patent specifically requires "a first memory device" to output read data and a first read strobe associated with a read command, and a first data buffer configurable to delay, by a predetermined amount, the "first read strobe signal" which is a non-data signal that is used to validate data signals. *See* Ex. 10 at 19:16-55 ('506, cl. 1). The '035 and '608 patents do not have such requirements. *See* Ex. 11 at 19:14-55 ('608, cl. 1); Ex. 12 at 19:10-45 ('035, cl. 1). For instance, the '608 patent involves "a delay circuit configured to delay a signal through [a] data path" "corresponding to each ***data*** signal line." Ex. 11 ('608) at 19:52-55. Read strobe signals, the subject matter of the '506 patent, are not transmitted on data signal lines; instead, they are transmitted on separate strobe signal lines. MS Decl. ¶ 28. The '035 patent claims in-buffer logic for controlling timing of both data and strobe signals associated with a memory operation and for transmitting the data and strobe signals along the respective signal lines. *E.g.*, Ex. 12 ('035) at 19:29-45. In contrast, in the '506 patent, the delayed strobes are used internally by the data buffer and

are not further transmitted to a host along strobe signal lines. MS Decl. ¶ 30. That is, the '506 and '035 involve different strobe signals. *Id.* These distinctions are not trivial, and require explaining very different concepts to the jury.

It is true that terminal disclaimers were filed on April 10, 2020 during the '506 patent application against the '035 and '608 patents. But that was in response to double patenting rejections against claims that Netlist cancelled. Ex. 13 (excerpts for file history of the '506 patent). Moreover, as the Federal Circuit held in *SimpleAir Inc. v. Google LLC*, 884 F.3d 1160, 1168-69 (Fed. Cir. 2018), a terminal disclaimer does not give rise to a presumption that a patent subject to a terminal disclaimer is patentably indistinct from its parent patents. A claim-by-claim analysis is required to determine the similarity between the patents. *Id.* Micron made no such showing here.

### c)    Micron Cannot Demonstrate Substantial Overlap

Micron argues that substantial overlap exists because both EDTX and WDTX Actions involve "DIMM technology." For the reasons discussed above in I-C, saying all DIMMs are the same is like saying all smartphones are the same. It is not a serious technical position. Ex. 4 at 10 (J. Andrews D. Del. Dkt. 37) (the "characterization of the underlying technology as 'computer memory modules' is too broad to support relation back"). Indeed, Micron likely does not believe it either because it did not try to add the '833 patent to the WDTX 22-cv-136 Action and vice versa even though they both involved DIMMs, albeit different DIMMs.

Nor has Micron shown the relevance of the '339 patent to the WDTX Patents. There is none. The '339 patent does not claim priority to, or share same the priority date with, any WDTX Patents. Thus, the determination of priority date and validity of the '339 patent would require different analyses compared to the rest of the WDTX Patents. Further, Micron provides no analysis that the '339 patent is directed to the same or substantially similar technology as the WDTX Patents; instead, it only asserts that the '339 is accused against DDR4 LRDIMMs, one of several types of accused products in the

EDTX Action. However, the Federal Circuit has held that the existence of an overlapping accused product, without more, is insufficient to demonstrate a "substantial overlap" for the first-to-file rule to apply. *In re ASM*, 774 F. App'x at 652 (no precedent "support[s] the proposition that one court must hear all forms of intellectual property misappropriation of an accused product"); *In re Telebrands Corp.*, 773 F. App'x at 603-04 (same).

Micron next argues that the two actions involve the same issues of inequitable conduct and Netlist's RAND obligation. That argument also fails. First, Micron's operative answers filed in the WDTX Actions raise no inequitable conduct defense or counterclaims at all. *See* Ex. 14 (22-cv-136 Dkt. 19); Ex. 15 (22-cv-134 Dkt. 20). Only after Netlist brought this EDTX Action and after Micron filed an answer here, did Micron first move in WDTX to temporarily lift the stay (which Micron itself sought) and ask for leave to add counterclaims for inequitable conduct as to the WDTX Patents. Dkt. 28-2 at 35. Micron is clearly engaging in gamesmanship in an attempt to manufacture overlap between this Action and the WDTX proceeding. Second, the RAND rate and damages calculation depend on the accused products at issue, which are different in this Action. *Datamize, Inc. v. Fid. Brokerage Servs., LLC*, No. 03-cv-321, 2004 WL 1683171, at *6 (E.D. Tex. Apr. 22, 2004) ("Different products also involve different damages theories. . . .").

Micron also contends that overlap exists because the PMIC Patents claim priority to the WDTX '833 patent and the '506 patent shares the same disclosure as the WDTX '035 and '608 patents. Mtn. 7-8. There is no *per se* rule that requires all patents from the same family always be adjudicated by the same court in the same proceeding. *SIPCO, LLC*, 2016 WL 7743496, at *3 ("Merely stating that the patents in the second-filed case are in the same patent family as the patents in the first-filed case is not sufficient to demonstrate substantial similarity under the first-to-file rule."); *Document Generation Corp. v. Allscripts, LLC*, No. 08-CV-479, 2009 WL 2824741, at *2 (E.D. Tex. Aug. 27, 2009) (same). These cases allowed transfer of unasserted patents to a court where family patents were

pending only when the two actions covered identical or substantially similar accused products, which is the not the case here. *Id.* In contrast, as demonstrated above, the PMIC patents and the '833 patent involve different technology and require different proof.

Micron's reliance on *Aventis Pharmaceuticals Inc. v. Teva Pharmaceuticals USA Inc.*, No. 2:06-CV-469, 2007 WL 2823296 (E.D. Tex. Sept. 27, 2007) is misplaced. ***First***, in *Aventis*, the accused products in both first-filed New Jersey and the later-filed EDTX actions were ***identical***. *Id.* at *2. Here, the DDR5 DIMMs are only asserted before this Court, but not in WDTX; and DDR4 NVDIMMs are asserted in WDTX, but not in the present Action. ***Second***, in *Aventis*, the accused infringers had already initiated a mirror-image declaratory judgment action in New Jersey, but here, the WDTX has not allowed Micron to bring in the EDTX I Patents; and indeed, it would be procedurally improper for Micron to assert these counterclaims in WDTX when it has chosen not to assert compulsory counterclaims on the EDTX I Patents in this Action and has hence waived the right to do so. *Id.* at *1; *See Polymer Indus.*, 347 F.3d at 938. ***Third***, in *Aventis*, the parties had 22 separate patent infringement suits pending in the New Jersey court. The New Jersey court had "extensive familiarity with the parties to this case, the accused product, the theories of infringement, and prior art references," and had issued opinions on the merits, i.e. motion for preliminary injunction. *Aventis Pharms.*, 2007 WL 2823296 at *2. Here, the WDTX court stayed the WDTX Actions before a claim construction hearing or any substantial discovery had taken place. Further, there are no other pending actions in the WDTX between the parties or related to Netlist's memory technologies; to the contrary, this Court is presiding over the Samsung I action involving the identical patents. This constitutes compelling circumstances where the first-to-file rule is inapplicable.

**4. Even if the First-to-File Rule Applied, this Action Should Proceed**

      **a) A Related Action before this Court Involves the Identical Patents**

The first-to-file rule should not be mechanically applied. *Glob. Equity Mgmt. (SA) Pty. Ltd. v.*

*Ericsson, Inc.*, No. 16-cv-618, 2017 WL 365398, at *7 (E.D. Tex. Jan. 25, 2017). Exceptions "are not

rare[ ] and are made when justice or expediency requires." *SIPCO, LLC*, 2016 WL 7743496, at *4.

The Samsung I Action pending before this Court involves the identical patents. *Netlist, Inc. v.

SEC*, No. 21-cv-463 (E.D. Tex.). For the patents subject to Micron's motion, Netlist has asserted the

same claims of the same patents against the same types of Samsung and Micron products based on

the requirements from the same JEDEC standards:

|  | **Micron-I EDTX** | **Samsung-I EDTX** |
|---|---|---|
| Patent & claims | '506: 1-3, 5, and 11-16 <br> '339: 1-4, 6-23, 26-30, 32-35 <br> '918: 1-3, 5-7,9-13, and 15-30 <br> '054: 1-13, 15-17, 23-25, 29-30 | '506: 1-3, 5, and 11-16 <br> '339: 1-4, 6-23, 26-30, 32-35 <br> '918: 1-3, 5-7,9-13, and 15-30 <br> '054: 1-13, 15-17, 23-25, 29-30 |
| Products | DDR4 RDIMM; DDR5 RDIMM, LRDIMM, SODIMM, UDIMM | DDR4 LRDIMMs; DDR5 RDIMM, LRDIMM, SODIMM, UDIMM |
| Standards | JESD 79-4C; JESD82-31A; JESD 82-32A; JESD79-4-1B; JESD 305; JESD 308; JESD 301-1A; JESD 79-5A; JESD 82-511; JESD 82-521; JESD 235D | JESD 79-4C; JESD82-31A; JESD82-32A; JESD79-4-1B; JESD79-4-1B; JESD 305; JESD 308; JESD 301-1; JESD 79-5/5A; JESD 82-511; JESD 82-521; JESD 235D |

Micron's answer to Netlist's complaint in this instant action raises the exact same invalidity and

enforcement arguments as Samsung—in fact, Micron's and Samsung's inequitable conduct argument

is based on almost *identical* language. Ex. 16 (redline comparison of Samsung's and Micron's answers).

Samsung I has proceeded to an advanced stage where the parties have completed claim

construction briefing and this Court has set a *Markman* hearing on November 4, 2022. Pursuant to

the scheduling order, expert discovery will close by January 17, 2023 and trial will start on May 1, 2023.

*Samsung-I*, No. 21-cv-463, Dkt. 34. Thus, this Court will be familiar with the relevant technologies,

prior art, claim language, accused products, and JEDEC standards for the EDTX I Patents as Samsung

I moves toward claim construction and trial. Under these circumstances, having this Court adjudicate

both Samsung I and this Action will serve the best interests of judicial efficiency and fairness. *See

Mobility Elecs.*, 2007 WL 9724768, at *4 (a court's "involvement in two related proceedings favors

denying [the transfer] motion" under the first-to-file rule because "federal courts will recognize the

wisdom of allowing a judge who has familiarity with the subject matter at issue to preside over subsequent litigation."); *Network-1 Sec. Solutions, Inc. v. D-Link Corp.*, 433 F.Supp.2d 795, 802 (E.D. Tex. 2006) (recognizing advantages of having a judge "who had already construed the patent claims at issue and examined the patent's voluminous file history" preside over case and therefore allowing the second-filed suit to proceed); *DataTreasury Corp. v. First Data Corp.*, 243 F.Supp.2d 591, 595-97 (N.D. Tex. 2003) (finding EDTX is a better forum because related patent infringement cases were already pending and assigned to the same judge); *see LifeNet*, 2022 WL 2959715, at *5 (the first-to-file rule inapplicable where the court has "expended a substantial amount of time and effort" addressing the same legal issues in a related action and noting that a transfer would likely further delay this action).

### b) The WDTX Actions Are Stayed Pending IPRs and Appeals

The WDTX Actions have been stayed until at least "the complete resolution, through any appeals, of the *inter partes review*." No. 22-cv-134, Dkt. 58; Dkt. 68. The PTAB trials are unlikely to be resolved before September 1, 2023. The appeal will take another year or so at least, which makes the WDTX stay essentially an indefinite one. Severing and transferring the EDTX I Patents to the WDTX would significantly delay Netlist's enforcement of its rights over these patents.

Because of the stay, no duplication of work or inconsistent rulings will arise as a result of the parties' continuous litigation of this instant Action. Courts in this district have cautioned against transferring an action to a venue where the related proceedings have been stayed. *See, e.g., Wellogix Tech. Licensing LLC v. Automatic Data Processing, Inc.*, No. 11-cv-401, 2013 WL 1729606, at *9 (E.D. Tex. Mar. 19, 2013) (judicial economy and public interest factors both weighed against transferring the case to a forum where related actions were stayed pending reexamination).

### B. Micron Cannot Meet the Traditional Standards for a Stay or Sever

In determining whether to stay, courts consider whether a stay will "unduly prejudice or present a clear tactical disadvantage to the nonmoving party," "simplify the issues in question and trial

of the case," and "whether discovery is complete and whether a trial date has been set." *Rembrandt Wireless Techs., LP v. Apple Inc.,* No. 19-cv-25, 2019 WL 6344471, at *2 (E.D. Tex. Nov. 27, 2019). In deciding whether to sever claims under Rule 21, courts consider whether (1) "the remaining claims are peripheral to the severed claims" and (2) "adjudication of the severed claims would potentially dispose of the remaining claims." *SAS Inst. Inc. v. World Programming Ltd.*, No. 18-cv-295, 2019 WL 8331447, at *2 (E.D. Tex. Apr. 4, 2019). Micron's motion did not even attempt to discuss these factors.

Because of the stay in place in the WDTX Actions, and because of the pending litigation involving the identical patents before this Court, severing and staying Netlist's claims and forcing it to litigate the same patents in two separate forums would not simplify the issues in question or otherwise advance the interests of efficiency or judicial economy. Instead, requiring Netlist to litigate the '918, '054, '506, and '339 patents in the WDTX *after* the IPRs on other patents (and related appeals) are completed, and *after* the WDTX court lifts the stay and allows Micron to amend its counterclaims, would only result in delay and unfair prejudice to Netlist.

Micron argued that this court has severed patents "that were the subject of separate co-pending cases." Mtn. at 9. However, in none of the cases Micron relied on did the court force the parties to litigate their claims in a *stayed* proceeding that did not involve the same patents-in-suit. *See Harris Corp. v. Huawei Device USA, Inc.*, No. 2:18-cv-439, 2019 WL 8135570, at *3 (E.D. Tex. June 12, 2019) (severing Huawei's counterclaims for patent infringement into a separate action before this Court); *see also BridgeLux, Inc. v. Cree, Inc.*, No. 9;06-cv-240, 2007 WL 9724143, at *3 (E.D. Tex. Feb. 5, 2007) (severing counterclaims that are the subject of another ongoing litigation); *Salomon S.A. v. Scott USA Ltd. P'ship*, 117 F.R.D. 320, 321 (D. Mass. 1987) (same). In addition, there are no other actions pending before the severing court that involve the exact same patents like here. *Id.*

## IV.    CONCLUSION

For the reasons discussed above, Micron's motion to sever and stay should be denied.

Dated: September 26, 2022

Respectfully submitted,

/s/ Jason Sheasby

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
jsheasby@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that, on September 26, 2022, a copy of the foregoing was served to all counsel of record.

/s/ Yanan Zhao
Yanan Zhao

Netlist's Opposition to Defendants' Motion to Sever and Stay
Case No. 22-cv-203-JRG (E.D.Tex.)