UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.<br><br>                    Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD, et al.<br><br>          Defendants. | Civil Case No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.<br><br>                    Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.<br><br>          Defendants. | Civil Case No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

## <u>SAMSUNG'S FIRST AMENDED ANSWER</u>

Defendants Samsung Electronics Co., LTD ("SEC"), Samsung Electronics America, Inc.

("SEA"), and Samsung Semiconductor, Inc. ("SSI") (collectively, "Samsung") hereby answer

the First Amended Complaint (Dkt. No. 12) filed by Plaintiff Netlist, Inc. ("Netlist" or

"Plaintiff").  This First Amended Answer supersedes SEA and SSI's answer filed October 7,

2022 (Dkt. No. 29), and SEC's answer filed November 29, 2022 (Dkt. No. 52).

As an initial matter, as addressed in Samsung's pending motion (Dkt. No. 20), the claims

relating to U.S. Patent No. 7,619,912 ("the '912 patent") should be severed and transferred to the

Northern District of California.  But irrespective of whether Netlist's claims relating to the '912

patent should be litigated in this jurisdiction, this entire case (including the '912 patent claims if

1

the Court declines to sever and transfer the '912 patent) should be stayed pending the resolution of Samsung's co-pending Ninth Circuit Appeal relating to whether Samsung continues to be licensed to Netlist's patents. *Id.* To the extent the Court does not stay this case pending the resolution of Samsung's co-pending Ninth Circuit Appeal, this case should be consolidated with Civil Action No. 2:21-cv-463. *Id.*

Samsung denies the allegations and characterizations in Netlist's First Amended Complaint unless expressly admitted in the following numbered paragraphs, which correspond to the numbered paragraphs in the First Amended Complaint. Further, to the extent that Netlist's allegations set forth legal conclusions, no response is required.

1.    Samsung admits that Plaintiff's pleading purports to be a First Amended Complaint against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc. Samsung lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 1 of the First Amended Complaint, and therefore denies them.

2.    Samsung admits this action purports to involve U.S. Patent Nos. 7,619,912 (the "'912 patent,"), 11,093,417 (the "'417 patent,"), and 9,858,215 (the "'215 patent,") (collectively, the "Patents-In-Suit"). Samsung admits that purported copies of the '912 patent, the '417 patent, and the '215 patent are attached to the First Amended Complaint as Exhibits 1, 2, and 3 respectively.

## THE PARTIES[1]

3.      Samsung admits that Netlist is a corporation organized and existing under the laws of the State of Delaware.  Samsung lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3 of the First Amended Complaint, and therefore denies them.

4.      Samsung admits that SEC is the parent corporation of SEA.  Samsung admits that SEC is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 129, Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, 443-742, Republic of Korea.  Samsung denies all allegations of patent infringement, and further denies that Netlist is entitled to any relief for its allegations of patent infringement.  The remaining allegations in Paragraph 4 are vague and incomplete and Samsung denies them on that basis.

5.      Samsung admits SEA is a corporation organized and existing under the laws of New York.  Samsung admits that SEA maintains an office at 6625 Excellence Way, Plano, Texas 75023 and that its registered agent is CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.  Samsung further admits that SEA is a wholly owned subsidiary of SEC.  Samsung denies any remaining allegations of Paragraph 5.  The remaining allegations in Paragraph 5 are vague and incomplete and Samsung denies them on that basis.

6.      Samsung admits that SSI is a corporation organized and existing under the laws of California.  Samsung admits that SSI's registered agent is National Registered Agents, Inc., 1999

---

[1] Samsung repeats the headings set forth in the First Amended Complaint to simplify comparison of the First Amended Complaint and this response.  In doing so, Samsung makes no admissions regarding the substance of the headings or any other allegations of the First Amended Complaint. Unless otherwise stated, to the extent that a particular heading can be construed as an allegation, Samsung specifically denies all such allegations.

Bryan St., Dallas, TX 75201.  Samsung further admits that SSI is a wholly owned subsidiary of SEA.  The remaining allegations in Paragraph 6 are vague and incomplete and Samsung denies them on that basis.

7.      Samsung admits that it has sold certain products within the United States.  The remaining allegations in Paragraph 7 are vague and incomplete and Samsung denies them on that basis.

## JURISDICTION AND VENUE

8.      To the extent that the allegations of Paragraph 8 set forth legal conclusions, no response is required.  Samsung admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338 in that this action arises under the patent laws of the United States, 35 U.S.C. Title 35 § 101 *et seq*., but denies that Netlist's claims are meritorious.  Samsung denies all allegations of patent infringement, and further denies that Netlist is entitled to any relief for its allegations of patent infringement.

9.      To the extent that the allegations of Paragraph 9 set forth legal conclusions, no response is required.  Samsung lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 9, and therefore denies them.

10.      To the extent that the allegations of Paragraph 10 set forth legal conclusions, no response is required.  Samsung denies that SSI makes the Accused Instrumentalities in the State of Texas or the Eastern District of Texas.  Samsung denies that SEA makes or sells the Accused Instrumentalities in the State of Texas or the Eastern District of Texas.  Samsung denies any remaining allegations in Paragraph 10.

11.      To the extent that the allegations of Paragraph 11 set forth legal conclusions, no response is required.  Samsung denies that venue is proper in this Court and reserve the right to challenge venue in this case.  Samsung admits that SEA maintains an office at 6625 Excellence

Way, Plano, Texas 75023.  Samsung denies that is has committed acts of infringement in this District or elsewhere, or that it has committed any act, directly or indirectly, that would give rise to any cause of action under the First Amended Complaint.  Samsung denies any remaining allegations in Paragraph 11.

12.     Samsung admits that it did not contest venue in *Emergent Mobile*, *Arbor*, or *Acorn* solely for the purposes of those actions.  *See Emergent Mobile LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-107, Dkt. No. 12 at ¶ 12 (E.D. Tex. Aug. 3, 2022) ("Samsung will not contest, ***for purposes of this case only***, that venue over SEA properly lies in this District." (emphasis added)); *see also Arbor Global Strategies LLC v. Samsung Elecs. Co., Ltd.*, No. 2:19-cv-333, Dkt. No. 43 at ¶ 10 (E.D. Tex. Apr. 27, 2020) ("The Samsung Defendants, however, do not contest, ***solely for purposes of the present action***, whether venue over them properly lies in this District, but the Samsung Defendants denies that venue in this District is convenient." (emphasis added)); *see also Acorn Semi, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:19-cv-347, Dkt. No. 14 at ¶ 29 (E.D. Tex. Feb. 12, 2020) ("Samsung does not contest at this time, and ***solely for the purpose of the present litigation***, whether venue over it properly lies in this District, but SEC, SSI and SAS denies that venue in this District is convenient and SEC, SSI and SAS reserve the right to seek transfer to a more appropriate or convenient forum." (emphasis added)).  Except as expressly admitted, Samsung lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 12, and therefore denies them.

## FACTUAL ALLEGATIONS

### Background

13.     Samsung lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the First Amended Complaint, and therefore denies them.

Samsung further denies that the allegations in Paragraph 13 of the First Amended Complaint are complete or accurate, and on that basis denies them.

14.      Samsung admits the Patents-In-Suit purport to relate to memory modules. Samsung denies that the remaining allegations in Paragraph 14 of the First Amended Complaint are complete or accurate, and on that basis denies them.

15.      Samsung admits that the JEDEC Solid State Technology Association ("JEDEC") is a standardization body that develops open standards and publications for a broad range of semiconductor technologies, including memory modules.  Samsung admits that memory modules can include DDR4 and DDR3.  Samsung admits that RDIMM and LRDIMM are types of memory modules.  Samsung denies that the remaining allegations in Paragraph 15 of the First Amended Complaint are complete or accurate, and on that basis denies them.

16.      Samsung admits dual in-line memory modules are a type of memory module. Samsung denies that the remaining allegations in Paragraph 16 of the First Amended Complaint are complete or accurate, and on that basis denies them.

17.      Samsung admits load reduced dual in-line memory modules and registered DIMMs are types of memory modules.  Samsung denies that the remaining allegations in Paragraph 17 of the First Amended Complaint are complete or accurate, and on that basis denies them.

18.      Samsung lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the First Amended Complaint, and therefore denies them.

19.      Samsung denies that the allegations in Paragraph 19 of the First Amended Complaint are complete or accurate, and on that basis denies them.

**The Asserted '912 Patent**

20.     To the extent that the allegations of Paragraph 20 set forth legal conclusions, no response is required.  Samsung admits that the '912 patent states, on its face, that it is entitled "Memory Module Decoder" and that it lists Jayesh R. Bhakta and Jeffrey C. Solomon as inventors.  Samsung further admits that the '912 patent states, on its face, that it was filed as Application No. 11/862,931 on September 27, 2007, issued as a patent on November 17, 2009, and purports to claim priority to, among others, Provisional Application Nos. 60/588,244, 60/550,668, and 60/575,595.  Samsung lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 20 of the First Amended Complaint, and therefore denies them.

21.     Samsung admits that, on July 6, 2021, Google made an indemnification request to SSI in connection with Netlist's assertion in an action against Google asserting the '912 patent against Google's use of Samsung's DDR4 LRDIMM and RDIMM memory modules.  Samsung lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21 of the First Amended Complaint, and therefore denies them.

22.     Samsung admits the Patents-In-Suit purport to relate to memory modules.  Samsung denies that the allegations in Paragraph 22 of the First Amended Complaint are complete or accurate, and on that basis denies them.

23.     Samsung admits the '912 patent recites "even though the memory module 10 actually has the first number of ranks of memory devices 30, the memory module 10 simulates a virtual memory module by operating as having the second number of ranks of memory devices 30" at 7:9-13.  Samsung denies that the remaining allegations in Paragraph 23 of the First Amended Complaint are complete or accurate, and on that basis denies them.

24.     Samsung denies that the allegations in Paragraph 24 of the First Amended Complaint are complete or accurate, and on that basis denies them.

25.     Samsung admits the '912 patent purports that Fig. 1A illustrates an exemplary memory module.  Samsung admits the '912 patent purports that element 60 is a register and element 40 in Figure 1A is a logic element.  Samsung denies that the remaining allegations in Paragraph 25 of the First Amended Complaint are complete or accurate, and on that basis denies them.

26.     Samsung admits the '912 patent purports that $CS_0$ and $CS_1$ are chip-select signals. Samsung admits the '912 patent purports that $BA_0$-$BA_m$ are bank address signals.  Samsung admits the '912 patent purports that $A_{n+1}$ is a row/column address signal.  Samsung admits the '912 patent purports that element 40 is a logic element.  Samsung denies that the remaining allegations in Paragraph 26 of the First Amended Complaint are complete or accurate, and on that basis denies them.

27.     Samsung denies that the allegations in Paragraph 27 of the First Amended Complaint are complete or accurate, and on that basis denies them.

**The Asserted '417 Patent**

28.     To the extent that the allegations of Paragraph 28 set forth legal conclusions, no response is required.  Samsung admits that the '417 patent states, on its face, that it is entitled "Memory Module With Data Buffering" and that it lists Jayesh R. Bhakta and Jeffrey C. Solomon as inventors.  Samsung further admits that the '417 patent states, on its face, that it was filed as Application No. 16/695,020 on November 25, 2019, issued as a patent on August 17, 2021, and purports to claim priority to, among others, provisional application Nos. 60/645,087, 60/590,038, 60/588,244, 60/550,668, and 60/575,595.  Samsung lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28 of the First Amended Complaint, and therefore denies them.

29.     Samsung admits it gained knowledge of the '417 patent at least via this First Amended Complaint.  Netlist's allegation of Samsung's alleged "access to Netlist's patent portfolio docket" is vague and incomplete and Samsung denies this allegation on that basis.

30.     Samsung admits the '417 patent purports to relate to memory modules.  Samsung admits the abstract of the '417 patent states "[t]he circuitry is configurable to enable registered transfers of N-bit wide data signals associated with the memory read or write command between the N-bit wide memory bus and the memory devices in response to the data buffer control signals and in accordance with an overall CAS latency of the memory module, which is greater than an actual operational CAS latency of the memory devices."  Samsung denies that the remaining allegations in Paragraph 30 of the First Amended Complaint are complete or accurate, and on that basis denies them.

**The Asserted '215 Patent**

31.     To the extent that the allegations of Paragraph 31 set forth legal conclusions, no response is required.  Samsung admits that the '215 patent states, on its face, that it is entitled "Memory Module With Data Buffering" and that it lists Jayesh R. Bhakta and Jeffrey C. Solomon as inventors.  Samsung further admits that the '215 patent states, on its face, that it was filed as Application No. 14/715,486 on May 18, 2015, issued as a patent on January 2, 2018, and purports to claim priority to, among others, provisional application Nos. 60/645,087, 60/590,038, 60/588,244, 60/550,668, and 60/575,595.  Samsung lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31 of the First Amended Complaint, and therefore denies them.

32.     Samsung admits it gained knowledge of the '215 patent at least via this First Amended Complaint.  Netlist's allegation of Samsung's alleged "access to Netlist's patent portfolio docket" is vague and incomplete and Samsung denies this allegation on that basis.

33.     Samsung admits the '215 patent purports to relate to memory modules.  Samsung admits the abstract of the '215 patent states: "The memory module further comprises logic providing first control signals to the buffer to enable communication of a first data burst between the memory controller and the at least one first memory integrated circuit through the buffer in response to a first memory command, and providing second control signals to the buffer to enable communication of a second data burst between the at least one second memory integrated circuit and the memory bus through the buffer in response to a second memory command."  Samsung denies that the remaining allegations in Paragraph 33 of the First Amended Complaint are complete or accurate, and on that basis denies them.

### Samsung's Activities[2]

34.     Samsung denies all allegations of patent infringement, and further denies that Netlist is entitled to any relief for its allegations of patent infringement whether by award of damages, injunction, or otherwise.  Samsung denies that the allegations in Paragraph 34 of the First Amended Complaint are complete or accurate, and on that basis denies them.

### FIRST CLAIM FOR RELIEF – '912 PATENT

35.     Samsung incorporates by reference its responses to paragraphs 1-34 of the First Amended Complaint.

---

[2] Samsung denies the allegation contained in the header preceding Paragraph 34.

36.     To the extent that the allegations of Paragraph 36 set forth legal conclusions, no response is required.  Samsung denies the allegations in Paragraph 36 of the First Amended Complaint.

**SECOND CLAIM FOR RELIEF – '417 PATENT**

37.     Samsung incorporates by reference its responses to paragraphs 1-36 of the First Amended Complaint.

38.     To the extent that the allegations of Paragraph 38 set forth legal conclusions, no response is required.  Samsung denies the allegations in Paragraph 38 of the First Amended Complaint.

39.     To the extent that the allegations of Paragraph 39 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include a depiction of a Samsung DDR4 LRDIMM from Samsung's website at

https://semiconductor.samsung.com/dram/module/lrdimm/m386a8k40bm1-crc/.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from a Samsung datasheet for M386A8K40BM1-CRC.  Samsung denies the remaining allegations in Paragraph 39 of the First Amended Complaint.

40.     To the extent that the allegations of Paragraph 40 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from a Samsung datasheet for M386A8K40BM1-CRC.  Samsung denies the remaining allegations in Paragraph 40 of the First Amended Complaint.

41.     To the extent that the allegations of Paragraph 41 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an annotated, and therefore modified, depiction of a Samsung DDR4 LRDIMM from Samsung's website at https://semiconductor.samsung.com/dram/module/lrdimm/m386a8k40bm1-crc/.

Samsung admits Netlist's First Amended Complaint purports to include an excerpt from a Samsung Module Handling Guide.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from a Samsung datasheet for M386A8K40BM1-CRC.  Samsung denies the remaining allegations in Paragraph 41 of the First Amended Complaint.

42.     To the extent that the allegations of Paragraph 42 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from a Samsung datasheet for M386A8K40BM1-CRC.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from the JEDEC 82-31A RCD Standard.  Samsung denies the remaining allegations in Paragraph 42 of the First Amended Complaint.

43.     To the extent that the allegations of Paragraph 43 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from the JEDEC 82-32A Data Buffer Standard.  Samsung denies the remaining allegations in Paragraph 43 of the First Amended Complaint.

44.     To the extent that the allegations of Paragraph 44 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an annotated, and therefore modified, excerpt from a Samsung datasheet for M386A8K40BM1-CRC.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from the JEDEC DDR4 SDRAM Standard 79-4C.  Samsung denies the remaining allegations in Paragraph 44 of the First Amended Complaint.

45.     To the extent that the allegations of Paragraph 45 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an annotated, and therefore modified, excerpt from a Samsung datasheet for M386A8K40BM1-CRC.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from

the JEDEC 82-32A Data Buffer Standard.  Samsung denies the remaining allegations in Paragraph 45 of the First Amended Complaint.

46.     To the extent that the allegations of Paragraph 46 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from the JEDEC 82-32A Data Buffer Standard.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from the JEDEC 82-31A RCD Standard. Samsung denies the remaining allegations in Paragraph 46 of the First Amended Complaint.

47.     To the extent that the allegations of Paragraph 47 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from the JEDEC 82-32A Data Buffer Standard.  Samsung denies the remaining allegations in Paragraph 47 of the First Amended Complaint.

48.     To the extent that the allegations of Paragraph 48 set forth legal conclusions, no response is required.  Samsung denies the allegations in Paragraph 48 of the First Amended Complaint.

49.     To the extent that the allegations of Paragraph 49 set forth legal conclusions, no response is required.  Samsung denies the allegations in Paragraph 49 of the First Amended Complaint.

50.     To the extent that the allegations of Paragraph 50 set forth legal conclusions, no response is required.  Samsung denies the allegations in Paragraph 50 of the First Amended Complaint.

## THIRD CLAIM FOR RELIEF – '417 PATENT

51.     Samsung incorporates by reference its responses to paragraphs 1-50 of the First Amended Complaint.

52.     To the extent that the allegations of Paragraph 52 set forth legal conclusions, no response is required.  Samsung denies the allegations in Paragraph 52 of the First Amended Complaint.

53.     To the extent that the allegations of Paragraph 53 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include a depiction of a Samsung DDR4 LRDIMM from Samsung's website at https://semiconductor.samsung.com/dram/module/lrdimm/m386a8k40bm1-crc/.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from a Samsung datasheet for M386A8K40BM1-CRC.  Samsung denies the remaining allegations in Paragraph 53 of the First Amended Complaint.

54.     To the extent that the allegations of Paragraph 54 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an annotated, and therefore modified, excerpt from the JEDEC DDR4 SDRAM Standard 79-4C.  Samsung denies the remaining allegations in Paragraph 54 of the First Amended Complaint.

55.     To the extent that the allegations of Paragraph 55 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include a depiction of a Samsung DDR4 LRDIMM from Samsung's website at https://semiconductor.samsung.com/dram/module/lrdimm/m386a8k40bm1-crc/.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from a Samsung Module Handling Guide.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from a Samsung datasheet for M386A8K40BM1-CRC.  Samsung denies the remaining allegations in Paragraph 55 of the First Amended Complaint.

56.     To the extent that the allegations of Paragraph 56 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from a Samsung datasheet for M386A8K40BM1-CRC.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from the JEDEC DDR4 SDRAM Standard 79-4C.  Samsung denies the remaining allegations in Paragraph 56 of the First Amended Complaint.

57.     To the extent that the allegations of Paragraph 57 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an annotated, and therefore modified, excerpt from a Samsung datasheet for M386A8K40BM1-CRC.  Samsung denies the remaining allegations in Paragraph 57 of the First Amended Complaint.

58.     To the extent that the allegations of Paragraph 58 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an annotated, and therefore modified, excerpt from the JEDEC DDR4 SDRAM Standard 79-4C.  Samsung denies the remaining allegations in Paragraph 58 of the First Amended Complaint.

59.     To the extent that the allegations of Paragraph 59 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an annotated, and therefore modified, excerpt from a Samsung datasheet for M386A8K40BM1-CRC.  Samsung admits Netlist's First Amended Complaint purports to include an excerpt from the JEDEC 82-32A Data Buffer Standard.  Samsung denies the remaining allegations in Paragraph 59 of the First Amended Complaint.

60.     To the extent that the allegations of Paragraph 60 set forth legal conclusions, no response is required.  Samsung admits Netlist's First Amended Complaint purports to include an

excerpt from the JEDEC 82-32A Data Buffer Standard.  Samsung denies the remaining allegations in Paragraph 60 of the First Amended Complaint.

61.     To the extent that the allegations of Paragraph 61 set forth legal conclusions, no response is required.  Samsung denies the allegations in Paragraph 61 of the First Amended Complaint.

62.     To the extent that the allegations of Paragraph 62 set forth legal conclusions, no response is required.  Samsung denies the allegations in Paragraph 62 of the First Amended Complaint.

63.     To the extent that the allegations of Paragraph 63 set forth legal conclusions, no response is required.  Samsung denies the allegations in Paragraph 63 of the First Amended Complaint.

## DEMAND FOR JURY TRIAL

64.     Samsung admits that Netlist demands a trial by jury, and Samsung likewise demands a trial by jury on all issues so triable.  Samsung denies the remaining allegations in Paragraph 64 of the First Amended Complaint.

## [NETLIST'S] PRAYER FOR RELIEF

Samsung denies the underlying allegations of Netlist's Prayer for Relief against Samsung, denies that Netlist is entitled to any relief whatsoever, and requests that the Court denies all relief to Netlist, enter judgment in favor of Samsung, and award Samsung its attorney's fees as the prevailing party in the action.

## GENERAL DENIAL

To the extent that any allegations of the First Amended Complaint have not been previously specifically admitted or denied, Samsung denies them.

16

## SAMSUNG'S ADDITIONAL DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), Samsung, without waiver, limitation or prejudice, hereby asserts the additional defenses listed below.  Samsung reserves the right to amend this First Amended Answer to add additional defenses, and/or any other defenses currently unknown to Samsung, as they become known throughout the course of discovery in this action.  The assertion of a defense is not a concession that Samsung has the burden of proving the matter asserted.

### FIRST ADDITIONAL DEFENSE
### (Non-Infringement)

Samsung does not infringe and has not infringed, under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement), any valid, enforceable claim of the Patents-In-Suit, either literally or under the Doctrine of Equivalents, and has not committed any acts in violation of 35 U.S.C. § 271.

### SECOND ADDITIONAL DEFENSE
### (Invalidity)

Each asserted claim of the Patents-In-Suit is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

### THIRD ADDITIONAL DEFENSE
### (Laches, Estoppel, and/or Waiver)

Netlist's attempted enforcement of the Patents-In-Suit against Samsung is barred by laches, estoppel, and/or waiver.  For example, to the extent the Patents-In-Suit are essential to one or more JEDEC standards, Netlist is estopped from enforcing the Patents-In-Suit against Samsung because of its failure to comply with its RAND obligations.  As another example, to the

extent the Patents-In-Suit are essential to one or more JEDEC standards, Netlist is estopped from seeking an injunction or lost profits by its RAND obligations.

## FOURTH ADDITIONAL DEFENSE
### (Prosecution History Estoppel)

Netlist's claims are barred by the doctrine of prosecution history estoppel and/or disclaimer based on statements, representations, and admissions made during prosecution of the patent applications resulting in the Patents-In-Suit.

## FIFTH ADDITIONAL DEFENSE
### (Marking)

Any claim for damages by Netlist is limited by its failure to mark, including without limitation, to the extent Netlist contends there are products covered by the Patents-In-Suit, Netlist's failure to mark its own products with the numbers of the Patents-In-Suit and/or its failure to require and/or police the marking of Netlist's customers and licensees.

## SIXTH ADDITIONAL DEFENSE
### (Notice, Damages, and Costs)

Netlist's claims for damages are statutorily limited under 35 U.S.C. §§ 286 and 287. Netlist is barred from recovering costs in connection with this action under 35 U.S.C. § 288. Netlist's claims for relief are limited by the doctrines of full compensation, exhaustion, and/or first sale, and Netlist is not entitled to a double recovery.  For example, to the extent the Patents-In-Suit are essential to one or more JEDEC standards, Netlist is barred from seeking lost profits by its RAND obligations.

**SEVENTH ADDITIONAL DEFENSE**
**(License Express or Implied and/or Patent Exhaustion)**

Netlist's claims are barred in whole or in part by express or implied license and/or patent exhaustion.

For example, on November 12, 2015, Netlist and SEC entered into a Joint Development and License Agreement (the "Agreement").  The Agreement contains cross-license, joint development, and product supply provisions.

In the Agreement, Netlist granted SEC and its subsidiaries, including SSI, a perpetual, paid-up, worldwide, non-exclusive license to all patents owned or controlled by Netlist or any of its subsidiaries having an effective first filing date on or prior to November 12, 2020.  The license extends through the expiration of the last to expire of the licensed patents.

SEC similarly granted Netlist and its subsidiaries a perpetual, paid-up, worldwide, non-exclusive license to all patents owned or controlled by SEC or any of its subsidiaries having an effective first filing date on or prior to November 12, 2020.  The Agreement required SEC to make a payment to Netlist of $8 million subject to the terms and conditions therein.  SEC made this payment to Netlist except for a portion that was remitted as tax withholding to the Korean tax authorities, which later refunded the withheld portion to Netlist.

Netlist is now taking extraordinary actions to back out of its grant of a patent license to Samsung.

On May 27, 2020, Netlist's Chief Licensing Officer, Marc J. Frechette, wrote to Mr. Seung Min Sung of SEC, and alleged that Samsung materially breached the Agreement by allegedly "repeatedly fail[ing] to fulfill Netlist's request for NAND and DRAM products throughout the term of the Agreement" and, allegedly, by improperly deducting withholding taxes.  Netlist did not allege, and has never alleged, that Samsung breached the Agreement in any

way related to the patent cross-license.  In the same letter—which was the first time Netlist raised its breach allegations—Mr. Frechette informed Mr. Sung that Netlist had filed a complaint in U.S. District Court for the Central District of California with respect to the alleged breach by Samsung and provided a copy of the complaint for reference.

On May 28, 2020, the U.S. District Court for the Central District of California docketed Netlist's breach of contract complaint against SEC.  *Netlist, Inc. v. Samsung Elecs. Co., Ltd.*, No. 8:20-cv-00993-MCS (C.D. Cal.) ("Breach Action").

Netlist subsequently wrote to SEC to terminate the Agreement, including the patent license to SEC and its subsidiaries.  On July 15, 2020, Netlist's Chief Licensing Officer, Marc J. Frechette, wrote to Mr. Seung Min Sung of SEC and stated that "Netlist is hereby terminating, effective immediately, the Agreement including the patent license granted to Samsung. . . ."

One week later, on July 22, 2020, Netlist amended its complaint in the Breach Action, seeking a declaration that the license it granted Samsung, *but not the license Samsung granted Netlist*, is terminated.  In the Breach Action, Netlist seeks monetary damages and a declaration "that Netlist has terminated the Agreement pursuant to Section 13.2 and that Samsung's licenses and rights under the agreement have ceased."

On October 14, 2021, the court in the Breach Action issued a confidential order granting summary judgment in favor of Netlist on Netlist's Third Claim for Relief, which seeks a declaration that Netlist terminated Samsung's license effective July 20, 2020.  *See Netlist, Inc. v. Samsung Elecs. Co., Ltd.*, No. 8:20-cv-00993-MCS, Dkt. No. 186 (C.D. Cal.).  The court also granted summary judgment in Netlist's favor that Samsung was liable for certain alleged breaches of other provisions in the Agreement.  *See id.*

Beginning on December 1, 2021, the court in the Breach Action held a jury trial on damages for one of the alleged breaches (the alleged failure to fulfill Netlist's orders for NAND and DRAM products).  On December 3, 2021, the jury returned a verdict in Samsung's favor, finding that Netlist failed to prove that it suffered any damages for this alleged breach.  *See* Breach Action, Dkt. No. 276.

On January 10, 2022, Samsung filed a motion for entry of judgment in Samsung's favor as to Netlist's First and Second Claims for Relief and, as to Netlist's Third Claim for Relief, for entry of judgment in Samsung's favor or, in the alternative, a trial on the claim.  On February 15, 2022, the Court in the Breach Action entered judgment in favor of Netlist on the First and Second Claims for Relief and awarded nominal damages in the amount of $1.00 for each claim. *See* Breach Action, Dkt. No. 306.  Further, the Court entered judgment in favor of Netlist on the Third Claim for declaratory relief finding that Netlist terminated the Agreement and that Samsung's licenses and rights under the Agreement have ceased.  *See id.*

On February 25, 2022, SEC appealed the judgment entered in the Breach Action to the Ninth Circuit.  *See* Breach Action, Dkt. No. 309.  SEC maintains that it did not breach the Agreement, that the Agreement has not been terminated, and that it continues to hold a paid-up, worldwide, non-exclusive license to Netlist's patents, including the Patents-In-Suit.  All of Samsung's sales of the Accused Instrumentalities are therefore licensed to the asserted patents in this case, and Netlist is further barred from claiming infringement for those Accused Instrumentalities under patent exhaustion.  Further, regardless of whether the Agreement was properly terminated (which Samsung disputes), Samsung, its customers, and its end users are not liable for infringement of the Patents-In-Suit for any memory modules made, used, sold, offered for sale, or imported before July 20, 2020, the date on which the purported termination became

effective.  Accordingly, at least Samsung's sales of the Accused Instrumentalities made, used, sold, offered for sale, or imported before July 20, 2020 are licensed to the asserted patents in this case, and Netlist is further barred from claiming infringement for those products under patent exhaustion.

## EIGHTH ADDITIONAL DEFENSE
### (Not an Exceptional Case)

Netlist is not entitled to a finding that this case is exceptional warranting attorneys' fees under 35 U.S.C. § 285, or pursuant to the Court's inherent power.

## NINTH ADDITIONAL DEFENSE
### (No Willful Infringement)

Netlist's claims for enhanced damages, if any, and an award of fees and costs against Samsung have no basis in fact or law and should be denied.

## TENTH ADDITIONAL DEFENSE
### (Prosecution laches)

Netlist's attempted enforcement of the Patents-In-Suit against Samsung is barred by prosecution laches.

## ELEVENTH ADDITIONAL DEFENSE
### (Improper Venue)

Samsung denies that venue is proper in this Court, including pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

## TWELFTH ADDITIONAL DEFENSE
### (Inequitable Conduct and Unclean Hands)

At least the '912 patent is unenforceable due to inequitable conduct.

### *Netlist Individuals Substantively Involved in the '912 Reexamination*

On information and belief, at least the following people associated with Netlist were substantively involved in the *inter partes* reexamination proceedings with respect to the '912

patent: Gail Sasaki, Mehran Arjomand, and David S. Kim (collectively "Netlist Individuals Substantively Involved in the '912 Patent Reexamination").

On information and belief, Gail Sasaki was, during the reexamination proceedings for the '912 patent, an employee and/or contractor for Netlist who signed a power of attorney appointing counsel of record to prosecute the reexamination proceeding on behalf of Netlist.

Mehran Arjomand and David S. Kim served as counsel of record for Netlist in connection with the *inter partes* reexamination proceedings for the '912 patent.

On information and belief, the Netlist Individuals Substantively Involved in the '912 Patent Reexamination withheld information that they knew to be material to the patentability of the '912 patent with the specific intent to deceive the United States Patent and Trademark Office ("Patent Office") in order to secure allowance of certain amended claims.

On information and belief, each of the Netlist Individuals Substantively Involved in the '912 Patent Reexamination is an individual associated with the prosecution of the '912 patent during the *inter parte*s reexamination proceedings, which ultimately led to the issuance of an *Inter Partes* Reexamination Certificate on February 8, 2021.

### *Netlist Made Narrowing Amendments to Claims During Reexamination*

The '912 patent was originally filed in the United States on September 27, 2007 by inventors Jayesh R. Bhakta and Jeffrey C. Solomon.  The '912 patent, titled "Memory Module Decoder," issued on November 17, 2009.  Netlist claims to own all rights, title, and interest in the '912 patent.

On April 20, 2010, a first request for *inter partes* reexamination of claims 1–51 of the '912 patent was filed by third party requester Inphi.  The Patent Office assigned this request

control No. 95/001,339 ("'339 proceeding") and ultimately ordered the reexamination of claims 1–51 of the '912 patent on September 1, 2010.

On October 20, 2010, a second request for *inter partes* reexamination of claims 1, 6, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 patent was filed by third party requester SMART Modular Technologies (WWH), Inc. ("SMART").  The Patent Office assigned this request control No. 95/000,578 ("'578 proceeding") and ordered reexamination of claims 1, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 patent on January 14, 2011.

On October 21, 2010, a third request for *inter partes* reexamination of claims 1, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 patent was filed by Google.  The Patent Office assigned this request control No. 95/000,579 ("'579 proceeding") and ordered reexamination of claims 1, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 patent on January 18, 2011.

The Examiner in the '578, '579, and '339 proceedings agreed with Inphi, SMART, and Google that the proposed combination of Micron, DDR SDRAM RDIMM, MT36VDDF12872 & MT36VDDF28672 Data Sheet, 2002 ("Micron") in view of U.S. Patent Application Publication No. 2006/0117152 ("Amidi") presented a substantial new question of patentability and that "a reasonable examiner would consider the teaching of Micron and Amidi important in deciding the patentability of" the challenged claims.  *See* January 14, 2011 Reexamination Ordered.

On February 25, 2011, the Patent Office *sua sponte* merged the '578, '579, and '339 proceedings into a single matter, as all three proceedings were pending, had yet to be terminated, and involved overlapping claims of the same patent.

24

After the merger, Netlist argued against the pending rejections of the existing claims and added new claims 52–118.  *See* Netlist's July 5, 2011 Response to Office Action in *Inter Partes* Reexamination Communication Mailed April 4, 2011.  For example, Netlist argued that the phase-lock loop device disclosed in Amidi was not "operatively coupled" to its CPLD.  Netlist narrowed the scope of the "operatively coupled" feature by arguing that in the context of the '912 patent the phrase means that "the operations of the logic element 40 are clocked either directly or indirectly (e.g., through a clock buffer) by the output of the PLL 50" and that "the output of the PLL 50 controls the operation of the logic element 40."

Google responded by explaining how Micron and Amidi rendered obvious both the original and new claims.  *See* August 29, 2011 Response.  Google also explained how Micron, Amidi, U.S. Patent No. 5,926,827 ("Dell 2"), and Double Data Rate (DDR) SDRAM Specification, JEDEC Standard No. 79C, March 2003 ("JEDEC 79C") rendered obvious the new claims.  *Id.*  The Examiner adopted some aspects of the grounds raised by Google, rejected other aspects, and declined to adopt other grounds.  *See* October 14, 2011 Non-Final Office Action. Netlist responded by canceling some of its claims, amending most of the remaining claims, and adding new claims 119–136.  *See* January 14, 2012 Netlist's Response after Non-Final Action. Google again responded by continuing to argue, among other things, that Micron, Amidi, Dell 2, and/or JEDEC 79C rendered obvious a set of the pending claims.  *See* February 23, 2012 Google's Response.

The Examiner then adopted additional grounds for rejection and maintained certain earlier rejections.  *See* November 13, 2012 Non-Final Action.  Netlist responded by canceling certain claims, further amending other claims, and arguing against the rejections.  *See* January 14, 2013 Netlist's Response after Non-Final Action.  Google again explained why various

combinations of Micron, Amidi, Dell 2, and JEDEC 79C (among other references) rendered the claims obvious.  *See* February 13, 2013 Google's Response.

The Examiner issued an Action Closing Prosecution, which maintained several rejections, withdrew others, and found certain rejections moot due to Netlist canceling certain claims.  *See* March 21, 2014 Action Closing Prosecution.  The Examiner issued a Right of Appeal Notice, and Google appealed the Examiner's unadopted portions of certain grounds.  *See* July 18, 2014 Google's Notice of Appeal.  Netlist cross-appealed on the grounds of rejection the Examiner maintained.  *See* July 30, 2014 Netlist's Notice of Cross Appeal.

The PTAB, in its first appeal decision, affirmed the Examiner's adoption of certain aspects of the ground involving Micron in view of Amidi, reversed the Examiner's refusal to adopt other aspects of this ground, reversed the Examiner's refusal to adopt the ground involving Micron in view of Amidi and Olarig, and declined to reach the merits on the ground involving Micron in view of Amidi, Dell 2, and JEDEC 79C.  *See* June 6, 2016 Decision on Appeal.

Netlist then requested that the PTO reopen prosecution, canceling certain claims and amending most of the remaining claims.  *See* July 31, 2016 Netlist's Response Requesting to Reopen Prosecution.  It was in this set of amendments in which Netlist amended claim 1 and several other claims to include the following language:

- "wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock signal to the plurality of DDR memory devices, the logic element, and the register" ("PLL device limitation");
- "wherein, the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered bank address signals to the plurality of DDR memory devices" ("register limitation"); and
- "wherein the logic element generates gated column access strobe (CAS) signals or chip-select signals of the output control signals in response to at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at

least one chip-select signal of the set of input control signals and (iv) the PLL clock signal." ("logic element limitation").

Netlist asserted that these three amendments were "principal amendments to overcome the new grounds of rejection" and further stated that, "[t]o address the Board's rejection, Patent Owner narrowed the claim to include" the above-identified three amendments.  *Id*.  Netlist then referenced the above identified "claim amendments [to] highlight at least two differences between the '912 invention and the prior art."  *Id*.  Below are the two differences that Netlist highlighted to the PTAB:

> First, the claim amendments now require: In response to signals received from the computer system, the phaselock loop (PLL) device transmit a PLL clock to the plurality of DDR memory devices, the logic element, and the register.  Amidi transmits a PLL clock signal to the register and memory, but not the CPLD.  Thus, Amidi does not disclose the PLL device transmitting the PLL clock to the logic element; the output of PLL 606 is neither directly nor indirectly transmitted to the CPLD 604.  Additionally, a POSITA would not be motivated or inclined to transmit the PLL clock to CPLD 604.

> Second, the amended claims now also require that the logic element generates certain output signals (e.g., gated column access strobe (CAS) signals or chip-select signals recited in claim 1) in response to at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal.  Amidi's CPLD 604 never receives bank address signals and hence Amidi's control signals cannot be generated based on bank address signals.  Instead, the control signals (rcs0a, rcs0b, rcs1a, rcs1b, rcs2a, rcs2b, rcs3a, and rcs3b) are based on the row address signals and chip-select signals.  Thus, Amidi does not disclose the CPLD generating the gated CAS signals or chip-select signals in response to *the bank address signals*.  Moreover, since the output of PLL 606 is neither directly nor indirectly transmitted to the CPLD 604, a POSITA would understand that the PLL clock does not control the operation of CPLD 604.  Thus, Amidi is further deficient by failing to disclose the CPLD generating the gated CAS signals or chip-selected signals in response to the *PLL clock signal*.

27

*Id*. (emphasis in original) (internal citations omitted).

Netlist went on to further explain how the specific amendments above were the

distinguishing factors over Amidi:

> As amended, the claims require that the l*ogic element receives* at least one row address signal and *bank address signals*, and require that the *register (i) receives*, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the *bank address signals*, and (iii) transmit the buffered plurality of DDR memory devices.  The claims also require the plurality of row/column address signals received by the register are separate from the at least one row address signal received by the logic element.  In other words, in the confirmation recited by the claims, the bank address signals are received by the logic element, the register and the plurality of memory devices.  Under such circumstances, Amidi does not use bank address signals to generate control signals (and certainly not the bank address signals and the at least one row address signal.)  The claims, however, require generating CAS signals or chip-select signals based on a row address signal and bank address signals.
>
> Based on the above, it would not be obvious to a POSITA to combine Amidi and Dell 2 to reach the claimed invention, as amended.  For the sake of argument, however, even the proposed combination of Amidi and Dell 2 fails to disclose the claimed invention.  Therefore, even in combination, Amidi in view of Dell 2 fails to disclose all of the claim recitations of the claims.

*Id*. (emphasis in original) (internal citations omitted).

Following Google's response to Netlist's amendments and response, the PTAB remanded

the case to the Examiner and the Examiner maintained the PTAB's new grounds of rejection as

well as one additional ground.  *See* October 3, 2017 Examiner's Determination under 37 C.F.R. §

41.77(d).

The PTAB then issued its second appeal decision, affirming several prior rejections but

withdrawing many of the rejections the PTAB and the Examiner had previously maintained.  *See*

July 27, 2018 Decision on Appeal.  The withdrawn rejections corresponded to the combinations

of Micron in view of Amidi and Micron in view of Amidi and Olarig.  *Id.*  Google sought

rehearing, which the PTAB denied.  *See* January 31, 2019 Decision on Rehearing.  Google then

appealed the PTAB's decision to the Federal Circuit.

In its responsive appeal brief to the Federal Circuit, Netlist repeatedly stated that "it

*narrowed* its claims to define its precise inventive contributions over the prior art."  December

12, 2019 Netlist Response Brief (emphasis added).  Therefore, in statements to the PTAB and the

Federal Circuit, Netlist reiterated that the amendments identified above are narrowing, and that it

was these *narrowing* amendments that were Netlist's basis for arguing that the prior art at issue

does not disclose the asserted claims.  It was in response to these statements that the PTAB

withdrew its rejections of the asserted claims and the Federal Circuit affirmed the PTAB's

decision on June 15, 2020.

The *Inter Partes* Reexamination Certification for the '912 patent issued on February 8,

2021.

### *After the Claims Issued with the Narrowing Amendments, Netlist Argued in Litigation That the Amendments Did Not Change the Scope of the Claims*

After the *Inter Partes* Reexamination Certification for the '912 patent issued on February

8, 2021, Netlist resumed its litigation against Google.

On information and belief, Gail Sasaki is involved in overseeing Netlist's litigation

against Google.

On July 30, 2021, Google filed a Motion for Summary Judgment on the Issue of Absolute

Intervening Rights.  *See Netlist, Inc. v. Google LLC*, No. 4:09-cv-05718-SBA, Dkt. No. 155.

On September 3, 2021, Netlist filed its Opposition to Google's Motion for Summary

Judgement on the Issue of Absolute Intervening Rights.  *See id.*, Dkt. No. 196.  In the opposition,

Netlist argued, in direct contradiction to what it argued to the PTAB and the Federal Circuit

29

during reexamination proceedings, that the above identified claim amendments were not narrowing.  Instead, Netlist argued that "the language added during reexamination clarified what was inherent in the original claims."  Dkt. No. 196 at 17; *see also id.* at 16–24.  The N.D.Cal. Court denied Google's Motion for Summary Judgement on the Issue of Absolute Intervening Rights.  Dkt. No. 258.

If the above identified amendments were in fact inherent, as Netlist contended to overcome intervening rights, then Netlist knowingly misled the PTAB and the Federal Circuit when it distinguished the amended claims from the prior art during reexamination.

Had the PTAB and the Federal Circuit known that the amendments were in fact not "narrowing" but instead just "made express the inherent functions of the [original limitation]," the PTAB and the Federal Circuit would have found these claims obvious and not allowed them to issue.  For example, if the newly added functions were inherent in the original claim limitation, as Netlist now contends, these functions also would have been inherent in the prior art, thus rendering the claims obvious and invalid.

On information and belief, Netlist Individuals Substantively Involved in the '912 Patent Reexamination knowingly misrepresented the amendments in its arguments to the PTAB and the Federal Circuit.  Netlist Individuals Substantively Involved in the '912 Patent Reexamination had a duty of candor and good faith in dealing with the PTAB and the Federal Circuit during reexamination of the '912 patent.  That duty of candor and good faith included a duty to disclose to the PTAB and the Federal Circuit its intention not to narrow the claims at all in order to distinguish the prior art.  Instead, Netlist Individuals Substantively Involved in the '912 Patent Reexamination chose to tell both the PTAB and the Federal Circuit the opposite to convince the PTAB and the Federal Circuit to allow the claims.  This information is material to the

patentability of the claims.  By misrepresenting the intended effect of the above identified

amendments to the claims to the PTAB and the Federal Circuit, Netlist Individuals Substantively

Involved in the '912 Patent Reexamination breached its duty of candor and good faith and

showed specific intent to deceive the PTAB and the Federal Circuit.

* * * *

<u>Inequitable Conduct</u>: Any one or more acts set forth above are sufficient in and of

itself/themselves to demonstrate that Netlist committed inequitable conduct during the

reexamination of the '912 patent that renders the '912 patent unenforceable.

<u>Unclean Hands</u>: Furthermore, any one or more acts set forth above are sufficient in and of

itself/themselves to demonstrate that Netlist has unclean hands in relation to its assertion of the

'912 patent that renders the '912 patent unenforceable.

### THIRTEENTH ADDITIONAL DEFENSE
### (Intervening Rights)

Samsung incorporates by reference the facts set forth above concerning its Fourteenth

Additional Defense.  Netlist's claims are barred, in whole or in part, under principles of

intervening rights.  During reexamination of the '912 patent, Netlist canceled original claims 2,

5, 7, 9, 21, 23, 25, 26, 30, 33, 42, 44, and 51; amended claims 1, 15, 16, 28, 39, 43; and added

new claims 52-91.  Claims 3, 4, 6, 8, 10-14, 17-20, 22, 24, 27, 29, 31, 32, 34-38, 40, 41, and 45-

50 were deemed patentable because of their dependence on amended claims.  The Patent Office

issued an *Inter Partes* Reexamination Certification for the '912 patent on February 8, 2021.  In

light of these amendments and Netlist's arguments during the reexamination proceedings, all

remaining claims of the '912 patent are amended or new and, as Netlist itself argued to the

Federal Circuit, have substantively narrower scope from the originally issued claims of the '912

patent.

In light of Netlist's amendments, additions, and arguments, the making, using, selling, offering for sale, and/or importing of Samsung's Accused Products are protected by absolute and/or equitable intervening rights.  In particular, to the extent that Netlist's allegations are based on Samsung's Accused Products that were made, used, offered for sale, sold, and/or imported prior to the issuance of the reexamination certificate, absolute intervening rights bar any liability for infringement with respect to such products.  Further, to the extent Netlist's accusations are based on Samsung's Accused Products that were made, used, offered for sale, sole, and/or imported after the issuance of the reexamination certificate, the doctrine of equitable intervening rights applies, at least because Samsung made substantial preparation of those products prior to issuance of the certificate (including, for example, research and development activities and manufacturing activities pursuant to existing orders and contracts).  Accordingly, Netlist's infringement allegations are barred in whole or in part by absolute and/or equitable intervening rights under 35 U.S.C. §§ 252 and 307(b).

## **RESERVATION OF ADDITIONAL DEFENSES**

Samsung reserves the right to assert additional defenses that may surface through discovery in this action.


Date: January 10, 2023                          Respectfully submitted,

                                                */s/ Michael J. McKeon*

                                                Ruffin B. Cordell
                                                TX Bar No. 04820550
                                                cordell@fr.com
                                                Michael J. McKeon
                                                D.C. Bar No. 459780
                                                mckeon@fr.com
                                                Lauren A. Degnan
                                                D.C. Bar No. 452421
                                                degnan@fr.com

Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Katherine H. Reardon
NY Bar No. 5196910
kreardon@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St., NE, 21st Floor
Atlanta, GA 30309
Telephone: 404-892-5005
Facsimile:  404-892-5002

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257

*Attorneys for Defendants Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on January 10, 2023.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Michael J. McKeon*