# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-293-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO, LTD; | ) | (Lead Case) |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC.; SAMSUNG SEMICONDUCTOR | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-294-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC.; | ) | |
| MICRON SEMICONDUCTOR | ) | |
| PRODUCTS, INC.; MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF NETLIST, INC.'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE ITS SECOND AMENDED COMPLAINT AGAINST SAMSUNG (DKT. 62)

# **TABLE OF CONTENTS**

**Page**

I.      The Rule Against Claim Splitting Does Not Prevent Netlist's Leave to Amend............1

II.     Netlist's Motion for Leave to Amend Would Not Circumvent this Court's
        Evidentiary Ruling in the Separate Action ...........................................................................4

III.    Netlist Properly Sought Leave to Amend and Good Cause Exists..................................5

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arsus, LLC v. Tesla, Inc.*,
    2022 WL 7145485 (W.D. Tex. Oct. 12, 2022) .................................................................................2

*Davis-Lynch, Inc. v. Hilcorp Energy* Co.,
    2009 WL 10659687 (E.D. Tex. Nov. 18, 2009) *adopted* 2010 WL 11553311
    (E.D. Tex. Jan. 4, 2010) ..............................................................................................................1

*Gillig v. Nike Inc.*
    602 F.3d 1354 (Fed. Cir. 2010) ................................................................................................4

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*
    58 F.3d 616 (Fed. Cir. 1995) .....................................................................................................4

*Oyster Optics, LLC v. Cisco Sys., Inc.*,
    2021 WL 1530935 (E.D. Tex. Apr. 16, 2021) .......................................................................1, 4

*In re PersonalWeb. Tech LLC*,
    961 F.3d 1365 (Fed. Cir. 2020) ................................................................................................2

*SimpleAir, Inc. v. Google LLC*,
    884 F.3d 1160 (Fed. Cir. 2018) .............................................................................................1, 2

*UCB, Inc. v. Accord Healthcare, Inc.*,
    890 F.3d 1313, 1323 (Fed. Cir. 2018), *cert. denied, Accord Healthcare, Inc. v. UCB, Inc.*,
    139 S. Ct. 574 (2018) .................................................................................................................1

*XY, LLC v. Trans Ova Genetics, LC*,
    968 F.3d 1323 (Fed. Cir. 2020) ................................................................................................2

**Other Authorities**

Rule 16 ................................................................................................................................................5

## I.      The Rule Against Claim Splitting Does Not Prevent Netlist's Leave to Amend

Under the controlling Federal Circuit law, a claim splitting analysis "requires comparing the patents' claims." *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1167–68 (Fed. Cir. 2018). In *Simple Air*, the Federal Circuit held that: "a court may not presume that assertions of a parent patent and a terminally-disclaimed continuation patent against the same product constitute the same cause of action. Rather, the claim preclusion analysis requires comparing the patents' claims along with other relevant transactional facts." 884 F.3d at 1167–68. Samsung—the party asserting claim splitting—bears the burden of proof. *See Oyster Optics, LLC v. Cisco Sys., Inc.*, 2021 WL 1530935, at *4 (E.D. Tex. Apr. 16, 2021) (finding Cisco "has not met its burden to prove that the claims of the '516 Patent are essentially the same as those of any of the previously litigated claims"); *Davis-Lynch, Inc. v. Hilcorp Energy* Co., 2009 WL 10659687, at *2 (E.D. Tex. Nov. 18, 2009), *adopted*, 2010 WL 11553311 (E.D. Tex. Jan. 4, 2010).  Samsung has failed to do so.

***First***, Samsung's claim splitting argument is procedurally inappropriate. Samsung's proposed approach would require this Court to conduct claim construction at an early stage of this case where Netlist simply moves for leave to amend.  Neither Netlist nor Samsung has briefed the claim construction issues of the '608 patent in this case, and this Court has not held a *Markman* hearing. Tellingly, Samsung did not identify any cases where the court denied motion for leave to amend based on claim splitting, which is an issue that is typically decided after claim construction. *See, e.g.*, *UCB, Inc. v. Accord Healthcare, Inc.*, 890 F.3d 1313, 1323 (Fed. Cir. 2018), *cert. denied*, *Accord Healthcare, Inc. v. UCB, Inc.*, 139 S. Ct. 574, 574 (2018) (holding a court must first construe the claims "and determine[] the differences" between them before it can determine "whether those differences render the claims patentably distinct"). In *Oyster Optics*, this Court clearly explained: "It is a contested issue of fact whether the scope of the asserted claims of the '516 Patent are essentially the same as any other patent claims. Once the Court has construed the claims, [the accused infringer] may present evidence to the jury—*e.g.*, evidence that the claims are patentably

- 1 -

indistinct from others—to prove its assertion that the claims are essentially the same as other claims previously litigated." 2021 WL 1530935, at *4; *see also Arsus, LLC v. Tesla, Inc.*, 2022 WL 7145485, at *2 (W.D. Tex. Oct. 12, 2022) (finding the defendant's motion to dismiss based on claim preclusion as "premature and inappropriate" because "the Court would need to construe the claims in this case before it could even compare their scope against that of the claims asserted [in the prior action]"); *cf. In re PersonalWeb. Tech LLC*, 961 F.3d 1365 (Fed. Cir. 2020) (discussing preclusion issue on summary judgment).

**Second**, Samsung failed to provide the required claim-by-claim comparison of the two different patents. *See generally* Dkt. 69 (Opp.). Instead, Samsung focused its argument on the facts that Netlist filed a terminal disclaimer in the prosecution of the '506 patent to overcome a double-patenting rejection over the '608 patent, and that the '608 and '506 patents belong to the same patent family, share specifications, and are asserted against the same products. *See* Dkt. 69 at 7-8. But the Federal Circuit has explicitly held that these facts are insufficient for raising a claim splitting objection. *See SimpleAir*, 884 F.3d at 1166 (vacating the district court's decision because sharing a common specification and filing a terminal disclaimer are "not sufficient to sustain the district court's holding of claim preclusion"); *see also XY, LLC v. Trans Ova Genetics, LC*, 968 F.3d 1323, 1333-35 (Fed. Cir. 2020) (vacating the dismissal of infringement claims based on claim preclusion because the district court had "fail[ed] to compare the scope of the patent claims" even though the accused products are the same in both lawsuits between the parties).

**Third**, Samsung's bare conclusory assertion that the two patents only have "minor differences" that "do not alter the facts implicated by Netlist's claims for infringement" (Dkt. 69 at 8) does not carry Samsung's burden to show that the '506 and '608 patents have essentially identical claims.  To the contrary, the claims of the two patents disclose different aspects of memory technologies and require different infringement analysis as to the accused products.

By way of example, the '608 patent addresses the receipt and output of a "***module clock***

*__signal__*' and teaches the delay of data on the data path, which are not discussed in the '506 patent.

Elements 1b, 1c, 1d1 and 1d2 of the '608 patent claim 1 provide:

> **(1b)**  a module control device mounted on the module board . . ., the module control device **being further configured to receive a system clock signal and output a module clock signal; and**
>
> **(1c)** memory devices mounted on the module board and configured to receive the module command signals and the **module clock signal,** and to perform the memory operations in response to the module command signals . . . .
>
> **(1d1)** a plurality of buffer circuits corresponding to respective sets of the plurality of sets of data/strobe signal lines, wherein each respective buffer circuit of the plurality of buffer circuits is mounted on the module board, coupled between a respective set of data/strobe signal lines and a respective set of memory devices**, and configured to receive the module control signals and the module clock signal,**
>
> **(1d2)** the each respective buffer circuit including *a data path corresponding to each data signal line* in the respective set of data/strobe signal lines, and a command processing circuit configured to decode the module control signals and *to control the data path in accordance with the module control signals and* **the module clock signal**
>
> **(1d3)** wherein *the data path corresponding to the each data signal line* includes at least one tristate buffer controlled by the command processing circuit and a delay circuit configured to *delay a signal through the data path by an amount determined by the command processing circuit in response to at least one of the module control signals.*

Dkt. 62-4 at 44 ('608 patent, cl.1); *see also* Ex. 1 ('608 PICs) (emphasis added).  These aspects are not recited in the claims of the '506 patent. *See* Ex. 3 (chart comparing the dependent claims of the '608 patent and '506 patent asserted by Netlist).  In contrast, the '506 patent teaches the delay of a "*__read strobe__*" by a data buffer for sampling read data in accordance with a predetermined amount.  Elements 1h-1l of claim 1 of the '506 patent provide:

> (**1h**) wherein a first data buffer of the data buffers is coupled to the first memory device and is configurable to, in response to one or more of the module control signals
>
> (1i) **delay the first read strobe** by a first predetermined amount to **generate a first delayed __read strobe__**
>
> (1j) **sample the first section of the read data using the first delayed __read strobe__**;
>
> (1k) transmit the first section of the read data to a first section of the data bus; [and]
>
> (1l) wherein t**he first predetermined amount is determined based at least on signals received by the first data buffer during one or more previous operations**

Dkt. 69-3 at 42 (cl. 1 of the '506 patent); *see also* Ex. 2 (Netlist's PICs of the '506 patent).  These

elements, however, are not recited by the claims of the '608 patent.  *See* Exs. 1-3. Samsung does not contend a read strobe and a memory module's clock signal are the same; they are not—a read strobe is related to capturing data signals specifically (which is not transmitted on data signal lines), whereas a clock signal is related to the overall timing and regulation of all signaling on the module. *See* Ex. 5 (Mangione-Smith Decl.) ¶ 28.  As in *Oyster Optics*, there is "a contested issue of fact whether the scope of the asserted claims of the ['608 and '506 patents] are essentially the same" that requires claim construction and jury decision. 2021 WL 1530935, at *4.

Samsung's cited cases are inapposite. For example, *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha* involved a patentee that brought infringement claims of the **same** patent in separate proceedings. 58 F.3d 616, 618 (Fed. Cir. 1995) (summary judgment decision). And *Gillig v. Nike Inc.* did not address the similarity or difference of two patents in the same family but instead found *res judicata* barred the plaintiff from raising a claim based on a purported assignment of trade secrets rights in 2000 where the earlier court had found "that there was no assignment of rights in 2000." 602 F.3d 1354 (Fed. Cir. 2010). Here, Netlist's patent infringement claims under the '608 patent are not based on the same operative facts because the infringing features of Samsung's products are different in this Action than those in *Samsung I*.

## II.   Netlist's Motion for Leave to Amend Would Not Circumvent this Court's Evidentiary Ruling in the Separate Action

Samsung's allegation that Netlist moved to add the '608 patent to bypass this Court's ruling in *Samsung I* is simply false. **First**, on December 23, 2021, Micron filed a petition for IPR against the '608 patent. IPR2022-237. Shortly after the USPTO denied the IPR petition on September 16, 2022, *Id.* (paper 17), Netlist conducted an investigation of Samsung's activities as to the '608 patent, determined there was infringement, and promptly notified Samsung that it intended to seek leave to add the patent to this case on December 27, 2022. Dkt. 62-5.; *see also* Sheasby Decl. ¶ 3. While receiving Netlist's draft motion for leave to amend the complaint to

assert the '608 patent in December 2022, Samsung did not confirm it would be opposing Netlist's motion until January 12. Netlist promptly finalized and filed the motion one week later. Dkt.62. Thus, the record shows that the timing of Netlist's filing of this motion was not related to the Court's previous order.

      ***Second***, during the January 19, 2023 hearing, this Court granted Samsung's motion to strike on the ground that "it is too late in mid-December with the [] fact discovery closing on the 22nd of December [for Netlist] to bring in" the relevant documents. Ex. 4 at 57:21-23. However, as detailed in Netlist's opening brief, this case is still at an early stage and fact discovery does not close until November 13, 2023, which is eleven months after Netlist notified Samsung of its intent to add the '608 patent. Dkt. 62, at 8. Thus, Samsung's argument regarding prejudice is unfounded.

## III.   Netlist Properly Sought Leave to Amend and Good Cause Exists

      While the DCO requires Netlist to seek leave to assert additional patents, it does not provide that Rule 16 good-cause standard automatically applies as Samsung argues. *See* Dkt. 55 at 4 ("It is not necessary to seek leave of Court to amend pleadings prior to this deadline unless the amendment seeks to assert additional patents."); *cf.* Opp. at 17.

      Netlist did not assert the '608 patent at the commencement of this Action because of the pending Micron IPR petition. *See* IPR2022-237. After the USTPO denied the petition and Micron's request for rehearing, Netlist immediately conducted its infringement investigation and promptly moved to add the '608 patent here.  Netlist also agreed to extend Samsung's deadline to file its invalidity contentions to April 13, 2023, Dkt. 70, and has already provided Samsung with its supplemental PICs for the '608 patent on February 7, to ensure no prejudice. Samsung's concern of Netlist's "double recovery" and the potential prejudice as a result of "duplicative litigation" are premised on its unsupported assertion that the '608 and '506 patents are essentially identical—which is not true and at best a factual dispute that should be adjudicated by the jury, instead of at the motion for leave to amend stage.

Dated: February 24, 2023

Respectfully submitted,

/s/ Jason G. Sheasby
Jason G. Sheasby

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com

**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (CA #205455)
jsheasby@irell.com
Annita Zhong (CA #266924)
hzhong@irell.com
Jonathan Lindsay (CA #208840)
jlindsay@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199
***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that, on February 24, 2023, a copy of the foregoing was served to all counsel of record.

/s/ Jason G. Sheasby
Jason G. Sheasby

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

- 6 -

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Jason G. Sheasby*
Jason G. Sheasby