UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.<br><br>    Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD, et al.<br><br>    Defendants. | Civil Case No. 2:22cv00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.<br><br>    Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.<br><br>    Defendants. | Civil Case No. 2:22cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING ITS ABSOLUTE INTERVENING RIGHTS DEFENSE**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................. 1 |
| II. | STATEMENT OF THE ISSUE.............................................................................. 2 |
| III. | STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................... 2 |
| IV. | LEGAL STANDARD FOR SUMMARY JUDGMENT........................................ 5 |
| V. | ARGUMENT.......................................................................................................... 5 |
| | A. Absolute Intervening Rights Apply to the Asserted DDR2/DDR3 Claims............ 5 |
| |     1. The Asserted DDR2/DDR3 Claims Are Amended or New Claims ........... 6 |
| |     2. Netlist Substantively Narrowed the Asserted DDR2/DDR3 Claims.......... 6 |
| |     3. No Plausible Claim Construction Would Avoid Intervening Rights........ 10 |
| | B. Absolute Intervening Rights Apply to All Samsung DDR2/DDR3 Products ...... 11 |
| VI. | CONCLUSION..................................................................................................... 11 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Fam. Life Assurance Co. of Columbus v. Biles*,
    714 F.3d 887 (5th Cir. 2013) ...................................................................................................11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..................................................................................................................5

*Avondale Shipyards, Inc. v. Insured Lloyd's*,
    786 F.2d 1265 (5th Cir. 1986) ..................................................................................................6

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
    1 F.3d 1214 (Fed. Cir. 1993) ....................................................................................................5

*Convolve Inc. v. Compaq Comput. Corp.*,
    812 F.3d 1313 (Fed. Cir. 2016) ................................................................................................8

*Google LLC v. Netlist, Inc.*,
    810 F. App'x 902 (Fed. Cir. 2020) ...........................................................................................4

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
    755 F.3d 1367 (Fed. Cir. 2014) ..............................................................................................10

*Jethroe v. Omnova Sols., Inc.*,
    412 F.3d 598 (5th Cir. 2005) ....................................................................................................7

*Laitram Corp. v. NEC Corp.*,
    163 F.3d 1342 (Fed. Cir. 1998) ............................................................................................5, 7

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
    672 F.3d 1350 (Fed. Cir. 2012) (*en banc*) ...........................................................................5, 11

*Power Integrations, Inc. v. Lee*,
    797 F.3d 1318 (Fed. Cir. 2015) ................................................................................................8

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
    65 F.4th 698 (Fed. Cir. 2023) .................................................................................................10

*Trs. in Bankr. of N. Am. Rubber Thread Co. v. U.S.*,
    593 F.3d 1346 (Fed. Cir. 2010) ................................................................................................7

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
    200 F.3d 795 (Fed. Cir. 1999) ................................................................................................10

*Wahpeton Canvas Co. v. Frontier, Inc.*,
 870 F.2d 1546 (Fed. Cir. 1989) .................................................................................................6

**Statutes**

35 U.S.C. § 252 ............................................................................................................................11

35 U.S.C. § 316(b) (2012) ........................................................................................................5, 6

**Other Authorities**

Fed. R. Civ. P. 56(a) .....................................................................................................................5

Fed. R. Civ. P. 56(d) ...................................................................................................................11

# TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | Netlist's July 31, 2016, Remarks in Reexamination Control Nos. 95/000,578, 95/000,579, and 95/001/339 Regarding United States Patent No. 7,619,912 |
| B | February 8, 2021, Inter Partes Reexamination Certificate for United States Patent No. 7,619,912 |
| C | Second Supplemental Declaration of Dr. Carl Sechen, filed by Netlist on July 31, 2016 in Reexamination Control Nos. 95/000,578, 95/000,579, and 95/001/339 Regarding United States Patent No. 7,619,912 |
| D | Decision Under 37 C.F.R. § 41.77(f), *Inphi Corp. et al. v. Netlist, Inc.*, Reexamination Control Nos. 95/000,578, 95/000,579, and 95/001/339 Regarding United States Patent No. 7,619,912 (PTAB June 1, 2018) |
| E | Response Brief for Cross-Appellant Netlist, Inc., *Google LLC v. Netlist, Inc.*, Nos. 19-1720, 19-1721, 19-1722, 19-1723, 19-1724 (Fed. Cir. Dec. 12, 2019) |
| F | Plaintiff Netlist, Inc.'s Disclosure of Asserted Claims and Infringement Contentions (Nov. 17, 2022) |
| G | Declaration of SungJun Ahn |
| H | Order on Google's Motion to Strike, Google and Netlist's Respective Motions for Summary Judgment, and Google's Motion to Amend, *Netlist, Inc. v. Google LLC*, No. 3:09-cv-05718-RS (N.D. Cal. May 5, 2022) (Dkt. No. 258) |
| I | Joint Claim Construction and Prehearing Statement under Patent L.R. 4-3, *Netlist, Inc. v. Google LLC*, No. 3:09-cv-05718-RS (N.D. Cal. May 5, 2022) (Dkt. No. 45) |
| J | Screenshot of spreadsheet (SAM-NET-293_00020957) showing Samsung's most recent shipments of DDR2 and DDR3 products |
| K | Screenshot of a spreadsheet (SAM-NET-293_00020958) showing SSI's most recent sales of DDR2 FBDIMM products |
| L | Screenshot of excerpts from a spreadsheet (SAM-NET-293_00020960) showing SEC's most recent sales of DDR3 LRDIMM products |
| M | Screenshot of excerpts from a spreadsheet (SAM-NET-293_00021023) showing SEC's most recent sales of DDR3 RDIMM and DDR3 VLPRDIMM products |
| N | Screenshot of excerpts from a spreadsheet (SAM-NET-293_00020959) showing SSI's most recent sales of DDR3 LRDIMM, RDIMM, and VLPRDIMM products |

\* All attached exhibits have been limited to relevant, cited-to excerpts (in addition to any necessary context) and have had cited portions highlighted (except where all or almost all of a document is cited), in conformance with Local Rule CV-7(b).

\*\* All emphasis in this brief is added, unless otherwise specified

I.  INTRODUCTION

Netlist was forced to significantly narrow the '912 patent during reexamination to avoid the prior art. Those amendments result in absolute intervening rights as a matter of law. The issue is ripe for resolution now, and granting partial summary judgment will significantly streamline the case by removing entire categories of accused products from further consideration. Specifically, absolute intervening rights bar Netlist's assertion of the Asserted DDR2/DDR3 Claims[1] of the '912 patent against Samsung's legacy DDR2 and DDR3 products, which Samsung has not made or sold since those claims were amended during reexamination.

There is no genuine dispute concerning the relevant facts. Netlist narrowed the Asserted DDR2/DDR3 Claims during reexamination to obtain their allowance over the prior art, thus giving rise to absolute intervening rights for products made, used, sold, or imported before the reexamination certificate's issuance on February 8, 2021. Those intervening rights cover all Samsung's allegedly-infringing activity with respect to the accused DDR2 and DDR3 products because Samsung has not made or sold any DDR2 or DDR3 products since that date.

Netlist cannot legitimately dispute that its amendments were narrowing. The amendments added nearly 200 words to every Asserted DDR2/DDR3 Claim, and there is no basis for characterizing all these new limitations as merely part of the original claim scope. Both Netlist and its reexamination expert explicitly described the amendments as narrowing, and the PTAB and Federal Circuit relied on those arguments in allowing the claims. Judicial estoppel precludes Netlist from now arguing that the amendments had no effect on claim scope. Further,

---

[1] The "Asserted DDR2/DDR3 Claims" are claims 1, 3, 4, 6, 8, 10, 11, 15, 18, 19, 20, 22, 24, 27, 28, 29, 31, 32, 34, 36, 37, 38, 39, 40, 41, 43, 45, 46, 47, 50, 52, 53, 54, 55, 56, 57, 58, 59, 60, 62, 63, 64, 65, 69, 70, 71, 72, 73, 74, 75, 77, and 80-91 of the '912 patent. *See* Ex. F at 5. This motion does not seek summary judgment as to claim 16 of the '912 patent, which is asserted against different products and raises different issues.

1

Netlist's concession during reexamination that its extensive amendments were narrowing is correct as a matter of law, as the Northern District of California already concluded.[2]

This issue should be decided now. No plausible claim construction would alter the conclusion that Netlist's amendments changed the scope of its claims. No plausible additional discovery would alter the simple fact that Samsung stopped making or selling the Accused DDR2/DDR3 Products before the reexamination certificate. Summary judgment is warranted.

## II.   STATEMENT OF THE ISSUE

Does the application of absolute intervening rights bar Netlist's allegations based on the Asserted DDR2/DDR3 Claims?

## III.  STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Netlist and Google have been embroiled in litigation in the N.D. Cal. concerning the '912 patent for over a decade. During that dispute, Google filed a request for *inter partes* reexamination with the PTO.

2. During reexamination, Netlist made three "principle [sic] amendments" to the '912 patent's claims, which "**narrowed** the claim" "to overcome" the PTAB's "rejection." Ex. A (Netlist's remarks accompanying amendment) at 47, 50.

3. One of these amendments concerned the claimed "phase-lock loop (PLL) device." Ex. A at 47-48. Netlist added the following language to claim 1:

> wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock signal to the plurality of DDR memory devices, the logic element, and the register[.]

---

[2] Samsung's motion to sever and transfer the '912 patent to the NDCA remains pending, Dkt. No. 20, and the overlapping issues regarding intervening rights further support Samsung's motion to transfer, as set forth in Samsung's supplemental brief, Dkt. No. 76. The Court should sever and transfer the '912 in to the NDCA; however, if the Court declines to do so, it should grant summary judgment of absolute intervening rights as to the Asserted DD2/DDR3 Claims.

*Id.* at 48; Ex. B ('912 patent reexamination certificate) at 1:61-64.

4. Another amendment concerned the claimed "register." Ex. A at 47-48. Netlist added the following language to claim 1:

> wherein the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered bank address signals to the plurality of DDR memory devices, wherein the at least one row/column address signal received by the logic element comprises at least one row address signal received by the logic element, and wherein the plurality of row/column address signals received by the register are separate from the at least one row address signal received by the logic element[.]

*Id.* at 48; Ex. B at 1:65-2:11.

5. A third amendment concerned the claimed "logic element." Ex. A at 47, 49. Netlist added the following language to claim 1:

> wherein the logic element generates gated column access strobe (CAS) signals or chip-select signals of the output control signals in response at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal.

*Id.* at 49; Ex. B at 2:11-18.

6. These three added limitations (or "identical or nearly identical recitations") appear in every Asserted DDR2/DDR3 Claim either directly or by dependency. Ex. A at 47-49; Ex. B at 1:17-22, 1:61-2:18, 2:52-3:8, 4:12-34, 5:4-14:60; Dkt. No. 12-1 ('912 patent) at 33:34-38:28.

7. During reexamination, Netlist argued that amendments concerning the PLL and logic element distinguished the combination of the Amidi and Dell 2 references. Ex. A at 50-53.

8. Netlist supported its patentability arguments with an expert declaration asserting that the amendments distinguished the prior art by "narrow[ing] the scope of the claim[s]." Ex. A at 50-53; Ex. C (Netlist's reexamination expert declaration) at 3-6, 8-9.

9. The PTAB cited Netlist's expert testimony concerning the narrowed "logic

3

element" limitation in distinguishing the prior art and withdrawing the rejections.  Ex. D (PTAB decision during reexamination) at 1, 16-22.

10. Google appealed to the Federal Circuit.  Netlist defended the PTAB's reliance on its arguments concerning the "logic element" limitation and stated that Netlist had "narrowed its claims" to "distinguish" them "over prior art."  Ex. E (Netlist appeal brief) at 1, 11-12.

11. The Federal Circuit affirmed the PTAB's decision.  *Google LLC v. Netlist, Inc.*, 810 F. App'x 902 (Fed. Cir. 2020) (Mem).

12. Asserted claims 1, 3, 4, 6, 8, 10, 11, 15, 18, 19, 20, 22, 24, 27, 28, 29, 31, 32, 34, 36, 37, 38, 39, 40, 41, 43, 45, 46, 47, and 50 were substantively amended and narrowed during the reexamination, either directly or by dependency on amended claims.  Ex. A at 47-49; Ex. B at 1:17-22, 1:61-2:18, 2:52-3:8, 4:12-34, 5:4-14:60; Dkt. No. 12-1 ('912 patent) at 32:59-38:28.

13. Claims 52-91 of the '912 patent were added during the reexamination.  Ex. B at 1:23-24, 5:28-14:60.

14. The reexamination certificate issued on February 8, 2021.  Ex. B at (45).

15. Netlist asserts the Asserted DDR2/DDR3 Claims against the Accused DDR2/DDR3 Products.  Ex. F (excerpts of Netlist's infringement contentions) at 5.[3]

16. Samsung has not made, sold, offered for sale, or imported any Accused DDR2/DDR3 Products in the United States since ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17. Samsung has not made, sold, offered for sale, or used any Accused DDR2/DDR3 Products in the United States since February 8, 2021, that were not imported, made, offered for

---

[3] Netlist has since moved to amend its P.R. 3-1 and 3-2 disclosures but does not seek to change the asserted claims or accused products.  Dkt. No. 68.  That motion thus does not affect this one.

4

sale, or used within the United States before that date. Ex. G ¶ 10, 12.

## IV.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## V.  ARGUMENT

### A.  Absolute Intervening Rights Apply to the Asserted DDR2/DDR3 Claims

Intervening rights arise when a patentee changes the scope of its claims after issuance, such as by reissue or amendment during reexamination. *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1361-62 (Fed. Cir. 2012) (*en banc*). "[A]fter a patent emerges from reexamination, the statute makes available absolute and equitable intervening rights to the same extent provided in the reissue statute, but only with respect to 'amended or new' claims." *Id.*; 35 U.S.C. § 316(b) (2012). "[A]bsolute" intervening rights are so named because an accused infringer has "an absolute right to use or sell a product that was made, used, or purchased before the grant of [a] reissue patent," in the case of reissue, *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220-21 (Fed. Cir. 1993), or "prior to issuance of a [reexamination] certificate," in the case of a reexamination, 35 U.S.C. § 316(b) (2012). In the reexamination context, intervening rights apply only if the claims' scope was substantively changed during reexamination. *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998). A substantive change in claim scope occurs when the patentee narrows the claims through amendment, as Netlist did here, *id.* at 1348-49, or through arguments the patent owner makes to distinguish prior art, *Marine Polymer*, 672 F.3d at 1365.

The NDCA thoroughly addressed the issue of whether intervening rights apply to the

5

Asserted DDR2/DDR3 Claims in the Netlist-Google litigation, holding that Netlist's infringement claims against Google based on the Asserted DDR2/DDR3 Claims were barred by absolute intervening rights. Ex. H (NDCA Order) at 20-28. Although the NDCA Court's order granting partial summary judgment is not sufficiently "final" to give rise to collateral estoppel in the Fifth Circuit, it nevertheless remains highly persuasive authority directly addressing the intervening rights issue here, *see Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269-73 (5th Cir. 1986), and there is no basis to reach a different conclusion.

### 1. The Asserted DDR2/DDR3 Claims Are Amended or New Claims

The Asserted DDR2/DDR3 Claims can be divided into three groups. ***First***, claims 1, 15, 28, 39, and 43 were "determined to be patentable as amended," including additional limitations concerning the PLL, register, and logic element. Ex. B at 1:18-19, 1:61-2:18, 2:52-3:8, 4:12-34, 5:4-27. Thus, those claims are "amended." 35 U.S.C. § 316(b) (2012). ***Second***, claims 3, 4, 6, 8, 10, 11, 18-20, 22, 24, 27, 29, 31, 32, 34, 36-38, 40, 41, 45-47, and 50 all depend from claims that were amended during reexamination. Ex. B at 1:20-22. Because "a dependent claim includes all the limitations of the claim from which it depends," these claims are also "amended" under § 316(b) (2012). *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989). ***Third***, claims 52-60, 62-65, 69-75, 77, and 80-91 were "added" during reexamination and are thus "new" claims under § 316(b) (2012). Ex. B at 1:23-24. The NDCA Court held that all these claims are "amended or new"; indeed, Netlist never argued otherwise. Ex. H at 20.

### 2. Netlist Substantively Narrowed the Asserted DDR2/DDR3 Claims

#### a. Judicial Estoppel Precludes Netlist from Disputing That at Least the "Logic Element" Amendments Narrowed Its Claims

Netlist is judicially estopped from disputing that it narrowed the scope of its claims. "A court should apply judicial estoppel if (1) the position of the party against which estoppel is

6

sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005). The first element is satisfied because contending that no "substantive changes have been made to the original claims," *Laitram*, 163 F.3d at 1346, would plainly be inconsistent with Netlist's repeated statements to the PTO and the Federal Circuit that Netlist had "***narrowed*** its claims." Ex. A at 50-53; Ex. C at 5; Ex. E at 1, 11-12. Netlist's repeated, emphatic statements also refute any suggestion that its prior positions were inadvertent. Ex. A at 51 ("To address the Board's rejection, Patent Owner ***narrowed the claim*** . . . ."); Ex. C at 5 ("A POSITA would understand that the amendments ***narrow the scope*** of the claim . . . ."). Indeed, ***the very first sentence*** of Netlist's Federal Circuit brief emphasized that its claims were "narrowed." Ex. E at 1.

The remaining factor—whether the party "convinced a court to accept the prior position," *Jethroe*, 412 F.3d at 600—is also satisfied. In allowing the amended and new claims, the PTAB specifically relied on the added "logic element" recitations requiring generating CAS or chip-select signals based on four different input signals (i) to (iv). Ex. D at 16-22. Further, the PTAB repeatedly cited paragraph 26 of Netlist's expert declaration for its factual findings, *id.*—and that paragraph emphasizes that the combination of using "both the bank address signals and a row address signal for rank multiplication or the generation of chip-select signals or CAS signals" is a feature of the "***narrower*** claim," as amended. Ex. C at 9 (¶26). Hence, there can be no dispute that the PTAB relied on Netlist's arguments concerning narrowing its claims.

Because "judicial estoppel applies just as much when one of the tribunals is an administrative agency as it does when both tribunals are courts," the PTAB's reliance on Netlist's argument that it narrowed its claims is sufficient to establish judicial estoppel. *Trs. in*

7

*Bankr. of N. Am. Rubber Thread Co. v. U.S.*, 593 F.3d 1346, 1354 (Fed. Cir. 2010). Further, although the Federal Circuit did not issue an opinion, it necessarily relied on those same arguments because its review was "confined to 'the grounds upon which the Board actually relied.'" *Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1326 (Fed. Cir. 2015) (quoting *In re Applied Materials, Inc.*, 692 F.3d 1289, 1294 (Fed. Cir. 2012)). All the elements of judicial estoppel are therefore met.

Netlist affirmatively argued that its amendments were narrowing, and must be held to its arguments. Patent owners and applicants can and often do amend their claims without conceding that the amendments are narrowing. *E.g.*, *Convolve Inc. v. Compaq Comput. Corp.*, 812 F.3d 1313, 1325 (Fed. Cir. 2016) (noting that the patentee described its amendment as "clarifying"). Here, however, Netlist made a strategic decision to argue affirmatively that its amendments were narrowing to secure the allowance of the claims by the Patent Office and affirmance by the Federal Circuit. Ex. A at 50-53; Ex. C (Netlist's reexamination expert declaration) at 3-6, 8-9; Ex. E at 1, 11-12. The public is entitled to hold Netlist to its word.

    **b.  In Any Event, the NDCA Court's Conclusion That Netlist Substantively Narrowed Its Claims Is Correct**

Even if judicial estoppel did not bind Netlist, there is no basis to depart from the NDCA Court's well-reasoned conclusion that Netlist's amendments narrowed the Asserted DDR2/DDR3 Claims. As the NDCA Court observed, "Netlist added nearly 200 words to the claims in three separate limitations" and the "breadth of the amendments bears noting." Ex. H at 23. The NDCA Court then concluded that "the 'phase-lock loop device' and 'logic element' limitations narrowed the scope of the claims" because the original claims "did not require either a PLL clock signal transmitted to the logic element or the use of a combination of bank address signals and at least one row address signal to generate control signals" and "the memory module

8

of amended claim 1 requires both." *Id.* at 25. The NDCA Court also found that "these added limitations were crucial to the allowance . . . because they overcame rejections," which is "a 'highly influential piece of prosecution history.'" *Id.* (quoting *Laitram*, 163 F.3d at 1348).

Even a cursory comparison of the original and amended claims confirms the NDCA Court's conclusion that the claims were substantively narrowed. ***First***, the amended and new claims each require a PLL clock signal transmitted to the logic element in response to signals from a computer system. *E.g.*, Ex. B at 1:61-64. The original claims did not require the PLL transmit any specific signal to the logic element, let alone in response to signals from the computer system. Dkt. No. 12-1 at 32:59-33:27. Further, Netlist argued that, although the prior art disclosed a PLL, it did not transmit the PLL clock signal to the logic element. Ex. A at 51.

***Second***, the original claims required a "register" but imposed no requirements on its functionality except to state that it is operatively coupled to the PLL. *E.g.*, Dkt. No. 12-1 at 32:59-33:27. In stark contrast, the amended and new claims add detailed requirements concerning the register's functionality, including that it (i) receive, (ii) buffer, and (iii) transmit bank address signals and a plurality of row address signals to a specific DDR memory device in response to the PLL clock signal. Ex. B at 1:65-2:11. The amended and new claims further require that the plurality of row/column address signals received by the register are separate from a row address signal received by the logic element. *Id.*

***Third***, the original claims required only that the "logic element" receive a set of input control signals and be operatively coupled to the PLL. Dkt. No. 12-1 at 32:59-33:27. The amended and new claims require the logic element to generate specific control signals ("gated column access strobe (CAS) or chip-select signals") specifically in response to "(i) the at least one row address signal, (ii) the bank address signals, (iii) the at least one chip-select signal of the

9

set of input control signals *and* (iv) the PLL clock signal." Ex. B at 2:12-18.  In reexamination, both Netlist and the PTAB relied on this added functionality to distinguish the prior art.  Ex. A at 47-53; Ex. D at 16-22.  Netlist's concession that it narrowed its claims is plainly correct.

### 3. No Plausible Claim Construction Would Avoid Intervening Rights

Formal claim construction is unnecessary to resolve this straightforward legal issue.  In general, "only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."  *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).  In deciding a motion, "a district court is free to require the party asking for construction to provide an actual proposed construction, to demonstrate that its construction is not frivolous, and to articulate how adoption of the construction would materially impact the analysis."  *See Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023).  There is no plausible claim construction proposal for arguing that the original claim scope was not changed by the narrowing claim amendments concerning the PLL, register, and logic element.  The '912 patent specification is devoid of lexicography or disavowal sufficient to permit reading all these requirements into the original claims.  *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).  Further, the prosecution history overwhelmingly supports the conclusion that the claims were—as Netlist explicitly said—"narrowed."  Ex. A at 47-53; Ex. D at 16-22; Ex. E at 1, 11-12.  The intrinsic evidence is thus conclusive that the original claims lacked the added requirements of the amended and new claims.

Furthermore, in the NDCA litigation, Netlist agreed to constructions of "logic element," "phase-lock loop device," and "register" that omitted the additional requirements of the amended and new claims.  Ex. I.  Netlist did not "repudiate those constructions" in addressing intervening rights in NDCA, as the NDCA Court noted in rejecting Netlist's argument that further claim construction was necessary.  Ex. H at 22-23.  Accordingly, claim construction will not alter the

10

intervening rights analysis here, and there is therefore no basis to delay resolution of this motion.

### B.　Absolute Intervening Rights Apply to All Samsung DDR2/DDR3 Products

There is no genuine dispute that these absolute intervening rights apply to all Samsung's Accused DDR2/DDR3 Products. The Accused DDR2/DDR3 Products are all legacy products that Samsung has not made, sold, offered for sale, or imported in the United States since ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Furthermore, to the extent that any Accused DDR2/DDR3 Products made, sold, or imported before February 8, 2021 are or have been in continued use since that date, such continued use is protected by absolute intervening rights. 35 U.S.C. § 252; *Marine Polymer*, 672 F.3d at 1361-62; *see also* Ex. G ¶¶ 10-12.

No additional discovery is necessary to resolve this motion. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



"[N]on-moving parties requesting" a continuance under Rule 56(d) "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Am. Fam. Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (internal citations and quotations omitted). Because Netlist does not have any "plausible basis" to assert that specific facts "probably exist and . . . will influence the outcome of" this motion, it lacks any basis to seek a continuance. *Id.* (internal citations and quotations omitted).

### VI.　CONCLUSION

As a matter of law, Plaintiff cannot prove entitlement to any relief for the DDR2/DDR3 products. The Court should grant partial summary judgment of absolute intervening rights.

Date: May 31, 2023

Respectfully submitted,

*/s/ Daniel A. Tishman*
Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Katherine H. Reardon
NY Bar No. 5196910
kreardon@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St., NE, 21st Floor
Atlanta, GA 30309
Telephone: 404-892-5005
Facsimile: 404-892-5002

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670

████████████████████████████

          Telephone:  (903) 934-8450
          Facsimile:   (903) 934-9257

*Attorneys for Defendants Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

13

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on May 31, 2023.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by electronic mail.

*/s/ Daniel A. Tishman*

14