# Exhibit H

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>    Defendant.<br><br>AND RELATED COUNTERCLAIM. | Case No: 4:09-cv-05718 RS<br><br>**ORDER ON GOOGLE'S MOTION TO STRIKE, GOOGLE AND NETLIST'S RESPECTIVE MOTIONS FOR SUMMARY JUDGMENT, AND GOOGLE'S MOTION TO AMEND** |

I. **INTRODUCTION**

Netlist brings the instant action against Google for infringement of U.S. Patent No. 7,619,912 ("the '912 patent"). The '912 patent relates to memory module technology. A memory module (also known as a "dual in-line memory module" or "DIMM") contains individual memory devices (e.g., "dynamic random-access memory" or "DRAM") arranged on a printed circuit board. The memory devices are combined into sets or "ranks" to increase the capacity of the module. For a given amount of total module memory, it is more cost-effective to use a larger number of low-density memory devices, rather than a smaller number of high-density memory devices. However, most computer systems are unable to take advantage of this feature. The '912 patent overcomes this issue by, among other things, implementing circuitry into the memory module that translates between the computer system's memory controller and the memory devices on the module.

Presently pending are: (1) Google's Motion to Strike Netlist's New Assertion of Claim 16 and New Dates for Priority and Conception that Were Not in Its Original Patent Local Rule

In deciding "whether intervening rights arose from a reexamination," the first inquiry is "whether the asserted claim is 'amended or new[.]'" Marine Polymer, 672 F.3d at 1363. "Only if the claim at issue is new or has been amended may the court proceed to the second step in the analysis and assess the substantive effect of any such change pursuant to § 252." Id. The second inquiry is whether the original and reexamined claims are "substantially identical." 35 U.S.C. §§ 252. "Reexamined claims are 'identical' to their original counterparts if they are 'without substantive change.'" Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1346 (Fed. Cir. 1998) (quoting Seattle Box, 731 F.2d at 827-28)). "[I]n determining whether substantive changes have been made, [the court] must discern whether the *scope* of the claims are identical, not merely whether different words are used." Id. (emphasis in original).

### C. DISCUSSION

Google moves for summary judgment on the issue of absolute intervening rights, seeking an order that the accused products it purchased and/or used prior to February 8, 2021 are subject to this defense. Netlist opposes Google's motion and separately moves for partial summary judgment, seeking an order that Google is not entitled to a defense of intervening rights with respect to claim 16. Because the issues with respect to claim 16 are distinct, it is analyzed separately below. The remaining claims fall into two categories: claims determined to be patentable as amended (the "Amended Claims") and claims added during re-examination (the "Added Claims"). The Amended and Added Claims are addressed together.

#### 1. The Amended and Added Claims

The first inquiry in the intervening rights analysis is whether a claim is "amended or new." With the exception of claim 16 (discussed below), Netlist does not dispute that the asserted claims are amended or new. The pertinent inquiry, then, is whether the scope of the claims have been substantively changed. Google argues that Netlist "substantively narrowed the scope of the [Amended Claims]" in the reexamination proceedings "through detailed amendments and arguments designed to avoid the prior art." Def.'s Mot. at 7-8, Dkt. 155. Google further argues that Netlist drafted the Added Claims "to have the same narrow scope as the [A]mended [C]laims." Id. at 8. Google then identifies four specific ways in

- 20 -

which it contends Netlist substantively changed the scope of the claims, i.e., by adding the limitations identified above with respect to (1) the "phase-lock loop device," (2) the "register," and (3) the "logic element," and by proposing a new definition of (4) "operatively coupled."

### a) Suitability for Resolution

The Federal Circuit has held that "a claim amendment made during reexamination following a prior art rejection is not *per se* a substantive change." Laitram, 163 F.3d at 1347 (citation omitted). "Rather, to determine whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." Id. (quotation marks, citation, and alteration omitted). "In determining the scope of the claims, [courts] apply the traditional claim construction principles of Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*), paying particular attention to the examiner's focus in allowing the claims after amendment." Convolve, Inc. v. Compaq Computer Corp., 812 F.3d 1313, 1322-23 (Fed. Cir. 2016) (quotation marks and citations omitted); see also Laitram, 163 F.3d at 1348 (holding that, where amendments result in the allowance of claims that had been rejected over prior art, that "is a highly influential piece of prosecution history").

Although the examiner's allowance of amended claims is significant, courts must account for differences between the broadest reasonable interpretation ("BRI") standard, applied by examiners during reexamination proceedings, and the Phillips standard, applied by courts in infringement proceedings. Convolve, 812 F.3d at 1325. Under the Phillips standard, claim terms are given the meaning that would be ascribed to them by a person of ordinary skill in the art ("POSITA"), whereas, under the BRI standard, claim terms are given the broadest reasonable interpretation consistent with the specification. In re CSB-Sys. Int'l, Inc., 832 F.3d 1335, 1340 (Fed. Cir. 2016) (add citations). Although "[i]n many cases, the claim construction will be the same under both standards," this is not always the case. Id. at 1341. Thus, an examiner's finding that a claim did not include a certain limitation, standing alone, "cannot be dispositive." Convolve, 812 F.3d at 1325; see also Laitram, 163 F.3d at 1348 ("Although it is difficult to conceive of many situations in which the scope of a rejected claim that became

- 21 -

allowable when amended is not substantively changed by the amendment, we arrive at our conclusion, not through any 'per se rule,' but in light of an overall examination of the written description, the prosecution history and the language of the respective claims.").

Invoking the forgoing standards, Netlist makes two threshold arguments that Google's motion for summary judgment fails as a matter of law: (1) Google improperly relies on a *per se* rule that claims amended during reexamination to avoid prior art are substantively changed; and (2) Google fails to present the requisite claim construction analysis for the original claims, Pl.'s Opp'n at 14-16, 13-14, Dkt. 197. These arguments are unpersuasive. The assertion that Google "reduces the test for absolute intervening rights to the very *per se* rule the Federal Circuit has rejected multiple times[,]" id. at 15, is simply untrue. Although Google emphasizes that the claims were amended to avoid prior art—a fact described by the Federal Circuit as "a highly influential piece of prosecution history"—it does not rely on this fact alone. Rather, Google discusses the language of the original and amended claims, the prosecution history of the '912 patent, and the relevant prior art. See Def.'s Mot. at 7-15.

The assertion that further claim construction is required also misses the mark. In support of this argument, Netlist cites a handful of district court cases that declined to resolve the issue of claim identicality before claim construction had occurred. See, e.g., Etagz, Inc. v. Quicksilver, Inc., No. 10-300, 2012 WL 2135497, at *2 (C.D. Cal. June 11, 2012). The cases reason that courts must analyze the scope of claims when ruling on identicality, and thus, the determination is more appropriately resolved during claim construction proceedings. Id. As acknowledged by Netlist, see Pl.'s Opp'n at 14 n.4, however, a claim construction hearing was conducted twelve years ago in the related case, Google v. Netlist, No. 08-cv-4011, Dkt. 79 (N.D. Cal. Nov. 16, 2009), with respect to U.S. Patent No. 7,289,386 ("the '386 patent"), of which the '912 patent is a continuation. Prior to the stay in this action, the parties submitted agreed-upon constructions for various claim terms of the '912 patent, including the terms previously construed in the related case. Dkt. 45. As is pertinent here, the parties agreed to constructions for the claim terms "logic element," "register," and "phase-lock loop device." Id., Ex. A. Netlist does not repudiate those constructions, and in fact, argued at the hearing on

the instant motions that those constructions support its argument regarding claim scope. See Dkt. 257 at 19-20. Given that the parties' agreed-upon constructions are already in the record, it is unnecessary for Google to present anything further in that respect.[7]

### b) The Added Limitations

Turning to the merits of the second inquiry of the intervening rights analysis, the scope of the claims narrowed during the reexamination proceedings. "[A] plain reading of the claims … indicate[s] that the original and reexamined claims are of a different scope[.]" Laitram, 163 F.3d at 1348. Netlist added nearly 200 words to the claims in three separate limitations. Although the focus of the inquiry is the substance of the claims, not the mere number of words added, the breadth of the amendments bears noting. Indeed, this is not a case in which a patentee added a one- or two-word "modifier" to existing claim terms. Cf. Convolve, 812 F.3d at 1323 (holding that addition of the word "seek" in front of "acoustic noise" did not alter the scope of the claims where the specification and prosecution history demonstrated that the original claims were limited to seek acoustic noise). Rather, extensive amendments were made. Nor is this a case in which descriptive language was added "simply to further clarify the completely sufficient language used in the original claims." Kaufman Co. v. Lantech, Inc., 807 F.2d 970, 977 (Fed. Civ. 1986) (holding that addition of approximately 25 words did not alter the scope of the claims where the language "was already present in the specification and in the original claims themselves … almost to the point … that some of the amendments made were unnecessary and redundant"). Though some of the added language was present in the specification, much was new, and none appeared in the original claims themselves. The primary authorities relied upon by Netlist—Convolve and Kaufman—are thus readily distinguishable. With that in mind, we turn to the substance of the amendments, with particular focus on the added limitations that were crucial to the allowance of the claims.

---

[7] Netlist briefly raises a discovery issue, arguing that Google was ordered fully to answer an interrogatory regarding the basis for its intervening rights defense but failed to provide any detailed claim construction argument in its response. Pl.'s Opp'n at 14. It is not apparent that a detailed claim construction argument was required in response to the interrogatory at issue. Even if it were, however, Netlist has not brought any motion to enforce the discovery order or to impose sanctions.

The parties agree that "phase-lock loop device" means "a device for generating a clock signal that is related to the phase of an input reference signal." Dkt. 45, Ex. A. The original claim 1 required a phase-lock loop device that was a) mounted to the printed circuit board and b) operatively coupled to the plurality of DDR memory devices, the logic element, and the register. Original claim 1 was rejected as obvious over Amidi. In pertinent part, the examiner determined that Amidi discloses a phase-lock loop device operatively coupled to a plurality of memory devices, a logic element, and a register. See Dkt. 197-4 at 19-20. Netlist amended claim 1 to require that the phase-lock loop device transmit a PLL clock signal to each of the coupled components. See Dkt. 155-9 at 48. When submitting the proposed amendments, Netlist argued that, although Amidi transmits a PLL clock signal to the memory devices and the register, it does not transmit a PLL clock signal to the logic element. Id. at 51. Because Amidi did not disclose transmission of a PLL clock signal to the logic element, it also failed to disclose a logic element generating output signals in response to a PLL clock signal (as amended claim 1 now does). Id. at 52.

The parties further agree that "logic element" means "a hardware circuit that performs a predefined function on input signals from the computer system and presents the resulting signals as its output." Dkt. 45, Ex. A. As stated above, original claim 1 required that the logic element receive a set of input control signals from the computer system, the set of input control signals comprising at least one row/column address signal, bank address signals, and at least one chip-select signal. It also required that the circuit generate a set of output control signals in response to the set of input control signals. Original claim 1 was rejected as obvious over Amidi in view of Dell-2. Netlist amended claim 1 to require that a) the "at least one row/column address signal" received by the logic element be comprised of "at least one row address signal" and b) this row address signal be separate from the plurality of row/column address signals received by the register. See Dkt. 155-9 at 49. Amended claim 1 also now requires that the logic element generate gated column access strobe (CAS) or chip-select signals in response at least in part to i) the at least one row address signal; ii) the bank address signals; 3) the at least one chip-select signal of the set of input control signals; and iv) the PLL

- 24 -

clock signal. Id. When submitting the proposed amendments, Netlist argued that Amidi does not use bank address signals (or the combination of bank address signals and at least one row address signal) to general control signals. Id. at 52-53.

Based on the foregoing, the "phase-lock loop device" and "logic element" limitations narrowed the scope of the claims.[8] Whereas the memory module of original claim 1 did not require either a PLL clock signal transmitted to the logic element or the use of a combination of bank address signals and at least one row address signal to generate control signals, the memory module of amended claim 1 requires both. See Laitram, 163 F.3d at 1348 (holding the scope of original and reexamined claims differed where the original claims covered a printer or method of printing that "generated *any* quality of alphanumeric characters," while the amended claims covered only a printer or method of printing that generated "'*type quality*' alphanumeric characters") (emphasis in original). As demonstrated, these added limitations were crucial to the allowance of the claim because they overcome rejections based on Amidi and Dell-2. See id. (holding scope of the claims was substantively changed where, "the addition of the 'type quality' limitation, along with the other amendments, resulted in the allowance of the claims that had been rejected in the reexamination proceeding over prior art"). As recognized by the Federal Circuit, this is a "highly influential piece of prosecution history." Id.[9]

---

[8] Google also relies on the added "register" limitation. It appears the requirement that the logic element receive a row address signal separate from the plurality of row/column address signals received by the register may have been crucial to the allowance of the amended claim. However, without deciding the issue, it is not apparent that the register limitation, standing alone, was crucial. Because a finding that any one of the added limitations substantively changed the scope of the claim is dispositive, the register limitation is not separately addressed. See Laitram, 163 F.3d at 1345 (concluding that one of three added limitations changed the scope of the claims and declining to reach the other two).

[9] In concluding that amendments were clarifying, as opposed to narrowing, the Federal Circuit in Convolve declined to give "significant weight" to the patentee's and examiner's use of the term "clarify" or "clarifying" to describe the amendments. 812 F.3d at 1325. Although such statements are not given significant weight here, it is noted that, during the reexamination proceedings and subsequent appeal, Netlist repeatedly described the amendments as performing a narrowing function. For example, in its appeal brief, Netlist stated that it had "narrowed its claims" to require a memory module with a logic element that acts in response at least in part to four enumerated signals" and "unequivocally disclaimed any broader meaning." Dkt. 208-3 at 1-2. Netlist also argued before the PTAB that it had "narrowed" the claims to overcome the rejection based on prior art. Dkt. 155-9 at 47, 51.

In arguing to the contrary, Netlist relies on the declaration of its litigation expert, Murali Annavaram ("Dr. Annavaram"), to suggest that a POSITA would understand that the added limitations were inherent in the original claims. In other words, Netlist contends the amendments were merely clarifying. As discussed below, the evidence does not support this contention. Regarding the phase-lock loop limitation, Dr. Annavaram opines that a phase-lock loop device ("PLL"), by definition, performs the specific function of generating a clock signal. Dkt. 197-9 ¶ 23. According to Dr. Annavaram, "[t]he registers and logic elements in a design such as the claimed circuit in the '912 patent need clocks to operate." Id. He further opines that "[t]he only function performed by the disclosed PLL device in the '912 patent is providing a clock signal; the written description makes no mention of any other source of clock signals other than the PLL." Id. Regarding the logic element limitation, Dr. Annavaram opines that, based on his opinion regarding the PLL, and as illustrated in Figure 1A of the '912 patent, a POISTA would understand that the logic element required clock signals from the PLL to function. Id. ¶ 31. Relying again on Figure 1A, Dr. Annavaram further opines that original claim 1 disclosed a logic element that received at least one row address bit, the chip-select signals, and bank address signals. Id. ¶ 34.

As a threshold matter, Dr. Annavaram's declaration is afforded little weight. At his deposition, Dr. Annavaram appeared unwilling or unable to answer basic questions, largely limiting his testimony to whether or not his declaration offered an opinion on such matters. See, e.g., Dkt. 208-4 at 95:9-97-3, 63:17-68:14. As noted by Google, Dr. Annavaram also testified that his declaration had not provided a claim construction analysis and that he had not applied claim construction standards. Id. at 49:7-21. Moreover, during his deposition, Dr. Annavaram contradicted and/or undermined the opinions offered in his declaration. As is pertinent here, Dr. Annavaram admitted that he erred in asserting the original claims required a logic element that receives a "row address signal." Rather, Figure 1A shows the logic element receiving a "row/column address signal," which the patent clearly shows to be broader. Id. at 60:9-61:8, 70:6-72:15, 90:1-6. Dr. Annavaram also did not dispute that, although certain embodiments of the '912 patent describe a phase-lock loop device transmitting a clock signal

to the logic element, the patent's specification does not exclude other embodiments that use an external clock signal (as Amidi does). Id. at 86:8-87:8. This undermines the previous suggestion that the PLL of original claim 1 had to provide a clock signal to the logic element.

More fundamentally, however, Dr. Annavaram's opinions simply do not address all aspects of the added limitations and are unsupported by the specification of the '912 patent. Setting aside the error in Dr. Annavaram's opinion that the logic element of original claim 1 receives specific signals, the added logic element limitation requires, not only that the logic element *receive* those signals, but that it *generate* CAS or chip-select signals *in response to* these signals (as well as the PLL clock signal). Dr. Annavaram's declaration is silent on this matter. The relevant portions of Dr. Annavaram's opinions are also based on Figure 1A of the '912 patent. As Dr. Annavaram acknowledged at his deposition, however, Figure 1A is merely a preferred embodiment of the invention. See id. at 73:3-12; 861-16. It is well-settled that embodiments appearing in a specification will not be read into the claims where the claim language is boarder than the embodiments. Laitram, 163 F.3d at 1348 (rejecting the patentee's "invitation … to read a limitation into the original claims that is simply not there"); see also GE Lighting Sols., LLC v. AgiLight, Inc., 750 F.3d 1304, 1309 (Fed. Cir. 2014) (holding the district court erred by reading limitations from a preferred embodiment into the claims). In view of the foregoing, it is clear that the added phase-lock loop and logic element limitations narrowed the scope of the '912 patent.

          c)       **Prosecution Disclaimer**

In addition to relying on the added limitations discussed above, Google argues that Netlist narrowed the Amended and Added Claims through prosecution disclaimer by proposing a narrower definition of "operatively coupled" during the reexamination. The issue of whether prosecution disclaimer may give rise to intervening rights is addressed as to claim 16 in Section II.C.2.b.ii., *infra*. Here, given that the added limitations described above substantively changed the scope of the Amended and Added Claims, the issue of prosecution disclaimer need not be reached. See Laitram, 163 F.3d at 1345 (concluding that one of three added limitations

- 27 -

changed the scope of the claims and declining to reach the other two). In view of the foregoing, the Amended and Added Claims are subject to absolute intervening rights.

### 2. Claim 16

As set forth above, during the reexamination proceedings, claim 16 was rewritten in independent form; no other changes were made. In light of the foregoing, Netlist argues that claim 16 is not "amended or new," and even if it were, the claim scope is identical. Google argues that claim 16 is technically amended and that its claim scope was narrowed through: (1) prosecution disclaimer; and (2) surrender of equivalents.

#### a) Amended or New

As stated above, the first question in the intervening rights analysis is whether the claim is "amended or new." Google acknowledges that claim 16 was merely rewritten in independent form, but nonetheless relies on the fact that the claim was "literally amended." Def.'s Opp'n at 8, Dkt. 195. As support, Google emphasizes that the reexamination certificate identifies claim 16 as "amended." Id. at 7. Netlist responds that Google's argument elevates form over substance, in disregard of both the reexamination history of claim 16 and Federal Circuit authority regarding the application of § 316. Netlist's argument is the more persuasive.

The Federal Circuit has explained that § 316 "identifies three categories of claims in a reexamined patent: (1) claims that existed in the original patent but have been cancelled as unpatentable, (2) claims that existed in the original patent and have been confirmed as patentable, and (3) amended or new claims that did not exist in the original patent but have been found to be patentable and will be incorporated into the patent by the PTO." Marine Polymer, 672 F.3d at 1363-64. "In providing for intervening rights, [§ 316(b)] is limited to the third category of claims…." Id. at 1364.[10] Here, claim 16 was confirmed on

---

[10] Marine Polymer concerned *ex parte* reexamination proceedings under § 307(b). As noted by the Federal Circuit, however, the language of pre-AIA §§ 307(b) and 316(b) are "essentially identical." Marine Polymer, 672 F.3d at 1362 & n.8.

1. Google's motion to strike is granted in part and denied in part. The motion is granted with respect to the revised priority and conception dates set forth in Netlist's amended disclosures, and Netlist is precluded from asserting a priority or conception date earlier than July 5, 2004. The motion is denied with respect to the assertion of claim 16.

2. Google's motion for summary judgment on the issue of intervening rights is granted in part and denied in part. The motion is denied as to claim 16 and granted as to the remainder of the asserted claims (i.e., claims 1, 3, 4, 6, 8, 10, 11, 15, 18-20, 22, 24, 27-29, 31, 32, 34, 36-41, 43, 45-47, 50, 52-60, 62-65, 69-75, 77, and 80-91). As to these claims, accused products purchased and/or used prior to February 8, 2021 are subject to absolute intervening rights under 35 U.S.C. §§ 252 and pre-AIA 316(b).

3. Netlist's motion for summary judgment (i.e., that Google is not entitled to intervening rights as to claim 16) is granted.

4. Google's motion to amend its Answer and Counterclaim is granted.

5. This order terminates Docket Nos. 153, 155, 156, and 206.

6. The parties shall appear for a further case management conference on June 23, 2022 at 10:00 a.m. to be held via Zoom Webinar.

IT IS SO ORDERED.

Dated: May 5, 2022

Richard Seeborg
Chief United States District Judge

- 44 -