# EXHIBIT 8

Trials@uspto.gov                                          Paper: 62
571-272-7822                                    Entered: June 30, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

SAMSUNG ELECTRONICS CO., LTD.,
Petitioner,

v.

NETLIST, INC.,
Patent Owner.

———————

IPR2022-00615
Patent 7,619,912 B2

———————

Before JON M. JURGOVAN, DANIEL J. GALLIGAN, and
KARA L. SZPONDOWSKI, *Administrative Patent Judges.*

JURGOVAN, *Administrative Patent Judge.*

ORDER
Determining on Remand from Director Review that Google is not a Real
Party-in-Interest or Privy of Petitioner
*35 U.S.C. § 315(b)*

IPR2022-00615
Patent 7,619,912 B2

# I.  INTRODUCTION

Samsung Electronics Co., Ltd. ("Petitioner") filed a Petition requesting *inter partes* review of claim 16 of U.S. Patent No. 7,619,912[1] (Ex. 1001, "the '912 patent").  Paper 1 ("Pet."), 4.  Netlist, Inc. ("Patent Owner") filed a Preliminary Response.  Paper 7 ("Prelim. Resp.").  Petitioner filed an authorized Preliminary Reply (Paper 14), and Patent Owner filed an authorized Preliminary Sur-Reply (Paper 15).  Upon consideration of these papers, we instituted *inter partes* review.  Paper 20 ("Institution Decision" or "Inst. Dec.").

In the Institution Decision, we found that the evidence of record at that time did not support Patent Owner's contentions that Google, Inc. ("Google") was a real party in interest ("RPI") or privy of Petitioner or that institution of this proceeding was barred under 35 U.S.C. § 315(b) due to a 2009 lawsuit between Google and Patent Owner involving the '912 patent.  *See* Inst. Dec. 11–22.  After institution, Patent Owner filed a Motion for Additional Discovery on the real party-in-interest and privy issue.  Paper 34; *see* Paper 32 (authorization to file motion).  Petitioner opposed.  Paper 36.  Patent Owner replied to Petitioner's opposition.  Paper 37.

Thereafter, the Director initiated *sua sponte* Director Review and stayed the proceedings pending the Director Review decision.  Paper 38.  In her Decision, the Director granted-in-part and denied-in-part Patent Owner's Motion for Additional Discovery on the issue of whether Google was an RPI or privy of Petitioner and lifted the stay with respect to this issue only.

---

[1]  Challenged claim 16 was amended as part of an *inter partes* reexamination, as set forth in the reexamination certification (appended at the end of Ex. 1001).

2

IPR2022-00615
Patent 7,619,912 B2

Paper 40 ("Director's Decision" or "Dir. Dec."). She remanded the case to this panel with instructions to decide this case within two months of completion of discovery and briefing, i.e., by July 3, 2023. Dir. Dec. 2; *see* Paper 47 at 3 (setting May 3, 2023, as deadline for Petitioner's Sur-Reply and the end of briefing on this issue). The Director further instructed the panel in making its decision to apply *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336 (Fed. Cir. 2018) ("*AIT*"), as well as the precedential PTAB decisions in *RPX Corp. v. Applications in Internet Time, LLC*, IPR2015-01750, Paper 128 (October 2, 2020) ("*RPX*"), and *Ventex Co., Ltd. v. Columbia Sportswear N. Am., Inc.*, IPR2017-00651, Paper 152 (January 24, 2019) ("*Ventex*"). Dir. Dec. 3. The Director indicated that the panel should consider the "extent to which [Google] has an interest in and will benefit from [Samsung's] actions, and inquire whether [Samsung] can be said to be representing that interest after examining its relationship with [Google]." *Id.* (quoting *AIT*, 897 F.3d at 1353). The Director further stated that the panel should consider that "[t]he notion of 'privity' is more expansive, encompassing parties that do not necessarily need to be identified in the petition as a 'real party-in-interest.'" *Id.* (quoting Consolidated Trial Practice Guide[2] ("CTPG") at 14).

On the RPI issue, Patent Owner filed an Opening Brief (Paper 50, "Open'g Br."), Petitioner filed an Opposition (Paper 52, "Opp."), Patent Owner filed a Reply (Paper 54, "Reply"), and Petitioner filed a Sur-Reply (Paper 55, "Sur-Reply"). The parties filed these papers under seal and also filed public, redacted versions. Papers 51, 53, 56, 57.

---

[2] Available at www.uspto.gov/TrialPracticeGuideConsolidated.

IPR2022-00615
Patent 7,619,912 B2

Upon consideration of the evidence, we determine that Petitioner has carried its burden to show that Google is not an RPI or privy of Petitioner and that this *inter partes* review is not barred under § 315(b).

## II. BACKGROUND

Petitioner identified itself, as well as Samsung Semiconductor, Inc., as the real parties-in-interest in this proceeding. Pet. 1. Patent Owner contends that Petitioner also should have named Google as an RPI, and that this proceeding should be barred under § 315(b) because of Patent Owner's 2009 lawsuit against Google involving the '912 patent. Open'g Br. 2.

Shortly after the '912 patent issued, on December 4, 2009, Patent Owner served Google with a complaint for infringement of the '912 patent in the Northern District of California. Ex. 2001. Thereafter, Google and two other companies, Inphi Corporation and Smart Modular Technologies, Inc., requested *inter partes* reexaminations for the '912 patent, and these were merged into a single proceeding under Control No. 95/000,578. Ex. 1011, 5. On January 26, 2011, the District Court for the Northern District of California stayed the litigation to await the outcome of the '912 patent's reexamination. Ex. 1053, 2.

In the reexamination, Patent Owner amended or canceled all of the claims of the '912 patent except for claim 16, which was confirmed by the Patent Office. Ex. 1010, 3145, 3844, 3945–3946, 4569–4570, 4722, 5326. Requesters appealed to the Board, which affirmed the Examiner's decision confirming claim 16 as patentable. *Id.* at 7259–7260; Ex. 1011, 78–80; *Inphi Corp. Requester 1, Smart Modular Tech. (WWH), Inc. Requester 2, and Google, Inc. Requester 3 v. Patent of Netlist, Inc., Patent Owner*, 2016 WL 30884064 (Patent Tr. & App. Bd.) (May 31, 2016). Requesters sought

IPR2022-00615
Patent 7,619,912 B2

reconsideration of the Board's decision, arguing that claim 16 would have been obvious. Ex. 1010, 7258–7264. The Board denied rehearing. *Id.* at 7865–7875. Thereafter, Requesters appealed to the Court of Appeals for the Federal Circuit, which affirmed the Board's decision on June 15, 2020. *Id.* at 7905. The *Inter Partes* Reexamination Certificate confirming claim 16 issued on February 8, 2021. Ex. 1011, 7966.

In the original 2009 lawsuit against Google, Patent Owner asserted that DDR2 and DDR3 memory module technologies infringed several claims of the '912 patent, but claim 16 was not asserted. Ex. 1053, 2–3, n.1. Following the reexamination, the court granted Google intervening rights to those claims of the '912 patent that were originally asserted because they were all amended or canceled during reexamination. Ex. 1053, 44. Google stopped using the accused DDR2 DRAM[3] technologies by September 16, 2017, and did not purchase accused DDR3 products. Ex. 1053, 35–36. On May 19, 2021, Patent Owner amended its infringement contentions to assert that Google's use of DDR4 memory module technologies infringed claim 16 of the '912 patent, which was not amended or canceled during the reexamination. Ex. 1053, 3; Ex. 2015, 1–3. The Joint Electron Device Engineering Council ("JEDEC"), a standards organization, had issued the DDR4 standard in September 2012, and Google had begun using the DDR4 standard technology in 2014. Ex. 1053, 3, n.1.

On November 12, 2015, Petitioner and Patent Owner entered into a Joint Development and License Agreement ("JDLA"). Ex. 1051, 6 (¶ 21). Petitioner contends that the JDLA has cross-license, joint development, and

---

[3] Acronym for "Dynamic Random Access Memory."

IPR2022-00615
Patent 7,619,912 B2

product supply provisions.  *Id.*  Petitioner further alleges that the cross-license included the '912 patent and others.  *Id.* at 2 (¶ 2).  According to Petitioner, on May 27, 2020, Patent Owner wrote to Petitioner alleging material breach by failing to fulfill Patent Owner's request for NAND[4] and DRAM products and improperly deducting withholding taxes.  *Id.* at 7 (¶ 26).  On May 28, 2020, Patent Owner sued Petitioner in the United States District Court for the Central District of California for breach of contract. *Id.* (¶ 27).  According to Petitioner, on July 15, 2020, Patent Owner wrote to inform Petitioner that it was terminating the JDLA, effective immediately, including the patent license granted to Petitioner.  *Id.* (¶ 28).

After a jury trial, Patent Owner was awarded nominal damages. *Netlist, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 8:20-cv-00933, Dkt. 306, 2 (C.D. Cal.) (Feb. 15, 2022).  Petitioner has maintained that it had a license to all of Patent Owner's patents, including the '912 patent, under the JDLA, but the district court considered the license defense immaterial to the breach theory in the litigation.  Ex. 2023, 15.

On October 15, 2021, Petitioner filed a complaint for non-infringement and unenforceability, as well as breach of contract, against Patent Owner regarding the '912 patent and two other patents in the United States District Court for the District of Delaware ("Delaware litigation"). Ex. 1049.  Patent Owner sought to dismiss the Delaware litigation for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted.  Ex. 1052.  The Northern District of California again stayed Google's case in favor of the Delaware litigation citing the

---

[4] Acronym for "Not AND" logic.

IPR2022-00615
Patent 7,619,912 B2

"customer-suit" doctrine which provides that the manufacturer, in this case, Petitioner, is the true defendant, not the customer, Google. Ex. 1054. The Delaware court then declined to exercise jurisdiction of the '912 patent due largely to the litigation in the Northern District of California, and thus dismissed those counts. Ex. 1055, 5–6.

Thereafter, Patent Owner filed a complaint, and then an amended complaint, against Petitioner for infringement of the '912 patent and other patents in the United States District Court for the Eastern District of Texas. Ex. 1056; Ex. 1058. Petitioner sought transfer of the Texas case to the Northern District of California, and alternatively requested the Texas court to either stay the Texas case pending resolution by the United States Court of Appeals for the Ninth Circuit or consolidate the case with an earlier case in the Eastern District of Texas involving Patent Owner and Micron Technologies, Inc. (No. 2:21-cv-00463). Ex. 1062. The Texas court chose to consolidate the cases, which are pending before the Eastern District of Texas. Case No. 2:22-cv-00293, Dkt. 39 (E.D. Tex.). The Northern District of California case was stayed pending resolution of the Texas case. Case No. 3:09-cv-05718, Dkt. 338 (N.D. Cal.).

## III.  ANALYSIS

### A.  Real Party-In-Interest

Patent Owner argues that Google is an unnamed RPI and privy of Petitioner. Prelim. Resp. 6–16. Patent Owner contends that the Petition is time-barred under § 315(b) because Google was sued on the '912 patent in 2009, and thus more than one year before filing of the Petition.

For the following reasons, we do not agree that Google is an RPI or privy or that the Petition is time-barred under § 315(b) due to the 2009

IPR2022-00615
Patent 7,619,912 B2

complaint against Google.

### 1. Legal Principles Regarding Real Party in Interest

"Whether a party who is not a named participant in a given proceeding nonetheless constitutes a 'real party-in-interest' . . . to that proceeding is a highly fact-dependent question." CTPG 13. "[A]t a general level, the 'real party-in-interest' is the party that desires review of the patent," and, thus, "may be the petitioner itself, and/or it may be the party or parties at whose behest the petition has been filed." *Id.* at 14. "For example, a party that funds and directs and controls an IPR or PGR petition or proceeding constitutes a 'real party-in-interest.'" *Id.* at 17. Several relevant factors for determining whether a non-party is a real party-in-interest include the non-party's relationship with the petitioner, the non-party's relationship to the petition, and the nature of the entity filing the petition. *Id.* at 17–18. Determining whether a non-party is a real party-in-interest "demands a flexible approach that takes into account both equitable and practical considerations, with an eye toward determining whether the non-party is a clear beneficiary that has a preexisting, established relationship with the petitioner." *AIT*, 897 F.3d at 1351.

Petitioner's initial identification of the real party-in-interest is accepted unless and until Patent Owner produces some evidence to support its argument that a particular third party should be named as a real party-in-interest. *Worlds Inc. v. Bungie, Inc.*, 903 F.3d 1237, 1242 (Fed. Cir. 2018). Petitioner bears the ultimate burden of persuasion to show that its Petition is not time-barred under § 315(b). *Id.*

### 2. Nature of Petitioner and Google

Petitioner is one of the largest suppliers of memory modules in the

IPR2022-00615
Patent 7,619,912 B2

world, and Google is one of the largest consumers of memory modules in the world.  Paper 7, 1.  Petitioner has supplied DDR4 memory modules to many companies, and there is no dispute that Petitioner has supplied DDR4 memory modules to Google.  Ex. 1071 ¶ 6.

Unlike RPX, Petitioner is a manufacturer of DDR4 memory modules, and is not in the business of filing IPRs on behalf of members or subscribers, nor does it provide defensive patent aggregation.  *See AIT*, 897 F.3d at 1351–1352; *RPX*, Paper 128, 11–15.  This case is distinguishable from the *AIT* and *RPX* cases due to the significant differences between Petitioner's and RPX's business models.

### 3.  *The Relationship between Petitioner and Google* ███

The relationship between the Petitioner and Google, as concerns this proceeding, is defined by ███████████████████████████

IPR2022-00615
Patent 7,619,912 B2



Petitioner argues, correctly in our view, that claim 16 requires an entire memory module ███████████ DRAM components, standing alone, cannot infringe on the evidence presented in this record. Sur-Reply 1–2. More specifically, claim 16 recites a "memory module connected to a computer system," which has a printed circuit board ("PCB"), DDR memory devices, a circuit having particular logic, and a phase-lock loop ("PLL") device. Ex. 1001, 3:9–43 (reexamination certificate). Although ████████ ███ DRAM components may correspond to the DDR memory devices of claim 16, the claim further requires the PCB, circuit, and PLL device. We find no evidence on this record that Petitioner or anyone else provided the latter elements to Google or combined them with Petitioner's ████████ DRAM components to make DDR4 memory modules  There is further no evidence that Petitioner's ████████ DRAM components were specially configured to infringe claim 16 and had no substantial use apart from infringement. ████████████████

IPR2022-00615
Patent 7,619,912 B2



IPR2022-00615
Patent 7,619,912 B2



Exhibit 2047 clearly shows that the pictured device is an "M386" DDR4 memory module,

Petitioner also argues that it does not manufacture what amounts to the "circuit . . . comprising a logic element and a register" in claim 16 of the '912 patent, which is instead manufactured by a company called "IDT." Sur-Reply 2; Ex. 2047. This further negates Patent Owner's arguments that Google is an RPI

Petitioner contends that the Google litigation was stayed because of the "customer-suit" doctrine, which recognizes the manufacturer (Petitioner) as the true defendant in the dispute, not the customer (Google). Opp. 4

12

IPR2022-00615
Patent 7,619,912 B2

(citing Ex. 1054, 12:20–23; Ex. 1064, 2:4–17).  Although Patent Owner
argues it has never agreed that the customer-suit doctrine applies, we agree
with Petitioner that for the present, the "customer-suit" doctrine places the
burden of defense and liability  for damages, if any, on Petitioner, and not on
the customer, Google.  Reply 1–2 (citing Opp. 4; Ex. 1064).  Petitioner
argues that Patent Owner agreed to stay the case against Google, which
Petitioner contends suggests that Patent Owner principally  holds Petitioner
responsible for allegedly  infringing  DDR4 memory modules.  Opp. 4 (citing
Ex. 1064); Sur-Reply 1.  This evidence tends to show that Petitioner is
controlling this proceeding, not Google.

Furthermore, Petitioner contends that it is the real party-in-interest in
this proceeding and that the relationship between Google and Petitioner is
nothing more than a "standard customer-manufacturer relationship for the
[accused] product," which is insufficient to create a time bar.  Opp. 4–5
(citing Dir. Dec. 10 (quoting *WesternGeco v. ION Geophysical Corp.*, 889
F.3d 1308, 1321–22 (Fed. Cir. 2018)); *Samsung Elecs. Co. v. SEVEN
Networks*, LLC, IPR2018-01108, Paper 22 at 11 (PTAB Nov. 28, 2018)
("[T]he customer-supplier relationship between Samsung and Google does
not indicate that Google is an RPI.")).

Patent Owner argues that ███████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
██████████████████████████████
███████████████████████████████████

13

IPR2022-00615
Patent 7,619,912 B2

████ We do not agree that this evidence establishes an "extensive business relationship" such that the businesses of the two are intertwined or indistinguishable.

On the record presented, we find that ████████████ establish a standard customer-manufacturer relationship between Petitioner and Google. ████████████
████████████
████████████
████████████ There is no common venture or enterprise created by these agreements, nor is there any representation of the interests of one by the other that arises from these agreements such that Petitioner should be bound or estopped by the actions of Google in the California litigation. Petitioner's and Google's interests are aligned insofar as they have been accused of infringing the same patent, but the evidence shows that they are acting independently, and that Petitioner did not file the Petition at the behest of or on behalf of Google. Ex. 1071 ¶ 3; *see WesternGeco*, 889 F.3d at 1321; *Samsung Elecs. Co. v. SEVEN Networks, LLC*, IPR2018-01108, Paper 22 at 11; *see* Sections 5, 6.

### 4. Google's Relationship to the Proceeding

As set forth above, Google was sued by Patent Owner on the '912 patent in 2009 for allegedly infringing DDR2 and DDR3 DRAM products. Ex. 2001; Ex. 1053, 2, 10. As a result of the reexamination, all claims but claim 16 of the '912 patent were amended or cancelled. Ex. 1053, 3, 44. Accordingly, the Northern District of California granted Google intervening rights for all but claim 16. *Id.* at 44. On or about May 19, 2021, Patent Owner amended its infringement contentions to assert claim 16 of the '912

14

IPR2022-00615
Patent 7,619,912 B2

patent against Google's DDR4 memory modules. *Id.* at 3–4. Google then
sent two letters ███████████████████████████████████████
██████████ Ex. 1074, 2; Ex. 1076. ████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████ However, other than the
indemnification correspondence discussed above, the only evidence in the
record of such communications are ████████████████████████
████████████████████████████████████████
███████████████████████████████████████
██████████████████████████████ Standing alone, these communications
do not establish coordinated action with respect to the '912 patent. *See
Wi-Fi One, LLC v. Broadcom Corp.*, 887 F.3d 1329, 1339 (Fed. Cir. 2018)
(Federal Circuit affirms the Board's determination that communications
concerning status of district court litigation, filing amicus brief in the
litigation, and using expert report from the litigation were insufficient bases
to support grant of motion for additional discovery on issue of privity).

  *5. Control and Funding*

  Petitioner contends that it is not indemnifying Google, nor funding
Google's defense, and that Google is not indemnifying Petitioner, funding
Petitioner's defense, or controlling Petitioner's litigation with respect to the
'912 patent, including this IPR. Ex. 1071 ¶ 3. Petitioner contends this IPR

IPR2022-00615
Patent 7,619,912 B2

is being pursued by Petitioner alone, without involvement of Google. *Id.*

Addressing Petitioner's contention that Google is not funding or controlling this proceeding, Patent Owner argues ████████████



Patent Owner's basis for contending that Google is an RPI hinges on its assertion that Petitioner and Google share a significant relationship and that Petitioner has strong economic incentives to represent Google's interests. Open'g Br. 10. Patent Owner does not persuasively explain, however, why the evidence of record supports its assertions. For example, we are not persuaded on this record that Google's notice of Petitioner's alleged indemnification obligations influenced Petitioner's decision to file this IPR, as Patent Owner argues. *See* Open'g Br. 10. Patent Owner does not address or acknowledge that Petitioner may have its own reasons and interest for pursuing this proceeding, as further discussed below.

For these reasons, the evidence of record does not establish that Google is controlling, funding, or otherwise influencing or enabling Petitioner in this proceeding.

### 6. Interests and Benefits

The Director's Decision indicates that the RPI analysis should consider the "extent to which [Google] has an interest in and will benefit

16

IPR2022-00615
Patent 7,619,912 B2

from [Samsung's] actions, and inquire whether [Samsung] can be said to be representing that interest after examining its relationship with [Google]." Dir. Dec. 3 (quoting *RPX*, 897 F.3d at 1353). Both Google and Petitioner have interests in this proceeding because Petitioner sold and Google bought and used DDR4 memory modules ██████████ that allegedly infringe claim 16 of the '912 patent. Since both companies have potential liability exposure for the DDR4 memory modules, both would benefit if Petitioner was to be successful in having claim 16 canceled in this proceeding. However, for a number of reasons, discussed below, we determine that Petitioner is representing its own interest in this proceeding over Google's interest.

The "customer-suit" doctrine applied by the United States District Court for the Northern District of California seeks to avoid, if possible, imposing the burdens of trial on the customer (Google), because the manufacturer (Samsung) is the "true defendant." Ex. 1054, 12. As Google asserts, Petitioner is in the best position to litigate the issue of non-infringement because it designs, manufactures, and supplies the accused DDR4 memory modules. *Id.* at 13. Consequently, the extent of Petitioner's interest in this proceeding is greater than Google's as concerns the burdens of litigation and potential liability.

Petitioner's and Google's behaviors are consistent with each acting in its own interest. For example, as Patent Owner acknowledges, when Petitioner "lost" its license defense under the JDLA, Petitioner filed its declaratory judgment action. Open'g Br. 5; Ex. 1049; Ex. 2023, 20–21. And Petitioner has not acknowledged any responsibility to indemnify Google in response to Google's request letters (Ex. 1074; Ex. 1075;

17

IPR2022-00615
Patent 7,619,912 B2

Ex. 1076) but instead has stated outright that it is not indemnifying Google with respect to the '912 patent (Ex. 1071 ¶ 3).



Based on the evidence before us, we determine that Petitioner is acting in its own interest to avoid liability and defend its ability to sell DDR4 memory modules.

Likewise, Google's requests for indemnification reflect its attempt to avoid the cost of defense and any infringement liability, and its desire to obtain DDR4 memory modules for its servers, free of infringement liability. Accordingly, Google is acting in its own interests as well.

Mr. Sonoda testifies that Petitioner and Google have not entered into a common-interest agreement with respect to the '912 patent, which is also evidence that Petitioner and Google are not acting in concert with respect to the '912 patent or this proceeding. Ex. 1071 ¶ 3.

In addition, setting aside for the moment the customer-suit doctrine and its effect on this case, any liability exposure that Petitioner and Google have may overlap, but is not entirely the same. For example, Petitioner may be liable for DDR4 memory modules it manufactured and sold to other customers besides Google. And, as Patent Owner alleges, Google faces "independent liability" (Reply 2) and may have purchased DDR4 memory modules from other manufacturers besides Petitioner. Thus, although the interests of the two overlap with respect to this proceeding, each has infringement risk the other does not have.

The evidence shows that Petitioner is representing Petitioner's interest over Google's in this proceeding primarily to protect itself from

IPR2022-00615
Patent 7,619,912 B2

infringement liability  because Petitioner manufactures accused DDR4 memory modules and desires to sell them not only to Google, but to other companies as well.  *See* Opp. 9; Ex. 1071 ¶ 3; *Wi-Fi One*, 887 F.3d at 1340 ("While [Patent Owner] has speculated [Petitioner] may have been serving the interests of the D-Link defendants when it sought inter partes review, [Petitioner] clearly has an interest of its own in challenging the '215 patent, based on its manufacture of the assertedly infringing  chips.").

The fact that Petitioner is a manufacturer of the products alleged to infringe also distinguishes the *AIT* and *RPX* cases.  RPX, in the business of reducing patent risks for its members, represented the interests of its member, Salesforce, in pursuing an IPR, and had no direct interest of its own in the proceeding since it had not engaged in any allegedly  infringing activities.  *RPX*, Paper 128, 25–26.  That is not the case here.

### 7. Indemnification and Exclusivity

In the *Ventex* case, the parties had a supplier agreement whereby Ventex manufactured a "Heatwave" fabric that Seirus used in its products (cold weather gear such as gloves).  *Ventex*, Paper 152, 7.  This agreement provided that Ventex would defend and indemnify Seirus.  *Id.*  Ventex and Seirus later entered into an exclusive manufacturing arrangement requiring that Ventex manufacture the "Heatwave" fabric only for Seirus.  *Id.*  The panel in that case held "it is clear that Ventex and Seirus had a specially structured, preexisting, and well established business relationship with one another, including indemnification and exclusivity arrangements." *Id.* at 10.

Unlike the *Ventex* case, as discussed above, the evidence presented here ███████████████████████████████████████████

███████████████████████████████████████████

IPR2022-00615
Patent 7,619,912 B2



And Mr. Sonoda testifies that Petitioner is not indemnifying Google.  Ex. 1071 ¶ 3.  Patent Owner argues that although Petitioner "may not *yet* have informed Google that it is honoring its obligations," Petitioner has taken actions in compliance.  Open'g Br. 9.  Patent Owner's argument is speculative and assumes, without showing, that

The evidence of record does not support these assumptions.

Google is just one of many companies that buy DDR4 memory modules from Petitioner.  Opp. 1 (citing Ex. 1071 ¶¶ 3, 6).  Thus, we do not agree with Patent Owner that the facts here are "strikingly similar to those in *Ventex*."  *See* Open'g Br. 7–8.

Patent Owner attempts to distinguish *Samsung Elecs. Co. v. SEVEN Networks, LLC* on the basis that the indemnification agreements there were unrelated to the products alleged to infringe the challenged patent.  Reply 5 (citing IPR2018-01108, Paper 31, 13–14 (PTAB Nov. 28, 2018)).

IPR2022-00615
Patent 7,619,912 B2



Hence, as in *Samsung Elecs. Co. v. SEVEN Networks, LLC*, the evidence

### 8. Conclusion – Google is not a Real Party-in-Interest

On the whole of the evidence presented, considering all of the foregoing, we find that Google is not an RPI to this proceeding.

### B. Privity

### 1. Legal Principles Regarding Privity

In *Taylor v. Sturgell*, 553 U.S. 880, 894–95 (2008), the Supreme Court provided a non-exhaustive list for examining whether the legal relationship between two parties establishes that one is the privy of the other: (1) an agreement between the parties to be bound; (2) pre-existing substantive legal relationships between the parties; (3) adequate representation by the named party; (4) the non-party's control of the prior litigation; (5) where the non-party acts as a proxy for the named party to relitigate the same issues; and (6) where special statutory schemes foreclose successive litigation by the non-party (e.g., bankruptcy and probate). *See also WesternGECO*, 889 F.3d at 1319. Analysis under any one of the factors can support a finding of privity. *Ventex*, Paper 148 at 12.

### 2. Closeness of Relationship between Petitioner and Google

Patent Owner notes that the Director ordered the Board to consider not only any newly presented evidence, but also that the "notion of 'privity' is more expansive, encompassing parties that do not necessarily need to be identified in the petition as a 'real party-in-interest.'" Open'g Br. 13 (citing

21

IPR2022-00615
Patent 7,619,912 B2

Dir. Dec. 3; CTPG 14).  Patent Owner contends that the Board should
determine whether the relationship between Petitioner and Google is
sufficiently close such that both should be bound by the trial outcome and
related estoppels.  *Id.* at 13–14 (citing CTPG, 14–15).  Patent Owner
contends that the evidence reflects such a relationship.  *Id.* at 14.

For the reasons explained below, we do not agree that the relationship
is sufficiently close to establish privity between Petitioner and Google.
Opp. 14–15.  The facts do not show that Petitioner filed the Petition at
Google's behest or on Google's behalf but instead show that Petitioner acted
independently and had its own motivations for pursuing this proceeding due
to Patent Owner's assertion of claim 16 of the '912 patent against
Petitioner's DDR4 memory modules.  *WesternGeco*, 889 F.3d at 1320.

### 3.  *Pre-Existing Substantive Legal Relationship*

Patent Owner contends that at least two of the *Taylor v. Sturgell*
factors support that Google is a privy, including "pre-existing substantive
legal relationships between the parties" and "where the non-party acts as a
proxy for the named party to relitigate the same issues."  Open'g Br. 14
(citing *AIT*, 897 F.3d at 1360).  Patent Owner contends that these factors are
met for at least the same reasons discussed for real party-in-interest.  *Id.*  We
address each of these bases in turn.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████  The facts of this case,
however, are very similar to *WesternGeco* where evidence of a business
alliance and purchase agreements with indemnity provisions were found
insufficient to establish privity.  889 F.3d at 1321.  ████████████████

IPR2022-00615
Patent 7,619,912 B2

█████████████████████████████████ Hence, we agree with
Petitioner that the evidence does not support that privity exists on the basis
of a "pre-existing substantive legal relationship." Opp. 14–15.

As stated in the Institution Decision, Petitioner provides compelling
authority that a manufacturer-customer relationship alone does not establish
privity, even with indemnity provisions. Inst. Dec. 20 (citing *Wi-Fi One*,
887 F.3d at 1340–41; *WesternGeco*, 889 F.3d at 1319–20); Opp. 14. Patent
Owner attempts to distinguish *WesternGeco*, "where evidence showed no
'expectation that ION would be responsible for stepping in, or otherwise
protecting PGS from a patent infringement suit,' and the Board found the
indemnification provision 'non-specific' in nature and potentially 'limited to
options such as replacing or modifying a product found to have infringed a
patent.'" Open'g Br. 14–15 (citing *WesternGeco*, 889 F.3d at 1321). By
contrast, Patent Owner argues that here Petitioner never denied its
indemnification obligation and immediately attacked the '912 patent after it
"lost" its license defense, filing a declaratory judgment action and then this
Petition. *Id.* at 15. █████████████████████████
████████████████████████████████
█████████████████████
███████████████████████████████
████████████████████████████████
█████████████████████████████████
███████████████████████████████
████████████████████████████████
██████████████████████████████

23

IPR2022-00615
Patent 7,619,912 B2

 Thus, like in *WesternGeco*, on this record, the agreements here ████████████████████████ no matter how "specific and robust" one might consider the terms of these agreements.

Patent Owner argues that the Director distinguished a "standard customer-manufacturer relationship" from one in which Petitioner would be expected to step in or otherwise protect Google. Reply 5 (citing Dir. Dec. 10 (quoting *WesternGeco*, 889 F.3d at 1321–22)). ████████████████

Patent Owner again asserts the facts here closely track *Ventex*, in which the interests of Ventex and Seirus were aligned and the cancellation of the claims subject to *inter partes* review would directly benefit the unnamed party, Seirus. Open'g Br. 15. However, the contractual relationship between Ventex and Seirus was exclusive and involved funding. *Ventex*, Paper 152, 13–15. As discussed above, that is not the case here between Petitioner and Google in relation to this proceeding.

*Wi-Fi One* likewise supports Petitioner's arguments, not Patent Owner's, because Petitioner has not had any involvement or control over the Google litigation, just as Google has not had any involvement or control over this proceeding, and the two companies have not entered into a common-interest agreement. *Wi-Fi One*, 887 F.3d at 1338; Ex. 1071 ¶ 3.

IPR2022-00615
Patent 7,619,912 B2

Patent Owner attempts to distinguish *Wi-Fi One* on the basis that the evidence did not show that Broadcom had the right to control that litigation,

███████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████ Petitioner argues, correctly on this record, that Petitioner does not have the right to control Google's litigation just as Google does not have the right to control Petitioner in this proceeding. Opp. 3; Ex. 1071 ¶¶ 3, 6. And Petitioner has stated that it is not indemnifying Google. Ex. 1071 ¶ 3. Thus, the facts of this case are similar to *Wi-Fi One* where Broadcom introduced evidence that it did not control the litigation, just as Petitioner has done here. Ex. 1071 ¶ 3; *see also* Sur-Reply 5 (citing *Wi-Fi One*, 887 Fed at 1341 n.4).

Patent Owner further relies on the communications between Petitioner's and Google's counsel as bolstering its contention that the two share a privity relationship. Open'g Br. 15 (citing Exs. 1092, 1093). Patent Owner contends that, although Petitioner objects to these exhibits because they allegedly do not relate to indemnification or this IPR (Paper 45, 16–17), they reflect a consistent stream of unrecorded or otherwise preserved dialogue regarding the '912 patent, the subject of this IPR. *Id.*

Sharing communications about the status of the Delaware litigation or providing notice of documents subject to discovery requests, without more, does not create or bolster support for a privity relationship. *See Wi-Fi One*, 887 F.3d at 1339–41. Patent Owner does not show that these communications amounted to planning of concerted actions by Petitioner

25

IPR2022-00615
Patent 7,619,912 B2

and Google in support of a privity relationship related to this proceeding. And Patent Owner's assertion that the unpreserved dialogue would show privity is speculative at best.

The evidence does not show a "pre-existing substantive relationship" between Petitioner and Google that would establish privity.

### 4. Proxy

As for Google acting as a proxy for Petitioner to relitigate the same issues as in the California litigation, we note that the California litigation has evolved considerably from its starting point. In 2009, the '912 patent was asserted against DDR2 and DDR3 technologies, and claim 16 of the '912 patent was not asserted against DDR4 technology until May 2021. Ex. 1053, 2–3, n.1. Claim 16 of the '912 patent is currently in litigation before the Northern District of California, and thus there has been no attempt here to relitigate any of the same issues decided in the California litigation using Petitioner as a proxy of Google.

Simply put, Petitioner has not been shown to be representing Google or acting as its surrogate. Instead, the evidence of record shows instead that Petitioner is representing its own interests in this proceeding. *See, e.g.*, Ex. 1071 ¶¶ 3, 6; Ex. 1074; Ex. 1075, Ex. 1076.

### 5. Equitable and Practical Considerations

We find that the "equitable and practical considerations" here weigh against finding that Google is a privy to this proceeding. *See AIT*, 897 F.3d at 1351; CTPG 14–15. Although Patent Owner argues that it should have "quiet[] title" following reexamination (Open'g Br. 1), Patent Owner only recently asserted claim 16 against DDR4 technology in 2021. More specifically, DDR4 memory module products were not involved in the 2009

IPR2022-00615
Patent 7,619,912 B2

case until Patent Owner served Google with a claim chart asserting infringement of claim 16 of the '912 patent in May of 2021. Ex. 1053, 3. Petitioner has never been involved in the Northern District of California litigation. Under the circumstances, it would be inequitable to bind Petitioner to the consequences of the California litigation. Thus, the equitable and practical considerations in play here lead us to determine that Google is not a privy of Petitioner relative to this proceeding.

### 6. Conclusion – Google is not a Privy of Petitioner

For the foregoing reasons, on the record presented, we determine that Google is not a privy of Petitioner.

## IV.  CONCLUSION

Petitioner has carried its burden to show that it and Samsung Semiconductor, Inc. are the real parties-in-interest in this proceeding, and that institution of the Petition is not time-barred under § 315(b) due to service of a complaint on an unnamed real party-in-interest or privy more than one year before the filing of the Petition. As the Director indicated, the stay of this proceeding is automatically lifted in its entirety. Dir. Dec. 10. A revised Scheduling Order will be issued in due course.

IPR2022-00615
Patent 7,619,912 B2

## V. ORDER

For the foregoing reasons, it is

ORDERED that Google is not a privy or real party-in-interest to this proceeding;

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(a), an *inter partes* review of claim 16 of the '912 patent will resume on the grounds of unpatentability set forth in the Petition;

FURTHER ORDERED that this order will be entered for access by BOARD AND PARTIES ONLY; and

FURTHER ORDERED that the parties will submit their joint proposal to the Board for a PUBLIC version of this order within 14 days from entry.

.

IPR2022-00615
Patent 7,619,912 B2

PETITIONER:

Eliot D. Williams
Theodore W. Chandler
Ferenc Pazmandi
Eric J. Faragi
Brianna L. Porter
BAKER BOTTS LLP
DLSamsungNetlistIPRs@bakerbotts.com
eliot.williams@bakerbotts.com
ted.chandler@bakerbotts.com
ferenc.pazmandi@bakerbotts.com
eric.faragi@bakerbotts.com
brianna.potter@bakerbotts.com


PATENT OWNER:

Hong Annita Zhong
Philip Warrick
Jason Sheasby
IRELL & MANELLA LLP
hzhong@irell.com
pwarrick@irell.com
jsheasby@irell.com
netlistIPR@irell.com