**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

NETLIST, INC.,

                Plaintiff,

      v.

MICRON TECHNOLOGY, INC.,
MICRON SEMICONDUCTOR PRODUCTS,
INC., AND
MICRON TECHNOLOGY TEXAS LLC,

               Defendants.

Civil Action No. 2:22-CV-294-JRG

**JURY TRIAL DEMANDED**

---

### DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND COUNTERCLAIMS

Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC ("Micron" or "Defendants") submit this Answer and Affirmative Defenses in response to Plaintiff Netlist, Inc.'s ("Netlist" or "Plaintiff") Second Amended Complaint. The numbered paragraphs below correspond to the numbered paragraphs in the Second Amended Complaint and constitute Defendants' responsive admissions, denials, and allegations thereto. Except as otherwise Defendants admit expressly below, Defendants deny each and every allegation contained in the Second Amended Complaint, including, without limitation, the headings, subheadings, footnotes, diagrams, and tables contained in the Second Amended Complaint.

Defendants reserve the right to amend or supplement their Answer and Affirmative Defenses.

### ANSWER TO SECOND AMENDED COMPLAINT

1.      Micron admits that Plaintiff's pleading purports to be a Second Amended Complaint

against Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC. Micron lacks sufficient knowledge or information to form a belief as to the truth of the other allegations in paragraph 1 of the Second Amended Complaint and therefore denies the same.

2.      Micron admits that purported copies of U.S. Patent Nos. 7,619,912 (the "'912 patent"), 11,093,417 (the "'417 patent"), and 9,858,215 (the "'215 patent") (collectively, the "Asserted Patents") are attached to the Second Amended Complaint as Exhibits 1 through 3, respectively. Micron lacks sufficient knowledge or information to form a belief as to the truth of the other allegations in paragraph 2 of the Second Amended Complaint and therefore denies the same.

## THE PARTIES

3.      Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 3 of the Second Amended Complaint and therefore denies the same.

4.      Micron admits that it makes memory products in semiconductor fabrication plants for sale to customers. Except as expressly admitted, Micron denies the remaining allegations in paragraph 4.

5.      Micron Technology, Inc. ("MTI") admits that it is a Delaware corporation.  MTI admits that it is registered to do business in Texas. MTI admits that it can be served with certain process through its registered agent for service of process, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. Except as expressly admitted, Micron denies the remaining allegations in paragraph 5.

6.      Micron Semiconductor Products, Inc. ("MSP") admits that it is an Idaho corporation. MSP admits that it is registered to do business in Texas. MSP admits that it can be served with certain process through its registered agent for service of process, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. Except as expressly admitted, Micron denies the

remaining allegations in paragraph 6.

7.      Micron Technology Texas, LLC ("Micron Texas") admits that it is an Idaho limited liability company.  Micron Texas admits that it uses the property located at 950 West Bethany Drive, Suite 120, Allen, Texas 75013-3837. Micron Texas admits that it can be served with certain process through its registered agent for service of process, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. Except as expressly admitted, Micron denies the remaining allegations in paragraph 7 of the Second Amended Complaint.

8.      Micron admits that MSP and Micron Texas are wholly owned subsidiaries of MTI. Micron admits that MTI currently does not separately report revenue from MSP or Micron Texas in its public filings submitted to the Securities Exchange Commission.  Except as expressly admitted, Micron denies the remaining allegations in paragraph 8 of the Second Amended Complaint.

9.      Micron admits that it makes memory products in semiconductor fabrication plants for sale to customers. Except as expressly admitted, Micron denies the remaining allegations in paragraph 9 of the Second Amended Complaint.

10.     Micron denies the allegations of paragraph 10 of the Second Amended Complaint.

## JURISDICTION AND VENUE

11.     Paragraph 11 contains conclusions of law and not averments of fact to which the rules require an answer, but insofar the rules require an answer, Micron admits that the Second Amended Complaint purports to assert an action under the patent laws of the United States, 35 U.S.C. § 271 et seq., and that this Court has subject matter jurisdiction over actions for patent infringement under 28 U.S.C. § 1338(a).

12.     Based solely on the allegations in the Second Amended Complaint, and assuming (without admitting) them to be true, Micron does not contest personal jurisdiction in this district in this case. Except as expressly admitted, Micron denies the remaining allegations in paragraph 12 of

█████████████

the Second Amended Complaint.

13.     Based solely on the allegations in the Second Amended Complaint, and assuming (without admitting) them to be true, Micron does not contest personal jurisdiction in this district in this case. Except as expressly admitted, Micron denies the remaining allegations in paragraph 13 of the Second Amended Complaint.

14.     Micron denies the allegations of paragraph 14 of the Second Amended Complaint.

## FACTUAL ALLEGATIONS

### Background

15.     Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 15 of the Second Amended Complaint and therefore denies the same.

16.     Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16 of the Second Amended Complaint and therefore denies the same.

17.     Micron denies that the allegations in paragraph 17 of the Second Amended Complaint are complete or accurate, and on that basis denies them.

18.     Micron admits that the JEDEC Solid State Technology Association ("JEDEC") is a standardization body that develops open standards and publications for a broad range of semiconductor technologies, including memory modules. Micron denies that the remaining allegations in paragraph 18 of the Second Amended Complaint are complete or accurate, and on that basis denies them.

19.     Micron admits that DIMMs are a type of memory technology. Micron denies that the remaining allegations in paragraph 19 of the Second Amended Complaint are complete or accurate, and on that basis denies them.

20.     Micron admits that LRDIMMs are a type of memory technology. Micron denies that the remaining allegations in paragraph 20 of the Second Amended Complaint are complete

or accurate, and on that basis denies them.

21.     Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 21 of the Second Amended Complaint and therefore denies the same. Micron also denies that the allegations in paragraph 21 of the Second Amended Complaint are complete or accurate, and on that basis denies them.

**The Asserted '912 Patent**

22.     Micron admits that the '912 Patent states, on its face, that it is entitled "Memory Module Decoder" and that it lists Jayesh R. Bhakta and Jeffrey C. Solomon as inventors.  Micron further admits that the '912 Patent states, on its face, that it was filed as Application No. 11/862,931 on September 27, 2007, issued as a patent on November 17, 2009, and purports to claim priority to three provisional applications: Nos. 60/588,244 filed on July 15, 2004 60/550,668 filed on March 5, 2004, and 60/575,595 filed on May 28, 2004 and to an application, filed July 1, 2005, now U.S. Patent No. 7,289,386, which is a continuation-in-part of application No. 11/075,395, filed March 7, 2005, now U.S. Patent No. 7,286,436.  Micron lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 22 of the Second Amended Complaint, and therefore denies them.

23.     Micron admits that Netlist identified the '912 Patent among other patents in a letter dated April 28, 2021.  Micron admits that Netlist alleged infringement of the '912 Patent in the Original Complaint. Micron denies the remaining allegations in paragraph 23 of the Second Amended Complaint.

24.     Micron denies that the allegations in paragraph 24 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron further denies that paragraph 24 of the Second Amended Complaint accurately quoted Exhibit 1, 1:20-2:42.

25.     Micron admits that paragraph 25 of the Second Amended Complaint appears to

5

accurately quote Exhibit 1, 7:9-13.  Micron denies that paragraph 25 of the Second Amended Complaint accurately quotes Exhibit 1, 6:64-7:19. Micron denies that the remaining allegations in paragraph 25 of the Second Amended Complaint are complete or accurate, and on that basis denies them.

26.     Micron denies that paragraph 26 of the Second Amended Complaint accurately quotes Exhibit 1, 4:42-58, 4:59-5:5, and 22:5-14. Micron denies that the remaining allegations in paragraph 26 of the Second Amended Complaint are complete or accurate, and on that basis denies them.

27.     Micron admits that paragraph 27 of the Second Amended Complaint appears to copy Figure 1A of Exhibit 1.  Micron denies that the remaining allegations in paragraph 27 of the Second Amended Complaint are complete or accurate, and on that basis denies them.

28.     Micron denies that paragraph 28 of the Second Amended Complaint accurately quotes Exhibit 1, 6:55-7:19, 6:61-63, 7:35-53, Fig. 1A. Micron denies that the remaining allegations in paragraph 28 of the Second Amended Complaint are complete or accurate, and on that basis denies them.

**The Asserted '417 Patent**

29.     Micron admits that the '417 Patent states, on its face, that it is entitled "Memory Module With Data Buffering" and that it lists Jayesh R. Bhakta and Jeffrey C. Solomon as inventors. Micron further admits that the '417 Patent states, on its face, that it was filed as Application No. 16/695,020 on November 25, 2019, issued as a patent on August 17, 2021, and claims priority to five provisional applications: Nos. 60/645,087, filed on January 19, 2005, 60/590,038, filed on July 21, 2004, 60/588,244 filed on July 15, 2004, 60/550,668 filed on March 5, 2004, and 60/575,595 filed on May 28, 2004.  Micron lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 29 of the First Amended Complaint, and therefore denies them.

30.     Micron admits that Netlist alleged infringement of the '417 Patent in the First Amended

Complaint. Micron denies the remaining allegations in paragraph 30 of the Second Amended Complaint.

31.     Micron admits that the '417 Patent includes the language "enable registered transfers of N-bit wide data signals associated with the memory read or write command between the N-bit wide memory bus and the memory devices in response to the data buffer control signals and in accordance with an overall CAS latency of the memory module, which is greater than an actual operational CAS latency of the memory devices." '417 Patent at Abstract. Micron lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 31 of the Second Amended Complaint, and therefore denies them.

### The Asserted '215 Patent

32.     Micron admits that the '215 Patent states, on its face, that it is entitled "Memory Module With Data Buffering" and that it lists Jayesh R. Bhakta and Jeffrey C. Solomon as inventors. Micron further admits that the '417 Patent states, on its face, that it was filed as Application No. 14/715,486 on May 18, 2015, issued as a patent on January 2, 2018, and claims priority to five provisional applications: Nos. 60/645,087, filed on January 19, 2005, 60/590,038, filed on July 21, 2004, 60/588,244 filed on July 15, 2004, 60/550,668 filed on March 5, 2004, and 60/575,595 filed on May 28, 2004. Micron lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 32 of the Second Amended Complaint, and therefore denies them.

33.     Micron admits that Netlist identified the '215 Patent among other patents in a letter dated April 28, 2021. Micron admits that Netlist alleged infringement of the '215 Patent in the First Amended Complaint. Micron denies the remaining allegations in paragraph 33 of the Second Amended Complaint.

34.     Micron admits that the '215 Patent includes the language "memory module further comprises logic providing first control signals to the buffer to enable communication of a first data burst

between the memory controller and the at least one first memory integrated circuit through the buffer in response to a first memory command, and providing second control signals to the buffer to enable communication of a second data burst between the at least one second memory integrated circuit and the memory bus through the buffer in response to a second memory command."  '215 Patent at Abstract.  Micron lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 34 of the Second Amended Complaint, and therefore denies them.

**Micron's Activities[1]**

35.     Micron admits that certain Micron entities design and manufacture memory and storage products, including DRAM, DIMMs, and Multichip Packages.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 35 of the Second Amended Complaint.

36.     Micron admits that it received a letter from Netlist dated April 28, 2021.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 36 of the Second Amended Complaint.

**DDR3 and DDR4 Memory Modules**

37.     Micron admits that the Second Amended Complaint purports to define the "Accused Products" as stated in paragraph 37.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 37.

**FIRST ALLEGED CLAIM FOR RELIEF – '912 PATENT[2]**

38.     Micron repeats and incorporates by reference its responses to the allegations of the foregoing paragraphs of the Second Amended Complaint as described above.

---

[1]     Micron denies the allegations contained in the header preceding paragraph 35 of the Second Amended Complaint.

[2]     The allegations included in the footnote to the header preceding paragraph 38 appear to set forth legal conclusions and questions of law to which no response is required.  To the extent a response is required, Micron denies the allegations in the footnote to the header preceding paragraph 38.

39.     Micron denies the allegations of paragraph 39 of the Second Amended Complaint.

40.     Micron denies the allegations of paragraph 40 of the Second Amended Complaint.

41.     Micron denies the allegations of paragraph 41 of the Second Amended Complaint.

42.     Micron admits that Netlist identified the '912 Patent among other patents in a letter dated April 28, 2021. Micron denies the remaining allegations of paragraph 42 of the Second Amended Complaint.

## SECOND ALLEGED CLAIM FOR RELIEF – '417 PATENT

43.     Micron repeats and incorporates by reference its responses to the allegations of the foregoing paragraphs of the Second Amended Complaint as described above.

44.     Micron denies the allegations of paragraph 44 of the Second Amended Complaint.

45.     Micron admits that a purported copy of a Micron DDR4 SDRAM LRDIMM Core product description document is attached to the Second Amended Complaint as Exhibit 6. Micron denies the remainder of paragraph 45 to the extent that it does not accurately quote this document and any remaining allegation.

46.     Micron denies that the allegations in paragraph 46 of the Second Amended Complaint are complete or accurate, and on that basis denies them. Micron also lacks knowledge or information sufficient to form a belief as to the truth of the "[a]s shown above" allegation in paragraph 46 because Netlist did not identify the specific reference to which it is purporting to make a comparison in this paragraph, and therefore denies them.

47.     Micron denies that the allegations in paragraph 47 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 47 purports to provide images from Exhibit 5 to the Second Amended Complaint, but denies that paragraph 47 otherwise accurately quotes this Exhibit, and therefore denies the remaining allegations.  Micron also lacks knowledge or information sufficient to form a belief as to the truth of the "[a]s shown above and

below" allegation in paragraph 47 because Netlist did not identify the specific reference to which it is purporting to make a comparison in this paragraph, and therefore denies the remaining allegations.

48.     Micron denies that the allegations in paragraph 48 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 48 purports to provide images from Exhibit 5 to the Second Amended Complaint, JEDEC DDR4 SDRAM Standard 79-4C (Exhibit 8), or JEDEC 82-31A RCD Standard (Exhibit 9), but denies that paragraph 48 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations.  Micron also lacks knowledge or information sufficient to form a belief as to the truth of the "[a]s shown below" allegation in paragraph 48 because Netlist did not identify the specific reference to which it is purporting to make a comparison in this paragraph, and therefore denies them.

49.     Micron denies that the allegations in paragraph 49 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 49 purports to provide images from JEDEC 82-32A Data Buffer Standard (Exhibit 7), but denies that paragraph 49 otherwise accurately quotes this Exhibit, and therefore denies the remaining allegations.

50.     Micron denies that the allegations in paragraph 50 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 50 purports to provide images from Exhibit 5 to the Second Amended Complaint and JEDEC DDR4 SDRAM Standard 79-4C, but denies that paragraph 50 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations. Micron also lacks knowledge or information sufficient to form a belief as to the truth of the "[a]s shown above" allegation in paragraph 50 because Netlist did not identify the specific reference to which it is purporting to make a comparison in this paragraph, and therefore denies them.

51.     Micron denies that the allegations in paragraph 51 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 51 purports to

provide images from Exhibit 5 to the Second Amended Complaint and JEDEC 82-32A Data Buffer Standard (Exhibit 7), but denies that paragraph 51 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations.

52.     Micron denies that the allegations in paragraph 52 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 52 purports to provide images from EDEC 82-32A Data Buffer Standard (Exhibit 7) and JEDEC 82-31A RCD Standard (Exhibit 9), but denies that paragraph 52 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations.

53.     Micron denies that the allegations in paragraph 53 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 53 purports to provide images from JEDEC 82-32A Data Buffer Standard (Exhibit 7), but denies that paragraph 53 otherwise accurately quotes this Exhibit, and therefore denies the remaining allegations.

54.     Micron denies the allegations of paragraph 54 of the Second Amended Complaint.

55.     Micron denies the allegations of paragraph 55 of the Second Amended Complaint.

56.     Micron admits that Netlist sent Micron a letter dated April 28, 2021. Micron denies the remaining allegations of paragraph 56 of the Second Amended Complaint.

### THIRD ALLEGED CLAIM FOR RELIEF – '215 PATENT

57.     Micron repeats and incorporates by reference its responses to the allegations of the  foregoing paragraphs of the Second Amended Complaint as described above.

58.     Micron denies the allegations of paragraph 58.

59.     Micron admits that a purported copy of a Micron DDR4 SDRAM LRDIMM Core product description document is attached to the Second Amended Complaint as Exhibit 6. Micron denies the remainder of paragraph 59 to the extent that it does not accurately quote this document and any remaining allegation.

11

60.     Micron denies that the allegations in paragraph 60 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 60 purports to provide images taken from JEDEC DDR4 SDRAM Standard 79-4C (Exhibit 8), JEDEC DDR4 SDRAM Standard 79-4C (Exhibit 8), and Exhibit 5 to the Second Amended Complaint, but denies that paragraph 60 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations.

61.     Micron denies that the allegations in paragraph 61 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 61 purports to provide images taken from Exhibit 5 to the Second Amended Complaint, but denies that paragraph 61 otherwise accurately quotes this Exhibit, and therefore denies the remaining allegations. Micron also lacks knowledge or information sufficient to form a belief as to the truth of the "[a]s shown above and below" allegation in paragraph 61 because Netlist did not identify the specific reference to which it is purporting to make a comparison in this paragraph, and therefore denies the remaining allegations.

62.     Micron denies that the allegations in paragraph 62 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 62 purports characterize Exhibit 5 to the Second Amended Complaint and JEDEC DDR4 SDRAM Standard 79-4C (Exhibit 8), but denies that paragraph 62 accurately quotes these Exhibits, and therefore denies the remaining allegations.

63.     Micron denies that the allegations in paragraph 63 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 63 purports provide images from Exhibit 5 to the Second Amended Complaint, but denies that paragraph 63 accurately quotes this Exhibit, and therefore denies the remaining allegations.

64.     Micron denies that the allegations in paragraph 64 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 64 purports

provide images from JEDEC DDR4 SDRAM Standard 79-4C (Exhibit 8) and JEDEC 82-31A RCD Standard (Exhibit 9), but denies that paragraph 64 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations.

65.     Micron denies that the allegations in paragraph 65 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 65 purports provide images from Exhibit 5 to the Second Amended Complaint and JEDEC 82-32A Data Buffer Standard (Exhibit 7), but denies that paragraph 65 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations.

66.     Micron denies that the allegations in paragraph 66 of the Second Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 66 purports provide images from JEDEC 82-32A Data Buffer Standard (Exhibit 7), but denies that paragraph 66 otherwise accurately quotes this Exhibit, and therefore denies the remaining allegations. Micron also lacks knowledge or information sufficient to form a belief as to the truth of the "[a]s shown above and below" allegation in paragraph 66 because Netlist did not identify the specific reference to which it is purporting to make a comparison in this paragraph, and therefore denies the remaining allegations.

67.     Micron denies the allegations of paragraph 67 of the Second Amended Complaint.

68.     Micron denies the allegations of paragraph 68 of the Second Amended Complaint.

69.     Micron admits that Netlist sent Micron a letter dated April 28, 2021. Micron denies the remaining allegations of paragraph 69 of the Second Amended Complaint.

## DEMAND FOR JURY TRIAL

70.     Micron admits that the Second Amended Complaint purports to demand a trial by jury on all issues so triable.

## [NETLIST'S] PRAYER FOR RELIEF

Micron denies that Netlist is entitled to any relief in this action, as requested in paragraphs (A)

through (H) of Netlist's Prayer for Relief or otherwise.

████████████

## MICRON'S AFFIRMATIVE DEFENSES

Subject to its responses above, and upon information and belief, Micron alleges and asserts these defenses in response to the allegations in the Second Amended Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated.  In addition to the affirmative defenses described below, subject to the responses above, Micron reserves all rights to allege additional defenses pursuant to any scheduling order, that become known through the course of discovery, or otherwise.

### FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

1.      Netlist has failed to plead its claims with sufficient specificity or factual support to place Micron on notice of the claims Netlist is asserting against it, such that Netlist has failed to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE – NON-INFRINGEMENT

2.      Micron has not infringed and does not infringe (i) directly, either literally or under the doctrine of equivalents, (ii) indirectly by contributing to infringement by others, either literally or under the doctrine of equivalents, and/or (iii) indirectly by inducing others to infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the Asserted Patents, willfully or otherwise.

### THIRD AFFIRMATIVE DEFENSE – INVALIDITY

3.      One or more claims of the Asserted Patents are invalid for failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101 *et seq*., including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

### FOURTH AFFIRMATIVE DEFENSE – PROSECUTION HISTORY ESTOPPEL

4.      One or more claims are limited by the text of the Asserted Patents and prosecution histories of the Asserted Patents and related patents such that Netlist is estopped, or otherwise

precluded, from asserting that the claim is infringed by Micron, literally or by equivalents.

### FIFTH AFFIRMATIVE DEFENSE – WAIVER AND ESTOPPEL

5.      Netlist's claims for relief, in whole or in part, are barred by the doctrines of waiver and/or equitable estoppel.

### SIXTH AFFIRMATIVE DEFENSE – LICENSE AND COVENANT NOT TO SUE

6.      Netlist's claims for relief, in whole or in part, are precluded to the extent any of the claims of the Asserted Patents are subject to a license and covenant not to sue, express and/or implied.

### SEVENTH AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS

7.      Netlist's recovery for any infringement of the Asserted Patents that it might establish is limited to any established infringement occurring no more than six years before the filing of this lawsuit, pursuant to 35 U.S.C. § 286.

### EIGHTH AFFIRMATIVE DEFENSE – LACK OF MARKING

8.      Netlist's recovery for alleged infringement of the Asserted Patents, if any, is limited  to alleged infringement committed after Netlist provided actual or constructive notice of infringement under 35 U.S.C. § 287.

### NINTH AFFIRMATIVE DEFENSE – NO WILLFUL INFRINGEMENT

9.      Netlist fails to state a claim for relief against Micron for enhanced or increased damages for willful infringement.

### TENTH AFFIRMATIVE DEFENSE – NO EXCEPTIONAL CASE

10.     Netlist fails to state a claim for relief against Micron for exceptional case under 35 U.S.C. § 285.

### ELEVENTH AFFIRMATIVE DEFENSE – NO COSTS

11.     Netlist is barred by 35 U.S.C. § 288 from recovering any costs associated with this lawsuit.

**TWELFTH AFFIRMATIVE DEFENSE – LACK OF STANDING**

12.     To the extent that Netlist was not the sole and total owner of all substantial rights in any of the Asserted Patents as of the filing date of the Second Amended Complaint, Netlist lacks standing to bring one or more claims in this lawsuit.

**THIRTEENTH AFFIRMATIVE DEFENSE – EXHAUSTION**

13.     Netlist's claims are barred, in whole or in part, by the doctrine of patent exhaustion.

**FOURTEENTH AFFIRMATIVE DEFENSE – ABSENCE OF DAMAGES**

14.     Netlist has not suffered and will not suffer any injury or damages as a result of Micron's alleged conduct.

**FIFTEENTH AFFIRMATIVE DEFENSE – INTERVENING RIGHTS**

15.     Netlist is barred, in whole or in part, under principles of intervening rights.

16.     The claims of the '912 patent were subject to reexamination. During the course of the reexamination, Netlist canceled originally issued claims 2, 5, 7, 9, 21, 23, 25, 26, 30, 33, 42, 44, and 51; amended claims 1, 15, 16, 28, 39, and 43; and added new claims 52–91. Claims 3, 4, 6, 8, 10–14, 17–20, 22, 24, 27, 29, 31, 32, 34–38, 40, 41, and 45–50 were deemed patentable because of their dependence on amended claims. These amendments and additions, as well as arguments made by Netlist during the reexamination proceeding, substantively changed the scope of the originally issued claims of the '912 patent. Following an appeal to the Federal Circuit, the Patent Office issued an *Inter Partes* Reexamination Certification for the '912 patent on February 8, 2021.

17.     As a consequence of those amendments and additions, as well as Netlist's reexamination proceeding arguments, the making, using, selling, offering for sale, and/or importing of the Micron's Accused Products are protected by absolute and/or equitable intervening rights. In particular, to the extent that Netlist's allegations are based on Micron's Accused Products that were made, used, offered for sale, sold, and/or imported prior to the issuance of the reexamination certificate,

the defense of absolute intervening rights bars any liability for infringement with respect to such products. To the extent Netlist's accusations are based on Micron's Accused Products that were made, used, offered for sale, sold, and/or imported after the issuance of the reexamination certificate, the defense of equitable intervening rights applies, because Micron made substantial preparation of those products prior to issuance of the certificate. Netlist's infringement allegations thus are barred, in whole or in part, by absolute and/or equitable intervening rights under 35 U.S.C. §§ 252 and 307(b).

## SIXTEENTH AFFIRMATIVE DEFENSE – LACHES, INEQUITABLE CONDUCT, AND UNCLEAN HANDS

18.     Netlist is barred, in whole or in part, under principles of equity, including laches, prosecution laches, inequitable conduct, and unclean hands. Netlist is also barred by issue preclusion from reasserting or altering its positions on factual and legal issues that were previously adjudicated.

19.     Individuals substantively involved in the prosecution of the '912 Patent made false and misleading statements to the Patent Office and the Federal Circuit that were material to the patentability of the amended claims. On information and belief, these individuals specifically intended to deceive the Patent Office and the Federal Circuit into believing that the amendment of certain claims in the '912 patent were "narrowing" in scope, thereby distinguishing those claims from the prior art. On information and belief, these individuals misrepresented the intended effect of the amendments in order to secure allowance of the amended claims, knowing that Netlist would later adopt the position in litigation that the amendments were in fact not "narrowing" at all, but rather recited "inherent functions" that were already required by the original claims.

### Netlist Individuals Substantively Involved in the '912 Reexamination

20.     On information and belief, at least the following people associated with Netlist were substantively involved in the inter partes reexamination proceedings with respect to the '912 patent: Gail Sasaki, Mehran Arjomand, and David S. Kim (collectively "Netlist Individuals Substantively

18

███████████████

Involved in the '912 Patent Reexamination").

21.     On information and belief, Gail Sasaki was, during the reexamination proceedings for the '912 patent, an employee and/or contractor for Netlist who signed the power of attorney appointing counsel of record to prosecute the reexamination proceeding on behalf of Netlist.

22.     Mehran Arjomand and David S. Kim served as counsel of record for Netlist in connection with the inter partes reexamination proceedings for the '912 patent.

23.     On information and belief, the Netlist Individuals Substantively Involved in the '912 Patent Reexamination withheld information that they knew to be material to the patentability of the '912 patent with the specific intent to deceive the Patent Office in order to secure allowance of certain amended claims.

24.     On information and belief, each of the Netlist Individuals Substantively Involved in the '912 Reexamination is an individual associated with the prosecution of the '912 patent during the inter partes reexamination proceedings, which ultimately led to the issuance of an Inter Partes Reexamination Certificate on February 8, 2021. 70

**Netlist Made Narrowing Amendments to Claims During Reexamination**

25.     The '912 patent was originally filed in the United States on September 27, 2007 by inventors Jayesh R. Bhakta and Jeffrey C. Solomon. The '912 patent, titled "Memory Module Decoder," issued on November 17, 2009. Netlist claims to own all rights, title, and interest in the '912 patent.

26.     On April 20, 2010, a first request for inter partes reexamination of claims 1–51 of the '912 patent was filed by third party requester Inphi. The Patent Office assigned this request control No. 95/001,339 ("'339 proceeding") and ultimately ordered the reexamination of claims 1–51 of the '912 patent on September 1, 2010.

27.     On October 20, 2010, a second request for inter partes reexamination of claims 1, 6, 3–

4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 patent was filed by third party requester SMART Modular Technologies (WWH), Inc. ("SMART"). The Patent Office assigned this request control No. 95/000,578 ("'578 proceeding") and ordered reexamination of claims 1, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 patent on January 14, 2011.

28.     On October 21, 2010, a third request for inter partes reexamination of claims 1, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 patent was filed by Google. The Patent Office assigned this request control No. 95/000,579 ("'579 proceeding") and ordered reexamination of claims 1, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 patent on January 18, 2011.

29.     The Examiner in the '578, '579, and '339 proceedings agreed with Inphi, SMART, and Google that the proposed combination of Micron, DDR SDRAM RDIMM, MT36VDDF12872 & MT36VDDF28672 Data Sheet, 2002 ("Micron Art") in view of U.S. Patent Application Publication No. 2006.0117152 ("Amidi") presented a substantial new question of patentability and that "a reasonable examiner would consider the teaching of Micron Art and Amidi important in deciding the patentability of" the challenged claims. See January 14, 2011 Reexamination Ordered.

30.     On February 25, 2011, the PTO sua sponte merged the '578, '579, and '339 proceedings into a single matter, as all three proceedings were pending, had yet to be terminated, and involved overlapping claims of the same patent.

31.     After the merger, Netlist argued against the pending rejections of the existing claims and added new claims 52–118. *See* Netlist's July 5, 2011 Response to Office Action in *Inter Partes* Reexamination Communication Mailed April 4, 2011. For example, Netlist argued that the phase-lock loop device disclosed in Amidi was not "operatively coupled" to its CPLD. Netlist narrowed the scope of the "operatively coupled" feature by arguing that in the context of the '912 patent the phrase means that "the operations of the logic element 40 are clocked either directly or indirectly (e.g., through a

clock buffer) by the output of the PLL 50" and that "the output of the PLL 50 controls the operation of the logic element 40."

32.     Google responded by explaining how Micron Art and Amidi rendered obvious both the original and new claims. *See* August 29, 2011 Response. Google also explained how Micron Art, Amidi, U.S. Patent No. 5,926,827 ("Dell 2"), and Double Data Rate (DDR) SDRAM Specification, JEDEC Standard No. 79C, March 2003 ("JEDEC 79C") rendered obvious the new claims. *Id.* The Examiner adopted some aspects of the grounds raised by Google, rejected other aspects, and declined to adopt other grounds. *See* October 14, 2011 Non-Final Office Action. Netlist responded by canceling some of its claims, amending most of the remaining claims, and adding new claims 119–136. *See* January 14, 2012 Netlist's Response After Non-Final Action. Google again responded by continuing to argue, among other things, that Micron Art, Amidi, Dell 2, 72 and/or JEDEC 79C rendered obvious a set of the pending claims. *See* February 23, 2012 Google's Response.

33.     The Examiner then adopted additional grounds for rejection and maintained certain earlier rejections. See November 13, 2012 Non-Final Action. Netlist responded by canceling certain claims, further amending other claims, and arguing against the rejections. See January 14, 2013 Netlist's Response After Non-Final Action. Google again explained why various combinations of Micron Art, Amidi, Dell 2, and JEDEC 79C (among other references) rendered the claims obvious. See February 13, 2013 Google's Response.

34.     The Examiner issued an Action Closing Prosecution, which maintained several rejections, withdrew others, and found certain rejections moot due to Netlist canceling certain claims. *See* March 21, 2014 Action Closing Prosecution. The Examiner issued a Right of Appeal Notice, and Google appealed the Examiner's unadopted portions of certain grounds. *See* July 18, 2014 Google's Notice of Appeal. Netlist cross-appealed on the grounds of rejection the Examiner maintained. *See* July 30, 2014 Netlist's Notice of Cross Appeal.

35.     The PTAB, in its first appeal decision, affirmed the Examiner's adoption of certain aspects of the ground involving Micron Art in view of Amidi, reversed the Examiner's refusal to adopt other aspects of this ground, reversed the Examiner's refusal to adopt the ground involving Micron Art in view of Amidi and Olarig, and declined to reach the merits on the ground involving Micron Art in view of Amidi, Dell 2, and JEDEC 79C. See June 6, 2016 Decision on Appeal.

36.     Netlist then requested that the PTO reopen prosecution, canceling certain claims and amending most of the remaining claims. *See* July 31, 2016 Netlist's Response Requesting to Reopen Prosecution.) It was in this set of amendments in which Netlist amended claim 1 and several other claims to include the following language:

- "wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock signal to the plurality of DDR memory devices, the logic element, and the register" ("PLL device limitation");

- "wherein, the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered bank address signals to the plurality of DDR memory devices" ("register limitation"); and

- "wherein the logic element generates gated column access strobe (CAS) signals or chip- select signals of the output control signals in response to at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal." ("logic element limitation").

37.     Netlist asserted that these three amendments were "principal amendments to overcome the new grounds of rejection" and further stated that "[t]o address the Board's rejection, Patent Owner

22

*narrowed* the claim to include" the above identified three amendments. *Id*. (emphasis added). Netlist

then referenced the above identified "claim amendments [to] highlight at least two differences

between the '912 invention and the prior art." *Id*. Below are the two differences that Netlist highlighted

to the PTAB:

> First, the claim amendments now require: In response to signals received from the computer system, the phaselock loop (PLL) device transmit a PLL clock to the plurality of DDR memory devices, the logic element, and the register. Amidi transmits a PLL clock signal to the register and memory, but not the CPLD. Thus, Amidi does not disclose the PLL device transmitting the PLL clock to the logic element; the output of PLL 606 is neither directly nor indirectly transmitted to the CPLD 604. Additionally, a POSITA would not be motivated or inclined to transmit the PLL clock to CPLD 604.

> Second, the amended claims now also require that the logic element generates certain output signals (e.g., gated column access strobe (CAS) signals or chip-select signals recited in claim 1) in response to at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal. Amidi's CPLD 604 never receives bank address signals and hence Amidi's control signals cannot be generated based on bank 74 address signals. Instead, the control signals (rcs0a, rcs0b, rcs1a, rcs1b, rcs2a, rcs2b, rcs3a, and rcs3b) are based on the row address signals and chip-select signals. Thus, Amidi does not disclose the CPLD generating the gated CAS signals or chip-select signals in response to *the bank address signals*. Moreover, since the output of PLL 606 is neither directly nor indirectly transmitted to the CPLD 604, a POSITA would understand that the PLL clock does not control the operation of CPLD 604. Thus, Amidi is further deficient by failing to disclose the CPLD generating the gated CAS signals or chip-selected signals in response to the ***PLL clock signal***.

*Id*. (emphasis in original) (internal citations omitted).

38.     Netlist went on to further explain how the specific amendments above were the

distinguishing factors over Amidi:

> As amended, the claims require that the ***logic element receives*** at least one row address signal and ***bank address signals***, and require that the ***register*** (i) ***receives***, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and ***the bank address signals***, and (iii) transmit the buffered

plurality of DDR memory devices. The claims also require the plurality of row/column address signals received by the register are separate from the at least one row address signal received by the logic element. In other words, in the confirmation recited by the claims, the bank address signals are received by the logic element, the register and the plurality of memory devices. Under such circumstances, Amidi does not use bank address signals to generate control signals (and certainly not the bank address signals and the at least one row address signal.) The claims, however, require generating CAS signals or chip-select signals based on a row address signal and bank address signals.

Based on the above, it would not be obvious to a POSITA to combine Amidi and Dell 2 to reach the claimed invention, as amended. For the sake of argument, however, even the proposed combination of Amidi and Dell 2 fails to disclose the claimed invention. Therefore, even in combination, Amidi in view of Dell 2 fails to disclose all of the claim recitations of the claims.

*Id.* (emphasis in original) (internal citations omitted).

39.     Following Google's response to Netlist's amendments and response, the PTAB remanded the case to the Examiner and the Examiner maintained the PTAB's new grounds 75 of rejection as well as one additional ground. *See* October 3, 2017 Examiner's Determination Under 37 C.F.R. § 41.77(d).

40.     The PTAB then issued its second appeal decision, affirming several prior rejections but withdrawing many of the rejections the PTAB and the Examiner had previously maintained. *See* July 27, 2018 Decision on Appeal. The withdrawn rejections corresponded to the combination of Micron Art in view of Amidi and Micron Art in view of Amidi and Olarig. *Id.* Google sought rehearing, which the PTAB denied. *See* January 31, 2019 Decision on Rehearing. Google then appealed the PTAB's decision to the Federal Circuit.

41.     In its responsive appeal brief to the Federal Circuit, Netlist repeatedly stated that "it ***narrowed*** its claims to define its precise inventive contributions over the prior art." December 12, 2019 Netlist Response Brief (emphasis added). Therefore, in statements to the PTAB and the Federal Circuit, Netlist reiterated that the amendments identified above are narrowing, and that it was these

24

narrowing amendments that were Netlist's basis for arguing that the prior art at issue does not disclose the asserted claims. It was in response to these statements that the PTAB withdrew its rejections of the asserted claims and the Federal Circuit affirmed the PTAB's decision on June 15, 2020.

42.     The *Inter Partes* Reexamination Certification for the '912 patent issued on February 8, 2021.

### After the Claims Issued with the Narrowing Amendments, Netlist Argued in Litigation that the Amendments Did Not Change the Scope of the Claims

43.     After the Inter Partes Reexamination Certification for the '912 patent issued on February 8, 2021, Netlist resumed its litigation against Google.

44.     On information and belief, Gail Sasaki is involved in overseeing Netlist's litigation against Google.

45.     On July 30, 2021, Google filed a Motion for Summary Judgment on the Issue of Absolute Intervening Rights. See Netlist, Inc. v. Google LLC, No. 4:09-cv-05718-SBA, D.I. 155.

46.     On September 3, 2021, Netlist filed its Opposition to Google's Motion for Summary Judgement on the Issue of Absolute Intervening Rights. See id., D.I. 196. In the opposition, Netlist argued, in direct contradiction to what it argued to the PTAB and the Federal Circuit during reexamination proceedings, that the above identified claim amendments were not narrowing. Instead, Netlist now argues that "the language added during reexamination clarified what was inherent in the original claims." D.I. 196 at 17; see also id. at 16–24.

47.     If the above identified amendments were in fact inherent, as Netlist now contends to overcome intervening rights, then Netlist knowingly misled the PTAB and the Federal Circuit when it distinguished the amended claims from the prior art during reexamination.

48.     Had the PTAB and the Federal Circuit known that the amendments were in fact not "narrowing" but instead just "made express the inherent functions of the [original limitation]," the

PTAB and the Federal Circuit would have found these claims obvious and not allowed them to issue. For example, if the newly added functions were inherent in the original claim limitation, as Netlist now contends, these functions also would have been inherent in the prior art, thus rendering the claims obvious and invalid.

49.     On information and belief, Netlist Individuals Substantively Involved in the '912 Patent Reexamination knowingly misrepresented the amendments in its arguments to the PTAB and the Federal Circuit. Netlist Individuals Substantively Involved in the '912 Patent Reexamination had a duty of candor and good faith in dealing with the PTAB and the Federal Circuit during reexamination of the '912 patent. That duty of candor and good faith included a duty to disclose to the PTAB and the Federal Circuit its intention not to narrow the claims at all in order to distinguish the prior art. Instead, Netlist Individuals Substantively Involved in the '912 Patent Reexamination chose to tell both the PTAB and the Federal Circuit the opposite to convince the PTAB and the Federal Circuit to allow the claims. This information is material to the patentability of the claims. By misrepresenting the intended effect of the above identified amendments to the claims to the PTAB and the Federal Circuit, Netlist Individuals Substantively Involved in the '912 Patent Reexamination breached its duty of candor and good faith and showed specific intent to deceive the PTAB and the Federal Circuit.

50.     Inequitable Conduct: Any one or more acts set forth above are sufficient in and of itself/themselves to demonstrate that Netlist committed inequitable conduct during the reexamination of the '912 patent that renders the '912 patent unenforceable.

51.     Unclean Hands: Furthermore, any one or more acts set forth above are sufficient in and of itself/themselves to demonstrate that Netlist has unclean hands in relation to its assertion of the '912 patent that renders the '912 patent unenforceable.

## SEVENTEENTH AFFIRMATIVE DEFENSE – 28 U.S.C. § 1498

52.     Netlist's recovery for alleged infringement of the Asserted Patents, if any, is limited

pursuant to 28 U.S.C. § 1498 to the extent that any alleged infringement, in whole or part, is attributable to the United States government.

### EIGHTEENTH AFFIRMATIVE DEFENSE – BREACH OF RAND LICENSING OBLIGATION

53.    Netlist's claims for injunctive relief are barred, in whole or in part, because of its failure to offer Micron a license to various of the Asserted Patents on reasonable terms and conditions that are demonstrably free of unfair discrimination (i.e., "RAND terms").

54.    Netlist is presently a member of JEDEC. Netlist committed various of the Asserted Patents to various JEDEC standards pursuant to the JEDEC Patent Policy, which sets certain obligations for owners of patents (like the Asserted Patents) that it reasonably believes are essential to one or more JEDEC standards. The JEDEC Patent Policy, as set forth in the JEDEC Manual of Organization and Procedure, states in relevant part that "[a] license will be offered, to applicants desiring to utilize the license for the purpose of implementing the JEDEC Standard under reasonable terms and conditions that are free of any unfair discrimination."

55.    Netlist has asserted that various of the Asserted Patents must be practiced to implement standards relating to memory technologies promulgated by the leading standard-setting organization in the memory technology field, JEDEC. Netlist therefore asserts that various of the Asserted Patents are "essential" to the implementation of the JEDEC standards in question (such allegedly standard "essential" patents are referred to herein as "SEPs"). JEDEC's semiconductor memory standards enable interoperability—that is, the ability of memory products made by different manufacturers to work together and with computer and electronic devices made by others. JEDEC standards are widely implemented and, for many types of semiconductor memory products, it is imperative that they comply with JEDEC standards in order to be commercially viable.

56.    Netlist has participated in the development of standards relating to memory

technologies in JEDEC. Pursuant to JEDEC's Patent Policy, Netlist submitted a "License Assurance/Disclosure Form" applicable to various of the Asserted Patents pursuant to which it has (a) disclosed each of those patents, or patents claiming priority to the same filing as various of the Asserted Patents, to be potentially essential to certain JEDEC standards and (b) committed to offer to license any claim of various of the Asserted Patents that is essential to the implementation of relevant JEDEC standards to those wishing to implement those JEDEC standards on RAND terms.

57. Moreover, pursuant to the JEDEC Patent Policy, which is binding upon Netlist, simply by virtue of its membership on the committees that developed the standards to which Netlist asserts the claims of various of the Asserted Patents are essential, Netlist is obligated to offer to license those claims to all potential licensees like Micron on RAND terms.

58. Netlist has breached its obligations to offer to license various of the Asserted Patents on RAND terms by, among other things: (a) failing to offer to license its SEPs to Micron on terms that are reasonable and (b) seeking injunctive relief against Micron based upon its alleged infringement of various of the Asserted Patents despite Micron's willingness to engage in discussions about licensing any claim shown to be valid and infringed on RAND terms. To date, and despite Micron's attempts to obtain such a showing, Netlist has failed to show that any asserted claim is valid and infringed.

### NINETEENTH AFFIRMATIVE DEFENSE – PATENT MISUSE

59. Netlist's claims are barred by the equitable doctrine of patent misuse.  As set forth above, Netlist has failed to offer Micron a license to the Asserted Patents on RAND terms, contrary to its obligations and representations to JEDEC.  In violation of such obligations, Netlist has instead leveraged market power created as a result of the standard-setting process and the patents it has asserted to be essential in order to extend the scope of patents beyond those it accuses Micron of practicing to include nonessential patents at an unreasonable and supracompetitive price fixed by



Netlist's expansion of the scope of its patent rights beyond those asserted against Micron and tying of patent rights Netlist has asserted to be essential to those it has not accused Micron of practicing are barred by the doctrine of patent misuse, as well as the Sherman Act, as discussed below.

## **RESERVATION OF ADDITIONAL AFFIRMATIVE DEFENSES**

Micron reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses at law or in equity that may exist now or that may be available in the future based on discovery and further factual investigation in this action.

██████████████████████

## COUNTERCLAIM

Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC ( collectively, " Micron") brings the following counterclaim for damages, declaratory judgment, and permanent injunctive relief against Netlist, Inc. ("Netlist") under Section 1 of the Sherman Act, 15 U.S.C. §1, for ████████████████████████████████████ which unreasonably restrains licensing of Netlist patents in order to impose supracompetitive costs and fees on their joint competitors, constrains Netlist's ability to settle this litigation with an independently negotiated RAND royalty agreement for the patents Netlist accuses Micron of infringing, and prolongs and increases litigation costs that could otherwise be invested in research and development and memory product sales ████████████████████.

## COUNTERCLAIM PARTIES

1.      Counterclaim-Plaintiff Micron Technology, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its headquarters and principal place of business at 8000 South Federal Way, Boise, Idaho 83716-9632.

2.      Counterclaim-Plaintiff Micron Semiconductor Products, Inc. is an Idaho corporation with its principal office at 8000 S. Federal Way, Boise, Idaho 83716.

3.      Counterclaim-Plaintiff Micron Technology Texas, LLC is an Idaho limited liability company with its principal office at 8000 S. Federal Way, Boise, Idaho 83716.

4.      Counterclaim Defendant Netlist is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 111 Academy Drive, Suite 100, Irvine, CA 92617.

## JURISDICTION AND VENUE

5.      This action arises under Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain violations of Sections 1 of the Sherman Act, 15 U.S.C. § 1, and under Section 4 of the Clayton

██████████████████

Act, 15 U.S.C. § 15, to compensate Micron for its damages.  This Court has jurisdiction over the

federal law claims alleged herein pursuant to 15 U.S.C. § 15 and 28 U.S.C. §§ 1331, 1337.

6.      This Court has personal jurisdiction over Netlist pursuant to Section 12 of the Clayton

Act, 15 U.S.C. § 22.

7.      This Court also has personal jurisdiction over Netlist consistent with the principles of

due process and because Netlist has submitted to the jurisdiction of the Court by having commenced

a patent infringement action in this Court.  This antitrust action forms part of the same case or

controversy as the claims for patent infringement asserted by Netlist in this action.

8.      Venue is proper in this judicial district pursuant to Section 12 of the Clayton Act, 15

U.S.C. § 22, and 28 U.S.C. § 1391(b)-(d) because a substantial part of the events giving rise to

Micron's claims occurred in this District, a substantial portion of the affected interstate trade and

commerce discussed below has been carried out in this District, and Netlist is licensed to do business

in, is doing business in, had agents in, or is found or transacts business in this District.

## FACTUAL BACKGROUND

9.      After years of litigation and the invalidation of Netlist patent claims by SK hynix, ██

████████████████████████████████████████████████████████████

██████████████████████████████████████████

10.     ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

11.     For years leading up to ██████████████████████████, SK hynix had

averred in litigation that Netlist had breached its JEDEC obligations to offer licenses to standard-

essential patents on RAND terms, in part by refusing to offer SK hynix a license agreement with fee

terms equivalent to those provided to "SK hynix's chief competitor, Samsung Electronics Co., Ltd.

31

███████████████████

('Samsung')."

12.     SK hynix complained that Netlist had entered into a Joint Development & License Agreement with Samsung pursuant to which Netlist licensed Samsung its patent portfolio for $8 million in cash and $15 million in the form of a note that was convertible to equity.

13.     SK hynix further observed that "[s]hortly after concluding its agreement with Samsung, in December 2015, Netlist asserted for the first time that SK hynix infringed several of its patents that are allegedly essential to JEDEC standards based on SK hynix's LRDIMM products conforming to those JEDEC standards.  SK hynix further averred that despite the more favorable agreement with Samsung, Netlist demanded that SK hynix pay hundreds of millions of dollars in royalties for a license to Netlist's portfolio based on the "demonstrably false claim that it 'invented' LRDIMMs and that it holds seminal patents that are foundational to the LRDIMM and RDIMM standards."

14.     SK hynix described Netlist as having "adopted a 'hold-up strategy of making outrageous license demands followed by waves of foreign and domestic litigation seeking coercive injunctive relief preventing the importation or sale of SK hynix's standards-compliant products in order to extract unreasonable and discriminatory royalties."

15.     Netlist filed its eighth and ninth patent infringement actions against SK hynix in 2020. SK hynix described Netlist's litigation campaign as an attempt to extract supracompetitive royalties and confirmation of its intent to avoid its RAND obligations.

16.     Around the same time, Netlist's relationship with Samsung began to break down, leading to Netlist filing suit against Samsung for a breach of their Joint Development and Licensing Agreement in May 2020.

17.     Netlist then settled its patent litigations against SK hynix and ████████████████

████████████████████████████████

18.     Just as Netlist began its litigation campaign against SK hynix after entering an

███████████████

agreement with Samsung, one of its main competitors, Netlist demanded that Micron take a license

just a couple weeks later, on April 28, 2021, ████████████████████████████. ████

████████████████████████████████████████████

██████████████████████

19.   ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

20.   ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████

21.   ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████

22.   ████████████████████████████████████

23.

24.

25.



26. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮

27. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮

28. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## **RELEVANT MARKETS**

29. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ has harmed and threatens to further harm competition across relevant technology licensing and memory product markets.  The geographic scope of these markets is global.

30.    The first relevant market consists of a technology market for the licensing of technology used to manufacture standard-compliant DRAM chips and memory modules, which

35

███████████████

comprises licensing submarkets specific not only to DRAM designs (*e.g.*, DDR5, DDR4, and DDR3) but also to memory module architectures incorporating such DRAMs (e.g., LRDIMMs, RDIMMs, UDIMMs, and SODIMMs).   *See*  https://www.jedec.org/category/technology-focus-area/memory-module-design-file-registrations.

31.     JEDEC sets global standards for the microelectronics industry, including DRAMs and DRAM memory modules.   JEDEC and other standard-setting organizations recognize that once a technology is incorporated into a standard, it is no longer reasonably interchangeable with competing technologies because it must be practiced by all who produce standard-compliant products.   When technology is locked into a standard through this process, owners of standard-essential patents have market power to exclude companies from practicing the standard and to raise the cost of practicing standards by charging supracompetitive royalties in excess of the value of the technology prior to standardization.

32.     In order to minimize the risk that owners of standard-essential patents will exercise this market power, JEDEC requires all companies and their representatives to agree to license their essential patent claims on RAND terms and conditions as a condition of committee membership or participation. *See* https://www.jedec.org/about-jedec/patent-policy.

33.     Contrary to Netlist's RAND assurances provided to JEDEC and referenced above, it has reneged on those commitments and has exercised its market power by ████████████ ████████████████████████████████████████████████████ ███████████

34.     ████████████████████ has also harmed and threatens to further harm competition across memory product markets corresponding to, and broader than, the licensing markets for particular DRAM technologies (*e.g.*, DDR5, DDR4, and DDR3) and DRAM memory module configurations (e.g., LRDIMMs, RDIMMs, UDIMMs, and SODIMMs).

35. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████

36.     Micron manufactures different types of memory products that are not reasonably interchangeable and constitute distinct product markets.  For example, Micron is well known for its memory expertise and success commercializing dynamic random access memory ("DRAM"), which is used for a computer's main memory, and NAND flash memory, which is used for secondary storage.

37.     A DRAM's primary characteristic is that it allows very fast access to instructions and data.  For this reason, DRAMs are often utilized as the main memory of an electronic device, including computers and servers.  However, DRAMs are "volatile," meaning they hold data only temporarily, and require power to maintain the stored information.  When the power on a device is turned off, the data stored in its DRAMs is lost.

38.     DRAM product markets are further segmented by generations and module configurations because different DRAM products are interoperable with different types of computers and servers.  Different types of DRAM memory module products are manufactured with different form factors to be compatible with servers (*e.g.*, LRDIMM or Load Reduced Dual Inline Memory Module and RDIMM or Registered Dual Inline Memory Module); with desktop computers (UDIMM or Unbuffered Dual Inline Memory Module); and with laptops and mini-PCs (SODIMM or Small Outline Dual Inline Memory Module).  DRAM products are also manufactured across different generations that have different speeds and characteristics (DDR2, DDR3, DDR4, DDR5).  Often, a device such as a computer or a server is compatible with a particular set or subset of DRAM generations and/or DRAM memory module form factors.  For example, a computer that is compatible

█████████████

with a DDR3 UDIMM memory module may not be compatible with a DDR5 LRDIMM memory module.  DRAM chips are also sold on their own without being incorporated into a memory module for use primarily in electronic devices other than computers and servers, such as for use in mobile devices.

39.     Netlist does not contend that all Micron DRAM products infringe its patents. For example, Netlist has not accused Micron's DRAM chips of infringing its patents. Similarly, Netlist has not accused Micron's DDR4 UDIMMs or SODIMMs of infringing its patents.

40.     Micron, Samsung, and SK hynix are all major manufacturers of DRAM products, including DRAM chips and DRAM memory modules.  ████████████████████ impacts more than 90% of DRAM sales worldwide.  SK hynix describes itself as "one of the largest providers of computer memory solutions in the global industry" and as "one of the leaders in the market for various types of Dual In-Line Memory Module ('DIMM') products, widely used in the latest generation of computer and electronic devices."

41.     In contrast to a DRAM, which is a volatile memory, a NAND flash memory is non-volatile and thus does not require a power supply to retain data.  NAND flash memories are widely used as secondary storage in electronic devices to store high volumes of data for long periods of time.

42.     As with DRAM memory, different types of NAND flash memory products are made for different end products.  Flash memory chips may be used in small, portable Flash drives (*e.g.*, USB drives).  Flash memory chips may also be used in Solid State Drives (SSDs).

43.     Micron, Samsung, and SK hynix are all major manufacturers of flash memory products, accounting for more than 60 percent of flash memory chip sales worldwide.

44.     Netlist does not contend that all Micron NAND flash products infringe its patents. For example, Netlist has not accused NAND flash memory chips of infringing its patents.  Likewise, Netlist has not accused Micron's SSDs of infringing its patents.

████████████████████████

## **COUNTERCLAIM**

## **Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1**

45.　　Micron repeats and reasserts each of the allegations contained above in paragraphs 1 through 44 as if fully set forth herein.

46.　　As detailed above, ████████████████████████████████████████ that unreasonably restrains trade in violation of Section 1 of the Sherman Act. ████████████ constitutes both an unlawful concerted refusal to deal except on terms collusively set by Netlist's agreement with Micron's competitor, █████████, and an unlawful price-fixing agreement.

47.　　Contrary to Netlist's representations and obligations to JEDEC, Netlist ███████████ ███████████████████████████ that constrains its ability to provide a license on reasonable terms for just the patents Netlist accuses Micron of infringing.

48.　　██████████████████████████ fixes an unreasonable and supracompetitive price for licenses to their competitors, Micron and Samsung.

49.　　██████████████████████████ assesses the license price available to competitors Micron and Samsung based on all of their memory product revenue across distinct product markets regardless of whether those products infringe any patents.

50.　　██████████████████████████ collusively requires that any license provided to competitors Micron and Samsung be priced based on all of Netlist's patents such that these competitors have further tied the patent rights that Netlist has asserted are essential to nonessential patents that Netlist has not asserted against Micron and that Micron's products do not infringe.

51.　　Netlist has sought to coerce the acceptance of unreasonable and supracompetitive terms set unlawfully ██████████████████████████ by leveraging the market power of patents it has asserted are standard-essential.

52.　　██████████████████████████████████ harms competition



by restraining licensing applicable to more than 90% of various memory product markets by extending these collusively set terms to their competitors comprising nearly all of the balance of such distinct product markets.

53. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████

54.     As a direct and proximate cause of Netlist's refusal to offer reasonable royalties ████ ████████████████████████████, Micron has incurred substantial damages defending infringement litigations filed by Netlist and has lost good will as a result of Netlist's claims that patents asserted against Micron are standard-essential.  If not for the substantial legal fees incurred defending these lawsuits that could have been obviated by offering a reasonable and competitive royalty for Netlist's patents, Micron would have invested those funds in research and development and improving its sales of memory products ████████████████████.  Micron has also suffered substantial irreparable damage to its goodwill and reputation by Netlist's unlawful, deceptive, and unfair conduct that cannot be fully compensated in monetary damages alone.

55.     Netlist's anticompetitive conduct affected a significant volume of interstate commerce.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Micron demands a trial by jury and hereby respectfully requests:

██████████████████

A.      Pursuant to 28 U.S.C. § 2201, a declaration that ████████████████████████

████ that unreasonably restrains trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

B.      Pursuant to 28 U.S.C. § 2201, a declaration that ███████████████████████

████████████████████████████████████████████████████

████ are null and void and cannot be enforced against Micron;

C.      Pursuant to 15 U.S.C. § 15, compensatory and trebled damages resulting from Netlist's violation of the Sherman Act;

D.      Pursuant to 15 U.S.C. § 26, permanent injunctive relief preventing Netlist from continuing the unlawful acts in violation the Sherman Act;

E.      Pursuant to 15 U.S.C. § 26, permanent injunctive relief requiring Netlist to provide Micron with a RAND licensing offer for the patents asserted against Micron;

F.      Pursuant to 28 U.S.C. § 2202, such further relief as may be necessary or proper based upon this Court's declaratory judgments;

G.      Pre-judgment and post-judgment interest at the maximum legal rate;

H.      Micron's costs, expenses, and reasonable attorneys' fees in bringing this counterclaim; and

I.      Such other relief as this Court may deem just and proper.

### **JURY TRIAL DEMANDED**

Micron hereby demands a trial by jury on all issues triable by jury.

Dated: August 11, 2023                    Respectfully submitted,

By: */s/ Michael R. Rueckheim*
Thomas M. Melsheimer
State Bar No. 13922550
TMelsheimer@winston.com

Natalie Arbaugh
State Bar No. 24033378
NArbaugh@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

David P Enzminger (pro hac vice)
denzminger@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael R. Rueckheim
State Bar No. 24081129
MRueckheim@winston.com
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

William M. Logan
State Bar No. 24106214
wlogan@winston.com
Juan C. Yaquian
*Pro Hac Vice*
State Bar No. 24110559
JYaquian@winston.com
WINSTON & STRAWN LLP
800 Capital Street, Suite 2400
Houston, TX 77002-2925
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Wesley Hill
State Bar No. 24032294
wh@wsfirm.com
Andrea Fair
State Bar No. 24078488
andrea@wsfirm.com
Charles Everingham IV
State Bar No. 00787447

42

ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DEFENDANTS
MICRON TECHNOLOGY, INC.,
MICRON SEMICONDUCTOR PRODUCTS,
INC., AND MICRON TECHNOLOGY TEXAS
LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2023, the foregoing document was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record, including counsel for Plaintiff, Netlist, Inc. The foregoing document was served by electronic mail on all counsel of record.

*/s/ Michael R. Rueckheim*
Michael R. Rueckheim

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document attached hereto is authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Michael R. Rueckheim*
Michael R. Rueckheim