# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION



NETLIST, INC.,

    *Plaintiff*,

v.

SAMSUNG ELECTRONICS CO, LTD, *et al.*

    *Defendants*.

CIVIL ACTION NO. 2:22-CV-00293-JRG
(Lead Case)

NETLIST, INC.,

    *Plaintiff*,

v.

MICRON TECHNOLOGY, INC., *et al.*

    *Defendants*.

CIVIL ACTION NO. 2:22-CV-00294-JRG

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Samsung Electronics Co., LTD, Samsung Electronics America, Inc., and Samsung Semiconductor Inc.'s (collectively, "Samsung") Motion for Partial Summary Judgment Regarding Its Absolute Intervening Rights Defense (the "Motion"). (Dkt. No. 81.) In the Motion, Samsung seeks summary judgment concerning its absolute intervening rights defense on the grounds that "Plaintiff cannot prove entitlement to any relief for the DDR2/DDR3 products." (Dkt. No. 81 at 11.) Having considered the Motion, the subsequent briefing, and for the reasons stated herein, the Court is of the opinion that the Motion should be **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.    BACKGROUND

Netlist sued Samsung for infringement of U.S. Patent No. 7,619,912 (the "'912 Patent") on August 1, 2022. Netlist has also been involved in a suit against Google for infringement of the '912 Patent for over a decade in the Northern District of California (the "NDCA litigation"). (Dkt. No. 81 at 2.) Google filed a request for *inter partes* reexamination of the '912 Patent with the U.S. Patent and Trademark Office ("PTO"). (*Id.*) During reexamination, Netlist made three principal amendments to the '912 Patent. (*Id.*) The original claims included (1) a "phase-lock loop" (PLL) device, (2) a "register," and (3) a "logic element." (*Id.* at 2-3.) The amendments made during the reexamination concern the configuration and function of these components.

For example, the following claim language was added to claim 1 concerning the "phase-lock loop (PPL) device":

> wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock signal to the plurality of DDR memory devices, the logic element, and the register[.]

(Dkt. No. 81-2 at 3.)

The following claim language was added to claim 1 concerning "register":

> wherein the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered bank address signals to the plurality of DDR memory devices, wherein the at least one row/column address signal received by the logic element comprises at least one row address signal received by the logic element, and wherein the plurality of row/column address signals received by the register are separate from the at least one row address signal received by the logic element[.]

> (*Id.*)

The following claim language was added to claim 1 concerning the "logic element":

> wherein the logic element generates gated column access strobe (CAS) signals or chip-select signals of the output control signals in response at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least

2

one chip-select signal of the set of input control signals and (iv) the PLL clock signal.

(*Id.*)

In Netlist's own words, these amendments "narrowed the claim" "to overcome" the Patent Trial and Appeal Board's ("PTAB") "rejection" based on prior art. (Dkt. No. 81-1 at 2, 6.) Netlist also submitted an expert declaration in the reexamination asserting that "[a] POSITA would understand that the amendments narrow the scope of the claims." (*Id.*; Dkt. No. 81-3 at 5.) In response, the PTAB agreed that Netlist's amended claims overcame the earlier prior art rejections and withdrew those rejections. (Dkt. No. 81-4.) On appeal to the Federal Circuit, Netlist again acknowledged that it "narrowed its claims." (Dkt. No. 81-5.) The Federal Circuit affirmed the PTAB's decision. *Google LLC v. Netlist, Inc.*, 810 Fed. App'x 902 (Fed. Cir. 2020). A reexamination certificate for the '912 Patent issued on February 8, 2021. (Dkt. No. 81-2.)

The parties now primarily dispute whether the above amendments narrowed the scope of the claims. (Dkt. No. 92 at 1-2.) Netlist argues that the amendments did not affect any substantive change in the claims despite their arguing to the PTAB and the Federal Circuit that the amendments narrowed the claims. (*Id.*) Netlist reconciles these seemingly inconsistent positions by asserting that its arguments before the PTAB and Federal Circuit concerned the scope of the claims under the broadest reasonable interpretation standard. (*Id.* at 3-4.) Netlist contends that its position here is not contrary to those earlier arguments because this Court is obligated to assess the scope of claims under the narrower *Phillips* standard. (*Id.*) Samsung argues that Netlist should be barred from asserting that the amendments caused no substantive change after it argued before the PTAB and the Federal Circuit that the claims were, in fact, narrowed. (Dkt. No. 81 at 2-4.) Regardless of the standard applied by the PTAB, Samsung argues that the claims were substantively narrowed under the *Phillips* standard. (*Id.* at 8-11.)

3

The parties also dispute whether Samsung has sold any DDR2 or DDR3 products after the certificate of reexamination issued on February 8, 2021. (*Id.* at 2.) Netlist argues that Samsung has refused to respond to discovery requests showing DDR3 products that were sold after February 8, 2021. (*Id.*) Despite these disputes, Samsung contends that there are no genuine disputes of material fact that would prevent this Court from granting summary judgment.

The issue of intervening rights was also raised before the Northern District of California in the NDCA litigation. The Northern District of California found that the scope of the claims had been narrowed and that absolute intervening rights applied. *Netlist, Inc. v. Google LLC*, No. 4:09-cv-05718 RS, Dkt. 258 (N.D. Cal. May 5, 2022).

## II.    LEGAL STANDARDS

### A.    Summary Judgment

A motion for summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant may introduce evidence affirmatively supporting its position, and is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Epps v. NCNB Nat'l Bank*, 838 F. Supp. 296, 298–99 (N.D. Tex. 1993), *aff'd*, 7 F.3d 44 (5th Cir. 1993).  Alternatively, the movant can file a so-called "no evidence" motion for summary judgment, meeting its burden by establishing that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In either the traditional or no-evidence context, "[s]ummary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

### B.    Intervening Rights

Intervening rights arise when a patentee changes the scope of its claims after issuance, such as by reissue or amendment during reexamination. *Marine Polymer Techs., Inc. v. HemCom, Inc.*, 672 F.3d 1350, 1361-62 (Fed. Cir. 2012) (*en banc*). "A patentee of a patent that survives reexamination is only entitled to infringement damages for the time period between the date of issuance of the original claims and the date of the reexamined claims if the original and the reexamined claims are 'substantially identical.'" *R & L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1351 (Fed. Cir. 2015).

In the reexamination context, intervening rights are available "only with respect to 'amended or new' claims." *Marine Polymer*, 672 F.3d at 1361-62; 35 U.S.C. § 316(b) (2012). Intervening rights apply if the claims' scope was substantively changed during reexamination. *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) (*Laitram II*).  A substantive change in claim scope occurs when the patentee narrows the claims through amendments. *Id.* at 1348-49. In determining whether the scope of the claims has been narrowed, the Court looks to the scope of the claims per the *Phillips* standard. *Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1322-23 (Fed. Cir. 2016) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.Cir.2005)).

## III.    DISCUSSION

The parties do not dispute that all claims of the '912 Patent that are asserted against the DDR2 and DDR3 products are new or amended.[1] (Dkt. No. 81 at 5-11.)  The only issue before the Court is whether, under the *Phillips* standard, the scope of the claims was actually narrowed. *Laitram II*, 163 F.3d at 1348-49.

---

[1] Claims 1, 3, 4, 6, 8, 10, 11, 15, 18, 19, 20, 22, 24, 27, 28, 29, 31, 32, 34, 36, 37, 38, 39, 40, 41, 43, 45, 46, 47, 50, 52, 53, 54, 55, 56, 57, 58, 59, 60, 62, 63, 64, 65, 69, 70, 71, 72, 73, 74, 75, 77, and 80–91 of the '912 Patent.

### A.    Netlist's arguments are not barred by judicial estoppel

Samsung argues that Netlist is judicially estopped from making its arguments here because Netlist made statements before the PTAB and the Federal Circuit that the scope of the claims of the '912 Patent were "narrowed." (Dkt. No. 81 at 6-8.) Samsung contends that both the PTAB and the Federal Circuit relied on these assertions in rendering their decisions. (*Id.*) Thus, it argues that judicial estoppel prevents Netlist from taking a contrary position in this case. (*Id.*)

Netlist responds that its position here is not inherently contrary to its arguments to the PTAB and Federal Circuit. (Dkt. No. 92 at 3-5.) The PTAB and the Federal Circuit analyze the scope of the claims on reexamination under the broadest reasonable interpretation standard. (*Id.*) This Court, on the other hand, analyzes claim scope under the *Phillips* standard when determining the scope for intervening rights. (*Id.*) Netlist argues that its statements to the PTAB and Federal Circuit pertain only to the scope of the claims according to the broadest reasonable interpretation. (*Id.*) Since it has not taken a contrary position, Netlist argues that judicial estoppel does not apply. (*Id.*) Netlist further argues that Samsung fails to present evidence that the PTAB and the Federal Circuit relied on the statements. (*Id.* at 5.)

The Court agrees with Netlist as to judicial estoppel. *Phillips* provides the appropriate standard for this Court to analyze the scope of the claims in an intervening rights analysis. *Convolve,* 812 F.3d at 1325. Netlist's arguments before this Court are not clearly inconsistent with the arguments before the PTAB and the Federal Circuit because the arguments concern the scope of the claims under two different claim construction standards. Further, even if Netlist's arguments were inherently inconsistent, the Court is not convinced that Samsung has met its burden in showing that the PTAB or the Federal Circuit relied on these arguments in making their decisions. Netlist is not judicially estopped from arguing that the amendments did not change the scope of

the claims under the *Phillips* standard. The Court must next analyze whether the amendments narrowed the scope of the claims under the *Phillips* standard.

### B.    The amendments under the *Phillips* standard

Samsung argues that this Court should find that the amendments narrowed the scope of the claims under the *Phillips* standard. The amendments added nearly 200 words to the claims. Samsung argues that these added words are not modifying or clarifying words. (Dkt. No. 81 at 8-9.) Rather, these amendments add entirely new limitations, imposing functional requirements that were not previously found in the claims. (*Id.* at 9-10.) Samsung also points out that the Northern District of California found that the amendments narrowed the scope of the claims in the NDCA litigation, and it asks this Court to follow the same reasoning here. (*Id.*)

Netlist argues that the amended claims are "substantially identical" to the original claims under the *Phillips* standard. (Dkt. No. 92 at 5.) The original claims included the three components at issue: the PLL, the register, and the logic element. Netlist argues that the amendments merely state the function of these three components that a POSITA would have understood to be implied even without the presence of the amendments. (*Id.* at 6-11.) According to Netlist, these limitations were already described either in the specification or elsewhere in the claims, and a POSITA would have found these alleged "new limitations" were inherently part of the claims even without the added words. (*Id.*)

The Court finds that the amendments did narrow the scope of the claims, and that intervening rights apply to the DDR2 and DDR3 products sold prior to the issuance of the reexamination certificate.

There is no *per se* rule that amendments made during reexamination to overcome prior art are narrowing. *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1362-63 (Fed. Cir. 1991) (*Laitram I*).

7

However, "it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment." *Laitram II*, 163 F.3d at 1348.

The amended and new claims add around 200 words that were not previously found in the claims. While not dispositive, "the breadth of the amendments bears noting." *Netlist*, No. 4:09-cv-05718 RS, Dkt. 258 at 23.

Further, the amendments do not merely add clarifying words or phrases inserted into the middle of already-existing claim limitations. *See Convolve*, 812 F.3d at 1325. Rather, entirely new claim limitations have been added to the claims. These new limitations do more than clarify the definition of the PLL, register, and logic element. They impose new and specific requirements that limit the scope of the invention.

In the original claims, the only limitation to the PLL was that it be "operatively coupled to the plurality of DDR memory devices, the logic element, and the register." (Dkt. No. 81-2 at 3.) A new limitation in the amended claims requires a PLL clock signal to be transmitted to the DDR memory devices, the logic element, and the register in response to signals from a computer system. (*Id.*) The new language adds specific functionality not previously found in the claim: transmitting a specific signal to specific components. Netlist argues that the added language is found in the specification. (Dkt. No. 92 at 6-7) (citing '912 Patent at 5:28-31). The language from the specification cited by Netlist describes what the PLL could do in "***certain embodiments***." '912 Patent at 5:22 (emphasis added). This language from the specification does not purport to limit the claimed PLL. As is well understood, the scope of the invention is controlled by what is claimed, not what is in the specification.

8

The amendments also limit the functionality of the "register." The added claims require that the register "(i) receives," "(ii) buffers," and "(iii) transmits" signals, and it further requires that the logic element receives "at least one row address signal" that is separate from a plurality of "row/column address signals" received by the register. (Dkt. No. 81-2 at 3.) Netlist argues these limitations were present prior to the amendments by pointing to its agreed construction with Google in the NDCA litigation. (Dkt. No. 92 at 8.) The Court is not bound by the claim construction in the NDCA litigation. The original claims do not limit the "register" to inherently performing the specific functionality described by the amendments. While some of the added language appears in the specification, none of it appeared in the original claims. Again, the Court finds that the amendments narrow the claims in a way they were not previously written.

The amendments further limit the "logic element." The original claims required a logic element that receives a "set of input control signals" and that the claimed circuit comprising the logic element "generat[es] a set of output control signals in response to the set of input control signals." (Dkt. No. 81-2 at 3.) The amendments impose specific requirements on the types of output control signals and input control signals that are generated in response to one another. The added element requires "gated column access strobe (CAS) signals" to be transmitted responsive to "(i) the at least one row address signal, (ii) the bank address signals, *and* (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal." (*Id.*)

These several amendments impose specific limitations on the invention that were not previously found in the original claims. A careful comparison of the claims before and after amendment leads the Court to conclude that the amended claims are not substantially identical in scope to the original claims. The amendments narrow the scope of the claims.

9

As further evidence that a POSITA would understand that the amendments narrow the scope of the claims, Netlist's own expert stated "[a] POSITA would understand that the amendments narrow the scope of the claims." (Dkt. No. 81-3 at ¶ 24.) This statement by Netlist's expert does not say the claims were narrowed under the broadest reasonable interpretation standard or any standard. This expert states that the claims were narrowed according to how "[a] POSITA would understand . . . the amendments," which is precisely what the *Phillips* standard requires the Court to determine. *Phillips*, 415 F.3d 1313 ("the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art"). As part of the prosecution history, the Court may consider this admission in assessing how a POSITA would interpret the scope of the claims under *Phillips*. The Court agrees with Netlist's expert that "[a] POSITA would understand that the amendments narrow the scope of the claims." (Dkt. No. 81-3 at ¶ 24.)

In light of an overall examination of the written description, the prosecution history, and the language of the respective claims, the Court concludes that the amendments narrowed the scope of the claims. Given such narrowing, absolute intervening rights attach to accused products sold prior to the certificate of reexamination that issued on February 8, 2021. In light of these findings, there is no dispute of material fact that Netlist cannot prevail on its infringement claims of the '912 Patent for the accused products sold prior to February 8, 2021.

## C.    The Disputed DDR3 Products

Samsung asserts that it has not made or sold any DDR2 or DDR3 accused products since the date of the reexamination certificate's issuance on February 8, 2021. (Dkt. No. 81 at 4.) Thus, Samsung moves for summary judgment on its absolute intervening rights defense as to all of the accused DDR2 or DDR3 products.

Netlist argues that summary judgment on DDR3 products is precluded by potential factual issues. (Dkt. No. 92 at 11.) According to Netlist, "Samsung has refused to provide discovery into all classes of products presently accused, including DDR3 RDIMM products." (*Id*.) Netlist contends that the refusal of relevant discovery precludes summary judgment. (*Id*.)

Notwithstanding this unfortunate discovery dispute, the Court will not decide whether Samsung has sufficiently responded to discovery requests as part of a Motion for Summary Judgment. However, in light of this discovery dispute, the Court finds there may be a dispute of material fact as to whether Samsung sold any DDR3 products after February 8, 2021. It is possible Netlist could prevail on its infringement claims, at least in part, if the DDR3 products were sold on or after February 8, 2021. Consequently, the Court declines to grant summary judgment as to any DDR3 products allegedly sold after February 8, 2021.

## IV.    CONCLUSION

For the reasons stated herein, the Court **GRANTS-IN-PART** Samsung's Motion for Partial Summary Judgment concerning its absolute intervening right defense for the accused DDR2 and DDR3 products sold prior to February 8, 2021.

The Court **DENIES-IN-PART** Samsung's Motion for Partial Summary Judgment concerning its absolute intervening right defense for any accused DDR3 products that may have been sold on or after February 8, 2021.

The parties are directed to jointly prepare a redacted version of this Order for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within five (5) business days of this Order.

**So Ordered this**

**Oct 19, 2023**

_____

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE