IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SEMICONDUCTOR INC., <br><br> Defendants. | Case No. 2:22-cv-293-JRG <br><br> JURY TRIAL DEMANDED <br> (Lead Case) <br><br> ▬▬▬▬▬▬▬ |
| NETLIST, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MICRON TECHNOLOGY, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; MICRON TECHNOLOGY TEXAS LLC, <br><br> Defendants. | Case No. 2:22-cv-294-JRG <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF NETLIST, INC.'S OPPOSITION TO SAMSUNG'S MOTION TO STAY (DKT. 187)**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................................4

    A. Samsung's License Defense Will Resolve All Issues ......................................................4

    B. The Central District Action ..............................................................................................6

    C. Samsung's Delaware Action.............................................................................................7

    D. The First Eastern District Of Texas Action ....................................................................8

    E. Samsung's Ninth Circuit Appeal Of The Central District's Ruling ...............................8

III. ARGUMENT......................................................................................................................11

    A. A Stay Would Substantially Prejudice Netlist................................................................11

    B. A Stay Will Not Simplify The Issues For Trial .............................................................12

    C. The Stage Of This Case Weighs Against A Stay...........................................................13

    D. This Court Is The Only Court That Can Decide The Entire Dispute .......................14

    E. The First-To-File Rule Does Not Require A Stay.........................................................14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Encore Wire Corp. v. Copperweld Bimetallics, LLC*,
   2023 WL 123506 (E.D. Tex. Jan. 6, 2023)..........................................................................15

*Eragen Biosciences v. Necleic Acids Licensing, LLC*,
   447 F. Supp. 2d 930 (W.D. Wisc. 2006) .............................................................................14

*Hall v. GE Plastic Pac. PTE Ltd.*,
   327 F.3d 391 (5th Cir. 2003) ................................................................................................9

*Intell. Ventures v. FedEx Corp.*,
   2017 WL 6559172 (E.D. Tex. Dec. 22, 2017)....................................................................12

*Invensys Sys. v. Emerson Elec.*,
   2014 WL 4477393 (E.D. Tex. July 25, 2014) ....................................................................12

*Quadrant Structured Prod. Co. v. Veritin*,
   23 N.Y. 3d 549 (2014)........................................................................................................10

*Realtime Data LLC v. Actian Corp.*,
   2016 WL 3277259 (E.D. Tex. June 14, 2016).............................................................. 11, 12

*Saint Lawrence Comms. v. ZTE Corp.*,
   Case No. 2:15-CV-349-JRG, 2017 WL 3396399 (E.D. Tex. Jan. 17, 2017) ................ 11, 12

*Team Worldwide Corp. v. Wal-Mart Stores, Inc.*,
   2018 WL 2722051 (E.D. Tex. June 6, 2018)......................................................................12

*In re Toyota Hybrid Brake Litig.*,
   2020 WL 6161495 (E.D. Tex. Oct. 21, 2020) ....................................................................15

*Trover Grp. v. Dedicated Micros USA*,
   2015 WL 1069179 (E.D. Tex. Mar. 11, 2015) ...................................................................11

*West Gulf Maritime v. ILA Deep Sea Local 24*,
   751 F.2d 721 (5th Cir. 1985) ..............................................................................................15

*Wiley v. Trendwest Resorts, Inc.*,
   2005 WL 1910934 (N.D. Cal. Aug. 10, 2005) ...................................................................15

I.      **INTRODUCTION**

Samsung's second attempt at a stay should be denied. This Court is the *only* forum that can decide the entire dispute between the parties, i.e. whether (1) the Accused Products infringe; (2) the Accused Products are covered by the license in the Joint Development and License Agreement ("JDLA"); and (3) Netlist properly terminated the JDLA as a result of Samsung's breach of its mandatory supply obligation. All of these questions are squarely before this Court because Samsung has pled as an affirmative defense that it was licensed under the JDLA, and termination was improper.

The Central District of California (the "Central District") is only considering number (3) above, whether the termination is effective. Samsung wants to get away from East Texas because it has adopted opposite positions in the Ninth Circuit and this Court regarding the scope of Netlist's license grant in the JDLA. Granting the stay will allow Samsung to perpetuate this tactic. Three sections of the JDLA are at issue. First, the recitals, which are produced in their entirety below, include



Ex. 1 (JDLA) at 1. Second, the Samsung supply obligation, which makes no reference to the collaboration. Netlist took the position that the supply obligation was not limited to the collaboration; and, therefore, when Samsung refused to supply, it was in material breach. The literal language of Samsung's supply obligation is not limited to the collaboration:



*Id.* at 6. In the Ninth Circuit, Samsung claimed that, in light of the recitals, the supply obligation was limited to the collaboration. Specifically, Samsung quoted recital four: ▮

▮ *Id.* at 1.

> "[T]he recitals are very clear -- and parties put recitals in agreements to make sure language isn't tortured down the road by lawyers and courts, right? Here's what our purpose is, interpret this agreement consistent with our purpose. And when you look at the recitals, what does it say about the licenses? Whereas in connection with their collaboration hereunder, the parties wish to grant to each other a cross-license under each party's patents**. The licenses are being given in connection with the collaboration. That's the joint development project**."

Ex. 2 (9th Cir. Hearing Tr.) at 15:10-19. This specific argument was relied on by the Ninth Circuit to find the supply obligation ambiguous: "Read as an integrated whole, however, the contract's apparent purpose as derived from its title, structure, and related provisions make § 6.2 'reasonably susceptible of more than one interpretation.' . . . [W]e remand to the district court to consider in the first instance whether the extrinsic evidence 'creates a genuine issue of material fact' as to the provision's meaning." *Netlist Inc. v. Samsung Elecs. Co.*, 2023 WL 6820683, at *2 (9th Cir. Oct. 17, 2023).[1]

The third implicated section of the JDLA, the license grant, like the supply clause, makes no reference to the collaboration.

---

[1] As the dissent noted, Samsung never asserted that its supply obligation was ambiguous until after it lost summary judgment in the Central District. *Id.* at 3, n.1 ("The majority's decision relies on Samsung's made-for-litigation theory that § 6.2 is ambiguous.").



Ex. 1 (JDLA) at 8. In Case No. 2:21-CV-463-JRG ("*Samsung I*"), filed in this Court by Netlist, Samsung argued that the license grant should be read plainly without reference to the recitals to apply to all Samsung products, not simply the collaboration products. "The plain language of the JDLA unambiguously licenses all semiconductor products except Foundry Products and is not limited to the Joint Development." *Samsung I*, Dkt. 328 at 2. Samsung counsel confirmed this at the March 28, 2023 pretrial conference:



Ex. 3 (*Samsung I*, Pretrial Conference Tr.) at ▮▮▮▮. This interpretation is the opposite of the successful argument Samsung made before the Ninth Circuit less than three months later: "'Whereas, in connection with their collaboration hereunder, the Parties wish to grant to each other a cross license under each party's patents.' **The licenses are being given in connection with the collaboration. That's the joint development project.**" Ex. 2 (9th Cir. Hearing Tr.) at 15:17-21, referring to JDLA Recital No. 4, p. 1 (emphasis added). To be clear, pointing out the change in positions between what

Samsung told this Court in *Samsung I* and what it told the Ninth Circuit is not an attack on the integrity of counsel in either forum. Samsung made the strategic decision to change its position. But having now succeeded in the Ninth Circuit based on the new position, there are consequences.

The JDLA defines the Joint Development Product as NVDIMM-P. Ex. 1 (JDLA) at § 2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Accused Products in this case (DDR4 LRDIMMs and RDIMMs) and in *Samsung I* (DDR4 LRDIMMs, DDR5 SoDIMMs, UDIMMs, RDIMMs, and HBMs) are not licensed because none of them are ▮▮▮▮▮▮▮ Samsung's corporate representative has admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The scope and enforceability of the JDLA are expressly pled as an affirmative defense in this case. All discovery necessary to try this defense is either completed or has been requested. In light of the above, the recognized factors for granting a discretionary stay favor denial. First, a stay would substantially prejudice Netlist by preventing it from timely enforcing its patent rights and profoundly disadvantage Netlist by allowing Samsung to take entirely inconsistent positions regarding the scope of the license and supply clause in different courts, given that the jury in California will not be deciding Samsung's license defense. Second, a stay will not simplify this case, because Samsung can "win" the Central District action on supply scope but still lose its license defense here based on its admissions about license scope. Third, a trial date has been set in this case, and none has been set in the Central District. Finally, this Court is the only one that can decide the parties' *entire* dispute.

## II.   FACTUAL BACKGROUND

### A.   Samsung's License Defense Will Resolve All Issues

This action was filed on August 1, 2022, and it is set for trial on April 15, 2024. The products accused of infringement are DDR4 LRDIMMs and RDIMMs (the "Accused Products"). Fact discovery is set to close on November 13, 2023, and the Deadline to Substantially Complete

Document Production was over two months ago on August 24, 2023. Dkt. 55. Netlist has invested significant resources and has diligently prosecuted this Action. Netlist has produced 50,712 documents spanning 426,326 pages, subpoenaed 12 third parties, and expended significant resources in preparing opening expert reports (due November 13, 2023). Sheasby Decl., ¶ 2. The Court has also expended material judicial resources by holding a several-hour claim construction hearing on September 26, 2023 and deciding summary judgment on the issue of intervening rights Dkt. 184.

Samsung has asserted an "express license" affirmative defense in this action. Dkt. 145 at 24-27. Samsung asserts that the JDLA covers the Accused Products:

> Netlist granted SEC and its subsidiaries, including SSI, a perpetual, paid-up, worldwide, non-exclusive license to all patents owned or controlled by Netlist or any of its subsidiaries having an effective first filing date on or prior to November 12, 2020. All of the Patents-In-Suit have effective first filing dates prior to November 12, 2020. The license extends through the expiration of the last to expire of the licensed patents.

*Id.* at 25. Samsung asserts in this Court that the consideration for this license was an $8 million payment. *Id.* However, in the Ninth Circuit, Samsung disclaimed this position, stating that the $8 million was not a license fee, but was instead a part of the joint development project even though it makes no reference to the collaboration:

> There's other provisions in the contract that clearly relate to the joint development project, that don't also say in connection with the joint development project. That's why you have to look at the structure of the agreement in order to interpret specific language. For example, in Section 3.1, there's an $8 million NRE [non-recurring engineering] fee that's paid. It's clearly for the joint development project, but it doesn't say it's specifically for the joint development project.

Ex. 2 (9th Cir. Hearing Tr.) at 8:16-24. This is also the exact opposite of what Samsung argued to this Court in *Samsung I*, when it repeatedly asserted that the $8 million payment was compensation for a broad license grant. *See, e.g., Samsung I,* Dkt. 566 at 57 ("Netlist **perpetually** licensed 87 patents to Samsung, including the asserted patents, in an agreement where Samsung paid $8 million."). Samsung also alleges that the agreement was improperly terminated:

> SEC maintains that it did not breach the Agreement, that the Agreement has not been terminated, and that it continues to hold a paid-up, worldwide, non-exclusive license to Netlist's patents, including the Patents-In-Suit.

Dkt. 145 at 27. Despite the question of the scope and termination of the JDLA being squarely before this Court based on Samsung's pled affirmative defense, shortly after filing its motion to stay, Samsung unilaterally refused to provide any further discovery on this affirmative defense. Samsung filed a motion for a protective order seeking to block JDLA discovery as a fig leaf to excuse its practice. Dkt. 193. In effect, Samsung unilaterally stayed the case as to its affirmative defense by refusing discovery, and argues the fact that discovery is not complete as a basis for granting the stay.

### B. The Central District Action

In August 2021, Netlist and Samsung both moved for summary judgment on whether Samsung had committed material breach by its failure to supply product (something Samsung admitted it had failed to do). C.D. Cal., Dkt. 187 at 13 ("Samsung accepted and fulfilled some of the purchase orders, put some on backlog, and rejected others.") ███████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ Ex. 5 (C.D. Cal., Samsung SSUF (Dkt. 157-02)), fact #21.

The Central District held that § 6.2 is unambiguously a mandatory supply obligation that is not limited to either the joint development project or the product that was intended to come out of that development (*i.e.* NVDIMM-P). In doing so, the Central District expressly noted that the JDLA is specific in its reference to the joint development project and/or joint product when it intends to be, and that the provisions of the JDLA that do not reference those terms (such as Samsung's mandatory supply obligation) cannot be read to include the supposed unstated limitation: "The coexistence of project-specific provisions and project-nonspecific provisions signals that the parties intended not to restrict the NAND and DRAM supply obligation to the NVDIMM-P project by omitting any mention

- 6 -

of it in § 6.2." *Netlist Inc. v. Samsung Elecs. Co.*, 2021 WL 7186853, at *5 (C.D. Cal. Oct. 14, 2021). Moreover, because Samsung admitted that it had failed to supply product that Netlist had requested, breach was undisputed, as was materiality, given that Samsung's sole materiality argument was that its proffered interpretation was correct. The Central District then held a trial solely on the issue of the cost of cover damages (the Central District held that Netlist was precluded from recovering for the substantial consequential damages and other harm it suffered as a result of Samsung's failure to comply with its supply obligation because of a damages limitation provision in the JDLA (§ 12.5)). The jury did not award the cost of cover damages. The Central District then awarded Netlist nominal damages and entered judgment in Netlist's favor.

### C. Samsung's Delaware Action

The day after the Central District granted summary judgment, and before the Central District jury trial, Samsung rushed to the Delaware District Court and filed a preemptive declaratory relief action seeking a declaration of non-infringement as to several patents. *Samsung Elecs. Co. v. Netlist, Inc.*, Case No. 1:21-cv-01453, Dkt. 1 (D. Del. Oct. 15, 2021). One of those patents was the '912 patent at issue in this case (the '912 patent was dismissed from the Delaware action by Judge Andrews). Despite the summary judgment ruling against it, Samsung's complaint asserted that "Netlist has, without justification, unilaterally <u>attempted</u> to terminate a November 2015 Joint Development and License Agreement ('Agreement') in which Netlist granted Samsung a perpetual, paid-up, worldwide license to, among others, the Patents-in-Suit." *Id.* at ¶ 2 (emphasis added). Samsung has also asserted a license defense. *Id.,* Dkt. 62 at 26-27. While Samsung speaks of judicial economy, Samsung's behavior confirms that it is appropriate for another court adjudicating patent infringement to assess Samsung's license defense while the Central District case is ongoing. Indeed, just a few weeks ago, Samsung filed a new declaratory judgment action in Delaware on a recently issued Netlist patent, once again asserting that it is licensed. *Samsung Elecs. Co., Ltd. v. Netlist, Inc.*, No. 1:23-cv-1122-UNA (October 9, 2023).

### D.     The First Eastern District Of Texas Action

After Samsung filed its Delaware declaratory judgment action, Netlist filed an action in this Court ("*Samsung I*"). In *Samsung I*, Samsung took the position that the license grant in the JDLA is broad: "The plain language of the JDLA unambiguously <u>licenses all semiconductor products except Foundry Products and is not limited to the Joint Development Project</u>." *Samsung I*, Dkt. 290 at 2 (emphasis added). Samsung also claimed that the consideration for this "broad" license was an $8 million payment under the JDLA. *Samsung I,* Dkt. 566 at 57 ("Netlist **perpetually** licensed 87 patents to Samsung, including the asserted patents, in an agreement where Samsung paid $8 million."). On April 5, 2023, this Court held—consistent with the Central District's holding that the JDLA rights grants (e.g., supply) that made no explicit reference to the collaboration should be interpreted without limitation to the collaboration project—that "Samsung had a license until July 15, 2020," i.e. the date on which Netlist terminated the JDLA. *Samsung I,* Dkt. 432 at 2.

### E.     Samsung's Ninth Circuit Appeal Of The Central District's Ruling

Samsung appealed the Central District's summary judgment ruling to the Ninth Circuit. In that appeal, Samsung reversed course on multiple issues.

For example, in the Central District (and this Court), Samsung represented (as an undisputed fact) that "it considered the $8 million as consideration for Netlist's grant of patent licenses . . . ." C.D. Cal., Samsung SSUF (Dkt. 168-2), fact #62. However, in the Ninth Circuit, Samsung represented that "there's an $8 million NRE fee that's paid. It's clearly for the joint development project, but it doesn't say it's specifically for the joint development project." Ex. 2 (9th Cir. Hearing Tr.) at 8:16-24. As another example, Samsung told the Central District that the absence of reference to collaboration in a grant of rights clause means the clause is not limited to the collaboration: "Sections 7 [release] and 8 [license] do not deal with the JDLA and the joint development. . . So I very clearly will say to the jury in this case, if I get there, your Honor, Section 7 and Section 8 don't apply to joint development."

- 8 -

C.D. Cal. Dkt. 213 (September 20, 2021 MSJ Hearing Tr.) at 23:16-23. Whereas, in the Ninth Circuit, Samsung made the opposite argument, asserting that the fourth recital discussing the license grant in reference to the collaboration meant that the clause was limited to collaboration:

> [T]he recitals are very clear -- and parties put recitals in agreements to make sure language isn't tortured down the road by lawyers and courts, right? Here's what our purpose is, interpret this agreement consistent with our purpose. And when you look at the recitals, what does it say about the licenses? Whereas in connection with their collaboration hereunder, the parties wish to grant to each other a cross-license under each party's patents. **The licenses are being given in connection with the collaboration. That's the joint development project.**

Ex. 2 (9th Cir. HT) at 15:10-21 (emphasis added). In other words, Samsung's argument to the Ninth Circuit was that the JDLA provisions that do not expressly refer to the joint development project should still be interpreted as being limited to that project in light of recital four.

Samsung partially succeeded. In an unpublished 2-1 decision, the majority upheld multiple rulings of the Central District, but reversed the grant of summary judgment on the supply clause, § 6.2. The Ninth Circuit conceded that the Central District's initial assessment made sense *Netlist Inc.*, 2023 WL 6820683, at *1 ("Standing alone, the plain language of § 6.2 favors Netlist's interpretation: that Samsung must fulfill all NAND and DRAM orders by Netlist for whatever purpose."), but, nevertheless, remanded for the Central District to consider in the first instance whether extrinsic evidence would create an issue of material fact on supply clause interpretation. The Ninth Circuit also reversed and remanded as to the materiality of Samsung's breach, finding that a disputed fact issue existed. *Netlist Inc.*, 2023 WL 6820683, at *3; *see also, e.g., Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) ('Statements made in a previous suit by an attorney before the court can be imputed to a party and subject to judicial estoppel.").

Samsung's Motion here overstates the scope and implications of the Ninth Circuit's holding. Samsung claims that as a result of the Ninth Circuit's order, "Samsung's license to the asserted patents is in full force and effect." Mot. at 2. The Ninth Circuit held no such thing. The JDLA has a prescribed

- 9 -

process for termination. Netlist followed that process to the letter (as Judge Scarsi held, and as an issue that Samsung never appealed) by sending Samsung written notice of breach and giving Samsung 30 days to cure. *Netlist Inc.*, 2021 WL 7186853, at *10. Although Samsung has contended here that the termination was "erroneous" (Mot. at 2), that is an issue to be tried to the jury in April if the Court finds that the extrinsic evidence creates a material dispute of fact.

Moreover, Samsung's license defense is unlikely to succeed at trial. First, even though the Ninth Circuit held that the scope of Samsung's supply obligation is ambiguous, Samsung's attempt to add an implicit joint development project limitation where the parties chose not to include it remains improper under New York law. *Quadrant Structured Prod. Co. v. Veritin*, 23 N.Y. 3d 549, 560 (2014) ("**Even where there is ambiguity**, if the parties to a contract omit terms—particularly terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission.") (emphasis added). It is precisely for this reason that the Ninth Circuit noted that, even with ambiguity, it still remains to be determined "whether the extrinsic evidence 'creates a genuine issue of material fact' as to the [supply] provision's meaning." *Netlist Inc.*, 2023 WL 6820683, at *1. And, even if the supply clause is found to be limited to the collaboration, based on Samsung's arguments before the Ninth Circuit, then so too would the license clause be limited.

Second, Samsung's breach of the supply provision was clearly material. Samsung has already admitted: "[I]f [§] 6.2 is construed as Netlist is saying, that would have been the most important part of this contract by far. It would have outweighed anything else in the contract." C.D. Cal. Dkt. 213 (September 20, 2021 MSJ Hearing Tr.) at 17:22-25. And Samsung has repeatedly acknowledged that its conduct would substantially harm Netlist. An internal Samsung email stated that ▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ During his deposition, ▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅



### III. ARGUMENT

As this Court has held, the party seeking a discretionary stay (here, Samsung) bears the burden of proving it is appropriate. *Saint Lawrence Comms. v. ZTE Corp.*, Case No. 2:15-CV-349-JRG, 2017 WL 3396399, at *1 (E.D. Tex. Jan. 17, 2017). The factors are: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Id.* As demonstrated below, all three factors favor not staying this case.

#### A. A Stay Would Substantially Prejudice Netlist

Netlist has a "right to timely enforcement of its patent rights." *Id.* at *2; *see also Trover Grp. v. Dedicated Micros USA*, 2015 WL 1069179, at *2 (E.D. Tex. Mar. 11, 2015) (noting "the general right of patent owners to timely enforcement of their patent rights."); *Realtime Data LLC v. Actian Corp.*, 2016 WL 3277259, at *2 (E.D. Tex. June 14, 2016) (same). Staying this case at this juncture would cause Netlist substantial prejudice.

*First*, Netlist's complaint seeks injunctive relief. Dkt. 100 at 65. Netlist's '215 and '417 patents-in-suit expire in 2025, and the '912 patent expires in early 2026. Because Samsung seeks a stay of indeterminate length, Samsung's requested stay would dramatically limit any injunctive relief Netlist

could seek. *Second*, the Accused Products in this case are DDR4 LRDIMMs and RDIMMs, which are now at the end of their life due to the rollout of next generation DDR5 DIMMs. Sheasby Decl. ¶ 3. A stay will thus eliminate the impact of an injunction and any possibility of Netlist recapturing DDR4 market share. *Third*, while Samsung argues that "Netlist has licensed its patents to others" (Mot. at 12), Netlist has never granted a bare patent license because its primary focus is product sales. All of Netlist's licenses have been part of strategic agreements providing Netlist with major supply sources. Ex. 7 (SK Hynix Agreement); Ex. 1 (JDLA). In addition, this district has repeatedly recognized a patentee's "right to timely enforcement of its patent rights" and its "right to conduct its business." *Saint Lawrence*, 2017 WL 3396399, at *2. This would be true "even if [Netlist] could be made whole by money damages," which it cannot. *Intell. Ventures v. FedEx Corp.*, 2017 WL 6559172, at *4 (E.D. Tex. Dec. 22, 2017) (denying stay). *Fourth,* the prejudice is especially strong because Samsung seeks a stay of indeterminate length which undermines the "public interest in the 'speedy resolution of disputes.'" *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 2018 WL 2722051, at *4 (E.D. Tex. June 6, 2018) (citation omitted); *Invensys Sys. v. Emerson Elec.*, 2014 WL 4477393, at *3 (E.D. Tex. July 25, 2014) ("Firm trial settings resolve cases and reduce litigation costs.").

Finally, a stay would present a "clear tactical disadvantage to [Netlist]." *Realtime Data*, 2016 WL 3277259, at * 1. While a jury in *this case*—where the license is front and center—will have the opportunity to weigh the implications of Samsung's inconsistencies on its license defense, Samsung can disguise this inconsistency in the Central District where its license defense is not being directly addressed.

        **B.**     <u>**A Stay Will Not Simplify The Issues For Trial**</u>

As demonstrated above, the issue in the Central District is whether Samsung breached its supply obligation, and, therefore, the license was properly terminated. The issue in *this case* is whether Samsung has a license defense. That means that Netlist can prevail in this case if the clauses in the

JDLA that do not expressly mention the joint development project (including the license and Samsung's supply obligation) are interpreted consistently with each other. That is true regardless of whether they are interpreted narrowly (to only encompass the joint development project and thus omit the patents here) or broadly (to extend beyond the joint development project and thus confirm the materiality of Samsung's breach). Samsung can prevail in California but still lose here. For instance,

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████ Ex. 8 (C.D. Cal., Ho-Jung Kim Depo. Tr.) at 22:11-17 (emphasis added). If Samsung were to prevail at trial on a limited scope of the supply clause by proffering this position, it would just mean Samsung loses its license defense here. Consequently, resolution of the Central District case will not resolve the issues in this case.

    **C.**    <u>**The Stage Of This Case Weighs Against A Stay**</u>

Contrary to Samsung's assertions, the stage of this case does not favor a stay. As noted above, fact discovery closes on November 13, 2023, and trial is set for April 15, 2024; the deadline to substantiallyc document production passed on August 24, 2023 (Dkt. 55); Netlist has produced 50,712 documents spanning 426,362 pages, subpoenaed 12 third parties, and expended significant resources in preparing opening expert reports which are due November 13. Sheasby Decl. ¶ 2. The Court held a several-hour claim construction hearing on September 26, 2023 and has already ruled on summary judgment as to intervening rights (Dkt. 184).

Samsung's suggestion that the parties have taken no depositions and that Netlist's conduct "is not consistent with that of a party who wishes to complete discovery" (Mot. at 13-14) does not reflect the reality of this case. The parties have been negotiating over the use of deposition transcripts from prior litigation to potentially obviate the need for the vast majority of witnesses to be re-deposed. The

parties exchanged deposition transcripts from *Samsung I* so that "the parties [could] review these transcripts over the next week and provide their position by October 20, 2023, as to whether they believe that a second deposition of these witnesses is required in light of the transcripts." Ex. 9 (Tishman October 13, 2023 email). Samsung also has unilaterally refused to provide depositions on its affirmative license defense.

### D.  This Court Is The Only Court That Can Decide The Entire Dispute

According to Samsung, this Court should "stay this case pending resolution of the remanded [] C.D. Cal. Case, which will decide whether Samsung is still licensed to Netlist's patents" Mot. at 14. The only forum that can definitively decide whether Samsung is licensed is this Court, because the scope of the license grant is only present before this Court. Samsung's arguments and proffered evidence on the scope of the supply clause (that it is limited to collaboration products) would apply with equal force to the license grant. The court that can definitively decide whether Samsung is licensed should proceed first. That court is East Texas.

Samsung prefers to litigate the scope of its supply obligation (§ 6.2) in a vacuum in California, where Samsung believes it can take inconsistent positions on the JDLA's scope. That is not a basis for a stay. If Samsung is truly concerned about efficiency and "a waste of party and judicial resources" (Mot. at 1), Samsung can stipulate (subject to court approval) to a stay or a transfer of the Central District action to this Court. *See, e.g., Eragen Biosciences v. Necleic Acids Licensing, LLC,* 447 F. Supp. 2d 930, 933 (W.D. Wisc. 2006) ("If defendants are concerned that this court's rulings may conflict with rulings made by the Florida district court, they may move for a transfer of the Florida case to this court, where the two cases may be consolidated and the claims tried in one suit.").

### E.  The First-To-File Rule Does Not Require A Stay

Samsung incorrectly argues that the "first to file" rule compels a stay. As an initial matter, the first to file rule is inapplicable because, as explained above, this case is "broader in scope" than the

Central District action. *See, e.g., Encore Wire Corp. v. Copperweld Bimetallics, LLC*, 2023 WL 123506, at *5 (E.D. Tex. Jan. 6, 2023). The Central District action addresses a narrow question: whether Netlist properly terminated the JDLA due Samsung's breach of the supply provision. This case, however, will address not only that question, but also whether Samsung infringes and whether the JDLA license covers the Accused Products. In sum, given that this case is clearly "broader in scope," the Central District case is not the "first-filed" action. *Encore Wire Corp.,* 2023 WL 123506, at *5.

Moreover, Netlist filed the Central District action. Netlist is thus the first-filer if the Central District is treated as the first-filed forum. The first to file rule is "invoked to protect the *plaintiff's* choice of forum in cases where the *defendant* has subsequently filed an identical or related suit in a different forum." *Wiley v. Trendwest Resorts, Inc.,* 2005 WL 1910934, at *5 (N.D. Cal. Aug. 10, 2005) (emphasis in original). It thus does not apply to cases in which a "*plaintiff* has filed [different cases] in two different jurisdictions." *Id.* (emphasis in original).

Regardless, even if the first to file rule applied, a stay would still not be warranted. The first to file rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *7 (E.D. Tex. Oct. 21, 2020) (internal quotation marks omitted). Consequently, whether to stay is within this Court's discretion. Samsung relies on *West Gulf Maritime v. ILA Deep Sea Local 24*, 751 F.2d 721 (5th Cir. 1985), but that case does not hold otherwise. There, a mere four days after a New York court denied the plaintiff's motion to transfer the first-filed suit to Texas, the plaintiff nonetheless filed suit in Texas anyway, seeking a preliminary injunction that would have interfered with the New York court's authority. *Id.* at 724-25. In contrast, here, it is unclear when the Central District will resume its case, and the Central District cannot resolve the entire dispute. Thus, unlike in *West Gulf*, the "conservation of judicial resources and comprehensive disposition of litigation" (*In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *7) firmly weigh against a stay.

| | |
|---|---|
| Dated: November 2, 2023 | Respectfully submitted, |
| | /s/ Jason Sheasby |
| | Jason G. Sheasby |
| | |
| | Samuel F. Baxter |
| | Texas State Bar No. 01938000 |
| | sbaxter@mckoolsmith.com |
| | Jennifer L. Truelove |
| | Texas State Bar No. 24012906 |
| | jtruelove@mckoolsmith.com |
| | **MCKOOL SMITH, P.C.** |
| | 104 East Houston Street Suite 300 |
| | Marshall, TX 75670 |
| | Telephone: (903) 923-9000 |
| | Facsimile: (903) 923-9099 |
| | |
| | Jason G. Sheasby (*pro hac vice*) |
| | jsheasby@irell.com |
| | Annita Zhong, Ph.D. (*pro hac vice*) |
| | hzhong@irell.com |
| | Andrew J. Strabone (*pro hac vice*) |
| | astrabone@irell.com |
| | Thomas C. Werner (*pro hac vice*) |
| | twerner@irell.com |
| | Yanan Zhao (*pro hac vice*) |
| | yzhao@irell.com |
| | Michael W. Tezyan (*pro hac vice*) |
| | mtezyan@irell.com |
| | |
| | **IRELL & MANELLA LLP** |
| | 1800 Avenue of the Stars, Suite 900 |
| | Los Angeles, CA 90067 |
| | Tel. (310) 277-1010 |
| | Fax (310) 203-7199 |
| | |
| | **Attorneys for Plaintiff Netlist, Inc.** |

## CERTIFICATE OF SERVICE

I hereby certify that, on November 2, 2023, a copy of the foregoing was served to all counsel

of record via email.

*/s/ Yanan Zhao*
Yanan Zhao

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case

*/s/ Yanan Zhao*
Yanan Zhao

- 17 -