UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.<br><br>          Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD, et al.<br><br>          Defendants. | Civil Case No. 2:22cv00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.<br><br>          Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.<br><br>          Defendants. | Civil Case No. 2:22cv00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S REPLY IN SUPPORT OF MOTION TO STAY PENDING
RESOLUTION OF THE C.D. CAL. CASE REVERSED AND REMANDED
BY THE NINTH CIRCUIT REGARDING SAMSUNG'S LICENSE (Dkt. 187)**

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. THIS COURT HAS ALREADY DETERMINED THE SCOPE OF
SAMSUNG'S LICENSE AS COVERING THE ACCUSED PRODUCTS ...................... 1

III. SAMSUNG ARGUED CONSISTENTLY THAT ITS LICENSE UNDER
THE JDLA MOOTS THIS CASE .................................................................................... 2

IV. THIS COURT SHOULD REJECT NETLIST'S INVITATION TO
RESOLVE THE JDLA'S ALLEGED TERMINATION ................................................... 4

V. A STAY WILL NOT UNDULY PREJUDICE NETLIST ................................................ 4

VI. THE STAGE OF THIS CASE FAVORS GRANTING THE REQUESTED
STAY ................................................................................................................................ 5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*High Tech Med. Instrm'n, Inc. v. New Image Indus., Inc.*,
  49 F.3d 1551 (Fed. Cir. 1995) ................................................................................................ 5

*In re Toyota Hybrid Brake Litigation,*
  2020 WL 6161495 (E.D. Tex. Oct. 21, 2020). ........................................................................ 4

*Intermedics Infusaid, Inc. v. Regents of Univ. of Minn.*,
  804 F.2d 129 (Fed. Cir. 1986) ................................................................................................. 2

*NFC Tech. LLC v. HTC Am., Inc.*,
  2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ........................................................................ 4

*Pace v. Bogalusa City Sch. Bd.*,
  403 F.3d 272 (5th Cir. 2005) ................................................................................................... 1

*W. Gulf Mar. Assn. v. ILA Deep Sea Loc. 24*,
  751 F.2d 721 (5th Cir. 1985) ................................................................................................... 4

*Wiley v. Trendwest Resorts, Inc.*,
  2005 WL 1910934 (N.D. Cal. Aug. 10, 2005) ........................................................................ 4

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| C.D. Cal. | U.S. District Court for the Central District of California |
| C.D. Cal. Case | *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-cv-00993 (C.D. Cal.) |
| JDLA | Joint Development and License Agreement (Mot. Ex. 2) |
| *Netlist 1* | *Netlist Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-463 (E.D. Tex.) |

## TABLE OF EXHIBITS

| Ex. | Description |
|---|---|
| 5 | *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55247, Dkt. 32 (9th Cir. Oct. 6, 2022) |
| 6 | Email and term sheet bearing bates numbers NL119237-38 |
| 7 | *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55247, Dkt. 75 (9th Cir. Nov. 8, 2023) |

## I. INTRODUCTION

Netlist's opposition rests on its assertion that the JDLA's license grant extends to only joint development products and thus does not cover the accused products. But this Court has already considered and rejected that argument and issue preclusion prevents Netlist from relitigating it now. The central issue relating to the JDLA is whether it has been breached and lawfully terminated. This case is dependent on the answer to that question, which is being litigated in the first-filed, dominant C.D. Cal. Case. It would be most improper to continue to litigate this case under the circumstances. This case should be immediately stayed.

## II. THIS COURT HAS ALREADY DETERMINED THE SCOPE OF SAMSUNG'S LICENSE AS COVERING THE ACCUSED PRODUCTS

Netlist asserts that there is still a live dispute over whether Samsung's license under the JDLA covers the accused products. Opp. 1, 3-5, 8, 12, 14-15. In so arguing, Netlist ignores this Court's holding, in *Netlist 1*, that the JDLA's license is not limited to joint development products, but covers the accused products. Mot. 4; *Netlist 1*, Dkt. 432 at 2. Indeed, issue preclusion prevents Netlist from arguing the opposite here, i.e., that the license does not broadly cover memory products.[1] In *Netlist 1*: (1) Netlist argued that the JDLA's license (§ 8) is limited to joint development products—despite Netlist's many admissions that it was ***not*** so limited, *Netlist 1*, Dkt. 237 at 4-5, 13-15; Dkt. 237-3 at 5; (2) the parties fully litigated that issue with extensive briefing, *Netlist 1*, Dkt. 227, 237, 275, 289, 323, 328, 360; and (3) the Court rejected Netlist's argument and entered judgment that the license is not limited to joint developed products, *Netlist 1*, Dkt. 237 at 2. Netlist thus cannot relitigate the scope of the JDLA's license.

Samsung's memory products were thus licensed until at least July 15, 2020. If Netlist

---

[1] "Issue preclusion . . . is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005).

1

fails to prove in C.D. Cal. both that Samsung breached the JDLA and that any such breach was material, then the JDLA license remains in effect and immunizes the entirety of Samsung's sales of the accused products. Dkt. 187-1 at 7; Mot. 7-8. Thus, contrary to Netlist's assertion, Opp. 12-13, a stay would "greatly simplify" the issues in this case. *See, e.g.*, *Intermedics Infusaid, Inc. v. Regents of Univ. of Minn.*, 804 F.2d 129, 135 (Fed. Cir. 1986) (affirming stay).

### III.   SAMSUNG ARGUED CONSISTENTLY THAT ITS LICENSE UNDER THE JDLA MOOTS THIS CASE

Netlist oddly asserts that Samsung has "disclaimed" its license defense. Opp. 5. Samsung's JDLA license has been front and center in both *Netlist I* and here with Samsung repeatedly reminding this Court of its dispositive nature. Indeed, the Court, relying on Samsung's license defense, even **instructed the jury in Netlist 1 that Samsung had been previously licensed**. *See Netlist 1*, Trial Tr. at 125:5-20, 1298:11-1299:4. Samsung previously urged this Court to stay this action pending resolution of the JDLA issue in C.D. Cal. Dkt. 20, 121. And this Court itself evaluated the JDLA, resulting in a judgment that the accused products sold prior to July 15, 2020 were licensed. Sec. II, *supra*; *Netlist 1*, Trial Tr. at 1266:4-1267:1.

Contrary to Netlist's assertion, Samsung has not advanced inconsistent positions as to the scope of the JDLA's license. As Samsung has consistently asserted, joint development and patent licensing were two distinct purposes of the JDLA, and the JDLA's licenses are ***not limited to*** only joint development products. *See, e.g.*, Ex. 5 at 6 ("[T]he parties' intent was twofold: (a) to commit the parties to jointly develop an NVDIMM-P product; and (b) to cross license certain patents" and "sections 7 and 8 deal with patent licensing, not the joint-development project."); Dkt. 187-3 at 29 (similar); *id.* at 9, 29-30 (defining Samsung's "Licensed Products" as encompassing "all semiconductor products"). Given these two separate purposes, it is entirely reasonable to expect that some of the JDLA's provisions—such as the supply obligation of

2

§ 6.2—are limited to joint development, whereas other provisions—like the licenses—are not.

Nothing in Samsung's Ninth Circuit appeal disclaimed the clear scope of the JDLA's license as broadly covering Samsung memory products. In each of *Netlist 1*, this case, and the Ninth Circuit appeal, Samsung explained that the JDLA includes an $8 million payment, called ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.[2] Dkt. 187-2, § 3.1. Samsung satisfied that obligation, *see* Dkt. 187-1 at 6-7, and all other JDLA obligations, and thus Samsung's memory products are currently licensed. That has been Samsung's consistent position. Responding to a question from the Ninth Circuit panel, Samsung's counsel explained that the supply obligation (§ 6.2), like certain other obligations in the JDLA, "relate[s] to the joint development project," likening it to the $8 million "NRE fees." Dkt. 196-3 at 8:2-24; Dkt. 187-2, § 3.1. This answer does not contradict Samsung's assertions in its Ninth Circuit briefs, *Netlist 1*, and this case, that the license (§ 8) is ***not limited to*** joint development products.

The same is true for Samsung's counsel's discussion of the JDLA's fourth recital ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Dkt. 187-2 at 1; *see also* Dkt. 196-3 at 15:9-21. Neither the JDLA's fourth recital nor the license provision (§ 8) limits the licenses to NVDIMM-P products. Rather, the recital reflects the parties' recognition that broad cross-licenses would advance and benefit the amicable business relationship on which the parties were embarking, and in that sense "the licenses are being given in connection with the collaboration." Dkt. 196-3 at 15:9-21.

The Ninth Circuit subsequently reversed the decision of the C.D. Cal. and in no way adopted the reasoning that Netlist now offers. The Ninth Circuit's opinion does not address § 7 (release) or § 8 (license). Instead, it adopts Samsung's position that "the JDLA has two stated

---

[2] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

3

purposes," supporting Samsung's consistent position that the release and license provisions are *not limited to* the joint development project. Dkt. 187-1 at 3; Dkt. 187-3 at 9, 29-30; Ex. 5 at 6.

### IV.   THIS COURT SHOULD REJECT NETLIST'S INVITATION TO RESOLVE THE JDLA'S ALLEGED TERMINATION

Netlist cannot dispute that the "first to file" rule is in play, particularly because the "first to file" was *Netlist* in C.D. Cal. Apparently dissatisfied with the Ninth Circuit's decision, Netlist asks this Court to take up the exact same issue—whether Samsung's license under the JDLA remains in force—C.D. Cal. will address shortly (mandate issued on November 8, 2023, Ex. 7).

Contrary to Netlist's contention, the "first to file" rule cannot be waived at Netlist's option. *See* Opp. 15. This time-honored rule—grounded in respect for comity—exists to protect the courts, parties, and the public from wasteful, duplicative litigation and from unnecessary conflicts in outcomes, including protecting courts such as C.D. Cal. from having their authority encroached upon by rulings in later-filed cases on the exact same issues. *See, e.g.*, *W. Gulf Mar. Assn. v. ILA Deep Sea Loc. 24*, 751 F.2d 721, 729 (5th Cir. 1985). The rule does not exist to give Netlist multiple "bites at the apple" once it finds the flavor distasteful in C.D. Cal. None of the authority Netlist cites suggests otherwise. *In re Toyota Hybrid Brake Litigation* is not an invitation to forum-shop. 2020 WL 6161495 (E.D. Tex. Oct. 21, 2020). That case merely notes that the "first to file" rule is not excessively rigid and "compelling circumstances" may justify deviating from it. *Id.* at *6-7; *Wiley v. Trendwest Resorts, Inc.*, 2005 WL 1910934, at *5 (N.D. Cal. Aug. 10, 2005) (rule "is not to be rigidly enforced"). No such compelling circumstances exist here, where Netlist seeks a second forum to litigate the identical license termination issue.

### V.   A STAY WILL NOT UNDULY PREJUDICE NETLIST

A delay of the vindication of patent rights alone is insufficient to defeat a motion to stay. *See, e.g.*, *NFC Tech. LLC v. HTC Am., Inc.*, 2015 WL 1069111, at *2-3 (E.D. Tex. Mar. 11,

4

2015). Netlist's Complaint never mentions an injunction, Dkt. 100 at 65, contrary to its contention in its opposition brief that it "seeks injunctive relief." Opp. 11-12.[3] Netlist also has not identified a ***single asserted claim*** it allegedly practices. Injunctions in patent matters are typically available only where damages are inadequate, and with no practicing products, Netlist is highly unlikely to make that showing here. *E.g.*, *High Tech Med. Instrm'n, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995). Moreover, money damages are plainly sufficient because Netlist has licensed its patents to others, including Samsung and SK hynix.

A stay would not tactically disadvantage Netlist. First, Samsung, unlike Netlist, has been entirely consistent in its interpretation of the JDLA and its license provision (§ 8). *See* Sec. III, *supra*. Second, Netlist cannot put the JDLA license's scope "front and center" before a jury in this case. Even if the scope of the license were a jury issue (it is not), the Court already expressly rejected Netlist's arguments that the scope of Samsung's license is limited to the parties' NVDIMM-P Joint Development Project in *Netlist 1*. Sec. II, *supra*.

## VI. THE STAGE OF THIS CASE FAVORS GRANTING THE REQUESTED STAY

To the extent the Court considers the stage of this case, despite *West Gulf*'s plain mandate to stay, this factor weighs in favor of Samsung. Netlist filed this case ***during*** the Ninth Circuit Appeal, and ***opposed*** Samsung's prior motion to stay pending Ninth Circuit proceedings. Now that Netlist has lost at the Ninth Circuit, it brazenly seeks to try its luck in another forum. The "stage of the case" factor is not meant to reward forum shopping or encourage duplicative proceedings, such as the proceedings in this case, which the C.D. Cal. remand may very well render moot. In any event, significant work remains in this case, which favors a stay.

---

[3] Netlist also raised the specter of an injunction in *Netlist 1*, then did not seek one after trial. *Netlist 1*, 1/19/23 Hr'g Tr. at 18:7-11, Dkt. 86 at 9-10.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Date: November 8, 2023                    Respectfully submitted,

/s/ Michael J. McKeon

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.

6

Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-7091
Facsimile: (415) 955-6571

*Attorneys for Defendants Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on November 8, 2023. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by electronic mail.

/s/ Michael J. McKeon