# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 2:22-cv-293-JRG |
| vs. | ) |
| | ) JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO, LTD; | ) (Lead Case) |
| SAMSUNG ELECTRONICS AMERICA, | ) |
| INC.; SAMSUNG SEMICONDUCTOR | ) ▄▄▄▄▄▄▄▄▄▄▄▄▄▄ |
| INC., | ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| NETLIST, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:22-cv-294-JRG |
| | ) |
| MICRON TECHNOLOGY, INC.; | ) JURY TRIAL DEMANDED |
| MICRON SEMICONDUCTOR | ) |
| PRODUCTS, INC.; MICRON | ) |
| TECHNOLOGY TEXAS LLC, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF NETLIST, INC.'S SUR-REPLY RE
SAMSUNG'S MOTION TO STAY (DKT. 187)**

## **TABLE OF CONTENTS**

**Page**

I. SAMSUNG'S COLLATERAL ESTOPPEL ARGUMENT INACCURATELY REPORTS THE RECORD ................................................................................................1

II. ALL OF THE STAY FACTORS FAVOR DENIAL OF A STAY IN THIS CASE ............................................................................................................................2

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Fornesa v. Fifth Third Mortg. Co.*,
　897 F.3d 624 (5th Cir. 2018)............................................................................................................4

*Mytee Prod., Inc. v. Harris Rsch., Inc.*,
　439 F. App'x 882 (Fed. Cir. 2011)..................................................................................................3

*Netlist Inc. v. Samsung Elecs. Co.*,
　2023 WL 6820683 (9th Cir. Oct. 17, 2023)....................................................................................4

*Sexual Minorities Uganda v. Lively*,
　899 F.3d 24 (1st Cir. 2018)..............................................................................................................4

*SpeedTrack, Inc. v. Off. Depot, Inc.*,
　No. C 07-3602 PJH, 2014 WL 1813292 (N.D. Cal. May 6, 2014), *aff'd*, 791 F.3d
　1317 (Fed. Cir. 2015).......................................................................................................................2

*Z-Line Designs, Inc. v. Bell'O Int'l, LLC*,
　218 F.R.D. 663 (N.D. Cal. 2003)....................................................................................................2

Samsung does not dispute that this Court is the only court that can resolve the entire dispute between the parties and is the only court that has set a trial date (for April 2024). Nor does Samsung seriously dispute the obvious prejudice to Netlist from an indefinite stay (which are disfavored), as well as the fact that, even if Samsung prevails in the Central District, it still will not simplify the issues in this case. Consequently, all of the stay factors compel denial of Samsung's second motion for a stay.

## I. SAMSUNG'S COLLATERAL ESTOPPEL ARGUMENT INACCURATELY REPORTS THE RECORD

Samsung's principal argument on reply is that Netlist is collaterally estopped (i.e., issue precluded) from challenging Samsung's license defense based on this Court's summary judgment rulings in *Samsung I*. Samsung is incorrect on multiple levels.

As a threshold matter, this Court's ruling on summary judgment as to the license defense in *Samsung I* was: "**after July 15, 2020, Samsung does not have a license defense** and as of that date the JDLA was terminated, which terminated any license created thereunder." Ex. 1 (*Samsung I,* Dkt. 432) at 2 (emphasis added). As this Court explained:

> [T]here's no material question of fact that the termination letter executed by Netlist on July the 15th, 2020, effectively terminated your licenses – Samsung's license as of that date… So you've got a license – **Samsung's got a license defense up until July 15th, 2020, and you don't have one after July 15th, 2020. What falls within that license as prescribed by the other terms of the JDLA is a fact question**.

Ex. 2 (*Samsung I,* PTC Tr.) at 59 (emphasis added). Consequently, if this Court's summary judgment order in *Samsung I* constitutes collateral estoppel in this case, then that means: (i) Samsung has no license defense at all post July 15, 2020, and (ii) that the scope of the license (i.e., "what falls within that license") before that date is a fact question. Neither of these rulings would support a stay.

Samsung ignores this Court's actual ruling in *Samsung I* (never quoting it) and instead presumes that the Ninth Circuit partial reversal of the Central District somehow means Samsung can take bits and pieces from this Court's order in *Samsung I* and discard the rest. But collateral estoppel does not

work that way. *See, e.g., SpeedTrack, Inc. v. Off. Depot, Inc.*, No. C 07-3602 PJH, 2014 WL 1813292, at *6, n.1 (N.D. Cal. May 6, 2014), *aff'd*, 791 F.3d 1317 (Fed. Cir. 2015) (party cannot have it "both ways" by claiming that the requirements for preclusion are "met when it comes to favorable rulings, but [are] not met when it comes to unfavorable rulings"). If this Court's MSJ Order is binding, (i.e., if this Court's order is collateral estoppel), then the parties in this case are both in the same position that they were in *Samsung I*: "**after July 15, 2020, Samsung does not have a license defense**," Ex. 1 (*Samsung I*, Dkt. 432) at 2 (emphasis added), and "[w]hat falls within that license as prescribed by the other terms of the JDLA is a fact question," Ex. 2 (*Samsung I*, PTC Tr.) at 59. If on the other hand, the Ninth Circuit ruling somehow undoes this Court's prior summary judgment order on Samsung's license defense (i.e., if this Court's order is not collateral estoppel), then Netlist is free to contend that the license was terminated and that Samsung's own recent admissions show that the license scope is limited to the joint development project/product. This is particularly true given that Samsung obtained the partial reversal by the Ninth Circuit by arguing that the license scope in the JDLA is limited to the joint development project. Opp. 3. This means that JDLA's license does not encompass products in this case, as there is no dispute that the joint development product was never commercialized. Opp. 4. Either way, collateral estoppel cannot support Samsung's motion for a stay.

## II.   ALL OF THE STAY FACTORS FAVOR DENIAL OF A STAY IN THIS CASE

Although Samsung bears the burden of showing a stay is warranted, Netlist's opposition demonstrated that each recognized stay factor favors a denial of a stay of this case. In response, Samsung's reply either ignores Netlist's arguments or raises irrelevancies.

This case is "broader in scope" than the Central District action and thus the "first filed" rule does not apply. Opp. 14-15; *see also Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) ("Even if the threshold factors of the first to file rule are met, '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does

not counsel rigid mechanical solution of such problems.'"). Samsung does not dispute that this Court is the only one that can decide the entire controversy between the parties.

The products at issue in this case are phasing out, meaning that an indefinite stay would undermine the effects of an injunction. Opp. 11-12. Samsung does not address these facts; instead, it claims Netlist has not sought an injunction. The Complaint seeks "all equitable relief." Dkt. 100 at 65(¶ B). And the Federal Circuit holds that declining to seek a preliminary injunction does not foreclose the grant of a permanent injunction. *Mytee Prod., Inc. v. Harris Rsch., Inc.*, 439 F. App'x 882, 888 (Fed. Cir. 2011) ("We have never held that failure to seek a preliminary injunction must be considered as a factor weighing against a court's issuance of a permanent injunction.").

Samsung's argument to the Ninth Circuit was an about-face from what it argued to both the Central District and this Court about the license and other provisions in the JDLA (like the $8 million payment) that do not expressly mention the joint development project or product. Opp. 8-9. Having no viable answer, Samsung claims that it "explained that the JDLA includes an $8 million payment" and that Samsung "satisfied that obligation." Reply 3. But the point is not whether Samsung satisfied the payment. Instead, while Samsung previously told this Court that the $8M fee was for broad license rights, Samsung told the Ninth Circuit that the $8 million fee was "clearly for the joint development project, but it doesn't say it's specifically for the joint development project." Opp. 5. So, too, with the license grant. While Samsung previously told this Court that the license is broad and unlimited to the joint development project and product, Samsung said the precise opposite to the Ninth Circuit. Opp. 8-9. Samsung made this statement to support its theme that even when contractual clauses in the JDLA do not refer to the joint development project and product, they are still limited to it:

> **[T]he recitals are very clear -- and parties put recitals in agreements to make sure language isn't tortured down the road by lawyers and courts, right?** Here's what our purpose is, interpret this agreement consistent with our purpose. **And when you look at the recitals, what does it say about the licenses?** Whereas in connection with their collaboration hereunder, the parties wish to grant to each other

a cross-license under each party's patents. **The licenses are being given in connection with the collaboration. That's the joint development project**."

Dkt. 196-3 (9th Cir. Hearing Tr.) at 15:10-19. Samsung's only response to why it made the above argument regarding the fourth JDLA recital is that: "the recital reflects the parties' recognition that broad cross-licenses would advance and benefit the amicable business relationship on which the parties were embarking." Reply 3.

But this had nothing to do with what was being decided by the Ninth Circuit, nor is it what Samsung argued. Instead, as it did with the $8 million fee, Samsung expressly argued that the fourth recital in the JDLA—"WHEREAS, in connection with their collaboration hereunder, the Parties wish to grant to each other a cross license under each Party's patents"—served to limit the rights in the JDLA to the joint development project. Opp. 8-9. And Samsung did so in order to prove its broader point that, even when JDLA clauses (like the license and $8 million payment) do not expressly mention the joint development project collaboration, they are still limited by it. While Samsung claims it did not prevail on that argument, the Ninth Circuit opinion demonstrates otherwise. *See Netlist Inc. v. Samsung Elecs. Co.*, 2023 WL 6820683, at *2 (9th Cir. Oct. 17, 2023) ("Read as an integrated whole, however, the contract's apparent purpose as derived from its title, structure, and related provisions make § 6.2 'reasonably susceptible of more than one interpretation.'"); *id.*, at *4 ("Finding no support in the terms of the agreement, the majority's decision settles on the recitals as the basis for its finding that § 6.2 is ambiguous.") (Desai, J., dissenting). Samsung thus now must live with the consequences. *See Fornesa v. Fifth Third Mortg. Co.,* 897 F.3d 624, 628 (5th Cir. 2018) (second element of judicial estoppel satisfied where court "implicitly accepted" a party's representation by operating as though representation was accurate); *Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 33 (1st Cir. 2018) ("An issue need not always be decided explicitly but, rather, may sometimes be decided implicitly[.]").[1]

---

[1] At oral argument, the very first question posed to Netlist's counsel was (which was posed by the Presiding Judge of the Ninth Circuit and a member of the majority opinion): "But it is, if you

- 4 -

Even putting aside Samsung's admissions in the Ninth Circuit, a Samsung witness whom Samsung has identified in sworn interrogatories as a negotiator of the JDLA testified: "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Dkt. 196-9 (C.D. Cal., Ho-Jung Kim Depo. Tr.) at 22:11-17 (emphasis added). If Samsung were to prevail at trial in the Central District based on a limited scope of the supply clause by offering this position, it would mean that Samsung loses its license defense in this case because no one disputes that the patents and products at issue in this case are not the joint development project/product. That, in turn, would mean that a stay of this case in favor of the Central District action, even if won by Samsung, would not have simplified the issues for trial here. Samsung's reply does not contend otherwise, nor does it disclaim (or even discuss) the above sworn testimony of its own proffered witness.

Samsung's motion refers to judicial efficiency and economy, but it was Samsung who initiated parallel litigation on infringement by filing a declaratory relief action in Delaware District Court one day after losing summary judgment in the Central District. Opp. 7. Samsung did so even while Samsung was continuing to dispute the issue of breach and termination of the JDLA in the Central District, both by seeking reconsideration of the Central District's summary judgment ruling and by contending that until the trial on cost of cover damages was completed (which had not even been started when Samsung filed its Delaware action) there could be no final judgment of material breach. *Id.* Samsung disputes none of this; it just ignores it all.

---

will, interpreted by the rest of the contract including, for example, the recital that [Samsung's counsel] just gave, and when you look at that in its totality, now it's pretty ambiguous to me. Why am I wrong?" Ex. 3 (9th Cir. Hearing Tr.) at 18:23-19:2.

| | |
|---|---|
| Dated: November 15, 2023 | Respectfully submitted,<br><br>*/s/ Jason G. Sheasby*<br><br>Samuel F. Baxter<br>Texas State Bar No. 01938000<br>sbaxter@mckoolsmith.com<br>Jennifer L. Truelove<br>Texas State Bar No. 24012906<br>jtruelove@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>104 East Houston Street Suite 300<br>Marshall, TX 75670<br>Telephone: (903) 923-9000<br>Facsimile: (903) 923-9099<br><br>Jason G. Sheasby (*pro hac vice*)<br>jsheasby@irell.com<br>Annita Zhong, Ph.D. (*pro hac vice*)<br>hzhong@irell.com<br>Andrew J. Strabone (*pro hac vice*)<br>astrabone@irell.com<br>Thomas C. Werner (*pro hac vice*)<br>twerner@irell.com<br>Yanan Zhao (*pro hac vice*)<br>yzhao@irell.com<br>Michael W. Tezyan (*pro hac vice*)<br>mtezyan@irell.com<br><br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>Tel. (310) 277-1010<br>Fax (310) 203-7199<br><br>**Attorneys for Plaintiff Netlist, Inc.** |

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao

## CERTIFICATE OF SERVICE

I hereby certify that, on November 15, 2023, a copy of the foregoing was served to all counsel of record via Email as agreed by the parties.

*/s/ Yanan Zhao*
Yanan Zhao