# Exhibit 3

```
 1           UNITED STATES COURT OF APPEALS, NINTH CIRCUIT
 2
 3    NETLIST INC.,
      a Delaware corporation,
 4
           Plaintiff-Appellee,
 5
      vs.                                      Case No.:  22-55209
 6
      SAMSUNG ELECTRONICS CO., LTD.,
 7    a Korean corporation,
 8         Defendant-Appellant.
 9
10
11
12
13          TRANSCRIPT OF AUDIO-RECORDED ORAL ARGUMENT
14      Before:  M. SMITH and DESAI, Circuit Judges, and AMON,
15                         District Judge
16                         June 8, 2023
17                          1:36 p.m.
18
19
20
21
22    Transcribed By:
      TERRI NESTORE
23    CSR No. 5614, RPR, CRR
24
25    Job No. 6169798
```

Page 1

**Page 18**

1  Is it because of this unlimited supply obligation
2  or is it because that's the way the parties had been doing
3  this for years and years?
4  So with that, let me reserve the rest.
5  JUSTICE SMITH: Reserve your time.
6  MR. YODER: Thank you very much.
7  JUSTICE SMITH: Very welcome. All right.
8  Mr. Ashley.
9  MR. ASHLEY: Almost good afternoon, Your Honors.
10  JUSTICE SMITH: Pretty close.
11  MR. ASHLEY: May it please the court, Matt Ashley
12  for Netlist.
13  This case begins and ends with the plain language
14  of the JDLA and New York's settled contract interpretation
15  principles. You're correct, you don't look outside of
16  this contract to determine whether there is ambiguity.
17  And I want to focus first on the key contractual
18  provision in the case, which is Section 6.2.
19  Section 6.2 reads, and I'll quote it to you:
20  Samsung will supply NAND and DRAM products to Netlist, on
21  Netlist request, at a competitive price. That is
22  succinct, clear and unambiguous language.
23  JUSTICE SMITH: But it is, if you will,
24  interpreted by the rest of the contract including, for
25  example, the recital that Mr. Yoder just gave, and when

**Page 19**

1  you look at that in its totality, now it's pretty
2  ambiguous to me. Why am I wrong?
3  MR. ASHLEY: You're wrong in part because he read
4  you the wrong recital.
5  JUSTICE SMITH: Ah. Let's hear the right one.
6  MR. ASHLEY: He didn't read the first recital of
7  the contract, which says: Whereas Samsung develops and
8  manufactures, among other things, memory components and
9  memory modules, and Netlist develops and manufactures
10  memory components and memory modules.
11  So it's speaking to the products that these
12  companies produce, and that ties into the supply
13  obligation later that for Netlist, is expressly limited in
14  Section 6.1 to NVDIMM-P controllers, and that for Samsung
15  is not limited to either NVDIMM-P controllers or their
16  current position, the joint development project.
17  JUSTICE AMON: You friend on the other side said
18  that there was a relationship with respect to the sale of
19  these NAND and DRAM products before this agreement. It's
20  my understanding that there was no agreement, there was no
21  contract that obligated Samsung to sell these parts to
22  Netlist, and in fact it was pretty ad hoc and requests
23  would be made and not fulfilled, or backlogged, and in
24  fact part of this agreement was to ensure that when those
25  parts were ordered, they would in fact be supplied at the

**Page 20**

1  competitive prices that Samsung was selling them for; is
2  that correct?
3  MR. ASHLEY: That's absolutely correct.
4  And then one of your questions to Counsel was you
5  referenced, Your Honor, the term "JDP."
6  That's a point I wanted to make.
7  They stress, both in their moving and in their
8  reply brief, sort of the linchpin of their argument about
9  creating an ambiguity is to say, well, Section 6.2 is part
10  of Section 6, which is supply of components, and that's
11  why I was tying you to that first "whereas" clause; they
12  say you should interpret "components" to be components for
13  the JDP. Well, it doesn't say supply of components for
14  the JDP.
15  JUSTICE AMON: But isn't the controller in the
16  first part a JDP controller? I mean that is used just for
17  this particular development; is that correct?
18  MR. ASHLEY: In Section 6.1.
19  JUSTICE AMON: In Section 6.1.
20  MR. ASHLEY: Yes.
21  JUSTICE AMON: That controller is limited to this
22  project, correct? It's not something else?
23  MR. ASHLEY: It's limited to -- it's limited to
24  NVDIMM-P, which is supposed to be the jointly developed
25  product.

**Page 21**

1  JUSTICE AMON: That's the jointly developed
2  product.
3  MR. ASHLEY: Correct.
4  JUSTICE AMON: So under heading of Supply of
5  Components, the first is clearly for the JDP project. Why
6  wouldn't you reasonably read the second clause as also
7  relying or involving that development project?
8  MR. ASHLEY: For two reasons; it's not there and
9  they could have put it there; second, even the reference
10  to the NVDIMM-P is not to the joint development project,
11  it's to that product that's supposed to come out of it.
12  So you have to --
13  JUSTICE AMON: I thought you just told me
14  Section 6.1 was specifically directed to the project.
15  MR. ASHLEY: It's directed to NVDIMM-P, which is
16  the product that's supposed to come out of the project.
17  There are defined terms in this agreement for the
18  project, which is the joint development project, or JDP;
19  there's the joint -- the developed product, which is the
20  NVDIMM-P product; and those defined terms are used
21  throughout this agreement when the provisions intend to
22  limit themselves to, for instance, NVDIMM-P or the joint
23  development project.
24  And I'll give you an example. Your Honor asked
25  whether or not Samsung's position was whether or not they