# Exhibit 2

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF TEXAS
 2                      MARSHALL DIVISION

 3   NETLIST, INC.,          (  CAUSE NO. 2:22-CV-203-JRG
                             )
 4          Plaintiff,       (
                             )
 5   vs.                     (
                             )
 6   MICRON TECHNOLOGY, INC.,(
     et al.,                 (  MARSHALL, TEXAS
 7                           (  AUGUST 22, 2023
            Defendants.      )  9:00 A.M.
 8   _____

 9

10

11                      MOTION HEARING

12

13              BEFORE THE HONORABLE ROY S. PAYNE
                   UNITED STATES MAGISTRATE JUDGE
14   _____

15

16

17

18

19

20

21

22              SHAWN McROBERTS, RMR, CRR
23              100 E. HOUSTON STREET
                MARSHALL, TEXAS  75670
24              (903) 923-8546
              shawn_mcroberts@txed.uscourts.gov
25
```

Shawn M. McRoberts, RMR, CRR
Federal Official Court Reporter

2

```
 1                   A P P E A R A N C E S

 2   FOR THE PLAINTIFF:    IRELL & MANELLA, LLP -
 3                         LOS ANGELES
                           1800 AVENUE OF THE STARS
 4                         SUITE 900
                           LOS ANGELES, CA 90067-4276
 5                         (310) 203-7096
                           BY:  MR. JASON SHEASBY
 6
                           McKOOL SMITH, P.C. - MARSHALL
 7                         104 E. HOUSTON ST., SUITE 300
                           MARSHALL, TEXAS  75670
 8                         (903) 923-9000
                           BY: MR. SAMUEL BAXTER
 9
     FOR THE DEFENDANTS:   WINSTON & STRAWN, LLP -
10                         REDWOOD CITY
                           255 SHORELINE DRIVE, STE. 520
11                         REDWOOD CITY, CA 94065
                           (650) 858-6443
12                         BY:  MR. MICHAEL RUECKHEIM
                                MR. RYUK PARK
13
                           WARD, SMITH & HILL, PLLC
14                         1507 BILL OWENS PARKWAY
                           LONGVIEW, TEXAS  75604
15                         (903) 757-6400
                           BY: MR. WES HILL
16
     OFFICIAL REPORTER:    SHAWN M. McROBERTS, RMR, CRR
17                         100 E. HOUSTON STREET
                           MARSHALL, TEXAS  75670
18                         (903) 923-8546

19

20

21

22

23

24

25
```

Shawn M. McRoberts, RMR, CRR
Federal Official Court Reporter

42

```
 1           THE COURT:  All right.

 2           MR. RUECKHEIM:  And I think the next one might be

 3   me, Your Honor, but when you're ready.

 4           THE COURT:  All right.  Go ahead, Mr. Rueckheim.

 5           MR. RUECKHEIM:  So with respect to Micron's motion

 6   to compel, Docket 135, micron is asking for production of a

 7   limited subset of materials from Netlist's litigations with

 8   SK hynix that was a few years ago.  I believe this limited

 9   subset of materials would likely be in the 20- to 30-document

10   range, potentially.

11           We're looking for really -- it's set out in the joint

12   status report, but it's drafts of settlement agreements and

13   offers, expert reports, witness statements, and depo hearing

14   statements, transcripts in the pre- and post-trial briefing.

15           The relevance here, Your Honor, is that there is an

16   overlapping accused product and there's also patents that were

17   in the same family that Netlist is asserting here.  And we've

18   seen this just recently with respect to deposition of our

19   expert Doctor Stone.  Netlist's counsel put up materials that

20   Doctor Stone submitted in the Netlist/SK hynix litigation, and

21   there's issues overlapping there between, what Your Honor may

22   remember from the claim construction hearing, this fork in the

23   road idea, which is also at issue with respect to the SK hynix

24   allegations.  And so we think there's very significant

25   technical relevance here.
```

Shawn M. McRoberts, RMR, CRR
Federal Official Court Reporter

43

```
 1           There's also relevance with respect to the settlement

 2   agreements and offers here, because whether these patents

 3   relate to RAND or FRAND obligations and whether Netlist, if

 4   so, has breached their RAND or FRAND obligation can be

 5   informed by these offers.  And so to the extent that Netlist

 6   and SK hynix are discussing RAND issues or valuations for

 7   portfolio versus specific license, these are all very relevant

 8   to these RAND issues.

 9           And so Netlist is countering on a relevance ground.  That

10   is simply just not tenable at this stage for discoverability.

11   We have narrowly tailored our request.  We're not seeking

12   everything in the SK hynix litigation, nor would I want to

13   review everything from the SK hynix litigation--that's a lot

14   of material.  We are seeking a very narrow amount of materials

15   here, and that is our request.

16           Thank you, Your Honor.

17           THE COURT:  Tell me, Mr. Rueckheim, what do you mean

18   by witness statements?

19           MR. RUECKHEIM:  There was an ITC case and a district

20   court case, and so we're looking at the witness statements in

21   the ITC; the affirmative presentation of testimony -- written

22   testimony to the ITC.

23           THE COURT:  All right.  Is it all from an ITC

24   proceeding, or was there a district court proceeding also?

25           MR. RUECKHEIM:  District court as well.
```

Shawn M. McRoberts, RMR, CRR
Federal Official Court Reporter

44

```
1    THE COURT:  All right.  Are any of the experts that
2  you're seeking the reports of also involved in the current
3  litigation?
4    MR. RUECKHEIM:  I believe so.  One in
5  particular--Doctor Stone, who I just mentioned.  I'm not
6  sure about the rest, Your Honor.
7    THE COURT:  All right.  How are you proposing that
8  third-party confidential information that was revealed
9  pursuant to a protective order in that matter should be
10 handled if any of that is produced in this litigation?
11   MR. RUECKHEIM:  I don't know if there is an issue
12 there, Your Honor.  We've asked for this material really since
13 the start of the litigation going back to at least January I
14 believe is mentioned in the briefing, and I don't know if
15 Netlist has had conversations with SK hynix as to whether they
16 can produce the information to Micron or if there is a concern
17 that needs to be addressed.
18   THE COURT:  Have you been provided the license that
19 ultimately issued in that case?
20   MR. RUECKHEIM:  Yes, we have.
21   THE COURT:  All right.  Why would the negotiating
22 documents be relevant, then?
23   MR. RUECKHEIM:  To inform the RAND question, whether
24 Netlist is offering Micron a reasonable and non-discriminatory
25 license with respect to the present case.  It would definitely
```

45

```
1  be informed based on how Netlist and SK hynix discuss the
2  licensing of individual patents versus a portfolio of patents
3  or what is actually the reasonable and non-discriminatory rate
4  here.
5    THE COURT:  I think that the Federal Circuit has
6  made it fairly clear that what FRAND is dealing with is what
7  the ultimate license contains, not what the parties'
8  negotiating positions were that got to that agreement.  I'm
9  not familiar with any Federal Circuit authority that would
10 indicate that a FRAND rate depends on the negotiation history
11 that led to it.  Are you?
12   MR. RUECKHEIM:  One second, Your Honor.
13        (Pause in proceedings.)
14   MR. RUECKHEIM:  So I should have remembered this,
15 Your Honor, because I was actually involved in the case, but
16 it's cited on page 4 of our motion is the *Sol IP versus*--I was
17 representing Ericsson in the case--but *AT&T mobility*.  It's an
18 Eastern District of Texas case that granted a motion to compel
19 discovery on these license offers and proposals because they
20 were relevant to the RAND and FRAND issues there.
21   THE COURT:  All right.  And how would you say that
22 this case relates to the *Sol IP* case?
23   MR. RUECKHEIM:  There was less patents at issue in
24 this case.  Sol I think had somewhere -- about 20 patents
25 asserted.  But how it relates is really just the RAND issues.
```

46

```
1    THE COURT:  Well, for one thing, I think in that
2  case we were talking about licenses to the patents-in-suit and
3  offers that had been made to license the patents-in-suit.
4    Are the patents currently asserted in this case the same
5  patents as were involved in the SK hynix case?
6    MR. RUECKHEIM:  They are not, Your Honor.  They are
7  in the patent family, but they are covered under the portfolio
8  license that was granted, as is typical for patents and
9  continuations.
10   THE COURT:  Well, I can tell you they feel that, if
11 anything, I understand this law better than I did when I wrote
12 that opinion.  But in any event, do you have any other
13 authority on that?
14   MR. RUECKHEIM:  That is the authority we cited.
15 We'd like to see the materials, Your Honor, and I don't think
16 there is any burden -- there could be any burden argument here
17 because they can -- they can simply press a button and produce
18 it to us, but we'd like to see it.  And if there is a question
19 about admissibility or, you know, about 403 down the road, I
20 think we can deal with it at the MIL stage.  That's our
21 position, Your Honor.
22   THE COURT:  All right.  I think the concern that has
23 always deterred the Court from ordering the production of the
24 negotiations themselves is that doing that would chill
25 settlement negotiations in current cases if there was a
```

47

```
1  concern that those negotiations would become open for
2  discovery in future cases, and that's what I guess weighs
3  against the probative value.  And I just don't know what the
4  probative value of those negotiations would be when you have a
5  consummated license.
6    MR. RUECKHEIM:  It may address Your Honor's concern
7  if -- I just don't know.  Looking at these documents, I just
8  don't know whether they could relate to the RAND issues or
9  not, and so it may be -- it's just an in camera review process
10 or some other process that will make that determination as to
11 whether, you know, they would arguably relate to RAND.  And I
12 assume Netlist and Micron might disagree on what that means,
13 but if there's a way to mechanic that in order to address that
14 concern, that would be my only suggestion.
15   THE COURT:  All right.
16   MR. RUECKHEIM:  Thank you, Your Honor.
17   THE COURT:  Thank you.
18   MR. SHEASBY:  Your Honor, I'll start with the issue
19 of the settlement negotiations.  The patents that were
20 asserted against SK hynix were not the patents at issue in
21 this case.  Micron has not offered to provide any of its
22 negotiation records for any of its license agreements.  There
23 is no claim of breach of a FRAND obligation live in this case,
24 and I -- and we would respectfully submit that it is
25 pernicious from a public policy standpoint to produce
```

48

```
1    negotiation materials when there's a final consummated
2    agreement.  If there wasn't a final consummated agreement, I
3    would understand why a different approach may be necessary,
4    but in this case there was.
5         As to the SK hynix ITC materials, the patents-at-suit in
6    this case were not the patents-in-suit in this case.  They are
7    correct that there was one overlapping expert that is actually
8    their expert.  Mr. Stone was adverse to Netlist in the
9    SK hynix cases, and he is also adverse to Netlist in these
10   cases.
11        So the only expert that we have in this case -- none of
12   Netlist's experts from this case were Netlist's experts in the
13   -- I believe in the SK hynix cases.  At least not on -- there
14   may be one exception to that, but that person, previous
15   expert, was not dealing -- it's Doctor Brogioli.  But Doctor
16   Brogioli would be dealing with HBM patents, and his previous
17   work with us did not relate to HBM patents.
18        We do believe that there is some scope of appropriate
19   production from SK hynix.  What we have agreed to produce and
20   what was acceptable in the Netlist versus Samsung case was the
21   witness statements, trial testimony, and deposition of our
22   corporate officers, which was CK Hong, Gail Sasaki, and JB
23   Kim, as well as the trial statements and deposition testimony
24   of our inventors.  That would give them the factual
25   information as opposed to SK hynix specific information or
```

Shawn M. McRoberts, RMR, CRR
Federal Official Court Reporter

---

49

```
1    third-party supplier specific information, and it would allow
2    them to make sure that witnesses in this case were not saying
3    inconsistent things with what was said in the last case.
4         But claim construction briefing and expert analysis of
5    infringement on completely different products and patents that
6    have different claims, that is far too afield.  And we,
7    frankly, do not want to go through the process of having to
8    redact out all the confidential information for what would
9    seem to be a limited -- limited probative value given that
10   there is different patents.
11        So the short answer is they are entitled to something.
12   We've already acknowledged they are entitled to something.  We
13   offered to give them the same thing that was provided
14   acceptably in the Netlist versus Samsung case which relates to
15   these same patents, and none of the our experts in this case
16   will -- were experts in the previous case for us testifying on
17   the same subject.
18        THE COURT:  Well, I don't believe that under the
19   law statements by experts are admissible in other proceedings
20   against the party that retained them, so I have never taken
21   the position that expert reports from other litigation need to
22   be provided in discovery.  In this case, since there is an
23   overlapping expert, I do believe that any report by -- is it
24   Doctor Stone?
25        MR. SHEASBY:  It is, Your Honor.
```

Shawn M. McRoberts, RMR, CRR
Federal Official Court Reporter

---

50

```
1         THE COURT:  From the hynix -- SK hynix litigation
2    should be provided to Micron in this litigation.  I will deny
3    the request for the settlement negotiations as long as the
4    consummated settlement license agreement has been produced.  I
5    agree that any witness statements--and by that I'm referring
6    to declarations that were offered to the tribunal as opposed
7    to internal work product of the lawyers--any witness
8    statements from Netlist certainly.  Were there other witness
9    statements from individuals other than those representing
10   Netlist that were offered?
11        MR. SHEASBY:  There were an immense number of
12   witness statements in the proceedings.  I think there were
13   three ITC proceedings.  That's why the three core witnesses,
14   the three corporate officers and the inventors was what we had
15   produced last time.  I don't know what other witness
16   statements there are -- there were.
17        THE COURT:  Well, I will require that Netlist
18   provide to Micron a list of the witness statements that are
19   being withheld.
20        MR. SHEASBY:  Yes, sir.
21        THE COURT:  And if Micron can show a need for those,
22   then I'm open to considering that request.  Deposition
23   transcripts, the same thing--it will be as to the
24   representatives of Netlist and a list of the others that are
25   not provided.
```

Shawn M. McRoberts, RMR, CRR
Federal Official Court Reporter

---

51

```
1    Is the briefing all sealed?
2         MR. SHEASBY:  It is.
3         THE COURT:  And is that because of third-party
4    information or something else?
5         MR. SHEASBY:  It's all sealed because of SK hynix
6    confidential information and third-party confidential
7    information because the third parties used the -- like Micron,
8    SK hynix used third parties for the chips they put on their
9    modules.  So the vast majority of the sealing will actually be
10   third-party confidential information.
11        THE COURT:  Well, all right.  Then thank you,
12   Mr. Sheasby.
13        Mr. Rueckheim, if you want parts of the record from that
14   proceeding that are sealed, I think that's a request you'll
15   have to make to the tribunal that sealed them.
16        MR. RUECKHEIM:  Understand, Your Honor.
17        One point of clarification.  I think Mr. Sheasby also
18   -- Your Honor ordered production of reports and I assume
19   deposition testimony by Doctor Stone.
20        Mr. Sheasby also mentioned an expert Doctor Brogioli--and
21   I'm sure I'm pronouncing that wrong--that is at issue in the
22   prior litigation and at issue in this litigation.  And so we
23   would just make sure Your Honor understood that in making his
24   order.  And we'd also ask, unless Your Honor's already
25   considered it, if there are any experts that opined on the
```

Shawn M. McRoberts, RMR, CRR
Federal Official Court Reporter

52

1   same overlapping accused product here, the DDR4 LRDIMM or any
2   of the patents in the same family at the asserted patents.  If
3   Netlist used these experts to characterize its invention in
4   one way in that proceeding and its current experts are
5   characterizing different proceedings, we'd love to see that,
6   too.
7          THE COURT:  Why would statements by those experts be
8   controlling on Netlist?
9          MR. RUECKHEIM:  Netlist put up these experts as
10  their agent, Your Honor, in my opinion.  So if they were
11  offering this testimony as Netlist's position to one tribunal,
12  and then they tried to hire different experts for this
13  tribunal to offer a different position I think is very fair
14  game to me -- for me to ask their expert didn't Netlist say
15  the opposite in a prior litigation?  How does that affect your
16  opinion now?
17         THE COURT:  Well, two things.  One, let me note,
18  you're saying there is a second expert that is common to the
19  two cases?
20         MR. RUECKHEIM:  Correct.  I think the name is Doctor
21  Brogioli.  And I have no way of spelling that.  I'm sorry.
22         THE COURT:  All right.  I'll include that doctor in
23  this.  As to other experts, it's never been my impression of
24  the law that the opinion of an expert is binding on the party
25  in a different case, but I'll take a look at that and see if

53

1   that has changed.
2          MR. RUECKHEIM:  Understood, Your Honor.  Thank you,
3   Your Honor.
4          THE COURT:  All right.  Then I will include that in
5   the order.
6      Anything else on this motion, Mr. Rueckheim?
7          MR. RUECKHEIM:  No, Your Honor.
8          THE COURT:  All right.  Mr. Sheasby, what about you?
9          MR. SHEASBY:  No, Your Honor.  That concludes all
10  scheduled motions for today, and Netlist thanks you.
11         THE COURT:  There is another motion, and I think the
12  briefing on it is perhaps still going on.  Is that something
13  that either side thinks it would be helpful to take up today?
14         MR. SHEASBY:  We don't, Your Honor.  There is two
15  other motions pending.  There was one of them the briefing has
16  not been completed.  It's a motion to enforce Your Honor's
17  previously -- previous ruling on financial information and
18  qualification information.  That briefing has not been
19  completed.
20     There is also just been a brief that was filed on Monday.
21  Statements were made in that brief that I think may moot the
22  motion.  We just need to meet and confer with them on that.
23         THE COURT:  All right.  Well, I will set a hearing
24  on the additional motions in due course, then.
25         MR. SHEASBY:  Thank you for your time, Your Honor.