UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>            Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>            Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>            Plaintiff,<br><br>    v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.,<br><br>            Defendants. | Civil No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S MOTION TO STRIKE NETLIST'S MOTION FOR
SUMMARY JUDGMENT ON SAMSUNG'S LICENSE DEFENSE (DKT. 273)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

TABLE OF EXHIBITS ............................................................................................................. iii

TABLE OF ABBREVIATIONS ............................................................................................... iii

I.   INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND ............................................................................................................. 2

    A.   The JDLA, and Netlist's Suit in the C.D. Cal. Seeking Interpretation Thereof ................................................................................... 2

    B.   Proceedings in This District ................................................................................ 5

III. ARGUMENT ................................................................................................................... 6

    A.   An Order Striking Netlist's JDLA Motion Is Warranted ..................................... 6

        1.   Netlist's JDLA Motion Improperly Invites This Court To Decide Issues Exclusively Before the C.D. Cal. Court ............................... 7

        2.   Netlist's JDLA Motion Improperly Asks This Court To Decide an Issue Already Decided Adverse to Netlist ................................ 8

    B.   If the Court Does Not Strike the JDLA Motion, It Should Suspend Briefing on It Until After the Conclusion of Proceedings in the C.D. Cal. Case ................................................................................................... 12

IV.  CONCLUSION .............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Lander v. JPMorgan Chase Bank NA*,
  No. 4:21-CV-00353-ALM-CAN, 2022 WL 21778360
  (E.D. Tex. Feb. 23, 2022) ...................................................................................................6

*Pace v. Bogalusa City Sch. Bd.*,
  403 F.3d 272 (5th Cir. 2005) ..............................................................................................9

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
  751 F.2d 721 (5th Cir. 1985) ..............................................................................................8

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| 1 | Netlist's First Amended Complaint in the C.D. Cal. Case |
| 2 | Netlist's Motion for Summary Judgment in C.D. Cal. Case (Dkt. 171) |
| 3 | Netlist's Reply In Support of Motion for Summary Judgment in C.D. Cal. Case (Dkt. 178) |
| 4 | *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, Dkt. 75 (9th Cir. Nov. 8, 2023) |

## TABLE OF ABBREVIATIONS

|  | Description |
|---|---|
| C.D. Cal. | U.S. District Court for the Central District of California |
| C.D. Cal. Case | *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-CV-00993 (C.D. Cal.) |
| D. Del. | U.S. District Court for the District of Delaware |
| D. Del. Case | *Samsung Electronics Co. v. Netlist, Inc.*, No. 1:21-cv-1453 (D. Del.) |
| *EDTX1* | *Netlist Inc. v. Samsung Elecs. Co.*, No. 2:21-CV-463 (E.D. Tex.) |
| JDLA | Joint Development and License Agreement |
| *Mandate* | *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, Dkt. 75 (9th Cir. Nov. 8, 2023) |
| *Reversal/Remand Order* | *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683 (9th Cir. Oct. 17, 2023) |

**I.     INTRODUCTION**

Samsung continues to believe that the JDLA provides it with an ironclad defense against Netlist's allegations of patent infringement. But full confirmation of that defense for the period post-July 2020 is premature. Netlist's allegations of material breach and termination of the JDLA are front and center in the C.D. Cal. case, which Netlist itself started and is now moving full steam ahead after the Ninth Circuit reversal that this Court is well aware of. As Samsung has previously expressed, resolution of the C.D. Cal. Case in Samsung's favor would dispose of all of the issues in this case—if Samsung did not materially breach the JDLA's supply provision, then Netlist's termination of the JDLA was invalid, and Netlist's patent infringement claims cannot survive because Samsung was, and continues to be, licensed. So the adjudication of the breach/termination in C.D. Cal. indisputably impacts this case.

In its ruling on Samsung's motion to stay issued last week (Dkt. 278), while denying Samsung's stay request, this Court made clear the decisive line between the breach/termination issues that are being addressed by the C.D. Cal. court and those before the Court here:

> That issue [whether "the JDLA is currently 'in full force and effect'"] is currently pending before the Central District of California. However, this Court will not make comment further while that issue is squarely before another court. *See West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721 (5th Cir. 1985).
>
> . . . The court in *West Gulf Maritime* erred by affirmatively deciding an issue which was before another court; this Court need not affirmatively decide any issue that is before the Central District of California in order to proceed with this case. The Court reasonably may defer issues of Netlist's alleged termination of the JDLA to the Central District of California and simultaneously proceed on the other issues in this case, including Netlist's claims for patent infringement.

*Id.* at 4-5 (footnote omitted).

Netlist's Motion for Summary Judgment on Samsung's License Defense (Dkt. 273) is an outrageous affront to the C.D. Cal. court's jurisdiction and so clearly crosses the line that this Court has so carefully drawn. Specifically, in its motion, Netlist asks this Court to interpret the

1

JDLA's supply provision (§ 6.2) in its favor and enter judgment that Samsung materially breached the parties' JDLA and that, therefore, Netlist properly terminated the JDLA on July 15, 2020—the central issues in the C.D. Cal. Case. Indeed, Netlist filed the motion here only after the C.D. Cal. court rejected Netlist's efforts to escape the Ninth Circuit's mandate and after the C.D. Cal. court set a summary judgment briefing and hearing schedule on the meaning of the JDLA's supply provision (§ 6.2) which is foundational to the breach and termination issues.

For this reason, and because Netlist's motion is inexorably intertwined with the breach/termination issues being exclusively adjudicated in C.D. Cal., Samsung moves to strike Netlist's motion in its entirety. Samsung should not have to respond to Netlist motion for summary judgment, as the C.D. Cal. court will decide the issues raised therein and this Court has indicated it will defer resolution of such issues to that court. Dkt. 278. In the alternative, Samsung moves to suspend briefing on the JDLA Motion until two weeks after the conclusion of proceedings in the C.D. Cal. Case.

## II. BACKGROUND

### A. The JDLA, and Netlist's Suit in the C.D. Cal. Seeking Interpretation Thereof

The JDLA between Samsung and Netlist, and the C.D. Cal. court's ongoing interpretation of that agreement and its implications for proceedings in this District, have been described in numerous papers. *See* Dkts. 187, 203, 193, 262. Briefly, the JDLA licenses Samsung to all asserted patents, giving Samsung an absolute defense against Netlist's infringement claims. Netlist contends that it unilaterally terminated the JDLA on July 15, 2020. But the JDLA permits unilateral termination only in cases of material breach, notice to the breaching party, and an opportunity to cure. Netlist contends (wrongly) that Samsung materially breached the JDLA and that, therefore, Netlist properly terminated Samsung's license on July 15, 2020.

Long before it brought the present case, Netlist filed the C.D. Cal. Case in the hopes of

that court blessing Netlist's breach and termination theories. But in its October 2023 *Reversal/Remand Order*, the Ninth Circuit threw out large portions of Netlist's arguments, required judgment for Samsung on one of Netlist's primary theories, and remanded on, *inter alia*, whether Samsung breached the JDLA (which turns on the proper interpretation of the JDLA supply's provision, § 6.2) and, if so, whether such a breach was "material."

Netlist interprets the JDLA's supply provision (§ 6.2) as an unrestricted commitment by Samsung to supply Netlist with any and all memory products Netlist may demand (even for resale to others), and not just a commitment to supply those memory products required for the parties' joint development activities. *See, e.g.*, Ex. 2 at 4-13 (arguing that § 6.2 is an "unrestricted mandatory supply obligation" not limited to the joint-development project); Ex. 3 at 1-2 ("Nowhere does Section 6.2 limit Netlist's requests in any way—including by cabining Samsung's supply obligation to only the NAND and DRAM necessary for the parties' joint development efforts.").

To the contrary, Samsung's papers explain that the text, context, and structure of the JDLA unambiguously show that § 6.2's supply obligation is limited to the joint-development project. Dkt. 187-3 at 23-30; Dkt. 203-1 at 1-9. Samsung further argued that the "reasonable expectation[s] . . . of the ordinary business[person]" foreclose Netlist's interpretation of § 6.2 as an unbounded supply provision (Dkt. 187-3 at 27; Dkt. 203-1 at 9-11), and that, even if the scope of § 6.2 were found to be ambiguous, the relevant extrinsic evidence compels Samsung's interpretation (Dkt. 187-3 at 30-35 & n.2; Dkt. 203-1 at 11-28). The Ninth Circuit's *Reversal/Remand Order* concludes that the supply provision (§ 6.2) is ambiguous and orders the C.D. Cal. court to consider extrinsic evidence relating to the meaning of the provision and, after doing so, to determine if there are genuine issues of material fact as to the provision's meaning.

3

Accordingly, the C.D. Cal. court has reopened proceedings, and (upon that court's invitation) Samsung proposed a rapid summary judgment schedule to resolve remaining issues:

> The threshold issue before the Court is whether the extrinsic evidence creates a genuine issue of material fact as to the meaning of Section 6.2 of the JDLA. As this issue was already briefed once, there is adequate evidence in the summary judgment record for the Court to make this determination. Because the prior briefing did not focus solely on the issue the Ninth Circuit has now mandated be considered, Samsung proposes targeted supplemental briefs to specifically address the meaning of Section 6.2, to be concurrently filed within 30 days of the Court's decision following the filing of this Joint Status Report, with each side having the right to file a responsive brief 15 days thereafter. This supplemental briefing will allow the Court to focus its attention on the relevant evidence and law and comply with the Ninth Circuit's mandate.
>
> . . .
>
> If the Court adopts Samsung's interpretation of Section 6.2, there is no need for a trial on whether any alleged breach of Section 6.2 is material, and Netlist's request for a declaration that it validly terminated the JDLA must be denied.

Dkt. 259-2 at 23. On November 30, 2023, the C.D. Cal. court issued a Minute Order, in which it noted that it was "largely adopt[ing] Samsung's proposal" for addressing the issues within the scope of the Ninth Circuit's mandate. Dkt. 259-3. The C.D. Cal. court also set a summary judgment schedule to interpret § 6.2. *Id.* Under this schedule, the parties will simultaneously file opening briefs on January 8, 2024 and responsive briefs are due January 22, 2024. The C.D. Cal. court will hear argument and take the issues under submission on February 5, 2024. *Id.*

Notably, Netlist had urged the C.D. Cal. court to stay the C.D. Cal. Case pending the outcome of this case. Dkt. 259-2. The C.D. Cal. court did not stay the case and instructed Netlist that any motion to stay would be heard on February 5, 2024, at the same time as the summary judgment hearing. Dkt. 259-3. That same day, November 30, 2023, Netlist filed a motion to stay the C.D. Cal. Case, which Samsung will oppose. Dkt. 259-4. Netlist's stated basis for moving to stay the C.D. Cal. Case was that this Court—not the C.D. Cal. court—should decide the breach/termination issues (flagrantly ignoring the Ninth Circuit's *Mandate* for the

4

C.D. Cal. court to decide those issues).  *See id.*; Ex. 4.

### B. Proceedings in This District

The present case (like *EDTX1*) was filed long after the C.D. Cal. Case proceedings were underway.  For substantial portions of both *EDTX1* and the present case, Samsung was doctrinally precluded from disputing Netlist's theory of breach and termination based on the (now reversed) judgment from the C.D. Cal. court.  The Ninth Circuit's October 2023 opinion removed that preclusion, though the C.D. Cal. court (which is the "first-filed" case) retains jurisdiction over the interpretation of the JDLA's supply provision (§ 6.2), as well as Netlist's allegations that Samsung materially breached that provision and that, therefore, Netlist properly terminated the JDLA on July 15, 2020.

Samsung has brought the intersection between this case and the C.D. Cal. Case to the Court's attention in several papers.  Relevant to this motion, Samsung moved to stay this case pending resolution of the JDLA breach and termination issues in the C.D. Cal. Case (Dkt. 187).  The C.D. Cal. court issued its summary judgment schedule while that motion was pending, on November 30, 2023.  Shortly thereafter, with no notice to either Samsung or the C.D. Cal. court, Netlist moved this Court for summary judgment on Samsung's license under the JDLA, which is the exact same issue now being litigated in C.D. Cal. pursuant to the Ninth Circuit's *Mandate*.  *See* Dkt. 273 (hereinafter, "JDLA Motion").  Netlist's JDLA Motion asks this Court to interpret JDLA § 6.2 (*see* Dkt. 273 at 2-3), to adopt Netlist's preferred interpretation thereof (*id.* at 11-15), to enter a determination of material breach by Samsung of that provision (*id.* at 15), and to determine that Netlist was thus empowered to unilaterally terminate the JDLA in July of 2020 (*id.* at 2).  Every one of these requests by Netlist is squarely at issue in the C.D. Cal. Case.

The day after Netlist filed its JDLA Motion, the Court issued its opinion regarding Samsung's request for a stay.  *See* Dkt. 278.  Although denying a stay as premature, the Court's

5

order recognized the C.D. Cal.'s continuing sole responsibility to determine whether "the JDLA is currently 'in full force and effect.'" *Id.* at 4. Instructive portions of the Court's opinion have been excerpted above.

Upon receiving the Court's order, Samsung asked Netlist to confirm it would withdraw the JDLA Motion. Because Netlist refused, and because the JDLA Motion expressly puts before this Court issues over which the Ninth Circuit ordered the C.D. Cal. court to solely decide, Samsung has no option but to seek relief in the form of an order striking the JDLA Motion.

### III.   ARGUMENT

Netlist's JDLA Motion is a transparent attempt to evade the C.D. Cal. court's jurisdiction and leapfrog that court's schedule in a desperate hope of salvaging Netlist's case. Samsung respectfully requests that the Court strike the JDLA Motion in its entirety or, in the alternative, suspend briefing on the JDLA Motion until the conclusion of proceedings in the C.D. Cal. Case.

#### A.   An Order Striking Netlist's JDLA Motion Is Warranted

"'[T]he Court has the inherent power to control its docket' and '[t]hat power includes the ability to remove matters from the record that are improperly filed.'" *Lander v. JPMorgan Chase Bank NA*, No. 4:21-CV-00353-ALM-CAN, 2022 WL 21778360, at *2 (E.D. Tex. Feb. 23, 2022) (quoting *Vicks v. Packnett*, No. CV 18-556-BAJ-EWD, 2020 WL 2616398, at *1 (M.D. La. May 22, 2020) (alterations *Lander*'s)). Because Netlist's JDLA Motion brazenly invites the Court to intrude on the C.D. Cal. court's exclusive jurisdiction over the JDLA § 6.2 interpretation, materiality of any breach, and termination issues, and because that invitation flatly contradicts the Court's clear statement that it would not so intrude—as well as flatly contradicting the Ninth Circuit's *Mandate*, Samsung respectfully submits that Netlist's JDLA Motion is improper, and that the Court should strike it.

6

### 1. Netlist's JDLA Motion Improperly Invites This Court To Decide Issues Exclusively Before the C.D. Cal. Court

Netlist's JDLA Motion improperly invites the Court to take up the following two issues, each of which is within the clear jurisdiction of the C.D. Cal. court.

***First***, the JDLA Motion asks the Court to evaluate extrinsic evidence and determine that "the supply clause [i.e., JDLA § 6.2] required Samsung to provide Netlist with NAND and DRAM products for any purpose on request." Dkt. 273 at 11. That is an issue Netlist itself brought to the C.D. Cal. court in its C.D. Cal. Complaint, filed months before this case. Ex. 1, ¶ 26. It is also an issue expressly committed to the C.D. Cal. court by the *Reversal/Remand Order* and *Mandate*. 2023 WL 6820683, at *2 ("Because we conclude that § 6.2 is ambiguous as a matter of law, we remand to the district court to consider in the first instance whether the extrinsic evidence 'creates a genuine issue of material fact' as to the provision's meaning." (quoting *MacIntyre v. Carroll. Coll.*, 48 F.4th 906, 956 (9th Cir. 2022))); Ex. 4.

***Second***, Netlist's JDLA Motion asks the Court to determine that "Samsung materially breached this provision [i.e., JDLA § 6.2]." Dkt. 273 at 11. Again, Netlist expressly raised that issue in its C.D. Cal. Complaint. Ex. 1, ¶¶ 35-41. It is also an issue that the Ninth Circuit expressly committed to the C.D. Cal. court, specifically foreclosing the relief Netlist seeks in the JDLA Motion by "remand[ing] for further proceedings," after explaining that "disputed fact issues ***preclude[ ] summary judgment on the materiality of Samsung's alleged breach of § 6.2***." *Reversal/Remand Order*, 2023 WL 6820683, at *3 (emphasis added).

Netlist's JDLA Motion does not even attempt to explain how this Court might adjudicate the above issues without improperly treading on the clear jurisdiction of the C.D. Cal. court. Nor has Netlist ever provided any lawful basis for its transparent attempt to leapfrog the C.D. Cal. court's schedule via an early summary judgment motion in this case. Still further, Netlist has not

7

provided any cognizable justification for its refusal to withdraw the JDLA Motion after the Court's stay decision made clear that the Court would not address the JDLA breach and termination issues while they are "squarely before another court." Dkt. 278 at 4-5. As that decision correctly notes, under *West Gulf Maritime Association v. ILA Deep Sea Local 24*, 751 F.2d 721 (5th Cir. 1985), a district court abuses its discretion if it "affirmatively decid[es] an issue which was before another court." Dkt 278 at 5. Netlist's JDLA Motion invites exactly the same error that the Fifth Circuit criticized in *West Gulf*.

### 2. Netlist's JDLA Motion Improperly Asks This Court To Decide an Issue Already Finally Decided Adverse to Netlist

The JDLA Motion's proposal that the Court might alternatively enter summary judgment on the basis that "Samsung is estopped from arguing that the JDLA covers the accused products" is nonsense on numerous levels including that it is a redux of defective arguments Netlist already presented to this Court and others in separate papers. *See, e.g.*, Dkt. 225. Samsung's other papers already explain that Netlist is the one facing estoppel as to interpretation of the JDLA license's scope and further describe how there is no "estoppel" of the type that Netlist proposes because there is no contradiction between the positions Samsung has advanced in the C.D. Cal. case and its positions here, *see* Dkts. 187, 203, 262—as the D. Del. court rightly recognized when staying the D. Del. Case, *see* Dkt. 259-1 ("[T]he Court is unpersuaded that Samsung advanced an inconsistent position before the Ninth Circuit Court of Appeals[.]")).

Netlist's estoppel arises from the doctrine of issue preclusion. Netlist cannot lawfully re-litigate the scope of Samsung's license under § 8 of the JDLA because the *EDTX1* court ***already considered and rejected*** exactly that argument. *See generally EDTX1*, 3/28/23 Hearing Tr. at 28, 56-58; *EDTX1*, Trial Tr. at 1266:4-1267:1; *EDTX1*, Dkt. 432 at 2. "Issue preclusion . . . is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually

8

litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005).

The *EDTX1* record unambiguously confirms that issue preclusion should apply, and Netlist should not be permitted to dispute that the JDLA § 8 license grant covers every accused Samsung product.  In *EDTX1*, Netlist presented the same argument it is attempting to present here, *i.e.*, a contention that the JDLA § 8 license is limited to joint development products, despite Netlist's many admissions that it was ***not*** so limited.  *Compare EDTX1*, Dkt. 289 at 2-3, 14-16 (Netlist arguing for a restricted license scope), *with EDTX1* Dkt. 237-1 at 3 (Netlist advising International Trade Commission that "Samsung is authorized by cross-license to sell RDIMMs and DIMMs covered by the asserted patents."); Dkt. 237-2 at 5; Dkt. 237-1.  Samsung opposed Netlist's improperly narrow interpretation of JDLA § 8, and presented extensive explanation of how both the structure of the contract and Netlist's own statements confirm that JDLA § 8's license extends to all (non-"foundry")[1] Samsung semiconductor products, including memory products.  *See generally EDTX1*, Dkts. 227, 237, 275, 289, 323, 328, 360.  This Court in *EDTX1* conclusively rejected Netlist's argument and unequivocally determined that the license is not limited to joint developed products, *EDTX1*, Dkt. 432 at 2 ("The motion [i.e., Samsung's motion for a determination that its accused products are licensed] was GRANTED-IN-PART to the extent it seeks a declaration that Samsung had a license until July 15, 2020.").

Many of the products accused in *EDTX1*—DDR4 LRDIMM—are also accused of infringing here.  *Compare EDTX1*, Dkt. 237 ¶ 9 (describing Netlist's *EDTX1* allegations against

---

[1] The JDLA's reference to "Foundry Products" carves out from the license products ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See* Dkt. 187-2 at 2.

9

Samsung DDR4 LRDIMMs), *with* Dkt. 100, ¶ 36 (alleging infringement by Samsung DDR3 and DDR4 LRDIMMs, DDR3 and DDR4 RDIMMs) *and* Dkt. 201 ("Netlist withdrew its infringement allegations against Defendants' DDR2 and DDR3 products."); *see also* Dkt. 237-1 at 3 (Netlist stating in 2017 (prior to the alleged July 15, 2020 termination of the JDLA) that "Samsung is authorized by cross-license to sell RDIMMs and LRDIMMs"). Having pressed for limited license scope in *EDTX1*, resulting in a determination ***rejecting*** that argument (and a judgment based thereon), Netlist is precluded from revisiting the scope of the JDLA § 8 license.

Furthermore, Samsung has not taken any inconsistent positions as to the scope of its license under § 8 of the JDLA. As Samsung's previous submissions (*e.g.*, Dkt. 203 at 2-4) explain, Samsung has consistently asserted—to this Court, to the C.D. Cal. court, to the D. Del. court, and to the Ninth Circuit—that the JDLA has *two* goals: a cross-license, and a joint development project. Given these two purposes, it is entirely reasonable to expect that some of the JDLA's provisions, such as the supply obligation of § 6.2, are limited to joint development, where as other provisions (like the licenses) are not.

Certainly nothing in Samsung's Ninth Circuit appeal disclaimed the clear scope of the JDLA's license as broadly covering Samsung memory products. In each of *EDTX1*, this case, and the Ninth Circuit appeal, Samsung explained that the JDLA includes an $8 million payment, called "NRE [non-recurring engineering] fees" in the agreement. Dkt. 187-2, § 3.1. Despite what this payment is called, it is actually a ▬▬▬▬▬▬▬▬▬▬. Indeed, it was Netlist, not Samsung, that proposed that the $8 million fee be ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ Dkt. 203-2 at 2. Because Netlist itself urged to ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬, its current contention that the entire license structure, including the $8

10

million payment, was limited to only development activities lacks credibility.[2]

The record overwhelmingly indicates that the parties intended to, and did, exchange unambiguously broad license rights in JDLA § 8. For example, the JDLA broadly defines

*Id.* at 2.

Netlist has presented these defective arguments in other cases and they have been

---

[2] Even if Netlist intended to use the $8 million to advance the joint development project (and Samsung supported that use), such an intended use for the money once received by Netlist does not change the fact that the $8 million payment was consideration for the patent license. In explaining that there are provisions in the contract related to the joint development project even if they "don't also say in connection with the joint development project" and giving the NRE fee as an example, Dkt. 273-2 at 8:13-24, Samsung's counsel at the Ninth Circuit argument simply acknowledged § 3.1's description of the intended use for the money.

rejected every time. The court presiding over the D. Del. Case specifically rejected Netlist's argument for estoppel: "[T]he Court is unpersuaded that Samsung advanced an inconsistent position before the Ninth Circuit Court of Appeals." *See* Dkt. 259-1.

Finally, even were there meritorious disputes to be addressed in any part of the JDLA Motion, they should not be coupled to the facially improper presentation of contract interpretation disputes that are solely adjudicable by the C.D. Cal. court. If Netlist wanted to use the summary judgment process to address disputes outside of the C.D. Cal. court's exclusive purview, the proper course would have been for it to file a motion that raised only those issues.

\*   \*   \*

Netlist's flagrant attempt at leading this Court into an improper impingement on the C.D. Cal. court's jurisdiction and mandate is wholly improper. The Court should strike the JDLA Motion from the docket.

> **B.  If the Court Does Not Strike the JDLA Motion, It Should Suspend Briefing on It Until After the Conclusion of Proceedings in the C.D. Cal. Case**

In the event the Court decides not to strike the JDLA Motion, it should relieve Samsung (and itself) of the obligation to brief the issues being litigated in the C.D. Cal. Case (interpretation of JDLA § 6.2, materiality of any alleged breach) as part of this case. The best and most efficient means of doing so (aside from striking the JDLA Motion) would be for the Court to suspend briefing on the JDLA Motion until a date no later than two weeks after the C.D. Cal. court enters judgment on these issues.

## IV.  CONCLUSION

For the reasons stated herein, Samsung respectfully moves for an order striking the JDLA Motion from the docket in this case. In the alternative, Samsung moves to suspend briefing on the JDLA Motion until two weeks after the conclusion of proceedings in the C.D. Cal. Case.

| | |
|---|---|
| Date: December 18, 2023 | Respectfully submitted,<br><br>/s/ Michael J. McKeon |
| Melissa Richards Smith<br>melissa@gillamsmith.com<br>GILLAM & SMITH, LLP<br>303 South Washington Ave.<br>Marshall, Texas 75670<br>Telephone: (903) 934-8450<br>Facsimile: (903) 934-9257<br><br>J. Travis Underwood<br>Texas Bar No. 24102587<br>travis@gillamsmithlaw.com<br>GILLAM & SMITH, LLP<br>102 North College Avenue, Suite 800<br>Tyler, Texas 75702<br>Telephone: (903) 934-8450<br>Facsimile: (903) 934-9257<br><br>Brian R. Nester<br>DC Bar No. 460225<br>bnester@cov.com<br>COVINGTON & BURLING LLP<br>One CityCenter 850 Tenth Street, N<br>Washington, DC 20001-4956<br>Telephone: (202)-662-6000<br><br>Alice J. Ahn<br>CA Bar No. 271399/DC Bar No. 1004350<br>aahn@cov.com<br>COVINGTON & BURLING LLP<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105<br>Telephone: (415) 591-7091<br>Facsimile: (415) 955-6571 | Ruffin B. Cordell<br>TX Bar No. 04820550<br>cordell@fr.com<br>Michael J. McKeon<br>D.C. Bar No. 459780<br>mckeon@fr.com<br>Lauren A. Degnan<br>D.C. Bar No. 452421<br>degnan@fr.com<br>Daniel A. Tishman<br>DC Bar No. 1013923<br>tishman@fr.com<br>FISH & RICHARDSON P.C.<br>1000 Maine Avenue, SW<br>Washington, DC 20024<br>Telephone: (202) 783-5070<br>Facsimile: (202) 783-2331<br><br>Francis J. Albert<br>CA Bar No. 247741<br>albert@fr.com<br>FISH & RICHARDSON P.C.<br>12860 El Camino Real, Ste. 400<br>San Diego, CA 92130<br>Telephone: (858) 678-5070<br>Facsimile: (858) 678-5099<br><br>Thomas H. Reger II<br>reger@fr.com<br>Texas Bar No. 24032992<br>FISH & RICHARDSON P.C.<br>1717 Main Street, Suite 5000<br>Dallas, Texas 75201<br>Telephone: (214) 747-5070<br>Facsimile: (214) 747-2091 |

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on December 18, 2023. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by electronic mail.

/s/ Michael J. McKeon

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred on December 18, 2023, with Jennifer Truelove attending for Plaintiff and Melissa Smith attending for Defendants. The parties discussed their positions on this motion. The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve. Counsel for Plaintiff indicated that it opposes this motion.

/s/ Michael J. McKeon

14