# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 2:22-cv-293-JRG |
| vs. | ) |
| | ) JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO, LTD; | ) (Lead Case) |
| SAMSUNG ELECTRONICS AMERICA, | ) |
| INC.; SAMSUNG SEMICONDUCTOR | ) ▇▇▇▇▇▇▇▇ |
| INC., | ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| NETLIST, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:22-cv-294-JRG |
| | ) |
| MICRON TECHNOLOGY, INC.; | ) JURY TRIAL DEMANDED |
| MICRON SEMICONDUCTOR | ) |
| PRODUCTS, INC.; MICRON | ) |
| TECHNOLOGY TEXAS LLC, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF NETLIST, INC.'S OPPOSITION TO SAMSUNG'S MOTION FOR
AN EXTENSION OF TIME TO RESPOND TO NETLIST'S MOTION
FOR SUMMARY JUDGMENT (DKT. 284)**

## **TABLE OF CONTENTS**

**Page**

I. BACKGROUND ................................................................................................................3

    A. Samsung Has Taken Entirely Inconsistent Positions on the Scope of the License Grant in the JDLA ..............................................................................3

    B. Samsung Is Attempting To Avoid the Consequences of Unique Admissions made in East Texas ............................................................................7

II. ARGUMENT......................................................................................................................8

    A. The Court Should Reject Samsung's Request For An Indefinite Suspension of Briefing on Netlist's Summary Judgment Motion.......................8

    B. The Court Should Deny Samsung's Alternative Request for a Fourteen-Day Extension.......................................................................................10

III. CONCLUSION.................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Palmer v. Kirkwood*,
  No. 4:20-CV-688-SDJ-KPJ, 2020 WL 13905123 (E.D. Tex. Dec. 23, 2020) ............................ 9

*Premier Rsch. Labs, LP v. Nurman*,
  No. CV A-13-CA-069-SS, 2014 WL 12461960 (W.D. Tex. July 14, 2014) ................................ 9

**Rules**

Local Rule 7 ........................................................................................................................... 9, 10

**Other Authorities**

Restatement (First) of Contracts § 235(b) (1932) .............................................................................. 3

Netlist agreed without pre-condition that Samsung could have until January 5, 2024 to file its responsive brief. The motion for summary judgment was filed on December 12, 2023. This gives Samsung 23 days to respond. Samsung is not merely seeking a courtesy extension. Rather, it is improperly seeking to delay briefing on Netlist's summary judgment motion *indefinitely*. There are two aspects to Samsung license defense: (a) whether the products accused of infringement are covered by the JDLA; and (b) whether the JDLA was properly terminated based on Samsung's material breach. Samsung has moved to strike Netlist's motion for summary judgment on Samsung's license defense in its entirety because (b) is also currently before the Central District of California. Now Samsung asks this Court to defer briefing on Netlist's summary judgment motion pending resolution of Samsung's motion to strike. Samsung's behavior ignores that the JDLA license defense, of which (a) is an essential part, is solely present in East Texas. As this Court explained in denying Samsung's motion to stay this case pending resolution of the "California Action," there is no reason why both cases cannot proceed "simultaneously." Dkt. 278 at 5. This case is quickly approaching trial, and "[w]hether or not the California Action will simplify this case is obviously speculative." *Id.* at 5-6.

Prompt briefing on Netlist's motion is in the interest of justice because (1) Samsung is using its license defense to vacate the *Samsung I* verdict, and (2) Samsung will be required to take a definitive position on the scope of the key clauses in the JDLA, which may entirely resolve the JDLA defense without the expenditure of significant pre-trial resources preparing for a part of the case that can be disposed of as a matter of law.

Netlist asked Samsung directly before Samsung filed this motion for an indefinite stay:

1. Is Samsung maintaining a license defense as to the products at issue in Samsung I and Samsung II? This has two parts: Is Samsung maintaining that the products are covered by the JDLA? Is Samsung maintaining the JDLA is still in effect?

Ex. 1 at 2. Samsung's response was unambiguous:

> Yes, we are of course maintaining the defense in EDTX and coverage (just like in the first case). And the court in CD Cal is dealing with the issue of whether the JDLA has been breached and whether it was properly terminated. Our position in CD Cal is clear.

*Id.* Samsung cannot maintain a license defense based on the JDLA that involves both scope and termination in this Court, while at the same time blocking the Court from adjudicating any aspect of this defense.

Regardless of intent, Samsung's request for an extension has the effect of allowing Samsung to avoid having to take positions on the license defense that it has raised in this dispute. Samsung has taken inconsistent positions on license scope and termination in this Court and the California Action. In particular, to convince the Ninth Circuit to vacate the Central District's summary judgment order on termination and breach, Samsung argued that the clauses of the JDLA that do not mention joint development—including both the supply clause and the license grant—are implicitly limited to joint development. In contrast, here, Samsung is arguing that the license grant is broad and contains no such limitation.

Samsung should be required to put forth its position on both license scope and termination in this case so that defense can be promptly resolved without expenditure of additional resources. The question of license scope is solely before this Court and not currently at issue in the California Action. As this Court noted in denying Samsung's stay motion, "Samsung has not shown why this Court should halt its work on all contested issues . . . solely to await the adjudication of an issue that may or may not simplify this case." Dkt. 278 at 6. Yet Samsung is once again asking this Court to do exactly that.

As Netlist has shown, both the license grant and supply clause language in the JDLA make no reference to joint development, but Samsung successfully argued in the Ninth Circuit that this concept could be imported into both clauses. It is therefore proper to require Samsung to engage with the entirely inconsistent position it takes in this Court. It is a fundamental precept

of contract law that like language carries like meaning in a contract. *See* Restatement (First) of Contracts § 235(b) (1932).

Notably, while Samsung's material breach is currently before the Central District of California, Judge Scarsi has not even said whether he intends to rule on this issue. Netlist has filed a motion to stay the California Action, which will be heard on February 5, 2023 concurrently with the parties' cross motions for summary judgment on contract interpretation. If Judge Scarsi grants the stay, then Samsung's proposed indefinite extension will only cause unnecessary delay.

Contrary to Samsung's assertion, Netlist's summary judgment motion is not "an affront to the C.D. Cal. court's jurisdiction" or the "the Ninth Circuit's mandate." Mot. at 1. Merely requiring Samsung to set forth its full position on its license defense in this case will not in any way interfere with the proceedings in the California Action. This is because neither the C.D. Cal. nor the Ninth Circuit had the license defense before them. Nor will it cause Samsung any prejudice. What it will do, however, is ensure a prompt definitive resolution of Samsung's entirely inconsistent positions so that resources do not need to be expended on the license defense before the PTC. This is all the more important because Netlist's motion in East Texas is based on admissions of Samsung witnesses in East Texas depositions. Samsung has refused to allow this testimony to be presented in C.D. Cal. Samsung's request for an extension should be denied.

I.  **BACKGROUND**

   A.  **Samsung Has Taken Entirely Inconsistent Positions on the Scope of the License Grant in the JDLA**

Samsung's motion misstates the record. Samsung first raised its license defense in *Samsung I* where it argued that the scope of the JDLA covers ███████████████████████████

██████████████████████████████████████████████████████████████████ Case No. 2-21-cv-00463 ("*Samsung I*"), Dkt. 196 at 1. On summary judgment, this Court concluded that Netlist had terminated the JDLA on July 15, 2020. *Id.*, Dkt. 432 at 2. Contrary to Samsung's

argument, however, the Court did not conclude that "all of Samsung's accused products were fully licensed" through that date. Mot. at 3. Instead, the Court held that there was a dispute of fact as to license scope:

> [T]here's no material question of fact that the termination letter executed by Netlist on July the 15th, 2020, effectively terminated your licenses – Samsung's license as of that date . . . So you've got a license – Samsung's got a license defense up until July 15th, 2020, and you don't have one after July 15th, 2020. What falls within that license as prescribed by the other terms of the JDLA is a fact question.

*Samsung I,* Dkt. 426 at 59. The question of what was licensed before termination was ultimately moot because the Court also held as a matter of law that there was a pre-suit marking requirement under *Arctic Cat* and there was no pre-suit notice as to the only patents-in-suit that issued before termination, the '060/160 patents. *Id.,* Dkt. 432 at 3.

Samsung is correct that the Court granted judgment at the end of trial that the accused HBM products were not foundry products. Mot. at 3. But this is a necessary, not a sufficient, condition for a product to be licensed. The Court did not grant judgment at the end of trial that the JDLA's license grant covers any accused product or whether this license grant was limited to the parties' joint development project because neither of those issues were before the jury. Netlist only sought damages for the period after termination, consistent with the Court's summary judgment during pre-trial.

Samsung has raised the same license defense here as it did in *Samsung I*. Specifically, Samsung claims that the (1) JDLA's license grant is broad and covers the patents in suit and (2) Samsung did not materially breach the JDLA by failing to supply Netlsit with memory products. Dkt. 145 at 27 ("SEC maintains that it did not breach the Agreement, that the Agreement has not been terminated, and that it continues to hold a paid-up, worldwide, non-exclusive license to Netlist's patents, including the Patents-In-Suit. All of Samsung's sales of the Accused

- 4 -

Instrumentalities are therefore licensed to the asserted patents in this case."). The full scope of Samsung's license defense is thus currently before this Court.

Netlist has moved for summary judgment on this defense, as it has a right to do under both the Federal Rules and this Court's docket control order. Dkt. 273. Samsung has taken numerous positions in the cases before this Court on the JDLA that are flatly inconsistent with the positions it has taken in the California Action. As Netlist has extensively detailed these inconsistencies elsewhere, *see id.* at 2, 9-11; *Samsung I*, Dkt. 582 at 13-15, it will only briefly summarize them here.

In the cases before this Court, Samsung has argued that the JDLA's license grant broadly covers the Accused Products and is not limited to the parties' joint development efforts. *Samsung I*, Dkt. 290 at 2; Dkt. 145 at 25. In the California Action, however, Samsung has argued the exact opposite. Indeed, its theme on appeal was that, even where the JDLA does not reference the joint development collaboration, it should be read as limited to joint development. This is why, according to Samsung, the Central District of California erred in concluding that Samsung had materially breached the JDLA's supply clause, i.e., that clause must also be read as limited to supplying components for the parties' joint development only.

To convince the Ninth Circuit of this, Samsung argued "[t]here's other provisions in the contract that clearly relate to the joint development project, that don't also say in connection with the joint development project." Dkt. 273-2 (MSJ Ex. 1) at 8:16-19. One of the examples Samsung counsel pointed to was the JDLA's license grant. As Samsung's counsel explained pointing to the JDLA's recitals, "[t]he licenses are being given in connection with the collaboration. That's the joint development project." *Id.* at 15:10-21. Another example was the JDLA's non-recurring engineering ("NRE") fee: "there's an $8 million NRE fee that's paid. It's clearly for the joint development project, but it doesn't say it's specifically for the joint development project." *Id.* at 8:16-24. This is the exact opposite of what Samsung has argued to this Court where it has

- 5 -

repeatedly asserted that the $8 million payment was compensation for a broad license grant. *See, e.g.*, *Samsung I*, Dkt. 566 at 57 ("Netlist perpetually licensed 87 patents to Samsung, including the asserted patents, in an agreement where Samsung paid $8 million.").

Samsung has also taken inconsistent positions on the scope of the JDLA's supply provision. Before the Ninth Circuit, Samsung argued that Netlist's interpretation of the supply clause—which would require Samsung to supply Netlist with DRAM and NAND products on demand for any purpose—was commercially absurd, and Samsung would never have agreed to this type of arrangement. Dkt. 273-19 (MSJ Ex. 18) at 34-35 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In this case, however, Samsung's corporate representative testified that Samsung's supply obligation in the JDLA is similar to Samsung agreements with other major customers requiring Samsung to provide memory products on request. Dkt. 273-18 (MSJ Ex. 17) at 21:3-23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Based on the arguments above, Samsung successfully convinced the Ninth Circuit to reverse Judge Scarsi's summary judgment order that Samsung had materially breached the supply clause.

On December 12, 2023, Netlist moved for summary judgment on Samsung's license defense in this case on the basis that (1) Samsung is estopped from arguing that the JDLA's

- 6 -

license grant covers the Accused Products based on the arguments it made in the Ninth Circuit, and (2) in the alternative, the record evidence indisputably demonstrates that Samsung committed material breach in light of the specific admissions made by Samsung witnesses in this case. Dkt. 273.

Two days later, this Court denied Samsung's motion to stay this case pending resolution of the California Action. Dkt. 278. This Court "specifically disagree[d] that the Ninth Circuit's ruling means that the JDLA is currently 'in full force and effect,' as Samsung contends." *Id.* at 4. The Court, however, declined to comment on this issue further because it is "currently pending before the Central District of California." *Id.* at 4-5. Following this ruling, Samsung asked Netlist if it intended to withdraw its motion for summary judgment on Samsung's license defense. Ex. 1. In response, Netlist asked if Samsung was continuing to pursue its license defense, and if so, was it still maintaining that (1) the Accused Products are covered by the JDLA and (2) that the JDLA was still in effect. *Id.* Samsung responded that it was maintaining both positions. *Id.*

### B. Samsung Is Attempting To Avoid the Consequences of Unique Admissions made in East Texas

Netlist has obtained discovery in this case that definitively rebuts Samsung's license defense and contradicts its position in the California Action. For example, during his deposition in *Samsung I,* Samsung's Vice President of Product Planning, Indong Kim, admitted that Samsung breached the JDLA by cutting off Netlist's supply of NAND and DRAM, and this was unethical:

> Q. Was it ethical for Samsung to cut off a hundred percent of Netlist product supply knowing that it would destroy Netlist business?
> A. If a yardstick based on whether something is ethical or not is forced on me and I think I've been forced to determine this. Then I would consider it to be unethical, so the answer is yes.

Dkt. 273-33 (MSJ Ex. 32) at 70:7-15 (objections omitted). In addition, as noted above, Samsung's corporate representative, Joseph Calandra, testified in deposition in this action that Samsung's supply obligation in the JDLA is similar to Samsung agreements with other major customers

requiring Samsung to provide memory products on request, Dkt. 273-18 (MSJ Ex. 17) at 21:3-23, which is the opposite of the position Samsung took in the Ninth Circuit.

Samsung, however, has refused to allow Netlist to introduce this evidence in the California Action on the grounds that it would supposedly violate the protective order in this case. Indeed, Samsung went so far as to threaten Netlist with sanctions if Netlist disclosed this evidence to Judge Scarsi. Ex. 2. This is despite the fact that Samsung's California counsel has appeared in the East Texas action, and has equal access to this information. Samsung is simply trying to avoid being held to account for damaging testimony from its corporate representative that it is not favorable to it. That is why it does not want Netlist's summary judgment motion in this case to be briefed and heard.

## II.     ARGUMENT

### A.     The Court Should Reject Samsung's Request For An Indefinite Suspension of Briefing on Netlist's Summary Judgment Motion

Samsung has confirmed that it is still pursuing its full license defense and thus that defense remains squarely before this Court. Netlist not only has the right to seek summary judgment on this issue, but it must do so in order to preserve its rights. Moreover, the issue is ripe to be briefed as fact discovery is fully closed, and this case is scheduled to be tried in just four months.

The Court should not defer briefing on Netlist's motion for summary judgment simply because Samsung has moved to strike. As an initial matter, Samsung's motion to strike is procedurally improper. Nothing in the Federal Rules or this District's local rules permit a party to "strike" a motion for summary judgment that is filed within the proper time. Samsung simply wants to avoid taking a written position in this case so that it can continue to take inconsistent positions in different jurisdictions. But that is not a proper basis for striking a timely filed summary judgment motion on an expressly asserted affirmative defense, nor is it a reason to defer briefing indefinitely. *See, e.g., Palmer v. Kirkwood,* No. 4:20-CV-688-SDJ-KPJ, 2020 WL 13905123,

at *1 (E.D. Tex. Dec. 23, 2020) (extension of time are not warranted where the requesting party is acting in "bad faith"); *Premier Rsch. Labs, LP v. Nurman*, No. CV A-13-CA-069-SS, 2014 WL 12461960, at *1 n.1 (W.D. Tex. July 14, 2014) (denying request for an extension brought for "delay tactics."). Samsung should be required to respond to Netlist's summary judgment motion in accordance with Local Rule 7 and this Court's standing order.

Even if Samsung's motion to strike were procedurally proper, there is no reason why both motions cannot be briefed simultaneously. Requiring Samsung to state its full position on its license defense in this case—where it can no longer take inconsistent positions—will not in any way interfere with the California Action. Samsung does not dispute that the question regarding license scope is not currently at issue in California and is presently only before this Court. Indeed, Samsung's motion to strike contains extensive substantive opposition to Netlist's arguments regarding license scope. *See, e.g.*, Dkt. 283 at 10 ("Samsung has not taken any inconsistent positions as to the scope of its license under § 8 of the JDLA."), 11 ("The record overwhelmingly indicates that the parties intended to, and did, exchange unambiguously broad license rights in JDLA § 8."). In other words, Samsung is attempting to selectively choose which portions of Netlist's summary judgment motion it has to respond to and which it does not. This is not a proper basis to strike or to suspend summary judgment briefing.

Requiring Samsung to put forth its position on termination and breach in this case will also not interfere with the California Action. Judge Scarsi is still considering whether he will even address these issues. After the California Action was reopened, Netlist informed judge Scarsi that it would "soon file a motion to stay this case until after the April 15 trial in the Eastern District of Texas during which the jury will consider Samsung's claim that (1) the JDLA grants it license rights to Netlist's patents that covers its commercial products, and (2) that the license has not been properly terminated." California Action, Dkt. 343 at 3. Netlist filed this motion on November 30, 2023. *Id.*, Dkt. 344. Judge Scarsi has ordered that Netlist's motion to stay will be

heard on February 5, 2024, the same day as Judge Scarsi will hear cross-motions on summary judgment regarding contract interpretation. *Id.*, Dkt. 346. Thus, this Court can simply defer ruling on any issues relating to breach and termination until February 5, 2024 and then proceed accordingly depending on how Judge Scarsi rules. This is fully consistent with this Court's order denying Samsung's request for a stay. Dkt. 278 at 5 ("The Court reasonably may defer issues of Netlist's alleged termination of the JDLA to the Central District of California and simultaneously proceed on the other issues in this case . . . .").

Finally, Samsung argues that Netlist's summary judgment motion here relies on evidence that is not in the record in the California Action. Mot. at 8. But this just demonstrates why it is imperative that summary judgment on breach and termination be separately briefed in this action. If Judge Scarsi declines to address these issues, then this Court will be required to decide whether Samsung has a legally viable license defense based on the record before it.

### B. The Court Should Deny Samsung's Alternative Request for a Fourteen-Day Extension

The Court should also deny Samsung's alternative request for a fourteen-day extension to January 17, 2024 to respond to Netlist's summary judgment motion. As noted above, Netlist agreed to an extension to January 5, 2024 without pre-condition, giving Samsung twenty-three days in total to respond. Samsung's request for a fourteen-day extension, however, is excessive and solely designed so that Samsung can avoid having to take any positions in this case before its summary judgment briefing in the California Action is due (January 8, 2024).

Samsung claims extra time is needed so that its California counsel can assist in preparing a response, but this is specious. Attorneys from the law firm that is representing Samsung in California (O'Melveny & Meyers) first made an appearance in this case on December 15, 2023, just three days after Netlist's summary judgment motion was filed. Dkt. 280; Dkt. 281; Dkt. 287. Moreover, Samsung's California counsel are fully familiar with the facts relating to the JDLA as

they previously served as Samsung's trial and appellate counsel in the California Action. And the additional discovery in Netlist's motion is from Samsung witnesses, whose transcripts Samsung's California counsel had unfettered access to even before appearance. There is no reason why Samsung's California counsel needs five weeks total, which is three weeks more than parties have to file responsive summary judgment motions under this Court's standard docket control order, to respond to a 15-page motion. Samsung is simply seeking a delay for strategic purposes.

### III.    CONCLUSION

For the reasons stated above, Samsung's for an extension should be denied.

Dated: December 22, 2023                                    Respectfully submitted,

*/s/ Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
H. Annita Zhong (*pro hac vice*)
hzhong@irell.com
Andrew J. Strabone (*pro hac vice*)
astrabone@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
Michael Harbour (*pro hac vice*)

mharbour@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Philip Warrick
New York Bar No. 4471413
pwarrick@irell.com

**IRELL & MANELLA LLP**
750 17th Street NW, Suite 850
Washington, DC 20006
Tel. (310) 777-6512
Fax (310) 317-7252

***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Jason G. Sheasby*
Jason G. Sheasby

## CERTIFICATE OF SERVICE

I hereby certify that, on December 22, 2023, a copy of the foregoing was served by email to all counsel of record for Samsung Defendants.

*/s/ Jason G. Sheasby*
Jason G. Sheasby
