# Exhibit 18

Filed Under Seal

**Case Nos. 22-55209 (L), 22-55247**

*In the*

# United States Court of Appeals
*for the*
# Ninth Circuit

———◆———

NETLIST INC.,
a Delaware corporation,
*Plaintiff-Appellee,*

v.

SAMSUNG ELECTRONICS CO., LTD.,
a Korean corporation,
*Defendant-Appellant.*

———————————————

*Appeal from the United States District Court for the Central District of California (Santa Ana),
Case No. 8:20-cv-00993-MCS-ADS · Honorable Mark C. Scarsi, District Judge*

## FIRST BRIEF ON CROSS-APPEAL
**[APPELLANT'S OPENING BRIEF]**

| | |
|---|---|
| ANTON METLITSK<br>EPHRAIM MCDOWELL<br>O'MELVENY & MYERS, LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>Telephone: (212) 326-2000<br>ametlitsky@omm.com<br>emcdowell@omm.com | MICHAEL G. YODER<br>MARC F. FEINSTEIN<br>O'MELVENY & MYERS, LLP<br>400 South Hope Street, 18th Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 430-6000<br>myoder@omm.com<br>mfeinstein@omm.com |

*Attorneys for Appellant Samsung Electronics Co., Ltd.*

 COUNSEL PRESS · (213) 680-2300    PRINTED ON RECYCLED PAPER 

fast memory like DRAM with a higher density of slower memory like NAND", 4-ER-711, § 1—NAND and DRAM are described generically as components of the NVDIMM-P product. Section 6.2 thus accurately describes exactly what Samsung was required to supply for the NVDIMM-P project—namely, generic NAND and DRAM, full stop. Sections 6.1 and 6.2 are, in other words, complementary to each other—they each set forth the components that the other party agreed to supply for the NVDIMM-P joint-development project.

Third, the court reasoned that because JDLA sections 7 and 8—which grant mutual release of patent-infringement claims and cross-licensing of patents—do not "pertain specifically to the NVDIMM-P project," section 6.2 may be read in the same manner. 1-ER-34-35. This reading misunderstands the contract's structure. As the JDLA's title shows, the agreement addresses two distinct items: (1) "joint development" of the NVDIMM-P product and (2) "licens[ing]" of the parties' patents. 4-ER-709. Sections 7 and 8 speak to the patent licenses. It therefore makes sense that Sections 7 and 8 do not speak in NVDIMM-P-specific terms. *See, e.g.*, 4-ER-711, § 1 (defining "Netlist's Licensed Patents" to mean "*any and all* Patents owned or controlled by Netlist or any of its Subsidiaries" (emphasis added)); *id.* (defining Samsung's "Licensed Products" to mean "*all* semiconductor

-29-

53); *supra* at 11. For instance, in April 2016, Netlist wrote to Samsung in hopes of buying more NAND: "I know it's insane but want to … try our luck." 3-ER-447 (¶ 71). And when Samsung did not provide Netlist with the amount of NAND and DRAM it wanted, Netlist sought a larger "monthly allocation." 2-ER-119-120 (¶ 104). Netlist does not dispute that Samsung complied with its supply obligations during this period. *See* 2-ER-214 (¶ 48); 2-ER-112 (¶ 71). Yet this course of conduct would make no sense if the JDLA had already secured Netlist the right to buy all the NAND and DRAM it wanted.

Nor would Netlist's February 2017 request for a "New Partner Type" relationship and an "Official-Distributor Partnership Agreement" that would require Samsung to provide additional NAND and DRAM "Product Allocation support for Netlist." 2-ER-283 (¶ 45); 2-ER-212 (¶ 45). Netlist would not have needed to make this request for additional supply of NAND and DRAM products if the JDLA *already* guaranteed unlimited supply outside of the joint-development project.

Finally, because the JDLA was "negotiated by counsel for sophisticated commercial parties," the Court should interpret any "ambiguous language to realize the reasonable expectations of the ordinary businessperson." *Bank of N.Y.*, 35 F.3d at 662. No ordinary businessperson in Samsung's position would agree to supply an unquantified amount of DRAM and NAND to a

single customer on "request at a competitive price." 4-ER-714-715, § 6.2. Samsung is one of the world's leading suppliers in a memory industry that experiences endemic supply shortages, *see supra* at 5, 12, so an unlimited supply commitment to one customer would seriously jeopardize Samsung's sales to its many *other* customers. Assuming such a commitment is especially unreasonable where (as here) Netlist's own supply obligation is narrowly tailored to the NVDIMM-P context, which would make Samsung's supply obligation bizarrely and unfairly asymmetrical.[2]

\* \* \*

The only plausible reading of section 6.2 is that Samsung's supply obligation was tied to the NVDIMM-P joint-development project. Netlist does not claim that Samsung failed to supply sufficient NAND and DRAM for the NVDIMM-P project. *See* ECF 192 at 14. Samsung is thus entitled to judgment on Netlist's first claim.

---

[2] For the reasons given, if the Court finds section 6.2 ambiguous, it should reverse the district court's judgment on the ground that the undisputed extrinsic evidence compels Samsung's interpretation. If the Court finds, however, that the extrinsic evidence is disputed, it should remand for a trial on section 6.2's scope.