# Exhibit 37
Filed Under Seal

1   Ekwan E. Rhow - State Bar No. 174604
        erhow@birdmarella.com
2   Marc E. Masters - State Bar No. 208375
        mmasters@birdmarella.com
3   Kate S. Shin - State Bar No. 279867
        kshin@birdmarella.com
4   Christopher J. Lee - State Bar No. 322140
        clee@birdmarella.com
5   BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
    DROOKS, LINCENBERG & RHOW, P.C.
6   1875 Century Park East, 23rd Floor
    Los Angeles, California 90067-2561
7   Telephone: (310) 201-2100
    Facsimile: (310) 201-2110
8
    Attorneys for Defendant Samsung
9   Electronics Co., Ltd.

10

11                  **UNITED STATES DISTRICT COURT**

12       **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

13

14   NETLIST INC., a Delaware            CASE NO. 8:20-cv-00993-MCS-DFM
     corporation,
15                                       **UNREDACTED**
                Plaintiff,               **DEFENDANT SAMSUNG**
16                                       **ELECTRONICS CO., LTD.'S**
          vs.                            **NOTICE OF MOTION AND**
17                                       **MOTION FOR JUDGMENT ON**
     SAMSUNG ELECTRONICS CO.,            **THE PLEADINGS**
18   LTD., a Korean corporation,
                                         Date:    July 19, 2021
19              Defendant.               Time:    9:00 a.m.
                                         Crtrm.:  7C
20
                                         Assigned to Hon. Mark C. Scarsi
21                                       FILED UNDER SEAL PURSUANT TO
22                                       ORDER DATED _____.

23                          **UNREDACTED**

24

25

26

27

28

Case 8:22-cv-00293-MCS-DFM Document 304-1 Filed 01/03/24 Page 3 of 25 Page ID #:45287
Case 2:21-cv-09293-MCS-DFM Document 14-50-1 Filed 01/03/24 Page 3 of 25 Page ID #:45287
Page 75545287

1                                  **NOTICE OF MOTION**

2          TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3              PLEASE TAKE NOTICE that on July 19, 2021, at 9:00 a.m., or as soon

4  thereafter as this matter may be heard, in Courtroom 7C of the United States District

5  Court for the Central District of California, located at 350 W. 1st Street, Los

6  Angeles, CA 90012, Defendant Samsung Electronics Co. Ltd. will, and hereby do,

7  move pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the

8  pleadings as to the First, Second, and Third Causes of Action of Plaintiff Netlist

9  Inc.'s First Amended Complaint.

10            This motion is based on this Notice of Motion, the accompanying

11  Memorandum of Points and Authorities, the Request for Judicial Notice and

12  accompanying exhibits, the pleadings and papers on file in this matter, and such

13  other matters as may be presented to the Court at the hearing.

14            This motion is made following a conference of counsel pursuant to Local

15  Rule 7-3, which took place on June 8, 2021. (Declaration of Christopher J. Lee ¶ 2).

16

17  DATED:  June 15, 2021           Ekwan E. Rhow

18                                   Marc E. Masters

19                                   Kate S. Shin

                                        Christopher J. Lee

20                                   Bird, Marella, Boxer, Wolpert, Nessim,

                                        Drooks, Lincenberg & Rhow, P.C.

21

22

23                     By: _____

24                               Ekwan E. Rhow

                          Attorneys for Defendant Samsung

25                          Electronics Co., Ltd.

26

27

28

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ............................................................................3

TABLE OF AUTHORITIES .....................................................................4

I.      INTRODUCTION .......................................................................7

II.     FACTUAL AND PROCEDURAL BACKGROUND ....................9

     A.    The Joint Development and License Agreement ................9

     B.    Netlist's First Breach of Contract Claim ...........................10

     C.    Netlist's Second Breach of Contract Claim .......................11

     D.    Netlist's Declaratory Relief Claim ....................................12

III.    ARGUMENT .............................................................................13

     A.    LEGAL STANDARD .............................................................13

     B.    SAMSUNG IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON NETLIST'S FIRST BREACH OF CONTRACT CLAIM BECAUSE THE JDLA CONTAINS NO SUPPLY OBLIGATION. ........................................................14

          1.    Contracts Must Be Interpreted According To Their Plain Language .................................................................14

          2.    Section 6.2 of the JDLA Is Unambiguously a Pricing Term With No Supply Obligation ......................................15

          3.    The JDLA Cannot Be A Requirements Contract, as it is Non-Exclusive ..................................................................16

          4.    Netlist is barred from recovering consequential damages under the JDLA ................................................................17

     C.    SAMSUNG IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON NETLIST'S SECOND BREACH OF CONTRACT CLAIM BECAUSE THE TAX WITHHOLDING WAS LAWFUL UNDER KOREAN LAW. ..................................19

     D.    SAMSUNG IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON NETLIST'S DECLARATORY RELIEF CLAIM. .................................................................................21

     E.    THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND. ......................23

IV.    CONCLUSION .........................................................................24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Allen v. City of Beverly Hills*,
5     911 F.2d 367 ...................................................................................................23

6

*Arnold Chevorlet LLC v. Tribune Co.*,
7     418 F.Supp.2d 172 (E.D.N.Y. 2006) ...............................................................15

8

*Bell Atlantic Corp. v. Twombly*,
9     550 U.S. 544 (2007)..........................................................................................19

10

*Bigda v. Fischbach Corp.*,
    898 F.Supp. 1004 (S.D.N.Y.1995) ..................................................................22
11

12

*Buraye v. Equifax*,
    625 F. Supp. 2d 894 (C.D. Cal. 2008) .............................................................14
13

14

*Butler v. Resurgence Fin., LLC*,
    521 F. Supp. 2d 1093 (C.D. Cal. 2007) ...........................................................14
15

16

*Caltex Plastics, Inc. v. Lockheed Martin Corporation*,
    824 F. 3d 1156 (9th Cir. 2016)........................................................................19

17

*Calvin Klein Trademark Trust v. Wachner*,
18     129 F.Supp.2d 254 (S.D.N.Y.2001) ................................................................22

19

*Carmen v. S.F. Unified Sch. Dist.*,
20     982 F. Supp. 1396 (N.D. Cal. 1997)................................................................23

21

*Corning Inc. v. VWR Intern., Inc.*,
22     2007 WL 841780 (W.D.N.Y. March 16, 2007)...........................................8, 17

23

*CSL Behring, LLC v. Bayer Healthcare, LLC*,
    2019 WL 4451368 (D. Del. Sep. 17, 2019).....................................................17
24

25

*de Fontbrune v. Wofsy*,
    838 F.3d 992 (9th Cir. 2016)...........................................................................19

26

*Dun & Bradstreet Corp. v. Harpercollins Publishers, Inc.*,
27     872 F. Supp. 103 (S.D.N.Y. 1995) ..................................................................22

28

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S NOTICE OF MOTION AND MOTION FOR
JUDGMENT ON THE PLEADINGS

*Dworkin v. Hustler Magazine Inc.*,
  867 F.2d 1188 (9th Cir. 1989)........................................................13

*ESPN, Inc. v. Office of Com'r of Baseball*,
  76 F. Supp. 2d 383 (S.D.N.Y. 1999) ............................................9, 22

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
  189 F.3d 971 (9th Cir. 1999)........................................................14

*Holly v. Alta Newport Hospital, Inc.*,
  2020 WL 1853308 (C.D. Cal. Apr. 10, 2020) ..................................21

*Jackson v. Bank of Hawaii*,
  902 F.2d 1385 (9th Cir. 1990)......................................................23

*Knappenberger v. City of Phoenix*,
  566 F.3d 936 (9th Cir. 2009)........................................................14

*Leadsinger, Inc. v. BMG Music Publ'g*,
  512 F.3d 522 (9th Cir. 2008)........................................................23

*Mays v. Wal-Mart Stores, Inc.*,
  354 F. Supp. 3d 1136 (C.D. Cal. 2019) ..........................................14

*New Bank of New England, N.A. v. Toronto–Dominion Bank*,
  768 F.Supp. 1017 (S.D.N.Y.1991) .................................................16

*Novak v. United States*,
  795 F.3d 1012 (9th Cir. 2015)......................................................23

*Orchard Hill Master Fund Ltd. v. SBA Communications Corp.*,
  830 F.3d 152 (2d Cir. 2016) .........................................................15

*Polich v. Burlington N., Inc.*,
  942 F.2d 1467 (9th Cir.1991)........................................................23

*Rich v. Shrader*,
  823 F.3d 1205 (9th Cir. 2016)......................................................23

*Sayers v. Rochester Telephone Corp. Supplemental Management
  Pension Plan*,
  7 F.3d 1091 (2d Cir. 1993)...........................................................15

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001)........................................................14

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  992 F.Supp.2d 962 (C.D. Cal. 2014) ...............................................................21

**State Cases**

*Greenfield v. Philles Records*,
  98 N.Y.2d 562 (N.Y. 2002)....................................................................15, 16

*Hudson Iron Works, Inc. v. Beys Specialty Contracting, Inc.*,
  262 A.D.2d 360 (N.Y. App. Div. 1999) ......................................................15

*Ruttenberg v. Davidge Data Sys. Corp.*,
  215 A.D.2d 191 (N.Y. App. Div. 1995) ......................................................15

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*,
  1 N.Y.3d 470 (N.Y. 2004) ...............................................................7, 16

**Federal Statutes**

Copyright Act ...........................................................................................23

Fed. R. Civ. P. 12(b) ........................................................................13, 14

Fed. R. Civ. P. 12(c) .......................................................2, 13, 14, 23

Fed. R. Civ. P. 15.....................................................................................23

Fed. R. Civ. P. 44.1.......................................................................19, 20

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S NOTICE OF MOTION AND MOTION FOR
JUDGMENT ON THE PLEADINGS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This lawsuit is nothing more than a bald-faced scheme by Netlist, Inc. ("Netlist") to unilaterally terminate a fairly bargained-for contract, so that it may reap an unjust windfall by forcing renegotiation of new terms. On November 12, 2015, Netlist and Samsung Electronics, Co., Ltd. ("Samsung") – two experienced, sophisticated actors in the semiconductor industry – entered into a Joint Development and License Agreement (the "JDLA") to further their mutual interest by collaborating on joint development of memory modules, and grant each other licenses for certain intellectual property. Their business relationship under the JDLA continued without controversy for several years, before Netlist decided that it no longer wanted to be bound by the very terms of its own bargain. Now Netlist is using this litigation as leverage to terminate the JDLA.

In a clear demonstration of cherry-picking, Netlist has scoured the text of the JDLA to craft pretextual breaches tied to conduct that transpired many years ago, in an effort to terminate the agreement well ahead of its mutually-intended natural term (at "the expiry of the last licensed patent") (RJN Exh. A § 13.1; p. 4). Netlist has raised two unfounded claims for breach of contract in its First Amended Complaint ("FAC"). Both are without merit, and therefore, the FAC should be dismissed in its entirety as a matter of law.

***First***, while there is no supply obligation owed by either party under the JDLA, Netlist nonetheless makes unfounded allegations that Samsung breached its obligations under the JDLA in 2018 by failing to supply all products demanded by Netlist "on request." Evident from a plain reading of the text, Section 6.2 of the JDLA contains only a pricing obligation by Samsung to sell certain semiconductor (NAND/DRAM) products to Netlist at a competitive price. The JDLA contains no supply obligation of any kind, and such an obligation cannot be written into it in contravention of its plain language. *See Vermont Teddy Bear Co., Inc. v. 538*

*Madison Realty Co.*, 1 N.Y.3d 470, 475 (N.Y. 2004) ("Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing")[1]. Moreover, because there is no explicit quantity term in Section 6.2, even if the Court were to write in a supply obligation, it could only be an obligation to supply all of Netlist's requirements. To interpret the JDLA to be a requirements contract, which is the only way the Section 6.2 cause of action could survive this motion, would be contrary to law. Exclusivity is a prerequisite for requirements contracts, and the JDLA is explicitly non-exclusive. (RJN Exh. A §§ 6.3-6.4); *see Corning Inc. v. VWR Intern., Inc.*, 2007 WL 841780, at *6 (W.D.N.Y. March 16, 2007) (exclusivity necessary for requirements contracts)[2].

**Second**, Netlist's baseless allegation that Samsung breached the JDLA in 2015 by withholding 16.5% of a $8 million contractual payment relies on an erroneous legal conclusion completely unsupported by factual allegations: that the "$8 million payment to Netlist was not properly taxable in Korea." (Dkt. No. 18-2 ¶ 16). The JDLA explicitly states that "Samsung may deduct any applicable withholding taxes due or payable under the laws of Korea." (RJN Exh. A § 3.2). Netlist cannot allege what Korean law Samsung violated by withholding taxes, because Samsung had a legal basis for its withholding at the time it was made: a foreign company without a domestic base of operations in Korea, like Netlist, nevertheless owes taxes on payments for the transfer of "patent rights . . . [or]

---

[1]  Pursuant to the choice of law clause contained in Section 14, the JDLA is governed by New York law (RJN Exh. A § 14).

[2]  In addition, the First Breach of Contract Claim impermissibly seeks consequential damages, contrary to the explicit terms of the JDLA. (RJN Exh. A § 3.2).

1  information and know-how[.]" (RJN Exh. B art. 93, subpara. 8)[3]. Therefore,

2  Samsung lawfully withheld 16.5% and transmitted it to the Korean National Tax

3  Service.

4  **Third**, even if Netlist could allege material breaches of the JDLA, its attempt

5  at early termination is invalid. Both purported breaches occurred several years ago,

6  and Netlist has already elected to continue on with the contract despite them.

7  Allowing Netlist "to now terminate the [JDLA] based on breaches that occurred . . .

8  years ago would violate important principles of contract law." *ESPN, Inc. v. Office*

9  *of Com'r of Baseball*, 76 F. Supp. 2d 383, 391-92 (S.D.N.Y. 1999) (holding that

10  attempted termination was invalid based on the doctrine of election.)

11  As each of Netlist's claims are fully preempted by operation of law,

12  additional efforts to amend would be futile. Netlist's legally deficient and pretextual

13  claims are nothing more than a vehicle for its scheme to seek early termination of

14  the JDLA, so that it may extract an undeserved windfall from Samsung at the

15  negotiating table. Netlist should not be permitted to further waste the time and

16  resources of both parties and the Court with its thinly-veiled gamesmanship.

17  Accordingly, the Court should grant judgment on the pleadings in Samsung's favor

18  without leave to amend.

19  ## II.    FACTUAL AND PROCEDURAL BACKGROUND

20  ### A.    The Joint Development and License Agreement

21  Samsung is a company based in South Korea that manufactures and sells

22  NAND and DRAM products. Netlist is a California-based company that for the past

23  20 years has designed, manufactured, and sold memory modules – many of which

24  utilize NAND and DRAM products – to customers worldwide. On November 12,

25

26  ---

[3]    Beobinsaebeob [Corporate Tax Act], Act No. 11758, amended December 31,

27  2018, *available at*

28  https://elaw.klri.re.kr/kor_service/lawView.do?hseq=49689&lang=ENG

2015, Samsung and Netlist entered into the JDLA, and formed a business
relationship where the Parties would, among other things, collaborate to jointly
develop memory modules, and grant each other licenses for certain intellectual
property. Thereafter, this business relationship continued productively and without
controversy for more than four years until May 2020, when Netlist unilaterally
decided that the terms of the JDLA were no longer to its liking and commenced this
litigation as leverage for renegotiation of the contract.

On May 28, 2020, Netlist filed its complaint in this action in the U.S. District
Court for the Central District of California, (Dkt. No. 1), and a First Amended
Complaint ("FAC") on July 22, 2020. (Dkt. No. 18-2). The FAC alleges three
claims against Samsung: (1) a breach of contract claim based on Samsung's alleged
failure to supply Netlist with NAND and DRAM products "on request," (*Id.* ¶¶ 25-
29); (2) a breach of contract claim based on Samsung's tax withholding for a
contractual $8 million payment, (*Id.* ¶¶ 30-34); and (3) a declaratory relief claim for
termination of the JDLA based on the two alleged breaches. (*Id.* ¶¶ 35-41).

**B.** **Netlist's First Breach of Contract Claim**

Netlist alleges that Samsung breached Section 6.2 of the JDLA by failing to
supply Netlist with products "on request." (Dkt. No. 18-2 ¶¶ 25-29). Section 6.2
provides, in relevant part, as follows:

> 6.2    Supply by Samsung. Samsung will supply NAND and DRAM
> products to Netlist on Netlist's request at a competitive price (*i.e.*,
> among customers purchasing similar volumes of similar products).
> (RJN Exh. A § 6.2).

This section functions as a pricing term – requiring Samsung to offer Netlist a
"competitive price" when it does sell products, but without requiring that it do so.
Neither Section 6.2 nor any other provision of the JDLA contains an obligation for
Samsung's supply to Netlist. (*See generally* RJN Exh. A). In addition, the JDLA
explicitly states that the supply relationship between Netlist and Samsung is non-

exclusive, and does not require either party to purchase any products from the other. (*See id.* §§ 6.3-6.4).

Netlist attempts to read a supply obligation into the JDLA that does not exist on the face of the contract, and for that purpose alleges irrelevant and incoherent supply-related facts. (Dkt. No. 18-2 ¶¶ 11-12). The FAC is self-contradictory and unclear as to when the purported failure to supply occurred. Netlist alleges that "in 2018, Samsung began not to fulfill Netlist's requests or Orders." (*Id.* ¶ 12). However, Netlist also alleges that the failure to supply "on request" began in June 2017, and "continue[s] to this day[,]" (*Id.* ¶ 27). Despite this conclusory allegation of continuing breach, Netlist does not allege facts indicating that it was undersupplied at any time other than 2018.[4]

## C.  Netlist's Second Breach of Contract Claim

Netlist also claims that Samsung breached the JDLA by deducting $1,320,000 for tax withholding purposes from a $8 million contractual payment owed to Netlist. Sections 3.1 and 3.2 of the JDLA provide, in relevant part, as follows:

> 3.1  <u>Fees and Costs</u>. Samsung shall pay to Netlist eight million United States dollars (US $8,000,000) as non-refundable NRE fees within seven (7) business days from the date of Samsung's receipt of invoice issued by Netlist on or after the Effective Date.

> 3.2  <u>Taxes</u>. . . . To the extent that any withholding taxes are required by applicable law for the payment set forth in this Agreement, ***Samsung may deduct any applicable withholding taxes due or***

---

[4]  Netlist also claims that it has lost business opportunities, and that it paid higher prices for smaller volumes of NAND and DRAM products on the secondary market due to Samsung's conduct. (Dkt. No. 18-2 ¶ 14). However, other than that conclusory statement, it offers no information as to what business opportunities were lost, or why the failure to obtain products from Samsung – only one of many sellers in the market – would have resulted in higher prices for Netlist.

11

1  *payable under the laws of Korea* . . . provided that Samsung shall pay

2  such withholding taxes to the Korean tax authorities and promptly

3  provide Netlist with a certificate of payment for such withholding tax,

4  as required by applicable law or treaty, and reasonably cooperate with

5  Netlist in any lawful efforts to claim a credit or refund or exemption

6  with respect to any such withholding taxes.

7  (RJN Exh. A §§ 3.1-3.2) (emphasis added).

8  Netlist alleges that Samsung withheld 16.5% of the payment and paid it to the

9  "Korean tax authority" "shortly after entering the agreement" in November 2015.

10  ((Dkt. No. 18-2 ¶ 16)). Netlist claims, *ipse dixit*, that "on information and belief" the

11  payment was not taxable, and that the withholding came as a "surprise" because it

12  "had understood that the amount would not be taxed in Korea under the applicable

13  law." (*Id.*) Aside from this unsupported legal conclusion, Netlist pleads nothing on

14  how the withholding supposedly violated Korean law.

15  In addition, Netlist claims that Samsung breached the obligation to

16  "reasonably cooperate with Netlist" in Section 3.2 by notifying Netlist that the tax

17  withholding was proper, "delay[ing] or declin[ing]" to provide cooperation, and not

18  being "forthcoming to Netlist regarding what it has done or could do to help." (*Id.* ¶

19  17). Aside from these general statements, which do little more than restate the

20  contractual language in a conclusory manner, Netlist provides no explanation of

21  how Samsung failed to reasonably cooperate. (*Id.* ¶ 32). Netlist does not allege that

22  it ever informed Samsung that it considered either the withholding or the purported

23  lack of cooperation to be a material breach, or that it attempted to terminate the

24  JDLA on that basis, at any time in the intervening six years.

25  **D.    Netlist's Declaratory Relief Claim**

26  Netlist's third claim requests declaratory relief that it properly terminated the

27  JDLA. Section 13.2 of the JDLA provides, in relevant part, as follows:

28  13.2 <u>Termination</u>. . . . the other Party shall have a right to terminate this

1  Agreement upon written notice to a Party *if . . . such Party is in material breach of*

2  *this Agreement* and it is not cured within thirty (30) days period from the other

3  Party's written demand.

4      (RJN Exh. A § 13.2) (emphasis added). Netlist alleges that it notified

5  Samsung of the purported material breaches of the JDLA on May 27, 2020 (Dkt.

6  No. 18-2 ¶ 19)[5] – *over two years after* the purported failure to supply "on request,"

7  and *nearly five years after* the tax withholding. Netlist makes no allegation that it

8  raised its supply issues with Samsung at any point in the intervening years, or that it

9  ever communicated to Samsung its position that the tax withholding was a breach of

10 contract. Indeed, Netlist's lack of genuine interest in these issues – other than as a

11 pretextual basis for litigation and unlawful termination of the JDLA – is evident

12 from the timing of its filing: on May 28, 2020, the day after its purported notice of

13 breach and just one day into the 30-day cure period triggered under Section 13.2 of

14 the JDLA, Netlist filed its complaint without offering Samsung any opportunity to

15 cure. Netlist alleges that, on July 15, 2020, after the cure period for the purported

16 material breaches had passed, it sent Samsung a purported notice of termination. (*Id.*

17 ¶ 22). Based on the purported breaches, Netlist seeks a determination that the JDLA

18 is terminated as of July 20, 2020. (*Id.* ¶ 41).

19 **III.   ARGUMENT**

20         **A.   LEGAL STANDARD**

21     "After the pleadings are closed—but early enough not to delay trial—a party

22 may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for

23 judgment on the pleadings is "functionally identical" to a motion to dismiss under

24 Fed. R. Civ. P. 12(b), other than the time of filing. *Dworkin v. Hustler Magazine*

25

26 ───────────────
   [5]   While factual disputes are not ripe for adjudication in a motion for judgment on
27 the pleadings, Samsung disagrees with Netlist's contention that it served proper
   notice under the JDLA.
28

1  *Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, "[t]he standard applied [to the

2  former] is essentially the same as that applied [to the latter]." *Butler v. Resurgence*

3  *Fin., LLC*, 521 F. Supp. 2d 1093, 1095 (C.D. Cal. 2007).

4  As with Rule 12(b) motions, courts may consider only the complaint, the

5  answer, exhibits attached to the complaint, and matters subject to judicial notice

6  when deciding a motion for judgment on the pleadings. *Buraye v. Equifax*, 625 F.

7  Supp. 2d 894, 897 (C.D. Cal. 2008). The moving party will prevail if, when "taking

8  all allegations in the pleading as true, [it is] entitled to judgment as a matter of law."

9  *Knappenberger v. City of Phoenix,* 566 F.3d 936, 939 (9th Cir. 2009) (internal

10 quotation marks omitted); *see also Heliotrope Gen., Inc. v. Ford Motor Co.*, 189

11 F.3d 971, 978–79 (9th Cir. 1999) (same). The non-moving party, in turn, can only

12 defeat the motion if its claims amount to more than "conclusory allegations and

13 unwarranted inferences" *Butler*, 521 F. Supp. 2d at 1095; *see also Sprewell v.*

14 *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court need not accept as

15 true "[conclusory allegations], unwarranted deductions of fact, or unreasonable

16 inferences"). "A Rule 12(c) motion may thus be predicated on either (1) the lack of

17 a cognizable legal theory, or (2) insufficient facts to support a cognizable legal

18 claim." *Mays v. Wal-Mart Stores, Inc.*, 354 F. Supp. 3d 1136, 1141 (C.D. Cal.

19 2019).

20 **B.  SAMSUNG IS ENTITLED TO JUDGMENT ON THE**

21  **PLEADINGS ON NETLIST'S FIRST BREACH OF CONTRACT**

22  **CLAIM BECAUSE THE JDLA CONTAINS NO SUPPLY**

23  **OBLIGATION.**

24  **1.  Contracts Must Be Interpreted According To Their Plain**

25  **Language**

26  Under New York law,[6] "[t]he proper interpretation of contract language may

27

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [6]  Pursuant to the choice of law clause contained in Section 14, the JDLA is

be determined as a matter of law[.]" *Hudson Iron Works, Inc. v. Beys Specialty Contracting, Inc.*, 262 A.D.2d 360, 362 (N.Y. App. Div. 1999). For purposes of interpretation, the court may consider the contractual text in its entirety, even when plaintiff includes only selective quotations in its complaint. *Arnold Chevorlet LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 191 (E.D.N.Y. 2006) (citing *International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

"The primary objective in contract interpretation is to give effect to the intent of the contract parties as revealed by the language they chose to use." *Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993) (internal quotations and citations omitted); *see also Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (N.Y. 2002) ("The best evidence of what parties to a written agreement intend is what they say in their writing") (same). Thus, when the text of a contract is unambiguous, the mere assertion by one party that the contract actually means something different is not on its own sufficient to create ambiguity. *Ruttenberg v. Davidge Data Sys. Corp.*, 215 A.D.2d 191, 193 (N.Y. App. Div. 1995).

## 2. Section 6.2 of the JDLA Is Unambiguously a Pricing Term With No Supply Obligation

A contract is unambiguous when the terms "suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Orchard Hill Master Fund Ltd. v. SBA Communications Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).

Here, Section 6.2 provides only that "Samsung will supply NAND and DRAM products to Netlist on Netlist's request at a competitive price." (RJN Exh. A governed by New York law (RJN Exh. A § 14).

§ 6.2).  This is unambiguously a pricing obligation, and no supply obligation is mentioned here or anywhere else in the entirety of the JDLA. A plain reading of the JDLA, therefore, demonstrates that Samsung has no obligation to supply a quantity of products to Netlist, or any products at all. Netlist asks the Court to write in a non-existing supply obligation into the JDLA based on nothing more than its own wishful thinking. *See Vermont Teddy Bear*, 1 N.Y.3d at 475 ("Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing"); *see also Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 573 (N.Y. 2002) ("silence does not equate to contractual ambiguity.")

Samsung and Netlist are both sophisticated corporate actors. Both have extensive experience in the semiconductor industry, and are well-versed in the market conditions surrounding the sale and purchase of NAND and DRAM products – including the limited supply and frequent shortages. If Samsung and Netlist wanted to create an obligation to supply products, they knew exactly how to do so: by putting that explicitly in the text. They certainly would not have intended to create one by mere implication. *See New Bank of New England, N.A. v. Toronto–Dominion Bank*, 768 F. Supp. 1017, 1022 (S.D.N.Y.1991) ("an agreement among sophisticated parties . . . does not become ambiguous simply because one of the parties later asserts that it intended a different interpretation").

### 3. The JDLA Cannot Be A Requirements Contract, as it is Non-Exclusive

The FAC does not allege any specific quantity of product Samsung was required to provide, but instead argues that the phrase "on request" single-handedly transmutes the JDLA into a requirements contract, so that Samsung's failure to satisfy any portion of any of Netlist's requests or orders must necessarily constitute a breach.

This argument fails as a matter of law, because the supply related provisions

of the JDLA are non-exclusive. There can be no valid requirements contract without exclusivity. *Corning Inc.*, 2007 WL 841780, at *6 ("[b]ecause section 2-306 depends on exclusivity to determine the quantity, there can be no valid requirements contract without it."); *see also CSL Behring, LLC v. Bayer Healthcare, LLC*, 2019 WL 4451368 at *2 (D. Del. Sep. 17, 2019) (applying New York law, holding that under requirements contract, buyer must buy all of its requirements from a single exclusive seller.) Here, Netlist is not bound to purchase products exclusively from Samsung and notably, has no obligation to purchase any products from Samsung at all. (RJN Exh. A § 6.4). Because it is not a requirements contract, as a matter of law Samsung had no obligation to provide more product to Netlist, which means Netlist's first cause of action fails to state a claim for relief and should be dismissed.

### 4. Netlist is barred from recovering consequential damages under the JDLA.

"Under New York law, consequential damages are recoverable only if they were reasonably within the contemplation of the parties at the time the contract was made." *M Sports Productions v. Pay-Per-View Network, Inc.*, 1998 WL 19998, at *2 (S.D.N.Y. Jan. 20, 1998). Thus, when the parties to a contract seek to bar recovery of consequential damages through explicit contractual terms, courts will routinely enforce those terms. *See, e.g., International Gateway Exchange, LLC v. Western Union Financial Services, Inc.*, 333 F.Supp.2d 131, 149 (S.D.N.Y. 2004); *DynCorp v. GTE Corp.*, 215 F.Supp.2d 308, 217-8 (S.D.N.Y. 2002). In particular, when a contract is negotiated between experienced commercial parties – as the JDLA is – a clause limiting consequential damages is not unconscionable, and is fully enforceable. *Scott v. Palermo*, 233 A.D.2d 869, 872 (N.Y. App. Div. 1998). On this basis, when an "[a]greement bars consequential damages on its face[,]" causes of action demanding consequential damages should be dismissed. *See M Sports Productions*, 1998 WL 19998, at *2 *citing Suzy Phillips Originals, Inc. v. Coville, Inc.*, 939 F.Supp. 1012, 1017 (E.D.N.Y.1996).

17

The JDLA contains an explicit provision limiting each party's liability for "ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT, EVEN IF THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES . . . [including but not limited to] *LOSS OF PROFITS*, LOSS OF SAVINGS, LOSS OF USE OR PUNITIVE DAMAGES." (RJN Exh. A § 3.2) (capitalization in original, emphasis added). Not only did the parties – both of whom are highly sophisticated business entities – not reasonably contemplate recovery for consequential damages, they demonstrated their unmistakable intent to bar such recovery. *Sayers*, 7 F.3d at 1094 (2d Cir. 1993) ("The primary objective in contract interpretation is to give effect to the intent of the contract parties *as revealed by the language they chose to use.*") (emphasis added, internal quotations and citations omitted).

In describing its alleged damages under the first breach of contract claim, Netlist states that "[it] could not supply its customers and lost business opportunities and profits it otherwise would have earned." (Dkt. No. 18-2 ¶ 14). These are plainly consequential damages, explicitly carved out from recovery under the JDLA by the Parties. Thus, to the extent it seeks such consequential damages, Netlist's first breach of contract claim should be dismissed.[7]

For these reasons, Samsung is entitled to judgment on the pleadings on Netlist's first breach of contract claim.

---

[7] In the alternative, Samsung moves for the Court to strike any allegations seeking consequential damages from the FAC. Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.")

3714154.6

18

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

## C. SAMSUNG IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON NETLIST'S SECOND BREACH OF CONTRACT CLAIM BECAUSE THE TAX WITHHOLDING WAS LAWFUL UNDER KOREAN LAW.

Section 3.2 of the JDLA permits Samsung to "deduct any applicable withholding taxes due or payable under the laws of Korea in remitting payment to Netlist under this Agreement." (RJN Exh. A § 3.2). Thus, in order to adequately plead a breach of Section 3.2, Netlist must allege a cognizable theory as to how Samsung's 16.5% withholding violated Korean law. *See Caltex Plastics, Inc. v. Lockheed Martin Corporation*, 824 F.3d 1156, 1159 (9th Cir. 2016) (dismissal for failure to state a claim proper when complaint "fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories").

The FAC alleges no such theory. Instead, it merely presents the unsupported legal conclusion that "on information and belief, the $8 million payment to Netlist was not properly taxable in Korea." (Dkt. No. 18-2 ¶ 16). There is no information whatsoever in the FAC that puts Samsung on notice of what Korean law Netlist alleges that it violated by withholding the 16.5%, and on what basis it may defend itself against such allegations. Therefore, Netlist's second breach of contract claim is deficient on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Moreover, Netlist fails to allege a specific legal violation because one does not exist: an analysis of the relevant Korean law demonstrates that Samsung's withholding was legal. When ruling on issues of foreign law, courts may "consider any relevant material or other source . . . whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Per this Rule, a foreign law issue is considered a question of law, and therefore should be adjudicated in the context of the instant motion. *See de Fontbrune v. Wofsy*, 838

F.3d 992, 995-96 (9th Cir. 2016) ("courts do not transgress the broad boundaries established by Rule 44.1 when considering foreign legal materials . . . at the pleading stage[.]" )

Samsung's withholding was lawful, as Korean law imposes tax liability on payments for the transfer of "patent rights . . . [or] information and know-how" paid to foreign corporations, so long as the rights, information, or know-how are used in Korea, *or* the payment itself is made in Korea. (RJN Exh. B art. 93, subpara. 8). The JDLA describes the $8 million payment as a "NRE [non-recurring engineering] fee." (Dkt. No. 18-2 ¶ 15). This indicates that the payment was made in exchange for Netlist's engineering expertise, whether in the form of patent rights or non-patent "industrial, commercial, or scientific knowledge and experience." (RJN Exh. B art. 93, subpara. 8). The payment was made in Korea (by Samsung), and the expertise was used in Korea (also by Samsung).

Because Netlist is a U.S. corporation, their income tax for these payments is capped at 15%.[8] Added to this 15% is a 1.5% local government tax withholding mandated by Korean law, (RJN Exh. C. art. 103-13, para. 1),[9] for a total of 16.5% – the exact withholding alleged in the FAC. (Dkt. No. 18-2 ¶ 18). Accordingly, Samsung's 16.5% withholding was lawful. As such, Samsung's representation that it properly withheld taxes cannot constitute a "fail[ure] to reasonably cooperate with Netlist" as it sought a refund. (Dkt. No. 18-2 ¶ 17).

Netlist's other allegation that Samsung failed to "reasonably cooperate" is too vague and conclusory to support a claim. Netlist contends that Samsung "delayed"

---

[8]     Convention for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and the encouragement of international trade and investment, U.S.–R.O.K., art. 14, para. 1, June 4, 1976, 30 U.S.T. 5253.

[9]     Jibangsaebeob [Local Tax Act], Act No. 17769, amended December 31, 2018, *available at* https://elaw.klri.re.kr/kor_service/lawView.do?hseq=50974&lang=ENG

1   or "declined" to provide cooperation, and was not "forthcoming to Netlist regarding

2   what it has done or could do to help." (Dkt. No. 18-2 ¶ 17). This is little more than a

3   conclusory restatement of the contractual language – in other words, Netlist is

4   saying that Samsung failed to reasonably cooperate because it failed to reasonably

5   cooperate. "[C]onclusory allegations are insufficient to support a claim for breach of

6   contract." *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962,

7   981 (C.D. Cal. 2014). Moreover, these allegations are rendered a nullity due to lack

8   of actual damages. "[C]onclusory and vague allegations are not sufficient to

9   establish . . . actual damages to support [a] breach of contract claim." *See Holly v.*

10  *Alta Newport Hospital, Inc.*, 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020).

11  Here, Netlist offers no facts whatsoever that demonstrate that it was damaged

12  specifically by any conduct by Samsung – reasonable or otherwise – that post-dates

13  the initial withholding. Netlist does not, for example, allege that the lack of

14  cooperation impeded its efforts to obtain a refund from Korean tax authorities in any

15  way.

16          Therefore, Samsung is entitled to judgment on the pleadings on Netlist's

17  second breach of contract claim.

18      **D.    SAMSUNG IS ENTITLED TO JUDGMENT ON THE**

19              **PLEADINGS ON NETLIST'S DECLARATORY RELIEF**

20              **CLAIM.**

21          The JDLA permits termination for cause only when a "[p]arty is in material

22  breach of this Agreement and it is not cured within thirty (30) days period from the

23  other party's written demand[.]" (RJN Exh. A. § 13.2). As such, Netlist's

24  declaratory relief claim rises and falls with its two breach of contract claims. As

25  both claims are invalid for the reasons discussed above, Netlist's declaratory relief

26  claim fails as well.

27          Moreover, even assuming *arguendo* that Netlist properly alleges breach of

28  contract claims, it cannot terminate on that basis because it has long since elected an

1 alternative remedy – to continue on with the JDLA. As of a matter of law,

2 termination on the basis of material breaches "must be sought promptly." *Dun &*

3 *Bradstreet Corp. v. Harpercollins Publishers, Inc.*, 872 F. Supp. 103, 110 (S.D.N.Y.

4 1995). Thus, the doctrine of election dictates that a non-breaching party that chooses

5 to continue with a contract despite the other party's material breach waives its right

6 to terminate. *See, e.g., Calvin Klein Trademark Trust v. Wachner*, 129 F. Supp. 2d

7 254, 258 (S.D.N.Y.2001) (non-breaching party waived right to terminate by

8 continuing to accept royalties); *Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1011–

9 12 (S.D.N.Y.1995) (employee waived right to terminate by continuing to accept

10 salary); *ESPN*, 76 F. Supp.2d at 391-92 ("***allowing [non-breaching party] to now***

11 ***terminate the contract based on breaches that occurred almost two years ago***

12 ***would violate important principles of contract law[.]***") (internal quotations omitted)

13 (emphasis added).

14       Pursuant to Netlist's own allegations in the FAC, the tax withholding

15 occurred "shortly after entering the JDLA[,]" (Dkt. No. 18-2 ¶¶ 16) presumably in

16 late 2015 or in early 2016 at the latest. Netlist claims that this was a material breach,

17 yet it chose not to terminate the JDLA. Aside from two conclusory, unsupported

18 allegations that Samsung's breach of Section 6.2 continues to the present (*Id.* ¶ 13,

19 27) – recitations so nakedly perfunctory that their inclusion itself betrays Netlist's

20 furtive attempt to make an end-run around the doctrine of election – Netlist's

21 allegations that Samsung failed to supply products are limited to the first quarter of

22 2018. (*Id.* ¶ 12). According to Netlist, this was also a material breach. Yet again, it

23 did not terminate.

24       Having chosen to continue on with the JDLA – and to reap the resulting

25 benefits – for years after the purported material breaches, Netlist cannot go back on

26 its decision now in a belated effort to get out of its bargain. Accordingly, Samsung

27 is entitled to judgment on the pleadings on Netlist's declaratory judgment claim.

28

## E.   THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

"Courts have discretion to grant leave to amend in conjunction with Rule 12(c) motions[.]" *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997), *aff'd*, 237 F.3d 1026 (9th Cir. 2001) (internal quotation marks omitted). While courts generally grant leave to amend freely "when justice so requires[,]" Fed. R. Civ. P. 15, "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). In particular, leave may be denied on the basis of "futility of amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Amendment is futile when "the complaint [cannot] be saved by amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir.1991), and "futility alone can justify a court's refusal to grant leave to amend." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015).

Netlist has already had one opportunity to amend its complaint. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) (district courts have "wide discretion in granting or refusing leave to amend after the first amendment") (internal quotations omitted). Further amendment would be futile, as the text of the JDLA and the operation of the relevant Korean statutes are clear. No matter how many times Netlist amends its complaint, both of its contract claims are destined to fail as a matter of law: Netlist cannot alter the JDLA's plain language, nor can it rewrite Korean tax statutes. *See, e.g.*, *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (denying leave to amend on basis that applicable statutes could not give rise to cause of action "no matter what facts are alleged"); *Leadsinger*, 512 F.3d at 532 (amendment was futile because Plaintiff's legal theory was plainly non-viable under Copyright Act).

Netlist can allege no set of facts that would make their claims legally viable. Another opportunity to amend will accomplish nothing other than subjecting

Case 8:22-cv-00293-MCS-DFM Document 304-1 Filed 11/03/24 Page 573 of Page ID #:24
Case 8:22-cv-00293-MCS-DFM Document 314-50-1 Filed 01/03/24 Page 572 of 25 Page ID #:24
Page 7567:309

1  Samsung to further prejudice as it will have to put its resources into yet again

2  defending itself against the same doomed claims. Accordingly, the Court should

3  grant judgment for Samsung without leave to amend.

4  **IV.    CONCLUSION**

5       For the foregoing reasons, Samsung respectfully requests that the Court grant

6  judgment on the pleadings in its favor with regards to Netlist's First Amended

7  Complaint, in its entirety, and without leave to amend.

8

9  DATED:  June 15, 2021          Ekwan E. Rhow
                                   Marc E. Masters
10                                 Kate S. Shin
                                   Christopher J. Lee
11                                 Bird, Marella, Boxer, Wolpert, Nessim,
                                   Drooks, Lincenberg & Rhow, P.C.
12

13

14

15                                 By: _____

16                                         Ekwan E. Rhow
                                   Attorneys for Defendant Samsung
17                                 Electronics Co., Ltd.

18

19

20

21

22

23

24

25

26

27

28