# Exhibit 38
Filed Under Seal

1  Ekwan E. Rhow - State Bar No. 174604
   erhow@birdmarella.com
2  Marc E. Masters - State Bar No. 208375
   mmasters@birdmarella.com
3  Kate S. Shin - State Bar No. 279867
   kshin@birdmarella.com
4  Christopher J. Lee - State Bar No. 322140
   clee@birdmarella.com
5  Jong-min Choi - State Bar No. 329474
   jmchoi@birdmarella.com
6  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW, P.C.
7  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
8  Telephone: (310) 201-2100
   Facsimile: (310) 201-2110
9
   Attorneys for Defendant Samsung
10 Electronics Co., Ltd.

11

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14

15 | NETLIST INC., a Delaware corporation, | CASE NO. 8:20-cv-00993-MCS-ADS |

16 | Plaintiff, | **DEFENDANT SAMSUNG** |

17 | vs. | **ELECTRONICS CO., LTD.'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS** |

18 | SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,, | **AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR** |

19 | Defendant. | **SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL** |

20 | | **SUMMARY JUDGMENT** |

21 | | [*Filed Concurrently with Notice of Motion and Motion for Summary Judgment or in the Alternative, Partial Summary Judgment; Declaration of Joyce J. Choi; [Proposed] Judgment*] |

22

23

24 | | Date:     September 20, 2021
       Time:     9:00 a.m.
25     Crtrm.:   7C

26 | | Assigned to Hon. Mark C. Scarsi
       Courtroom 7C

27

28

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Pursuant to Local Rule 56-1 and the Initial Standing Order for Civil Cases Assigned to Judge Mark C. Scarsi, Defendant Samsung Electronics Co., Ltd. hereby submits the following Proposed Statement of Uncontroverted Facts and Conclusions of Law in Support of Defendant's Motion For Summary Judgment, or in the Alternative, Summary Adjudication.

## STATEMENT OF UNCONTROVERTED FACTS

**Samsung Is Entitled to Judgment on Plaintiff's First Cause of Action for Breach of Contract (Supply)**

**1.  Section 6.2 Is Limited To the Supply And Pricing Of Components For The Joint Development Project**

**a.  The Parties' Long Standing Business Relationship Involved $200 Million of Purchases Over 15 Years**

| Defendant's Undisputed Facts | Supporting Evidence |
|---|---|
| 1. Netlist has been a customer of Samsung since at least 2001, purchasing over $200 million of products, including NAND and DRAM components. | Declaration of Joyce J. Choi filed concurrently herewith ("Choi Decl.") ¶ 2, Exh. 1 at p. SEC008161; ¶ 3, Exh. 2 at 11:21-12:12, 13:10-20, 14:8-15. |
| 2. Both before and after the JDLA and to the present, Samsung has been a significant and continuous supplier of NAND and DRAM to Netlist, as reflected in Netlist's annual reports. | Choi Decl. ¶ 4, Exh. 3 at p.6; ¶ 5, Exh. 4 at p.8; ¶ 6, Exh. 5 at 294:4-18; ¶ 7, Exh. 6 at p.F-36; ¶ 3, Exh. 2 at 185:10-186:1, 187:21-188:5. |
| 3. Netlist also purchased NAND and DRAM products from SK Hynix and Micron, as well as from sellers who purchased the products from the | Choi Decl. ¶ 4, Exh. 3 at  p.6; ¶ 6, Exh. 5 at 194:2-22, 294:4-18; ¶ 3, Exh. 2 at 205:23-206:18, 207:21-208:10. |

3783.16 3742471.2

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| manufacturers for resale. | |
| 4. The amount of NAND and DRAM product that Samsung can manufacture for sale is limited and demand for its products oftentimes exceeds available supply. | Choi Decl. ¶ 8, Exh. 7 at 121:24-122:13; Dkt. 89-21 at ¶ 4. |
| 5. Due to the nature of the industry, Netlist, like other customers, provides Samsung with forecasts of the amount of product it wishes to purchase, and Samsung lets Netlist know how much product it can allocate to Netlist for purchase. | Choi Decl. ¶ 9, Exh. 8; ¶ 10, Exh. 9; ¶ 3, Exh. 2 at 35:10-36:13, 37:9-22, 61:25-62:5. |
| 6. Following these discussions regarding allocations and availability, Netlist issued purchase orders for specific amounts of product that Samsung approved beforehand. | Choi Decl. ¶ 12, Exh. 11 at 23:23-24:5; ¶ 3, Exh. 2 at 62:6-14; ¶ 13, Exh. 12 at 28:4-25. |
| 7. Samsung accepted and fulfilled some of the purchase orders, put some on backlog, and rejected others, just as it did with other customers. | Choi Decl. ¶ 12, Exh. 11 at 36:8-11; Choi Decl. ¶ 3, Exh. 2 at 45:2-46:8, 62:6-14. |
| 8. This business protocol—the use of backlogs, forecasts, allocations, and purchases orders—remained the same throughout the parties' long standing business relationship and even after the | Choi Decl. ¶ 3, Exh. 2 at 47:24-50:6, 62:6-14; ¶ 14, Exh. 13 at p.NL004680. |

3783.16 3742471.2

3

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| JDLA was executed. | |

### b. The JDLA Involved Joint Development of a "Game Changing" Product Based On the NVDIMM-P Standard

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 9. In early 2015, Netlist approached Samsung to discuss a strategic partnership involving joint development of a product based on a new standard called NVDIMM-P and licensing of Netlist's patents. | Choi Decl. ¶ 15, Exh. 14 at p. 13, RFA No. 18 . |
| 10. The NVDIMM-P-related product was a "game changer" according to Chuck Hong and, based on presentation materials, was designed to take market share in a $15 billion industry. | Choi Decl. ¶ 8, Exh. 7 at 139:7-25; ¶ 17, Exh. 16 at SEC008159. |
| 11. At that time, Netlist also raised a licensing component and the potential that Samsung would be subject to an injunction for infringement of Netlist's patents. | Choi Decl. ¶ 18, Exh. 17 at NL107807; ¶ 8, Exh. 7 at 42:4-14. |
| 12. Around this time, Netlist was having cash flow issues. | Choi Decl. ¶ 19, Exh. 18 at F-7. |
| 13. On November 12, 2015, after months of negotiations, Samsung and Netlist entered into the JDLA. | Choi Decl. ¶ 20, Exh. 19 at p. 1. |

| | |
|---|---|
| 14. The structure and terms of the JDLA reflect that the parties intend "to work together to jointly develop an interface and associated technologies for certain memory modules and promote such interface to standards-setting organizations." | Choi Decl. ¶ 20, Exh. 19 at p. 1. |
| 15. The "Developed Product" in the JDLA means an NVDIMM-P Product developed by the Parties hereunder pursuant the Statement of Work that meets the Product Specifications. | Choi Decl. ¶ 20, Exh. 19 at p. 2. |
| 16. The JDLA also includes a grant of cross-licenses and a release of threatened claims. | Choi Decl. ¶ 20, Exh. 19 at p. 7, § 7. |
| 17. The JDLA states that Netlist was to receive $8 million for non-recurring engineering on the NVDIMM-P development work, and concurrently with the JDLA, provide an additional $15 million convertible loan at 2% interest that allowed Netlist to pay off existing debt with less favorable financial terms. | Choi Decl. ¶ 20, Exh. 19 at p. 5, § 3.1; ¶ 21, Exh. 20 at p. 2; ¶ 22, Exh. 21 at NL069669, § II.7. |
| 18. In addition to its receipt of cash and financing from Samsung, Netlist stood to benefit from the relationship, especially if the parties were able to develop this | Choi Decl. ¶ 8, Exh. 7 at 31:9-12, 33:12-34:6, 79:6-80:23, 139:7-25. |

3783.16 3742471.2

5

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| "game changing" standard for NVDIMM-P and produce a commercially feasible product under this standard. | |
| 19. The terms of the JDLA seek to implement these objectives, including terms for the collaborative development work in accordance with product specification and development milestones and a Statement of Work (Section 2, Appendices A and B); development costs (Section 3); IPR ownership (Section 4); schedule for standardization and productization (Section 5); supply (Section 6); a mutual release of claims (Section 7); and licensing of intellectual property (Section 8). | Choi Decl. ¶ 20, Exh. 19 at pp. 4-8. |

      **c.**     **Section 6.2 Is Limited To Joint Development Work Under The JDLA**

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 20. Pursuant to the JDLA, Samsung and Netlist agreed to supply components to each other for the NVDIMM-P product which they had agreed to jointly develop and therefore did not yet exist. Specifically, Section 6.1 states: "Supply by | Choi Decl. ¶ 20, Exh. 19 at p. 6, §§ 6.1, 6.2. |

3783.16 3742471.2

| | |
|---|---|
| <mark>Netlist. Netlist will provide Samsung any NVDIMM-P controller on Samsung's request at a price lower than the price Netlist provides to any other buyer."</mark> Section 6.2, the parallel provision, states: <mark>"Supply by Samsung. Samsung will supply NAND and DRAM products to Netlist on Netlist's request at a competitive price (i.e., among customers purchasing similar volumes of similar products)."</mark> | |
| 21. <mark>Samsung's supply obligations would only arise if and to the extent that the NVDIMM-P product was commercialized but this never occurred.</mark> | Choi Decl. ¶ 8, Exh. 7 at 31:9-12, 80:13-23, 92:4-12, 109:9-110:1, 116:3-9; ¶ 22, Exh. 21 at NL069668-69. |

### d. The Negotiating History Shows That Section 6.2 Is Limited To Joint Development

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 22. Netlist's first proposal to Samsung in April 2015 focused on the cash consideration, and did not mention a long term supply agreement. <mark>(" Q Now, at least on this proposal, Netlist didn't list supply as a component of the deal; correct? A Yes, it's not here.")</mark> | Choi Decl. ¶ 18, Exh. 17 at pp. 2-4; ¶ 18, Exh. 17 at NL107807; ¶ 8, Exh. 7 at 51:3-52:18. |
| 23. When Netlist sent Samsung the first | Choi Decl. ¶ 23, Exh. 22; ¶ 24, Exh. 23 |

3783.16 3742471.2

Case 8:22-cv-00293-MRG-ADS Document 314-17 Filed 01/16/24 Page 921 of 27 Page ID #5519
Case 2:22-cv-00293-JRG-ADS Document 314-17 Filed 01/03/24 Page 172 of 27 Page ID #65519
Page 175 #65519

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | draft of the term sheet on April 21, 2015, Netlist proposed, as part of the "Joint development and marketing" for the "Technology Collaboration," that Samsung supply NAND and DRAM product. | at § II. |
| 7<br>8<br>9<br>10<br>11<br>12 | 24. In Netlist's June 9, 2015 revision to the term sheet, under the heading "Technology Collaboration," Netlist proposed: "Raw Materials: Samsung will supply NAND, DRAM on mutually agreed terms." | Choi Decl. ¶ 25, Exh. 24, § II.5. |
| 13<br>14<br>15<br>16<br>17 | 25. Netlist CEO Chuck Hong testified that "Technology Collaboration" in Netlist's revised term sheet referred to the parties' joint efforts to standardize NVDIMM-P. | Choi Decl. ¶ 8, Exh. 7 at 91:4-17. |
| 18<br>19<br>20<br>21<br>22<br>23 | 26. Netlist CEO Chuck Hong testified that the "Raw Materials" in Netlist's revised term sheet referred to various DRAM and NAND flash components necessary for the parties' joint efforts to standardize NVDIMM-P. | Choi Decl. ¶ 8, Exh. 7 at 92:4-12. |
| 24<br>25<br>26<br>27 | 27. In Netlist's June 25, 2015 updated term sheet, under the heading "Phase 2: Technology Productization," Netlist proposed: "1. Parties will work together | Choi Decl. ¶ 26, Exh. 25 at NL005090, NL005092. |
| 28 | | |

3783.16 3742471.2

8

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| to bring an NVDIMM-P product to market. Details of the technical collaboration to be negotiated at a later date" and "Raw Materials: Samsung will supply NAND and DRAM on mutually agreed terms." | |
| 28. CEO Chuck Hong testified that the "Raw Materials" in Netlist's updated term sheet referred to various DRAM and NAND flash components necessary for commercialization of the NVDIMM-P product which the parties were developing. | Choi Decl. ¶ 8, Exh. 7 at 101:25-102:7. |
| 29. In the drafts leading up to the final and executed MOU, Netlist understood that Samsung's supply obligations would only arise in the event of commercialization of the NVDIMM-P product subject to the parties' joint development but this never occurred. | Choi Decl. ¶ 8, Exh. 7 at 104:6-24. |
| 30. Netlist CEO Chuck Hong testfied that Netlist's intent underlying the MOU was to get Samsung's commitment to supply NAND and DRAM products for the NVDIMM-P product so that Netlist would have sufficient supply if and when it was able to commercialize the | Choi Decl. ¶ 8, Exh. 7 at 109:9-110:1. |

3783.16 3742471.2

9

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1 | technology. | |
| 2 | 31. According to Chuck Hong, | Choi Decl. ¶ 8, Exh. 7 at 79:13-80:23, |
| 3 | NVDIMM-P was "industry changing" | 139:7-141:6. |
| 4 | technology and Netlist's attempt to | |
| 5 | standardize a NVDIMM-P product was a | |
| 6 | significant business opportunity and one | |
| 7 | that Netlist had invested more than $10 | |
| 8 | million in engineering costs into. | |
| 9 | 32. The MOU reflected both parties' | Choi Decl. ¶ 8, Exh. 7 at 31:9-12, 80:13- |
| 10 | intent on the important points of the | 23, 92:4-12, 109:9-110:1, 116:3-9; ¶ 22, |
| 11 | parties' agreement. | Exh. 21 at NL069668-69. |
| 12 | Section 6 of the MOU states in full | |
| 13 | (emphasis added): | |
| 14 | 6.  Most Favored Nation | |
| 15 | (MFN): Netlist will provide | |
| 16 | Samsung any NVDIMM-P* | |
| 17 | controller at a price lower | |
| 18 | than the price Netlist | |
| 19 | provides to any other buyer. | |
| 20 | Either party may produce | |
| 21 | NVDIMM-P controller | |
| 22 | using its own technology | |
| 23 | and has no obligation to | |
| 24 | buy from the other party. | |
| 25 | *Raw Materials: Samsung will* | |
| 26 | *provide competitive pricing (i.e.* | |
| 27 | *among customers purchasing the* | |
| 28 | | |

3783.16 3742471.2

10

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | | |
|---|---|---|
| *same products and similar volumes) for the supply of Samsung NAND and DRAM products.* As to the MOU, Chuck Hong again testified in deposition that section 6.2 limited Samsung's supply obligation to the NVDIMM-P development and that this obligation would arise only if and to the extent that the NVDIMM-P product was ever commercialized. | | |
| 33. On October 8, 2015, when the parties began drafting the JDLA from the MOU, Samsung proposed the following language to Netlist: "6.2 Supply by Samsung. Samsung will supply NAND and DRAM to Netlist on Netlist's request at a competitive price similar to the customers purchasing similar volumes of similar products. For the avoidance of doubt, any of the provisions under this Agreement will not be deemed to require Netlist to purchase any products from Samsung or to require Samsung to supply any products to Netlist." | Choi Decl. ¶ 27, Exh. 26 at p. 1; ¶ 28, Exh. 27 at p. 5, § 6.2. | |
| 34. Whitley was Netlist's main | Choi Decl. ¶ 8, Exh. 7 at 130:6-24. | |

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| 1 | contributor to the JDLA. | |
|---|---|---|
| 2 | 35. On October 14, 2015, as to the new | Choi Decl. ¶ 29, Exh. 28 at p. 2; ¶ 30, |
| 3 | Section 6.2 of its proposed JDLA, | Exh. 29 at p. 1; ¶ 31, Exh. 30 at p. 5; |
| 4 | Whitley wrote in bold "**Conflicts with** | ¶ 32, Exh. 31 at NL118147 and |
| 5 | **MOU**" and "Samsung states that nothing | NL118149. |
| 6 | in this agreement will 'require Samsung | |
| 7 | to supply any products to Netlist.' Netlist | |
| 8 | removed this qualification and returned | |
| 9 | the language to reflect what was agreed | |
| 10 | to in the MOU." Samsung agreed to this | |
| 11 | change. | |
| 12 | 36. As expressed by Whitley, it was | Choi Decl. ¶ 29, Exh. 28 at p. 2.; |
| 13 | Netlist's position that the MOU should | ¶ 8, Exh. 7 at 130:6-132:10. |
| 14 | govern the supply term.  As set forth in | |
| 15 | SUF nos. 20 and 31, the MOU only | |
| 16 | required that Samsung supply product in | |
| 17 | the event that the NVDIMM-P product | |
| 18 | was ever commercialized. | |
| 19 | 37. Netlist wanted Samsung's assurance | Choi Decl. ¶ 8, Exh. 7 at 80:13-23. |
| 20 | that it would supply NAND and DRAM | |
| 21 | to support NVDIMM-P sales if the joint | |
| 22 | development proved successful, and | |
| 23 | demand for the product took off. | |
| 24 | 38. During the contract negotiations, | Choi Decl. ¶ 33, Exh. 32 at p. 1. |
| 25 | Netlist's CFO Gail Sasaki wrote to | |
| 26 | Samsung: "Both sides understood from | |
| 27 | the outset that this was a strategic deal, | |
| 28 | | | |

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| not a financial one. *The value that would be transferred and created resided in the patents and the technology.*" | |

e. **Netlist Admits JDLA Is Not A Contract to Supply DRAM and NAND Beyond Joint Development**

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 39. In his declaration to this Court, Netlist CEO Chuck Hong indicated that the purported supply arrangement that Netlist is litigating was "crucial" and "critical." | Dkt. 89-21 at ¶¶ 4, 5. |
| 40. Netlist disclosed an agreement with SK Hynix on April 5, 2021, stating that contract "entitles Netlist to purchase up to $600,000,000 of SK Hynix memory products during the term . . ." | Choi Decl. ¶ 34, Exh. 33 at p. 2. |
| 41. Netlist CEO Chuck Hong's presentation to the Board in November 2015, prepared by Netlist CFO Gail Sasaki, describes the technology collaboration and the cross-licensing of patents but makes no mention of Netlist's supposed broad supply agreement. | Choi Decl. ¶ 35, Exh. 34 at p. 1; 36, Exh. 35 at p. 1. |
| 42. In its first annual report following the | Choi Decl. ¶ 19, Exh. 18 at p. 13. |

3783.16 3742471.2

13

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1 | JDLA, Netlist disclosed the risks | |
| 2 | associated with not having a supply | |
| 3 | contract: | |
| 4 | "Our ability to fulfill customer orders or | |
| 5 | produce qualification samples is | |
| 6 | dependent on a sufficient supply of field | |
| 7 | programmable gate arrays ("FPGAs"), | |
| 8 | DRAM ICs and NAND flash, which are | |
| 9 | essential components of our memory | |
| 10 | subsystems. There are a relatively small | |
| 11 | number of suppliers of FPGAs, DRAM | |
| 12 | ICs and NAND flash, and we purchase | |
| 13 | from only a subset of these suppliers. *We* | |
| 14 | *have no long-term FPGA, DRAM or* | |
| 15 | *NAND flash supply contracts.*" (emphasis | |
| 16 | added) | |
| 17 | 43. Netlist repeatedly and consistently | Choi Decl. ¶ 74, Exh. 73 at p. 18; ¶ 75, |
| 18 | disclosed the risks associated with not | Exh. 74 at p. 22; ¶ 4, Exh. 3 at p. 14; ¶ |
| 19 | having a long-term supply contract for | 37, Exh. 36 at p. 14; ¶ 19, Exh. 18 at p. |
| 20 | DRAM and NAND in its annual reports | 13; ¶ 38, Exh. 37 at p. 19; ¶ 7, Exh. 6 at |
| 21 | before and after execution of the JDLA, | p. 20; ¶ 5, Exh. 4 at p. 22; ¶ 39, Exh. 38 |
| 22 | each time stating that Netlist had "no | at p. 20; ¶ 40, Exh. 39 at p. 15. |
| 23 | long-term supply contracts" for these | |
| 24 | products. | |
| 25 | 44. ==A November 2, 2015 press release== | Choi Decl. ¶ 41, Exh. 40 at pp. 2-5. |
| 26 | ==announcing the JDLA that Netlist was== | |
| 27 | ==preparing had a headline stating "Netlist== | |
| 28 | | |

3783.16 3742471.2

14

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | | |
|---|---|---|
| and Samsung Announce Strategic Alliance To Commercialize the First Unified Memory-Storage Architecture" and makes no mention of a supply agreement. | | |
| 45. At a February 21, 2017 meeting, Netlist asked Samsung for a "New Partner Type" relationship that would require Samsung to provide "Product Allocation support for Netlist" and an "Official-Distributor Partnership Agreement." When Netlist made this ask, Samsung told Netlist that the JDLA was not an avenue to support Netlist's standard products. | Choi Decl. ¶ 17, Exh. 16 at SEC008148, SEC008169; ¶ 42, Exh. 41 at p. 3; ¶ 43, Exh. 42 at 43:22-45:3. | |

f.     **The Parties' Course of Conduct Shows That Samsung Had No Obligation To Supply All Chips At Request**

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 46. Netlist received all of the chips it needed to complete the initial phase of the NVDIMM-P product under the JDLA. | Choi Decl. ¶ 8, Exh. 7 at 88:10-89:5. |
| 47. The NVDIMM-P product was never commercialized. | Choi Decl. ¶ 8, Exh. 7 at 109:21-110:1. |
| 48. Samsung's performance was | Choi Decl. ¶ 3, Exh. 2 at 52:21-53:10; |

| | |
|---|---|
| satisfactory in 2015, 2016 and into 2017. | ¶ 44, Exh. 43 at ¶ 4; ¶ 45, Exh. 44 at ¶ 7. |
| 49. In 2015, 2016 and into 2017, Samsung did not fulfill all of Netlist's requested orders. | Choi Decl. ¶ 3, Exh. 2 at 54:24-55:10; ¶ 44, Exh. 43; ¶ 46, Exh. 45; ¶ 47, Exh. 46; ¶ 48, Exh. 47; ¶ 49, Exh. 48; ¶ 50, Exh. 49<br><br>¶ 8, Exh. 7 at 122:20-123:5, 152:15-24; ¶ 51, Exh. 50; ¶ 55, Exh. 51 |
| 50. For all orders both before and after the JDLA, Netlist has always used purchase orders. | Choi Decl. ¶ 3, Exh. 2 at 29:7-24, 47:24-48:18; ¶ 13, Exh. 12 at 151:5-19; |
| 51. Netlist's purchase orders indicate as follows:<br><br>1. Acceptance<br><br>The terms and conditions hereof become the exclusive and binding agreement between the parties covering the purchase of goods or services ordered herein when this purchase order is accepted by acknowledgment or commencement of performance. This order may be accepted only on these terms and conditions.<br><br>[…]<br><br>12. Entire Agreement<br><br>This agreement sets forth the entire agreement between parties with respect to the subject matter hereof and supersedes all prior agreements and discussion between them. No modification or amendment here will be effective unless in writing and signed by a daily authorized representative of each party. Any terms and conditions set forth in any order confirmation or acknowledgement or any other documents shall be of no force or effect whatsoever. | Choi Decl. ¶ 53, Exh. 52 at NL002028-29; ¶ 13, Exh. 12 at 151:5-19; ¶ 3, Exh. 2 at 29:7-24, 47:24-48:18. |

3783.16 3742471.2

16

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| All of Netlist's purchase orders contain the same terms and conditions for all its purchases from Samsung. | |
| 52. After the JDLA, Samsung continued to supply Netlist with NAND and DRAM outside of the joint development context. | Choi Decl. ¶ 3, Exh. 2 at 47:24-50:6, 54:24-55:10, 183:3-15, 184:8-20. |
| 53. Samsung's sales to Netlist have continued from 2001 to the present day, according to the same course of dealing that existed before the JDLA, after the JDLA, and continue to this day after Netlist purported to terminate the JDLA and filed this lawsuit. | Choi Decl. ¶ 21, Exh. 11 at 25:6-25, 201:9-18; ¶ 3, Exh. 2 at 27:21-28:12, 35:23-36:13, 37:18-22, 47:24-50:4, 183:3-15, 184:8-20. |
| 54. Netlist understood that the JDLA did not guarantee it access to all of the Samsung product it requested, but only the product that Samsung actually agreed to sell. | Choi Decl. ¶ 3, Exh. 2 at 47:24-50:6, 54:24-55:10, 91:10-93:24, 94:6-21, 183:3-15, 184:8-20; ¶ 53, Exh. 52 at NL002024-2027; ¶ 54, Exh. 53 at pp. 1, 2; ¶ 46, Exh. 45; ¶ 49, Exh. 48. |
| 55. Due to Samsung needing led time for production, Netlist submitted forecasts of its requests, and discussed with Samsung how much material would be allocated and made available to it. | Choi Decl. ¶ 3, Exh. 2 at 48:10-12.; Choi Decl. ¶ 13, Exh. 12 at 152:5-153:24; |
| 56. Netlist only submitted purchase | Choi Decl. ¶ 12, Exh. 11 at 23:23-24:5; |

3783.16 3742471.2

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1 | orders for specific quantities of product after Samsung indicated that such product would be available. | ¶ 3, Exh. 2 at 62:6-14, 93:18-24.; Choi Decl. ¶ 13, Exh. 12 at 154:3-20 |
| 4 | 57. According to their own terms, Netlist's purchase orders superseded any prior agreements or discussions with Samsung, such as forecasts and informal e-mail or oral requests to purchase product. | Choi Decl. ¶ 55, Exh. 54 at pp. 3, 6, 9, § 28; ¶ 53, Exh. 52 at NL002029. |
| 10 | 58. Netlist purchased a substantial amount of NAND and DRAM from Samsung in each quarter from November 2015 to the present, although the amounts varied over time. | Choi Decl. ¶ 51, Exh. 50 at F-36, F-34, F-36, F-36, F-36, 77; ¶ 52, Exh. 51; Choi Decl. ¶ 3, Exh. 2 at 186:16-188:5; ¶ 7, Exh. 6 at p.8. |
| 15 | 59. ==Samsung supplied to Netlist despite repeated credit issues and cancelled orders by Netlist.== | Choi Decl. ¶ 13, Exh. 12 at 40:17-42:6; ¶ 56, Exh. 55 at NL008985; ¶ 57, Exh. 56 at NL041573; Choi Decl. ¶ 3, Exh. 2 at 142:15-25; ¶ 56, Exh. 55 at NL008985; *see also* SUF Nos. 62-64, *infra*. |

**g.    Netlist Did Not Fully Perform Its Obligations**

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 60. Netlist abandoned the NVDIMM-P standardization project and moved to a different product and never obtained a written amendment to the JDLA | Choi Decl. ¶ 58, Exh. 57 at 45:4-49:3.; Choi Decl. ¶ 8, Exh. 7 at 198:21-199:13. |

| | | |
|---|---|---|
| 1 | allowing this alteration. | |
| 2 | 61. In 2017, Netlist asked Samsung for | Choi Decl. ¶ 3, Exh. 2 at 195:10-12. |
| 3 | Embedded MultiMediaCard (eMMC) | |
| 4 | supply. | |
| 5 | 62. Samsung does not normally sell | Choi Decl. ¶ 11, Exh. 10 at 63:17-64:16, |
| 6 | eMMC to channel distributors like | 85:17-87:2 |
| 7 | Netlist, but, after CEO Chuck Hong | |
| 8 | asked President Jun for support, | |
| 9 | Samsung agreed to support Netlist's | |
| 10 | requests. | |
| 11 | 63. Samsung allocated a significant | Choi Decl. ¶ 11, Exh. 10 at 85:17-87:2 |
| 12 | amount of EMMC product to Netlist for | |
| 13 | 2017, much of which been allocated to | |
| 14 | another customer. | |
| 15 | 64. After purchases orders had been | Choi Decl. ¶ 3, Exh. 2 at 194:8-196:10; |
| 16 | submitted and prices for eMMC dropped | ¶ 59, Exh. 58 at NL000091. Choi Decl. |
| 17 | unexpectedly in the second half of 2017, | ¶ 11, Exh. 10 at 85:17-87:2; Choi Decl. ¶ |
| 18 | Netlist cancelled half of its eMMC order. | 8, Exh. 7 at 164:11-21 |
| 19 | Netlist CEO Chuck Hong testified that | |
| 20 | cancelling a purchase order constitutes | |
| 21 | non-performance under the JDLA. | |

**h. Netlist Should Be Estopped From Arguing That Its Patent Licenses Provide Consideration For A Broader Supply Obligation**

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 65. Netlist argued in its Korean tax | Choi Decl. ¶ 60, Exh. 59 at p. 4. |

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| appeal that: "the granting of cross licenses under the [JDLA] is limited to the joint research and development, and hence in cases where Samsung Electronics uses intellectual property rights of [Netlist] in the course of its own research and development, it does not constitute something that can be subject to the [JDLA] | |
| 66. The Korean tax tribunal relied on Netlist's position that the license was limited in making its ruling. | Dkt. 88-7 at p. 7. |

**Samsung Is Entitled to Judgment on Plaintiff's Second Cause of Action for Breach of Contract (Tax Withholding)**

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 67. Uncontroverted Fact Nos. 1-66 are incorporated herein. | |
| 68. Section 3.2 of the JDLA states, in pertinent part:<br>"Taxes. . . . To the extent that any withholding taxes are required by applicable law for the payment set forth in this Agreement, Samsung may deduct any applicable withholding taxes due or payable under the laws of Korea . . . provided that Samsung shall pay such | Choi Decl. ¶ 20, Exh. 19 at p. 5, § 3.2. |

3783.16 3742471.2

20

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | | |
|---|---|---|
| withholding taxes to the Korean tax authorities and promptly provide Netlist with a certificate of payment for such withholding tax, as required by applicable law or treaty, and reasonably cooperate with Netlist in any lawful efforts to claim a credit or refund or exemption with respect to any such withholding taxes. | | |
| 69. On November 5, 2015, shortly before the JDLA was signed, Samsung sent Netlist a tax form for Netlist to apply for a reduced tax rate as a foreign corporation. | Choi Decl. ¶ 61, Exh. 60; ¶ 6, Exh. 5 at 140:23-141:22, 143:14-24. ¶ 15, Exh. 14 at RFA No. 17;  ¶ 61, Exh. 60 at NL046086-89. | |
| 70. The form indicated that the tax rate on royalties pursuant to a treaty with the US was 16.5%. | Choi Decl. ¶ 61, Exh. 60 at p. 3; ¶ 15, Exh. 14 at RFA No. 17;  ¶ 61, Exh. 60 at  NL046086-89. | |
| 71. Netlist CFO Gail Sasaki reviewed the form, signed, and returned it to Samsung. | Choi Decl. ¶ 61, Exh. 60 at pp. 1, 3; ¶ 6, Exh. 5 at 144:1-145:4. | |
| 72. According to Netlist's CEO Chuck Hong, Sasaki had the authority to approve and sign such tax form without his approval. In her capacity as Netlist's CEO, was expected to consult with a tax expert before executing the form to ensure it was appropriate for Netlist to sign. | Choi Decl. ¶ 8, Exh. 7 at 175:9-176:14. | |
| 73. After the JDLA was signed, Samsung | Dkt. 18-2 at ¶ 16; Dkt. 88-7 at p. 4; Choi | |

| | | |
|---|---|---|
| made the contractually required cash payment to Netlist of $8 million, less 16.5% deducted for withholding taxes, and paid that amount to the tax authority. | Decl. ¶ 62, Exh. 61 at NL118221. | |
| 74. Samsung did so because it considered the $8 million as consideration for Netlist's grant of patent licenses, and Korean law requires withholding of payments on such royalties. | Choi Decl. ¶ 63, Exh. 62 at p. 1; ¶ 61, Exh. 60 at p. 3; Dkt. 88-7 at p. 4. | |
| 75. Samsung had numerous communications with Netlist and PWC, Netlist's tax consultant, shared drafts of what Samsung proposed to submit to the tax authorities, and even asked Netlist and PWC to propose language that it wanted Samsung to use. | Choi Decl. ¶ 64, Exh. 63; ¶ 65, Exh. 64; ¶ 66, Exh. 65 at p. 1. ¶ 64, Exh. 63 at NL118533-34; ¶ 66, Exh. 65 at NL118544-48; ¶ 67, Exh. 66 at NL118556-57. | |
| 76. PWC even thanked Samsung for its cooperation, showing that cooperation is not what Netlist complains of here. | Choi Decl. ¶ 65, Exh. 64 at p. 1; ¶ 65, Exh. 64 at NL118535. | |
| 77. What Netlist wanted was for Samsung to deny that the $8 million was for patent royalties, which Samsung did not believe to be true. | Choi Decl. ¶ 63, Exh. 62 at p. 1; Choi Decl. ¶ 61, Exh. 60 at p. 3; Dkt. 88-7 at p. 4; ¶ 67, Exh. 66 at NL118556; ¶ 6, Exh. 5 at 123:19- 124:24 | |
| 78. Netlist won its tax appeal, and received a full refund plus interest. | Dkt. 88-7 at p. 3; Choi Decl. ¶ 68, Exh. 67 at p. 2; ¶ 6, Exh. 5 at 136:13-137:6 | |

### Netlist Is Barred From Recovering Consequential Damages

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 79. Uncontroverted Fact Nos. 1-78 are incorporated herein. | |
| 80. Netlist seeks damages including lost revenues and lost profits from allegedly lost business opportunities with third party customers. | Dkt. 18-2 at ¶ 14; Choi Decl. ¶ 69, Exh. 68 at 5:23-26. |
| 81.  Section 12.5 of the JDLA states: "IN NO EVENT SHALL (A) EITHER PARTY BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT, EVEN IF THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, WHERE EXCLUDED DAMAGES INCLUDE, BUT ARE NOT LIMITED TO, LOSS OF PROFITS, LOSS OF SAVINGS, LOSS OF USE OR PUNITIVE DAMAGES." | Choi Decl. ¶ 20, Exh. 19 at p. 11. |

### Samsung Is Entitled to Judgment on Plaintiff's Third Cause of Action for Declaratory Relief: Termination of Contract

| Defendant's Undisputed Material | Supporting Evidence |
|---|---|

| Facts | |
|---|---|
| 82. Uncontroverted Fact Nos. 1-81 are incorporated herein. | |

**Netlist Waived Any Right To Terminate The JDLA**

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 83. Uncontroverted Fact Nos. 1-82 are incorporated herein. | |
| 84. Netlist executives internally discussed whether to provide notice of breach over the tax withholding dispute in March 4, 2016, but decided not to send a breach notice because it wanted to reap the benefits of its business relationship with Samsung. | Choi Decl. ¶ 70, Exh. 69 at p. 1; ¶ 6, Exh. 5 at 57:4-64:2. |
| 85. As to the supply claim, Netlist asserts that "starting as early as the second quarter of 2017, Samsung began to refuse and/or cancel orders from Netlist. | Choi Decl. ¶ 71, Exh. 70 at p. 13, ROG No. 8. |
| 86. Instead, Netlist waited to provide notice of alleged breach until May 27, 2020, more than *four years* after it first considered doing so. | Dkt. 18-2 at ¶ 19; Choi Decl. ¶ 72, Exh. 71. |
| 87. The $15 million note is due December 31, 2021. | Choi Decl. ¶ 73, Exh. 72 at p. 1 § 2. |

**[PROPOSED] CONCLUSIONS OF LAW**

1.    Section 6.2 of the JDLA lacks a definite or ascertainable quantity terms necessary to create an enforceable obligation to supply. *Mar-Jon Mach. & Tool Co. v. Eastman Kodak Co.*, 534 N.Y.S.2d 47, 48 (1988)

2.    The JDLA is not a requirements contract; it lacks a promise by Netlist to buy all of its requirements, or any minimum amount or percentage of its requirements, exclusively from Samsung. *Embedded Moments, Inc. v. Int'l Silver Co.*, 648 F. Supp. 187, 192 n. 3 (E.D.N.Y. 1986).

3.    The JDLA is not a valid options contract because it lacks a definite or ascertainable quantity term. *Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 590-91 (1999).

4.    Netlist is estopped from asserting a contrary position about its patent licenses in this case that is inconsistent with the position it asserted in the Korean tax tribunal. Under the equitable doctrine of judicial estoppel, a litigant is barred from obtaining an advantage by asserting a position in a case, and then later seeking to obtain an advantage by taking a clearly inconsistent position. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600–01 (9th Cir. 1996).

5.    The doctrine of judicial estoppel applies to statements made in separate proceedings where the prior proceeding was an administrative proceeding. *Rissetto*, 94 F.3d at 604, 605. The doctrine applies to foreign proceedings as well as domestic. *GT Beverage Co. LLC v. Coca Cola Co.*, No. SACV1000209JVSRNBX, 2010 WL 11595832, at *5 (C.D. Cal. Aug. 2, 2010).

6.    Section 3.2 of the JDLA permits Samsung to deduct withholding taxes to the extent required by Korean law, even if such amounts are ultimately found not to be taxable.

7.    Section 3.2 requires Samsung to cooperate with Netlist's efforts to obtain a refund; it does not require Samsung to submit responses to the tax authorities inconsistent with what it believes to be accurate.

8.     Netlist is precluded from recovering lost profits, lost revenues from lost business opportunities, or any other consequential damages by Section 12.5 of the JDLA. Express waivers of consequential damages are enforceable under New York law. *International Gateway Exchange, LLC v. Western Union Financial Services, Inc.*, 333 F. Supp. 2d 131, 149 (S.D.N.Y. 2004).

9.     To avoid the waiver of consequential damages, Netlist would have to provide evidence of "truly culpable, harmful conduct, not merely intentional nonperformance of the Agreement motivated by financial self-interest." *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 438–39 (1994). No such evidence is presented here.

10.     Netlist may not terminate the JDLA because it cannot prove a material breach.

11.     Netlist waived any right to terminate the JDLA by waiting more than four years after the alleged breach to provide notice of termination. *Dun & Bradstreet Corp. v. Harpercollins Publishers, Inc.*, 872 F. Supp. 103, 110 (S.D.N.Y. 1995).

12.     Netlist waived the "no waiver" provision in Section of the JDLA by continuing to accept the benefits of the contract for years without seeking termination. *TSS–Seedman's, Inc. v. Elota Realty Co.*, 72 N.Y.2d 1024, 1027 (1988).


DATED: August 17, 2021                 Bird, Marella, Boxer, Wolpert, Nessim,
                                       Drooks, Lincenberg & Rhow, P.C.



                                       By:  ___/s/ Ekwan E. Rhow_____
                                            Ekwan E. Rhow
                                            Attorneys for Defendant Samsung
                                            Electronics Co., Ltd.

DEFENDANT'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
ISO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT