UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>　　　　Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.,<br><br>　　　　Defendants. | Civil No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S RESPONSE TO NETLIST'S MOTION
FOR SUMMARY JUDGMENT ON SAMSUNG'S LICENSE DEFENSE (DKT. 273)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

TABLE OF EXHIBITS ............................................................................................................. iii

TABLE OF ABBREVIATIONS ................................................................................................ iii

I.    COUNTER-STATEMENT OF THE ISSUES RAISED BY THE
      MOTION ......................................................................................................... 1

II.   RESPONSE TO NETLIST'S STATEMENT OF MATERIAL FACTS ............................. 1

III.  SAMSUNG'S COUNTER-STATEMENT OF MATERIAL FACTS ................................ 3

IV.   ARGUMENT ................................................................................................... 5

      A.    Netlist's Allegation of Estoppel Is Wrong on the Law and Facts ............................. 5

      B.    Netlist's Allegation That It Properly Terminated the JDLA Is Wrong,
            Unsupported by the Facts, and Inaccurate as a Matter of Law ................................. 5

            1.    The Ninth Circuit Has Already Confirmed That Summary
                  Judgment of Materiality Would Be Improper ................................................. 5

            2.    Were the Court To Interpret JDLA § 6.2, the Record
                  Contravenes Netlist's Interpretation and Precludes Summary
                  Judgment ......................................................................................... 6

\* All emphasis is added unless noted otherwise.

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*67 Wall St. Co. v. Franklin Nat'l Bank*,
  333 N.E.2d 184 (N.Y. 1974) ............................................................................................... 7

*Evans v. Famous Music Corp.*,
  807 N.E.2d 869 (N.Y. 2004) ............................................................................................... 7

*Faulkner v. Nat'l Geographic Soc.*,
  452 F. Supp. 2d 369 (S.D.N.Y. 2006) .............................................................................. 2, 7

*Fed. Ins. Co. v. Ams. Ins. Co.*,
  258 A.D.2d 39 (N.Y. App. Div. 1999) ............................................................................... 7

*Marx v. Gen. Revenue Corp.*,
  568 U.S. 371 (2013) ........................................................................................................... 6

*Quadrant Structured Products Co. v. Vertin*,
  16 N.E.3d 1165 (N.Y. 2014) .............................................................................................. 6

*Reyelt v. Danzell*,
  533 F.3d 28 (1st Cir. 2008) ................................................................................................ 6

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| A. | Transcript of Deposition of Paik Ki Hong (excerpts) from C.D. Cal. Case |
| B. | Netlist's April 2015 Proposal (NL107806) |
| C. | Netlist's June 9, 2015 Term Sheet (NL108698-99) |
| D. | Netlist's June 23, 2015 Term Sheet (NL005091-13) |
| E. | Transcript of Deposition of Chuck Hong (excerpts) from C.D. Cal. Case |
| F. | Memorandum of Understanding (NL069668-70) |
| G. | Purchase Order (NL002027) |
| H. | Declaration of Paik Ki Hong from C.D. Cal. Case |
| I. | Netlist's 2015 10-K (excerpts) |
| J. | Emails Between Raymond Jiang and Neal Knuth (NL039163-64) |
| K. | Emails Between Raymond Jiang and Neal Knuth (NL024952) |
| L. | Email Attaching December 2017 Slide Deck (NL020700-03) |
| M. | Transcript of Deposition of Ho Jung Kim (excerpts) from C.D. Cal. Case |
| N. | Transcript of Deposition of Hyun Ki Ji (excerpts) from C.D. Cal. Case |
| O. | Samsung's Ninth Circuit Opening Brief (excerpts) |
| P. | Email from Tae-Jin Jeong (SEC003566 translation) |
| Q. | Email (NL119237-38) |
| R. | Transcript of Deposition of Indong Kim (excerpts) from *EDTX1* |
| S. | Transcript of Deposition of Chuck Hong (excerpts) |
| T. | Transcript of Deposition of Joseph Calandra (excerpts) |
| U. | Transcript of Oral Argument (excerpts) from Ninth Circuit Appeal |
| V. | April 5, 2021 Form 8-K (SAM-NET00785007) |
| W. | Email and Samsung-Netlist Partnership February, 2017 (SAM-NET00550983 and SAM-NET00550987) |
| X. | Verdict from C.D. Cal. Case |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| C.D. Cal. | U.S. District Court for the Central District of California |
| C.D. Cal. Case | *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-CV-00993 (C.D. Cal.) |
| *CTA9 Order* | *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683 (9th Cir. Oct. 17, 2023) |
| D. Del. | U.S. District Court for the District of Delaware |
| D. Del. Case | *Samsung Electronics Co. v. Netlist, Inc.*, No. 1:21-cv-1453 (D. Del.) |
| *EDTX1* | *Netlist Inc. v. Samsung Elecs. Co.*, No. 2:21-CV-463 (E.D. Tex.) |
| JDLA | Joint Development and License Agreement (Dkt. 273-7) |
| JDP | Joint Development Project |
| MOU | Memorandum of Understanding (*see* Ex. F) |
| Ninth Circuit Appeal | *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209 (9th Cir.) |
| NSMF | Netlist's Statement of Material Facts (Dkt. 273 at 3-9) |
| SSMF | Samsung's Counter-Statement of Material Facts |

The Court should deny Netlist's motion. This Court has already addressed the scope of the JDLA's license (§ 8) in *EDTX1*, and Netlist's estoppel argument is wrong on the law and facts. *See* Dkt. 283 (incorporated by reference). The Ninth Circuit held that genuine disputes of material fact foreclose summary judgment on materiality of any breach (which is essential to termination) and, to the extent the Court deems it necessary to interpret the supply provision (§ 6.2), only Samsung's interpretation is supported by the extrinsic evidence.

### I.  COUNTER-STATEMENT OF THE ISSUES RAISED BY THE MOTION

1. Is Samsung judicially estopped from advancing the interpretation of JDLA § 8 that the Court adopted in *EDTX1*?

2. Does the record demonstrate, to a summary judgment standard, that § 6.2 obliges Samsung to fulfill Netlist unlimited non-JDP requests for NAND/DRAM chips, and if so was there a material breach that supported unilateral termination by Netlist?

### II. RESPONSE TO NETLIST'S STATEMENT OF MATERIAL FACTS

1, 6, 14, 15, 22. Samsung does not dispute the factual statements in these paragraphs, but disputes Netlist's selective, non-factual characterizations, inferences, and arguments.

2. Disputed. The May 18, 2015 communication was not a counter-proposal to Netlist's April 16, 2015 proposal, as Netlist supplanted that proposal. Ex. Q.

3-4. Disputed. The parties did not agree Samsung would have an obligation to supply chips to Netlist for any purpose or that § 6.2 imposes such an obligation. *See* SSMF ¶¶ 5-8.

5. Disputed. Samsung did not fulfill all of Netlist's requests from 2015-2017; some were backlogged or otherwise not met. Ex. A at 54:24-55:10. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Samsung was not obliged to supply Netlist for non-JDP purposes. Further, Dkt. 273-11 is unauthenticated hearsay, without foundation.

7. Disputed. The documents show that § 6.2 was limited to the JDP while Samsung's

1

sales to Netlist for resale proceeded ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 273-15 at SEC99179.

8. Disputed. No evidence is attached and the fact is unsupported by the declaration.

9. Disputed. Netlist's 2016 10-K does not say that Samsung's supply obligation extends beyond the JDP. The statements are inadmissible "unilateral expression[s] of one party's postcontractual subjective understanding" of the JDLA. *Faulkner v. Nat'l Geographic Soc.*, 452 F. Supp. 2d 369, 379 (S.D.N.Y. 2006). Netlist said in the 10-K immediately following the JDLA that it had "**no long-term** FPGA, **DRAM or NAND flash supply contracts**." Ex. I at 13. When Netlist secured such a long-term supply contract, it reported that the deal "entitle[d] Netlist to purchase up to $600,000,000 of SK hynix … memory products during the [agreement's] term[.]" Ex. V at 2.

10. Disputed. Mr. Calandra was not a 30(b)(6) representative on or negotiator of the JDLA, and did not describe an obligation for Samsung to "provide memory products on request"; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 273-18 at 21:3-23; Ex. T at 11:5-6, 33:10-15.

11. Samsung disputes any inconsistency in positions. Samsung's argument to the Ninth Circuit, as here, is that an unlimited supply clause would be an extraordinary provision that sophisticated parties would have recited if intended. Ex. O at 25, 27, 34-35.

12. Disputed. Samsung shipped NAND/DRAM to Netlist after January 2018. *See* Ex. S at 33:9-16, 35:10-15, 36:18-21 (admitting buying from Samsung for the last 8 years).

13. Disputed. The email says nothing about whether § 6.2 extends beyond the JDP, and a later email in the thread confirms that it does not. *See* Dkt. 273-24; Ex. P at SEC003566.

16. Disputed. The email discussing the JDLA does not address the scope of JDLA § 6.2. A later email in the thread clarifies that the obligation was "to provide NAND/DRAM **for development**." Ex. P at SEC003566. The email discussing the JDLA came nearly eight months after

2

the emails discussing Netlist's allocation.  *See* Dkt. 273-27, -28, -29.

17. Disputed.  *See* Dkts. 193, 261, 262 and related exhibits.

18-19. Disputed.  The evidence does not support Netlist or the purported facts.

20. Disputed. ▮ Ex. R at 88:20-91:3.

21. Disputed.  If Netlist thought Samsung breached an unlimited supply obligation, it would have sent notice of breach three years earlier and specified the orders to be cured.

23. Disputed.  The title of the section is "Supply of **Components**."

24. Disputed.  Dkt. 283 at 10-11 & n.2 ▮

25-26. Disputed.  *See id.*; Dkt. 203 at 2-4; *see also* Dkt. 273-19 at 29.

### III. SAMSUNG'S COUNTER-STATEMENT OF MATERIAL FACTS

1. ▮ Ex. A at 12:9-14:15.

2. ▮ *Id.* at 45:8-46:8.

3. On April 16, 2015, Netlist proposed a long-term deal to Samsung with (1) a technology collaboration and (2) a patent license.  Ex. B at NL107807. ▮

4. On May 18, 2015, ▮ Dkt. 273-05.  The proposed supply obligation did not exceed the collaboration.  *Id.*

5. Netlist's June 2015 draft term sheets propose that, as part of ▮

3

███████████████████████ Ex. C § II.3, .5; Ex. D § III.2, .4. Netlist's CEO conceded that ████████████████████████████████████ ████████████████████ Ex. E at 92:4-12, 101:25-102:7.

6. ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████ Ex. E at 109:9-110:1.

7. ████████████████████████████████████

████████████████████ Dkt. 273-6 at NL49006, -7 § 6.2, -8 at NL45876-77.

8. After the JDLA, ████████████████████████

████████████████████████████████████ Ex. A at 47:24-49:4. The orders state ████████████████████████████████ Ex. G at 3.

9. On April 6, 2016, a Netlist employee requesting NAND wrote, ████████ ████████████████████████████████████ ████████████████████████ Ex. J at NL039163-64.

10. Similarly, on December 13, 2016, a Netlist employee asked Samsung ████████ ████████████████████████████████████ ████████████████████████ Ex. K at NL024952.

11. In February 2017, Netlist asked Samsung to provide ████████████ ████████████████████████████████████ Ex. W at SAM-NET00550985, SAM-NET00551004-5. Netlist would have had no reason to ████████████████████ or a new supply agreement if it believed that the JDLA already entitled it to NAND and DRAM on demand.

12. In December 2017, Netlist's Paik Ki Hong provided Samsung with a series of slides

4



Ex. L at NL020700-01. *Id.* at NL020703.

13. *id.*; *see also* Ex. N at 82:23-83:7.

14.  Netlist suffered no damages due to the alleged § 6.2 breach. Ex. X at 1.

## IV. ARGUMENT

### A. Netlist's Allegation of Estoppel Is Wrong on the Law and Facts

Netlist's estoppel allegation is wrong. *See generally* Dkt. 283 at 8-12; Dkt. 310 at n.1; Dkt. 273-19 at 34. Issue preclusion bars **Netlist**—not Samsung—from re-litigating JDLA § 8 arguments the *EDTX1* court rejected. *See EDTX1*, Dkt. 426, 3/28/23 Hr'g Tr. at 28, 56-58; *id.*, Trial Tr. at 1266:4-1267:1; *id.*, Dkt. 432 at 2. The D. Del. court has also rejected Netlist's argument. Dkt. 259-1.

### B. Netlist's Allegation That It Properly Terminated the JDLA Is Wrong, Unsupported by the Facts, and Inaccurate as a Matter of Law

Netlist's motion requires the Court to conclude that (1) the extrinsic evidence one-sidedly favors Netlist's interpretation of § 6.2 (a question squarely before C.D. Cal.), **and** (2) any breach was material such that Netlist's termination was proper.

#### 1. The Ninth Circuit Has Already Confirmed That Summary Judgment of Materiality Would Be Improper

The Ninth Circuit already held that summary judgment as to materiality is improper. It explained, "New York courts consider several factors in assessing materiality, including, among others: the extent to which the injured party will be deprived of the benefit which he reasonably expected, the likelihood that the party failing to perform or to offer to perform will cure his failure, the quantitative character of the default, and the breaching party's good faith or willfulness." *CTA9 Order* at *3. It held that "several of these factors hinge upon disputed facts" suitable for a jury. *Id.*

5

Even under Netlist's § 6.2 reading, there are disputed facts on the record, including as to Samsung's good faith or willfulness (its reading was at least reasonable), the extent of any harm suffered by Netlist (California jury found no harm, SSMF ¶ 14), and Netlist's years-long delay in asserting incurable breach because it did not actual consider them material or want them cured (Dkt. 273-34, Dkt. 273-35). Netlist alleges, wrongly, that there are meaningful new facts. Dkt. 273 at 15. But those facts come from Mr. Calandra's testimony. *Id.* Mr. Calandra's testimony does not say that Samsung enters unlimited supply agreements, and reflects only his personal understanding (he was not 30(b)(6) on the JDLA, did not join Samsung until 2020, and had no involvement with the JDLA, *see* Ex. T at 11:5-6, 33:10-15) The testimony is also irrelevant because the relevant inquiry does not merely assess a provision's materiality, but materiality of the breach. *Reyelt v. Danzell*, 533 F.3d 28, 32 (1st Cir. 2008). On that, the Ninth Circuit correctly held that disputed facts preclude summary judgment.[1] *CTA9 Order* at *3.

## 2. Were the Court To Interpret JDLA § 6.2, the Record Contravenes Netlist's Interpretation and Precludes Summary Judgment

***Netlist's reliance on Quadrant is improper.*** The Ninth Circuit rejected Netlist's reliance on *Quadrant Structured Products Co. v. Vertin*, 16 N.E.3d 1165 (N.Y. 2014). *CTA9 Order* at *2; Ex. U at 28:19-23. Netlist argues that the absence of the term "NVDIMM-P" in § 6.2 indicates intent that the provision goes beyond the JDP. Dkt. 273 at 12. This approach was initially adopted in the C.D. Cal.'s summary judgment order, but the *CTA9 Order* specifically rejects it as incompatible with the JDLA's clear structure. *CTA9 Order* at *2.[2] The "force of any negative implication … depends on context[.]" *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013).

***The extrinsic evidence overwhelmingly favors Samsung.*** In New York, extrinsic contract

---

[1] Samsung previously rebutted Netlist's meritless argument that Rule 37 precludes Samsung from contesting materiality because of alleged discovery issues. *See* Dkt. 262.

[2] *Quadrant* is inapposite because the court did not consider extrinsic evidence and was constrained by the unique requirement that no-action clauses be strictly construed for policy reasons.

6

evidence includes "evidence of conversations, negotiations and agreements made prior to or contemporaneous with the execution" to ascertain the "intent of the parties." *67 Wall St. Co. v. Franklin Nat'l Bank*, 333 N.E.2d 184, 186-87 (N.Y. 1974). Courts may also, in appropriate cases, consider "the practical interpretation of a contract by the parties … before … controversy," *Fed. Ins. Co. v. Ams. Ins. Co.*, 258 A.D.2d 39, 44 (N.Y. App. Div. 1999), but "postcontractual subjective understanding" is irrelevant, *Faulkner*, 452 F. Supp. 2d at 379. Netlist wholly omits evidence that conclusively shows "the intention of the parties **at the time they entered into the contract**." *Evans v. Famous Music Corp.*, 807 N.E.2d 869, 872 (N.Y. 2004). The contemporaneous evidence shows that § 6.2 is a limited supply obligation for JDP only.

*Negotiation history.* Netlist does not mention the MOU executed weeks before the JDLA. Netlist CEO Chuck Hong testified ▮

▮ SSMF ¶ 6. The MOU's supply obligation was limited to the JDP. It was in the section addressing the JDP ▮

▮ *Id.*; Ex. F. And, Netlist insisted that the JDLA and § 6.2, conform to the MOU. SSMF ¶ 7. Because the question is the parties' intent at contracting, the MOU conclusively confirms that § 6.2 covers only the JDP.

Rather than citing negotiation history proximal to the signing of the JDLA, Netlist relies (Dkt. 273 at 13-14) on a months-earlier exchange. SSMF ¶¶ 3-4. This exchange does not suggest an unlimited memory-component supply obligation. *Id.* More importantly, early negotiations shed no light on the parties' intention **at the time of the contract**. By June 2015, ▮

▮ SSMF ¶ 5. That same obligation—limited to the JDP—is reflected in JDLA § 6.2.

*Course of conduct.* Netlist's recitation of post-JDLA conduct (Dkt. 273 at 14-15) omits crucial

7

evidence. From 2015-2017, the JDP proceeded along with chips sales. As it had since 2001, ▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ SSMF ¶¶ 2, 8. Netlist did not object to this

conduct. *Id.* ¶ 9. Netlist's conduct shows it knew it had no unbounded contractual right to Samsung's

NAND/DRAM chips, which is why it never asserted it had such as right.

In April 2016, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ SSMF ¶¶

9-10. If Samsung actually had a legally binding supply obligation, Netlist would not have acted this

way. Similarly, Netlist would not have ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in 2017 if the JDLA contained the unlimited supply provision

Netlist claims now. SSMF ¶ 11. And it would have cited the JDLA as ▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ SSMF ¶ 12.

Netlist's increased chip purchases from 2015 to 2017 proves nothing as to the meaning of

§ 6.2. Between 2001-2015, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓ SSMF ¶ 1. 2015 was a small year, and nothing suggests that later growth is attributable

to the JDLA rather than normal variation. Netlist's other citations are unavailing. Netlist's being

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. 273 at 14, does not imply unlimited

supply. SSMF ¶ 13. Netlist quotes an internal 2018 Samsung email (Dkt. 273 at 15) but it does not

address whether any supply obligation is limited to the JDP—the critical question. NSMF ¶ 13 Resp.

Netlist also ignores a Samsung email from around the same time clarifying that Samsung's obligation

was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. P at SEC003566. The extrinsic evidence

overwhelmingly undermines Netlist's § 6.2 interpretation and the Court should deny Netlist's motion.

8

Dated: January 3, 2024

Respectfully submitted,

By: /s/ *Michael J. McKeon*

| | |
|---|---|
| Melissa Richards Smith<br>melissa@gillamsmith.com<br>GILLAM & SMITH, LLP<br>303 South Washington Ave.<br>Marshall, Texas 75670<br>Telephone:     (903) 934-8450<br>Facsimile:     (903) 934-9257 | Ruffin B. Cordell<br>TX Bar No. 04820550<br>cordell@fr.com<br>Michael J. McKeon<br>D.C. Bar No. 459780<br>mckeon@fr.com<br>Lauren A. Degnan<br>D.C. Bar No. 452421<br>degnan@fr.com<br>Daniel A. Tishman<br>DC Bar No. 1013923<br>tishman@fr.com<br>FISH & RICHARDSON P.C.<br>1000 Maine Avenue, SW<br>Washington, DC 20024<br>Telephone: (202) 783-5070<br>Facsimile:  (202) 783-2331 |

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile:  (415) 955-6571

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on January 3, 2024.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Michael J. McKeon