IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO, LTD; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SEMICONDUCTOR INC., <br><br> Defendants. | Case No. 2:22-cv-293-JRG <br><br> JURY TRIAL DEMANDED <br> (Lead Case) |
| NETLIST, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MICRON TECHNOLOGY, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; MICRON TECHNOLOGY TEXAS LLC, <br><br> Defendants. | Case No. 2:22-cv-294-JRG <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF NETLIST, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SAMSUNG'S LICENSE DEFENSE (DKT. 273)**

# TABLE OF CONTENTS

**Page**

I.    Samsung is Precluded From Raising its License Defense ........................................................... 1

II.    The Extrinsic Evidence Exclusively Favors Netlist's Interpretation ........................................ 3

III.    Samsung's Breach Was Indisputably Material ................................................................................. 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avondale Shipyards, Inc. v. Insured Lloyd's*,
  786 F.2d 1265 (5th Cir. 1986) ..................................................................................................3

*Bradberry v. Jefferson Cnty.*,
  732 F.3d 540 (5th Cir. 2013)....................................................................................................2

*Canon Inc. v. Tesseron Ltd.*,
  146 F. Supp. 3d 568 (S.D.N.Y. 2015).......................................................................................3

*Netlist Inc. v. Samsung Elecs. Co.*,
  2023 WL 6820683 (9th Cir. Oct. 17, 2023) (Desai, J., dissenting) ............................... 1, 2, 3

*Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC*,
  2017 WL 2984023 (S.D.N.Y. July 6, 2017), *aff'd*, 739 F. App'x 664 (2d Cir. 2018)............................3

*Quadrant Structured Prod. Co. v. Vertin*,
  23 N.Y.3d 549 (2014) ...............................................................................................................3

**Rules**

Rule 56(d) ........................................................................................................................................3

I.  Samsung is Precluded From Raising its License Defense

Samsung's spin on its positions in this case and the Ninth Circuit fails. Samsung claims that it has "consistently asserted . . . that the JDLA has *two* goals: a cross-license, and a joint development project." Dkt. 283 at 10. But in the Ninth Circuit, Samsung argued that these two purposes were *inextricably linked*, citing the JDLA's fourth recital: "The licenses are being given in connection with the collaboration. That's the joint development project." Dkt. 273-2 at at 15:10-21. Samsung now tries to argue that this recital just "reflects the parties' recognition that broad cross-licenses would advance and benefit their general relationship." Dkt. 283 at 11, but that is not what Samsung said to the Ninth Circuit. Instead, Samsung highlighted the fourth recital to support its central argument on appeal, i.e., that "[t]here's other provisions in the contract [besides the supply clause] that clearly relate to the joint development project, that don't also say in connection with the joint development project." Dkt. 273-2 at 8:16. This is how the Ninth Circuit understood Samsung's argument, as demonstrated by the questioning at oral argument and the dissenting Judges confirmation that the majority relied on the licensing recital in concluding that the supply provision was ambiguous. Dkt. 273-2 at 18:23-19:2; *Netlist Inc. v. Samsung Elecs. Co.*, 2023 WL 6820683, at *4 (9th Cir. Oct. 17, 2023) (Desai, J., dissenting).

Samsung also argued to the Ninth Circuit that the NRE fee was specifically tied to joint development. Dkt. 273-2 at 8:16-24. Samsung does not even attempt to reconcile this statement with its position in *Samsung I*, i.e., that the NRE fee was a royalty payment for a broad patent license. Instead, Samsung reverses course yet again and argues that the assertion that the NRE fee was for the joint development project "lacks credibility." Dkt. 283 at 10-11. But this flatly contradicts *Samsung's* assertion to the Ninth Circuit, leading to a reversal of summary judgment, that the NRE fee was "**clearly for the joint development project**." Dkt. 273-2 at 8:16-24 (emphasis added); *see also* Dkt. 273 at 8 (¶ 24). This is just another illustration of Samsung's tactic of taking inconsistent positions in this Court and the California Action.

Samsung's "two-goal" argument in opposition to this motion thus boils down to the nonsensical position that every provision in the JDLA is linked to the joint development, *except* the license grant. This is contrary to their position in the Ninth Circuit and not supported by evidence. Samsung claims that the District of Delaware has rejected Netlist's argument that Samsung has taken inconsistent positions. Dkt. 315 at 5. This is incorrect. In Delaware, Samsung had not yet presented any of its varying positions on the JDLA's interpretation. Prior to the stay, discovery was still ongoing, and Samsung's license defense had yet to be adjudicated. Thus, unlike here, the District of Delaware was not confronted with a record in which Samsung was pursuing its inconsistent positions.

Having failed to reconcile its clearly inconsistent statements, Samsung argues that it is Netlist who is estopped from arguing that the license grant is limited in scope. Dkt. 315 at 5. This argument fails for several reasons. First, Samsung's assertion that "Netlist cannot lawfully re-litigate the scope of Samsung's license under § 8 of the JDLA because the EDTX1 court already considered and rejected exactly that argument" is incorrect. Dkt. 283 at 8. In *Samsung I*, this Court concluded on summary judgment that Netlist had terminated the JDLA on July 15, 2020, Case No. 2-21-cv-00463 ("*Samsung I*"), Dkt. 196 at 1. As to license scope, however, this Court concluded there was a dispute of material fact. *Samsung I,* Dkt. 426 at 59 ("What falls within that license as prescribed by the other terms of the JDLA is a fact question.").

Second, the question of what was licensed before termination was ultimately irrelevant in *Samsung I* because the Court also held as a matter of law that there was a pre-suit marking requirement under *Arctic Cat,* and there was no pre-suit notice as to the only patents-in-suit that issued before termination, the '060/'160 patents. *Id.,* Dkt. 432 at 3. Thus, the Court did not have any occasion to reach the license scope issue there. And even if it had, any such finding would not have been necessary to this Court's decision given that the question of license scope was rendered moot by the Court's determination that Netlist could not seek pre-suit damages regardless of license scope. Thus, collateral

estoppel cannot apply here. *Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 550 (5th Cir. 2013) ("For collateral estoppel . . . [the] determination must have been necessary to the decision.").

Finally, "partial summary judgment orders under Rule 56(d) are not preclusive," *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1271 (5th Cir. 1986), because "it remains within the plenary power of the court to revise or set aside" such decisions based on subsequent events. *Id.* Thus, even if this Court had previously determined that the scope of the JDLA's license grant was not limited to joint development (which it did not), the Court should now revise that holding based on Samsung's statements to the Ninth Circuit successfully arguing the exact opposite.

II. <u>The Extrinsic Evidence Exclusively Favors Netlist's Interpretation</u>

Samsung does not dispute that *Quadrant Structured Prod. Co. v. Vertin,* 23 N.Y.3d 549 (2014) prohibits courts from inserting limiting language into a provision that the parties chose not to include **even when the contract is ambiguous**, nor does Samsung dispute that, under New York law, courts may apply canons of interpretation to interpret ambiguous contract language on summary judgment as a matter of law. Dkt 273 at 11-13. Instead, Samsung argues the Ninth Circuit already "rejected" Netlist's reliance on *Quadrant.* Dkt. 315 at 6.[1] Again, this is incorrect. The Ninth Circuit's majority opinion did not even mention *Quadrant* or New York canons of contract interpretation and expressly declined to decide whether the ambiguity it found "creates 'a genuine dispute of material fact' as to the provision's meaning." *Netlist*, 2023 WL 6820683, at *2. *Quadrant* forecloses Samsung's attempt to interpret even "ambiguous" language in section 6.2 as implying a limitation that the parties could have, but did not, include. Indeed, as noted in the moving brief, "Joint Development Project" and "JDP" are defined terms in the JDLA that the parties repeatedly used when they intended for them to apply.

---

[1] In a footnote, Samsung appears to argue that *Quadrant* is limited to no-action clause cases. In fact, it is regularly cited in contract cases of all types. *See, e.g., Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC*, 2017 WL 2984023, at *3 (S.D.N.Y. July 6, 2017), *aff'd*, 739 F. App'x 664 (2d Cir. 2018) (applying *Quadrant* to settlement agreement); *Canon Inc. v. Tesseron Ltd.*, 146 F. Supp. 3d 568, 578 (S.D.N.Y. 2015) (applying *Quadrant* to license agreement).

Samsung also fails to present any extrinsic evidence from which a jury could reasonably infer that the parties intended Samsung's supply obligation to be limited to the joint development project. The only evidence Samsung offers to rebut Netlist's account of the negotiation history, Dkt. 273 at 13-14, is a ████████████████████████████████████████. Samsung claims ████████████████████ must refer to the joint development project. Dkt. 315 at 7. No evidence supports this inference. First, the ████████████████████████████████████████ ████████████████████████████████████████████████████████████ Dkt. 315-6 at NL069668. Second, like the JDLA itself, ████████████████████ ████████████████████████████████████ *Id.* at NL069669 ████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Finally, the JDLA expressly supersedes the ████ via its integration clause. Dkt. 273-07 (JDLA) § 16.7.

Samsung claims that Netlist's CEO (Chuck Hong) admitted at deposition ████████ ████████████████. Actually, Mr. Hong merely ████████████████████████ ████████████████████████ (hardly a controversial point). Importantly, Samsung did not ask whether, and Mr. Hong did not testify that, NAND and DRAM were *only* supplied for the NVDIMM-P product. To the contrary, Mr. Hong made clear in his deposition that Samsung's supply obligation was not limited to supply for the potential joint development product or project. Ex. A (Hong C.D. Cal. Dep.) at 220:3-220:6 ████████████████████████████ ████████████████████████████████ *see also id.* at 221:11-221:14. Nor did Mr. Hong ever testify that the supply obligation was only for the joint development project; indeed, he testified that Samsung's interpretation would make no sense, because the research and development work would amount to nothing more than a request for a few hundred memory components (in contrast with the millions of dollars-worth of resaleable products that Samsung began to supply shortly after executing the JDLA). *Id.* at 222:6-22.

With respect to the parties' course of conduct, Samsung does not dispute that its supply to Netlist went from virtually nothing the two years before the JDLA was signed to nearly $25 million afterwards, and Samsung offers no alternative explanation for why that happened.[2] Dkt. 273 at 4 (¶ 5). Samsung instead points to isolated instances in which it was unable to fulfill a specific order. Dkt. 315 at 1 (¶ 5). But this merely demonstrates that, in light of occasional supply constraints, Netlist at times recognized that Samsung could not provide products it did not have. Dkt. 315-10 at NL039164 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. This does not show that Samsung had the right to refuse to Netlist's requests altogether. Samsung also points to a generic risk disclosure in its 10-K that makes no mention of the JDLA. Dkt. 315 at 2. But Samsung ignores the specific portion of the same 10-K **that actually discusses the JDLA** in which Netlist noted "our JDLA with Samsung **contractually commits Samsung to supply NAND flash and DRAM products to us upon our request at competitive prices**." Dkt. 273-16 at 8. Netlist echoed this in earnings calls with its investors. Ex. B at 6 (Q3 2016 call) ("[W]e continue to benefit from the unique access we have . . . to certain Samsung products in the enterprise space. This includes enterprise-grade, high capacity SSDs and high-density DRAM modules. Product lines [that] Samsung is committed to supporting for the long-term."). Ex. C at 5 (Q1 2017 call).[3]

Samsung also has no answer for its own internal documents acknowledging that Section 6.2 required it to supply Netlist with NAND and DRAM on request. Dtk. 273 at 14-15. Samsung essentially ignores one of these documents—a January 18, 2018 email from Ho-Jung Kim. *Id.* Samsung claims that another wholly unrelated email thread supposedly "clarified" that Samsung's supply obligation was "for development." Dkt. 315 at 8. But if this email was intended as a "clarification," then it is fatal to Samsung's

---

[2] That Samsung at times sold Netlist products in the fifteen years preceding the JDLA does not undermine the significance of the change in practice immediately pre and post JDLA.

[3] Samsung cites a presentation that discusses an extended partnership. However, Samsung's cited portion does not mention NAND or DRAM at all, and the presentation elsewhere expressly states that the JDLA grants Netlist "Access to Samsung DRAM, NAND, SSDs at a competitive-cost," Dkt. 315-23 at SEC008162, which is fully is consistent with Netlist's interpretation.

license defense here because it also states that the license grant was limited to joint development: ▮

▮ ▮ s

▮ Dkt. 315-16 at 3566. Samsung cannot have it both ways.

III.     <u>Samsung's Breach Was Indisputably Material</u>

Samsung ignores that its own counsel admitted in the Central District that, "*if 6.2 is construed as Netlist is saying, that would have been the most important part of this contract by far. It would have outweighed anything else in the contract.*" Ex. 24 at 17:22-25. Samsung argues that the Ninth Circuit held there was a dispute of fact regarding materiality. Dkt. 315 at 5-6. But the Ninth Circuit was not presented with the testimony of Mr. Calandra in this case, who admitted that, contrary to Samsung's representation to the Ninth Circuit, Samsung does enter into guaranteed supply commitments for memory products and uses best efforts to comply, Dkt. 273 at 15, or the testimony of Mr. Kim, who admitted that Samsung's refusal to supply Netlist was "unethical," *id.* at 7. Samsung also ignores that it has improperly refused to provide discovery on the JDLA, which should preclude it from introducing testimony or evidence to demonstrate that its breach was immaterial now. *Id.* at 15.

Dated: January 11, 2024

Respectfully submitted,

/s/ Jason G. Sheasby

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
H. Annita Zhong (*pro hac vice*)
hzhong@irell.com
Andrew J. Strabone (*pro hac vice*)
astrabone@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
Michael Harbour (*pro hac vice*)
mharbour@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Philip Warrick
New York Bar No. 4471413
pwarrick@irell.com

**IRELL & MANELLA LLP**
750 17th Street NW, Suite 850
Washington, DC 20006
Tel. (310) 777-6512
Fax (310) 317-7252

*Attorneys for Plaintiff Netlist, Inc.*

- 8 -

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 11, 2024, a copy of the foregoing was served to all counsel of record via the Court's ECF/CM system.

*/s/ Yanan Zhao*
Yanan Zhao