UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.<br><br>        Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD, et al.<br><br>        Defendants. | Civil Case No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.<br><br>        Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.<br><br>        Defendants. | Civil Case No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S MOTION FOR PARTIAL SUMMARY JUDGMENT
THAT ALL ACCUSED PRODUCTS ARE COVERED BY
<u>NETLIST'S LICENSE TO SAMSUNG IN THE PARTIES' 2015 JDLA</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ......................... 1

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................ 2

      A.   Netlist's Proposal To License Its Patents to Samsung, and the MOU ..................... 2

      B.   The Parties' November 2015 JDLA ................................................................. 2

      C.   Netlist's Post-JDLA Descriptions of Samsung's License Rights ............................. 4

      D.   Samsung Designs the Accused Products and Sells Them as Samsung
           Products ................................................................................................... 4

      E.   This Court's Rejection, in *EDTX1*, of Netlist's Attempt To Limit the
           JDLA's License to JDP Products ..................................................................... 5

IV.   GOVERNING LAW .......................................................................................... 7

V.    ARGUMENT ................................................................................................... 8

      A.   As a Matter of Law, the JDLA Term "Samsung's Licensed Products"
           Is Not Restricted to JDP Products, and Extends to Any Non-
           Foundry Semiconductor Products Made by or for Samsung ................................. 8

           1.   The Doctrine of Issue Preclusion Bars Netlist from Revisiting
                This Court's Determination, in *EDTX1*, That the JDLA
                License Grant Is Not Restricted to JDP Products ....................................... 8

           2.   The JDLA's License Unambiguously Extends to Samsung's
                Non-Foundry Products Generally, and Is Not Restricted to
                JDP Products ......................................................................................... 9

                a.   The JDLA's Text Is Unambiguous ................................................... 9

                b.   Samsung Has Never Argued That the JDLA's License
                     Is Limited to JDP Products Only, and Netlist's
                     Position Here Is Irreconcilable with Other Legal
                     Proceedings .......................................................................... 11

                c.   Consideration of Extrinsic Evidence, Permissible
                     Only If the Court Finds the JDLA's License
                     Ambiguous, Confirms Samsung's Interpretation .......................... 12

███████████████████████

B.    As a Matter of Law, None of the Accused Products Are "Foundry Products" ............................................................................................. 12

  1.    The Facts About the Design and Sales of the Accused Products Are Undisputed ............................................................ 13

  2.    No Accused Products Are "Foundry Products" ........................................ 13

C.    This Court Should Grant Partial Summary Judgment That All Samsung Accused Products Are Licensed Under the JDLA ................................. 14

VI.    CONCLUSION ........................................................................................................ 15

\* In this brief, all emphasis is added unless noted otherwise.

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Authentic Apparel Grp. v. United States,*
    989 F.3d 1008 (Fed. Cir. 2021) ............................................................................................7

*Beal Sav. Bank v. Sommer,*
    865 N.E.2d 1210 (N.Y. 2007) ...........................................................................................7, 9

*Bradberry v. Jefferson Cnty.,*
    732 F.3d 540 (5th Cir. 2013) ............................................................................................7, 9

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ...........................................................................................................14

*Crown Operations Int'l, Ltd. v. Solutia Inc.,*
    289 F.3d 1367 (Fed. Cir. 2002) ..........................................................................................14

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.,*
    70 F. Supp. 3d 808 (E.D. Tex. 2014) ...................................................................................8

*Greenfield v. Philles Recs., Inc.,*
    780 N.E.2d 166 (N.Y. 2002) ................................................................................................7

*In re La. Crawfish Producers,*
    852 F.3d 456 (5th Cir. 2017) ................................................................................................7

*Pace v. Bogalusa City Sch. Bd.,*
    403 F.3d 272 (5th Cir. 2005) ................................................................................................7

*S. Rd. Assocs., LLC v. Int'l Bus. Machs. Corp.,*
    826 N.E.2d 806 (N.Y. 2005) ................................................................................................7

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.,*
    617 F.3d 1296 (Fed. Cir. 2010) ...........................................................................................7

**Other Authorities**

Fed. R. Civ. P. 50(a) ...................................................................................................................9

Fed. R. Civ. P. 56(a) ...................................................................................................................7

**TABLE OF EXHIBITS**

| # | Description |
|---|-------------|
| 1 | Ltr. fr. Andrew DeVoogd, Esq. to Hon. Lisa R. Barton, ITC (Oct. 31, 2017) (SAM-NET01351905, excerpts) |
| 2 | Netlist's April 2015 Proposal (NL107806) |
| 3 | Email fr. Jibum Kim to Jung-Bae Lee (NL119237-38) |
| 4 | Tr. of *EDTX1* Trial (Apr. 15-21, 2023) (excerpts) |
| 5 | Email fr. Kyuhan. Han to JB Kim (May 18, 2015) (NL108668) |
| 6 | Tr. of Dep. of Chuck Hong (Aug. 13, 2021) (excerpts) from the C.D. Cal. Case |
| 7 | Memorandum of Understanding (NL069668-70) |
| 8 | Email thread of Oct. 13-14, 2015 (SAM-NET01399697 translation of NL045876) |
| 9 | Email thread of Sept. 14-18, 2015 (NL048993) |
| 10 | JDLA (NETLIST_SAMSUNG_EDTX00034064) |
| 11 | Netlist Infringement Contentions (Feb. 7, 2023) (excerpts) |
| 12 | Netlist's Stmt. of Disputes, *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-CV-993 (C.D. Cal. filed Sept. 6, 2021), Dkt. 178-1 (excerpts) |
| 13 | Netlist's Opp. to Samsung Mot. Summ. J., *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-CV-993 (C.D. Cal. filed Aug. 30, 2021), Dkt. 171 (excerpts) |
| 14 | Summ. J. Order, *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-CV-993 (C.D. Cal. Oct. 14, 2021), Dkt. 186 (excerpts), *rev'd by CT-A9 Order* |
| 15 | Opening Expert Report of David Kennedy (served Nov. 20, 2023) (excerpts) |
| 16 | Tr. of Dep. of Anson Tsui (Dec. 2, 2022) (excerpts) from *EDTX1* |
| 17 | Tr. of Dep. of Indong Kim (Dec. 8, 2022) (excerpts) from *EDTX1* |
| 18 | Tr. of Dep. of Joseph Calandra (Nov. 8, 2023) (excerpts) |
| 19 | Tr. of Dep. of Junseon Yoon (Nov. 8, 2023) (excerpts) |
| 20 | Tr. of Dep. of Seung-Mo Jung (Nov. 13, 2023) (excerpts) |
| 21 | Opening Report of William Mangione-Smith (excerpts) |
| 22 | Tr. of Dep. of You Keun Han (Nov. 9, 2023) (excerpts) |
| 23 | Samsung web page depicting Samsung-branded DDR4 RDIMM products, https://semiconductor.samsung.com/dram/module/rdimm/ |
| 24 | Samsung web page depicting Samsung-branded DDR4 LRDIMM products, https://semiconductor.samsung.com/dram/module/lrdimm/ |
| 25 | Compilation of excerpted exemplary Samsung-branded DDR4 RDIMM datasheets |
| 26 | Compilation of excerpted exemplary Samsung-branded DDR4 LRDIMM datasheets |
| 27 | Netlist's Revised 4th Amended and Supplemental Responses to Samsung's Second Set of Interrogatories (served Nov. 19, 2023) |
| 28 | Tr. of *EDTX1* Pre-Trial Conference (Mar. 28, 2023) (excerpts) |
| 29 | Samsung's Opening Brief, *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55247 (9th Cir. filed June 6, 2022), Dkt. 11 (excerpts) |
| 30 | Tr. of Oral Argument, *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55247 (9th Cir. held June 8, 2023) (excerpts) |
| 31 | Samsung's Response Brief, *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55247 (9th Cir. filed Oct. 6, 2022), Dkt. 32 (excerpts) |
| 32 | Declaration of Joseph Calandra |

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| C.D. Cal. | U.S. District Court for the Central District of California |
| C.D. Cal. Case | *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-CV-993 (C.D. Cal.) |
| *CTA9 Order* | *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683 (9th Cir. Oct. 17, 2023) |
| D. Del. | U.S. District Court for the District of Delaware |
| D. Del. Case | *Samsung Elecs. Co. v. Netlist, Inc.*, No. 1:21-CV-1453 (D. Del.) |
| *EDTX1* | *Netlist Inc. v. Samsung Elecs. Co.*, No. 2:21-CV-463 (E.D. Tex.) |
| ITC | U.S. International Trade Commission |
| JDLA | Joint Development and License Agreement (*see* Ex. 10) |
| JDP | Joint Development Project (*see* Ex. 10) |
| LRDIMM | Load-Reduced Dual In-Line Memory Module |
| MOU | Memorandum of Understanding (*see* Ex. 7) |
| NVDIMM | Non-Volatile Dual In-Line Memory Module |
| NVDIMM-P | A variant (signified by "-P") of NVDIMM |
| RDIMM | Registered Dual In-Line Memory Module |
| SSMF | Samsung's Statement of Material Facts (*infra* sec. III) |

████████████████████

## I.    INTRODUCTION

It is beyond dispute that *all* accused Samsung products are subject to the patent license in the parties' 2015 JDLA.   Indeed, relying on the JDLA, Netlist told the U.S. International Trade Commission that Samsung was *licensed under Netlist's patents:* "Samsung is authorized by cross-license to sell RDIMMs and LRDIMMs"—the very products Netlist accuses of infringement here. Ex. 1 at SAM-NET01351910.  Following Samsung's extensive submissions regarding the scope and interpretation of the JDLA license grant (§ 8) to this Court in *EDTX1*, this Court in that case **confirmed that the JDLA license encompasses all Samsung semiconductor products** (except "Foundry Products"), and Netlist presented no "Foundry Products" evidence.

Netlist alleges (inaccurately) that it terminated the JDLA in July 2020.  That dispute is being resolved in the C.D. Cal. Case.  *See* Dkt. 278 at 2-3.  The issue here is the license's impact during its period of force.  The record overwhelmingly proves that the JDLA licenses all accused products. Once the C.D. Cal. Court evaluates Netlist's alleged termination of the JDLA for material breach, we will know whether the JDLA license negates infringement here *fully* (as it should), or only *partially*. *See* Dkt. 278 at 4-5 ("[T]his Court will not make comment further while that issue [whether "the JDLA is currently 'in full force and effect'"] is squarely before another court.")  Resolving this dispute will reduce trial issues, and thus Samsung seeks partial summary judgment that any product made or sold during the term of the JDLA was licensed.[1]

## II.    STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

1.    Is the scope of Samsung's license under the JDLA limited to products of the joint development project or does it encompass all Samsung semiconductor products, except foundry products, as this Court held in *EDTX1*?

---

[1] Mindful of the Court's statement that it "reasonably may defer issues of Netlist's alleged termination of the JDLA to the [C.D. Cal.]," Dkt. 278 at 5, this motion does not seek relief from this Court regarding alleged termination.

██████████████████████████████████████████████

2.    Are any of the accused products "Foundry Products" under the JDLA?

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    Netlist's Proposal To License Its Patents to Samsung, and the MOU

1.    ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

2.    ████████████████████████████████████████████

███████████████  ██████████████  ██████████████████

████████████████████████████████████  █████   ██ ██

██████████  ███  ████████  ██████  ████████  ████ █

██████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

████████████████████████████████████

3.    ████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████  ████████████  ████████  ██████

██████████████████████████████████  Ex. 9 at NL048993.

### B.    The Parties' November 2015 JDLA

4.    On November 12, 2015, Samsung and Netlist executed the JDLA.  Ex. 10.  ████████████

5. ███████████████████████████████

███████████████████████████

███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████
6. ███████████████████████████████

███████████████████████████

7. ███████████████████████

███████████████████████████
███████████████████████████
████████████████████

██████████████████

███████████████████████████
███████████████████████████
███████████████████████████
████████████████████

███████████████████████████████

██████████████████

8. ███████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

█████████████████████████████

███████████████████████

### C.    Netlist's Post-JDLA Descriptions of Samsung's License Rights

9.     After signing the JDLA, Netlist publicly proclaimed that Samsung is licensed to practice Netlist patents outside the JDP, *i.e.*, for memory products generally (*e.g.*, RDIMMs, LRDIMMs). *See, e.g.*, Ex. 12 at 114 (disputing implication that Netlist viewed "the patent license overall [as] limited to the JDP"); Ex. 13 at 5; Ex. 14 at 8-9. For example, in 2017, Netlist filed an ITC complaint alleging that SK hynix Inc. infringed certain Netlist patents. Ex. 1. Netlist claimed that the public interest would not be harmed by exclusion of those products because **Samsung was licensed to sell RDIMMs and LRDIMMs covered by Netlist patents**:

> **Samsung is authorized** by cross-license to sell RDIMMs and LRDIMMs covered by the asserted patents. . . . Samsung is the largest supplier in the world by volume of memory modules . . . . Thus, [Samsung and others] supply directly competitive articles that could easily replace the [SK hynix] products if they are excluded.

*Id.* at SAM-NET01351910. The accused products in this case are RDIMMs and LRDIMMs.

### D.    Samsung Designs the Accused Products and Sells Them as Samsung Products

10.     The accused products in this case are Samsung semiconductor products (specifically, memory products) that incorporate "DDR4" technology.[2] Ex. 11 at 3-7; Ex. 15 ¶¶607-08 (relying on sales spreadsheet SAM-NET-293-00020959). Netlist accuses Samsung DDR4 LRDIMMS under all asserted patents; for the '912 patent, it also accuses RDIMMs. Ex. 11 at 3-7. The parties agree that no accused product qualifies as NVDIMM-Ps (the JDP products). *See* Dkt. 273 at 8; *see also* Ex. 17 at 108:8-11 (agreeing that NVDIMM-P was "not commercialized").

11.     All accused products are based on Samsung's own designs. ███████████████

█████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████    ██████████

---

[2] "DDR4" stands for "Double Data Rate 4," which is a technical standard used by computers when communicating with memory products. Netlist has withdrawn its non-DDR4 claims.

████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████

12.    Netlist's expert Dr. Mangione-Smith has admitted that Samsung designed the accused products. *E.g.*, Ex. 21 at ex. A ¶99 (stating that Samsung "***designed***" products to function in a certain way); *id.* at ex. B ¶91 (alleging it "could have altered ***its*** memory module design").

13.    Samsung sells all the accused products as its own products, and none of them are sold as non-Samsung products. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████    *see also* Ex. 23 (showing Samsung-branded DDR4 RDIMM products, including specific models); Ex. 24 (same for Samsung-branded DDR4 LRDIMM products); Ex. 25 (excerpted exemplary Samsung-branded DDR4 RDIMM datasheets); Ex. 26 (same for Samsung-branded DDR4 LRDIMM products).

14.    Netlist's infringement contentions and its expert's opinions regarding alleged infringement exclusively target products sold as Samsung products and identify no product produced for a third party and sold under a third-party's name. *E.g.*, Ex. 21 at ex. A ¶11 (stating opinions as to "the Accused ***Samsung's*** DDR4 RDIMMs and LRDIMMs), ¶52 (technical allegations as to "***Samsung's*** DDR4 RDIMMs and LRDIMMs"). Netlist's interrogatory responses do not identify any accused Samsung products as "Foundry Products." *See* Ex. 27 at 47-50. The reports from Netlist's experts also identify no accused "Foundry Products."

### E.    This Court's Rejection, in *EDTX1*, of Netlist's Attempt To Limit the JDLA's License to JDP Products

15.    During *EDTX1*, Samsung sought summary judgment that any products sold before

███████████████████████████████

the alleged JDLA termination were licensed. *EDTX1* Dkt. 196. Samsung specifically asked this Court in *EDTX1* to determine that the JDLA "covers all semiconductor products except foundry products," and to reject Netlist's "new argument that Samsung's patent license should be limited to the parties' NVDIMM-P joint development project." *Id.* at 11, 13; Ex. 28 at 26:11-16.

16.    Netlist maintained that the JDLA license covers only products "in connection with [the parties'] collaboration"—i.e., JDP products. *See EDTX1* Dkt. 343 at 4; *see also* Ex. 28 at 49:19-20 (alleging "the JDLA is limited to the joint development and research"). At the same time, Netlist contended that "the [accused] HBM products are foundry products," and so were expressly not within the definition of "Samsung's Licensed Products."[3] *See* Ex. 28 at 57:8-10.

17.    As to these issues, this Court, in *EDTX1*, expressly approved Samsung's arguments and rejected Netlist's. As Samsung had requested, the Court determined that Samsung was licensed up until the alleged JDLA termination, though it found that the dispute over whether accused HBM products were "Foundry Products" was potentially triable:

> **Samsung's Motion for Summary Judgment That All Products Sold Before July 15, 2020 Are Licensed**
>
> The motion was GRANTED-IN-PART to the extent it seeks a declaration that Samsung had a license until July 15, 2020. The Court found that there are fact issues with respect to whether the [accused HBM] products are "Foundry Products" under the [JDLA], which would determine whether they did or did not fall within the license that existed up until July 15, 2020 and DENIED the motion in that respect.

*EDTX1* Dkt. 432 at 2 (internal citations omitted).

18.    Netlist presented no trial evidence that any accused product was a "Foundry Product." Meanwhile, Samsung ████████████████████████████████

██████████ Ex. 4 at 819:8-25. The Court in *EDTX1* thus entered judgment as a matter of law that the accused HBM products there were not "Foundry Products":

[THE COURT:] With regard to the foundry products issue under the JDLA, . . . this

---

[3] "HBM" means "High-Bandwidth Memory," which was relevant in *EDTX1*.

████████████████████████████

was a live issue that had not been abandoned or narrowed through the impaneling of the jury and the beginning of the trial. Therefore, I am going to rule on the foundry products issue and **I'm going to grant JMOL that there is no infringement prior to the July 15th, 2021 [sic 2020], date with the termination of the JDLA with regard to foundry products or anything else prior to that time.**

Ex. 4 at 1266:17-25. The *EDTX1* final jury instructions mention no foundry dispute, and the *EDTX1* court instructed the jury that the JDLA license applied to "all of each parties' products." *See* Ex. 4 at 1298-99. It also told the jury that Samsung "no longer had [that] license," based on a (now reversed) summary judgment in the C.D. Cal. Case. *Id.*; *CTA9 Order*.

## IV.    GOVERNING LAW

The Court is familiar with the legal and evidentiary standards surrounding summary judgment. *See generally* Fed. R. Civ. P. 56(a); *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017). "Contract interpretation is a question of law generally amenable to summary judgment." *Authentic Apparel Grp. v. United States*, 989 F.3d 1008, 1014 (Fed. Cir. 2021) (internal quotation omitted). Under New York law, contract interpretation has two steps. Courts first determine "[w]hether a contract is ambiguous" as "a question of law." *S. Rd. Assocs., LLC v. Int'l Bus. Machs. Corp.*, 826 N.E.2d 806, 809 (N.Y. 2005). If the contract is unambiguous, then a court must "enforce[] [it] according to its terms." *Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1213 (N.Y. 2007). Where a contract is "ambiguous," however, "[e]xtrinsic evidence of the parties' intent may be considered." *Greenfield v. Philles Recs., Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002).

Issue preclusion (a.k.a. collateral estoppel) is evaluated under regional circuit law. *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1311 (Fed. Cir. 2010). In the Fifth Circuit, issue preclusion applies "when: '(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision.'" *Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 548 (5th Cir. 2013) (quoting *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005)). A final district court judgment gives rise to issue preclusion even

pending appeal. *See DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808, 812 (E.D. Tex. 2014).

## V.    ARGUMENT

### A.    As a Matter of Law, the JDLA Term "Samsung's Licensed Products" Is Not Restricted to JDP Products, and Extends to Any Non-Foundry Semiconductor Products Made by or for Samsung

Netlist's theory that the JDLA's license to Samsung was restricted to only JDP products is both procedurally improper and substantively meritless.  It is procedurally improper because this Court in *EDTX1* already resolved this issue in Samsung's favor, and issue preclusion principles bar revisiting that issue now.  It is substantively meritless in view of the JDLA's plain language and unambiguous terms.  Finally, even if the Court were to examine extrinsic evidence, that evidence overwhelmingly contradicts Netlist's cramped, self-serving interpretation.

#### 1.    The Doctrine of Issue Preclusion Bars Netlist from Revisiting This Court's Determination, in *EDTX1,* That the JDLA License Grant Is Not Restricted to JDP Products

In *EDTX1*, Samsung sought summary judgment and, later, JMOL that its products before the alleged JDLA termination were licensed, and particularly sought a legal determination rejecting Netlist's theory that the JDLA license was restricted to JDP products.  *See* SSMF ¶¶15-18; *see also EDTX1* Dkt. 196 at 13 (seeking rejection of the "argument that Samsung's patent license should be limited to the parties' NVDIMM-P joint development project").  Netlist opposed, arguing that the license was to only products "in connection with [the parties'] collaboration," which were JDP products.  SSMF ¶16; *EDTX1* Dkt. 343 at 4.  By granting this aspect of Samsung's motion, the Court in *EDTX1* rejected Netlist's improper interpretation of the JDLA license.  *See EDTX1* Dkt. 432 at 2. The *EDTX1* Court entered JMOL expressly determining that the Samsung accused products were not "Foundry Products," and instructed the jury accordingly.  SSMF ¶¶17-18; Ex. 4 at 1266:17-25, 1298-99.

8

All *Bradberry*'s conditions for issue preclusion are present, and confirm that Netlist may not dispute that Samsung's JDLA license extends to **all** semiconductor products (except Foundry Products, discussed *infra*). *See generally* 732 F.3d at 548. First, *EDTX1* addressed the identical issue—legal scope of the JDLA's license—that is potentially at issue here. Second, that issue was fully and fairly litigated, via full summary judgment briefing and Samsung's Rule 50(a) motion.

Third, the *EDTX1* determination was necessary to the judgment. The determination that "all" accused products were licensed under the JDLA is irreconcilable with Netlist's contention that the license covers **no** commercial products, reaching only the JDP project NVDIMM-P.[4] Finally, relitigating the JDLA license scope issue in this case would serve no cognizable purpose except to give Netlist another bite at the same apple previously presented in *EDTX1*. In view of this Court's *EDTX1* rejection of Netlist's unsustainable interpretation of the JDLA license grant, the Court should deem the issue settled under the doctrine of issue preclusion.

### 2. The JDLA's License Unambiguously Extends to Samsung's Non-Foundry Products Generally, and Is Not Restricted to JDP Products

Were issue preclusion insufficient to resolve the issue, the record confirms that Samsung's JDLA license is not restricted to JDP products. New York law controls and under that law, the JDLA's plain language—which is unambiguous—is dispositive. *Beal*, 865 N.E.2d at 1213 (applying New York law, courts enforce an unambiguous contract according to its terms).

### a. The JDLA's Text Is Unambiguous

---

[4] The unavailability of pre-suit damages in *EDTX1* (because the Court granted summary judgment on this point, *EDTX1* Dkt. 432 at 3) does not erase the preclusion. The *EDTX1* record makes clear that Samsung's status as a licensee until July 15, 2020 was a critical aspect of its defense against claims of willfulness because "up to the termination of the JDLA . . . , Samsung was licensed" and "during the period of the licensure, Samsung can't infringe if they're licensed, and if they can't infringe, **they can't willfully infringe**"—rejecting Netlist's contrary arguments. Ex. 28 at 153:5-7, 154:25-155:3. The Court "left open the issue for the jury to decide" whether accused HBM products sold before said termination were Foundry Products, as such was "fair game for willfulness." *Id.* at 155:3-11. This was another reason the Foundry Product issue was live at the *EDTX1* trial, ultimately resolved under Rule 50(a). SSMF ¶¶15-18.

██████████████████████████████████████████

First and foremost, ████████████████████████████████████████████████

████████████ Ex. 10 at 8; *see also* SSMF ¶¶5-6.

████████████████████████████████ a defined term that, again, ████████████████

████████████ Ex. 10 at 3; *see also* SSMF ¶7.  Section 8.2's license ████████████████

██████████████████████████████████████████████████ Ex. 10 at 2; SSMF ¶¶6-7.

Thus the license unambiguously licenses "all" of Samsung's semiconductor products (excepting Foundry Products), and is not restricted to the "Developed Product."

Other portions of the JDLA establish beyond question that the JDLA's license was not limited to development cooperation.  Its very title, "Joint Development **and** License Agreement" indicates it, Ex. 10 at 1, as do its numerous sections that expressly refer to the JDP, the "Developed Product," or "NVDIMM-P," *id.* §§ 1-2, 4-6, 11, 16.  The JDLA's fourth recital similarly makes clear ████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████ *Id.* at 1.  The fourth recital thus reflects the parties' recognition that broad cross-licenses would advance and benefit their general relationship, and in that sense, and as consideration under the agreement, the licenses were given "in connection with the collaboration." *See* Ex. 30 at 15:9-21.[5] ████████████████████████████████████████████████████

████████████████████████ Ex. 10 §§ 7-8.

---

[5] When Samsung's appellate counsel stated that, based on the JDLA's opening recitals, the "licenses [were] being given in connection with the collaboration," i.e., the JDP, that statement had nothing to do with the scope of the patent license granted in the JDLA, an issue not at issue in the appeal.  Rather, it was a response to Netlist's argument that "the supply obligation was a primary consideration for getting these licenses." Ex. 30 at 15:7-8.  The obvious point was that Netlist did not grant Samsung a patent license in exchange for an unlimited supply obligation but instead Netlist granted Samsung a license in exchange for promised collaboration on the JDP, as well as up front monetary compensation.  As the next line in the transcript reflects, the point of Samsung's argument was not about the scope of the license but that "Netlist got a whole bunch of consideration in addition to this supply obligation." *Id.* at 15:22-23.

███████████████████████████████████████████

**b.** **Samsung Has Never Argued That the JDLA's License Is Limited to JDP Products Only, and Netlist's Position Here Is Irreconcilable with Other Legal Proceedings**

From time to time, Netlist has alleged that Samsung told the Ninth Circuit that the JDLA license is limited to JDP products. *E.g.*, Dkt. 273 at 1-2. That allegation is baseless. As part of its successful Ninth Circuit appeal, Samsung pointed out that **some** provisions of the JDLA are directed solely to the JDP. *See* Ex. 31 at 6; Ex. 29 at 29-30. That is not the same as arguing that **all** JDLA provisions are restricted to the JDP, as Netlist inaccurately presumes. For example, Samsung merely explained that the ███████████████████████████████████████████████

██████████████████████ Ex. 10 § 3.1. Despite what this payment is called, it is actually ████████

███████████ *See* SSMF ¶1. It was **Netlist**, not Samsung, that p███████████████████████████

███████████████████████████████████████████████ *Id.*; *see also* Ex. 4 at 1140:1-1141:15; Ex. 2 at NL107807; Ex. 3 at NL119238. Because Netlist itself urged to ████████████

███████████████████ any current contention that the entire license structure, ██████████████

████████ was limited to only development activities lacks credibility. SSMF ¶1. Indeed, when Netlist proposed to the D. Del. court that Samsung had been inconsistent regarding the license scope, that court specifically rejected the allegation. D. Del. Case Dkt. 223 ("[T]he Court is unpersuaded that Samsung advanced an inconsistent position before the Ninth Circuit Court of Appeals.").

If anything, it is Netlist that has been inconsistent. Netlist told the ITC and the C.D. Cal. court that Samsung was **generally licensed under Netlist's patents.** SSMF ¶9. The October 31, 2017 ITC statement speaks for itself: "Samsung is authorized by cross-license [i.e., the JDLA] to sell RDIMMs and LRDIMMs"—the very products Netlist accuses of infringement here. Ex. 1 at SAM-NET0135910. And Netlist urged the C.D. Cal. court to resist any conclusion "that the patent license overall was limited to the parties' 'joint research and development.'" Ex. 12 at 114. Those statements are irreconcilable with the position Netlist now appears to take, which is that the JDLA license is

11

██████████████████████████████████

limited to JDP products.  On such a record, New York bars an interpreting court reading JDLA § 8.2's license in the narrow, "JDP-Only" manner that Netlist has previously proposed.  Even were the Court to find no preclusion, the record alone merits rejecting Netlist's argument as a matter of law.

### c.  Consideration of Extrinsic Evidence, Permissible Only If the Court Finds the JDLA's License Ambiguous, Confirms Samsung's Interpretation

Were the Court to find JDLA § 8.2's license to Samsung ambiguous (it should not, for the reasons discussed above) and consider extrinsic evidence, that record readily confirms Samsung's interpretation.  The negotiation history overwhelmingly demonstrates that the parties intended, from the start, to confer on Samsung a broad cross-license.  Netlist's opening proposals emphasized that, and went so far as to propose that ████████████████████████████████ SSMF ¶1; *see also* Ex. 3 at NL119238.  Samsung's counterproposal ██████████████████ ████████████████████ SSMF ¶1; Ex. 5. ███████████  It contemplates a broad license to ████████████████████ ████████████████████████████████ SSMF ¶2; Ex. 7 § III.1.  Netlist seems to have found that provision so satisfactory that it emphasized its desire, in subsequent negotiation, to maintain ████████████████████████ SSMF ¶3; Ex. 8 at T-NL045876.  And internally, it ████████████████████████████████████ SSMF ¶3; Ex. 9 at NL048993.

Together or separately, issue preclusion, the contract language, and the general record warrant a legal determination that Samsung's JDLA license is not limited to JDP products.

### B.  As a Matter of Law, None of the Accused Products Are "Foundry Products"

Because all accused products are Samsung semiconductor products, *see* SSMF ¶10, they fall within the JDLA's license unless they meet the JDLA's definition of "Foundry Products."  Ex. 10 §§ 8.2-8.3.  There is no genuine issue of material fact that none of the accused products are Foundry

███████████████████████████████

Products because all accused products are **_both_** (1) designed by Samsung, and (2) sold as Samsung products. Either one of these conditions would be enough to confirm that they are not "Foundry Products." With both, it is beyond cognizable dispute that no accused product is a "Foundry Product."

### 1.     The Facts About the Design and Sales of the Accused Products Are Undisputed

**_First,_** all accused products are designed by Samsung and not third parties. *See* SSMF ¶11; *see also* Ex. 32 ¶3; Ex. 16 at 35:24-36:2; ████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████ Netlist's technical expert Dr. Mangione-Smith has confirmed as much. SSMF ¶12; *see also* Ex. 21 at ex. A ¶99; *id.* at Ex. B ¶91. Although ███████████████████

███████████████████████████████████

███████ SSMF ¶11; Ex. 32 ¶3; Ex. 4 at 819:8-25.

**_Second,_** all accused products are sold as Samsung products. SSMF ¶13; Ex. 32 ¶4; ██████

███████████████████████████████████████

███████████████████████████████████████

██████████████ *see also* Exs. 23-26. Indeed, Netlist has not identified a **_single product branded by a non-Samsung entity_** as accused in this case, and its technical experts have analyzed only Samsung-branded products. The deadline for Netlist to amend infringement contentions is, of course, long past. Accordingly, the universe of accused products in this case are those sold under Samsung's brand.

### 2.     No Accused Products Are "Foundry Products"

Comparing the evidence above to the JDLA's definition of "Foundry Products" overwhelmingly settles the issue. According to the JDLA, a ████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ SSMF ¶7; Ex. 10 at 2.[6]  The accused products in this case satisfy none of these conditions.  They were not made for third parties; they were not made based on third party designs; and they are all sold as Samsung products.

Though repeatedly referencing the JDLA's "Foundry Products" definition, Netlist's written discovery responses do not identify any accused product as a "Foundry Product."  *See* SSMF ¶¶13-14; Ex. 27 at 47-50.  Nor do any of the reports from Netlist's experts.  That fact alone speaks volumes. Having neglected, during the entire course of this litigation, to identify even a single "Foundry Product" among the accused products, Netlist must now abide by that conduct.[7]

Indeed, the situation resembles that of *EDTX1*.  There, in the run-up to trial, Netlist repeatedly proposed that the accused HBM products might be "Foundry Products"—but when trial came, Netlist did not even attempt to prove the point for ***even a single product*** and this Court duly entered JMOL that none of the accused products were "Foundry Products."  *See* SSMF ¶¶15-18; Ex. 4 at 1266:17-25.  Neither Samsung, the jury, nor the Court should endure a repeat of that situation here.  Because in this case Netlist has no evidence whatsoever of accused products being "Foundry Products," determination as a matter of law is warranted.  Samsung respectfully requests summary judgment that no accused products are "Foundry Products."

## C.    This Court Should Grant Partial Summary Judgment That All Samsung Accused Products Are Licensed Under the JDLA

The two determinations requested above—that the JDLA's license grant is not restricted to

---

[6] Section 8.3, to which the definition refers, confirms that ████████████████████████████████ ████████████████████████████████ Ex. 10 at 8.  Because there are no accused Foundry Products, application of § 8.3 is unnecessary here.

[7] In *EDTX1*, Netlist denied its burden to identify any accused product as a "Foundry Product."  *See EDTX1* Dkt. 343 at 3.  That position is wrong.  Samsung having tendered evidence of no "Foundry Products," Netlist's burden is to rebut.  *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1377 (Fed. Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

JDP products, and that none of the accused products are "Foundry Products"—clear the way for partial summary judgment.[8]  All of the asserted patents are subject to the JDLA's license because all of them have effective first filing dates well within the JDLA's requirements.  *See* SSMF ¶ 8.  Therefore, the JDLA indisputably licenses every asserted patent.  Samsung respectfully requests that the Court enter partial summary judgment as to the impact the JDLA has on Netlist's infringement claims.

## VI.    CONCLUSION

For the reasons stated above, Samsung respectfully requests partial summary judgment that all accused products are covered by the JDLA's license to Samsung.

Date: January 16, 2024

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:    (903) 934-9257

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956

Respectfully submitted,

*/s/ Lauren A. Degnan*
Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2231

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400

---

[8] "Partial" summary judgment is warranted because, as of this motion, the C.D. Cal. court has yet to resolve the parties' dispute over Netlist's purported July 2020 termination of the JDLA.

████████████████████

Telephone: (202)-662-6000

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile:  (415) 955-6571

San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

████████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on January 16, 2024.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by electronic mail.

/s/ Lauren A. Degnan