# Exhibit 13

JASON C. LO, SBN 219030
  jlo@gibsondunn.com
MATTHEW BENJAMIN (pro hac vice)
  mbenjamin@gibsondunn.com
RAYMOND A. LAMAGNA, SBN 244821
  rlamagna@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

JASON SHEASBY, SBN 205455
  jsheasby@irell.com
IRELL & MANELLA LLP
800 Ave. of the Stars
Los Angeles, CA 90067
Telephone: 310.203.7096
Facsimile: 310.203.7199

Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>        Defendant. | CASE NO. 8:20-cv-993-MCS (ADS)<br><br>**NETLIST INC.'S OPPOSITION TO SAMSUNG ELECTRONICS CO., LTD.'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT** |

Netlist **on Netlist's request.**" It makes no reference to the parties' joint development efforts whatsoever. Nor does the heading of Section 6—"Supply of Components"— suggest in any way that such components are to be supplied only in connection with joint development efforts.

The provision immediately preceding Section 6.2 demonstrates that where the parties intended to limit an obligation to a specific class of products, they knew how to do so. Section 6.1 mentions NVDIMM-P specifically in connection with **Netlist's** obligation to provide certain controller products **to Samsung**. Section 6.2, in contrast, says nothing about NVDIMM-P or any product other than NAND and DRAM. Because Samsung has not identified an ambiguity in Section 6.2, it "must be enforced according to the plain meaning of its terms." *Greenfield*, 98 N.Y.2d at 569.

Samsung's attempt to read a unique implied limitation into Section 6.2 also does not make sense in the broader context of the contract. Notably, Samsung does not argue that the **entire** JDLA relates strictly to the parties' joint development efforts—conveniently, only Section 6.2 is purportedly so limited. Samsung even admits that "the main purpose of the JDLA was patent licensing," which should be construed "broad[ly]." Br. at 26 n.6. Samsung provides **no reason** for the Court to import an implied limitation into Section 6.2 that **concededly** does not exist in other provisions in that same contract—whether it be Section 7 (the parties' mutual release of claims), Section 8 (the grant of patent licenses), or Sections 1 and 13.1 (the term of the contract—including the supply obligation—running through "the expiration of the last to expire of the Licensed Patents"). At bottom, Samsung is simply asking the Court to broadly construe the patent licensing consideration that it received from Netlist, SUF ¶¶ 24, 42, and simultaneously to narrowly construe the mandatory supply obligation consideration that it agreed to provide, *id.* ¶¶ 14-17. There is no basis in the text of the JDLA or otherwise for that self-serving distinction. Samsung is a highly sophisticated company that is capable of drafting agreements spelling out precisely

507 F. Supp. 3d 508, 545 (S.D.N.Y. 2020) (failure to timely pay taxes was material breach notwithstanding subsequent efforts to mitigate damages). In any event, Netlist did suffer damages as a result of Samsung's improper withholding and refusal to cooperate. *See* SUF ¶ 54.

**Third**, Samsung argues that Netlist waived its right to terminate by "intentionally delay[ing]" the termination. Br. 33. That is both untrue and not waiver. Rather, Samsung tries to relitigate the election of remedies argument that it previously raised in its motion for judgment on the pleadings. Dkt. 61 at 22-23. This Court has already rejected Samsung's argument that "Netlist did not promptly seek termination." Dkt. 120 at 7. By changing its verbiage, Samsung is attempting a blatant and improper end-run around the Court's resolution of this very issue. *See Ischay*, 383 F. Supp. 2d at 1214; Local Rule 7-18.

Samsung's waiver argument also fails on the merits. "Under New York law, waiver is the voluntary and intentional relinquishment of a contract right," which "must be based on a clear manifestation of intent" and "is not to be inferred from a doubtful or equivocal act." *Optima Media Grp. Ltd. v. Bloomberg, L.P.*, 2021 WL 1941878, at *13 (S.D.N.Y. May 14, 2021). It has no bearing here because the parties included an express no-waiver of rights provision in their agreement. Choi Ex. 19 § 16.2. New York law "uniformly enforce[s] these types of clauses," which erect a "high burden" that Samsung can overcome only by providing "evidence sufficient to demonstrate that [Netlist] intended for the no-waiver clause to have no effect" here. *Optima*, 2021 WL 1941878, at *14. While a no-waiver clause can itself be waived, a party's "decision not to terminate . . . earlier than when it did" provides no basis from which a court can "infer [an] intention to waive." *Id.* Accordingly, Netlist did not waive its right to terminate the JDLA.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

1   Dated: August 30, 2021

GIBSON, DUNN & CRUTCHER LLP

2   By: /s/ Jason C. Lo

3   Jason C. Lo
    333 South Grand Avenue

4   Los Angeles, CA 90071
    213.229.7000

5   jlo@gibsondunn.com

6

7   Attorneys for Plaintiff Netlist Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NETLIST INC.'S OPPOSITION TO SAMSUNG ELECTRONICS
CO., LTD.'S MOTION FOR SUMMARY JUDGMENT OR IN
THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT
CASE NO. 8:20-CV-993-MCS (ADS)

- 26 -