# Exhibit 29

[redacted]

Case Nos. 22-55209 (L), 22-55247

*In the*

# United States Court of Appeals
*for the*
# Ninth Circuit

NETLIST INC.,
a Delaware corporation,
*Plaintiff-Appellee,*

v.

SAMSUNG ELECTRONICS CO., LTD.,
a Korean corporation,
*Defendant-Appellant.*

*Appeal from the United States District Court for the Central District of California (Santa Ana), Case No. 8:20-cv-00993-MCS-ADS · Honorable Mark C. Scarsi, District Judge*

## FIRST BRIEF ON CROSS-APPEAL
### [APPELLANT'S OPENING BRIEF]

| | |
|---|---|
| ANTON METLITSKY | MICHAEL G. YODER |
| EPHRAIM MCDOWELL | MARC F. FEINSTEIN |
| O'MELVENY & MYERS, LLP | O'MELVENY & MYERS, LLP |
| Times Square Tower | 400 South Hope Street, 18th Floor |
| 7 Times Square | Los Angeles, CA 90071 |
| New York, NY 10036 | Telephone: (213) 430-6000 |
| Telephone: (212) 326-2000 | myoder@omm.com |
| ametlitsky@omm.com | mfeinstein@omm.com |
| emcdowell@omm.com | |

*Attorneys for Appellant Samsung Electronics Co., Ltd.*



COUNSEL PRESS · (213) 680-2300     PRINTED ON RECYCLED PAPER

SAM-NET00361881

fast memory like DRAM with a higher density of slower memory like NAND", 4-ER-711, § 1—NAND and DRAM are described generically as components of the NVDIMM-P product. Section 6.2 thus accurately describes exactly what Samsung was required to supply for the NVDIMM-P project—namely, generic NAND and DRAM, full stop. Sections 6.1 and 6.2 are, in other words, complementary to each other—they each set forth the components that the other party agreed to supply for the NVDIMM-P joint-development project.

Third, the court reasoned that because JDLA sections 7 and 8—which grant mutual release of patent-infringement claims and cross-licensing of patents—do not "pertain specifically to the NVDIMM-P project," section 6.2 may be read in the same manner. 1-ER-34-35. This reading misunderstands the contract's structure. As the JDLA's title shows, the agreement addresses two distinct items: (1) "joint development" of the NVDIMM-P product and (2) "licens[ing]" of the parties' patents. 4-ER-709. Sections 7 and 8 speak to the patent licenses. It therefore makes sense that Sections 7 and 8 do not speak in NVDIMM-P-specific terms. *See, e.g.,* 4-ER-711, § 1 (defining "Netlist's Licensed Patents" to mean "*any and all* Patents owned or controlled by Netlist or any of its Subsidiaries" (emphasis added)); *id.* (defining Samsung's "Licensed Products" to mean "*all* semiconductor

-29-

SAM-NET00361918

products manufactured or have manufactured by or for Samsung or its Subsidiaries" (emphasis added)).

Section 6, by contrast, sets out obligations for effectuating the joint development project. For one thing, the section is labeled "Supply of *Components*," which naturally relates to the new technology the parties were developing rather than to patent licensing. That is confirmed by section 6.1, under which "Netlist will provide Samsung any NVDIMM-P controller," 4-ER-714, § 6.1—an NVDIMM-P component. It would be anomalous if section 6 covered only NVDIMM-P components in its first subpart, but included non-NVDIMM-P products in its second subpart. And indeed, NAND and DRAM—the focus of section 6.2—are two of the main components of NVDIMM-P. *See supra* at 28. So while it is true that sections 7 and 8 do not "pertain specifically to the NVDIMM-P project," 1-ER-34-35, that says nothing about section 6.2's scope. When read in context, section 6.2 unambiguously imposes an obligation on Samsung to supply NAND and DRAM only for the parties' joint-development project.

    2.    *At Minimum, Section 6.2 Is Ambiguous, And The Extrinsic Evidence Compels Samsung's Interpretation*

At the very least, the contract is "reasonably susceptible" of Samsung's construction. *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 572 (1986). When faced with an ambiguous contract, "the courts of New York will examine the

SAM-NET00361919

Yet Netlist chose not to terminate the contract until 2020. This is exactly what the election-of-remedies doctrine precludes. *See ESPN, Inc. v. Off. of Comm'r of Baseball*, 76 F. Supp. 2d 383, 391-92 (S.D.N.Y. 1999) (allowing nonbreaching party to "terminate the contract based on breaches that occurred almost two years ago would violate important principles of contract law"). And the JDLA's no-waiver provision does not excuse Netlist's failure to seek termination. *See id.* at 390 (a "standard 'no-waiver' provision does not immunize or excuse parties from the requirements and consequences of election"). Thus, Samsung should have been allowed to raise this defense.

## CONCLUSION

For the foregoing reasons, the judgment below should be reversed.

Respectfully Submitted,

Dated: June 6, 2022

By: /s/ Michael G. Yoder

Anton Metlitsky
Ephraim McDowell
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

Michael G. Yoder
Marc Feinstein
O'Melveny & Myers LLP
400 South Hope Street
18th Floor
Los Angeles, CA 90071

-65-

SAM-NET00361954