# Exhibit 30

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

```
 1         UNITED STATES COURT OF APPEALS, NINTH CIRCUIT
 2
 3    NETLIST INC.,
      a Delaware corporation,
 4
           Plaintiff-Appellee,
 5
      vs.                                    Case No.:  22-55209
 6
      SAMSUNG ELECTRONICS CO., LTD.,
 7    a Korean corporation,
 8         Defendant-Appellant.
 9
10
11
12
13         TRANSCRIPT OF AUDIO-RECORDED ORAL ARGUMENT
14      Before:  M. SMITH and DESAI, Circuit Judges, and AMON,
15                        District Judge
16                        June 8, 2023
17                         1:36 p.m.
18
19
20
21
22    Transcribed By:
      TERRI NESTORE
23    CSR No. 5614, RPR, CRR
24
25    Job No. 6169798

                                                          Page 1
```

```
 1    APPEARANCES:
 2    For the Plaintiff-Appellee:
 3         IRELL & MANELLA LLP
           A. MATTHEW ASHLEY, ESQ.
 4         840 Newport Center Drive, Suite 400
           Newport Beach, California 92660
 5         949.760.5274
           mashley@irell.com
 6
      For the Defendant-Appellant:
 7
           O'MELVENY & MYERS LLP
 8         MICHAEL G. YODER, ESQ.
           ANTON METLITSKY, ESQ.
 9         610 Newport Center Drive, 17th Floor
           Newport Beach, California 92660
10         949.823.6900
           myoder@omm.com
11         ametlitsky@omm.com
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 2

```
 1                JUSTICE SMITH:  All right.
 2                Mr. Yoder, please proceed.
 3                MR. YODER:  Thank you.
 4                May it please the court, Michael Yoder for
 5    defendant and appellant Samsung Electronics.  I am joined
 6    at counsel table by my partner, Anton Metlitsky.
 7                JUSTICE SMITH:  I think we saw you the other day,
 8    did we not?
 9                MR. METLITSKY:  You did.
10                JUSTICE SMITH:  Welcome.  Nice to see you again.
11                MR. METLITSKY:  Thank you.
12                MR. YODER:  So I hope you take it easier on me
13    than you did on my partner.
14                JUSTICE SMITH:  Oh, we were gentle.
15                MR. YODER:  So with the court's permission, I
16    would like to reserve five minutes for rebuttal and to
17    address any questions or issues that come up on the
18    cross-appeal that may be argued during the respondent's
19    argument.
20                JUSTICE SMITH:  Okay.
21                MR. YODER:  The district court held at summary
22    judgment that Netlist had properly terminated the parties'
23    Joint Development and Licensing Agreement because of
24    Samsung's purportedly material breaches of Section 6.2 and
25    Section 3 of the JDLA.
```

Page 3

```
 1              MR. YODER:  Yeah, and so but that also goes to
 2    materiality.  One, it goes to whether there's a breach; it
 3    also goes to whether it's material.
 4              Did Netlist really believe it was material when
 5    they sat on it for five years and didn't declare a breach?
 6              And when finally the higher Korean tax authority
 7    overruled the lower Korean tax authority, was there a
 8    breach when the lower Korean tax authority agreed with
 9    Samsung?  It's nonsense.  It can't be.
10              But when the higher authority decides there's a
11    refund, with interest, there's nothing to cure; but yet
12    under the district court's interpretation, Samsung's out
13    of luck.  Never could have cured, never given a chance to
14    cure, but there's this strict liability based upon what is
15    determined five years later.
16              So not a breach, but also that should have gone
17    to the jury on materiality.
18              JUSTICE SMITH:  Well, I gather from Samsung's
19    perspective, if there's ambiguity and if Section 6.2 is
20    interpreted the way you think it should, considering the
21    totality of the circumstances, the tax gets reversed as
22    well because there's no ambiguity there, it's not strict
23    liability and the declaratory relief gets overturned
24    because the others didn't happen.  Is that correct?
25              MR. YODER:  Right.  That's our position,
```

Page 14

```
 1   Your Honor.  But even if the court doesn't agree that that
 2   should be the outcome, there needs to be a remand and a
 3   trial on these issues for sure.
 4           And that's true as to materiality on 6.2 as well,
 5   and where I was going with that, when you go through the
 6   briefing on the issue of materiality, Netlist's argument
 7   was really, it was material because the supply obligation
 8   was a primary consideration for getting these licenses.
 9           Well, number one, if you look at the JDLA and you
10   look at the recitals, the recitals are very clear -- and
11   parties put recitals in agreements to make sure language
12   isn't tortured down the road by lawyers and courts, right?
13           Here's what our purpose is, interpret this
14   agreement consistent with our purpose.
15           And when you look at the recitals, what does it
16   say about the licenses?
17           Whereas in connection with their collaboration
18   hereunder, the parties wish to grant to each other a
19   cross-license under each party's patents.
20           The licenses are being given in connection with
21   the collaboration.  That's the joint development project.
22           And Netlist got a whole bunch of consideration in
23   addition to this supply obligation.
24           If there were an unlimited supply obligation, it
25   would be called out in some fashion.
```

Page 15

```
 1                JUSTICE SMITH:  Do you want to save -- I thought
 2   you said you want to say five minutes.
 3                It's up to you entirely, of course.
 4                MR. YODER:  No, and I am watching the clock,
 5   Your Honor, because I got a sense we need to do that.
 6                But the thing I would say, though, just on the
 7   materiality, is that when you look at the record before
 8   Judge Scarsi on the 6.2 issue in materiality, Netlist's
 9   argument was that the supply obligation was the primary
10   benefit that it received, and Judge Scarsi agreed with
11   that.  He said this was integral, this was a key
12   component, and he made a factual finding based upon
13   essentially a post hoc declaration by Netlist's CEO, and
14   he disregarded all the other evidence in the record as to
15   whether this was the primary benefit.
16                JUSTICE AMON:  So it wasn't an undisputed fact?
17                MR. YODER:  Pardon?
18                JUSTICE AMON:  It wasn't an undisputed fact,
19   then?  In other words, the fact.
20                MR. YODER:  It was disputed.  It was disputed.
21                JUSTICE AMON:  The fact was disputed?
22                MR. YODER:  Very much disputed, yeah, whether --
23                JUSTICE DESAI:  He shouldn't have resolved it
24   against you because it was disputed?
25                MR. YODER:  Yeah, absolutely not.  I mean, even
```

Page 16

1   of which is damages; the others are contract, Netlist
2   performance, Samsung's breach.
3          But what the district court did when he said,
4   here's my ruling on summary judgment, it was as to three
5   elements.  It wasn't as to liability as a whole, it was
6   existence of contract, performance of contract, and
7   Samsung's breach of the supply provision.  That's 1ER41.
8          And in response to a summary judgment motion that
9   identifies three elements and says we want summary
10  judgment on those, I don't believe that Rule 56 requires a
11  defendant to put in affirmative defenses.
12         JUSTICE SMITH:  Okay.
13         MR. YODER:  Thank you so much.
14         JUSTICE SMITH:  Any other questions by my
15  colleagues?  Thanks to counsel.
16         MR. YODER:  Thank you.
17         JUSTICE SMITH:  This is an interesting case.  We
18  appreciate the preparation on your argument.
19         The case just argued is submitted, and I'm
20  pleased to say that the court is adjourned for the week.
21         THE BAILIFF:  All rise.
22         Court for this session stands adjourned.
23         (End of recording.)
24
25

Page 40