# Exhibit 31

███████████████████████████

Case Nos. 22-55209 (L), 22-55247

*In the*

# United States Court of Appeals
*for the*
# Ninth Circuit

NETLIST INC.,
a Delaware corporation,
*Plaintiff-Appellee,*

v.

SAMSUNG ELECTRONICS CO., LTD.,
a Korean corporation,
*Defendant-Appellant.*

_____

*Appeal from the United States District Court for the Central District of California (Santa Ana),
Case No. 8:20-cv-00993-MCS-ADS · Honorable Mark C. Scarsi, District Judge*

## THIRD BRIEF ON CROSS-APPEAL
### [APPELLANT'S RESPONSE AND REPLY BRIEF]
### [REDACTED – PUBLIC VERSION]

| | |
|---|---|
| ANTON METLITSKY | MICHAEL G. YODER |
| BRUCE C. PETTIG | MARC F. FEINSTEIN |
| KEVIN J. KOAI | O'MELVENY & MYERS, LLP |
| O'MELVENY & MYERS, LLP | 400 South Hope Street, 18th Floor |
| Times Square Tower | Los Angeles, CA 90071 |
| 7 Times Square | Telephone: (213) 430-6000 |
| New York, NY 10036 | myoder@omm.com |
| Telephone: (212) 326-2000 | mfeinstein@omm.com |
| ametlitsky@omm.com | |
| bpettig@omm.com | |
| kkoai@omm.com | |

*Attorneys for Appellant Samsung Electronics Co., Ltd.*



COUNSEL PRESS · (213) 680-2300      PRINTED ON RECYCLED PAPER

SAM-NET-293_00025055

saddle Samsung with an unbounded obligation to furnish Netlist with NAND and DRAM for any purpose, unrelated to the joint-development project.

> **b. Read as a whole, the JDLA unambiguously limits section 6.2 to the NVDIMM-P joint-development project.**

Netlist acknowledges that under New York law, contracts must be read as a whole. RB12-13. New York law thus requires the Court to look beyond the text of section 6.2 alone and to read section 6.2 in light of the broader text, structure, and purpose of the JDLA, construing the contract "as a whole" and interpreting section 6.2 "with reference to the whole." *Westmoreland*, 100 N.Y.2d at 358. As Samsung has explained, that analysis unambiguously limits Samsung's supply obligation to the NVDIMM-P joint-development project. OB25-30.

Netlist's brief barely references the JDLA's broader text, structure, or purpose. Indeed, Netlist's only attempt at an argument based on the JDLA's structure is that because sections 7 and 8 of the JDLA—which relate to cross-licensing of patents—are not limited to the NVDIMM-P joint-development project, section 6.2 also need not be limited to that project. RB13.

5

But Netlist's argument contradicts the JDLA's clear structure and purpose. The JDLA's title itself—the "Joint Development and License Agreement"—makes plain that the parties' intent was twofold: (a) to commit the parties to jointly develop an NVDIMM-P product; and (b) to cross-license certain patents. *E.g.*, OB29-30. Accordingly, each substantive section[1] of the JDLA corresponds to one of these two different purposes. Sections 2 through 6 concern the NVDIMM-P joint-development project, addressing subjects such as the collaborative process, development costs, jointly developed IP, production standards, and component supplies. 4-ER-712-14. In contrast, sections 7 and 8 deal with patent licensing, not the joint-development project. 4-ER-715-16.

The JDLA's text, structure, and purpose show that section 6 establishes the parties' mutual supply obligations *for the NVDIMM-P joint-development project*. But in Netlist's view, section 6 is a hybrid: While Netlist's supply obligation in section 6.1 concerns only the NVDIMM-P

---

[1] Section 1 is a definitions section. 4-ER-709-12. The sections after 8 are not specific to either the joint-development project or patent licensing, but rather concern the entire JDLA. But those sections do not set forth the parties' substantive obligations under the contract, and instead focus on issues such as confidentiality, contract remedies, representations and warranties, and the like. *See* 4-ER-716-20.

6

joint-development project, section 6.2 inexplicably extends beyond that project and requires Samsung to supply Netlist memory on demand, for any purpose. As just shown, however, every other substantive section of the JDLA exclusively concerns *either* the NVDIMM-P joint-development project *or* non-joint-development issues, thus rebutting any suggestion by Netlist that section 6 concerns both.

Indeed, all textual cues in section 6 indicate that both sections 6.1 and 6.2 concern only the joint-development project. Take section 6's title: "Supply of *Components*." 4-ER-714-15 (§6) (emphasis added). In a contract to jointly develop a particular product (like the JDLA), the components to be supplied are those needed for the parties' *jointly developed product*. This understanding is reinforced by Netlist's supply obligation in section 6.1, which Netlist agrees is limited to the NVDIMM-P joint-development project. Sections 6.1 and 6.2 establish parallel obligations: Section 6.1 establishes Netlist's supply obligation for the joint project, and section 6.2 establishes Samsung's corresponding supply obligation for that project. OB30. That parallel structure precludes Netlist's construction of section 6.2, under which the parties' supply obligations would be wildly asymmetric.

SAM-NET-293_00025072

(2001). Netlist, by contrast, seeks fees it voluntarily incurred after the alleged breach, namely, after December 30, 2020.

The point of prejudgment interest is to compensate a plaintiff for interest it could have earned if it had not been deprived of money that it eventually collected in damages. But Netlist did not lose the use of the money it paid PwC until it actually paid PwC. Allowing Netlist to obtain prejudgment interest five years prior to that date would be an unwarranted windfall that this Court should reject.

## CONCLUSION

The judgment below should be reversed, with directions to enter judgment for Samsung.

Respectfully Submitted,

Dated: October 6, 2022

By: /s/ Michael G. Yoder

Anton Metlitsky
Bruce C. Pettig
Kevin J. Koai
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

Michael G. Yoder
Marc Feinstein
O'Melveny & Myers LLP
400 South Hope Street
18th Floor
Los Angeles, CA 90071

71

SAM-NET-293_00025136