UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>    Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.,<br><br>    Defendants. | Civil No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

## SAMSUNG'S *DAUBERT* MOTION AND
## MOTION TO STRIKE EXPERT TESTIMONY OF DAVID KENNEDY

## TABLE OF CONTENTS

TABLE OF EXHIBITS .................................................................................................................vi

TABLE OF ABBREVIATIONS ...................................................................................................vi

I.    GOVERNING LAW ...........................................................................................................2

II.   ARGUMENT .......................................................................................................................2

      A.    Mr. Kennedy's "Fully Apportioned" Rates Fail To Apportion .....................................2

            1.    Summary of Mr. Kennedy's "Economic Benefits" Opinions ..........................2

            2.    Mr. Kennedy's Rates Are Not Apportioned .........................................................3

            3.    Mr. Kennedy's "Fully Apportioned" Rates Give 100% of
                  Incremental Revenues to Netlist, Contrary to the Reasonable
                  Royalty Framework ............................................................................................4

      B.    Mr. Kennedy's "Additionally Apportioned Rates" Are Likewise
            Insufficient ...........................................................................................................................5

      C.    Mr. Kennedy's Opinions Rely on Unreliable Technical Inputs .......................................6

      D.    Mr. Kennedy's Opinions Rely on an Unreliable Regression Analysis .......................7

      E.    Mr. Kennedy's Opinions About Samsung's NIAs Are Unsupported .........................7

      F.    Mr. Kennedy Improperly Seeks Double Recovery from *EDTX1* .................................9

            1.    Summary of Mr. Kennedy's Reliance on the *EDTX1* Jury
                  Verdict ...............................................................................................................9

            2.    Summary of Mr. Kennedy's Relevant *EDTX1* Damages
                  Opinions ............................................................................................................9

            3.    Jury-Determined Damages Are Not Reliable Evidence .................................10

            4.    Mr. Kennedy's Analysis from *EDTX1* Demonstrates His
                  Failure To Apportion, and Violates the Rule Against Double
                  Recovery ..........................................................................................................10

      G.    Mr. Kennedy's Use of Admittedly Non-Comparable Licenses Is
            Improper .............................................................................................................................11

      H.    Mr. Kennedy's Unsupported RAND Opinions Are Conclusory and
            Improper .............................................................................................................................12

I.    Mr. Kennedy's Prejudicial Opinions Outside of His Expertise Are Improper ................................................................................................................... 13

J.    Mr. Kennedy's Opinions Rely on Theories Not Disclosed in Fact Discovery ...................................................................................................................... 14

K.    Mr. Kennedy Improperly Addresses Future Damages ................................... 15

III.    CONCLUSION ................................................................................................................ 15

\*    In this brief, all emphasis is added unless noted otherwise.

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
  324 F. Supp. 3d 470 (D. Del. 2018) ................................................................. 10

*In re Apotex, Inc.*,
  49 F. App'x 902 (Fed. Cir. 2002) .................................................................... 15

*Apple v. Wi-LAN*,
  25 F.4th 960 (Fed. Cir. 2022) .......................................................................... 6

*Applied Medical Resources Corp. v. U.S. Surgical Corp.*,
  435 F.3d 1356 (Fed. Cir. 2006) ....................................................................... 10

*Atlas IP, LLC v. Medtronic, Inc.*,
  No. 13-CIV-23309, 2014 WL 5741870 (S.D. Fla. Oct. 6, 2014) ..................... 10

*Bonin v. Sabine River Auth. of Texas*,
  No. 1:19-CV-00527-MJT, 2022 WL 19731177 (E.D. Tex. Nov. 9, 2022) ......... 7

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
  295 F.3d 1277 (Fed. Cir. 2002) ....................................................................... 11

*Contour IP Holding, LLC v. GoPro, Inc.*,
  No. 3:17-CV-04738-WHO, 2020 WL 5106845 (N.D. Cal. Aug. 31, 2020) ....... 4

*Daubert v. Merrill Dow Pharms.*,
  509 U.S. 579 (1993) ................................................................................ 2, 4, 6, 7

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
  705 F.3d 518 (5th Cir. 2013) ............................................................................ 7

*Grain Processing Corp. v. Am. Maize-Prod. Co.*,
  185 F.3d 1341 (Fed. Cir. 1999) ........................................................................ 8

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ....................................................................... 3, 11

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  No. 2:06-CV-348, 2011 WL 197869 (E.D. Tex. Jan. 20, 2011), *objections overruled*,
  2011 WL 13196509 (E.D. Tex. Jan. 28, 2011) ................................................. 8

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) .................................................................... 4, 12

*MLC Intell. Prop., LLC v. Micron Tech., Inc.,*
  10 F.4th 1358 (Fed. Cir. 2021) ....................................................................................14

*Nordock, Inc. v. Sys., Inc.,*
  No. 11-C-118, 2013 WL 989864 (E.D. Wis. Mar. 13, 2013) ...........................................4

*Open Text S.A. v. Box, Inc.,*
  No. 13-CV-04910-JD, 2015 WL349197 (N.D. Cal. Jan. 23, 2015).................................8

*ResQNet.com, Inc. v. Lansa, Inc.,*
  594 F.3d 860 (Fed. Cir. 2010)......................................................................................12

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.,*
  No. 2:15-CV-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ..........................7

*Sci. Applications Int'l Corp. v. U.S.,*
  No. 17-CV-825, 2024 WL 94499 (Fed. Cl. Jan. 9, 2024)................................................15

*Sherwin-Williams Co. v. PPG Indus., Inc.,*
  No. CV 17-1023, 2020 WL 1283465 (W.D. Pa. Mar. 18, 2020).....................................8

*Sprint Communications Co., L.P. v. Time Warner Cable, Inc.,*
  760 F. App'x 977 (Fed. Cir. 2019) ...............................................................................10

*Uniloc USA, Inc. v. Microsoft Corp.,*
  632 F.3d 1292 (Fed. Cir. 2011)................................................................................4, 12

*VirnetX, Inc. v. Cisco Sys., Inc.,*
  767 F.3d 1308 (Fed. Cir. 2014)...................................................................................4, 6

*VLSI Tech. LLC v. Intel Corp.,*
  87 F.4th 1332 (Fed. Cir. 2023) ..................................................................................3, 12

*Whitserve, LLC v. Comput. Packages, Inc.,*
  694 F.3d 10 (Fed. Cir. 2012).....................................................................................5, 11

## Statutes

35 U.S.C. § 284.................................................................................................................15

35 U.S.C. § 287.................................................................................................................13

## Other Authorities

Fed. R. Civ. P. 26 .............................................................................................................14

Fed. R. Civ. P. 37 .............................................................................................................12

Fed. R. Evid. 403 .........................................................................................................10, 14

Fed. R. Evid. 702 ..................................................................................................................................... 2

Fed. R. Evid. 703 ..................................................................................................................................... 7

**TABLE OF EXHIBITS**

| # | Description |
|---|---|
| A | Expert Report of Mr. Kennedy (Nov. 20, 2023) (with exhibits) |
| B | Expert Report of Mr. Kennedy (Jan. 20, 2023), from *EDTX1* (excerpts, with exhibits) |
| C | Netlist's Interrogatory Responses (Nov. 19, 2023) (excerpts) |
| D | Deposition Transcript of Mr. Kennedy (January 15, 2024) (rough, excerpts) |

\*      Unless otherwise indicated, numerical exhibit numbers refer to the exhibits to Mr. Kennedy's expert report (Ex. A).

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| '339 patent | U.S. Patent No. 10,949,339 |
| '506 patent | U.S. Patent No. 10,860,506 |
| 2DPC | 2 DIMM per Channel Configuration |
| DIMM | Dual In-line Memory Module |
| EDTX1 | *Netlist, Inc. v. Elecs. Co.*, No. 2:21-cv-463 (E.D. Tex.) |
| LRDIMM | Load Reduced Dual In-line Memory Module |
| MT/s | Million Transfers Per Second |
| NIA | Noninfringing Alternative |
| R&D | Research and Development |
| RDIMM | Registered Dual In-line Memory Module |

\*      In this brief, all emphasis is added unless noted otherwise.

Mr. David Kennedy astonishingly seeks ████████ as an alleged "reasonable" royalty based on conclusory opinions of Drs. Mangione-Smith and Andreas Groehn. As a threshold matter, Mr. Kennedy's blind reliance on unreliable and improper opinions introduces a profound level of unreliability and uncertainty into his analysis. In particular, Mr. Kennedy relies on Dr. Mangione-Smith's opinion that, without the asserted patents, Samsung would not be able to sell products with ████████████████████████████████████████████████████

However, several other technologies undoubtedly contribute to those features—indeed, Netlist (and Dr. Mangione-Smith) claimed in an earlier case that *other Netlist patents* provide the same benefits.

Even setting that aside, there are significant methodological errors in Mr. Kennedy's analysis. First, in arriving at such inflated figures, Mr. Kennedy relies on an unreliable regression analysis and a bare price comparison that fundamentally fail to apportion the benefits allegedly provided by the asserted patents. To the contrary, Mr. Kennedy attributes the *entire price differential* allegedly associated with those features (speed and configuration) to the asserted patents. Second, Mr. Kennedy also remarkably alleges that, at the hypothetical negotiation, Samsung would pay Netlist *100%* of the *revenue* that Samsung would supposedly lose in sales by adopting the NIAs identified by Dr. Mangione-Smith. In other words, he opines that the parties would decide that Netlist would get all of the revenue and Samsung would get none. This approach is out of touch with economic reality, and cannot withstand scrutiny. Mr. Kennedy's alternative apportionment analyses fare no better, as they grossly inflate Netlist's contributions, e.g., by comparing *relative* R&D investments.

The result is orders of magnitude more than anyone in the real world has ever paid for Netlist's patents. Indeed, the only companies that have ever paid Netlist anything for Netlist patents are Samsung and SK hynix, ████████████████████████████████████████ ████████████████████ Mr. Kennedy's arbitrary and inflated analysis is divorced from those transactions, which he casts aside in favor of admittedly non-comparable licenses he contends show

1

███████████████████████████████

Samsung's willingness to pay massive sums.

## I.     GOVERNING LAW

The Court is familiar with Fed. R. Evid. 702's requirement that an expert's testimony be (a) based on specialized knowledge helpful to the trier of fact, (b) based on sufficient facts or data, (c) based on reliable methods, and (d) reliably applied to the facts of the case, as well as the gatekeeping task with which the Court is charged under *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579, 589 (1993).

## II.    ARGUMENT

### A.     Mr. Kennedy's "Fully Apportioned" Rates Fail To Apportion

Mr. Kennedy's opinion that Netlist is entitled to over ████████ rests on awarding Netlist 100% of the revenues for alleged speed and configuration benefits of the asserted patents.

### 1.     Summary of Mr. Kennedy's "Economic Benefits" Opinions

For each of the asserted patents, Mr. Kennedy calculates a price differential between the accused products and alleged NIAs identified by Dr. Mangione-Smith. With respect to the '912 patent, Mr. Kennedy concludes that, because ████████████████████████████████████ ████████████████████████████████████████████████████ Samsung would be required to find buyers at lower speeds, which (according to Dr. Groehn's unreliable regression) would result in a price reduction of █████████████████████ Ex. A, ¶¶ 131-32, 172-79; Ex. 9. Mr. Kennedy similarly alleges that the '608 patent is required to reach speeds ████████████████████████████████████████████████████████ ██████████████████ Ex. A, ¶ 144. Thus, Mr. Kennedy relies on the alleged ███████ ████████████████████████████████████ *Id.*, ¶¶ 187-94; Ex. 9. For the '417 patent, based on Dr. Mangione-Smith's opinion that the patent █████████████████ ████████████████████████ Mr. Kennedy compared the price of one accused product to two lower-memory products with equal total capacity. Ex. A, ¶¶ 137, 181-84; Ex. 6. As to each of the

patents, he opines that ████████████████████████ Ex. A, ¶¶ 198-99.

### 2. Mr. Kennedy's Rates Are Not Apportioned

Mr. Kennedy's whole-hog approach—in which he attributes the entirety of the price differential associated with a speed increase to the '912 and '608 patents, and the entirety of the price differential associated with the ████████████ to the '417 patent—violates well settled law on apportionment as it fails to isolate the benefit of the patented invention. *See LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). Mr. Kennedy's premise of unattainable speeds and configurations without the asserted patents fails to address the incremental value attributable to the patents. *See VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1349 (Fed. Cir. 2023) (cautioning the district court to exclude evidence "not focused on answering the question of the value of the specific technology at issue"); *LaserDynamics,* 694 F.3d at 68 (holding "proof that consumers would not want a laptop computer without [the accused features] is not tantamount to proof that any one of those features alone drives the market").

It is beyond dispute that other technologies contribute to speed and configuration. For example, Netlist's own complaint and Mr. Kennedy himself acknowledge that ████████████ ████████████████████████████████████████████████████ Dkt. 100, ¶ 15; *see also* Ex. A, ¶ 24. Mr. Kennedy further acknowledges that Samsung's JEDEC-compliant DDR4 technology offers ████████████████████████████████ ████████████████████████████████████████████████ ████████████ Ex. A, ¶¶ 162-63. Fatal to his own opinion, Mr. Kennedy admits that if evidence of Samsung's technical contributions existed, Samsung would be entitled to additional apportionment at the hypothetical negotiation. Ex. D at 28:7-19, 35:22-36:5. He further admits that the evidence was available to him. *Id.* at 42:5-13. Yet, Mr. Kennedy and Netlist make no effort to isolate the speed or configuration benefits allegedly associated with the patented technology from the improvements

offered by Samsung and others, rendering all of his rates subject to exclusion.[1]  *Id.* at 27:19-28:19.

### 3. Mr. Kennedy's "Fully Apportioned" Rates Give 100% of Incremental Revenues to Netlist, Contrary to the Reasonable Royalty Framework

Even if Mr. Kennedy's opinion on price differentials apportioned to the value of the patented technology (it does not), it would still be necessary to determine how to split any incremental profits. Indeed, the *Georgia-Pacific* analysis is used to determine how the licensor and licensee will share the benefit of the alleged invention.  *See* Ex. A, ¶¶ 689-90.  However, Mr. Kennedy's opinion is that Samsung would agree to pay **all** of this value (indeed, even 100% of revenue) to Netlist.  *Id.*, ¶¶ 199, 720-21, 723; Ex. 1.  This opinion—that Samsung would bear all of the risk and do all of the work to implement the alleged invention, and then hand over all of the revenue to Netlist—is fundamentally incompatible with the hypothetical negotiation framework, which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

A 100% revenue split is simply untenable.  As the Court knows well, the Federal Circuit has long rejected rigid benefit splitting rules, e.g., a 25% profit split rule-of-thumb and a 50% (Nash) rule-of-thumb.  *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1313-20 (Fed. Cir. 2011) (rejecting the "25% Rule"); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1332-34 (Fed. Cir. 2014) (rejecting 50% starting point).  District courts have likewise held that an award of 100% of profits (let alone revenues) to a plaintiff cannot withstand *Daubert* scrutiny.  *See Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738-WHO, 2020 WL 5106845, at *14 (N.D. Cal. Aug. 31, 2020); *Nordock, Inc. v. Sys., Inc.*, No. 11-C-118, 2013 WL 989864, at *8 (E.D. Wis. Mar. 13, 2013).  If it is unreasonable and unsupportable

---

[1] Indeed, the fact that Mr. Kennedy relies on the **same benefit** allegedly provided by two separate asserted patents (the '912 and '608 patents) demonstrates the fundamental error.  If the benefit of ▮▮▮▮▮▮▮▮▮ is truly all associated with the '912 patent, it cannot also all be associated with the '608 patent.  Likewise, Mr. Kennedy's reliance on the **same benefits** for different patents in the *EDTX1* case further demonstrates the faulty lack of apportionment, as discussed in Section II.F.

to award the patentee 100% of the alleged infringer's **profits** attributable to the patented technology, it should go without saying that awarding 100% of the **revenues** associated with that technology cannot be justified.  Mr. Kennedy's theory cannot support the damages award—it is "frankly, out of line with economic reality."  *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 30-34 (Fed. Cir. 2012).  The Court should exclude at least Ex. A, ¶¶ 153-214, 366-74, 603-730; Exs. 1-10, 14-16.

### B.    Mr. Kennedy's "Additionally Apportioned Rates" Are Likewise Insufficient

Mr. Kennedy's "additional apportionment" cannot save his opinions.  *See* Ex. A, ¶¶ 195-214.[2]

**First**, he offers a "technology" apportionment where he multiplies his rate (100% of revenues, or his "economic" apportionment rate) by the ratio of Netlist's R&D expenses as a percentage of Netlist's **entire** revenue (9.6%) versus Samsung's R&D expenses as a percentage of Samsung's **entire** revenue (not limited to memory products) (8.2%), resulting in an arbitrary 53.8% differential (9.6% / (9.6%+8.2%) = 53.8%).  Ex. A, ¶ 210; Exs. 3A, 4, 7.  Mr. Kennedy does not articulate why R&D compared to revenue allegedly reflects the value of the asserted patents, which is notable considering Samsung's revenue figures (and R&D expenses) would include those for products that have nothing to do with memory, such as refrigerators and other consumer appliances.  Nor does Mr. Kennedy explain why he uses the ratio of R&D to revenue rather than the actual R&D investments of Netlist, Samsung, and other JEDEC contributors (even if generic R&D investments was relevant to isolating patent value, which it is not).  Under this flawed approach, Netlist is rewarded for earning significantly less revenue than Samsung, and collects royalty based on an R&D/revenue ratio that has nothing to do with the patented technology.  Such an approach would almost universally treat smaller companies like Netlist as contributing more to R&D than larger companies like Samsung—an absurd result.  Mr.

---

[2] Importantly, despite labeling these calculations "apportionments," Mr. Kennedy does not describe either one as isolating the relative contribution of the asserted patents to the speed and configuration benefits he valued.  Neither calculation even attempts to account for other technologies that contribute to those same speed and configuration benefits.

███████████████████████████████████████

Kennedy's justification boils down to nothing more than *ipse dixit* that ████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ Ex.

A, ¶ 210.  This violates the Federal Circuit's instruction that opinions must be based on particular

facts, not "too crude a generalization."  *VirnetX*, 767 F.3d at 1332.

**Second**, Mr. Kennedy offers an alternative "economic" approach, multiplying the "fully

apportioned" 100% rate (or, alternatively, the "technology" apportionment rate) by the inverse of

Samsung's profit margin ██████████ meaning he awards 100% of the ***cost*** of the products ███████

████████ to Netlist.  Ex. A, ¶¶ 212-14; Exs. 3A, 4, 5, 6, 7, 8, 10, 12.  But he does not explain why

Samsung's gross profit margin allegedly constitutes Samsung's "economic contribution," while

Samsung's COGS allegedly constitutes Netlist's "economic contribution."  Instead, Mr. Kennedy

offers a conclusory assertion that ████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████ Ex. A, ¶ 213.  This bare allegation is "untethered to the facts."

*Apple v. Wi-LAN*, 25 F.4th 960, 973-74 (Fed. Cir. 2022) (holding Mr. Kennedy's opinion "untethered

to the facts," requiring a new trial); *VirnetX*, 767 F.3d at 1332.

### C.    Mr. Kennedy's Opinions Rely on Unreliable Technical Inputs

Mr. Kennedy's opinions rely on unreliable technical inputs from Dr. Mangione-Smith—i.e.,

that the asserted patents enable ██████████████████████████████—as set forth

in Samsung's *Daubert* motion regarding Dr. Mangione-Smith.  If the Court grants Samsung's *Daubert*

motion against Dr. Mangione-Smith, Mr. Kennedy's analysis based on those unreliable opinions

should be excluded in its entirety.  *See* Ex. A, ¶¶ 127-45 (alleged benefits of patents), 146-52 (discussion

of NIAs), 172-94 (relying on inputs from Dr. Mangione-Smith and Dr. Groehn to measure the

benefits of the asserted patents).  Exs. 5, 6, 8.

### D.    Mr. Kennedy's Opinions Rely on an Unreliable Regression Analysis

Dr. Groehn's opinions—also necessary inputs to Mr. Kennedy's analysis—are unreliable for the reasons explained in Samsung's *Daubert* motion regarding Dr. Groehn.  The Court should therefore exclude Mr. Kennedy's application of Dr. Groehn's unreliable and faulty regression analysis, including Ex. A, ¶¶ 106, 177, 192, 684; Exs. 1-9.  That aside, the Court also should not permit Netlist to present Mr. Kennedy as a mouthpiece for Dr. Groehn's regression analysis, as it did in *EDTX1*, where Netlist never called Dr. Groehn to the stand.  "An expert cannot parrot the opinions and conclusions of other experts whose testimony is not subject to cross-examination." *Bonin v. Sabine River Auth. of Texas*, No. 1:19-CV-00527-MJT, 2022 WL 19731177, at *6 (E.D. Tex. Nov. 9, 2022), *adopted*, 2022 WL 19731176 (E.D. Tex. Dec. 20, 2022).[3]  (This erroneous approach from Netlist is one subject of Samsung's post-trial motion in *EDTX1*.)  Rather, if the Court does not strike Mr. Kennedy's opinions that rely on Dr. Groehn's analysis, then it should prevent Mr. Kennedy from providing such opinions to the jury before Dr. Groehn testifies himself.

### E.    Mr. Kennedy's Opinions About Samsung's NIAs Are Unsupported

Even if the Court permits Dr. Mangione-Smith's and Dr. Groehn's opinions to stand, it should still strike Mr. Kennedy's unreliable assumptions about Samsung's alternatives to the patented technology, including NIAs he never opines are acceptable, available, or non-infringing.

*First*, Mr. Kennedy ignores the alternatives Samsung identified with a cursory assertion that Dr. Mangione-Smith rejected ███████████████████████████████ Ex. A, ¶¶ 151-52.  Neither he nor Dr. Mangione-Smith compares the accused products to those alternatives.

---

[3] *See also Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) ("Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose . . . opinions the expert purports to base his opinion." (cleaned up)); *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017).

██████████████████████████████████████████

**Second**, Mr. Kennedy relies on Dr. Mangione-Smith's NIAs, but neither he nor Mr. Kennedy ever offers an opinion that they would be **acceptable** to customers, which the Federal Circuit requires. *E.g.*, *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999).  Instead, Mr. Kennedy's NIAs also rely on impermissible *ipse dixit*.  Mr. Kennedy says that Samsung would sell

████████████████████████████████████████████████████████████

████████████████████████████████ *id.*, ¶¶ 182-83, but he does not address why customers would be satisfied with less speed or a different configuration.  Instead of offering evidence (such as a survey), he says his assumption that Samsung could find buyers is "conservative," *id.*, ¶¶ 175, 183, 190.  However, one cannot mask a baseless theory under the guise of conservatism.  *See Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL349197, at *6 (N.D. Cal. Jan. 23, 2015).

**Third**, Mr. Kennedy fails to offer evidence that his NIAs were **available** during the damages period, and non-infringing.  *See LaserDynamics, Inc. v. Quanta Comput., Inc.*, No. 2:06-CV-348, 2011 WL 197869, at *3 (E.D. Tex. Jan. 20, 2011) (rejecting availability of NIA where proponent failed to show that it was available for use during the damages period), *objections overruled*, 2011 WL 13196509 (E.D. Tex. Jan. 28, 2011); *Sherwin-Williams Co. v. PPG Indus., Inc.*, No. CV 17-1023, 2020 WL 1283465, at *9 (W.D. Pa. Mar. 18, 2020) (finding "no evidence to support the availability or acceptability of an alternative . . . during the damages period").  For example, Mr. Kennedy relies on an accused product as an "alternative" to ████, stating that Samsung would sell a ████████████████████████████ ████████████████████████████████████████████████████ Ex. A, ¶ 183. An **accused** product is not an available NIA, as Mr. Kennedy acknowledges.  *Id.*, ¶ 149 ████████████ ████████████████████████████████████████████████████

Because Mr. Kennedy provides no evidence that his NIAs are non-infringing, acceptable, and available, his calculations (which are based on these NIAs) are improper.  *See Grain Processing*, 185 F.3d at 1350-51.  Thus, the Court should exclude at least Ex. A, ¶¶ 146-52, 603-730; Exs. 1-10, 14-16.

██████████████████████████████████████████████

### F.    Mr. Kennedy Improperly Seeks Double Recovery from *EDTX1*

Mr. Kennedy's reliance on the jury verdict from *EDTX1* is improper for several reasons, and demonstrates a fundamental lack of apportionment.

#### 1.    Summary of Mr. Kennedy's Reliance on the *EDTX1* Jury Verdict

Mr. Kennedy opines that the jury verdict from *EDTX1* is ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████ Ex. A, ¶¶ 366-67, 368-74, 646-51.  He then relies on the verdict to calculate an effective per unit rate of ██████for the '339 patent asserted against DDR4 LRDIMM products in *EDTX1*, and opines that Netlist would rely on this verdict at the hypothetical negotiation ████████████████ ██████ of the asserted patents.  *Id.*, ¶¶ 646-51.

#### 2.    Summary of Mr. Kennedy's Relevant *EDTX1* Damages Opinions

In *EDTX1*, to calculate the alleged benefits of the '339 patent, Mr. Kennedy conducted the same analysis that he conducts with respect to the '417 patent in this case.  There, he opined that without the '339 patent's technology, ████████████████████████████████████ ██████ and thus compared the price of a single accused LRDIMM to that of two RDIMMs with half the capacity.  Ex. B, ¶¶ 128, 202.  This is the same analysis Mr. Kennedy performs for the '417 patent in this case.  *Compare* Ex. A, ¶ 184, *with* Ex. B, ¶¶ 128, 202.  Similarly, although the jury verdict in *EDTX1* did not address the '506 patent from *EDTX1*, Mr. Kennedy calculated damages for that patent based on his understanding that without the patent's ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████, from Dr. Groehn's

regression.  Ex. B at Ex. 4.  This is the same faulty approach he takes for the '912 and '608 patents. Ex. A, ¶¶ 131-32, 144, 172-79, 187-94; Ex. 9.

### 3.     Jury-Determined Damages Are Not Reliable Evidence

First, "jury-determined damages are not evidence of arm's-length negotiations between parties, and will not help the trier of fact determine a royalty." *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 324 F. Supp. 3d 470, 489 (D. Del. 2018).  Indeed, "[n]o economist would consider a jury verdict as to a hypothetical negotiation about one patent as a reliable basis for determining what the results of an actual arm's-length negotiation about a second patent would be."  *Id.*; *see also Atlas IP, LLC v. Medtronic, Inc.*, No. 13-CIV-23309, 2014 WL 5741870, at *6 (S.D. Fla. Oct. 6, 2014) ("[I]t is self-evident jury-determined damages are not evidence of arm's-length negotiations between parties.").[4] Moreover, Netlist's reliance on the trial result from *EDTX1* would be unduly prejudicial under Fed. R. Evid. 403, and would violate this Court's Standing MIL 13.

### 4.     Mr. Kennedy's Analysis from *EDTX1* Demonstrates His Failure To Apportion, and Violates the Rule Against Double Recovery

Mr. Kennedy's opinion that the '417 patent generates the same benefit as the '339 patent from *EDTX1* ███████████████████, and that the '912 and '608 patents generate the same benefit as the '506 patent from *EDTX1* ███████████████ demonstrates a failure to apportion for the benefits provided by other technologies.  It also demonstrates Mr. Kennedy's failure to account for royalty stacking considerations—he ignores that Samsung would not be willing to pay its ***entire***

---

[4] Mr. Kennedy refers to *Sprint Communications Co., L.P. v. Time Warner Cable, Inc.*, 760 F. App'x 977 (Fed. Cir. 2019) and *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356 (Fed. Cir. 2006). Ex. A, ¶ 367 & n.351.  In those cases, the Federal Circuit found the probative value of the prior jury verdicts was not outweighed by prejudice because the verdicts were relevant to more than just the hypothetical negotiation.  For example, in *Sprint*, the verdict was relevant to willfulness and equitable defenses.  760 F. App'x at 981.  In *Applied Medical*, the verdict was relevant to willfulness.  435 F.3d at 1366.  Mr. Kennedy, however, states that the jury verdict is relevant for only the hypothetical negotiation.  Additionally, post-trial briefing is ongoing in *EDTX1*, and Samsung has moved for judgment as a matter of law on many issues.  Any probative value of the prior verdict is outweighed by the prejudice to Samsung resulting from the finding of infringement.  *See* Fed. R. Evid. 403.

*revenues* associated with a particular benefit to Netlist twice (setting aside other JEDEC patent holders who contributed to these benefits). Indeed, although Mr. Kennedy admits analysis must be done to see what technical overlap exists between the DDR4 LRDIMM patents from *EDTX1* and economically reflected in any recovery, Mr. Kennedy never conducts—or asks for—any such analysis. Ex. D. at 113:7-22, 114:9-16. Permitting Mr. Kennedy to present his opinions on the '417 patent would improperly allow double recovery for the same accused sales under both the '339 and '417 patents. *See Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291 (Fed. Cir. 2002) ("Lamps Plus is entitled to damages for each infringement, but once it receives profits under § 289 for each sale [for infringement of one patent], Lamps Plus **is not entitled to a further recovery from the same sale [for infringement of a second, related patent]** because the award of infringer profits under § 289 also constitutes 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'"). Thus, the Court should exclude Mr. Kennedy's opinions, including Ex. A, ¶¶ 133-38, 153-214, 603-730; Exs. 1-4, 6, 10-12.

### G.    Mr. Kennedy's Use of Admittedly Non-Comparable Licenses Is Improper

Mr. Kennedy improperly relies on licenses that he expressly acknowledges are not comparable. In particular, his ultimate opinions on the amount of damages are not based on the only two licenses to the patented technology: Netlist's licenses with Samsung (the JDLA) and SK hynix.[5] After refusing to rely on Netlist's only licenses, Mr. Kennedy nonetheless relies on other Samsung agreements with **other**, different parties and **other**, different patents on **other**, different technologies that he says are **not comparable**. Ex. A, ¶¶ 502-29. Specifically, Mr. Kennedy opines that ▄▄▄▄▄▄

---

[5] Mr. Kennedy's failure to rely on the JDLA and SK hynix agreements—in favor of non-comparable licenses renders his opinions unreliable. *See Whitserve*, 694 F.3d at 30-31 ("[T]here is little evidentiary basis under *Georgia-Pacific* Factor 2 for awarding roughly three to four times the average amount in the lump-sum agreements in evidence." (cleaned up)). "Actual licenses to the patented technology . . . most clearly reflect the economic value of the patented technology in the marketplace." *LaserDynamics*, 694 F.3d at 79. In *LaserDynamics*, the court held that a damages award cannot stand when the patentee's expert disregards comparable licenses. *Id.* at 79-81.



*Id.*, ¶¶ 497, 522.  Despite saying they are not comparable, Mr. Kennedy then contradicts his own conclusion, stating ▮▮▮▮▮▮▮▮▮▮▮ *Id.*, ¶¶ 522-29.  For example, he opines that ▮▮▮▮▮▮▮▮▮▮ *Id.*, ¶ 502.

Because Mr. Kennedy acknowledges that Samsung's licenses are not comparable, he cannot rely on them in an effort to prejudice the jury with inflated damages figures.  Indeed, in *VLSI*, the Federal Circuit recently reiterated the notion that "the law restricting use of noncomparable licenses" would bar admission of evidence regarding licenses the patentee admits are non-comparable.  87 F.4th at 1349; *see also Lucent Techs.*, 580 F.3d at 1325 (reversing on this basis); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-73 (Fed. Cir. 2010) (same).   In addition, an expert cannot use an otherwise inadmissible data point as a "check" of reasonableness.  *Uniloc*, 632 F.3d at 1321.  The Court, therefore, should exclude Mr. Kennedy's opinions based on Samsung's licenses that he acknowledges are not comparable, as set forth in Ex. A, ¶¶ 397-407, 522-29; Exs. 1-10, 14-16.

**H.    Mr. Kennedy's Unsupported RAND Opinions Are Conclusory and Improper**

Mr. Kennedy's RAND opinions are improper because Netlist failed to disclose its position on essentiality during discovery (prejudicing Samsung in a way that cannot be cured by a continuance), as addressed in Samsung's motion to compel (Dkt. 128) and forthcoming motion to preclude.  *See* Fed. R. Civ. P. 37(c)(1).  Further, the Court excluded Mr. Kennedy's RAND opinions in *EDTX1* because Netlist asserted that its patents there were not essential.  *EDTX1*, 3/28/23 Hrg. Tr. at 217:21-218:4. The Court should exclude his RAND opinions here as well, including Ex. A, ¶¶ 94, 530-89, 662-64.

Moreover, the Court should preclude Mr. Kennedy from offering his conclusory and unsupported opinions that Netlist's request for over ▮▮▮▮ for 3 patents (about ▮▮▮▮ for 1

██████████████████████████████████████████████

patent) is RAND.  *See* Ex. A, ¶ 552.  Although he provides a detailed background of RAND, including the economic interpretation of RAND, how RAND fits into the *Georgia-Pacific* analysis, how RAND fits into an apportionment analysis, and Samsung's history with RAND, *id.*, ¶¶ 530-89, his ultimate opinion on RAND is cursory, merely concluding that his ████████████████████████████████

███████████████████████████████████████████████████

███████████████████  *Id.*, ¶ 552.  Notably, he provides no supporting analysis for his assertion that his conclusions comply with RAND terms, particularly given that he failed to factor into his analysis the only two comparable licenses, ███████████████████████████████████

████████████████████████  He also fails to address licensing offers made by Netlist to Samsung and Micron because they allegedly ███████████████████████████████████████

████████████████████████  *Id.*, ¶¶ 575, 588.  Mr. Kennedy provides no support or verification that awarding Netlist 100% of the revenues (not profit) associated with alleged technological benefit would be considered RAND by anyone within the standardization community.

**I.      Mr. Kennedy's Prejudicial Opinions Outside of His Expertise Are Improper**

The Court should likewise exclude the prejudicial opinions that Mr. Kennedy offers, on issues such as state of mind and legal issues.  For example, Mr. Kennedy offers prejudicial opinions, including that ████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Mr. Kennedy admitted he is not an expert in ethics or the market; thus, he is not qualified to provide these prejudicial opinions.  Ex. D at 20:15-21:11.  Likewise, despite acknowledging that he is ████████

████████████████████████  Ex. A, ¶ 708, he offers numerous legal opinions, including a lengthy legal discussion about notice under 35 U.S.C. § 287.  *See id.*, ¶¶ 42-66, 378-80, 590-93, Exs. 1, 3, 14.

Mr. Kennedy also offers opinions related to alleged breach of contract issues, including

criticizing the C.D. Cal. jury's verdict, and purporting to ████████████████████████████

█████████████████████████████████████ *id.*, ¶¶ 305-07.  He further provides legal opinions

on the JDLA, the merits of the parties' contract dispute, the meaning of a tax decision in Korea, and

the meaning of the SK hynix agreement, all of which are firmly outside the scope of his expertise.  *See*

Ex. A, ¶¶ 253-341 (JDLA supply provision), 354-55 (SK hynix supply provision), 691-703 (JDLA

scope, alleged breach and termination), 708-09 (JDLA supply provision).  Such opinions from a

witness with no legal expertise are irrelevant, improper, prejudicial, and would cause undue confusion

for the jury.  Moreover, the alleged breach and termination of the JDLA are not properly before the

jury in this case.  *See, e.g.*, Dkt. 278 at 4-5 (explaining "this Court will not make comment further while

that issue [whether "the JDLA is currently 'in full force and effect'"] is squarely before another court").

These opinions should also be precluded under Fed. R. Evid. 403, and the Court's Standing MIL 13.

### J.        Mr. Kennedy's Opinions Rely on Theories Not Disclosed in Fact Discovery

The Court should also exclude Mr. Kennedy's opinions because Netlist failed to disclose "a

computation of each category of damages," Fed. R. Civ. P. 26(a), by failing to identify basic damages

theories during fact discovery.  For example, Netlist's failed to mention the theories underlying Mr.

Kennedy's analysis, such as: (1) how the alleged benefits of the asserted patents would allegedly impact

the price or profit of the accused products and by how much; (2) how the parties to the hypothetical

negotiation would apportion any such impact on price or profit; and (3) how NIAs might affect

pricing.  *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1369 (Fed. Cir. 2021) (affirming

striking expert opinion where it failed to disclose information under Rule 26(e)).  Even though Netlist

supplemented its interrogatory responses near the end of fact discovery, Netlist still failed to provide

notice of these basic damages theories that are the basis of Mr. Kennedy's opinions.  For example,

Netlist provided only vague information about some alleged benefits without explaining their impact

on the value of the accused products, or even identifying documents supporting its contention.  Ex.

14

C at 30-39; *see also* Dkt. 176.[6]  By waiting to disclose its damages theories in Mr. Kennedy's report, Netlist prevented Samsung from fully developing the factual record surrounding these issues.  The Court should exclude at least Ex. A, ¶¶ 12, 107-145, 153-214, 603-730; Exs. 1-10, 14-16.

### K.    Mr. Kennedy Improperly Addresses Future Damages

More than ▮▮▮▮▮▮▮ of Mr. Kennedy's damages calculations relate to royalties for alleged ***future*** infringement.  Ex. 2; Ex. 10.  Mr. Kennedy's approach is not authorized by statute.  Under the Patent Act, "the court shall award the claimant damages adequate to compensate for ***the infringement***."  35 U.S.C. § 284.  On its face, this statute does not apply to infringement that has not happened.  *See In re Apotex, Inc.*, 49 F. App'x 902, 903 (Fed. Cir. 2002) (finding that "there can be no damages" in a case "involving only possible future infringement").  Moreover, Mr. Kennedy does not offer a lump sum opinion, instead adding running royalties through 2026.  Ex. A, ¶ 638; Ex. 2; Ex. 10.  Mr. Kennedy "appears to conflate [lump sum and running royalties] by calculating a 'lump sum' that applies a per-unit royalty rate to all accused devices that have been *and may still be* delivered."  *Sci. Applications Int'l Corp. v. U.S.*, No. 17-CV-825, 2024 WL 94499, at *18 (Fed. Cl. Jan. 9, 2024) (emphasis original).  However, "the proper course of action to address future infringement is to address it *after* infringement has actually occurred."  *Id.* (emphasis original).  To allow future damages would be speculative and prejudicial—indeed, the PTAB has instituted IPRs against all of the asserted patents, and may invalidate them all; not to mention that Samsungs accused products may well.  The Court should exclude Mr. Kennedy's future damages, including Ex. A, ¶¶ 631-35; Exs. 2, 10.

## III.    CONCLUSION

Accordingly, the Court should exclude Mr. Kennedy from testifying at trial as to his unreliable and prejudicial opinions set forth in Exhibit A.

---

[6] Although Netlist's interrogatory response incorporated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. C, Netlist never explained how the analysis in that case, involving different patents and a different set of products, is applicable here.

████████████████████

Dated:  January 16, 2024

Respectfully submitted,

By:    */s/ Daniel A. Tishman*
_____

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:      (903) 934-8450
Facsimile:      (903) 934-9257

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile:   (415) 955-6571

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on January 16, 2024.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

*/s/ Daniel A. Tishman*

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred telephonically on January 16, 2024.  The parties discussed their positions on this motion.  The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve.  Counsel for Plaintiff indicated that they oppose this motion.

*/s/ Daniel A. Tishman*