UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>      Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.,<br><br>      Defendants. | Civil No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S *DAUBERT* MOTION AND MOTION TO
STRIKE EXPERT TESTIMONY OF DR. ANDREAS GROEHN**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................................ii

TABLE OF EXHIBITS ........................................................................................................................iii

TABLE OF ABBREVIATIONS ...........................................................................................................iii

I.      INTRODUCTION .................................................................................................................1

II.     GOVERNING LAW................................................................................................................1

III.    ARGUMENT...........................................................................................................................2

          A.      The Court Should Exclude Dr. Groehn's Unreliable Regression Because He Fails To Account for Market Realities in His Modeling ..............................2

          B.      The Court Should Exclude Dr. Groehn's Regression Because Its Only Utility Is as an Input to Mr. Kennedy's Flawed Analysis .......................................4

IV.    CONCLUSION ......................................................................................................................6

\*        In this brief, all emphasis is added unless noted otherwise.

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Daubert v. Merrill Dow Pharms.*,
  509 U.S. 579 (1993) ................................................................................................... 1, 2, 4, 5

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ................................................................................................ 5

*Moore v. Ashland Chem. Inc.*,
  151 F.3d 269 (5th Cir. 1998) (en banc) ................................................................................ 2

*Stragent, LLC v. Intel Corp.*,
  No. 6:11-CV-421, 2014 WL 1389304 (E.D. Tex. Mar. 6, 2014); *order clarified*, No.
  6:11-CV-421, 2014 WL 12611339 (E.D. Tex. Mar. 12, 2014) ......................................... 2, 6

*VLSI Tech. LLC v. Intel Corp.*,
  87 F.4th 1332 (Fed. Cir. 2023) ............................................................................................. 5

*Wells v. SmithKline Beecham Corp.*,
  601 F.3d 375 (5th Cir. 2010) ................................................................................................ 4

*Werdebaugh v. Blue Diamond Growers*,
  No. 12-CV-02724-LHK, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) .............................. 4

**Other Authorities**

Fed. R. Evid. 403 ......................................................................................................................... 2, 7

Fed. R. Evid. 702 ......................................................................................................................... 1, 2

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| 1 | Corrected Expert Report of Andreas Groehn (Nov. 21, 2023) |
| 2 | Deposition Transcript of Andreas Groehn (Jan. 8, 2024) (excerpts) |
| 3 | Expert Report of Ray Perryman (Dec. 21, 2023) (excerpts) |
| 4 | Expert Report of David Kennedy (Nov. 21, 2023) (excerpts) |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| LRDIMM | Load Reduced Dual In-line Memory Module |
| RDIMM | Registered Dual In-line Memory Module |
| Samsung | Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor Inc. |

█████████████████████████████████████████████████████████████

## I. INTRODUCTION

The Court should bar Netlist's hedonic regression expert, Dr. Andreas Groehn, from presenting his opinions at trial for two independent reasons. First, Dr. Groehn's hedonic regression opinion is predicated on an assumption divorced from the realities of the DDR4 RDIMM and LRDIMM market. As shown by the data on which Dr. Groehn relied, ███████████ ███████████████████████████████████████, but Dr. Groehn does not account for such fluctuations in his regression ███████████████████████████████. These facts, if taken into consideration, would significantly impact the results of his study. Such errors in Dr. Groehn's regression are unsurprising given that he admittedly did not verify his results with any Samsung DDR4 customer, including Netlist. His failure to take into account the realities of the DDR4 market results in a facially unreliable conclusion.

Second, Dr. Groehn's conclusions serve as only an input into Mr. Kennedy's flawed damages opinion. If Dr. Kennedy's opinions regarding the value of the asserted patents are stricken (as they should be), Dr. Groehn should not be allowed to present his opinions, which have no purpose other than to support Dr. Kennedy's damages opinions. Standing alone, Dr. Groehn's opinions are not helpful to the trier of fact. If introduced, Dr. Groehn's opinions would create unfair prejudice and mislead the jury into undertaking a legally improper damages calculation. The Court should exclude his entire hedonic regression.

## II. GOVERNING LAW

Under Federal Rule of Evidence 702, an expert may offer opinion testimony if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The Supreme Court in *Daubert* charged trial courts with a gatekeeping task: determining whether expert testimony under Rule 702 is "not only relevant, but reliable." *Daubert*

▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

*v. Merrill Dow Pharms.*, 509 U.S. 579, 589 (1993). The proponent of expert opinions must demonstrate admissibility by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). A court may appropriately exclude expert testimony where its only purpose is as an input into another expert's unreliable application of that opinion to the facts of the case. *See Stragent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 1389304, at *3 (E.D. Tex. Mar. 6, 2014); *order clarified*, No. 6:11-CV-421, 2014 WL 12611339 (E.D. Tex. Mar. 12, 2014).

A "judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules . . . . Rule 403 permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .'" *Daubert*, 509 U.S. at 595. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Id.* (internal citation omitted).

### III. ARGUMENT

#### A. The Court Should Exclude Dr. Groehn's Unreliable Regression Because He Fails To Account for Market Realities in His Modeling

The Court should exclude Dr. Groehn's opinions because his regression ignores the realities of the DRAM market, causing his opinion to be unreliable. Dr. Groehn's regression attempts to isolate the relationship between speed in memory products and the price consumers would pay in the market. Ex. 1, ¶ 9. Dr. Groehn conducted his regression using only "Samsung's invoice data at monthly aggregates across all [product types]." *Id.*, ¶ 40. While Dr. Groehn admitted that Samsung ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊, Ex. 2 at 140:21-25, he did not review any of the ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊, *id.* at 143:22-25, and therefore did not include any customer-specific information in his regression. *Id.* at 149:10-24.

Dr. Groehn's decision to use monthly aggregated data (as opposed to invoice-level data) also

2

skews the pricing calculations on which his regression relies. For example, the monthly aggregates on which Dr. Groehn relies are based on average monthly prices by product, weighted by quantity. Ex. 1, ¶ 24, § 5. However, ██████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████. *See* Ex. 3, ¶¶ 55, 56. For example, ██ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* at Exhibit 1A. Use of the weighted average instead of invoice-level data makes the input ████████████████████████████ ██████████████, skewing the data.

Dr. Groehn further compounded these errors by failing to verify his regression with any Samsung customer, including Netlist. Dr. Groehn could have easily spoken with a representative of Netlist (a Samsung customer and reseller of their products) to determine if the assumptions underlying his hedonic regression were reasonable and if the results were consistent with the real world. Yet, Dr. Groehn did not speak to any Netlist employee about these issues. Ex. 2 at 121:17-122:5.[1] Nor did Dr. Groehn ██████████████████████████████████████████████████████████████ ████████████████████████████████████████. *Id.* 143:22-25; 146:16-24; 149:21-24. Whether Dr. Groehn intentionally failed to verify his regression with any customer because he was unthorough or because he knew it would invalidate his resulting opinion, this failure renders his conclusions unreliable.

Dr. Groehn also assumes that the underlying relationship between price and continuous time variable (referred to as "Time") is linear by using a single continuous control variable for time. Ex. 1, ¶ 40; *see also id.*, ¶ 50, Table 4. Dr. Groehn's assumptions and failure to analyze customer data cause his regression to be unreliable and inconsistent with the real world. For example, with respect to the

---

[1] Dr. Groehn did not even know that Netlist was a Samsung customer. Ex. 2 at 148:11-14.

[REDACTED]

Time variable, Dr. Groehn assumes the "coefficient of Time is negative, indicating that prices decline over time." *Id.*, ¶ 50.a. But this is not the reality in the DRAM market. As Netlist's own damages expert has explained, the DRAM market is significantly impacted by supply shortages and over-supply that can cause significant price variation. Ex. 4 at 23-28.[2] In other words, Dr. Groehn assumes prices will continue to decrease over time, regardless of changes in the market, when in reality, the market has a significant impact on price and can cause prices to fluctuate over time. The combined errors in Dr. Groehn's regression cause his opinions to be facially unreliable. As a result, Dr. Groehn's opinion should be excluded. *See, e.g., Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 WL 7148923, at *13 (N.D. Cal. Dec. 15, 2014) (excluding regression opinion "[t]he flaws with regards to the . . . variables and failure to control for the effect of advertising only compound the Court's concern that Dr. Capps' damages model is an ineffective example of a hedonic price regression"); *see also Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010) (affirming exclusion of causation opinion for unreliable method, stating "*Daubert* requires . . . a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue").

> **B.  The Court Should Exclude Dr. Groehn's Regression Because Its Only Utility Is as an Input to Mr. Kennedy's Flawed Analysis**

If the Court strikes Mr. Kennedy's fundamentally flawed opinions, including those related to Dr. Groehn's regression, then the Court should similarly exclude Dr. Groehn's opinions. Specifically, [REDACTED]

---

[2] [REDACTED]

4

██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Dr. Groehn admitted that he never spoke with Mr. Kennedy about the utility of his regression conclusions in calculating the ultimate damages numbers. Ex. 2 at 25:5-8.

As set forth in Samsung's concurrently filed *Daubert* Motion and Motion To Strike the Expert Testimony of Mr. Kennedy, Mr. Kennedy's premise that certain speeds are reached only because of the asserted patents fails to address the many other technologies other than the patented inventions that contribute to speed. As a result, and as set forth in Samsung's *Daubert* motion regarding Mr. Kennedy, Mr. Kennedy's use of Dr. Groehn's regression as the basis to apportion 100% of that price differential to the asserted patents violates settled apportionment law and must be stricken. As detailed in that motion, Mr. Kennedy's premise of unattainable speeds and configurations without the asserted patents fails to address incremental value attributable to the patents, at least because other technologies indisputably contribute to those alleged speed and configuration benefits. *See VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1349 (Fed. Cir. 2023) (cautioning the district court to preclude evidence "not focused on answering the question of the value of the specific technology at issue"); *LaserDynamics, Inc. v. Quanta Comput., Inc.,* 694 F.3d 51, 68 (Fed. Cir. 2012) ("[P]roof that consumers would not want a laptop computer without [the accused features] is not tantamount to proof that any one of those features alone drives the market.").

Dr. Groehn identified no other basis, independent of Mr. Kennedy's opinions, on which he should be allowed to present his opinions to the jury. Dr. Groehn readily admitted that he was "not asked to find a relationship between specific patents and speed or price." Ex. 2 at 41:4-5. Dr. Groehn did not even speak to Netlist's technical expert, Dr. Mangione-Smith, to understand whether a relationship between speed exists for the asserted patents. Ex. 1, ¶ 9; Ex. 2 at 38:9-12, 32:11-15. Dr. Groehn offers no opinion that the patents offer any particular speed benefit as a predicate for

conducting his regression. Ex. 2 at 34:23-35:7. Rather, Dr. Groehn was simply asked by counsel to conduct a bare regression to find a relationship between a 1% decrease in speed and the corresponding decrease in unit price for the accused products. Ex. 1, ¶¶ 9, 53, 54.

If the Court strikes Mr. Kennedy's opinion that 100% of the incremental difference in speed (and therefore resulting value) is attributable to the asserted, the Court should also exclude Dr. Groehn's opinions. *See Stragent*, 2014 WL 12611339 at *1 ("The court's conclusion is not based on the reliability of the general theory underlying the testimony, *i.e.*, the idea of using hedonic aggression [*sic*] to assess the contribution of the particular product features to the product's price, but on the unreliability of [the damages expert's] application of hedonic regression analysis to the facts it this case."). Dr. Groehn's regression, by itself, would have no probative value and would not be helpful to the jury in making any determination in this case because it is merely a study of "the relationship between Speed and unit price [] for the Accused Products" without any relationship to the asserted patents. Ex. 1, ¶ 9.

The prejudice of this opinion would greatly exceed this null probative value. *See* Fed. R. Evid. 403. Dr. Groehn's regression would confuse the issues and mislead the jury because, without any explanation of how the asserted patents contribute to the incremental difference in speed, it would lead the jury to believe the entire association between speed and price is attributable to the asserted patents. It would be highly prejudicial to Samsung to have to expend time and resources to correct the misimpression the opinion is likely to cause.

### IV. CONCLUSION

For the foregoing reasons, Samsung respectfully asks the Court to strike Dr. Groehn's regression opinions as unreliable, unhelpful, and prejudicial, particularly if Dr. Kennedy's apportionment opinions relying on the regression are also excluded.

███████████████████████████████

Dated: January 16, 2024                                    Respectfully submitted,

                                                           By:   /s/ Daniel A. Tishman

| | |
|---|---|
| Melissa Richards Smith | Ruffin B. Cordell |
| melissa@gillamsmith.com | TX Bar No. 04820550 |
| GILLAM & SMITH, LLP | cordell@fr.com |
| 303 South Washington Ave. | Michael J. McKeon |
| Marshall, Texas 75670 | D.C. Bar No. 459780 |
| Telephone:  (903) 934-8450 | mckeon@fr.com |
| Facsimile:   (903) 934-9257 | Lauren A. Degnan |
| | D.C. Bar No. 452421 |
| J. Travis Underwood | degnan@fr.com |
| Texas Bar No. 24102587 | Daniel A. Tishman |
| travis@gillamsmithlaw.com | DC Bar No. 1013923 |
| GILLAM & SMITH, LLP | tishman@fr.com |
| 102 North College Avenue, Suite 800 | FISH & RICHARDSON P.C. |
| Tyler, Texas 75702 | 1000 Maine Avenue, SW |
| Telephone: (903) 934-8450 | Washington, DC 20024 |
| Facsimile: (903) 934-9257 | Telephone: (202) 783-5070 |
| | Facsimile:  (202) 783-2331 |
| Brian R. Nester | |
| DC Bar No. 460225 | Francis J. Albert |
| bnester@cov.com | CA Bar No. 247741 |
| COVINGTON & BURLING LLP | albert@fr.com |
| One CityCenter 850 Tenth Street, N | FISH & RICHARDSON P.C. |
| Washington, DC 20001-4956 | 12860 El Camino Real, Ste. 400 |
| Telephone: (202)-662-6000 | San Diego, CA  92130 |
| | Telephone: (858) 678-5070 |
| Alice J. Ahn | Facsimile:  (858) 678-5099 |
| CA Bar No. 271399/DC Bar No. 1004350 | |
| aahn@cov.com | Thomas H. Reger II |
| COVINGTON & BURLING LLP | reger@fr.com |
| 415 Mission Street, Suite 5400 | Texas Bar No. 24032992 |
| San Francisco, CA 94105 | FISH & RICHARDSON P.C. |
| Telephone:  (415) 591-7091 | 1717 Main Street, Suite 5000 |
| Facsimile:   (415) 955-6571 | Dallas, Texas 75201 |
| | Telephone: (214) 747-5070 |
| | Facsimile:  (214) 747-2091 |

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on January 16, 2024. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

*/s/ Daniel A. Tishman*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred telephonically on January 16, 2024. The parties discussed their positions on this motion. The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve. Counsel for Plaintiff indicated that they oppose this motion.

*/s/ Daniel A. Tishman*