UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., et al., <br><br> Defendants. | Civil No. 2:22-cv-00293-JRG <br> (Lead Case) <br><br> **JURY TRIAL DEMANDED** |
| NETLIST, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY TEXAS, LLC, et al., <br><br> Defendants. | Civil No. 2:22-cv-00294-JRG <br> (Member Case) <br><br> **JURY TRIAL DEMANDED** |

**SAMSUNG'S *DAUBERT* MOTION AND MOTION TO STRIKE
EXPERT TESTIMONY OF DR. WILLIAM HENRY MANGIONE-SMITH**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... iii

TABLE OF EXHIBITS .................................................................................................. v

TABLE OF ABBREVIATIONS ...................................................................................... v

I.    ARGUMENT ...................................................................................................... 1

    A.    The Court Should Strike Dr. Mangione-Smith's New Infringement
    Theories and Evidence Not Disclosed in Netlist's Infringement
    Contentions ............................................................................................... 1

        1.    Dr. Mangione-Smith Advances Untimely Infringement
        Theories ....................................................................................... 1

        2.    Exclusion Is the Appropriate Remedy ......................................... 4

    B.    The Court Should Strike Dr. Mangione-Smith's Conclusory Doctrine
    of Equivalents Theories ............................................................................ 5

    C.    The Court Should Strike Dr. Mangione-Smith's Untimely '912 Patent
    Claim Construction Opinions That Contradict the Claim Language ......... 7

        1.    Dr. Mangione-Smith's ███████ Construction.......................... 7

        2.    Dr. Mangione-Smith's ███████ Construction ......................... 8

    D.    The Court Should Strike or Exclude Dr. Mangione-Smith's Untimely
    and Unsupported Technical Benefits and Valuation Opinions ................. 9

        1.    Netlist's Refusal To Provide the Technical Benefits and
        Underlying Evidence During Fact Discovery Warrants
        Exclusion .................................................................................... 9

        2.    Dr. Mangione-Smith's Technical Benefit Opinions Are
        Unreliable.................................................................................. 11

            a.    Dr. Mangione-Smith's '912 Patent Opinions Are
            Conclusory and Untethered to the Asserted Claim as
            a Whole ........................................................................ 11

            b.    Dr. Mangione-Smith's Technical Benefits Opinions
            for the '608 and '417 Patents Also Fail To Address
            the Correct Inquiry...................................................... 13

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

E.     The Court Should Strike Dr. Mangione-Smith's Written Description Opinions ............................................................................................. 14

F.     The Court Should Strike Dr. Mangione-Smith's Opinions Regarding Samsung's Alleged State of Mind as Unreliable ...................................... 15

G.     The Court Should Strike Dr. Mangione-Smith's Essentiality Opinions ................... 15

II.    CONCLUSION ......................................................................................... 15

\* In this brief, all emphasis is added unless noted otherwise.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anascape, Ltd. v. Microsoft Corp.,*
No. 9:60-cv-0158, 2008 WL 7180756 (E.D. Tex. May 1, 2008) ....................................................1, 4

*Barrett v. Atl. Richfield Co.,*
95 F.3d 375 (5th Cir. 1996) ...................................................................................................................4

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP,*
616 F.3d 1249 (Fed. Cir. 2010) ..........................................................................................................14

*Cordis Corp. v. Boston Sci. Corp.,*
561 F.3d 1319 (Fed. Cir. 2009) ............................................................................................................8

*CytoLogix Corp. v. Ventana Med. Sys., Inc.,*
424 F.3d 1168 (Fed. Cir. 2005) ............................................................................................................8

*Gen. Elec. Co. v. Joiner,*
522 U.S. 136 (1997) ............................................................................................................................12

*Hewlett–Packard Co. v. Mustek Sys., Inc.,*
340 F.3d 1314 (Fed. Cir. 2003) ............................................................................................................5

*INVT SPE LLC v. Int'l Trade Comm'n,*
46 F.4th 1361 (Fed. Cir. 2022) .............................................................................................................7

*LaserDynamics, Inc. v. Quanta Computer, Inc.,*
694 F. 3d 51 (Fed. Cir. 2012) .............................................................................................................12

*Optis Wireless Tech., LLC v. Huawei Techs. Co.,*
2:17-cv-00123, 2018 WL 3375192 (E.D. Tex. July 11, 2018) ............................................................1

*Smith & Nephew, Inc. v. Arthrex, Inc.,*
No. 2:07-CV-335-TJW-CE, 2010 WL 457142 (E.D. Tex. Feb. 5, 2010).........................................5, 6

*VLSI Tech. LLC v. Intel Corp.,*
87 F.4th 1332 (Fed. Cir. 2023) ................................................................................................. 5, 6, 12

*Ziilabs, Inc. v. Samsung Elecs. Co.,*
No. 2:14-cv-203-JRG-RSP, 2015 WL 8274055 (E.D. Tex. Dec. 8, 2015).........................................8

**Other Authorities**

L.R. 3-1(c) ...........................................................................................................................................1

L.R. 4-1(a) ...........................................................................................................................................8

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Federal Rule of Evidence 702 ................................................................................................................ 11, 13

████████████████████████████

### TABLE OF EXHIBITS

| # | Description |
|---|-------------|
| 1 | 2023-11-20 Opening Expert Report of Dr. William Henry Mangione-Smith (excerpts) |
| 2 | 2022-11-17 Netlist Infringement Contentions (excerpts) |
| 3 | United States Patent No. 7,619,912 ("'912 patent") |
| 4 | 2024-01-12 Mangione-Smith Tr. (Rough) (excerpts) |
| 5 | 2023-02-07 Netlist 2nd Suppl Infringement Contentions Exhibit D (excerpts) |
| 6 | JEDEC 82-32A Specification (SAM-NET-293_00015377) (excerpts) |
| 7 | 2023-11-19 Netlist Revised 4th Amended Supp Resp to Samsung's 2nd Set of Interrog. (excerpts) |
| 8 | Public Trial Tr., from *EDTX1* (excerpts) |
| 9 | 2023-12-21 Mangione-Smith Rebuttal Report (excerpts) |
| 10 | 2023-06-22 Ltr to Sheasby fr Tishman re Interrog. Deficiencies |
| 11 | Ord. Pretrial Mots., Dkt. 432 from *EDTX1* |


### TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|--------------|-------------|
| *EDTX1* | *Netlist Inc. v. Samsung Electronics Co. Ltd.*, No. 2:21-CV-463 (E.D. Tex.) |

The Court should strike the following untimely and/or unreliable opinions of Plaintiff's expert Dr. Mangione-Smith: (1) infringement theories not presented in Netlist's infringement contentions; (2) untimely and unreliable doctrine of equivalents theories; (3) opinions advancing or applying waived claim construction opinions that contradict the claim language; (4) untimely and unreliable technical valuation opinions; (5) untimely written description opinions (6) opinions about Samsung's state of mind; and (7) untimely essentiality opinions.

## I.   ARGUMENT

### A.   The Court Should Strike Dr. Mangione-Smith's New Infringement Theories and Evidence Not Disclosed in Netlist's Infringement Contentions

Netlist's late disclosure of new infringement theories via its expert is unjustified and prejudicial. The Court should strike these untimely theories and supporting evidence. *Anascape, Ltd. v. Microsoft Corp.*, No. 9:60-cv-0158, 2008 WL 7180756, at *2-4 (E.D. Tex. May 1, 2008).

#### 1.   Dr. Mangione-Smith Advances Untimely Infringement Theories



The Court should strike Dr. Mangione-Smith's new infringement theories for all three asserted patents, including theories pertaining to ███████████████████████ and the "command signal," "circuit," and "configured to control" limitations for the '912 patent; ███ █████████████████████ for the '417 patent; and ████████████ for the '608 patent. Netlist's late disclosure of these theories violates its notice obligations under Patent L.R. 3-1(c). *E.g.*, *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, 2:17-cv-00123, 2018 WL 3375192, at *2 (E.D. Tex. July 11, 2018) ("[T]he ***theory*** of infringement must be spelled out, and the theory must identify the part of the accused product that satisfies each claim element." (emphasis in original)).

██████████████████████ ***12), Ex. B, ¶¶ 56-57:*** Dr. Mangione-Smith advances a new infringement theory accusing a feature ██████████████████████ of infringement. Ex. 1 at Ex. B, ¶¶ 56-57. Netlist never disclosed this theory in its infringement contentions, ████████████████████████████ let alone provide a

1

███████████████████████████████████████

narrative explanation or other notice as to how that ████ supposedly satisfies any claim elements. *See* Ex. 2 at Ex. A-1, 33-38.

███████████████████████ *912), Ex. B, ¶ 52:* Claim 16 recites "wherein the command signal is transmitted to only one DDR memory device at a time." Ex. 3 at cl. 16. Dr. Mangione-Smith now accuses ████████████████████████████████████████

█████████████████████████████████████████

████ *See* Ex. 1 at Ex. B, ¶ 52. However, Netlist did not accuse ████████████████████████ as allegedly satisfying *any* limitation in its infringement contentions. *See* Ex. 2 at Ex. A-1 at 33-38. Indeed, ████████ does not appear at all in Netlist's contentions, let alone for this specific limitation.

███████████████████████████ d *"command signal" ('912), Ex. B, ¶¶ 51-52, 55-57, 69-71:* Netlist's infringement contentions identify ████████████████ ███ ███████████ as the alleged "command signal," which Netlist calls ████████████ Ex. 2 at Ex. A-1 at 26-38. Netlist did not identify ████████████████████ *alone* as a "command signal." *Id.* Dr. Mangione-Smith nevertheless improperly refers to a ████████████████████ ████████████████████ as a "command signal" (¶¶ 69-70). *See* Ex. 1 at Ex. B. These new theories depart from Netlist's contentions based on ████████████ ███████████" Ex. 1 at Ex. B, ¶ 53; Ex. 2 at Ex. A-1 at 26, 33. The Court should preclude Dr. Mangione-Smith from opining that ████████████████ constitute command signals.

████████████ s *part of the alleged "circuit" ('912), Ex. B, ¶72:* ████████████ ████████████████████████████████████████

█████████████████████████████████████████

████████ Dr. Mangione-Smith's report states that ████████████████████ ████████████████████ Ex. 1 at Ex. B, ¶72. This opinion should be excluded because (1) it is not in Netlist's contentions; (2) it is conclusory and undeveloped; and (3) it conflicts

███████████████████████████████████████████████████████████

with the claim language, which requires the "circuit" to be "coupled to the printed circuit board," which is not the case for the edge connectors, which are part of the PCB itself.  Ex. 4 at 36:11-20.

      ***Commands "configured to control"*** ██████ ***('912), Ex. B, ¶¶ 42-43:*** The '912 patent requires a "set of input signals configured to control a second number of DDR memory devices . . . ." Ex. 3 at claim 16.  Dr. Mangione-Smith now accuses ███████████████████████████████ █████████████████ for this limitation because ████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████ *See* Ex. 1 at Ex. B, ¶¶ 42-43.  Netlist never disclosed this theory in its infringement contentions ████████████████████████ ███████████████████████████████ *See* Ex. 2 at Ex. A-1 at 18-22. ██████████████ ████████████████████████████ *Id.*

      ██████████████████████████████████████████ ***('417), Ex. C, ¶¶ 56, 61, 104, 113, 132, 140, 214, 219, 234:*** Dr. Mangione-Smith advances a new infringement theory regarding the "data buffer control signals."  He alleges that ████████████████████████████████████████ ██████████████████████████████████████████████████████ satisfy the claimed "data buffer control signals" term.  Ex. 1 at Ex. C, ¶¶ 56, 61, 104, 113, 132, 140 n.29, 214 n.39, 219 n.42, 234.  However, ███████████████████████████████████████████████ ████████████████████████████████ Netlist neither identified ████████████████ for this limitation nor explained how ████████████ allegedly satisfy the claims.  *Id.*

      █████████████████████████████ ***('608), Ex. A, ¶¶ 73-74, Ex. D, ¶¶ 85, 86, 88, 96, 103, 147, 150, 164, 171:*** Dr. Mangione-Smith advances a new infringement theory regarding "delay a signal through the data path by an amount determined by the command processing circuit." ████████████████████ █████████████████████████████████████████ Ex. 1 at Ex. A, ¶¶ 73-74, Ex. D, ¶¶ 85, 86, 88, 96, 103, 147, 150, 164, 171. ████████████████████████████████████

3

███████████████████████████████████████████████

██████████████████████████████████████. *See* Ex. 5 at Ex. D, 70-95. ██████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

### 2.    Exclusion Is the Appropriate Remedy

Netlist withheld these new infringement theories until serving Dr. Mangione-Smith's opening report, flouting P.R. 3-6's requirement to seek leave to amend its contentions. Expert reports are not a vehicle for bypassing this Court's rules. *Anascape*, 2008 WL 7180756 at *4.[1]

Even if Netlist had sought leave, it cannot justify its late disclosure. Netlist had all the relevant datasheets and JEDEC Standards that allegedly support these new infringement theories before its final infringement contentions in February 2023.[2] For example, Netlist's new ████████████ theory for the '912 patent is based exclusively on JESD 82-31A, Ex. 1 at Ex. B, ¶¶ 42-43, ██████████ ██████████████████████████████████████████ *See, e.g.,* Ex. 2 at Ex. A-1 at 12-13, 15-19, 23-25, 32. Likewise, ████████████ mode is described in the JEDEC 82-32A standard, Ex. 6 at 28, 33, ████████████████████████████████████████████████████████████ ██████████████████████ Ex. 5 at Ex. D, 70-95. Regarding its new "buffer control signals" theory, ████████████ that Dr. Mangione-Smith identifies are found in the JEDEC 82-31A standard ████████████████████ Ex. 2 at Ex. B, 46-55, 112-21, 195-99.

Dr. Mangione-Smith's belated theories unfairly prejudice Samsung. Samsung had no opportunity to investigate or conduct discovery on these theories, which substantially depart from Netlist's contentions. With fact discovery closed, Samsung cannot seek admissions or interrogatory

---

[1] The Fifth Circuit uses a four-factor test to exclude expert testimony based on undisclosed information: (1) the explanation, if any, for the party's failure to provide discovery; (2) the prejudice to the opposing party of allowing the expert to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the expert evidence. *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).

[2] ████████████████████████████████████████████████

responses from Netlist nor depose its fact witnesses to learn more about Netlist's understanding of these newly-accused features. Samsung also is now unable to subpoena third party-component suppliers for further details and information about these features, including third party suppliers ███████████████ that provide accused components for the accused Samsung products. Netlist's unjustified failure to provide notice of these new theories deprived Samsung of the ability to create a full record on the design and operation of this newly accused technology, as well as the development of a full record on the alternatives and value of the newly-accused technologies.

A continuance would not cure the prejudice to Samsung of proceeding through all of fact discovery without notice of Netlist's new theories. Also, Netlist has opposed any continuance of the trial date, which would be required to fairly respond to these new allegations. As to the importance of the evidence, exclusion will not prevent Netlist from advancing the allegations it disclosed in its infringement contentions. If the new theories were important to Netlist's case, it had a remedy of moving to amend to explain its delay and the importance. It failed to do so. Samsung thus respectfully requests that the Court strike Dr. Mangione-Smith's opinions advancing these new theories.

**B.    The Court Should Strike Dr. Mangione-Smith's Conclusory Doctrine of Equivalents Theories**

*'912 Deficient DoE Theories, Ex. B, ¶¶ 81-89:* The Court should preclude Dr. Mangione-Smith from offering any DoE theories related to the '912 patent because his analysis is conclusory and thus legally deficient. *See* Ex. 1 at Ex. B, ¶¶ 81-89; *see also Smith & Nephew, Inc. v. Arthrex, Inc.*, No. 2:07-CV-335-TJW-CE, 2010 WL 457142, at *8-10 (E.D. Tex. Feb. 5, 2010) (striking portion of expert's opinion regarding the DoE because his "report only provided a boilerplate and a mere conclusory analysis under the doctrine of equivalents for certain claim limitations"); *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1344-45 (Fed. Cir. 2023); *Hewlett–Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1322–23 (Fed. Cir. 2003) (DoE requires "particularized testimony and linking argument").

███████████████████████████████████████████████████

████████████████████████████████████ His cursory analysis alleges that the accused products perform substantially the same *function* as the claims, but he does not substantively address the "way" or "result," let alone provide anything approaching the detailed analysis the law demands. *Id.*; *VLSI*, 87 F.4th at 1344-45. Just as in *Smith & Nephew,* Dr. Mangione-Smith's DoE opinions should be stuck because he fails to "set[] forth the rationale as to why, under the function-way-result-test, the equivalent structure of the [accused] device practices the claim element limitation under the doctrine of equivalents." 2010 WL 457142 at *8.

*'608 and '417 Deficient DoE Theories, Ex. C, ¶ 242, Ex. D, ¶¶ 157-61:* The Court should also preclude Dr. Mangione-Smith offering any DoE theories for the '608 and '417 patents. *See* Ex. 1 at Ex. C, ¶ 242, Ex. D, ¶¶ 157-61. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Dr. Mangione-Smith's conclusory statements ████████████████████████████████████ are legally deficient. Likewise, Dr. Mangione-Smith's statement ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████, is similarly deficient. Ex. 1 at Ex. D, ¶ 158. The Court should strike these deficient DoE opinions and should preclude Dr. Mangione-Smith from opining at trial on DoE regarding the '608 or '417 patents.

*Untimely DoE Theories, Ex. B, ¶¶ 84-86, Ex. C, ¶ 242, Ex. D, ¶¶ 157-61:* Most of Dr. Mangione-Smith's DoE opinions should independently be struck as untimely. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Further, Netlist did not present any DoE

████████████████████████████████████████████████

arguments for the '608 and '417 patents in its contentions. These new DoE theories should be stuck as untimely. Netlist's attempt to rely on undisclosed DoE theories prejudices Samsung and a continuance would not cure the prejudice for the same reasons as identified in Section II.A.2. Moreover, Dr. Mangione-Smith's untimely and still deficient theories are not important because Netlist can still pursue its literal infringement theories.

### C. The Court Should Strike Dr. Mangione-Smith's Untimely '912 Patent Claim Construction Opinions That Contradict the Claim Language

#### 1. Dr. Mangione-Smith's ████████ Construction

*Ex. 1, Ex. B, ¶¶ 11, 37-48, 52-57, 62-63, 68, 71-72, 76-79, 84-87, 92-94:* ████████



The Court should exclude this opinion.

Dr. Mangione-Smith's claim construction is both untimely and wrong, as detailed in Samsung's co-pending summary judgment motion. The claim's plain language is controlling, and it is directed to "actual performance of the recited functions," not to mere capability. *E.g.*, *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1371 (Fed. Cir. 2022). Nothing in these limitations suggests they are directed to ████████ Moreover, Netlist forfeited any ████████ construction by failing to timely seek it during claim construction. The claim language plainly is not directed to capability on its face, and if Netlist contended it should be so construed, it was obligated to raise it during claim construction

████████████████████████████████████████████████████████

proceedings. *E.g.*, Patent L.R. 4-1(a). Netlist made a tactical decision not to pursue claim construction and should be precluded from doing so now through Dr. Mangione-Smith.

Further, "it is improper to argue claim construction to the jury because the 'risk of confusing the jury is high when experts opine on claim construction.'" *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) (quoting *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005)). Dr. Mangione-Smith "cannot serve as a conduit for putting these arguments to the jury." *Ziilabs, Inc. v. Samsung Elecs. Co.*, No. 2:14-cv-203-JRG-RSP, 2015 WL 8274055, at *2 (E.D. Tex. Dec. 8, 2015).

The Court should thus strike Dr. Mangione-Smith's opinions articulating or applying this ████████ construction. Ex. 1 at Ex. B, ¶¶ 11, 37-48, 52-57, 62-63, 68, 71-72, 76-79, 84-87, 92-94.

### 2. Dr. Mangione-Smith's ████████ Construction

***Ex. 1, Ex. B, ¶¶ 48, 55-56***: Dr. Mangione-Smith opines ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ His expert report does not explain his interpretation ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Dr. Mangione-Smith does not offer any opinion that this interpretation is the plain meaning ████████ *Id.*; Ex. 1 at Ex. B, ¶¶ 48, 55-56. It is improper for Dr. Mangione-Smith to advance this interpretation for the jury or to confuse the jury by relying on an undisclosed claim construction. *Cordis*, 561 F.3d at 1337. Further, as detailed in Samsung's summary judgment motion, this construction is wrong. It conflicts with the plain language of the claim and how the term ████████ is used in the '912 patent. The Court should preclude Dr. Mangione-Smith from advancing this theory at trial and strike his opinions relying on the construction.

████████████████████████████████████████████████

### D. The Court Should Strike or Exclude Dr. Mangione-Smith's Untimely and Unsupported Technical Benefits and Valuation Opinions

#### 1. Netlist's Refusal To Provide the Technical Benefits and Underlying Evidence During Fact Discovery Warrants Exclusion

***'912 (Ex. B, ¶¶ 91-95, 98; Ex. I, ¶¶ 25-27):*** Netlist failed to disclose adequately the benefits

identified by Dr. Mangione-Smith. ████████████████████████████████



███████████████████████████████████████████████

███████████████████████████████████████ Netlist, however, never disclosed

█████████████████████ as a benefit in fact discovery despite Samsung moving to compel on

this issue. *See* Dkt. No. 176. ███████████████████████████████

███████████████████████████████████████████████

██████████████████████████████ Similarly, Netlist never disclosed ████████████

████████ as an alleged benefit for claim 16. *Id.* Samsung therefore requests that the Court strike the

paragraphs related to these undisclosed benefits: Ex. B, ¶¶ 91-92; Ex. I, ¶ 27.

Second, the Court should strike Dr. Mangione-Smith's discussion of undisclosed documents

that he alleges support his conclusion. Samsung moved to compel Netlist to identify the basis for its

technical benefits contentions (Dkt. 176), and Netlist refused to comply. Dr. Mangione-Smith,

however, relies on numerous documents not produced in this case. Ex. 1 at Ex. I, ¶¶ 25-26, Ex. B,

¶¶ 92-95, 98. This untimely evidence and related opinion should be struck. Finally, Dr. Mangione-

Smith identifies an alleged non-infringing alternative—████████████████—that Netlist failed

to disclose. Ex. 1 at Ex. B, ¶ 91. The Court should strike this opinion. In sum, the Court should

strike Exhibit B, ¶¶ 91-95, 98 and Exhibit I, ¶¶ 25-27 of Dr. Mangione-Smith's Initial Report.

***'417 (Ex. C, ¶¶ 253, 256-58; Ex. I, ¶¶ 38-48:*** Netlist likewise failed to disclose adequately

the alleged benefits Dr. Mangione-Smith identified for the '417 patent: ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ Ex. 1 at Ex. I, ¶¶ 32-52, Ex. C, ¶¶ 243-58.  Netlist never

identified benefits (2) and (3) during fact discovery, despite Samsung's moving to compel.  Dkt. No.

176. █████████████████████████████████████████████████████████

██████████████████████████████████████████████ Samsung,

therefore, requests that the Court strike the following paragraphs related to these undisclosed benefits:

Ex. C, ¶ 253; Ex. I, ¶¶ 38-48.  The Court should strike this untimely evidence and related opinion.

Further, Dr. Mangione-Smith identifies an alleged non-infringing alternative—u███████████

██████████ that Netlist failed to disclose.  Ex. 1 at Ex. C, ¶¶ 256-58.  This opinion too should be

struck.  In sum, the Court should strike Exhibit C, ¶¶ 253, 256-58 and Exhibit I, ¶¶ 38-48 of Dr.

Mangione-Smith's Initial Report.

***'608 (Exhibit D, ¶¶ 165-171; Exhibit I, ¶¶ 53-55)***: Netlist failed to disclose adequately the

background to the alleged benefits and multiple document sources identified by Dr. Mangione-Smith.

He asserts that there is a need for precision timing across DRAM elements ████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 1 at Ex. I, ¶ 53, Ex. D, ¶

165.  He further alleges that previous solutions failed to address the timing problem.  *Id.* at Ex. I, ¶¶

54-55.  Netlist, however, never mentioned during the fact discovery period why precision timing is

necessary despite Samsung's motion to compel.  *See* Dkt. No. 176. █████████████████

█████████████████████████████████████████████████████████

███████████████████████████ Samsung, therefore, requests that the Court strike

the following paragraphs related to this undisclosed background of the alleged benefit:  Exhibit D, ¶

165; Exhibit I, ¶¶ 53-55.

Samsung also asks the Court to strike Dr. Mangione-Smith's discussion of documents that he

alleges support his conclusion.  As discussed above, Netlist refused to identify documents supporting

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Netlist's contention regarding technical benefits despite Samsung's motion to compel, Dkt. No. 176.

Dr. Mangione-Smith, however, relies on numerous documents that Netlist did not identify in its

interrogatory response, including ██████████████████████████████████████████████

████████, ████████████████████████████████ Ex. 1 at Ex. D, ¶¶ 165-171; Ex. 7 at 38. The Court

should strike this untimely evidence and related opinion.

### 2.       Dr. Mangione-Smith's Technical Benefit Opinions Are Unreliable

Dr. Mangione-Smith bases his opinions about the asserted patents' technical benefit on blatant

speculation—not facts or data. They thus cannot survive Rule 702.

### a.       Dr. Mangione-Smith's '912 Patent Opinions Are Conclusory and Untethered to the Asserted Claim as a Whole

Dr. Mangione-Smith asserts that, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████ Ex. 1 at Ex. I, ¶¶ 28-30, Ex. B, ¶ 96; *see also id.* at Ex. I, ¶¶ 22-27, Ex. B. at ¶ 95, 97-99. This

opinion attributing a ████████████ benefit to the claimed invention is fatally deficient. First, the

opinion is conclusory and unsupported, neither "based on sufficient facts or data" nor "the product

of reliable principles and methods." Fed. R. Evid. 702. ████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ *See* Ex. 1 at Ex. I, ¶¶ 23-30, Ex. B, ¶¶ 94-95. But

he provides no documents, test results, calculations, deposition testimony, or factual basis of any type

showing that PDA mode is required to ████████████████████████████ Dr. Mangione-Smith

primarily bases this assertion on a Micron Technical Note (not produced during fact discovery) that

does not pertain to the accused products and says nothing about VREFDQ calibration being necessary

to achieve ████████████████████████ *See id.* Dr. Mangione-Smith also did not even

attempt to assess reliability without ████████████████ With no factual basis tying his opinions to any

specific accused products or justifying his arbitrary selection of ████████████ Dr. Mangione-Smith's

11

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

purported technical benefit is precisely the type of opinion that is inadmissible because it "is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Second, the premise of Dr. Mangione-Smith's ████████████████████████████ ████████████████████████████████████████—is untethered to asserted claim 16. Although he relies on ███████ to satisfy *one limitation* of the asserted claims, Dr. Mangione-Smith offers no opinion that all the *other* accused components and features on which he relies for *other limitations* are also necessary for ███████ Ex. 1 at Ex. I, ¶¶ 22-31, Ex. B, ¶¶ 94-99. For example, he does not contend that a "register," "logic element," "bank address signal," or "chip-select signal" is necessary for ███████ *Id.* Nor does he contend that the other modes on which he relies, such as "Encoded QuadCS Mode," are necessary for this ███. *Id.* Nor does he assess the benefit of the '912 patent over the prior art. Thus, even if Dr. Mangione-Smith's opinion ████████████████████████████ were correct, his opinion attributing that benefit to the asserted claim is unsupported. Ex. 1 at Ex. I, ¶¶ 28-30, Ex. B, ¶ 96.

Third, Dr. Mangione-Smith's claim that ███████ could not be attained without the '912 patent fails to address the key question of the value of the specific technology at issue, *i.e.*, the patent's incremental value. This type of statement makes no attempt to address the countless other memory module features that (actually) would promote ███████ much like the absurd notion that a car cannot move without tires so the tires must be worth 100% the value of the car. Dr. Mangione-Smith's opinion is therefore irrelevant and prejudicial. *VLSI*, 87 F.4th 1332 at 1349 (cautioning the District Court to preclude evidence "not focused on answering the question of the value of the specific technology at issue"); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F. 3d 51, 68 (Fed. Cir. 2012) (holding "proof that consumers would not want a laptop computer without [the accused features] is not tantamount to proof that any one of those features alone drives the market for laptop computers"). Other opinions by Dr. Mangione-Smith illustrate that he has not addressed

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

the value attributable to the specific technology at issue—he makes the ***exact same*** statement about ***both*** the '912 patent and the '608 patent. Ex. 1 at Ex. I, ¶¶ 58-59



Dr. Mangione-Smith thus fails to apportion the '912 patent's alleged benefit.

The Court should therefore strike Dr. Mangione-Smith's conclusory and unreliable technical benefits opinions for the '912 patent. *See* Ex. 1 at Ex. I, ¶¶ 22-31, Ex. B, ¶¶ 94-99.[3]

> **b.    Dr. Mangione-Smith's Technical Benefits Opinions for the '608 and '417 Patents Also Fail To Address the Correct Inquiry**

Dr. Mangione-Smith's technical benefits opinions for these patents likewise do not address the patents' incremental benefit or provide any form of technical apportionment from other features that contribute to the alleged benefits. For the '608 patent, Dr. Mangione-Smith conflates its alleged benefit— ▮▮▮▮▮▮▮▮▮▮▮▮ of the '608 patent with the feature it allegedly enables—' ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and states in a conclusory fashion that " ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ " Ex. 1 at Ex. I, ¶ 58. But the entire benefit ▮▮▮▮▮▮▮ cannot be attributed to the '608 patent. Indeed, as mentioned, Dr. Mangione-Smith does not differentiate the incremental benefit of the '608 patent from the purported benefit of the '912 patent or any of the other many features that contribute to the operation of the products. Thus, the Court should strike Ex. 1 at Ex. I, ¶¶ 56-60, Ex. D, ¶¶ 165-171.

---

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dr. Mangione-Smith's '417 patent analysis similarly conflates the patent's benefit with the feature it allegedly enables. Here, he conflates the benefit of the '417 patent with ███████████ ██████████ because the '417 patent "reduces the [l]oad" and "without [the '417 patent] it would not be possible to use those Products in any ████ configuration." Ex. 1 at Ex. I, ¶¶ 49-50. But the entire benefit of the ███████████ cannot be attributed to the '417 patent. Indeed, in *EDTX1*, Dr. Mangione-Smith opined that the '339 patent provides the ***same*** benefit for the ***same*** accused products in the ***same*** way:



Ex. 8 at 385:2-11; *see also id.* at 700:13-17 ██████████████████████████████

██████████████████████████████████████████████

Moreover, the prior art is replete with disclosures regarding buffers for load isolation, as Dr. Mangione-Smith himself acknowledged. *See* Ex. 4 at 167:5-23, 169:14-170:12, 173:24-174:5. Dr. Mangione-Smith's analysis fails to apportion because he does not differentiate the incremental benefit of the '417 or '608 patent from the benefits of the prior art or including the alleged benefit of the '339 patent. Thus, the Court should strike Ex. 1 at Ex. I, ¶¶ 49-52, Ex. C, ¶¶ 243-52, 254-55.

### E. The Court Should Strike Dr. Mangione-Smith's Written Description Opinions

The Court should strike Dr. Mangione-Smith's new written description opinions, which Netlist improperly withheld during fact discovery. Ex. 9 at Ex. A, ¶¶ 115-36, Ex. B, ¶¶ 553-585, Ex. C, ¶¶ 50-126; *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1261 (Fed. Cir. 2010) (affirming exclusion of theories not disclosed in discovery). Samsung repeatedly asked Netlist to disclose its written description contentions. Ex. 7 at 62; Ex. 10 at 3. Netlist provided no response

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

beyond a boilerplate assertion ████████████████████████████████████
████████████████████████ Ex. 7 at 63.  Netlist should not be permitted to wait until the
rebuttal expert report deadline to provide theories that it withheld during fact discovery.  Thus, the
Court should strike Exhibit A, ¶¶ 115-136, Exhibit B, ¶¶ 563-585, Exhibit C, ¶¶ 50-126.

### F.    The Court Should Strike Dr. Mangione-Smith's Opinions Regarding Samsung's Alleged State of Mind as Unreliable

Dr. Mangione-Smith's opinions relating to the alleged state of mind of the Samsung
defendants—specifically, that Samsung either intentionally induced infringement or was willfully blind
to it—lack any basis in fact and are outside the scope of his expertise.  Ex. 1 at Ex. A, ¶¶ 77-101; *id.*
at Exs. B-D (incorporating same by reference).  These non-technical opinions as to Samsung's alleged
state of mind are unreliable and nearly identical to the opinions that this Court previously struck.  *See*
Ex. 11 at 6 ("Concerning Samsung's alleged state of mind, the Court GRANTED [Samsung's] motion.
The witness will not opine on Samsung's state of mind.").  For the same reasons, Dr. Mangione-
Smith's opinions regarding state of mind in this case, *e.g.,* Ex. 1 at Ex. A, ¶¶ 77-101, should be struck.

### G.    The Court Should Strike Dr. Mangione-Smith's Essentiality Opinions

Despite Netlist's refusal to provide discovery on essentiality during fact discovery (*see* Dkt.
No. 128), Dr. Mangione-Smith's Rebuttal Report provides new opinions on why he believes the
Asserted Patents are not standard essential.  Ex. 9 at Ex. A, ¶¶ 113, 310-328; *id.* at Ex. B, ¶¶ 67 [sic],
626-635; *id.* at Ex. C, ¶¶ 418, 420-424.  The Court should not countenance Netlist's efforts to hide
such theories during the fact discovery period.  Netlist's attempt to rely on untimely essentiality
theories prejudices Samsung, a continuance would not cure the prejudice, and Dr. Mangione-Smith's
essentiality opinions should therefore be excluded.  *See* Section II.A.2 Supra, *see also* Samsung's
forthcoming Motion To Preclude Evidence Regarding Essentiality of the Asserted Patents.

## II.    CONCLUSION

For the foregoing reasons, Samsung requests that the Court grant Samsung's motion.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dated:  January 16, 2024

Respectfully submitted,

By:    */s/ Francis J. Albert*

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:      (903) 934-8450
Facsimile:      (903) 934-9257

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile:  (415) 955-6571

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on January 16, 2024.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

_/s/ Francis J. Albert_

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred telephonically on January 16, 2024.  The parties discussed their positions on this motion.  The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve. Counsel for Plaintiff indicated that they oppose this motion.

_/s/ Daniel A. Tishman_