UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.,<br><br>Defendants. | Civil No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S MOTION FOR PARTIAL SUMMARY JUDGMENT
OF NONINFRINGEMENT CONCERNING THE '912 PATENT**

████████████████████████████████

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

TABLE OF EXHIBITS ........................................................................................................v

TABLE OF ABBREVIATIONS...........................................................................................v

I.      INTRODUCTION ....................................................................................................1

II.     STATEMENT OF ISSUES .......................................................................................2

III.    STATEMENT OF UNDISPUTED MATERIAL FACTS..........................................2

IV.     GOVERNING LAW..................................................................................................4

V.      ARGUMENT .............................................................................................................5

        A.      The Court Should Grant Summary Judgment That the Accused
                Products Do Not Directly Infringe As Sold.................................................5

                1.      Sales of the Accused Products Do Not Directly Infringe
                        Under the Plain Language of Claim 16, Which Is Controlling .........5

                        a.      There Is No Dispute That the Accused Products as
                                Sold Are Not Actually Receiving or Transmitting the
                                Claimed Signals ....................................................................5

                        b.      Netlist's "Capability" Theory Is Untimely and Wrong.........6

                2.      Netlist's Evidence Is Also Legally Insufficient for
                        "Capability" Claims..........................................................................9

        B.      The Court Should Grant Summary Judgment That Samsung's
                Accused RDIMMs Do Not Infringe the '912 Patent...................................10

                1.      The Alleged "Circuit" Does Not Transmit the Alleged
                        "Command Signal" to Only One DDR Memory Device at a
                        Time ..................................................................................................10

                        a.      Netlist Identifies the RDIMMs' ████ as the "Circuit" ........10

                        b.      Netlist Relies on the ████████████████
                                ████████████████ ..............................................10

                        c.      ████████████████████████
                                ████████████████████████████11

                2.      Netlist's Doctrine of Equivalents Theory Is Barred by

Prosecution History Estoppel and Lacks Legally-Sufficient Evidence ................................................................................................. 11

3.      Netlist's Belated Theories Cannot Avoid Summary Judgment ..................... 12

        a.      Netlist's Untimely "Circuit" Theory Is Meritless ................................ 12

        b.      Netlist's New "Command Signal" Theory Rests on an Undisclosed and Untenable Construction of "Transmit[]" ............................................................................................ 13

VI.    CONCLUSION ........................................................................................................ 14

\* In this brief, all emphasis is added unless noted otherwise.

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................................4

*Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*,
555 F.3d 984 (Fed. Cir. 2009) ................................................................................................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................................4

*Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*,
838 F. App'x 551(Fed. Cir. 2021) .......................................................................................13

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005) ..............................................................................................8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002) .........................................................................................................11, 12

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
370 F.3d 1131 (Fed. Cir. 2004) (en banc) ............................................................................12

*Imperium (IP) Holdings, Inc. v. Apple Inc.*,
No. 4:11-CV-163, 2012 WL 6949611 (E.D. Tex. July 2, 2012)........................................7, 8

*Intell. Ventures I LLC v. T Mobile USA, Inc.*,
No. 2:17-CV-00577-JRG, 2018 WL 5809267 (E.D. Tex. Nov. 6, 2018)..............................4

*INVT SPE LLC v. Int'l Trade Comm'n*,
46 F.4th 1361 (Fed. Cir. 2022) .....................................................................................*passim*

*Lodsys, LLC v. Brother Int'l Corp.*,
No. 2:11-cv-00090-JRG, 2013 WL 2949959 (E.D. Tex. June 14, 2013)...............................6

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996)............................................................................................................1, 4

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.*,
521 F.3d 1351 (Fed. Cir. 2008).........................................................................................1, 6

*TGIP, Inc. v. AT & T Corp.*,
512 F. Supp. 2d 696 (E.D. Tex. 2007) ...................................................................................6

*VLSI Tech. LLC v. Intel Corp.*,
  87 F.4th 1332 (Fed. Cir. 2023) .............................................................................................. 12

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
  992 F.3d 1366 (Fed. Cir. 2021) ............................................................................................. 13

**Other Authorities**

Fed. R. Civ. P. 56 ........................................................................................................................ 4

█████████████████████████

**TABLE OF EXHIBITS**

| # | Description |
|---|---|
| 1 | *Inter Partes* Reexamination Certificate for United States Patent No. 7,619,912 |
| 2 | Exhibit A-1 to Plaintiff Netlist Inc.'s Disclosure of Asserted Claims and Infringement Contentions (U.S. Patent No. 7,619,912 C1 – DDR4 Exemplary Claim Chart) |
| 3 | William Mangione-Smith Dep. Tr. (rough), dated January 12, 2024 (excerpts) |
| 4 | Declaration of Joseph C. McAlexander III[1] |
| 5 | JEDEC Standard JESD 82-31A: DDR4 Registering Clock Driver Definition (DDR4RCD02) (SAM-NET-293_00015178) (excerpts) |
| 6 | Exhibit B ('912 Patent) to Opening Expert Report of Dr. William Henry Mangione-Smith (excerpts) |
| 7 | Prosecution History for *Inter Partes* Reexamination No. 95/000,578 of U.S. Patent No. 7,619,912 (SAM-NET-293_00026272) (excerpts) |
| 8 | Samsung M393AAG40M32 RDIMM Datasheet (SAM-NET-293_00001708) (excerpts) |
| 9 | JEDEC Standard JESD 79-4C: DDR4 SDRAM (SAM-NET-293_00013373) (excerpts) |
| 10 | Presentation by Samsung's DRAM Solutions Team (SAM-NET00412907) |
| 11 | United States Patent No. 7,619,912 |
| 12 | Sungyub Jang Dep. Tr., dated November 10, 2023 (excerpts) |

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| '912 patent | U.S. Patent No. 7,619,912 |
| CRC | Cyclic Redundancy Check |
| DDR | Double Data Rate |
| DoE | Doctrine of Equivalents |
| DRAM | Dynamic Random Access Memory |
| LRDIMM | Load-Reduced Dual Inline Memory Module |
| ███ | ████████ |
| PCB | Printed Circuit Board |
| ███ | ███████ |
| ███ | ██████ |
| RDIMM | Registered Dual Inline Memory Module |
| SSMF | Samsung's Statement of Material Facts (infra sec. III) |

---

[1] Paragraph citations to Ex. 4 are to paragraph numbers of Exhibit 1 to Mr. McAlexander's declaration.

## I.    INTRODUCTION

The Court should narrow the issues for trial concerning the '912 patent by granting summary judgment that (1) no accused products directly infringe as sold; and (2) all RDIMMs do not infringe (directly or indirectly) because their alleged "circuit" does not transmit the alleged "command signal."

The '912 patent's sole remaining asserted claim (claim 16) requires, *inter alia*, a "circuit coupled to [a] printed circuit board."  The claim's plain language further requires the circuit to comprise a "logic element receiving a set" of specially-configured input signals from a computer and that the circuit "responds to a command signal and the set of input signals" by "transmitting the command signal . . . to only one DDR memory device at a time."  Netlist's infringement read has many problems, but to streamline the issues for summary judgment, this motion addresses just two.

***No Direct Infringement as Sold***.  None of Samsung's accused products directly infringe as sold because they are not "receiving" these specially-configured signals or "transmitting" commands to one memory device at a time in response.  The products are not only incapable of "receiving" or "transmitting" signals without being connected to a computer's memory controller, but also are not configured to operate in the peculiar combination of modes Netlist alleges satisfy these claim elements. Netlist does not dispute these facts showing that Samsung's sales cannot directly infringe.  Instead, Netlist's technical expert, Dr. Mangione-Smith, bases his direct infringement analysis on an incorrect claim construction that Netlist did not seek during the *Markman* phase—that "receiving" means "capable of receiving" and "transmitting" means "capable of transmitting."  Summary judgment on this "capability" theory is proper because (1) Netlist waived its "capability" construction by not timely raising it; (2) even if considered under *O2 Micro*, Netlist's construction fails on the merits; and (3) "capability" claims require a showing that the accused functionality is used at least sometimes in the environment in which the claimed device operates, and Netlist has identified no evidence that any computers are even capable of turning on the modes Netlist contends infringe.

1

███████████████████████████████████████

**No Infringement by RDIMMS**.  Netlist's infringement contentions for RDIMMs are fatally flawed.  Netlist identifies the ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████."  Thus, under Netlist's theory, the alleged "circuit" at most transmits a **portion** of the alleged "command signal," which does not satisfy claim 16's plain language.  Unable to dispute these facts, Netlist attempts both to rely on the DoE and to change its infringement theory.  But prosecution history estoppel bars Netlist's DoE allegations, and Netlist has not developed sufficient evidence to support these other, flawed theories.  Summary judgment is thus warranted.

## II.     STATEMENT OF ISSUES

1.     Whether Samsung can directly infringe claim 16 of the '912 patent by selling the accused RDIMMs and LRDIMMs even though the products are not "receiving a" specifically-configured "set of input signals from the computer system" and do not respond by "transmitting [a] command signal . . . to only one DDR memory device at a time," as the products are sold.

2.     Whether Samsung's accused RDIMM products infringe claim 16 of the '912 patent, where the accused "circuit" does not "respond[] to a command signal and the set of input signals from the computer system by . . . transmitting" the accused "command signal."

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Claim 16 of the '912 patent recites that the claimed memory module has a "circuit coupled to the printed circuit board" which has a "logic element receiving a set of input signals from the computer system" where "the set of input signals [is] configured to control" fewer DDR memory devices arranged in fewer ranks than are actually on the memory module.  Ex. 1 at cl. 16.  It further requires that the circuit "responds to a command signal and the set of input signals from the computer system by . . . transmitting the command signal to at least one DDR memory device . . . wherein the

██████████████████████████████

command signal is transmitted to only one DDR memory device at a time." *Id.*

2.    Netlist's infringement contentions rely on ████████ for "transmitting [a] command signal to at least one DDR memory device . . . wherein the command signal is transmitted to only one DDR memory device at a time." Ex. 2 at 33-38.

3.    Netlist's infringement contentions rely on ██████████████ for "receiving a set of input signals from the computer system . . . the set of input signals configured to control" fewer DDR memory devices arranged in fewer ranks than are on the memory module. *Id.* at 18-22.

4.    The accused products, as sold, are not receiving input signals. Ex. 3 at 15:15-25.

5.    T████████████████████████████████████

6.    ██████████████████████████████████████

██████████

7.    Netlist has not identified any specific computer system capable of sending signals to ████████████████████████████████████████ ode being used together in the United States.

8.    Dr. Mangione-Smith did not analyze any computer system or memory controller to determine whether it can use ██████████████████. Ex. 3 at 96:12-100:25.

9.    Samsung's accused DDR4 RDIMMs and LRDIMMs can be used without ever enabling ████████████████████. *Id.* at 125:4-10, 195:5-9.

10.    Netlist's infringement contentions identify the DDR4 ████ in the RDIMMs as the alleged "circuit." Ex. 2 at 12; *id.* at 23-24 (repeatedly referring to ████████████

11.    Netlist's infringement contentions identify the ████████████████████████ ████████████████████████    ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████



12.

13.

14.

15.     Claim 16 "was originally dependent on independent claim 15, and was rewritten in independent form . . . after claim 15 was rejected" as unpatentable during reexamination.  Ex. 7 at 33530; *see also id.* at 27651-711, 29377-29733, 29415, 29427, 33540-33551, 33586-33596, 33793-33794.

16.     Netlist narrowed the scope of the subject matter of original independent claim 15 by amending claim 15 in reexamination.  *Id.* at 29376-29733, 33549-33550, 33587-33659; Dkt. 184.

## IV.    GOVERNING LAW

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Analyzing infringement is a two-step process.  "The first is a question of law, to be determined by the court, construing the letters-patent, and the description of the invention and specification of claim annexed to them.  The second is a question of fact . . . ."  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996) (citation omitted).  Summary judgment of noninfringement is proper when the moving party "either produce[s] evidence negating an essential element of the nonmoving party's claim or defense or show[s] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Intell. Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (citation omitted).

████████████████████████████████████████

## V.    ARGUMENT

### A.    The Court Should Grant Summary Judgment That the Accused Products Do Not Directly Infringe As Sold

#### 1.    Sales of the Accused Products Do Not Directly Infringe Under the Plain Language of Claim 16, Which Is Controlling

##### a.    There Is No Dispute That the Accused Products as Sold Are Not Actually Receiving or Transmitting the Claimed Signals

Netlist cannot show that the accused products satisfy the plain language of claim 16 as sold. As a threshold matter, the accused products cannot receive **any** signals until they are connected to a memory controller, SSMF ¶ 4, and Netlist has not identified any evidence—or even contended—that such connection exists when the products are sold.  Nor is this a case where infringement is premised on functions performed by the accused products as soon as they are installed in a computer and turned on.  Rather, Netlist's infringement contentions rely on a computer hypothetically configuring the products to operate simultaneously in various non-default modes.  First, Netlist's infringement contentions rely on ██████████████████████ mode for claim 16's requirement of transmitting a command signal to only one DDR memory device at a time.  SSMF ¶ 2.  Second, Netlist relies on ███████████████" for the requirement of a "set of input signals configured to control" fewer memory devices and ranks than the module actually has.  SSMF ¶ 3.

No accused product is sold in any of these modes—let alone an accused **combination** of modes.  ████████████████████████████████████████

██████████████████████████. SSMF ¶ 5.  ████████████████████████

████████████████████████████████████████ SSMF ¶ 6; Ex. 5 at 2.[2]  Thus, even if the accused products somehow had components "receiving" input signals



_____

[2] Dr. ██████████████████████████████████████████████████████████ Ex. 6, ¶¶ 42-43, 57.  These new theories should be struck, as explained in Samsung's motion to strike.  Even if permitted, they do not affect this motion.

████████████████████████████████████████

from a computer and "transmitting" command signals in response as sold, those signals would neither be configured as claimed nor transmitted to only one memory device at a time as claimed. Because the products do not satisfy the claim's plain language as sold, Samsung's sales cannot directly infringe.

### b. Netlist's "Capability" Theory Is Untimely and Wrong

The Court should reject Netlist's "capability" construction for two reasons. First, Netlist waived this argument by not timely raising it. There is no credible argument that the plain meaning of "the logic element receiving a set of input control signals from the computer system" covers a logic element not receiving any input signals. If Netlist intended to rely on "capability," it should have known from the claim on its face that a construction would be necessary. Netlist made a tactical decision not to seek that construction, and in doing so waived any infringement theory based on mere "capability." *See, e.g., Lodsys, LLC v. Brother Int'l Corp.*, No. 2:11-cv-00090-JRG, 2013 WL 2949959, at *19-20 (E.D. Tex. June 14, 2013) (deeming constructions waived that were not timely raised); *TGIP, Inc. v. AT & T Corp.*, 512 F. Supp. 2d 696, 712 (E.D. Tex. 2007). This waiver should not be excused— Netlist's failure to timely raise this construction deprived Samsung of the chance to seek third-party discovery on what modes available computer systems actually support.

Further, even if the Court excuses Netlist's waiver and construes the claims under *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008), it should reject Netlist's construction. "[S]ometimes a device only needs to be 'capable of operating' according to a claimed limitation, for a finding of infringement. . . . Other times, a device does not infringe unless it actually operates as claimed. . . . Whether infringement requires actual performance of the recited functions by the accused device depends on the claim language." *INVT SPE LLC v. Int'l Trade*

---

Maximum Power Saving Mode is disabled by default, and the theory about ████████████ ████████████████████████████" *see id.*, which is not the case as the products are sold. Ex. 4, ¶ 150; Ex. 5 at 69 (██████████████████████████████████████████████ ████████████████████████████████████████████████

███████████████████████████████████████

*Comm'n*, 46 F.4th 1361, 1371 (Fed. Cir. 2022). This rule applies to apparatus claims, which may "require an infringing device to actually perform and operate according to the functional terms recited." *Id.* Indeed, even Dr. Mangione-Smith admits that "███████████████████████████ ████████████████████████████." Ex. 3 at 87:10-88:12.

Claim 16 is directed to "actually operat[ing] as claimed." *See INVT*, 46 F.4th at 1371. It recites a circuit's "logic element ***receiving*** a set of input signals" that the computer "***configured to control*** a second number of DDR memory devices." The claim further requires the "circuit ***generating*** a set of output signals . . . configured to control" a different number of devices, and that the circuit "responds to a command signal and the set of input signals" by "***transmitting*** the command signal . . . wherein the command signal is transmitted to only one DDR memory device at a time." This language unambiguously refers to a device that is actually operating. These actions only take place in operation, and how the signals sent by the computer are "configured" is only determined in operation.

Courts distinguishing actual-performance claims from capability claims have consistently found that similar language requires actual performance. For example, this Court held that an "imager ***providing data*** for a plurality of pixels" and an "integration time adjustment block . . . ***setting the integration time*** to an integral multiple" required that the claimed "imager" to be in the "particular state in which" the "providing" and "setting" "are occurring or have occurred." *Imperium (IP) Holdings, Inc. v. Apple Inc.*, No. 4:11-CV-163, 2012 WL 6949611, at *28 (E.D. Tex. July 2, 2012), report and recommendation adopted as modified, 2013 WL 322053 (E.D. Tex. Jan. 28, 2013). Likewise, "[r]ather than using language such as 'configured to,'" the '912 patent "recites a particular state" where the circuit is receiving and transmitting specific signals that have been configured a particular way. *Id.*

The Federal Circuit similarly held that a claim directed to a candle tin with a cover that "when removed, ***being placed*** upon the surface [upon which the candle tin is placed] with the holder ***being set*** upon the cover for the cover to support the holder above" and a candle holder with "protrusions

*resting upon* the closed end of the cover" required more than mere capability. *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 994-95 (Fed. Cir. 2009). As the Federal Circuit further explained in *INVT*, this claim required "not only a particular physical relation between two components of the device, but [also] a limitation resembling a particular use of those components." *INVT*, 46 F.4th at 1372. Claim 16 similarly has a limitation requiring a particular use of recited components: "the command signal *is transmitted* to only one DDR memory device at a time," which Netlist contends is infringed by only a particular use of the recited components.

Claim 16 also contrasts with "capability" claims. For example, *INVT*'s claims recited a "receiving section that receives" a signal. *Id.* at 1366. These claims used "receiving" as a present participle to describe the *type* of "section" and the present simple tense to describe the section's typical functions. *Id.* In contrast, the '912 patent refers to a "logic element receiving" signals, using the present *continuous* tense. As a matter of basic English grammar, this refers to a logic element presently receiving the signals. A "flying machine that flies 200 mph" is one capable of doing so; a "machine flying 200 mph" is one currently doing so. The Court rightly read the claims consistent with this grammatical rule in *Imperium*, 2012 WL 6949611 at *28, and rule governs here as well.

Finally, it is irrelevant that claim 16's preamble contains capability-type language ("connectable"). Broad preambles are often narrowed by subsequent limitations, and courts have consistently decided "capability" on an element-by-element basis, finding actual operation required despite broader language elsewhere in the claim. *E.g.*, *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1299, 1310-12 (Fed. Cir. 2005) (rejecting capability theory although claim preamble recited capability to stabilize one or more bone segments); *Imperium*, 2012 WL 6949611, at *28 (claim required actual operation even if "imager for a digital camera" did not require installation in the camera). Netlist's "capability" arguments thus provide no basis to avoid summary judgment.

███████████████████████████████

### 2.    Netlist's Evidence Is Also Legally Insufficient for "Capability" Claims

Even where claims are directed to capability, a patentee alleging infringement must show that the accused products are "'reasonably capable' of performing the claimed functions 'without significant alterations.'" *INVT*, 46 F.4th at 1375-76. The Federal Circuit has "never suggested that reasonable capability can be established without any evidence or undisputed knowledge of an instance that the accused product performs the claimed function[s] when placed in operation." *Id.* Further, when a claimed apparatus "operates in an environment that involves actions of another device," the *other* device's "operations must be known to determine whether the accused device infringes." *Id.* Netlist's purported proof of capability does not meet these standards. First, Netlist has not identified any instance of any accused product operating in an allegedly-infringing combination of modes. Despite seeking discovery from Samsung's customers, Netlist has not identified any instance of, for example, ████████████████████████████████ to allegedly satisfy claim 16. Further, these modes need not ever be enabled for the products to work. SSMF ¶ 9.

Second, Netlist has not developed any evidence concerning any available computer systems or their memory controllers. In that way, this case is strikingly similar to *INVT*, where the Federal Circuit found the patentee "ha[d] not shown infringement, even though the claims are drawn to capability." 46 F.4th at 1375. *INVT* involved claims which, as construed, covered devices capable of receiving signals containing data modulated and encoded a particular way. *Id.* at 1366, 1374. The patentee alleged that the accused products were capable of receiving these signals from a base station, but failed to show "that a base station in fact ever sen[t] the user device a data signal that is modulated and encoded" as claimed. *Id.* at 1371, 1378. Because the patentee performed no analysis of the base station's source code, it was "not possible to know" whether base stations ever sent such signals and, hence, whether the user devices were capable of receiving them. *See id.* at 1380. Hence, even if claim 16 required only the capability to receive input signals "configured" a particular way, proof of

█████████████████████████████████████████

"reasonable capability" requires Netlist to show that computer systems or their memory controllers actually send such signals. Because Netlist has failed to conduct such analysis, it has the same "evidentiary gap" that was fatal in *INVT*. *See id.* Summary judgment is therefore appropriate.

**B.    The Court Should Grant Summary Judgment That Samsung's Accused RDIMMs Do Not Infringe the '912 Patent**

**1.    The Alleged "Circuit" Does Not Transmit the Alleged "Command Signal" to Only One DDR Memory Device at a Time**

**a.**    ██████████████████████████████████

Netlist's infringement contentions explicitly state that the ████ is the accused "circuit," SSMF ¶ 10, and rely exclusively on the ████ for the circuit's required structure. For example, for the limitation "a circuit coupled to the printed circuit board, the circuit comprising a logic element and a register," Netlist contended that "██████████████████████████████████████

██████████████████████████████" *Id.*; Ex. 2 at 12-15.

**b.    Netlist Relies** ███████████████████████


Claim 16 requires that the "command signal is transmitted to only one DDR memory device at a time." Netlist does not assert that this limitation is satisfied during ordinary read and write operations; ██████████████████████████████████████

████████████████████ SSMF ¶ 11. Netlist had to rely on this theory because ████████████

████████████████████████████████████████



*E.g.*, Ex. 8 at 12. ████████████████████████████████



To allege infringement despite this fact, Netlist relies on the combination of ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████. Ex. 2 at 33-38; ████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████

**c.    It Is Undisputed That** ████████████████████████████

Netlist's infringement theory does not withstand close scrutiny.  Even Dr. Mangione-Smith admits that the alleged "circuit" in Samsung's RDIMMs ████████████████████████ ████████████████████████████████████████, as claim 16 explicitly requires.  Ex. 3 at 47:3-48:2; Ex. 5 at 66.  Instead, for all RDIMMs, ████████████████████████████ ████████████████████████. Ex. 4, ¶¶ 186-188; Ex. 10 at 9. ████████████████████ ████████████████████████████████████████████████████████. 6, ¶ 72 ████████████████████████████████████████ *id.*, ¶ 55 n.6 (████████████████ ████████████████████  Thus, there is no genuine dispute that the alleged "circuit" does not transmit the alleged "command signal" in ***RDIMMs***.  Summary judgment is therefore proper.

**2.    Netlist's Doctrine of Equivalents Theory Is Barred by Prosecution History Estoppel and Lacks Legally-Sufficient Evidence**

Netlist cannot avoid summary judgment by relying on the DoE.  As an initial matter, prosecution history estoppel bars any DoE theory related to transmitting the "command signal" to one memory device at a time.  When a patentee "originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002). Such narrowing creates a presumption "that the patentee surrendered all subject matter between the

███████████████████████████████████████

broader and the narrower language." *Id.* at 740. This presumption applies when, for patentability reasons, a patentee narrows the claimed subject matter by "rewriting [a] dependent claim[] into independent form" and abandons the original independent claim's broader scope. *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1134 (Fed. Cir. 2004) (en banc). Here, "[c]laim 16 was originally dependent on independent claim 15, and was rewritten in independent form . . . after claim 15 was rejected" as unpatentable. SSMF ¶¶ 15-16. The presumption of prosecution history estoppel thus applies.[3] Further, Netlist has not provided any contention or evidence to rebut the presumption, and no basis for avoiding estoppel applies. Ex. 6, ¶¶ 81-89; Ex. 4, ¶¶ 272-285.

Netlist's DoE theory is also legally deficient. Dr. Mangione-Smith does not explain how the alleged equivalents are "substantially the same" to "the function, way, and result of the claimed element" with "particularized testimony and linking argument." *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1342-45 (Fed. Cir. 2023); Ex. 6, ¶ 87. The theory thus "fails as a matter of law." *Id.*

### 3.    Netlist's Belated Theories Cannot Avoid Summary Judgment

Having failed to prove its original theory, Netlist seeks to introduce new infringement theories through Dr. Mangione-Smith, including ████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████ Ex. 3 at 217:7-16. These belated theories do not create a triable issue of fact even if the Court permits them (and it should not, as Samsung's motion to strike explains).

### a.    Netlist's Untimely "Circuit" Theory Is Meritless

Dr. Mangione-Smith offers no explanation as to how the ███████████████████████ together comprise a "circuit" when they are on completely different electrical paths, Ex. 6, ¶¶ 22-27,

---

[3] In *Honeywell*, the original independent claim was cancelled, whereas Netlist abandoned the broader independent claim by narrowing it with other amendments. 370 F.3d at 1133. This distinction is irrelevant. The presumption applies as long as "the scope of subject matter" originally "claimed in the independent claim has been narrowed," which is true whether that claim is cancelled or otherwise narrowed, *id.* at 1142, and this Court already determined that it was. Dkt. 184 at 2-10.

██████████████████████████████████████

Ex. 10 at 5, 9; no analysis showing that ████████████ would be transmitted in response to the "set

of input signals" he identifies, Ex. 6, ¶¶ 28-35, 49-57; and no explanation how this new "circuit" could

be "coupled to the printed circuit board" when the edge connectors are admittedly "part of the PCB

. . . itself," Ex. 3 at 36:11-20.  Indeed, consistent with this admission, the '912 patent describes edge

connectors as a part of the PCB "providing electrical connections between the computer system and

the components of the memory module"—not as part of one of those components.  Ex. 11 at 6:4-11.

Claim 16 is thus unambiguous that the PCB and "circuit" are separate elements.[4]

### b.  Netlist's New "Command Signal" Theory Rests on an Undisclosed and Untenable Construction of "Transmit[]"

Netlist's new "command signal" theory fares no better.  Dr. Mangione-Smith admits that this

theory depends ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████."  Ex. 3 at 218:12-220:10.  But Dr. Mangione-Smith did not identify

his reliance on this construction in his expert report and has offered no opinion that the plain meaning

of "***transmitting***" requires the ***receiving*** device to latch or begin processing.  Ex. 6, ¶¶ 49-57.  Nor

is such a construction credible.  His interpretation is akin to arguing that a quarterback does not throw

a pass unless the receiver catches the ball.  The plain meaning of "transmitted" does not depend on

what the receiving device does with the signal, Ex. 4, ¶ 185, as Dr. Mangione-Smith all but admits.

Ex. 3 at 219:25-220:10 (admitting that ████████████████████████████████████

████████████  Thus, even if the Court allowed Netlist to present this improper and incorrect

---

[4] While claim 16 is clear, established precedent further confirms this understanding.  *E.g.*, *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1378 (Fed. Cir. 2021); *Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*, 838 F. App'x 551, 553 (Fed. Cir. 2021) ("By listing the elements separately and using the word 'coupled,' claim 14 strongly indicates that the 'speech recognition system' is distinct from the 'wireline node.'").

████████████████████████████████████

construction to the jury, no reasonable jury could accept it.[5]

Further, this new interpretation of "transmit[]" conflicts with the '912 patent's specification and claims. The specification describes signals being "transmitted" to mere OR gates, which are incapable of latching the signals. Ex. 11 at 23:6-16; *id.* Fig. 3B. In contrast, it never describes a command signal being latched by only one memory device at a time, so claim 16 would be invalid for lack of written description under Dr. Mangione-Smith's interpretation. *See generally* Ex. 11. Even more critically, the claims were amended in reexamination to require that a PLL device "transmits a PLL clock signal" to, among other components, memory devices. *E.g.*, Ex. 1 at cl. 1. Yet, the '912 patent never describes PLL clock signals being latched, and latching clock signals would not make sense in the context of the memory devices described in the '912 patent. Ex. 11.

In sum, the theory admittedly conflicts with the plain language of the claims. It relies on a claim construction Netlist never proposed or disclosed, and which contradicts how the term is used in the patent. And the theory could not establish infringement even if permitted. Thus, this theory provides no basis to avoid summary judgment.

Finally, even if the Court finds that one of these theories creates a triable issue of fact, it should at least grant partial summary judgment with respect to Netlist's other theories.

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant Samsung's motion.

---

[5] While the Court need not reach this issue to grant summary judgment, this theory also rests on a mistaken understanding of how the accused products operate. Dr. Mangione-Smith bases his understanding that ████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████ Netlist identifies no contrary evidence.
Thus, the products would not infringe even under this new theory.

Dated:  January 16, 2024

Respectfully submitted,

By:    /s/ Lauren A. Degnan

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:    (903) 934-8450
Facsimile:    (903) 934-9257

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile:  (415) 955-6571

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

*Attorneys for Defendants Samsung Electronics Co., Ltd.;
Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

████████████████████████████████████████

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on January 16, 2024.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

*/s/ Lauren A. Degnan*