## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-293-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO, LTD; | ) | (Lead Case) |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC.; SAMSUNG SEMICONDUCTOR | ) | ███████████████ |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-294-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC.; | ) | |
| MICRON SEMICONDUCTOR | ) | |
| PRODUCTS, INC.; MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## NETLIST INC.'S MOTION TO STRIKE PORTIONS OF THE
## REBUTTAL EXPERT REPORT OF LAUREN KINDLER

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    MS. KINDLER'S COMPARABLE LICENSE ANALYSIS IS UNRELIABLE ..................1

    A.    Ms. Kindler's Portfolio Apportionment For The JDLA &
        SK hynix License Is Untethered To The Facts (¶¶ 89,
        100(e), 102-03, 179, 210-13, 243-48, 298-99) ........................................................1

    B.    Ms. Kindler's Ultimate "Adjustments" To The SK hynix
        License & JDLA Are Arbitrary And Unreliable (¶¶ 89-91,
        100, 102-103, 212) ................................................................................................4

    C.    Ms. Kindler's Comparability Analysis For The Other
        Samsung Licenses Is Unreliable (¶¶ 53-7, 45-8, 61-3, 67-
        70, 76-9, 216-17, 227, 105-128) ..........................................................................6

II.   MS. KINDLER'S IRRELEVANT AND PREJUDICIAL OPINIONS...............................10

    A.    References to RAND (¶¶ 61-71, 151, 230-234) ...................................................10

    B.    References to Other Litigation and IPRs (¶¶ 30-4, 89(e)(ii),
        92-3, 236-37, 245) ..............................................................................................11

    C.    References to Alleged JEDEC Contributions (¶¶ 64, 150-
        151, 170-74) .........................................................................................................12

    D.    Improper Legal Conclusions Regarding JDLA (¶¶ 18, 27,
        28, 85, 89(e), 91).................................................................................................13

    E.    Improper Testimony Regarding Parties' Subjective Beliefs
        (¶¶ 96-100)..........................................................................................................14

    F.    Improper Use Of Rule 408 Communications (¶¶ 70, 230,
        231) ......................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ADASA Inc. v. Avery Dennison Corp.,*
  55 F.4th 900 (Fed. Cir. 2022) ............................................................................................... 7

*Apple Inc. v. Wi-LAN Inc.,*
  25 F.4th 960 (Fed. Cir. 2022) ................................................................................ 3, 5, 9, 10

*Authentic Apparel Grp., LLC v. United States,*
  989 F.3d 1008 (Fed. Cir. 2021) ........................................................................................... 16

*Biscotti Inc. v. Microsoft Corp.,*
  2017 WL 2536962 (E.D. Tex. May 18, 2017) ..................................................................... 4

*Cybergym Rsch. LLC v. ICON Health & Fitness, Inc.,*
  2007 WL 9724238 (E.D. Tex. Oct. 7, 2007) ...................................................................... 17

*GREE, Inc. v. Supercell Oy,*
  2020 WL 4288350 (E.D. Tex. 2020) ................................................................................... 17

*Intell. Ventures,* No. 2:17-CV-577-JRG, Dkt 297 ................................................................... 13

*Kona Tech. Corp. v. S. Pac. Transp. Co.,*
  225 F.3D 595 (5th Cir. 2000)............................................................................................... 15

*LaserDynamics, Inc. v. Quanta Computer, Inc.,*
  694 F.3d 51 (Fed. Cir. 2012) ........................................................................................ 4, 6, 9

*Maxell, Ltd. v. Apple Inc.,*
  2020 WL 8269548 (E.D. Tex. Nov. 11, 2020) ................................................................... 17

*MLC Intell. Prop., LLC v. Micron Tech., Inc.,*
  2019 WL 2863585 (N.D. Cal. July 2, 2019) ...................................................................... 10

*Optis Wireless Tech., LLC v. Apple Inc.,*
  No. 2:19-cv-066-JRG, Dkt. 437 .......................................................................................... 14

*Packet Intelligence LLC v. Netscout Systems, Inc.,*
  No. 2:16-cv-230-JRG, slip op. (E.D. Tex. Sep. 29, 2017) ................................................ 13

*Realtek Semiconductor Corp. v. LSI Corp.,*
  2014 WL 46997 (N.D. Cal. Jan. 6, 2014) ............................................................................ 5

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.,*
  No. 2:13-CV-213, 2015 WL 627430 (E.D. Tex. Jan. 31, 2015)......................................... 4

*Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.,*
    637 F.3d 1269 (Fed. Cir. 2011) ................................................................................................ 10

*SJB Grp., LLC v. TBE Grp., Inc.,*
    2013 WL 4092575 (M.D. La. Aug. 12, 2013) ........................................................................ 17

*Sparton Corp. v. U.S.,*
    77 Fed. Cl. 1 (2007) .................................................................................................................. 16

*Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.,*
    951 F.2d 684 (5th Cir. 1992) .................................................................................................... 13

*VirnetX, Inc. v. Cisco Sys., Inc.,*
    767 F.3d 1308 (Fed. Cir. 2014) .................................................................................................. 3

*Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.,*
    609 F.3d 1308 (Fed. Cir. 2010) .................................................................................................. 8

**Other Authorities**

Fed. R. Evid. 403 ...................................................................................................................... 4, 5

Fed. R. Evid. 408(a) ............................................................................................................... 17, 18

Plaintiff Netlist respectfully brings this motion to strike and exclude certain portions of the rebuttal report of the Samsung Defendants' expert Ms. Lauren R. Kindler, attached as Ex. 1 hereto.

I.    **MS. KINDLER'S COMPARABLE LICENSE ANALYSIS IS UNRELIABLE**

    A.    **Ms. Kindler's Portfolio Apportionment For The JDLA & SK hynix License Is Untethered To The Facts (¶¶ 89, 100(e), 102-03, 179, 210-13, 243-48, 298-99)**

Ms. Kindler purports to apportion the value of the Asserted Patents from the value of the remainder of Netlist's patent portfolio in the SK hynix License and JDLA in a manner that is nearly identical to the "market comparables" approach this Court excluded in *Netlist, Inc. v. Samsung Elecs. Co. Ltd.*, No. 2:21-cv-463 (E.D. Tex.), Dkt. 432 ("*Samsung I*"). It should be excluded here, too.

Ms. Kindler begins by identifying 186 worldwide patents that she contends reflect Netlist's entire patent portfolio. Ex. 1 ¶ 89(g)(i). She then ███████████████████████████████████ ███████, claims to ███████████████ ███████████████████████████████████ ███████████████████████████████████████████████████████ ████████ ███████████████████████████ █████████. *Id.* ¶ 89(g)(i), 100(e)(i). To do so, she relies on Mr. McAlexander, who arbitrarily applied values based on what he and Ms. Kindler claims are the ███████████████████████████████████████████████████████████████████████ ████████████████████████████████ *Id.* ¶ 89(g)(i).[1] Importantly, this analysis does ***not*** consider the value assigned to the patents by the parties to the licenses.

Federal Circuit law requires an expert to "account for differences in the technologies and economic circumstances ***of the contracting parties***" when analyzing comparable licenses. *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022) (emphasis added). The *Apple* court held there must be a factual basis to assign value to specific patents within a portfolio license. Critically, this requires consideration of how the parties to the license "treated" the patents in question. *Id.* at 973. Here, the

---

[1] Netlist has also moved to strike this analysis from Mr. McAlexander's report as unreliable.

████████████████████████████████████████████████████████ is based solely on Mr. McAlexander's arbitrary analysis and has nothing to do with how the parties ████████ those patents, as evidenced by the fact that she uses ██████████████████████████████████████████ despite those agreements being entered into by different parties, at different times, and which on their face identify different purposes. Ex. 2 (JDLA) ("WHEREAS, in connection with their collaboration hereunder, the Parties wish to grant each other a cross license under each Party's patents"); Ex. 3 (Sk hynix License) at 1-2 ████████████████████████████████████████████████ ████████. The *Apple* court emphasized that the defect in Ms. Kindler's analysis is a threshold barrier to presentation of the opinion, and is not cured by cross-examination. 25 F.4th at 974.

Ms. Kindler compounds her speculation by claiming to take a further apportioning step that is nothing more than a "rule of thumb" approach. After ██████████████████████████████████ ████████████████████████████████████████████████████, she arbitrarily ███████ ████████████████████ to claim that █████████████████████████████████████████████ ████████████████████████ Ex. 1, ¶¶ 89(g)(i), 100(e)(i). To be clear, this additional "apportionment" step is not based on any alleged technical contribution, and it has no connection whatsoever to the JDLA or SK hynix License. Rather, Ms. Kindler did two things. First, she determined ████████████████████████████████████████████████████████████ ████████. This opinion alone should be excluded because "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time." Fed. R. Evid. 403.[2]

---

[2] Courts in this district routinely exclude evidence of other litigation and unasserted patents under Rule 403. Seventeen of the 20 patents Ms. Kindler identifies as having been asserted in litigation, which form the basis of her apportionment, are not at issue in this lawsuit and have no relevance. *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 2015 WL 627430, at *1 (E.D. Tex. Jan. 31, 2015) (excluding evidence of "litigation brought by [Plaintiff] unrelated to the patents-in-suit"). Just

Second, Ms. Kindler reviewed a 2015 Netlist Presentation—which was created before two of the Asserted Patents existed (and which was never even shared with SK hynix)—and opined that because certain patents were qualitatively identified as ███████ or ███████ it was ████████

██████ Ex. 1 ¶ 89(g)(i).[3] This halving of value in the guise of "apportionment" is junk science. It has no connection to the facts of the case and is not based on any scientific, economic, or technical analysis; it is made up and speculative.  The Federal Circuit prohibits numbers "plucked out of thin air" masquerading as quantitative damages analysis. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) (such "arbitrariness" "would alone justify excluding [expert]'s opinions"); *Biscotti Inc. v. Microsoft Corp.*, 2017 WL 2536962, at *4 (E.D. Tex. May 18, 2017) (observing that the Federal Circuit has consistently excluded "expert testimony that applies general economic theorems or rules of thumb that are not grounded in the facts of the case"); *Samsung I*, Dkt. 432 at 4 (striking Mr. Meyer's nearly identical "market comparables approach").

Presumably recognizing that her first apportionment approach is the same as the one that was excluded in *Samsung I*, Ms. Kindler purports to offer an alternative approach based on a ████████ ████████ Ex. 1 at ¶¶ 89(g)(ii), 100(e)(iii). While some courts have approved the use of this type of analysis in certain circumstances, Ms. Kindler's application is unreliable because—once again—she fails to tether her analysis to the facts. First, two of the Asserted Patents (the '608 and the '417 Patents) had not even issued at the time the JDLA, and one of them (the '417 Patent) still had not issued at the time the SK hynix License was executed. Thus, these patents could not have been cited at the time of these licenses, and any attempt to assign relative value from those licenses to the

---

informing the jury that Netlist has brought litigation on other, unrelated patents would cause substantial juror confusion and unfair prejudice, and would paint Netlist as a serial plaintiff.

[3] Ms. Kindler's approach does not even make logical sense, given that one of the Asserted Patents (i.e., the '912 Patent) was explicitly identified as ████████ in the presentation.

Asserted Patents by counting the number of times they had been cited would be illogical. *See Realtek Semiconductor Corp. v. LSI Corp.*, 2014 WL 46997, at *3–4 (N.D. Cal. Jan. 6, 2014) (excluding use of "patent citation analysis" where expert analyzed only patent families and acknowledged that it was "not appropriate for determining the value of individual patents"). Moreover, given that Ms. Kindler's forward citation analysis considers the relative value of patents in a portfolio in the abstract, rather than looking at how the parties to the actual agreement valued them, it violates the Federal Circuit's mandate that an expert must consider how the particular "license[s] treated the asserted patents" when apportioning the value of a portfolio license to a particular patent. *Apple*, 25 F.4th at 973.

Finally, even if Ms. Kindler had properly tied her analysis to the facts (which she did not), it should be excluded under Rules 403 and 702 because she does not actually use the numbers she derives from her "apportionment" analysis to calculate a comparable royalty. Despite determining that ███ ████████████████████████████████████████████████████████████████████████████ ███ using the flawed methodology described above, Ms. Kindler ultimately ignores the results of her analysis and instead concludes that ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ███. Because Ms. Kindler does not even use her flawed apportionment approach to calculate an adjusted comparable rate for any allegedly comparable license, it has no relevance and will not ███ ████████████████████████████████████████████████████ as required for admissibility by Rule 702. Instead, it will serve only to confuse the jury and create a sideshow regarding the propriety of a methodology that Ms. Kindler does not even use to come up with a rebuttal damages number.

**B.    Ms. Kindler's Ultimate "Adjustments" To The SK hynix License & JDLA Are Arbitrary And Unreliable (¶¶ 89-91, 100, 102-103, 212)**

The "adjusted" rates Ms. Kindler ultimately proposes for the SK hynix License and JDLA are

also "plucked out of thin air" and separately require exclusion. *LaserDynamics*, 694 F.3d at 69.

For the SK hynix License, Ms. Kindler admits ███████████████████████████ ███████████████████████████████████ (which she opines would be ███████████████████████████████). Ex. 1 ¶ 100(f)(iv). She also identifies other important differences between the Sk hynix License and the hypothetical negotiation, including the assumption of validity/infringement. *Id.* ¶ 100(h). In deriving an "adjusted" rate, however, she ignores all economic value received by Netlist other than the ████████████████ on the grounds that the value obtained under the supply provision is supposedly ███████████ by the ████████████ ████████ *Id.* ¶¶ 100(f)(iv), 102. To calculate an "adjusted" rate, she takes the ████████████ ██████████ and applies an ███████████████████████████████████ ████████████████ and then ██████ that amount to account for the ████████████████ ███████ *Id.* at ¶ 102. Ms. Kindler's approach is precisely the type of arbitrary approach prohibited by the Federal Circuit. *LaserDynamics*, 694 F.3d at 69. The ██████████ she applies is not tied to any technical benefit or other quantitative analysis. Moreover, she already used the ████████████████ ███████ to completely offset the value of the ████████████████████████████ ███████ and she provides no explanation or analysis to support making two separate reductions.

With respect to the JDLA, Ms. Kindler opines that ████████████████████████ ████████████████████████████████████ as a reasonable royalty at the hypothetical negotiation. Ex. 1 ¶ 91. She does so despite also acknowledging that there are provisions in the agreement other than the $8 million NRE fee that provided economic value to Netlist. For example, she admits that the ████████████████████████████████████████ ████████ (*id.* ¶ 89(b)), acknowledges that █████████████████████████████████ ████████████ (*id.* ¶ 89(d)), and ██████████████████████████████████████ ████████████████████ (*id.* ¶ 211). She also identifies a number of additional, important

differences between the JDLA and the hypothetical negotiation—and engages in pages of pseudo-science "apportionments" and "adjustments" to purportedly address those differences. *Id.* ¶ 89(g) (attempting to apportion the value of the specific Asserted Patents from the rest of Netlist's portfolio using the unreliable methods discussed above in section I.A.); ¶ 89(h) (identifying that the licensed products in the JDLA were broader, but making no economic adjustment), ¶ 89(i) (arguing that the hypothetical license would be ███████████████████████), ¶ 89(j) (acknowledging that the ███████████████████████). In the end, however, she conveniently concludes (with no explanation or analysis) that all of these other provisions and differences ████████████████ ████████████████████████████████████████████████

████████████ Ms. Kindler does not even attempt to tie this conclusion to any quantitative analysis. This is the definition of arbitrary and must therefore be excluded.

### C. Ms. Kindler's Comparability Analysis For The Other Samsung Licenses Is Unreliable (¶¶ 53-7, 45-8, 61-3, 67-70, 76-9, 216-17, 227, 105-128)

Ms. Kindler next presents multiple damages models based on her "adjustments" to the lump sum royalties she asserts were paid by Samsung under six licenses involving third parties. Ms. Kindler should not be permitted to testify to these "adjusted" rates because both her technical and economic comparability analyses suffer from fatal legal defects.

With respect to the technical comparability of the ██████████████████████ ████████████, Ms. Kindler admits that █████████████████████████ █████████████████████████████████████████ Ex. 1 at ¶ 106 ██████████████████ ███████████████████████████████████████████. She nevertheless concludes that these licenses are technically comparable based on Mr. McAlexander's opinion that █ ██████████████████████████████████████████████ Ex. 4



(McAlexander Attach. D) at ¶¶ 52-57 (identifying ████████████████████ ████████████████████ for Longitude); ¶¶ 44-48 (identifying ████████████ ████ ; ¶¶ 60-63 (identifying ████████████████████████), which were not on ████████████████████ attached to license), ¶¶ 67-70 (identifying ████ ████████████████████), ¶¶ 76-79 (identifying ████ ████ and noting that the license ████████████████████████████).

Ms. Kindler's approach is legally improper. The Federal Circuit has confirmed that, where a license "involved hundreds or thousands of patents that spanned a broad range of technologies" technical comparability cannot be established by "merely observing that some patents in a portfolio cover [the accused functionality]" because this "says nothing about the comparability of the thousands of remaining patents in the portfolio." *ADASA Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022). Ms. Kindler's analysis is particularly problematic given that neither she—nor Mr. McAlexander—performed any analysis to determine whether the particular patents identified by Mr. McAlexander as being technically comparable were even being used by Samsung, much less that they were the "key" patents at issue or that they were driving the royalty rate.

Ms. Kindler's economic comparability analysis of all six licenses is also legally improper. The Federal Circuit has "stressed that comparisons of past patent licenses to the infringement must account for 'the technological and economic differences' between them." *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010). The Federal Circuit has further held that, where past lump sum licenses such as the ones used by Ms. Kindler do not "describe[] how the parties calculated each lump sum, the licensees' intended products, or how many products each licensee is expected to produce," and where such licenses are presented without a "basis for comparison with [the defendant's] sales" a damages award based on them cannot support a verdict as it would be "based

only on speculation or guesswork." *Wordtech*, 609 F.3d at 1322. Here, Ms. Kindler does not identify evidence showing how the parties to these licenses arrived at the respective lump sums; nor does she quantify the revenue or number of Samsung products covered by each license. Without such an analysis, there is no economic basis to compare the accused sales in this case with the sales covered under each of the prior licenses and any reliance on them is pure "speculation or guesswork." *Id.*

The problems with Ms. Kindler's economic analysis are compounded by the unreliable "adjustments" she makes to try to account for differences between the licenses and the hypothetical negotiation. In **paragraphs 108 and 113**, Ms. Kindler ███████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████. Ms. Kindler's approach is untethered to the facts because, as noted above, she did not determine the quantity of Samsung products that used the licensed patents in either of these agreements, much less determine what percentage of the licensed products were semiconductor products or DDR4 RDIMM/LRDIMMs. Without this analysis, or some separate evidence that the parties to these agreements ████████████████████████ ███████████████████████████████████, her proposed adjustment is unsupported and speculative, and must be excluded. *Apple*, 25 F.4th at 971; *LaserDynamics*, 694 F.3d at 69 (such "arbitrariness" "would alone justify excluding [expert]'s opinions").

In **paragraph 127**, Ms. Kindler further reduces the ██████████████████████████

---

[4] The arbitrariness of Ms. Kindler's adjustment is confirmed by the fact that ████████████████ ███████████████████████████████████████████████████████████████████

as well as the royalties in the other four licenses, █████████████████████████████

████████████████ of those licenses. Ex. 1 ¶ 127. Once again, this █████████████████

████████████████████████████████████████████████████—is untethered

to the facts. Ms. Kindler provides no evidence that any of the parties to these agreements actually

████████████████████████████████████████, much less that all of them did. Indeed,

neither she—nor Mr. McAlexander—even bothered to confirm that any of the agreements actually

██████████████████████████████████████████████████████████████

█████████████████████ The fact that Ms. Kinder applies █████████████████

██████████████████████████████████████████████████████████████

█████████████████ confirms that her proposed adjustment has no connection to how the parties to

those licenses "treated" the value of the relevant patents (i.e., the purportedly technically comparable

patents), as required by Federal Circuit law. *Apple*, 25 F.4th at 971.

Ms. Kindler's analysis of ████████ should further be stricken because Samsung did not timely

disclose its contention that this agreement was comparable. Netlist served an interrogatory asking

Samsung to identify ████████████████████████████████████████████████

████████████████████████████████████████████████████████ Ex. 5 at

91. Samsung identified █ agreements it contended were relevant to the reasonable royalty analysis,

but ████████████. *Id.* at 91-95. Ms. Kindler should not be permitted to testify on this undisclosed

license. *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1287 (Fed.

Cir. 2011) (affirming exclusion of portions of expert testimony not disclosed during discovery); *MLC*

*Intell. Prop., LLC v. Micron Tech., Inc.*, 2019 WL 2863585 (N.D. Cal. July 2, 2019) (striking testimony on

licenses where "Micron repeatedly asked MLC – through interrogatories and the Hinckley deposition

– for the factual basis of its reasonable royalty claim… and MLC consistently failed to disclose its

contention that the Hynix license 'reflected' a 0.25% royalty rate that should be applied to this case.").

## II.    MS. KINDLER'S IRRELEVANT AND PREJUDICIAL OPINIONS

### A.    References to RAND (¶¶ 61-71, 151, 230-234)

Ms. Kindler claims the patents-in-suit are subject to a ███████ obligation. Ex. 1 at ¶¶ 230-234. These statements are unsupported by any evidence and are incorrect as a matter of law. As Ms. Kindler states in her report, each JEDEC member agrees ██████████████████████████████

████████████████████████ *Id.* at ¶ 63.  "Essential Patent Claim" is defined by JEDEC as "Those Patent claims the use of which would necessarily be infringed by the use, sale, offer for sale or other disposition of a portion of a product in order to be compliant with the required portions of a final approved JEDEC Standard."  Ex. 6 (JEDEC Manual 21V) at 23.  Samsung has stated ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Ex. 5 at 91. This position is null Netlist has explained that it ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████ Ex. 7 at 77. Thus, Netlist is not arguing that Samsung's products infringe ***because*** they are standard-compliant.

As in *Samsung I*, Samsung wants to have it both ways: it wants to tell the jury that the Asserted Patents are not essential, but also that Samsung is entitled to a RAND license because Netlist is asserting "Essential Patent Claims." Samsung now also contends that the patents ***are*** essential, but only if infringed. This is confusing, prejudicial, and contradictory, and will necessitate a sideshow on essentiality that neither side plans to address in this trial. Netlist's experts will not argue the patents are essential and are therefore infringed by any entity practicing the standard. Instead, Netlist will show on an element-by-element basis why Samsung's specific accused designs infringe.  In other words, the

jury will not make a determination of whether the patents-in-suit are essential or not essential; the jury will only determine whether Samsung infringes and how much Samsung owes in damages for its infringement. To the extent Samsung raises a defense of standards-based estoppel, this is an equitable issue, and Ms. Kindler should not be permitted to raise it in front of the jury. CMIL No. 5 (precluding evidence, testimony, or argument relating only to equitable issues or defenses).[5]

## B.    References to Other Litigation and IPRs (¶¶ 30-4, 89(e)(ii), 92-3, 236-37, 245)

Ms. Kindler references prior proceedings that have no relevance to the opinions in her report or to this litigation. Ex. 1,  ¶¶ 30-34, 89(e)(i), 245 (discussing ongoing C.D. Cal. litigation between Netlist and Samsung concerning contract dispute); ¶¶ 92-93 (discussing prior litigation against SK Hynix unrelated to litigation that led to SK Hynix License); ¶¶ 236-37 (previous litigation between Netlist and Samsung concerning different patents and discussing IPRs instituted or pending institution on patents-in-suit).  These portions of her report should be stricken. *Intell. Ventures*, No. 2:17-CV-577-JRG, ECF No. 297 at 175:12-22 (excluding prior litigation); *Packet Intelligence LLC v. Netscout Sys., Inc.*, No. 2:16-cv-230-JRG, slip op. at 9 (E.D. Tex. Sep. 29, 2017) (precluding "[a]rguments, [o]pinions, and [t]estimony" regarding prior proceedings*); Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 691 n.7 (5th Cir. 1992) (affirming exclusion of prior litigation and noting "a jury might be confused into believing that the opinion's findings are somehow binding in the case at bar" and "the danger of exaggerated importance that the jury might have placed upon the [prior] decision").

This Court expressly stated in *Samsung I* that expert references to "various other litigations and details as to the outcome of those litigations" are "exactly the kind of thing [an expert] shouldn't be putting in front of the jury." PTC Tr. Vol. 2 137:17-25. There is no reason to deviate from that prior

---

[5] Judge Payne recommended the Court grant Netlist's MSJ in *Micron I* that (1) the asserted patents are not standard essential; and (2) dismissing Micron's affirmative defense of breach of RAND. *Micron I*, Dkt. 421. Netlist is filing motions for summary judgment in this case on very similar bases, and if the Court grants them, Ms. Kindler's RAND opinions should also be stricken as irrelevant.

ruling and permit Ms. Kindler to opine on such things in this Action.

C.     References to Alleged JEDEC Contributions (¶¶ 64, 150-151, 170-74)

Ms. Kindler repeatedly refers to ███████████ to JEDEC standards by Samsung, Micron, and others. *E.g.,* Ex. 1 ¶ 174. She claims ███████████████████████████████████ ████. But neither Ms. Kindler, nor Mr. Halbert upon whom she relies, identifies any nexus between the contributions they identify and the specific technology accused in this case. Nor does Ms. Kindler identify the technical or economic value of any of these contributions. Ms. Kindler claims ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ and that ████████████ ████████████████████████████████████████████████████ ████████ *Id.* ¶ 170. Further, she notes the ████████████████████████████████ to the DDR4 LRDIMM standards and the ████████████████████████████ to DDR4 component standards, and states that ████████████████████████ to either standard. *Id.* There is no relevance to these statements and no connection to the patented technology in this case; Ms. Kindler solely wishes to inform the jury that ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ *Id.*

The Court has explained previously that where there is reference to thousands of contributions or patents to a particular standard, but there is no "internal subdivision to put what actually is at issue here into a narrower comparison," but instead simply "just the global there are tens of thousands contributed to the standard as a whole without any attempt to differentiate the various parts of the standard," then "the implication that [the asserted patent] is only one of tens of thousands and, therefore, not important, not valuable, is so difficult to avoid it probably does need to be struck." *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-066-JRG, Dkt. 437 (Pretrial Hearing) at 89:3-24.

Moreover, Ms. Kindler makes improper comparisons between Netlist and Samsung based on

███████████████████████████████████████████. *See* Ex. 1 ¶ 170 ███████████████████

██████████████████████████████████████████████████████████████████████████████

███████████████████████████; *Id.* ████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ These comparisons are irrelevant for the

reasons detailed above, but also violate CMIL 3 (forbidding arguments or evidence concerning a

party's size) and are unduly prejudicial. Samsung's own corporate witness testified that ████████

██████████████████████████████████████████████████ Ex. 8 (*Samsung I* Hyun Joong

Kim Tr.) at 120:14-21. Ms. Kindler should not be able to ████████████████████████████

████████████████████████████████████████████████████████████████████████████.

### D.    Improper Legal Conclusions Regarding JDLA (¶¶ 18, 27, 28, 85, 89(e), 91)

Ms. Kindler engages in improper contract interpretation to reach legal conclusions reserved

for the Court. For example, she makes legal conclusions about the scope of the JDLA, referring to it

as a █████████████████████ and opining that the hypothetical license would be ███████████

████████████████ Ex. 1 ¶¶ 18, 27, 89(e).[6] More problematic, though Ms. Kindler acknowledges

that ████████████████████████████████████████████ *id.* ¶ 18, n.27, she elsewhere states

that "██████████████████████████████████████████████████████████████████████████

████████████████████████████████████ which is the precise subject of the parties' dispute

over the supply clause. *Id.* ¶ 28. Likewise, Ms. Kindler analyzes █████████████████ to conclude

that ████████████████████████████████████████████████████████████████████████████

---

[6] This contradicts Samsung's argument in the 9th Cir. that the scope of JDLA was limited to the joint development project between the parties. *See* Ex. 9 (9th Cir. HT) at 15:9-21 ("The licenses are being given in connection with the collaboration. That's the joint development project.").

██████ *Id.* ¶ 86. Interpretation of contractual terms such as these is a matter expressly reserved for the Court. *Kona Tech. Corp. v. S. Pac. Transp. Co.,* 225 F.3d 595, 609-10 (5th Cir. 2000).

Ms. Kindler also engages in unsupported speculation concerning the supply clause in a manner this Court already rejected in *Samsung I.* For example, she disregards any value of the supply provision because she claims the terms ██████████████████████████████████ and because ████████████████████████████████ ██████████ Ex. 1 ¶ 89(e). Ms. Kindler then goes further, claiming ████████████ ████████████████████████ and ██████████████████████ ████████████████████████████████████████████ ████████████████████████████████ *Id.* Whether or not the supply provision required Samsung to do anything above and beyond what it would have done without the agreement is a matter of contract interpretation. *Sparton Corp. v. U.S.,* 77 Fed. Cl. 1, 7–8 (2007) ("expert testimony regarding proper contract interpretation is inadmissible, as is expert testimony regarding the legal significance of the contract language."). Ms. Kindler's interpretation also contradicts well known principles of contract law. *Authentic Apparel Grp., LLC v. U.S.,* 989 F.3d 1008, 1015 (Fed. Cir. 2021) ("contract terms 'cannot be treated as meaningless and futile and read out of the contract.'"). The Court should hold, as it did in *Samsung I* with regards to the SK hynix License, that the supply clause is enforceable and preclude Ms. Kindler from opining otherwise. Dkt. 432 (granting MIL on "evidence or argument that SK Hynix's supply obligation to Netlist is not legal[ly] binding on SK Hynix.").

E.    **Improper Testimony Regarding Parties' Subjective Beliefs (¶¶ 96-100)**

Ms. Kindler engages in improper interpretation of the SK hynix License, going beyond an analysis of its ***value*** into an analysis of the parties' states of mind. Though Ms. Kindler acknowledges that the ██████████ provided economic value to Netlist, she concludes that Netlist did not view it as part of the consideration for a license to its patents based on statements made by Netlist's to its

investors. Ex. 1 ¶¶ 98-100. She likewise opines that the ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████ *Id.* ¶ 99. This is impermissible

testimony on the subjective beliefs of Netlist and SK hynix, and "it is undisputed that it is improper

for an expert to opine as to the subjective belief or intent of a corporate entity." *GREE, Inc. v. Supercell*

*Oy*, 2020 WL 4288350, *2–*3 (E.D. Tex. 2020) (striking testimony); *SJB Grp., LLC v. TBE Grp., Inc.*,

2013 WL 4092575, *3 (M.D. La. Aug. 12, 2013) ("opinions as to the interpretation of the contract and

the intention of the parties to the contract shall be excluded as they are legal conclusions.").

### F.   Improper Use of Rule 408 Communications (Ex. 1 ¶¶ 70, 230, 231)

████████████████████████████████████████████████████████████

█████████████████████████████████████████ The document, on its face, states █████████

███████████████████████████████████████ Ex. 10. Rule 408 precludes introducing a

settlement offer to "prove or disprove the validity or amount of a disputed claim." ███████████

████████████████████████████████████████████████████████ thus directly

violates Rule 408. Ex. 1 ¶ 231 ███████████████████████████████

████████████████████████████████████████████████████████

████████████ ; *Maxell, Ltd. v. Apple Inc.*, 2020 WL 8269548, at *15 (E.D. Tex. Nov. 11, 2020) (expert

"is prohibited from providing testimony that relies upon the prior offers in calculating a reasonable

royalty" where communications marked "for settlement purposes only"); *Cybergym Rsch. LLC v. ICON*

*Health & Fitness, Inc.*, 2007 WL 9724238, at *5 (E.D. Tex. Oct. 7, 2007) ("[The] expert report is

excluded to the extent he relied on the offers made in the course of licensing or settlement negotiations

. . .in her calculation of reasonable royalty."). This Court should strike Ms. Kindler's analysis of these

communications as it did in *Samsung I. Samsung I*, PTC Tr. Day One 249:5-10; Dkt. 432 at 4-5.

Dated: January 16, 2024

Respectfully submitted,

/s/ *Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that, on January 12, 2024, a copy of the foregoing was served to all Samsung counsel of record.

*/s/ Yanan Zhao*
Yanan Zhao

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in the Case.

*/s/ Yanan Zhao*
Yanan Zhao

## CERTIFICATE OF CONFERENCE

I hereby certify that, on January 12, 2024 counsel for the parties met and conferred on the issues raised in their motion. Counsel for Samsung confirmed that Samsung opposes Netlist's motion.

*/s/ Yanan Zhao*
Yanan Zhao