# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 2:22-cv-293-JRG (Lead Case) |
| vs. | ) |
| | ) JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD, ET AL., | ) |
| | ) ▮▮▮▮▮▮▮▮▮ |
| Defendants. | ) |
| | ) |
| | ) |
| NETLIST, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 2:22-cv-294-JRG (Member Case) |
| vs. | ) |
| | ) JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; MICRON TECHNOLOGY TEXAS LLC, | ) |
| | ) ▮▮▮▮▮▮▮▮▮ |
| Defendants. | ) |

**DEFENDANTS' MOTION TO STRIKE EXPERT REPORT OF DR. MANGIONE-SMITH**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL AUTHORITY .................................................................................................. 1

    A. *Daubert* Motions ................................................................................................ 1

    B. Motions to Strike Expert Testimony Based on Undisclosed Information and/or Theories ............................................................................................................... 1

III. ARGUMENTS ................................................................................................................ 2

    A. The Court Should Strike Dr. Mangione-Smith's New Infringement Theories Not Disclosed in Netlist's Infringement Contentions (¶¶ 54-55, 10 of Ex. B to Dr. Mangione-Smith's Opening Report, ¶ 27 of Ex. I to Dr. Mangione-Smith's Opening Report) ................................................................................................... 2

    B. The Court Should Strike Dr. Mangione-Smith's Unreliable Opinions Regarding Technical Comparability of the ▓▓▓▓ License (¶¶ 54-55, 10 of Ex. E to Dr. Mangione-Smith's Opening Report) ..................................................................... 5

        1. Dr. Mangione-Smith's Opinions Pertaining to the Technical Comparability of the ▓▓▓▓ License Should Be Stricken ......................... 5

        2. Dr. Mangione-Smith's Opinions Pertaining to the Technical Comparability of Other Licenses Should Also Be Stricken ....................... 8

    C. The Court Should Strike Dr. Mangione-Smith's Infringement Theories Not Based on the Court's Claim Constructions (¶¶ 113-169 of Ex. C to Dr. Mangione-Smith's Opening Report and ¶¶ 77-78 of Dr. Mangione-Smith's Supplemental Report) ................................................................................................................... 9

IV. CONCLUSION ............................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anascape, Ltd v. Microsoft Corp.*,
  No. 9:60-cv-0158, 2008 WL 7180756 (E.D. Tex. May 1, 2008) ................................................1

*Barrett v. Atl. Richfield Co.*,
  95 F.3d 375 (5th Cir. 1996) ........................................................................................................1

*Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*,
  No. 2:14-cv-00911-JRG, 2016 WL 3655302 (E.D. Tex. Mar. 21, 2016)...................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993).....................................................................................................................1

*Godo Kaisha IP Bridge I v. Broadcom Ltd*,
  No. 2:16-cv-00134-JRG, 2017 WL 2869331 (E.D. Tex. Apr. 27, 2017) ..................................4

*Realtime Data, LLC v. NetApp, Inc.*,
  No. 6:16-CV-00961-RWS, 2017 WL 4844254 (E.D. Tex. Oct. 26, 2017) ...............................4

*ROY-G-BIV Corp. v. ABB, Ltd.*,
  63 F. Supp. 3d 690 (E.D. Tex. 2014).........................................................................................4

*Treehouse Avatar LLC v. Valve Corp.*,
  54 F.4th 709 (Fed. Cir. 2022) ....................................................................................................9

**Other Authorities**

Fed. R. Evid. § 702 .........................................................................................................................1

## LIST OF EXHIBITS

| Ex. No. | Description |
| --- | --- |
| A | Opening Expert Report of Dr. Mangione-Smith |
| B | Exhibit B to Opening Expert Report of Dr. Mangione-Smith |
| C | Exhibit C to Opening Expert Report of Dr. Mangione-Smith |
| D | Exhibit E to Opening Expert Report of Dr. Mangione-Smith |
| E | Nov. 17, 2022 Netlist's Preliminary Infringement Contentions |
| F | Exhibit A-1 to Netlist's Preliminary Infringement Contentions |
| G | JESD79-4C Specification |
| H | Redline Comparison of Dr. Mangione-Smith's Comparability Opinion |
| I | Supplemental Expert Report of Dr. Mangione-Smith |
| J | IDT DDR4 Data Buffer 3200 Power Efficiency Model Datasheet |
| K | Redacted/public version of Netlist's Infringement Contention from *Netlist, Inc. v. Micron Technology, Inc.*, 22-cv-203 (E.D. Tex.) |

## I. INTRODUCTION

Netlist's expert Dr. Mangione-Smith offers an improper opinion that was not disclosed in Netlist's infringement contentions. Dr. Mangione-Smith also offers unreliable opinions regarding a ▇▇▇▇▇▇ license and opinions inconsistent with the Court's claim constructions. Micron respectfully moves to strike such improper opinions.

## II. LEGAL AUTHORITY

### A. *Daubert* Motions

An expert may testify only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. § 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 594, 597.

### B. Motions to Strike Expert Testimony Based on Undisclosed Theories

Expert reports may not introduce theories not previously disclosed in infringement contentions. *Anascape, Ltd v. Microsoft Corp.,* No. 9:60-cv-0158, 2008 WL 7180756, at *4 (E.D. Tex. May 1, 2008). The Fifth Circuit uses a four-factor test to determine whether to exclude expert testimony based on undisclosed information: (1) the explanation, if any, for the party's failure to provide discovery; (2) the prejudice to the opposing party of allowing the expert to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the expert evidence. *See Barrett v. Atl. Richfield Co.,* 95 F.3d 375, 380 (5th Cir. 1996).

## III. ARGUMENTS

**A. The Court Should Strike Dr. Mangione-Smith's New Infringement Theories Not Disclosed in Netlist's Infringement Contentions (¶¶ 54-55, 10[1] of Ex. B to Dr. Mangione-Smith's Opening Report, ¶ 27 of Ex. I to Dr. Mangione-Smith's Opening Report)**

In its Preliminary Infringement Contentions served on November 17, 2022, Netlist presented infringement theories for claim 16 of the '912 patent that are predicated ***solely*** on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See generally*, Ex. E (Nov. 17, 2022 Netlist's Preliminary Infringement Contentions). In particular, Netlist relies entirely on ▇▇▇▇▇▇▇ for at least the following limitations of claim 16 of the '912 patent: (a) "wherein the circuit further responds to a command signal and the set of input signals from the computer system by selecting one or two ranks of the first number of ranks and transmitting the command signal to at least one DDR memory device of the selected one or two ranks of the first number of ranks" (hereinafter "circuit" element); and (b) "wherein the command signal is transmitted to only one DDR memory device at a time" (hereinafter "command signal" element). Ex. F (Exhibit A-1 to Netlist's Prelim. Inf. Contentions) at 26-31 ("circuit" element), 33-38 ("command signal" element) (*see* below).

---

[1] Exhibit B to Dr. Mangione-Smith's Opening Report contains two paragraphs that are labeled as being paragraph number 10. The paragraph 10 that Micron seeks to strike is on page 60 of Exhibit B to Dr. Mangione-Smith's Opening Report.

2



Dr. Mangione-Smith's Opening Report includes a new infringement theory for claim 16 of the '912 patent that is not part of, and independent from, ▓▓▓▓▓▓ Specifically, Dr. Mangione-Smith opines that the "circuit" claim element is allegedly met ▓▓▓▓▓▓

3

This is a new infringement theory that was not disclosed in Netlist's Infringement Contentions. In its Infringement Chart for the '912 patent, Netlist did not identify the so-called ▇▇▇▇▇▇▇▇▇▇▇ as satisfying either the "circuit" element or the "command signal" element. *See* Ex. F at 26-31 (Netlist's infringement chart for the "circuit" element), 33-38 (Netlist's infringement chart for the "command signal" element). In fact, Netlist does not even mention ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ anywhere in its Infringement Chart for the '912 Patent. *See generally*, Ex. F.

There is no valid excuse for Netlist's failure to timely disclose its new infringement theory because Netlist has had information about the ▇▇▇▇▇▇▇▇▇▇▇▇▇ before and throughout this litigation. The JEDEC standards documents that Netlist relies upon and cites exclusively in its Infringement Contentions—including JESD79-4C, JESD82-31A, and JESD82-32A—also define and describe the ▇▇▇▇▇▇▇▇▇▇ *See*, *e.g.*, Ex. G (JESD79-4C) ▇▇▇▇▇ Additionally, Netlist ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ had ample opportunity to analyze these JEDEC standards documents and timely disclose its infringement theories based on features that are described in these JEDEC specifications. Netlist did not.

"Expert infringement reports may not introduce theories not previously set forth in infringement contentions." *ROY-G-BIV Corp. v. ABB, Ltd.,* 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014); *see also Realtime Data, LLC v. NetApp, Inc.,* No. 6:16-CV-00961-RWS, 2017 WL 4844254, at *1 (E.D. Tex. Oct. 26, 2017) (stating the same language); *Godo Kaisha IP Bridge Iv. Broadcom Ltd,* No. 2: 16-cv-00134-JRG, 2017 WL 2869331, at *1 (E.D. Tex. Apr. 27, 2017) (quoting the same language); *Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.,* No. 2:14-cv-00911-JRG, 2016 WL 3655302, at *4 (E.D. Tex. Mar. 21, 2016) (quoting the same language). Having failed

to disclose its infringement theory based on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dr. Mangione-Smith should be precluded from offering expert testimony that now relies on these undisclosed theories.

Accordingly, Micron respectfully requests that the Court strike Dr. Mangione-Smith's opinions regarding Netlist's undisclosed infringement theories based on ▇▇▇▇▇▇▇▇▇▇▇▇ including ¶¶ 10, 54, and 55 of Exhibit B to Dr. Mangione-Smith's Opening Expert Report and ¶ 28 of Exhibit I to Dr. Mangione-Smith's Opening Expert Report.

> **B. The Court Should Strike Dr. Mangione-Smith's Unreliable Opinions Regarding Technical Comparability of the ▇▇▇ License (¶¶ 54-55, 10[2] of Ex. E to Dr. Mangione-Smith's Opening Report)**

The entirety of Exhibit E to Dr. Mangione-Smith's Opening Report should be stricken as being based on unreliable methodology or not pertaining to this case.

> **1. Dr. Mangione-Smith's Opinions Pertaining to the Technical Comparability of the ▇▇▇ License Should Be Stricken**

Dr. Mangione-Smith's opinions regarding the technical comparability of the ▇▇▇ license agreement should be stricken because it is based on an unreliable methodology and because they are irrelevant to this case.

Dr. Mangione-Smith's opinions regarding the technical comparability of the license agreement entered into between Micron and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is unreliable for a multitude of reasons. First, while the patent portfolio covered by the ▇▇▇▇▇▇ license contains thousands of patents, Dr. Mangione-Smith cherry-picks 12 patents without providing any explanation of how he selected the twelve patents (*e.g.*, what criteria or methodology he relied

---

[2] Exhibit B to Dr. Mangione-Smith's Opening Report contains two paragraphs that are labeled as being paragraph number 10. The paragraph 10 that Micron seeks to strike is on page 60 of Exhibit B to Dr. Mangione-Smith's Opening Report.

5

upon in selecting those patents) or why those twelve patents are representative of the entirety of the ▮▮▮ patent portfolio. See Ex. D (Ex. E to Dr. Mangione-Smith's Open. Rpt.), ¶¶ 154-155.

Second, in analyzing the technical comparability of the ▮▮▮ license, Dr. Mangione-Smith applies a markedly different definition of the comparable technology than those that he defined and applied for the other patent licenses. Specifically, Dr. Mangione-Smith defines the subject matter of the '912 patent as pertaining to ***memory modules*** with specific features. ▮

▮▮▮ Dr. Mangione-Smith opines that these definitions are "broad definition[s] of the subject of the Asserted Patents." *Id.*, ¶ 2. When analyzing the ▮▮▮ license, however, Dr. Mangione-Smith applies a different definition, namely "DDR SDRAM." ▮▮▮ These are vastly different definitions. A memory module may use DDR SDRAMs or other types of memory devices such as Flash memory. Further, DDR SDRAMs are not limited to use in memory modules. Memory devices, such as DDR SDRAMs, are in fact used individually in electronic devices.

Third, Dr. Mangione-Smith re-purposed his prior comparability opinions from another case involving different patents and products without making any substantive changes to his opinions to the facts and issues in this case. In particular, a redline comparison of Dr. Mangione-Smith's comparability opinions from the 22-cv-203 case and his comparability opinions from this case

6

shows that they are near ***verbatim*** copies. *See* Ex. H (redline comparison of Dr. Mangione-Smith's Comparability Opinion), ¶¶ 153-163. Except for deleting references to the ▮▮▮▮▮ which Netlist originally asserted in the 22-cv-203 case, Dr. Mangione-Smith's opinions in the case remained completely unchanged. Ex. H, ¶¶ 159, 163. But the facts and issues in the 22-cv-203 case are vastly different from this case. For one, the patents asserted in the 22-cv-203 case are unrelated to any of the patents asserted in this case and cover completely different technical aspects. The '054 and '918 patents asserted in the 22-cv-203 case are alleged as relating to the use of voltage converter circuits on a memory module. Ex. K at 3-4. The '060 and '160 patents asserted in the 22-cv-203 case relate to stacked memory packages with die interconnects. *Id.* Neither the '912 patent nor the '417 patent disclose or claim any such features, however. Ex. E at 3-5; *see also* Dkt. 101-1 ('912 patent) at Cover, Dkt. 101-2 ('417 Patent) at Cover. For another, there is also very little overlap in the accused products. The products currently accused in the 22-cv-203 case (*i.e.*, DDR5 UDIMMs, DDR5 SODIMMs, DDR5 RDIMMs, and HBM3E) are different from, and do not overlap at all with, the products accused in this case (*i.e.*, DDR4 RDIMMs and LRDIMMs). *Compare* Ex. K (Netlist's Infringement Contentions from the 22-cv-203 case) at 3-4 (listing accused products for the '054, '918, '060, and '160 patents) *with* Ex. E (Netlist's Infringement Contention in this case) at 3-5 (listing accused products for the '912 and '417 patents). That Dr. Mangione-Smith submitted identical comparability opinions for patents covering different technical features and subject matters further evidences the unreliability of Dr. Mangione-Smith's methodology.

For at least these reasons, the Court should strike Dr. Mangione-Smith's technical comparability analysis of the ▮▮▮▮▮ license, including those set forth in paragraphs 153-163 of Exhibit E to his Opening Report.

7

### 2. Dr. Mangione-Smith's Opinions Pertaining to the Technical Comparability of Other Licenses Should Also Be Stricken

Dr. Mangione-Smith's opinions regarding the technical comparability of the following license agreements should be stricken for the same reasons: Dr. Mangione-Smith copied and pasted his comparability opinion from another case without accounting for the differences in the technical subject matters of the patents involved in the other case. For nearly every license Dr. Mangione-Smith analyzed, he opines that the license is not technically comparable because the patents covered by the license agreement are not ▮▮▮▮▮

On-module power management and voltage regulators were the alleged subject matter of the '054 and '918 patents that are asserted in *a different* **case,** namely the 22-cv-203 case. Ex. K at 2-3. These are *not the subject matter of* any patents asserted in this case, however. Indeed, the specifications and figures of the '912 and '417 patents do not contain any reference to any voltage regulation or power management. *See generally,* Dkt. 101-1 ('912 patent) and 101-2 ('417 patent).

Hence, Dr. Mangione-Smith's technical comparability opinions for the remaining license agreements are simply irrelevant to this case.

For at least these reasons, the Court should also strike Dr. Mangione-Smith's technical comparability analysis of the remaining licenses, including those set forth in paragraphs 4-138 of Exhibit E to his Opening Report.

### C. The Court Should Strike Dr. Mangione-Smith's Infringement Theories Not Based on the Court's Claim Constructions (¶¶ 113-169 of Ex. C to Dr. Mangione-Smith's Opening Report and ¶¶ 77-78 of Dr. Mangione-Smith's Supplemental Report)

The Court should strike Dr. Mangione-Smith's opinions that are inconsistent with the Court's claim constructions. "[T]he grant of a motion to strike expert testimony is not improper when such testimony is based on a claim construction that is materially different from the construction adopted by the parties and the court." *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022)

Specifically, the Court construed the term "overall CAS latency" of a memory module as "the delay between (1) the time when a command is executed by the memory module, and (2) the time when data is made available to or from the memory module." ECF No. 228 at 36. The Court also construed the term "actual operational CAS latency" of a memory device as "the delay between: (1) the time when a command is executed by the memory device, and (2) the time when data is made available to or from the memory device." *Id*.

Dr. Mangione-Smith did not apply the Court's claim constructions for these terms. Instead, Dr. Mangione-Smith alleges infringement without reference to the delay between the time of execution of a command by a specific device and the time when data is made available to or from the device.

9

Specifically, for the "actual operational CAS latency" term, Dr. Mangione-Smith contends "the 'actual operational latency' is represented by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. I (Dr. Mangione-Smith's Suppl. Rpt.), ¶ 77. This opinion does not identify *at all* "the time when a command is executed by the memory device" or "the time when data is made available to or from the memory device," which is required by the Court's construction.

Similarly, for the "overall CAS latency" term, Dr. Mangione-Smith contends ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, ¶ 78. This opinion does not identify *at all* "the time when a command is executed by the memory module" or "the time when data is made available to or from the memory module," which is required by the Court's construction.

Instead, Dr. Mangione-Smith side-steps the Court's construction and focuses on a calculation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. C (Ex. C to Dr. Mangione-Smith's Open. Rpt.), ¶ 114. Nowhere in this equation, however, is an indication of the time when a command is executed or data is made available to or from a memory module or device as construed by the Court.

In addition, Dr. Mangione-Smith identifies the following ▮▮▮▮▮ and alleges that ▮ ▮▮▮▮▮▮ is the overall CAS latency for a write command:

10



The Court did not construe "overall CAS latency" as "the delay between (1) the time when a command is executed by the memory module, and (2) the time when data is made available to or from the memory ~~module~~ device." Dr. Mangione-Smith's opinions are inconsistent with the Court's Claim Construction Order and should be struck.

11

Accordingly, Micron respectfully requests that the Court strike Dr. Mangione-Smith's opinions regarding Netlist's infringement theories that are not based on the Court's claim constructions, including ¶¶ 113-169 of Exhibit C to Dr. Mangione-Smith's Opening Expert Report and ¶¶ 77-78 of Dr. Mangione-Smith's Supplemental Report.

## IV. CONCLUSION

For the foregoing reasons, Micron respectfully requests that the Court grant Micron's Motion.

Dated: January 16, 2024

Respectfully submitted,

By: /s/ Mike Rueckheim
Thomas M. Melsheimer (State Bar No. 13922550)
TMelsheimer@winston.com
Natalie Arbaugh (State Bar No. 24033378)
NArbaugh@winston.com
Barry K. Shelton (State Bar No. 24055029)
BShelton@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

Michael R. Rueckheim (State Bar No. 24081129)
MRueckheim@winston.com
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

Matthew Hopkins (*Pro Hac Vice*. State Bar No. 1500598)
MHopkins@winston.com
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036-3506
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

12

Juan C. Yaquian (*Pro Hac Vice*. State Bar No. 24110559)
JYaquian@winston.com
WINSTON & STRAWN LLP
800 Capital Street, Suite 2400
Houston, TX 77002-2925
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Wesley Hill (State Bar No. 24032294)
wh@wsfirm.com
Andrea Fair (State Bar No. 24078488)
andrea@wsfirm.com
Charles Everingham IV (State Bar No. 00787447)
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

***Attorneys for Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC***

13

**CERTIFICATE OF SERVICE**

I certify that, on January 16, 2024, a copy of the foregoing was served on all counsel of record via the Court's ECF system.

/s/ Mike Rueckheim
Mike Rueckheim

█████████████████████████████████

█████████████████████████████████████

███████████████████████████

████████

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Micron and Netlist met and conferred regarding Micron's Daubert Motion and Motion to Strike Expert Testimony of Peter Gillingham. Netlist's counsel indicated that Netlist opposes Micron's motion.

/s/ Mike Rueckheim
Mike Rueckheim