# EXHIBIT 2

```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF TEXAS
                      MARSHALL DIVISION

NETLIST, INC.,                 (  CAUSE NO. 2:21-CV-463-JRG
                               )
         Plaintiff,            (
                               )
vs.                            (
                               )
SAMSUNG ELECTRONICS CO., LTD., (
et al.,                        )  MARSHALL, TEXAS
                               (  MARCH 28, 2023
         Defendants.           )  9:00 A.M.
_____


                        VOLUME 1

_____

                   PRETRIAL CONFERENCE

          BEFORE THE HONORABLE RODNEY GILSTRAP
           UNITED STATES CHIEF DISTRICT JUDGE

_____










                SHAWN McROBERTS, RMR, CRR
                   100 E. HOUSTON STREET
                  MARSHALL, TEXAS  75670
                     (903) 923-8546
               shawn_mcroberts@txed.uscourts.gov
```

1  present it during the jury trial based on a risk of confusion
2  since it doesn't relate to what the jury's going to be asked
3  to decide, but to hold it and then present it for the first
4  time at the bench trial that follows.
5        That's the approach I want to follow in this case.
6              MR. MOSTELLER:  And, Your Honor, that's what we
7  intend to do as well.
8              THE COURT:  Okay.  I just want to make sure we're
9  all on the same page.
10       Now, with regard to these paragraphs 49, 55, and 57, Mr.
11 Halbert is not going to disparage Netlist any more than I'm
12 going to let any of their witnesses disparage Samsung.  This
13 is not a case about who can throw the most mud at the other
14 side.
15       So language like subverted, opportunistic behavior,
16 dishonorably, misappropriated, those are pejorative terms in
17 the Court's view.  And while I'm not going to strike them per
18 se from the report, I'm going to apply the Court's limine
19 orders which clearly in and of themselves prevent pejorative
20 language and assertions made in the presence of the jury.
21       If there's anything this man's going to say, whether it's
22 in his report or not, that could be considered pejorative, you
23 need to come to the bench and you need to tell me what you
24 intend to elicit from him before you do it and get leave of
25 the Court.  And he needs to be instructed before he goes on

1  the witness stand that he's not to involuntarily offer or
2  voluntarily, I guess I should say, offer pejorative language
3  in his testimony. If he does, he's going to be in hot water
4  with me.
5        So I can go through and pick out particular words in this
6  report and I can say this adjective is out and this one is
7  out, but rather than do that at a high level, I'm just telling
8  you I don't expect him to testify using pejorative terms and I
9  don't expect the other side to launch pejorative language at
10 him on cross-examination or at your client any more than I'm
11 going to let him do that to the Plaintiff in the case.
12       Are we clear on that?
13           MR. MOSTELLER: Very clear, Your Honor.
14           THE COURT: Okay. Well, I think with that
15 understanding, the rest of paragraphs 49, 55, and 57 can
16 survive.
17           MR. MOSTELLER: Thank you, Your Honor.
18       If we can jump ahead then to the next section of Mr.
19 Halbert's report at issue, which is paragraph 48. And if we
20 can just go to slide 21, I think we can cover one paragraph in
21 just one slide, Your Honor.
22       Here, as counsel mentioned, Mr. Halbert has some
23 discussion of the prior ITC investigations. And to be clear,
24 we understand that the Court does not permit opinions about
25 prior investigations.

1          THE COURT: I don't permit testimony about prior
2    investigations or prior litigation, and a proceeding before
3    the ITC is litigation in the Court's view --
4          MR. MOSTELLER: Correct.
5          THE COURT: -- without leave of Court. Now, if you
6    think the door's been opened or if you think there's a basis
7    in real time as the case unfolds before the jury to go into
8    something that I've told you as a general rule I don't permit,
9    you can always approach and ask leave. And if I give you
10   leave, you have a clear path in front of you.
11       But without that, you're not and he's not to talk about
12   ITC proceedings, other litigation in Article III courts, other
13   administrative processes such as the Patent Trial and Appeal
14   Board. None of those things are permitted under the Court's
15   limine practice without leave.
16         MR. MOSTELLER: Understood, Your Honor. And we have
17   no need to have Mr. Halbert provide testimony or opinions
18   about those prior investigations.
19       The purpose of the testimony that's given there in
20   paragraph 48 really relates to Samsung's willfulness defenses
21   and its defenses to indirect infringement as to the knowledge
22   and the intent prongs of Netlist's claims, specifically that
23   there are, amongst other obligations, that Netlist as a member
24   of JEDEC has to the organization is to disclose patents that
25   it is aware of, that it knows are relevant to particular

1    I do not expect and I will not permit him to become the
2    voice of JEDEC and speculate about what JEDEC would do under
3    these circumstances and what they wouldn't do.  He's not -- he
4    is not JEDEC and he's not a representative of JEDEC entitled
5    as an agent to take a position for them.
6         He can talk about what he's seen as a member, he can talk
7    about what he understands will happen in circumstances that
8    he's observed, but he needs to cabin his testimony about the
9    JEDEC experience with his personal experience and his personal
10   knowledge.
11        I don't think it's a proper use of him to be some kind of
12   CEO of JEDEC that's going to come in here and speak for the
13   body, if you will, on any matter and every matter and offer
14   opinions about what they would or wouldn't do in hypothetical
15   scenarios.  That goes too far, and I'm expecting you not to
16   take him there on direct.  And if you do, I'm expecting
17   Plaintiff to object.  And if any of that happens, I'm likely
18   to just exactly do what I'm telling you right now.
19             MR. MOSTELLER:  Understood, Your Honor.
20        One thing I would ask to clarify is that Netlist also has
21   their own JEDEC expert in this case, Mr. Gillingham.
22             THE COURT:  What's good for the goose is good for
23   the gander.
24             MR. MOSTELLER:  I appreciate that, Your Honor.  I
25   will stand down.

1    THE COURT: We will get to that witness when we get
2 to that witness.
3    MR. MOSTELLER: Sounds good, sir.
4    THE COURT: All right. Thank you, sir.
5 Let's turn to -- by the way, for the record those are the
6 rulings on Document 207. While the Court has not expressly
7 struck any of the portions of Mr. Halbert's report, the Court
8 has given clear and direct guidance to counsel as to how that
9 report and the information and opinions of that expert are to
10 be presented to the jury, and I expect that guidance to be
11 followed.
12 Okay. So in a technical sense, the motion by the
13 Plaintiff is denied there with the guidance and clarifications
14 that I've clearly put into the record.
15 All right. Let's turn to Document 214. This is
16 Plaintiff's motion to strike portions of the rebuttal expert
17 report of Paul K. Meyer. This is one of those situations,
18 Counsel, that I've referred to earlier in the day because I
19 count 11 subparts to this one motion, and that's part of why
20 we have such a tremendous load of material to get through
21 during the two days I've allocated to pretrial.
22 But without further delay, let's get into this motion.
23 Let me hear from Plaintiff on it.
24    MR. SHEASBY: May it please the Court. Jason
25 Sheasby.