UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>    Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.,<br><br>    Defendants. | Civil No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S SUR-REPLY TO NETLIST'S MOTION FOR
SUMMARY JUDGMENT ON SAMSUNG'S LICENSE DEFENSE (DKT. 273)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................................ii

TABLE OF EXHIBITS TO SAMSUNG'S OPPOSITION ..................................................................iii

TABLE OF EXHIBITS TO SAMSUNG'S SUR-REPLY ....................................................................iii

TABLE OF ABBREVIATIONS............................................................................................................iv

I.     Netlist Is Precluded from Relitigating the Scope of the JDLA License.......................................1

       A.     Samsung's Position on the Scope of the JDLA License Is Consistent............................1

       B.     The *EDTX1* Record Precludes Relitigating the Scope of the JDLA License ................2

II.    The Extrinsic Evidence One-Sidedly Favors Samsung's Interpretation of JDLA § 6.2 ............3

III.   None of the Additional Evidence Netlist Now Proffers Establishes Materiality........................6

\* In this brief, all emphasis is added unless noted otherwise.

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*67 Wall St. Co. v. Franklin Nat'l Bank*,
    333 N.E.2d 184 (N.Y. 1975) ............................................................................................... 4

*Canon Inc. v. Tesseron Ltd.*,
    146 F. Supp. 3d 568 (S.D.N.Y. 2015) ................................................................................ 4

*Dupree v. Younger*,
    598 U.S. 729 (2023) ........................................................................................................... 4

*Faulkner v. Nat'l Geographic Soc'y*,
    452 F. Supp. 2d 369 (S.D.N.Y. 2006) ......................................................................... 4, 5, 6

*Feld Motor Sports, Inc. v. Traxxas, L.P.*,
    861 F.3d 591 (5th Cir. 2017) .............................................................................................. 3

*IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*,
    220 N.E.3d 646 (N.Y. 2023) .............................................................................................. 4

*Murray Walter, Inc. v. Sarkisian Bros., Inc.*,
    598 N.Y.S.2d 613 (N.Y. App. Div. 1992) .......................................................................... 5

*Netlist Inc. v. Samsung Elecs. Co.*,
    No. 22-55209, 2023 WL 6820683 (9th Cir. Oct. 17, 2023) ............................................ 2, 6

*Ortho-Clinical Diag'cs Bermuda Co. v. FCM, LLC*,
    No. 15 CIV. 5607, 2017 WL 2984023 (S.D.N.Y. July 6, 2017) ........................................ 4

*Quadrant Structured Products Co. v. Vertin*,
    16 N.E.3d 1165 (N.Y. 2014) ........................................................................................... 3, 4

*Reyelt v. Danzell*,
    533 F.3d 28 (1st Cir. 2008) ................................................................................................ 6

*W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
    751 F.2d 721 (5th Cir. 1985) .......................................................................................... 1, 3

## TABLE OF EXHIBITS TO SAMSUNG'S OPPOSITION

| # | Description |
|---|---|
| A. | Transcript of Deposition of Paik Ki Hong (excerpts) from C.D. Cal. Case |
| B. | Netlist's April 2015 Proposal (NL107806) |
| C. | Netlist's June 9, 2015 Term Sheet (NL108698-99) |
| D. | Netlist's June 23, 2015 Term Sheet (NL005091-13) |
| E. | Transcript of Deposition of Chuck Hong (excerpts) from C.D. Cal. Case |
| F. | Memorandum of Understanding (NL069668-70) |
| G. | Purchase Order (NL002027) |
| H. | Declaration of Paik Ki Hong from C.D. Cal. Case |
| I. | Netlist's 2015 10-K (excerpts) |
| J. | Emails Between Raymond Jiang and Neal Knuth (NL039163-64) |
| K. | Emails Between Raymond Jiang and Neal Knuth (NL024952) |
| L. | Email Attaching December 2017 Slide Deck (NL020700-03) |
| M. | Transcript of Deposition of Ho Jung Kim (excerpts) from C.D. Cal. Case |
| N. | Transcript of Deposition of Hyun Ki Ji (excerpts) from C.D. Cal. Case |
| O. | Samsung's Ninth Circuit Opening Brief (excerpts) |
| P. | Email from Tae-Jin Jeong (SEC003566 translation) |
| Q. | Email (NL119237-38) |
| R. | Transcript of Deposition of Indong Kim (excerpts) from *EDTX1* |
| S. | Transcript of Deposition of Chuck Hong (excerpts) |
| T. | Transcript of Deposition of Joseph Calandra (excerpts) |
| U. | Transcript of Oral Argument (excerpts) from Ninth Circuit Appeal |
| V. | April 5, 2021 Form 8-K (SAM-NET00785007) |
| W. | Email and Samsung-Netlist Partnership February, 2017 (SAM-NET00550983 and SAM-NET00550987) |
| X. | Verdict from C.D. Cal. Case |

## TABLE OF EXHIBITS TO SAMSUNG'S SUR-REPLY

| # | Description |
|---|---|
| Y. | Transcript of Trial (Apr. 20, 2023) (public, excerpts) from *EDTX1* |
| Z. | Transcript of Pre-Trial Conference (March 28, 2023) (public, excerpts) from *EDTX1* |

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| C.D. Cal. | U.S. District Court for the Central District of California |
| C.D. Cal. Case | *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-CV-993 (C.D. Cal.) |
| *CTA9 Order* | *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683 (9th Cir. Oct. 17, 2023) |
| D. Del. | U.S. District Court for the District of Delaware |
| D. Del. Case | *Samsung Elecs. Co. v. Netlist, Inc.*, No. 1:21-CV-1453 (D. Del.) |
| *EDTX1* | *Netlist Inc. v. Samsung Elecs. Co.*, No. 2:21-CV-463 (E.D. Tex.) |
| JDLA | Joint Development and License Agreement (*see* Dkt. 273-7) |
| JDP | Joint Development Project |
| MOU | Memorandum of Understanding (*see* Ex. F) |
| Ninth Circuit Appeal | *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209 (9th Cir.) |
| NVDIMM | Non-Volatile Dual In-Line Memory Module |
| NVDIMM-P | A variant (signified by "-P") of NVDIMM |
| NSMF | Netlist's Statement of Material Facts (Dkt. 273 at 3-9) |
| SSMF | Samsung's Counter-Statement of Material Facts (Dkt. 315 at 3-5) |

Netlist's Reply fails to address its motion's fundamental flaws. At the threshold, Netlist essentially concedes that it would have this Court impinge on the C.D. Cal. Case by judging the scope of the JDLA supply provision (§ 6.2), alleged breach and alleged materiality. Deference to the C.D. Cal. court is required. *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721 (5th Cir. 1985). Ignoring *West Gulf*, as Netlist proposes, would be improper.

The Reply fares no better elsewhere. It alleges inconsistency by Samsung, but its unsupported rhetoric cannot overcome the records in this District and the C.D. Cal. court showing the opposite. Its discussion of the *EDTX1* judgment (attempting to avoid preclusion) is plagued with errors. And its arguments on extrinsic evidence and materiality are distorted and inaccurate. This Court has made clear it intends to defer to the C.D. Cal. court on § 6.2's scope, alleged breach, and the materiality of any breach, but even were this not so, the record overwhelmingly supports Samsung. Netlist's motion should be denied or, at the very least, held in abeyance pending the C.D. Cal. Case.

**I.     Netlist Is Precluded from Relitigating the Scope of the JDLA License**

**A.     Samsung's Position on the Scope of the JDLA License Is Consistent**

In a transparent attempt to avoid preclusion in view of *EDTX1*, Netlist alleges inconsistency by Samsung as to the scope of the JDLA license. **Samsung has been consistent** in its position. Its Ninth Circuit submissions explain that § 6.2 is "limited to the parties' NVDIMM-P joint-development project." Dkt. 187-3 at 24; *see also* Dkt. 203-1 at 1-9. That is by no means tantamount to contending that all JDLA provisions, including the § 8.2 patent license, are so limited. **Samsung has never argued, in any forum, that its patent license is limited to the JDP or to JDP products**.

Samsung's oral argument before the Ninth Circuit supports it. *See* Dkt. 273-2. As Samsung's Response explains, and the Reply does not dispute, it was **Netlist** who asked that Samsung "cloak" its ▓▓▓▓ patent license payment as a JDP engineering fee, which is reflected in the JDLA. *See* Dkt. 283 at 10-11 (citing Dkt. 203-2 at 2). Samsung's description of that payment as "for the joint

1

development project" (Dkt. 273-2 at 8:16-24) is consistent with that structure. Regardless of Netlist's planned use for that sum, it was unambiguously consideration for the license. "Cloaking" the payment did not restrict the scope of the JDLA license, nor did Samsung ever present such an argument.

The Reply's argument that the Ninth Circuit somehow "understood" Samsung to be urging restrictions as to the nature of the license fee or the scope of the license is unfounded. In fact, the scope of the JDLA license was not even at issue in the Ninth Circuit. *See* Dkt. 331 at 1. The Ninth Circuit's determination that § 6.2 is ambiguous was based on the "title, structure, and related provisions" in the JDLA supporting more than one reasonable interpretation—not any statements regarding the scope of the JDLA license. *CTA9 Order*, 2023 WL 6820683, at *1. Indeed, license scope never came up in the Ninth Circuit appeal, and that court does not cite anything in the oral argument, or anything else in the record, regarding license scope. The same applies to the partial dissent. The plain record contradicts Netlist's attempts to rewrite the Ninth Circuit's opinion.

Samsung has never urged that "every provision in the JDLA is linked to the joint development, *except* the license grant," as Netlist contends. Dkt. 273 at 2 (original emphasis). Indeed, Netlist's Reply does not dispute that the ▮▮▮▮▮ Samsung paid to Netlist was only "cloaked" as an engineering fee at Netlist's request, when in fact it related to the entire broad patent license.

The fact that discovery had not ended in the D. Del. Case is immaterial to that court's rejection of Netlist's inconsistency argument. Netlist attempted to prove inconsistency by Samsung on license scope there too, and the court flatly rejected that attempt. Dkt. 259-1 ("[T]he Court is unpersuaded that Samsung advanced an inconsistent position before the Ninth Circuit Court of Appeals.").

### B.    The *EDTX1* Record Precludes Relitigating the Scope of the JDLA License

Netlist's attempts to evade issue preclusion are both factually and legally incorrect. *See* Dkt. 331 at 2-3. This Court in *EDTX1* did not find a "dispute of material fact" as to the interpretation of the scope of § 8.2. *See id.* at 2. Instead, it found a triable issue as to "whether the [accused HBM]

2

products are 'Foundry Products.'" *EDTX1*, Dkt. 432 at 2. That addresses **application** of scope to accused products, not interpretation of scope. Further, the Reply ignores that the *EDTX1* court entered JMOL that HBM products were covered by the JDLA license. Ex. Y at 1266:17-25.

The absence of pre-suit damages in *EDTX1* also does not affect preclusion. *See* Dkt. 331 at 2-3. Samsung's belief that it was licensed was a critical aspect of its *EDTX1* defense against willfulness. As this Court explained, "up to the termination of the JDLA . . . , Samsung was licensed" and "during the period of the licensure, Samsung really can't infringe . . . , and if they can't infringe, they can't willfully infringe." Ex. Z at 153:5-7, 154:25-155:3, 168:16-24. The "Foundry Products" issue was "fair game for willfulness" at trial, *id.* at 155:3-11, and resolved following trial, Ex. Y at 1266:17-25.

Further, the Reply's contention that "'partial summary judgment orders . . . are not preclusive'" is not applicable because *EDTX1* directly addressed license scope. *See* Dkt. 331 at 3. Such was incorporated into that judgment, making the "partial" summary judgment argument inapplicable.

## II. The Extrinsic Evidence One-Sidedly Favors Samsung's Interpretation of JDLA § 6.2

The Court has recognized the need for deference to the C.D. Cal. Case. Dkt. 278 at 4-5 (declining to "comment further" on matters "squarely before another court" (citing *W. Gulf*, 751 F.2d 721)). That alone warrants denying Netlist's motion. But denial is also substantively warranted.

Netlist wrongly suggests that because the Ninth Circuit did not cite *Quadrant Structured Products Co. v. Vertin*, 16 N.E.3d 1165 (N.Y. 2014), it did not consider it. Dkt. 331 at 3. Netlist argues that under *Quadrant*, the "*expressio unius*" canon requires construing § 6.2 as an unlimited supply obligation. But the Ninth Circuit reversed a district court opinion that had cited *Quadrant* for exactly that proposition, and in oral argument Netlist quoted the language from *Quadrant* on which it now relies, Ex. U at 28:19-23. Further, the Ninth Circuit expressly rejected the "*expressio unius*" argument that Netlist now presses. Still further, the Fifth Circuit has instructed that courts applying New York law not apply *Quadrant* to "specialized terms not readily found" elsewhere. *Feld Motor Sports, Inc. v. Traxxas,*

3

*L.P.*, 861 F.3d 591, 599-600 (5th Cir. 2017), *abrog'd on other grounds by Dupree v. Younger*, 598 U.S. 729 (2023). That accords with *Quadrant* and New York authority. *See Quadrant*, 16 N.E.3d at 1172 (emphasizing review of "other, similar contracts"); *IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, 220 N.E.3d 646, 654-55 (N.Y. 2023). No party contends that § 6.2 is a term "readily found" in other contracts.[1]

Netlist's extrinsic evidence discussion is flawed. **First**, it continues to ignore the relevance of the MOU—even when the undisputed contemporaneous evidence shows that Netlist insisted at the time of the contract that the JDLA generally, and § 6.2 in particular, conform to the MOU. Dkt. 315, SSMF ¶7. Netlist's CEO ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ SSMF ¶6. So instead, Netlist urges the Court to ignore the MOU entirely, citing the JDLA's integration clause. Dkt. 331 at 4. That clause is inapplicable here, as Samsung does not contend that the MOU adds additional provisions to the JDLA, but rather that the MOU is relevant (indeed, dispositive) extrinsic evidence of the JDLA's meaning. *See, e.g., 67 Wall St. Co. v. Franklin Nat'l Bank*, 333 N.E.2d 184, 186-87 (N.Y. 1975) (where a contract is ambiguous, courts may look to "evidence of conversations, negotiations and agreements made prior to or contemporaneous with the execution" to ascertain the "intent of the parties"). The MOU shows that both parties intended at the time of contracting that § 6.2 would limit Samsung's supply obligation to the JDP, which precludes summary judgment for Netlist (and indeed requires entry of judgment for Samsung in C.D. Cal.).

**Second**, Netlist tries to evade the MOU by citing Mr. Hong's self-serving statements about § 6.2 made years after the negotiation. Dkt. 331 at 4. But Mr. Hong's litigation-formulated opinions are irrelevant; what matters is the parties' intent when contracting. *See Faulkner v. Nat'l Geographic Soc'y*,

---

[1] Neither *Quadrant* nor Netlist's other cited cases involved ambiguous contracts, the interpretation of which required extrinsic evidence. *See Quadrant*, 16 N.E.3d at 1172-73; *Ortho-Clinical Diag'cs Bermuda Co. v. FCM, LLC*, No. 15 CIV. 5607, 2017 WL 2984023, at *3 (S.D.N.Y. July 6, 2017); *Canon Inc. v. Tesseron Ltd.*, 146 F. Supp. 3d 568, 579 (S.D.N.Y. 2015). Here, the Ninth Circuit explicitly held § 6.2 ambiguous and remanded to the C.D. Cal. court with instructions to consider extrinsic evidence.

4

452 F. Supp. 2d 369, 379 (S.D.N.Y. 2006) (describing non-probativeness of a party's "postcontractual subjective understanding"); *accord Murray Walter, Inc. v. Sarkisian Bros., Inc.*, 598 N.Y.S.2d 613, 616 (N.Y. App. Div. 1992). The MOU proves contemporaneous intent. Mr. Hong's admissions about its scope and meaning erase dispute and confirm that the operative document memorializing the parties' intent just weeks before entering into the JDLA limited Samsung's supply obligations to "raw materials" for the technology collaboration. At minimum, this defeats Netlist's motion.[2]

**Third**, Netlist incorrectly argues that Samsung has not provided an explanation for why Samsung's supply to Netlist increased in the years after the JDLA was signed. Dkt. 331 at 5. Netlist's **own executive** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SSMF ¶ 1, Ex. A at 12:9-14:15. Therefore, what happened between 2015 and early 2017 was not an unprecedented surge caused by the JDLA, but a reflection of the longstanding variation in Netlist's purchase volumes. It is only by artificially choosing "two years before the JDLA" (Dkt. 331 at 5) as a starting point, when the amount purchased was low, that Netlist creates the impression that an unlimited JDLA supply obligation caused the increase.

**Fourth**, Netlist tries to evade its post-JDLA 10-K concession that it had **no long-term supply contracts** by citing another 10-K section repeating § 6.2 without clarification. Dkt. 331 at 5. Such a statement, like Netlist earnings calls, is non-probative hindsight. *Faulkner*, 452 F. Supp. 2d at 379.[3]

---

[2] Netlist's argument that a supply obligation limited to a "a few hundred memory components" makes "no sense . . . in contrast with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (Dkt. 331 at 4), for which it cites its own CEO, is based on an inaccurate characterization of Samsung's position. Samsung recognizes that § 6.2 obliged it to supply Netlist with DRAM and NAND for both the collaboration and, if it had been commercialized, subsequent production of a NVDIMM-P product.

[3] Netlist also provides no real answer as to why it needed to ask Samsung for a new supply agreement in 2017 if it already had access to unlimited product under the JDLA. All Netlist does is point to other portions of the presentation that state that the JDLA gives Netlist access to NAND and DRAM "at a competitive price." Dkt. 331 at 5 n.3. But this is just the language from § 6.2; it says nothing about an unlimited supply, does nothing to support Netlist's interpretation, and tracks Samsung's.

5

**Fifth**, the Samsung internal email cited by Netlist comprises unexpressed subjective statements, irrelevant under *Faulkner*. Dkt. 331 at 5. The January 2018 email from Mr. Kim is also silent as to whether Samsung's supply obligation extended beyond the JDP. Netlist conveniently misreads a later Samsung email when alleging that it would limit the JDLA license to joint development. *Id.* at 5-6. That email is clear that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. 315-16 at SEC003566.

### III. None of the Additional Evidence Netlist Now Proffers Establishes Materiality

Netlist does not dispute that, to prevail on its motion, it **must** prevail on materiality. Dkt. 315 at 5. But review of materiality would impermissibly abridge the Ninth Circuit's determination that "several [of the materiality] factors hinge[d] upon disputed facts." *CTA9 Order*, 2023 WL 6820683, at *7-8. Netlist is also wrong on the merits. It uses an out-of-context hearing quote. Dkt. 331 at 6. That statement responded to questioning as to the **ambiguity** of § 6.2, **not materiality**. Samsung stated that if § 6.2 was unlimited, such an "important part" of the contract would have been reflected in "the negotiations leading up to the JDLA," and it was not. *See* Dkt. 314-8 at 17:21-24. Such has no bearing on materiality, because the "question is whether **the breach is material**, not whether there was a breach of a **material term**." *Reyelt v. Danzell*, 533 F.3d 28, 32 (1st Cir. 2008).

Testimony from Messrs. Calandra and Kim is not contrary. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ It is also impermissible lay witness opinion.[4]

---

[4] Netlist urges preclusion based on discovery disputes, but provides no further discussion. Dkt. 331 at 6. Samsung has already addressed that assertion. Dkt. 262.

Dated: January 18, 2024                                 Respectfully submitted,

                                                        By:  /s/ *Michael J. McKeon*

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:     (903) 934-8450
Facsimile:       (903) 934-9257

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile:   (415) 955-6571

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

██████████████████████████████████████████████

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on January 18, 2024. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

                                                                  _/s/ Michael J. McKeon_

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

                                         ████████████████