# Exhibit 9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SMARTFLASH LLC, et al., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:13-cv-447-JRG |
| | § | |
| APPLE INC., et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Smartflash's Motion for Reconsideration (Dkt. No. 597) of this Court's Order Granting Apple a New Trial (Dkt. No. 581). The Court **GRANTS-IN-PART** and **DENIES-IN-PART** the relief requested in Smartflash's Motion for Reconsideration.

### I.   Background

Smartflash and Apple completed a six-day jury trial on February 24, 2015. The jury returned a verdict in favor of Smartflash, finding Apple liable for $532,900,000 in damages. (Jury Verdict, Dkt. No. 503.) After considering the post-trial briefing in this case, the Court granted a new trial on the issue of damages, finding, among other things, that Smartflash had inadequately attempted to apportion its royalty base, the Court had instructed the jury on an area of the law when the instruction should not have been given, and additionally, the Court had separate, material, and overarching concerns about Smartflash's damages model. (New Trial Order, Dkt. No. 581.) While the Court was principally concerned about the manner in which Smartflash presented its damages case to the jury, the Court also determined that its instruction injected an element of confusion and compounded a situation that could (and may likely) have inflated the jury award. (*Id.*)

Smartflash has now asked the Court to reconsider that ruling. (Pl.'s Mot., Dkt. No. 597). In the Court's prior ruling, the Court agreed with what was then Smartflash's first substantive argument (in response to Apple's motion for judgment as a matter of law), where Smartflash argued, "First, because Mr. Mills did not employ the entire market value rule ("EMVR"), he *per se* cannot violate its requirements." (Pl.'s Resp. to JMOL at 26, Dkt. No. 555.) Smartflash went on to say: "Because Mr. Mills' royalty base was not the total revenues Apple made selling all infringing products, he did not apply the EMVR." (*Id.*) In a footnote, Smartflash continues: "In order to apply the EMVR the royalty base must contain the *entire market value* of the infringing products. . . . Because Mr. Mills applied no royalty rate to over 75% of Defendants' accused sales, he did not employ the EMVR." (*Id.* at 26 n.12 (emphasis in original).) Given that Smartflash's royalty base equation multiplied a percentage value by (i.e., took a portion of) the number of sales, the price of the phone, or some combination of both, the Court agreed that Smartflash had engaged in an attempt at apportionment and had not invoked the entire market value rule—a noted exception to the principle of apportionment. (New Trial Order at 4–5, Dkt. No. 581.)

In its motion to reconsider this ruling, Smartflash now argues that it did, in fact, ask the jury to award damages based on the entire market value of Apple's accused devices. (Pl.'s Mot. at 5, Dkt. No. 597.) As an alternative to its request that the Court reinstate its damages award from the earlier trial, Smartflash "requests, consistent with Judge O'Malley's suggestion at oral argument on Apple's appeal of its Motion to stay, that the Court bifurcate those final liability determinations from the still-required damages proceedings (including proceedings related to any subsequent ongoing royalty or injunction) such that the Federal Circuit can quickly reach ultimate resolution of those highly disputed, final . . . aspects of the case (including subject

2

matter eligibility under 35 U.S.C. § 101)." (Pl.'s Resp. at 13, Dkt. No. 597.) The Court addresses Smartflash's second request first.

## II. Judgment Final Except for an Accounting: 28 U.S.C. § 1292(c)(2)

### A. Applicable Law

The Federal Circuit, in an opinion affirming this Court's order on an earlier issue, noted that the damages proceedings may be bifurcated from the liability determination such that the Federal Circuit could review an appeal from this Court even though the damages determination is still outstanding.[1] *Smartflash LLC v. Apple Inc. et al.*, Nos. 2015-1701, 2015-1707, 2015 WL 4603820, at *5 n.2 (Fed. Cir. July 30, 2015).

Under the statutory language of the Patent Act, the Federal Circuit, in a broad exception to the finality rule, has appellate jurisdiction over judgments in patent infringement actions that are final except for an accounting:

> The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction . . . of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

28 U.S.C. § 1292(c)(2); *see Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1316–17 (Fed. Cir. 2013).

The Federal Circuit has held that an "accounting" under § 1292 includes a damages trial under § 284. *Robert Bosch*, 719 F.3d at 1316–17 (citing *In re Calmar, Inc.*, 854 F.2d 461, 464

---

[1] A panel of the Federal Circuit, hearing oral argument in this case on another issue, explicitly discussed the Parties' right to appeal from the liability determination despite the pending new trial on damages. *Oral Argument, Smartflash LLC v. Apple Inc. et al.*, Nos. 2015-1701, 2015-1707 (July 9, 2015), http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2015-1707.mp3, at 17:01 ("If we're talking about what is most efficient at getting to the ending as quickly as possible, given our jurisprudence . . . you have a right to appeal as of right from the liability determination even without a damages trial having occurred.").

3

(Fed. Cir. 1988) ("[I]t is clear that the purpose of the legislation, § 1292(c)(2), allowing interlocutory appeals in patent cases was to permit a stay of a damages trial."); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1558 (Fed. Cir. 1984) (following a jury verdict that did not reach the question of damages, "[t]he court entered a judgment, final except for an accounting, that the '497 patent was 'invalid, void and unenforceable,' and that the '099 patent was valid and infringed . . . . [The court] ordered a new trial to determine the damages from infringement of the '099 patent, but postponed such trial pending this appeal."); *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1337 (Fed. Cir. 2009); *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1353 (Fed. Cir. 2007); *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 n.2 (Fed. Cir. 2001).

### B. Analysis

This case is ripe for appeal to the Federal Circuit under 28 U.S.C. § 1292(c)(2): this Court has entered judgment in this action for patent infringement, has ruled on the parties' matters under Federal Rule of Civil Procedure 50(b) and 59, and its judgment is final but for the pending new trial on damages (i.e., accounting). *See* 28 U.S.C. § 1292(c)(2); *Robert Bosch*, 719 F.3d at 1316–17.

### III. Smartflash's Damage's Model

The Court now turns to Smartflash's damages model. Despite its inconsistent positions at differing times, Smartflash chose to employ a damages model based on apportionment and not the entire market value rule. Smartflash also chose a traditional way to present its apportionment model to the jury by setting up a royalty rate and a royalty base and calculating damages by multiplying those two values together. (2/17/15 PM Trial Tr. (Mills) 152:16–19, Dkt. No. 514.)

4

### A. Substance of Smartflash's Damages Model

The Court now considers the substance of Smartflash's damages model. The ultimate combination of Smartflash's damages model is driven by multiplying the following familiar inputs together:

(1) the number of accused devices (e.g., iPhones) sold;

(2) Apple's profit margin on those accused devices;

(3) the Alone Motivate survey, which in simplified form asked consumers whether Smartflash's definition of its patented features "alone motivate[d]" consumers to purchase the accused devices, (2/17/15 PM Trial Tr. (Wecker) 66:9–12, Dkt. No. 514), of which on average 23% of responding consumers agreed;

(4) the NIA survey, which in simplified form asks whether users of the accused devices "would not buy [their accused device] without the [accused] functionality" and instead implemented the next-best non-infringing alternative, (2/17/15 PM Trial Tr. (Mills) (Sealed Portion #3) 25:13–15, Dkt. No. 523); and

(5) the market price of the accused device.

    i.   *How Smartflash presented its damages model to the jury*

The Court now turns to the manner in which this ultimate combination was presented to the jury. In its presentation to the jury, Smartflash divided the above inputs into the base and rate in the following way:

$$Royalty\ BASE = \begin{pmatrix} Alone\ Motivate \\ Survey \end{pmatrix}(Price)\begin{pmatrix} Number\ of \\ Units\ Sold \end{pmatrix}$$

$$Royalty\ RATE^2 = \begin{pmatrix} NIA \\ Survey \end{pmatrix}\begin{pmatrix} Apple's\ Profit \\ Margin \end{pmatrix}$$

---

[2] In his example calculation to the jury of the royalty rate, Mr. Mills spent multiple pages of trial testimony explaining how to multiply these two numbers together. As Mills explains: "Well, I

5

In explaining the royalty base to the jury, the following exchange took place:

> Q. And how did you use the surveys from Dr. Wecker in your analysis?
> A. Well, I used them in multiple ways, but the first way is to determine a royalty base.

(2/17/15 PM Trial Tr. (Mills) (Sealed Portion #3) 19:16–19, Dkt. No. 523.) Mills went on to explain that he looked at "the number of iPhones that were sold" "[a]nd then [he] multiplied that by the share that were motivated to buy due to the infringing functionality alone. And this comes from Dr. Wecker's survey [which the Court has labeled the Alone Motivate Survey]." (*Id.* 20:2–10.) He then testified that he determines "the revenue related to" the above by multiplying it by "the average price for the iPhone . . . and that results in the royalty base, which is revenue." (*Id.* 21:22–22:2.)

Mills further explained:

> Q. Okay. And so what is the revenue just for the people that were alone motivated by the feature in this case?
>
> A. I think it works to – yeah – $43.4 billion during the damages period.

(*Id.* 23:10–13.)

---

started by calculating the at-risk profit, which is another way of saying the profit that Apple would stand to lose if it took out the accused feature from its devices." (2/17/15 PM Trial Tr. (Mills) (Sealed Portion #3) 24:22–25, Dkt. No. 523). He accounts for the "share that would not buy without the functionality" by relying on the NIA survey. (*Id.* 25:13–15); (PX203.001 (noting the "share that would not buy without functionality" equals **10.8%**).) He then, in detail, explains how he calculated the related figures of at-risk sales, at-risk revenue, and at-risk profit. *Id.* 25:3–26:4. Mills then reveals that he multiplies his number "by the profit margin for the iPhone, which during this period was ▮%." (*Id.* 26:5–6); (PX203.001-5.) He then comes up with "total at-risk profit for Apple." (*Id.* 27:12–15.) However, Mills needs to convert this into a percentage royalty rate, so he then re-divides his total at-risk profit by the total revenue for all accused devices. (2/17/15 PM Trial Tr. (Mills) 151:21–152:15). He reveals "the full analysis" he has done is located in PX 203.002. (*Id.* 151:23.) When looking to PX203.002-4, it is apparent that, in the example he presents, the "royalty rate," in column (7), is ▮%. Thus, his calculation is actually quite straightforward:

$$Royalty\ RATE\ (example) = (10.8\%)(▮\%) = ▮\%$$

In its motion, Smartflash notes that when the average of these values is taken, the effective overall royalty rate is 1.96%. (Pl.'s Mot. at 2.)

6

Thus, as Smartflash told the jury:



$$\text{Royalty BASE} = \begin{pmatrix} \text{Alone Motivate} \\ \text{Survey} \end{pmatrix} (\text{Price}) \begin{pmatrix} \text{Number of} \\ \text{Units Sold} \end{pmatrix} = \$43,420,637,265$$

Furthermore, in connection with its explanation of its damages calculation, Smartflash also showed the following demonstrative to the jury:



"The court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . . ." (35 U.S.C. § 284)

$43,420,637,265

(23% of infringing products)

$852,215,027

### A. Court's Analysis

Given that Smartflash's royalty base calculation took a portion of the number of sales, the price of the phone, or some combination of both, the Court maintains its agreement with Smartflash's original substantive argument that Smartflash did not employ the exception to the principle of apportionment known as the entire market value rule. (Pl.'s Resp. to JMOL at 26, Dkt. No. 555.)

However, Smartflash now argues that this is not the case. Smartflash now argues that the entire market value rule exception is "actually a dual-natured doctrine, referring to two distinct (though often overlapping) concepts." (Pl.'s Mot. at 3, Dkt. No. 597.) Smartflash argues that the doctrine allows for a situation where the entire market value rule exception to the principle of apportionment is not "an alternative to apportionment; it *is* apportionment." (*Id.* at 4 (emphasis in

7

original).) In this, Smartflash divides the entire market value rule exception into two separate and distinct concepts. "[F]irst of these concepts is a prohibitive one: a patentee may not calculate a royalty as a percentage of the total revenue derived from all sales of complex, multi-component infringing products unless the patented invention drives demand for all of those products." (*Id.*) Smartflash calls this concept the "Total Revenue Application" of the entire market value rule. (*Id.*) Smartflash then says that the "Total Revenue Application is the 'important evidentiary principle'" from *Ericsson, Inc. v. D–Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); (Pl.'s Mot. at 3–4.) Second, Smartflash argues that courts have "also used the term 'Entire Market Value Rule' to allow for recovery of damages 'based on' the value of a single entire multicomponent product—including a product containing unpatented features—if the patented feature 'substantially creates the value' of any unpatented ones," citing to *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013); (Pl.'s Mot. at 4.) Smartflash calls this concept the "Sub-Population Application" of the entire market value rule. Smartflash goes on to state: "This Sub-Population Application is not an alternative to apportionment; it *is* apportionment." (*Id.* at 4.)

After seeing all the evidence presented at trial, as well as the manner in which Smartflash presented its damages model, the Court disagrees with Smartflash's formulation and characterization of its damages model.

i. *The exception to apportionment cannot be used to apportion.*

Neither the Supreme Court of the United States nor the Federal Circuit have drawn or otherwise adopted the "Sub-Population" distinction in the entire market value rule exception that Smartflash now says exists. (Def.'s Resp. at 4, Dkt. No. 600). In fact, for the past 130 years, our higher federal Courts have consistently articulated that the entire market value rule is the exception to the principle of apportionment: to quote from *Garretson*, "The patentee . . . must in

8

every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features . . . ; **or** he must show by equally reliable and satisfactory evidence that the profits and damages are to be calculated on the whole machine." *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (emphasis added); *see also Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014) ("The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, **or else** establish that its patented technology drove demand for the entire product." (emphasis added)); *id.* at 1326 ("[W]hen claims are drawn to an individual component of a multi-component product, it is the **exception**, not the rule, that damages may be based upon the value of the multi-component product."); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255 (Fed. Cir. 2013) ("Furthermore, the award cannot violate the entire market value rule. The entire market value rule is a **narrow exception** to the general rule that royalties are awarded based on the smallest salable patent-practicing unit."); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (calling the "entire market value rule" a "narrow exception" to the general rule requiring the patentee to reduce the value of its invention down to the smallest salable infringing unit).[3]

---

[3] The Court expressly rejects the argument that the entire market value rule is invoked merely because a patentee mentions the market price of the product during the presentation of its damages case to the jury. For some "apportionment" equations, the first step towards proper apportionment is taking a portion of value from the market price of the product. *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) ("Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature . . ., the patentee must do more to estimate what portion of the value of that product is attributable to the patented technology."). On the one hand, the patentee should be able to present its evidence of how it estimated the isolated value of its patented feature to the jury. On the other hand, the patentee cannot place an *undue emphasis* on the market price of the entire multi-component product and thereby inflate the royalty base in its presentation to the jury. *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226–27 (Fed. Cir. 2014). Smartflash engaged in the latter when it presented its damages case to the jury during this trial.

9

However, Smartflash now argues that it in its apportionment equation, it never needed to apportion out the unpatented features from the royalty base. (Pl.'s Mot. at 5.) Yet, Smartflash also argues that it is simultaneously apportioning the royalty base by multiplying the results of the alone motivate survey question to product sales instead of product price. (*Id.*) Under the Federal Circuit and Supreme Court's guidance, the Court believes this is improper. *Virntex, Inc. v. Cisco Sys., Inc.*, 767 F.3d at 1327–28 ("To hold otherwise would permit the entire market value rule exception to swallow the rule of apportionment."); (2/17/15 AM Trial Tr. (Mills) 20:17–21:1, Dkt. No. 515 (Mills acknowledging that his equation seeks to apportion).)

    ii.    *Even if a party could use the entire market value rule to apportion, Smartflash's evidence does not meet the higher degree of proof required to do so.*

Even if Smartflash's apportionment argument was correct, and it is not, the Federal Circuit has offered guidance on the "higher degree of proof" required to invoke the entire market value rule exception in the first place. As articulated, this proof must show that the "[patented feature] alone drives *the market* for [the devices]." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) (emphasis added). "It is not enough to merely show that the [patented feature] is viewed as valuable, important, or even essential to the use of [a multi-component device]." *Id.* The question is whether "the presence of [the patented feature] is what motivates consumers to buy [the multi-component device] in the first place." *Id.*

Here, 77% of consumers surveyed said that the patented feature was *not* the feature that drove them to purchase the accused device. Thus, Smartflash's "dual nature" approach to its hybrid entire market value rule/apportionment question does not meet this higher level of proof. *LaserDynamics, Inc.*, 694 F.3d at 68.

10

Case 2:22-cv-00293-JRG   Document 419-5   Filed 01/30/24   Page 12 of 16 PageID #: 31625

    iii.    *Under its proposed model, Smartflash uses the Alone Motivate survey question for two purposes, only one of which is a proper fact question for the jury.*

Smartflash, during trial, showed the following demonstrative to the jury on multiple occasions:




The Court finds that it was improper for Smartflash to present its ultimate royalty equation in this way because Smartflash's question did not meet the "higher degree of proof" for the entire market value rule exception. *See supra*. Stated differently, Smartflash now says that it invoked the alone motivate question for two principles: (1) apportionment; and (2) proving up the entire market value rule exception. The role that the alone motivate question played as an apportionment question was a proper fact question, but the role that the alone motivate question played in invoking the entire market value rule exception—and therefore allowing Smartflash to include complete product revenue in its demonstrative pie chart in that form—never could have been a proper fact question for the jury. *LaserDynamics, Inc.*, 694 F.3d at 68 ("Regardless of the chosen royalty rate, one way in which the error of an improperly admitted entire market value

11

rule theory manifests itself is in the disclosure of the revenues earned by the accused infringer associated with a complete product rather than the patented component only.").

Smartflash never isolated the value of the patented feature in the royalty base.[4] In fact, Smartflash never attempted to isolate the patented feature in its royalty base. This is improper. *See LaserDynamics, Inc.*, 694 F.3d at 68; *see also Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("It is not that an appropriately apportioned royalty award could never be fashioned by starting with the entire market value of a multi-component product . . . it is that reliance on the entire market value might mislead the jury, who may be less equipped to understand the extent to which the royalty rate would need to do the work in such instances.").

*iv. The Court's jury instruction further compounded the problem.*

Finally, but in this limited context, importantly, the Court placed *further* emphasis on the unjustified use of the revenue of Apple's products with its jury instruction. Interestingly, it was Apple that argued for inclusion of this instruction in the final jury instructions. The Court quotes the relevant section of that instruction:

> The law allows for the recovery of damages based on the value of an entire product containing several features or components only when the patented invention constitutes the basis for consumer demand for the entire product.
> Accordingly, if you find that Smartflash has proven by a preponderance of the evidence that the demand for Apple's accused products is alone motivated by the patented invention, then you may award damages based on the entire value of those accused products.

(2/24/15 AM (Jury Instructions) 62:9–17, Dkt. No. 521.) First, Smartflash did not prove, through the evidence that it presented, that *the* demand for Apple's accused products is alone motivated by the patented features. Second, the Court did not distinguish between the sub-population or

---

[4] Smartflash acknowledges this: "To be sure, Smartflash isolated the value of this incremental improvement over prior or non-infringing modes in its calculation of its ultimate royalty rate . . . ." (Pl.'s Mot. at 6 n.7, Dkt. No. 597 (emphasis added).)

12

sub-market as Smartflash suggests. Furthermore, not only did Smartflash emphasize the value of the entire product, but the instruction indicated that the jury may do so as well. Given the Federal Circuit's emphasis on tying the royalty base to the patented components only, this instruction was misguided, and in this limited instance, when combined with the above, justifies a new trial on damages.

### B. Smartflash's Alternative Royalty Calculation

First (and most importantly), Smartflash's alternative royalty calculation cannot save the skewed damages horizon that was created by Smartflash's primary model. Second, the alternative royalty calculation has its own flaws. For example, none of the survey respondents who answered "yes" to the "alone motivate" question were even asked the "percent value" question. (2/17/15 PM Trial Tr. (Mills) 154:3–8, Dkt. No. 514). Yet, Mills assumed these same people—people who Smartflash now argues attributed 100% of the iPhone's value to the patented invention, *see* (Pl.'s Reply at 1, Dkt. No. 601)—attributed an arbitrary value (that was not 100% of the value) to the patented invention. (2/17/15 PM Trial Tr. (Mills) 154:5–8, Dkt. No. 514); (PX 223). This assumption by Mills was based on no evidence presented, and Wecker, who designed the survey, agreed that this specific valuation was not possible based on the survey question he designed. (2/17/15 PM Trial Tr. (Wecker) 100:9–16).

### IV. Order

First, consistent with the Court's prior ruling, the Court hereby **ORDERS** that a new trial only on the issue of damages is **GRANTED**. Accordingly, the jury's verdict finding damages of $532,900,000.00 is **SET ASIDE** and **VACATED**. The Court hereby **ORDERS** that jury selection for a new trial concerning the issue of damages be re-set for **Monday, November 2, 2015, at 9:00 a.m.** in Tyler, Texas. The Court **ORDERS** that the parties meet and confer and

13

submit a joint proposed Docket Control Order regarding such new damages trial within five (5) days of the date of this Order.

Second, the Court **DENIES-IN-PART** Plaintiff's Motion for Reconsideration of the Court's July 7, 2015, New Trial Order (Dkt. No. 581) to the extent that it asks this Court to reverse its prior ruling or to certify its new trial motion for interlocutory appeal. (Dkt. No. 597.) However, the Court **GRANTS-IN-PART** Plaintiff's Motion for Reconsideration to the extent that Smartflash requests the following relief: "Smartflash requests, consistent with Judge O'Malley's suggestion at oral argument on Apple's appeal of its Motion to stay, that the Court bifurcate those final liability determinations from the still-required damages proceedings (including proceedings related to any subsequent ongoing royalty or injunction) such that the Federal Circuit can quickly reach ultimate resolution of those highly disputed, final . . . aspects of the case (including subject matter eligibility under 35 U.S.C. § 101)." (Pl.'s Resp. at 13, Dkt. No. 597.)

Third, in this limited context and in order to preserve the Court's resources in this particular case, the Court will seriously entertain a motion to stay the new trial for damages if one of the parties chooses to promptly pursue such an appeal in accordance with 28 U.S.C. § 1292(c)(2).

Finally, having considered Smartflash's motion for reconsideration, the Court feels that in this limited context a more reasoned explanation of its prior Order Granting a New Trial is warranted and therefore **VACATES** the Court's prior ruling and replaces it with this more reasoned opinion.

### V. Conclusion

Ultimately the jury—not the Court—determines whether the combination of royalty base and royalty rate is reasonable in this context. However, this does not mean that a party can

include the complete product revenue in the royalty base if such an inclusion is not supported by the evidence. If Smartflash seeks to invoke the evidentiary benefit described above, the Court believes that Smartflash must reliably show the "higher degree of proof" required by the Federal Circuit: proof that Smartflash's patent "alone drives the market for [those devices]." Smartflash's unreliable proof that the patented invention alone drives some subsidiary portion of the market is not enough. It is not nearly enough to avoid the skewed damages which *Ericsson* warned against and which regrettably manifested themselves in the original jury verdict returned in this case.

**So ORDERED and SIGNED this 2nd day of September, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

15