# Exhibit B

1

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF TEXAS
 3                  MARSHALL DIVISION
 4
 5   NETLIST, INC.,                )
                                   )
 6              Plaintiff,         )
                                   )
 7         v.                      )
                                   )
 8   SAMSUNG ELECTRONICS CO., LTD, )
     et al.,                       )
 9                                 )
                Defendants.        )   Civil Case No.
10                                 )   2:22-cv-00293-JRG
     _____)   (Lead Case)
11                                 )
     NETLIST, INC.,                )
12                                 )
                Plaintiff,         )
13                                 )
           v.                      )
14                                 )
     MICRON TECHNOLOGY TEXAS, LLC, )
15   et al.,                       )
                                   )
16              Defendants.        )   Civil Case No.
                                   )   2:22-cv-00294-JRG
17   _____)   (Member Case)
18
19                   CONFIDENTIAL
20        TRANSCRIPT OF REMOTE PROCEEDINGS
21     BEFORE SPECIAL MASTER JUDGE DAVID FOLSOM
22             FRIDAY, JANUARY 5, 2024
23
     Reported by:
24   Lena Mescall, CSR No. 13018, RPR
     Job No. 6388749
25   PAGES 1 - 98
```

CONFIDENTIAL

2

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF TEXAS
 3                  MARSHALL DIVISION
 4
 5    NETLIST, INC.,                )
                                    )
 6              Plaintiff,          )
                                    )
 7          v.                      )
                                    )
 8    SAMSUNG ELECTRONICS CO., LTD, )
      et al.,                       )
 9                                  )
                Defendants.         )    Civil Case No.
10                                  )    2:22-cv-00293-JRG
      _____)    (Lead Case)
11                                  )
      NETLIST, INC.,                )
12                                  )
                Plaintiff,          )
13                                  )
            v.                      )
14                                  )
      MICRON TECHNOLOGY TEXAS, LLC, )
15    et al.,                       )
                                    )
16              Defendants.         )    Civil Case No.
                                    )    2:22-cv-00294-JRG
17    _____)    (Member Case)
18
19
20
21            TRANSCRIPT OF REMOTE PROCEEDINGS before
22    Special Master Judge David Folsom, beginning at
23    8:07 A.M. and ending at 10:05 A.M., on Friday,
24    January 5, 2024, by Lena Mescall, Certified Shorthand
25    Reporter No. 13018, RPR.
```

CONFIDENTIAL

3

1    REMOTE APPEARANCES BEFORE SPECIAL MASTER JUDGE FOLSOM:

2

3    FOR THE PLAINTIFF:

4         McKOOL SMITH, P.C.

5         BY:   JENNIFER L. TRUELOVE, ESQ.
                SAMUEL F. BAXTER, ESQ.

6         104 East Houston Street, Suite 300

7         Marshall, Texas 75670

8         903.923.9000

9         jtruelove@mckoolsmith.com
          sbaxter@mckoolsmith.com

10

11

12        IRELL & MANELLA

13        BY:   JASON G. SHEASBY ESQ.
                STEPHEN M. PAYNE, ESQ.

14              ISABELLA CHESTNEY, ESQ.
                MICHAEL W. TEZYAN, ESQ.

15              DAVID Z. KAHN, ESQ.

16        1800 Avenue of the Stars, Suite 900

17        Los Angeles, California 90067

18        310.203.7128

19        jsheasby@irell.com
          spayne@irell.com

20        ichestney@irell.com
          mtezyan@irell.com

21        dkahn@irell.com

22

23

24

25

CONFIDENTIAL

4

1    FOR THE DEFENDANT SAMSUNG ELECTRONICS CO. LTD:

2        FISH & RICHARDSON P.C.

3        BY:  RUFFIN B. CORDELL, ESQ.
             MICHAEL J. McKEON, ESQ.

4             LAUREN A. DEGNAN, ESQ.
             DANIEL A. TISHMAN, ESQ.

5             LEONARD DAVIS, ESQ.
             MATTHEW COMPTON

6        1000 Maine Avenue, SW

7        Washington, DC 20024

8        202.783.5070

9        cordell@fr.com
         mckeon@fr.com

10       degnan@fr.com
         tishman@fr.com

11       ldavis@fr.com

12

13       GILLAM & SMITH, LLP

14       BY:  MELISSA SMITH, ESQ.

15       303 South Washington Avenue

16       Marshall, Texas 75670

17       903.934.8450

18       melissa@gillamsmith.com

19

         O'MELVENY & MYERS

20       BY:  AMY R. LUCAS, ESQ.

21       1999 Avenue of the Stars, 8th Floor

22       Los Angeles, California 90067

23       310.246.6784

24       alucas@omm.com

25

CONFIDENTIAL

5

```
1    FOR THE DEFENDANT MICRON TECHNOLOGY TEXAS, LLC:

2         WINSTON & STRAWN LLP

3         BY:  MICHAEL R. RUECKHEIM, ESQ.

              RYUK PARK, ESQ.

4         255 Shoreline Drive, Suite 520

5         Redwood City, California 94065

6         MRueckheim@winston.com

          RPark@winston.com

7

8         HALTOM & DOAN

9         BY:  DARBY V. DOAN, ESQ.

10        6500 Summerhill Road, Suite 100

11        Texarkana, Texas 75503

12        903.255.1000

13        ddoan@haltomdoan.com

14

15

16   ALSO PRESENT:  Will Nilsson

17

18

19

20

21

22

23

24

25
```

CONFIDENTIAL

6

1                         I N D E X

2    WITNESS          DIRECT    CROSS    REDIRECT    RECROSS

3                              (None)

4

5

6    EXHIBITS

7    NUMBER          MARKED AND RECEIVED

8                              (None)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL

7

1          REPORTED REMOTELY FROM IRVINE, CALIFORNIA;

2          FRIDAY, JANUARY 5, 2024, 8:07 A.M. TO 10:05 A.M.

3

4          SPECIAL MASTER FOLSOM:  Well, I think it'll be

5     helpful -- and perhaps you've already given the -- Madam

6     Court Reporter benefit of your name and who you

7     represent -- but I think it would be helpful to go

8     around the room and provide an introduction and which

9     party you represent.  Mr. Nilsson, Will Nilsson, is

10    appearing -- for those of you were not at the initial

11    counsel-only session, Will, former law clerk for

12    Judge Gilstrap and an associate of Jackson Walker -- he

13    is assisting me with this matter.

14          So with that, I guess, we can start with

15    introductions from Plaintiff, and then we will go to the

16    two Defendants.  And then I have a few comments, then we

17    will start the work of the day.

18          MS. TRUELOVE:  Thank you, Your Honor.

19          Jennifer Truelove on behalf of the Plaintiff,

20    Netlist.  Joining me today is Mr. Jason Sheasby,

21    Sam Baxter, Stephen Payne, Michael Tezyan, Isabella

22    Chestney, and David Kahn.

23          We are ready to proceed.

24          SPECIAL MASTER FOLSOM:  Very well.

25          MS. SMITH:  Your Honor, Melissa Smith, on

CONFIDENTIAL

8

1   behalf of Samsung.  I'm joined by Mr. Mike McKeon,

2   Mr. Ruffin Cordell, Ms. Lauren Degnan, Mr. Daniel

3   Tishman, and Mr. Leonard Davis.  I think I got everybody

4   in.  We're ready to proceed, Your Honor.

5           MR. CORDELL:  And just one addition.  I think

6   we have Amy Lucas from O'Melveny on as well.

7           SPECIAL MASTER FOLSOM:  Very well.

8           Additional introductions?

9           MR. RUECKHEIM:  Mr. Doan, do you want me to do

10  it for Micron?

11          SPECIAL MASTER FOLSOM:  Yes, please.

12          MR. RUECKHEIM:  Mike Rueckheim for Micron

13  Defendants.  With me is Mr. Doan and Mr. Park.

14          SPECIAL MASTER FOLSOM:  Very well.

15          Well, welcome, everyone.  For the benefit of

16  the court reporter, at least on my screen, you don't

17  have a name appearing.  So it might be helpful, for

18  those of you that are presenting motions, responses,

19  that you identify yourself for the record.

20          Madam Court Reporter, if you have difficulty

21  understanding any of us, don't hesitate to interrupt and

22  let us know.  I appreciate everyone attending today.

23          We are here pursuant to a couple of orders

24  entered by Judge Gilstrap, the initial order

25  December 22nd of 2023, appointing me special master to

1    oversee a group of pending discovery motions.  And then

2    a second order was entered January 2nd of 2024, adding

3    some additional motions to the list.  I appreciate your

4    efforts in trying to narrow the issues.  I received

5    yesterday afternoon the joint status report, sort of,

6    read like no one wanted to miss another opportunity to

7    brief a little more.

8            So in any event, I appreciate those efforts.  I

9    think I have a feeling of the -- feel for the issues

10   that are in the case.  I trust the joint status report

11   has been filed of record; is that correct?  If not, are

12   you anticipating -- anticipating filing that joint

13   status report?

14           MR. SHEASBY:  Your Honor, we will file it.  I

15   don't know --

16           SPECIAL MASTER FOLSOM:  I think it needs to --

17   since there are a number of agreements that are set

18   forth, I would recommend that the status report be

19   filed.  I don't know if it needs to be filed under seal

20   or not.  I am open to thoughts in that regard.  But I

21   think it needs to be part of the record in some fashion,

22   either attached to the transcript in this case or filed

23   among the papers of these matters.

24           Any thoughts in that regard?

25           MR. SHEASBY:  Jason Sheasby for Netlist.  We

1   agree, Your Honor.

2          MR. CORDELL:  And Ruffin Cordell for Samsung.

3   We agree.

4          MR. RUECKHEIM:  Mike Rueckheim for Micron.

5   Same.

6          SPECIAL MASTER FOLSOM:  Well, thank you.  It's

7   my understanding that -- make sure I sort of understand

8   the time frame under which I am operating that there's a

9   Netlist-Micron case scheduled for the 22nd that's second

10  on the trial order.  But my understanding, the motions

11  involved in the referral are not implicated in that

12  case; is that correct?

13         MR. SHEASBY:  Jason Sheasby for Netlist.

14  That's correct, Your Honor, as far as we are concerned.

15         SPECIAL MASTER FOLSOM:  Very well.  Then

16  needless to say, I will use all due speed to try to have

17  out an order on these matters.  I just wanted to make

18  sure that I was correct on my understanding of the

19  motions as they relate to the case on the January 22nd

20  docket.

21         I don't have any particular preference on the

22  order these motions are addressed.  Have the parties

23  given any thought to how the motions will be addressed?

24  Can some of them be grouped?  For those of you that were

25  not on the counsel-only Zoom session back in December, I

CONFIDENTIAL

11

1    brought up the topic of time limits, and I was assured

2    that it would not be necessary, that everyone would use

3    all due speed.  Perhaps I should have probed a little

4    more fully about what that means.  I would hope we can

5    address these motions by noonish Central Time, but,

6    again, I'll try to be liberal.  I thought, unlike the

7    briefing schedule, I would allow for motion response and

8    a brief reply, unless the parties have agreed to the

9    contrary.

10            MR. SHEASBY:  Your Honor, this is Jason Sheasby

11    for Netlist.

12            It seems that there are a relatively small

13    number of Micron motions and a substantially larger

14    number of Samsung motions.  I wonder if, in light of

15    that, we should take up Micron's first, so that they

16    don't have to attend a full hearing, if they have other

17    things to do today.

18            SPECIAL MASTER FOLSOM:  That's agreeable with

19    me, and I actually gave some thought to that.  But my

20    guess, though, you want to stay for the full show, so to

21    speak.  But we can take those up first and then allow

22    Counsel in that part of the case to depart, if you wish,

23    or you're welcome to stay, one of the two.

24            By the way, at least for the purpose of the

25    record, I had a couple of calls from a gentlemen wanting

CONFIDENTIAL

12

1    to attend the hearing, wanting the Zoom link.  That's

2    why Mr. Nilsson circulated the email to the parties.

3    And I understand almost everything is subject to a

4    protective order.  So I explained to him yesterday -- he

5    called back -- that in all likelihood, the entire

6    hearing would be closed.  I just at least wanted to

7    report that to the parties.  That's what generated the

8    email from Mr. Nilsson.  I had an inquiry in that

9    regard.

10           I don't -- needless to say, I don't know if we

11   have any corporate representatives.  They're, of course,

12   welcome subject to whatever provisions are in place on

13   the protective order.

14           Counsel for Micron, is it agreeable with you to

15   start with your group of motions or motions that you're

16   responding to?

17           MR. RUECKHEIM:  Mike Rueckheim for Micron.

18   Absolutely.  I'm happy to.

19           SPECIAL MASTER FOLSOM:  Very well.  Why don't

20   we start the work of the day then.

21           MR. RUECKHEIM:  Okay.  Mike Rueckheim for

22   Micron again.

23           I'm assuming, Jason, you want to go in order of

24   the docket?  So your motion first.

25           MR. SHEASBY:  Okay.  So I believe the first one

CONFIDENTIAL

13

1    is our motion to compel interrogatory responses.

2              MR. RUECKHEIM:  I have Docket 220.

3              SPECIAL MASTER FOLSOM:  Yeah.  In that regard,

4    I think it would be helpful, as the day goes on or the

5    morning goes on, I know a number of these motions are --

6    have been on the docket for a number of months.  A

7    number of the motions were filed before the expert

8    reports were filed.  And maybe that's all been addressed

9    by the joint status report, but I think it would be

10   helpful, if there's an interplay between the expert

11   reports or rebuttal reports of these motions, that that

12   be addressed.

13             MR. SHEASBY:  Thank you, Your Honor.

14             Yes.  For the -- with the Court's permission,

15   we'll start with Docket 220 --

16             SPECIAL MASTER FOLSOM:  220.  Okay.

17             MR. SHEASBY:  -- which is Netlist's motion to

18   compel production of Micron documents relevant to

19   damages.

20             SPECIAL MASTER FOLSOM:  You may go forward.

21             MR. SHEASBY:  I won't be arguing that.

22             SPECIAL MASTER FOLSOM:  Okay.  Well --

23             MR. SHEASBY:  Mr. Payne, who's -- I believe

24   it's -- do you have a list of who is arguing?

25             MR. PAYNE:  Ms. Chestney will be arguing that

1    for Netlist.

2              MS. CHESTNEY:  Yes.  That will be me.

3              May I proceed, Your Honor?

4              SPECIAL MASTER FOLSOM:  Yes, you may.

5              MS. CHESTNEY:  Thank you.  Isabella Chestney

6    for Plaintiff Netlist.

7              So, Your Honor, this motion is basically just a

8    dispute over four different categories of documents that

9    Netlist is seeking to have Micron produce that it hasn't

10   yet produced.  I am going to start with the third

11   category of documents, because I think that's the most

12   outstanding of Netlist's request.  So, essentially, what

13   Netlist is seeking in this request is just that Micron

14   produce records showing the locations where it designed

15   and developed the accused products and the locations

16   where it tracks certain features of the accused

17   products.

18             At this point, we are basically just seeking

19   that Micron produce records of where it has qualified

20   the accused products --

21             SPECIAL MASTER FOLSOM:  Where what -- I didn't

22   understand that last --

23             MS. CHESTNEY:  Sorry.  So where a qualification

24   has occurred for the accused products.  So qualification

25   is basically just where Micron ships the -- ships

CONFIDENTIAL

15

1    samples of the accused products for testing to its

2    customers.

3            SPECIAL MASTER FOLSOM:  And why is that kind of

4    record relevant to the issues in the case?

5            MS. CHESTNEY:  Well, so, Your Honor, the

6    parties had a similar dispute in the previous case or

7    the parallel case between Netlist and Micron in the

8    Eastern District of Texas.  And there the Court ordered

9    the production of the qualification records already.

10   And Micron produced those records in that case as the

11   accused products there.

12           SPECIAL MASTER FOLSOM:  Is that Judge Payne's

13   order?  Is that correct?

14           MS. CHESTNEY:  Yes.  And, essentially, the

15   locations where qualifications occur are relevant

16   because they go to whether or not a product might

17   have -- a sale of a product might have U.S. nexus or

18   whether there was infringing activity occurring in the

19   United States.  There's Federal Circuit case law,

20   Carnegie Mellon v. Marvell, holding that the locations

21   of qualifications and -- many different activities

22   related to the sale of a product are relevant to

23   establishing a U.S. nexus of infringing activities or

24   sales.

25           So, essentially, the Court in the Eastern

CONFIDENTIAL

16

1    District of Texas has already determined that these

2    documents are relevant.  They've ruled that those

3    documents are relevant there and Micron produced them.

4    And Micron hasn't given us a reason why it would be more

5    burdensome in this case or less relevant in this case to

6    produce the same documents for the accused products

7    here.  So that's basically, at this point, what we're

8    seeking for that request.

9            SPECIAL MASTER FOLSOM:  Okay.  I think it'd be

10   helpful, so we have with this all in close context in

11   the record, to have a response on that issue, and then

12   you can reply briefly.  Who will be --

13           MR. RUECKHEIM:  Mike Rueckheim for Micron.

14           I wanted to jump in.  We actually talked

15   about -- it seems like the issues with motion Docket 220

16   have now boiled down to or narrowed down to

17   qualification documents as Ms. Chestney said.  We had a

18   meet-and-confer about this the other day, and there's a

19   discussion that, in our prior case, Micron produced an

20   intel spreadsheet that had certain qualification

21   information.  And we agreed to produce that information

22   here.  Looks like we didn't produce it for one of the

23   accused products, and so we will produce it.

24           SPECIAL MASTER FOLSOM:  Okay.  Does that take

25   care of this issue?

CONFIDENTIAL

17

1          MS. CHESTNEY:  It does, Your Honor.

2          SPECIAL MASTER FOLSOM:  Very well.  Let's go on

3    to the second issue then.

4          MS. CHESTNEY:  Okay.  So for that one, I'm

5    going to be going to the fourth category of documents

6    because, likewise, that's a category the parties have

7    disputed more in the recent meet-and-confer.  So

8    similarly for that one, Netlist has already received the

9    categories of documents that it requests from Micron.

10   And they're listed on page 5 and 6 of the motion.  What

11   Netlist is seeking is just that -- so, basically, Micron

12   has produced these categories of documents, but it

13   hasn't produced a complete record of them.  So they have

14   shown some of the records, but they haven't produced --

15         SPECIAL MASTER FOLSOM:  What do you mean not a

16   complete record?  What do you mean by that?

17         MS. CHESTNEY:  So, basically, they produced,

18   for example, CNBU, which is a computer networking

19   business unit -- they produced, for example, roadmap --

20   roadmaps, product architecture documents, business

21   plans, quarterly and annually.  They produced some of

22   those, showing that they keep records of these kinds of

23   things, but they haven't produced them for all of the

24   accused products.  So they haven't produced a complete

25   set of them for --

CONFIDENTIAL

18

```
1              SPECIAL MASTER FOLSOM:  So it's not a certain

2    period of time.  It's a category of accused products

3    that haven't been produced?

4              MS. CHESTNEY:  Yes.

5              SPECIAL MASTER FOLSOM:  Okay.  What's the

6    response on that?

7              MR. RUECKHEIM:  Mike Rueckheim again for

8    Micron.

9              Your Honor, so this actually goes back to

10   exactly what Ms. Chestney had mentioned previously.  The

11   parties had disputed a large number, very large number

12   of discovery disputes in our first litigation, the one

13   going to trial in January in a couple of weeks.  And

14   Judge Payne put reasonable limits upon the discovery

15   request.  We put in our opposition, just the page --

16   pages of document requests and request for information

17   that Netlist had asked for and Judge Payne ordered

18   specifically.  And it looks like it's Docket 123, is

19   that order in our Case 2 or 3 exactly what Micron should

20   produce, and we did produce that, as Ms. Chestney said.

21             SPECIAL MASTER FOLSOM:  So you produced in

22   Case 2 what you were ordered to produce in Case 1;

23   correct?  Is that what you're saying?

24             MR. RUECKHEIM:  Exactly.  Correct, Your Honor.

25             SPECIAL MASTER FOLSOM:  So you're saying the
```

CONFIDENTIAL

19

1    additional request is overbroad?

2            MR. RUECKHEIM:  Overbroad.  They've had witness

3    testimony.  These are really related to marketing, I

4    think, topics -- witness testimony on marketing topics.

5    They've had our technical document production.  We

6    produced everything the Court, in the prior case, asked

7    us to produce.  And what they are asking for now is

8    overbroad.

9            SPECIAL MASTER FOLSOM:  Very well.  Why is the

10   additional information required if they have complied

11   with Judge Payne's order in Case 1, I guess, is my

12   question?

13           MS. CHESTNEY:  Thank you, Your Honor.

14           So, basically, if Micron -- we're really

15   looking for a statement that either Micron, all the

16   documents that have been produced -- sorry -- are

17   either -- either have been produced by Micron at this

18   point in time relevant to the accused products.  We are

19   just trying to make sure they haven't withheld any.  So,

20   basically, they have produced the documents that are

21   listed in that -- in the motion, but it looks like, to

22   us, there are documents missing related to the accused

23   products.  But if Micron attests that they have, in

24   fact, produced all of those documents relevant to the

25   accused products, as Judge Payne ordered in the first

CONFIDENTIAL

20

1   case -- and that includes all marketing documents

2   related to the accused products, because we think those

3   are pretty plainly relevant for showing the benefits of

4   the accused products, sales of the accused the products,

5   things like that.  So if they have produced all of those

6   for the accused products, then -- then the motion is

7   resolved to that extent, but --

8           SPECIAL MASTER FOLSOM:  Just --

9           MS. CHESTNEY:  It's just not totally clear to

10  us.

11          SPECIAL MASTER FOLSOM:  So, Micron, have you

12  produced all the documents consistent with Judge Payne's

13  order in Case No. 1?

14          MR. RUECKHEIM:  Absolutely, Your Honor.

15          SPECIAL MASTER FOLSOM:  Okay.  So does that

16  resolve this one?

17          MS. CHESTNEY:  Yes, it does, Your Honor.

18          SPECIAL MASTER FOLSOM:  Very well.  Good.  We

19  are making progress.

20          MS. CHESTNEY:  And, actually, the other two can

21  probably also proceed fairly quickly.  The other two

22  requests, Requests No. 1 and 2, because for those, we

23  are also similarly kind of just looking for a definitive

24  statement from Micron that either they have, indeed,

25  produced all of the shipment records.  So the first

21

1    request relates to shipment records of the accused

2    products, and we -- so Judge Payne held in the first

3    case that the shipment records of any products that pass

4    through the United States are relevant, as well as

5    products that end up in the United States.  And so

6    Micron stated in their motion that they went through

7    their records to determine that there are no records of

8    any products that, for example, ended up in South

9    America and were shipped from somewhere else but passed

10   through the United States.  And so we are either looking

11   for production of evidence that that's the case or

12   looking for just a clear statement from them that there

13   are indeed no records and they have investigated and

14   determined that.

15        SPECIAL MASTER FOLSOM:  Response?

16        MR. RUECKHEIM:  Your Honor, once again, Netlist

17   is asking for a whole host of different issues above and

18   beyond what Judge Payne ordered produced in the last

19   case.  As Ms. Chestney said, we did.  They -- now

20   Netlist has another question.  Do you ship any products

21   into the United States where shipment -- start with the

22   United States.  The ones where Judge Payne asked us to

23   produce, we answered it.  We answered it in our motion.

24   We are fine answering that --

25        SPECIAL MASTER FOLSOM:  So your representation

1  is you've produced in Case 2 what Judge Payne ordered in

2  the Case 1; is that correct?

3          MR. RUECKHEIM:  Correct, Your Honor.

4          SPECIAL MASTER FOLSOM:  Is that satisfactory,

5  or do we need additional --

6          MS. CHESTNEY:  Just to clarify, I guess, what

7  we would be wanting to make sure of is that they were

8  not withholding any records that show accused products

9  that were shipped to somewhere in North or South America

10  that were not shipped to the United States, but that

11  passed through the United States.  So that wasn't

12  directly addressed in Judge Payne's previous order, but

13  we believe those are relevant, because there's case law

14  showing that products that pass through -- that are

15  imported to the United States temporarily go to the

16  damages.

17          SPECIAL MASTER FOLSOM:  So if I understand,

18  basically, there's a concern that those -- that category

19  of documents was not ordered by Judge Payne in Case

20  No. 1; is that correct?  Is that what your concern is

21  and that you want to make sure that in Case 2 you have

22  those documents?

23          MS. CHESTNEY:  I think the issue wasn't

24  explicitly addressed previously, and so we want to make

25  sure that there aren't accused products that fit that

CONFIDENTIAL

23

1    category that are missing here.

2            SPECIAL MASTER FOLSOM:  Response?

3            MR. RUECKHEIM:  Your Honor, I think what

4    Ms. Chestney is asking for is the same information we

5    just discussed in which we answered in our motion

6    opposition that Netlist alleges that it is looking for

7    how each product was routed to determine if products

8    were shipped to the United States, ███████████████████

█    ████████████████████████████████████████████████

█    ████████████████████████████████████████████████

█    █████████████████████████████████    █████████████

█    ██████████████████████████████████████████

█    ████    ████████████████████████████████████

█    ████████████████████████████████████████████

█    █████████████████    ██████████████████████

16           SPECIAL MASTER FOLSOM:  Yeah.  Well, with that

17   representation, I'm inclined to say this issue is

18   resolved, but is that correct?

19           MS. CHESTNEY:  Your Honor, on Netlist's end, if

20   Micron states that it's performed the investigation and

21   there are no such records in existence, then that's

22   resolved.

23           SPECIAL MASTER FOLSOM:  Is that the

24   representation?

25           MR. RUECKHEIM:  I referenced the cases,

CONFIDENTIAL

24

1   Your Honor, and what I read from the motion.  So sitting

2   here, it said that we performed the investigation.  ■

■   ████████████████████████████████████████████████████

■   ████████████████████████████████████████████████████████

5   Whether there's a record of that, if some engineer wrote

6   something on a napkin, I don't know.  But we performed

7   that investigation and we can --

8           SPECIAL MASTER FOLSOM:  I think I heard enough

9   on this.  I'll enter an order based on the comments and

10  the motion and responses.

11          So does that take care of this category of

12  motion issues?

13          MS. CHESTNEY:  Yes, Your Honor, it does.

14          Thank you.

15          SPECIAL MASTER FOLSOM:  What do we now go to?

16          MS. CHESTNEY:  There is one more category,

17  which is documents showing the technical benefits of the

18  PDA features, just to make sure we covered everything.

19  But that's basically the same discussion as the last

20  one.  So as long as Micron attests that there are no

21  further documents that it hasn't produced relating to

22  the technical benefits of the PDA features of the

23  accused products, then the motion is resolved.

24          SPECIAL MASTER FOLSOM:  Response?

25          MR. RUECKHEIM:  Okay.  For that, Your Honor, as

CONFIDENTIAL

25

1   well, we responded in our opposition that we performed

2   the investigation again.  We are not withholding any

3   documents, and there's nothing left to compel.

4          SPECIAL MASTER FOLSOM:  Very well.

5          MR. RUECKHEIM:  The documents have been

6   produced to the extent they exist.

7          SPECIAL MASTER FOLSOM:  With that

8   representation, does that take care of this issue?

9          MS. CHESTNEY:  It does, Your Honor.

10          SPECIAL MASTER FOLSOM:  Okay.  I appreciate

11   that.

12          Where do we go now?  Netlist's motions or

13   Micron's motions?

14          MR. RUECKHEIM:  Netlist Docket 221.

15          SPECIAL MASTER FOLSOM:  Okay.

16          MR. PAYNE:  And, Your Honor, for Netlist,

17   Mr. Kahn will argue this motion.

18          SPECIAL MASTER FOLSOM:  Very well.

19          MR. KAHN:  Thank you, Your Honor.  David Kahn

20   on behalf of Plaintiff Netlist.

21          I think it's likely this motion will also be

22   dealt with pretty quickly because Micron has stated in

23   its briefing that it will supplement each of the rogs.

24   The only issue remaining is that they haven't

25   committed -- they filed those briefs already, days ago,

26

1    and haven't committed to a specific date for

2    supplementation and specifically one that would be

3    before depositions.

4              SPECIAL MASTER FOLSOM:  Yeah.  What's a

5    reasonable date for Micron to supplement in that regard?

6              MR. RUECKHEIM:  Your Honor, I'm thinking two

7    weeks.  We've had some holiday issues, and I think the

8    next round of depositions is really in February.  So we

9    are shooting for --

10             SPECIAL MASTER FOLSOM:  Can that be done by two

11   weeks from today?

12             MR. RUECKHEIM:  Yes, Your Honor.

13             SPECIAL MASTER FOLSOM:  Is that satisfactory?

14             MR. KAHN:  I believe there may be a

15   potential -- the expert deposition dates aren't pinned

16   down yet.  There may be a potential that either a

17   Netlist expert or Micron expert is deposed before then.

18             SPECIAL MASTER FOLSOM:  Well, then, can you

19   commit before the expert witness depositions to

20   supplement then?

21             MR. RUECKHEIM:  Well, they are not pinned down

22   yet, Your Honor.  It can be tomorrow, but

23   January 19th -- I don't think there's going to be

24   anything before January 19th.  I don't believe Counsel

25   has identified any, but we are happy to meet and confer,

CONFIDENTIAL

27

1   of course.

2           SPECIAL MASTER FOLSOM:  Well, why don't I

3   suggest this:  No later than January 19th, if by -- if

4   an expert witness deposition is scheduled before the

5   19th and you cannot agree to supplement, then inform me,

6   and I will take the necessary action to make sure

7   everyone feels comfortable going forward with the expert

8   witness deposition.  Is that agreeable?

9           MR. RUECKHEIM:  Understood, Your Honor.

10           MR. KAHN:  Yes, Your Honor.  Thank you.

11           SPECIAL MASTER FOLSOM:  Okay.

12           MR. KAHN:  It may not be the next docket item,

13   but I think logically it makes sense to group this with

14   Docket 223.

15           SPECIAL MASTER FOLSOM:  Very well.

16           MR. KAHN:  Which is also a motion to compel

17   interrogatory responses.  So the issue with regard to

18   Interrogatory 5 and 6 overlaps with the -- with Docket

19   220.  It's the damages rog, and specifically we are

20   seeking the qualification information.  So I think as

21   long as Micron's response to the interrogatory in -- you

22   know, with the same information that it said it will

23   produce, then that should be resolved as well.  And then

24   the remaining ones, Micron --

25           SPECIAL MASTER FOLSOM:  Let's have a response

CONFIDENTIAL

28

1    first before we go to the next topic.

2              MR. RUECKHEIM:  For Micron, Your Honor, we

3    agree it should be completely resolved with regard to

4    the qualification issue we just discussed.

5              SPECIAL MASTER FOLSOM:  Very well.  Now, next.

6              MR. KAHN:  Thank you, Your Honor.

7              Then the remaining interrogatories, Micron also

8    committed to supplement so that just ties back to the

9    issue of timing, which we already addressed.  So if that

10   order applies to remaining interrogatories, then I think

11   we are okay.

12             SPECIAL MASTER FOLSOM:  Response?

13             MR. RUECKHEIM:  I need to look at each one,

14   but, yes, Your Honor, to the extent that we agree to

15   supplement our responses for the interrogatories at

16   issue in Docket No. 223 then, yes, the January 19th

17   date, we are trying to supplement all of them by that

18   same date.

19             SPECIAL MASTER FOLSOM:  Very well then.  Then

20   all supplementation should take place by January 19th by

21   5:00 P.M. Central Time.

22             MR. RUECKHEIM:  Understood, Your Honor.

23             SPECIAL MASTER FOLSOM:  Very well.

24             MR. KAHN:  Thank you, Your Honor.

25             MR. RUECKHEIM:  I think the next, Your Honor,

1   is Micron's motion Docket 222, and Mr. Park will be

2   addressing that one.

3           MR. PARK:  Thank you, Your Honor.

4           This is Ryuk Park for Defendant Micron.  So the

5   issue in Docket 222 is Netlist's production or lack of

6   production of expert reports from prior litigations

7   against a company called SK Hynix that involved either

8   the same or related patents, the same or related accused

9   products, or the same experts.  And Netlist has

10  responded in its opposition that it has produced some of

11  those reports, but it isn't clear from their responses

12  whether they have -- they are agreeing to produce what

13  we are requesting or whether they are opposing some --

14  at least a portion of our request.

15          SPECIAL MASTER FOLSOM:  And I'm trying to

16  remember:  Did Judge Payne address this issue in a

17  previous case also?

18          MR. SHEASBY:  He did, Your Honor.

19          MR. PARK:  Yes.

20          SPECIAL MASTER FOLSOM:  Very well.  Who is

21  responding for Plaintiff?

22          MR. PAYNE:  I'll address this motion,

23  Your Honor.  Stephen Payne for Plaintiff.  I don't

24  believe there's a dispute between the parties here.

25  This issue is third-party confidential information.  So

CONFIDENTIAL

30

1    in the last case with Micron, Judge Payne did order a

2    production of expert reports for experts who were common

3    between this litigation and the past litigation.  So

4    essentially experts who are retained by Netlist in both.

5    And we are willing to produce that same scope of reports

6    here, which I believe is all that Micron asking for.

7    But the issue is that those reports contain third-party

8    confidential information, including of the Defendants in

9    those cases, SK Hynix and others.  And in the last case,

10   Judge Payne had ordered that, where Micron was seeking

11   reports with third-party confidential information, that

12   Micron obtain -- first obtain consent from those third

13   parties.  And we haven't gotten any indication that they

14   have obtained those consents in this case.  If they give

15   us that indication, we are willing to produce the same

16   scope of reports, but we can't do so under the

17   protective orders in those cases until the third-party

18   confidentiality issue is resolved.

19           SPECIAL MASTER FOLSOM:  Very well.  Reply?

20           MR. PARK:  So, Your Honor, we've actually tried

21   to reach out to what we understand might be the outside

22   counsel for SK Hynix, but we have not received a

23   response.  So if at least Netlist can provide us with

24   the most recent contact information or the most accurate

25   information and to see if that is different from what we

CONFIDENTIAL

31

1    have so far in our records, that could expedite the

2    process.

3         SPECIAL MASTER FOLSOM:  Any reason why that

4    information couldn't be furnished?

5         MR. PAYNE:  No.  This, Your Honor, I think, is

6    the first request I've heard for that, but I see no

7    reason why we could not provide that information.

8         SPECIAL MASTER FOLSOM:  No later than a week

9    from today.

10        MR. PAYNE:  Yes, Your Honor.  I see no reason

11   why we couldn't do that.

12        SPECIAL MASTER FOLSOM:  For some reason this

13   doesn't -- probably what I will do is dismiss this

14   motion without prejudice.  If for some reason that

15   doesn't resolve this issue, you could always renew it.

16        MR. PARK:  Thank you.

17        SPECIAL MASTER FOLSOM:  Very well.  What's

18   next?

19        MR. RUECKHEIM:  The next -- moving along -- is

20   the Micron motion to strike untimely responses,

21   interrogatory responses, Docket 271.  And we just

22   received Netlist's response on this motion.  Just -- it

23   was one of the -- there's two motions left that have

24   recently been referred to Your Honor.  And so we

25   received their opposition, and we are preparing a reply.

32

1    And so for this motion, we propose submission of the

2    reply and submission of the arguments on the briefing.

3            SPECIAL MASTER FOLSOM:  Response, if one is

4    necessary?

5            MR. SHEASBY:  I am sorry, Your Honor.  Could

6    you say that again?

7            SPECIAL MASTER FOLSOM:  I said a response, if

8    required.

9            MR. SHEASBY:  Your Honor, if they get a reply,

10   we'd like to surreply, but we're certainly not going to

11   prevent them from --

12           SPECIAL MASTER FOLSOM:  I never saw the order

13   of Judge Gilstrap's briefing schedule.  So is that

14   allowed under his briefing schedule?  If not --

15           MR. RUECKHEIM:  It is, Your Honor.  Sorry to

16   interrupt.  This is a motion to strike.  Judge Gilstrap

17   puts limitations on discovery motions to compel.  But it

18   is a motion to strike.  Reply and surreply are allowed,

19   to my understanding.

20           SPECIAL MASTER FOLSOM:  Very well.  I will

21   allow that additional briefing.  And, I guess, we will

22   revisit this if it's not resolved by the briefing.  I

23   would encourage the parties to continue to try to

24   resolve this issue so we don't have to gather again, so

25   to speak.

33

 1          MR. RUECKHEIM:  The last, Your Honor, is

 2    Netlist motion, Docket 274.  So I don't believe briefing

 3    is closed on this issue either, although Micron has

 4    filed its response.

 5          MR. SHEASBY:  No, Your Honor.  This is a

 6    discovery motion.  So briefing is closed.  So this is

 7    ready for resolution.

 8          SPECIAL MASTER FOLSOM:  Well, what is the issue

 9    on this one?

10          MR. SHEASBY:  Yes, Your Honor.  So this is --

11    relates -- Madam Court Reporter, can I have the share --

12    can you allow me access to the share-screen feature,

13    please?

14          While that's happening, I will talk over it.

15    So a deposition was taken of a witness named Scott Cyr.

16    He's a 30(b)(6) witness.  There is -- there are patents

17    that are involved in the proceedings before this Court

18    that are also involved in IPR proceedings.  There were

19    some testimony in the -- in the depositions that is not

20    confidential that Samsung has declined to -- sorry --

21    Micron has declined to designate because it's

22    dissatisfied with our use of it in the IPR proceedings.

23    And so there are really two steps to this.  The first --

24          SPECIAL MASTER FOLSOM:  Are you talking

25    about -- I asked earlier -- in the provision of the

CONFIDENTIAL

34

1    protective order entered in this case that it can --
2    confidential matters cannot be used in other litigation;
3    is that correct?

4            MR. SHEASBY:  That is absolutely right.  We are
5    forbidden from using anything that's designated as
6    confidential, which is why we sought to de-designate it
7    as not confidential.

8            SPECIAL MASTER FOLSOM:  And why should it be
9    de-designated?

10           MR. SHEASBY:  Because it's not confidential,
11   Your Honor.  And the protective order does not allow you
12   to designate as confidential information that is not
13   confidential.  There is a --

14           SPECIAL MASTER FOLSOM:  But why is it
15   information that -- why is it not confidential?

16           MR. SHEASBY:  Yeah.  So they don't dispute that
17   the information is not confidential.  The information is
18   talking about the -- they don't dispute in their brief
19   that the information is not confidential.  They -- it's
20   talking about abstract concepts.  It's talking about
21   public -- excuse me.  It's talking about abstract --
22   there's abstract conversations about terms in the -- in
23   the terms that are used in the field and that there is
24   nothing in it that's confidential.  In fact, in their
25   opposition, they only identified one portion that is

1    confidential.  It's this portion on the screen on

2    Slide 9.

3            SPECIAL MASTER FOLSOM:  I couldn't -- maybe

4    there is those in the room that can read that.  I

5    cannot --

6            MR. SHEASBY:  Is that any better?

7            SPECIAL MASTER FOLSOM:  That's better.  So

8    basically you're taking the position they've

9    over-designated --

10           MR. SHEASBY:  This -- so there's two -- they

11   have two arguments.  One is a valid argument.  The first

12   argument is that we are re-asking questions that were

13   not related at all to the litigations in the District

14   Court for surreptitious use in the IPR PTAB proceedings.

15           SPECIAL MASTER FOLSOM:  So are you satisfied --

16           MR. SHEASBY:  That's a valid criticism.  The

17   answer is no.  The reason for that is because the

18   questions we are asking, because the patents that are

19   involved in the PTAB are also involved in the District

20   Court cases and there's validity challenges in both,

21   that there is -- there's just a nexus between the two.

22           So, for example, the '912 patent, which is

23   before Your Honor, talks about ranks.  We asked

24   questions about ranks.  They are not disputing that

25   those questions are -- those answers are

1    nonconfidential.  They are just saying it's unfair for

2    them to have asked those questions because they're going

3    to use it in the PTAB.  But that's the necessity of the

4    parallel track that Congress has created.  And so there

5    are, in essence, going to be instances in which

6    questions are relevant in both proceedings.  This is one

7    of those examples.

8           If they thought there was a problem, they could

9    have moved for a protective order and instructed the

10   witness not to answer.  But they didn't, because the

11   subject matter is directly overlapping.  And so the

12   question is, now that they haven't moved for a

13   protective order, the questions are in the record, can

14   you use a protective order improperly to keep something

15   nonpublic that you admit is not confidential?  In their

16   opposition, they admit every single question we want

17   de-designated as nonconfidential except this one,

18   Your Honor.

19          SPECIAL MASTER FOLSOM:  Sure.  Let's have a

20   response.

21          MR. RUECKHEIM:  Okay.  Your Honor, Mike

22   Rueckheim again for Micron.

23          First, Mr. Sheasby is incorrect that we cannot

24   dispute the testimony is confidential, and in our

25   opposition brief, which, I believe is Docket 303,

CONFIDENTIAL

1    included in Appendix A that broke down the lines of

2    deposition transcript and identified why certain

3    testimony is confidential.  And we also even put in

4    there as a potential compromise --

5          SPECIAL MASTER FOLSOM:  Tell me -- the

6    protective order -- explain that to me.

7          MR. RUECKHEIM:  Sorry, Your Honor, I missed the

8    first few words.

9          SPECIAL MASTER FOLSOM:  Why is this testimony

10   confidential under the protective order?  What is

11   your --

12         MR. RUECKHEIM:  So we included that in our

13   Appendix A.  We have the testimony in there, and then we

14   identify the certain lines by -- with the actual

15   testimony next to it why certain lines are confidential.

16   I can turn you -- I don't know if you have our

17   Appendix A for Docket 303 in front of you --

18         SPECIAL MASTER FOLSOM:  I have -- I have a lot

19   of paper in front of me.  So if you could perhaps put it

20   up on the screen, maybe that would be helpful.

21         MR. RUECKHEIM:  Give me one second, Your Honor.

22         MR. SHEASBY:  Mr. Rueckheim, I have it handy,

23   if you want me to pull it up for you, or you have it --

24         MR. RUECKHEIM:  I think I might have it on the

25   screen.  Is it on the screen now?

CONFIDENTIAL

38

1          MR. SHEASBY:  Yes.

2          SPECIAL MASTER FOLSOM:  Yes.

3          MR. RUECKHEIM:   Okay.  So this is the

4    Appendix A we filed with our motion opposition,

5    Your Honor.  And so what we have here is all of the

6    testimony, and this is our several pages.  And you can

7    see that Netlist has identified that they want to --

8    they are asking to de-designate.  And so for certain

9    testimony, we have agreed -- conditionally agreed --

10   I'll explain more about that in a second -- to

11   de-designate the testimony, such as, "My name is Scott

12   Cyr."  Here's his job title.  Here's how long he's been

13   working at Micron.

CONFIDENTIAL

39

██

██          ██

██

██                  ██

██

 6          For the most part, the testimony that we have

 7     not agreed to conditionally de-designate is only for

 8     internal Micron information.  But, Your Honor -- I'll

 9     drop the screen for a second -- the primary issue here,

10     though, is that the protective order in paragraph 5

11     prohibits use of documents produced in discovery for

12     anything other than the present litigation.  It's not --

13     it doesn't say "confidential document," "highly

14     confidential document."  The discovery procedures in

15     this court are to be used for this litigation only, and

16     if Mr. Sheasby --

17          SPECIAL MASTER FOLSOM:  You're saying it's not

18     only confidential documents, it's all documents,

19     testimony, et cetera?

20          MR. RUECKHEIM:  Exactly, Your Honor.  I think

21     the --

22          SPECIAL MASTER FOLSOM:  Yeah.

23          MR. RUECKHEIM:  -- I think the dispute between

24     the parties is Mr. Sheasby's opening brief saying this

25     is an Article III court and proceedings are public.  But

CONFIDENTIAL

40

1    we've cited in our opposition Texas cases -- and there's

2    other cases as well -- that discuss that discovery

3    procedures are different.  And the -- both relevant

4    quote that we saw was from this 99- -- 9,041,580.  It's

5    a number of the Defendant.  It's a weird case title.

6    But it says that Courts routinely distinguished

7    discovery materials from Article III public materials,

8    because they play no role in performance of Article III

9    functions.  And there is a -- if you -- if there was a

10   presumption that all these materials are public, the

11   civil discovery process will be made a lot more

12   complicated than what it is.

13         So what we have had in this case is

14   Mr. Sheasby, in several cases, has asked witnesses, who

15   have no idea what's going on in IPR -- and IPR is really

16   filed here by Samsung.  We have been acting in an

17   understudy role.  So Mr. Sheasby asked our witnesses

18   questions relating to IPR positions only.

19         SPECIAL MASTER FOLSOM:  Okay.  This was an

20   improper question, and so was there an objection, a

21   request from the discovery hotline motion, any sort of

22   motion practice, other than the motion presently

23   pending?

24         MR. RUECKHEIM:  No, Your Honor.  No.  And I

25   heard Mr. Sheasby say that.  My only response to that is

CONFIDENTIAL

41

1    that it really is just the dog wagging the tail.  You're

2    going to ask an improper question.  If we don't object,

3    you say, okay, well, now this information should be

4    public.  We can use it for PTAB proceedings.  That's not

5    correct in our position.  Our protective order says it

6    should be used -- discovery in this matter should be

7    used for this litigation only.  You're taking these

8    people's time to get them in depositions.  We should

9    respect that process.

10            SPECIAL MASTER FOLSOM:  Okay.  Reply -- I think

11   I understand the issues.  But reply?

12            MR. SHEASBY:  Your Honor, everything

13   Mr. Rueckheim says, in terms of the policy, strikes me

14   as correct.  The problem is that, when you have parallel

15   proceedings that involve the same patents, out of

16   necessity, there's going to be questions that are

17   relevant to both proceedings.  And what is going on here

18   is they are using information, most of which they don't

19   even dispute as confidential.

20            SPECIAL MASTER FOLSOM:  District Court's

21   protective order covered not only confidential matters,

22   but all productions in the case not to be used in other

23   litigations?

24            MR. SHEASBY:  Your Honor, that's not how I read

25   the Court's protective order.  The Court -- in fact,

CONFIDENTIAL

42

1    they have previously de-designated testimony -- agreed

2    that testimony was not confidential for the purposes of

3    submitting it to the PTAB, and so this is -- this is a

4    new alternative argument that they've made.

5             But the answer is, if there's dual use of

6    testimony that -- for -- the alternative for us to get

7    it de-designated here would be for us to go to the PTAB

8    and ask the PTAB to de-designate it, but it's your --

9    it's this Court's order that has it as -- they are using

10   this Court's order to shield it.  And so the situation

11   is -- the protective order says that discovery should be

12   used only for the purposes of this action.

13             We can establish that the questions we were

14   asking were relevant for this action, and if you want a

15   supplemental brief, because we haven't had a reply where

16   they made that allegation, we can establish that the

17   slides that I was showing you make that clear.  And then

18   the question is, given that it's dual use, the fact that

19   it's dual use -- they are not disputing it's

20   confidential in most situations.  What they're saying is

21   you can't use it for any other purpose, despite the fact

22   that it's nonconfidential, even though it was obtained

23   for the proper purpose in this proceeding.

24             There was no objection.  There was no

25   protective order.  There's no argument that we were

43

1    asking improper questions.  There was no instruction not

2    to answer.  And for each of those questions, Your Honor,

3    I can go through our claims and the disputes in this

4    case and establish that the questions were relevant.

5         The problem is, now that the relevant questions

6    had been asked, they want to prevent their use, even

7    though they're nonconfidential in any other forum, and

8    that's an abuse of the protective order.

9         SPECIAL MASTER FOLSOM:  Very well.  Are you

10   entitled to a reply brief on this motion?

11        MR. SHEASBY:  Your Honor, it's -- it's -- it's

12   unclear.  We would like a reply brief.

13        SPECIAL MASTER FOLSOM:  Any opposition to a

14   reply brief and surreply, I guess, if necessary?

15        MR. RUECKHEIM:  Well, Your Honor, I'll just --

16   just two things.  One, Mr. Sheasby said that we've

17   agreed, Micron has agreed to de-designate for PTAB --

18   that's just not true.

19        And, number two, I think what Mr. Sheasby is

20   asking for is a reply to explain why the questions that

21   he wants de-designated are relevant to the PTAB and to

22   the District Court, and we've already explained in our

23   opposition brief why they are not.  ████████████████████

██ ███████████████████████████████████████████████████

██ █████████████████████████████████████████  █████████

CONFIDENTIAL

44

6        SPECIAL MASTER FOLSOM:  I'm not sure that

7   answered my question.

8        Are you opposed to a reply brief?

9        MR. RUECKHEIM:  Not strongly opposed.

10       SPECIAL MASTER FOLSOM:  Okay.  Then a reply

11   brief no later than a week from today and a surreply on

12   the following Wednesday, whatever date -- that's the

13   17th, I believe.

14       MR. RUECKHEIM:  Understood, Your Honor.

15       MR. SHEASBY:  Thank you, Your Honor.

16       SPECIAL MASTER FOLSOM:  Does that take care of

17   all the issues related to Micron?

18       MR. SHEASBY:  It does, Your Honor.

19       SPECIAL MASTER FOLSOM:  Okay.

20       MR. RUECKHEIM:  Thank you.  Your Honor.

21       SPECIAL MASTER FOLSOM:  You're welcome to go or

22   welcome to stay.  I appreciate everyone's efforts in

23   making this as streamlined as possible.

24       So now we will move to the Samsung portion of

25   the --

CONFIDENTIAL

45

1              MR. KAHN:  Excuse me, Your Honor.  Yeah.  I
2    believe we haven't addressed Docket 271, which was
3    Micron's motion to strike Netlist Interrogatory No. 4.
4              SPECIAL MASTER FOLSOM:  Very well.  Well, let's
5    address it.
6              MR. RUECKHEIM:  Sorry.  We did.  We did,
7    Your Honor.  We agreed to -- Micron is going to -- still
8    within this reply period, and so Micron is going to
9    submit the reply and then just submit on the papers.
10             SPECIAL MASTER FOLSOM:  This was the last item
11   on the agenda.
12             Do you agree, Mr. Sheasby, on behalf of
13   Netlist?
14             MR. SHEASBY:  This is -- we do, Your Honor.
15             SPECIAL MASTER FOLSOM:  Okay.  Very well.  Then
16   like I said, you are welcome to say or be on your way,
17   so to speak.
18             MR. RUECKHEIM:  Thank you, Your Honor.
19             SPECIAL MASTER FOLSOM:  Does anyone need a
20   short break?
21             MR. SHEASBY:  Your Honor, I'll always take a
22   short break.
23             SPECIAL MASTER FOLSOM:  Why don't we take about
24   a five-minute break.  We will start back
25   approximately -- I mean, 11:05 Central Time.

CONFIDENTIAL

46

1              MR. SHEASBY:  Thank you, Your Honor.

2              (A break was taken.)

3              SPECIAL MASTER FOLSOM:  In any event, how do we

4    best -- we -- I guess we have the easy part behind us or

5    at least the smaller number of motions.

6              How do we go about addressing the pending

7    motions that relate to Samsung?  Any way we can group

8    those, so to speak, or do we simply need to take them

9    individually?

10             MR. SHEASBY:  Your Honor, this is Jason

11   Sheasby.  There are, I think, three motions that relate

12   to the license defense issue that may be appropriately

13   heard together.  There's a motion for protective order.

14             SPECIAL MASTER FOLSOM:  I have 193, 199, 224,

15   and 225, unless some of those -- I have four, unless one

16   of them was resolved.

17             MR. SHEASBY:  No, I think that's right,

18   Your Honor.  I may -- I said "three," but there is four.

19   You're correct, Your Honor.

20             SPECIAL MASTER FOLSOM:  So --

21             MR. McKEON:  With respect to the JDLA issue,

22   Your Honor, that -- I -- that's 193 --

23             SPECIAL MASTER FOLSOM:  199 --

24             Mr. McKEON:  -- 224 and 225, those are sort of

25   the three that -- that have related issues.  So to the

CONFIDENTIAL

47

1    extent we're going to argue in groupings, those would go

2    together, I believe.  And then, I think, additionally --

3           SPECIAL MASTER FOLSOM:  What's everyone's

4    pleasure.  I'm just wondering, is that a way to approach

5    it, or do we need to, you know, take up each of those

6    individually in some fashion?  I don't know if it

7    matters that much, but --

8           MR. McKEON:  They all have a different flavor,

9    Your Honor.  So maybe, you know, in order together,

10   because there's some overlap, but I think they need to

11   be argued individually, though I think it will be --

12   these will be quick.  Some of these arguments will be

13   quicker than others.

14          SPECIAL MASTER FOLSOM:  Okay.

15          MR. SHEASBY:  Why don't we do -- my proposal

16   would be 193, 224, and 225 as the first bucket.  That's

17   the motion for a protective order.  And then the -- the

18   motion to compel, which relates to one of the witnesses

19   that is the subject of the protective order, and then

20   the preclusion motion.

21          MR. McKEON:  I think that's great.

22          SPECIAL MASTER FOLSOM:  Very well.  So who's

23   going forward with 193, 224, and 225, those motions?

24          MR. McKEON:  Well, Your Honor, I'll start that

25   off with Samsung -- again, it's Mike McKeon -- and 193

48

1    is the Samsung motion for protective order.  And let's

2    just jump right into it, Your Honor.

3         So really, you know, we filed this motion,

4    Your Honor, because Netlist was pursuing deposition

5    discovery related to issues that are really not -- are

6    not at issue in East Texas, I mean, clearly, in our

7    view.  And we think the Ninth Circuit decision, Your

8    Honor, and we said a lot about that --

9         SPECIAL MASTER FOLSOM:  (Inaudible) Mr. McKeon,

10    is that correct?

11        MR. McKEON:  Yeah, Mr. McKeon.  Yes, Your

12    Honor.

13        SPECIAL MASTER FOLSOM:  No, the termination

14    issue.

15        I know who you are.

16        MR. McKEON:  Yeah.  Yeah, this --

17        SPECIAL MASTER FOLSOM:  I might be old, but I'm

18    not so old that I've forgotten.

19        MR. McKEON:  No, Your Honor, the -- basically,

20    the division between what's going on in Central District

21    of California and what's going on in East Texas, that

22    line is very clear.  And that line was created --

23    frankly, it was created when Netlist filed its

24    declaratory judgment action in its case in California in

25    2020.  You know, two years before this case.  And --

1              SPECIAL MASTER FOLSOM:  I read the joint status

2      report last night, and it seemed like an opportunity for

3      everyone to have another round of briefing.  And to be

4      quite honest, I'm a little confused about what Netlist's

5      position is in that regard, whether the termination

6      issue is before the Eastern District Court or not.  So

7      but, in any event, I'm sure we'll have a response in

8      that regard.

9              My reading of Judge Gilstrap's order is quite

10     clear, but maybe I misread it.

11             MR. McKEON:  Your Honor, that's our view.  And

12     the basis of a protective order motion, the basis of it,

13     is the Ninth Circuit decision and then the subsequent

14     proceedings in the Central District of California.  And

15     then after we filed the protective order motion,

16     Judge Gilstrap issued his -- his order regarding the

17     stay and --

18             SPECIAL MASTER FOLSOM:  What's being requested

19     under the protective order?  So let's make sure I have a

20     clear understanding.  I think I do.  But what's the

21     nature of the protective order?

22             MR. McKEON:  I mean, the gravamen of it,

23     Your Honor, is deposition testimony.  They've got

24     witnesses they've listed that are clearly directed to

25     the breach termination issues.  And these issues are all

CONFIDENTIAL

50

1   in the Central District of California.

2          You know, Mr. Choi, which is another motion

3   we're going to be arguing in a minute -- I mean, they're

4   very up front about it.  I mean, they're requesting

5   testimony from Mr. Choi about -- about the supply

6   provision, which is the 6.2 provision in the JDLA.

7   That's all Central District of California.  I mean,

8   there's no dispute about that.

9          And then Judge Gilstrap's order, Your Honor --

10  it's so abundantly clear.  He's taking -- in light of

11  Fifth Circuit precedent that we presented to

12  Judge Gilstrap and he's following it to a tee.  He's

13  saying, okay, well, I'm -- you know, we -- we asked him

14  to stay the cases, Your Honor.  We thought that was

15  better -- the better approach, but he, obviously, saw it

16  differently.  But what he did do is say, well, here's

17  the line and what they're doing in there, we're not

18  going to do here.

19          And frankly --

20          SPECIAL MASTER FOLSOM:  Let me -- I'm not

21  trying to jump start this, but what is the position of

22  Netlist on the termination issue?  I'm a little unclear

23  after reading the status report.  Maybe I should have

24  had a clearer understanding of it.

25          Who wants to respond in that regard?

CONFIDENTIAL

51

1          MR. SHEASBY:  Your Honor, this is Jason Sheasby

2     for Netlist.  There's a pled JDLA license defense in

3     front of Judge Gilstrap.  Judge Gilstrap denied to stay

4     the case -- denied staying our case and made clear that

5     that JDLA license defense is live in front of him.

6     There are two --

7          SPECIAL MASTER FOLSOM:  But do you take the

8     position, though, the termination issue is in some

9     fashion in front of Judge Gilstrap?  Because I certainly

10    don't read his order for that proposition, Mr. Sheasby.

11         MR. SHEASBY:  I agree with that, Your Honor.

12    There are two aspects to the JDLA license defense.  One

13    aspect to the -- to the issue is whether the license

14    grant covers the products at issue in this case.  The

15    second is the termination issue and the issues relating

16    to termination.

17         It's clear that Judge Gilstrap, for the moment,

18    is not intending to rule on the issue of termination and

19    is going to wait for the Central District of California

20    to make --

21         SPECIAL MASTER FOLSOM:  Then why should you

22    have discovery on that issue?

23         MR. SHEASBY:  I'm sorry, what?

24         SPECIAL MASTER FOLSOM:  Then why should you

25    have discovery on that issue?

CONFIDENTIAL

52

1          MR. SHEASBY:  Your Honor, it's the first part

2     of it that is -- is in play.  In other words, that the

3     scope of the license grant, what folks thought was the

4     scope of the license grant during the agreement -- all

5     of that issue is directly in front of Judge Gilstrap.

6     Judge Gilstrap declined to stay the case.  Judge

7     Gilstrap made clear that there -- those issues are in

8     front of him.  There's no dispute that those issues are

9     not in front of the Central District of California.

10          And so it seems to me -- and the briefing was

11     completed in this matter before Judge Gilstrap issued

12     his decision on the motion to stay.  And in addition to

13     the motion to stay, Netlist -- I would say that the

14     motion to stay is not the last word on this, Your Honor.

15     There was a motion for summary judgment filed on both

16     issues, which is on the scope of the license, as well as

17     the termination.

18          Judge -- Samsung attempted to avoid having to

19     answer that motion to summary judgment, which is on both

20     issues -- the scope of the license, as well as the

21     termination.  Judge Gilstrap denied that motion to

22     strike and has ordered them to respond.  And so it seems

23     to me, at a minimum, the protective order has now been

24     already answered by Judge Gilstrap.

25          Discovery relating to the scope of the license

CONFIDENTIAL

53

1   is only in one court.  It's front of his court.  And the

2   protective order is blocking discovery into that.  It's

3   clearly inappropriate.

4           SPECIAL MASTER FOLSOM:  Mr. McKeon, I guess,

5   you -- so --

6           MR. McKEON:  Your Honor, it's nice to get some

7   clarifying response from Mr. Sheasby.  We do appreciate

8   that.  So, I mean, the line is clear.  You know, in our

9   protective order, Your Honor is directed at one issue.

10  That is, anything that's going on in California

11  doesn't -- they should not be able to get discovery

12  here.

13          California --

14          SPECIAL MASTER FOLSOM:  As to termination --

15          MR. McKEON:  Well, let's be clear on this,

16  Your Honor.  As to Supply Provision 6.2, as to the

17  allegation of breach, as to the propriety of the

18  termination, and as to the materiality of the -- of any

19  breach that's alleged, that's --

20          SPECIAL MASTER FOLSOM:  Well, in the

21  termination basket.  Maybe I was not being clear,

22  Mr. McKeon.

23          MR. McKEON:  I just want to be clear on that,

24  Your Honor, because, you know, I want to be clear that

25  the record is clear, that when we say "termination

CONFIDENTIAL

54

1    breach," we're talking about that bundle of issues,

2    because that's exactly what the California Court is

3    doing.  And that's our protective order motion.

4            With respect to our license witness -- first of

5    all, we've produced our license witness.  They had a

6    30(b)(6) on it.  We produced our license witnesses.  All

7    the transcripts from the last case are in this case.

8    And Mr. Ji, who's the witness that we brought to trial

9    in Netlist 1, there's an agreement between Netlist and

10   Samsung that we were not going to put Mr. Ji up until

11   this motion was resolved so we had clarity on what the

12   scope of his testimony will be.

13           So once this is resolved -- and we believe it

14   should be resolved in our favor -- then there will be no

15   inquiry into the California issues, and then they can,

16   you know, take his deposition on the -- the license

17   issues, which is, of course -- which is relevant here.

18   Of course, we agree with it.

19           And that's the line we -- we're just trying to

20   follow the line, Your Honor, that we believed that

21   Judge Gilstrap has now clearly drawn.  And we think

22   discovery is off limits.  Anything over that line into

23   California is completely off limits.

24           SPECIAL MASTER FOLSOM:  I think we understand

25   the issue.  I don't think you-all are going to agree

55

1   upon this one.  So --

2           MR. McKEON:  Yeah.  We're --

3           SPECIAL MASTER FOLSOM:  193, 224, 225 -- does

4   this sort of bleed over into 199, Mr. McKeon?

5           MR. McKEON:  So 199, I don't think so,

6   Your Honor.  Mr. Cordell will be addressing that.

7   That's really sort of an isolated issue, but it does

8   bleed into 224 and 225.

9           SPECIAL MASTER FOLSOM:  I guess, I thought all

10  these arguments went to 193, 224, 225.  So if you need

11  some additional comments on 225 --

12          MR. McKEON:  Let me -- okay.  Let me do that

13  now, Your Honor, and I can be brief on that.

14          So 224, this is -- and, again, it's Netlist's

15  motion, but I can address sort of our viewpoint on it.

16  It's a motion to compel the deposition testimony of

17  Mr. Choi.  And -- and, again, the sort of the starting

18  point of that is they're very clear on their motion.

19  They want testimony on breach termination, all the

20  California issues.  So which is -- you know, that's the

21  starting point.

22          And the other problem --

23          SPECIAL MASTER FOLSOM:  It's up there.  I don't

24  know if someone could remove that.  Yeah.  Thank you.

25          MR. McKEON:  And then the -- so that's Point 1,

CONFIDENTIAL

56

1    Your Honor.

2            But then there's two other points, Your Honor.

3    They're not relevant to that.  And that's, number one,

4    Mr. Choi no longer is at any of the Defendants in this

5    case.  He's at a company called Samsung Display.  It's a

6    $24 billion sales company.  They got, you know,

7    60-something-thousand employees.  And he's president/CEO

8    of the company.

9            So they need to go through the Hague Convention

10   to get his deposition.  He's in Korea.  So he's not

11   in -- they can't just serve a subpoena on us.  He's --

12   we're not -- he's not an employee.  He's not related to

13   the entities in this case.  They need to go to the

14   Hague.  There's no evidence they've done that.

15           And then, also, he's an apex, Your Honor.  This

16   is classic apex.  I mean, he's CEO of the company.  So

17   you've got to make a demonstration that you're entitled

18   to it.  And they haven't done that, Your Honor.  I mean,

19   does he have unique testimony?  They've got to make that

20   demonstration.

21           And I'll note, Your Honor, that in the

22   California court, in the breach case, they tried to get

23   his deposition and the Court refused it based on apex.

24   They said, yeah, he's -- he's apex.  He's CEO of the

25   company.  And that should be the same result here.

57

1           But frankly, Your Honor, just as a matter of

2    jurisdiction, there's no -- I mean, to be ordered to

3    produce a witness -- a resident of Korea for deposition

4    in a United States proceeding, when we have no control

5    over that resident, they haven't -- they haven't

6    demonstrated to pierce the veil or that we somehow

7    control this person.  There's not demonstration of that.

8    It's their burden.

9           So, Your Honor, we think this one fails.

10   Again, the headline reason is it's California.  Then

11   he's an apex witness, and they haven't -- they haven't

12   gone through the Hague Convention, which is what they

13   need to do.

14          So that's -- that's our --

15          SPECIAL MASTER FOLSOM:  This is 224, obviously.

16          MR. McKEON:  That's 224, Your Honor, yeah.  And

17   that's really the point, Your Honor, in that motion and

18   that -- you know, if you need more elaboration, I can go

19   into it, but I think that's it.

20          SPECIAL MASTER FOLSOM:  Response?

21          MR. SHEASBY:  Your Honor, there are sort of two

22   nested issues here.  JS Choi was the individual who

23   approved -- so let me -- let me say three things,

24   actually.

25          First, the "we're going to produce a 30(b)(6)

1    witness on the topic of license scope" is not how

2    discovery works.  They don't get to decide what witness

3    they produce on a subject.  We are entitled to explore

4    the individuals we think are relevant.

5              And so the idea that, oh, we're going to give

6    you our witness on license scope, when they should have

7    been giving that before this protective order was even

8    filed, because they've conceded that at least license

9    scope is solely before this Court is not appropriate.

10             The second issue as to JS Choi, JS Choi, the --

11   I think there's some confusion as to the -- the parties

12   to this case.  And Mr. McKeon may just not remember

13   this.  But the party to this case is Samsung Electronics

14   Company Limited, which is the Korean entity.  JS Choi,

15   on his LinkedIn declaration, makes clear that he is part

16   of Samsung -- not only Samsung Electronics Company

17   Limited, but also Samsung Electronics Memory.

18             There is a common tactic that Samsung uses.

19   Samsung is a conglomerate that has a number of

20   divisions.  Each of those divisions are part of Samsung

21   Electric (sic) Company Limited.  And the president of

22   the division of Samsung Electronics Company Limited,

23   that Mr. Choi is part of, is rolled up into Samsung

24   Electronics Co. Limited, which is stated in their

25   financial statement.

CONFIDENTIAL

59

 1              And so this idea that, oh, a head of a division

 2     is part of a different company -- there are probably 80,

 3     if not 100, subsidiaries within Samsung Electronic Co.

 4     Limited, and this -- this argument that they're not part

 5     of SEC is just inconsistent with the financial

 6     statements of Samsung, which makes clear that Display is

 7     treated as Samsung Electronics Company Limited.

 8              There's the next issue, which is the -- which

 9     is the -- I'm sorry, Your Honor --

10              SPECIAL MASTER FOLSOM:  Is this needed for this

11     point?

12              MR. SHEASBY:  I can pull it back down,

13     Your Honor, if it's -- let me -- I'm not doing a good

14     job of showing you these.

15              Is -- is that better for -- is that easier for

16     you to see now?

17              SPECIAL MASTER FOLSOM:  I just meant if you

18     were not needing those documents, let's --

19              MR. SHEASBY:  Yeah.  I'll take them off, yeah,

20     Your Honor.

21              So the next issue as to JS Choi --

22              SPECIAL MASTER FOLSOM:  Screen share -- to go

23     ahead and use it, but if you're not using it --

24              MR. SHEASBY:  No, no.  I completely understand,

25     Your Honor.

CONFIDENTIAL

60

1         I think what the -- the confusion is the

2    following:  If you draw the line that says termination

3    is not before this Court but license scope is before

4    this Court, it is the -- ████████████████████████████████

     ████████████████████████████████████████████████████

     ████████████████████████████████████████████████████████

     ████████████████████████ -- it is more likely than not -- a

8    jury can find that if JS Choi -- and he doesn't deny

9    that he was briefed on the scope of the license grant --

10   if the license grant is narrow and didn't give them

11   anything, ████████████████████████████████████

     ████████████████████████████████████████████████████████

     ████████████████████████████████ .

14        And so their narrative in -- is the following:

15   The JDLA license agreement -- the JDLA agreement related

16   to a joint venture, and we committed to supply product

17   under that joint venture.  Once that joint venture

18   ended, the commitment to supply the product ceased.  So

19   we end it.

20        Our position is that that's an accurate

21   interpretation.  The license grant, as well, was limited

22   to the JDLA.  JS Choi was the executive in the Memory

23   division, who made the decision that the JDLA was over.

24   That's their position.

25        The JDLA being over, the question is:  If the

CONFIDENTIAL

61

1   JDLA was over, that means the license grant was over as

2   well, and that's what a jury could find.

3          So we think we satisfy the apex doctrine.  If

4   they want us to go through the Hague Convention and --

5   although, they don't have any declaration or any actual

6   evidence that JS Choi is not an officer or an employee

7   of SEC Limited in their opposition.  But if that's truly

8   their point, we will ask the Court -- once the Court

9   rules on the apex issue, we'll ask the Court to issue

10  letters rogatory so we can pursue him through the Hague

11  Conference.

12         So I think there's two issues.  There's, one,

13  have we satisfied apex?  ███████████████████████████

    ███  ███████████████  A jury can say, if the JDLA was over,

15  that must mean the license was over as well.  That's a

16  reasonable inference that a jury can make.  And███████████

    ███  ████████████████████████████████

18         And them randomly giving us some 30(b)(6)

19  witness, who they say is going to speak on behalf of the

20  company -- that's not how discovery works in the

21  United States.

22         The second issue, although they haven't done it

23  now, if they produce evidence that he's not controlled

24  by SEC Limited, what we will do, once the Court resolves

25  the apex issue, is we'll seek letters rogatory.

1        That's our position, Your Honor.

2        SPECIAL MASTER FOLSOM:  Mr. McKeon?

3        MR. McKEON:  Yes, Your Honor.  Let me address

4   the Mr. Choi issue first.

5        Mr. Choi is not an employee of any of the

6   Defendants in this case.  We made that representation,

7   and that's just a fact.  You know, his LinkedIn page,

8   he's the CEO of a $24 billion company, and perhaps he

9   didn't update, but this is a -- that's his position, and

10  that's what was represented to California as well, which

11  is why they denied his deposition in California.

12       Mr. Choi's testimony -- well, let me just now

13  shift to the 193, Docket 193.  The testimony they're

14  seeking clearly relates to 6.2.  The JDLA, Your Honor,

15  has a separate provision for a license grant.  Mr. Choi

16  never said that the JDLA was over.  I'm not aware of any

17  statement that's close to that.

18       The only issue that -- that -- there's

19  testimony that Mr. Sheasby is seeking here is related to

20  6.2 and how that provision and what were they thinking

21  at Samsung related to the supply provision and supplying

22  product to Netlist.  That was Mr. -- that's Mr. Choi's

23  knowledge.  That is what they said to the California

24  Court, and that's what they said in their briefing here,

25  that that's his knowledge.

CONFIDENTIAL

63

1          And now he's trying to blur the lines -- "Oh,

2    no, it's really the license scope."  It's not the

3    license scope.  That's a completely different provision.

4    That's a perpetual license.  It's a completely

5    provision, and his testimony has nothing to do with it.

6    He had nothing to do with the license issues at all.  He

7    was just purely a supply -- dealing with the supply to

8    Netlist.  So we take issue with that representation,

9    Your Honor.

10          With respect to the deposition, Mr. Ji -- we

11   put him up.  We offered him for deposition, and we made

12   the -- we put him up for deposition with the requirement

13   that they weren't going to be asking questions about --

14   about the breach issue, the termination issues.

15          We met and conferred on it.  We indicated he

16   was on Topic 115.  If they wanted to have his

17   deposition, despite his deposition we produced in -- he

18   already got produced in California, his deposition.  And

19   he testified in the Netlist 1 case.  And we offered --

20   we offered to move forward on that basis.  And then

21   agreed -- because we couldn't agree, we agreed -- I

22   thought it was a great agreement -- let's just hold off

23   on this until we're -- we get to the protective order

24   issue so we have a clear line from the Court.

25          And that was -- that was the agreement,

64

1    Your Honor.  I didn't think it was an issue, and so I'm

2    surprised to hear it today.  But that was the agreement

3    that we made, and we think it was a good agreement.  It

4    makes sense, and now we have a deposition that's going

5    to be clear, one way or the other, based on the ruling

6    we get here on the protective order issue.

7                SPECIAL MASTER FOLSOM:  I think I understand

8    the issue and know the position of the parties.

9                So do we now move to 199?

10               MR. McKEON:  I think that's right, Your Honor.

11               SPECIAL MASTER FOLSOM:  And who's presenting

12   199?

13               MR. CORDELL:  I think that's me, Your Honor.

14               MR. PAYNE:  I will be for Netlist, Your Honor.

15   I might suggest, if it's agreeable to Your Honor, that

16   we group this with 139 and 142 as well.  All three of

17   these motions deal with requests for discovery on the

18   SK Hynix agreement negotiations.

19               SPECIAL MASTER FOLSOM:  Yeah.  199.  What were

20   the other two?

21               MR. PAYNE:  139 and 142 as well.

22               MR. McKEON:  And, Your Honor, on our side,

23   we're suggesting 139 first, because that's more of a --

24   139 and 142 are related and they have sort of an

25   overriding issue.  And 199 is sort of subsidiary.  So we

65

1    think maybe perhaps that's the best order -- 139, 142,

2    199.

3            SPECIAL MASTER FOLSOM:  Very well.  Well, you

4    may go forward.

5            MS. DEGNAN:  Okay.  This is Lauren Degnan for

6    Samsung, Your Honor.  I'll be arguing 139 and 42.

7            139 is our motion to compel Netlist to produce

8    documents related to the negotiation between Netlist and

9    SK Hynix in connection with the SK Hynix agreement.  And

10   the SK Hynix agreement is called the Strategic Product

11   Supply and License Agreement.

12           It is -- it is -- the agreement is certainly

13   relevant.  ███████████████████████████████

██   ████████████████████████████████████████

██   ███████████████████████████████████████

██   ████████████████████████████    █████████

██   ████████████████████████████████████████

██   ████████████████████████████████████

██       ████████████████████████████████████

██   ██████████████████    ██████████████████

██   ██████████████████    ████████████████

██   ████████████████████████████████

██   ██████████████████████████████████

██   ██████████████████████████

██   ███████████████████████████████████

CONFIDENTIAL

66

1    ██████

2          So a little more background.  When Samsung and

3    Netlist were negotiating the JDLA we just spoke about,

4    ████████████████████████████████████████████████████

█    ███████████████████████████████████████████████████.

6    ████████████████████████████████████████████████████

█    ███████████████████████████████████████████

█    █████████████████████████████████████████████████████

█    ███████████████████████████████████████

█    ████████████████████████████████████████████████████

█    ███████████████    ███████████████████████████

█    ██████████████████████████████████████████

█    ██████████████████████████████████████████

█    ███████████████████████████

15          Now, what we might see --

16          SPECIAL MASTER FOLSOM:  This issue in -- in

17    Micron 1; is that correct?

18          MS. DEGNAN:  So I would disagree with that,

19    Your Honor.  Let me explain why first.

20          In Micron 1, we weren't a party.  So that's

21    certainly not controlling.  But, more importantly,

22    Judge Payne did not consider the contradictory positions

23    Netlist is take -- has taken about the relevancy of

24    negotiation.

25          So in Netlist 1, we talked about the -- Netlist

CONFIDENTIAL

67

1    moved to strike our damages experts compared -- you

2    know, comparable agreement analysis, saying over and

3    over again that, under Apple-Wi-LAN, there's no evidence

4    as to the value SK Hynix put on the patents-in-suit.

5    There's no evidence why SK Hynix made the payment it

6    did.  And that's, of course, what the expert in

7    Netlist 1 was doing, was trying to allocate the payment

8    to decide how much of that related to patents-in-suit.

9    And that's exactly what our expert, Lauren Kindler, is

10   doing in this case.

11        And so Judge Payne was not -- is not confronted

12   with the facts -- the fact that Netlist successfully

13   argued that not talking about the SK Hynix -- not having

14   discovery from SK Hynix was a feeling and caused -- and

15   motivated the striking of our expert's report.  So

16   Judge Payne didn't know that.  He didn't assess the

17   ruling.

18        In fact, if you look at the transcript in that

19   Micron argument, the focus is very much on FRAND and how

20   the negotiations might be relevant to FRAND or RAND.  In

21   fact, the order from Judge Payne cites and talks about

22   the Sole IP case mentioning FRAND.

23        The argument does not go into its -- the

24   relevance to the comparable agreement analysis for

25   reasonable royalty, which is what was the basis for

CONFIDENTIAL

68

1    getting the opinion struck in Netlist 1.

2           So this ruling in Micron 1, besides being not

3    binding, is not persuasive.  It's not assessed.  What

4    the Judge did in Netlist-Micron 1, so balancing the

5    prejudice of having negotiations be discoverable versus

6    the relevance, but he didn't focus on the relevance that

7    we're highlighting here and on which Judge Gilstrap

8    apparently relied to strike our -- our expert report.

9    And it would be highly prejudicial to us if our opinions

10   in this case, by Lauren Kindler, are stricken because

11   she did not evaluate what value SK Hynix put on the

12   patents in this license agreement and why SK Hynix chose

13   to pay the payment.

14          And one issue I should flag for you is that

15   ████████████████████████████████████████████████

     ████████████████████████████████████████████████

     ████████████.  We've taken the position and Judge --

18   Lauren Kindler ██████████████████████████████████

     ████████████.  And there's evidence supporting -- supporting

20   our position.  But these negotiation documents are very

21   likely going to show what value, if any, SK Hynix

22   actually put on ████████████████████████████████.

23          So to answer your question, definitely not

24   controlling, different facts.

25          SPECIAL MASTER FOLSOM:  You said controlling.

CONFIDENTIAL

69

1    I simply asked about the ruling.

2           MS. DEGNAN:  Okay.  Well, I hope I answered

3    your question about the ruling.  Is there more I can

4    talk about the ruling for you?

5           SPECIAL MASTER FOLSOM:  I think I have

6    sufficient information.

7           What's the response?

8           MR. PAYNE:  Thank you, Your Honor.

9    Stephen Payne for Netlist.

10          So, Your Honor, Judge Payne, we think, has

11   already ruled on this exact issue in the Micron case set

12   for January.

13          SPECIAL MASTER FOLSOM:  Wouldn't you agree,

14   though, in Samsung 1 that there was a motion filed,

15   Daubert motion, but got the criticism of the Samsung

16   damage experts were failing to rely upon negotiation

17   documents in the apportionment analysis.

18          Do you agree with that?

19          MR. PAYNE:  No, Your Honor.  So that's not what

20   the motion was in Samsung 1, and that's not what the

21   ruling was.

22          The -- the motion in -- so first of all, it was

23   a different damages expert, who's not in this case.

24   Mr. Meyer was the damages expert in Samsung 1.  He's not

25   in this case.

1              SPECIAL MASTER FOLSOM:  Does it matter?

2              MR. PAYNE:  Pardon me, Your Honor?

3              SPECIAL MASTER FOLSOM:  Is that necessarily

4      important that it's not the damage -- same damage

5      expert?

6              MR. PAYNE:  Well, I mean, it was also a

7      different issue, which I'm getting to, Your Honor.

8              So the motion in Samsung 1, it didn't have

9      anything to do with the negotiation materials.  The

10     motion was that the apportionment that Samsung's expert

11     performed in the first case was inconsistent with the

12     actual terms of the SK Hynix agreement, which didn't

13     mention any of the asserted patents and, also, with the

14     patents that were at issue -- actually issued in

15     SK Hynix litigation.

16             To give some background, the SK Hynix

17     patents asserted -- the patents asserted against

18     SK Hynix, they were different from the patents asserted

19     in the first Samsung case and they're different from the

20     patents asserted in this case.  And so that was the

21     argument.

22             There was also a challenge to some -- some

23     separate apportionment analysis that Samsung's expert

24     had done that had nothing to do with the -- some

25     arbitrary apportionment numbers, nothing to do with

CONFIDENTIAL

71

1    negotiations.

2            There was no argument about negotiation

3    materials.  There was no challenge based on them.  The

4    Court did not rule that he had -- that the analysis was

5    inadmissible because there was a failure to consider

6    negotiation documents.  The ruling was, under the Wi-LAN

7    case in the Federal Circuit, the analysis was not

8    consistent with the actual patents that were called out

9    in the SK Hynix agreement itself.  And there were -- and

10   that were at issue in the SK Hynix litigation.

11           And the SK Hynix agreement has been produced

12   here.  Both sides' expert have analyzed it.  There's

13   nothing -- none of the discussion in Samsung 1 have

14   anything to do with the negotiation history, Your Honor.

15           SPECIAL MASTER FOLSOM:  Could anyone point me,

16   either of you, to the docket entry number for that order

17   from Judge Gilstrap?

18           MR. PAYNE:  That, Your Honor, would have been

19   in the first Samsung case, and I can pull that up.

20           MS. DEGNAN:  I have it, Your Honor.  It would

21   be the pretrial conference transcript in the first case

22   that was on March 28, 2023.  And the decision that he

23   made is at page 247, starting at line 25.

24           SPECIAL MASTER FOLSOM:  Very well.

25           MS. DEGNAN:  And -- okay.

CONFIDENTIAL

72

1          MR. SHEASBY:  And, Your Honor, this is

2     Jason Sheasby for Netlist.  I just wanted to flag one

3     other issue.  This is something that I observe quite

4     frequently.  And I think it implicates a policy issue in

5     this district.  And I think Judge Payne -- I argued that

6     at the pretrial conference.  I argued this issue at the

7     discovery conference with Judge Payne, is that if we're

8     going to set a precedent where negotiation records

9     leading to settlement agreements get produced in every

10    single case, I can tell you that Samsung did not produce

11    a single one of its negotiation records.  And so it is

12    going to be a sea change if this becomes a policy in

13    which negotiation records are going to need to be

14    produced.  And I think that was the basis for

15    Judge Payne's ruling.

16          SPECIAL MASTER FOLSOM:  You're saying there

17    will be no criticism if those documents are not produced

18    of the damage expert.

19          MR. SHEASBY:  There will be no criticism of the

20    damages expert based on the absence of looking at the

21    negotiation.  The only --

22          MS. DEGNAN:  So this --

23          MR. SHEASBY:  -- the only criticism of the

24    damages expert will be that the agreement itself lists

25    the patents that were the subject of the lawsuit in the

1    settlement.

2            SPECIAL MASTER FOLSOM:  Because I'm hearing --

3    let me -- let me finish.

4            I'm hearing different versions from the

5    parties.  One is saying you criticized their damage

6    expert for not relying upon those and yet you won't

7    produce them, which doesn't seem quite fair.

8            So you agree, Mr. Sheasby, with the statement

9    that the damage expert in Samsung 1 was not criticized

10   for not relying upon the negotiation documents?  Is that

11   your position?

12           MR. SHEASBY:  That's -- that's correct.  He was

13   criticized for the fact that the settlement agreement

14   lists seven patents which are asserted against SK Hynix.

15   He did not take into account the patents that were

16   actually asserted against SK Hynix as the ones that were

17   driving the value of the agreement.  And we're going to

18   say the exact same thing against Ms. Kindler, that she

19   didn't take into account what's on the face of the

20   contract.

21           SPECIAL MASTER FOLSOM:  Reply comments of --

22           MS. DEGNAN:  Definitely.  Just let me have --

23   just give me a moment.

24           Mr. Compton -- I want to show you,

25   Judge Folsom, exactly what the agreement was and the

CONFIDENTIAL

74

1    ruling was by Judge Folsom (sic).

2              So as we start on Slide 4, Mr. Compton --

3              SPECIAL MASTER FOLSOM:  Judge Folsom --

4              MS. DEGNAN:  Excuse me, Judge Gilstrap.  Please

5    forgive me.

6              So if we start on Slide 4.  So this is what the

7    Judge said when he struck the paragraphs of Mr. Meyer's

8    report.  He says he thinks they fall within Apply versus

9    Wi-LAN.  Okay.

10             If we go to Slide 5, I want to highlight what

11   the argument was before Judge Gilstrap, and it was that

12   under Apple-Wi-LAN, our expert was required to discuss

13   the value that SK put on each patent and why SK made the

14   payment it did.  It was very focused on the lack of

15   evidence about what was in SK Hynix's mind.  Not once

16   did they talk about that the -- you know, the agreement

17   itself -- somehow is inconsistent with the agreement

18   itself.

19             If you even go to the next slide, Mr. Compton,

20   which is just more the same from Netlist counsel --

21   again, what are the values for SK Hynix?  But what

22   they're heard said today and in their briefing,

23   Judge Folsom, is, well, you've got the agreement and the

24   agreement says what it says, and that's the end of it.

25             You can take the slides down, Mr. Compton.  But

CONFIDENTIAL

75

1    that's not the test.  The agreement certainly says, you

2    know, all -- but the agreements list some patents

3    outright, but it also covers all the patents.  But

4    moreover, Wi-LAN itself, the case, actually examined

5    negotiation history.  Look at that as relevant evidence.

6    Wi-LAN establishes that negotiation history actually is

7    relevant to what Mr. Sheasby told Judge Gilstrap, why

8    SK made the payment it did.

9         So for them to suggest that, just because the

10   word "negotiation history" wasn't mentioned during the

11   agreement is substance, the substance of the argument

12   was we don't know what was under the hood at SK Hynix

13   when they made the payment.  And to do that, to get a

14   complete picture of that, we need now -- and have sought

15   in discovery -- these communications.  This discovery

16   about negotiations, what did SK Hynix think about the

17   supply provisions value, about the specific patent.  And

18   that is relevant, and Wi-LAN tells us it's relevant.

19        On the policy issue --

20        SPECIAL MASTER FOLSOM:  Point me to any order

21   that Judge Gilstrap's previously entered granting the

22   request you're making here.

23        MS. DEGNAN:  Yeah.  So that's actually what I

24   was going to say.  So this is the clear with computers

25   is the -- we understand that it is the exception and not

CONFIDENTIAL

76

1    the rule.  And we're -- that -- that's to the policy

2    point.  We're not opening the floodgates on this.  And

3    let us be very clear -- we are clear in our briefing --

4    we're not saying that Wi-LAN requires negotiation

5    documents in each and every single comparable license

6    analysis.  We're not saying that.  And I think when you

7    read Wi-LAN, it doesn't actually require that.

8         But it appears that in Netlist 1, the lack of

9    investigation into SK Hynix, lack of discovery into

10   SK Hynix and its state of mind in its negotiation with

11   Netlist was held against us.  It struck our opinion.

12   And so given that, there was great prejudice to us if

13   our opinions are going to be struck because we haven't,

14   quote, put in any evidence, our expert hasn't reviewed

15   any evidence about why SK made the payment it did.

16        Mr. Sheasby has not said he's not going to move

17   to strike that opinion.  He said he is.  So we're going

18   to see a repeat of last time.  And if Judge Gilstrap

19   used the Wi-LAN opinion in the same way, we will be

20   prejudiced for not seeking this discovery, giving it to

21   our expert, and letting her rely upon it.

22        SPECIAL MASTER FOLSOM:  I think I asked you --

23   I'm not sure you cited to an order where

24   Judge Gilstrap's allowed for discovery of this category

25   of documents.

CONFIDENTIAL

1          MS. DEGNAN:  It was.  It's -- and it's -- we

2     can have -- Mr. Compton, Slide E.  This is the

3     Charles E. Hill opinion we cited in our briefs.  And

4     that's at 854 F.Supp.2nd 427.

5          SPECIAL MASTER FOLSOM:  Yeah.  Let's hold on.

6     I will read the order.

7          And let's move on to the next -- next motion

8     that needs attention.

9          MS. DEGNAN:  Sure.  The next motion, I think,

10    is 142, which is -- which is -- is similar.  It is

11    Netlist's motion.  I don't want to steal Mr. Sheasby's

12    thunder, but it is very, very similar.  We've narrowed

13    the dispute over whether SK Hynix needs to produce the

14    negotiations -- documents related to negotiation with

15    Netlist.  We've narrowed that dispute.  So it's very --

16    it's very similar to 139.

17         And here SK Hynix got the subpoena.  It was

18    ready to produce them.  In Exhibit 2 to Netlist's

19    motion, it specifically says we're ready to produce them

20    tomorrow, Netlist, under attorneys' eyes only, under the

21    protective order.  And Netlist stopped the presses.

22    They stopped the production.  So there's no burden here.

23    And given the relevance, we think that the motion for

24    the protective order should be denied.

25         SPECIAL MASTER FOLSOM:  Response?

CONFIDENTIAL

78

1          MR. PAYNE:  Yes, Your Honor.  So this is a

2    parallel of the motion you just heard.  There was

3    request to Netlist for the settlement negotiations with

4    SK Hynix.  That's 139.  There was also a subpoena to

5    Hynix for the same settlement negotiations.  And we're

6    opposing both for the same reasons.

7          Your Honor did ask a question about prior

8    orders by Judge Gilstrap.  I will say, in no prior of

9    the Netlist litigation has either Judge Gilstrap or

10   Judge Payne ordered production of the SK Hynix

11   negotiation documents.  In fact, it's the -- it's the

12   opposite.

13         SPECIAL MASTER FOLSOM:  Not necessarily

14   SK Hynix.  I'm talking about other --

15         MR. PAYNE:  I understand, Your Honor.  And the

16   Charles E. Hill case, which Your Honor may be familiar

17   with, is --

18         SPECIAL MASTER FOLSOM:  It's a him.  But I

19   promise to read the order that's been mentioned.

20         MR. PAYNE:  Okay.  Yes, Your Honor.

21         There's a prior order by Judge Payne in the

22   Micron case.  I think the Charles E. Hill case that was

23   mentioned, it's -- was a very different situation.  I'm

24   happy elaborate on that, if you would like to hear it.

25         But on the -- on the SK Hynix protective order,

CONFIDENTIAL

79

1    I think, Your Honor, here we don't think that the

2    SK Hynix negotiations are -- settlement negotiations are

3    discoverable for the reasons briefed in the papers.

4            If -- if Your Honor concludes otherwise, then

5    that production can come from Netlist, but there's no

6    reason to have it also come from a third party.  But

7    certainly, if the materials are not discoverable from

8    Netlist -- and we don't believe they are consistent with

9    Netlist --

10           SPECIAL MASTER FOLSOM:  So I think these two

11   issues dovetail to be somehow a rule of thumb --

12           MR. PAYNE:  Yes, Your Honor, I think that's

13   correct.

14           SPECIAL MASTER FOLSOM:  Okay.  Short of a

15   reply, I think I understand this issue.  Like I said --

16           MS. DEGNAN:  If I could, one sentence?

17           SPECIAL MASTER FOLSOM:  Sure.

18           MS. DEGNAN:  I would say we disagree that, if

19   you agree with us, there's no need for SK Hynix to make

20   a production.  It was standing by, ready and willing to

21   make, but for Netlist action.  It's not entirely clear

22   that the documents in SK's position are going to be --

23   possession, custody, and control are going to be exactly

24   the same in Netlist.  There's no burden whatsoever, and

25   we would disagree that we can just get them from

CONFIDENTIAL

80

1    Netlist.

2            SPECIAL MASTER FOLSOM:  I don't think the

3    issue -- and if memory serves me correct, there was some

4    criticism the motion was filed in an improper

5    jurisdiction.  It shouldn't be filed in the Eastern

6    District of Texas.  Am I correct?

7            If so, what -- what's Samsung's response to

8    that?  And I'll give an opportunity to let Netlist

9    respond to that question.

10           MS. DEGNAN:  Sure, Your Honor.  I mean, we

11   stand by the position we took in the papers, which is

12   this is sort of an end run around of the proper

13   procedure forum.

14           Netlist did cite a couple of cases that

15   indicate that some of the -- some of the -- some cases

16   from East -- the District of Texas, it takes sort of a

17   broader view of their authority to handle this.  And we

18   would have no objection to Judge Folsom, Your Honor,

19   handling -- handling both motions.

20           SPECIAL MASTER FOLSOM:  Okay.  Any comments on

21   that issue that --

22           MR. PAYNE:  I think it's resolved by Samsung

23   counsel's statement, but I'll just add, Your Honor, it's

24   a motion for protective order, and Rule 26(c) expressly

25   says that a motion for protective order should be filed

CONFIDENTIAL

81

1    in the court where the action is pending, which is, of

2    course, this court.  So we believe it's properly filed.

3            SPECIAL MASTER FOLSOM:  You think this is the

4    correct court then?

5            MR. PAYNE:  Yes.

6            SPECIAL MASTER FOLSOM:  Okay.  Very well.  Next

7    entry -- docket entry?

8            MS. DEGNAN:  So I think that would be 199, and

9    that's Mr. Cordell's.

10           MR. PAYNE:  And, Your Honor, this is -- this is

11   our Netlist motion.  So I'll -- I'll start.

12           This motion again relates to discovery on the

13   SK Hynix negotiation, but it's a subissue, which is

14   there's a request to depose two former Netlist in-house

15   attorneys on the SK Hynix negotiations.

16           So I think the first part of it, Your Honor,

17   rises or falls with a ruling on the discoverability of

18   the license.  But there's an additional issue here,

19   which I think is very important, which is, even if there

20   were documents that were discoverable, that does not

21   make a deposition of a party's attorneys appropriate.

22   That's -- that's disfavored in the Fifth Circuit and

23   this court, and there are many rulings that we've cited

24   in the papers, making clear that depositions of a

25   party's attorneys are not appropriate, except in very

CONFIDENTIAL

82

1    narrow circumstances.

2            And those aren't -- those aren't present here.

3    These are former apex attorneys.  They were the highest

4    in-house position at Netlist at the time they were

5    employed.

6            SPECIAL MASTER FOLSOM:  Discovery on a previous

7    motion now; so we'll flip sides, so to speak.

8            Has there been a 30(b)(6) deposition on this

9    issue?

10            MR. PAYNE:  There has, Your Honor.  We produced

11    Mr. Hong, Netlist's CEO, as the 30(b)(6) on both the

12    SK Hynix and the JDLA.  He was questioned extensively

13    about both, and there's been no suggestion at any point

14    that he was unprepared to answer questions or didn't

15    answer questions about either of them.

16            SPECIAL MASTER FOLSOM:  Well, why is this

17    deposition -- are these depositions needed?  Now, you're

18    sort of switching sides on this issue.  I'm sure that

19    you'll say the facts are different, but --

20            MR. CORDELL:  Is that directed to me,

21    Your Honor?

22            SPECIAL MASTER FOLSOM:  Are you responding to

23    this motion?

24            MR. CORDELL:  I am, yes.  Ruffin Cordell for

25    Samsung.

1        SPECIAL MASTER FOLSOM:  So you are, basically,

2   to tie this up, flipping sides on this issue.  I'm sure

3   the facts, you will say, are totally different, but --

4        MR. CORDELL:  No, no.  I think we're actually

5   all on the same side.  And, again, I mean, we're --

6   we're sponsoring the discovery of this evidence.  So

7   Ms. Degnan took you through why the Hynix documents that

8   Hynix had prepared and was ready to produce and was

9   ready to hand to us and then in comes Netlist as a --

10  essentially, as a third party to interfere with their

11  discovery obligations.  I mean, that's -- that's just

12  outrageous.  ███████████████████████████

    ██████████████████████████████████████████

    ████████████████████████████████████████

    █████████████████████████████  And so that

16  information is apart from what we can get from Hynix;

17  right?  We're going to get the Netlist side of the

18  story.

19        And it is correct that, you know, attorneys

20  don't always get deposed or testify, although I was

21  doing some research into a case that you had years ago

22  where, I think, they called Isabella Fu to the stand in

23  a Microsoft case, which was a -- which was very --

24        SPECIAL MASTER FOLSOM:  It's not fair to cite

25  back my orders --

CONFIDENTIAL

84

1          MR. CORDELL:  Well, you -- I think the -- I
2    think they -- they resolved it before she took the
3    stand, but the reality is it does happen.  And the --
4          SPECIAL MASTER FOLSOM:  Why is a 30(b)(6)
5    deposition not sufficient?
6          MR. CORDELL:  Well, because, as Mr. Sheasby
7    very eloquently pointed out earlier, he doesn't get to
8    pick the witnesses I depose.  And the reality --
9          SPECIAL MASTER FOLSOM:  That's why I said
10   you're on opposite sides of the issue now.
11         MR. CORDELL:  Well, you're right about that.
12   And these two gentlemen, you know, they're lawyers, but
13   they were chosen by Netlist to be the negotiators.  So
14   the fact that you hire somebody with a law degree to be
15   your negotiator or appoint them doesn't shield them from
16   discovery.
17         So they -- they will have unique information
18   about this negotiation that'll be very provocative.  But
19   there's more here, in that ██████████████████████████
     ████████████████████████████████    ████████████████
     ██  █████████████████████    And Your Honor was sort of figuring
22   out about that this morning.
23         But the reality is that the JDLA is, for all
24   the reasons Mr. Sheasby offered, of great interest.  We
25   think that it's really a California matter, but they're

CONFIDENTIAL

85

1  making it a matter here.  And all of the issues that

2  Mr. Sheasby previewed for us with respect to the

3  termination of the JDLA and whatnot falls four square --

4  full square on the -- on Mr. Whitley and Mr. Frechette.

5        SPECIAL MASTER FOLSOM:  Yeah.  Well, what

6  testimony would you seek from the in-house on the JDLA?

7  Scope?  Termination?  I mean, are you now trying to fit

8  termination into -- issue with these witnesses?

9        MR. CORDELL:  Well, so Mr. Fourchette wrote --

10 wrote a letter stating that -- that Netlist did -- it

11 was involved in this process.  But we're not -- we're

12 not really pressing them on the termination issue.

13 That's -- that's not their -- that's not their role

14 here.  That's -- that's for California, and we want

15 to -- we want to keep that division very -- very bright.

16       SPECIAL MASTER FOLSOM:  Okay.  Reply?

17       MR. PAYNE:  Yes, Your Honor.  So a couple of

18 things.  This isn't a case where the attorneys are the

19 only people who are knowledgeable about the license.

20 Mr. Hong was knowledgeable about the license and

21 testified about it.

22       SPECIAL MASTER FOLSOM:  What was his

23 position -- refresh my memory --

24       MR. PAYNE:  Excuse me, Your Honor?

25       SPECIAL MASTER FOLSOM:  What was his position

CONFIDENTIAL

86

1    with Netlist, or what is it?

2            MR. PAYNE:  The CEO, Your Honor.

3            SPECIAL MASTER FOLSOM:  CEO.  Okay.

4            MR. PAYNE:  And -- and so there's -- there's no

5    basis for an additional deposition of the attorneys

6    which is -- which is --

7            SPECIAL MASTER FOLSOM:  I thought that they

8    were taken already --

9            MR. PAYNE:  I'm sorry?

10           SPECIAL MASTER FOLSOM:  Has the deposition of

11   the CEO been taken?

12           MR. PAYNE:  It has, Your Honor.

13           On the -- on the JDLA, I think Your Honor has

14   heard quite a bit on that issue, but I'll just

15   highlight, I think, there's a complete inconsistency in

16   the position, which is that Samsung is arguing in this

17   motion it should be allowed to take discovery from

18   Netlist on the JDLA but that Netlist should not able to

19   take discovery from Samsung on the JDLA.  I just don't

20   think that that can be the rule, Your Honor.

21           SPECIAL MASTER FOLSOM:  That went to my point

22   the parties are sort of taking opposite positions that

23   skilled lawyers are quite capable of doing, based upon

24   the facts of the two situations.  But in any event, I

25   understand the issue.

87

1          What do we have next?

2          MR. CORDELL:  Well, maybe just to -- just to

3   tie it all neatly in a bow, Your Honor, we certainly

4   don't sponsor any testimony in this case as to the

5   termination of the JDLA.  We think that's a hundred

6   percent a California issue.

7          SPECIAL MASTER FOLSOM:  I think I know

8   everyone's position on that.

9          MR. CORDELL:  Okay.  Well, I just want to make

10  sure I'm not mis- --

11         SPECIAL MASTER FOLSOM:  Yes.  I'm quite clear

12  on that issue, but I guess you've reinforced it,

13  Mr. Cordell.

14         MR. SHEASBY:  Your Honor, I think the last two

15  issues are two additional subpoenas that have been

16  served that we are seeking to quash, if I -- if memory

17  serves.

18         SPECIAL MASTER FOLSOM:  What docket entries are

19  those, Mr. Sheasby?

20         MR. SHEASBY:  Your Honor, I believe those are

21  Docket 202 and Docket 218.

22         SPECIAL MASTER FOLSOM:  202 and --

23         MR. SHEASBY:  And 2- -- and 218 has been

24  withdrawn, and so all that's left today is 202.

25         SPECIAL MASTER FOLSOM:  Okay.  You may proceed.

CONFIDENTIAL

88

1          MR. CORDELL:  Okay.  I think 202 is mine, and

2     this is our motion to compel the deposition of

3     Dr. Hyun Lee.  Dr. Lee is the only remaining inventor,

4     at least that's connected to the case, for the

5     patents-in-suit.

6          The facts were that he was deposed in the prior

7     case on a different patent that is related to the one in

8     this case, but it's -- we subpoenaed him.  He's no

9     longer employed by -- by Netlist.  However, at least as

10    of about a year ago, he was a consultant and had a

11    consultancy agreement with Netlist and was being paid by

12    Netlist.

13    ████████████████████████████████████████████

      ████████████████████████████████████████████████

      ████████████████████████████████████████████  █

      ████████████████████████████████████████████

      ████████████████████████████████████  ██████████

      ████████████████████████████████████████████████

      ██  ███████

20         The primary response we've gotten is, well,

21    Dr. Lee was deposed on a related patent and, therefore,

22    we should be able to just use his prior deposition.

23    I've read that deposition, Your Honor.  It is remarkable

24    in that he -- he is a very difficult witness, to put it

25    mildly, and the examination that was done of him on --

CONFIDENTIAL

89

 1             SPECIAL MASTER FOLSOM:  Very difficult in what

 2      regard, Mr. Cordell?

 3             MR. CORDELL:  You know, just basic questions,

 4      Your Honor, that -- here I can -- I can share my screen.

 5             SPECIAL MASTER FOLSOM:  Oh, I don't know if I

 6      necessarily need that.  I just --

 7             MR. CORDELL:  We asked him, "You know, do you

 8      consider yourself an employee of Netlist," and he gave

 9      us a seven-sentence response, saying, "I don't know what

10      you're referring to.  What -- you know, I don't know

11      what you mean when you say 'Netlist employee.'  I'm here

12      to testify.  And, you know, would it make me a Netlist

13      employee?  As you mentioned, do you work on behalf of

14      Netlist?  Truly I don't understand."  And so we --

15             SPECIAL MASTER FOLSOM:  That will go back to

16      the jury, Mr. Cordell.

17             MR. CORDELL:  Well, that's true.  That would be

18      useful to show a jury, but the notion --

19             SPECIAL MASTER FOLSOM:  Maybe Mr. Sheasby or

20      someone on his team can better address.

21             Health issue -- is that an issue also in the --

22             MR. SHEASBY:  Your Honor, I'm not arguing it,

23      but I know Dr. Lee personally, and so let me speak to

24      that.

25             Dr. Lee is a very sweet man.  He doesn't speak

CONFIDENTIAL

90

1   English really well at all, and so he requires

2   translation.  He's quite elderly, and he's had a number

3   of health issues.  So I just --

4           SPECIAL MASTER FOLSOM:  How do you define

5   "elderly," Mr. Sheasby?

6           MR. SHEASBY:  I mean -- I mean, elderly in

7   terms of his sort of mental capacity and his -- and

8   he's -- he will openly admit that he's -- he's lost a

9   step or two since his wife died.  And so the only reason

10  I want to flag is what Mr. Cordell says is irascibility

11  is really just someone who is -- who has lost a couple

12  of steps and doesn't speak English.  That was the only

13  point I was trying to make.

14          SPECIAL MASTER FOLSOM:  Full time allotted or

15  with -- since he's been previously deposed, or do you

16  think you need the full allowed under the rules, if I

17  grant the request?

18          MR. CORDELL:  Your Honor, we had offered, I

19  think, to take four hours at some point and had gone

20  back and forth about that.  But I've got to tell you,

21  having read the deposition, I really worry about that.

22  It is true that he was a translated deponent and that

23  certainly requires a lot more time.  But in particular

24  with him, having read that transcript, I think we really

25  need the full seven hours.

CONFIDENTIAL

91

1              His -- I understand his English skills.  And,

2    look, we represent Samsung; right?  So we're -- we're

3    not going to throw bricks at anybody that needs a

4    translator.  But Dr. Lee has been in this country for

5    over 50 years.  He went to Michigan in the '70s.  He got

6    two degrees from Michigan and one from Lehigh.  He's

7    worked for Bell Labs and for Qualcomm and for, I mean, a

8    variety of companies for 50 years.

9              SPECIAL MASTER FOLSOM:  That's not to his

10   English ability; so let's -- let's have a response, and

11   I'll give you a chance to reply.

12             MR. CORDELL:  Sure.

13             MR. TEZYAN:  I'll be responding for this one.

14   Michael Tezyan on behalf of Netlist.

15             SPECIAL MASTER FOLSOM:  I guess, actually,

16   since the patents in Samsung 1 were not involved, these

17   are new patents in this case, why shouldn't they be

18   given the opportunity to take Dr. Lee's deposition?

19             MR. TEZYAN:  It's a fair question.  Let me

20   start out by clarifying that only one of the patents at

21   issue in this case is a patent on which Dr. Lee is a

22   coinventor.  The other two patents before Your Honor,

23   the '912 and '417 patents, those have different

24   inventors.

25             One of those inventors is Mr. Jeffrey Solomon,

CONFIDENTIAL

92

1    and Samsung actually deposed Mr. Jeffrey Solomon in this

2    case.  Right.  So Dr. Lee doesn't have any unique

3    personal knowledge for the '912 and '417 patents.  The

4    only argument --

5            SPECIAL MASTER FOLSOM:  Can I ask that he

6    doesn't have knowledge, if that's case?

7            MR. TEZYAN:  Well, it just means that since

8    they've deposed the other coinventor, it doesn't seem

9    like there's --

10           SPECIAL MASTER FOLSOM:  So I'll just trust you

11   that he doesn't know anything about these topics?

12           MR. TEZYAN:  Well, so one of the bases that

13   they've pointed to in their motion was that Dr. Lee is

14   Netlist's longtime chief technology officer; right?  And

15   he just has this background about Netlist technology

16   that's relevant to not only the '608 patent but the

17   other patents as well.

18           And that was actually explored in the last

19   deposition too.  I mean, on page 2 of our opposition, we

20   quote deposition testimony about the LRD/DxD projects

21   that he worked on at Netlist.  Those are the projects

22   that spun off the other two patents, the '912 and the

23   '417.  So, again, I just don't see a need justifying an

24   additional deposition, when a lot of this was covered in

25   the prior deposition and was covered by Samsung's

93

1    capable counsel.

2           And so the other point I'd like to make is

3    that, you know, in addition to his English-speaking

4    skills, Dr. Lee is not a lawyer; right?  He was asked

5    several questions last time about the claims of the '506

6    patent, and his answers were that he just didn't

7    understand the claims because, one, he wasn't involved

8    in any of the prosecution of the '506 patent or any of

9    the patents in the family of the '506, which includes

10   the related '608 patent in this case.

11          And the other point is he just doesn't

12   understand the claims because of the way they're

13   written.  They're very long claims.  And as an engineer,

14   he just doesn't have the ability to parse out and

15   understand the claim language.

16          SPECIAL MASTER FOLSOM:  I guess you have relief

17   from the hotline, if you want to make a call to whomever

18   is on duty.

19          MR. TEZYAN:  Was that directed to Mr. Cordell

20   or to me, Your Honor?

21          SPECIAL MASTER FOLSOM:  To you.  I'm sure

22   Mr. Cordell would be happy to answer, but --

23          MR. CORDELL:  I don't generally call the

24   hotline in my own depositions.  It's --

25          SPECIAL MASTER FOLSOM:  Anyway, tongue in

CONFIDENTIAL

94

1  cheek, I understand the issue, and I'm certainly

2  inclined to grant the deposition in some fashion.  I

3  guess, you can just decide if seven hours is appropriate

4  or not under the -- I guess, there's no opposition to

5  the deposition in the first case being used; is that

6  correct?  Dr. Lee's first deposition?

7          MR. TEZYAN:  That's correct, Your Honor.

8          SPECIAL MASTER FOLSOM:  Yeah.

9          MR. SHEASBY:  And, Your Honor, this is

10  Jason Sheasby.  Just let me flag precisely what the

11  issue is.

12          Dr. Lee was retired by the time the patent that

13  they're focused on was filed.  Dr. Lee was the head of a

14  research program from which a parent application was

15  filed and then a number of children have proliferated.

16  The parent applications were filed and a number of

17  children were proliferated.  So they've had a full time

18  to ask him -- the full deposition time to ask him about

19  that research program.

20          The only thing that's left is specifically on

21  this one patent, and the idea that they need seven hours

22  to ask him about one patent that he wasn't even around

23  when it was -- when it was actually filed and he doesn't

24  understand claims, because he's not a lawyer, I think

25  that that's what Mr. Tezyan says is -- it seems that

CONFIDENTIAL

95

1    it's strategic in a sense that taking a very elderly

2    witness, who has problems, and exposing him to a

3    seven-hour deposition --

4                SPECIAL MASTER FOLSOM:  Well, that's why I'm

5    asking -- there's no opposition to the first deposition

6    being used in Samsung 2; is that correct?

7                MR. SHEASBY:  Not at all.  And this is the

8    first we've heard that he was nonresponsive.  There was

9    never a motion made that he --

10                SPECIAL MASTER FOLSOM:  I'm not -- that's not

11   my role in monitoring that deposition.  It's already

12   taken place.

13                I'm inclined to grant it.  I'll just decide on

14   it.  I'm not inclined to give him seven hours under

15   these circumstances.

16                MR. CORDELL:  So, Your Honor, if I could just

17   make one pitch.  I mean, I appreciate Mr. Sheasby's

18   reassurances and Mr. Tezyan's reassurances, but at the

19   same time, in their motion to amend, they went well out

20   of their way to argue about how this patent covers

21   different subject matter from the prior one.

22                And, yes, we questioned him, in general, about

23   the prior patent, but these are different claims.  It's

24   a different invention.  It's --

25                SPECIAL MASTER FOLSOM:  Understood.

CONFIDENTIAL

96

1          MR. CORDELL:  -- by their own terms.  We

2    didn't --

3          SPECIAL MASTER FOLSOM:  Heard enough on this

4    issue.

5          Is that --

6          MR. CORDELL:  Well, can I -- can I belabor it

7    one more moment, Your Honor, and suggest that, if need

8    be, we're happy to divide it up over two days.  If he

9    needs a couple of sessions, because of his age or

10   infirmity, we can do shorter sessions over two days.

11   That's fine.

12         SPECIAL MASTER FOLSOM:  If that's helpful, I

13   will -- like I said, I'm inclined to allow the

14   deposition.  I will specify how much time.  And if

15   Dr. Lee wants to divide the time over two days, I will

16   allow him to do so.

17         MR. CORDELL:  Thank you.

18         SPECIAL MASTER FOLSOM:  Okay?  Does that

19   cover -- have we now addressed all the motions?

20         MR. SHEASBY:  We have, Your Honor.

21         MR. McKEON:  We have, Your Honor.

22         SPECIAL MASTER FOLSOM:  Well, you -- you know,

23   I started to say you've given me back time, but it's

24   after lunch.  No, I appreciate everyone's streamlining

25   this.  Appreciate your comments.  And I've got to commit

CONFIDENTIAL

97

1   to try to have an order out, you know, sometime in the

2   next week or so, realizing time is somewhat of the

3   essence.  But I'll be seeing some of you next week.

4          With that in mind, I'm going to let some of you

5   go.  It's not because -- I just want to have a little

6   smaller group to talk about another case that everyone's

7   involved in.

8          Mr. Sheasby, Mr. Baxter, Ms. Truelove,

9   Mr. Cordell, Mr. McKeon, and Ms. Smith, if you'll stay

10  on with me, I want to talk about another matter.

11         MR. SHEASBY:  Yes, Your Honor.

12         SPECIAL MASTER FOLSOM:  Okay.  Everyone else,

13  have a pleasant day.

14         (The proceedings concluded at 10:05 A.M.)

15                         *   *   *

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL

98

1    STATE OF CALIFORNIA          )

                                  )    ss.

2    COUNTY OF ORANGE             )

3

4            I, Lena Mescall, Certified Shorthand Reporter,

5    Certificate No. 13018, for the State of California,

6    hereby certify:

7            I am the person that stenographically recorded

8    the transcript of proceedings held on Friday, January 5,

9    2024.

10           The foregoing transcript is a true record of

11   said proceedings.

12

13

14   Dated: January 8, 2024.

15

16

17

18

19       Lena Mescall, CSR No. 13018, RPR

20

21

22

23

24

25

**&**

**&**    3:12 4:2,13
  4:19 5:2,8

**0**

**00293**    1:10
  2:10
**00294**    1:16
  2:16

**1**

**1**    1:25 18:22
  19:11 20:13,22
  22:2,20 54:9
  55:25 63:19
  65:19 66:5,17
  66:20,25 67:7
  68:1,2,4 69:14
  69:20,24 70:8
  71:13 73:9
  76:8 91:16
**100**    5:10 59:3
**1000**    4:6
**104**    3:6
**10:05**    2:23 7:2
  97:14
**115**    63:16
**11:05**    45:25
**123**    18:18
**12638**    98:18
**13018**    1:24
  2:25 98:5,19
**139**    64:16,21,23
  64:24 65:1,6,7
  77:16 78:4

**142**    64:16,21,24
  65:1 77:10
**17th**    44:13
**1800**    3:16
**193**    46:14,22
  47:16,23,25
  55:3,10 62:13
  62:13
**199**    46:14,23
  55:4,5 64:9,12
  64:19,25 65:2
  81:8
**1999**    4:21
**19th**    26:23,24
  27:3,5 28:16
  28:20

**2**

**2**    18:19,22
  20:22 22:1,21
  38:16 77:18
  87:23 92:19
  95:6
**20024**    4:7
**202**    87:21,22,24
  88:1
**202.783.5070**
  4:8
**2020**    48:25
**2023**    8:25
  71:22
**2024**    1:22 2:24
  7:2 9:2 98:9,14
**218**    87:21,23
**220**    13:2,15,16
  16:15 27:19

**221**    25:14
**222**    29:1,5
**223**    27:14
  28:16
**224**    46:14,24
  47:16,23 55:3
  55:8,10,14
  57:15,16
**225**    46:15,24
  47:16,23 55:3
  55:8,10,11
**22nd**    8:25 10:9
  10:19
**24**    56:6 62:8
**247**    71:23
**25**    71:23
**255**    5:4
**26**    80:24
**271**    31:21 45:2
**274**    33:2
**28**    71:22
**2:22**    1:10,16
  2:10,16
**2nd**    9:2

**3**

**3**    18:19
**30**    33:16 54:6
  57:25 61:18
  82:8,11 84:4
**300**    3:6
**303**    4:15 36:25
  37:17
**310.203.7128**
  3:18

**310.246.6784**
  4:23

**4**

**4**    45:3 74:2,6
**417**    91:23 92:3
  92:23
**42**    65:6
**427**    77:4

**5**

**5**    1:22 2:24 7:2
  17:10 27:18
  39:10 74:10
  98:8
**50**    91:5,8
**506**    93:5,8,9
**520**    5:4
**5:00**    28:21

**6**

**6**    17:10 27:18
  33:16 54:6
  57:25 61:18
  82:8,11 84:4
**6.2**    50:6 53:16
  62:20
**6.2.**    62:14
**60**    56:7
**608**    92:16
  93:10
**6388749**    1:24
**6500**    5:10

**7**

**70s**    91:5
**75503**    5:11

| | | | |
|---|---|---|---|
| **75670**   3:7 4:16 | **absolutely** | 57:24 68:22 | **agenda**   45:11 |
| **8** | 12:18 20:14 | 70:14 73:16 | **ago**   25:25 |
| **8**   66:5 98:14 | 34:4 | 75:4,6,23 76:7 | 83:21 88:10 |
| **80**   59:2 | **abstract**   34:20 | 83:4 91:15 | **agree**   10:1,3 |
| **854**   77:4 | 34:21,22 | 92:1,18 94:23 | 27:5 28:3,14 |
| **8:07**   2:23 7:2 | **abundantly** | **add**   80:23 | 45:12 51:11 |
| **8th**   4:21 | 50:10 | **adding**   9:2 | 54:18,25 63:21 |
| **9** | **abuse**   43:8 | **addition**   8:5 | 69:13,18 73:8 |
| **9**   35:2 | **access**   33:12 | 52:12 93:3 | 79:19 |
| **9,041,580**   40:4 | **account**   73:15 | **additional**   8:8 | **agreeable** |
| **900**   3:16 | 73:19 | 9:3 19:1,10 | 11:18 12:14 |
| **90067**   3:17 | **accurate**   30:24 | 22:5 32:21 | 27:8 64:15 |
| 4:22 | 60:20 | 55:11 81:18 | **agreed**   11:8 |
| **903.255.1000** | **accused**   14:15 | 86:5 87:15 | 16:21 38:9,9 |
| 5:12 | 14:16,20,24 | 92:24 | 38:15 39:7 |
| **903.923.9000** | 15:1,11 16:6 | **additionally** | 42:1 43:17,17 |
| 3:8 | 16:23 17:24 | 47:2 | 45:7 63:21,21 |
| **903.934.8450** | 18:2 19:18,22 | **address**   11:5 | **agreeing**   29:12 |
| 4:17 | 19:25 20:2,4,4 | 29:16,22 45:5 | **agreement**   52:4 |
| **912**   35:22 | 20:6 21:1 22:8 | 55:15 62:3 | 54:9 60:15,15 |
| 91:23 92:3,22 | 22:25 24:23 | 89:20 | 63:22,25 64:2 |
| **94065**   5:5 | 29:8 | **addressed** | 64:3,18 65:9 |
| **98**   1:25 | **acting**   40:16 | 10:22,23 13:8 | 65:10,11,12,15 |
| **99**   40:4 | **action**   27:6 | 13:12 22:12,24 | 65:18,18,21,24 |
| **a** | 42:12,14 48:24 | 28:9 45:2 | 66:13 67:2,24 |
| **a.m.**   2:23,23 | 79:21 81:1 | 96:19 | 68:12,15,22 |
| 7:2,2 97:14 | **activities**   15:21 | **addressing** | 70:12 71:9,11 |
| **ability**   91:10 | 15:23 | 29:2 46:6 55:6 | 72:24 73:13,17 |
| 93:14 | **activity**   15:18 | **adjustment** | 73:25 74:16,17 |
| **able**   53:11 | **actual**   37:14 | 65:20,22 | 74:23,24 75:1 |
| 86:18 88:22 | 61:5 70:12 | **admit**   36:15,16 | 75:11 88:11 |
| **above**   21:17 | 71:8 | 90:8 | **agreements** |
| **absence**   72:20 | **actually**   11:19 | **afternoon**   9:5 | 9:17 72:9 75:2 |
| | 16:14 18:9 | **age**   96:9 | **ahead**   59:23 |
| | 20:20 30:20 | | |

**al**  1:8,15 2:8,15
**allegation**
  42:16 53:17
**alleged**  53:19
**alleges**  23:6
**allocate**  67:7
**allotted**  90:14
**allow**  11:7,21
  32:21 33:12
  34:11 96:13,16
**allowed**  32:14
  32:18 76:24
  86:17 90:16
**alternative**
  42:4,6
**alucas**  4:24
**amend**  95:19
**america**  21:9
  22:9
**amy**  4:20 8:6
**analysis**  65:16
  66:13 67:2,24
  69:17 70:23
  71:4,7 76:6
**analyzed**  71:12
**angeles**  3:17
  4:22
**annually**  17:21
**answer**  35:17
  36:10 42:5
  43:2 52:19
  68:23 82:14,15
  93:22
**answered**
  21:23,23 23:5

  44:7 52:24
  69:2
**answering**
  21:24
**answers**  35:25
  93:6
**anticipating**
  9:12,12
**anybody**  91:3
**anymore**  44:2
**anyway**  93:25
**apart**  83:16
**apex**  56:15,16
  56:23,24 57:11
  61:3,9,13,25
  82:3
**apiece**  88:15
**apparently**
  68:8
**appearances**
  3:1
**appearing**  7:10
  8:17
**appears**  76:8
**appendix**  37:1
  37:13,17 38:4
**apple**  67:3
  74:12
**application**
  94:14
**applications**
  94:16
**applies**  28:10
**apply**  74:8

**appoint**  84:15
**appointing**
  8:25
**apportionment**
  69:17 70:10,23
  70:25
**appreciate**  8:22
  9:3,8 25:10
  44:22 53:7
  95:17 96:24,25
**approach**  47:4
  50:15
**appropriate**
  58:9 81:21,25
  94:3
**appropriately**
  46:12
**approved**
  57:23
**approximately**
  45:25
**arbitrary**  70:25
**architecture**
  17:20
**argue**  25:17
  47:1 95:20
**argued**  47:11
  67:13 72:5,6
**arguing**  13:21
  13:24,25 50:3
  65:6 86:16
  89:22
**argument**
  35:11,12 42:4
  42:25 59:4

  67:19,23 70:21
  71:2 74:11
  75:11 92:4
**arguments**
  32:2 35:11
  47:12 55:10
**article**  39:25
  40:7,8
**asked**  18:17
  19:6 21:22
  33:25 35:23
  36:2 38:18
  40:14,17 43:6
  44:3 50:13
  69:1 76:22
  89:7 93:4
**asking**  19:7
  21:17 23:4,13
  30:6 35:12,18
  38:8,23 39:2
  42:14 43:1,20
  63:13 95:5
**aspect**  51:13
**aspects**  51:12
**asserted**  70:13
  70:17,17,18,20
  73:14,16
**assess**  67:16
**assessed**  68:3
**assisting**  7:13
**associate**  7:12
**assuming**  12:23
**assured**  11:1
**attached**  9:22

**attempted** 52:18
**attend** 11:16 12:1
**attending** 8:22
**attention** 77:8
**attests** 19:23 24:20
**attorneys** 77:20 81:15,21,25 82:3 83:19 85:18 86:5
**authority** 80:17
**avenue** 3:16 4:6 4:15,21
**avoid** 52:18
**aware** 62:16

**b**

**b** 4:3 33:16 54:6 57:25 61:18 82:8,11 84:4
**back** 10:25 12:5 18:9 28:8 45:24 59:12 83:25 89:15 90:20 96:23
**background** 66:2 70:16 92:15
**balancing** 68:4
**based** 24:9 56:23 64:5 71:3 72:20 86:23

**bases** 92:12
**basic** 89:3
**basically** 14:7 14:18,25 16:7 17:11,17 19:14 19:20 22:18 24:19 35:8 48:19 83:1
**basis** 49:12,12 63:20 67:25 72:14 86:5
**basket** 53:21
**baxter** 3:5 7:21 97:8
**beginning** 2:22
**behalf** 7:19 8:1 25:20 45:12 61:19 89:13 91:14
**belabor** 96:6
**believe** 12:25 13:23 22:13 26:14,24 29:24 30:6 33:2 36:25 44:13 45:2 47:2 54:13 66:6 79:8 81:2 87:20
**believed** 54:20
**bell** 91:7
**benefit** 7:6 8:15
**benefits** 20:3 24:17,22

**best** 46:4 65:1
**better** 35:6,7 50:15,15 59:15 89:20
**beyond** 21:18
**billion** 56:6 62:8
**binding** 68:3
**bit** 86:14
**bleed** 55:4,8
**blocking** 53:2
**blur** 63:1
**boiled** 16:16
**bottom** 38:16
**bow** 87:3
**breach** 49:25 53:17,19 54:1 55:19 56:22 63:14
**break** 45:20,22 45:24 46:2
**bricks** 91:3
**brief** 9:7 11:8 34:18 36:25 39:24 42:15 43:10,12,14,23 44:8,11 55:13
**briefed** 60:9 79:3
**briefing** 11:7 25:23 32:2,13 32:14,21,22 33:2,6 49:3 52:10 62:24 74:22 76:3

**briefly** 16:12
**briefs** 25:25 77:3
**bright** 85:15
**broader** 80:17
**broke** 37:1
**brought** 11:1 54:8
**bucket** 47:16
**bundle** 54:1
**burden** 57:8 77:22 79:24
**burdensome** 16:5
**business** 17:19 17:20 60:13

**c**

**c** 80:24
**california** 3:17 4:22 5:5 7:1 48:21,24 49:14 50:1,7 51:19 52:9 53:10,13 54:2,15,23 55:20 56:22 57:10 62:10,11 62:23 63:18 84:25 85:14 87:6 98:1,5
**call** 93:17,23
**called** 12:5 29:7 56:5 65:10 71:8 83:22
**calls** 11:25

**[capable - clear]**                                                                          5

capable   86:23
   93:1
capacity   90:7
care   16:25
   24:11 25:8
   44:16 60:12,12
carnegie   15:20
case   1:9,10,16
   1:17 2:9,10,16
   2:17 9:10,22
   10:9,12,19
   11:22 15:4,6,7
   15:10,19 16:5
   16:5,19 18:19
   18:22,22 19:6
   19:11 20:1,13
   21:3,11,19
   22:1,2,13,19,21
   29:17 30:1,9
   30:14 34:1
   40:5,13 41:22
   43:4 48:24,25
   51:4,4,14 52:6
   54:7,7 56:5,13
   56:22 58:12,13
   62:6 63:19
   65:14,17,19
   66:14 67:10,22
   68:10 69:11,23
   69:25 70:11,19
   70:20 71:7,19
   71:21 72:10
   75:4 78:16,22
   78:22 83:21,23
   85:18 87:4

88:4,7,8 91:17
   91:21 92:2,6
   93:10 94:5
   97:6
cases   23:25
   30:9,17 35:20
   40:1,2,14
   50:14 80:14,15
categories   14:8
   17:9,12
category   14:11
   17:5,6 18:2
   22:18 23:1
   24:11,16 76:24
caused   67:14
ceased   60:18
central   11:5
   28:21 45:25
   48:20 49:14
   50:1,7 51:19
   52:9
ceo   56:7,16,24
   62:8 82:11
   86:2,3,11
certain   14:16
   16:20 18:1
   37:2,14,15
   38:8,21,22
certainly   32:10
   51:9 65:12
   66:21 75:1
   79:7 87:3
   90:23 94:1
certificate   98:5

certified   2:24
   98:4
certify   98:6
cetera   39:19
challenge   70:22
   71:3
challenges
   35:20
chance   91:11
change   72:12
charles   77:3
   78:16,22
cheek   94:1
chestney   3:14
   7:22 13:25
   14:2,5,5,23
   15:5,14 16:17
   17:1,4,17 18:4
   18:10,20 19:13
   20:9,17,20
   21:19 22:6,23
   23:4,12,19
   24:13,16 25:9
chief   92:14
children   94:15
   94:17
choi   50:2,5
   55:17 56:4
   57:22 58:10,10
   58:14,23 59:21
   60:4,8,22 61:6
   62:4,5,15
choi's   62:12,22
chose   68:12

chosen   84:13
circuit   15:19
   48:7 49:13
   50:11 71:7
   81:22
circulated   12:2
circumstances
   82:1 95:15
cite   80:14 83:24
cited   40:1
   76:23 77:3
   81:23
cites   67:21
city   5:5
civil   1:9,16 2:9
   2:16 40:11
claim   93:15
claims   43:3
   93:5,7,12,13
   94:24 95:23
clarify   22:6
clarifying   53:7
   91:20
clarity   54:11
classic   56:16
clear   20:9
   21:12 29:11
   42:17 48:22
   49:10,20 50:10
   51:4,17 52:7
   53:8,15,21,23
   53:24,25 55:18
   58:15 59:6
   63:24 64:5
   75:24 76:3,3

79:21 81:24
87:11
**clearer** 50:24
**clearly** 48:6
49:24 53:3
54:21 60:4
62:14
**clerk** 7:11
**close** 16:10
62:17
**closed** 12:6
33:3,6
**cnbu** 17:18
**coinventor**
91:22 92:8
**come** 79:5,6
**comes** 83:9
**comfortable**
27:7
**coming** 88:16
**comments** 7:16
24:9 55:11
73:21 80:20
96:25
**commit** 26:19
96:25
**commitment**
60:18
**committed**
25:25 26:1
28:8 60:16
**common** 30:2
58:18
**communicati...**
38:22 66:7

75:15
**companies** 91:8
**company** 29:7
56:5,6,8,16,25
58:14,16,21,22
59:2,7 61:20
62:8
**comparable**
65:15,18 66:12
66:13 67:2,24
76:5
**compared** 67:1
**compel** 13:1,18
25:3 27:16
32:17 47:18
55:16 65:7
88:2
**complete** 17:13
17:16,24 75:14
86:15
**completed**
52:11
**completely**
28:3 54:23
59:24 63:3,4
**complicated**
40:12
**complied** 19:10
**compromise**
37:4
**compton** 4:5
73:24 74:2,19
74:25 77:2
**computer**
17:18

**computers**
75:24
**conceded** 58:8
**concepts** 34:20
**concern** 22:18
22:20
**concerned**
10:14
**concluded**
97:14
**concludes** 79:4
**conditionally**
38:9 39:7
**confer** 16:18
17:7 26:25
**conference**
61:11 71:21
72:6,7
**conferred**
63:15
**confidential**
1:19 29:25
30:8,11 33:20
34:2,6,7,10,12
34:13,15,17,19
34:24 35:1
36:15,24 37:3
37:10,15 38:24
39:5,13,14,18
41:19,21 42:2
42:20
**confidentiality**
30:18
**confirmed** 23:9
24:3

**confronted**
67:11
**confused** 49:4
**confusion**
58:11 60:1
**conglomerate**
58:19
**congress** 36:4
**connected** 88:4
**connection**
65:9,15
**consent** 30:12
**consents** 30:14
**consider** 66:22
71:5 89:8
**consistent**
20:12 71:8
79:8
**construed** 44:1
**consultancy**
88:11
**consultant**
88:10
**contact** 30:24
**contain** 30:7
**context** 16:10
**continue** 32:23
**contract** 73:20
**contradictory**
66:22
**contrary** 11:9
**control** 57:4,7
79:23
**controlled**
61:23

**controlling**
66:21 68:24,25
**convention**
56:9 57:12
61:4
**conversations**
34:22
**cordell**  4:3,9
8:2,5 10:2,2
55:6 64:13
82:20,24,24
83:4 84:1,6,11
85:9 87:2,9,13
88:1 89:2,3,7
89:16,17 90:10
90:18 91:12
93:19,22,23
95:16 96:1,6
96:17 97:9
**cordell's**  81:9
**corporate**
12:11
**correct**  9:11
10:12,14,18
15:13 18:23,24
22:2,3,20
23:18 34:3
41:5,14 46:19
48:10 66:17
73:12 79:13
80:3,6 81:4
83:19 94:6,7
95:6
**counsel**  7:11
10:25 11:22

12:14 26:24
30:22 74:20
93:1
**counsel's**  80:23
**country**  91:4
**county**  98:2
**couple**  8:23
11:25 18:13
80:14 85:17
90:11 96:9
**course**  12:11
27:1 54:17,18
67:6 81:2
**court**  1:1 2:1
7:6 8:16,20
15:8,25 19:6
33:11,17 35:14
35:20 39:15,25
41:25 43:22,25
44:2 49:6 53:1
53:1 54:2
56:22,23 58:9
60:3,4 61:8,8,9
61:24 62:24
63:24 71:4
81:1,2,4,23
**court's**  13:14
41:20,25 42:9
42:10
**courts**  40:6
**cover**  96:19
**covered**  24:18
41:21 92:24,25
**covers**  51:14
75:3 95:20

**created**  36:4
48:22,23
**criticism**  35:16
69:15 72:17,19
72:23 80:4
**criticized**  73:5
73:9,13
**cross**  6:2
**csr**  1:24 98:19
**custody**  79:23
**customers**  15:2
**cut**  60:6
**cv**  1:10,16 2:10
2:16
**cyr**  33:15 38:12
**cyr's**  39:3

**d**

**d**  6:1
**damage**  69:16
70:4,4 72:18
73:5,9
**damages**  13:19
22:16 27:19
65:13 66:13
67:1 69:23,24
72:20,24
**daniel**  4:4 8:2
**darby**  5:9
**date**  26:1,5
28:17,18 44:12
**dated**  98:14
**dates**  26:15
**daubert**  69:15
**david**  1:21 2:22
3:15 7:22

25:19
**davis**  4:5 8:3
**day**  7:17 12:20
13:4 16:18
97:13
**days**  25:25 96:8
96:10,15
**dc**  4:7
**ddoan**  5:13
**de**  34:6,9 36:17
38:8,11,16
39:2,7 42:1,7,8
43:17,21,24
**deal**  64:17
84:20
**dealing**  63:7
**dealt**  25:22
**december**  8:25
10:25
**decide**  58:2
67:8 94:3
95:13
**decision**  48:7
49:13 52:12
60:5,6,23
61:17 71:22
**declaration**
58:15 61:5
**declaratory**
48:24
**declined**  33:20
33:21 52:6
**defendant**  4:1
5:1 29:4 40:5

CONFIDENTIAL

**defendants** 1:9 1:16 2:9,16 7:16 8:13 30:8 56:4 62:6
**defense** 46:12 51:2,5,12
**define** 90:4
**definitely** 68:23 73:22
**definition** 38:20
**definitive** 20:23
**degnan** 4:4,10 8:2 65:5,5 66:18 69:2 71:20,25 72:22 73:22 74:4 75:23 77:1,9 79:16,18 80:10 81:8 83:7
**degree** 84:14
**degrees** 91:6
**demonstrated** 57:6
**demonstration** 56:17,20 57:7
**denied** 51:3,4 52:21 62:11 77:24
**deny** 60:8
**depart** 11:22
**deponent** 90:22
**depose** 81:14 84:8

**deposed** 26:17 83:20 88:6,21 90:15 92:1,8
**deposition** 26:15 27:4,8 33:15 37:2 48:4 49:23 54:16 55:16 56:10,23 57:3 62:11 63:10,11 63:12,17,17,18 64:4 81:21 82:8,17 84:5 86:5,10 88:2 88:13,22,23 90:21 91:18 92:19,20,24,25 94:2,5,6,18 95:3,5,11 96:14
**depositions** 26:3,8,19 33:19 41:8 81:24 82:17 93:24
**describe** 66:9
**described** 88:16
**describing** 66:10
**designate** 33:21 34:6,12 38:8 38:11,16 39:2 39:7 42:8 43:17,24

**designated** 34:5,9 35:9 36:17 39:5 42:1,7 43:21
**designed** 14:14
**despite** 42:21 63:17
**destinations** 23:10 24:4
**determine** 21:7 23:7 65:22
**determined** 16:1 21:14 38:19
**developed** 14:15
**died** 90:9
**different** 14:8 15:21 21:17 30:25 40:3 47:8 59:2 63:3 68:24 69:23 70:7,18,19 73:4 78:23 82:19 83:3 88:7 91:23 95:21,23,24
**differently** 50:16
**difficult** 88:24 89:1
**difficulty** 8:20
**direct** 6:2
**directed** 49:24 53:9 82:20

**designated** 93:19
**directly** 22:12 36:11 52:5
**disagree** 66:18 79:18,25
**discoverability** 81:17
**discoverable** 68:5 79:3,7 81:20
**discovery** 9:1 18:12,14 32:17 33:6 39:11,14 40:2,7,11,21 41:6 42:11 48:5 51:22,25 52:25 53:2,11 54:22 58:2 61:20 64:17 67:14 72:7 75:15,15 76:9 76:20,24 81:12 82:6 83:6,11 84:16 86:17,19
**discuss** 40:2 74:12
**discussed** 23:5 28:4
**discussion** 16:19 24:19 71:13
**disfavored** 81:22
**dismiss** 31:13

[display - enter]                                                                        9

| | | | |
|---|---|---|---|
| **display** 56:5 59:6 | **docket** 10:20 12:24 13:2,6 | **doing** 50:17 54:3 59:13 | **either** 9:22 19:15,17,17 |
| **dispute** 14:8 15:6 29:24 34:16,18 36:24 39:23 41:19 50:8 52:8 77:13,15 | 13:15 16:15 18:18 25:14 27:12,14,18 28:16 29:1,5 31:21 33:2 36:25 37:17 | 67:7,10 83:21 86:23 **dovetail** 79:11 **dr** 88:3,3,21 89:23,25 91:4 91:18,21 92:2 92:13 93:4 | 20:24 21:10 26:16 29:7 33:3 71:16 78:9 82:15 **elaborate** 78:24 **elaboration** 57:18 |
| **disputed** 17:7 18:11 | 45:2 62:13 71:16 81:7 | 94:6,12,13 96:15 | **elderly** 90:2,5,6 95:1 |
| **disputes** 18:12 43:3 65:24 | 87:18,21,21 **doctrine** 61:3 | **draw** 60:2 **drawn** 54:21 | **electric** 58:21 **electronic** 59:3 |
| **disputing** 35:24 42:19 | **document** 18:16 19:5 | **drive** 5:4 **driving** 73:17 | **electronics** 1:8 2:8 4:1 58:13 |
| **dissatisfied** 33:22 | 39:13,14 **documentary** | **drop** 39:9 **dual** 42:5,18,19 | 58:16,17,22,24 59:7 |
| **distinguished** 40:6 | 23:14 **documents** | **due** 10:16 11:3 **duty** 93:18 | **eloquently** 84:7 **email** 12:2,8 |
| **district** 1:1,2 2:1,2 15:8 16:1 35:13,19 41:20 43:22 48:20 49:6,14 50:1,7 51:19 52:9 72:5 80:6,16 | 13:18 14:8,11 16:2,3,6,17 17:5,9,12,20 19:16,20,22,24 20:1,12 22:19 22:22 24:17,21 25:3,5 39:11 | **dxd** 92:20 | **employed** 82:5 88:9 **employee** 56:12 61:6 62:5 89:8 89:11,13 **employees** 56:7 |
| | | **e** | |
| | | **e** 6:1 77:2,3 78:16,22 | **encourage** 32:23 |
| **divide** 96:8,15 **division** 1:3 2:3 48:20 58:22 59:1 60:23 85:15 | 39:18,18 59:18 60:5 65:8 68:20 69:17 71:6 72:17 73:10 76:5,25 | **earlier** 33:25 84:7 **easier** 59:15 **east** 3:6 48:6,21 80:16 | **ended** 21:8 60:18 **engineer** 24:5 93:13 |
| **divisions** 58:20 58:20 | 77:14 78:11 79:22 81:20 | **eastern** 1:2 2:2 15:8,25 49:6 80:5 | **english** 90:1,12 91:1,10 93:3 |
| **dkahn** 3:21 **doan** 5:8,9 8:9 8:13 | 83:7 **dog** 41:1 | **easy** 46:4 **efforts** 9:4,8 44:22 | **enter** 24:9 |

| | | | f |
|---|---|---|---|

**entered** 8:24
9:2 34:1 75:21
**entire** 12:5
**entirely** 79:21
**entities** 56:13
**entitled** 43:10
56:17 58:3
**entity** 58:14
**entries** 87:18
**entry** 71:16
81:7,7
**esq** 3:5,5,13,13
3:14,14,15 4:3
4:3,4,4,5,14,20
5:3,3,9
**essence** 36:5
97:3
**essentially**
14:12 15:14,25
30:4 83:10
**establish** 42:13
42:16 43:4
**establishes**
75:6
**establishing**
15:23
**et** 1:8,15 2:8,15
39:19
**evaluate** 68:11
**event** 9:8 46:3
49:7 86:24
**everybody** 8:3
**everyone's**
44:22 47:3
87:8 96:24

97:6
**evidence** 21:11
56:14 61:6,23
67:3,5 68:19
74:15 75:5
76:14,15 83:6
**exact** 69:11
73:18
**exactly** 18:10
18:19,24 39:20
54:2 67:9
73:25 79:23
**examination**
88:25
**examined** 75:4
**example** 17:18
17:19 21:8
35:22
**examples** 36:7
**except** 36:17
81:25
**exception**
75:25
**excuse** 34:21
45:1 66:7,12
74:4 85:24
**executive** 60:22
**executives**
88:17
**exhibit** 66:5
77:18
**exhibits** 6:6
**exist** 25:6
**existence** 23:21

**expedite** 31:1
**expert** 13:7,10
26:15,17,17,19
27:4,7 29:6
30:2 65:13,13
65:17 66:13
67:6,9 68:8
69:23,24 70:5
70:10,23 71:12
72:18,20,24
73:6,9 74:12
76:14,21
**expert's** 67:15
**experts** 29:9
30:2,4 67:1
69:16
**explain** 37:6
38:10 43:20
66:19
**explained** 12:4
43:22
**explicitly** 22:24
**explore** 58:3
**explored** 92:18
**exposing** 95:2
**expressly** 80:24
**extensively**
82:12
**extent** 20:7
25:6 28:14
38:22 47:1
**eyes** 77:20

**f** 3:5
**f.supp.2nd** 77:4
**face** 73:19
**fact** 19:24
34:24 41:25
42:18,21 60:4
62:7 67:12,18
67:21 73:13
78:11 84:14
**facts** 67:12
68:24 82:19
83:3 86:24
88:6,13
**failing** 69:16
**fails** 57:9
**failure** 71:5
**fair** 73:7 83:24
91:19
**fairly** 20:21
**fall** 74:8
**falls** 81:17 85:3
**familiar** 78:16
**family** 88:18
93:9
**far** 10:14 31:1
88:17
**fashion** 9:21
47:6 51:9 94:2
**favor** 54:14
**feature** 33:12
**features** 14:16
24:18,22
**february** 26:8

**[federal - forward]** 11

**federal**  15:19
    71:7
**feel**  9:9
**feeling**  9:9
    67:14
**feels**  27:7
**field**  34:23
**fifth**  50:11
    81:22
**figuring**  84:21
**file**  9:14
**filed**  9:11,19,19
    9:22 13:7,8
    25:25 33:4
    38:4 40:16
    48:3,23 49:15
    52:15 58:8
    69:14 80:4,5
    80:25 81:2
    94:13,15,16,23
**filing**  9:12
**financial**  58:25
    59:5
**find**  60:8 61:2
**fine**  21:24
    96:11
**finish**  73:3
**first**  11:15,21
    12:24,25 18:12
    19:25 20:25
    21:2 28:1
    30:12 31:6
    33:23 35:11
    36:23 37:8
    47:16 52:1

54:4 57:25
62:4 64:23
65:14 66:14,19
69:22 70:11,19
71:19,21 81:16
94:5,6 95:5,8
**fish**  4:2
**fit**  22:25 85:7
**five**  45:24
    88:15
**flag**  68:14 72:2
    90:10 94:10
**flavor**  47:8
**flip**  82:7
**flipping**  83:2
**floodgates**  76:2
**floor**  4:21
**focus**  67:19
    68:6
**focused**  74:14
    94:13
**folks**  52:3
**follow**  54:20
**following**  44:12
    50:12 60:2,14
**folsom**  1:21
    2:22 3:1 7:4,24
    8:7,11,14 9:16
    10:6,15 11:18
    12:19 13:3,16
    13:20,22 14:4
    14:21 15:3,12
    16:9,24 17:2
    17:15 18:1,5
    18:21,25 19:9

20:8,11,15,18
21:15,25 22:4
22:17 23:2,16
23:23 24:8,15
24:24 25:4,7
25:10,15,18
26:4,10,13,18
27:2,11,15,25
28:5,12,19,23
29:15,20 30:19
31:3,8,12,17
32:3,7,12,20
33:8,24 34:8
34:14 35:3,7
35:15 36:19
37:5,9,18 38:2
39:17,22 40:19
41:10,20 43:9
43:13 44:6,10
44:16,19,21
45:4,10,15,19
45:23 46:3,14
46:20,23 47:3
47:14,22 48:9
48:13,17 49:1
49:18 50:20
51:7,21,24
53:4,14,20
54:24 55:3,9
55:23 57:15,20
59:10,17,22
62:2 64:7,11
64:19 65:3
66:16 68:25
69:5,13 70:1,3

71:15,24 72:16
73:2,21,25
74:1,3,3,23
75:20 76:22
77:5,25 78:13
78:18 79:10,14
79:17 80:2,18
80:20 81:3,6
82:6,16,22
83:1,24 84:4,9
85:5,16,22,25
86:3,7,10,21
87:7,11,18,22
87:25 89:1,5
89:15,19 90:4
90:14 91:9,15
92:5,10 93:16
93:21,25 94:8
95:4,10,25
96:3,12,18,22
97:12
**forbidden**  34:5
**foregoing**
    98:10
**forgive**  74:5
**forgotten**  48:18
**former**  7:11
    81:14 82:3
**forth**  9:18
    90:20
**forum**  43:7
    80:13
**forward**  13:20
    27:7 47:23
    63:20 65:4

**four** 14:8 46:15
46:18 85:3
88:14 90:19
**fourchette** 85:9
**fourth** 17:5
**fr.com** 4:9,9,10
4:10,11
**frame** 10:8
**frand** 67:19,20
67:22
**frankly** 48:23
50:19 57:1
**frechette** 83:14
85:4
**frequently** 72:4
**friday** 1:22
2:23 7:2 98:8
**front** 37:17,19
50:4 51:3,5,9
52:5,8,9 53:1
**fu** 83:22
**full** 11:16,20
85:4 90:14,16
90:25 94:17,18
**fully** 11:4
**functions** 40:9
**furnished** 31:4
**further** 24:21

**g**

**g** 3:13
**gather** 32:24
**general** 95:22
**generally** 93:23
**generated** 12:7

**gentlemen**
11:25 84:12
**getting** 68:1
70:7
**gillam** 4:13
**gillamsmith.c...**
4:18
**gilstrap** 7:12
8:24 32:16
49:16 50:12
51:3,3,9,17
52:5,6,7,11,21
52:24 54:21
68:7 71:17
74:4,11 75:7
76:18 78:8,9
**gilstrap's** 32:13
49:9 50:9
75:21 76:24
**give** 30:14
37:21 58:5
60:10 70:16
73:23 80:8
91:11 95:14
**given** 7:5 10:23
16:4 42:18
76:12 77:23
91:18 96:23
**giving** 58:7
61:18 76:20
**go** 7:7,15 12:23
13:20 15:16
17:2 22:15
24:15 25:12
28:1 39:1 42:7

43:3 44:21
46:6 47:1 56:9
56:13 57:18
59:22 61:4
65:4 67:23
74:10,19 89:15
97:5
**goes** 13:4,5
18:9
**going** 14:10
17:5,5 18:13
26:23 27:7
32:10 36:2,5
40:15 41:2,16
41:17 45:7,8
47:1,23 48:20
48:21 50:3,18
51:19 53:10
54:10,25 57:25
58:5 61:19
63:13 64:4
68:21 72:8,12
72:13 73:17
75:24 76:13,16
76:17 79:22,23
83:17 91:3
97:4
**good** 20:18
59:13 64:3
**gotten** 30:13
88:20
**grant** 51:14
52:3,4 60:9,10
60:21 61:1
62:15 90:17

94:2 95:13
**granting** 75:21
**gravamen**
49:22
**great** 47:21
63:22 76:12
84:24
**group** 9:1
12:15 27:13
46:7 64:16
97:6
**grouped** 10:24
**groupings** 47:1
**guess** 7:14
11:20 19:11
22:6 32:21
43:14 46:4
53:4 55:9
87:12 91:15
93:16 94:3,4
**guy** 61:13
**guys** 84:20

**h**

**hague** 56:9,14
57:12 61:4,10
**haltom** 5:8
**haltomdoan.c...**
5:13
**hand** 83:9
**handle** 80:17
**handling** 80:19
80:19
**handy** 37:22
**happen** 23:15
84:3

**happening** 33:14
**happy** 12:18 26:25 78:24 93:22 96:8
**head** 59:1 94:13
**headline** 57:10
**health** 89:21 90:3
**hear** 64:2 78:24
**heard** 24:8 31:6 40:25 46:13 74:22 78:2 86:14 95:8 96:3
**hearing** 11:16 12:1,6 73:2,4
**held** 21:2 76:11 98:8
**helpful** 7:5,7 8:17 13:4,10 16:10 37:20 96:12
**hesitate** 8:21
**highest** 82:3
**highlight** 74:10 86:15
**highlighting** 68:7
**highly** 39:13 68:9
**hill** 77:3 78:16 78:22

**hire** 84:14
**history** 71:14 75:5,6,10
**hold** 63:22 77:5
**holding** 15:20
**holiday** 26:7
**honest** 49:4
**hong** 82:11 85:20
**honor** 7:18,25 8:4 9:14 10:1 10:14 11:10 13:13 14:3,7 15:5 17:1 18:9 18:24 19:13 20:14,17 21:16 22:3 23:3,15 23:19 24:1,13 24:25 25:9,16 25:19 26:6,12 26:22 27:9,10 28:2,6,14,22,24 28:25 29:3,18 29:23 30:20 31:5,10,24 32:5,9,15 33:1 33:5,10 34:11 35:23 36:18,21 37:7,21 38:5 38:14 39:8,20 40:24 41:12,24 43:2,11,15 44:14,15,18,20 45:1,7,14,18,21 46:1,10,18,19

46:22 47:9,24 48:2,4,8,12,19 49:11,23 50:9 50:14 51:1,11 52:1,14 53:6,9 53:16,24 54:20 55:6,13 56:1,2 56:15,18,21 57:1,9,16,17,21 59:9,13,20,25 62:1,3,14 63:9 64:1,10,13,14 64:15,22 65:6 66:19 69:8,10 69:19 70:2,7 71:14,18,20 72:1 78:1,7,15 78:16,20 79:1 79:4,12 80:10 80:18,23 81:10 81:16 82:10,21 84:21 85:17,24 86:2,12,13,20 87:3,14,20 88:23 89:4,22 90:18 91:22 93:20 94:7,9 95:16 96:7,20 96:21 97:11
**hood** 75:12
**hope** 11:4 69:2
**host** 21:17
**hotline** 40:21 93:17,24

**hour** 95:3
**hours** 88:15 90:19,25 94:3 94:21 95:14
**house** 81:14 82:4 85:6
**houston** 3:6
**hundred** 87:5
**hynix** 29:7 30:9 30:22 64:18 65:9,9,10,18,21 65:24,25 66:8 67:4,5,13,14 68:11,12,15,21 70:12,15,16,18 71:9,10,11 73:14,16 74:21 75:12,16 76:9 76:10 77:13,17 78:4,5,10,14,25 79:2,19 81:13 81:15 82:12 83:7,8,15,16 84:19
**hynix's** 74:15
**hyun** 88:3

**i**

**ichestney** 3:20
**idea** 40:15 58:5 59:1 94:21
**identified** 26:25 34:25 37:2 38:7
**identify** 8:19 37:14

iii  39:25 40:7,8
implicated
  10:11
implicates  72:4
important  70:4
  81:19
importantly
  66:21
imported  22:15
improper  40:20
  41:2 43:1 80:4
improperly
  36:14
inadmissible
  71:5
inappropriate
  53:3
inaudible  48:9
inclined  23:17
  94:2 95:13,14
  96:13
included  37:1
  37:12
includes  20:1
  93:9
including  30:8
  88:17
inconsistency
  86:15
inconsistent
  59:5 70:11
  74:17
incorrect  36:23
indicate  80:15

indicated  63:15
indication
  30:13,15
individual
  57:22
individually
  46:9 47:6,11
individuals
  58:4
inference  61:16
infirmity  96:10
inform  27:5
information
  16:21,21 18:16
  19:10 23:4,12
  27:20,22 29:25
  30:8,11,24,25
  31:4,7 34:12
  34:15,17,17,19
  39:8 41:3,18
  66:11 69:6
  83:16 84:17
infringing
  15:18,23
initial  7:10
  8:24
inquiry  12:8
  54:15
instances  36:5
instructed  36:9
instruction
  43:1
intel  16:20
intending
  51:18

interest  84:24
interfere  83:10
internal  38:20
  38:23,24 39:3
  39:8
interplay  13:10
interpretation
  60:21
interrogatories
  28:7,10,15
interrogatory
  13:1 27:17,18
  27:21 31:21
  45:3
interrupt  8:21
  32:16
introduction
  7:8
introductions
  7:15 8:8
invention  95:24
inventor  88:3
inventors  91:24
  91:25
investigated
  21:13
investigation
  23:9,20 24:2,7
  25:2 76:9
involve  41:15
involved  10:11
  29:7 33:17,18
  35:19,19 65:25
  84:20 85:11
  91:16 93:7

97:7
ip  67:22
ipr  33:18,22
  35:14 40:15,15
  40:18
irascibility
  90:10
irell  3:12
irell.com  3:19
  3:19,20,20,21
irvine  7:1
isabella  3:14
  7:21 14:5
  83:22
isolated  55:7
issue  16:11,25
  17:3 22:23
  23:17 25:8,24
  27:17 28:4,9
  28:16 29:5,16
  29:25 30:7,18
  31:15 32:24
  33:3,8 39:9
  44:5 46:12,21
  48:6,14 49:6
  50:22 51:8,13
  51:14,15,18,22
  51:25 52:5
  53:9 54:25
  55:7 58:10
  59:8,21 61:9,9
  61:22,25 62:4
  62:18 63:8,14
  63:24 64:1,6,8
  64:25 66:16

68:14 69:11
70:7,14 71:10
72:3,4,6 75:19
79:15 80:3,21
81:18 82:9,18
83:2 84:10
85:8,12 86:14
86:25 87:6,12
89:21,21 91:21
94:1,11 96:4
**issued** 49:16
52:11 70:14
**issues** 9:4,9
15:4 16:15
21:17 24:12
26:7 41:11
44:17 46:25
48:5 49:25,25
51:15 52:7,8
52:16,20 54:1
54:15,17 55:20
57:22 61:12
63:6,14 79:11
85:1 87:15
90:3
**it'd** 16:9
**it'll** 7:4
**item** 27:12
45:10

**j**

**j** 4:3
**jackson** 7:12
**january** 1:22
2:24 7:2 9:2
10:19 18:13

26:23,24 27:3
28:16,20 69:12
98:8,14
**jason** 3:13 7:20
9:25 10:13
11:10 12:23
46:10 51:1
72:2 94:10
**jdla** 46:21 50:6
51:2,5,12
60:15,15,22,23
60:25 61:1,14
61:14 62:14,16
66:3 82:12
84:21,23 85:3
85:6 86:13,18
86:19 87:5
**jeffrey** 91:25
92:1
**jennifer** 3:5
7:19
**ji** 54:8,10 63:10
**job** 1:24 38:12
59:14
**joined** 8:1
**joining** 7:20
**joint** 9:5,10,12
13:9 49:1
60:16,17,17
**jrg** 1:10,16
2:10,16
**js** 57:22 58:10
58:10,14 59:21
60:4,8,22 61:6

**jsheasby** 3:19
**jtruelove** 3:9
**judge** 1:21 2:22
3:1 7:12 8:24
15:12 18:14,17
19:11,25 20:12
21:2,18,22
22:1,12,19
29:16 30:1,10
32:13,16 49:9
49:16 50:9,12
51:3,3,9,17
52:5,6,6,11,18
52:21,24 54:21
66:22 67:11,16
67:21 68:4,7
68:17 69:10
71:17 72:5,7
72:15 73:25
74:1,3,4,7,11
74:23 75:7,21
76:18,24 78:8
78:9,10,21
80:18
**judgment**
48:24 52:15,19
**jump** 16:14
48:2 50:21
**jurisdiction**
57:2 80:5
**jury** 60:8 61:2
61:14,16 89:16
89:18
**justifying**
92:23

**k**

**kahn** 3:15 7:22
25:17,19,19
26:14 27:10,12
27:16 28:6,24
45:1
**keep** 17:22
36:14 85:15
**key** 84:21
**kind** 15:3 20:23
**kindler** 65:17
67:9 68:10,18
73:18
**kinds** 17:22
**know** 8:22 9:15
9:19 12:10
13:5 24:6
27:22 37:16
47:5,6,9 48:3
48:15,25 50:2
50:13 53:8,24
54:16 55:20,24
56:6 57:18
62:7 64:8
66:10 67:2,16
74:16 75:2,12
83:19 84:12
87:7 89:3,5,7,9
89:10,10,12,23
92:11 93:3
96:22 97:1
**knowledge**
39:4 62:23,25
92:3,6

**knowledgeable** 85:19,20
**korea** 56:10 57:3
**korean** 58:14

**l**

**l** 3:5
**labs** 91:7
**lack** 29:5 74:14 76:8,9
**lan** 67:3 71:6 74:9,12 75:4,6 75:18 76:4,7 76:19
**language** 93:15
**large** 18:11,11
**larger** 11:13
**lauren** 4:4 8:2 65:5,17 67:9 68:10,18
**law** 7:11 15:19 22:13 84:14
**lawsuit** 65:25 72:25
**lawyer** 93:4 94:24
**lawyers** 84:12 86:23 88:14
**ldavis** 4:11
**lead** 1:10 2:10
**leading** 72:9
**lee** 88:3,3,21 89:23,25 91:4 91:21 92:2,13 93:4 94:12,13

96:15
**lee's** 91:18 94:6
**left** 25:3 31:23 87:24 94:20
**lehigh** 91:6
**lena** 1:24 2:24 98:4,19
**leonard** 4:5 8:3
**letter** 85:10
**letters** 61:10,25
**letting** 76:21
**liberal** 11:6
**license** 46:12 51:2,5,12,13 52:3,4,16,20,25 54:4,5,6,16 58:1,6,8 60:3,9 60:10,15,21 61:1,15 62:15 63:2,3,4,6 65:11,15,25 66:12 68:12 76:5 81:18 85:19,20
**light** 11:14 50:10
**likelihood** 12:5
**likely** 25:21 60:7 68:21
**likewise** 17:6
**limitations** 32:17
**limited** 58:14 58:17,21,22,24 59:4,7 60:21

61:7,24
**limits** 11:1 18:14 54:22,23
**line** 48:22,22 50:17 53:8 54:19,20,22 60:2 63:24 71:23
**lines** 37:1,14,15 63:1
**link** 12:1
**linkedin** 58:15 62:7
**list** 9:3 13:24 75:2
**listed** 17:10 19:21 49:24
**lists** 72:24 73:14
**litigation** 18:12 30:3,3 34:2 39:12,15 41:7 70:15 71:10 78:9
**litigations** 29:6 35:13 41:23
**little** 9:7 11:3 49:4 50:22 66:2 97:5
**live** 51:5
**llc** 1:14 2:14 5:1
**llp** 4:13 5:2
**locations** 14:14 14:15 15:15,20

**logically** 27:13
**long** 24:20 27:21 38:12 93:13
**longer** 56:4 88:9
**longtime** 92:14
**look** 28:13 67:18 75:5 91:2
**looking** 19:15 20:23 21:10,12 23:6,12 72:20
**looks** 16:22 18:18 19:21
**los** 3:17 4:22
**lost** 90:8,11
**lot** 37:18 38:15 40:11 48:8 90:23 92:24
**lrd** 92:20
**lucas** 4:20 8:6
**lunch** 96:24

**m**

**m** 3:13
**madam** 7:5 8:20 33:11
**made** 40:11 42:4,16 51:4 52:7 60:5,6,23 61:17 62:6 63:11 64:3 65:20 67:5 71:23 74:13 75:8,13 76:15

| | | | |
|---|---|---|---|
| 95:9 | 15:12 16:9,24 | 64:19 65:3 | **matters** 9:23 |
| **maine** 4:6 | 17:2,15 18:1,5 | 66:16 68:25 | 10:17 34:2 |
| **make** 10:7,17 | 18:21,25 19:9 | 69:5,13 70:1,3 | 41:21 47:7 |
| 19:19 22:7,21 | 20:8,11,15,18 | 71:15,24 72:16 | **matthew** 4:5 |
| 22:24 24:18 | 21:15,25 22:4 | 73:2,21 74:3 | **mckeon** 4:3,9 |
| 27:6 42:17 | 22:17 23:2,16 | 75:20 76:22 | 8:1 46:21,24 |
| 49:19 51:20 | 23:23 24:8,15 | 77:5,25 78:13 | 47:8,21,24,25 |
| 56:17,19 61:16 | 24:24 25:4,7 | 78:18 79:10,14 | 48:9,11,11,16 |
| 79:19,21 81:21 | 25:10,15,18 | 79:17 80:2,20 | 48:19 49:11,22 |
| 87:9 89:12 | 26:4,10,13,18 | 81:3,6 82:6,16 | 53:4,6,15,22,23 |
| 90:13 93:2,17 | 27:2,11,15,25 | 82:22 83:1,24 | 55:2,4,5,12,25 |
| 95:17 | 28:5,12,19,23 | 84:4,9 85:5,16 | 57:16 58:12 |
| **makes** 27:13 | 29:15,20 30:19 | 85:22,25 86:3 | 62:2,3 64:10 |
| 58:15 59:6 | 31:3,8,12,17 | 86:7,10,21 | 64:22 96:21 |
| 60:11 64:4 | 32:3,7,12,20 | 87:7,11,18,22 | 97:9 |
| **making** 20:19 | 33:8,24 34:8 | 87:25 89:1,5 | **mckool** 3:4 |
| 44:23 75:22 | 34:14 35:3,7 | 89:15,19 90:4 | **mckoolsmith....** |
| 81:24 85:1 | 35:15 36:19 | 90:14 91:9,15 | 3:9,9 |
| **man** 89:25 | 37:5,9,18 38:2 | 92:5,10 93:16 | **mean** 17:15,16 |
| **manella** 3:12 | 39:17,22 40:19 | 93:21,25 94:8 | 45:25 48:6 |
| **march** 71:22 | 41:10,20 43:9 | 95:4,10,25 | 49:22 50:3,4,7 |
| **marked** 6:7 | 43:13 44:6,10 | 96:3,12,18,22 | 53:8 56:16,18 |
| **marketing** 19:3 | 44:16,19,21 | 97:12 | 57:2 61:15 |
| 19:4 20:1 | 45:4,10,15,19 | **materiality** | 70:6 80:10 |
| 88:17 | 45:23 46:3,14 | 53:18 | 83:5,11 85:7 |
| **marshall** 1:3 | 46:20,23 47:3 | **materials** 40:7 | 89:11 90:6,6 |
| 2:3 3:7 4:16 | 47:14,22 48:9 | 40:7,10 70:9 | 91:7 92:19 |
| **marvell** 15:20 | 48:13,17 49:1 | 71:3 79:7 | 95:17 |
| **master** 1:21 | 49:18 50:20 | **matter** 7:13 | **means** 11:4 |
| 2:22 3:1 7:4,24 | 51:7,21,24 | 36:11 41:6 | 61:1 92:7 |
| 8:7,11,14,25 | 53:4,14,20 | 52:11 57:1 | **meant** 59:17 |
| 9:16 10:6,15 | 54:24 55:3,9 | 70:1 84:25 | **meet** 16:18 |
| 11:18 12:19 | 55:23 57:15,20 | 85:1 95:21 | 17:7 26:25 |
| 13:3,16,20,22 | 59:10,17,22 | 97:10 | **melissa** 4:14,18 |
| 14:4,21 15:3 | 62:2 64:7,11 | | 7:25 |

CONFIDENTIAL

**mellon**  15:20
**member**  1:17
  2:17
**memory**  58:17
  60:22 80:3
  85:23 87:16
**mental**  90:7
**mention**  70:13
**mentioned**
  18:10 75:10
  78:19,23 89:13
**mentioning**
  67:22
**mescall**  1:24
  2:24 98:4,19
**met**  63:15
**meyer**  69:24
**meyer's**  74:7
**michael**  3:14
  4:3 5:3 7:21
  91:14
**michigan**  91:5
  91:6
**micron**  1:14
  2:14 5:1 8:10
  8:12 10:4,9
  11:13 12:14,17
  12:22 13:18
  14:9,13,19,25
  15:7,10 16:3,4
  16:13,19 17:9
  17:11 18:8,19
  19:14,15,17,23
  20:11,24 21:6
  23:20 24:20

  25:22 26:5,17
  27:24 28:2,7
  29:4 30:1,6,10
  30:12 31:20
  33:3,21 36:22
  38:13,20 39:4
  39:8 43:17
  44:17 45:7,8
  66:17,20 67:19
  68:2,4 69:11
  78:22
**micron's**  11:15
  25:13 27:21
  29:1 38:18,19
  38:23 43:25
  45:3
**microsoft**
  83:23
**mike**  8:1,12
  10:4 12:17,21
  16:13 18:7
  36:21 47:25
**mildly**  88:25
**mind**  74:15
  76:10 97:4
**mine**  88:1
**minimum**
  52:23
**minute**  45:24
  50:3
**mis**  87:10
**misread**  49:10
**missed**  37:7
**missing**  19:22
  23:1

**moment**  51:17
  73:23 96:7
**monitoring**
  95:11
**months**  13:6
**morning**  13:5
  84:22
**motion**  11:7
  12:24 13:1,17
  14:7 16:15
  17:10 19:21
  20:6 21:6,23
  23:5 24:1,10
  24:12,23 25:17
  25:21 27:16
  29:1,22 31:14
  31:20,22 32:1
  32:16,18 33:2
  33:6 38:4
  40:21,22,22
  43:10 45:3
  46:13 47:17,18
  47:20 48:1,3
  49:12,15 50:2
  52:12,13,14,15
  52:19,21 54:3
  54:11 55:15,16
  55:18 57:17
  65:7 69:14,15
  69:20,22 70:8
  70:10 77:7,9
  77:11,19,23
  78:2 80:4,24
  80:25 81:11,12
  82:7,23 86:17

  88:2 92:13
  95:9,19
**motions**  8:18
  9:1,3 10:10,19
  10:22,23 11:5
  11:13,14 12:15
  12:15 13:5,7
  13:11 25:12,13
  31:23 32:17
  46:5,7,11
  47:23 64:17
  80:19 96:19
**motivated**
  67:15
**move**  44:24
  63:20 64:9
  76:16 77:7
**moved**  36:9,12
  67:1
**moving**  31:19
**mrueckheim**
  5:6
**mtezyan**  3:20
**myers**  4:19

**n**

**n**  6:1
**name**  7:6 8:17
  38:11
**named**  33:15
**napkin**  24:6
**narrative**  60:14
**narrow**  9:4
  60:10 82:1
**narrowed**
  16:16 77:12,15

**nature**  49:21
**neatly**  87:3
**necessarily**
  70:3 78:13
  89:6
**necessary**  11:2
  27:6 32:4
  43:14
**necessity**  36:3
  41:16
**need**  22:5 28:13
  45:19 46:8
  47:5,10 55:10
  56:9,13 57:13
  57:18 72:13
  75:14 79:19
  89:6 90:16,25
  92:23 94:21
  96:7
**needed**  59:10
  82:17
**needing**  59:18
**needless**  10:16
  12:10
**needs**  9:16,19
  9:21 77:8,13
  91:3 96:9
**negotiating**
  66:3 83:15
**negotiation**
  65:8 66:24
  68:20 69:16
  70:9 71:2,6,14
  72:8,11,13,21
  73:10 75:5,6

75:10 76:4,10
77:14 78:11
81:13 84:18
**negotiations**
  64:18 67:20
  68:5 71:1
  75:16 77:14
  78:3,5 79:2,2
  81:15
**negotiator**
  84:15
**negotiators**
  84:13
**nested**  57:22
**netlist**  1:5,11
  2:5,11 7:20
  9:25 10:9,13
  11:11 14:1,6,9
  14:13 15:7
  17:8,11 18:17
  21:16,20 23:6
  25:14,16,20
  26:17 29:9
  30:4,23 33:2
  38:7 45:3,13
  48:4,23 50:22
  51:2 52:13
  54:9,9 60:7,13
  62:22 63:8,19
  64:14 65:7,8
  65:14,19 66:3
  66:4,8,23,25,25
  67:7,12 68:1,4
  68:16 69:9
  72:2 74:20

76:8,11 77:15
77:20,21 78:3
78:9 79:5,8,9
79:21,24 80:1
80:8,14 81:11
81:14 82:4
83:9,17 84:13
85:10 86:1,18
86:18 88:9,11
88:12,14,17,18
89:8,11,12,14
91:14 92:15,21
**netlist's**  13:17
  14:12 23:19
  25:12 29:5
  31:22 49:4
  55:14 77:11,18
  82:11 92:14
**networking**
  17:18
**never**  32:12
  62:16 95:9
**new**  42:4 91:17
**nexus**  15:17,23
  35:21
**nice**  53:6
**night**  49:2
**nilsson**  5:16 7:9
  7:9 12:2,8
**ninth**  48:7
  49:13
**nonconfident...**
  36:1,17 42:22
  43:7

**nonpublic**
  36:15 38:25
**nonresponsive**
  95:8
**noonish**  11:5
**north**  22:9
**note**  56:21
**notion**  89:18
**number**  6:7
  9:17 11:13,14
  13:5,6,7 18:11
  18:11 40:5
  43:19 46:5
  56:3 58:19
  71:16 90:2
  94:15,16
**numbers**  70:25

**o**

**o'melveny**  4:19
  8:6
**object**  41:2
**objection**  40:20
  42:24 80:18
**obligations**
  83:11
**observe**  72:3
**obtain**  30:12,12
**obtained**  30:14
  42:22
**obviously**
  50:15 57:15
**occur**  15:15
**occurred**  14:24
**occurring**
  15:18

**offered** 63:11
63:19,20 84:24
90:18
**officer** 61:6
92:14
**oh** 58:5 59:1
63:1 89:5
**okay** 12:21,25
13:16,22 16:9
16:24 17:4
18:5 20:15
24:25 25:10,15
27:11 28:11
36:21 38:3
40:19 41:3,10
44:10,19 45:15
47:14 50:13
55:12 65:5
69:2 71:25
74:9 78:20
79:14 80:20
81:6 85:16
86:3 87:9,25
88:1 96:18
97:12
**old** 48:17,18
**omm.com** 4:24
**once** 21:16
54:13 60:17
61:8,24 74:15
**ones** 21:22
27:24 73:16
**open** 9:20
**opening** 39:24
76:2

**openly** 90:8
**operating** 10:8
**opinion** 68:1
76:11,17,19
77:3
**opinions** 68:9
76:13
**opportunity**
9:6 49:2 80:8
91:18
**opposed** 44:8,9
**opposing** 29:13
78:6
**opposite** 78:12
84:10 86:22
**opposition**
18:15 23:6
25:1 29:10
31:25 34:25
36:16,25 38:4
40:1 43:13,23
61:7 92:19
94:4 95:5
**orange** 98:2
**order** 8:24 9:2
10:10,17,22
12:4,13,23
15:13 18:19
19:11 20:13
22:12 24:9
28:10 30:1
32:12 34:1,11
36:9,13,14
37:6,10 39:10
41:5,21,25

42:9,10,11,25
43:8 46:13
47:9,17,19
48:1 49:9,12
49:15,16,19,21
50:9 51:10
52:23 53:2,9
54:3 58:7
63:23 64:6
65:1 67:21
71:16 75:20
76:23 77:6,21
77:24 78:19,21
78:25 80:24,25
97:1
**ordered** 15:8
18:17,22 19:25
21:18 22:1,19
30:10 52:22
57:2 78:10
**orders** 8:23
30:17 78:8
83:25
**outrageous**
83:12
**outright** 75:3
**outside** 30:21
**outstanding**
14:12
**overbroad** 19:1
19:2,8
**overlap** 47:10
**overlapping**
36:11

**overlaps** 27:18
**overriding**
64:25
**overseas** 23:10
23:10 24:3,4
**oversee** 9:1
**own** 93:24 96:1

**p**

**p.c.** 3:4 4:2
**p.m.** 28:21
**page** 17:10
18:15 38:16
62:7 71:23
92:19
**pages** 1:25
18:16 38:6
**paid** 88:11
**paper** 37:19
**papers** 9:23
38:21 45:9
79:3 80:11
81:24
**paragraph**
39:10 66:5
**paragraphs**
74:7
**parallel** 15:7
36:4 41:14
78:2
**pardon** 70:2
**parent** 94:14
94:16
**park** 5:3 8:13
29:1,3,4,19
30:20 31:16

**[parse - position]**                                                21

**parse**  93:14
**part**  9:21 11:22
  39:6 46:4 52:1
  58:15,20,23
  59:2,4 81:16
  88:18
**particular**
  10:21 90:23
**parties**  10:22
  11:8 12:2,7
  15:6 17:6
  18:11 29:24
  30:13 32:23
  39:24 58:11
  64:8 73:5
  86:22
**party**  7:9 29:25
  30:7,11,17
  58:13 66:20
  79:6 83:10
**party's**  81:21
  81:25
**pass**  21:3 22:14
**passed**  21:9
  22:11
**past**  30:3
**patent**  35:22
  66:5,11 74:13
  75:17 88:7,21
  91:21 92:16
  93:6,8,10
  94:12,21,22
  95:20,23
**patents**  29:8
  33:16 35:18

41:15 65:23,25
66:8,9 67:4,8
68:12 70:13,14
70:17,17,18,20
71:8 72:25
73:14,15 75:2
75:3 88:5
91:16,17,20,22
91:23 92:3,17
92:22 93:9
**pay**  68:13
**payment**  65:20
  65:22 67:5,7
  68:13 74:14
  75:8,13 76:15
**payne**  3:13
  7:21 13:23,25
  18:14,17 19:25
  21:2,18,22
  22:1,19 25:16
  29:16,22,23
  30:1,10 31:5
  31:10 64:14,21
  66:22 67:11,16
  67:21 69:8,9
  69:10,19 70:2
  70:6 71:18
  72:5,7 78:1,10
  78:15,20,21
  79:12 80:22
  81:5,10 82:10
  85:17,24 86:2
  86:4,9,12
**payne's**  15:12
  19:11 20:12

22:12 72:15
**pda**  24:18,22
**pending**  9:1
  40:23 46:6
  81:1
**people**  83:15
  85:19 88:16
**people's**  41:8
**percent**  87:6
**perfect**  60:11
**performance**
  40:8
**performed**  23:9
  23:20 24:2,6
  25:1 70:11
**period**  18:2
  45:8
**permission**
  13:14
**perpetual**  63:4
**person**  57:7
  61:17 98:7
**personal**  39:3
  92:3
**personally**
  89:23
**persuasive**  68:3
**pick**  84:8
**picture**  75:14
**piece**  38:25
**pierce**  57:6
**pinned**  26:15
  26:21
**pitch**  95:17

**place**  12:12
  28:20 95:12
**plainly**  20:3
**plaintiff**  1:6,12
  2:6,12 3:3 7:15
  7:19 14:6
  25:20 29:21,23
**plans**  17:21
**play**  40:8 52:2
**pleasant**  97:13
**please**  8:11
  33:13 74:4
**pleasure**  47:4
**pled**  51:2
**point**  14:18
  16:7 19:18
  55:18,21,25
  57:17 59:11
  61:8 71:15
  75:20 76:2
  82:13 86:21
  90:13,19 93:2
  93:11
**pointed**  84:7
  92:13
**points**  56:2
**policy**  41:13
  72:4,12 75:19
  76:1
**portion**  29:14
  34:25 35:1
  44:24 68:22
**position**  35:8
  41:5 49:5
  50:21 51:8

| | | | |
|---|---|---|---|
| 60:20,24 62:1 | **presentation** | **probably** 20:21 | 72:10 73:7 |
| 62:9 64:8 | 66:4 | 31:13 59:2 | 77:13,18,19 |
| 68:16,17,18,20 | **presented** | **probed** 11:3 | 83:8 |
| 73:11 79:22 | 50:11 60:6 | **problem** 36:8 | **produced** |
| 80:11 82:4 | **presenting** 8:18 | 41:14 43:5 | 14:10 15:10 |
| 85:23,25 86:16 | 64:11 | 55:22 | 16:3,19 17:12 |
| 87:8 | **presently** 40:22 | **problems** 95:2 | 17:13,14,17,19 |
| **positions** 40:18 | **president** 56:7 | **procedure** | 17:21,23,24 |
| 66:22 86:22 | 58:21 | 80:13 | 18:3,21 19:6 |
| **possession** | **presses** 77:21 | **procedures** | 19:16,17,20,24 |
| 79:23 | **pressing** 85:12 | 39:14 40:3 | 20:5,12,25 |
| **possible** 44:23 | **presumption** | **proceed** 7:23 | 21:18 22:1 |
| **potential** 26:15 | 40:10 | 8:4 14:3 20:21 | 24:21 25:6 |
| 26:16 37:4 | **pretrial** 71:21 | 87:25 | 29:10 39:11 |
| **practice** 40:22 | 72:6 | **proceeding** | 54:5,6 63:17 |
| **precedent** | **pretty** 20:3 | 42:23 57:4 | 63:18 71:11 |
| 50:11 72:8 | 25:22 | **proceedings** | 72:9,14,17 |
| **precisely** 94:10 | **prevent** 32:11 | 1:20 2:21 | 82:10 |
| **preclusion** | 43:6 | 33:17,18,22 | **product** 15:16 |
| 47:20 | **previewed** 85:2 | 35:14 36:6 | 15:17,22 17:20 |
| **preference** | **previous** 15:6 | 39:25 41:4,15 | 23:7 60:16,18 |
| 10:21 | 22:12 29:17 | 41:17 49:14 | 62:22 65:10 |
| **prejudice** | 82:6 | 97:14 98:8,11 | **production** |
| 31:14 68:5 | **previously** | **process** 31:2 | 13:18 15:9 |
| 76:12 | 18:10 22:24 | 40:11 41:9 | 19:5 21:11 |
| **prejudiced** | 42:1 75:21 | 85:11 | 29:5,6 30:2 |
| 76:20 | 90:15 | **produce** 14:9 | 77:22 78:10 |
| **prejudicial** | **primary** 39:9 | 14:14,19 16:6 | 79:5,20 |
| 68:9 | 88:20 | 16:21,22,23 | **productions** |
| **prepared** 83:8 | **prior** 16:19 | 18:20,20,22 | 41:22 |
| 88:14 | 19:6 29:6 78:7 | 19:7 21:23 | **products** 14:15 |
| **preparing** | 78:8,21 88:6 | 27:23 29:12 | 14:17,20,24 |
| 31:25 | 88:13,22 92:25 | 30:5,15 57:3 | 15:1,11 16:6 |
| **present** 5:16 | 95:21,23 | 57:25 58:3 | 16:23 17:24 |
| 39:12 82:2 | | 61:23 65:7 | 18:2 19:18,23 |

**[products - reality]**                                          23

19:25 20:2,4,4
20:6 21:2,3,5,8
21:20 22:8,14
22:25 23:7,10
24:3,23 29:9
51:14
**program**  94:14
94:19
**progress**  20:19
**prohibits**  39:11
**projects**  92:20
92:21
**proliferated**
94:15,17
**promise**  78:19
**proof**  23:14
**proper**  42:23
80:12
**properly**  39:5
81:2
**proposal**  47:15
**propose**  32:1
**proposition**
51:10
**propriety**
53:17
**prosecution**
93:8
**protective**  12:4
12:13 30:17
34:1,11 36:9
36:13,14 37:6
37:10 39:10
41:5,21,25
42:11,25 43:8

46:13 47:17,19
48:1 49:12,15
49:19,21 52:23
53:2,9 54:3
58:7 63:23
64:6 77:21,24
78:25 80:24,25
**provide**  7:8
30:23 31:7
**provided**  23:12
**provision**  33:25
50:6,6 53:16
62:15,20,21
63:3,5 68:15
**provisions**
12:12 75:17
**provocative**
84:18
**ptab**  35:14,19
36:3 41:4 42:3
42:7,8 43:17
43:21 44:4
**public**  34:21
38:21 39:4,25
40:7,10 41:4
**pull**  37:23
59:12 71:19
**purely**  63:7
**purpose**  11:24
42:21,23
**purposes**  42:2
42:12
**pursuant**  8:23
**pursue**  61:10

**pursuing**  48:4
**put**  18:14,15
37:3,19 54:10
63:11,12 67:4
68:11,22 74:13
76:14 88:24
**puts**  32:17

**q**

**qualcomm**  91:7
**qualification**
14:23,24 15:9
16:17,20 27:20
28:4
**qualifications**
15:15,21
**qualified**  14:19
**quarterly**
17:21
**quash**  87:16
**question**  19:12
21:20 36:12,16
38:17 40:20
41:2 42:18
44:2,4,7 60:25
68:23 69:3
78:7 80:9
91:19
**questioned**
82:12 95:22
**questions**  35:12
35:18,24,25
36:2,6,13
40:18 41:16
42:13 43:1,2,4
43:5,20 44:3

63:13 82:14,15
89:3 93:5
**quick**  47:12
**quicker**  47:13
**quickly**  20:21
25:22
**quite**  49:4,9
72:3 73:7
86:14,23 87:11
90:2
**quote**  40:4
76:14 92:20

**r**

**r**  4:20 5:3
**rand**  67:20
**randomly**
61:18
**rank**  38:18,19
38:20 43:25
44:1
**ranks**  35:23,24
**reach**  30:21
**read**  9:6 24:1
35:4 41:24
49:1 51:10
76:7 77:6
78:19 88:23
90:21,24
**reading**  49:9
50:23
**ready**  7:23 8:4
33:7 77:18,19
79:20 83:8,9
**reality**  84:3,8
84:23

**[realizing - reported]** 24

**realizing** 97:2
**really** 19:3,14
  23:14 26:8
  33:23 40:15
  41:1 48:3,5
  55:7 57:17
  63:2 83:13
  84:25 85:12
  90:1,11,21,24
**reason** 16:4
  23:14 31:3,7
  31:10,12,14
  35:17 57:10
  66:6 79:6 90:9
**reasonable**
  18:14 26:5
  61:16 65:16
  67:25
**reasons** 78:6
  79:3 84:24
**reassurances**
  95:18,18
**rebuttal** 13:11
**received** 6:7
  9:4 17:8 30:22
  31:22,25
**recent** 17:7
  30:24
**recently** 31:24
**recommend**
  9:18
**record** 8:19
  9:11,21 11:25
  15:4 16:11
  17:13,16 24:5

36:13 53:25
  98:10
**recorded** 98:7
**records** 14:14
  14:19 15:9,10
  17:14,22 20:25
  21:1,3,7,7,13
  22:8 23:21
  31:1 72:8,11
  72:13
**recross** 6:2
**redirect** 6:2
**redwood** 5:5
**referenced**
  23:25
**referral** 10:11
**referred** 31:24
**referring** 89:10
**refresh** 85:23
**refused** 56:23
**regard** 9:20,24
  12:9 13:3 26:5
  27:17 28:3
  49:5,8 50:25
  89:2
**regarding**
  49:16
**reinforced**
  87:12
**relate** 10:19
  46:7,11
**related** 15:22
  19:3,22 20:2
  29:8,8 35:13
  44:17 46:25

48:5 56:12
  60:15 62:19,21
  64:24 65:8
  67:8 77:14
  88:7,21 93:10
**relates** 21:1
  33:11 38:17
  47:18 62:14
  65:23 81:12
**relating** 24:21
  40:18 51:15
  52:25
**relative** 66:10
**relatively** 11:12
**relevance**
  67:24 68:6,6
  77:23
**relevancy**
  66:23
**relevant** 13:18
  15:4,15,22
  16:2,3,5 19:18
  19:24 20:3
  21:4 22:13
  36:6 40:3
  41:17 42:14
  43:4,5,21 44:2
  54:17 56:3
  58:4 65:13
  66:11 67:20
  75:5,7,18,18
  92:16
**relied** 65:14
  68:8

**relief** 93:16
**relies** 65:17
**rely** 69:16
  76:21
**relying** 73:6,10
**remaining**
  25:24 27:24
  28:7,10 88:3
**remarkable**
  88:23
**remember**
  29:16 58:12
**remote** 1:20
  2:21 3:1
**remotely** 7:1
**remove** 55:24
**renew** 31:15
**repeat** 76:18
**reply** 11:8
  16:12 30:19
  31:25 32:2,9
  32:18 41:10,11
  42:15 43:10,12
  43:14,20 44:8
  44:10 45:8,9
  73:21 79:15
  85:16 91:11
**report** 9:5,10
  9:13,18 12:7
  13:9 49:2
  50:23 67:15
  68:8 74:8
**reported** 1:23
  7:1

**[reporter - ruled]**                                                                 25

| | | | |
|---|---|---|---|
| **reporter** 2:25 | **requires** 76:4 | 53:7 57:20 | **route** 23:11 |
| 7:6 8:16,20 | 90:1,23 | 69:7 77:25 | 24:4 |
| 33:11 98:4 | **research** 83:21 | 80:7 88:20 | **routed** 23:7 |
| **reports** 13:8,11 | 94:14,19 | 89:9 91:10 | **routinely** 40:6 |
| 13:11 29:6,11 | **resident** 57:3,5 | **responses** 8:18 | **royalty** 65:16 |
| 30:2,5,7,11,16 | **resolution** 33:7 | 13:1 24:10 | 67:25 |
| **represent** 7:7,9 | **resolve** 20:16 | 27:17 28:15 | **rpark** 5:6 |
| 91:2 | 31:15 32:24 | 29:11 31:20,21 | **rpr** 1:24 2:25 |
| **representation** | **resolved** 20:7 | **result** 56:25 | 98:19 |
| 21:25 23:17,24 | 23:18,22 24:23 | **retained** 30:4 | **rueckheim** 5:3 |
| 25:8 62:6 63:8 | 27:23 28:3 | **retired** 94:12 | 8:9,12,12 10:4 |
| **representatives** | 30:18 32:22 | **reviewed** 76:14 | 10:4 12:17,17 |
| 12:11 | 46:16 54:11,13 | **revisit** 32:22 | 12:21,21 13:2 |
| **represented** | 54:14 80:22 | **richardson** 4:2 | 16:13,13 18:7 |
| 62:10 | 84:2 | **right** 34:4 | 18:7,24 19:2 |
| **request** 14:12 | **resolves** 61:24 | 46:17 48:2 | 20:14 21:16 |
| 14:13 16:8 | **respect** 41:9 | 64:10 83:17 | 22:3 23:3,25 |
| 18:15,16 19:1 | 46:21 54:4 | 84:11 91:2 | 24:25 25:5,14 |
| 21:1 29:14 | 63:10 66:12 | 92:2,14 93:4 | 26:6,12,21 |
| 31:6 40:21 | 85:2 | **rises** 81:17 | 27:9 28:2,13 |
| 75:22 78:3 | **respond** 50:25 | **road** 5:10 | 28:22,25 31:19 |
| 81:14 90:17 | 52:22 80:9 | **roadmap** 17:19 | 32:15 33:1 |
| **requested** | **responded** 23:8 | **roadmaps** | 36:21,22 37:7 |
| 49:18 | 25:1 29:10 | 17:20 | 37:12,21,22,24 |
| **requesting** | **responding** | **rog** 27:19 | 38:3 39:20,23 |
| 29:13 50:4 | 12:16 29:21 | **rogatory** 61:10 | 40:24 41:13 |
| **requests** 17:9 | 82:22 91:13 | 61:25 | 43:15 44:9,14 |
| 18:16 20:22,22 | **response** 11:7 | **rogs** 25:23 | 44:20 45:6,18 |
| 64:17 | 16:11 18:6 | **role** 40:8,17 | **ruffin** 4:3 8:2 |
| **require** 76:7 | 21:15 23:2 | 85:13 95:11 | 10:2 82:24 |
| **required** 19:10 | 24:24 27:21,25 | **rolled** 58:23 | **rule** 51:18 71:4 |
| 32:8 74:12 | 28:12 30:23 | **room** 7:8 35:4 | 76:1 79:11 |
| **requirement** | 31:22 32:3,7 | 88:16 | 80:24 86:20 |
| 63:12 | 33:4 36:20 | **round** 26:8 | **ruled** 16:2 |
| | 40:25 49:7 | 49:3 | 69:11 |

**[rules - sheasby]** 26

rules  61:9
   90:16
ruling  64:5
   67:17 68:2
   69:1,3,4,21
   71:6 72:15
   74:1 81:17
rulings  81:23
run  80:12
ryuk  5:3 29:4

**s**

sale  15:17,22
sales  15:24
   20:4 56:6
sam  7:21
samples  15:1
samsung  1:8
   2:8 4:1 8:1
   10:2 11:14
   33:20 40:16
   44:24 46:7
   47:25 48:1
   52:18 54:10
   56:5 58:13,16
   58:16,17,18,19
   58:20,22,23
   59:3,6,7 62:21
   65:6 66:2,4,7
   69:14,15,20,24
   70:8,19 71:13
   71:19 72:10
   73:9 80:22
   82:25 86:16,19
   91:2,16 92:1
   95:6

samsung's
   70:10,23 80:7
   92:25
samuel  3:5
satisfactory
   22:4 26:13
satisfied  35:15
   61:13
satisfy  61:3
saw  32:12 40:4
   50:15
saying  18:23,25
   36:1 39:17,24
   42:20 50:13
   60:6 67:2
   72:16 73:5
   76:4,6 89:9
says  40:6 41:5
   41:13 42:11
   60:2 74:8,24
   74:24 75:1
   77:19 80:25
   90:10 94:25
sbaxter  3:9
schedule  11:7
   32:13,14
scheduled  10:9
   27:4
scope  30:5,16
   52:3,4,16,20,25
   54:12 58:1,6,9
   60:3,9 63:2,3
   85:7
scott  33:15
   38:11

screen  8:16
   33:12 35:1
   37:20,25,25
   39:9 59:22
   89:4
scroll  38:15
sea  72:12
seal  9:19
sec  59:5 61:7
   61:24
second  9:2 10:9
   17:3 37:21
   38:10 39:9
   51:15 58:10
   61:22
see  30:25 31:6
   31:10 38:7,14
   59:16 66:15
   76:18 92:23
seeing  97:3
seek  61:25 85:6
seeking  14:9,13
   14:18 16:8
   17:11 27:20
   30:10 62:14,19
   76:20 87:16
seem  73:7 92:8
seemed  49:2
seems  11:12
   16:15 52:10,22
   94:25
sense  27:13
   60:11 64:4
   95:1

sent  66:4
sentence  79:16
   89:9
separate  62:15
   70:23 83:13
   88:15
serve  56:11
served  87:16
serves  80:3
   87:17
session  7:11
   10:25
sessions  88:15
   96:9,10
set  9:17 17:25
   69:11 72:8
settlement  72:9
   73:1,13 78:3,5
   79:2
seven  73:14
   89:9 90:25
   94:3,21 95:3
   95:14
several  38:6
   40:14 93:5
share  33:11,12
   59:22 89:4
sheasby  3:13
   7:20 9:14,25
   9:25 10:13,13
   11:10,10 12:25
   13:13,17,21,23
   29:18 32:5,9
   33:5,10 34:4
   34:10,16 35:6

35:10,16 36:23
37:22 38:1
39:16 40:14,17
40:25 41:12,24
43:11,16,19,23
44:3,15,18
45:12,14,21
46:1,10,11,17
47:15 51:1,1
51:10,11,23
52:1 53:7
57:21 59:12,19
59:24 62:19
72:1,2,19,23
73:8,12 75:7
76:16 84:6,24
85:2 87:14,19
87:20,23 89:19
89:22 90:5,6
94:9,10 95:7
96:20 97:8,11
**sheasby's**  39:24
   77:11 95:17
**shield**  42:10
   84:15
**shift**  62:13
**ship**  21:20
**shipment**  20:25
   21:1,3,21
**shipped**  21:9
   22:9,10 23:8
   23:10 24:3
**ships**  14:25,25
**shooting**  26:9

**shoreline**  5:4
**short**  45:20,22
   79:14
**shorter**  96:10
**shorthand**  2:24
   98:4
**show**  11:20
   22:8 68:21
   73:24 89:18
**showing**  14:14
   17:22 20:3
   22:14 24:17
   42:17 59:14
**shown**  17:14
**shutting**  60:12
**sic**  58:21 74:1
**side**  64:22 83:5
   83:17
**sides**  71:12
   82:7,18 83:2
   84:10
**signature**  98:18
**similar**  15:6
   77:10,12,16
**similarly**  17:8
   20:23
**simply**  46:8
   69:1
**single**  36:16
   72:10,11 76:5
**sitting**  24:1
**situation**  42:10
   78:23
**situations**
   42:20 86:24

**sk**  29:7 30:9,22
   64:18 65:9,9
   65:10,18,21,24
   65:25 66:8
   67:4,5,13,14
   68:11,12,15,21
   70:12,15,16,18
   71:9,10,11
   73:14,16 74:13
   74:13,15,21
   75:8,12,16
   76:9,10,15
   77:13,17 78:4
   78:10,14,25
   79:2,19 81:13
   81:15 82:12
   84:19
**sk's**  79:22
**skilled**  86:23
**skills**  91:1 93:4
**slide**  35:2 74:2
   74:6,10,19
   77:2
**slides**  42:17
   74:25
**small**  11:12
**smaller**  46:5
   97:6
**smith**  3:4 4:13
   4:14 7:25,25
   97:9
**sole**  67:22
**solely**  58:9
**solomon**  91:25
   92:1

**somebody**
   84:14
**somewhat**  97:2
**sorry**  14:23
   19:16 32:5,15
   33:20 37:7
   45:6 51:23
   59:9 86:9
**sort**  9:5 10:7
   40:21 46:24
   55:4,7,15,17
   57:21 64:24,25
   80:12,16 82:18
   84:21 86:22
   90:7
**sought**  34:6
   75:14
**south**  4:15 21:8
   22:9
**spayne**  3:19
**speak**  11:21
   32:25 45:17
   46:8 61:19
   82:7 89:23,25
   90:12
**speaking**  93:3
**special**  1:21
   2:22 3:1 7:4,24
   8:7,11,14,25
   9:16 10:6,15
   11:18 12:19
   13:3,16,20,22
   14:4,21 15:3
   15:12 16:9,24
   17:2,15 18:1,5

**[special - strike]** 28

18:21,25 19:9
20:8,11,15,18
21:15,25 22:4
22:17 23:2,16
23:23 24:8,15
24:24 25:4,7
25:10,15,18
26:4,10,13,18
27:2,11,15,25
28:5,12,19,23
29:15,20 30:19
31:3,8,12,17
32:3,7,12,20
33:8,24 34:8
34:14 35:3,7
35:15 36:19
37:5,9,18 38:2
39:17,22 40:19
41:10,20 43:9
43:13 44:6,10
44:16,19,21
45:4,10,15,19
45:23 46:3,14
46:20,23 47:3
47:14,22 48:9
48:13,17 49:1
49:18 50:20
51:7,21,24
53:4,14,20
54:24 55:3,9
55:23 57:15,20
59:10,17,22
62:2 64:7,11
64:19 65:3
66:16 68:25

69:5,13 70:1,3
71:15,24 72:16
73:2,21 74:3
75:20 76:22
77:5,25 78:13
78:18 79:10,14
79:17 80:2,20
81:3,6 82:6,16
82:22 83:1,24
84:4,9 85:5,16
85:22,25 86:3
86:7,10,21
87:7,11,18,22
87:25 89:1,5
89:15,19 90:4
90:14 91:9,15
92:5,10 93:16
93:21,25 94:8
95:4,10,25
96:3,12,18,22
97:12
**specific** 26:1
75:17
**specifically**
18:18 26:2
27:19 77:19
94:20
**specify** 96:14
**speed** 10:16
11:3
**spoke** 66:3
**sponsor** 87:4
**sponsoring**
83:6

**spreadsheet**
16:20
**spun** 92:22
**square** 85:3,4
**ss** 98:1
**stand** 80:11
83:22 84:3
**standing** 79:20
**stars** 3:16 4:21
**start** 7:14,17
12:15,20 13:15
14:10 21:21
45:24 47:24
50:21 74:2,6
81:11 91:20
**started** 96:23
**starting** 55:17
55:21 71:23
**state** 76:10
98:1,5
**stated** 21:6
25:22 58:24
**statement**
19:15 20:24
21:12 58:25
62:17 73:8
80:23
**statements**
59:6
**states** 1:1 2:1
15:19 21:4,5
21:10,21,22
22:10,11,15
23:8,11,20
24:4 57:4

61:21
**stating** 85:10
**status** 9:5,10,13
9:18 13:9 49:1
50:23
**stay** 11:20,23
44:22 49:17
50:14 51:3
52:6,12,13,14
97:9
**staying** 51:4
**steal** 77:11
**stenographic...**
98:7
**step** 90:9
**stephen** 3:13
7:21 29:23
69:9
**steps** 33:23
90:12
**stopped** 77:21
77:22
**story** 83:18
**strategic** 65:10
95:1
**strawn** 5:2
**streamlined**
44:23
**streamlining**
96:24
**street** 3:6
**strength** 66:10
**stricken** 68:10
**strike** 31:20
32:16,18 45:3

**[strike - term]** 29

52:22 67:1
68:8 76:17
**strikes** 41:13
**striking** 67:15
**strong** 66:6
**strongly** 44:9
**struck** 68:1
74:7 76:11,13
**subissue** 81:13
**subject** 12:3,12
36:11 47:19
58:3 72:25
95:21
**submission**
32:1,2
**submit** 45:9,9
**submitting**
42:3
**subpoena**
56:11 77:17
78:4
**subpoenaed**
88:8
**subpoenas**
87:15
**subsequent**
49:13
**subset** 83:12
**subsidiaries**
59:3
**subsidiary**
64:25
**substance**
75:11,11

**substantially**
11:13
**successfully**
67:12
**sufficient** 69:6
84:5
**suggest** 27:3
64:15 75:9
96:7
**suggesting**
64:23
**suggestion**
82:13
**suit** 65:23 67:4
67:8 88:5
**suite** 3:6,16 5:4
5:10
**summary** 52:15
52:19
**summerhill**
5:10
**super** 68:16
**supplement**
25:23 26:5,20
27:5 28:8,15
28:17
**supplemental**
42:15
**supplementat...**
26:2 28:20
**supply** 50:5
53:16 60:7,16
60:18 62:21
63:7,7 65:11
68:15,22 75:17

**supplying**
62:21
**supporting**
68:19,19
**sure** 10:7,18
19:19 22:7,21
22:25 24:18
27:6 36:19
44:6 49:7,19
76:23 77:9
79:17 80:10
82:18 83:2
87:10 88:19
91:12 93:21
**surprised** 64:2
**surreply** 32:10
32:18 43:14
44:11
**surreptitious**
35:14
**sw** 4:6
**sweet** 89:25
**switching**
82:18

**t**

**tactic** 58:18
**tail** 41:1
**take** 11:15,21
16:24 24:11
25:8 27:6
28:20 44:16
45:21,23 46:8
47:5 51:7
54:16 59:19
63:8 66:23

73:15,19 74:25
86:17,19 90:19
91:18
**taken** 33:15
46:2 66:23
68:17 86:8,11
95:12
**takes** 68:16,18
80:16
**talk** 33:14 66:8
69:4 74:16
97:6,10
**talked** 16:14
66:5,25
**talking** 33:24
34:18,20,20,21
54:1 67:13
78:14
**talks** 35:23
67:21
**team** 89:20
**technical** 19:5
24:17,22
**technology**
1:14 2:14 5:1
92:14,15
**tee** 50:12
**tell** 37:5 72:10
88:18 90:20
**tells** 75:18
**temporarily**
22:15
**term** 43:25
44:1

**termination**
48:13 49:5,25
50:22 51:8,15
51:16,18 52:17
52:21 53:14,18
53:21,25 55:19
60:2 63:14
85:3,7,8,12
87:5
**terminology**
38:21
**terms**  34:22,23
41:13 70:12
90:7 96:1
**test**  75:1
**testified**  63:19
85:21
**testify**  83:20
89:12
**testimony**  19:3
19:4 33:19
36:24 37:3,9
37:13,15 38:6
38:9,11,14,17
38:25 39:2,6
39:19 42:1,2,6
43:24 49:23
50:5 54:12
55:16,19 56:19
62:12,13,19
63:5 85:6 87:4
92:20
**testing**  15:1
**texarkana**  5:11

**texas**  1:2,14 2:2
2:14 3:7 4:16
5:1,11 15:8
16:1 40:1 48:6
48:21 80:6,16
**tezyan**  3:14
7:21 91:13,14
91:19 92:7,12
93:19 94:7,25
**tezyan's**  95:18
**thank**  7:18 10:6
13:13 14:5
19:13 24:14
25:19 27:10
28:6,24 29:3
31:16 44:15,20
45:18 46:1
55:24 69:8
96:17
**thing**  73:18
94:20
**things**  11:17
17:23 20:5
43:16 57:23
85:18
**think**  7:4,7 8:3
8:5 9:9,16,21
13:4,9 14:11
16:9 19:4 20:2
22:23 23:3,13
24:8 25:21
26:7,23 27:13
27:20 28:10,25
31:5 37:24
39:20,23 41:10

43:19 46:11,17
47:2,10,11,21
48:7 49:20
54:21,24,25
55:5 57:9,19
58:4,11 60:1,5
61:3,12 64:1,3
64:7,10,13
65:1 69:5,10
72:4,5,14
75:16 76:6,22
77:9,23 78:22
79:1,1,10,12,15
80:2,22 81:3,8
81:16,19 83:4
83:22 84:1,2
84:25 86:13,15
86:20 87:5,7
87:14 88:1
90:16,19,24
94:24
**thinking**  26:6
62:20
**thinks**  74:8
**third**  14:10
29:25 30:7,11
30:12,17 79:6
83:10
**thought**  10:23
11:6,19 36:8
50:14 52:3
55:9 63:22
86:7
**thoughts**  9:20
9:24

**thousand**  56:7
**three**  46:11,18
46:25 57:23
64:16
**throw**  91:3
**thumb**  79:11
**thunder**  77:12
**tie**  83:2 87:3
**ties**  28:8
**time**  10:8 11:1
11:5 18:2
19:18 28:21
41:8 45:25
76:18 82:4
90:14,23 93:5
94:12,17,18
95:19 96:14,15
96:23 97:2
**timing**  28:9
**tishman**  4:4,10
8:3
**title**  38:12 40:5
**today**  7:20 8:22
11:17 26:11
31:9 44:11
64:2 74:22
87:24
**together**  46:13
47:2,9
**told**  75:7
**tomorrow**
26:22 77:20
**tongue**  93:25
**took**  80:11 83:7
84:2

CONFIDENTIAL

**[topic - venture]** 31

| | | | |
|---|---|---|---|
| **topic** 11:1 28:1 58:1 63:16 | **trying** 9:4 19:19 28:17 29:15 50:21 54:19 63:1 67:7 85:7 90:13 | **understand** 10:7 12:3 14:22 22:17 30:21 41:11 54:24 59:24 64:7 75:25 78:15 79:15 86:25 89:14 91:1 93:7,12 93:15 94:1,24 | **update** 62:9 **use** 10:16 11:2 33:22 35:14 36:3,14 38:21 39:11 41:4 42:5,18,19,21 43:6 44:3 59:23 88:22 |
| **topics** 19:4,4 92:11 | | | |
| **totally** 20:9 83:3 | | | |
| **track** 36:4 | **turn** 37:16 | | |
| **tracks** 14:16 | **two** 7:16 11:23 20:20,21 26:6 26:10 31:23 33:23 35:10,11 35:21 43:16,19 48:25 51:6,12 56:2 57:21 61:12 64:20 79:10 81:14 83:13 84:12 86:24 87:14,15 88:15 90:9 91:6,22 92:22 96:8,10,15 | **understanding** 8:21 10:7,10 10:18 32:19 38:19,23,24 43:25 49:20 50:24 | **used** 34:2,23 39:15 41:6,7 41:22 42:12 76:19 94:5 95:6 |
| **transcript** 1:20 2:21 9:22 37:2 67:18 71:21 90:24 98:8,10 | | | **useful** 89:18 |
| | | | **uses** 58:18 |
| | | **understood** 27:9 28:22 44:14 95:25 | **using** 34:5 41:18 42:9 59:23 |
| **transcripts** 54:7 | | | |
| **translated** 90:22 | | **understudy** 40:17 | |
| **translation** 90:2 | | **unfair** 36:1 | |
| **translator** 91:4 | **type** 23:13 | **unique** 56:19 84:17 92:2 | **v** 1:7,13 2:7,13 5:9 15:20 |
| **treated** 59:7 | **u** | | **valid** 35:11,16 |
| **trial** 10:10 18:13 54:8 | **u.s.** 15:17,23 | **unit** 17:19 | **validity** 35:20 |
| | **unclear** 43:12 50:22 | **united** 1:1 2:1 15:19 21:4,5 21:10,21,22 22:10,11,15 23:8,11 24:4 57:4 61:21 | **valuable** 68:17 68:19 |
| **tried** 30:20 56:22 65:14 | | | |
| **true** 43:18 89:17 90:22 98:10 | **under** 9:19 10:8 30:16 32:14 37:10 49:19 60:17 67:3 71:6 74:12 75:12 77:20,20 90:16 94:4 95:14 | | **value** 66:9,10 67:4 68:11,21 73:17 74:13 75:17 |
| | | | |
| **truelove** 3:5 7:18,19 97:8 | | **unprepared** 82:14 | **values** 65:23 74:21 |
| **truly** 61:7 89:14 | | **untimely** 31:20 | **variety** 91:8 |
| **trust** 9:10 92:10 | | | **veil** 57:6 |
| **try** 10:16 11:6 32:23 97:1 | | | **venture** 60:16 60:17,17 |

**versions**  73:4
**versus**  68:5
  74:8
**view**  48:7 49:11
  80:17
**viewpoint**
  55:15

**w**

**w**  3:14
**wagging**  41:1
**wait**  51:19
**walker**  7:12
**want**  8:9 11:20
  12:23 22:21,24
  36:16 37:23
  38:7 42:14
  43:6 53:23,24
  55:19 61:4
  73:24 74:10
  77:11 85:14,15
  87:9 90:10
  93:17 97:5,10
**wanted**  9:6
  10:17 12:6
  16:14 63:16
  72:2
**wanting**  11:25
  12:1 22:7
**wants**  43:21,23
  44:3 50:25
  96:15
**washington**  4:7
  4:15
**way**  11:24
  45:16 46:7

47:4 64:5
76:19 93:12
95:20
**we've**  26:7
30:20 40:1
43:16,22 54:5
60:6 68:17
77:12,15 81:23
88:20 95:8
**wednesday**
44:12
**week**  31:8
44:11 97:2,3
**weeks**  18:13
26:7,11
**weird**  40:5
**welcome**  8:15
11:23 12:12
44:21,22 45:16
**went**  21:6
55:10 86:21
91:5 95:19
**whatnot**  85:3
**whatsoever**
79:24
**whitley**  83:14
85:4
**wi**  67:3 71:6
74:9,12 75:4,6
75:18 76:4,7
76:19
**wife**  90:9
**willing**  30:5,15
79:20

**winston**  5:2
**winston.com**
5:6,6
**wish**  11:22
**withdrawn**
87:24
**withheld**  19:19
**withholding**
22:8 25:2
**witness**  6:2
19:2,4 26:19
27:4,8 33:15
33:16 36:10
38:18 43:24
54:4,5,8 57:3
57:11 58:1,2,6
61:19 88:24
95:2
**witnesses**  40:14
40:17 47:18
49:24 54:6
83:14 84:8
85:8
**wonder**  11:14
**wondering**
47:4
**word**  52:14
75:10
**words**  37:8
52:2
**work**  7:17
12:20 39:3
89:13
**worked**  39:3
91:7 92:21

**working**  38:13
**works**  58:2
  61:20
**worry**  90:21
**written**  93:13
**wrote**  24:5 85:9
  85:10

**x**

**x**  6:1

**y**

**yeah**  13:3
  23:16 26:4
  34:16 39:22
  45:1 48:11,16
  48:16 55:2,24
  56:24 57:16
  59:19,19 64:19
  75:23 77:5
  85:5 94:8
**year**  65:14
  88:10
**years**  48:25
  83:21 91:5,8
**yesterday**  9:5
  12:4

**z**

**z**  3:15
**zoom**  10:25
  12:1