# Exhibit 31

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION NO. 2:22-cv-203-JRG-RSP |
| | § | |
| v. | § | |
| | § | |
| MICRON TECHNOLOGY, INC. *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## REPORT & RECOMMENDATION

Before the Court are two Motions for Summary Judgment filed by Defendants Micron Technology, Inc. *et al*. First is Micron's Motion for Summary Judgment of Noninfringement of U.S. Patent Nos. 8,787,060 and 9,318,160. **Dkt. No. 279**. For the reasons provided in Section III, the Motion should be **DENIED**. Second is Micron's Motion for Summary Judgment of No Pre-Suit Damages. **Dkt. No. 281**. For the reasons provided in Section IV, that the Motion should be **GRANTED-IN-PART**.

### I. BACKGROUND

Netlist's Complaint originally asserted six patents, U.S. Patent Nos. 10,860,506; 10,949,339; 11,016,918; 11,232,054; 8,787,060; and 9,318,160. Dkt. No. 1. Netlist has since dropped the '506 and '339 Patents from this case. *See* Dkt. No. 406 at 108; Dkt. No. 250.

Generally, the Asserted Patents relate to computer memory. U.S. Patents 11,016,918 and 11,232,054, which are related and share a common specification, concern computer memory devices that use different types of memory. '918 Patent at 1:66–2:2; *see also* '054 Patent at 1:66–2:2. U.S. Patents 8,787,060 and 9,318,160, which are related and share a common specification, concern "systems and methods for reducing the load of drivers of memory packages included on memory modules." '060 Patent at 1:19–21; *see also* '160 Patent at 1:21–23.

1

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

## III. MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NOS. 8,787,060 AND 9,318,160 (DKT. NO. 279)

### A. Dropped Products and Claims

Micron seeks summary judgment for their HBM2E products, for claims 1-14, 16-21, and 22-28 of the '060 Patent, and for claims 1, 2, 4, and 5 of the '160 Patent. Dkt. No. 279 at 11–12. Netlist confirms in response that the products and claims have been voluntarily dropped from the current action. Dkt. No. 293 at 8–9. The Court is unpersuaded to find summary judgment for items no longer actively in the case and accordingly recommends that this portion of the Motion be **DENIED AS MOOT**.

2

### B. Expert Report and Testimony Disputes

Netlist and Micron both cross-reference concurrently filed motions to strike certain expert testimony within the Motion and Response. Dkt. No. 279 at 13, 14–15; Dkt. No. 293 at 16–17. With regard to the current Motion, evidence apart from the expert testimony demonstrates that genuine fact disputes exist for the grounds raised, therefore the Court will address the allegedly inadmissible expert testimony in deciding the pending motions to strike.

### C. Evidence of Infringement for "array die" and "communication"

Micron asserts that there is no evidence that the HBM3 Gen2 products meet the agreed upon constructions for "array die" and "communication." Dkt. No. 279 at 13–14, 15–16. Namely, Micron asserts that since "the semiconductor dies in Micron's HBM3 Gen2 product are DRAM dies and thus DRAM circuits" they do not meet the agreed upon construction. Dkt. No. 279 at 13–14. Netlist responds that "testimony from Micron's witnesses confirms the HBM Core Dies are different from DRAM circuits" citing witness deposition testimony from Micron's chief engineer responsible for HBMs and the designated corporate witnesses. Dkt. No. 293 at 9–15.

The Court finds that a genuine dispute of material fact is present for the "array die" limitation. Regardless of the outcome of Micron's pending motion to strike Dr. Brogioli's testimony, Micron has demonstrated evidence by which a reasonable jury could find that the limitation has been met. The parties' briefing has made clear that disputed readings of the claim limitations onto the product, namely the DRAM dies, should be put before the jury.

Micron's position regarding "communication" is based on rejecting Netlist's expert report and concluding Netlist offers no other evidence. Dkt. No. 279 at 15–16. Netlist responds by pointing to Micron presentation illustrations and corporate representative testimony as evidence that "TSVs in Micron's HBM3Es" are in "electrical communication." Dkt. No. 293 at 18–19.

3

Netlist further contends that Dr. Brogioli does not merely rely on data port presence alone to demonstrate the accused products meet the claim limitation. Dkt. No. 293 at 19–20.

The Court finds that a genuine dispute of material fact is presented for the "communication" limitation. Netlist has provided competing evidence contrary to Micron's "no evidence" assertion. Accordingly, whether either side's evidence demonstrates the accused products do or do not meet the claim limitation is a matter for the jury to decide.

### D. Modes of Operation

Micron asserts that "Netlist's expert failed to show that the 'TsvForce' circuit can correspond to the claimed 'data conduit' in any mode of operation." Dkt. No. 279 at 17. Particularly, Micron points to "(1) normal (or mission) mode, (2) 'Direct Access' . . . test mode and (3) IEEE 1500 test mode." Dkt. No. 279 at 16.

#### 1. Normal Mode

Micron asserts "[b]cause Dr. Brogioli failed to opine on the requisite structural relationship between the claimed 'first/second data conduit' and the claimed 'data terminal,' he has not demonstrated infringement with respect to HBM3 Gen2 product in its normal mode of operations." Dkt. No. 279 at 18–19. Netlist responds that Micron's assertion "is undermined by its own expert's depiction of TSV connections to data terminals, showing pairs of twisted TSVs connecting to the same DQ (data) terminal via a de-serializer." Dkt. No. 293 at 25 (referencing Dkt. No. 279-3).

#### 2. Direct Access Testing Mode

Micron asserts "[s]ince the DA interface is only enabled during production testing in Taiwan and not enabled otherwise . . . it cannot be configured by Micron's customers to enable any circuitry associated with he DA interface." Dkt. No. 279 at 19. Netlist responds that "the claims at issue are apparatus claims and the undisputed fact is that the accused structural features are

4

available in the final products" and for active use. Furthermore, "Micron has imported at least 100 HBM3E into the United States and the Boise team performs testing on the parts." Dkt. No. 293 at 22.

### 3. IEEE 1500 Testing Mode

Micron asserts "[b]ecause Netlist has not shown . . . that there is any 'data terminal' associated with the IEEE 1500 mode . . . Netlist cannot establish that Micron's HBM3 Gen2 product can meet the 'data conduit' limitation in the IEEE 1500 mode of operation." Dkt. No. 279 at 20. Netlist responds by pointing to the mBist structure of the accused product to assert that evidence shows that the claim limitation is met. Dkt. No. 293 at 22–23.

The Court finds that for each of the contested modes discussed, a genuine dispute of material fact is presented. What is demonstrated by the briefing and evidence provided is that the sides disagree on the reading of the "data conduit" limitation onto the HBM3 Gen2 products. The Court concludes that a reasonable jury could find that the disputed modes meet the "data conduit" limitation.

## IV. MOTION FOR SUMMARY JUDGMENT OF NO PRE-SUIT DAMAGES (DKT. NO. 281)

Micron filed this motion asserting generally that "Netlist is not entitled to pre-suit damages for the '918 and '054 patents because it cannot show that it provided actual or constructive pre-suit notice of alleged infringement to Micron before it filed its complaint in this case." Dkt. No. 281 at 6; Dkt. No. 322. Netlist opposed the motion with a response and sur-reply. Dkt. No. 294; Dkt. No. 365.

### A. Legal Standard

Generally, a patentee can recover damages that occurred up to "six years prior to the filing of the complaint . . . for infringement in the action." 35 U.S.C. § 286. An exception to this rule is

5

that "[p]ursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his articles [providing constructive notice] or notify infringers of his patent [providing actual notice] in order to recover damages." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017) ("*Arctic Cat I*") (citing *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894)); *see also Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009) ("a party that does not mark a patented article is not entitled to damages for infringement prior to actual notice").

"[T]he marking statute serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented." *Arctic Cat I*, 876 F.3d at 1366 (citing *Nike, Inc. v. Wal–Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998)).

This requirement also extends to a patentee's licensees. *Id*. (citing § 287(a)). However, the burden is lessened when licensees are involved as the Federal Circuit has recognized "that it may be difficult for a patentee to ensure his licensees' compliance with the marking provisions . . . ." *Id*. When licensees are involved, courts should consider "whether the patentee made reasonable efforts to ensure compliance with the marking requirements." *Id*. (citing *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1112 (Fed. Cir. 1996)).

Importantly, before the marking requirement applies to a patentee, the Federal Circuit has held that an alleged infringer challenging "the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287. To be clear, this is a low bar." *Id*. at 1368. "The alleged infringer's burden is a burden of production, not one of persuasion or proof." *Id*.

6

Once an alleged infringer has met its initial burden, the patentee bears the burden of proving it complied with the marking requirement. *Maxwell*, 86 F.3d at 1111; *see also Dunlap*, 152 U.S. at 248. Compliance with § 287 is a question of fact. *Arctic Cat I*, 876 F.3d at 1366. Ceasing "sales of unmarked products [does not] excuse noncompliance with the notice requirement of § 287 such that a patentee may recover damages for the period after sales of unmarked products ceased but before the filing of a suit for infringement." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*").

If the patentee does not make this showing, it cannot recover damages before the date of actual notice. *Arctic Cat I*, 876 F.3d at 1368. "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Arctic Cat II*, 950 F.3d at 864 (citing *Amsted Indus. Inc., v. Buckeye Steel Castings Co.,* 24 F.3d 178, 187 (Fed. Cir. 1994)); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001) (citing *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,* 127 F.3d 1462, 1470 (Fed. Cir. 1997)).

Finally, a notable exception to this rule is that "the notice provisions of section 287 do not apply where the patent is directed to a process or method." *Arctic Cat II*, 950 F.3d at 864 (citation omitted); *see also Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993) (citations omitted); *Crown Packaging*, 559 F.3d at 1317 ("Because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply."). "Nor do they apply when a patentee never makes or sells a patented article." *Arctic Cat II*, 950 F.3d at 864 (citation omitted).

7

B. Actual Notice

Micron asserts that neither the slide decks provided by Netlist, a February 2015 and April 2015 Slide Deck, nor a license letter provided on April 28, 2021 provided actual notice of infringement for the '918 and '054 patents. Dkt. No. 281 at 12.

First, Netlist responds that the 2015 Slide Decks specifically identified Netlist's invention and contends that the same slide decks provided notice of infringement to Micron. Dkt. No. 294 at 12–14. The Court finds that the slide decks do not effectively identify the activity believed to be an infringement. While the presentations identify the claimed subject matter, upon review, the presentations do not attempt to identify infringement in Micron's products but rather provide offers for partnership and incorporation of the patent portfolio through licensing. *See* Dkt. No. 294-2. Accordingly, the Court finds that the 2015 Slide Decks did not provide actual notice of infringement for the '918 and '054 Patents.

Second, Netlist responds that the April 28, 2021 notice letter provided actual notice. Dkt. No. 294 at 14–15. The Court finds that Netlist has demonstrated evidence by which a reasonable jury could find that actual notice was provided. Unlike the 2015 Slide Decks, the notice letter does provide activity believed to be an infringement and a proposal to abate infringement. *See* Dkt. No. 294-15. Regarding identification of the patents in suit, the letter identifies members of the patent family and provides notice regarding continuation patents. *See K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1378–79 (Fed. Cir. 2012); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 2016 WL 11750176, at *2 (E.D. Tex. 2016).

Accordingly, the Court finds that a fact issue remains regarding actual notice beginning on April 28, 2021.

8

### C. Constructive Notice

Micron asserts that Netlist cannot show that Netlist or any licensee marked its products with the asserted patents. Dkt. No. 281 at 15–16. Netlist does not contest or provide competing evidence that marking occurred. *See* Dkt. No. 294; Dkt. No. 365. Rather, Netlist contends that Micron's "May 2023 letter" fails the burden of identification under *Arctic Cat*. Dkt. No. 294 at 19–20 (citing *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017)).

The Court finds that Micron has met its burden regarding identification and that evidence of marking has not been provided. Unlike earlier cases, Micron identified the patents and products it believed lacked marking pursuant to § 287. *See* Dkt. No. 281-10; *cf. Arigna Technology Ltd. v. Nissan Motor Co., Ltd.*, 2022 WL 18046695 (E.D. Tex. 2022). Further, Netlist does not contest that the SK Hynix Agreement did not require SK Hynix to mark its products under the license agreement. *See* Dkt. No. 295; Dkt. No. 365; *see also Arctic Cat II*, 950 F.3d 860, 864–66 (Fed. Cir. 2020). Accordingly, Netlist's damages would be limited to when actual notice was provided.

### V. CONCLUSION

The Court recommends that Micron's Motion for Summary Judgment of Noninfringement of U.S. Patent Nos. 8,787,060 and 9,318,160 (Dkt. No. 279) be **DENIED**. The Court further recommends that Micron's Motion for Summary Judgment of No Pre-Suit Damages (Dkt. No. 281) be **GRANTED-IN-PART** precluding pre-suit damages prior to April 28, 2021.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report **by not later than January 16, 2024** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal

conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 11th day of January, 2024.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE