# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> SAMSUNG ELECTRONICS CO., LTD; ) <br> SAMSUNG ELECTRONICS AMERICA, ) <br> INC.; SAMSUNG SEMICONDUCTOR ) <br> INC., ) <br> ) <br> Defendants. ) | Case No. 2:22-cv-293-JRG <br><br> JURY TRIAL DEMANDED <br> (Lead Case) |
| NETLIST, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICRON TECHNOLOGY, INC.; ) <br> MICRON SEMICONDUCTOR ) <br> PRODUCTS, INC.; MICRON ) <br> TECHNOLOGY TEXAS LLC, ) <br> ) <br> Defendants. ) | Case No. 2:22-cv-294-JRG <br><br> JURY TRIAL DEMANDED |

**NETLIST INC.'S OPPOSITION TO MICRON'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NOS. 7,619,912 AND 11,093,417 (DKT. 345)**

**TABLE OF CONTENTS**

**Page**

I. RESPONSE TO MICRON'S STATEMENT OF UNDISPUTED FACTS ......................... 1

II. ARGUMENT ............................................................................................................... 3

    A. All Accused Products Implement The Encoded QuadCS Functionality and Infringement Is At Least Genuinely Disputed ................................................ 3

    B. Micron's Standard-Essentiality Arguments are Inapposite .......................... 5

    C. Micron's "Logic Diagram" Argument Is Incorrect ...................................... 7

III. CONCLUSION ........................................................................................................... 8

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In the Matter of Certain Memory Modules & Components Thereof*
    (337-TA-1089) 2020 WL 4500711 at 15 ............................................................................... 6

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d __ (Fed. Cir. 2010) ............................................................................................. 5, 7

*Hewlett Packard Co. v. Bausch & Lomb Inc.*,
    909 F.2d 1464 (Fed. Cir. 1990) ............................................................................................. 4

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
    520 F.3d 1367 (Fed. Cir. 2008) ............................................................................................. 4

*UltimatePointer, L.L.C. v. Nintendo Co., Ltd.*,
    816 F.3d 816 (Fed. Cir. 2016) ............................................................................................... 4

Micron seeks summary judgment of non-infringement based on mischaracterizations of Netlist's infringement evidence and misapplication of fundamental legal principles regarding patent infringement. Its motion should be denied.

First, with respect to the '912 patent, the claim element at issue requires the "memory module" apparatus to comprise a "circuit" with a "logic element" implementing certain logic. *See* Ex. 1, cl. 16. Micron does not dispute here that all of its accused memory modules include the circuit and logic identified by Netlist as infringing claim 16; instead, it argues that a subset of its memory modules ("dual-rank" modules) do not infringe because they do not "use" the implemented functionality. Even if true, Micron's argument would not justify summary judgment of noninfringement since all of the accused memory modules include the recited circuit and logic element and infringe when sold by Micron, regardless of how downstream customers may or may not "use" the module's functionality. Micron also ignores other evidence of infringement for dual-rank modules that does not depend on the allegedly non-used "mode" at all, providing yet another reason to deny Micron's requested relief.

Second, with respect to both asserted patents, Micron's theory is based on an assertion that Netlist relies "solely" on a logic diagram from a JEDEC specification and thus cannot show that Micron's accused products include the "circuit"/"circuitry" elements recited in the claims. Micron's assertion is simply wrong; Netlist's infringement expert analyzed not only "logic diagrams"—which, in any case, ███████████████████████████████████████ ███—████████████████████████████████████████████████████ confirming that the Micron accused memory modules do indeed embody the requirements of the asserted '912 and '417 patent claims. Micron's unfounded summary judgment motion should be denied in its entirety.

I. **RESPONSE TO MICRON'S STATEMENT OF UNDISPUTED FACTS**

1. Not disputed.

2. Not disputed.

3. Not disputed.

4. Not disputed.

5. Not disputed.

6. Disputed. Not disputed that Micron's RDIMM and LRDIMM products implement a chip select mode called "Encoded QuadCS," but Dr. Mangione-Smith's infringement theory is not "predicated" on this fact. For example, Dr. Mangione-Smith identifies other evidence of infringement not based on a particular chip select mode. *See, e.g.*, Ex. 4, ¶¶ 40-41.

7. Disputed. Micron's witnesses admit that all of Micron's accused products, including dual rank LRDIMM and RDIMM products, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See, e.g.*, Ex. 2, 47:17-49:21, 61:23-62:3.

8. Disputed. *See* Response to Fact #7.

9. Disputed. Dr. Mangione-Smith cites logic diagrams from JESD 82-31A and 82-32—which ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬—as evidence supporting his infringement analysis, but Netlist's infringement theory is not "predicated" on this fact.

10. Disputed. Dr. Mangione-Smith does not rely "solely" on the identified "logic diagram" and cites other evidence supporting his infringement opinions. *See, e.g.*, Ex. 3, ¶¶ 57-70 (citing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬); Ex. 4, ¶¶ 24-25, 30, 37-39, 44-46, 48-49 (same); Ex. 5, ¶¶ 96-102 (also citing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ in addition to logic diagrams);

11. Not disputed that the claim requires the memory module to comprise the "circuit" recited in the portion of the claim excerpted by Micron, in addition to other limitations.

12. Not disputed.

13. Not disputed that the claim requires the memory module to comprise the "circuitry" recited in the portion of the claim excerpted by Micron, in addition to other limitations.

14. Disputed. For example, even the cited witnesses admitted that ▓▓▓▓▓ and are ▓▓▓▓▓ Ex. 7 (Jin Tr.), 20:24-21:15. The witnesses also did not dispute that ▓▓▓▓▓



15. Disputed. Dr. Stone does not "confirm" anything about the accused products; rather, he simply disagrees with Dr. Mangione-Smith's opinion. *See, e.g.*, Ex. 8, ¶ 58.

## II.   ARGUMENT

Micron's motion for summary judgment should be denied because there is at least a genuine dispute as to material issues of fact regarding infringement of the '912 and '417 patents.

### A.   All Accused Products Implement The Encoded QuadCS Functionality and Infringement Is At Least Genuinely Disputed

Micron does not appear to dispute, at least for the present motion, that the "Encoded QuadCS" functionality built into the RCD component of the accused products satisfies the asserted claim 16 of the '912 patent. Instead, Micron asserts that a portion of those products—the "dual-rank" models—do not "use" the Encoded QuadCS functionality. *See* Mot. at 11-12 (seeking partial summary judgment only as to a "subset of Accused Products"). Indeed, the datasheet Micron relies on to argue that dual-rank modules do not use Encoded QuadCS functionality acknowledges in the next sentence after the portion highlighted by Micron that it is used for "quad-rank modules." *See* Mot. at 5 (¶ 7).

This concession is fatal to Micron's motion because the only asserted claim here is an apparatus claim that Micron infringes at least by selling accused memory modules with the infringing

- 3 -

functionality, whether or not it is "used" by Micron's customers. *See, e.g., Hewlett Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("[A]pparatus claims cover what a device is, not what a device does."). As explained in Dr. Mangione-Smith's report, and undisputed by Micron, ███

███ *See, e.g.*, Ex. 3, ¶ 57 ███

███); Ex. 2, 61:23-62:3 ███

███).

The claim at issue here is directed to a "memory module . . . comprising" a "circuit" including a "logic element" that implements certain recited logic, including the limitations related to input/output chip selects for which Encoded QuadCS functionality is relevant to infringement. *See* Ex. 1, cl. 16. All of the Micron accused products are memory modules comprising the relevant circuitry and infringe as sold—which Micron does not even appear to dispute in its motion—regardless of how the memory modules are (or are not) "used" after purchase. *Cf. Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1371-75 (Fed. Cir. 2008) (holding claim reciting a "pipelined processor" comprising a "conditional execution decision logic pipeline stage performing [certain functions] and . . . producing [certain results]" to be "clearly limited to a pipelined processor possessing the recited structure and capable of performing the recited functions"); *UltimatePointer, L.L.C. v. Nintendo Co., Ltd.*, 816 F.3d 816, 826-27 (Fed. Cir. 2016) (holding claim reciting "a handheld device including: an image sensor, said image sensor generating data . . ." to be directed to "the capability of that structure rather than the activities of the user" and thus "only indicate that the associated structures have this capability . . . not require that any data be actually generated by the user"). Micron has thus failed to show entitlement to summary judgment based on alleged non "use" of Encoded QuadCS functionality

present in the accused products. Micron's motion also ignores evidence of infringement in dual-rank products that is not dependent on "Encoded QuadCS" mode at all; for example, as explained in Dr. Mangione-Smith's report, ███████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████ identifying examples of ███████████████████

████████████████████████████████████████ Ex. 4, ¶¶ 40-41. Micron's motion does not address this at all, providing another independent reason to deny summary judgment.

### B. Micron's Standard-Essentiality Arguments are Inapposite

Micron argues in the alternative that it is entitled to summary judgment because "Netlist has not provided any evidence that [the] Micron products actually use the optional Encoded QuadCS mode from the JEDEC specification." *See* Mot. at 12. As discussed above, "use" is not necessary for infringement of the asserted apparatus claim.

Micron also appears to contend, beyond the alleged lack of "use," that Netlist's infringement proof is deficient because it "merely referenc[es] the [JEDEC] standard and assert[s] the products are standard compliant." *See* Mot. at 12 (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d __, 1327-28 (Fed. Cir. 2010)). But *Fujitsu* is only relevant where the patent owner is relying on standard-essentiality to prove infringement; the patent owner always has the option to instead "compare the claims to the accused products," as Netlist has done here. *See Fujitsu*, 620 F.3d at 1327-28 ("[T]he patent owner must compare the claims to the accused products **or, if appropriate**, prove that the accused products implement any relevant optional sections of the standard.").

Here, Dr. Mangione-Smith does the former, citing evidence that ████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████ satisfies the limitations of claim 16. *See, e.g.*, Ex. 4, ¶¶ 37-38. While Dr. Mangione-Smith does reference JEDEC specifications

- 5 -

discussing ███████████████████████ ███████████████████████████████████

███████████████████████████████████████████████████████████████. *See, e.g.*,

Ex. 3, ¶ 63 (citing testimony from Micron's corporate representative ██████████ █████

████████████████████████████████████████ and ██████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████; Ex. 2, 47:17-49:21. He also cites other

evidence, such as ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████ *See, e.g.*, Ex. 3 ¶ 62 (citing ████████████████████); Ex. 4, ¶ 38 (explaining

how █████████████████████████████████████████████████████████████████

████████████████████████ Micron does not even attempt to dispute any of this evidence in

its motion, much less demonstrate an absence of triable issue of fact regarding ██████████

██████████ in Micron's accused products.

Micron's attempted analogy to the International Trade Commission's decision in *In the Matter of Certain Memory Modules & Components Thereof* (337-TA-1089) is similarly inapposite. That case, in addition to involving a different asserted patent and different factual record, was one where the Commission found that "Netlist argued that the [product's] compliance with JEDEC standards is sufficient to satisfy each and every limitation of the asserted claims of the '907 patent" and "fail[ed] to present any evidence on the actual functionality of [the products]." 2020 WL 4500711, at *15-*16. Here, as discussed above, Dr. Mangione-Smith relies on a variety of evidence demonstrating how the functionality of the accused Micron memory modules satisfies the limitations of '912 patent claim 16. Nor is Netlist relying on standard essentiality to show infringement here; indeed, Netlist has cross-moved for summary judgment that the '912 patent is <u>not</u> essential to the JEDEC standards. *See* Dkt. 362.

### C. Micron's "Logic Diagram" Argument Is Incorrect

Micron appears to argue that summary judgment of non-infringement of the '912 and '417 patents should be granted because Netlist's infringement expert cites "logic diagrams from the JEDEC standard." *See* Mot. at 14-15 (relying on *Fujitsu*). For the same reasons discussed above with respect to ███████████████████████, Micron fundamentally misapplies the holding of *Fujitsu*. Netlist does not rely on standard-essentiality to prove infringement for either the '912 or the '417 patents and to the extent it cites diagrams or other material from JEDEC specifications, it does so in connection with other evidence showing that the accused Micron memory modules do, in fact, implement the functionality so described.

For example, Dr. Mangione-Smith discusses the ███████████████████████ ███████████████████████ length based on his review of ███████████████████████ as well as ███████████████████████ ███████████████████████ *See, e.g.*, Ex. 3, ¶¶ 57-70. To the extent he discusses diagrams appearing in JEDEC specifications, he either cites evidence/testimony that this functionality is incorporated into the Micron accused products, or is citing datasheets from Micron/its vendors that use those JEDEC diagrams to illustrate the circuitry in the actual accused products. *See id.*[1] He then goes on to analyze the specific "circuit"/"circuitry" limitations present in the '912 and '417 patent asserted claims, again relying not only on "logic diagrams" from JEDEC specifications but datasheets, schematics, and witness testimony supporting his infringement opinions. *See, e.g.*, Ex. 5, ¶¶ 96-97 (███████████████████████, ¶ 98 (██

---

[1] Micron's motion never even acknowledges Dr. Mangione-Smith's analysis of the products' functionality in this Exhibit A to his report, despite it being incorporated by reference into all of his patent-specific infringement analyses. *See, e.g.*, Ex. 4, ¶ 23; Ex. 5, ¶ 95.

██████████████████████████████████████████████████), ¶ 99 (citing ███████

████████████████████████████████████████████████████████████████); Ex.

4, ¶¶ 24-25 (citing ██████████████████████████████████████████████████████),

¶¶ 44-46 (citing Micron datasheets). Dr. Mangione-Smith also reviewed dozens of Micron datasheets, circuit schematics, and verification reports—compiled in Exhibit H to his report—to confirm that the ██████ of the accused memory modules satisfies the asserted claims' limitations as expressed in his infringement report. *See, e.g.*, Ex. 9; Ex. 5, ¶ 96 (relying on ████████████████████████ Ex. 6, ¶ 2 ███████████████████████████████████████████████████████████

████████████████████████████████████████).

Nor would reliance on "logic diagrams" be a fatal evidentiary flaw justifying summary judgment of noninfringement in any event. Even in its motion for summary judgment Micron does not appear to dispute that its products implement the functionality illustrated in ███████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████. *See* Mot. at 16. Micron demands more than the claims require; for example, the asserted claim of the '912 patent is directed to a memory module comprising "a circuit" having a "logic element" implementing certain recited functionality—it does otherwise require the "circuit" to have any particular physical structure. Ex. 1, cl. 16. Micron does not appear to deny that ████████████████████████████████████████████████████

████████████████████████████████████████████████ its criticism that Netlist relies on higher-level illustrations rather than code or teardowns of the circuits' physical layouts is, at best, material for cross-examination.

## III. CONCLUSION

For the foregoing reasons, Netlist respectfully requests Micron's motion be denied.

| | |
|---|---|
| Dated: January 30, 2024 | Respectfully submitted,<br><br>*/s/ Jason G. Sheasby*<br><br>Samuel F. Baxter<br>Texas State Bar No. 01938000<br>sbaxter@mckoolsmith.com<br>Jennifer L. Truelove<br>Texas State Bar No. 24012906<br>jtruelove@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>104 East Houston Street Suite 300<br>Marshall, TX 75670<br>Telephone: (903) 923-9000<br>Facsimile: (903) 923-9099<br><br>Jason Sheasby (*pro hac vice*)<br>jsheasby@irell.com<br>Annita Zhong, PhD (*pro hac vice*)<br>hzhong@irell.com<br>Thomas C. Werner (*pro hac vice*)<br>twerner@irell.com<br>Andrew Strabone (*pro hac vice*)<br>astrabone@irell.com<br>Yanan Zhao (*pro hac vice*)<br>yzhao@irell.com<br>Michael W. Tezyan (*pro hac vice*)<br>mtezyan@irell.com<br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>Tel. (310) 277-1010<br>Fax (310) 203-7199<br><br>Rebecca Carson (*pro hac vice*)<br>rcarson@irell.com<br>**IRELL & MANELLA LLP**<br>840 Newport Center Drive, Suite 400<br>Newport Beach, CA 92660<br><br>**Attorneys for Plaintiff Netlist, Inc.** |

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 30, 2024, a copy of the foregoing was served to all counsel of record.

                                                  */s/ Yanan Zhao*
                                                  Yanan Zhao

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

                                                  */s/ Yanan Zhao*
                                                  Yanan Zhao