IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SEMICONDUCTOR INC., <br><br> Defendants. | Case No. 2:22-cv-293-JRG <br><br> JURY TRIAL DEMANDED <br> (Lead Case) |
| NETLIST, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MICRON TECHNOLOGY, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; MICRON TECHNOLOGY TEXAS LLC, <br><br> Defendants. | Case No. 2:22-cv-294-JRG <br><br> JURY TRIAL DEMANDED |

**NETLIST INC.'S OPPOSITION TO MICRON'S MOTION TO STRIKE
EXPERT REPORT OF DR. MANGIONE-SMITH (DKT. 369)**

# TABLE OF CONTENTS

**Page**

I. ANALYSIS ..................................................................................................................1

    A. Dr. Mangione-Smith's Infringement Theories Were Disclosed in Discovery and Exclusion Is Not Warranted. ........................................................................1

        1. Maximum Power Saving Mode Was Disclosed in Netlist's Infringement Contentions..................................................................................1

        2. Exclusion Is Not the Appropriate Remedy Under The Circumstances ....................3

    B. Dr. Mangione-Smith's Technical Comparability Analyses are Reliable........................3

        3. ███████████ ........................................................................4

        4. Other Micron Licenses............................................................................7

    C. Dr. Mangione-Smith Properly Applies the Court's Constructions ...............................9

        1. "Actual Operational CAS Latency" ................................................................9

        2. "Overall CAS Latency"..............................................................................12

II. CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrett v. Atlantic Richfield Co.*,
   95 F.3d 375 (5th Cir. 1996) ...................................................................................................3

*Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*,
   2016 WL 3655302 (E.D. Tex. Mar. 21, 2016) ......................................................................2

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) .................................................................................................7

*Netlist, Inc. v. Micron Technologies, Inc. et. al.*,
   No. 2:22-cv-203-JRG (*Micron I*), Dkt. 468..........................................................................4

Netlist respectfully requests that the Court deny Micron's motion to strike.

**I.   ANALYSIS**

**A.   Dr. Mangione-Smith's Infringement Theories Were Disclosed in Discovery and Exclusion Is Not Warranted.**

Dr. Mangione-Smith does not provide "new infringement theories," and in any case, exclusion would be an inappropriate remedy because, inter alia, Micron has suffered no prejudice as its expert has provided rebuttal analysis.

**1.   Maximum Power Saving Mode Was Disclosed in Netlist's Infringement Contentions**

Micron argues that Netlist's preliminary infringement contentions never identified Maximum Power Saving Mode ("MPSM") in its analysis of the following limitations: (a) "wherein the circuit further responds to a command signal and the set of input signals from the computer system by selecting one or two ranks of the first number of ranks and transmitting the command signal to at least one DDR memory device of the selected one or two ranks of the first number of ranks" (hereinafter "circuit" element); and (b) "wherein the command signal is transmitted to only one DDR memory device at a time" (hereinafter "command signal" element). Dkt. 369-07 (Exhibit A-1 to Netlist's Prelim. Inf. Contentions) at 26-31 ("circuit" element), 33-38 ("command signal" element) (see below).  In fact, Netlist specifically identified MPSM in its contentions for both the identified elements via an annotated excerpt of from the applicable JEDEC standard, JESD 79-4C:



*Id.* at 27, 34 (red box added to yellow annotations in contentions). As identified in Netlist's contentions and further explained by Dr. Mangione-Smith in his report, using ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 369-03 (Mangione-Smith Opening, Ex. B) ¶ 55. The expert report simply notes that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, in response to Samsung's non-infringement arguments. Expert reports properly add consistent details and supporting analysis to theories presented in contentions. *Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*, 2016 WL 3655302, at *4 (E.D. Tex. Mar. 21, 2016).

Dr. Mangione-Smith cites a Micron DDR4 SDRAM Datasheet to explain his opinions. Each of the portions Dr. Mangione cites in support of his analysis have parallels in JEDEC specification, JESD 79-4C, which Netlist's contentions rely on. *See* Ex. 1 (Micron 8Gb x4, x8, x16 DDR SDRAM Datasheet) at 62, 105 (cited by Dr. Mangione-Smith); Ex. 2 (JESD 79-4C) at 150 (specification cited in Netlist's contentions). For instance, both documents state that "Maximum power-saving mode is entered through an MRS command. For devices with shared control/address signals, a single DRAM device can be entered into the maximum power-saving mode using the per-DRAM addressability MRS command." Ex. 1 at 105; Ex. 2 at 150. Furthermore, Micron's datasheet states that it is "JEDEC JESD-79-4 compliant." Ex. 1 at 1. Micron also expressly admits in its motion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot at 4. Thus, Netlist's contentions identified ▮▮▮▮ with respect to the pertinent limitations and cited the document further explaining ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dr. Mangione-Smith simply elaborated on those disclosed theories.

### 2. Exclusion Is Not the Appropriate Remedy Under The Circumstances

Even under Micron's own case law, *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996), exclusion is not the appropriate remedy under the circumstance. *Contra* Mot. at 1. *Barrett* identifies four factors: (1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony. *Barrett*, 95 F.3d at 380. **Micron does not apply these factors to the circumstances of this case** because an appropriate application of the factors does not support Micron's requested relief.

***Explanation for delay***. As discussed above, the theory Micron identifies as undisclosed was, in fact, already disclosed on the face of Netlist's contentions. There was no delay.

***No Prejudice***. Second, Micron suffered no prejudice, and Micron does not even allege that it suffered any prejudice. Dr. Stone's rebuttal report discusses ▬ at length and fully responds to Dr. Mangione-Smith's arguments. *See* Ex. 3 (Stone Rebuttal) ¶¶ 69, 134-136, 155-163. Micron has not identified any specific discovery (such as depositions or third-party discovery) that it wished it had in its possession to better respond to Dr. Mangione-Smith's opinions.

***No need for continuance.*** Third, since Dr. Stone already responded to the identified theories, no continuance is even needed.

***Importance of the expert testimony***. The theory relates directly to Netlist's infringement theories, and exclusion of this opinions would directly undermine Netlist's case-in-chief and ability to vindicate its patent rights.

### B. Dr. Mangione-Smith's Technical Comparability Analyses are Reliable

Dr. Mangione-Smith adequately established technical comparability of the ▬ license agreement and the non-comparability of Micron's other cited license agreements.

### 3. ▓▓▓ Agreement

Micron's criticisms of Dr. Mangione-Smith's analysis of the comparability of the ▓▓▓ ▓▓▓ collapse under scrutiny. Indeed, in *Micron I*, Judge Payne recommended denial of a motion to strike Netlist's damages expert's opinions on the ▓▓▓ based on an alleged lack of technical comparability, finding that technical comparability had been established based on similar opinions from Dr. Mangione-Smith. *Netlist, Inc. v. Micron Technologies, Inc. et. al.,* No. 2:22-cv-203-JRG (*Micron I*), Dkt. 468 at 5. The same result should apply here.

First, Micron argues Dr. Mangione-Smith ▓▓▓ ▓▓▓ ▓▓▓ Mot. at 5. Micron inexplicably ignores the rationale Dr. Mangione-Smith includes in his analysis, which is that ▓▓▓ ▓▓▓ ▓▓▓ Dr. Mangione-Smith introduces by way of background that the ▓▓▓ ▓▓▓ ▓▓▓ Dkt. 369-05 (Mangione-Smith Opening, Ex. E) ¶ 154. He then explains that "▓▓▓ ▓▓▓ ▓▓▓ ▓▓▓ *Id.* Dr. Magnione-Smith then states that his analysis of those twelve ▓▓▓ informed his opinion that ▓▓▓ ▓▓▓ *Id.* at 155. He then provides a more detailed analysis of ▓▓▓ ▓▓▓ and opined that they are ▓▓▓ ▓▓▓ *Id.* at ¶ 158-159; *see also* ¶ 162 ▓▓▓

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████. Dr. Mangione-Smith, thus, did not "cherry-pick" patents as Micron asserts, but rather identified representative patents and fully disclosed his selection criteria.

Second, Micron alleges that Dr. Mangione-Smith's analysis of the ██████████ applies a markedly different definition of the comparable technology than those that he defined and applied for the other patent licenses." Mot at 6. This critique does not make sense and is certainly no basis to strike Dr. Mangione-Smith's opinions. Dr. Mangione-Smith opined that the ██████████ is comparable and that the other Micron licenses are not comparable. *Compare* Dkt. 369-05 (Mangione-Smith Opening, Ex. E) ¶¶ 4-152, *with* ¶¶ 153-163. Thus, it makes perfect sense that his "definition of the . . . technology" for a comparable license is different from that of a non-comparable license. To the extent Micron is arguing that Dr. Mangione-Smith applies different definitions of the subject matter of the asserted patents when discussing the ██████████ and other licenses, that is also incorrect. With respect to the non-comparable licenses, Dr. Mangione-Smith explains that his analysis uses ████████████████████████████████ *Id.*, ¶ 2. Using non-limiting language, Dr. Mangione-Smith further identifies some key aspects and technical benefits of the Asserted Patents:

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████████████████████

*Id.* When analyzing the ██████████ comparability, Dr. Mangione-Smith does not alter this definition. Rather, he identifies the ████████████████████████ as ██████████

- 5 -

and opines the technical field is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 155. Dr. Mangione-Smith thus makes a comparison between X and Y and finds comparability. He is not changing the "definition" of Y in doing so, as Micron alleges.

Furthermore, in exploring specific exemplary patents from the ▮▮▮▮▮▮▮ in greater detail (as discussed above), Dr. Mangione-Smith repeatedly notes that his comparability analysis incorporates his prior discussions of the asserted patents. *Id.* ¶¶ 158 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, 159 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, 162; 163. This is important because Dr. Mangione-Smith discusses the Asserted Patents at length in earlier sections of this report, which makes the technical similarities between the asserted patents and the ▮▮▮▮▮▮▮ clear. *Compare Id.* ¶ 155 (noting that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), *with* Dkt. 369-03 (Mangione-Smith Opening, Ex. B), ¶ 20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Dkt. 369-04 (Mangione-Smith Opening, Ex. C), ¶ 217 (discussing how ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in analyzing infringement of '417, claim 10, which requires ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

Finally, Micron notes similarities between Dr. Mangione-Smith's technical comparability analysis in *Micron I* and this case. Mot 6-7. The fact that Dr. Mangione-Smith's opinion on technical comparability is similar to the opinion he provided in *Micron I* is both unsurprising and irrelevant. While the Asserted Patents in this case are different than the patents in *Micron I*, Dr. Mangione-Smith opined that the Asserted Patents enable similar technical benefits to the patents he analyzed in *Micron*

*I*. Ex. 4 (*Micron II* Mangione-Smith Opening, Ex. I) at ¶¶ 22-52 (discussing  ); Ex. 5 (*Micron I* Mangione-Smith Opening, Ex. F) at ¶¶ 10-32 (discussing ). And, the whole point of technical comparability is to evaluate whether the comparable license conveyed a similar benefit to the licensee as the infringer has obtained from its infringement. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) ("district court 'must consider licenses that are commensurate with what the defendant has appropriated.'") (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010)).

Notably, Micron's critique employs a slight of hand by focusing only on the remaining asserted patents in *Micron I* (i.e., '918, '054, '060, '160) rather than focusing on the patents Dr. Mangione-Smith actually analyzed in his report in that case (i.e., '918, '054, **'339, '506**). Given the actual scope of Dr. Mangione-Smith's analysis in the prior case, it becomes clear that (1) the patents he analyzed in *Micron I* are in the same field and provide similar benefits to those he analyzed in *Micron II* and (2) the DDR4 LRDIMMs were accused products in both cases at the time of his analysis. Micron completely overlooks these meaningful overlaps in criticizing Dr. Mangione-Smith's opinion.

    **4.**    **Other Micron Licenses**

Micron's request to exclude Dr. Mangione-Smith's technical comparability analysis as to the other Micron licenses should also be denied.

As an initial matter, Micron's experts agree with Dr. Mangione-Smith that the licenses are not comparable. *See* Dkt. 354-03 (Lynde Rebuttal) ¶ 227 (omitting above licenses from list of alleged technically comparable licenses); Dkt. 364-03 (Stone

- 7 -

Rebuttal) ¶¶ 408-438 (providing no analysis regarding technical comparability of above licenses). Given that Micron agrees that these licenses are not comparable, it makes no sense for it to argue that Dr. Mangione-Smith's opinion that they are not comparable is unreliable.

As to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which may be at issue at trial,[1] Micron's contention that Dr. Mangione-Smith refers to the wrong technology is simply incorrect. For example, for the ▮▮▮ license, Dr. Mangione-Smith provides opinions that are specific to the Asserted Patents in this case: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 369-05 (Mangione-Smith Opening, Ex. E) ¶¶ 61; *see also id.* ¶ 30 (distinguishing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); ¶ 47 (distinguishing ▮▮▮ technology on the same basis); ¶ 85 (opining that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) (emphasis added). Furthermore, Dr. Mangione-Smith's substantive discussion of the exemplary patents in each license makes clear that none disclose or suggest data buffering, rank multiplication, or per-DRAM addressability (transmitting a command signal to only one device at a time). *Id.* ¶¶ 24-34 (analyzing ▮▮▮), 53-61 (analyzing ▮▮▮), 83-85 (analyzing ▮▮▮), 43-52 (analyzing ▮▮▮). Indeed, Dr. Mangione-Smith's analysis of the ▮▮▮

---

[1] Netlist has moved to strike Dr. Lynde and Dr. Stones's discussion of these agreements as untimely and unreliable. *See* Dkt. 354 (MTS Lynde) at 2-6; Dkt. 364 (MTS Stone) at 8-9. If those motions are granted, then it likely will be unnecessary for Dr. Mangione-Smith to provide his opinions on these licenses.

▇▇▇▇▇▇ agreements show that none of those disclose any patents directed to memory modules with an on-module controller for performing command and address buffering.

That some of Dr. Mangione-Smith's statements still refer to ▇▇▇▇▇▇▇▇▇▇ and ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇ in addition to technologies at issue is of no moment because, as shown above, his analysis also expressly considers whether the patents are comparable to the asserted patents. Micron simply omits the above discussions. Micron quotes one sentence from Dr. Mangione-Smith's analysis and uses ellipses to conveniently omit discussions of features it does not dispute are relevant to this case. Mot at 8 (omitting ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ from its quote).[2]

### C. Dr. Mangione-Smith Properly Applies the Court's Constructions

The parties' experts have factual disagreements about the application of the Court's construction to the accused products. This is not a basis to strike Dr. Mangione-Smith's opinions, which are rooted in his analysis of documents and testimony from Micron and its third-party suppliers.

#### 1. "Actual Operational CAS Latency"

The Court construed "actual operational CAS latency" of a memory device to mean "the delay between: (1) the time when a command is executed by the memory device, and (2) the time when data is made available to or from the memory device." *See* Dkt. 228 (*Markman* Order) at 36. Micron cites *one sentence from one paragraph* from Dr. Mangione-Smith's analysis and argues that it ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mot. at 10 (emphasis in original). Micron omits swaths of pertinent analysis from both Dr. Mangione-Smith's opening and supplemental report, including

---

[2] Dr. Mangione-Smith's additional reference to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ was a typographical error that does not impact the substantive points of his analysis or otherwise invalidate the many other pages of analysis that he provides that are specific to the Asserted Patents in this case.

evidence cited in that very sentence. In fact, Dr. Mangione-Smith has presented reliable expert analysis showing ███████████████████████████████████████████████████████████████████████████████████, as construed by the Court.

Specifically, Dr. Mangione-Smith's supplemental report notes that his opening report ███████████████████████████████████████ ██ ███████████████████████████████████████ ███████████████ Dkt. 369-10 (Mangione-Smith Suppl. Rpt.), ¶ 77. In specific, his opening report describes his opinions in detail, citing, for example, Micron representative Scott Smith and numerous data sheets for the proposition that "█████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████

███████████████ Dkt. 369-04 (Mangione-Smith Opening, Ex. C), ¶ 119. The fact that Dr. Mangione-Smith addressed these issues in his opening report in the first instance is unsurprising because, as he notes in his supplemental report, the Court's constructions for these terms ███ ███████████████████████████████████████ which he considered in preparing his opening report. Dkt. 369-10 (Mangione-Smith Suppl. Rpt.), ¶ 76. His supplemental report further cites evidence, including the testimony of Micron corporate representative Frank Ross, confirming his analysis:

---

3 ████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████
   • ██████████████████████████████████████████████████████████████████████████████
     █████████████████████████████████████████
   • ██████████████████████████████████████████████████████████████████████████████
     █████████████████████████████████████
   • ██████████████████████████████████████████████████████████████████████████████
     ██████████████████████████████████████████████████████████████████████████████
     █████████████████████████████████████████████████
   • ██████████████████████████████████████████████████████████████████████████████
     █████████████████████████████████████████████████████████████████████████████
     ███████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████.

. . .

███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████ See id. at 49:23-50:22.

Id., ¶¶ 25-26; see also Dkt. 369-04 (Mangione-Smith Opening, Ex. C), ¶¶ 116-118.

Dr. Mangione-Smith further explains, specifically in the context of command execution, that this element is met even if the Court's construction ██████████████ ████████████████████████ and that if that is the case ████████████ ████████████████████████████████ Dkt. 369-10 (Mangione-Smith Suppl. Rpt.), ¶ 77 (emphasis added). As support, he cites Micron representative Scott Smith's confirmation that ██████████ which is ███████████████████████████ ████████████████████████████ Id., 77 (citing 2023-11-17 Smith Tr. at 69:12-18). Dr. Mangione-Smith also further incorporates paragraphs 21, 131, 138-168 from his opening report █████████████████████████████. Id. As for the ██████████ ███████████████████████ Dr. Mangione-Smith's analysis addressed ████ ███████████████████ See e.g., id. (discussing █████████████████ ███████████████); Dkt. 369-04 (Mangione-Smith Opening, Ex. C), ¶¶ 119 (discussing ████████████████████████████████), 121-122 (████████████ ████████████), 130-131 (█████████████████).

In sum, Dr. Mangione-Smith's infringement analysis includes ████████ ███████████████████████████████████████████ ███████████████████████████████. Similarly, Dr. Mangione-Smith's

infringement analysis and evidence also explained that a ███████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████

### 2. "Overall CAS Latency"

The Court construed the term "overall CAS latency" of a memory module to mean "the delay between (1) the time when a command is executed by the memory module, and (2) the time when data is made available to or from the memory module." *See* Dkt 228 (Markman Order) at 36. Citing pertinent data sheets, depositions, and source code, Dr. Mangione-Smith applies this construction to the accused products and concludes that infringement is met in his opening report, again because the Court's constructions is substantially similar Micron's proposed construction, a fact which Micron avoids mentioning. Micron ignores large swaths of Dr. Mangione-Smith's relevant analysis and attempts to straightjacket the Court's construction in accordance with its expert's opinions, which Dr. Mangion-Smith contests. Micron's bare disagreement with Dr. Mangione-Smith's analysis is no basis to strike those opinions.

Micron claims that Dr. Mangion-Smith has not identified start and end times that define the delay in question. Micron is mistaken. Dr. Mangione-Smith summarizes how the opinions in his opening report show how the element is met under the Court's construction:



Dkt. 369-10 (Mangione-Smith Suppl. Rpt.), ¶ 78 (emphasis added). Dr. Mangione-Smith opines that

while the delay required by the Court's construction ███████████████████████

████████████████████████████████████████ █████ ████████████

████████████████████████████████████████████████████████

█████████ Dr. Mangione-Smith did not define the overall CAS latency as ████████████ as

Micron contends. Micron's chop quote of Dr. Mangione-Smith's supplemental report (Mot., 10)

ignores the point Dr. Mangione-Smith was making—that ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Dkt. 369-10

(Mangione-Smith Suppl. Rpt.) ¶ 78. The very next sentence summarizes the point. *Id.* ████

████████████████████████████████████████████████████████

████████████████████████████████████████████ *See* Dkt. 369-

04 (Mangione-Smith Opening, Ex. C), at ¶ 113 (citing REN-001699 at REN-001712 and 2022-12-15

Davey Tr., at 27:18-20 (████████████████████████████)). Dr. Mangione-

Smith further identifies that these ████████████████████████████████

████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

*Id.*, 114 (citing REN-001699 at REN-001712-13 and other ████████████████). Moreover, the

contents were confirmed by ████████████████████████████████

---

[4] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████" Opening, Ex. C para 113.

- 13 -

▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬
▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬

*Id.*, ¶ 116 (citing 2023-08-29 Jin Tr., 38:5-39:7). Dr. Mangione-Smith goes on to explain ▬

▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬ *Id.*, ¶¶ 117-

121. To explain ▬▬▬▬▬▬, Dr. Mangione-Smith further cites the

depositions of Mr. Ross (Micron), Mr. Holbrook (Micron), ▬▬▬▬

▬▬▬▬▬▬ *See id.*, ¶¶ 113-132, 137-169.

Micron faults Dr. Mangione-Smith for ▬▬▬▬▬

▬▬▬▬▬▬▬

As explained above, he did not.



*Id.*, ¶¶ 121, 142. This diagram does not reflect any inconsistency or incompatibility between Dr. Mangione-Smith's analysis and the Court's construction. The diagram █████████

██████████████████

██████████████████

*Id.*, ¶¶ 122 █████

██████████████████

████████████; 124 (citing 2023-08-30 Holbrook Tr., 67:18-69:2.31 █████

██████████████████████); 126

(noting that █████████████████████████

█████████████); *see also* Dkt. 369-10 (Mangione-Smith Suppl. Rpt.), ¶ 78 (describing,

in the context of █████████████████████

███████); Ex. 7 (Mangione-Smith Rebuttal) at ¶ 87

Conversely, in the context of █████████████████

██████████████████

███████ Dkt. 369-04 (Mangione-Smith Opening, Ex. C) at ¶¶ 131 ████

██████████████████

███████████; 104 █████████

██████████████████

████████████████████, 106-113,

222; *see also* Dkt. 369-10 (Mangione-Smith Suppl. Rpt.), ¶ 78 (describing, █████

████████████████████).

## II.   CONCLUSION

For the foregoing reasons, Netlist respectfully requests Micron's motion be denied.

| | |
|---|---|
| Dated: January 30, 2024 | Respectfully submitted,<br><br>*/s/ Jason G. Sheasby*<br><br>Samuel F. Baxter<br>Texas State Bar No. 01938000<br>sbaxter@mckoolsmith.com<br>Jennifer L. Truelove<br>Texas State Bar No. 24012906<br>jtruelove@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>104 East Houston Street Suite 300<br>Marshall, TX 75670<br>Telephone: (903) 923-9000<br>Facsimile: (903) 923-9099<br><br>Jason Sheasby (*pro hac vice*)<br>jsheasby@irell.com<br>Annita Zhong, PhD (*pro hac vice*)<br>hzhong@irell.com<br>Thomas C. Werner (*pro hac vice*)<br>twerner@irell.com<br>Andrew Strabone (*pro hac vice*)<br>astrabone@irell.com<br>Yanan Zhao (*pro hac vice*)<br>yzhao@irell.com<br>Michael W. Tezyan (*pro hac vice*)<br>mtezyan@irell.com<br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>Tel. (310) 277-1010<br>Fax (310) 203-7199<br><br>Rebecca Carson (*pro hac vice*)<br>rcarson@irell.com<br>**IRELL & MANELLA LLP**<br>840 Newport Center Drive, Suite 400<br>Newport Beach, CA 92660<br><br>**Attorneys for Plaintiff Netlist, Inc.** |

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 30, 2024, a copy of the foregoing was served to all counsel of record.

/s/ *Yanan Zhao*
Yanan Zhao

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

/s/ *Yanan Zhao*
Yanan Zhao