UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>  Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.,<br><br>  Defendants. | Civil No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S OPPOSITION TO NETLIST'S MOTION TO STRIKE CERTAIN OPINIONS OF SAMSUNG'S EXPERT MR. JOSEPH MCALEXANDER (Dkt. 359)**

████████████████████████████████

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

TABLE OF EXHIBITS .................................................................................................... v

TABLE OF ABBREVIATIONS ........................................................................................ v

I.      ARGUMENT ....................................................................................................... 1

    A.      Mr. McAlexander's Equitable Defense Opinions and the Underlying Facts Are Properly Included in His Report .............................................. 1

    B.      Mr. McAlexander's Reports Properly Include His Essentiality Opinions ............................................................................................. 1

    C.      Mr. McAlexander's Opinions About Netlist's Relationship to JEDEC Are Relevant and not Unduly Prejudicial ...................................... 3

    D.      Mr. McAlexander's Prior Invention and Derivation Opinions Are Proper .............................................................................................. 6

    E.      Mr. McAlexander's Section 102 Opinions Are Proper ............................... 7

    F.      Mr. McAlexander's Opinions Applying the Plain Meaning of the '912 Patent Claim 16 Are Proper ....................................................... 7

    G.      Mr. McAlexander Does Not Assert a Practicing the Prior Art Defense ........................................................................................... 10

    H.      Mr. McAlexander Properly Analyzes the Evolution of the QBM Technology in his Obviousness Analysis ............................................. 10

    I.      Mr. McAlexander's References to Completed IPRs Are Proper ............................. 11

    J.      Mr. McAlexander's Written Description Opinions Apply the Court's Claim Construction ......................................................................... 12

    K.      Mr. McAlexander's ███████ Licensing Agreement Opinions Are Proper ........................................................................................... 13

    L.      Mr. McAlexander's Opinions Regarding the Relative Technical Value of Netlist's Patents Are Reliable ...................................................... 14

II.     CONCLUSION .................................................................................................. 15

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
   501 F.3d 1307 (Fed. Cir. 2007)...................................................................................9

*Akron Polymer Container Corp. v. Exxel Container, Inc.*,
   148 F.3d 1380 (Fed. Cir. 1998)...................................................................................5

*Apple Inc. v. Wi-LAN Inc.*,
   25 F.4th 960 (Fed. Cir. 2022) ...................................................................................14

*Creative Compounds, LLC v. Starmark Laboratories*,
   651 F.3d 1303 (Fed. Cir. 2011)...................................................................................6

*Cumberland Pharmaceuticals Inc. v. Mylan Institutional LLC*,
   846 F.3d 1213 (Fed. Cir. 2017)...................................................................................6

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Lit.*,
   676 F.3d 1063 (Fed. Cir. 2012).................................................................................11

*Eaton Corp. v. Rockwell Int'l Corp.*,
   323 F.3d 1332 (Fed. Cir. 2003)...................................................................................7

*Eli Lilly & Co. v. Teva Pharms. USA, Inc.*,
   619 F.3d 1329 (Fed. Cir. 2010).................................................................................13

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*,
   No. 2:22-cv-125-JRG, 2023 WL 8281905 (E.D. Tex. Nov. 29, 2023) ....................6

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
   2017 WL 959592 (E.D. Tex. Mar. 13, 2017) ...........................................................4

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010)...................................................................................9

*George M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*,
   618 F.3d 1294 (Fed. Cir. 2010).................................................................................10

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
   909 F.2d 1464 (Fed. Cir. 1990).............................................................................8, 9

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   645 F.3d 1336 (Fed. Cir. 2011)...................................................................................5

████████████████████

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ...................................................................................14

*Imperium (IP) Holdings, Inc. v. Apple Inc.*,
    No. 4:11-CV-163, 2012 WL 6949611 (E.D. Tex. July 2, 2012) ...............................8

*INVT SPE LLC v. Int'l Trade Comm'n*,
    46 F.4th 1361 (Fed. Cir. 2022) ..................................................................................8

*Iridescent Networks, Inc. v. AT&T Mobility, LLC*,
    No. 6:16-CV-01003-RWS, 2017 WL 8751908 (E.D. Tex. June 15, 2017).........................6, 7

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
    10 F.4th 1330 (Fed. Cir. 2021) ................................................................................12

*In re Kubin*,
    561 F.3d 1351 (Fed. Cir. 2009) ...............................................................................11

*Lodsys, LLC v. Brother Int'l Corp.*,
    No. 2:11-cv-00090-JRG, 2013 WL 2949959 (E.D. Tex. June 14, 2013) ...................8

*In re O'Farrell*,
    853 F.2d 894 (Fed. Cir. 1988) .................................................................................11

*Pass & Seymour, Inc. v. Int'l Trade Comm'n*,
    617 F.3d 1319 (Fed. Cir. 2010) ...............................................................................10

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
    552 F. Supp. 3d 664 (E.D. Tex. 2021) ......................................................................5

*PIN/NIP, Inc. v. Platte Chem. Co.*,
    304 F.3d (Fed. Cir. 2002) .........................................................................................13

*Radio Sys. Corp. v. Lalor*,
    709 F.3d 1124 (Fed. Cir. 2013) .................................................................................4

*Seagen Inc. v. Daiichi Sankyo Co.*,
    No. 2:20-CV-00337-JRG, 2022 WL 2789901 (E.D. Tex. July 15, 2022) ...................1

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
    279 F.3d 1357 (Fed. Cir. 2002) ...............................................................................10

*TGIP, Inc. v. AT & T Corp.*,
    512 F. Supp. 2d 696 (E.D. Tex. 2007) ......................................................................8

*Trading Technologies Intern., Inc. v. Open E Cry, LLC*,
    728 F.3d 1309 (Fed. Cir. 2013) ...............................................................................11

*Versata Software, Inc. v. SAP Am., Inc.*,
    717 F.3d 1255 (Fed. Cir. 2013)..............................................................................................9

*Versata Software, Inc. v. SAP Am., Inc.*,
    758 F. Supp. 2d 389 (E.D. Tex. 2010) ...............................................................................5, 9

**Statutes**

35 U.S.C. § 102

**TABLE OF EXHIBITS**

| # | Description |
|---|---|
| 1 | Attachment A to McAlexander Initial Expert Report (2023-11-20) |
| 2 | Exhibit A-4 to Attachment A to McAlexander Initial Expert Report (2023-11-20) |
| 3 | Attachment B to McAlexander Initial Expert Report (2023-11-20) |
| 4 | Exhibit B-6 to Attachment B to McAlexander Initial Expert Report (2023-11-20) |
| 5 | Attachment C to McAlexander Initial Expert Report (2023-11-20) |
| 6 | Exhibit C-4 to Attachment C to McAlexander Initial Expert Report (2023-11-20) |
| 7 | Exhibit C-1 to Attachment C to McAlexander Initial Expert Report (2023-11-20) |
| 8 | Exhibit C-2 to Attachment C to McAlexander Initial Expert Report (2023-11-20) |
| 9 | Exhibit A-1 to Attachment A of McAlexander Initial Expert Report (2023-11-20) |
| 10 | Exhibit A-2 to Attachment A of McAlexander Initial Expert Report (2023-11-20) |
| 11 | Exhibit B-2 to Attachment B of McAlexander Initial Expert Report (2023-11-20) |
| 12 | Exhibit B-4 to Attachment B of McAlexander Initial Expert Report (2023-11-20) |
| 13 | 2023-11-20 McAlexander Initial Expert Report (excerpts) |
| 14 | Attachment A to McAlexander Rebuttal Expert Report (2023-12-21) |
| 15 | Attachment D to McAlexander Rebuttal Expert Report (2023-12-21) |
| 16 | Attachment B to McAlexander Rebuttal Expert Report (2023-12-21) |
| 17 | Attachment C to McAlexander Rebuttal Expert Report (2023-12-21) |
| 18 | U.S. Patent No. 6,553,350 |
| 19 | 2023-11-20 Opening Expert Report of Dr. William Henry Mangione-Smith (excerpts) |
| 20 | Samsung's Suppl. Objs. & Resps. to Netlist's 1st Interrogs. (Nov. 20, 2023) |

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| *EDTX1* | *Netlist Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-463 (E.D. Tex.) |
| *EDTX1* PTC Order | 2023-04-05 Order on PTO and MIL (*EDTX1*, Dkt. 432) |
| '912 patent | U.S. Patent No. 7,619,912 |
| '417 patent | U.S. Patent No. 11,093,417 |
| '608 patent | U.S. Patent No. 10,268,608 |
| PTAB | Patent Trial & Appeal Board |
| IPR | Inter Partes Review |
| SSO | Standards Setting Organization |
| Section 102(f) | 35 U.S.C. § 102(f) |
| Section 102(g)(2) | 35 U.S.C. § 102(g)(2) |
| SMIL Order | STANDING ORDER ON MOTIONS *IN LIMINE* IN CASES INVOLVING ALLEGATIONS OF PATENT INFRINGEMENT AND/OR BREACH OF FRAND OBLIGATIONS, AS WELL AS DECLARATORY JUDGMENT ACTIONS WHICH RELATE TO THE SAME, signed 08-11-2023 |

███████████████████████████

Netlist's reasons for striking portions of Mr. McAlexander's expert reports are incorrect or misplaced.  For the reasons set forth below, Netlist's motion should be denied.

## I.    ARGUMENT

### A.    Mr. McAlexander's Equitable Defense Opinions and the Underlying Facts Are Properly Included in His Report

Netlist's broad request to strike Mr. McAlexander's opinions regarding equitable defenses and claims because they supposedly "have no place before the jury," Dkt. 359 at 1, is unsupported.  Courts routinely permit experts to express opinions regarding underlying facts relevant to equitable defenses the Court will ultimately decide.  *Seagen Inc. v. Daiichi Sankyo Co.*, No. 2:20-CV-00337-JRG, 2022 WL 2789901, at *1-2 (E.D. Tex. July 15, 2022).  This Court denied Netlist's similar motion in *EDTX1* "[w]ith regard to factual underpinnings that stop short of making a legal assertion." *EDTX1* PTC Order at 7, 8.  While the Court granted Netlist's similar motion in *EDTX1* for "legal conclusions, legal terms and language that is inherently legal in nature," *id.*, Netlist's motion does not identify any legal conclusions.  This Court in *EDTX1* expressly allowed Mr. McAlexander's opinions regarding underlying facts related to Samsung's equitable defenses and should do so again.  *Id.*

Netlist's broad request is also contrary to this Court's practice.  This Court routinely permits evidence, testimony, or argument ***before the jury*** that relates to equitable issues or defenses if it "also serve[s] another evidentiary purpose relevant to jury issues."  SMIL Order, Court MIL No. 5.  Netlist's motion does not address this permitted use or identify which paragraphs supposedly relate to only equitable issues.  Mr. McAlexander's opinions are relevant to at least infringement, validity, willfulness, and standard essentiality, in addition to equitable issues.  Netlist's motion should be denied.

### B.    Mr. McAlexander's Reports Properly Include His Essentiality Opinions

Netlist's argument that Mr. McAlexander's essentiality opinions are untimely and incomplete is based on the false premise that Mr. McAlexander did not address essentiality in his opening report.  Dkt. 359 at 2.  Mr. McAlexander's opening report contains precisely the analysis that Netlist alleges is

███████████████████████████████████████████

missing.[1]  He analyzed the evidence on which Netlist relies for infringement on an element-by-element basis and showed that an infringement finding under Netlist's infringement theory would compel a finding of essentiality.  Ex. 1 at ¶¶ 206-28; Ex. 2; Ex. 3 at ¶¶ 193-203, 208-11; Ex. 4; Ex. 5 at ¶¶ 323-34; Ex. 6.[2]  Netlist is thus incorrect that Mr. McAlexander "argue[d], for the first time in a rebuttal report, that the asserted claims are standard-essential," that his analysis is incomplete.  Dkt. 359 at 2.[3]

As to Mr. McAlexander's rebuttal report, it is proper rebuttal to Dr. Mangione-Smith's newly-offered opinions.  Mr. McAlexander's rebuttal report opines that Dr. Mangione-Smith's infringement opinions, like the previously disclosed infringement contentions, are all based on JEDEC.  Ex. 14 at ¶¶ 386-88; Ex. 16 at ¶¶ 205-09; Ex. 17 at ¶¶ 218-24 ████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

Mr. McAlexander's rebuttal opinions on essentiality, in addition to the detailed opinions in the opening report, are particularly proper because Netlist stonewalled on providing any essentiality contentions during fact discovery, even after Samsung moved to compel.  Naturally, Mr. McAlexander could analyze essentiality in his opening report based on only the information available to him at the time.  After Netlist disclosed new infringement positions and evidence in Dr. Mangione-Smith's opening report, Mr. McAlexander appropriately responded.  Netlist should not be rewarded for

---

[1] Moreover, Netlist knew of Samsung's essentiality position via Samsung's interrogatory response even before it received Mr. McAlexander's opening report.  *See* Dkt. 374-10 at 89-91 ("████████████████████

████████████████████████████████████████

█████████████

[2] The *Micron* case (Dkt. 359 at 2-3) is distinguishable because the expert there did not provide element-by-element analysis in the opening report.  *See* Dkt. 423.

[3] Nor is such analysis speculative.  Rather than subjective guesses about Netlist's mindset, Mr. McAlexander's essentiality opinions are the logical conclusions of Netlist's infringement allegations. *See* Ex. 1 at ¶¶ 206-28; Ex. 2; Ex. 3 at ¶¶ 193-203, 208-11; Ex. 4; Ex. 5 at ¶¶ 323-34.

withholding its essentiality position during fact discovery. The Court should deny Netlist's motion and instead preclude Netlist from offering evidence on essentiality. Dkt. 374.

### C.    Mr. McAlexander's Opinions About Netlist's Relationship to JEDEC Are Relevant and Not Unduly Prejudicial

Netlist asks the Court to strike Mr. McAlexander's discussion of Netlist's JEDEC activities on the ground that it is irrelevant "to validity of the asserted claims." Dkt. 359 at 4.

*First*, Netlist asserts this Court previously "limited similar testimony [in paragraphs 170-174] from Mr. McAlexander," but this assertion overstates the Court's order. Dkt. 359 at 4. The Court was clear that it struck paragraphs 170 through 174 only "because they are replete with references to litigation in the Central District of California and before the ITC," but stated that it would "not otherwise . . . constrain the witness." *EDTX1*, Dkt. 427 at 146:10-14. Indeed, "the motion was DENIED otherwise." *EDTX1* PTC Order at 8.

*Second*, limiting Mr. McAlexander's testimony here would improperly "constrain the witness" as Netlist's involvement in JEDEC, its prosecution of continuation applications, and its licensing activities are highly relevant to many issues in this case. Netlist's JEDEC activities provide relevant context regarding the development of the asserted patents and that of the accused products, and the relation of accused to non-accused features. These issues directly relate to damages, noninfringement, validity, willfulness, standards estoppel, prosecution laches, inequitable conduct, and unclean hands.

Netlist's JEDEC activity is relevant to validity. One issue is whether the specifications support the asserted claims, and the jury will naturally wonder how the claims originated if not from the specifications. Thus, facts about the claims' origins will prevent jury confusion. Here, Netlist drafted the asserted claims when JEDEC had already adopted the specifications that Netlist now accuses of infringement.[4] There is no basis to prevent Mr. McAlexander from educating the jury by providing

---

[4] Netlist cannot dispute this fact, as it never substantively responded to Samsung's discovery requests concerning Netlist's knowledge of JEDEC standards when writing the asserted claims.

████████████████████████████████

the factual context of the claims' development. *Erfindergemeinschaft* is not to the contrary. There, the Court excluded argument that it is ***improper*** to write claims in a continuation application based on information obtained in the marketplace. *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 2017 WL 959592, at *1 (E.D. Tex. Mar. 13, 2017). Mr. McAlexander does not opine that Netlist's conduct in attempting to write claims on the JEDEC standards was improper, so *Erfindergemeinschaft* is inapposite.

Netlist's JEDEC activity is also relevant to infringement. For example, the asserted patents' named inventors ████████████████████████████████████████████████████ ███████████████████████████████████████████████. *E.g.*, Ex. 1 at ¶¶ 52-54, Ex. 5 at ¶¶ 44-47; Ex. 13 at ¶¶ 318-19. ████████████████████████████████████████

████████████████████████████████████████████████████

███████████ *Id.* Indeed, JEDEC is at the heart of this case: Netlist relied on JEDEC specifications in its Complaint and infringement contentions, Ex. 1 at ¶¶ 206-28; Ex. 3 at ¶¶ 193-211; Ex. 5 at ¶¶ 323-34, and its expert relies extensively on them in his report. *See generally* Ex. 19 at Exs. B, C, D.

Netlist's JEDEC activity is further relevant to damages. It rebuts Netlist's suggestion that it was solely responsible for developing DDR4 LRDIMM technology. Further, Netlist's participation in JEDEC requires it to license any essential patents on reasonable and non-discriminatory ("RAND") terms. Dkt. 374 at 4-7. The fact that the accused products implement JEDEC standards, and thus incorporate a significant amount of non-accused technology, is also highly relevant to any damages.

Netlist's JEDEC activity is also relevant to Samsung's equitable defenses, such as equitable estoppel, which bars a patentee's suit where the alleged infringer is misled by the patentee's conduct to "reasonably infer that the patentee does not intend to enforce its patent," "relies on that conduct," and "will be materially prejudiced if the patentee is allowed to proceed with its claim." *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130 (Fed. Cir. 2013). In the SSO context, "[s]uch conduct can be shown where (1) the patentee had a duty of disclosure to the standard setting organization, and (2) the

patentee breached that duty." *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011). Netlist does not argue that Mr. McAlexander's opinion that the '912 patent is "unenforceable due to standards-based estoppel" in view of Netlist's JEDEC activity is improper, nor does it seek to strike that opinion from Mr. McAlexander's report. Dkt. 359-3 at ¶¶ 184-205. Netlist's licensing activities within JEDEC are also relevant to essentiality. Mr. McAlexander's opinions regarding the evolution of the claims of the '417 and '608 patent families during their prosecution are also relevant to prosecution laches, which requires showing "(a) that the patentee's delay in prosecution was unreasonable and inexcusable under the ***totality of the circumstances***; and (b) that the accused infringer or the public suffered prejudice attributable to the delay." *Personalized Media Commc'ns, LLC v. Apple, Inc.*, 552 F. Supp. 3d 664, 684 (E.D. Tex. 2021) (emphasis added) (citations omitted). Further still, Mr. McAlexander's analysis of the disclosures made at JEDEC meetings attended by a named inventor of the '608 patent in view of the patent's purported scope (according to Netlist) is relevant to inequitable conduct. "A party may show inequitable conduct by producing clear and convincing evidence of (1) material prior art, (2) knowledge chargeable to the patent applicant of prior art and its materiality, and (3) the applicant's failure to disclose the prior art to the PTO with intent to mislead." *Versata Software, Inc. v. SAP Am., Inc.*, 758 F. Supp. 2d 389, 392 (E.D. Tex. 2010) (citations omitted). "The intent element of the offense is thus in the main proven by inferences drawn from facts, with the collection of inferences permitting a confident judgment that deceit has occurred." *Id.* at 393 (quoting *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 1384 (Fed. Cir. 1998)).

***Third***, Netlist's motion asserts only that the identified paragraphs related to its JEDEC activities do not have "relevance to validity of the asserted claims," wholly failing to address their relevance to other issues in the case. Dkt. 359 at 4. As demonstrated above, these paragraphs are relevant to a host of other issues in this case (in addition to validity), and Netlist cannot now deny such relevance after not addressing these other issues in its motion. Netlist's motion should be denied.

**D.    Mr. McAlexander's Prior Invention and Derivation Opinions Are Proper**

Netlist asks the Court to strike certain section 102(f) and 102(g)(2) opinions based on a false premise: that these opinions fail to show that "a single reference evidencing prior invention disclosed every element of the claimed invention."  Dkt. 359 at  5-6 (citations omitted).  Invalidity based on sections 102(f) and 102(g)(2) requires showing "prior conception" of the invention by another. *Cumberland Pharms. Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1217-18 (Fed. Cir. 2017); *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1311-12 (Fed. Cir. 2011).  Mr. McAlexander's opinions show "prior conception" by another, particularly the developers of the QBM system and other members of JEDEC.  For each patent, Mr. McAlexander offers 102(f) and 102(g)(2) opinions in relation to the QBM system prior art[5] based in part on detailed claim charts showing the QBM system invalidates the asserted claims.  Ex. 1 at ¶¶ 180-83; Ex. 3 at ¶¶ 157-60; Ex. 5 at ¶¶ 242, 265-70, 276-82; Ex. 7; Ex. 9; Ex. 10; Ex. 11; Ex. 12.  For the '608 patent, Mr. McAlexander also offers 102(f) and 102(g)(2) opinions based on certain JEDEC proposals[6] including citations to a detailed claim chart evidencing the JEDEC proposals invalidate the asserted claims.  Ex. 5 at ¶¶ 245, 271-75, 283-87; Ex. 8.  Thus, Mr. McAlexander properly opines that a single reference discloses all elements of the claimed invention.

Netlist's criticisms of Mr. McAlexander's 102(f) and 102(g) opinions simply go to the sufficiency of the evidence.  However, Mr. McAlexander's opinions need not establish every element of a defense to be admissible.  *See Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:22-cv-125-JRG, 2023 WL 8281905, at *4 (E.D. Tex. Nov. 29, 2023).  Moreover, Netlist did not move for

---

[5] QBM was a system developed by Kentron Technologies, Inc. during 1998-2007.

[6] The JEDEC proposals are a series of proposals sponsored by Intel and presented in JEDEC meetings during the time period that JEDEC was developing DDR4 standards.  *See Iridescent Networks, Inc. v. AT&T Mobility, LLC*, No. 6:16-CV-01003-RWS, 2017 WL 8751908, at *2 (E.D. Tex. June 15, 2017) (finding that a group of 23 "unapproved draft proposals" prepared by a single standards setting working group and directed to solving the same problem can constitute "a single reference").

summary judgment on these issues, which present questions of fact for the jury.  *E.g.*, *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003).  Netlist's motion should be denied.

### E. Mr. McAlexander's Section 102 Opinions Are Proper

Netlist's challenges to Mr. McAlexander's anticipation opinions lack merit.  Dkt. 359 at 6.  First, Netlist mischaracterizes paragraph 7 of Mr. McAlexander's opening report: it does not state that each asserted claim is anticipated under § 102, but rather that "each of the Asserted Claims . . . is invalid as anticipated . . . ***and/or*** as rendered obvious," accurately summarizing his opinions.  Ex. 13 at ¶ 7.

Second, Netlist is wrong that the JEDEC proposals are not properly considered as a single, anticipatory prior art reference.  *See Iridescent Networks,* 2017 WL 8751908 at *2.  Also, knowledge before the invention date is a proper basis for anticipation.  *See* 35 U.S.C. § 102 ("the invention was ***known*** or used ***by others*** in this country . . . before the invention thereof by the applicant for patent" (emphasis added)).  As Mr. McAlexander explains, the JEDEC proposals illustrate the knowledge of a person of ordinary skill at the time.  Ex. 5 at ¶¶ 206-22.  Here too, Netlist has not sought summary judgment and anticipation is a question of fact for the jury.  Netlist's motion should be denied.

### F. Mr. McAlexander's Opinions Applying the Plain Meaning of the '912 Patent Claim 16 Are Proper

Netlist, not Mr. McAlexander, applies an incorrect legal standard for direct infringement.  The dispute centers on claim language requiring "***receiving*** a set of input signals," "***configured to control*** a second number of DDR memory devices," "***generating*** a set of output signals," and "***transmitting*** the command signal."  Mr. McAlexander applies the claim's plain language and determines the accused products do not directly infringe the '912 patent because, among other reasons, the only configuration that Netlist has identified that supposedly is "receiving," "configured to control," "generating," and "transmitting" is where the product is changed—by someone other than Samsung—to enable a specific combination of modes of operation that are all turned off when the products are sold.  Dkt.

359-7 at ¶¶ 14-60.  Yet, Netlist provided no evidence such a combination has ever occurred.

To get around this failure, Netlist advances an incorrect *per se* rule, under which apparatus claims are always directed to capability.[7]  That is not the law.  "[S]ometimes a device only needs to be 'capable of operating' according to a claimed limitation, for a finding of infringement. . . .  Other times, a device does not infringe unless it actually operates as claimed. . . .  Whether infringement requires actual performance of the recited functions by the accused device ***depends on the claim language***."  *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1371 (Fed. Cir. 2022).  This rule applies to apparatus claims, which may "require an infringing device to actually perform and operate according to the functional terms recited." *Id.*  Here the claim language recites actual performance of the recited functions, not merely capability.  Dkt. 353 at 5-10; *Imperium (IP) Holdings, Inc. v. Apple Inc.*, No. 4:11-CV-163, 2012 WL 6949611, at *28 (E.D. Tex. July 2, 2012), report and recommendation adopted as modified, 2013 WL 322053 (E.D. Tex. Jan. 28, 2013) (holding that an "imager ***providing data*** for a plurality of pixels" and an "integration time adjustment block . . . ***setting the integration time*** to an integral multiple" required that the claimed "imager" to be in the "particular state in which" the "providing" and "setting" "are occurring or have occurred").  Mr. McAlexander therefore properly applies the correct standard to the plain language of asserted claim 16.  Dkt. 359 at 7.[8]

Netlist's cited case law does not command otherwise.  *Hewlett-Packard* does not even address the issue of whether specific claim language is directed to actual configuration or capability.  *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990).  Instead, *Hewlett-Packard*

---

[7] Netlist has waived its construction and waived any infringement theory based on mere "capability" as presented in Samsung's pending motion to strike and motion for summary judgment.  *See, e.g.*, *Lodsys, LLC v. Brother Int'l Corp.*, No. 2:11-cv-00090-JRG, 2013 WL 2949959, at *19-20 (E.D. Tex. June 14, 2013) (deeming constructions waived that were not timely raised); *TGIP, Inc. v. AT & T Corp.*, 512 F. Supp. 2d 696, 712 (E.D. Tex. 2007).

[8] In addition, Netlist's belated construction is wrong for the reasons discussed in Samsung's motion for summary judgment.  Dkt. 353 at 5-10 (applying *INVT* and other authority).

addressed whether prior art not meeting the literal claim language would nevertheless render that claim obvious given defendant's argument that prior art element allegedly offered no "operational difference" over the asserted claim element. *Id. Finjan* supports Samsung, not Netlist. It notes: "[a]s we have cautioned, in every infringement analysis, **the language of the claims**, as well as the nature of the accused product, dictates whether an infringement has occurred." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) (internal quotes omitted). Unlike here, the specific claim language in *Finjan* required no active steps or configuration, instead describing only components "for" specific functions.[9] *Id.* at 1204-05. Similarly, *Fantasy Sports* confirms that "the language of the claims . . . dictates whether an infringement has occurred." *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1117-18 (Fed. Cir. 2002). Like in *Finjan*, the claims in *Fantasy Sports* recited structure "for" certain recited functions, such as "means for scoring . . . bonus points," rather than claims requiring action or configuration as presented here. *Id.* at 1118. Nor does *Versata* aid Netlist. The claim language in *Versata* was "[a] computer readable storage media comprising: computer instructions to implement the method . . ." for two asserted claims and "computer program instructions capable of" for the remaining asserted claim. *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013), Ex. 18. The *Versata* claims were accordingly drawn to computer instructions with specific capabilities, which is not the case here.

Tellingly absent from Netlist's motion is any analysis of the actual claim language. Because Netlist is wrong that apparatus claims are always satisfied by capability, its motion should be denied.

---

[9] *Finjan* itself discussed *ACCO Brands's* holding that claims requiring a "specific configuration" were not infringed where there was a mere capability to operate in an infringing manner. *Finjan*, 626 F.3d at 1204 (discussing *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007), and noting there "[t]he asserted apparatus claims covered locking devices with pins in a **specific configuration**" and "in the absence of any evidence that customers actually operated the device in the infringing mode, direct infringement could not be inferred").

████████████████████████████████████████████

### G.    Mr. McAlexander Does Not Assert a Practicing the Prior Art Defense

Despite its vague allegation that ¶ 249 of Mr. McAlexander's rebuttal report advances a "practicing the prior art defense," Dkt. 359 at 8, Netlist identifies no opinion by Mr. McAlexander that Samsung does not infringe because it practices the prior art.  To the contrary, Mr. McAlexander demonstrates noninfringement by applying the plain meaning of the claims and comparing them to the accused products. Ex. 14 at ¶¶ 14-249.  As part of that analysis, Mr. McAlexander opines that the accused products cannot transmit a command signal to "████████████████████████████████

████████████████████████████████████████████ *Id.* at ¶¶ 183-86. He further notes that Netlist previously distinguished prior art with these same design constraints. *Id.* at ¶ 249.  Netlist's prosecution statements are relevant to show that Netlist's new position contradicts the one it advanced before the Patent Office. *Compare id.* ¶ 186, *with id.* ¶ 249; *Pass & Seymour, Inc. v. Int'l Trade Comm'n*, 617 F.3d 1319, 1324 (Fed. Cir. 2010) ("The specification and prosecution history confirm that this plain meaning is appropriate in the context of this claim limitation.").  The claims cannot have one "plain meaning" when Netlist sought the patent and a different "plain meaning" now; the jury is entitled to consider the inconsistent manner that Netlist has characterized its claims.

Further, these opinions are relevant to Netlist's doctrine of equivalents allegations.  Netlist's own cited cases hold that the prosecution history is relevant to the scope of equivalents because equivalents cannot ensnare the prior art. *See Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002) (qualifying comments as applicable to "literal infringement" and noting that "the doctrine of equivalents cannot extend so broadly as to ensnare prior art").

### H.    Mr. McAlexander Properly Analyzes the Evolution of the QBM Technology in His Obviousness Analysis

Netlist takes issue with a single sentence in ¶ 340 of Mr. McAlexander's initial report, stating that features of QBM2 (which evolved from QBM1) would have been obvious improvements, alleging that this statement is "pure hindsight."  Netlist is wrong on the law; simultaneous invention is

persuasive evidence of obviousness. *George M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1305 (Fed. Cir. 2010) ("Independently made, simultaneous inventions, made within a comparatively short space of time, are persuasive evidence that the claimed apparatus was the product only of ordinary mechanical or engineering skill."). Mr. McAlexander therefore did not rely on "pure hindsight" in identifying a feature that was independently made near the alleged time of the invention; instead, his opinions are proper under the law of simultaneous invention.

Netlist's reliance on *In re Cyclobenzaprine* is misplaced. **First**, that court's discussion of hindsight applied to defendant's "obviousness finding by merely throwing metaphorical darts at a board in hopes of arriving at a successful result." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Lit.*, 676 F.3d 1063, 1073 (Fed. Cir. 2012). This finding is inapplicable to Mr. McAlexander's opinion here; because QBM1 and QBM2 systems were developed as "███████████████████████████ ██████████████████████████████████████ would have been obvious at the time "in view of Kentron's continued development" of the QBM system. Ex. 5 at ¶ 340. **Second**, cases cited in *In re Cyclobenzaprine* limit this "hindsight" principle to the "obvious to try" doctrine (discussed in the context of biotechnological patents), which is inapplicable here. *In re Cyclobenzaprine*, 676 F.3d 1063 at 1070-71; *In re Kubin*, 561 F.3d 1351, 1358-61 (Fed. Cir. 2009); *In re O'Farrell*, 853 F.2d 894, 902-904 (Fed. Cir. 1988). **Third**, Netlist makes an empty claim that QBM2 is not prior art to the asserted claims, but it fails to articulate any basis. Dkt. 359 at 8. The Court should deny Netlist's motion.

## I.    Mr. McAlexander's References to Completed IPRs Are Proper

Netlist seeks to strike Mr. McAlexander's references to the PTAB's final written decisions in IPRs for patents related to those asserted here. While the Court's MIL 6 addresses evidence of *inter partes* review, a final written decision should not fall within the scope of the Court's MIL. A final written decision is part of the prosecution history, and further, the prosecution history of related

11

patents is relevant to the asserted patents at issue in this case. *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309 (Fed. Cir. 2013) (noting "the prosecution history regarding a particular limitation in one patent is presumed to inform the later use of that same limitation in related patents").

The final written decisions that related patents with similar claims are invalid are relevant to many issues in this case, including at least validity, willfulness, and damages. For example, that similar claims were held invalid further demonstrates that Netlist's failure to apportion damages over the prior art incorrectly measures the reasonable royalty. Netlist will no doubt assert that it is an innovative company that has contributed to the field; Netlist will also no doubt neglect to mention that the Patent Office has repeatedly invalidated its patents. If Netlist is permitted to praise the value of its technology, Samsung should be permitted to let the jury know the Patent Office has invalidated many of its claims. Also, final written decisions holding that related claims are invalid are further evidence that Samsung's belief of the invalidity of the asserted claims is reasonable, especially as Netlist intends to assert the claims are presumed valid to advance its own claims. Netlist's motion should be denied.[10]

### J.    Mr. McAlexander's Written Description Opinions Apply the Court's Claim Construction

Netlist misreads Mr. McAlexander's '417 patent's written description opinions in suggesting that he somehow misapplies the Court's claim construction. The Court held that the applicable '417 patent terms should be given their "plain meaning," which the Court found was not limited to the "fork-in-the-road" approach. Dkt. 288 at 19-21. Section 112, ¶ 1 is satisfied only if the '417 patent's "written description sufficiently demonstrates that the inventor's possessed the ***full scope*** of the claimed invention," *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,, 10 F.4th 1330, 1336 (Fed. Cir. 2021), which under the Court's construction is not limited to a "fork-in-the-road" approach. Mr.

---

[10] To the extent Mr. McAlexander references institution decisions of ongoing *inter partes* reviews, Samsung should be permitted to discuss these decisions if Netlist suggests that the asserted patents must be valid because the Patent Office previously allowed them or that the Patent Office has already considered the issue of written description.

McAlexander explains that the '417 patent does not satisfy this "full scope" requirement **under the Court's construction** because it does not describe the combination of elements (in the claims at issue) without also using a "fork-in-the-road" approach. Thus, properly applying the Court's construction, he concludes that the '417 patent claims, under the Court's construction, lack sufficient written description. Ex. 3 at ¶ 87-98.[11]

The Federal Circuit permits a party, having lost a construction, to challenge written description under that construction. *See, e.g., Eli Lilly & Co. v. Teva Pharms. USA, Inc.*, 619 F.3d 1329, 1344–45 (Fed. Cir. 2010). Netlist chose to seek broad claims untethered to the specification and chose to argue for a plain meaning construction. Moreover, written description is a fact question for a jury and Netlist did not move for summary judgment on this issue. *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d, 1235, 1243 (Fed. Cir. 2002). Thus, Mr. McAlexander's '417 patent written description opinions are proper.

**K.    Mr. McAlexander's ███████████████ Opinions Are Proper**

Netlist's request to exclude Mr. McAlexander's opinions on the ██████ agreement as somehow untimely wrongly attempts to shift the burden on damages to Samsung. Samsung produced the ██████ agreement during fact discovery, informed Netlist it will rely on inbound licenses it produced, and offered a witness to answer questions on its produced licenses. *See* Ex. 20 at 91-95. Samsung also explained that it would rely on its "forthcoming expert reports" for the identification of comparable licenses. *Id.* Thus, Mr. McAlexander's opinion on its technical comparability creates no prejudice to Netlist. This is in stark contrast to Netlist's failure to identify the very theories underlying its damages case—an issue on which it bears the burden. *See* Dkt. Nos. 350, 355. Samsung explained in its interrogatory responses that Netlist "bears the burden of establishing the amount of its alleged damages," and repeatedly complained that Netlist refused to

---

[11] The Court's Markman Order did not assess written description of claim 1 of the '417 patent. It only disagreed with Samsung's assertion that "the claims are directed only to the 'load isolation' disclosure as opposed to other aspects of the patents." Dkt. 228 at 21.

provide a fulsome damages contention. *See* Ex. 20 at 93 ("Netlist has not yet identified its damages theories"), *see also* Dkt. 176 (moving to compel damages contentions). Dr. Magnione-Smith addresses the ███████ agreement in his ***opening*** report, which belies any argument that Netlist was somehow prejudiced in addressing the agreement. Ex. 19, Ex. I ¶ 64. It would be manifestly unfair to permit Netlist to withhold its entire damages contentions during discovery while at the same time punishing Samsung for responding to Netlist's undisclosed positions.

### L. Mr. McAlexander's Opinions Regarding the Relative Technical Value of Netlist's Patents Are Reliable

The Court should deny Netlist's request to strike Mr. McAlexander's opinions regarding the relative technical contribution of certain patent families in the Netlist Patent Portfolio.[12] Netlist's criticism goes to the weight of the evidence, not admissibility. *See, e.g.*, *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility."). Mr. McAlexander applied four factors (technology area, technical scope, applicability, and number of patents within a family) to assess the relative technical benefit of nine Netlist patent families, just like he did in *EDTX1*. There, Netlist sought to exclude the same analysis, which the Court denied. *EDTX1*, Dkt. 432 at 8 ("As to the issue of relative technical value and paragraphs 655–659, the motion was **DENIED**.").

Nor is Mr. McAlexander's contrary to *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022). In that case, the Federal Circuit found that the damages expert's opinion was "untethered to the facts of the case" because he opined that the asserted patents were "key patents," but the licenses

---

[12] Netlist's motion identifies the wrong paragraphs in its motion. Paragraphs 91-103 of Exhibit 5 to Netlist's motion do not relate to his relative technical value analysis. Netlist presumably seeks to strike paragraphs 91-103 of Attachment D to his rebuttal report attached hereto as Exhibit 15.

████████████████████████████████████

treated them as "chaff, not wheat." 25 F.4th 960 at 973.[13]  Here, Mr. McAlexander's opinions are consistent with the facts of the case, including Netlist's licensing and litigation history.  While Netlist's patents fall into **40** different families based on technical coverage, Mr. McAlexander assigned technical value to **nine** of those families based on **Netlist's** own documents revealing that Netlist has relied on patents from only those families in licensing discussions and litigation.  Ex. 15 at ¶ 93 ███████████

████████████████████████████████████████████████████████████

███████████████████████████████████  Thus, contrary to Netlist's claims, his analysis considers the view of the contracting parties.  Moreover, Mr. McAlexander's analysis is solely technical.  Samsung's damages expert, Ms. Kindler, in turn further considers how the parties to the JDLA and the ████████ agreement treated the value of the patents in question as Samsung explains in its opposition to Netlist's Motion To Strike Opinions of Ms. Kindler.  Netlist's motion should be denied.

## II.    CONCLUSION

For the reasons above, Netlist's motion should be denied.

Dated:  January 30, 2024

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:    (903) 934-8450
Facsimile:    (903) 934-9257

J. Travis Underwood

Respectfully submitted,

By:    _/s/ Frank J. Albert_

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com

---

[13] Samsung respectfully submits that neither _Apple v. Wi-LAN_, nor any other binding precedent requires considering the parties' negotiation history or other parol evidence.  _See Wi-LAN_, 25 F.4th at 973.  Instead, the _Wi-LAN_ court merely held that no parole evidence supported the expert's attempt to attribute special value to patents and to ignore the contracts' plain language.  _Id._  Requiring patent damages experts to analyze parol evidence for every license would be unprecedented and unworkable, requiring trials within trials, and allowing self-serving communications to supersede actual agreements.

█████████████████████

Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-7091
Facsimile: (415) 955-6571

Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

██████████████████████████████

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed

electronically in compliance with Local Rule CV-5 on **January 30, 2024**.  As of this date, all counsel

of record have consented to electronic service and are being served with a copy of this document

through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

*/s/ Frank J. Albert*

██████████████████████████████

██████████████████████████████████████

███████████████████████

██████████████