## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-293-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO, LTD; | ) | (Lead Case) |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC.; SAMSUNG SEMICONDUCTOR | ) | ███████████████████ |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:22-cv-294-JRG |
| | ) | |
| MICRON TECHNOLOGY, INC.; | ) | JURY TRIAL DEMANDED |
| MICRON SEMICONDUCTOR | ) | |
| PRODUCTS, INC.; MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## NETLIST INC.'S OPPOSITION TO MICRON'S *DAUBERT* MOTION TO STRIKE EXPERT TESTIMONY OF DAVID KENNEDY

# TABLE OF CONTENTS

**Page(s)**

I.    Mr. Kennedy's Discussion Of The Samsung Litigation Verdict Is Relevant And Proper ................................................................................................................... 1

Ii.   Mr. Kennedy's Opinions Regarding The ██████████ Agreement Are Proper ............... 3

Iii.  Mr. Kennedy's Ddr4 Lrdimm Opinion Complies With Apportionment Law ....................... 5

Iv.   Mr. Kennedy's Discussion Of The 2015 Presentations Is Proper ............................................. 8

V.    Mr. Kennedy Is Qualified To Provide The Opinions In His Rebuttal Report ..................... 11

Vi.   Micron's Disagreement With Mr. Kennedy's Analysis Is Not A Basis For Exclusion ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ........................................................5

*Arigna Technology Ltd. v. Nissan Mtr. Co., Ltd.*,
2022 WL 14328350 (E.D. Tex. Oct. 24, 2022) ........................................................3

*Arthrex, Inc. v. Smith & Nephew*,
2016 WL 11750176 (E.D. Tex. Nov. 28, 2016) ........................................................9

*Berlyn, Inc. v. Gazette Newspapers, Inc.*,
214 F. Supp. 2d 530 (D. Md. 2002) ........................................................13

*ChriMar Sys., Inc v. Cisco Sys., Inc.*,
72 F. Supp. 3d 1012 (N.D. Cal. 2014) ........................................................15

*Finjan, Inc. v. Sophos, Inc.*,
2016 WL 4268659 (N.D. Cal. Aug. 15, 2016) ........................................................7, 8

*Illumina, Inc. v. Fed. Trade Comm'n*,
88 F.4th 1036 (5th Cir. Dec. 15, 2023) ........................................................13

*Intel Corp. v. Tela Innovations, Inc.*,
2021 WL 1222622 (N.D. Cal. Feb. 11, 2021) ........................................................7

*K-TEC, Inc. v. Vita-Mix Corp.*,
696 F.3d 1364 (Fed. Cir. 2012) ........................................................9

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ........................................................4

*Metrologic Ins, Inc. v. PSC, Inc.*,
2004 WL 2851955 (D. N.J. Dec. 13, 2004) ........................................................9

*PersonalWeb Techs. LLC v. IBM Corp.*,
2017 WL 3476082 (N.D. Cal. Aug. 14, 2017) ........................................................7

*Powell v. Home Depot U.S.A., Inc.*,
663 F.3d 1221 (Fed. Cir. 2012) ........................................................5

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
849 F.3d 1360 (Fed. Cir. 2017) ........................................................6

**Page**

*Sprint Communications Co. v. Time Warner Cable, Inc.*,
760 Fed. Appx. 977 (Fed. Cir. 2019) ............................................................................1

*SynQor, Inc. v. Artesyn Techs., Inc.*,
2011 WL 3624957 (E.D. Tex. Aug. 17, 2011), *aff'd,* 709 F.3d 1365 (Fed. Cir. 2013)...........................................................................................................................9

*Universal Surveillance Corp. v. Checkpoint Sys., Inc.*,
2015 WL 6082122 (N.D. Ohio Sept. 30, 2015) ...........................................................13

*VirnetX Inc. v. Apple Inc.*,
2020 WL 11647826 (E.D. Tex. Sept. 1, 2020) ..............................................................2

*WCM Indus., Inc. v. IPS Corp.*,
721 F. App'x 959 (Fed. Cir. 2018) ................................................................................9

*Wu v. Mississippi State Univ.*,
2014 WL 5799972 (N.D. Miss. Nov. 7, 2014) .............................................................13

Plaintiff Netlist, Inc. ("Netlist") submits this opposition to Micron's *Daubert* Motion to Strike Expert Testimony of David Kennedy.

## I.    Mr. Kennedy's Discussion of the Samsung Litigation Verdict Is Relevant and Proper

Mr. Kennedy discusses the Samsung jury verdict as relevant to the hypothetical negotiation in this case.  There is no rule that prohibits a patent damages expert from relying on a prior jury verdict.  Rather, the Federal Circuit "has held that such evidence can be admissible if it is relevant for some legitimate purpose." *Sprint Communications Co. v. Time Warner Cable, Inc.*, 760 Fed. Appx. 977, 980 (Fed. Cir. 2019).  One legitimate purpose is damages.  The Federal Circuit has upheld prior verdict evidence in similar scenarios.  For example, in *Sprint*, the district court "admitted the prior verdict evidence as relevant to willfulness, to Time Warner's equitable defenses, and 'to the extent that it informs Sprint's executive concerning what [they] might expect as a reasonable royalty.'" *Id.* at 981.

While Micron vaguely argues that allowing evidence of the *Samsung I* verdict would be prejudicial, it does not provide any explanation of how or why it would be prejudicial.  Instead, Micron seems to assume prejudice because the prior case involved a different defendant, additional categories of products, and different patents.  Dkt. 360 at 4.  But as the Federal Circuit recognized in *Sprint,* the risk of prejudice is actually reduced where the prior verdict involved a different defendant. 760 Fed. Appx. at 980 n.1.  And, as to the difference in products, ███████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. Moreover, Micron's expert does not dispute that the patents asserted against the DDR4 products in *Samsung I* are technically comparable. Ex. 1 (Lynde Rebuttal) ¶ 114 (███████████████████████ ███████); *Sprint*, 760 Fed. Appx. at 980 (allowing evidence of prior verdict where there was no evidence that technology "was materially different from the technology raised in" current case). Moreover, "[a]ny differences between the two proceedings," are "available to [Micron] to argue to the jury." *Id.*

Micron's only other argument is that Mr. Kennedy's use of the *Samsung I* verdict would invite the jury in this case to defer to what the *Samsung I* jury determined instead of discharging their duty to resolve the issues in this case. But Micron's concern is entirely unfounded given that Mr. Kennedy ultimately ████████████████████████████████████████████████████ ████████████████ *Compare* Dkt. 360-2 (Kennedy Rpt.) Ex. 9 ██████████████████████ ██████████████████████████████████████████████ ) *with* ¶ 688 ( █████████████ ██████████████████████████████████████████████████ ). And, even if Micron's prejudice concerns were legitimate—which they are not—those concerns could be assuaged by jury instructions that make clear that infringement and damages must be determined based on an analysis of the asserted claims against only Micron's accused products and the evidence presented at trial.[1]

Micron's cited law is distinguishable. Micron relies on *Saint Lawrence* to suggest that a "final decision has not concluded" in *Samsung I* just like in *Saint Lawrence*. But in *Saint Lawrence* the Court had not yet entered a final judgment, as there was still a bench trial on equitable issues to come. 2017 WL ). In *Samsung I*, the Court held a bench trial and entered a 3476978, at *2 (E.D. Tex. May 8, 201743-page order rejecting Samsung's equitable defenses, and thereafter entered final judgment. *Netlist, Inc. v. Samsung Elecs. Co. Ltd., et al.*, 2:21-cv-00463-JRG (*Samsung I*), Dkt. 550 at 1-2, Dkt. 551 at 2. Micron also points to Judge Schroeder's opinion in *VirnetX* to argue that verdicts are inadmissible if they did not occur before the hypothetical negotiation date, but Judge Schroeder rejected a blanket exclusion of prior jury verdicts and recognized that "some verdicts issued after the hypothetical negotiation date may be admissible," as long as their probative value is not outweighed by a risk of unfair prejudice. *VirnetX Inc. v. Apple Inc.*, 2020 WL 11647826, at *5 (E.D. Tex. Sept. 1, 2020).

---

[1] While Netlist understands Judge Payne recommended striking Mr. Kennedy's opinions regarding the Samsung verdict in the -203 case, Netlist respectfully submits that the calculus is different in this case, given that the patents in *Samsung I* are not identical to the patents at issue in this case, there is less chance that the jury would defer to the *Samsung I* verdict.

II.    **Mr. Kennedy's Opinions Regarding The ▉▉▉ License Agreement Are Proper**

The *only* basis Micron proffers for striking Mr. Kennedy's opinion concerning the ▉▉▉ agreement is that Dr. Mangione-Smith's technical comparability opinion—which Mr. Kennedy relies upon—is allegedly "unsupported and conclusory." Mot. at 6-8. This is not a proper basis to strike Mr. Kennedy's opinion. Indeed, it is perfectly appropriate for Mr. Kennedy to rely on the opinions of a technical expert to establish technical comparability. *Arigna Technology Ltd. v. Nissan Mtr. Co., Ltd.*, 2022 WL 14328350, *1–*3 (E.D. Tex. Oct. 24, 2022) ("Mr. Gutzler is permitted to rely on 'a technical expert in the industry to help form [his] damages opinion.'"). Moreover, as explained in detail in Netlist's concurrently filed opposition to Micron's motion to strike Dr. Mangione-Smith's opinion, Dr. Mangione-Smith adequately established technical comparability for the ▉▉▉

Micron's assertion that Dr. Mangione-Smith "provided no analysis that the Asserted Patents share any technical comparability" to the ▉▉▉ patents blatantly ignores his opinion. Dr. Mangione-Smith evaluated the patents ▉▉▉
▉▉▉
▉▉▉ Dkt. 360-3 (*Micron II* Mangione-Smith Opening Report, Ex. E) at ¶ 155. He further analyzes ▉▉▉
▉▉▉
▉▉▉ *Id.* at ¶¶ 158-159; *see also* ¶ 162 ▉▉▉
▉▉▉
▉▉▉
▉▉▉
▉▉▉
▉▉▉). In the -203 case, Judge Payne recommended denial of a motion to strike Mr. Kennedy's opinions regarding the ▉▉▉ license based on lack of technical comparability,

finding that technical comparability had been established based on similar opinions from Dr. Mangione-Smith. *Netlist, Inc. v. Micron Technologies, Inc. et. al.,* No. 2:22-cv-203-JRG (*Micron I*), Dkt. 468 at 5. If Micron disagrees, it can address this issue on cross-examination.

The fact that Dr. Mangione-Smith's opinion on technical comparability ██████████████████ ███████████████████████████████████████████████. While the Asserted Patents in this case are different than the patents in *Micron I*, ████████████████████████████████████████ ███████████████████████████████████████████. Ex. 5 (*Micron II* Mangione-Smith Opening, Ex. I) at ¶¶ 22-52 (discussing ████████████████████████████████████ ████████████████████████████████████████████); Ex. 7 (*Micron I* Mangione-Smith Opening, Ex. F) at ¶¶ 10-32 (discussing ██████████████████████ █████████████████████████████████████████████████████████████ ████████████████████████████████████████). And the whole point of technical comparability is to evaluate whether the comparable license conveyed a similar benefit to the licensee as the infringer has obtained from its infringement *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) ("district court 'must consider licenses that are commensurate with what the defendant has appropriated.'") (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010)).

In an attempt to bolster its incorrect argument that Dr. Mangione-Smith's analysis is "loose" and "unsupported," Micron also misleadingly cuts off the part of Dr. Mangione-Smith's opinion referenced in italics: ███████████████████████████████████████████████ ████████████████████████████████████████. Dkt. 360-3 (*Micron II* Mangione-Smith Opening, Ex. E) ¶¶ 159, 162. This is important because Dr. Mangione-Smith discusses the Asserted Patents at length in earlier sections of this report, which make clear the technical similarities. *Compare Id.* ¶ 155 (noting that the ███████████████████████████████████████ *with* Ex. 3 (*Micron II*

Mangione-Smith Opening, Ex. B), ¶ 20 (citing ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉); Ex. 4 (*Micron II* Mangione-Smith Opening,

Ex. C), ¶ 217 (discussing how ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉).

## III.   Mr. Kennedy's DDR4 LRDIMM Opinion Complies With Apportionment Law

Micron's argument that Mr. Kennedy "does not reliably apportion the value of the asserted patents" in his DDR4 LRDIMMs analysis ignores established law.[2] Mot. at 8. The Federal Circuit and countless other courts (including *Georgia-Pacific*) have endorsed calculating patent damages by "estimat[ing] the value of the benefit provided by the infringed features by comparing the accused product to non-infringing alternatives." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2012) (damages analysis can consider "the value of the benefit conferred to the infringer by use of the patented technology").

Mr. Kennedy's approach follows this exact methodology. For the '912 Patent, Mr. Kennedy relied on Dr. Mangione-Smith's technical opinion that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉



▉▉▉▉▉▉▉▉▉▉▉▉▉ Dkt. 360-02 ¶ 130. He then used the results of Dr. Groehn's

regression analysis to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉ *Id.* ¶ 198. Likewise, for the '417 Patent, Mr. Kennedy relied on Dr. Mangione-Smith's

---

[2] Micron does not dispute that Mr. Kennedy's apportionment methodology for RDIMMs for the '912 Patent—which is the same as the methodology he used for LRDIMMs—is admissible.

technical opinion that ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

*Id.* ¶ 136. He then ████████████████████████████

████████████████████████████████████████████████████

████████████ *Id.* ¶ 206. By conducting his analysis in this manner, Mr. Kennedy's analysis meets the Federal Circuit's apportionment requirement. *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017) (requirement to "carefully tie proof of damages to the claimed invention's footprint in the market place . . .can be met if the patentee adequately shows that the defendant's infringement allowed it to avoid taking a different, more costly course of action.").

Micron's assertion that Mr. Kennedy's analysis is flawed because the patents in this case enable similar technical benefits to patents that were at issue in the -203 case is wrong.  Indeed, it is often the case—as is here—that different technologies can independently enable the same technical benefit in different ways.  For example, Dr. Mangione-Smith opined that the '339 Patent ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 6 (*Micron I* Mangione-Smith Ex. A) ¶ 395.  The '417 Patent also ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████ Ex. 4 (*Micron II* Mangione-Smith Ex. C) ¶ 252.[3]  As multiple courts have recognized, the mere fact that multiple patents enable similar benefits and would

---

[3] Similarly, the '912 Patent ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Ex. 3 (*Micron II* Mangione-Smith Ex. B), pg. 58 ¶ 6).

thus independently warrant similar royalty rates does not mean that there is an apportionment issue. For example, in *Intel Corp. v. Tela Innovations, Inc.*, 2021 WL 1222622, at *33 (N.D. Cal. Feb. 11, 2021), the plaintiff asserted five patents and its expert opined that the same royalty rate would be owed for a subset of these patents as "all the Asserted Patents combined." Defendant moved to strike for alleged failure to apportion and the Court denied the motion, holding the analysis was proper because the expert explained that "the patents are largely overlapping," and finding that "this issue is for cross-examination." *Id.* at *33. Similarly, in *PersonalWeb Techs. LLC v. IBM Corp.*, 2017 WL 3476082, at *2 (N.D. Cal. Aug. 14, 2017), the plaintiff asserted multiple patents from the same portfolio, and defendant moved to strike the opinion of the plaintiff's expert that "the value of the '420 patent should include some 'core overlapping value'" with other patents in the portfolio. The Court denied the motion, explaining "[w]hether there truly is some 'core overlapping value' and whether the three patents selected accurately capture that value are factual issues that IBM can explore on cross-examination." *Id.*

Micron's reliance on *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4268659, at *3 (N.D. Cal. Aug. 15, 2016) is misplaced. There, the expert presented an opinion involving multiple asserted patents that "count[ed] the revenue attributable to certain features multiple times in calculating her royalty base such that her total apportionment calculations ***use[d] a royalty base that is over 100 percent of the total value of several of the accused products***." (emphasis added). That is far removed from the situation here, where there is simply no basis to argue that Mr. Kennedy is using a damages base that is "over 100% of the total value" of the Accused Products.

Mr. Kennedy calculated the incremental benefits of being able to ██████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ Dkt. 360-2 (Kennedy) at Ex. 1C. In *Micron I*, Mr. Kennedy proposed an ██████████████

- 7 -

██████████████████████████████████████████

███████████████████████████████████████ Ex.

13 (*Micron I*, Kennedy Rpt. Ex. 1B).  In this case, he proposes ████████████████████

██████████████████████████████████████████

████.  Dkt. 360-2 (Kennedy) at Ex. 1C. Moreover, because Netlist has confirmed that it no longer

intends to proceed with the '506 and '339 Patents in the -203 case, the DDR4 LRDIMM products will

not even be at issue in that trial, and there is not even any overlap between the damages Netlist is

seeking in the -203 case and the damages it is seeking in this case.  *Micron I*, Dkt. 258 (E.D. Tex.) 2023-

10-23 Hearing Tr. at 50:9-10 ("MR. SHEASBY: We are, in fact, not proceeding with the '339 and '506

Patents at this time, Your Honor."); *see also Micron I*, Dkt. 422 (Notice of Narrowing).  Thus, there is

no scenario where Netlist would recover over 100% of the value of the incremental benefits, much

less over 100% of the value of the Accused Products.

Moreover, nothing in *Finjan* suggests a black-and-white rule that "[w]here multiple patents are

asserted on the same accused products, an expert must apportion the value of multiple patents that

allegedly cover the same feature." Mot. at 9. Instead, *Finjan* acknowledged that different patents can

"cover related and intermingled technologies" and noted that the expert's opinion could be amended

to "create a flexible damages calculation" that "accounts for overlap in the patents' covered features

to prevent double counting." *Finjan*, 2016 WL 4268659, at *4.  If the '506 and '339 Patents were

proceeding to trial in the -203 case, Mr. Kennedy could have included an analysis of how to address

any overlapping value between the -203 case patents and the Asserted Patents as recommended by

the *Finjan* court.  But because the DDR4 LRDIMMs are no longer at issue in the -203 case, there is

no need to do such an accounting because there is no longer any risk of double counting.

IV.    **Mr. Kennedy's Discussion of the 2015 Presentations is Proper**

Mr. Kennedy discusses the 2015 presentations from Netlist to Micron primarily with respect

to two issues—the history of the patented inventions and notice to Micron.  Both issues are proper

for Mr. Kennedy to discuss in front of the jury.

Micron does not dispute the presentations are relevant to notice of the '912 Patent, which is

explicitly identified.  This alone warrants denial of Micron's motion.  As to the '417 Patent, Micron's

argument that the presentations are irrelevant to notice and willfulness because they only mention the

'537 Patent (a parent to the '417 Patent) is incorrect. The Federal Circuit has held that the provision

of notice regarding a parent patent can suffice to provide notice of children of that parent. *K-TEC,

Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1378-79 (Fed. Cir. 2012) (affirming denial of summary judgment

where patent owner "proffered evidence that (1) it provided notice that the MP container infringed

various claims of the '117 patent's parent patent in March 2005."); *Arthrex, Inc. v. Smith & Nephew*,

2016 WL 11750176 at *3 (E.D. Tex. Nov. 28, 2016) ("reasonable juror could conclude that the scope

of notice [regarding a parent patent]….expanded to include notice of infringement of the [child] patent

after the [child] patent issued."); *Metrologic Ins, Inc. v. PSC, Inc.*, 2004 WL 2851955, at *20 (D. N.J. Dec.

13, 2004) ("allegations of infringement of the parent patent (the '342) would provide sufficient notice

of infringement of the continuations (the '027, '717, and '049 patents) as well"). Moreover, the Federal

Circuit has confirmed that knowledge of the patent is not necessary to support a finding of willful

infringement where an accused infringer ignores a risk of infringement so obvious that it should have

been known, such as when a patentee identifies that it has a patent pending. *WCM Indus., Inc. v. IPS

Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018) (rejecting that "a party cannot be found to have 'willfully'

infringed a patent of which the party had no knowledge" and upholding finding that "risk of

infringement that was either known or so obvious that it should have been known" where accused

infringer was aware that patent holder had indicated its products were "patent pending"); *SynQor, Inc.

v. Artesyn Techs., Inc.*, 2011 WL 3624957, at *4 (E.D. Tex. Aug. 17, 2011), *aff'd*, 709 F.3d 1365 (Fed. Cir.

2013) (a "jury could reasonably conclude that [defendant] . . . learned of the [continuation] patent once

it issued" based on evidence that "continuation patents are common" and those in the industry "would have recognized that a continuation application could potentially be filed" on the parent patent.).

Micron's argument that Mr. Kennedy's opinions are "speculative" and there is no "admissible support" for the 2015 presentations is likewise unavailing. As explained in Netlist's opposition to Micron's motion for summary judgment on pre-suit damages, Micron has not raised any credible admissibility arguments regarding the 2015 presentations, and multiple Netlist witnesses (and contemporaneous evidence) support the veracity and significance of the presentations. Ex. 8 (NL-MIC-203_00042009) (███████████████████████████████████████████████████████████ Ex. 9 (NL-MIC-203_00042083) (███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Ex. 10 (Milton Decl. certifying business records); Ex. 11 (Whitley 2-3-17 Depo.) at 160:18-161:5; Ex. 12 (Whitley Decl.).

Micron's only other argument is that Mr. Kennedy's testimony would constitute improper "state of mind" testimony. Mot. 10-12. But that is not true. Mr. Kennedy does not opine on "state of mind" anywhere in his report. Micron does not identify a single sentence in a single paragraph in which he does. Nowhere in Mr. Kennedy's report does he opine that Micron acted with willful intent, nor does Mr. Kennedy embrace the ultimate issue of willful infringement.

Micron's suggestion that the Court struck similar expert opinion (from Dr. Mangione-Smith, not Mr. Kennedy) in *Samsung I* is incorrect. There, the Court did not strike any opinions but instead cautioned that experts should not opine on the ultimate issue of Samsung's state of mind:

> MR. SHEASBY: That would apply here as well. And that would be a blanket thing, but the paragraphs contain lots of perfectly appropriate things about notice and state of mind. So on those paragraphs I would just ask that the Court apply the same standard. . . . .
>
> THE COURT: No. I mean, my intention here from the briefing and hearing Defendant's argument until you addressed it was to basically say Doctor Mangione-Smith is not going to be permitted to opine on Samsung's state of mind. Now, that should be adequate guidance without going back and taking paragraphs and saying this sentence is in and this sentence is out. And there's no reason why counsel for both sides can't do that with the kind of high-level

guidance I'm giving. But that is the Court's guidance--the witness is not going to opine on Samsung's state of mind.

*Samsung I*, Dkt. 427, 39:21-40:12. The same approach is appropriate here. Mr. Kennedy is not going to opine on Micron's state of mind, or on ultimate issues of willfulness. But Mr. Kennedy should be able to explain to the jury facts relevant to the hypothetical negotiation, including the history of the asserted patents, and when Micron first learned about Netlist's patented technology in this case.

## V.    Mr. Kennedy Is Qualified To Provide The Opinions In His Rebuttal Report

Micron's argument that Mr. Kennedy is not qualified to provide opinions concerning Micron's antitrust claim because he is a CPA improperly ignores the full scope of Mr. Kennedy's expertise as well as the context of this case. Mr. Kennedy is an expert in the IP licensing market and has decades of experience in ███████████████████████████████████████ Dkt. 360-06 at pg. 62 (Kennedy Curriculum Vitae). He has ███████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ *Id.* ¶ 1.

Micron's own expert defines the "relevant market" for purposes of assessing Netlist's conduct as ████████████████████████████████████████ and more narrowly ████████ ████████████████████████ Ex. 2 (Lynde) ¶74. Mr. Kennedy—who has decades of experience working in the patent licensing industry and notes on his CV that he is an expert in ████████████████████████ (Dkt. 360-02 (Kennedy Opening) at 225)—is qualified to provide the opinions in his report, which address key flaws in Dr. Lynde's (1) definition of the relevant patent licensing markets (Dkt. 360-06 (Kennedy Reb.) ¶¶ 31-57), (2) analysis of SEPs (*id.* ¶¶ 58-108), (3) analysis of the relevant patent license agreements that form the basis for Micron's claim (*id.* ¶¶ 109-138), (4) comparison of Netlist's patent license offers to those licenses (*id.*

- 11 -

¶¶ 139-189), and (5) allegations of harm to competition in the licensing market (*id.* ¶¶ 190-194).

Despite broadly asserting that Mr. Kennedy is not qualified to provide an "antitrust" opinion in response to "Micron's PhD economist," Micron only identifies 7 paragraphs of Mr. Kennedy's 196 paragraph report that are purportedly outside his expertise. A cursory review of those 7 paragraphs makes clear that the opinions contained therein are well within Mr. Kennedy's expertise. For example, in ¶¶ 16 and 134, Mr. Kennedy merely summarizes his opinion—based on the analysis contained in other parts of his report—that the Sk Hynix Agreement ████████████████████████

███████████████████ As someone who has extensive experience working in technology licensing and who has expertise in the economics of patent licensing, Mr. Kennedy is qualified to opine on whether a particular license will pose risk of competitive harm within the technology patent licensing market. In ¶ 103, Mr. Kennedy is merely summarizing Dr. Lynde's opinion that ███████████████████████████████████████

███████████. Mr. Kennedy then describes in detail the flaws in Dr. Lynde's analysis in ¶¶ 104-108—which Micron has not moved to strike. Those paragraphs explain that Dr. Lynde has

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ These opinions are squarely within Mr. Kennedy's expertise in patent licensing. Similarly, ¶ 177 simply summarizes the previous six paragraphs (again, which Micron has not moved to strike) by stating Mr. Kennedy's opinion that ██████████████████████████████████████

████████████████████ In particular, Mr. Kennedy points to ███████████████████████

██████████████████████████████, which is squarely within Mr. Kennedy's expertise.

The only other paragraphs Micron identifies are ¶¶ 55-57, where Mr. Kennedy notes that Dr.

Lynde ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████    Contrary to Micron's apparent assertion, one need not be a "PhD economist" to point out that an expert has not used any reliable methodology to define a market in the field in which they have worked for decades.[4]  Moreover, Micron's claim that the Fifth Circuit has found that "a hypothetical monopolist test is not required to define a relevant market" is misleading at best.  The case Micron cites involved a "research and development" market where "most products have yet to reach the consumer marketplace, there are no prices from which to build a data set, and thus no way to run a hypothetical monopolist test." *Illumina, Inc. v. Fed. Trade Comm'n*, 88 F.4th 1036, 1050 (5th Cir. Dec. 15, 2023).  That reasoning does not apply here, where Dr. Lynde has not identified a "research and development market."  In any event, Micron's argument misses the point, as in ¶¶ 55-57 Mr. Kennedy is simply pointing out that Dr. Lynde has not used any approved or reliable method at all to define the market.  And, Micron's own cases make clear that it is critical for an expert to use "an approved method to definite a relevant market in an antitrust case." *Universal Surveillance Corp. v. Checkpoint Sys., Inc.*, 2015 WL 6082122, at *8–9 (N.D. Ohio Sept. 30, 2015) (finding that, while expert did not use hypothetical monopolist test, his analysis was still reliable because he "utilized a different, still-reliable statistical method to determine the relevant product market").

---

[4] Micron's authorities are distinguishable. In *Wu v. Mississippi State Univ.*, 2014 WL 5799972 (N.D. Miss. Nov. 7, 2014), the court held an expert could not be qualified in the field of clinical psychology where there was no evidence she was licensed or had ever practiced clinical psychology. *Id.* at *15. In *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F. Supp. 2d 530 (D. Md. 2002), the court held that a witness was not qualified to testify on antitrust issues based on his background in "engineering and business administration." *Id.* at 537.  Mr. Kennedy's background in analyzing the economics of patent licensing is far more extensive than the expert in *Berlyn.*

## VI.    Micron's Disagreement With Mr. Kennedy's Analysis Is Not A Basis For Exclusion

Micron next identifies three paragraphs from Mr. Kennedy's rebuttal report that it claims should be excluded because they are supposedly "untethered to the facts." Mot. at 13-15, addressing Dkt. 360-06 ¶¶ 40, 53, 106. But Micron's brief makes clear that there are no factual gaps, and Micron simply disagrees with Ms. Kennedy's analysis of the facts, which is not a proper ground for exclusion.

Micron first complains that ¶ 40 does not "engage with what both Micron's pleading and Dr. Lynde's expert report actually say" and is allegedly "inconsistent with Micron's counterclaim." Dkt. 360 at 14. In that paragraph, Mr. Kennedy points out that ███████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████ Contrary to Micron's suggestion, Mr. Kennedy's point applies regardless of whether the market is defined broadly or is instead narrowed to a particular "DIMM type[]" as Micron argues in its brief. Dkt. 360 at 14. This is because each DIMM type may have patents that cover complementary technologies within that DIMM type, not just substitute technologies. If Micron disagrees, it can cross-examine Mr. Kennedy on this issue.

Micron next claims that the opinions in ¶¶ 53 and 106 should be excluded as "irrelevant." Micron's argument ignores that these opinions are direct responses to Micron's expert Dr. Lynde. For example, in ¶ 53, ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ Dkt. 360-6 ¶ 53. This opinion is directly responsive to Dr. Lynde's opinion that ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

- 14 -

███████████████████████████████████ Ex. 2 (Lynde Opening Rpt.) ¶ 74.  If Dr. Lynde is allowed to provide this opinion, Mr. Kennedy should be permitted to explain why Dr. Lynde's analysis is flawed.  Moreover, contrary to Micron's assertion, the failure to identify any alternative technologies that were excluded during the standardization process is directly relevant to the market power and antitrust market inquiries. *See, e.g., ChriMar Sys., Inc v. Cisco Sys., Inc.*, 72 F. Supp. 3d 1012, 1019 (N.D. Cal. 2014) ("In order to allege market power, the Samsung court required the plaintiff to allege that 'there was an alternative technology that the SSO was considering during the standard setting process and that the SSO would have adopted an alternative standard had it known of the patent holder's intellectual property right."). Mr. Kennedy correctly points out this failing.

With respect to ¶ 106, Micron argues that Mr. Kennedy's opinion that ███████████████ ████████████████████████████ is a "red herring" because "the reason for Netlist's market power" does not matter for purposes of an antitrust claim. Dkt. 360 at 15.  Once again, Micron ignores that Mr. Kennedy's opinion is a direct response to Dr. Lynde's argument that:



Ex. 2 (Lynde Opening Rpt.) at ¶ 64.  As Mr. Kennedy points out, this is incorrect because ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Dkt. 360-6 ¶ 106.

Thus, ████████████████████████████████████████████████ Ex. 2 at ¶ 64. If Dr. Lynde is allowed to provide this opinion, then Mr. Kennedy should be allowed to rebut it by explaining why Dr. Lynde is wrong.

Dated: January 30, 2024

Respectfully submitted,

/s/ Jason G. Sheasby

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that, on January 30, 2024, a copy of the foregoing was served to all counsel of record.

/s/ Yanan Zhao
Yanan Zhao

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in the Case.

/s/ Yanan Zhao
Yanan Zhao