# Exhibit 1

# UNITED STATES PATENT AND TRADEMARK OFFICE

_____

# BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

SAMSUNG ELECTRONICS CO., LTD.,
Petitioner,

v.

NETLIST, INC.,
Patent Owner.

_____

Case No. IPR2023-00847
Patent No. 10,268,608

_____

# PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW

*Mail Stop "PATENT BOARD"*
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-145

Pursuant to 37 C.F.R. § 42.71(d) and the Revised Interim Director Review Process of July 24, 2023, Patent Owner respectfully requests Director Review of the Board's Institution Decision (Paper 13 ("DI")).

## I.   INTRODUCTION

The '608 patent was the subject of a prior IPR petition filed by Micron. *See Micron Technology, Inc. et al. v. Netlist, Inc.*, IRP2022-00237 ("Micron -0237"). The Board denied institution in Micron -0237 on the merits, finding that the petitioner had failed to show that the prior art satisfies each of the limitations of claim 1 of the '608 patent. *See* EX2006 (Micron -0237 Institution Decision), 19-20. The Board then denied Micron's rehearing request. *See* IPR2022-00237, Paper 17. Seven months later, Samsung filed a petition against the '608 patent based on the same prior art considered by the Office. Micron and Samsung are co-petitioners in several other IPRs involving Netlist's patents. *See e.g.*, IPR2022-00615, -00639, -00711, -00996, -00999, -01427, and -01428.

In its Preliminary Patent Owner Response (Paper 6, "POPR") and Pre-Institution Sur-Reply (Paper 10, "Sur-Reply"), Patent Owner argued that Samsung's present petition is improper because it relies on the same prior art that Micron previously used against the '608 patent, and because it uses the Board's previous decisions from Micron -0237 as a road map. *See* POPR at 1; *see also* Sur-Reply at 3 ("Samsung's reply confirms that it is attempting to use the Board's decision in

1

Micron -0237 as a road map by contending that the deficiencies identified by the Board in its rehearing denial are allegedly being addressed here." (citing Reply, 4)). Despite that, the Board instituted IPR.

The Board (1) found that the first part of the *Advanced Bionics* framework <u>was</u> met, and (2) did <u>not</u> find material error under the second part of the *Advanced Bionics* framework, but nevertheless instituted *inter partes* review. In specific, the Board found that "substantially the same prior art was previously before the Board" and therefore "<u>the first part of the *Advanced Bionics* test applies</u>" (DI at 12),[1] and that "Patent Owner's argument that there was no error made by the Board in the Micron '237 IPR may be meritorious," but that the operative issue is "that different obviousness-based arguments are being made here." DI at 13. But that is effectively a new standard for conducting § 325(d) inquiries, one that requires <u>both</u> prongs of the first part of *Advanced Bionics* to be met, *i.e.*, requiring both substantially the same prior art <u>and</u> arguments to have been previously considered by the Office.

In contrast, both the statute and the precedential *Advanced Bionics* decision require only one of "the same or substantially the same prior art **or** arguments [that] previously were presented to the Office." 35 U.SC. § 325(d); *Advanced Bionics, LLC v. Med-El Elektromedizinische Geräte GmbH*, IPR2019-01469, Paper 6 at 8-9

---

[1] Emphasis added throughout unless otherwise indicated.

(P.T.A.B. Feb. 13, 2020) (precedential) ("*Advanced Bionics*") ("If ***a*** condition in the first part of the framework is satisfied and the petitioner fails to make a showing of material error, the Director generally will exercise discretion not to institute *inter partes* review.").

This Request in no way questions either the integrity or professionalism of the honorable Board panel that instituted. Instead, the Board was faced with an important legal question that requires clarification by the Director.

Requiring both elements of the first prong of *Advanced Bionics* to be met is contrary to the objective of the AIA to provide a quick and efficient alternative to district court litigation. The Board's requirement that both prongs of the first part of *Advanced Bionics* must be met would allow follow-on petitioners to use the exact same references from a prior IPR, but avoid § 325(d) by simply citing to a new background reference for the sole purpose of being able to argue that previous proceedings involved different arguments and/or evidence. *See infra*, Section III.E.

Because the Board's Institution Decision effectively applies a new standard for § 325(d) inquiries, Patent Owner respectfully requests Director Review.

## II.   LEGAL STANDARD

The revised interim Director Review process authorizes Director Review of the Board's decision whether to institute trial, limited to decisions presenting (a) an abuse of discretion or (b) important issues of law or policy. *See* Revised Interim

3

Director Review Process at 2.A.

Section 325(d) permits discretionary denial where "the same or substantially the same prior art or arguments were previously presented to the Office." The focus of § 325(d) "reflect[s] a commitment to defer to previous Office evaluations of the evidence of record unless material error is shown." *Advanced Bionics* at 9. After the precedential *Advanced Bionics* decision, for purposes of § 325(d), "the Board uses the following two-part framework: (1) whether the same or substantially the same art previously was presented to the Office ***or*** whether the same or substantially the same arguments previously were presented to the Office; and (2) if ***either condition*** of first part of the framework is satisfied, whether the petitioner has demonstrated that the Office erred in a manner material to the patentability of challenged claims. If ***a condition*** in the first part of the framework is satisfied and the petitioner fails to make a showing of material error, the Director generally will exercise discretion not to institute *inter partes* review." *Id*. at 8-9.

According to the *Advanced Bionics* decision, "the *Becton, Dickinson* factors provide useful insight into how to apply the *Advanced Bionics* framework under 35 U.S.C. § 325(d)." *Id*. at 9. In other words, the *Becton, Dickinson* factors provide guidance in applying the above *Advanced Bionics* framework, not as an alternative to the *Advanced Bionics* framework. The *Becton, Dickinson* factors are as follows:

> (a) the similarities and material differences between the asserted

4

art and the prior art involved during examination;

(b) the cumulative nature of the asserted art and the prior art evaluated during examination;

(c) the extent to which the asserted art was evaluated during examination, including whether the prior art was the basis for rejection;

(d) the extent of the overlap between the arguments made during examination and the manner in which petitioner relies on the prior art;

(e) whether petitioner has pointed out sufficiently how the examiner erred in its evaluation of the asserted prior art; and

(f) the extent to which additional evidence and facts presented in the petition warrant reconsideration of the prior art or arguments.

*Becton, Dickinson & Co. v. B. Braun Melsungen AG*, IPR2017-01586, Paper 8 at 17-18 (§ III.C.5, first paragraph) (Dec. 15, 2017) ("*Becton, Dickinson*").

Under the *Advanced Bionics* decision, *Becton, Dickinson* factors (a), (b) and (d) are to be read "more broadly [to] provide guidance as to whether the art presented in the petition is the 'same or substantially the same' as the prior art previously presented to the Office during *any* proceeding, including prior AIA proceedings." *Advanced Bionics* at 10 (original emphasis included). As to factor (c), it dictates that "the focus should be on the record when determining whether the Office erred in evaluating such art or arguments." *Advanced Bionics* at 11. Moreover, under *Advanced Bionics*, factors (e) and (f) "focus on the petitioner's evidence of previous Office error regardless of the context in which the same or substantially the same art or arguments were previously presented." *Advanced Bionics* at 10.

5

## III. ARGUMENT

### A. The Board Found Part One of *Advanced Bionics* Is Satisfied

In its Institution Decision, the Board summarized the grounds presented as follows:[2]

| Ground | Claim(s) Challenged | 35 U.S.C § | Reference(s)/Basis |
|---|---|---|---|
| 1 | 1–5 | 103(a)[3] | Hiraishi[4], Butt[5] |
| 2 | 1–5 | 103(a) | Ground 1, Tokuhiro[6] |
| 3 | 5 | 103(a) | Ground 1 or 2, Ellsberry[7] |

DI at 8. (citing Pet. 1). Hiraishi contains all the relied-on content of the Osanai reference at issue in Micron -0237. *See* DI at 10 ("Petitioner concedes that Hiraishi is essentially the same as Osanai ….").

Under the first part of *Advanced Bionics*, Patent Owner argued in its POPR that the primary reference, Hiriashi, had already been considered by the Office in Micron -0237. *See* POPR at 5. Patent Owner also argued that, while the secondary Butt reference was ostensibly included in Ground 1, the challenge presented did not rely on Butt's teachings to satisfy any actual claim limitation, and that therefore Butt was merely included in an attempt to evade § 325(d) while asking the Board to re-

---

[2] The Petition asserted additional grounds against dependent claims 6-8, which have been disclaimed and are not part of the analysis here. *See* DI at 6 ("Because Patent Owner's statutory disclaimer satisfies all regulatory requirements to disclaim claims 6–12, we do not consider Petitioner's challenges to those claims.").

6

consider the same prior art from Micron -0237. *See* POR at 5-12.  Similarly, Patent Owner pointed out that the Tokuhiro reference of Ground 2 was also relied on in Micron -237, while the Ellsberry reference of Ground 3 was before the examiner during prosecution, and in any event was relied on only in the alternative as a secondary reference for a dependent claim.[3] *See* POR at 12-14.

In response, the Board agreed that the first part of *Advanced Bionics* was met because "substantially the same prior art was previously before the Board. Accordingly, **we find that the first part of the *Advanced Bionics* test applies**." DI at 12.  In doing so, the Board agreed that "the Hiraishi reference is essentially the same as the Osanai reference asserted in the Micron '237 IPR"[4] against the '608 patent.  DI at 11 ("Patent Owner asserts, and Petitioner does not dispute, that the Hiraishi reference is essentially the same as the Osanai reference asserted in the Micron '237 IPR. We agree.").  The Board also found "that although Butt is a named secondary reference, Hiraishi is the main reference relied upon for the teachings of the claim limitations, and Butt is used to provide further explanations or

---

[3] Ellsberry is also cumulative of art considered during Micron -237. *See* POPR at 13-14.

[4] *See Micron Technology, Inc. et al. v. Netlist, Inc.*, IRP2022-00237, Paper 15 (order denying institution).

7

interpretations of the teachings of Hiraishi and/or to explain the knowledge of one of ordinary skill in the art." *Id.* at 11-12. That is, the Board found that Butt was not relied on to satisfy any limitation, but instead was used to explain Hiraishi and/or as evidence of the knowledge of a POSA.

    **B.**    **The Board Abused Its Discretion By Effectively Replacing Part Two of *Advanced Bionics* With the Second Prong of Part One**

Having found the first part of *Advanced Bionics* satisfied, the Board began to address the second part of the test, but appears to have deviated from the precedential *Advanced Bionics* framework. Specifically, after acknowledging Patent Owner's argument that there was no material error, the Board essentially shifted its analysis back to the first part of the framework finding "that the contentions here were not previously considered by the Board." DI at 12. The Board stated:

> "As to the second part of the *Advanced Bionics* test, we consider Petitioner's argument that in the Micron '237 IPR Osanai was previously considered as an anticipatory reference, whereas here the similar reference, Hiraishi, is used in an obviousness challenge. See Pet. Reply 1. Patent Owner contends that there was no error made by the Board in the Micron '237 IPR. Prelim. Resp. 23–24.
>
> We are persuaded that because of the facts here—an obviousness challenge asserted in this Petition and an anticipation challenge in the Micron '237 IPR—that <u>the contentions here were not previously considered by the Board</u>. Although Patent Owner argues that the contentions in the instant Petition and the Micron '237 IPR are substantially the same (Prelim. Resp. 23), we do not agree because <u>the</u>

8

> argument and evidence here is being viewed in light of an obviousness standard rather than that of an anticipation standard and Petitioner has provided additional argument and evidence that is not in the Micron '237 IPR petition, including Butt's support for the knowledge of one of ordinary skill."

DI at 12-13. Whether the "contentions" and "arguments and evidence" are the same as those previously considered has nothing to do with the second part of *Advanced Bionics*, it is an alternative way by which part one of *Advanced Bionics* can be satisfied. But *Advanced Bionics* is clear that satisfying the first part of the framework requires meeting only <u>one</u> of the prongs of part one.

That the Board effectively converted part two of *Advanced Bionics* (which evaluates whether there was material error by the Office) into requiring that the "same arguments" prong of part one <u>also</u> be satisfied was seemingly made explicit when the Board explained:

> "[W]hile Patent Owner's argument that there was no error made by the Board in the Micron '237 IPR may be meritorious, the operative issue is, however, that different obviousness-based arguments are being made here. In the Micron '237 IPR the Board was limited to the arguments presented in that prior petition."

DI at 13.

The Board's apparent use of the "same arguments" prong from part one of *Advanced Bionics* in finding part two of *Advanced Bionics* not satisfied is clear abuse

9

of discretion and warrants reversal, especially where, as here, part one is expressly already satisfied based on the "same prior art" prong.

### C. The Board Misapplied The *Becton, Dickinson* Factors To Support Its Improper New Standard for § 325(d) Inquiries

The Board misapplied the *Becton, Dickinson* factors relevant to part two of the *Advanced Bionics* framework (factors (c), (e), and (f)) in attempting to support its rejection of the *Advanced Bionics* framework. *See* DI at 13-14.

First, the Board erroneously concluded that "factors (c) and (e) do not apply given that the Board previously considered a different challenge …." *Id*. But factor (c) says nothing about arguments or *challenges*, but instead is specific to evaluating "the extent to which the asserted <u>art</u> was evaluated during examination, including whether the <u>prior art</u> was the basis for rejection," not whether the rejection/challenge was based on a different theory (anticipation or obviousness), for example. *Advanced Bionics* is clear that prior art presented during prior IPR proceedings, not just during patent examination, falls within the framework. *See Advanced Bionics* at 8 ("The proceedings in which the art was previously presented include, for example: examination of the underlying patent application, reexamination of the challenged patent, a reissue application for the challenged patent, and AIA post-grant proceedings involving the challenged patent.").

Second, for factor (c) *Advanced Bionics* dictates that "the focus should be on the record when determining whether the Office erred in evaluating such art **or**

10

arguments," confirming that factor (c) is to be applied to prior art, consistent with the express language of the factor. *Advanced Bionics* at 11. The Board's conclusion that factor (c) "do[es] not apply given that the Board previously considered a different challenge" effectively reads out that part of factor (c) requiring consideration of the extent to which the <u>prior art</u> was evaluated, and ignores *Advanced Bionics'* guidance on how to apply factor (c). That is clear error.

<u>Third</u>, the Board found that factor (e) did not apply and that factor (f) favors not discretionarily denying institution because of the same reason—*i.e.*, that the Board allegedly considered a different challenge before and that this petition presents new arguments and evidence. *See* DI at 13-14. But *Advanced Bionics* specifically provides guidance on factors (e) and (f), requiring that the "focus [be] on the petitioner's evidence of previous Office error <u>regardless of the context</u> in which the same or substantially the same art **or** arguments were previously presented." *Advanced Bionics* at 10. *Advanced Bionics'* discussion of factors (e) and (f) distinguishes between prior art and arguments precisely because <u>either</u> can be the basis of a finding that the new petition involves the same or substantially the same issues as those previously presented to the Office. Accordingly, *Advanced Bionics'* guidance for factors (e) and (f) requires the focus be on <u>evidence of error</u>, not which arguments may be the same, and that the evidence be considered <u>without regard to</u>

11

the context, which includes the context of prior IPR proceedings.[5] See *Advanced Bionics* at 9 ("[T]his framework reflects a commitment to defer to previous Office evaluations of the evidence of record unless material error is shown.").

In sum, not only did the Board misapply the framework of *Advanced Bionics*, as detailed above, but its subsequent application of the *Becton Dickinson* factors to its analysis was similarly erroneous by focusing only on arguments, not prior art, and by ignoring both the statutory language of 325(d) and *Advanced Bionics'* specific guidance regarding the focus of the *Becton Dickinson* factors.

### D.    The Micron -0237 Board <u>Did</u> Consider Hiraishi's Teachings in the Context of Obviousness

The Board's theory that "the Board did not have the opportunity in the previous Micron '237 IPR to evaluate the challenged claims based on obviousness over Hiraishi and Butt" is not only irrelevant to part two of *Advanced Bionics*, but also factually incorrect. Namely, the challenge here used Butt only as evidence of knowledge of POSITA and/or to explain Hiraishi, as the Board expressly found. *See* DI at 11-12.

As to the issue of whether the Micron -237 Board did evaluate Hiraishi's teachings in the context of obviousness, it did.  Two of the three grounds in Micron

---

[5] The alleged 'new evidence' mentioned by the Board for factor (f) is the Butt reference, which is addressed below in Section III.D.

-0237 were obviousness challenges. *See* EX1041 (Micron -0237 Institution Decision) at 20-21. Perhaps to address that fact, the Board included the following footnote in its Institution Decision: "The evaluation of the anticipation challenge in the Micron '237 IPR was dispositive in determining the outcome of the decision on institution on all grounds." DI at 12, fn 9 (citing EX1041 at 14–21). But the Micron -0237 petition asserted anticipation against only claims 1 and 4, while asserting two additional obviousness challenges against claims 1-5. *See* Micron -237, Pet. at 13 ("The challenged claims are unpatentable based on three different grounds. Ground 1 establishes that claims 1 and 4 are anticipated by Osanai. Ground 2 establishes that claims 1–5 are obvious over Osanai in view of Tokuhiro. Ground 3 establishes that claims 1–5 are obvious over Osanai in view of Tokuhiro, in further view of Takefman."); *see also supra*, II.A (Osanai is the same as Hiraishi). As such, the Board did consider the additional obviousness challenges after it found that Micron's anticipation challenges failed for claim 1. *See* EX1041 at 20-21. In other words, the panel in IPR2022-00237 did consider all stated challenges.

### E. The Board's Institution Decision Requires Director Reversal to Preserve the Intent of § 325(d) and *Advanced Bionics*

The Board did <u>not</u> find that the Micron -0237 Board was unable to consider Hiraishi in the context of obviousness generally, because it did. *See supra*, Section III.D. The Board also did <u>not</u> find that the Micron -0237 Board was unable to consider Hiraishi in the context of obviousness where a new secondary reference

13

supplies a previously-missing limitation because here Butt is only "used to provide further explanations or interpretations of the teachings of Hiraishi and/or to explain the knowledge of one of ordinary skill in the art." DI at 11-12; *see also supra*, Section III.A. Instead, the Board based its decision on the idea that the Micron -0237 Board was seemingly unable to consider Hiraishi's teachings in view of a specific document, one which supplied only background information on POSITA's knowledge and purported understanding of Hiraishi. DI at 11-12. But the Board does not assert that the Micron -237 panel erred in its previous evaluation because of the missing Butt reference.

In other words, the Board applied what Patent Owner believes is a legally incorrect version of *Advanced Bionics* because it found the first part of *Advanced Bionics* was satisfied and deduced no evidence of material error under the second part. If all a follow-on petitioner has to do to avoid § 325(d) is to copy the same references from a prior IPR, but add citations to a new document or new testimony solely to "provide further explanations or interpretations" of that same prior art, § 325(d) is effectively dead. Serial petitions citing to even a single new background reference (as here) or even new expert testimony will be commonplace and neither § 325(d) nor the *Advanced Bionics* framework will be able to stem the tide.

The Board's Institution Decision, if allowed to stand, will result in different petitioners being able to lodge successive administrative challenges with citations to

14

even a single new background reference to tie up such patents for long periods of time, effectively nullifying a patent owner's right to enforce its patents. Congress attempted to incorporate protections to ensure that "constitutionally mandated patent rights were not abrogated without due process." *Ethicon Endo–Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016) (J. Newman, dissenting); H.R. Rep. No. 112–98, pt.1, at 48 (AIA post grant proceedings conducted under the AIA "are not to be used as tools for harassment or a means to prevent market entry through repeated litigation and administrative attacks on the validity of a patent."). One of these protections is § 325(d), which is now at risk of falling.

Thus, reversal is not only warranted, it is necessary.

Dated: December 26, 2023            Respectfully submitted,

By: */Jonathan Lindsay/*
    H. Annita Zhong (Reg. No. 65,530)
    Jonathan M. Lindsay (Reg. No. 45,810)
    Jason Sheasby (*pro hac vice* to be requested)
    Irell & Manella LLP
    1800 Avenue of the Stars, Suite #900
    Los Angeles, CA 90067-4276
    Telephone: (310) 203-7183
    Fax: (310) 203-7199

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to 37 C.F.R. sections 42.6, that on December 26, 2023, a complete copy of **PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW** was served upon the following, by ELECTRONIC MAIL:

### BAKER BOTTS L.L.P.

Eliot D. Williams, Reg. No. 50,822

Theodore W. Chandler, Reg. No. 50,319

Ferenc Pazmandi, Reg. No. 66,216

Michael E. Knierim, Reg. No. 78,268

Brianna L. Potter, Reg. No. 76,748

DLSamsungNetlistIPRs@BakerBotts.com

/Pia S. Kamath/
Pia S. Kamath

16