# Exhibit 3

Case 2:21-cv-00463-JRG Document 584 Filed 05/31/23 Page 1 of 172 PageID #: 53652
Case 2:22-cv-00293-JRG Document 587-1 Filed 02/06/24 Page 2 of 13 PageID #: 55762

1

```
                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF TEXAS
                           MARSHALL DIVISION

NETLIST, INC.,                     (  CAUSE NO. 2:21-CV-463-JRG
                                   )
         Plaintiff,                (
                                   )
vs.                                (
                                   )
SAMSUNG ELECTRONICS CO., LTD.,     (
et al.,                            )  MARSHALL, TEXAS
                                   (  MAY 30, 2023
         Defendants.               )  8:30 A.M.
_____



_____

                     BENCH TRIAL ON THE MERITS

              BEFORE THE HONORABLE RODNEY GILSTRAP
               UNITED STATES CHIEF DISTRICT JUDGE

_____







                    SHAWN McROBERTS, RMR, CRR
                     100 E. HOUSTON STREET
                     MARSHALL, TEXAS  75670
                        (903) 923-8546
                shawn_mcroberts@txed.uscourts.gov
```

```
 1                    A P P E A R A N C E S

 2     FOR THE PLAINTIFF:     IRELL & MANELLA, LLP -
                              LOS ANGELES
 3                            1800 AVENUE OF THE STARS
                              SUITE 900
 4                            LOS ANGELES, CA 90067-4276
                              (310) 203-7096
 5                            BY:  MR. JASON SHEASBY
                                   MR. STEPHEN PAYNE
 6
                              McKOOL SMITH, P.C. - MARSHALL
 7                            104 E. HOUSTON ST., SUITE 300
                              MARSHALL, TEXAS  75670
 8                            (903) 923-9000
                              BY:  MR. SAM BAXTER
 9                                 MS. JENNIFER TRUELOVE

10     FOR THE DEFENDANTS:    FISH & RICHARDSON, PC -
                              WASHINGTON DC
11                            1000 MAINE AVE. SW, SUITE 1000
                              WASHINGTON, D.C.  20024
12                            (202) 783-5070
                              BY:  MR. RUFFIN CORDELL
13                                 MR. MICHAEL McKEON
                                   MS. LAUREN DEGNAN
14                                 MR. BRIAN LIVEDALEN

15                            GILLAM & SMITH, LLP
                              303 SOUTH WASHINGTON AVENUE
16                            MARSHALL, TEXAS  75670
                              (903) 934-8450
17                            BY:  MS. MELISSA SMITH

18     OFFICIAL REPORTER:     SHAWN M. McROBERTS, RMR, CRR
                              100 E. HOUSTON STREET
19                            MARSHALL, TEXAS  75670
                              (903) 923-8546

20

21

22

23

24

25
```

# INDEX

**EXAMINATION**

| Witness Name | Page |
|---|---|
| SCOTT MILTON | |
|    Direct By MR. CORDELL | 5 |
|    Cross By MR. SHEASBY | 20 |
|    Direct By MR. CORDELL | 45 |
|    Cross By MR. SHEASBY | 64 |
|    Redirect By MR. CORDELL | 70 |
| MARIO MARTINEZ | |
|    BY DEPOSITION | 24 |
| HYUN LEE | |
|    BY DEPOSITION | 32 |
| HYUN-JOONG KIM | |
|    BY DEPOSITION | 34 |
| BRUCE LO | |
|    BY DEPOSITION | 38 |
| GARRETT DAVEY | |
|    BY DEPOSITION | 40 |
| JOE McALEXANDER | |
|    Direct By MR. McKEON | 73 |
|    Cross By MR. SHEASBY | 97 |
|    Redirect By MR. McKEON | 110 |
| PAUL MEYER | |
|    Direct By MR. McKEON | 112 |
|    Cross By MR. SHEASBY | 120 |
|    Direct By HYUN-JOONG KIM | 124 |
|    Direct By BY DEPOSITION | 124 |
| SEUNG MO JUNG | |
|    BY DEPOSITION | 128 |
| KYUNGSOO PARK | |
|    BY DEPOSITION | 130 |
| PETER GILLINGHAM | |
|    Direct By MR. PAYNE | 133 |
|    Cross By MR. McKEON | 142 |
|    Redirect By MR. PAYNE | 150 |
| INDONG KIM | |
|    BY DEPOSITION | 154 |

1          THE COURT: Be seated, please.

2          All right. This is the time set for a bench trial
3  before the Court on the equitable defenses raised in the
4  Netlist versus Samsung Electronics matter. This is Civil Case
5  No. 2:21-CV-463.

6          As the parties will recall, the Court conducted a jury
7  trial in April of this year. At the conclusion of that trial
8  the jury returned a verdict, and post the return of the jury's
9  verdict, the Court is now prepared to take up in this bench
10 trial those equitable issues that were raised as a part of
11 this case. The Court's designated four hours of trial time
12 with two hours allocated to each side.

13         Let me ask for announcements from both sides and then
14 we'll proceed with the case in chief from Defendant Samsung.

15         What's the announcement from Plaintiff Netlist?

16             MS. TRUELOVE: Good morning, Your Honor. Jennifer
17 Truelove here for Plaintiff Netlist. With me today I have
18 Mr. Jason Sheasby, Steven Payne--they will be presenting today
19 on behalf of Plaintiff--and also at counsel table is our
20 client representative Mr. Scott Milton. And we're ready to
21 proceed, Your Honor.

22             THE COURT: All right. Thank you.

23         What's the announcement for Samsung, the Samsung
24 entities?

25             MS. DEGNAN: Good morning, Your Honor. Lauren

```
1   -- on patents.  What were you referring to?
2   A.   In the JM21 document, there are forms that are required
3   to be completed as part of the RAND process.  Those are the
4   doc -- the documents I'm referring to.
5   Q.   So when you mentioned the type of information provided to
6   comply with the JEDEC policy, you were referring to disclosing
7   the patent numbers or patent applications for subject matter
8   for the particular JEDEC spec that was being discussed at the
9   time?  Is that what you're referring to?
10  A.   Yes.
11  Q.   After Doctor Lee left Netlist and you attended meetings
12  yourself, what were you using for reliance on JEDEC -- to
13  relay to you the JEDEC technology that would be relevant?
14  A.   The way that I would facilitate the information coming
15  from JEDEC, I would write up a report that would summarize, at
16  a high level, the activity on certain standards and then come
17  back to the office and provide a download to our technical
18  experts who then reviewed it.
19       And -- and there could be some takeaways from that where
20  we had to go execute on something or we had to come back to
21  JEDEC and report something.  But it was never my decision on
22  the how to -- how to, you know -- what the next step would be
23  on any technology.  It was always a decision made by executive
24  management or by the technical team.  I was just a
25  facilitator.
```

1  Q.   Okay, then.  So after Dr. Hyun Lee left Netlist, you
2  worked closely with the executive team to determine the
3  actions that you took in the JEDEC committees.  Is that fair?
4  A.   I would report back to the executive team on what I
5  learned from JEDEC and -- yes.  And in the case of NVDIMM-H,
6  that was a task group that I was chairing at the time, and
7  George Horwich, who assisted me, would support me during the
8  time with JEDEC and during the calls.  And anything that was
9  reported back, at that time with him in attendance, he would
10 be assisting me on reporting back that information as well.
11 Q.   And what are the responsibilities of the JC-40 committee?
12 What's -- what's the subject matter of that committee?
13 A.   Well, under JC-40, they're responsible for memory logic
14 that would go on the DIMM.  And they would have it broken out
15 into four subcommittees, each one having a responsibility for
16 a different aspect of the memory logic.
17 Q.   And what are those four subcommittees?
18 A.   One is the -- the RCD and the data buffers, memory logic.
19 Another one is the -- the SPD and the voltage regulator on
20 DIMM, as well as some security specifications.  And then there
21 is the test infrastructure to how to -- how to test these
22 parts.  And I can't remember the third -- the fourth one.
23 Q.   How many meetings would you say you've attended at JEDEC
24 in the time that you've been at Netlist?
25 A.   80-plus meetings.  That's for the committees.  And for

```
1              THE COURT:  All right.  Call your next witness,
2   please.
3              MS. DEGNAN:  Samsung calls Hyun Lee by deposition.
4   Doctor Lee is a former CTO of Netlist.  The video for Doctor
5   Lee is 6 minutes and 46 seconds.  Of that, 39 seconds are for
6   Samsung designations and 6 minutes and 7 seconds are for
7   Netlist designations.
8              THE COURT:  All right.  Please proceed with this
9   witness by deposition.
10                             HYUN LEE,
11                         BY VIDEO DEPOSITION
12  Q.   Did you attend JEDEC meetings while at Netlist?
13  A.   Yes, I did, but not every JEDEC meeting, not all of the
14  meetings, but I did attend.  Starting from 2015, I did not
15  attend the JEDEC meetings.
16  Q.   Did you make any technical proposals to JEDEC while
17  attending on behalf of Netlist?
18  A.    To my recollection, no.
19  Q.   And why did you attend JEDEC meetings on behalf of
20  Netlist?
21  A.   As I said earlier, I attended in order to understand
22  which direction the industry was going for, the trend, as CTO.
23  Q.   What do you mean by that?
24  A.   In order to make the next generation project, I had to
25  understand how the industry was moving, in which direction.
```

1    That's what I meant.
2    Q.   How important was it for you as your role as CTO to keep
3    track of what others in the industry were doing at JEDEC?
4    A.   I think the question is a bit strange.  It's not that I
5    attended the meeting in order to understand what other people
6    did; what I was trying to say was that I attended the meeting
7    to understand which direction the industry as a whole was
8    moving.  But when it comes to each company and each
9    individual, there would be not much difference in what they
10   do, and at times I saw attendees fight over their
11   presentations or different items when presentations were made.
12        Again, I attended the JEDEC meetings not to understand
13   what others do, but what direction the industry was moving as
14   a whole.
15   Q.   One reason that you're paying attention to JEDEC
16   proposals was to understand the industry flow such that you
17   could utilize it in developing new projects at Netlist?
18   A.   I paid attention to the JEDEC proposals in order to
19   inform others of our arts such that -- our prior arts such
20   that they can come up with a different solution when they make
21   a proposal.  And then if they elect to continue to use the
22   same technology, that will be their call.
23        On a different note, the reason I attended or re-attended
24   the JEDEC meeting is to understand the overall flow of JEDEC
25   and not send an individual proposal such that we can use that

1    as an opportunity to use it for a different project.
2            THE CHECK INTERPRETER:  Check interpreter
3    interjection just to the top portion.  "The reason why I paid
4    attention to JEDEC proposal is for the following reasons:  If
5    what is being proposed is something that we have prior art,
6    then we would disclose that so that they could look for other
7    solutions.  And if, after knowing that we have prior art, if
8    they pursue the same technology, then it will be their own
9    business."
10        And the check interpreter, all the rest is the same.
11           THE COURT:  Does that complete this witness by
12   deposition?
13           MS. DEGNAN:  Yes, Your Honor.
14           THE COURT:  Call your next witness, please.
15           MS. DEGNAN:  Samsung calls Johnny Kim, whose full
16   name is Hyun-Joong Kim by deposition.  Mr. Johnny Kim is a
17   former employee of Samsung who is designated as a 30(b)(6)
18   witness for Samsung's participation in JEDEC.  The video for
19   Mr. Kim is 10 minutes and 40 seconds long.  Of that, 8 minutes
20   and 19 seconds are for Samsung's designations and 2 minutes,
21   21 seconds are for Netlist's designations.
22           THE COURT:  All right.  Please proceed with this
23   witness by deposition.
24                         HYUN-JOONG KIM,
25                        BY VIDEO DEPOSITION

```
1    Office and they specifically write it onto a JEDEC standard
2    that's in the standard body, you agree that they have to
3    disclose that patent or patent application to JEDEC.  Correct?
4    A.   If it had not been disclosed before, I would agree.
5    Q.   And you agree with me that a company cannot intentionally
6    conceal patents from its representatives in order to avoid
7    having to make disclosures.  Correct?
8    A.   I don't see that in the JEDEC patent policy.
9    Q.   So is it your testimony, sir, a company can dodge its
10   disclosure obligations by intentionally siloing off the
11   representatives that are attending JEDEC?
12   A.   My opinion is in a small company it's more likely that
13   the JEDEC representative, as I stated in my expert report,
14   that the JEDEC representative would have knowledge of the
15   company's patents and would be more likely to make that
16   connection and, therefore, have the disclosure obligation.
17   Q.   I understand --
18   A.   But in the larger company, thousands of employees, it's
19   very unlikely that the JEDEC representative would be aware of
20   all the patents of that large company.
21   Q.   But you agree with me that it would be improper for a
22   company -- consistent with the JEDEC policy, it would be
23   improper for a company saying, Hey, Hank is going to JEDEC
24   next week.  Don't tell Hank about the '000 Patent.  That would
25   be improper.  Isn't that right, sir?
```

```
1   A.   It may be somewhat underhanded, but I don't see anything
2        specifically about that in the JEDEC patent policy.
3   Q.   All right.  If we stay on this, in the policy under
4        8.2.3, the disclosure requirement would have to occur within a
5        reasonable amount of time.  Isn't that right?
6   A.   Yes, that's what it says.
7   Q.   Okay.  And the company cannot intentionally delay its
8        patent disclosure to JEDEC.  Correct?
9   A.   It says 'within a reasonable amount of time'.
10  Q.   Okay.  They can't intentionally delay it, though.  Isn't
11       that right?
12  A.   Well, you're adding words to the policy.
13  Q.   Okay.  Well, you do agree that the policy itself does not
14       provide any time limit to say that patents don't need to be
15       disclosed if they come after the standard is already issued.
16  A.   After the standard has already issued there is no
17       obligation to disclose.
18  Q.   You see that here in the policy here it says, Disclosure
19       of potentially essential patents, you believe if a standard
20       issues there's no more requirement?
21  A.   I think 30 days after committee approval of a standard
22       there is no further obligation to disclose.
23  Q.   All right.  So you believe, then --
24            THE COURT:  Mr. McKeon, by my records you've got one
25       minute allocated that's left.  I'm going to give you an
```

1       MR. McKEON: Sorry about that, Your Honor. I
2  thought we --
3            (Pause in proceedings.)
4       THE COURT: You can use the counsel table. You
5  don't need to get down on the floor, Mr. Sheasby.
6       MR. SHEASBY: Thank you, Your Honor.
7    DTX 14 is fine, Your Honor.
8       THE COURT: All right. So both of you have heard
9  the offering from the other. I gather there are no objections
10 to either's rendition into the record.
11      MR. McKEON: No objection, Your Honor.
12      MR. SHEASBY: No objections, Your Honor.
13      THE COURT: All right. Thank you, counsel. You're
14 excused.
15   As I stated earlier, the matters raised in the bench
16 trial are under submission.
17      MR. SHEASBY: Thank you, Your Honor.
18      MR. McKEON: Thank you, Your Honor.
19      THE COURT: Thank you.
20          (The Proceedings were concluded at 2:30 p.m.)