# Exhibit 15

```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF TEXAS
                      MARSHALL DIVISION

NETLIST, INC.,                  (  CAUSE NO. 2:21-CV-463-JRG
                                )
         Plaintiff,             (
                                )
vs.                             (
                                )
SAMSUNG ELECTRONICS CO., LTD.,  (
et al.,                         )  MARSHALL, TEXAS
                                (  MARCH 28, 2023
         Defendants.            )  9:00 A.M.
_____


                         VOLUME 1

_____

                    PRETRIAL CONFERENCE

         BEFORE THE HONORABLE RODNEY GILSTRAP
            UNITED STATES CHIEF DISTRICT JUDGE

_____
```

SHAWN McROBERTS, RMR, CRR
100 E. HOUSTON STREET
MARSHALL, TEXAS 75670
(903) 923-8546
shawn_mcroberts@txed.uscourts.gov

Case 2:21-cv-00693-JRG Document 427 Filed 04/03/24 Page 2 of 261 PageID #: 53673
Case 2:22-cv-00293-JRG Document 426 Filed 04/03/24 Page 3 of 12 PageID #: 53284

2

|   |   |   |
|---|---|---|
| 1 | | A P P E A R A N C E S |
| 2 | FOR THE PLAINTIFF: | IRELL & MANELLA, LLP - LOS ANGELES |
| 3 | | 1800 AVENUE OF THE STARS SUITE 900 |
| 4 | | LOS ANGELES, CA 90067-4276 (310) 203-7096 |
| 5 | | BY: MR. JASON SHEASBY     MS. YANAN ZHAO |
| 6 | | |
| 7 | | McKOOL SMITH, P.C. - MARSHALL 104 E. HOUSTON ST., SUITE 300 MARSHALL, TEXAS 75670 |
| 8 | | (903) 923-9000 BY: MR. SAMUEL BAXTER |
| 9 | | MS. JENNIFER TRUELOVE |
| 10 | FOR THE DEFENDANTS: | FISH & RICHARDSON PC - WASHINGTON DC |
| 11 | | 1000 MAINE AVE., SW SUITE 1000 |
| 12 | | WASHINGTON, DC 20024 (202) 783-5070 |
| 13 | | BY: MR. RUFFIN CORDELL     MS. LAUREN DEGNAN |
| 14 | | MR. BRIAN LIVEDALEN     MR. MATTHEW MOSTELLER |
| 15 | | MR. MICHAEL McKEON |
| 16 | | FISH & RICHARDSON, PC - SAN DIEGO |
| 17 | | 12860 EL CAMINO REAL SUITE 400 |
| 18 | | SAN DIEGO, CA 92130 (858) 678-5070 |
| 19 | | BY: DR. FRANCIS ALBERT |
| 20 | | FISH & RICHARDSON, PC - DALLAS |
| 21 | | 1717 MAIN STREET, SUITE 5000 DALLAS, TEXAS 75201 |
| 22 | | (214) 747-5070 BY: MR. MATTHEW COLVIN |
| 23 | | MR. THOMAS REGER |
| 24 | | |
| 25 | | |

```
 1                              FISH & RICHARDSON, PC -
                                NEW YORK
 2                              7 TIMES SQUARE, 20TH FLOOR
                                NEW YORK, NEW YORK  10036
 3                              (404) 724-2764
                                BY:  MS. KATHERINE REARDON
 4
                                GILLAM & SMITH, LLP
 5                              303 SOUTH WASHINGTON AVENUE
                                MARSHALL, TEXAS  75670
 6                              (903) 934-8450
                                BY:  MS. MELISSA SMITH
 7
                                GILLAM & SMITH, LLP
 8                              102 N. COLLEGE, SUITE 800
                                TYLER, TEXAS  75702
 9                              (903) 934-8450
                                 BY:  MR. TRAVIS UNDERWOOD
10                                    MR. TOM GORHAM

11         OFFICIAL REPORTER:   SHAWN M. McROBERTS, RMR, CRR
                                100 E. HOUSTON STREET
12                              MARSHALL, TEXAS  75670
                                (903) 923-8546
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    THE COURT: Be seated, please.

2    This is the time set for pretrial matters before the
3    Court in the case of Netlist, Inc., versus Samsung Electronics
4    Company, Ltd., et al. This is Civil Case No. 2:21-CV-463.

5    The Court will ask for announcements at this time. What
6    says the Plaintiff?

7    MS. TRUELOVE: Good morning, Your Honor. Jennifer
8    Truelove here for Plaintiff. With me today at counsel table,
9    we have Mr. Jason Sheasby, Ms. Yanan Zhao, and Mr. Michael
10   Rosen.

11   We are ready to proceed.

12   THE COURT: Thank you.

13   What's the announcement for the Samsung Defendants?

14   MS. SMITH: Good morning, Your Honor. Melissa Smith
15   on behalf of Samsung.

16   I have many people in the courtroom that have joined me
17   today, but what I'd like to do is introduce Your Honor to
18   those that will be arguing today on behalf of Samsung in the
19   order of argument: Mr. Ruffin Cordell, Mr. Mike McKeon, Ms.
20   Lauren Degnan, Dr. Frank Albert, Mr. Brian Livedalen, Mr. Matt
21   Colvin, Mr. Matthew Mosteller, Mr. Tom Reger, and in the back
22   Ms. Katherine Reardon.

23   Your Honor, we also have a client representative in the
24   courtroom today, Mr. Michael Nguyen, and we're ready to
25   proceed, Your Honor.

1   So we're in this kooky world, and I guess I can deal with
2   this on cross-examination, but time is pretty limited, where
3   Mr. Meyer says these people told me these are non-infringing
4   alternatives.
5           THE COURT: I gave you more time than you asked for
6   to try the case.
7           MR. SHEASBY: Yeah.
8           THE COURT: You asked for 12 hours, and I gave each
9   side 12 and a half. So don't tell me time's limited. If it's
10  limited, maybe the case is too big.
11          MR. SHEASBY: Well, I think the case is just right
12  in size, Your Honor.
13      Anyways, I don't want to pretend -- I don't want to give
14  you a sob story. I can sort of cross them aggressively on
15  this. But it is a point whether should you be able to put on
16  an expert to say, oh, there's all these non-infringing
17  alternatives where the technical people admit they didn't do
18  that analysis and where the interrogatory response is -- is
19  not disclosing that.
20      I did want to go on to the next issue which is references
21  to other litigations and IPRs. I don't believe that has any
22  relevance in this case, and I think it should be excluded.
23  And I won't belabor that point any more. I think that's
24  consistent with the other rulings. They talk about a number
25  of litigations that -- that don't relate to any of the patents

```
 1  in this case, and they shouldn't be discussed.
 2       They talk about inter partes reviews that the patents
 3  have been initiated on.  He has a document where he lists the
 4  number of times patents have been asserted in litigation.
 5  Once again, that would violate the Court's MIL, and I don't
 6  think has any appropriate role in front of the jury.
 7       JEDEC contributions.  This is -- we have no problem with
 8  Mr. Halbert getting up and saying, oh, there's JEDEC
 9  contributions, there's a ton of contributions.  What we do
10  have a problem with is that Mr. Meyer puts a type of rigor to
11  it in which he uses the number of generic contributions made
12  across these standards as a metric to assess the value of
13  these individualized patents.  And there's no nexus there
14  because Mr. Halbert did not create a nexus between the
15  specific areas of technology and the patents.
16       So Mr. Halbert can say all he wants about JEDEC.  But to
17  add a level of precision where the jury is told, you should
18  think about the 10,000 contributions that are made to JEDEC
19  for these entire standards when you value these patents, that
20  adds a level of precision that is deceptive because it's not
21  tied to either the technology at issue nor is it tied to the
22  exact patent.
23       So I want to draw a distinction.  What Mr. Halbert can
24  say, he can say.  For Mr. Meyer to use that as a damages tool
25  when there's no connection between the patents or accused
```

Case 2:21-cv-00463-JRG Document 479 Filed 04/03/23 Page 261 of 317 PageID #: 53678
Case 2:22-cv-00293-JRG Document 426-4 Filed 03/22/24 Page 8 of 12 PageID #: 53117
235

1 products, that's a bridge too far.

2 The references to Micron, Intel, and SK hynix
3 investments, I -- I don't really know how to -- how to address
4 this. In a hypothetical negotiation, Mr. Meyer is presuming
5 that the parties would take into account the amount of money
6 invested by two separate third parties for which there's no
7 evidence that they contributed any of the technology that's
8 specifically related to these cases.

9 And that strikes me as -- as a really dangerous precedent
10 to set in the hypothetical negotiation for you to start
11 speaking about third-party products.

12 The next issue is confidential settlement discussions.
13 If we write a letter to Samsung that's a settlement offer,
14 that settlement offer has no place in front of a jury. That's
15 the whole purpose of FRE 408 and things fall down. Samsung in
16 their surreply brief suggests there's a well-known exception
17 to JEDEC-RAND issues. There's no RAND issues in this case,
18 and there was no exception in our letter.

19 So I don't believe it's appropriate for them to inject
20 settlement communications into this case, and it would I think
21 significantly damage the -- sort of the integrity of the
22 process if we had to be aware of that.

23 References to the 2017 ITC action, there is an analysis
24 that was done about a FRAND offer that we made in the *SK Hynix*
25 case for a separate set of patents that related to LRDIMM.

1  THE COURT: Let's make it brief, Mr. Sheasby.
2  MR. SHEASBY: So there are two separate agreements.
3  If you go to slide 35.
4  This is the proposal that was made in 2000 -- while this
5  lawsuit is ongoing that is subject to FRE 408 that did have a
6  $6 offer in it. That is ultra vires. It's FRE 408 and
7  shouldn't be allowed. There's just a confusion, and I don't
8  think it was intentional.
9  There is another $6 FRAND offer that was made on LRDIMMs
10 back in 2017 that was before the patents at issue had even
11 issued that was made to SK hynix as part of a FRAND offer and
12 because those patents were being asserted as standard
13 essential patents. I don't attribute any ill will to it.
14 There's two separate $6 offers. One was an FRE 408 in
15 2022, and one of them was this FRAND negotiation that was done
16 for standard essential patents, none of which were the patents
17 at issue in that case. And I just want to clarify that for
18 the Court.
19 THE COURT: All right. Thank you.
20 All right. With regard to Document 214 and the numerous
21 subparts in Plaintiff's motion to strike portions of the
22 expert's rebuttal report tendered by Paul K. Meyer, I'll try
23 to address these in order which they were set forth in the
24 briefing.
25 With regard to the Meyer market comparables approach,

1  which is identified as paragraphs 289 through 305 of Mr.
2  Meyer's rebuttal report, I'm going to grant the motion and
3  strike those paragraphs. I think they do fall within the
4  purview of *Apple versus Wi-Lan* and they are probably not
5  reliable in light of that and other precedent.
6      With regard to the references to RAND, I'm going to grant
7  that portion of the motion as we've established beyond doubt
8  today there are no standard essential patents at issue in this
9  case. Therefore, any mention of a RAND contractual obligation
10  would violate Rule 403 and be highly confusing and prejudicial
11  with limited, if any, probative value.
12      With reference to the NIAs, I'm going to deny that
13  portion of the motion.
14      With regard to the references to other litigation and
15  IPRs, consistent with the Court's earlier discussed practices,
16  I'm going to grant that. Again, I think that's mandated by a
17  fair application of Rule 403 where there's considerable risk
18  of prejudice and confusion and limited probative value.
19      With regard to the references to the alleged JEDEC
20  contributions, I'm going to deny that portion of the motion.
21  I believe this witness is entitled to respond to Mr. Kennedy's
22  opinions. Particularly in that regard, I don't find anything
23  in this section of his report that cannot fairly be addressed
24  by Plaintiff through cross-examination and rises to the level
25  of needing to be excluded.

1  That's going to be the Court's same ruling on the
2  references to Micron, SK hynix, and Intel R&D investments.
3  That portion is denied, can be fairly addressed by
4  cross-examination.
5  With regard to the settlement discussions governed by
6  Rule 408 and the particular letter that's been referenced in
7  the argument today, I'm going to grant that.  I do believe it
8  falls under Rule 408.  It's being used to disprove the amount
9  of a disputed claim, and I think that's what the rule stands
10 to protect against.
11 With regard to the expert analysis from the 2017 ITC
12 action, I've made it clear earlier today that the ITC action
13 is an adjudicatory process that has limited probative value
14 and a high risk of confusion.  I'm going to grant that portion
15 of the motion, primarily on a 403 analysis.
16 With regard to the comparison of the patent damages to
17 Netlist's market cap, I'm going to grant that.  That's highly
18 prejudicial and it's innately pejorative in the way it's
19 presented.
20 With regard to the references to Samsung's patent
21 portfolio, that's relevant and probative, and I'm going to
22 deny the motion in that regard.
23 With regard to references to unaccused products, I think
24 that can be fairly dealt with by cross-examination and I'm not
25 going to exclude it.  That's not going to preclude relevance

1  previously set on the 17th.  Go back 10 days and you get to
2  the 7th.  We're now on the 14th.  Go back 10 days, and you get
3  to the 4th.  So the first step in that process should be on
4  the 4th and not the 7th.  The second one should follow, what
5  is it, three days later?
6           MR. CORDELL:  Yes, sir.
7           THE COURT:  That would put it on the 7th.  So 4th
8  and the 7th instead of 7th and the 10th.
9      All right?
10          MR. CORDELL:  Thank you.
11          MR. SHEASBY:  Thank you, Your Honor.
12          THE COURT:  All right, Counsel.  We stand in recess
13 until tomorrow morning.
14          MR. SHEASBY:  Thank you, Your Honor.
15          (The proceedings were concluded at 5:15 p.m.)