UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>   Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.,<br><br>   Defendants. | Civil No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S OPPOSITION TO PLAINTIFF NETLIST INC.'S
MOTION TO STRIKE OPINIONS OF DR. M. RAY PERRYMAN (DKT. 363)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

TABLE OF EXHIBITS TO NETLIST'S MOTION ................................................................. iii

TABLE OF EXHIBITS TO SAMSUNG'S OPPOSITION ....................................................... iii

I.   INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND ............................................................................................................. 1

III. ARGUMENT ................................................................................................................... 2

     A.   Dr. Perryman's Criticism That Dr. Groehn Should Have Considered
          Samsung's Brand Is Reliable (¶¶ 104-06) ............................................................ 2

     B.   Dr. Perryman's References to Samsung's R&D and Patents Are
          Relevant to the Value of Samsung's Brand (¶¶ 104-05) ...................................... 4

     C.   Dr. Perryman's Discussion of Samsung as a Company Is Relevant
          Background Information (¶¶ 33-34, 36, 104-05) ................................................. 5

     D.   Dr. Perryman's Discussion of Samsung's Contributions to JEDEC Are
          Relevant Background Information (¶¶ 36, 105) .................................................. 6

     E.   Dr. Perryman's Rebuttal to Dr. Groehn's Analysis Does Not Use
          "Inflammatory/Disparaging Language" (¶¶ 13, 50, 71, 99, 106, 118-19,
          124, 132) ............................................................................................................... 8

IV.  CONCLUSION ................................................................................................................ 9

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*CEATS, Inc. v. TicketNetwork, Inc.*,
  No. 2:15-CV-01470-JRG-RSP, 2018 WL 453732 (E.D. Tex. Jan. 17, 2018) ................................... 4

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ............................................................................................................. 2, 8

*Genband US LLC v. Metaswitch Networks Corp.*,
  No. 2:14-CV-33-JRG-RSP, 2016 WL 3475699 (E.D. Tex. Jan. 7, 2016) ................................... 3, 4

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ............................................................................................... 3

*Marmo v. Tyson Fresh Meats, Inc.*,
  457 F.3d 748 (8th Cir. 2006) ................................................................................................ 4

*Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*,
  711 F.3d 1348 (Fed. Cir. 2013) ........................................................................................... 3, 4

*XpertUniverse, Inc. v. Cisco Systems, Inc.*,
  No. 09-157-RGA, 2013 WL 936449 (D. Del. Mar. 11, 2013) ................................................. 2

## TABLE OF EXHIBITS TO NETLIST'S MOTION

| # | Description |
|---|---|
| 1 | Expert Report of Ray Perryman (Dec. 21, 2023) |

## TABLE OF EXHIBITS TO SAMSUNG'S OPPOSITION

| # | Description |
|---|---|
| A | Corrected Expert Report of Andreas Groehn (Nov. 21, 2023) (excerpts) |
| B | Expert Report of David Kennedy (Nov. 20, 2023) (excerpts) |
| C | "Reliable," *Merriam-Webster Dictionary*, www.merriam-webster.com.dictionary/reliable (accessed Jan. 30, 2024) |
| D | "Bias," *Merriam-Webster Dictionary*, www.merriam-webster.com.dictionary/bias (accessed Jan. 30, 2024) |

## I. INTRODUCTION

The Court should deny Netlist's motion to strike portions of Dr. Perryman's report.[1] The opinions Netlist challenges are the product of a reliable rebuttal methodology, and each of Dr. Perryman's criticisms of Dr. Groehn's regression analysis is warranted. Dr. Perryman's report demonstrates why Dr. Groehn's regression analysis suffers from "omitted variable bias" due to its omission of several key attributes that impact price, including Samsung's "brand" (*see* Section I.A). The result of Dr. Groehn's omission is an inflated correlation between price and speed—an input on which Netlist's expert Mr. Kennedy relies in seeking over $▮▮▮▮ in damages. Netlist offers no methodological flaw with Dr. Perryman's critique, nor any other reason to exclude it from the trial—Netlist simply does not like Dr. Perryman's conclusion. Likewise, Dr. Perryman's discussion of Samsung's innovative history, investments in R&D, strong patent portfolio, and social impact support his opinion that Samsung's "brand" is a factor in the price of the accused products that Dr. Groehn should have included in his regression (*see* Section I.B-D). Finally, Dr. Perryman does not use any prejudicial "inflammatory" or "disparaging" language about Dr. Groehn, but rather addresses his analysis (*see* Section I.E) using terminology common in the field of statistical analysis. The proper audience for Netlist's critiques is the jury, and the proper tools for resolving them are cross-examination and competing testimony—not exclusion.

## II. BACKGROUND

Dr. Groehn's report sets forth a hedonic regression to attempt to establish a relationship between speed and price (*see* Ex. A), which Mr. Kennedy then uses as an input to a damages analysis based on alleged speed benefits of certain of the asserted patents (*see* Ex. B). Dr. Perryman's report rebuts Dr. Groehn's regression analysis, including a detailed discussion of why Dr. Groehn's regression is unreliable because it suffers from the phenomenon of "omitted variable bias," whereby

---

[1] Netlist's motion seeks to strike only ¶¶ 13, 33-34, 36, 50, 71, 99, 104-06, 118-19, 124, 132.

the absence of certain key variables from a model can impact the result in a way that overstates the relationship between the variables that were used. *See* Ex. 1, § X.C. For example, Dr. Perryman's report explains why the omission of variables such as the number of ranks in a module, die generation, latency, and brand artificially inflate the impact of speed on price. *Id.* In support of his opinion on the impact of brand on price, Dr. Perryman provides certain examples that demonstrate Samsung's valuable reputation as an innovator and good corporate citizen. *See, e.g., id.*, ¶¶ 33-34, 104-05.

## III.  ARGUMENT

### A.  Dr. Perryman's Criticism That Dr. Groehn Should Have Considered Samsung's Brand Is Reliable (¶¶ 104-06)

Although Netlist may not agree with Dr. Perryman's opinion that Dr. Groehn should have considered Samsung's brand in his regression analysis, it offers no valid basis for exclusion. Instead, Netlist merely asserts that "[t]hese portions of Dr. Perryman's report should be stricken because they fail to meet the *Daubert* standard of reliability." Dkt. 363 at 1. On the contrary, Dr. Perryman's opinion is reliable, and he thoroughly explains the impact of brand on price, and thus the importance of including brand in a hedonic regression.[2]

Netlist conveniently ignores the critical context surrounding the paragraphs it seeks to exclude, but these surrounding paragraphs explain the bases and reasons for his rebuttals. *Contra* Dkt. 363 at 1 (incorrectly arguing that Dr. Perryman "does not even attempt to provide a factual or scientific basis"). Paragraphs 100-106 of Dr. Perryman's report discuss how Dr. Groehn's analysis is flawed due to omitted variable bias because Dr. Groehn ignores supply-side factors in price determination,

---

[2] Netlist's reliance on *XpertUniverse, Inc. v. Cisco Systems, Inc.*, No. 09-157-RGA, 2013 WL 936449 (D. Del. Mar. 11, 2013), is misplaced. That case involved a plaintiff's expert's affirmative opinion that a $32 million lump sum royalty was appropriate based on only $937,000 in sales of accused products, despite the fact that he also opined that a royalty range of 3-5% was appropriate based on prior licenses. *Id.* at *3. The court excluded the expert's opinion because the opinions were conflicting, did not align with the facts of the case, and therefore "made no sense." *Id.* Dr. Perryman's opinions, by contrast, are consistent with the facts of the case, and are valid rebuttals to Netlist's experts' opinions, which artificially inflate damages.

including competitor's prices. Ex. 1, ¶ 100-06. Dr. Perryman provides this analysis in response to Mr. Kennedy's characterization of the memory module market as an "oligopoly." *Id.*, ¶ 100. An oligopoly describes "any market with three or more competitors which is highly concentrated." *Id.* The oligopoly discussion in Mr. Kennedy's report "highlight[s] the importance of competitors' pricing for Samsung's pricing behavior." *Id.*, ¶ 103. Dr. Perryman then points out that Dr. Groehn unreliably ignores market forces and the impact of competition on pricing by "failing to include any products and prices from competitors." *Id.* As Dr. Perryman further explains, "[w]ithout competing products, Dr. Groehn does not include the full choice set that a consumer faces among various memory modules" and "ignores the fact that prices in this type of market may be determined largely by the actions of significant competitors." *Id.* Dr. Perryman's opinions represent a valid rebuttal to Dr. Groehn's analysis.

The paragraphs Netlist seeks to exclude explain that a further consequence of Dr. Groehn's failure to analyze external factors is that "Dr. Groehn's model does not fully capture the importance of Samsung's brand to the value of its products" and that "Dr. Groehn ignores the value of the Samsung brand that has allowed Samsung to gain a market advantage and survive the crashes in the competitive memory module market." Ex. 1, ¶¶ 104-06. Dr. Perryman opines that Dr. Groehn's failure to consider competitors' prices in his model (an important aspect of pricing even by Mr. Kennedy's admission) causes his analysis to be unreliable because it does not capture the impact of competitor pricing in the market or how Samsung's brand recognition among its competitors impacts price. *See id.*, ¶¶ 100-06. Thus, Dr. Perryman's analysis of the impact on the price of Samsung's brand is not "purely speculative," and Dr. Perryman does "provide a factual [and] scientific basis for it."[3]

---

[3] Neither *Power Integrations* nor *Genband* is remotely relevant to the issues raised in Netlist's motion. In *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, 711 F.3d 1348, 1373 (Fed. Cir. 2013), the Federal Circuit deemed a plaintiff's expert's opinion unreliable because he assumed (without any factual basis), that phones (unaccused products) were shipped with chargers (accused products) and

3

Dkt. 363 at 1. Netlist's criticisms go to weight, not admissibility. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) ("[W]hen the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy . . . may go to the testimony's weight, but not its admissibility.").

### B. Dr. Perryman's References to Samsung's R&D and Patents Are Relevant to the Value of Samsung's Brand (¶¶ 104-05)

The Court should not strike Dr. Perryman's references to Samsung's R&D efforts and patents because they are relevant to demonstrating why Dr. Groehn should have accounted for Samsung's brand in his regression, and they are not prejudicial. *Contra* Dkt. 363 at 2-4 ("Samsung's overall R&D expenditures and patent activities as an entire company . . . are clearly included for the prejudicial purpose of implying that Samsung is 'known for its innovative spirit' and thus would not have infringed Netlist's patents."). As Dr. Perryman explains, Samsung's R&D efforts (and resulting patents) are important to demonstrating why Dr. Groehn's decision to ignore competitor pricing, Samsung's position as a leader in the memory module market, and the value of Samsung's brand causes his opinions to be deficient and unreliable.[4] Ex. 1, ¶¶ 104-06. Dr. Perryman's opinions about the

---

therefore counted phone sales as infringing sales. He further assumed (without any factual basis) that each charger incorporated the allegedly infringing power circuits. *Id.* at 1374. In *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 3475699 (E.D. Tex. Jan. 7, 2016), the Court excluded an expert's doctrine of equivalents theory because it was a conclusory statement that "use [of the allegedly infringing product] constitutes direct infringement, literally or under the doctrine of equivalents, of one or more claims" of the asserted patent without any further explanation, analysis, or citation to evidence. *Id.* at *2. Unlike those cases, Dr. Perryman provides detailed explanations for his rebuttal opinions. Dr. Perryman was not required to quantify the extent to which brand would impact price—there is no requirement for a rebuttal expert to undertake such an analysis. "A 'rebuttal' report explains, repels, counteracts or disproves evidence of the adverse party's initial report." *CEATS, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018) (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)).

[4] Contrary to Netlist's assertion that "Samsung has not identified a single patent it owns that relates in any way to the Accused Products," Dkt. 363 at 4, Samsung's interrogatory responses identify patents that are relevant to its DDR4 products, and that Samsung has declared as potentially essential to JEDEC standards. *See, e.g.*, Ex. B, ¶¶ 203-05.

4

importance of Samsung's brand and innovative reputation (including the impact of Samsung's significant investments in R&D, and patent portfolio) are proper and should not be excluded.[5]

### C. Dr. Perryman's Discussion of Samsung as a Company Is Relevant Background Information (¶¶ 33-34, 36, 104-05)

Dr. Perryman's descriptions of Samsung as a company—including what Netlist refers to as "social good projects" and "good works"—are relevant background information and support his opinion that Dr. Groehn's regression erroneously ignored Samsung's brand. *Contra* Dkt. 363 at 4. Despite referencing five paragraphs in Dr. Perryman's report, Netlist's criticisms boil down to a few statements that provide background on Samsung and explain why Dr. Groehn's failure to consider factors (such as brand) that contribute to price artificially inflates the impact of speed on price.

**¶¶ 33-34, 104:** Paragraphs 33 and 34 of Dr. Perryman's report merely provide a general description of Samsung as a company, including a statement that "SEC has stated that it is 'redefining' various technologies from TVs, smartphones, and wearable devices, digital appliances, and network and memory systems." Dkt. 363 at 4. However, this statement is proper background (as are similar statements in paragraph 104), and not unlike those Mr. Kennedy provided to describe Netlist as a company. *E.g.*, Ex. B, ¶¶ 12 ("Netlist has a history of introducing 'disruptive new products such as

---

[5] Netlist's arguments about R&D amounts and Samsung's patent portfolio contradict the opinions of its own experts. For example, in his report, Mr. Kennedy opines that "the parties could look to general metrics to assess any possible technical contribution from Samsung to the accused features" and mentions how R&D could be used "as a proxy for their relative R&D intensity, and thus a way to estimate their relative technical contributions." Ex. B, ¶ 210. It is, therefore, appropriate for Dr. Perryman also to discuss how Samsung's R&D efforts impact the value of Samsung's brand, which impacts price—a factor Dr. Groehn did not consider in his analysis. Further, Mr. Kennedy's report states: " " Ex. B, ¶ 12. As another example, Dr. Groehn's report states: " " Ex. A, ¶ 15. In other words, Netlist's motion seeks exclusion of opinions that are consistent with those proffered by its own experts. In any event, discussions of overall revenues are improper, and Samsung reserves the right to move *in limine* to exclude improper statements about overall revenues.

5

the first load-reduced DIMM, Hypercloud®, based on Netlist's distributed buffer architecture later adopted by the industry for DDR4 LRDIMM.'"), 15 ("Netlist has invested significant resources to the research and development of technology innovations which have provided the Company a strong portfolio of technologies . . . ."). As Netlist acknowledges, "a party is allowed to describe itself to the jury," Dkt. 363 at 5, and that is precisely what Dr. Perryman's report does in the paragraphs at issue.

¶ **36, 105:** Dr. Perryman's opinion that Samsung's investments in "green memory" contribute to Samsung's brand and the value of the products are rooted in fact, relevant, and should not be excluded. In paragraphs 36 and 105, Dr. Perryman references Samsung's investments in "green memory," which he later explains is another aspect of Samsung's business that has caused Samsung to become a leader among competitors in the market, supporting his argument that its brand impacts price. Netlist alleges that it is unclear how Samsung's green efforts would "change the value that customers pay for speed improvements in the accused products," Dkt. 363 at 5, but ignores the clear relevance of these facts to Dr. Perryman's opinions. First, Netlist misses the point of Dr. Perryman's critique, which is that Dr. Groehn failed to address how competition in the marketplace impacts pricing, including how Samsung's brand impacts the price it can charge for products as compared to its competitors. Samsung's investments in "green memory" and other socially- or environmentally-responsible endeavors impact the value of its brand and are thus relevant to Dr. Perryman's opinions. Second, Dr. Perryman explains that green energy enhances "the power efficiency of semiconductor products and reduc[es] the amount of energy used by data centers and IT devices." Ex. 1, ¶ 36, 105. Dr. Perryman thoroughly explains why Samsung's investments in green energy impact the prices it can charge—his opinion on these points should not be excluded.

### D. Dr. Perryman's Discussion of Samsung's Contributions to JEDEC Are Relevant Background Information (¶¶ 36, 105)

Dr. Perryman's description of Samsung's contributions to the technology at issue, including JEDEC standards associated with predecessor technologies, is relevant background information that

6

the Court should not exclude. *Contra* Dkt. 363 at 5. As discussed above, one of Dr. Perryman's critiques of Dr. Groehn's analysis is that he fails to analyze competition in the memory module market and, therefore, fails to consider the value of Samsung's brand and its impact on pricing. Ex. 1, ¶¶ 104-06. Dr. Perryman's descriptions of Samsung's contributions to DRAM technology in paragraphs 36 and 105 merely describe how Samsung became a leader in the memory module market. As Dr. Perryman explains in paragraph 106, "[d]espite Samsung being a leader in this market, Dr. Groehn ignores the value of the Samsung brand that has allowed Samsung to gain a market advantage and survive the crashes in the competitive memory module market." *Id.*, ¶ 106. Contrary to Netlist's speculation, Dr. Perryman will not testify that "Samsung invented unaccused products." Dkt. 363 at 6. But he should be able to tell the jury that Samsung has contributed to memory technology as part of his opinion that Samsung's contributions impact its brand (and thus price)—which Dr. Groehn failed to address.

Furthermore, Dr. Perryman should be permitted to discuss Samsung's innovative history and contributions to JEDEC to rebut Mr. Kennedy's biased description of Samsung's participation in JEDEC. Mr. Kennedy's report includes an entire section titled "JEDEC and Samsung." Ex. B, § 5.B.2. In it, Mr. Kennedy states that "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." *Id.*, ¶ 95 ("██████████████████████████████████████████████████████"). It would be fundamentally unfair for Netlist (whether through Mr. Kennedy or Mr. Martinez) to be permitted to present a one-sided perspective on Samsung's JEDEC participation without allowing Samsung's witnesses to challenge that perspective.

7

### E. Dr. Perryman's Rebuttal to Dr. Groehn's Analysis Does Not Use "Inflammatory/Disparaging Language" (¶¶ 13, 50, 71, 99, 106, 118-19, 124, 132)

Dr. Perryman's descriptions of Dr. Groehn's analysis do not use any improperly inflammatory or disparaging language. *Contra* Dkt. 363 at 6-7. Dr. Perryman's rebuttal report evaluates and rebuts Dr. Groehn's analysis and Mr. Kennedy's reliance on it. This rebuttal necessarily includes identifying where analytical flaws cause Netlist's experts' opinions to be "extremely unreliable," Ex. 1, ¶ 13, or where one "factor alone . . . is sufficient to invalidate Dr. Groehn's entire analysis," *id.*, ¶ 106. Contrary to Netlist's assertion that this "invades the province of this Court, which is the gatekeeper for reliability under *Daubert*," Dkt. 363 at 6, it is entirely appropriate for a rebuttal expert to explain why another expert's analysis is unreliable. Although the flaws in Dr. Groehn's analysis are so pervasive that the Court should exclude his analysis and Mr. Kennedy's reliance thereon, as set forth in Samsung's *Daubert* motions, Dkt. 348; Dkt. 346, § II.D, if the Court denies those motions, Dr. Perryman should be entitled to point out the flaws in Dr. Groehn's analysis and how they impact his opinion. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (identifying the "presentation of contrary evidence" as a means of attacking shaky but admissible evidence).

Further, Dr. Perryman's opinions on the extent of the unreliability do not violate the Court's standing order on motions *in limine*. *Contra* Dkt. 363 at 6 (citing Court MIL No. 11).[6] Not only are Dr. Perryman's criticisms not "disparaging" (they are valid criticisms), but Dr. Perryman is also not referring to a "person or entity." Rather, Dr. Perryman is discussing Dr. Groehn's **analysis**. Neither Samsung nor its experts would disparage Dr. Groehn or Dr. Kennedy personally. The adjectives "unreliable" and "biased" are commonly used in the econometric and statistics fields in which Dr.

---

[6] Court MIL No. 11 prohibits the introduction of "evidence, testimony, or argument referring to any other person or entity in disparaging ways, such as a 'patent troll,' 'pirate,' 'bounty hunter,' 'bandit,' 'playing the lawsuit lottery,' 'shell company,' 'shakedown artist,' 'patent assertion entity,' or any such similar terms." Dr. Perryman's opinion that Dr. Groehn's analysis is "unreliable" is a far cry from such disparaging terms contemplated by Court MIL No. 11.

8

Perryman and Dr. Groehn are experts. "Reliability" refers to a measure's consistency. Ex. C. "Biased" refers to a statistic that does not accurately represent a population. Ex. D. Dr. Perryman should not be precluded from using terminology common in his field to describe issues with Dr. Groehn's analysis and Mr. Kennedy's reliance on that analysis.

## IV. CONCLUSION

Thus, the Court should deny Netlist's motion to strike portions of Dr. Perryman's report.

Dated: January 30, 2024

Respectfully submitted,

By: */s/ Daniel A. Tishman*

| | |
|---|---|
| Melissa Richards Smith<br>melissa@gillamsmith.com<br>GILLAM & SMITH, LLP<br>303 South Washington Ave.<br>Marshall, Texas 75670<br>Telephone: (903) 934-8450<br>Facsimile: (903) 934-9257<br><br>J. Travis Underwood<br>Texas Bar No. 24102587<br>travis@gillamsmithlaw.com<br>GILLAM & SMITH, LLP<br>102 North College Avenue, Suite 800<br>Tyler, Texas 75702<br>Telephone: (903) 934-8450<br>Facsimile: (903) 934-9257<br><br>Brian R. Nester<br>DC Bar No. 460225<br>bnester@cov.com<br>COVINGTON & BURLING LLP<br>One CityCenter 850 Tenth Street, N<br>Washington, DC 20001-4956<br>Telephone: (202)-662-6000<br><br>Alice J. Ahn<br>CA Bar No. 271399/DC Bar No. 1004350<br>aahn@cov.com<br>COVINGTON & BURLING LLP<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105 | Ruffin B. Cordell<br>TX Bar No. 04820550<br>cordell@fr.com<br>Michael J. McKeon<br>D.C. Bar No. 459780<br>mckeon@fr.com<br>Lauren A. Degnan<br>D.C. Bar No. 452421<br>degnan@fr.com<br>Daniel A. Tishman<br>DC Bar No. 1013923<br>tishman@fr.com<br>FISH & RICHARDSON P.C.<br>1000 Maine Avenue, SW<br>Washington, DC 20024<br>Telephone: (202) 783-5070<br>Facsimile: (202) 783-2331<br><br>Francis J. Albert<br>CA Bar No. 247741<br>albert@fr.com<br>FISH & RICHARDSON P.C.<br>12860 El Camino Real, Ste. 400<br>San Diego, CA 92130<br>Telephone: (858) 678-5070<br>Facsimile: (858) 678-5099<br><br>Thomas H. Reger II<br>reger@fr.com<br>Texas Bar No. 24032992<br>FISH & RICHARDSON P.C. |

9

████████████████████████████

| | |
|---|---|
| Telephone:  (415) 591-7091 | 1717 Main Street, Suite 5000 |
| Facsimile:   (415) 955-6571 | Dallas, Texas 75201 |
| | Telephone: (214) 747-5070 |
| | Facsimile:  (214) 747-2091 |

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on January 30, 2024. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

/s/ Daniel A. Tishman