UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br>          Plaintiff, <br><br>     v. <br><br> SAMSUNG ELECTRONICS CO., LTD., et al., <br><br>          Defendants. | Civil No. 2:22-cv-00293-JRG <br> (Lead Case) <br><br> **JURY TRIAL DEMANDED** |
| NETLIST, INC., <br><br>          Plaintiff, <br><br>     v. <br><br> MICRON TECHNOLOGY TEXAS, LLC, et al., <br><br>          Defendants. | Civil No. 2:22-cv-00294-JRG <br> (Member Case) <br><br> **JURY TRIAL DEMANDED** |

**SAMSUNG'S OPPOSITION TO NETLIST'S MOTION TO STRIKE PORTIONS
OF THE REBUTTAL EXPERT REPORT OF LAUREN KINDLER (DKT. 355)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

TABLE OF EXHIBITS TO NETLIST'S MOTION ...................................................... iv

TABLE OF EXHIBITS TO SAMSUNG'S OPPOSITION ............................................. iv

TABLE OF ABBREVIATIONS ............................................................................ v

I.      MS. KINDLER'S COMPARABLE LICENSE ANALYSIS IS RELIABLE ...................... 1

        A.   Ms. Kindler's Evaluations of the JDLA and SK hynix Agreement Are
             Reliable ................................................................................... 1

        B.   Ms. Kindler's Adjustments to the JDLA and SK hynix Agreement Are
             Reliable ................................................................................... 6

        C.   Ms. Kindler's Analysis of Samsung's Inbound Licenses Is Reliable ............. 8

II.     MS. KINDLER'S OTHER OPINIONS ARE PROPER .......................................... 10

        A.   Ms. Kindler's RAND Opinions Are Relevant and Reliable ...................... 10

        B.   Ms. Kindler's References to Other Litigation and IPRs Are Relevant
             Rebuttal .................................................................................. 11

        C.   Samsung's JEDEC Contributions and Patents Are Relevant to
             Apportionment .......................................................................... 13

        D.   If the Court Allows Mr. Kennedy To Discuss the JDLA's Supply Provision,
             Ms. Kindler Should Be Permitted To Rebut His Opinions ..................... 14

        E.   Ms. Kindler Does Not Opine on Netlist's or SK hynix's Subjective Beliefs ........... 14

        F.   Ms. Kindler Can Consider Netlist's "RAND" Offer ............................ 15

III.    CONCLUSION .................................................................................. 15

\*       In this brief, all emphasis is added unless noted otherwise.

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Comm'ns, Inc.,*
    694 F.3d 1312 (Fed. Cir. 2012) .................................................................................. 9

*ADASA Inc. v. Avery Dennison Corp.,*
    55 F.4th 900 (Fed. Cir. 2022) .................................................................................... 8

*Affinity Labs of Texas, LLC v. Ford Motor Co.,*
    No. 1-12-CV-580, 2014 WL 12638158 (E.D. Tex. Aug. 22, 2014) ........................... 8

*Alacritech Inc. v. CenturyLink, Inc.,*
    No. 2:16-CV-00693-RWS-RSP, 2023 WL 8101872 (E.D. Tex. Nov. 21, 2023) .............. 3

*Apple Inc. v. Wi-LAN Inc.,*
    25 F.4th 960 (Fed. Cir. 2022) ................................................................................ 3, 4

*Better Mouse Co. v. SteelSeries ApS,*
    No. 2:14-CV-198-RSP, 2016 WL 3611528 (E.D. Tex. Jan. 5, 2016) ......................... 5

*Bio-Rad Labs, Inc. v. 10X Genomics Inc.,*
    967 F.3d 1353 (Fed. Cir. 2020) ................................................................................. 8

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys.,*
    809 F.3d 1295 (Fed. Cir. 2015) ................................................................................. 1

*Ericsson, Inc. v. D-Link Sys., Inc.,*
    773 F.3d 1201 (Fed. Cir. 2014) ........................................................................... 11, 13

*GREE, Inc. v. Supercell Oy,*
    No. 2:19-CV-00070-JRG-RSP, 2020 WL 4288350 (E.D. Tex. July 27, 2020) ............... 15

*LaserDyanmics, Inc. v. Quanta Computer, Inc.,*
    694 F.3d 51 (Fed. Cir. 2012) .................................................................................... 7

*MOSAID Techs. Inc. v. Micron Tech., Inc.,*
    No. 2:06-CV-302-DF, 2008 WL 11344763 (E.D. Tex. June 18, 2008) ...................... 15

*Oracle Am., Inc. v. Google, Inc.,*
    No. C 10-03561 WHA, 2012 WL 877125 (N.D. Cal. Mar. 15, 2012) ....................... 5

*Realtek Semiconductor Corp. v. LSI Corp.,*
    No. C-12-03451-RMW, 2014 WL 46997 (N.D. Cal. Jan. 6, 2014) ........................... 5

*U.S.A.A. v. PNC Bank N.A.,*
   No. 2:20-CV-00319-JRG-RSP, 2022 WL 1215242 (E.D. Tex. Apr. 24, 2022) ................................. 5

*VirnetX, Inc. v. Cisco Sys., Inc.,*
   767 F.3d 1308 (Fed. Cir. 2014) ............................................................................................................. 10

*Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.,*
   609 F.3d 1308 (Fed. Cir. 2010) ............................................................................................................. 9

███████████████████████████████████

## TABLE OF EXHIBITS TO NETLIST'S MOTION

| # | Description |
|---|---|
| 1 | Rebuttal Expert Report of Lauren Kindler (Dec. 21, 2023) |
| 2 | Joint Development License Agreement (NETLIST- SAMSUNG - EDTX00037780) |
| 3 | Strategic Product Supply and License Agreement between Netlist and SK hynix (Apr. 5, 2021) (NETLIST SAMSUNG_EDTX00037749) |
| 4 | Attachment D to the Rebuttal Expert Report of Joseph C. McAlexander III (Dec. 23, 2023) |
| 5 | Samsung's Suppl. Objs./Resps. to Netlist's 1st Interrogs. (Nov. 20, 2023) |
| 6 | JEDEC Manual of Organization and Procedure (JM21V) (November 2023) |
| 7 | Netlist's Fourth Suppl. Objs./Resps. to Samsung's Second Interrogs. (Nov. 19, 2023) |
| 8 | Deposition Transcript of Hyun Joong "Johnny" Kim from *EDTX1* (Dec. 6, 2023) |
| 9 | Hearing Transcript from Oral Argument in the Ninth Circuit Appeal (Jun. 8, 2023) |
| 10 | Letter from Netlist to Micron (June 8, 2022) (NETLIST_SAMSUNG_EDTX00037348) |

## TABLE OF EXHIBITS TO SAMSUNG'S OPPOSITION

| # | Description |
|---|---|
| A | Exhibit 9 to Rebuttal Report of Lauren Kindler (Dec. 21, 2023) (excerpts) |
| B | Expert Report of David Kennedy (Nov. 20, 2023) (excerpts) |
| C | Deposition Transcript of Tobin Hobbs (Nov. 20, 2022) (excerpts) |
| D | Deposition Transcript of David Kennedy (Jan. 15, 2024) (excerpts) |
| E | Expert Report of John Halbert (Nov. 20, 2023) (excerpts) |
| F | ███████████████████████████ (NETLIST_SAMSUNG_EDTX00064073) |
| G | ███████████████████████████ (NETLIST_SAMSUNG_EDTX00064006) |
| H | Trial Transcript from *EDTX1* (public, excerpts) |
| I | Samsung's Suppl. Objs. & Resps. to Netlist's 1st Interrogs. (Nov. 20, 2023) (addl. excerpts) |
| J | Attachment A to McAlexander Initial Expert Report (2023-11-20) (excerpts) |
| K | Attachment B to McAlexander Initial Expert Report (2023-11-20) (excerpts) |
| L | Attachment C to McAlexander Initial Expert Report (2023-11-20) (excerpts) |
| M | Exhibit A-4 to Attachment A to McAlexander Initial Expert Report |
| N | Exhibit B-6 to Attachment B to McAlexander Initial Expert Report |
| O | Exhibit C-4 to Attachment C to McAlexander Initial Expert Report |
| P | Netlist's 4th Suppl. Objs./Resps. to Samsungs 2nd Interrogs. (Nov. 19, 2023) (addl. excerpts) |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| C.D. Cal. Case | *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-CV-00993 (C.D. Cal.) |
| *EDTX1* | *Netlist Inc. v. Samsung Electronics Co. Ltd.*, No. 2:21-CV-463 (E.D. Tex.) |
| JDLA | Joint Development and License Agreement |
| ██████ | ██████████████████████ |
| Ninth Circuit Appeal | *Netlist Inc. v. Samsung Elecs. Co.*, Ltd., No. 22-55209 (9th Cir.). |
| SK hynix agreement | Strategic Product Supply and License Agreement between SK hynix, Inc. and Netlist, Inc. (April 5, 2021) |

None of Netlist's arguments provide any legally sound reason to exclude any portion of Ms. Kindler's opinions. At best, Netlist's criticisms go to the weight of her opinions—which can be probed on cross-examination—not admissibility. The Court should entirely deny Netlist's motion.

## I.    MS. KINDLER'S COMPARABLE LICENSE ANALYSIS IS RELIABLE

### A.    Ms. Kindler's Evaluations of the JDLA and SK hynix Agreement Are Reliable

The Court should flatly reject Netlist's attempt to make way for its own expert's fantastical damages theory by asking this Court to prevent the jury from hearing evidence regarding what Samsung and SK hynix have ***actually*** paid for these very same patents. Ms. Kindler's analysis of these comparable licenses is exactly what the Federal Circuit has endorsed: she "begins with rates from comparable licenses and then 'account[s] for the differences in the technologies and economic circumstances of the contracting parties," by specifically analyzing the value assigned to the patents ***by Netlist***. *See Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015).

**Overview of Ms. Kindler's Approach to the JDLA and SK hynix Agreement:** Ms. Kindler methodically conducts apportionments of the JDLA and SK hynix Agreement to account for differences between the hypothetical negotiation and the agreements. *E.g.*, Ex. 1, ¶¶ 89, 100, 102-03.

***First***, consistent with Netlist's internal practices, *see* Ex. C at 100:11-16, Ms. Kindler begins with a grouping of Netlist's portfolio into families, focusing on the nine specific patent families that Netlist relied on in its licensing discussions and litigation, to conservatively assume that 100% of the value of Netlist's portfolio was spread among those families. Ex. 1, ¶ 89(g)(i), n.280 (citing Netlist's presentations to Samsung and Micron). Relying on Mr. McAlexander's technical analysis of each patent family's area of technology, technical scope, use in the accused products, and number of patents within the family (which the Court in *EDTX1* did not strike, *see EDTX1*, Dkt. 432 at 8), Ms. Kindler assesses the relative value of the technology claimed by the family of the asserted patents, and determines that at most, 40% of the value provided by the nine families can be attributed to the family

1

███████████████████████████████████████

to which the asserted patents' belong.[1]  *Id.*, ¶¶ 89(g)(i), 100(e)(i).

**Second**, she specifically addresses how Netlist valued the patents in the family to which the asserted patents belong, to determine that family should account for no more than ████ of the value of the portfolio.  Ex. 1, ¶¶ 89, 100.  Ms. Kindler considers that Netlist asserted at least 17 of those patents against third parties, excluding the three asserted patents, a metric which Netlist's own damages expert concedes is an important factor in determining the patents that drive a licensing negotiation. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████  She then looks to Netlist's representations as to patent value in negotiations with Samsung that led to the JDLA, and notes that Netlist identified ██████████

████████████████████████████████████████████

██████████████████"[2]  Ex. 1, ¶ 89(g)(i); Ex. A.

**Ms. Kindler's Economic Apportionment Is Based on How the Parties "Treated" the Asserted Patents:** Netlist's assertion that Ms. Kindler's analysis "does not consider the value assigned to the patents by the parties," or "consideration of how the parties to the license 'treated' the patents in question," Dkt. 355 at 1-2, ignores Ms. Kindler's detailed discussion of Netlist's assertion and licensing activities.  As discussed above, Ms. Kindler uses documents that Netlist authored, produced, and shared in licensing negotiations to derive the value placed on patents by the contracting parties.

---

[1] In arguing that Ms. Kindler improperly uses the same ████ value for the JDLA and SK hynix Agreement, Dkt. 355 at 2, Netlist ignores that these agreements both cover Netlist's entire portfolio and involve the two largest direct competitors for the same products, as Netlist's expert acknowledges. Ex. B, ¶¶ 253, 354; Ex. H at 710:15-19.  Logically, the technical apportionment would be the same.

[2] Despite relying on the 2015 presentation to Samsung as alleged evidence of knowledge of the asserted patents in its interrogatory responses, Ex. P at 18, Netlist now remarkably asserts that this presentation cannot be considered because it was created before two of the asserted patents existed, Dkt. 355 at 3.  Netlist ignores, however, that Ms. Kindler's apportionment analysis for the JDLA and SK hynix Agreement is based on the value of the patent **family** to which the asserted patents belong.

██████████████████████████████████████████

She concludes that, based on Netlist's characterization, it is reasonable and conservative to assign no more than ███ of the value of the patents within the family to the asserted patents. Ex. 1, ¶¶ 89(g)(i), 100(e)(i). Applying her ███ opinion to Mr. McAlexander's ███ technical apportionment, she conservatively calculates that no more than ███ of the total value of the nine patent families could be attributed to the asserted patents. *Id.* Her analysis specifically accounts for the value of non-asserted patents—for example, even if the asserted '417 and '608 patents had issued and ████████████ ██████ to Netlist in 2015 (which they were not), the asserted patents would still be matched and outnumbered by the other two seminal and high value non-asserted patents Netlist identified in the same family, Ex. A. *Cf. Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693-RWS-RSP, 2023 WL 8101872, at *4 (E.D. Tex. Nov. 21, 2023) (holding that an expert's comparable license opinions were permissible in view of *Apple v. Wi-LAN* where the expert specifically addressed the extent to which non-asserted patents contributed to the royalty rate).

**Ms. Kindler's Approach Is Consistent with *Apple v. Wi-LAN*:** Netlist's motion rests on a misguided interpretation of *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960 (Fed. Cir. 2022). In that case, the Federal Circuit vacated a verdict because Mr. Kennedy—Netlist's expert in this case, and Wi-LAN's expert in that case—artificially inflated the value of particular patents **by contradicting** the language of cited licenses, where the licenses "treated the asserted patents as chaff, not wheat." *See Id.* at 973 ("Mr. Kennedy's opinion that the asserted patents were **key patents** is untethered to the facts of this case."). In other words, ***no evidence*** supported the Wi-LAN expert's attempts to ***increase the value*** of asserted patents in contrast to the plain language of contracts. Here, however, Ms. Kindler apportions value to the asserted patents in view of specific evidence—she opines the patents were responsible for no more than ███ of the value of the JDLA and SK hynix Agreement based on documents from Netlist's own files that evidence Netlist's views on the relative values of its various (asserted and non-asserted) patents. Ex. 1, ¶ 89(g)(i), n.280; Ex. F; Ex. G. Ms. Kindler's

report thus includes a methodical apportionment based on Netlist's own indicators of value. Ex. 1, ¶¶ 89, 100. If Netlist believes Ms. Kindler understates the value of certain patents, it can raise that during cross-examination.

**Netlist Should Not Be Permitted To Withhold Negotiation Documents Regarding SK hynix While Arguing They Are Required:** In *EDTX1*, Netlist prevailed in excluding Samsung's damages expert's apportionment of the SK hynix agreement by arguing that he did not consider the value assigned to the patents by the parties during the negotiation. *See EDTX1*, Dkt. 426 at 230:2-232:4. Netlist now advances the same position—that Ms. Kindler should have considered negotiation documents exchanged between Netlist and SK hynix in this case—while at same time ***deliberately withholding and obstructing discovery into those same documents***. *See* Dkt. 199. Indeed, Samsung moved to compel negotiation documents from Netlist regarding SK hynix, and Judge Folsom—recognizing the inherent injustice of Netlist's position—recommended that Netlist be ordered to produce documents "showing any valuation or apportionment of value by Netlist or SK hynix to the patents asserted against Samsung in this case." Dkt. 377 at 9 ("[T]he Special Master finds that Samsung would be prejudiced if it had to respond to Netlist's *Daubert* arguments without the benefit of documents potentially showing patent valuation and apportionment of the SK Hynix license[.]"). Netlist has yet to produce such documents, but if it does, Samsung may seek leave to serve a supplemental report from Ms. Kindler, *see* Ex. 1, n.372, n.386. In the meantime, Netlist should not be permitted to use negotiation documents as a shield and a sword.[3]

---

[3] Samsung respectfully submits that neither *Apple v. Wi-LAN*, nor any other binding precedent requires consideration of the parties' negotiation history or any other parol evidence. *See Wi-LAN*, 25 F.4th at 973. Instead, the *Wi-LAN* court merely held that no parole evidence supported the expert's attempt to attribute special value to patents and to ignore the plain language of contracts. *Id.* Requiring patent damages experts to analyze parol evidence for every cited license would be unprecedented and unworkable. It would require trials within trials, and would allow self-serving communications to take precedent over actual agreements.

████████████████████████

**Ms. Kindler's Alternative Forward Citation Analysis Further Supports Her Opinions:**

Ms. Kindler's alternative "forward citation" analysis provides an additional basis for her apportionment of the JDLA and SK hynix Agreement that is specifically tied to the facts and has been accepted in this Court and others.  As Netlist concedes, this Court has repeatedly endorsed forward citation analyses, where they are conducted on a portfolio license that includes the asserted patents, just as Ms. Kindler has done here.[4]  *See, e.g.*, *U.S.A.A. v. PNC Bank N.A.*, No. 2:20-CV-00319-JRG-RSP, 2022 WL 1215242, at \*4-5 (E.D. Tex. Apr. 24, 2022); *Better Mouse Co. v. SteelSeries ApS*, No. 2:14-CV-198-RSP, 2016 WL 3611528, at \*3 (E.D. Tex. Jan. 5, 2016).  It does not matter whether the asserted patents had issued at the time the licenses were executed, *contra* Dkt. 355 at 3-4, rather the analysis considers what the subsequent and total number of citations to the patents reveal about their relative value compared to the portfolio.  *See U.S.A.A.*, 2022 WL 1215242, at \*4-5 ("This Court, and others, have stated that patent citation analysis can be a sufficiently reliable method [of estimating the value of a patent].").  Netlist criticizes Ms. Kindler's decision to analyze citations of patents by family instead of only individually, but courts have required such an approach to determine a reliable upper-bound for asserted patents.  *E.g.*, *Better Mouse*, 2016 WL 3611528, at \*3 (finding counting cites to related patents unnecessary where there was no showing that the difference in outcomes would be significant); *see also Oracle Am., Inc. v. Google, Inc.*, No. C 10-03561 WHA, 2012 WL 877125, at \*2 (N.D. Cal. Mar. 15, 2012) (finding forward citation analysis unreliable where expert failed to count citations to patents that shared the same specification).  By contrast, Ms. Kindler performed a forward citation analysis that addresses the asserted patents as compared to Netlist's overall portfolio, **_as well as_** a

---

[4] *Realtek Semiconductor Corp. v. LSI Corp.,* No. C-12-03451-RMW, 2014 WL 46997, at \*3 (N.D. Cal. Jan. 6, 2014), on which Netlist relies, is distinguishable from Ms. Kindler's analysis.  In *Realtek*, the court acknowledged patent citation as an acceptable methodology, but did not allow it there because the expert did not use the family values calculated to assess the value of the asserted patents.  *Id.*, at \*3.  Here, Ms. Kindler does both, and relies on her citations to patent families to give an upper bound of ███. Ex. 1, ¶¶ 89(g)(ii), 100(e)(ii).

family analysis. *See* Ex. 1, ¶ 89(g)(ii). Ms. Kindler's methodology is proper and reliable.

**Rule 403 Does Not Warrant Exclusion:** The Court should reject Netlist's last-ditch attempt to exclude Ms. Kindler's apportionment opinions under Fed. R. Evid. 403, in which Netlist incorrectly asserts that Ms. Kindler "does not even use [her JDLA apportionment analysis] to come up with a rebuttal damages number," *see* Dkt. 355 at 4. As Ms. Kindler explains, the scope of the JDLA is one of many factors she accounts for in her evaluation of the agreement. Her opinion is that the narrower scope of the license at the hypothetical negotiation counterbalances the other considerations Netlist claims must be taken into account. Ex. 1, ¶ 89(e)(viii). Thus, although it is not applied mathematically, Ms. Kindler clearly "use[s]" the analysis to support her ultimate opinion on damages. *Contra* Dkt. 355 at 4. Moreover, the Court should not exclude Ms. Kindler's opinions that are supported by Netlist's patent assertion activities under Rule 403, *contra* Dkt. 355 at 2. Samsung is mindful of the Court's standing order on motions *in limine* regarding other litigation. Thus, Samsung is prepared to present Ms. Kindler's analysis without mentioning other litigation—e.g., by indicating that Netlist has alleged infringement of certain patents, without specifically mentioning litigation.

### B.    Ms. Kindler's Adjustments to the JDLA and SK hynix Agreement Are Reliable

Ms. Kindler's adjustments to the JDLA and SK hynix Agreement's rates are based on reliable evidence and methodology, and are anything but "plucked out of thin air," *contra* Dkt. 355 at 4-5.

**Ms. Kindler Accounts for Differences Between the SK hynix Agreement and the Hypothetical Negotiation:** To determine an adjusted rate for the SK hynix Agreement, Ms. Kindler specifically considers and responds to Mr. Kennedy's incorrect opinion that Netlist obtained economic value under the supply provision that makes it impossible to unpack. Ex. 1, ¶ 100(d)(iv); *cf.* Ex. B, ¶ 363. After opining on numerous other reasons that the existence of the supply provision in the SK hynix Agreement does not negate the agreement's usefulness in deriving a reasonable royalty rate, Ms. Kindler specifically calculates the maximum estimated profits to Netlist under Mr. Kennedy's

flawed analysis. Ex. 1, ¶ 100(d)(iv). Then, Ms. Kindler appropriately offsets this value because the total compensation would still be counterbalanced by the narrower scope of the license at the hypothetical negotiation. *Id.* She also addresses the assumption of infringement and validity at the hypothetical negotiation. Dkt. 355 at 5. Specifically, Ms. Kindler explains that despite the assumption at the hypothetical negotiation, "there is no evidence that Netlist viewed its patents as invalid or not infringed by SK hynix," nor is there evidence "that the amount Netlist was willing to accept from SK hynix was reduced by uncertainty regarding validity or infringement." Ex. 1, ¶ 100(h). Ms. Kindler opines that the assumption is counterbalanced by the significantly narrower license grant at the hypothetical negotiation. *Id.* She, thus, specifically addresses the impact of the differences Netlist claims she ignores in arriving at her opinion on how the SK hynix payment can be adjusted.

Unlike *LaserDyanmics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012), on which Netlist relies, Ms. Kindler's approach is not "arbitrary" or "untethered from the patented technology." Instead, her ███████████ " reduction to the amount paid by SK hynix to account for the value of patents other than the asserted patents is specifically tied to Mr. McAlexander's technical contribution analysis, which concludes that the patents asserted against SK hynix have a greater technical contribution than the patents asserted here. Ex. 1, ¶ 102(b). Further, her forward citation analysis independently concludes that they also have a greater citation intensity. *Id.* These two quantitative analyses are corroborative and directly support Ms. Kindler's ███████████ .

**Ms. Kindler Accounts for Differences Between the JDLA and the Hypothetical Negotiation:** In determining her adjusted rate for the JDLA, Ms. Kindler similarly addresses each of the differences between the JDLA and the hypothetical negotiation, *contra* Dkt. 355 at 6. Netlist misstates her conclusion, which is not that the parties "would simply agree to an $8 million lump sum royalty," Dkt. 355 at 6, but rather that the relevant range would be ███████████ , with the higher end of the range expressly taking into account Netlist's misguided view on the value of the

supply provision in the JDLA. Ex. 1, ¶ 91. Netlist is free to explore Ms. Kindler's adjustments on cross-examination, but her methodology is reliable and does not warrant exclusion.

### C.    Ms. Kindler's Analysis of Samsung's Inbound Licenses Is Reliable

All of Netlist's arguments regarding Ms. Kindler's analysis of Samsung's inbound comparable licenses go to weight, not admissibility.[5] Indeed, this Court has recognized that "[t]he comparability is an issue of fact for the jury to determine, not a reason to exclude the testimony." *Affinity Labs of Texas, LLC v. Ford Motor Co.*, No. 1-12-CV-580, 2014 WL 12638158, at *2 (E.D. Tex. Aug. 22, 2014).

**Ms. Kindler's Comparability Analysis Relies on Mr. McAlexander's Unchallenged Technical Comparability Opinion:** Importantly, Netlist does not seek to exclude Mr. McAlexander's technical comparability assessment for Samsung's inbound licenses, on which Ms. Kindler relies. *See* Dkt. 359; Ex. 1, ¶¶ 217, 223(b). Netlist nonetheless faults Ms. Kindler for concluding that the licenses are technically comparable, based on Mr. McAlexander's opinions, because she does not identify evidence of technical comparability for ***all*** of the patents in the portfolio licenses. Dkt. 355 at 6-7. However, Netlist conveniently ignores that Mr. McAlexander specifically considers the scope of other technologies covered by the agreements. *See generally* Ex. 4. That analysis is more than the law requires.[6] *See e.g.*, *Bio-Rad Labs, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373-74

---

[5] Although Netlist's motion seeks to exclude Ms. Kindler's comparability analysis of Samsung's inbound licenses, Netlist's request for relief seeks to exclude paragraphs that are not related to that analysis directly. The Court should not consider the following paragraphs in Netlist's request for relief: ¶¶ 45-48 (DRAM market), 53-57(asserted patents), 61-63 (JEDEC, RAND), 67-70 (RAND).

[6] Netlist's discussion of *ADASA Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022), misstates the facts on which the court based its holding. Dkt. 355 at 7. The expert in that case did not undertake any "meaningful comparison of the licensed technology with the invention disclosed by the [asserted] patent." *Id.* Instead, he stated only that the licensed portfolios included "RFID technology," which was not enough to describe their relationship to the asserted patent. The court found that "RFID technology" was too vague of a category to serve as a meaningful comparison point to the accused technology. Mr. Alexander undertakes a more detailed analysis, describing patents "related to memory interfaces and/or buffer management for DRAM applications," "stacking techniques that [are] used to achieve higher memory capacities," etc. *See, e.g.*, Ex. 4, ¶¶ 36, 43, 48, 78.

(Fed. Cir. 2020) (finding that "baseline comparability" is all that is required); *ActiveVideo Networks, Inc. v. Verizon Comm'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) (allowing an expert to rely on a license that did not cover the technologies in the case, holding that the "degree of comparability" is a "factual issue[] best addressed by cross examination and not by exclusion"). Any differences between the licensed patents in the ▇ comparable agreements and the asserted patents can be handled through cross-examination of Ms. Kindler or Mr. McAlexander, or through testimony of Netlist's experts.

**Ms. Kindler's Economic Analysis Accounts for Differences with the Hypothetical Negotiation:** Ms. Kindler's comparability analyses also accounts for the economic differences between the agreements and the hypothetical negotiation. Ex. 1, ¶¶ 105-28. *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308 (Fed. Cir. 2010), on which Netlist relies, Dkt. 355 at 6-7, is not relevant to Ms. Kindler's analysis. In *Wordtech*, the plaintiff attempted to introduce its own licenses with other companies, but "***offered no expert opinion on damages***," and provided no analysis of the comparability of the licenses. *Id.* at 1319-20. The plaintiff offered "little more than a recitation of royalty numbers." *Id.* (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009)). Unlike that case, Ms. Kindler provided an expert opinion based on the facts of the agreements to assist the jury in evaluating the probative value of the royalty amounts and the agreements, including opining that the covered Samsung sales would be the same or broader in the agreements as compared to the hypothetical negotiation. Ex. 1, ¶¶ 215-228.

**The Record Supports Ms. Kindler's Adjustments to Certain of Samsung's Licenses:** Netlist's critiques of Ms. Kindler's ultimate "adjustments" to each of the ▇ comparable licenses, *see* Dkt. 355 at 8-9 (challenging Ex. 1, ¶¶ 108, 113, 127), are nothing more than disagreement over the relevant applicable facts—not Ms. Kindler's methodology. Dkt. 355, 8-9. Ms. Kindler articulates the bases for each of her adjustments (e.g., to account for geographic scope), and applies them to the facts of the case *as required by the Federal Circuit*. *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308,

████████████████████████

1330 (Fed. Cir. 2014) (A party must "account for differences in the technologies and economic circumstances of the contracting parties."). The jury should be allowed to hear testimony on Ms. Kindler's testimony and "decide for itself what to accept or reject." *Id.*

**The Court Should Not Exclude Ms. Kindler's Reliance on the** ███████ **License:** The Court should reject Netlist's request to exclude Ms. Kindler's *rebuttal* discussion of the ██████ agreement. At the outset, Mr. Kennedy addresses the ████████ agreement in his *opening* report, which belies any argument that Netlist was somehow prejudiced. *See* Ex. B, ¶¶ 423-426. Indeed, Samsung explained in its interrogatory responses that Netlist "bears the burden of establishing the amount of its alleged damages," and that Samsung "will respond in its expert rebuttal report concerning alleged damages, which Samsung incorporates by reference herein" if "Netlist attempts to meet its burden by disclosing an untimely calculation of alleged damages via the report of any retained expert witness or witnesses." Ex. I at 126. In its response on comparable licenses, Samsung explained that it would rely on its "forthcoming expert reports" for the identification of licenses. Ex. 5 at 91. And, although Samsung identified certain licenses it believed to be comparable in its interrogatory responses, Ms. Kindler conducted an independent analysis and opined that one additional license— ██████—is comparable. Ex. 1, ¶¶ 107-108. Samsung produced the ████████ agreement during fact discovery, and Netlist had an opportunity to question Samsung's witnesses about it. This is in stark contrast to Netlist's failure to identify the theories on which it bases its damages case as set forth in Samsung's motion to strike Mr. Kennedy's opinions. Dkt. 346.

## II.    MS. KINDLER'S OTHER OPINIONS ARE PROPER

### A.    Ms. Kindler's RAND Opinions Are Relevant and Reliable

The Court should reject Netlist's attempt to avoid discussion of RAND obligations, as it hinges on its flawed motion for summary judgment that the asserted patents are not essential (Dkt. 356). As Samsung explains in its response to that motion, Mr. McAlexander's opening report explains

10

that Netlist relies on DDR4 standards for every element of at least one asserted claim of each of the asserted patents. *See* Ex. J, ¶¶ 206-28; Ex. K, ¶¶ 193-203, 208-11; Ex. L, ¶¶ 323-34; Ex. M; Ex. N; Ex. O; Ex. 1, ¶ 67. Netlist cannot avoid the consequences of asserting patents that it has identified as SEPs (including at least in its letter of June 2022, *see* Dkt. 374). Because Ms. Kindler's analysis must assume infringement (and thus, essentiality), she addresses Netlist's RAND obligations based on Mr. McAlexander's opinion on essentiality. Ex. 1, ¶¶ 67, 230-34. It is Netlist that seeks to have it both ways, by framing its infringement case on compliance with standards while attempting to avoid discussion of JEDEC and RAND. Ms. Kindler should be permitted to expose the unfair and discriminatory nature of Netlist's damages demand by presenting RAND benchmarks to the jury.[7] Indeed, the Federal Circuit has recognized a need to properly instruct the jury on a patentee's RAND obligations in the context of a reasonable royalty determination. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1231 (Fed. Cir. 2014) ("A RAND commitment limits the market value to (what the patent owner can reasonably charge for use of) the patented technology. The court therefore must inform the jury what commitments have been made and of its obligation (not just option) to take those commitments into account when determining a royalty award.").[8]

## B.    Ms. Kindler's References to Other Litigation and IPRs Are Relevant Rebuttal

Ms. Kindler's discussion of facts related to other litigations and IPRs are relevant to her damages opinions—Samsung certainly has no intent to violate this Court's standing order on motions *in limine*. However, an expert report is required to set forth the bases for an expert's opinions, even if those bases may implicate facts about other litigations. Samsung is prepared to present Ms. Kindler's

---

[7] Although Ms. Kindler's opinions are also relevant to equitable defenses properly decided by the Court, that does not change the fact that they are relevant to damages. *Contra* Dkt. 355 at 11.

[8] Although Netlist seeks to strike Ms. Kindler's RAND analysis, its motion sweeps in other discussions of JEDEC, including as it relates to at least *Georgia Pacific* Factors 8 and 13, which address JEDEC contributions and the value of standardization in determining the portion of profits that should be credited to the invention. *See, e.g.,* Ex. 1, ¶¶ 61-64, 151, 167-174.

opinions without explicitly mentioning other litigations or IPRs.

**Discussion of the C.D. Cal. Case Status (¶¶ 30-34):** The state of proceedings in the C.D. Cal. Case is relevant context for Ms. Kindler's damages opinions, and paragraphs 30-34 merely explain why "[f]or the purposes of [her] damages analysis, [she has] assumed that the JDLA was terminated on July 15, 2020, and Samsung is not licensed under Netlist's patents . . . (contrary to Samsung's position, and solely for purposes of performing my damages analysis, as I am required to assume liability in offering an opinion on damages)." Ex. 1, ¶¶ 30-34. Samsung is cognizant that the discussion of prior litigations is not a matter that should be presented before the jury, but that is no basis to strike relevant context from Ms. Kindler's report.

**Discussion of the C.D. Cal.'s Nominal Damages (¶ 89(e)(ii)):** Ms. Kindler's discussion of the C.D. Cal. court's award of nominal damages related to the supply provision, Ex. 1, ¶¶ 89(e)(ii), is appropriate if Mr. Kennedy is permitted to present his speculative and inflated valuation of § 6.2 of the JDLA. *See* Ex. B, ¶¶ 253-341. However, this Court in *EDTX1* correctly held that testimony quantifying the value of the supply agreement of the JDLA has no place in a patent infringement case. *See EDTX1*, Dkt. 427 at 216:24-218:3; *id.*, Dkt. 432 at 11. Should the court exclude Mr. Kennedy's discussion of the alleged value of § 6.2, then Samsung need not reference the C.D. Cal. verdict.

**Discussion of Offer Mentioned in Ninth Circuit Brief (¶ 245):** Ms. Kindler references the Ninth Circuit appellate briefing only to say: "I understand that in briefing before the Ninth Circuit, Netlist stated, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮" Ex. 1, ¶ 245. Ms. Kindler will not mention "briefing before the Ninth Circuit" before the jury, but she should be permitted to discuss Netlist's prior offers and statements.

**Discussion of SK hynix Litigation (¶¶ 92-93):** The patents Netlist chose to assert against SK hynix, and the patents on which SK hynix filed IPRs, are relevant to Ms. Kindler's discussion of how to apportion the SK hynix Agreement down to the asserted patents. Ex. 1, ¶¶ 92-93; *see also id.*,

12

¶ 100(e).  Indeed, Mr. Kennedy admits that patent assertion history is an indicator of value by the licensor.  *See* Ex. B, ¶¶ 230-31; Ex. D at 184:13-24.

  **Discussion of *EDTX1* Patents (¶¶ 236-37):**  Ms. Kindler's references to the *EDTX1* patents and related IPRs are relevant to address Mr. Kennedy's failure to apportion to the value provided by other technologies (including the prior art), and royalty stacking.  Ex. 1, ¶¶ 236, n.864, 237, 276, nn.940-41.  Ms. Kindler should be permitted to inform the jury that—despite the fact that Mr. Kennedy attributes the entirety of a price differential to alleged speed and configuration benefits of the asserted patents—Mr. Kennedy has opined that other patents account for those same benefits, before those patents were found to be invalid in IPR proceedings.  *Id.*  Again, Ms. Kindler can present these opinions in a way that does not reference the *EDTX1* case and IPRs directly.

  C. **Samsung's JEDEC Contributions and Patents Are Relevant to Apportionment**

  Samsung's JEDEC contributions and patents are relevant to apportionment of the alleged benefits of the asserted patents, and Ms. Kindler's analysis provides a nexus to the technology at issue, *contra* Dkt. 355 at 12-13.  The DDR4 standards on which the accused products are based are the result of a massive cooperative development effort of dozens of companies through JEDEC.  *See, e.g.*, Ex. E, ¶ 22.  Mr. Kennedy acknowledges the relevance of JEDEC, having devoted an entire section of his report to "JEDEC and Samsung."  Ex. B, § 5.B.2.  Ms. Kindler should be permitted to rebut his opinions, and to address the specific contributions by Samsung to the relevant JEDEC standards (and Samsung's patents) in assessing the relative value of the asserted patents to the accused products.  Ex. 1, ¶¶ 170-174; *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1232 (Fed. Cir. 2014) ("As with all patents, the royalty rate for SEPs must be apportioned to the value of the patented invention.").  Indeed, contrary to Netlist's assertion that Ms. Kindler fails to identify any nexus between the contributions made by Samsung to the standards and the technology accused in this case, Dkt. 355 at 12, her report relies on Mr. Halbert's analysis specific to "JEDEC DDR4 LRDIMM contributions,"

"DDR4 registered clock driver . . . and data buffer . . components," and Samsung's potentially essential patents relating to JEDEC standards on DDR or DIMMs, to demonstrate that Mr. Kennedy inflates the "portion of the realizable profit credited to the invention as distinguished from non-patented elements." Ex. 1, ¶ 170; *id.*, ¶¶ 167-174. The Court should deny this portion of Netlist's motion—as it did in *EDTX1*, *see EDTX1*, Dkt. 432 at 5 ("The motion was DENIED as to . . . the alleged JEDEC contributions . . . , [and] references to Samsung's patent portfolio . . . .").

### D. If the Court Allows Mr. Kennedy To Discuss the JDLA's Supply Provision, Ms. Kindler Should Be Permitted To Rebut His Opinions

The Court should not deprive Samsung of the opportunity to present a rebuttal to Mr. Kennedy's opinions about the JDLA's supply provision. To be sure, the alleged breach and termination of the JDLA are not properly before the jury in this case. *See, e.g.*, Dkt. 278 at 4-5 (explaining "this Court will not make comment further while that issue [whether "the JDLA is currently 'in full force and effect'"] is squarely before another court"). However, should the Court deny this portion of Samsung's *Daubert* motion regarding Mr. Kennedy, *see* Dkt. 346 at 13-14, it should permit Ms. Kinder to offer a rebuttal. Indeed, Mr. Kennedy's report contains 30 pages in an attempt to value § 6.2 of the JDLA. Ex. B, ¶¶ 253-341. Ms. Kindler's analysis of the supply provision is only in rebuttal to Mr. Kennedy's improper opinions. And her reliance on corroboratory documentary evidence such as negotiation documents to opine on the economic implication of the $8 million payment is no more an "[i]nterpretation of contractual terms" than any damages expert's analysis of comparable licenses where such evidence is available, *contra* Dkt. 355 at 14.

### E. Ms. Kindler Does Not Opine on Netlist's or SK hynix's Subjective Beliefs

There is nothing improper about Ms. Kindler's analysis of the value of SK hynix Agreement, including Netlist's statements about it. *Contra* Dkt. 355 at 14-15. Far from opining on Netlist's "state of mind," Ms. Kindler simply points out that Netlist's statements to the SEC are consistent with her view that the consideration in the agreement was a "license fee of $40 million," and not the

███████████████████████████████████████████

agreement's supply provision.  Ex. 1, ¶¶ 98-100.  ████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████.  This is not "impermissible

testimony on the subjective beliefs of Netlist and SK hynix," *contra* Dkt. 355 at 15, but rather evaluation

of objective factual information to support her damages opinions.  *Cf. GREE, Inc. v. Supercell Oy*, No.

2:19-CV-00070-JRG-RSP, 2020 WL 4288350, at *3 (E.D. Tex. July 27, 2020) (cited in Dkt. 355 at 15)

("Experts can opine, however, on the underlying facts that may show a party's state of mind.").

### F.    Ms. Kindler Can Consider Netlist's "RAND" Offer

Netlist cannot shield the record of its $6/unit offer merely by stamping it as "F.R.E. 408."

*Contra* Dkt. 355 at 15.  Rule 408 does not prohibit use of settlement evidence outside of proving

liability on the claim at issue, and it explicitly states "[t]he court may admit this evidence for another

purpose."   Compliance with RAND obligations is precisely the "other purpose" contemplated.

Indeed, Mr. Kennedy addresses the very same letter.  Ex. B, ¶¶ 60, 662.  Further, as this district has

recognized, offers are particularly important to consider as part of whether a party has satisfied its

RAND obligations.   *See MOSAID Techs. Inc. v. Micron Tech., Inc.*, No. 2:06-CV-302-DF, 2008 WL

11344763, at *6 (E.D. Tex. June 18, 2008) ("Disclosure of past settlements ***and negotiations*** are thus

highly relevant to whether MOSAID seeks licenses that abide by its RAND obligations.").

### III.    CONCLUSION

Thus, the Court should deny Netlist's motion to strike portions of Ms. Kindler's report.


Dated:  January 30, 2024                          Respectfully submitted,

                                          By:    */s/ Daniel A. Tishman*
                                          _____

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:       (903) 934-8450
Facsimile:       (903) 934-9257

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile:   (415) 955-6571

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

███████████████████████████████████

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on January 30, 2024.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.


*/s/ Daniel A. Tishman*

██████████████████████████████████

███████████████████████████████████

███████████████████████

██████████████

17