UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>   Plaintiff,<br><br> v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>   Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>   Plaintiff,<br><br> v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.,<br><br>   Defendants. | Civil No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANTS' OPPOSITION TO NETLIST'S MOTION TO STRIKE CERTAIN OPINIONS OF DEFENDANTS' EXPERT MR. JOHN HALBERT (DKT 358)

██████████████████████████

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

TABLE OF EXHIBITS ................................................................................................. iv

TABLE OF ABBREVIATIONS ..................................................................................... v

I. INTRODUCTION ............................................................................................... 1

II. ARGUMENT ....................................................................................................... 1

    A. Mr. Halbert's Opinions Placing Netlist's Behavior in the Context of JEDEC's Customs and Practices Are Relevant and Reliable .................................... 1

    B. Mr. Halbert's Opinions Regarding Netlist's False Claims of Standard Essentiality Are Relevant and Reliable ..................................................... 3

    C. Mr. Halbert's Opinions Regarding the Contributions of Netlist and Others to JEDEC Standards Are Relevant and Reliable ........................... 6

    D. Mr. Halbert's Opinion Regarding the Public Availability of JEDEC Documents Are Admissible ...................................................................... 9

    E. Mr. Halbert's Opinions on Available Alternatives Were Timely Disclosed and Sufficiently Supported .................................................... 13

III. CONCLUSION ................................................................................................... 15

\* In this brief, all emphasis is added unless noted otherwise.

████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BMC Software, Inc. v. Servicenow, Inc.*,
  No. 2:14-CV-903, 2016 WL 367251 (E.D. Tex. Jan. 29, 2016)..........................................................15

*Boral v. Odyssey Pictures Corp.*,
  No. 4:14-CV-44, 2015 WL 993241 (E.D. Tex. Mar. 4, 2015) .............................................................1

*C4I Ltd. v. Hughes Network Sys., LLC*,
  No. 2:15-CV-37, 2017 WL 2651618 (E.D. Tex. June 20, 2017) .......................................................15

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*,
  291 F.3d 1317 (Fed. Cir. 2002) ........................................................................................................11

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014).......................................................................................................6, 7

*Freeny v. Murphy Oil Corp.*,
  No. 2:13-CV-791, 2015 WL 11108703 (E.D. Tex. May 29, 2015) ...................................................15

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
  No. 16-CV-134, 2017 WL 2869344 (E.D. Tex. Apr. 20, 2017) .......................................................15

*Gree, Inc. v. Supercell Oy*,
  No. 2:19-CV-70-JRG, 2020 WL 4288350 (E.D. Tex. July 27, 2020) .................................................2

*Huawei Techs. Co. Ltd. v. Verizon Commc'ns, Inc.*,
  No. 2:20-CV-30-JRG, Dkt. 462 (E.D. Tex. July 2, 2021) ..................................................................2

*Indus. Rsch. Org. v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015)..........................................................................................................6

*Lectec Corp. v. Chattem, Inc.*,
  No. 5:08-CV-130, 2011 WL 13079933 (E.D. Tex. Jan. 4, 2011) .......................................................8

*Nanology Alpha LLC v. WITec Wissenschaftliche Instrumente*,
  No. 6:16-CV-445, 2018 WL 4289342 (E.D. Tex. July 11, 2018) .....................................................15

*Primrose Operating Co. v. Nat'l Am. Ins. Co.*,
  382 F.3d 546 (5th Cir. 2004)....................................................................................................... 12, 15

*Realtime Data, LLC v. T-Mobile, U.S.A., Inc.*,
  No. 6:10-CV-493, 2013 WL 12149180 (E.D. Tex. Feb. 8, 2013) ....................................................10

*Slack v. Outback Steakhouse of Fla., LLC,*
    No. 6:20-CV-103, 2022 WL 1177892 (E.D. Tex. Apr. 20, 2022) ...................................................12

*TravelPass Grp., LLC v. Caesars Ent. Corp.,*
    No. 5:15-CV-153, 2021 WL 6333018 (E.D. Tex. Oct. 18, 2021) ...................................................5

*Traxcell Techs., LLC v. Huawei Techs. USA Inc.,*
    No. 2:17-CV-42, 2019 WL 6002202 (E.D. Tex. May 1, 2019).........................................................9

*Tyco Healthcare Grp., LP v. Applied Med. Rsch. Corp.,*
    No. 9:06-CV-151, 2009 WL 5842063 (E.D. Tex. Mar. 30, 2009) ...................................................1

**Other Authorities**

Fed. R. Civ. P. 33 ......................................................................................................................................8

Fed. R. Evid. 703 ...........................................................................................................................2, 9, 14

**TABLE OF EXHIBITS**

| # | Description |
|---|---|
| 1 | 2023-05-30 Bench Trial Transcript in *EDTX1* (*EDTX1*, Dkt. 538) (excerpts) |
| 2 | 2023-11-19 Netlist's Fourth Supplemental Responses and Objections to Samsung's Second Set of Interrogatories Nos. 3-22 (excerpts) |
| 3 | 2024-01-11 Gillingham Deposition Transcript (excerpts) |
| 4 | 2023-12-21 Gillingham Corrected Rebuttal Report (excerpts) |
| 5 | 2023-11-20 Mangione-Smith Opening Report (excerpts) |
| 6 | Certain Memory Modules and Components Thereof, Inv. No. 337-TA-1089, USITC Pub. 1535894 (Apr. 21, 2020) (Comm'n Op.) |
| 7 | 2023-04-17 Trial Transcript, Volume 2 in *EDTX1* (*EDTX1*, Dkt. 488) (excerpts) |
| 8 | 2023-04-18 Trial Transcript, Volume 3 in *EDTX1* (*EDTX1*, Dkt. 490) (excerpts) |
| 9 | 2023-04-19 Trial Transcript, Volume 4 in *EDTX1* (*EDTX1*, Dkt. 492) (excerpts) |
| 10 | 2023-04-21 Trial Transcript, Volume 6 in *EDTX1* (*EDTX1*, Dkt. 496) (excerpts) |
| 11 | 2023-04-03 Pretrial Conference Transcript, Volume 1 in *EDTX1* (*EDTX1*, Dkt. 426) (excerpts) |
| 12 | 2023-01-31 Halbert Rebuttal Report in *EDTX1* |
| 13 | 2023-11-20 Kennedy Report (excerpts) |
| 14 | 2023-12-21 Kindler Report (excerpts) |
| 15 | 2023-11-20 Samsung's Supplemental Responses and Objections to Netlist's Amended First Set of Interrogatories Nos. 1-20 (excerpts) |
| 16 | 2023-04-13 Defendants' P.R. 303 Invalidity Contentions (excerpts) |
| 17 | 2023-09-08 Samsung Defendants' P.R. 3-3 Invalidity Contentions Regarding U.S. Patent No. 10,268,608 (excerpts) |
| 18 | Exhibit D18 to the 2023-09-08 Samsung Defendants' P.R. 3-3 Invalidity Contentions Regarding U.S. Patent No. 10,268,608 in View of JEDEC SDRAM/DIMM Proposals and Minutes (excerpts) |
| 19 | JESD82-7A, October 2004 (SAM-NET-293_00015577) |
| 20 | 2023-10-30 Samsung Defendants' Objections and Responses to Plaintiff Netlist's Notice of Deposition Pursuant to Rule 30(b)(6) (excerpts) |
| 21 | 2023-11-09 Micron's Objections and Responses to Notices of Deposition Pursuant to Rule 30(b)(6) (excerpts) |
| 22 | 2023-11-02 Netlist's Objections and Responses to Samsung Defendants' First and Second Notices of Deposition to Plaintiff Pursuant to Rule 30(b)(6) (excerpts) |
| 23 | 2020-06-06 Declaration of John Halbert in *Inter Partes* Review IPR20200-01042 |
| 24 | Exhibit C to 2023-11-06 Samsung's Supplemental Responses and Objections to Netlist's Amended First Set of Interrogatories Nos. 1-20 (excerpts) |
| 25 | 2024-01-22 Micron's Corrected Sixth Supplemental Responses and Objections to Netlist's First Set of Amended Interrogatories Nos. 1-20 (excerpts) |
| 26 | 2024-01-22 Micron's Corrected Second Supplemental Responses and Objections to Netlist's Second Set of Amended Interrogatories Nos. 21-31 (excerpts) |
| 27 | 2023-11-20 McAlexander Opening Report (excerpts) |

████████████████████████

### TABLE OF ABBREVIATIONS

| Abbreviation | Description |
| --- | --- |
| '912 patent | U.S. Patent No. 7,619,912 |
| '339 patent | U.S. Patent No. 10,949,339 |
| '918 patent | U.S. Patent No. 11,016,918 |
| '054 patent | U.S. Patent No. 11,232,054 |
| ITC | United States International Trade Commission |
| *EDTX1* | *Netlist Inc. v. Samsung Elecs. Co.*, No. 2:21-CV-463 (E.D. Tex.) |

## I.    INTRODUCTION

Mr. Halbert's opinions were timely disclosed during discovery, are reliable, and are highly relevant to the issues in this case.  Netlist's motion should therefore be denied for the reasons Netlist's similar motion was denied in *EDTX*1.  *EDTX1*, Dkt. 207; *EDTX1*, Dkt. 432 at 4 (denying motion).

## II.    ARGUMENT

### A.    Mr. Halbert's Opinions Placing Netlist's Behavior in the Context of JEDEC's Customs and Practices Are Relevant and Reliable

Netlist asks the Court to strike three paragraphs of Mr. Halbert's opening report regarding Netlists behavior at JEDEC as somehow improper testimony on Netlist's state of mind; but this misreads Mr. Halbert's report.  Dkt. 358 at 1-2; Dkt. 358-2, ¶¶ 51, 56-57.  Rather, Mr. Halbert offers opinions putting Netlist's activity into the context of JEDEC's customs and practices as he understands them from his nearly 20-year tenure at JEDEC.  *See* Dkt. 358-2, ¶¶ 5-6, 18-59; *Boral v. Odyssey Pictures Corp.*, No. 4:14-CV-44, 2015 WL 993241, at *3 n.1 (E.D. Tex. Mar. 4, 2015) ("expert testimony regarding the customs and practices of an industry is well-established as acceptable"); *Tyco Healthcare Grp., LP v. Applied Med. Rsch. Corp.*, No. 9:06-CV-151, 2009 WL 5842063, at *3 (E.D. Tex. Mar. 30, 2009).  Based on his first-hand experience in the industry, as well as numerous contemporaneous JEDEC documents, Mr. Halbert concludes that certain actions would be inconsistent with JEDEC's customs and practices.  ███████ ███████████████

██████████████████████████████████████████████████████

██████████████████████████████ ████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████

Mr. Halbert does not purport to offer opinions on Netlist's state of mind.  Dkt. 358 at 1.  For example, ¶ 56 of Mr. Halbert's report sets forth his understanding of the factual circumstances

███████████████████████████

surrounding Netlist's JEDEC departure.  Dkt. 358-2, ¶ 56.  Each statement in that paragraph is supported by documentary evidence.  *Id.*  An expert's statement of facts is not a speculative opinion.

Mr. Halbert also did not speculate that Netlist's decisions were "motivated by its patent litigation strategies" as Netlist contends.  Dkt. 358 at 1.  Rather, Mr. Halbert opines that ***if*** Netlist left JEDEC to enforce its patents through litigation, or sought to obtain and enforce patents covering JEDEC-based technologies—conclusions the jury is free to reach—those types of activities would be counter to the rules, practices, and spirit of JEDEC.  Mr. Halbert's statement that such activity was ████████████████████████████████████████████ is not pejorative (*see* Dkt. 358 at 3), but rather a factual conclusion based on his nearly two decades of experience in JEDEC.  *Gree, Inc. v. Supercell Oy*, No. 2:19-CV-70-JRG, 2020 WL 4288350, at *3 (E.D. Tex. July 27, 2020) ("Experts can opine . . . on the underlying facts that may show a party's state of mind.").  This Court has held that such opinions are proper expert testimony.  *See Huawei Techs. Co. Ltd. v. Verizon Commc'ns, Inc.*, No. 2:20-CV-30-JRG, Dkt. 462, at 7-10 (E.D. Tex. July 2, 2021) (denying motion to strike defendant's expert where the expert's report "makes clear that his opinions [were] based on whether Huawei's behaviors were consistent with how good faith RAND negotiations are understood in the industry, assuming retaliatory intentions").  Mr. Halbert's reliance on his personal knowledge to form those opinions is not speculative and such use is permitted in rendering expert opinions.  Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or ***personally observed***.").

Netlist's further suggestion that Mr. Halbert will run afoul of this Court's rulings and guidance in *EDTX1* is misplaced.  Dkt. 358 at 1-3.  Mr. Halbert's opinions directly align with the Court's prior directive, as he "cabin[ed] his testimony about the JEDEC experience with his personal experience and his personal knowledge."  *See* Dkt. 358 at 3.  Netlist does not dispute that Mr. Halbert is an expert

███████████████████████████████████████████████

in JEDEC and thus his statements placing Netlist's actions in the context of JEDEC's customs and practices are proper expert opinion.  Dkt. 358 at 3; Ex. 1 at 8:23-9:5.

Contrary to Netlist's assertion, Mr. Halbert's opinions on these subjects are highly relevant to many issues in this case, including damages, willfulness, infringement, and Defendants' equitable defenses. ██████████████████████████████████████████████

████████████████████████████████████████████████

██████████ ████████████████████████████████████████

████████████████████████████████████████████████

It would be manifestly unfair to allow Netlist to provide testimony on these issues while prohibiting rebuttal testimony with respect to the relevant JEDEC documents.  The Court, therefore, should deny Netlist's motion to strike ¶¶ 51 and 56-57 of Mr. Halbert's opening report.

## B.  Mr. Halbert's Opinions Regarding Netlist's False Claims of Standard Essentiality Are Relevant and Reliable

Netlist moves to strike ¶ 50 of Mr. Halbert's report, arguing that Netlist's claims of standard essentiality for patents it asserted in prior litigations are irrelevant.  Dkt. 358 at 3-4; Dkt. 358-2, ¶ 50. Netlist intends to tell the jury that Netlist is an innovative company, Defendants needed Netlist's technology, ████████████████████████████ and that Netlist told Defendants and others that its patents cover DDR4 DIMMs long before filing suit.  Ex. 2 at 8-21, 77.  Netlist asserts that it declared certain patents to be potentially essential to JEDEC standards.  *See* Ex. 2 at 9, 21; Ex. 4 at ¶ 104. ██████████████████████████████████████████

████████████████████████████████████████████████

██████████ And Netlist will no doubt offer the baseless assertion that Defendants "needed" Netlist's technology, just as it argued Samsung did in *EDTX1*.  Mr. Halbert's opinions regarding other patents that Netlist falsely claimed were standard essential are relevant to the veracity of Netlist's statements here.

███████████████████████████████████████████████████

    In response to these allegations, Mr. Halbert offers highly relevant opinions on the meaning and impact of Netlist's declarations ██████████████████████████████████████ ████████████████████████████████████████████ For example, Mr. Halbert explains that members' declarations of standard essential patents are not confirmed or checked by JEDEC. Dkt. 358-2, ¶ 49. It is a primary role of an expert like Mr. Halbert to take an esoteric subject like JEDEC's standard essential patent declaration process and make it accessible to a jury. Mr. Halbert's opinions are therefore highly relevant as they demonstrate that, even when a patent is disclosed as "Potentially Essential" to JEDEC or as covering JEDEC-compliant products, such disclosures do not mean those patents are actually essential or used by such products. Defendants should be permitted to offer this testimony to avoid the jury confusion that will result if Netlist is permitted to reference its claimed contributions to JEDEC, including its assertions of standards essentiality and that its patents cover JEDEC-compliant products.

    To further illustrate this point, Mr. Halbert cites actual examples where Netlist's patents were found not essential to JEDEC standards. Mr. Halbert cites the SK hynix litigations in which Netlist declared patents essential that were ultimately found to be invalid or not essential. *Id.* at ¶ 50. Defendants should be permitted to rebut Netlist's broad claims of technical value with the relevant facts: Netlist is a serial litigant who has repeatedly claimed to have invented technology it did not develop, including that which it describes as commercially essential for JEDEC-compliant products. *See, e.g.*, Dkt. 358-2, ¶ 50 (citing Ex. 6 at 2, 13-14, 20-21 (invalidating Netlist patent claims asserted at the ITC)); Ex. 7 at 400:8-401:2; Ex. 8 at 689:6-17; Ex. 9 at 1096:13-1097:7; Ex. 10 at 1377:14-1378:4; *EDTX1*, Dkt. 578-2 (invalidating '339 patent); *EDTX1*, Dkt. 590-1 (invalidating the '054 patent); *EDTX1*, Dkt. 590-2 (invalidating '918 patent).

    Netlist's prior declarations of purportedly essential patents are also relevant to other issues. Netlist relies on its JEDEC disclosures and meetings with Defendants as a basis for its willfulness

██████████████████████████████████████████

claims. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ Netlist's history of

asserting patents that it falsely declared essential belies that claim.  Dkt. 358-2, ¶ 50.  Netlist's prior

history at the ITC is therefore highly relevant to the jury's determination of whether any infringement

is willful.  To the extent Netlist believes such facts are irrelevant to the patents and disclosures made

by Netlist in this case, it is free to investigate those through cross-examination.  Netlist is also free to

withdraw its willfulness assertions.

Further, despite its Standing Motion *in Limine* No. 13, this Court has previously declined to

strike such opinions at this stage of the proceedings.  In *EDTX1*, Netlist moved to strike what it now

characterizes as Mr. Halbert's "identical analysis discussing the former ITC proceedings."  Dkt. 358

at 4.  As Netlist acknowledges, however, the Court "did not explicitly strike this section of Mr.

Halbert's report."  *Id.* at n.2.  Rather, the Court noted that while such testimony is generally not

"permitted under the Court's *limine* practice without leave," it may nonetheless be elicited with leave

of court if the "door [has] been opened or [if] there's a basis in real time as the case unfolds before

the jury" to develop such testimony.  Ex. 11 at 225:5-15.  Without the benefit of foresight that these

circumstances may never arise, Netlist's request is premature.

Accordingly, Defendants request that the Court take the same approach as it did in *EDTX1*,

by denying Netlist's motion to strike Mr. Halbert's opinions regarding Netlist's standard essentiality

disclosures in other litigations.  *See TravelPass Grp., LLC v. Caesars Ent. Corp.*, No. 5:15-CV-153, 2021

WL 6333018, at *3 (E.D. Tex. Oct. 18, 2021) ("[E]videntiary rulings, especially those addressing broad

classes of evidence, should often be deferred until trial so that questions of foundation, relevancy, and

potential prejudice can be resolved in proper context." (citation omitted)).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

### C.    Mr. Halbert's Opinions Regarding the Contributions of Netlist and Others to JEDEC Standards Are Relevant and Reliable

Netlist asks the Court to strike Mr. Halbert's opinions regarding contributions to the relevant JEDEC standards as lacking any "nexus . . . to the value of Netlist's patents," when in fact Mr. Halbert's opinions offer proper rebuttal to Netlist's failure to apportion damages. Dkt. 358 at 5; Dkt. 358-2 at ¶¶ 5, 22-23. As it did in *EDTX*1, the Court should deny Netlist's motion to strike Mr. Halbert's analysis of contributions to the DDR4 standards implemented by the accused products. *EDTX1*, Dkt. 432 at 4-5 (denying Netlist's motion to strike Mr. Halbert and "alleged JEDEC contributions"). Indeed, Mr. Halbert analyzed contributions to similar JEDEC standards in *EDTX1* and was permitted to testify as to his findings. *See* Ex. 1 at 19:13-20:7; *compare* Dkt. 358-2, ¶ 22, *with* Ex. 12 at ¶¶ 8-14.

Here, Mr. Halbert again quantifies the relative contributions of Netlist, Samsung, Micron, and other JEDEC members to the specific standards implemented by the accused products. Whether Netlist **believes** its patents are standard essential is immaterial to this analysis. *See* Dkt. 356. As standard-compliant products, any value the asserted patents provide to the accused DDR4 LRDIMMs and RDIMMs must necessarily account for the rest of the technology covered by the standards. *Commonwealth Sci.* & *Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304 (Fed. Cir. 2015); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1232 (Fed. Cir. 2014) ("As with all patents, the royalty rate for SEPs must be apportioned to the value of the patented invention."). Based on his own experience and participation in the development of the DDR4 JEDEC standards, *see* Dkt. 358-2, ¶ 5, Mr. Halbert analyzes the contributions by each member company to the task groups and committees responsible for developing those standards. Mr. Halbert's opinions are, therefore, necessary to a proper apportionment analysis. *Ericsson*, 773 F.3d at 1226 ("[A] jury must ultimately 'apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features' using 'reliable and tangible' evidence." (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884))).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Netlist argues that Mr. Halbert's opinions are irrelevant because they purportedly lack any "nexus to the actual damages issues in the case," but this argument ignores the relevant law requiring apportionment between patented and unpatented features. Dkt. 358 at 5, 7. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ In Mr. Kennedy's analysis, Netlist ignores the massive contributions of an entire industry to the JEDEC standards—contributions that were necessary and essential to develop the accused technology. Ignoring the contributions of the JEDEC members thus ignores the significant R&D efforts to make the products as a whole.[1] Netlist therefore fails to apportion between the patented and unpatented features, which is a fundamental requirement for a proper damages analysis. *Ericsson*, 773 F.3d at 1226.

Unlike Mr. Kennedy's flawed position that scaled R&D is an acceptable metric for apportionment, Mr. Halbert's analysis focuses on the specific contributions of various companies to the JEDEC standards practiced by the accused products. Thus, Mr. Halbert's analysis is an actual assessment of the parties' activity related to the accused technologies in this case—a far more exacting estimate than Mr. Kennedy's flawed apportionment approach. Indeed, Samsung's damages expert Ms. Kindler relies on Mr. Halbert's opinions as part of conducting a *Georgia-Pacific* analysis, ████████

---

[1] As discussed, for example, in Samsung's motion to strike portions of Mr. Kennedy's analysis, his purported "technology" apportionment improperly uses the ***entirety*** of Samsung's and Netlist's ***R&D budgets*** company-wide ***as a percentage of revenue***, which has no connection to the parties' technical contributions to the specific DDR4 memory technologies accused in this case. Dkt. 346 at 5-6. First, by scaling R&D investment as a percentage of each company's revenues, Mr. Kennedy essentially penalizes companies like Samsung for their success. Ex. 13 at ¶ 210. Second, Mr. Kennedy's R&D numbers include wholly irrelevant products like Samsung's washing machines and cellphones. Thus, it is Mr. Kennedy—not Mr. Halbert—that fails to "carefully tie proof of damages to the claimed invention's footprint in the marketplace." Dkt. No. 358 at 5 (citing *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011)).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Netlist's contention that Defendants insufficiently disclosed Mr. Halbert's opinions during discovery also is without merit. Dkt. 358 at 5-6. ██████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Nor did Netlist ever seek additional responses to this interrogatory. *See Lectec Corp. v. Chattem, Inc.*, No. 5:08-CV-130, 2011 WL 13079933, at *8 (E.D. Tex. Jan. 4, 2011) ("a party cannot simply 'lay behind the log' and hope to thereby exclude an entire swath of expert opinions").[2] In any event, the factors for determining whether to exclude expert evidence weigh against striking Mr. Halbert's opinions. ██████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ To the extent this was the information sought in Netlist's interrogatory (it was not), Netlist is a JEDEC member with equal access to this information. Ex. 3 at 187:6-18; Ex. 15 at 148; Fed. R. Civ. P. 33(d). Indeed, many of the contributions included in Mr. Halbert's analysis were disclosed during discovery, and Netlist had access to the same materials during *EDTX1*. *See* Dkt. 358-2, ¶¶ 23-24; Dkt. 358-9. Any purported

---

[2] Further, Mr. Halbert is not relying upon Defendants' documents that were not produced. ████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████ here is also no "late disclosed evidence" (Dkt. 358 at 6) here, as Netlist is a member of the relevant JEDEC committees and had full access to the contributions since before this case began.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

prejudice to Netlist is minimal, no continuance is necessary for this purpose, and these contributions are indisputably important to Defendants' defenses and properly raised as a matter of Mr. Halbert's expert opinions.

Netlist seeks to further exclude Mr. Halbert's opinions by characterizing his methodology of "adding up the various JEDEC [contributions as] an unreliable way of determining what meaningful contributions the various companies made" to the standards. Dkt. 358 at 6-8. This method is reliable, however, as it is based on information to which Mr. Halbert is privy and would reasonably rely upon in forming opinions as an expert in JEDEC. Fed. R. Evid. 703. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

Netlist's criticism that Mr. Halbert failed to explain, *inter alia*, "how he chose the 'start scan' and 'end scan' dates" and the "types of documents" supporting the identified contributions is similarly without merit. Dkt. 358 at 6-7. The parameters of Mr. Halbert's search are based on Mr. Halbert's own experience with the task group committees, including when the standards were developed and the types of documents presented during the standards development process. As noted in his report, Mr. Halbert himself attended and contributed to various committee meetings where the DDR4 standards at issue were developed. *See id.*, ¶ 5. Accordingly, "[t]o the extent that issues exist in [Mr. Halbert's] opinions . . . these issues would be more appropriately addressed on cross-examination." *See, e.g., Traxcell Techs., LLC v. Huawei Techs. USA Inc.*, No. 2:17-CV-42, 2019 WL 6002202, at *1 (E.D. Tex. May 1, 2019) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002)).

**D.**    **Mr. Halbert's Opinion Regarding the Public Availability of JEDEC Documents Are Admissible**

Mr. Halbert's opinions regarding the public availability of certain JEDEC documents should not be stricken because Defendants timely disclosed evidence of their public availability date during discovery. *Contra* Dkt. 358 at 8-9. All eleven JEDEC documents discussed in Mr. Halbert's report

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

were produced to Netlist during fact discovery. Further, every one of the JEDEC documents discussed by Mr. Halbert and relied upon by Defendants' experts was properly identified with its publication date in invalidity contentions. *See, e.g.*, Ex. 16 at 8 (identifying Documents 7-8 and 10-11 of Mr. Halbert's report), 20 (identifying Document 9 of Mr. Halbert's report); Ex. 17 at 16 (identifying Documents 1, 3 and 5 of Mr. Halbert's report); Ex. 18 at 1-2 (identifying Documents 2 and 4 of Mr. Halbert's report).[3]

It is also untrue that Defendants "never disclosed any evidence during discovery relating to the circumstances under which these purported prior art references were published." From early in this case, Defendants disclosed the exact source and availability—through JEDEC—for the very documents Netlist complains of. Defendants did not hide the source of these materials but labeled them in their invalidity contentions as publicly available through JEDEC. *See, e.g.*, Ex. 16 at 15. Defendants' disclosure was more than what is required under this Court's Patent Rules. P.R. 3-3 ("Each prior art publication must be identified by its title, date of publication, and where feasible, author and publisher."). Indeed, Netlist cites no basis for requiring the level of detail it now complains for the first time was missing. *See Realtime Data, LLC v. T-Mobile, U.S.A., Inc.*, No. 6:10-CV-493, 2013 WL 12149180, at *3 (E.D. Tex. Feb. 8, 2013) ("[T]he purpose of invalidity contentions is to provide notice while discovery is intended to develop details so that legal theories become more concrete as the litigation progresses.").

Further, Mr. Halbert properly disclosed details about the documents' publications and the methods by which he located the documents in his report. *See, e.g.*, Dkt. 358-2 at ¶¶ 69-70. The circumstances of the documents' publications are also evident from the JEDEC website, which is

---

[3] While Netlist specifically calls out JESD82-7A, that standard was produced to Netlist during fact discovery, and its cover page clearly provides its publication date. Ex. 19 at 1; Ex. 3 at 18:23-19:25.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

equally available to Netlist and Defendants as members of JEDEC.  *See id.* at ¶ 69 (providing evidence

of publication circumstances through a screenshot of the JEDEC website), Ex. 3 at 187:6-17.

   Netlist claims that Mr. Halbert applies the incorrect legal standard regarding public availability,

but the Court already rejected this same argument in *EDTX1*.  Dkt. 358 at 10; Ex. 11 at 81:6-104:21.

There, the Court held that a factual dispute existed regarding whether members of JEDEC constituted

the relevant public for purposes of the public accessibility requirement of § 102(a).  *Id.*; *see also Cooper*

*Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1324 (Fed. Cir. 2002) ("[R]eports need only

be accessible to the interested public, which in this case may be the very entities who had access to

the documents . . . Here, those with access to the documents were asserted to be a significant portion

of the interested public." (citations omitted)).  In this case, Mr. Halbert again applies the proper legal

standard regarding public availability.  Dkt. 358-2 at ¶¶ 62-63 ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████  The court should reject the same

argument Netlist replicates here on the same basis.

   Because Mr. Halbert applied the correct standard, Netlist's argument that he "did not provide

any opinion with respect to the public availability of these materials *on or before the critical dates* of Netlist's

patents" is also misplaced.  Dkt. 358 at 10 (emphasis original).  Mr. Halbert identifies the publication

dates for each of the eleven JEDEC documents discussed in his report, all of which occurred before

the critical dates of the asserted patents, which Defendants previously disclosed in their invalidity

contentions.  *See* Dkt. 358-2 at ¶¶ 69, 72, 76, 79, 82, 85, 87, 90, 93, 96, 98; Ex. 16 at 8, 20; Ex. 17 at

16; Ex. 18 at 1-2.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Netlist also argues that Defendants improperly refused to provide 30(b)(6) witnesses on the topic of public availability, but Defendants properly objected to this topic on the basis that it seeks expert testimony. Dkt. 358 at 9-10; Ex. 20 at 143-144; Ex. 21 at 70-71. Netlist did not complain about these objections, and did not move to compel, thus waiving the argument Netlist advances now. Moreover, Netlist provided similar objections to 30(b)(6) topics that it believed were the subject of expert testimony. *See*, *e.g.*, Ex. 22 at 25-26, 71-72, 84-85 (declining to provide a witness on issues relating to standard essentiality, damages, and prosecution of the asserted patents). Furthermore, Mr. Halbert provided a full basis for the public availability of the JEDEC materials in his report, and Netlist will have the opportunity to depose Mr. Halbert on those opinions.

Netlist has not alleged that it faces any prejudice resulting from Defendants' alleged failures to disclose information regarding JEDEC materials because it cannot. Mr. Halbert's opinions regarding the public availability of JEDEC materials were already disclosed in *EDTX1*, where the Court found his testimony to be proper expert opinion. *See* Ex. 11 at 81:6-104:21. Before that, Mr. Halbert offered similar opinions in *Inter Partes* Review proceedings involving Netlist. *See*, *e.g.*, Ex. 23 (June 6, 2020 declaration opining on the public accessibility of JEDEC documents). Netlist can claim no prejudice where it never moved to compel Defendants for additional information or a witness on the JEDEC documents relied on in their P.R. 3-3 Invalidity Contentions. *See Slack v. Outback Steakhouse of Fla., LLC*, No. 6:20-CV-103, 2022 WL 1177892, at *1-2 (E.D. Tex. Apr. 20, 2022) (citing *Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384, 389 (5th Cir. 1989)).

The Fifth Circuit uses a four-factor test to exclude expert testimony based on undisclosed information: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563-64 (5th Cir. 2004). Because Defendants did not fail to disclose, and because Netlist alleges

12

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

no prejudice, the Court should deny Netlist's motion to strike Mr. Halbert's opinions regarding the "Public Availability of JEDEC Documents" as it did in *EDTX1*. *See* Ex. 11 at 104:13-21.

      **E.**    **Mr. Halbert's Opinions on Available Alternatives Were Timely Disclosed and Sufficiently Supported**

Netlist asks the Court to strike Mr. Halbert's rebuttal opinions regarding the alleged need for the accused features in JEDEC, and asserts those opinions are untimely and unreliable; but Mr. Halbert's opinions are proper rebuttal opinions based on decades of experience in the field.  Dkt. 358 at 11-15. ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ Further, Mr. Halbert rebuts Netlist's untimely contentions regarding the need in JEDEC ███████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

**First**, Mr. Halbert's rebuttal opinions were direct responses to opinions in Dr. Mangione-Smith's opening report.  In his opening report, Dr. Mangione-Smith argues that the asserted patents cover the accused features as they are described in the DDR4 LRDIMM and RDIMM JEDEC specifications and opines that the patented technology is necessary for the commercial viability of those products.  *See, e.g.*, Ex. 5 at Ex. A, ¶ 85, Ex. B, ¶¶ 8-9, 14, 20, 39, Ex. D, ¶ 91, Ex. I, §§ II-III; *see also* Dkt. 358-16 at ¶ 5.  Mr. Halbert's opinions are in direct response to Dr. Mangione-Smith. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████ Mr. Halbert's

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

opinions regarding alternatives to other accused features are also responsive to Dr. Mangione-Smith's

assertion ███████████████████████████ *Id.*, ¶ 18; *see also id.*, ¶¶ 13-14, 16-20, 23-24.

**Second**, Mr. Halbert's opinions, based on his nearly twenty years of experience in JEDEC,

are reliable and proper expert testimony. Dkt. 358-2, ¶¶ 5-6. Mr. Halbert supports his opinions with

numerous JEDEC documents and standards—the exact types of documents that an expert like Mr.

Halbert would rely upon in forming those opinions. *See* Fed. R. Evid. 703. █████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████ Mr. Halbert similarly cites numerous JEDEC materials to support his opinions regarding

the other alternatives. *See id.* at ¶¶ 8, 11, 14, 20-22, 24-25; *see generally* Dkt. 358-16. Netlist's argument

that Mr. Halbert's opinions are supported "solely" by his experience is meritless, and his opinions

regarding alternatives to the accused features should not be stricken. Dkt. 358 at 15.

**Third**, there is nothing untimely about Mr. Halbert's opinions. Defendants properly disclosed

each of these alternatives in its responses to Netlist's Interrogatory No. 12. Ex. 24. Netlist does not

contest that *Samsung* timely disclosed these alternatives. Dkt. 358 at 11-12.[4] Additionally, Samsung's

technical expert Mr. McAlexander provided opinions on noninfringing alternatives in his opening

report. *See* Ex. 27 at Att. A, ¶¶ 229-38, Att. B, ¶¶ 212-29, Att. C, ¶¶ 335-44. Netlist does not contest

that Mr. McAlexander's analysis of noninfringing alternatives is timely. But Defendants are not

offering Mr. Halbert to advance on the issue of noninfringing alternatives—Mr. Halbert does not

---

[4] Netlist argues that none of the "allegedly non-infringing alternative designs were disclosed by Micron during fact discovery." Dkt. 358 at 11 (citing to Micron's response to Netlist's Interrogatory No. 12). This argument ignores that (i) Micron properly responded to the interrogatory No. 12 by identifying that this district does not require expert analysis and non-infringement contentions in interrogatory responses (Ex. 25 at 46); (ii) Micron identified non-infringing alternatives in response to Netlist's redundant interrogatory No. 26 (Ex. 26 at 23-27); ████████████████████
████████████████████████████████████████████████████

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

discuss noninfringing alternatives at all in his report.  Instead, Mr. Halbert rebuts Netlist's technical opinions relating to damages, which Netlist disclosed for the first time in Dr. Mangione-Smith's initial report.  Mr. Halbert's opinions were therefore not untimely, and Netlist had ample opportunity to depose Defendants' engineers about these alternatives.[5]

Because Mr. Halbert's opinions were timely disclosed, the cases Netlist cites are all inapposite. Dkt. 358 at 12-13.  *Nanology Alpha*, *Godo Kaisha IP Bridge I*, *BMC Software*, and *Freeny* each addressed situations where the defendant failed to disclose noninfringing alternatives during fact discovery, and *Elbit Systems* concerned a defendant's expert who, unlike Mr. Halbert, provided only conclusory language "insufficient to establish a noninfringing alternative."  *Nanology Alpha LLC v. WITec Wissenschaftliche Instrumente*, No. 6:16-CV-445, 2018 WL 4289342, at *3-5 (E.D. Tex. July 11, 2018); *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 16-CV-134, 2017 WL 2869344, at *2-3 (E.D. Tex. Apr. 20, 2017); *BMC Software, Inc. v. Servicenow, Inc.*, No. 2:14-CV-903, 2016 WL 367251, at *3 (E.D. Tex. Jan. 29, 2016); *Freeny v. Murphy Oil Corp.*, No. 2:13-CV-791, 2015 WL 11108703, at *1 (E.D. Tex. May 29, 2015); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-CV-37, 2017 WL 2651618, at *11-12 (E.D. Tex. June 20, 2017).

## III.    CONCLUSION

For the aforementioned reasons, Netlist's motion should be denied.

---

[5] Netlist further failed to demonstrate that the Court should exclude those opinions if it finds them untimely.  Each of the *Primrose* factors weigh in favor of denying Netlist's motion to strike.  *Primrose*, 382 F.3d at 563-564.  It is undisputed that suitable alternatives to the JEDEC standards are important to the claims and defenses in this case.  Netlist suffers no prejudice from Mr. Halbert's opinions. Indeed, Dr. Mangione-Smith addressed these alternatives in his opening report, showing that Netlist was clearly aware of them during fact discovery, which closed the same day that Dr. Mangione-Smith served his report.  Ex. 5 at Ex. B, ¶¶ 90-99, Ex. C, ¶¶ 243-62, Ex. D, ¶¶ 162-175.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dated:  January 30, 2024

Respectfully submitted,

By:    /s/  Francis J. Albert

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:      (903) 934-8450
Facsimile:      (903) 934-9257

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile:   (415) 955-6571

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*/s/ Michael R. Rueckheim*
Thomas M. Melsheimer
State Bar No. 13922550
TMelsheimer@winston.com
Natalie Arbaugh
State Bar No. 24033378
NArbaugh@winston.com
Barry K. Shelton
State Bar No. 24055029
BShelton@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

David P Enzminger
denzminger@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael R. Rueckheim
State Bar No. 24081129
MRueckheim@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

Matthew Hopkins (*pro hac vice*)
State Bar No. 1500598
mhopkins@winston.com
**WINSTON & STRAWN LLP**
1901 L Street, N.W.
Washington, DC 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Juan C. Yaquian
State Bar No. 24110559
JYaquian@winston.com
**WINSTON & STRAWN LLP**
800 Capital Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Wesley Hill (State Bar No. 24032294)
wh@wsfirm.com
Andrea Fair (State Bar No. 24078488)
andrea@wsfirm.com
Charles Everingham IV (State Bar No. 00787447)
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys For Defendants Micron Technology, Inc.,*
*Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document was filed

electronically in compliance with Local Rule CV-5 on January 30, 2024.  As of this date, all counsel

of record have consented to electronic service and are being served with a copy of this document

through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.


*/s/ Francis J. Albert*