# Exhibit 11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ( | CAUSE NO. 2:21-CV-463-JRG |
| | ) | |
| Plaintiff, | ( | |
| | ) | |
| vs. | ( | |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD., | ( | |
| et al., | ) | MARSHALL, TEXAS |
| | ( | MARCH 28, 2023 |
| Defendants. | ) | 9:00 A.M. |

_____

VOLUME 1

_____

PRETRIAL CONFERENCE

BEFORE THE HONORABLE RODNEY GILSTRAP
UNITED STATES CHIEF DISTRICT JUDGE

_____

SHAWN McROBERTS, RMR, CRR
100 E. HOUSTON STREET
MARSHALL, TEXAS 75670
(903) 923-8546
shawn_mcroberts@txed.uscourts.gov

```
 1                    A P P E A R A N C E S

 2         FOR THE PLAINTIFF:     IRELL & MANELLA, LLP -
                                  LOS ANGELES
 3                                1800 AVENUE OF THE STARS
                                  SUITE 900
 4                                LOS ANGELES, CA 90067-4276
                                  (310) 203-7096
 5                                BY:  MR. JASON SHEASBY
                                       MS. YANAN ZHAO
 6
                                  McKOOL SMITH, P.C. - MARSHALL
 7                                104 E. HOUSTON ST., SUITE 300
                                  MARSHALL, TEXAS  75670
 8                                (903) 923-9000
                                  BY: MR. SAMUEL BAXTER
 9                                     MS. JENNIFER TRUELOVE

10         FOR THE DEFENDANTS:    FISH & RICHARDSON PC -
                                  WASHINGTON DC
11                                1000 MAINE AVE., SW
                                  SUITE 1000
12                                WASHINGTON, DC 20024
                                  (202) 783-5070
13                                BY:  MR. RUFFIN CORDELL
                                       MS. LAUREN DEGNAN
14                                     MR. BRIAN LIVEDALEN
                                       MR. MATTHEW MOSTELLER
15                                     MR. MICHAEL McKEON

16                                FISH & RICHARDSON, PC -
                                  SAN DIEGO
17                                12860 EL CAMINO REAL
                                  SUITE 400
18                                SAN DIEGO, CA 92130
                                  (858) 678-5070
19                                BY:  DR. FRANCIS ALBERT

20                                FISH & RICHARDSON, PC -
                                  DALLAS
21                                1717 MAIN STREET, SUITE 5000
                                  DALLAS, TEXAS  75201
22                                (214) 747-5070
                                  BY:  MR. MATTHEW COLVIN
23                                     MR. THOMAS REGER

24

25
```

```
1                                      FISH & RICHARDSON, PC -
                                       NEW YORK
2                                      7 TIMES SQUARE, 20TH FLOOR
                                       NEW YORK, NEW YORK  10036
3                                      (404) 724-2764
                                       BY:  MS. KATHERINE REARDON
4
                                       GILLAM & SMITH, LLP
5                                      303 SOUTH WASHINGTON AVENUE
                                       MARSHALL, TEXAS  75670
6                                      (903) 934-8450
                                       BY:  MS. MELISSA SMITH
7
                                       GILLAM & SMITH, LLP
8                                      102 N. COLLEGE, SUITE 800
                                       TYLER, TEXAS  75702
9                                      (903) 934-8450
                                        BY:  MR. TRAVIS UNDERWOOD
10                                           MR. TOM GORHAM

11          OFFICIAL REPORTER:         SHAWN M. McROBERTS, RMR, CRR
                                       100 E. HOUSTON STREET
12                                     MARSHALL, TEXAS  75670
                                       (903) 923-8546
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              THE COURT:  Be seated, please.

2         This is the time set for pretrial matters before the

3    Court in the case of Netlist, Inc., versus Samsung Electronics

4    Company, Ltd., et al.  This is Civil Case No. 2:21-CV-463.

5         The Court will ask for announcements at this time.  What

6    says the Plaintiff?

7              MS. TRUELOVE:  Good morning, Your Honor.  Jennifer

8    Truelove here for Plaintiff.  With me today at counsel table,

9    we have Mr. Jason Sheasby, Ms. Yanan Zhao, and Mr. Michael

10   Rosen.

11        We are ready to proceed.

12             THE COURT:  Thank you.

13        What's the announcement for the Samsung Defendants?

14             MS. SMITH:  Good morning, Your Honor.  Melissa Smith

15   on behalf of Samsung.

16        I have many people in the courtroom that have joined me

17   today, but what I'd like to do is introduce Your Honor to

18   those that will be arguing today on behalf of Samsung in the

19   order of argument:  Mr. Ruffin Cordell, Mr. Mike McKeon, Ms.

20   Lauren Degnan, Dr. Frank Albert, Mr. Brian Livedalen, Mr. Matt

21   Colvin, Mr. Matthew Mosteller, Mr. Tom Reger, and in the back

22   Ms. Katherine Reardon.

23        Your Honor, we also have a client representative in the

24   courtroom today, Mr. Michael Nguyen, and we're ready to

25   proceed, Your Honor.

 1    judgment of non-infringement regarding the '060 and the '160

 2    Patents, despite the arguments, the Court's persuaded that

 3    there are outstanding questions of material fact that would

 4    preclude the granting of summary judgment, and I'm going to

 5    deny the Defendants' motion.

 6        All right.  Let's go next to Document 209, Plaintiff's

 7    motion for partial summary finding the JEDEC materials are not

 8    publicly accessible.

 9        Let me hear from moving Plaintiff, please.

10             MR. SHEASBY:  May I approach, Your Honor?

11             THE COURT:  You may.

12             MR. SHEASBY:  Mr. Huynh, deck 3, please.

13        I want to level set because I think there's been some

14    confusion.  The question of whether reference is publicly

15    accessible is a question of law, not a question of fact.  The

16    facts in this case are undisputed.  And we believe in light of

17    that, the Judge should make this decision and not put it to

18    the jury.

19        The evidence that is undisputed is the following.

20        If we go to slide 5, Mr. Huynh.

21        The meetings -- I want to separate two issues.  There is

22    JEDEC formal specifications.  Those are prior art.  Those are

23    in.  We get that.  That's undisputed.  What we're talking

24    about, this is meeting minutes, draft proposals,

25    presentations, and ballots.  Those documents are not publicly

1    available and are not prior art.  It's a question of law and

2    the facts are undisputed.

3        First, there is no mechanism to search for those

4    documents on the JEDEC website.  It doesn't exist.  They're

5    not indexed and searchable.  We know that from the Federal

6    Circuit that documents that are uploaded to the database are

7    not publicly accessible when they're not meaningfully indexed.

8    And that is a question of law, not a question of fact, and

9    this is undisputed.  There is no evidence, zero in the record,

10   that these documents could have been indexed, none, zero, or

11   that they could have been searched.

12       The idea that documents that are not --

13           THE COURT:  Let me ask you this, Mr. Sheasby.  Is

14   the issue there's no evidence that they could have been

15   searched or is it the moving party's obligation to show that

16   they could not have been searched?

17           MR. SHEASBY:  So it is -- so --

18           THE COURT:  Who has the burden to establish the lack

19   of accessibility?

20           MR. SHEASBY:  They do.  They have the burden of

21   establishing accessibility.  So public availability is an

22   issue on which they have the burden.  I'm moving for summary

23   judgment, but --

24           THE COURT:  You're moving from summary judgment

25   saying there's no question of fact that they were accessible.

1          MR. SHEASBY:  That they were not accessible.

2          THE COURT:  That's what I meant.

3          MR. SHEASBY:  Yeah.

4          THE COURT:  That they weren't available, they

5     weren't -- they couldn't be reached.

6          MR. SHEASBY:  Right.  It's their burden.  So I'm

7     making -- I'm moving on a motion for summary judgment.  When

8     someone doesn't have the burden, you don't even have to put in

9     evidence.  You just have to say they didn't meet the burden.

10         So going back to slide 5, it's not indexed and

11    searchable.  There's no evidence that it's indexed and

12    searchable.  Not that there's evidence that could be elicited,

13    there's no evidence that could ever be elicited that it's

14    indexed and searchable, because we know what their experts are

15    going to say and none of them contend it was indexed and

16    searchable.

17         Let's go to slide 8.

18         The next issue is that even the times when -- when a

19    document that is not indexed -- even if it was indexed and

20    searchable, it would still not be public prior art.  And the

21    reason for that is because the documents are confidential.

22    They can't be accessed by the public.  They can only be

23    accessed by parties who are members of JEDEC and require and

24    comply with JEDEC obligations.  Once again, an undisputed

25    fact.  No one disputes it.

1    In fact, if you go to slide 9, their own expert concedes

2    that the documents they're relying on for public -- that

3    they're saying they're prior art are documents that they would

4    only be distributed within a given subset of groups, which is

5    only the groups that -- only the relevant committee that would

6    be at issue.  This is Mr. Halbert's testimony at slide 9.

7        Go to slide 10.

8        He admits it again and again and again that they're only

9    accessible to a particularized set of committee members who

10   are subject to confidentiality obligations.

11       Slide 11.  We've listed -- in addition to the fact that

12   every document in JEDEC committee is per se confidential, we

13   know for a fact that these documents were treated as

14   confidential because if you look at appendix B to Docket

15   308-3, they actually have internal JEDEC confidential

16   information designations on it.

17       So let me take a step back.  On their burden --

18           THE COURT:  Let me make sure you and I view the

19   legal issues the same here.  Whether or not something as a

20   potential invalidating reference is a printed publication is a

21   question of law, but whether that item, whether or not it's a

22   printed publication that is publicly accessible is a question

23   of fact.  Do you agree with that?

24           MR. SHEASBY:  So a printed publication and public

25   accessibility under Federal Circuit law are the same standard.

1    So there are underlying questions --

2           THE COURT:  So what is a public -- a printed

3    publication and what is publicly accessible are the same

4    thing?

5           MR. SHEASBY:  Yes, Your Honor, and I'll give you the

6    cite for that if Your Honor wants it.

7       We can go to slide 23.

8       This is *Carela versus Starlight Archery*, which is that

9    the knowing use prong is not a different standard than the

10   publication prong.  *Carela versus Starlight Archery*, 804 F.2d

11   135.  Both of them require a finding that they were accessible

12   to the public.  So if it's a publication, it's got to be

13   printed and accessible to the public.

14      This is printed material that they have to establish is

15   accessible to the public.  Switching it from saying it's a

16   publication to saying it's printed material doesn't alter the

17   standard.

18      I should also note, and I think this is quite important,

19   which is, go to slide 23.

20          THE COURT:  There seems to be some blurring of the

21   lines in the briefing here between these concepts, and I think

22   it's important for the Court to be clear here.

23      What is or isn't a printed publication is not

24   necessarily, in my view, what equates to a publication being

25   publicly accessible.  Those are different things in my view.

1    Now, maybe there's a similar approach or analysis or test, but

2    those are not -- those are not the same thing.

3        Whether something's a printed publication, you can have a

4    printed publication that's not publicly accessible, and you

5    can have something that's publicly accessible that's not a

6    printed publication.  And I don't think -- I don't think that

7    there is any -- there's not any authority that I know of that

8    says what constitutes a printed publication is the same thing

9    as to whether or not something is publicly accessible.

10           MR. SHEASBY:  May I approach my --

11           THE COURT:  Yes.

12           MR. SHEASBY:  I think I understand what Your Honor

13    is saying, and I think the most amount of guidance on it is

14    from *GoPro.*  And if you read the *GoPro,* what *GoPro* and its

15    progeny are talking about is something is prior art if it's a

16    printed publication.  They can use it if it's a printed

17    publication.

18        Whether something is a printed publication depends on

19    whether it meets a multi-factor task in terms of accessibility

20    to a person of ordinary skill in the art.  So the -- the --

21    there is no other prior art standard other than printed

22    publication.

23        Then what you have to do is you do an analysis, and it's

24    a multifactorial analysis based on the undisputed facts -- on

25    the facts in this case as to whether it is a printed

 1   publication based -- that's how I understand it.

 2            THE COURT:  I think *GoPro* does stand for the

 3   proposition that what is or isn't publicly accessible is a

 4   question of fact and not a question of law.  Do you agree with

 5   that?

 6            MR. SHEASBY:  I do agree with that.

 7            THE COURT:  Okay.

 8            MR. SHEASBY:  But if there's no disputed questions

 9   of fact, then it just becomes an ultimate question of law for

10   the Judge.

11            THE COURT:  If there are no disputed material

12   questions of fact, then it's appropriate for treatment under

13   Rule 56.

14            MR. SHEASBY:  Right.  And that's what I'm getting

15   at.

16        If you go to slide 3.5.  Sorry -- 6. -- are you

17   in -- let's go to -- I think you're in the wrong one.  Are you

18   in 3 or 6, Mr. Huynh.

19            MR. HUYNH:  6.

20            MR. SHEASBY:  Let's go to 3.  While we're dealing

21   with that -- yes, here we go.  3.5.

22        This is not a mysterial dispute of fact.  They're not

23   searchable.  They haven't put in evidence that they are

24   searchable.  They haven't put in evidence that there is some

25   index.

1        Go to slide 8.

2        This is not a dispute of fact.  The materials are

3    confidential.  There is no dispute about that.

4        If you go to slide 9 and 10.

5        Their expert admits that they're confidential and are

6    only shared within the committee.

7        If you go to slide 15.

8         The requirements about what you need to do to be a

9    member of JEDEC, it's not just writing a check.  You have to

10   be a certain category of individual.  It's a requirement, and

11   you have to comply and commit to all these requirements,

12   including confidentiality.  That's not a dispute of material

13   fact.  There are no disputes of material fact regarding the

14   underlying nature of these documents.

15       The sleight of hand and the argument that Samsung makes

16   to get around this is to say, oh, well, these aren't printed

17   publications, that's not the way we're using them, we're using

18   them as, quote, knowledge in the art.  But whether something

19   is knowledge in the art or something --

20       Go to slide 22.

21        -- is the same standard.  If it's knowledge in the art,

22   it has to be accessible to the public.  For it to be a printed

23   publication, it has to be accessible to the public as well.

24   And we know that this argument they're switching to, that you

25   can treat all this stuff which is not accessible to the public

1    as prior art, if you go to slide 23, that is not in their

2    infringement contentions.

3        In their infringement contentions, they refer to this as

4    prior art systems and inventions.  They have a separate --

5            THE COURT:  That's infringement contentions, not

6    invalidity.

7            MR. SHEASBY:  Not invalidity contentions.  I

8    apologize, Your Honor.  Thank you for the clarification.

9        If you look at their invalidity contentions, they never

10   cite these documents of being knowledge of the art.  They

11   always cite -- the documents they cite as being knowledge of

12   the art are completely different.  So they never say the JEDEC

13   materials are well known in the art or reflect the stated

14   knowledge of a POSA.  That is a new argument in reply to

15   forestall summary judgment.  So I'll come back to it.

16       Printed publication is a question of law.  Something is

17   not prior art unless it's printed publication.  Public

18   accessibility, which is the requirement for whether something

19   is a printed publication, is a question of fact.  If they're

20   disputing material facts, it goes to the jury.

21       There are no disputed material facts.  It's not

22   searchable.  It's treated as confidential.  Their own expert

23   admits it's only accessible within a committee.  And if you

24   join it, you have to commit to the committee's -- to JEDEC's

25   confidentiality obligations, you have to commit to their

1    requirements for use, and you have to pay funds.

2         Those are the four undisputed facts, and Your Honor is in

3    a position to make the determination.  Thank you.

4         THE COURT:  So your argument is because it's not

5    publicly accessible, it couldn't been within the knowledge of

6    a person of ordinary skill in the art.

7         MR. SHEASBY:  So that's -- so, yes.  And that is

8    settled law.  This is *Carela versus Starlight*.  It is settled

9    law that the known or used prong is subject to the

10   same -- that's known or used by others means knowledge or use

11   which is, quote, accessible to the public.  Same standard.

12        THE COURT:  All right.  Let me hear from Samsung in

13   response, please.

14        MR. McKEON:  Good morning, again, Your Honor.  Mike

15   McKeon for Samsung.  May I proceed?

16        THE COURT:  Please do.

17        MR. McKEON:  So we're basing our invalidity case,

18   Your Honor, on §102(a), known and used by others.  §102(a)

19   also has an element of printed publication.  We're not relying

20   on that.  We're relying on what was known to the others.

21   (unintelligible) printed publication.

22        THE COURT:  With regard to known or used by others,

23   as I just heard, still is burdened with the public

24   accessibility.

25        MR. McKEON:  That is very true.  That is very true.

1          THE COURT:  Tell me about the public accessibility.

2          MR. McKEON:  Okay, Your Honor.  There's certainly

3     enough fact disputes on that.  In fact, we produced an

4     overwhelming set of evidence on that.

5          But I was just going to say, Your Honor, on the printed

6     publication point, additional requirements are indexing, the

7     length of time that the publication was displayed, whether it

8     could be copied.  These are things in the cases for printed

9     publications specifically.  You don't see that kind of thing

10    with known or used by others.  But public accessibility

11    certainly is the linchpin of both.

12         And these are the -- the JEDEC documents at issue, Your

13    Honor, but let me just jump right into that.  Your Honor's

14    familiar with language known and used by others, and that is

15    our case.  The *Carela* case they cited as well.  That has

16    been our position in the expert reports and throughout the

17    case.

18         This is an excerpt from his report relying on these JEDEC

19    materials known by others.  So there's no dispute that's been

20    presented throughout the case.  And Doctor Robins for the HBM

21    patents on slide 10, same thing.  We presented this as a

22    known-by-others case.

23         Now, JEDEC is not some backwater association, Your Honor.

24    This is a very, very, very familiar organization that's in the

25    electronics business.  It's the Who's Who are the members of

1    this and 350 members --

2              THE COURT:  The Joint Electron Device Engineering

3    Council.  Is that correct?

4              MR. McKEON:  That's it, Your Honor.  Yep, that's it.

5    And JEDEC -- you know, we abbreviate it for short, JEDEC.  And

6    it comes up a lot in these patents cases because it's really a

7    robust standard organization, 350 members, and, you know,

8    people interested in -- and other people who are interested.

9    And, you know, here's the list of examples of the members of

10   JEDEC that participate in the meetings, participate in the

11   submissions.  All this is part of JEDEC.

12        And to prove the point, Your Honor, we even look at their

13   own patents in this case.  They cite JEDEC.  The '339 cites

14   the JEDEC and discusses JEDEC.  The other patents--'918,

15   '054--cite JEDEC, discuss JEDEC.  So JEDEC is a well known

16   organization and is directly relevant to the patents-at-issue

17   in this case.  It's even cited in the specifications.

18        Even Mr. Murphy, who's the expert that Netlist has in the

19   re-exams in the IPRs in the Patent Office, understands very

20   well.  And I'll quote from -- from him in his deposition:  One

21   of ordinary skill in the art would understand about the

22   content that was available in the JEDEC proposals, independent

23   of how they got that information.

24        So whether they were reading the actual submission or

25   whether they were sitting in the meeting, Mr. Murphy is very

1    clear that these are the POSITAs and these are the people that

2    are going to see and have that information available to them.

3        And you know, of course, accessibility, Your Honor, the

4    GoPro case my colleague already cited to Your Honor, what is

5    the standard?  It's reasonable diligence to locate the

6    information by interested members of the relevant public.

7        And the point here is we can't get confused by the word

8    public.  It's not everybody out there in the public literally.

9    It's the relevant public.  And I submit, Your Honor, and we

10   submitted in our briefing, that JEDEC is actually the relevant

11   public here.  These other people that are in these

12   organizations from all the major companies that are involved

13   in the memory business, in the semiconductor business.  And

14   the Who's Who is the POSITA in this case.  They are sitting in

15   these rooms.  So they have access to all this material.

16       THE COURT:  So only a member of JEDEC could be a

17   person of ordinary skill in the art in this context.

18       MR. McKEON:  Well, I would say --

19       THE COURT:  Do you agree?

20       MR. McKEON:  I would say, Your Honor, that they

21   define sort of the POSITA here.  This is -- this includes a

22   group of people who -- who participate in the creation of all

23   this documentation, the creation of what ends up to be the

24   standards.

25       THE COURT:  But if the documentation is not

1    searchable, it's not indexed, it's not available except to

2    members of this organization, then what I hear you saying is

3    it may be known to a person of ordinary skill in the art, but

4    what -- but who is a person of ordinary skill in the art must

5    in this context include a member of JEDEC who has access

6    through that membership to this material.  Is that right?

7          MR. McKEON:  That's right, Your Honor.  I mean,

8    certainly they would be included in that group.  There's no

9    doubt about it.  And by the way, Your Honor, we do dispute the

10    notion that you can't search or get ahold --

11          THE COURT:  Show me that.

12          MR. McKEON:  Yeah, I will show you that.  Let's get

13    right to that.

14        This is the -- this is the website here, and you can see

15    here on slide 22, Online access to JEDEC confidential meeting

16    minutes, presentations, ballots, and surveys.  All members,

17    not just the members in the subcommittees, but all members

18    have access to the material, including the actual standards,

19    the proposals, and the ballots.

20        And, of course, we have our expert submission on this.

21    The comments and changes are uploaded to the JEDEC member

22    website where they can be accessed by members.  It's very

23    clear that accessibility to these documents from any moment

24    within JEDEC and even members from the public outside JEDEC,

25    which I'll get to in a minute, there is no requirement under

1    the case law that particular members of the public -- the

2    relevant public actually received the information.  It's just

3    about reasonable accessibility.  That is the standard.

4        This is another portion of the member website, Your

5    Honor.  You can register -- non-members can register to

6    receive these materials just by putting their email in and a

7    password.  And we've highlighted that portion here on the

8    lower right for -- anybody can do this.  And, of course,

9    non-members who want to become members can pay a fee and join

10   JEDEC.  And they encourage that.  The more, the merrier.

11   That's for sure.

12       And non-members can also attend meetings.  We see here

13   from our -- from our expert Mr. Halbert about interested

14   members bring your checkbook and, of course, they can sign up

15   to join, parties that are interested.

16       And -- and we know, Your Honor, from the evidence that we

17   presented in summary judgment documents that, in fact,

18   non-members do go to the meeting.  We have an example here

19   where these two companies, Acuid and Hiroce Electric, attended

20   this particular meeting, and they were non-members at the time

21   they attended.  And the idea here that they can come in, hear

22   it, you know, try it out, see if they are -- if some of them

23   are interested in joining.  They have access to this.

24       And, of course, this is an example of a document that's

25   created at every single meeting.  They've created who's there,

1    what presentations were given, who gave them, and all the

2    presentations are given a number and are labeled as such.

3         Let me skip this slide, Your Honor, and get right to the

4    evidence here.

5         And, Your Honor, the website of course is finding --

6    again, we dispute the fact that you can't search for this

7    material.  It's very accessible.  The JEDEC website, you just

8    click on the committee and you have a search box.

9         This is an example of the website in slide 32, Your

10   Honor.  You see the search box there?  You can search for

11   these committee documents right in the search bar and access

12   any of them.  And there's also a portion of the website you

13   see here where we had the standard, different topics within

14   the standard that you can click on and get focused on a

15   particular subject matter that you're interested in.

16        THE COURT:  Let me ask you this.  Going back to what

17   you just said, if a member -- if someone who's not a

18   dues-paying member of JEDEC goes to this website, takes that

19   search bar, can they input a search that will yield the exact

20   material that Samsung seeks to use as an invalidating

21   reference here?

22        MR. McKEON:  Well, what I can tell you --

23        THE COURT:  Sometimes the organizations where you

24   can get a certain level of information just by going to a

25   search bar, but you can't get the same granularity of

 1    information than if you are a member or you have other special

 2    credentials.

 3        So you're telling me that the documents or the

 4    information or the data that you intend to use as an

 5    invalidating reference can be accessed by anyone who goes to

 6    that page online and puts in the right search query in that

 7    search bar.  Is that what you're telling me?

 8            MR. McKEON:  Well, Your Honor, I want to be very

 9    specific.

10            THE COURT:  I'm trying to be specific, too.

11            MR. McKEON:  Yeah, yeah.  So the only -- the best I

12    can do on that in terms of the record is we have here, you can

13    access by doing a password, your email, most site content is

14    available for non-members at no charge.  And then, of course,

15    we have the notion that anyone can sign up.

16            THE COURT:  Is that most site content the same

17    content you want to use as an invalidating reference?

18            MR. McKEON:  Well, Your Honor, we haven't sort of

19    pulled that specifically together.  I think the record we have

20    here is that -- that certainly the JEDEC -- anyone within

21    JEDEC has access to that material, anyone within JEDEC.  And

22    our -- our view is, Your Honor, that is the relevant public.

23            THE COURT:  You are the one presenting the argument

24    that someone who's not a member of JEDEC can simply go online

25    and put in a search and get the same material you want to use

1    to invalidate the Plaintiff's patents.  If you've got evidence

2    of that, I want to know that.

3        If it's not that easy and if the precise invalidating

4    references you want to present to the jury aren't accessible

5    by non-JEDEC member, then I need to know that.  That doesn't

6    necessarily foreclose whether or not a member of JEDEC is a,

7    quote, relevant member of the public with accessibility or

8    not.

9            MR. McKEON:  Yeah.

10           THE COURT:  But you either have a narrow argument or

11    broader argument and you're going back and forth between them,

12    and I need to know does the broad one really hold or is it the

13    more narrow one.

14           MR. McKEON:  Yeah.  No, it's a really good question,

15    Your Honor, and what I -- the evidence I have on that link is

16    what I show you here, and whether -- I don't have evidence

17    that specifically links it to the documents at issue here.

18           THE COURT:  Okay.

19           MR. McKEON:  Other than -- other than we have here

20    is, you know, most -- most content, is what they say here.

21        So, Your Honor, I don't think we need to resolve that

22    issue because I think the JEDEC membership itself is the

23    relevant public.  350 companies and -- and all the people

24    involved in the JEDEC organization is the relevant public for

25    the purposes of the prior art accessibility analysis.  And

1    that's what the case law tells you.

2        Let me jump to a case, Your Honor, that I think is on

3    point.

4            THE COURT:  Let me ask you this.  Is your intended

5    witness to present this invalidating prior art or potentially

6    invalidating prior art, is this witness a member of JEDEC who

7    has access to this on their own, or are they relying on some

8    third party who won't be in court who's told them, I'm a

9    member, I've seen it, this is what it says and means?  Exactly

10   how is this going to be teed up for the jury?

11           MR. McKEON:  This is our expert, Mr. Halbert, here.

12   He worked for Intel for many, many years.  Intel is a very

13   robust, very --

14           THE COURT:  I know who Intel is.

15           MR. McKEON:  Yeah, you know.  You know, of course.

16   But the JEDEC -- you know they're involved in JEDEC is my

17   point.  And he put in expert reports into this case regarding

18   the JEDEC process, who's involved.  And, you know, we've cited

19   to a bunch of that, Your Honor, in our summary judgment

20   papers.  But he will be doing the bulk of that at our trial in

21   terms of the involvement in JEDEC, in addition to potentially

22   a fact witness from Samsung who's involved in the JEDEC

23   organization as well, as Your Honor knows.

24       But just -- just one more point about the public access,

25   Your Honor.  I mean, I think I said it, but I want to make

```
 1    sure it's clear as you were asking the question.  Anyone can
 2    pay to get access.  Anybody.  So you pay --
 3              THE COURT:  Access to everything, not access to
 4    most.
 5              MR. McKEON:  Access to everything, yeah, yeah.
 6    That's just to bring your checkbook is the expression that Mr.
 7    Halbert used.
 8         And, finally, Your Honor, I don't think there's a dispute
 9    here so I'm not going to go through the slides.  The date --
10    these documents are all before the critical dates.  We've
11    shown that through the evidence.  But since that wasn't raised
12    by Mr. Sheasby, I won't.
13         And likely confidential designations, Your Honor, wasn't
14    raised by Mr. Sheasby, so I won't -- I won't talk about that.
15    But unless you have any more questions, Your Honor, that was
16    my presentation.
17              THE COURT:  No, I don't think so, Mr. McKeon.  Thank
18    you.
19              MR. McKEON:  Thank you.
20              MR. SHEASBY:  Brief response, Your Honor?
21              THE COURT:  Yes.  Tell me, Mr. Sheasby, can anybody
22    with a checkbook make a payment, join, and get access to
23    everything online?
24              MR. SHEASBY:  No.  And don't take my word for it.
25    Take the word of their expert, Mr. Halbert.  The documents
```

```
 1    presented in the JEDEC committee and task groups, including

 2    ballots, technology presentations, or meeting minutes, were

 3    normally not shared publicly outside of JEDEC.  Rather, these

 4    documents were accessible -- only were accessible to members

 5    of the JEDEC committee, the JEDEC member website, or voting

 6    machines.  It's not my words, not the words of my experts;

 7    that's the words of their expert.  The expert goes on.

 8         The other expert is Mr. McAlexander, slide 10.

 9              THE COURT:  Let's go back to the prior statement.  I

10    want to read that one more time.

11              MR. SHEASBY:  Yes, Your Honor.

12              THE COURT:  What's your understanding of the

13    sentence that begins after the yellow highlighting, "Only once

14    a standard has been finalized and approved for publication

15    would non-JEDEC companies be able to view the standard's

16    materials?"  Doesn't this really tell me that at time of

17    adoption, it may not be public, but upon adoption, it becomes

18    public to the broader membership and perhaps others?

19              MR. SHEASBY:  Yeah.  That's what I was going to ask

20    him.  I thought that was an open issue as well, which is why

21    Mr. McAlexander answers it, which is, as to the ballots, go to

22    slide 10.

23         This is what Mr. McAlexander said, is that they're

24    accessible only to the committee members and it's not for a

25    temporal period of time.
```

1    And we know that they're accessible only to the committee

2    members in perpetuity because, if we go to slide 14, JEDEC

3    produced these materials.  The way we were given access to

4    these materials in an evidenciarily sort of acceptable forum

5    was through JEDEC, and JEDEC treats them all perpetually as

6    Attorneys' Eyes Only, Confidential.

7            THE COURT:  Let me ask you this question.  In your

8    view, is the determination about what constitutes the relevant

9    public a fact question or a question of law?

10           MR. SHEASBY:  It's a question of law.  And the

11   reason for that is because they've answered the question

12   themselves.

13       This is their -- I'm going to do it in pieces.  It's

14   going to be too big.  This is their definition of a person of

15   ordinary skill in the art.

16       It's not the right page.

17       This is their definition of a person of ordinary skill in

18   the art.  It's -- and it was -- it's the same for all of them.

19   It's a Bachelor's degree in electrical engineering or the

20   equivalent education, and from two or three more years of

21   experience in integrated circuits, et cetera, et cetera.

22       So their definition of the relevant public is not a JEDEC

23   membership.  Their definition of the relevant public is a

24   much, much lower standard.  JEDEC is purely for companies and

25   for the people based on its membership requirements.

1          If you go to slide --

2                THE COURT:  But who might be a part or a member of

3     the relevant public is not necessarily the same thing as who

4     might be a person of ordinary skill in the art.  Is that not

5     true?

6                MR. SHEASBY:  Well, I think if you look at the --

7     the case on the subject, and I think their best case on the

8     subject is *SRI International.*

9          Go to slide 7.

10         So this was a summary judgment case.  So the Defendant in

11    that case was in a similar situation in which there were

12    people who were, quote, in the relevant public who he had

13    given it to -- he had given to them, but that still didn't

14    make it publicly accessible.  And so I don't think the fact

15    that -- the fact that someone in the, quote, relevant public

16    has access to it makes it publicly accessible.

17         In fact, if you look at their best cases on the subject,

18    slide 19 and 20, this is the relevant public.  The documents

19    were shared with joint venture members that were maintained in

20    confidence.  Those would not be prior art.  But the fact that

21    most, if not all, of the information was available without

22    restriction is what made it prior art.

23         So this -- they argued that that was the relevant public

24    because the joint invention members were some of these same

25    persons of ordinary skill in the art.  And they said that was

1    not enough to make something a prior art reference.

2        So I think under the Federal Circuit case law,

3    accessibility to the relevant public, the fact that individual

4    members of the relevant public had access to the document is

5    not the standard.  The standard is, based on their definition

6    of prior art, was it publicly accessible.

7            THE COURT:  All right.  Anything further?

8            MR. SHEASBY:  Nothing further, Your Honor.

9            THE COURT:  Okay.

10           MR. McKEON:  Your Honor, brief rebuttal response?

11           THE COURT:  I don't think so, Mr. McKeon.

12           MR. McKEON:  Okay.

13           THE COURT:  With regard to Document 209, Plaintiff's

14   motion for partial summary judgment finding that the JEDEC

15   materials are not publicly accessible, I'm going to deny that

16   motion.

17       I think there is a fact question as to who is the

18   relevant public, who has access.  There's too much at issue

19   here about the degree of difficulty or accessibility of

20   reaching this material.  I just don't believe it's appropriate

21   for treatment under Rule 56.  I'm going to deny the motion.

22       Counsel, before we break for lunch, because we're about

23   five minutes from the noon hour, I asked you, when I recessed

24   earlier, to confer with each other about what on the list of

25   disputed motions might be impacted by the Court's ruling on

1          THE COURT:  I don't permit testimony about prior

2    investigations or prior litigation, and a proceeding before

3    the ITC is litigation in the Court's view --

4          MR. MOSTELLER:  Correct.

5          THE COURT:  -- without leave of Court.  Now, if you

6    think the door's been opened or if you think there's a basis

7    in real time as the case unfolds before the jury to go into

8    something that I've told you as a general rule I don't permit,

9    you can always approach and ask leave.  And if I give you

10   leave, you have a clear path in front of you.

11        But without that, you're not and he's not to talk about

12   ITC proceedings, other litigation in Article III courts, other

13   administrative processes such as the Patent Trial and Appeal

14   Board.  None of those things are permitted under the Court's

15   limine practice without leave.

16        MR. MOSTELLER:  Understood, Your Honor.  And we have

17   no need to have Mr. Halbert provide testimony or opinions

18   about those prior investigations.

19        The purpose of the testimony that's given there in

20   paragraph 48 really relates to Samsung's willfulness defenses

21   and its defenses to indirect infringement as to the knowledge

22   and the intent prongs of Netlist's claims, specifically that

23   there are, amongst other obligations, that Netlist as a member

24   of JEDEC has to the organization is to disclose patents that

25   it is aware of, that it knows are relevant to particular

1    previously set on the 17th.  Go back 10 days and you get to

2    the 7th.  We're now on the 14th.  Go back 10 days, and you get

3    to the 4th.  So the first step in that process should be on

4    the 4th and not the 7th.  The second one should follow, what

5    is it, three days later?

6              MR. CORDELL:  Yes, sir.

7              THE COURT:  That would put it on the 7th.  So 4th

8    and the 7th instead of 7th and the 10th.

9         All right?

10             MR. CORDELL:  Thank you.

11             MR. SHEASBY:  Thank you, Your Honor.

12             THE COURT:  All right, Counsel.  We stand in recess

13   until tomorrow morning.

14             MR. SHEASBY:  Thank you, Your Honor.

15             (The proceedings were concluded at 5:15 p.m.)

16

17

18

19

20

21

22

23

24

25