**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| NETLIST, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO, LTD;<br>SAMSUNG ELECTRONICS AMERICA,<br>INC.; SAMSUNG SEMICONDUCTOR INC.,<br><br>        Defendants. | Civil Action No. 2:22-cv-00293-JRG<br>(LEAD CASE)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY, INC., MICRON<br>SEMICONDUCTOR PRODUCTS, INC., AND<br>MICRON TECHNOLOGY TEXAS LLC,<br><br>        Defendants. | Civil Action No. 2:22-cv-00294-JRG<br><br>**JURY TRIAL DEMANDED** |

**MICRON'S DAUBERT MOTION AND MOTION TO STRIKE
EXPERT TESTIMONY OF MR. DAVID KENNEDY**

██████████████████

## <u>TABLE OF CONTENTS</u>

Page

I.  INTRODUCTION ........................................................................................ 1

II. BACKGROUND ......................................................................................... 1

    A.  Samsung's Jury Verdict. ................................................................ 1
    B.  The ██████████ Agreement. ..................................................... 1
    C.  Mr. Kennedy's Prior Opinions Establish a Failure to Apportion. ..................................................................................... 2
    D.  Mr. Kennedy's Opinions Regarding Willfulness and Notice. ............................................................................................ 2
    E.  Mr. Kennedy's Improper Economic Opinions .......................... 3

III. LEGAL STANDARDS ............................................................................ 3

    A.  Rule 702/Daubert ......................................................................... 3

IV. ARGUMENT .......................................................................................... 3

    A.  The Court Should Strike Mr. Kennedy's Opinions Regarding the Samsung Litigation Jury Verdict ................................ 3
    B.  The Court Should Strike Mr. Kennedy's Opinion That the ████████████ Is Relevant to the Hypothetical Negotiation. ................................................................................... 6
    C.  The Court Should Strike Mr. Kennedy's Opinions Regarding DDR4 LRDIMMs Damages Because He Does Not Reliably Apportion Damages. .............................. 8
    D.  The Court Should Strike Mr. Kennedy's Opinions Regarding Willfulness and Netlist's February 2015 Slide Deck and April 2015 Slide Deck .............................. 10
    E.  The Court Should Strike Mr. Kennedy's Improper Economic Opinions. ..................................................................... 12

        1.  <u>Mr. Kennedy is not qualified to opine on complex economic issues such as market definition and effect on competition.</u> ..................................................... 12
        2.  <u>Mr. Kennedy provides economic opinions that are untethered to the facts and claims of this case.</u> ........................... 13

V.  CONCLUSION ....................................................................................... 15

i

████████████

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple v. Wi-LAN Inc.*,
    25 F.4th 960 (Fed Cir. 2022) ...................................................15

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
    435 F.3d 1356 (Fed. Cir. 2006)..................................................5

*Berlyn, Inc. v. Gazette Newspapers, Inc.*,
    214 F. Supp. 2d 530 (D. Md. 2002) ......................................12, 13

*Boltex M Co., L.P. v. Ulma Piping USA Corp.*,
    No. 4:17-CV-1400, 2019 WL 2716313 (S.D. Tex. June 28, 2019)........................12

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) ...................................................14

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).............................................................3, 14

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014)....................................................9

*Finjan, Inc. v. Sophos, Inc.*,
    No. 14-CV-01197-WHO, 2016 WL 4268659 (N.D. Cal. Aug. 15, 2016) ........................9, 10

*Illumina, Inc. v. Fed. Trade Comm'n*,
    88 F.4th 1036 (5th Cir. Dec. 15, 2023)............................................13

*Intell. Ventures II LLC v. Sprint Spectrum, L.P.*,
    No. l7-cv-00662-JRG, 2019 WL 1987172 (E.D. Tex. Apr. 12, 2019), adopted
    by 2019 WL 1979866 (E.D. Tex. May 2, 2019)........................................11

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    607 F. Supp. 3d 464 (D. Del. 2022) ...............................................4

*Klo-Zik Co. v. Gen. Motors Corp.*,
    677 F. Supp. 499 (E.D. Tex. 1987)................................................15

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)....................................................6, 14

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)....................................................6

*Maxell, Ltd. v. Apple Inc.*,
No. 5:19-CV-00036-RWS, 2021 WL 3021253 (E.D. Tex. Feb. 26, 2021) ............................4

*Netlist, Inc., v. Micron Technologies, Inc.*,
No. 2:22-cv-203-JRG (E.D. Tex.) ................................................................. *passim*

*Netlist, Inc. v. Samsung Elec. Co., Ltd.*,
No. 21-cv-463 (E.D. Tex.) ...........................................................................1

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ......................................................................6

*Retractable Techs. Inc. v. Abbott Lab'ys, Inc.*,
Case No. 5:05-CV-157, 2010 WL 11531436 (E.D. Tex. June 18, 2010) ...........................10

*Robinson v. Ethicon, Inc.*,
588 F. Supp. 3d 726 (S.D. Tex. 2022) ...........................................................14

*Saint Lawrence Commc'ns LLC v. ZTE Corp.*,
2017 WL 3476978 (E.D. Tex., May 8, 2017) ....................................................4

*Sprint Commc'ns Co., L.P. v. Time Warner Cable, Inc.*,
760 F. App'x 977 (Fed. Cir. 2019) ...............................................................5

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015) ..................................................................6

*Thomas v. PFG Transco, Inc.*,
501 F. Supp. 3d 437 (E.D. Tex. 2020) ..........................................................10

*United States v. Apple, Inc.*,
791 F.3d 290 (2d Cir. 2015) .....................................................................14

*United States v. Paramount Pictures, Inc.*,
334 U.S. 131 (1948) ............................................................................15

*Universal Surveillance Corp. v. Checkpoint Sys., Inc.*,
No. 5:11-CV-1755, 2015 WL 6082122 (N.D. Ohio Sept. 30, 2015) .............................13

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn*,
98 F. Supp. 2d 729 (W.D. Va. 2000) .........................................................12, 13

*VirnetX Inc. v. Apple, Inc.*,
No. 6:12-CV-0855-RWS, 2020 WL 11647826 (E.D. Tex. Sept. 1, 2020) .........................5

*Virnetx, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ..................................................................8

█████████████

*Wu v. Miss. State Univ.*,
No. 1:13-CV-00002-DMB-DAS, 2014 WL 5799972 (N.D. Miss. Nov. 7,
2014) ......................................................................................................................12

**Other Authorities**

Fed. R. Evid. 702 ..........................................................................................................3, 8

## I.    INTRODUCTION

Micron asks the Court to strike the following unsupported and unreliable opinions of Plaintiff's expert Mr. David Kennedy: (1) unreliable and extremely prejudicial opinions relating to the Samsung litigation verdict, (2) irrelevant and unreliable opinions that will not help the trier of fact regarding a ███████████████, (3) unreliable apportionment of DDR4 LRDIMMs, (4) unsupported and unreliable lay opinions regarding various documents outside of Mr. Kennedy's knowledge and expertise, and (5) economic opinions that are outside Mr. Kennedy's expertise and untethered to the facts of the case.

## II.    BACKGROUND

### A.    Samsung's Jury Verdict.

In this case, Mr. Kennedy relies on the $303,150,000 jury verdict from the case against a **different defendant** involving **different patents**, *Netlist, Inc. v. Samsung Elec. Co., Ltd.*, No. 21-cv-463 (E.D. Tex.), to infer infringement liability and assess damages against Micron. *See* Ex. 1 (Kennedy Opening Rpt.), ¶¶ 364-372, 688-696. Mr. Kennedy uses the jury award against Samsung even though he acknowledges that ████████████████████████████ here. *Id.*, ¶¶ 568, 917.

### B.    The ████████████████.

Mr. Kennedy also opines that ████████████████████████. is relevant to the present Hypothetical Negotiation between Netlist and Micron. *See, e.g.*, Ex. 1, ¶¶ 500-504, 697. This opinion rests entirely on a report by Dr. Mangione-Smith—Netlist's technical expert who failed to provide any technical comparison of the ████████████████ ██████████ *Id.*, ¶ 502 (citing Ex. 2 (Mangione-Smith Opening Rpt.)).  Dr. Mangione-Smith only vaguely opines that a person of skill in the art would understand that the ██████ ██████ is technically comparable to the Asserted Patents. Dr. Mangione-Smith also copies,

████████████████

practically verbatim, his report from a different lawsuit Netlist brought against Micron on **different** patents, *Netlist, Inc., v. Micron Technologies, Inc. et. al.*, No. 2:22-cv-203-JRG (E.D. Tex.) ("Netlist -203"). *See* Ex. 3 (Mangione-Smith Netlist -203 Rept.). Accordingly, none of Netlist's witnesses reliably addressed the technical comparability of any of the Asserted Patents in this case to the ████████████████.

### C.    Mr. Kennedy's Prior Opinions Establish a Failure to Apportion.

Mr. Kennedy rests his opinion entirely on a claim that Micron would ████████████ ████████████████████████████████████████████████ ████████████████. Ex. 1, ¶¶ 193–195, 202–204. But Mr. Kennedy has already claimed that exact feature for **different** patents in his report for the other litigation, Netlist -203. Ex. 4 (Kennedy Netlist -203 Rept.), ¶¶ 322–324, 332–334. Mr. Kennedy makes no attempt to apportion his current analysis to account for the technology he claimed was critical in his Netlist -203 report.  Ex. 1, ¶ 211. Even if Mr. Kennedy claims the patents in this case are ████████████████ ████, he was still required to apportion out the technology claimed in the prior patents, which he also claims are required to ████████████████.  Mr. Kennedy's failure to apportion renders his opinions here unreliable.

### D.    Mr. Kennedy's Opinions Regarding Willfulness and Notice.

Netlist's counsel asked Mr. Kennedy, an accountant, to review internal Netlist documents and opine on whether Micron knew about the asserted patents or was willfully blind to learning about them. Ex. 1, ¶¶ 49-52, 54-63, 593-594. None of these opinions rely on Mr. Kennedy's training or expertise as an accountant. If the documents were even admissible, which they are not, Mr. Kennedy is in no better position to draw any conclusions from them than jurors. The Court should strike his opinions on willfulness and notice because they are unreliable and likely to cause juror confusion.

### E.    Mr. Kennedy's Improper Economic Opinions

In Mr. Kennedy's December 21, 2023 Rebuttal Expert Report ("Rebuttal"), in response to the Opening Expert Report submitted by Micron's expert economist Dr. Mathew Lynde, Mr. Kennedy states that he was retained as an expert in "competition in technology markets" and requested to opine on issues of market definition, anticompetitive conduct, and harm to competition. Ex. 5 (Rebuttal), ¶¶ 12-13.  However, these are complex economic issues, the proper analysis of which requires economic expertise.  Mr. Kennedy is an accountant, not an economist. Mr. Kennedy has no economic training or expertise, and thus his opinions will not be helpful to this court.  To Micron's knowledge, Mr. Kennedy has not previously opined on these economic issues before. Moreover, Mr. Kennedy also offers opinions which are contrary or untethered to the facts of the case, supplying another basis for exclusion of his opinions.

## III.    LEGAL STANDARDS

### A.    Rule 702/Daubert.

An expert may testify only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).

## IV.    ARGUMENT

### A.    The Court Should Strike Mr. Kennedy's Opinions Regarding the Samsung Litigation Jury Verdict.

Mr. Kennedy bases a substantial amount of his opinion on a jury verdict last year against Samsung, a ***different defendant***, in a case involving ***different patents***. Ex. 1, ¶¶ 364-372, 688-696.

This Court has a standing motion *in limine* precluding parties from discussing other cases in which they are parties.[1] This standing order is well-reasoned. The prior jury verdict has low probative value that is substantially outweighed by the danger of undue prejudice.

"Evidence of prior verdicts 'can be prejudicial and must be treated with great care[.]'" *Maxell, Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2021 WL 3021253, at *6 (E.D. Tex. Feb. 26, 2021). Multiple and important differences exist between this case and the Samsung-Netlist case: (1) unlike this case, the Samsung-Netlist case involved a ***different defendant***, Samsung, and the fact that ████████████████████████████████████████████, (2) the Samsung-Netlist case involved completely ***different patents***, (3) the Samsung-Netlist case included sales of Samsung's HBM2 products, HBM3 products, and DDR5 products, which are not at issue here, nor are any analogous Micron products. Further, Mr. Kennedy improperly uses the $303,150,000 jury award from the Samsung Litigation where the jury found willful infringement on all different asserted patents to serve as a baseline for the determination of a reasonable royalty rate. Thus, Netlist seeks to unfairly prejudice Micron by "invit[ing] the jury here to defer to the [Samsung] jury's verdict, rather than discharging their duty to resolve the current dispute." *Id.* "Such a result would be inappropriate and constitutes unfair prejudice." *Id.*; *see also Saint Lawrence Commc'ns LLC v. ZTE Corp.*, 2017 WL 3476978, at *1 (E.D. Tex., May 8, 2017); MIL No. 13.

Jury verdicts are not "established and reliable data point[s]" for a hypothetical negotiation until they have at the very least been tested in post-trial briefing and on appeal. *Saint Lawrence*, 2017 WL 3476978, at *2; *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 504 (D.

---

[1] Standing Order on Motions *In Limine* in Cases Assigned to Chief Judge Rodney Gilstrap Involving Allegations of Patent Infringement and/or Breach of FRAND Obligations, as Well As Declaratory Judgment Actions Which Relate to Same, Court MIL No. 13.

██████████████████

Del. 2022). Further, although a prior verdict may, in rare cases, have probative value when the verdict occurs before the negotiation and has been tested on appeal, it loses value when it occurs after the hypothetical negotiation and is not final. *VirnetX Inc. v. Apple, Inc.*, No. 6:12-CV-0855-RWS, 2020 WL 11647826, *5 (E.D. Tex. Sept. 1, 2020). It loses even more probative value here because none of the patents asserted here were involved in the Samsung case leading to that verdict.

Mr. Kennedy relies on two Federal Circuit decisions to support his reliance on the Samsung jury verdict. Ex. 1, ¶ 365 n.351, 689 n.708 (*Sprint Commc'ns Co., L.P. v. Time Warner Cable, Inc.*, 760 F. App'x 977 (Fed. Cir. 2019*); Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356 (Fed. Cir. 2006)). This Court has differentiated these exact cases in situations like here, because in those cases "the admitted prior verdict occurred ***before*** the date of the hypothetical negotiation." *VirnetX*, 2020 WL 11647826 at *5 (emphasis added). Here, Mr. Kennedy contends that the date of hypothetical negotiation is either ███████████████████████████████████ ████████████████████████ for the accused products. Ex. 1, ¶¶ 594–598. The Samsung verdict indisputably occurred later on April 21, 2023. *Id.*, ¶ 364. Additionally, in both cases that Mr. Kennedy relies upon, there was an overlap of patents found infringed in the jury verdict and asserted patents. Here, ***none of the asserted patents*** were asserted in the Samsung-Netlist case.

Mr. Kennedy also incorrectly relies on the "Book of Wisdom" doctrine, which he contends permits court to "████████████████████████████████████████ ██████████ *Id.* ¶¶ 370–372. But this Court has made clear that "that doctrine—often called the book-of-wisdom doctrine—relates only to probative value and is typically applied to infringers' sales." *VirnetX*, 2020 WL 11647826 at *5. "Even if verdicts occurring after the date of the hypothetical negotiation can be probative, their probative value must not be substantially

████████████████

outweighed by a risk of unfair prejudice." *Id.* Moreover, Mr. Kennedy's forward-looking "book of wisdom" analysis also completely ignores the subsequent invalidation of the patents on which that verdict rests.

Thus, the Court should strike Mr. Kennedy's opinions because Mr. Kennedy attempts to anchor or base a royalty on a jury verdict in another case against another defendant based on different patents that has no probative value whatsoever and is highly prejudicial.

**B.    The Court Should Strike Mr. Kennedy's Opinion That the ███████ ███████ Is Relevant to the Hypothetical Negotiation.**

Mr. Kennedy relies on an unsupported and conclusory opinion of Dr. Mangione-Smith to assert that the ██████████ is a comparable license for a hypothetical negotiation. Ex. 1. ¶ 502. But the ██████████ could only be relevant if technology comparability exists between the Asserted Patents and the patents licensed by Rambus. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). Dr. Mangione-Smith did not compare the specific Asserted Patents to the patents in the ██████████ to establish any discernible link to the claimed technology at issue. Ex. 2, Ex. E, ¶¶ 153-163. Thus, Mr. Kennedy's corresponding opinions are completely untethered to the facts of the case. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283 (Fed. Cir. 2015); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010) (finding district court erred in considering damages opinions when expert "used licenses with no relationship to the claimed invention to drive the royalty rate up to unjustified [] levels.").

Dr. Mangione-Smith provided no analysis that the Asserted Patents share any technical comparability to ██████████████████████ that he analyzed. Ex. 2, Ex. E, ¶¶ 156-63. Dr. Mangione-Smith provides only vague, "loose" and unsupported opinions that "a person of skill in the art would understand that this is technically comparable to the Asserted Patents." Ex. 2, ¶¶ 159,163; *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed.

█████████████████

Cir. 2012). By failing to compare the ██████████████ to the asserted patents, Dr. Mangione-Smith has not reliably determined whether the ██████████████ is technically comparable to the '912 and '417 Patents.

Additionally, Dr. Mangione-Smith copies, almost verbatim, his opinion on the comparability of the ██████████████ from his Netlist -203 report. *See* Ex. 3 Ex. C, ¶¶ 153-163. In Netlist -203, Dr. Mangione-Smith defined the subject of the '506 and '339 Patents—the different patents in the Netlist -203 case directed toward DDR4. *Id.*, ¶ 2. Specifically, in Netlist -203, Dr. Mangione-Smith opined that "the '506 and '339 Patents are directed towards ████████████ ██████████████████████ *Id.* In the current proceeding, Dr. Mangione-Smith opines that ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ Ex. 2, Ex. E, ¶ 2. He also opines that ████████ ████████████████████████████████████████████ ████████████████████████████████████████ ██████████████ *Id.*

Despite conceding that the subject matter of the DDR4 patents at issue in the other Netlist -203 litigation is ***different***, Dr. Mangione-Smith reuses his report and opinion almost verbatim from that case in the current proceeding. *Compare* Ex. 3, Ex. C ¶¶153-163, *with* Ex. 2, Ex. E ¶¶ 153-163. The only difference is that in Netlist -203, Dr. Mangione-Smith compared the technology of the '506 patent to the ██████████████ patents with the required level of specificity. *See* Ex. 3, Ex. C ¶¶ 159, 163. In the current proceeding, Dr. Mangione-Smith does not provide this analysis and only provides vague, "loose" and unsupported opinions that "a person of skill in the art would understand that this is technically comparable to the Asserted Patents," without any explanation of

how the ███████████ is technically comparable to the '912 or '417 Patents. Ex. 2, Ex. E ¶¶, 159, 163.

Congress amended Fed. R. Evid. 702 in December 2023 to "emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee's note to 2023 amendment. This amendment clarified that critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of admissibility and not weight. *Id*. By copying his report from Netlist -203—despite conceding that the technology of the asserted patents is different between the two litigations—and by only providing vague, loose, and unsupported opinions that a person of skill in the art would understand that this is technically comparable to the Asserted Patents, Netlist has not demonstrated that it is more likely than not that Mr. Kennedy's "opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Thus, the Court should exclude Mr. Kennedy's opinions tied to the ███████████

### C.    The Court Should Strike Mr. Kennedy's Opinions Regarding DDR4 LRDIMMs Damages Because He Does Not Reliably Apportion Damages.

The Court should strike Mr. Kennedy's opinions regarding DDR4 LRDIMMs because he does not reliably apportion the value of the asserted patents. Mr. Kennedy has twice claimed the **same damages** arising from Micron's sales of DDR4 LRDIMMs, once for infringement of the Patents-in-Suit in this matter, and once for the technology of two other Netlist patents that were at issue in a **different litigation** (and subsequently dropped by Netlist after the Patent Office found all claims to be unpatentable).

A proper damages analysis must apportion the value of the accused technology in the accused products. *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014). "[T]he

ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). When multiple patents are asserted on the same accused products, an expert must apportion the value of multiple patents that allegedly covered the same feature. *See Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2016 WL 4268659, at *4 (N.D. Cal. Aug. 15, 2016) ("This method assumes that both patents add the full value of that feature to the SAV Engine. As discussed, this is not possible under patent law; therefore, this apportionment calculation is not a reliable methodology for calculating a reasonable royalty."). Specifically, it is "improper[] [to] inflate[] the royalty base by double or triple counting revenue attributable to certain features of the accused products." *Id*. at *3.

Mr. Kennedy concludes that Micron has realized gains from the sale of DDR4 LRDIMM products that infringe the '912 and '417 Patents. Ex. 1, ¶¶ 193–195, 202–204. Mr. Kennedy opines that Micron would ████████████████████████████████████████ ████████████████████████████████████. *Id*. However, in Netlist -203, Mr. Kennedy made exactly the same claim, arguing that the ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. Ex. 4, ¶¶ 322–324, 332–334. Mr. Kennedy even admits—in an attempt to improperly use the Samsung verdict—that the asserted patents "████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████ Ex. 1, ¶ 365. Mr. Kennedy has ***twice*** claimed these different patents are each solely responsible for the exact same technical benefit and same damages that arise from Micron's

sales of DDR4 LRDIMMs, once for infringement of the Patents-in-Suit in this matter, and once for technology of the '339 and '506 Patents (now invalid).

Mr. Kennedy does not apportion the value of multiple patents that allegedly cover the same DDR4 LRDIMM features. Ex. 1, ¶ 211 ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ *See Finjan, Inc.*, 2016 WL 4268659, at *4. Mr. Kennedy provides no explanation for why he can double count the revenue attributable to the exact same alleged incremental technology advance for DDR4 LRDIMM features. For these reasons, Micron respectfully asks the Court to strike Mr. Kennedy's opinions regarding DDR4 LRDIMM products.

### D.    The Court Should Strike Mr. Kennedy's Opinions Regarding Willfulness and Netlist's February 2015 Slide Deck and April 2015 Slide Deck.

The Court should strike Mr. Kennedy's opinions regarding willfulness and notice, wherein Mr. Kennedy—an accountant—just characterizes certain internal Netlist documents provided to him by Netlist's counsel to opine about Micron's alleged knowledge of patents in suit. Ex. 1, ¶¶ 49-52, 54-63, 593-594. If documents Mr. Kennedy summarizes are relevant and admissible, the jury is perfectly capable of assessing them without "expert" testimony, which utilizes none of Mr. Kennedy's expertise.

Mr. Kennedy improperly speculates about alleged meetings he did not attend to exclusively opine on Micron's alleged state of mind. "An expert witness's credentials put him in no better position to opine as to Defendant's state of mind than the jury." *Thomas v. PFG Transco, Inc.*, 501 F. Supp. 3d 437, 443 (E.D. Tex. 2020). Indeed, these types of opinions are "matters which a jury is capable of understanding without an expert's help." *Retractable Techs. Inc. v. Abbott Lab'ys, Inc.*, Case No. 5:05-CV-157, 2010 WL 11531436, at *6 (E.D. Tex. June 18, 2010).

Specifically, Mr. Kennedy discusses two slide decks from February 2015, which the Court excluded in its Netlist -203 Report and Recommendation, and April 2015 that Netlist apparently found in its ***own files*** and uses those documents alone to speculate about what was allegedly said during meetings between Netlist and Micron over 8 years ago.  Mr. Kennedy was not present at any such meeting, nor has he claimed to have reviewed the testimony of ***any*** witness who did attend. *See, e.g.*, Ex. 1, ¶ 49-52.  Instead, Mr. Kennedy relies solely on Netlist ***internal*** emails related to the February 2015 and April 2015 slide decks, but ***at best***, these emails simply demonstrate that there may have been a meeting between Micron and Netlist in February 2015 and/or April 2015 time frame. The emails simply do not disclose the specifics of any information shared between the parties or the content of any presentation potentially given. *Id*. at n.55-56.

Moreover, the slide decks are irrelevant to Micron's knowledge or state of mind of the '417 patent. Mr. Kennedy uses the February 2015 and April 2015 slide decks to claim Micron knew about Netlist's technology. *Id*., ¶¶ 54-63. But Netlist did not file the '417 patent until 2019. The slide decks prepared ***four years earlier*** cannot possibly have any bearing on Micron's knowledge of the '417 patent. Mr. Kennedy attempts to side-step this by claiming (without any admissible support) that Netlist discussed its '537 patent with Micron, which was a parent application to the '417 patent. That is irrelevant—a claim of willfulness must be based on the patents in this case. *Intell. Ventures II LLC v. Sprint Spectrum, L.P.*, No. l7-cv-00662-JRG, 2019 WL 1987172, at *2 (E.D. Tex. Apr. 12, 2019), adopted by 2019 WL 1979866 (E.D. Tex. May 2, 2019).

For the same reason this Court, in *Samsung v. Netlist,* similarly struck the opinions of Dr. Mangione-Smith regarding Samsung's alleged state of mind as unreliable. Ex. 6 (*Samsung-Netlist* Order), ¶ 14. The situation is more pronounced here, as Mr. Kennedy exclusively uses the inadmissible and highly speculative 2015 slide decks to form his lay opinion on Micron's alleged

state of mind or knowledge of the patents. Ex. 1, ¶¶ 54-63, 541, 594. Even though the '912 patent is listed in the slide decks, it is improper for Mr. Kennedy, as a damages expert, to opine on Micron's state of mind. Accordingly, Micron respectfully requests that the Court strike Mr. Kennedy's opinions regarding Netlist's February 2015 and April 2015 slide decks, including those set forth in ¶¶ 49-52, 54-63, 593-594 of his opening report.

### E.    The Court Should Strike Mr. Kennedy's Improper Economic Opinions.

#### 1.    Mr. Kennedy is not qualified to opine on complex economic issues such as market definition and effect on competition.

Mr. Kennedy has no basis for delivering antitrust economic opinions.  Mr. Kennedy is a Certified Public Accountant (CPA).  His CV does not disclose any case where he opined on market definition and issues of harm to competition, and Micron is not aware of any.  He has no training in economics and has not taught or published in the antitrust economics field. Similar characteristics have resulted in the exclusion of purported experts.  *See, e.g.*, *Wu v. Miss. State Univ.*, No. 1:13-CV-00002-DMB-DAS, 2014 WL 5799972, at *15-16 (N.D. Miss. Nov. 7, 2014).

Despite these shortcomings, Mr. Kennedy opines on economic issues relevant to Micron's antitrust counterclaim, such as on the market definition proffered by Micron's PhD economist, Dr. Lynde. Ex. 5 at 11-17. Mr. Kennedy's training as a CPA does not qualify him to render such opinions.  *See, e.g.*, *Boltex M Co., L.P. v. Ulma Piping USA Corp.*, No. 4:17-CV-1400, 2019 WL 2716313, at *2 (S.D. Tex. June 28, 2019) (holding that a CPA could not  opine on the relevant market); *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F. Supp. 2d 530, 537-38 (D. Md. 2002) (expert "devoid of specific education, training, or experience in economics or antitrust analysis" unqualified to opine on the relevant market); *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn*, 98 F. Supp. 2d 729, 732-33 (W.D. Va. 2000) (one with experience in the mineral market but not

in antitrust "would not possess the skill and training of a professional economist necessary to define a relevant market for antitrust purposes").

Permitting opinions outside an expert's qualifications is not helpful to the jury and, in fact, may mislead them. For example, Mr. Kennedy criticizes Dr. Lynde for not conducting an economic ██████████████████ Ex. 5 at 17. But this "criticism" underscores Mr. Kennedy's lack of economic training. As the Fifth Circuit has made clear, a hypothetical monopolist test is not required to define a relevant market. *Illumina, Inc. v. Fed. Trade Comm'n*, 88 F.4th 1036, 1050 (5th Cir. Dec. 15, 2023). *See also Universal Surveillance Corp. v. Checkpoint Sys., Inc.*, No. 5:11-CV-1755, 2015 WL 6082122, at *8–9 (N.D. Ohio Sept. 30, 2015).

Similarly, none of Mr. Kennedy's credentials qualify him to opine that ████████████



████████████████████████████████████████████ Ex. 5, ¶¶ 16, 134. He improperly opines on the question of ████████████████████ *see, e.g.*, Ex. 5, ¶ 103, and claims that ████████████████████████████████████████ ████████████████████████████████████████ Ex. 5, ¶ 177. This is improper.

Any business experience Mr. Kennedy may have in the semiconductor industry and with intellectual licensing transactions does not qualify him to opine on issues of competition and market definition. *See Berlyn*, 214 F. Supp. 2d at 536. ( "general business experience unrelated to antitrust economics does not render a witness qualified to offer an opinion on complicated antitrust issues such as defining relevant markets"); *Virginia Vermiculite, Ltd.*, 98 F. Supp. 2d at 732-33 (noting differences between an analysis for business investment and antitrust purposes).

        **2.**    <u>Mr. Kennedy provides economic opinions that are untethered to the facts and claims of this case.</u>

Mr. Kennedy also proffers opinions that are untethered to the facts and claims of the case, which also has been grounds for exclusion of opinions even by otherwise qualified experts. *See,*

███████████████████

*e.g.*, *LaserDynamics, Inc.*, 694 F.3d at 51 (expert excluded where assumed royalty rate was untethered from the patented technology at issue); *United States v. Apple, Inc.*, 791 F.3d 290, 335 n.24 (2d Cir. 2015) (exclusion of expert testimony which failed to "account for the rapid growth and change in [the] industry"); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) (opinions should have been excluded for failure to "incorporate all aspects of the economic reality of the stern drive engine market").

For example, Mr. Kennedy attacks Micron's antitrust counterclaim on the basis that it ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Ex. 5, ¶ 40. But this erroneous opinion does not engage with what both Micron's pleading and Dr. Lynde's expert report actually say.  Micron pleaded *multiple* technology markets, noting that there were ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Dkt. 122 at 36.  Dr. Lynde's expert report was in accord, noting that the relevant technology markets ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Ex. 7 (Lynde Opening Report), ¶ 74.  In short, Mr. Kennedy's report is inconsistent with Micron's counterclaim, leading him to erroneous opinions.  Ex. 5, ¶ 40.

Mr. Kennedy also bases his opinions on facts that are irrelevant to the claims at issue.  This too is the basis for exclusion under *Daubert*.  *See, e.g.*, *Robinson v. Ethicon, Inc.*, 588 F. Supp. 3d 726, 736-38 (S.D. Tex. 2022) (excluding opinions regarding inadequacy of warnings to patients where duty at issue was to warn *physicians*).  He criticizes Dr. Lynde for purportedly "█████████

14

██████████

███████████████████████████████████████████████████████

███████████  Ex. 5, ¶ 53.  But this issue is irrelevant.  This has nothing to do with Micron's counterclaim, which is not based on any asserted fraud on JEDEC but, rather, is based on Netlist's tying of potentially essential and nonessential patents as well as the collusive agreement between Netlist and Hynix.  Dkt. 122 at 31-40.  As another example, Mr. Kennedy opines that any Netlist market power  is not because of any  standard, but because ████████████████████████

████████████████████  Ex. 5, ¶ 106.  However, whatever the reason for Netlist's market power, it is guilty of illegal tying if it bundles potentially standard essential with nonessential patents, as it has done.  *See, e.g.*, *United States v. Paramount Pictures, Inc.*, 334 U.S. 131 (1948).  Mr. Kennedy's opinion as to how that power was obtained is a red herring.  *Klo-Zik Co. v. Gen. Motors Corp.*, 677 F. Supp. 499, 504-05 (E.D. Tex. 1987) (patents, high market share, or even offering a unique product that competitors are unable to offer can all give rise to market power that could support a claim of anticompetitive tying).

Mr. Kennedy has, in other cases, had his opinions excluded because they were not congruent with the facts of the case.  *See Apple v. Wi-LAN Inc.*, 25 F.4th 960, 974 (Fed Cir. 2022) ("Mr. Kennedy's methodological and factual errors in analyzing the comparable license agreements render his opinion untethered to the facts of this case.  Thus, Mr. Kennedy's damages testimony should have been excluded."). The same result should follow here.

## V.    CONCLUSION

For the foregoing reasons, Micron respectfully requests that the Court grant Micron's motion.

Dated: January 16, 2024

Respectfully submitted,

WINSTON & STRAWN LLP


*/s/ Michael R. Rueckheim*
Thomas M. Melsheimer
State Bar No. 13922550
TMelsheimer@winston.com
Natalie Arbaugh
State Bar No. 24033378
NArbaugh@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

David P. Enzminger
denzminger@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael R. Rueckheim
State Bar No. 24081129
MRueckheim@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

Matthew Hopkins (*pro hac vice*)
State Bar No. 1500598
mhopkins@winston.com
**WINSTON & STRAWN LLP**
1901 L Street, N.W.
Washington, D.C. 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

Juan C. Yaquian
State Bar No. 24110559

JYaquian@winston.com
**WINSTON & STRAWN LLP**
800 Capital Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Wesley Hill (State Bar No. 24032294)
wh@wsfirm.com
Andrea Fair (State Bar No. 24078488)
andrea@wsfirm.com
Charles Everingham IV (State Bar No. 00787447)
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DEFENDANTS
MICRON TECHNOLOGY, INC.,
MICRON SEMICONDUCTOR PRODUCTS,
INC., MICRON TECHNOLOGY TEXAS, LLC**

## CERTIFICATE OF SERVICE

I certify that, on January 16, 2024, a copy of the foregoing was served on all counsel of record via the Court's ECF system and email.

*/s/ Michael R. Rueckheim*
Michael R. Rueckheim

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Michael R. Rueckheim*
Michael R. Rueckheim

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Micron and Netlist met and conferred regarding Defendants' Daubert Motion and Motion to Strike Expert Testimony of Mr. David Kennedy. Netlist's counsel indicated that Netlist opposes Micron's motion.

*/s/ Michael R. Rueckheim*
Michael R. Rueckheim