**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-293-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD.; | ) | (Lead Case) |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC.; SAMSUNG SEMICONDUCTOR | ) | ██████████████ |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-294-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC.; | ) | |
| MICRON SEMICONDUCTOR | ) | |
| PRODUCTS, INC.; MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**NETLIST, INC.'S OPPOSITION TO SAMSUNG'S MOTION FOR
PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT
CONCERNING THE '912 PATENT (DKT. 353)**

**TABLE OF CONTENTS**

Page

I.      RESPONSE TO SAMSUNG'S STATEMENT OF UNDISPUTED FACTS ...................1

II.     ARGUMENT ..........................................................................................................................2

        A.      Samsung's Accused Products Directly Infringe Claim 16 ................................2

                1.      The Accused Memory Modules Are ███████████████████
                        █████████████ Recited In Claim 16 ................................2

                2.      It Is Samsung, Not Netlist, That Is Attempting To Inject An Unsupported
                        Claim Construction Into the Case ....................................................4

                3.      Samsung's "Legal Insufficiency" Argument Fails ...........................9

        B.      Samsung's RDIMM Products Infringe the '912 Patent ...................................11

                1.      The Accused RDIMM Modules ████████████████████
                        █████████████████████████████.........11

                2.      Samsung Fails to Show Entitlement to Summary Judgment on Doctrine of
                        Equivalents................................................................................12

                3.      Samsung's Complaints about New Theories Are Wrong and Irrelevant to
                        Summary Judgment .....................................................................14

III.    CONCLUSION ..............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fantasy Sports Props. Inc. v. Sportsline.com, Inc.*,
   287 F.3d 1108 (Fed. Cir. 2002) ............................................................................. 10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
   344 F.3d 1359 (Fed. Cir. 2003) ........................................................................ 13, 14

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010) .......................................................................... 6, 7

*Hewlett Packard Co. v. Bausch & Lomb Inc.*,
   909 F.2d 1464 (Fed. Cir. 1990) ............................................................................. 5

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
   370 F.3d 1131 (Fed. Cir. 2004) (en banc) ........................................................... 13

*HTC Corp. v. IPCom GmbH & Co., KG*,
   667 F.3d 1270 (Fed. Cir. 2012) ............................................................................. 8

*Intervet Inc. v. Merial Ltd.*,
   617 F.3d 1282 (Fed. Cir. 2010) ........................................................................... 14

*INVT SPE LLC v. Int'l Trade Commission*,
   46 F.4th 1361 (Fed. Cir. 2022) ................................................................... 7, 9, 10, 11

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
   520 F.3d 1367 (Fed. Cir. 2008) ............................................................................. 8

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
   2010 WL 1485326 ............................................................................................... 13

*Silicon Graphics, Inc. v. ATI Techs., Inc.*,
   607 F.3d 784 (Fed. Cir. 2010) .......................................................................... 6, 7, 9

*UltimatePointer, L.L.C. v. Nintendo Co., Ltd.*,
   816 F.3d 816 (Fed. Cir. 2016) ............................................................................. 7, 8

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
   425 F.3d 1366 (Fed. Cir. 2005) ........................................................................... 16

*Whirlpool Corp. v. TST Water, LLC*,
   2018 WL 1536875 ............................................................................................... 13

Samsung does not dispute that its accused memory modules ██████████████ ██████ recited in asserted claim 16, but asks the Court to enter summary judgment of infringement because its ███████████████████████████████████████████. Apparatus claim 16 does not require the accused memory module to be inserted into a host computer, activated, or "used" by an end user in order to be infringed; the fact that the Samsung accused memory modules ███████████████████████████████████████ ███████████████████ recited in the claim is sufficient to find infringement based on Samsung's sale of the claimed apparatus.

In the alternative, Samsung seeks summary judgment of noninfringement as to a subset of accused products (the "RDIMM" modules) based on a mischaracterization of Netlist's infringement theory. In particular, Samsung contends that the claim requires the recited "circuit" to transmit a "command signal" and that Netlist's infringement theory is ████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████. Samsung's entire argument is based on a faulty premise, because Netlist's infringement analysis clearly explains that ██████████ ████████████████████████████████████████████████████████ ███████████████████████████████ Though the Court need not even reach the merits of the argument, Samsung also fails to demonstrate an absence of triable issue of fact even with respect to its ████████████████ explanation, providing further reason to deny the motion.

## I.    RESPONSE TO SAMSUNG'S STATEMENT OF UNDISPUTED FACTS

1-3. Not disputed.

4.    Not disputed based on Netlist's understanding is that the accused products are either not connected to a host system and/or not connected to power at the time of sale.

5.  *See* Resp. to Fact #4; Netlist's understanding is that the accused products are unpowered and thus not in any "mode" at the time of sale.

6.  *See* Resp. to Fact #4; Netlist's understanding is that the accused products are unpowered and thus not in any "mode" at the time of sale.

7.  Disputed. *See, e.g.*, Ex. 1, ¶¶ 79-80 (citing, among others things, ███████████████████ ████████████████████████████); Ex. 2, 71:4-72:19; Ex. 3, ¶¶ 95-97.

8.  Disputed. *See* evidence cited regarding Fact #7.

9.  Not disputed.

10. Not disputed that the claimed ██████████████████████.

11. Disputed to the extent that Samsung is contending the infringement contentions <u>only</u> identify the ███████████████████████████████████████████████

12-13. Not disputed.

14. Disputed. *See, e.g.*, Ex. 3, ¶ 72.

15-16. Not disputed.

## II.    ARGUMENT

Samsung's motion for summary judgment should be denied because there is at least a genuine dispute as to material issues of fact regarding infringement of the '912 patent.

### A.    Samsung's Accused Products Directly Infringe Claim 16

#### 1.    The Accused Memory Modules Are Manufactured And Sold With Circuitry Implementing The Logic Recited In Claim 16

Claim 16 of the '912 patent is directed to a "memory module connectable to a computer system [] comprising" a "circuit" including a "logic element" that implements certain recited logic. *See* Ex. 4, cl. 16. Relevant to Samsung's non-infringement arguments here, the claimed circuit comprises a "logic element receiving a set of input control signals from the computer system . . . [and] generating a set of output control signals in response to the set of input control signals . . . wherein the circuit

further responds to a command signal and the set of input signals from the computer system by . . . transmitting the command signal to at least one DDR memory device . . . wherein the command signal is transmitted to only one DDR memory device at a time." *Id.*

The accused Samsung products ███████████████████████. As explained in Dr. Mangione-Smith's report, the ████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████████ *See, e.g.,* Ex. 3, ¶¶ 23-26. Netlist's infringement contentions—which Samsung has had for over a year—clearly identify Samsung's ████████████ ██████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████ *See, e.g.,* Ex. 5 at 12-13. As explained in the infringement contentions, based on the setting of a ████████ █████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████████ for example, one ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ █████████████████████████████ as recited in claim 16. *Id.* at 33-36.

Samsung's argument that these modes are ███████████████ ignores the plain language of the claim, which recites an apparatus containing a "circuit" including a "logic element" implementing the recited functions of, e.g., receiving a set of input control signals and generating a corresponding set of output control signals according to the claim. Samsung's own witnesses—including its corporate designee on the operation of the accused memory modules, Mr. Jung—████████████████████ ███████████████████████████████    ████████████████████████



Ex. 6 (2022-09-28 Seungmo Jung Tr.), at 83:1-11.

*Id.*, at 83:18-24.

*Id.*, at 14:25-15:4. Mr. Jung's testimony is consistent with Samsung's own documentation and the documentation of its hardware vendors that ████████████████████████. *See, e.g.*, Ex. 7 at 1 ████████████████████████████; Ex. 8, at 1 ████████████████████████████████████ Ex. 9, at 64 ████████████████████████. As explained by Dr. Mangione-Smith, this ████████████████████████████████████████ ████████████████████ ████████████████████████ ████████████████████████████████████████ ████████████████ *See, e.g.*, Ex. 3 ¶¶ 39-40. Dr. Mangione-Smith's analysis, supported by documentary and testimonial evidence from Samsung's own witnesses, is more than sufficient to create a triable issue of fact as to whether the Samsung accused products implement the claimed ████

> **2.    It Is Samsung, Not Netlist, That Is Attempting To Inject An Unsupported Claim Construction Into the Case**

The premise of Samsung's motion for summary judgment is that because the claims use

present-tense words like "receiving" and "transmitting" to describe the functionality implemented into the "logic element," the claim can only be infringed by a memory module that is installed in a computer system and actively receiving signals sent by the host computer. *See, e.g.*, Mot. at 7. Samsung claims this is the only reasonable interpretation of the claim and faults Netlist for not seeking a contrary construction during *Markman*. *See id.* But the claim, on its face, is directed to a "**memory module** connectable to a computer system," not "a **computer system comprising a memory module**." *See* Ex. 4, cl. 16. Netlist's infringement theory, as expressed in its infringement contentions as well as its expert report, thus focused on the ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████ That is consistent with the specification's repeated discussion of the "memory module 10" being "connectable to a computer system (not shown [in the figures])" and comprising a "printed circuit board [that] is mountable in a module slot of the computer system" so that the computer system can "configure the memory controller properly for maximum reliability and performance," *see* Ex. 4, at 5:5-9; 6:4-5, 9:32-38, and in accord with the principle "apparatus claims cover what a device is, not what a device does." *Hewlett Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990).

Despite being well-aware of Netlist's infringement theory, Samsung did not seek claim construction attempting to limit apparatus claim 16 to a memory module that has been installed in a computer system and "actually operating" and receiving signals "sent by the computer," as it asks the Court to do now. *See, e.g.*, Mot. at 7. The first time Samsung revealed such a contention was on November 6, 2023—over a month after the *Markman* hearing and less than two weeks before the close of discovery—when it supplemented its interrogatory responses to suggest, for the first time, that the ████████████████████████████████████████████████████████ ███████████████████████████████████████████ and that the accused products ████████████ ████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ *See* Ex. 10, at 12-13.

As explained in detail in Netlist's opening expert report regarding infringement, ████████

████████████████████████████████████████████████████

██████████████████████████████████ Moreover, Samsung's new theory makes no sense, as the claim is directed to a "memory module," and a memory module in a vacuum obviously cannot send or receive any signals. Samsung's logic would result in a memory module alternating between "infringing" and "non-infringing" when the module is inserted into and removed from another apparatus—an absurd interpretation of an apparatus claim that the Federal Circuit has repeatedly rejected. *See, e.g.*, *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 794 (Fed. Cir. 2010) ("Where, as here, a product includes the structural means for performing a claimed function, it can still infringe 'separate and apart' from the operating system that is needed to use the product."); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1203-1205 (Fed. Cir. 2010) (rejecting argument that "'locked' or disabled products cannot infringe apparatus claims" and holding that the "fact that users needed to 'activate the functions programmed' . . . does not detract from or somehow nullify the existence of the claimed structure in the accused [products]").

Samsung's interpretation is also not based on a person of ordinary skill in the art's understanding of the patent. As noted above, the claim at issue clearly describes the claimed apparatus as a "memory module" which is "**connectable to**," i.e., distinct from, a "computer system." *See* Ex. 4, cl. 16. Samsung does not present any evidence suggesting that those of skill in the art would evaluate whether a device is a "memory module" or not based on whether it is actively receiving signals and being provided input from a memory controller. Instead, Samsung asserts that because the claims use "present-tense" language to describe the logic implemented by the logic element, e.g., "the logic element <u>receiving</u> a set of input control signals from the computer system," that the accused device must be "actually operating" and receiving "sent by the computer" in order to infringe the claim. *See,*

- 6 -

*e.g.*, Mot. at 7; Ex. 10, at p. 12-13.

Samsung's cited cases do not set forth any such rule. The primary case cited in support, *INVT SPE LLC v. Int'l Trade Commission*, 46 F.4th 1361 (Fed. Cir. 2022), rejected the proposition that the use of "present-tense verbs," or the absence of phrases such as "for performing," compelled any particular understanding of claims, noting that "we have not required claims to adhere to a specific grammatical form to find that the claim is drawn to capability." *Id.* at 1372-73. The Federal Circuit in *INVT* also distinguished cases such as *Ball Aerosol* and *Cross Medical*, which "involve[d] mechanical apparatus claims," from "computer and software claims [which] typically use functional language to define the invention" and do not "require[e] actual performance of those operative steps for infringement purposes." *See id.* at 1372; *see also id.* at 1373 (referencing the Federal Circuit's holdings in *Silicon Graphics* that an "apparatus claim directed to a computer, claimed in functional terms, is [] infringed so long as the product is 'designed in such a way as to enable a user of that [product] to utilize the function . . . without having to modify [the product]'" and in *Finjan* that products sold with "locked software modules still infringed the device claims" because the claims "did not require software components be activate or enabled").

Samsung attempts to distinguish these cases by arguing that they involved claims using a "present participle" (e.g., "that receives," in *INVT*) rather than the "present continuous tense" (e.g., "logic element receiving," here). *See* Mot. at 8. As noted above, *INVT* itself warns against requiring claims to "adhere to a specific grammatical form." *See* 46 F. 4th at 1373. But Samsung's "present continuous tense" theory is also contradicted by numerous other Federal Circuit cases. For example, in *UltimatePointer, L.L.C. v. Nintendo Co., Ltd.*, 816 F.3d 816 (Fed. Cir. 2016), a claim reciting "a handheld device including: an image sensor, **said image sensor generating data . . .**" was directed to "the capability of that structure rather than the activities of the user" and thus "only indicate that the associated structures have this capability (for example, the image sensor and processor in claim 1)

and do not require that any data be actually generated by the user." *Id.* at 827. Like the claim in *UltimatePointer*, claim 16 here describes what logic must be implemented in the claimed circuit to act on signals that may be sent by a host computer, but the claim does not actually require that the claimed memory module apparatus actually be inserted into a host computer or that the host computer (which is not part of the claimed apparatus) send any particular signals. Similarly, in *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270 (Fed. Cir. 2012), the Federal Circuit held that a claim reciting a "mobile station for use with a network . . . **storing** link data . . . **holding** in reserve [resources] . . . **maintaining** a storage of link data . . . [and] **causing** the resources of the first base station to remain held in reserve" "merely establish[ed] those functions as the underlying network environment in which the mobile station operates." *Id.* at 1274-77. And in *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367 (Fed. Cir. 2008), the Federal Circuit examined a claim that, just like claim 16 here, recited an apparatus comprising a "logic" element and using "present continuous tense" to describe the functionality implemented by that logic element. *See id.* at 1371-72 ("A pipelined processor for executing instructions comprising: a conditional execution decision logic pipeline stage, . . . the conditional execution decision logic pipeline stage **performing** a Boolean algebraic evaluation of the condition code and . . . **producing** an enable-write with at least two states . . ."). It concluded that this claim was "clearly limited to a pipelined processor possessing the recited structure and *capable* of performing the recited functions." *Id.* at 1375. The claim at issue here uses the same structure to describe the logic that must be implemented into the claimed memory module's circuitry—e.g., a "circuit comprising a logic element and a register, the logic element receiving a set of input control signals from the computer system." Ex. 4, cl. 16. The only antecedent basis for "the computer system" is the preamble which explicitly describes the claimed memory module as "connectable to a computer system," confirming that the claim describes logic implemented into the memory module's circuitry, rather than requiring a host computer system to be connected and actively provide specific signals in

order for the apparatus to infringe. Since there is at least a genuine dispute of material fact regarding whether the ███████████████████████████████████████████████,

summary judgment should be denied.

### 3. Samsung's "Legal Insufficiency" Argument Fails

Samsung argues, in the alternative, that even under the plain meaning of the claims applied by Netlist and its expert there is "legally insufficient" evidence of infringement because ██████████

████████████████████████████████████████████████████████████████

██████ *See* Mot. at 9. Samsung's fallback argument fails to show entitlement to summary judgment for two independent reasons.

***First***, as discussed above, all of the accused memory modules are manufactured and sold with the ████████████████████████████████████████████████████, as acknowledged by Samsung's own witnesses. *See, e.g.*, Ex. 3, ¶¶ 39-40, 62 (discussing testimony from Samsung's witnesses, consistent with datasheets for the products themselves, that the accused memory modules ██████ ████████ ███ ████████ ███ ███ █████ and ██████████ ███ ████████ ██████████). That alone is sufficient to create a genuine dispute of material fact regarding infringement, regardless of whether end users install their purchased memory modules into computer systems and turn them on. *See, e.g.*, *Silicon Graphics*, 607 F.3d at 794 (finding "infringement of an apparatus claim . . . even absent its use (or performance) . . . so long as the product [as sold] is designed 'in such a way as to enable the user of that [product] to utilize the function . . . without having to modify [the product]'") (quoting *Fantasy Sports Props. Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002)). The *INVT* case is in accord with these prior, binding precedents; it simply states that it is not enough to merely point to a "general purpose computer" that can hypothetically be programmed in a multitude of different ways, and "at least as a general matter, [one must provide] proof that an accused product—when put into operation—in fact executes all of the claimed functions at least some

of the time or at least once in the claim-required environment." 46 F.4th at 1377. As the Federal Circuit explained in *Fantasy Sports*, the distinction is between the theoretical possibility that a product could be modified to infringe—which is insufficient—and a situation where the end user is "activating means that are already present in the underlying software." *See Fantasy Sports*, 287 F.3d at 1118. If the accused product includes the functionality recited in the claim, it infringes "regardless [of] whether that [functionality] is activated or utilized in any way" by an end user. *Id.* Here, it is essentially undisputed that the accused memory modules ███████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████ *See, e.g.*, Ex. 3, ¶¶ 39-40, 62-63. In other words, there is ample evidence from which a jury could conclude that the ███████████████████████████████████████ ██████████████████████████████████████████ recited in the claim.

**Second**, Netlist developed evidence that Samsung, as well as its direct customers ████████████████ █████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████ *See, e.g.*, Ex. 1, ¶¶ 79-80; Ex. 2, at 71:4-72:19 (testifying that ██████████████████████████████    █████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████████ ████████████████; 72:17-19 ███████████████████████████████████████████████████████ █████████. Samsung's own datasheets emphasize the ██████████████████████████████████ █████████████████████████████████████████████████████████████████████████████████ ██████████████████████████ which Samsung's datasheets say ███████████████████████ *See* Ex. 3, ¶¶ 95-96 (also discussing ███████████████████████████████████████████████ ██████████████████████████████████████████ and stating that the █████████████████████ ██████████████████████████████████████████), ¶ 97 (noting Samsung's witness testimony

████████████████████████████████████████████████████). In *INVT*, by contrast, the plaintiff had relied <u>solely</u> on standard-essentiality to show infringement and introduced no evidence regarding the use or importance of the accused features. *See INVT*, 46 F.4th at 1377-79.

**B.    Samsung's RDIMM Products Infringe the '912 Patent**

**1.    The Accused RDIMM Modules Include ███████████████████ ████████████████████**

Claim 16 of the '912 patent recites a memory module comprising a "circuit" that transmits a "command signal to at least one DDR memory device" of selected ranks, "wherein the command signal is transmitted to only one DDR memory device at a time." *See* Ex. 4, cl. 16. As explained in Dr. Mangione-Smith's expert report and conceded by Samsung's engineers, all of the accused products

████████████████████████████████████████████████████

████████████████████████████████████████████████████.

*See, e.g.*, Ex. 3, ¶¶ 52-56, 62-63. For example, ████████████████████████████████

████████████████████████████████████████████████ Ex. 3, ¶¶ 56-57, 93-98. The

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████—providing a substantial improvement in the module's performance. *Id.*

Samsung's summary judgment arguments regarding this feature are based on a mischaracterization of Netlist's infringement theory. As explained in Netlist's infringement contentions and in Dr. Mangione-Smith's report, █████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ *See, e.g.*, Ex. 3, ¶¶ 52-56.

Contrary to Samsung's assertion in its motion, Netlist's infringement theory does not require ████████

████████████████████████████████ *See* Mot. at 10. The ████████████████

- 11 -



*See, e.g.*, Ex. 3, ¶ 68 ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮. Samsung's own witnesses testified that an ▮▮▮▮▮▮ is ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

Ex. 6, 84:24-85:8 (testifying in response to redirect examination from Samsung's counsel); *see also id.* at 18:24-19:9, 15:25-16:3. As stated clearly in Dr. Mangione-Smith's report, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ still infringe this limitation, ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 3, ¶ 70. Since Samsung does not even dispute that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮, its summary judgment motion fails.

Moreover, even considering ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ As explained in Dr. Mangione-Smith's report, the ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ *See* Ex. 3, ¶ 72. Thus, the evidence of record—which must be construed in Netlist's favor at this stage—provides multiple, independent bases on which a jury could reasonably find infringement by the accused products, including the RDIMM-type products.

### 2. Samsung Fails to Show Entitlement to Summary Judgment on Doctrine of Equivalents

First, Samsung contends that equivalents are barred with respect to the "one DRAM device at a time" limitation because claim 16 was originally a dependent claim and was rewritten in

independent form (making explicit the previously-implied limitations from parent claim 15). *See* Mot. at 11-12 (citing *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1134 (Fed. Cir. 2004) (en banc)). But *Honeywell* held that equivalents are presumed surrendered by "the rewriting of dependent claims into independent form coupled with the **cancellation of the original independent claims**," which Samsung concedes did not occur here. *See Honeywell*, 370 F.3d at 1133. Instead, Samsung asserts that the subsequent amendment of claim 15 to add other, unrelated limitations is an effective "cancellation" of claim 15 triggering the *Honeywell* rule. *See* Mot. at 12 n. 3. The Court should reject Samsung's novel theory, as other courts have done when applying *Honeywell. See, e.g.*, *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 2010 WL 1485326, at *3 ("The case at bar avoids application of the *Honeywell* rule because the applicants did not cancel independent claim 21 . . . Moreover, the aforementioned amendments made to claim 21 are completely unrelated to the 'in contact with' limitation [and] the court declines to hold that the amendments to claim 21 equate to a cancellation of the entire claim."); *cf. Whirlpool Corp. v. TST Water, LLC*, 2018 WL 1536875, at *10 (noting that the "purpose of the rule of *Honeywell*" is to constrain equivalents in situations where a patentee "discards broader claims and accepts the allowance of a dependent claim with a specific limitation which renders the claim allowable," thus "the focus . . . must be on the <u>specific</u> limitation which the examiner found rendered the claim allowable and, accordingly, confines the estoppel effect to only that specific limitation").

Here, independent claim 15 was not cancelled; it was prosecuted to issuance and issued <u>without</u> the "wherein the command signal is transmitted to only one DDR memory device at a time" limitation for which Samsung seeks to bar equivalents. *See* Ex. 4, at cl. 15. Thus, the *Honeywell* rule is inapplicable and equivalents are not barred with respect to claim 16.[1]

---

[1] Another, independent reason to reject Samsung's PHE theory is that it undertakes no analysis whatsoever of the three *Festo* exceptions to estoppel, other than to note that Netlist's infringement expert did not opine on estoppel issues. *See* Mot. at 11-12. But as noted in Netlist's motion to strike (Dkt. 359), issues of estoppel for the court to decide at a bench trial; there is no requirement that

Second, on the merits, Samsung presents only the barest, conclusory assertion that Dr. Mangione-Smith's doctrine of equivalents analysis "fails as a matter of law." *See* Mot. at 12. Samsung must do more to earn summary judgment; Dr. Mangione-Smith explained here how, even accepting *arguendo* Samsung's contention that ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ *See* Ex. 3, ¶ 87. Since a reasonable jury could accept Dr. Mangione-Smith's explanation and find that the accused products contain equivalent, if not identical, ███████ to that recited in the '912 patent claim 16, Samsung is not entitled to summary judgment.

### 3.  Samsung's Complaints about New Theories Are Wrong and Irrelevant to Summary Judgment

As discussed above in **Section II.B.1**, the evidence is sufficient to show infringement whether or not the jury were to find ██████████████████████████████████████████████████████

██████████████████████████████████ Thus, regardless of the outcome of Samsung's co-pending motion to strike these portions of Dr. Mangione-Smith's report—and regardless of Samsung's arguments here regarding the facts—its motion for summary judgment of non-infringement should be denied and no further analysis is required to dispose of this motion.

Additionally, and as explained in more detail in opposition to Samsung's motion to strike, the

---

parties present expert testimony on legal questions like prosecution history estoppel. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1370 (Fed. Cir. 2003); *see also Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291 (Fed. Cir. 2010) (holding that district courts "must look to the specifics of the amendment and the rejection that provoked the amendment to determine whether estoppel precludes the particular [DOE] arguments being made").

arguments Samsung criticizes as "untimely" are not new infringement theories but responses to Samsung's non-infringement contentions provided shortly before the close of fact discovery where it argued, for the first time, that ███████████████████████████████████████ ████████████████████████████. *See* Ex. 10, at 10-11. As explained in Dr. Mangione-Smith's report, and as Netlist has always contended, Samsung is incorrect and ████████████████ ███████████████████████████████████████████████████████████████████ *See, e.g.*, Ex. 3, at ¶¶ 51-57; Ex. 5, at 33-38. Dr. Mangione-Smith also explained how, even under Samsung's theory that ███ ███████████████████████████████████████████████████████████████████ █████████████████████ *See, e.g.*, Ex. 3, at ¶¶ 70-72. Samsung's arguments about whether or not ███████████████████████████████████████████ goes at best to the weight of the evidence for the jury to decide at trial.

Similarly, Netlist's theory that the █████████████████████████████████████ ███████████████████████████████████ as required by claim 16 is neither new—being explicitly called out in Netlist's infringement contentions—nor reliant on any claim construction of "transmit." *See* Mot. at 13. As explained in Dr. Mangione-Smith's report, ████████████████████ ███████████████████████████████████████████████████████████████████ ████. Dr. Mangione-Smith identified numerous pieces of evidence supporting that theory, including documentary evidence and testimony from Samsung's engineers. *See, e.g.*, Ex. 3, at ¶¶ 55-56 (███ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████ ¶ 68 (noting testimony from Samsung's corporate representative that in █████████████████████████████████████████ rather than

████████████████████████ and agreeing that ██████████████████████████

█████████████████████████████████████████████████████████████████████).

Nowhere does he say that ███████████ is defined ██████████████████████; rather,

he is explaining how these particular accused products implement the claimed functionality, i.e.,

███████████████████████████████████████████████████████████████████████

██████████████████████████████. *See id.*

Samsung's theory appears to be that analysis of the word "transmitted" must focus entirely on

the sender and cannot consider anything about the structure of the receiver. *See* Mot. at 13. But the

claim language in question is about transmitting signals "*to*" a specific device, so of course

consideration of the target device is appropriate in analyzing infringement. Samsung's restrictive view

would be akin to saying that a mail truck cannot deliver a letter to a single home because the truck

also stops at multiple other homes on the way. Here, the jury is best equipped to determine whether

the ██████████████████████████████████████████████████████████████████,

as Samsung's non-infringement expert contends, or ███████████████████████████

██████████████████████████, as Dr. Mangione-Smith opines with the support of

documentary and testimonial evidence. *Cf. Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,

425 F.3d 1366, 1377 (Fed. Cir. 2005) ("Because the claim language does not require a particular form

of testing, this inquiry is not a claim construction question [but] a question of fact [for the jury].").[2]

## III.   CONCLUSION

For the foregoing reasons, Netlist respectfully requests Micron's motion be denied.

---

[2] Samsung's assertion that the Court should disregard harmful admissions from its witness Mr. Jang because he "clarified" his testimony in response to leading redirect questions is also incorrect; the jury is best situated to evaluate the whole of Mr. Jang's testimony on the issue and determine which of his answers is more credible, and in any event Dr. Mangione-Smith identifies other evidence besides Mr. Jang's testimony to support his opinions. *See, e.g.*, Ex. 3, at ¶¶ 68-72.

Dated: January 30, 2024

Respectfully submitted,

*/s/ Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

- 17 -

## CERTIFICATE OF SERVICE

I hereby certify that, on January 30, 2024, a copy of the foregoing was served to all counsel of record.

/s/ Yanan Zhao
Yanan Zhao

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

/s/ Yanan Zhao
Yanan Zhao