# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-293-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO, LTD.; | ) | (Lead Case) |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC.; SAMSUNG SEMICONDUCTOR | ) | ███████████████ |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-294-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC.; | ) | |
| MICRON SEMICONDUCTOR | ) | |
| PRODUCTS, INC.; MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## NETLIST, INC.'S OPPOSITION TO SAMSUNG'S *DAUBERT* MOTION TO STRIKE EXPERT TESTIMONY OF DAVID KENNEDY

# TABLE OF CONTENTS

**Page**

I.    MR. KENNEDY'S DAMAGES MODEL IS RELIABLE...................................................1

    A.    Mr. Kennedy's Analysis Complies With Federal Circuit Apportionment Law...................................................................................................1

    B.    Mr. Kennedy's Profit Split Is Proper ...............................................................3

    C.    Mr. Kennedy's Additional Apportionments Are Reliable .................................5

    D.    Mr. Kennedy's Reliance On Dr. Mangione-Smith and Dr. Groehn Is Proper ..................................................................................................7

    E.    Mr. Kennedy's Opinions Regarding Next Best Alternatives Are Proper .......................................................................................................7

II.   MR. KENNEDY DOES NOT SEEK DOUBLE RECOVERY AND HIS RELIANCE ON THE -463 VERDICT IS APPROPRIATE .......................................8

III.  MR. KENNEDY PROPERLY USES LICENSES TO INFORM THE HYPOTHETICAL NEGOTIATION ..........................................................................10

IV.   MR. KENNEDY'S RAND DISCUSSION IS PROPER ...........................................12

V.    MR. KENNEDY'S OPINIONS ARE NOT PREJUDICIAL ...................................13

VI.   MR. KENNEDY'S OPINIONS COMPLY WITH THE COURT'S DISCOVERY ORDER .............................................................................................15

VII.  MR. KENNEDY'S ANALYSIS OF A LUMP SUM AWARD IS PROPER .......................15

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286 (Fed. Cir. 2014) ................................................................................................ 1

*Daubert. TQP Dev., LLC v. Merrill Lynch & Co.*,
    2012 WL 3283354 (E.D. Tex. Aug. 10, 2012) ...................................................................1, 8

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
    909 F.3d 398 (Fed. Cir. 2018) ................................................................................................15

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) ............................................................................................... 4

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010) ....................................................................................... 11, 12

*Grain Processing Corp. v. Am. Maize-Products Co.*,
    185 F.3d 1341 (Fed. Cir. 1999) ............................................................................................... 8

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010), *aff'd* 564 U.S. 91 (2011) ..................................................... 5

*Intel Corp. v. Tela Innovations, Inc.*,
    2021 WL 1222622 (N.D. Cal. Feb. 11, 2021) ....................................................................... 3

*Monsanto Co. v. Ralph*,
    382 F.3d 1374 (Fed. Cir. 2004) ............................................................................................... 5

*PersonalWeb Techs. LLC v. IBM Corp.*,
    2017 WL 3476082 (N.D. Cal. Aug. 14, 2017) ...................................................................... 3

*Powell v. Home Depot U.S.A., Inc.*,
    663 F.3d 1221 (Fed. Cir. 2011) ............................................................................................1, 4

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
    849 F.3d 1360 (Fed. Cir. 2017) ........................................................................................ 2, 4, 9

*Salazar v. HTC Corp.*,
    2018 WL 2033709 (E.D. Tex. Mar. 28, 2018) ...................................................................... 8

*Sanchez v. Commercial Transp.*,
    2010 U.S. Dist. LEXIS 163826 (E.D. Tex. Jan. 26, 2010) ................................................. 7

*Sprint Commc'ns Co. v. Time Warner Cable, Inc.,*
760 Fed. App'x. 977 (Fed. Cir. 2019) .......................................................................... 9

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.,*
802 F.3d 1283 (Fed. Cir. 2015) ................................................................................... 15

**Statutes**

Federal Circuit Apportionment Law ..................................................................................... 1

**Rules**

Rule 703 ................................................................................................................................. 7

Plaintiff Netlist, Inc. ("Netlist") submits this opposition to Samsung's *Daubert* Motion to Strike Expert Testimony of David Kennedy.

## I.    <u>MR. KENNEDY'S DAMAGES ANALYSIS IS RELIABLE</u>

Samsung's apportionment arguments are nearly identical to its arguments in *Samsung I*, which the Court rejected. *Samsung I*, Dkt. 205 at 3-8, 9-10; Dkt.432 at 4.  The same result should apply here.

### A.    **Mr. Kennedy's Analysis Complies With Federal Circuit Apportionment Law**

Samsung's argument that Mr. Kennedy's opinion "fails to isolate the benefit of the patented invention" ignores established law. The Federal Circuit and countless other courts have endorsed calculating patent damages by "estimat[ing] the value of the benefit provided by the infringed features by comparing the accused product to non-infringing alternatives." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011) (damages based on "value of the benefit conferred to the infringer by use of the patented technology").

Mr. Kennedy's approach follows this exact methodology. For the '912 and '608 Patents, Mr. Kennedy relied on Dr. Mangione-Smith's technical opinion that ███████████████████ ████████████████████████████████████████████████████████████ ███████████████ that the '608 Patent also enable the Accused Products ███████████ ████████████████████████████████ by ██████████████████████████████████ ████████████ and that the next best alternative would be to ████████████████ ███████████ Dkt. 346-1 ¶¶ 131, 144. Mr. Kennedy then used the results of Dr. Groehn's regression to isolate the value of these Patents by calculating the ████████████████████████ *Id.* ¶¶ 178, 193. For the '417 Patent, Mr. Kennedy relied on Dr. Mangione-Smith's technical opinion that use of the Asserted Claims ████████████████████████████████████ ███████████████████████████ and that ███████████████████████████████ ████████████████████████████████████████████████ *Id.* ¶ 137-138. Mr. Kennedy

then determined ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████ *Id.* ¶¶ 181-84. Thus, Mr. Kennedy's analysis complies with the Federal

Circuit's apportionment requirement. *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376

(Fed. Cir. 2017) (requirement to "carefully tie proof of damages to the claimed invention's footprint

in the market place,". . .can be met if the patentee adequately shows that the defendant's infringement

allowed it to avoid taking a different, more costly course of action").

The fact that "other technologies contribute to speed and configuration" does not invalidate

Mr. Kennedy's analysis.  Those alleged technical contributions—none of which Samsung has ever

identified as relating to any patented features or benefits—are already apportioned out of the analysis.

For example, Samsung points to the fact that JEDEC compliant DDR4 technology "offers

'significantly better performance than DDR3 DIMMs,' including with respect to 'Speed.'"  Dkt 346

at 3.  For the '912 and '608 Patents, Mr. Kennedy opines that ████████████████████████████

████████████████████████████████████████████████████████████. *See, e.g.*, Dkt

346-01 at Ex. 5A-C. ████████████████████████████ is unchanged. *Id.* Thus, only ███████

████████████████████████████████████████████████████████████. In other words,

to the extent Samsung contributed to the value of its DDR4 LRDIMMs, that value is already captured

████████████████████████████████████████████████ and is not removed at any point.

Samsung's assertion that Mr. Kennedy's analysis is flawed because the '912 and '608 Patents

both enable similar benefits is misplaced. Dkt. 346 at 4, n.1. Indeed, it is often the case—as is here—

that different technologies can independently enable similar technical benefit in different ways and

thus independently warrant similar reasonable royalties.[1]  As multiple courts have recognized, this does

---

[1] As Dr. Mangione-Smith explains, the ████████████████████████████████████████████

████████████████████████████████████████████████████████████

not present an apportionment problem. For example, in *Intel Corp. v. Tela Innovations, Inc.*, 2021 WL 1222622, at *33 (N.D. Cal. Feb. 11, 2021), the plaintiff asserted five patents and its expert opined that the same royalty rate would be owed for a subset of these patents as "all of the Asserted Patents combined." Defendant moved to strike for alleged failure to apportion and the Court denied the motion, holding the analysis was proper because the expert explained that "the patents are largely overlapping," and finding that "this issue is for cross-examination." *Id.* at *33. Similarly, in *PersonalWeb Techs. LLC v. IBM Corp.*, 2017 WL 3476082, at *2 (N.D. Cal. Aug. 14, 2017), plaintiff asserted multiple patents from the same portfolio, and defendant moved to strike the opinion of plaintiff's expert that "the value of the '420 patent should include some 'core overlapping value'" with other patents in the portfolio. The Court denied the motion, explaining "[w]hether there truly is some 'core overlapping value' and whether the three patents selected accurately capture that value are factual issues that IBM can explore on cross-examination." *Id.*

## B.    Mr. Kennedy's Profit Split Is Proper

Samsung next disputes Mr. Kennedy's conclusion on how Netlist and Samsung would split the incremental benefits from the Asserted Patents at the hypothetical negotiation (Dkt. 346 at 4). Contrary to Samsung's assertion, Mr. Kennedy's fully-apportioned rate does not ███████████ ████████████████ to Netlist, as he repeatedly explained at his deposition:

███████████████████████████████████████████████

███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

_____

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████ Ex. 1 (*Samsung II* Mangione-Smith Ex. I ¶¶ 28-30, 57-58). While these patents may cumulatively provide even greater technical benefits with respect to speed, Mr. Kennedy conservatively does not treat them as additive. Dkt. 346-1 ¶¶ 719-721, Ex. 3B (using the ███████████████████████████████████████).

███████████████████████████████████████████

██████████████████████████/█████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

Ex. 2 (Kennedy Dep.) at 64:5-22, 71:6-20 ███████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████.

In any event, as explained above, Mr. Kennedy apportions down to the technical benefit of the patents-in-suit. This is all the law requires. *Ericsson, Inc. v. D-Link Sys., Inc.,* 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product"). Mr. Kennedy further analyzes ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████. For example, Mr. Kennedy explains that ████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████ Dkt. 346-1 ¶ 709. In light of these facts, and the other facts Mr. Kennedy identifies as part of his *Georgia Pacific* analysis, he notes that ████████████████████████████████ ████████████████████████████████████████ and the parties would thus agree to ██████████████████████████████████████████████████ *Id.* ¶¶ 710, 720. Mr. Kennedy's approach is consistent with Federal Circuit precedent that a patentee is entitled to the entire apportioned value between the next best alternative and the infringing instrumentality. *Prism,* 849 F.3d at 1376 (awarding full amount of cost savings to plaintiff); *Powell,* 663 F.3d at 1240 (same).

Samsung does not argue that Mr. Kennedy erred by reviewing the relationship and history

between the parties to determine how they would bargain at the hypothetical negotiation.  Nor does Samsung argue that Mr. Kennedy did not rely on sufficient facts.  Instead, Samsung disputes his conclusion—███████████████████████████████████████—on the unsupported view that ██████████████████████[2]  To be clear, Mr. Kennedy's technical benefit analysis is not suggesting ██████████████████████ which would still be consistent with Federal Circuit law, but instead that ████████████████████████████████████████████ ██████████ *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed. Cir. 2004) ("[A]lthough an infringer's anticipated profit from use of the patented invention is 'among the factors to be considered in determining' a reasonable royalty, the law does not require that an infringer be permitted to make a profit."). He then provides two other apportionment factors the jury can apply if it concludes the parties would agree to some other split of the apportioned technical value.[3]

### C.    Mr. Kennedy's Additional Apportionments Are Reliable

Mr. Kennedy opines that at the hypothetical negotiation, ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████. These additional factors are additive to the technical benefit apportionment, which is always applied first:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████ (Dkt. 346-1 ¶¶ 197-98).

---

[2] "[Samsung's] disagreements are with [the expert's] conclusions, not his methodology."  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010), *aff'd* 564 U.S. 91, 131 (2011).
[3] Samsung suggests Mr. Kennedy should have looked at ████████████████████████  This is specious.  Samsung has not suggested ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

As to the additional technical apportionment, Mr. Kennedy opines that ███████████ ███████████████████████████████████████████████████████████████████████ Samsung disputes Mr. Kennedy's ███████████████████████████████████████████.  But this is based on Mr. Kennedy's real world experience negotiating licenses, as explained at deposition. Ex. 2 (Kennedy Dep.) at 87:23-88:5 ███████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████.  Samsung's argument that this ratio includes █████████████████████████████████████████ misses the point.  If Mr. Kennedy looked at the ███████████████████████████████████████████████████████ ██████████████████████████████████████████ Instead, by looking at the █████████████████ of the companies, the parties would have a basis to approximate Samsung's contribution to the accused features.  Mr. Kennedy looked at this metric as a proxy because Samsung was unable to identify any technological contributions Samsung made to the accused products. For example, Samsung's corporate representatives could not identify a single Samsung patent that covers the accused products. Ex. 3 (Sungjoo Park Transcript) at 34:20-25. Mr. Kennedy also explained that ████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ Dkt. 346-1 ¶¶ 200, 211, 214. Samsung has not identified any such technical inputs specific to the accused features.

Mr. Kennedy also opines that ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████.  He explains that the ██████████████████████████████████████████████████.  This is based on his real-world experience negotiating licenses.  Mr. Kennedy notes that while this is a more general metric, ████████████████████████████████████████████████████████████

█████████████████████████████ Dkt. 346-1 ¶ 213.  Mr. Kennedy calculated Samsung's

████████████████████████████████████████████ respectively, which

Mr. Kennedy opines ████████████████. Samsung's argument that this approach is "untethered

to the facts" ignores that this metric is based on its gross margins for the Accused Products and is

thus tied to the specific incremental benefits delivered to those products by the Asserted Patents.

### D.     Mr. Kennedy's Reliance On Dr. Mangione-Smith and Dr. Groehn Is Proper

As explained in Netlist's concurrently filed oppositions regarding Dr. Mangione-Smith and

Dr. Groehn, the technical and economic inputs Mr. Kennedy relies on are reliable and admissible.

Samsung's argument that Mr. Kennedy should not be permitted to rely on Dr. Groehn's testimony

unless he testifies live at trial is not a basis to strike Mr. Kennedy's opinions.  Under Rule 703, Mr.

Kennedy may rely on Dr. Groehn's regression analysis regardless of whether Dr. Groehn testifies at

trial because it is the type of data "experts in the particular field would reasonably rely on" to determine

an appropriate royalty rate.  F.R.E. 703; Ex. 2 (Kennedy Dep.) at 18:5-10 ██████████████

████████████████████████████████████████████████

████████████████████, 163:12-166:8 (testifying about prior work with Dr. Groehn and

use of regression analysis generally); *Sanchez v. Commercial Transp.*, 2010 U.S. Dist. LEXIS 163826, *3

(E.D. Tex. Jan. 26, 2010) ("The parties' experts can rely on ex parte statements or reports from non-

testifying witnesses or experts.").

### E.     Mr. Kennedy's Opinions Regarding Next Best Alternatives Are Proper

Samsung does not dispute that Dr. Mangione-Smith opined that ██████████████████

█████████████ Dkt. 346 at 7.  Samsung's disagreement with that conclusion is a fact

issue for the jury to decide, not a basis to exclude Mr. Kennedy's opinions.

Samsung next suggests that Mr. Kennedy's analysis should be excluded because he supposedly

did not determine whether the next best alternatives he used in his analysis were acceptable to

customers.  Samsung's argument is legally misplaced. Netlist only has the burden to show that there

was an **available** next-best alternative to which it compared its claimed technology, not an **acceptable**

noninfringing alternative as Samsung contends. This Court has explained that "[t]he concept of an

'acceptable non-infringing alternative' relates to a lost-profits damage model ... [whereas] 'acceptable

non-infringing alternatives' don't play the same role in a reasonable-royalty determination. Rather,

courts consider the *next-best* available alternative, which is not necessarily an 'acceptable' alternative

that precludes recovery of lost profits under *Panduit*." *Salazar v. HTC Corp.*, 2018 WL 2033709, at *3

(E.D. Tex. Mar. 28, 2018) (citing *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1351

(Fed. Cir. 1999)).[4] Netlist thus had no burden to prove the acceptability of the next-best alternatives.

Even if it did, however, Mr. Kennedy specifically opined that ███████████████████████████

███████████████████████████████████████████████████████████████████████████

(Dkt. 346-1 ¶¶ 172-194).  Moreover, the issue of whether an alternative is acceptable is a fact issue for

the jury, not a basis for *Daubert*. *TQP Dev., LLC v. Merrill Lynch & Co.*, 2012 WL 3283354, at *2 (E.D.

Tex. Aug. 10, 2012) (availability is a "factual question").

Samsung's final argument—that the alternative Mr. Kennedy relies on for the '417 Patent

would not be "available" because it would still infringe the Asserted Patents makes no sense. Mr.

Kennedy makes clear that the alternative he proposes ███████████████████████████

Moreover, as he notes, Netlist has not accused all DDR4 DIMMs of infringement, but rather only

those that have ████████████████ Dkt. 346-1 ¶¶ 127, 135.

## II.    Mr. Kennedy's Reliance On The -463 Verdict Is Appropriate

Samsung suggests there is a black-and-white rule prohibiting use of prior jury verdicts in a

reasonable royalty analysis. Not so. The Federal Circuit "has held that such evidence can be admissible

---

[4] *Grain Processing*—which Samsung relies upon—is a lost profits case, not a reasonable royalty case. *Id.* at 1349.

if it is relevant for some legitimate purpose." *Sprint Commc'ns Co. v. Time Warner Cable, Inc.*, 760 Fed. App'x. 977, 980 (Fed. Cir. 2019). One legitimate purpose is damages, and the Federal Circuit has upheld prior verdict evidence in similar scenarios. For example, in *Sprint*, the district court "admitted the prior verdict evidence as relevant to willfulness, to Time Warner's equitable defenses, and 'to the extent that it informs Sprint's executive concerning what [they] might expect as a reasonable royalty.'" *Id.* at 981. Here, the implied per unit rate for DDR4 products is relevant because—as Mr. Kennedy notes—it is a rate for patents that enable comparable technical benefits. And, while Samsung makes a conclusory allegation of potential prejudice, it fails to identify any specific reasons why Mr. Kennedy's use of the implied rate from the prior verdict would be prejudicial or explain why any such prejudice could not be mitigated (e.g., by limiting the manner in which the information is presented).

## III.    Mr. Kennedy's Approach Does Not Double Count

Samsung's argument that because Mr. Kennedy uses the "same benefit[s]" to measure damages for the Asserted Patents and the patents in the -463 case he has failed to apportion and engaged in double counting is wrong. As noted above, different technologies can independently enable the same technical benefit in different ways. For example, Dr. Mangione-Smith opined that the ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████ Ex. 4 (*Samsung I* Mangione-Smith Ex. A) ¶ 301. The '417 Patent also ███████ ███████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ Ex. 5 (*Samsung II* Mangione-Smith Ex. C) ¶ 245. Similarly, as explained in Footnote 1 above, the ███████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████

Mr. Kennedy calculated the incremental benefits of being able to ██████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

Dkt. 346-1 (Kennedy) at Ex. 1C. In *Samsung I*, Mr. Kennedy proposed ████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

Ex. 6 (1/20/23 Kennedy Ex. 1B). In this case, he ████████████████████████████

██████████████████████████████████████████████████████████████

Dkt. 346-1 (Kennedy) at Ex. 1C. To the extent that Samsung contends that the patents in the -463

case are more valuable, they can do so on cross examination. But there is no scenario where Samsung

would pay for a particular benefit "twice" as Samsung alleges. Moreover, as Mr. Kennedy expressly

notes in his report, to the extent there is ██████████████████████████████

██████████████████████████████████ and ██████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████ by ███████████████████████████████████████████████████

██████████████████████████████████████████ Dkt. 346-01 ¶ 727.

## IV.    Mr. Kennedy Properly Uses Licenses to Inform the Hypothetical Negotiation

Samsung's request to exclude Mr. Kennedy's reliance on the ██████████████ (and other

Samsung licenses) is nearly identical to the motion it made in the -463 case, which the Court rejected.

*Samsung I*, Dkt. 205 11-12; Dkt. 432 at 4. Once again, the Court should deny Samsung's motion.

As in the -463 case, Samsung's motion is based on a false assertion that Mr. Kennedy opined

that all of Samsung's licenses are ██████████████ To the contrary, he opined that ████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████ Dkt. 346-1 ¶ 497.  As to ████████, Mr. Kennedy

relies on Dr. Mangione-Smith's technical comparability analysis, and then identifies ████████████████

████████████████████████████████ from an economic perspective *Id.* at ¶¶ 498-502. He

notes the relationship between ██████████████████ is similar to the hypothetical negotiation and

takes steps to account for the fact that the █████████████████████████ (*Id.* ¶¶ 500-01):

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████

In other words, Mr. Kennedy will tell the jury that ███████████████████████████████

███████████████████████████████████████████████████████████

█████████████████. The record at trial will also include █████████████████████████

████████████████████████████ Mr. Kennedy explains:

███████████████████████████████████████████████████████████

██████████████████████████████ *Id.* ¶ 502.

  Samsung's position is that because Mr. Kennedy did not use the license to generate a specific

per patent royalty on its own, it cannot be a part of his analysis. Under this theory, every individual

component that goes into a hypothetical negotiation would be inadmissible. That is not the law. In

*Bio Rad*, the Federal Circuit noted it had previously affirmed the use of a lump sum license as one

factor used to establish a running royalty: "*Finjan,* for example, involved a license which related to a

lump sum payment rather than a running royalty. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197,

1211-12 (Fed. Cir. 2010). We affirmed a damages award because the 'differences permitted the jury to

properly discount [that license].'" *Bio-Rad*, 967 F.3d at 1373-74. *Finjan* in turn emphasized that use of a lump sum license is appropriate when the jury is given the tools to understand the differences:

> Finjan noted multiple differences between the Finjan-Microsoft licensing scenario and a hypothetical negotiation with Defendants. Parr explained that Finjan did not compete with Microsoft but does compete against Secure; that Finjan received significant intangible value from Microsoft's endorsements of Finjan; and that the license involved a lump sum instead of a running royalty. These differences permitted the jury to properly discount the Microsoft license. *Id.* at 1212



As to the other licenses, Mr. Kennedy opines that, while they are too different to ▮▮▮▮ ▮▮▮▮▮▮▮ several ▮▮▮▮▮▮▮▮▮ ▮▮▮▮ Dkt. 346-1 ¶¶ 522-29 (discussing ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮). Samsung's argument that Mr. Kennedy should not be allowed to present his opinions on these licenses because they are "not comparable," contradicts Samsung's own expert's opinion that they are indeed comparable. Ex. 7 (Kindler) ¶ 108 (parties would consider ▮▮▮▮▮▮▮, ¶ 112 ▮▮▮▮ ▮▮▮▮▮▮▮▮, ¶¶ 118, 122 (same for ▮▮▮▮▮▮).

## V.    Mr. Kennedy's RAND Discussion Is Proper

Given that no party has provided an expert opinion that the patents are standards essential, Netlist agrees that neither parties' damages expert should provide opinions regarding RAND at trial. If, however, the Court allows Samsung to pursue its improper "not standard unless infringed" approach, Mr. Kennedy should be permitted to explain why his opinion complies with RAND. He renders a detailed opinion on RAND that, as Samsung itself acknowledges, spans multiple paragraphs. He first ▮▮▮▮ ▮▮▮▮▮ Dkt. 346-1 ¶¶ 533-52, 553-573. Samsung's arguments are nothing more than

disagreements with Mr. Kennedy, which go to weight not admissibility.

## VI.    Mr. Kennedy's Opinions Are Not Prejudicial

Samsung next identifies a hodgepodge of opinions it claims Mr. Kennedy is either unqualified to offer or are "prejudicial." The Court considered Samsung's arguments regarding nearly identical opinions in the '463 case and denied Samsung's motion. Dkt. 205 at 12-14; Dkt. 432 at 4 (excluding only opinions on Texas Instruments and RAND). The same result should apply here.

First, Samsung claims Mr. Kennedy opined Samsung acted unethically. Not so—Mr. Kennedy simply pointed out that Samsung's own corporate representative testified that it acted unethically:

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████    Dkt 346-1 ¶ ¶¶ 292, 708.

Paragraphs 42-66, 378-80, 590-93, and Exs. 1, 3, and 14 recite evidence of when Netlist provided notice of infringement to Samsung and identify the corresponding damages periods for Mr. Kennedy analysis, depending upon when the jury determines notice was provided. Mr. Kennedy does not provide a legal opinion on these issues, but instead identifies the evidence and provides his interpretation of that evidence from the perspective of an expert licensing professional. That Samsung believes the information of notice is inadequate is a dispute to be resolved by the jury.

As for ¶ 532, Samsung's damages case focuses on using contributions to JEDEC as a surrogate for the technical value of technology. Ex. 7 (Kindler) ¶¶ 64, 168-74. Samsung also intends to discuss ████████████████████████. Ex. 8 (Halbert) ¶¶ 54-7; Ex. 9 (McAlexander, Att. B) ¶ 189. Netlist believes all of this is irrelevant. Neither party's experts contend the patents are essential. But if Samsung is allowed to inject this into the case, Mr. Kennedy should be allowed to respond. He explains

that ███████████████████████████████████████████████████████

███████████████████████████████████. He observes that SSOs ████████████

████████████████████████████████████ and ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ Dkt. 346-1 ¶ 532.

Paragraphs 164-69 provide background and witness testimony concerning the pricing in the market for the accused products. This information is relevant to Mr. Kennedy's opinions regarding the pricing premiums enabled by the Accused Patents, and is well within Mr. Kennedy's expertise.

Contrary to Samsung's argument, in ¶¶ 305-7, Mr. Kennedy does not "criticiz[e] the C.D. Cal. Jury's verdict," but instead opines on the value of the supply provision to Netlist at the time the JDLA was executed. This provides important context, particularly given that Samsung is arguing that the

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████. Ex. 7 (Kindler) at ¶¶ 89, 89(f), 210, 279(a). Samsung's request to exclude the entirety of Mr. Kennedy's analysis of the JDLA and conclusion that it is not economically comparable (Dkt. 346-1 ¶¶ 253-341) and his opinions regarding the relationship of the parties at the time of the hypothetical negotiation (¶¶ 708-09) as "outside the scope of his expertise" is frivolous. Mr. Kennedy has decades of experience in patent licensing and damages analysis, and is clearly qualified to perform an analysis to determine whether a particular agreement is comparable or not.

Similarly, far from purporting to render legal opinions about the ██████████████

████████ in ¶¶ 691-703, as Samsung incorrectly suggests, Mr. Kennedy properly analyzes how the ██████████████████ would have informed the hypothetical negotiation. Mr. Kennedy opines that ███

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████ *Id.* at ¶ 330. This, too, will provide the jury with important context in considering the hypothetical negotiation.

Samsung's objection to ¶¶ 354-55 is likewise unfounded.  In those paragraphs, Mr. Kennedy is not opining on the ████████████████████████████ but instead opining on the ██████████ ████████████████████████████████, which is highly relevant to determining whether or not that agreement is economically comparable to the hypothetical negotiation.

## VII.    Mr. Kennedy's Opinions Comply with the Court's Discovery Order

The Court entered a Discovery Order in this case that stated "the disclosure of the computation of damages may be deferred until the time for Expert Disclosures if a party will rely on a damages expert." Dkt. 40 at 3. Netlist has relied on its damages expert, Mr. Kennedy, and accordingly disclosed his computation of damages at the time of expert disclosures.

## VIII.    Mr. Kennedy's Analysis of a Lump Sum Award Is Proper

Samsung provides no support for its suggestion that an accused infringer gets to decide to pay a running royalty instead of a lump sum—this is a determination for the jury to make. *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 412 (Fed. Cir. 2018) ("we have held that a jury may award a lump-sum, paid-in-full royalty in lieu of a running royalty on future sales"); *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1301 (Fed. Cir. 2015) ("[patentee]'s expert admitted that a lump-sum award would compensate [plaintiff] through the life of the patent").  It was perfectly appropriate for Mr. Kennedy to provide an alternate opinion regarding an appropriate lump sum royalty, particularly here, where Samsung argues for a lump sum instead of a running royalty.  *See, e.g.,* Ex. 7 (Kindler ¶¶ 71, 81-82, 91). To the extent Samsung disagrees with how Mr. Kennedy calculated the lump sum award, that is an issue for cross-examination.

Dated: January 30, 2024                    Respectfully submitted,

                                           */s/ Jason G. Sheasby*
_____

                                           Samuel F. Baxter
                                           Texas State Bar No. 01938000
                                           sbaxter@mckoolsmith.com
                                           Jennifer L. Truelove
                                           Texas State Bar No. 24012906
                                           jtruelove@mckoolsmith.com
                                           **MCKOOL SMITH, P.C.**
                                           104 East Houston Street Suite 300
                                           Marshall, TX 75670
                                           Telephone: (903) 923-9000
                                           Facsimile: (903) 923-9099

                                           Jason Sheasby (*pro hac vice*)
                                           jsheasby@irell.com
                                           Annita Zhong, PhD (*pro hac vice*)
                                           hzhong@irell.com
                                           Thomas C. Werner (*pro hac vice*)
                                           twerner@irell.com
                                           Andrew Strabone (*pro hac vice*)
                                           astrabone@irell.com
                                           Yanan Zhao (*pro hac vice*)
                                           yzhao@irell.com
                                           Michael W. Tezyan (*pro hac vice*)
                                           mtezyan@irell.com
                                           **IRELL & MANELLA LLP**
                                           1800 Avenue of the Stars, Suite 900
                                           Los Angeles, CA 90067
                                           Tel. (310) 277-1010
                                           Fax (310) 203-7199

                                           Rebecca Carson (*pro hac vice*)
                                           rcarson@irell.com
                                           **IRELL & MANELLA LLP**
                                           840 Newport Center Drive, Suite 400
                                           Newport Beach, CA 92660

                                           ***Attorneys for Plaintiff Netlist, Inc.***

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that, on January 30, 2024, a copy of the foregoing was served to all counsel of record.

*/s/ Yanan Zhao*
Yanan Zhao

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao