# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-293-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO, LTD; | ) | (Lead Case) |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC.; SAMSUNG SEMICONDUCTOR | ) | ███████████████ |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:22-cv-294-JRG |
| | ) | |
| MICRON TECHNOLOGY, INC.; | ) | JURY TRIAL DEMANDED |
| MICRON SEMICONDUCTOR | ) | |
| PRODUCTS, INC.; MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## NETLIST, INC.'S OPPOSITION TO SAMSUNG'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT ALL ACCUSED PRODUCTS ARE COVERED BY NETLIST'S LICENSE TO SAMSUNG IN THE PARTIES' 2015 JDLA [DKT. 337]

## TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................. 1

II.    RESPONSE TO SAMSUNG'S STATEMENT OF UNDISPUTED FACTS .................... 2

III.    NETLIST'S COUNTER-STATEMENT OF MATERIAL FACTS ....................................... 4

IV.    ARGUMENT ..................................................................................................... 6

    A.    Samsung Is Judicially Estopped ............................................................... 6

    B.    Netlist Is Not Collaterally Estopped ....................................................... 9

    C.    There Are Genuine Disputes Of Material Fact That Preclude A Finding Against Netlist On License Scope ....................................................... 10

        1.    Netlist's Interpretation of The License Clause Is Reasonable ..................... 10

        2.    Extrinsic Evidence Supports Netlist And At Least Creates A Fact Issue ... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*67 Wall St. Co. v. Franklin Nat'l Bank,*
  37 N.Y.2d 245 (N.Y. 1975) ........................................................................................... 13

*Ahrens v. Perot Sys.,*
  205 F.3d 831 (5th Cir. 2000) ............................................................................................ 9

*Aircraft Servs. v. Oceanic Cap. Co.,*
  2013 WL 4400453 (S.D.N.Y. Aug. 14, 2013), *aff'd*, 586 F.App'x 761 (2d Cir. 2014) ........................................................................................................................... 13

*Avondale Shipyards, Inc. v. Insured Lloyd's,*
  786 F.2d 1265 (5th Cir. 1986) ................................................................................. 10, 11

*Blum v. Spaha Cap. Mgmt.,*
  44 F. Supp. 3d 482 (S.D.N.Y. 2014) .............................................................................. 13

*Bradberry v. Jefferson Cnty.,*
  732 F.3d 540 (5th Cir. 2013) .......................................................................................... 10

*Ellington v. EMI Music, Inc.,*
  24 N.Y.3d 239 (2014) ..................................................................................................... 12

*Fireman's Fund Ins. Co. v. Murchison,*
  937 F.2d 204 (5th Cir. 1991) .......................................................................................... 12

*In re Gulf Oil/Cities,*
  725 F. Supp. 712 (S.D.N.Y. 1989) ................................................................................. 15

*Hall v. GE Plastic,*
  327 F.3d 391 (5th Cir. 2003) ....................................................................................... 7, 8

*JA Apparel Corp. v. Abboud,*
  682 F. Supp. 2d 294 (S.D.N.Y. 2010) ............................................................................ 13

*Nationwide Mut. Ins. V. Erie and Niagara Ins.,*
  249 A.D.2d (S.D.N.Y. 1987) .......................................................................................... 13

*Netlist v. Samsung,*
  2023 WL 6820683 (9th Cir. Oct. 17, 2023) ............................................................ *passim*

*Seigler v. Wal-Mart Stores Texas, L.L.C.,*
  30 F.4th 472 (5th Cir. 2022) .......................................................................................... 13

**Rules**

Rule 56(d) ....................................................................................................................................10

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| C.D. Cal. Case | *Netlist Inc. v. Samsung Elecs. Co.*, No, 8:20-CV-933 (C.D. Cal.) |
| D. Del. Case | *Samsung Elecs. Co. v. Netlist, Inc.*, No. 1:21 CV-1453 (D. Del.) |
| *Samsung I* | *Netlist Inc. v. Samsung Elecs. Co.,* No. 2:21-CV-463 (E.D. Tex.) |
| JDLA | Joint Development and License Agreement |
| JDP | Joint Development Project |
| MOU | Memorandum of Understanding |

## I.  INTRODUCTION

The Court should deny Samsung's motion for partial summary judgment that the accused products are covered by Netlist's license grant to Samsung in the Joint Development and License Agreement ("JDLA") for two reasons. First, as explained in Netlist's pending motion for summary judgment on Samsung's license defense (Dkt. 273), Samsung is estopped from arguing that the license grant covers the accused products. Second, the scope of Netlist's JDLA license grant is subject to a dispute of material fact.

Samsung claims that Netlist is estopped from arguing that the JDLA does not cover the accused products. Samsung has it backwards. Samsung argued that, in light of the licensing language of the fourth "Whereas" recital (the "Fourth Recital"), the Ninth Circuit should interpret other clauses in the JDLA as relating to the joint development project ("JDP") alone:

> [T]he recitals are very clear…. **The licenses are being given in connection with the collaboration. That's the joint development project**.

Dkt. 273-2 (9th Cir. HT) at 15:10-21. In doing so, Samsung confirmed to the Ninth Circuit that Netlist's license grant under the JDLA was limited only to the JDP. This is the opposite of the interpretation Samsung now argues this Court must adopt as a matter of law. Mot. at 1.

The Ninth Circuit relied on Samsung's argument that Netlist's license was limited to only the joint development project to then find the supply obligation ambiguous: "Read as an integrated whole, however, the contract's apparent purpose as derived from its title, structure, and related provisions make § 6.2 reasonably susceptible of more than one interpretation." *Netlist v. Samsung*, 2023 WL 6820683, at *1 (9th Cir. Oct. 17, 2023). Judge Desai's dissent confirmed that the majority relied on Samsung's Fourth Recital argument to question whether the supply clause should be narrowly limited to only the JDP – like the licenses. *Id.* *4 ("Finding no support in the terms of the agreement, the majority's decision settles on the recitals as the basis for its finding that § 6.2 is ambiguous.").

Thus, under Fifth Circuit law, Samsung is estopped from arguing that the JDLA's license grant

covers the Accused Products. To convince the Ninth Circuit that Samsung's supply obligation was limited to the joint development efforts, it is indisputable that Samsung argued the license grant of the JDLA was limited to joint development. This is important, because none of the Accused Products here are the product of the joint development project: NVDIMM-P. In fact, Samsung confirmed that this product was never commercialized, while all of the Accused Products here are commercially available. Therefore, under Samsung's own arguments, the Netlist's license grant **cannot** offer protection from the consequences of Samsung's infringement in this case.

Samsung cannot have it both ways. If the scope of the supply clause (§ 6.2) is limited to joint development based on the Fourth Recital – as Samsung argued – then the license grant should be read similarly, as the Fourth Recital explicitly refers to the JDLA's license grants and not the supply provisions. Dkt. 337-10 (JDLA) ("WHEREAS, *in connection with their collaboration hereunder, the Parties wish to grant each other a cross license under each Party's patents*.").

## II.    RESPONSE TO SAMSUNG'S STATEMENT OF UNDISPUTED FACTS

1.    <u>Samsung Facts 1-3</u>: Disputed. Fact No. 1 mischaracterizes Netlist's early proposals to Samsung. In addition, Samsung's description of these proposals is incomplete. Samsung ignores that ████████████████████████████████████████████████████████████████████. Dkt. 337-2 at NL107807 ██████████████████████████; Dkt. 337-3 at NL119238 ████████████ ███████████████████████████. Samsung then ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ Dkt. 337-5. Additionally, Facts 2-3 are disputed to the extent they suggest the MOU was intended to have any effect on the final JDLA executed between the parties. Mot. 2. The MOU states clearly that it was "██████████████████████████████ ████████ and was ████████████████████████████████████. Dkt.

337-7. Samsung also mischaracterizes Mr. Hong' deposition testimony. At his deposition, Mr. Hong explained that the ███████████████████████ Dkt. 337-6 (Hong Depo) at 114:19-24.

2.     Samsung Facts 4-5: Disputed. Netlist disputes that the JDLA has ██████████ Mot 3. The JDLA states on its face that "the Parties wish to grant to each other a cross license" "***in connection with their collaboration hereunder***." Dkt. 337-10 at 1. Accordingly, under Samsung's own prior argument on the interpretation of the license scope, the JDLA license does not – and cannot – "include all asserted patents." Mot. 3.

3.     Samsung Fact 6. Disputed. Samsung omits the full quotation from Netlist's prior briefing, which states: "Neither Section 6.2 "Supply by Samsung" nor Section 8.2 "License to Samsung" contain an express reference to the Joint Development Project or the Developed Product.

4.     Samsung Facts 7-8: Undisputed to the extent the quoted text is accurate.

5.     Samsung Fact 9: Disputed. Netlist's statement that Samsung was licensed to sell RDIMMs and LRDIMMs covered by Netlist's patents did not include any statement about whether Samsung was licensed "outside the JDP." Dkt. 337-14. Netlist thus did not "proclaim[] that Samsung is licensed to practice Netlist patents outside the JDP…*e.g.,* [for] RDIMM, LRDIMMs" regardless of whether the parties were complying with their respective JDP obligations. Mot. 4.

6.     Samsung Facts 10-14: Undisputed.

7.     Samsung Facts 15-17: Disputed. In *Samsung I*, the Court did not "expressly approve[]" all of Samsung's arguments on license scope. Mot. 6. Rather, the Court concluded that "[w]hat falls within th[e] license as prescribed by the other terms of the JDLA is a fact question." *Samsung I,* Dkt. 426 (PTC Tr. Vol. I) at 59. Of note, the Court's ruling occurred before Samsung proffered its more recent successful joint-development-license argument before the Ninth Circuit. Additionally, Facts 15-17 contend that "Samsung specifically asked this Court in *EDTX1* to determine that the JDLA 'covers all semiconductor products except foundry products,' and to reject Netlist's 'new argument

that Samsung's patent license should be limited to the [JDP]'" Mot. 6. However, Samsung's counsel expressly stated:

> "[T]here was an issue that has been bandied back and forth about whether the license was somehow narrowly limited only to the jointly developed products. ***I don't think anybody is carrying that issue forward.***" *Samsung I*, Dkt. 426 (PTC Tr. Vol. I) at 26:17-23.

The Court specifically clarified "You made a statement [] that nobody is arguing here that the JDLA was limited to the joint development project," to which Samsung's counsel responded, "***You are correct.***" *Id.* at 28:8-15. Thus, "as to these issues," the Court did not "expressly approve[]" or "reject" either parties' arguments—these issues were not presented to the Court at all.

8.    <u>Samsung Fact 18</u>: Disputed. Netlist disputes Samsung's characterization of the *Samsung I* proceedings. Netlist does not dispute that the Court granted JMOL with regard to the "foundry products issue" that was in dispute in *Samsung I*, Dkt. 377-04 at 1266:17-25. The order speaks for itself.

## III.    NETLIST'S COUNTER-STATEMENT OF MATERIAL FACTS

9.    The patent license Samsung received under the JDLA was a negotiated deal point. For example, in the parties' June 2015 term sheet, Netlist ██████████████████████████████ ████████████████████████████████████████████ Ex. 1 at NL005092. In that draft, ████████████████████████████████████ ██████████████ "████████████████████████ *Id.* Two months later, the licensing provision in the final term sheet stated: ████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████ ████████████████████████ . Ex. 2 at NL045817-18. In its briefing before the Central District of California, Samsung claimed that because the ████████████████████████████████████████████ ████████████████████████████ C.D. Cal. Dkt. 361-1 at 13-14.

10.    The JDLA's Fourth Recital states "WHEREAS, in connection with their collaboration

hereunder, the Parties wish to grant to each other a cross license under each Party's patents." Dkt. 337-10.

11.     The JDLA defines the Developed Product (to arise from the JDP, which was also a defined term) as NVDIMM-P. *Id.* § 1. None of the Accused Products (DDR4 DIMMs) are NVDIMM-P which ███████████████ Ex. 3 (Indong Kim Dep.) at 108:8-11.

12.     Samsung argued to the Ninth Circuit that various provisions of the JDLA that do not expressly reference the JDP are nonetheless limited to it. For example, Samsung argued "there's an $8 million NRE fee… It's clearly for the joint development project, but it doesn't say it's specifically for the joint development project." Dkt. 273-2 at 8:16-24. This is the exact opposite of Samsung's position before this Court in support of its JDLA defense. *Samsung I,* Dkt. 566 at 57 ("███████████████████████ ███████████████████████████████████████████.").

13.     Samsung claimed before the Ninth Circuit that the license grant was limited to the joint development project (Dkt. 273-2 (9th Cir. HT) at 15:10-21):

> [T]he recitals are very clear -- and parties put recitals in agreements to make sure language isn't tortured down the road by lawyers and courts, right? Here's what our purpose is, interpret this agreement consistent with our purpose. And when you look at the recitals, what does it say about the licenses? Whereas in connection with their collaboration hereunder, the parties wish to grant to each other a cross-license under each party's patents. **The licenses are being given in connection with the collaboration. That's the joint development project**.

14.     Ho-Jung Kim, whom ██████████████████████████, testified, consistent with the Ninth Circuit argument, that the license grants were limited to what was necessary to develop NVDIMM-P. Ex. 4 (Ho-Jung Kim Dep.) at 22:11-17:

███████████████████████████
███████████████████████████████████████
███████████████████████

15.     On May 27, 2020 and again on June 12, 2020, Netlist served a notice of material breach of the JDLA based, in part, on Samsung's failure to comply with its obligation to supply Netlist with

NAND and DRAM products. Exs. 5, 6. Samsung did not provide any written explanation claiming that it was not obligated to supply or that it was unable to supply despite best efforts. Netlist terminated the JDLA and the patent license it contained on July 15, 2020. Dkt. 273-36.

## IV.   ARGUMENT

Samsung's motion fails because Samsung is judicially estopped from arguing that Netlist's license scope extends beyond the JDP. *See* Dkt. 273. Samsung is also wrong that Netlist is collaterally estopped. Finally, at the very least, fact issues remain as to license scope.[1]

### A.   Samsung Is Judicially Estopped

Samsung claims in its Motion here that the JDLA provided a broad license grant to all of Netlist's patents for any purpose, not just for the Joint Development Project. Samsung, however, successfully secured a partial reversal in the Ninth Circuit by arguing the opposite. This estops Samsung from taking the contrary position now. Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Hall v. GE Plastic*, 327 F.3d 391, 396 (5th Cir. 2003). "Statements made in a previous suit by an attorney before the court can be imputed to a party and subject to judicial estoppel." *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 753 (2001)). The Fifth Circuit applies a two-pronged test: "the position of the party to be estopped is clearly inconsistent with the previous one; and that party must have convinced the court to accept that previous position." *Id.* Here, both prongs are met.

Samsung's position that the JDLA's license grant covers the Accused Products is "clearly inconsistent" with what Samsung argued to the Ninth Circuit. The premise of Samsung's appeal was

---

[1] As demonstrated in Netlist's Summary Judgment Motion on Samsung's License Defense (Dkt. 273), even if Samsung were correct on the scope of the license grant, Samsung's license defense would still fail because the JDLA was properly terminated no later than July 15, 2020. Because Samsung's Motion expressly disavows offering any argument or evidence on the issue of license termination, *see* Mot. 1, Netlist does not re-assert here the facts, evidence, and argument on the issue of termination of the JDLA, but instead refers the Court to that briefing (Dkts. 273, 331).

that clauses in the JDLA that make no mention of the parties' Joint Development Project or the resulting joint product (i.e. NVDIMM-P), such as the supply clause, should nonetheless be read as limited to the Joint Development Project. For instance, Samsung argued that the JDLA's $8 million NRE fee that Samsung paid was not a license fee, but instead was a payment for the JDP:

> There's other provisions in the contract that clearly relate to the joint development project, that don't also say in connection with the joint development project. That's why you have to look at the structure of the agreement in order to interpret specific language. For example, in Section 3.1, there's an $8 million NRE [non-recurring engineering] fee that's paid. **It's clearly for the joint development project, but it doesn't say it's specifically for the joint development projec**t. Dkt. 273-2 (9th Cir. HT) at 8:16-24

*See Hall*, 327 F.3d at 396 (estoppel applies to "statements made at oral argument"). This is the opposite of what Samsung argued in *Samsung I*, when it repeatedly asserted that the $8 million payment was compensation for a broad license grant (not the JDP). *Samsung I*, Dkt. 566 at 57 ██████████████████ ███████████████████████████████████████████████████████████████████.").[2]

Similarly, Samsung *now* argues: ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████ Mot. 10. But Samsung argued the **exact opposite** to the Ninth Circuit. Quoting the Fourth Recital, Samsung argued:

> [P]arties put recitals in agreements to make sure language isn't tortured down the road by lawyers and courts, right? Here's what our purpose is, interpret this agreement consistent with our purpose. **And when you look at the recitals, what does it say about the licenses?** Whereas in connection with their collaboration hereunder, the parties wish to grant to each other a cross-license... **The licenses are being given in connection with the collaboration. That's the joint development project**. Dkt. 273-2 at 15:15-21.

In a footnote (Mot. 10 n.3), Samsung argues that it was just pointing out that the license was

---

[2] Samsung tries to explain away this argument by citing to an April, 2015 term sheet that predates both the JDLA and the MOU. Yet two days prior to filing its motion here, Samsung filed a brief on contract interpretation (as to its supply obligation in § 6.2) in C.D. Cal. There, Samsung asserted that early term sheets "hardly shed light on the parties' intention 'at the time they entered into the contract.'" C.D. Cal., Dkt. 376-1 at 13. Samsung's motion never explains why the term sheets are relevant to interpretation of the license grant, but not the supply clause.

consideration for the JDP. But consideration was not even at issue in the Ninth Circuit appeal, contract interpretation was. Samsung's latest spin cannot be reconciled with its own words quoted above (and studiously avoided in its motion), or with the outcome of those words.[3]

Samsung's argument to the Ninth Circuit succeeded. In an unpublished 2-1 decision, the majority conceded that "[s]tanding alone, the plain language of § 6.2 favors Netlist's interpretation: that Samsung must fulfill all NAND and DRAM orders by Netlist for whatever purpose." *Netlist*, 2023 WL 6820683, at *1. But it nevertheless found § 6.2 ambiguous. *Id.* In holding this, the Ninth Circuit relied on Samsung's Fourth Recital argument. *See Ahrens v. Perot Sys.*, 205 F.3d 831, 836 (5th Cir. 2000) (When a prior court "necessarily accepted, and relied on" a party's position in making a determination, then the prior-success requirement is satisfied). Right after Samsung's counsel emphasized that "[t]he licenses are being given in connection with the collaboration," the very first question posed to Netlist's counsel by the Presiding Judge who joined the majority opinion was:

> "But it is, if you will interpreted by the rest of the contract including, for example, the recital that [Samsung's counsel] just gave, and when you look at that in its totality, now it's pretty ambiguous to me. Why am I wrong?" Dkt. 273-2 at 18:23-19:2.

The majority then concluded that the supply clause was ambiguous based on the "contract's apparent purpose as derived from its title, structure, and related provisions," *Netlist*, 2023 WL 6820683, at *1, and the dissenting Judge confirmed that the majority's reasoning was predicated on the very recital that Samsung had emphasized: "Finding no support in the terms of the agreement, the majority's decision settles on the recitals as the basis for its finding that § 6.2 is ambiguous." *Id.* at *4.

### B.    Netlist Is Not Collaterally Estopped

Unable to reconcile its clearly inconsistent statements, Samsung argues that it is Netlist who

---

[3] Samsung argues the District of Delaware found no conflict in Samsung's argument, but Samsung omits that, unlike this case and in *Samsung I*, the Delaware case never proceeded to the point where Samsung was forced to choose one of its two positions on its contract interpretation.

is estopped from arguing that the license scope is limited. This argument fails. First, Samsung's assertion that license scope was decided on summary judgment in *Samsung I* is incorrect. In *Samsung I*, this Court concluded on summary judgment that Netlist had terminated the JDLA on July 15, 2020. *Samsung I*, Dkt. 196 at 1. As to license scope, however, this Court concluded that "[w]hat falls within that license as prescribed by the other terms of the JDLA is a fact question." *Samsung I*, Dkt. 426 at 59. Samsung's counsel itself expressly stated at the hearing that "there was an issue… about whether the license was somehow narrowly limited only to the jointly developed products. **I don't think anybody is carrying that issue forward**." *Id.* at 26:17-23. The Court clarified, "You made a statement [] that nobody is arguing here that the JDLA was limited to the joint development project," to which Samsung's counsel confirmed, "**You are correct**." *Id.* at 28:8-15.

Second, the question of what was licensed pre-termination was ultimately irrelevant in *Samsung I* because the Court also held as a matter of law that there was a pre-suit marking requirement, and there was no pre-suit notice as to the only patents-in-suit that issued pre-termination. *Samsung I*, Dkt. 432 at 3. Thus, the Court had no occasion to reach the license scope issue there. And even if it had, any such finding would not have been necessary to this Court's decision, as the license question was rendered moot by the Court's determination that Netlist could not seek pre-suit damages regardless. Thus, collateral estoppel cannot apply here. *Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 550 (5th Cir. 2013) ("For collateral estoppel… [the] determination must have been necessary to the decision.").

Finally, "partial summary judgment orders under Rule 56(d) are not preclusive," *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1271 (5th Cir. 1986), because "it remains within the plenary power of the court to revise or set aside" such decisions based on subsequent events. *Id.* Thus, even if this Court had previously determined that the JDLA's license grant was not limited to the JDP (which it did not), the Court should now revise that holding based on Samsung's statements to the Ninth Circuit successfully arguing the exact opposite.

- 9 -

**C.    There Are Genuine Disputes Of Material Fact That Preclude A Finding Against Netlist On License Scope**

Judicial estoppel alone compels denial of Samsung's motion, but at the very least, genuine issues of disputed material fact remain as to license scope.

**1.    Netlist's Interpretation of The License Clause Is Reasonable**

Samsung argues that the license clause is  because it

and because it

Mot. 10.[4] However, Samsung successfully argued that its supply obligation (at § 6.2) could reasonably be interpreted as being limited to the JDP (and thus render the clause ambiguous), notwithstanding the fact that § 6.2 does not contain a word about the JDP or the Developed Product, i.e., NVDIMM-P. Samsung prevailed on that argument.

In reliance on Samsung's arguments, the Ninth Circuit held that, though "the plain language of § 6.2 favors Netlist," the clause was ambiguous because of the JDLA's structure. *Netlist v. Samsung*, 2023 WL 6820683, at *1. The structure the Ninth Circuit was referring to was the Fourth Recital, which says: "WHEREAS, in connection with their collaboration hereunder, the Parties wish to grant each other a cross license under each Party's patents." Dkt. 337-10 (JDLA). As Samsung argued to the Ninth Circuit after quoting the Fourth Recital: "***The licenses are being given in connection with the collaboration. That's the joint development project.***" Dkt. 273-2 at 15:20-21.

Given that recital four renders § 6.2 ambiguous as to whether it contains an implicit limitation to the JDP (in a Ninth Circuit ruling that binds both Samsung and Netlist), then the same certainly holds true for the license grant. Indeed, if anything, this conclusion holds even stronger for the license

---

[4] After asserting that the license is unambiguous, Samsung dives into extrinsic evidence. Mot. § V.A.2.b. Extrinsic evidence can only be considered if a contract is ambiguous.

grant, as recital four expressly mentions the *license* but does not discuss supply at all. This was the

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

        ████████████████████████████████████████████████████████
        ████████████████████████████████████████████████████████
        ████████████████████████████████████████████████████████
        ██████████  Ex. 7 at 27-28.

        ████████████████████████████████████████████████████████
        ████████████████████████████████████████████████████████
        ██████████████████. *Id.* at 23.

Consequently, the license grant is at the very least "reasonably susceptible" to Netlist's

proffered interpretation. That renders the license clause ambiguous. *See Ellington v. EMI Music, Inc.*, 24

N.Y.3d 239, 244 (2014). And under Fifth Circuit law, "[i]f a contract is ambiguous, summary judgment

is inappropriate because the interpretation of a contract is a question of fact." *Fireman's Fund Ins. Co.*

*v. Murchison*, 937 F.2d 204, 207 (5th Cir. 1991). This is an independent basis to deny Samsung's motion.

### 2. Extrinsic Evidence Supports Netlist And At Least Creates A Fact Issue

Under Fifth Circuit law (which governs the summary judgement standard), the fact that the

license grant is reasonably susceptible to Netlist's interpretation (rendering the clause ambiguous)

requires that Samsung's motion be denied. But even under New York state law (which governs the

JDLA), when a contract is ambiguous, the court then looks to extrinsic evidence. Here, the extrinsic

evidence, including Samsung's own admissions and the JDLA's negotiation history, overwhelmingly

supports Netlist's interpretation. And at the very least, this evidence create a genuine dispute of

material fact as to whose interpretation is correct that must be resolved by a jury.

Samsung's ████████████████████████, Ho-Jung Kim, testified that ████████████████████

██████████████████████████████████. Ex. 4 (Ho-Jung Kim Dep.) at 22:11-17; *supra* II

¶ X (quoting full testimony). Moreover, as demonstrated above, Samsung's counsel admitted to the

Ninth Circuit that *"[t]he licenses are being given in connection with the collaboration. That's the joint development project."* "[A] party's own admissions" that the contract has particular meaning are highly relevant. *See JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 303 (S.D.N.Y. 2010); *see also Nationwide Mut. Ins. V. Erie and Niagara Ins.*, 249 A.D.2d, 898 (S.D.N.Y. 1987) (considering "a party's relevant admissions on the issue of contract interpretation"); *Blum v. Spaha Cap. Mgmt.*, 44 F. Supp. 3d 482, 491 (S.D.N.Y. 2014) ("Once an ambiguity in the agreement is found, a court may consider evidence such as . . . 'admissions by the parties . . . .'"). This is especially true where the parties' prior interpretation contradicts its litigation position. *Aircraft Servs. v. Oceanic Cap. Co.*, 2013 WL 4400453, at *4 (S.D.N.Y. Aug. 14, 2013), *aff'd*, 586 F.App'x 761 (2d Cir. 2014) ("Even though the e-mail was sent almost a year after the contracts were executed, it may be considered as an admission made by a party-opponent. A party's post-execution interpretation of a contract before a motive arose (ante litem motam) has some probative value, especially here when the party later contradicts itself in litigation."). Samsung will undoubtedly try to explain away these admissions, but credibility is not to be determined on summary judgment. *Seigler v. Wal-Mart Stores Texas, L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022) ("On summary judgment, all facts and reasonable inferences are construed in favor of the nonmovant, and the court should not weigh evidence or make credibility findings.").

In addition, where a contract is ambiguous, courts may look to "evidence of conversations, negotiations and agreements made prior to or contemporaneous with the execution" of a contract to ascertain the "intent of the parties" at the time of contracting. *67 Wall St. Co. v. Franklin Nat'l Bank*, 37 N.Y.2d 245, 248-49 (N.Y. 1975). In its recent motion for summary judgment in C.D. Cal., Samsung made much of the Memorandum of Understanding ("MOU") between the parties (which preceded, and is expressly superseded by, the JDLA) and its alleged similarities to earlier term sheets. C.D. Cal., Dkt. 361-1 at 7-8. But Samsung cannot have it both ways. If these pre-JDLA negotiations are relevant to the interpretation of Samsung's supply clause, then they are also relevant to interpretation of the

license grant. The negotiations undercut Samsung's interpretation and support Netlist's.

In the parties' June 2015 term sheet, ██████████████████████████████ ████████████████████████████████████ Ex. 1 at NL005092. In that draft, ████████████████████████████████████ "███████████████████████ *Id.* Two months later, ██████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████████ which was ████████████████ ██████████████ Ex. 2 (NL045817-18) (emphasis added).[5]

The JDLA drafting process also supports Netlist's interpretation. In a JDLA draft attached to the very same email that Samsung cites in its motion for the proposition that ████████████ ████████████████ Mot. 2, Netlist ████████████████████████████ ██████████████████████████

██████████████████████████████████████████

Ex. 8 (NL045880). Samsung accepted this change, which ultimately became final, in the next (and final) draft of the JDLA. Ex. 9 (NL049029). Thus, the terms of the JDLA are consistent with the parties' negotiation history, which limits the cross-licenses to the parties' "collaboration": in Samsung's own words to the Ninth Circuit: "*The licenses are being given in connection with the collaboration. That's the joint development project.*" Dkt. 273-2 at 15:20-21.

Samsung also relies heavily on the early proposals exchanged between the parties. Mot. 12.

---

[5] As noted in SUF No. 1, in its briefing before the Central District, Samsung claimed that because the ████████████████████████████████████ C.D. Cal. Dkt. 361-1 at 13-14.

But, as Samsung points out in its California briefing, "[t]hose early demands and proposals [] were superseded in the negotiations by subsequent term sheets." C.D. Cal. Dkt. 376-1 at 13. Thus, following the logic of Samsung's own argument, terms from Netlist's original proposal do not hold weight to the extent they are contradicted by the above material found in the later-exchanged term sheets.

Moreover, the JDLA states that it "supersede[s] all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement, JDLA §16.7, and the MOU similarly notes that it ███████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████ Dkt. 337-7 (MOU) at NL069668. Accordingly, Samsung cannot use the MOU to broaden the terms of the JDLA beyond what the parties chose to include. *See In re Gulf Oil/Cities*, 725 F. Supp. 712, 728 (S.D.N.Y. 1989) (while extrinsic evidence "may be admitted to interpret ambiguous terms," "[w]hen contracts contain integration clauses as they do here, extrinsic evidence may not be admitted to prove different or additional terms in the contract").

Samsung also argues that Netlist has "admitted" that the license grant covered Samsung's manufacture and sale of RDIMMs and LRDIMMs (although Samsung does not contend that these "admissions" give rise to preclusion or estoppel). Mot. 4. But these statements are not on point in this litigation. Thus, the JDLA license potentially covers certain types of LRDIMM or RDIMM products (for the joint development project/NVDIMM-P), but this does not show that Samsung has broad license to all of Netlist's patent portfolio for all products.

At most, Samsung's proffered extrinsic evidence deepens the disputed fact issues here. Barring estoppel, a jury could weigh this evidence and find for Netlist. Samsung's Motion should be denied.

Dated: January 30, 2024

Respectfully submitted,

*/s/ Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that, on January 29, 2024, a copy of the foregoing was served to all counsel of record.



## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

