**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-293-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD; | ) | (Lead Case) |
| SAMSUNG ELECTRONICS AMERICA, | ) | ████████████ |
| INC.; SAMSUNG SEMICONDUCTOR | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:22-cv-294-JRG |
| | ) | |
| MICRON TECHNOLOGY, INC.; | ) | JURY TRIAL DEMANDED |
| MICRON SEMICONDUCTOR | ) | |
| PRODUCTS, INC.; MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>NETLIST INC.'S OPPOSITION TO SAMSUNG'S *DAUBERT* MOTION
AND MOTION TO STRIKE EXPERT REPORT OF DR. WILLIAM
HENRY MANGIONE-SMITH (DKT. 350)</u>**

# TABLE OF CONTENTS

**Page**

I.  ANALYSIS ..................................................................................................................... 1

    A.  Dr. Mangione-Smith's Infringement Theories Are Proper ........................................... 1

        1.  Each Theory Was Either Disclosed Or Responsive To Late Discovery ....... 1

        2.  Exclusion Is Not the Appropriate Remedy Under The Circumstances ........ 4

    B.  Dr. Mangione-Smith's Doctrine of Equivalents Theories are Timely and Proper ........................................................................................................................... 6

    C.  Dr. Mangione-Smith's properly applies the court's constructions ............................. 6

        1.  "Capability" ...................................................................................................... 7

        2.  "Transmit" ........................................................................................................ 8

    D.  Dr. Mangione-Smith's Technical Benefits and Valuation Opinions ........................... 9

    E.  Dr. Mangione-Smith's Written Description Opinions Are Timely ........................... 13

    F.  Dr. Mangione-Smith Will Not Opine on Samsung's State of Mind ......................... 14

    G.  Dr. Mangione-Smith's Essentiality Opinions are Timely ........................................ 14

II.  CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Motorola, Inc.,*
  757 F.3d 1286 (Fed. Cir. 2014) ..................................................................................................... 14

*Astrazeneca AB v. Apotex Corp.,*
  782 F.3d 1324 (Fed. Cir. 2015) ..................................................................................................... 15

*Barrett v. Atlantic Richfield Co.,*
  95 F.3d 375 (5th Cir. 1996) ............................................................................................................ 6

*Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.,*
  2016 WL 3655302 (E.D. Tex. Mar. 21, 2016) ............................................................................... 2

*HTC Corp. v. IPCom GmbH & Co., KG,*
  667 F.3d 1270 (Fed. Cir. 2012) ..................................................................................................... 9

*In re Innovatio IP Ventures, LLC Patent Litig.,*
  956 F. Supp. 2d 925 (N.D. Ill. 2013) ........................................................................................... 17

*Intel Corp. v. Future Link Sys.,*
  268 F. Supp. 3d 605 (D. Del. 2017) .............................................................................................. 17

*Intel Corp. v. Tela Innovations, Inc.,*
  2021 WL 1222622 (N.D. Cal. Feb. 11, 2021) ......................................................................... 14, 15

*INVT SPE LLC v. Int'l Trade Commission,*
  46 F.4th 1361 (Fed. Cir. 2022) ..................................................................................................... 10

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.,*
  520 F.3d 1367 (Fed. Cir. 2008) ..................................................................................................... 9

*Papst Licensing GmbH & Co., KG v. Apple, Inc.,*
  2017 WL 11638426 (E.D. Tex. June 16, 2017) ............................................................................. 16

*PersonalWeb Techs. LLC v. IBM Corp.,*
  2017 WL 3476082 (N.D. Cal. Aug. 14, 2017) .............................................................................. 15

*Powell v. Home Depot U.S.A., Inc.,*
  663 F.3d 1221 (Fed. Cir. 2011) ..................................................................................................... 14

*Smith & Nephew, Inc. v. Arthrex, Inc.,*
  2:07-CV-335-TJW-CE, 2010 WL 457142 (E.D. Tex. Feb. 5, 2010) .............................................. 7

**Page**

*UltimatePointer, L.L.C. v. Nintendo Co., Ltd.*,
   816 F.3d 816 (Fed. Cir. 2016).............................................................................................................8, 9

**Statutes**

35 U.S.C. § 112.............................................................................................................................................16

Netlist respectfully requests that the Court deny Micron's motion to strike.

## I.    ANALYSIS

### A.    Dr. Mangione-Smith's Infringement Theories Are Proper

Samsung identifies alleged new infringement theories are either (1) theories fully disclosed in Netlist's infringement contentions or (2) theories consistent with Netlist's contentions that were responsive to late discovery from Samsung. Exclusion would be inappropriate because, inter alia, Samsung has suffered no prejudice as its expert had the opportunity to respond in his rebuttal report.

#### 1.    Each Theory Was Either Disclosed Or Responsive To Late Discovery

███████████████████ (*'912*). Micron selectively excerpts Netlist's preliminary infringement contentions to argue that Netlist never ████████████████ ███████ in its analysis. In fact, Netlist specifically identified ██████ in its contentions for both the identified elements via an annotated excerpt from the applicable JEDEC standard, JESD 79-4C:



Ex. 1 (Exhibit A-1 to Netlist's PICs) at 27, 34 (red box added). As identified in Netlist's contentions and further explained by Dr. Mangione-Smith, ████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████ Ex. 2 (Mangione-Smith Opening) ¶ 57. Expert reports may add consistent details and analysis to theories presented in contentions. *Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*, 2016

WL 3655302, at *4 (E.D. Tex. Mar. 21, 2016).

██████████████████████ *('912).* Netlist cited JESD 79-4-1B, the JEDEC standard for 3DS DDR4 DRAMs, in its infringement contentions. Ex. 1 (Exhibit A-1 to Netlist's PICs) at 11-12, 19. On November 10, 2023—ten days before opening reports were due—Samsung made its corporate representative Sungyub Jang available for deposition. During his deposition, Netlist learned that ████ ████████████████████████████████████████████████████████████████████ Ex. 3 at 33:16-33:20. Dr. Mangione-Smith cited this new evidence in the paragraph Samsung now seeks to strike. Exclusion would be improper.

████████████████████████████████████ *('912).* Netlist's infringement contentions included ████████████████████████████████████ ██████████████ in their own right. **For example, the contentions state:**



[Ex. 1, 30-31.]

The above ██████████████████████████████████████████

████████████████████████████████ *('912).* The figures cited for the ████ element in Netlist's infringement contentions ████████████████████████. *See, e.g.,* Ex. 1 at 14 (illustrating ██████████████ ██████████████, 15 (illustrating ████████ ██████████████████████ As Dr. Mangione-Smith explains, the claim language recites the ████████████████████████████████████████ ████████████████████████████ Ex. 2, ¶ 72. That is, consistent with the PICs and the claim. Samsung's criticisms go to weight, not admissibility.

████████████████████████████████ *('912).* Dr. Mangione-Smith was merely

responding to claim interpretation Samsung first disclosed ten days before the opening reports:



Ex. 4 at 8-9. Dr. Mangione-Smith showed why Samsung still infringes under Samsung's new theory.

***Data buffer control signals ('417).*** Netlist's infringement contentions make clear that

████████████████████████████████████████████████████████████████████████

██████ █████████████████████████████████ For the "buffer control signals" limitation, the

███████████████████████████████████████████. Ex. 5 (Ex B to Netlist's

PICs) at 47 (███████████████████████████████). While ████████████

██████████████████, the PICs make clear that this is merely exemplary. First, the PICs note

that there is a ████████████████████████████████ *Id.* The tally of █████████

███████████████████████████████████. Finally, the PICs annotate the ███████████

████████████████████████████████████████ is merely an example

███████████████████████████████████

████████████████████████████████████████

*Id.* at 48. Thus, Netlist's contentions did not limit the term to ████████████.

██████████████████ As with the previous limitation, Samsung ignores the non-

limiting language Netlist uses in its infringement contentions which put it on notice ████████

████████████████████████ Under its analysis of the pertinent limitation, Netlist's

contentions state: ███████████████████████████ ▨ █████████

███████████████████ Ex. 6 at 71. As Samsung concedes, Netlist's infringement

contentions discussed ██████████████████████. Mot at 3-4. As is clear from

the pertinent JEDEC specification, which Samsung acknowledges are cited throughout the

contentions (see Mot. at 4), JESD82-██████████████████████████████:



Ex. 7 at 44. Dr. Mangione-Smith discussion of █████ is consistent with Netlist's infringement

contentions, which put Samsung on notice that █████████████████████████████

███████ Indeed, as noted throughout Dr. Mangione-Smith's report, ████████████████

████████████████████ is substantially the same. *See, e.g.*, Ex. 8 (Mangione-Smith

Opening, Ex. D), ¶ 171 ██████████████████████████████

████████████████████████████████; ¶¶ 86-87

(noting Samsung's and ██████████████████ describes █████████████

██████████████████████████ a ██████████████████

███████████████████████ ¶ 88 (noting █████████████

████████████████████████████████████████

████████████████████), ¶ 150 (discussing ████████████

█████████

     **2.**       **Exclusion Is Not the Appropriate Remedy Under The Circumstances**

For reasons stated below, exclusion would not be appropriate even under the four-factor test specified in Samsung's case law *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).

***Explanation for Alleged Failure*:** As discussed above, to the extent that Dr. Mangione-Smith's explanations were not already disclosed in Netlist's infringement contentions, they are directly responsive to contentions Samsung disclosed in discovery only days before open reports were due.

***Alleged Prejudice to Opposing Party*:** Samsung suffered no prejudice. Samsung's expert, Mr. McAlexander, had an opportunity to respond to each and every identified theory in his rebuttal non-infringement report, and indeed he did so in nearly all instances. *See*, e.g., Ex. 9 (McAlexander Rebuttal, Attachment A), ¶¶ 141-158 (addressing ████), 324 (opining that ███████████████ ████ 113-14 (responding to █████████████ theories); Ex. 10 (McAlexander Rebuttal, Attachment B), ¶¶ 49-60 (addressing █████████████); Ex. 11 (McAlexander Rebuttal, Attachment C), ¶¶ 41-46 (discussing ██████). Samsung has not identified any specific discovery that it wished it had in its possession to better respond to Dr. Mangione-Smith's opinions. And Samsung has already deposed Dr. Mangione-Smith. A vague allegation that discovery could have been relevant is insufficient. Samsung has suffered no prejudice.

***Possibility of Curing*:** Since Mr. McAlexander already responded to the identified theories, no continuance is even needed.

***Importance of Testimony*:** The testimony is important in responding to Samsung's belatedly disclosed theories. Samsung argues that "if the new theories were important to Netlist's case, it had a remedy of moving to amend to explain its delay and the importance." Mot. at 5. As noted, Netlist believed that Dr. Mangione-Smith's report is consistent with the PICs, including the responses to Samsung's belated non-infringement and claim construction theories. The local rules do not preclude an expert from providing additional evidence and explanation.

### B.    Dr. Mangione-Smith's Doctrine of Equivalents Theories are Timely and Proper

***Timeliness.*** Samsung complains that Netlist's disclosure of doctrine of equivalents opinions are "untimely." Mot at 6-7. Netlist provided notice to Samsung that it was asserting doctrine of equivalents in its initial infringement contentions, including to respond to differences that Samsung may allege "in the future" between the asserted claims and the Accused Instrumentalities. *E.g.*, Ex. 12 (Netlist's PICs Cover) at 10; *see also, e.g.*, Ex. 1 (PICs, Ex. A-1), at 30-31, 37-38. Netlist served an interrogatory requesting Samsung's non-infringement position in March 2023, but Samsung waited until November 10, 2023, ten days before opening expert reports were due, to identify its non-infringement positions. Ex. 4 (Exhibit B to Samsung's Fourth Suppl. Objs. & Resps. to Netlist's First Set of Interrogatories). Dr. Mangione-Smith expressed DoE opinions in response to Samsung's late disclosed non-infringement positions. Any alleged "untimeliness" of Dr. Mangione-Smith's opinions is entirely of Samsung's making.

***Sufficiency***. Contrary to Samsung's characterization, Dr. Mangione-Smith provided sufficient explanation for his DoE analysis. *See* Ex. 2 (Mangione-Smith Opening, Ex. B) ¶¶ 81-89; *see also* Ex. 8 (Mangione-Smith Opening, Ex. D) ¶¶ 157-161. In *Smith & Nephew, Inc. v. Arthrex, Inc.*, the court only struck those DoE opinions that were pure boilerplate but did not strike opinions that were sufficiently developed to put the defendant on notice of the alleged theories. 2:07-CV-335-TJW-CE, 2010 WL 457142, at *8 (E.D. Tex. Feb. 5, 2010). Moreover, in *Samsung I*, this Court found a similar level of detail sufficient under similar circumstances where Dr. Mangione-Smith was responding to Samsung's late disclosed non-infringement theories. *See Netlist, Inc. v. Samsung Electronics Co., Ltd. et. al.,* No. 2:21-cv-463-JRG (*Samsung I*), Dkt. 432 ("Concerning untimely doctrine of equivalents opinions . . . the Court **DENIED** the motion."), Dkt. 247 (PTC Day 2 Tr.) at 36:24-39:9 (DoE arguments).

### C.    Dr. Mangione-Smith's properly applies the court's constructions

As explained in Netlist's opposition to Samsung's motion for summary judgment (being filed

contemporaneously with this brief), Dr. Mangione-Smith neither offers new claim constructions nor departs from the district court's constructions of the '912 patent claims. Samsung's disagreements about whether the accused products satisfy the limitations of '912 patent claim 16 go to the weight of Dr. Mangione-Smith's opinions, not their admissibility.

    1.  **"Capability"**

  Claim 16 is an apparatus claim with functional language. Samsung argues, however, the

███████████████████████████████████████████████████████████████

████████████████████████████████████████ *See* Mot. at 7. As explained in Netlist's opposition to Samsung's motion for summary judgment, its narrow grammatical argument ignores the context of the claims and has been repeatedly rejected by the Federal Circuit's analysis of similarly-structured claims. For example, in *UltimatePointer, L.L.C. v. Nintendo Co., Ltd.*, 816 F.3d 816 (Fed. Cir. 2016), a claim reciting "a handheld device including: an image sensor, ***said image sensor generating data . . .*"** was directed to "the capability of that structure rather than the activities of the user" and thus "only indicate that the associated structures have this capability (for example, the image sensor and processor in claim 1) and do not require that any data be actually generated by the user." *Id.* at 819, 827. Like the claim in *UltimatePointer*, claim 16 here describes what logic must be implemented in the claimed circuit to act on signals that may be sent by a host computer, but the claim does not require that the claimed memory module apparatus actually be inserted into a host computer or that the host computer (which is not part of the claimed apparatus) send any particular signals. Similarly, in *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270 (Fed. Cir. 2012), the Federal Circuit held that a claim reciting a "mobile station for use with a network . . . ***storing*** link data . . . ***holding*** in reserve [resources] . . . ***maintaining*** a storage of link data . . . [and] ***causing*** the resources of the first base station to remain held in reserve" "merely establish[ed] those functions as the underlying network environment in which the mobile station operates." *Id.* at __; *see also INVT SPE LLC v. Int'l Trade Commission*, 46

F.4th 1361, 1373 (Fed. Cir. 2022) (claims need not "adhere to a specific grammatical form" to describe an apparatus in functional terms); *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1371 (Fed. Cir. 2008) ("performing," "producing" referred to pipelined processor's capability).

Contrary to Samsung's assertion, Dr. Mangione-Smith did not raise new claim construction theory but only responded to Samsung's belatedly disclosed non-infringement and claim construction theories. Nor could Netlist have anticipated that Samsung attorneys would take a legally incorrect approach to claim construction, in particular a theory that it chose not to raise during the claim construction process.

2.    **"Transmit"**

Dr. Mangione-Smith's report applies the plain meaning of "transmit"—a common English word—and explains in detail how the accused products implement a function called ▮▮▮▮▮ ▮▮▮▮ or ▮▮▮ where commands, such as ▮▮▮▮▮▮▮▮ commands, can ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, Ex. 2, ¶¶ 55-56, 68. Dr. Mangione-Smith's opinions are not based on any special definition of "transmit", but are, *inter alia*, based on Samsung 30(b)(6) witness's admissions:



Ex. 13 (*See* 9-28-2022 SM Jung Tr.), 15:25-16:3.

*Id.*, 84:24-85:8. Dr. Mangione-Smith's deposition testimony is consistent with his written opinions. Contrary to Samsung's assertion, he did not testify that his opinions depend on ▮▮▮▮▮▮▮▮

██████████ ; in the excerpted testimony, he was merely seeking clarification from Samsung's attorney regarding what he █████████████████ in his question. *See* Ex. 14, 238:10-21. Nor did he testify that transmission ███████████████████████████████████████ ██████████ *See* Mot. at 8. He was asked by Samsung's attorney █████████████████████ ████████████████████████████ and explained that ████████████████ but that ██████████████████████████████████ Ex. 14, 238:5-240:5. All of Samsung's questions on this topic were about ████████████████ █████████████████████████████████████████ not about a definition of "transmit"; if Samsung disagrees with Dr. Mangione-Smith's assessment of how the accused products operate, the proper venue for that disagreement is at trial where the jury can assess the evidence and determine which opinion is more credible.

### D.    Dr. Mangione-Smith's Technical Benefits and Valuation Opinions

Samsung's suggestion that any of Dr. Mangione-Smith's opinions are untimely disclosed is wrong. *See* Mot at 9-11. Samsung does not dispute that Netlist disclosed in discovery those opinions and theories of Dr. Mangione-Smith that Mr. Kennedy actually relies on in his damages analysis. See Ex. 15 (Netlist's response to ROG 8) at 30-39; Ex. 16 (Kennedy report). Netlist's disclosures went above and beyond what is required under the Docket Control Order. Dr. Mangione-Smith's additional ancillary opinions and evidence are the proper subject for expert analysis, and Netlist's theory regarding damages was properly disclosed during expert discovery. Netlist objected to Samsung's attempts to circumvent the Court's Docket Control order by seeking expert disclosures during fact discovery in response to Samsung's discovery request. See Ex. 15 (Netlist's response to ROG 8) █████████████████████████████████████████████████████████ ███████████████████████████████████████████████ . Samsung cites no support suggesting that Netlist was required to provide expert analysis during fact discovery.

Any purported disagreements Samsung has with Dr. Mangione-Smith's opinions about the technical value of Samsung's use of the inventions at most go to weight, not admissibility. Moreover, Samsung's critiques are all rooted in distortions of the record and applicable law.

**'912 Patent.** Samsung alleges Dr. Mangione-Smith's ███████████████████ because he allegedly ███████ ███████████████████████████████████████████████████ ███████████████████████████████ Mot. at 11. Samsung is incorrect.

First, Samsung mischaracterizes Dr. Mangione-Smith's opinion. His opinion is not that ████████████████████████████████████████████████████████████████ ██████████████████████████ Ex. 17, ¶ 29.

Second, Samsung's bare assertion that Dr. Mangione-Smith's opinions lack ███████ █████████████ is the same argument it raised, unsuccessfully, against similar analysis from Dr. Mangione-Smith in *Samsung I. Compare* Mot. at 11 (alleging a lack of ███████ ███████ etc. underpinning Dr. Mangione-Smith's analysis), *with Samsung I*, Dkt. 204 at 18 (alleging lack of "reasoning or factual basis" underlying Dr. Mangione-Smith's technical benefits analysis). The Court rejected Samsung's attempt there because it "goes more to weight than admissibility, can be fairly dealt with on cross examination." *Samsung I*, Dkt. 427. It should do the same here, where nothing about Samsung's critique is materially different from what it asserted in *Samsung I*. Samsung's argument also ignores the evidence Dr. Mangione-Smith cites in support of his opinions; for example, a publicly-available DDR4 design guide published by Micron (Ex. 17, ¶¶ 94-95), Samsung's own datasheets and JEDEC documentation describing how "████████████████████████████/█ ██ ████████████████ (*id.,* ¶ 96), Samsung's witness' testimony regarding ████████ ████████████████████████ (*id.,* ¶ 97), and published papers in the field describing the ████████ ████████████████████████████

(*id.*, ¶ 98). If Samsung believes that evidence does not adequately support Dr. Mangione-Smith's opinion, it can address those issues on cross-examination.

Third, Samsung argues that Dr. Mangione-Smith's analysis is "untethered to asserted claim 16" because he relies on ███████████████████████████████ Mot at 12 (emphasis in original). Samsung expressly acknowledges that Dr. Mangione-Smith's analysis is tethered to asserted claim 16 because it says his analysis is tied to a key element of the claim. Samsung cites no law indicating that this is improper. Furthermore, many of "the other limitations" identified by Samsung, such as the "register," "logic element," etc., are implicated in the ███████████. See claim 16. Samsung cites no authority suggesting that a reasonable royalty must be based on a comparison of the infringing product to an alternative that practices <u>none</u> of claimed limitations.

Indeed, in the next breath, Samsung paradoxically criticizes Dr. Mangione-Smith for not addressing the patent's incremental value. But neither Dr. Mangione-Smith nor Mr. Kennedy argues that Netlist is entitled to 100% of the value of the accused products in light of the '912 patent, as Samsung suggests. Rather, Dr. Mangione-Smith has provided opinions regarding the technical benefits and non-infringing alternatives of each asserted patent, and Mr. Kennedy has then determined the financial benefit obtained by Samsung as a result of its infringement, as compared to the next best alternative, which would not infringe because it would not practice one of the elements of claim 16; namely, the ████████████████████████████████. This follows the well-settled principle that patent damages may be calculated by "estimat[ing] the value of the benefit provided by the infringed features by comparing the accused product to non-infringing alternatives." *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011) (damages based on "value of the benefit conferred to the infringer by use of the patented technology").

Samsung's arguments mischaracterize Dr. Mangione-Smith's opinions, and its cited cases are

entirely irrelevant. In *VLSI*, defendant's pursued a line of questioning "that unavoidably conveyed a message of relevance of the sheer size of the proposed award, through facts (about sports teams) self-evidently unconnected to the question of the value of the specific technology at issue." The court cautioned the district court to ensure there was "no recurrence of comparable references." Here, in contrast, Dr. Mangione-Smith's analysis exclusively discusses the benefits of "specific technolog[ies] at issue" and NIAs to those technologies. *LaserDynamics* is also irrelevant because Dr. Mangione-Smith never opines that the accused features "alone drive the market for" memory modules making Netlist entitled to 100% of the value of the Accused Products.

Finally, Samsung argues that Dr. Mangione-Smith "has not addressed the value attributable to the specific technology at issue" because he opines that both the '912 and '608 patent enable similar benefits—i.e., ████████████████████████████████████████████ ████████████████████████ But it is often the case—as is here—that different technologies can independently enable the same technical benefit in different ways.  And, as multiple courts have recognized, the mere fact that multiple patents enable similar benefits and would thus independently warrant similar reasonable royalties does not mean there is an apportionment problem. For example, in *Intel Corp. v. Tela Innovations, Inc.*, 2021 WL 1222622, at *33 (N.D. Cal. Feb. 11, 2021), the plaintiff asserted five patents and its expert opined that the same royalty rate would be owed for a subset of these patents as "all the Asserted Patents combined." Defendant moved to strike for alleged failure to apportion and the Court denied the motion, holding the analysis was proper because the expert explained that "the patents are largely overlapping," and finding that "this issue is for cross-examination." *Id.* at *33. Similarly, in *PersonalWeb Techs. LLC v. IBM Corp.*, 2017 WL 3476082, at *2 (N.D. Cal. Aug. 14, 2017), plaintiff asserted multiple patents from the same portfolio, and defendant moved to strike the opinion of plaintiff's expert that "the value of the '420 patent should include some 'core overlapping value'" with other patents in the portfolio. The Court denied the motion, explaining

"[w]hether there truly is some 'core overlapping value' and whether the three patents selected accurately capture that value are factual issues that IBM can explore on cross-examination." *Id.*

**'608 and '417 Patents.** Samsung's critique of the '608 patent mirrors its critique of the '912 patent and so fails for the same reasons. Samsung's critique of the '417 patent is also similar, but this time points out that, based on Dr. Mangione-Smith's opinion, ███████████████████████ ██████████████████████. As explained above, courts have recognized that multiple patents in a portfolio may have overlapping benefits where they enable similar benefits in different ways and that each patent might individually warrant the proposed royalty. Moreover, Samsung's concerns regarding ████████████ and ██████████████ are unfounded, as detailed in Netlist's concurrently-filed opposition to Samsung's motion to exclude Mr. Kennedy's opinions. Samsung's additional argument that "the prior art is replete with disclosures regarding buffers for load isolation" is also misplaced. The Federal Circuit has expressly held that a patentee need not apportion out elements of prior art. *Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015) ("It is not the case that the value of all conventional elements must be subtracted from the value of the patented invention as a whole when assessing damages.").

### E.    Dr. Mangione-Smith's Written Description Opinions Are Timely

Samsung wrote Netlist, asking Netlist to supplement its response to Interrogatory No. 17. Netlist obliged and served its Fourth Amended and Supplemental Responses and Objections on November 19, 2023. *See* Ex. 15, at 63-70. In that response, Netlist ████████████████████ █████████████████████████████████████████████████████████████████ ████████████████████████. *See, e.g.*, Ex. 18 (IPR2022-00615 Patent Owner Response), at 54-75 (explaining why "on the full trial record written description exists for each disputed limitation"); Ex. 19 (IPR2023-00454, Netlist's Expert Declaration), at ¶¶ 80-91 (explaining how the '417 patent claims are adequately disclosed by the priority applications). Samsung did not move to compel any

further response, likely in view of this Court's prior decisions, e.g., in *Papst Licensing GmbH & Co., KG v. Apple, Inc.*, 2017 WL 11638426 (E.D. Tex. June 16, 2017), denying a motion to compel further "contentions with respect to validity over the prior art and how each asserted claim satisfied the requirements of 35 U.S.C. § 112" because the "requests are premature in light of the impending disclosure of those contentions during expert discovery." *Id.* at *5. Here, Dr. Mangione-Smith's opinions are all responsive to the written description contentions presented by Samsung's expert in his opening report, and Samsung had the opportunity to depose Dr. Mangione-Smith regarding all of those opinions. Thus, the Court should not strike Dr. Mangione-Smith's written description opinions, which are not untimely notwithstanding Samsung's arguments to the contrary.

### F.    Dr. Mangione-Smith Will Not Opine on Samsung's State of Mind

Netlist agrees that the court's ruling in Samsung I should apply here because as Samsung notes the opinions in question "are nearly identical" in both cases. Mot at 15. The issues is that Samsung mischaracterizes the Court's ruling in Samsung I. The court expressly did not strike the paragraphs in their entirety, which appears to be the remedy Samsung is seeking here. Rather, the Court provided high-level guidance that Dr. Mangione-Smith was permitted to opine on the factual content in those paragraphs, such as discussion of notice, but was forbidden from opining on Samsung's state of mind:

> Doctor Mangione-Smith is not going to opine as to Samsung's state of mind, and I'm going to leave the Court's guidance at this higher level rather than delve into paragraph numbers, sentence numbers, parts of sentences.

*Samsung I*, Dkt 427, 46:23-47:5 (emphasis added). Netlist will follow this guidance here.

### G.    Dr. Mangione-Smith's Essentiality Opinions are Timely

Samsung—not Netlist—bears the burden to prove standard essentiality as part of its RAND defense. *See Intel Corp. v. Future Link Sys.*, 268 F. Supp. 3d 605, 610 (D. Del. 2017) (granting summary judgment that defendant did not "meet its burden of demonstrating that RAND licensing requirements attach to these patents, as [it] failed to show that (1) each patent contains at least one

'Necessary Claim'"); *In re Innovatio IP Ventures, LLC Patent Litig.*, 956 F. Supp. 2d 925, 936 (N.D. Ill. 2013) ("[T]he assertion of RAND is like an affirmative defense . . . The court thus assigns to the Defendants the burden of establishing the RAND commitment . . . ."). Samsung failed to adequately disclose its essentiality theories during discovery, and indeed never offered a legally sufficient element-by-element analysis to which Netlist and Dr. Mangione-Smith could respond. Samsung cannot fault Netlist for Samsung's own "efforts to hide" its theories on an issue for which it has the burden.

Netlist did not improperly withhold discovery on this issue and Samsung has suffered no prejudice. Samsung served discovery requests on Netlist regarding essentiality. *E.g.*, Ex. 15 (2023-11-19 Netlist's (Revised) Fourth Amended and Suppl Resps and Objs to Samsung ROG Set 2 Nos. 3-22) at 75. Netlist's objections and responses made clear that ███████████████████████████ ██████████████████████████████████████████████████████████ *See id.* at 75-78. Samsung moved to compel responses. Dkt. 128. Netlist opposed the motion because Samsung was seeking to compel contention interrogatories and premature expert analysis. Dkt. 293 at 3-6 (citing inter alia *Huawei Techs. Co. v. Huang*, 2018 WL 6329082, at *3 (E.D. Tex. Dec. 4, 2018) (discussing contention interrogatories) and *Promethean Insulation Tech. LLC v. Sealed Air Corp.*, 2015 WL 11027038, at *2 (E.D. Tex. Oct. 13, 2015) ("A party is not entitled to obtain early disclosure of expert opinions via interrogatory.")). Netlist also made clear that Samsung would suffer no prejudice, because, for example, Netlist's position as to standard essentiality does not have an "immediate and necessary relation to" Netlist's patent infringement claims. Dkt 293 at 6-7 (citing *Samsung I Action*, Dkt. 550 ¶¶ CC32-37). The same reasons identified in Netlist's response to Samsung's motion to compel apply here. Moreover, the parties agreed on the mootness of Samsung's motion to compel prior to argument before Judge Folsom, who denied the motion as moot. Ex. 20 (Special Master R&R) at 2.

## II.    CONCLUSION

For the foregoing reasons, Netlist respectfully requests Micron's motion be denied.

Dated: January 30, 2024

Respectfully submitted,

*/s/ Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

### CERTIFICATE OF SERVICE

I hereby certify that, on January 30, 2024, a copy of the foregoing was served to all counsel of

record.

*/s/ Yanan Zhao*
Yanan Zhao

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be

filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao