# Exhibit 20

Filed Under Seal

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**



| | | |
|---|---|---|
| NETLIST, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIV. A. NO. 2:22-CV-00293-JRG |
| v. | § | |
| | § | (Lead Case) |
| SAMSUNG ELECTRONICS CO, LTD, ET AL., | § | |
| | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| NETLIST, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIV. A. NO. 2:22-CV-00294-JRG |
| v. | § | |
| | § | (Member Case) |
| MICRON TECHNOLOGY, INC., ET AL., | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION OF SPECIAL MASTER**

By Orders of the Court dated December 8, 2023 (Dkt. No. 269) and January 2, 2024 (Dkt. No. 311), the undersigned was appointed Special Master to address the following motions filed by Plaintiff Netlist, Inc. ("Netlist"), Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor Inc. (collectively, "Samsung"), and Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas LLC (collectively, "Micron"):

- Samsung's Motion to Compel Information Regarding Netlist's Negotiations with SK Hynix (Dkt. No. 139);

- Netlist's Motion for a Protective Order (Dkt. No. 142);

- Samsung's Motion for a Protective Order Against Discovery Related to Allegations of Breach/Termination of the Parties' Joint Development and License Agreement, an Issue Being Adjudicated in the First-Filed C.D. Cal. Court (Dkt. No. 193);

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

- Netlist's Motion for a Protective Order Preventing Samsung Defendants from Seeking Third-Party Discovery From Netlist's Former In-House Counsel (Dkt. No. 199);

- Samsung's Motion to Compel the Deposition of Dr. Hyun Lee (Dkt. No. 202);

- Netlist's Motion to Compel Production of Micron Defendants' Documents Relevant to Damages (Dkt. No. 220);

- Netlist's Motion to Compel Micron Defendants' Responses to Plaintiffs' Interrogatory Nos. 10, 13, 21, and 22 (Dkt. No. 221);

- Micron's Motion to Compel Plaintiff to Produce Expert Reports from Related Cases (Dkt. No. 222);

- Netlist's Motion to Compel Micron Defendants' Responses to Interrogatory Nos. 5, 6, 12, 17, 19, 24, and 25 (Dkt. No. 223);

- Netlist's Motion to Compel Deposition of Joo Sun Choi (Dkt. No. 224);

- Netlist's Motion to Preclude Samsung From Introducing Witness Testimony in Support of its License Defense (Dkt. No. 225);

- Micron's Motion to Strike Plaintiff's November 19, 2023 Supplemental Response to Interrogatory No. 4 (Dkt. No. 271); and

- Netlist's Motion to Compel Micron Defendants to De-Designate Portions of Deposition Testimony of Scott Cyr (Dkt. No. 274).

Under the provisions of the Orders of the Court, the Special Master held a hearing with the parties via remote teleconference on January 5, 2024 (the "January 5 Hearing"). The Special Master did not hear argument on Dkt. Nos. 128, 158, 176, 218, 226, or 279, as those disputes were resolved by the parties in advance of the hearing. (*See* Dkt. No. 322 at 2–4). Further, after the January 5 Hearing, Netlist filed its Unopposed Motion to Withdraw its Motion to Compel Micron Defendants to De-Designate Portions of Scott Cyr's Deposition Transcript (Dkt. No. 274). Accordingly, the Special Master recommends that Dkt. Nos. 128, 158, 176, 218, 226, 274, and 279 be **DENIED AS MOOT**.

The Special Master's recommendations with respect to the remaining motions follow.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

1.    NETLIST/SAMSUNG MOTIONS

Several of the motions filed by Netlist and Samsung are directed to related issues. Dkt. Nos. 193, 224, and 224 (the "JDLA Motions") relate to the Joint Development and License Agreement ("JDLA") between Netlist and Samsung, and Dkt. Nos. 139, 142, and 199 (the "SK Hynix Motions") relate to discovery regarding Netlist's license and settlement agreement with third party SK Hynix. The Report and Recommendation addresses these related motions together.

a.    **JDLA Motions (Dkt. Nos. 193, 224, 225)**

i.    **Samsung's Motion for a Protective Order Against Discovery Related to Allegations of Breach/Termination of the Parties' Joint Development and License Agreement, an Issue Being Adjudicated in the First-Filed C.D. Cal. Court (Dkt. No. 193)**

Samsung seeks an order precluding Netlist from seeking discovery regarding the alleged breach and termination of the JDLA. Samsung argues that those issues are properly before the Central District of California in *Netlist, Inc. v. Samsung Elecs. Co.*, No. 8:20-cv-993 (C.D. Cal.) (the "C.D. Cal. Action"), not this Court. (*See* Dkt. No. 193). Netlist responds that Samsung has pursued its own discovery on these issues and placed the JDLA at issue in this case by asserting that the accused products were licensed by the JDLA. (*See* Dkt. No. 209).

In 2015, Netlist and Samsung entered into the JDLA, which has two stated purposes: (1) the development of a new NVDIMM-P memory product, and (2) patent cross-licensing between Netlist and Samsung. (*See* Dkt. No. 187-2). In 2020, Netlist filed suit against Samsung in the C.D. Cal. Action, alleging that Samsung breached a payment provision (§ 3) and supply provision (§ 6.2) of the JDLA. (*See* C.D. Cal. Action). The Central District of California granted summary judgment in Netlist's favor, but was ultimately reversed by the Ninth Circuit, and the case is now remanded to the Central District of California to determine whether extrinsic evidence created a

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

genuine issue of material fact concerning Samsung's alleged breach of § 6.2. (*See, e.g.,* Dkt. No. 187-1 at 5).

The motion was filed subject to the outcome of Samsung's Motion to Stay Pending Resolution of the C.D. Cal. Case Reversed and Remanded by the Ninth Circuit Regarding Samsung's License (Dkt. No. 187) (the "Motion to Stay"). On December 14, 2023, the Court denied the Motion to Stay without prejudice. (*See* Dkt. No. 290-1) (unsealed copy of the Court's order). In its Order denying the Motion to Stay, the Court deferred resolution of Netlist's termination of the JDLA to the C.D. Cal Action, while preserving issues of patent infringement in this case. (*See* Dkt. No. 290-1 at 5) ("The effectiveness of Netlist's termination of the JDLA is not an issue that must be decided at this time, and there are other significant issues in this case that are not before the Central District of California, including Netlist's claims for patent infringement. . . . The Court reasonably may defer issues of Netlist's alleged termination of the JDLA to the Central District of California and simultaneously proceed on the other issues in this case, including Netlist's claims for patent infringement."). In addition to the Court's order, which unequivocally defers the issues of breach and termination of the JDLA to the Central District of California, Netlist and Samsung agreed during the January 5 Hearing that breach and termination are not issues before this Court. (January 5 Hrg. Tr. at 49:9–11) (Samsung's counsel agreeing with the Special Master that the termination issues is not before the Court); (*id*. at 51:7–11) ("SPECIAL MASTER FOLSOM: But do you take the position, though, the termination issue is in some fashion in front of Judge Gilstrap? Because I certainly don't read his order for that proposition, Mr. Sheasby. MR. SHEASBY: I agree with that, Your Honor.").

The Special Master finds that discovery regarding issues solely before the Central District of California, including Netlist's allegations that Samsung breached the payment provision (§ 3)

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

and supply provision (§ 6.2) of the JDLA, and Netlist's subsequent termination of the JDLA on July 15, 2020, should be precluded from this case. The Special Master therefore recommends that the motion be **GRANTED**. The Special Master notes, however, that the scope of the recommendation does not extend to other issues, such as whether the accused products are within the scope of the JDLA's license grant, which is not part of the C.D. Cal. Action and remains before this Court.

### ii.    Netlist's Motion to Compel Deposition of Joo Sun Choi (Dkt. No. 224)

Netlist seeks the deposition of Joo Sun Choi, who was an executive in Samsung's memory business and has knowledge regarding breach and termination of the JDLA. (*See* Dkt. No. 224). In response, Samsung notes that these issues are before the Central District of California. (*See* Dkt. No. 261 at 2–4). Samsung additionally argues that Mr. Choi would be an apex deponent due to his position as President and CEO of Samsung Display Co., Ltd. ("Samsung Display"). (*See id*. at 5–7).

In light of the Court's denial of Samsung's Motion to Stay, which deferred issues of breach and termination of the JDLA to the C.D. Cal. Action, *see supra* Section 1.b.i.,  Mr. Choi's deposition would not be relevant to the issues in this case. The Special Master recommends that the motion be **DENIED** on that basis alone. The Special Master additionally finds that even if Mr. Choi's deposition were relevant to issues of this case, his high-level position at Samsung Display is another sufficient basis for denial pursuant to the apex doctrine. *See Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979).

### iii.    Netlist's Motion to Preclude Samsung From Introducing Witness Testimony in Support of its License Defense (Dkt. No. 225)

Netlist seeks an order preventing Samsung from relying on witness testimony to support its license defense, on the basis that Samsung did not produce witnesses during fact discovery on

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

the issue. (*See* Dkt. No. 225). In response, Samsung notes that issues of license scope are still live in this case, and further that Samsung already produced extensive discovery on its license defense, including documents and witness testimony. (*See* Dkt. No. 262).

For the reasons already noted in this Report and Recommendation, issues of breach and termination of the JDLA are not part of this case. However, that is not a basis to preclude Samsung's entire license defense, to the extent it is not implicated in the C.D. Cal. Action. For example, both parties agree that license scope—whether the accused Samsung products are within the JDLA's license grant—is an issue still before this Court. (January 5 Hrg. Tr. at 49:9–11, 51:7–11). The Special Master recommends that the motion be **DENIED**.

        **b.**      **SK Hynix Motions (Dkt. Nos. 139, 142, 199)**

            **i.**      **Samsung's Motion to Compel Information Regarding Netlist's Negotiations with SK Hynix (Dkt. No. 139)**

Samsung seeks an order compelling Netlist to produce documents related to its negotiations for a license with third-party SK Hynix and an order not to interfere with SK Hynix's production of the same in response to a third party subpoena. (*See* Dkt. No. 139). In support, Samsung points to a (successful) argument Netlist raised in *Netlist, Inc. v. Samsung Elecs. Co., Inc.*, No. 2:21-cv-463 (E.D. Tex.) ("*Samsung I*") that Samsung's expert failed to rely on evidence of the value SK Hynix placed on the asserted patents in his apportionment analysis. (*Id*. at 4–5); (*see also Samsung I*, Dkt. No. 432 at 4–5) (order striking portions of Paul K. Meyer's expert report). In response, Netlist points to the Court's order in *Netlist, Inc. v. Micron Technology, Inc., et al.*, No. 2:22-cv-203 (E.D. Tex.) ("*Micron I*"),  which compelled a narrower scope of discovery regarding the SK Hynix license. (*See* Dkt. No. 156).

In *Charles E. Hill & Assocs., Inc. v. ABT Elecs., Inc.*, the Court noted that "[w]hether . . . license negotiations and settlement discussions are properly discoverable will likely depend on

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

whether, within the context of each case, they are an accurate reflection of the patents' underlying value and whether their probative value exceeds their prejudicial effect." 854 F. Supp. 2d 427, 429 (E.D. Tex. 2012). However, production of settlement negotiation documents is "viewed as the exception and not the rule." *Id.* at 430. The Court in *Charles E. Hill* ordered the production of draft agreements and settlement communications, noting that under the facts of the particular case, "draft license agreements and settlement communications are likely to be key in determining whether the settlement agreements accurately reflect the inventions' value or were strongly influenced by a desire to avoid or end full litigation." *Id.* at 429–30 (quoting *Clear with Computers LLC v. Bergdorf Goodman, Inc.*, 753 F. Supp. 2d 662, 664 (E.D. Tex. 2010)). The Court was persuaded by facts that are not present here: first, that "Plaintiff's business is to litigate and license" and Plaintiff "does not openly compete with Defendants in the marketplace," and second, that "payment amounts provided for within the licenses produced, vary from as high as $3.5 million to as little as $100,000." *Id*. at 430.

To the extent negotiations between Netlist and SK Hynix show valuation of the patents-in-suit, they may be relevant to damages, but Samsung's requests for all negotiation documents go beyond the relevance of those documents to this case. For example, the patents Netlist asserted against SK Hynix are not asserted against Samsung here, even though the patents-in-suit are included as part of a portfolio license to SK Hynix.

However, Netlist argued in *Samsung I* that Samsung's expert should have considered evidence of the value SK Hynix and Netlist placed on the patents-in-suit:

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

15    What he did was he took the value of the SK hynix

16    non-supply portion of the agreement, so just the license

17    agreement, just the payment under the license agreement, and

18    he said, Okay, I'm going to have Mr. McAlexander assign what

19    Mr. McAlexander believes are the values in nine buckets

20    relating to those patents.

21        The problem with that is under *Apple versus Wi-LAN,* the

22    value to -- the value that you need to consider in the license

23    agreement is what value did SK hynix put on each of those

24    particular patents.    And so what I don't know is, in this

25    situation, they make no pretense about assessing which patents

1    in the portfolio was valuable to SK hynix, why did SK hynix

2    make the payment they did.

3        So, for example, there were a number of patents asserted

4    against SK hynix none of those passenger the patents in this

5    case the patents in this case were never presented to SK hynix

6    as then potentially infringing.    And what Mr. Meyer does is he

7    just sort of does this thing where he uses the agreement as a

8    bucket and then arbitrarily assigns value within the bucket.

9    And that, I don't think, is consistent with *Apple versus*

10    *WiLAN,* but I don't need to belabor that point.    That's just a

11    legal issue that the Court needs to determine.

(*See* Dkt. No. 156-4) (*Samsung I* Pretrial Conference Tr. excerpts) (emphasis added). Importantly,

at the January 5 Hearing, Netlist's counsel stated that the same argument would be made again in

this case. (January 5 Hrg. Tr. at 73:17–20) ("[W]e're going to say the exact same thing against Ms.

Kindler, that she didn't take into account what's on the face of the contract.").

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

The circumstances in *Charles E. Hill* are not identical to those here—for example, Netlist's business is not merely to litigate and license, and there are not multiple licenses with vastly different payment amounts at issue. Nevertheless, it gives the Special Master pause that Netlist previously argued—and apparently intends to argue again—that an analysis of the SK Hynix agreement must consider the value SK Hynix placed on Netlist's patents, while simultaneously arguing that negotiation documents probative of such value are not discoverable. Further, Netlist provided Samsung with its own evaluation of the value of its patents on at least one occasion. (*See* Dkt. No. 139-1 at 3) (proposal to Samsung showing Netlist's evaluation of the relative strengths of its own patents).

The Special Master is mindful that the production of settlement negotiation documents is the exception, not the rule, and should only be ordered in specific cases. However, the Special Master finds that Samsung would be prejudiced if it had to respond to Netlist's *Daubert* arguments without the benefit of documents potentially showing patent valuation and apportionment of the SK Hynix license. Accordingly, the Special Master recommends that the motion be **GRANTED-IN-PART** and **DENIED-IN-PART**. Netlist must produce settlement and license negotiation documents showing any valuation or apportionment of value by Netlist or SK Hynix to the patents asserted against Samsung in this case. For example, documents similar to the licensing proposal to Samsung shown in Dkt. No. 139-1 would suffice. However, Netlist need not produce all negotiation documents as requested by Samsung.

### ii.    Netlist's Motion for a Protective Order (Dkt. No. 142)

Netlist seeks a protective order preventing Samsung from enforcing its SK Hynix subpoena, which seeks information regarding the SK Hynix license and documents relating to the litigation between Netlist and SK Hynix, for largely the same reasons noted in its opposition to Dkt. No. 139. (*See* Dkt. No. 142). Samsung argues that Netlist's motion is a procedurally improper

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

motion to quash, that the requested materials are relevant, and that it is not prohibited from seeking these materials from both Netlist and SK Hynix. (*See* Dkt. No. 159).

In light of the recommendation that Dkt. No. 139 be partially granted and Netlist be ordered to produce responsive documents, and to avoid potentially duplicative productions from Netlist and SK Hynix, the Special Master recommends that the motion be **DISMISSED WITHOUT PREJUDICE**, subject to Netlist producing documents as recommended above with respect to Dkt. No. 139.

### iii. Netlist's Motion for a Protective Order Preventing Samsung Defendants from Seeking Third-Party Discovery From Netlist's Former In-House Counsel (Dkt. No. 199)

Netlist seeks a protective order preventing Samsung from seeking discovery from its former in-house counsel, Noel Whitley and Marc Frechette, from whom Samsung seeks discovery regarding the SK Hynix license and the JDLA. (*See* Dkt. No. 199). In response, Netlist points to the fact that it already designated 30(b)(6) witnesses to testify regarding its licensing practices and damages issues. (*See* Dkt. No. 217).

Mr. Whitley and Mr. Frechette may have relevant knowledge, but it is unclear how their deposition testimony is necessary here. The Special Master is not persuaded that Mr. Whitley and Mr. Frechette would provide additional information beyond the testimony Netlist's 30(b)(6) deponents have already provided. The Special Master recommends that the motion be **GRANTED**.

### c. Samsung's Motion to Compel the Deposition of Dr. Hyun Lee (Dkt. No. 202)

Samsung seeks the deposition of Dr. Hyun Lee, the only living named inventor of U.S. Patent No. 10,268,608 (the "'608 Patent"). (*See* Dkt. No. 202). Netlist responds that Dr. Lee should not be deposed because he was deposed regarding a related patent and JEDEC standards in *Samsung I* and has no additional testimony to provide. (*See* Dkt. No. 238). Alternatively, Netlist

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

requests that Dr. Lee's deposition be limited to three hours. (*Id*. at 7). Samsung notes that different patent claims were at issue in *Samsung I*, and further argues that Netlist cannot unilaterally limit the amount of time and scope of Dr. Lee's deposition. (Dkt. No. 202 at 3–5).

Dr. Lee is the only surviving named inventor of the '608 Patent, which alone is sufficient to compel his deposition. Further, Dr. Lee has knowledge of JEDEC standards and their relation to the asserted patents. It is of no consequence that Dr. Lee testified regarding a different, albeit related, patent in *Samsung I*. However, the Special Master finds that seven hours of deposition time is excessive due to Samsung's prior opportunity to depose Dr. Lee. The Special Master therefore recommends that the motion be **GRANTED-IN-PART**. Dr. Lee's deposition shall be conducted for no more than five hours, and may be conducted over two days if needed.

2.      NETLIST/MICRON MOTIONS

   a. **Netlist's Motion to Compel Production of Micron Defendants' Documents Relevant to Damages (Dkt. No. 220), Netlist's Motion to Compel Micron Defendants' Responses to Plaintiffs' Interrogatory Nos. 10, 13, 21, and 22 (Dkt. No. 221), Micron's Motion to Compel Plaintiff to Produce Expert Reports from Related Cases (Dkt. No. 222), and Netlist's Motion to Compel Micron Defendants' Responses to Interrogatory Nos. 5, 6, 12, 17, 19, 24, and 25 (Dkt. No. 223)**

During the January 5 Hearing, several motions were resolved in whole or in part on the record. Netlist's Motion to Compel Production of Micron Defendants' Documents Relevant to Damages (Dkt. No. 220) was resolved based on representations by Micron's counsel that it produced all requested documents along the same lines as the Court's ruling in *Micron I*. (*See* January 5 Hrg. Tr. at 16: 24 – 17: 2, 20:15–17, 23:16 – 24:13, 25:7–9). Accordingly, the Special Master recommends that Dkt. No. 220 be **DENIED AS MOOT**.

With respect to Netlist's Motion to Compel Micron Defendants' Responses to Plaintiffs' Interrogatory Nos. 10, 13, 21, and 22 (Dkt. No. 221) and Netlist's Motion to Compel Micron Defendants' Responses to Interrogatory Nos. 5, 6, 12, 17, 19, 24, and 25 (Dkt. No. 223), Micron

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

stated that it would supplement its responses no later than January 19, 2024 at 5:00 p.m. Central Time, subject to any expert witness depositions scheduled before that time. (January 5 Hrg. Tr. at 25:21 – 27:10, 28:7–21). The Special Master recommends that Micron be **ORDERED** to supplement its responses to Netlist's Interrogatory Nos. 5, 6, 10, 12, 13, 17, 19, 21, 22, 24, and 25 prior to any expert witness depositions, and in no event later than **January 19, 2024** at **5:00 p.m. Central Time**.

As to Micron's Motion to Compel Plaintiff to Produce Expert Reports from Related Cases (Dkt. No. 222), Netlist and Micron's dispute was resolved. However, counsel for both parties noted difficulty in acquiring the consent of third-party SK Hynix for production of the materials in question. Netlist represented that it would assist Micron in acquiring such consent no later than January 12, 2024. (January 5 Hrg. Tr. at 31:3–15). The Special Master recommends that Dkt. No. 222 be **DISMISSED WITHOUT PREJUDICE** to refiling subject to Micron's receipt of the expert reports at issue.

   b.  **Micron's Motion to Strike Plaintiff's November 19, 2023 Supplemental Response to Interrogatory No. 4 (Dkt. No. 271)**

During the January 5 Hearing, Netlist and Micron agreed that reply and sur-reply briefs remained outstanding for the motion. (January 5 Hrg. Tr. at 31:24 – 32:25). The Special Master will therefore reserve any recommendation on the motion until after the submission of such briefs.

Signed this 18th day of January 2024.

*/s/  David Folsom*
David Folsom
**Special Master**
TXBN: 07210800
FOLSOM ADR PLLC
6002-B Summerfield Drive
Texarkana, Texas  75503
Telephone: (903) 277-7303

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

E-mail:  david@folsomadr.com

## CERTIFICATE OF SERVICE

This is to certify that this sealed document was served on all counsel of record via email on January 18, 2024.


/s/  David Folsom
David Folsom

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to the Court's Protective Order (Dkt. No. 60), I certify that the Court has already granted authorization to seal this document.

Date: January 18, 2024


/s/  David Folsom
David Folsom