███████████

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., | |
| Plaintiff, | |
| | Civil Action No. 2:22-cv-00293-JRG |
| v. | (LEAD CASE) |
| SAMSUNG ELECTRONICS CO, LTD; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SEMICONDUCTOR INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |
| NETLIST, INC., | |
| Plaintiff, | |
| | Civil Action No. 2:22-cv-00294-JRG |
| v. | |
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., AND MICRON TECHNOLOGY TEXAS LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## MICRON'S OPPOSITION TO NETLIST'S DAUBERT MOTION AND MOTION TO STRIKE EXPERT TESTIMONY OF DR. MATTHEW LYNDE

## <u>TABLE OF CONTENTS</u>

**Page**

I.  **ARGUMENT** ................................................................................................ 1

    A.  Dr. Lynde's Hypothetical Negotiation Date is Proper. .......................... 1

        **1.**  Dr. Lynde's affirmative opinions are proper. ........................... 1

        **2.**  Dr. Lynde's opinion may rely on licenses entered after the date of the hypothetical negotiation. .................................. 1

        **3.**  Dr. Lynde's rebuttal opinions of Mr. Kennedy are proper. ...... 3

    B.  Dr. Lynde's Comparable License Analysis Is Reliable. ....................... 4

        **1.**  Dr. Lynde does not assign the same value to every patent. ...... 4

        **2.**  Dr. Lynde properly apportions the Rambus Agreement. .......... 7

        **3.**  Dr. Lynde properly compares the Goodman, Janus, Limestone, and ELM licenses. .................................................. 7

    C.  Dr. Lynde Provides Proper Economic Conclusions. ............................ 8

        **1.**  Dr. Lynde properly employs his economic training to interpret the effects of the █████████ on ███████████████ on damages. .................................................. 8

        **2.**  Dr. Lynde's antitrust opinions are proper. ............................... 9

        **3.**  Dr. Lynde's opinions regarding what effect the SK Hynix Agreement would have on damages if it were "under a RAND obligation" are admissible. ........................................... 9

    D.  Fed. R. Evid. 408 Does Not Preclude Dr. Lynde from Discussing the Netlist and Samsung Licensing Offers. ........................................... 10

    E.  Dr. Lynde's References to RAND are Relevant and Reliable. ............ 11

    F.  Dr. Lynde's References to NIAs are Admissible. ............................... 12

    G.  A Nexus Exists Between JEDEC Contributions to the Relevant Standards and the Accused Products in This Case. ............................ 13

    H.  Dr. Lynde's Discussions of Patent Hold-Up and Royalty Stacking are Admissible. ................................................................................. 15

II.  **CONCLUSION** ....................................................................................... **15**

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alacritech Inc. v. CenturyLink, Inc.*,
   No. 2:16:CV-00693-RWS-RSP, 2023 WL 8101872 (E.D. Tex. Nov. 21, 2023)......................2

*Apple Inc. v. Wi-LAN Inc.*,
   25 F.4th 960 (Fed. Cir. 2022) .......................................................................................5

*Baisden v. I'm Ready Prods., Inc.*,
   No. 4:08-CV-00451, 2010 WL 3766533 (S.D. Tex. Sept. 22, 2010)........................9

*Bio-Rad Lab's, Inc. v. 10X Genomics Inc.*,
   967 F.3d 1353 (Fed. Cir. 2020)....................................................................................7

*CEATS, Inc. v. TicketNetwork, Inc.*,
   No. 2:15-CV-01470-JRG-RSP, 2018 WL 453732 (E.D. Tex. Jan. 17, 2018).....................3, 7

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015)..................................................................................14

*Eisenberg v. University of N.M.*,
   936 F.2d 1131 (10th Cir.1991) ...................................................................................10

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014)......................................................................3, 12, 14

*Genband US LLC v. Metaswitch Networks Corp.*,
   No. 2:14-CV-33-JRG-RSP, 2016 WL 125503 (E.D. Tex. Jan. 9, 2016)................................6

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).................................................................................2, 6

*Metaswitch Networks Ltd. v. Genband US LLC*,
   No. 2:14-CV-744-JRG-RSP, 2016 WL 874775 (E.D. Tex. Mar. 7, 2016) ...................4, 8, 10

*In re MSTG, Inc.*,
   675 F.3d 1337 (Fed. Cir. 2012).................................................................................11

*Netlist, Inc., v. Micron Technologies, Inc. et. al.*,
   No. 2:22-cv-203-JRG (E.D. Tex.) ................................................................. *passim*

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
   No. 2:15-CV-01366-JRG-RSP, 2021 WL 662237 (E.D. Tex. Feb. 20, 2021)................6, 7, 8

*Resolution Trust Corp. v. Blasdell*,
  154 F.R.D. 675 (D.Ariz.1993) ........................................................................................10

*Sinclair Refining Co. v. Jenkins Petroleum Process Co.*,
  289 U.S. 689, 53 S.Ct. 736, 77 L.Ed. 1449 (1933) .........................................................2

*Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*,
  225 F. Supp. 3d 1233 (D. Kan. 2016) ..............................................................................9

*Urico v. Parnell Oil Co.*,
  708 F.2d 852 (1st Cir.1983) ...........................................................................................10

*Virnetx, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ......................................................................................13

**Statutes**

Sherman Act Section 1 ...........................................................................................................10

**Other Authorities**

2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence §
  408.08[5] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997)..................................11

23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL
  PRACTICE AND PROCEDURE § 5314 (1980) ...................................................................11

Fed. R. Civ. P. 11 ...................................................................................................................10

Fed. R. Evid. 408 ..............................................................................................................10, 11

███████████████

Netlist's Motion to Strike provides no reason to exclude any of Dr. Lynde's opinions. At best, Netlist's criticisms of Dr. Lynde go to the weight of the testimony, which can be probed on cross-examination—not its admissibility. The Court should deny Netlist's motion in its entirety.

## I.    ARGUMENT

**A.    Dr. Lynde's Hypothetical Negotiation Date is Proper.**

**1.    Dr. Lynde's affirmative opinions are proper.**

Dr. Lynde's affirmative opinions on the hypothetical negotiation date are proper. First, U.S. Patent No. 11,093,417 (the "'417 Patent") issued on August 17, 2021. The date of first infringement of the '417 Patent could not occur before its issue date. ████████████████ ██████████████████████████████████. Thus, when Dr. Lynde opines that ██████████████████████████████████████ ██████████████████ that is true for the '417 Patent. Ex. 1, ¶ 252. Additionally, as Mr. Kennedy notes, the date of first infringement of the patents-in-suit is disputed. Ex. 2, ¶ 728 n.731. Thus, Dr. Lynde can opine on multiple hypothetical negotiation dates due to the uncertain nature of the date of first infringement and Netlist can probe Dr. Lynde's testimony on cross-examination.

**2.    Dr. Lynde's opinion may rely on licenses entered after the date of the hypothetical negotiation.**

Even if the Court agrees with Mr. Kennedy, that the date of the hypothetical negotiation for the '912 patent is closer to 2012, Dr. Lynde's affirmative opinions are not changed by the hypothetical negotiation date. First, as explained above, ██████████████████████████ ██████████████████. The only affirmative opinion that Dr. Lynde provides regarding the hypothetical negotiation date is that ████████████████████████████████████ █████████████████████████████████████████████████████ █████████████████████ Ex. 1, ¶ 252. However, as demonstrated by the fact that Dr.

Lynde concludes that the SK Hynix Agreement provides the best benchmark for all three dates, Dr. Lynde's analysis is primarily driven by the technical and economic comparability of the hypothetical negotiation and SK Hynix Agreement.

In *Alacritech Inc. v. CenturyLink, Inc.*, this Court considered an expert report that determined that licenses that were entered into well after the hypothetical negotiation were comparable. No. 2:16:CV-00693-RWS-RSP, 2023 WL 8101872, at *5 (E.D. Tex. Nov. 21, 2023). This Court did not strike the expert report because it explained why "the Recent Licenses are both economically and technically comparable to the RSC technology at issue in this case." *Id*.

Similarly, in *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, the Supreme Court explained that when the trial occurs years after the breach, experience "is then available to correct uncertain prophecy. Here is a book of wisdom that courts may not neglect. We find no rule of law that sets a clasp upon its pages, and forbids us to look within." 289 U.S. 689, 698, 53 S.Ct. 736, 77 L.Ed. 1449 (1933). The Federal Circuit has similarly observed "that the hypothetical negotiation analysis 'permits and often requires a court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators.'" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) (quoting *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed.Cir.1988), overruled on other grounds by *Knorr–Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed.Cir.2004) (en banc)).

Dr. Lynde relies upon Micron's technical expert's opinions that the SK Hynix Agreement is  technically comparable because ████████████████████████████████████████ ████████████████████████ Ex. 1, ¶ 253. Dr. Lynde determines that the SK Hynix Agreement is economically comparable because the ████████████████████████ ████████████████████████████████████████████████

██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████    *Id*. at ¶ 254.

Dr. Lynde determines that the SK Hynix Agreement is ████████████████

████████████████ because of the technical and economic comparability of the agreement.

*Id*. at ¶ 252. Dr. Lynde then identifies ████████████████████████████████

████████████████ *Id*. at ¶ 212-225. Comparable licensing agreements "are almost never perfectly analogous to the infringement action," and "the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014). As demonstrated by Dr. Lynde's methodology of calculating damages for the SK Hynix Agreement, which is consistent for the three dates that he offers, an earlier hypothetical negotiation date would not change his results. *See* Ex. 1, Rebuttal Schedule 11A. Dr. Lynde's affirmative opinions on the comparability of the SK Hynix Agreement are still reliable even if the hypothetical negotiation date is earlier than the hypothetical negotiation date that Dr. Lynde considered. Netlist's criticisms of Dr. Lynde go to the weight of the testimony, which can be probed on cross-examination—not its admissibility.

**3.** Dr. Lynde's rebuttal opinions of Mr. Kennedy are proper.

If the Court finds that Dr. Lynde incorrectly determined the damages start date, his opinions are still proper rebuttal expert testimony. Dr. Lynde, in his ***rebuttal*** expert report, "explains, repels, counteracts, [and] disproves evidence of the adverse party's initial report." *CEATS, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018). Dr. Lynde does not offer rebuttal opinions that Mr. Kennedy's analysis was incorrect based on the hypothetical negotiation date. For instance, Dr. Lynde bases his opinions on the three damages start dates that Mr. Kennedy offers and provides rebuttal testimony to Mr. Kennedy's

opinion. Ex. 1, ¶ 200. Even for the SK Hynix Agreement, Dr. Lynde provides rebuttal opinions on

Mr. Kennedy's report that are not dependent on the hypothetical negotiation date. *See id*. ¶ 212 █

████████████████████████████████████████). Because Dr. Lynde is not rebutting Mr.

Kennedy's opinions regarding the hypothetical negotiation date, Dr. Lynde's rebuttal is proper.

**B.**  **Dr. Lynde's Comparable License Analysis Is Reliable.**

**1.**  <u>Dr. Lynde does not assign the same value to every patent.</u>

Netlist incorrectly claims that Dr. Lynde assigned the same value to every patent. Dkt. 354

at 1-2.  Netlist moved to strike Dr. Lynde's expert report in *Netlist, Inc., v. Micron Technologies,*

*Inc. et. al.*, No. 2:22-cv-203-JRG (E.D. Tex.) ("Netlist -203") for the same reason. Ex. 3 at 1. This

Court did "not find that Dr. Lynde assigns the same value to every patent, nor treats each family

of patents as equal in value[,]" and denied Netlist's motion to strike. Ex. 4 at 3.  Thus, the Court

should deny Netlist's motion to strike in this case as well.

As explained in Netlist -203, Dr. Lynde did a carefully reasoned apportionment analysis to

account for the economic differences between a hypothetical negotiation and the SK Hynix

Agreement, which includes the patents-in-suit. Ex. 1, ¶¶ 209-225. Dr. Lynde considers the

differences in the value of expected cross licenses, the scope of the licensed patents, the geographic

scope of the license, the joint development project, the product purchase and resale rights, the

number and quantity of patents at issue, and other differences. Ex. 1 at ¶¶ 212-225; *see also*

*Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-744-JRG-RSP, 2016 WL 874775, at

*2 (E.D. Tex. Mar. 7, 2016) ("Mr. Lynde, relying upon his expertise as an economist, cites the need

to adjust the patent pool licensing rate based on real-world factors such as the participation rate

and the value of expected cross-licenses. [] Based on these considerations, he determines that a

multiplier of three is appropriate."). Dr. Lynde considered the scope of the licensed patents and

notes that the ████████████████████████████████████████████



███████████████████████████████████████████████████. Ex. 1 at ¶¶ 15, 259. After considering these differences and the specific facts of the SK Hynix Agreement, Dr. Lynde—relying upon his expertise as an economist—finds that, ████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████ Ex. 1 at ¶ 259. By contrast, in *Wi-LAN*, Mr. Kennedy (Netlist's expert in this case), attempted to increase the value of the Patents-in-Suit by forming opinions "untethered to the facts of th[e] case." *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 973 (Fed. Cir. 2022).

Contrary to Netlist's claim that Dr. Lynde's opinion is comparable to Mr. Kennedy's opinions in *Wi-LAN*, Dr. Lynde properly analyzes the SK Hynix Agreement with an economic analysis tethered to the facts of this case. Moreover, Dr. Lynde does not even assume that the patent families to be licensed to Micron have the same value. His analysis assumes only that the average value of the four patent families for the patents to be licensed to Micron is equal (before adjustment to account for importance) to the average value of the ███████████████████████████. An assumption as to the average value of a set of two patent families is not an assumption that each of the two patent families is equivalent in value, or that the patents in those patent families are equivalent in value.

And Dr. Lynde's analysis does not end there. Dr. Lynde makes a conservative adjustment to the value of the Patents-in-Suit by determining that they ████████████████████████████

██████████████████████████ Ex. 1 at ¶ 262. Dr. Lynde determines, using reliable methodology, that ████████████████████████████████████████████████████

█████████████████████ Ex. 1 at ¶ 264. Thus, Dr. Lynde does not treat every patent in the comparable portfolio agreements as equal in value. Rather, Dr. Lynde assumes, based on factors specific to the ████████████t, that all patents are not equal in value and relies upon his

expertise as an economist to rely on other facts in the record to adjust the value of the Asserted Patents.  Dr. Lynde performed this analysis with respect to each of the other comparable licenses and adjusted the value of those patents by the specific terms and scope of those licenses.

Further, Dr. Lynde makes a ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████  Ex. 1 at ¶¶ 262, 264. Should Netlist choose, it may contend on cross examination that Dr. Lynde's analysis should lower the value of the hypothetical negotiation. *See Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 125503, at *5 (E.D. Tex. Jan. 9, 2016) ("Likewise, there is no rule that precludes a patentee's expert from being 'conservative' in his royalty analysis by declining to adjust his royalty upward."); *Personalized Media Commc'ns, LLC v. Apple, Inc.*, No. 2:15-CV-01366-JRG-RSP, 2021 WL 662237, at *3 (E.D. Tex. Feb. 20, 2021) (holding that "[a]t some point an expert must be allowed to rely on and use his or her judgment, so long as their opinion is supported by facts and data"). Contrary to the case opinions Netlist cites, which find that it is improper for an expert to arbitrarily increase or decrease the value of the patents in favor of their client, Dr. Lynde makes a conservative adjustment of the patents' value—meaning Micron would owe more at the hypothetical negotiation—based his professional judgment and expert testimony that the patents would be of more value than the average patent families in the portfolio and to account for unforeseen value in the Patents-in-Suit. *See Lucent*, 580 F.3d at 1325 ("[A]ny reasonable royalty analysis necessarily involves an element of approximation and uncertainty.") (quotation omitted). Thus, Micron respectfully requests that the Court deny Netlist's motion to strike.

███████████████████

**2.**    Dr. Lynde properly apportions the Rambus Agreement.

Dr. Lynde's appropriately apportions the Rambus Agreement. Dr. Lynde provides proper rebuttal testimony to Mr. Kennedy's opinions regarding the Rambus Agreement. *CEATS.*, 2018 WL 453732, at *3' Ex. 1, ¶¶ 107, 109–112. Dr. Lynde notes that ████████████████ ███████████████████████████████ Ex. 1, ¶ 109. Dr. Lynde explains Mr. Kennedy's flaws, explains how he would correct those flaws, and ███████████ ████ *Id.* at ¶ 112. In performing this analysis, Dr. Lynde █████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████    *Id.* at n.161. Dr. Lynde performed the same apportionment approach for the SK Hynix Agreement, which this Court did not strike in Netlist -203. *See* discussion *supra* Section I.B.1. Thus, the Micron respectfully requests that the Court deny Netlist's motion to strike.

**3.**    Dr. Lynde properly compares the Goodman, Janus, Limestone, and ELM licenses.

Netlist claims that Dr. Lynde's reference to Netlist's size as a factor in comparing these licenses is prejudicial and improper. It is not. Netlist moved to strike Dr. Lynde's expert report in Netlist -203 for the same reason. Ex. 3 at 6-7. This Court found "that relative size of a company is relevant in determining comparability of licenses" and denied Netlist's motion to strike. Ex. 4 at 5.  Thus, the Court should deny Netlist's motion to strike.

Dr. Lynde compares the Goodman, Janus, Limestone, and ELM licenses by considering "whether the license[s] at issue . . . [are] economically comparable," something that an expert is **required to do.** *Bio-Rad Lab's, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372–73 (Fed. Cir. 2020). This Court has consistently allowed experts to consider the size of companies to determine if a license is comparable. *See Personalized Media*, 2021 WL 662237, at *5. In fact, this Court previously excluded a portion of Dr. Lynde's expert report when he ***failed to consider a company's***

███████████████

*size*. *See Metaswitch*, 2016 WL 874775, at *3 (striking a portion of Dr. Lynde's report because his "approach ignores the size of each company"). Contrary to Netlist's contention, this Court also permits the "use of the term 'non-practicing entity[.]'" MIL No. 11. This is an accurate characterization because Netlist does not practice the Patents-in-Suit or sell any product that does. Moreover, Dr. Lynde describes ELM, not Netlist, as a non-practicing entity. Ex. 1 at ¶ 232. Dr. Lynde simply is comparing the licenses based on their economic similarities and differences. *Personalized Media*, 2021 WL 662237, at *4.

Netlist is wrong that Dr. Lynde has no reason to claim that the ELM license is technically comparable because "███████████████████████████████████████████████████████████████████. 354 at 6. Dr. Lynde's report is premised on the assumption that ████████████████████████████████████████████████████████████████████ Ex. 1 at ¶ 10. Additionally, Dr. Lynde properly relies upon the opinions of Micron's technical experts. *Id*. at ¶ 250. Thus, under Dr. Lynde's assumption that Micron infringed the patents in suit and by relying on Micron's technical experts, Dr. Lynde can properly conclude that the ELM license is technically comparable. Accordingly, the Court should deny Netlist's motion to strike Dr. Lynde's opinions regarding the comparability of the Goodman, Limestone, Janus, and ELM licenses.

## C.  Dr. Lynde Provides Proper Economic Conclusions.

### 1.  Dr. Lynde properly employs his economic training to interpret the effects of the ████████ ████████████ in the SK Hynix Agreement on damages.

While this Court agreed with Netlist's similar contentions in Netlist -203, the procedural posture of this case is different.[1] This Court will need to interpret the SK Hynix Agreement's

---

[1] Micron still contends that Dr. Lynde considers the provisions of the ████████ from an economic perspective to determine if ████████████████████████████████████

████████████████

clauses in order to decide Micron's antitrust counterclaim and Netlist's corresponding motion for summary judgment. *See* Dkt. 344. If the Court's interpretation is consistent with Micron's interpretation, then Dr. Lynde is engaging in a proper economic interpretation of the ████████ ████████████████████████████████ to determine that those clauses add no economic value to the license for either party. *See Baisden v. I'm Ready Prods., Inc.*, No. 4:08-CV-00451, 2010 WL 3766533 (S.D. Tex. Sept. 22, 2010) ("As Weisheit's opinion is consistent with the court's interpretation of the contract on this point, it is admissible."). Thus, the Court should deny Netlist's motion to strike Dr. Lynde's interpretation of the ████████ ████████████ if the Court denies Netlist's motion for summary judgment on Micron's antitrust counterclaim and affirmative defense of patent misuse.

### 2.    Dr. Lynde's antitrust opinions are proper.

Netlist is correct that Dr. Lynde's antitrust opinions are dependent upon an █████████ ████████████████████████████████████████████ ██████ Ex. 5 ¶ 62. As Netlist appears to concede, if the Court denies its motion for summary judgment on Micron's Patent Misuse Defense, Dr. Lynde's analysis is proper.

### 3.    Dr. Lynde's opinions regarding what effect the SK Hynix Agreement would have on damages if it were "under a RAND obligation" are admissible.

Dr. Lynde's opinions regarding what effect the SK Hynix Agreement would have on damages if it were "under a RAND obligation" are proper and within the purview of Dr. Lynde's expertise as an economist. Micron has consistently asserted that ████████████████ ██████████████████████████████████████████████████ ██████████████████████ Ex. 6 at p.44. Additionally, the SK Hynix Agreement states that it

---

████████████████████████ x. [x], ¶ 217; *see also Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*, 225 F. Supp. 3d 1233 (D. Kan. 2016) (holding damages expert "was entitled to discuss terms of contracts if relevant to his opinions.").

█████████████████

███████████ and Dr. Lynde opines that ████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ Ex. 1, ¶ 235; Ex. 7 at 7.1, 7.2. As in *Metaswitch*, Dr. Lynde "analyze[s] the scope and nature of the alleged []RAND commitment and [] give[s] his opinions about its economic effect." *Metaswitch*, 2016 WL 874775, at *2. This Court has previously held that "it is proper for Mr. Lynde, as an economist, to assume for purposes of his analysis that a []RAND obligation exists and to opine about what effect this obligation would have on damages." *Id*.  Lastly, the patents-in-suit are covered by the SK Hynix Agreement. Micron's experts do analyze the Patents-in-Suit, and they determine that if Micron is found to infringe, the patents are standard essential. Ex. 1 at ¶ 10. Dr. Lynde is permitted to rely on the technical opinions of technical experts. The Court should deny Netlist's motion to strike ¶ 236 of Dr. Lynde's expert report.

### D.    Fed. R. Evid. 408 Does Not Preclude Dr. Lynde from Discussing the Netlist and Samsung Licensing Offers.

Dr. Lynde's discussion of communications that Netlist had with Micron and Samsung is not prohibited by Fed. R. Evid. 408. Rule 408 precludes using settlement offers to "prove or disprove the ***validity or amount of a disputed claim***." Fed. R. Evid. 408(a) (emphasis added). Rule 408(b) allows the Court to "admit this evidence for another purpose." Fed. R. Evid. 408(b). In particular, such correspondence can be used to establish an independent violation (here, violation of Section 1 of the Sherman Act) unrelated to the underlying claim which was the subject of the correspondence. *See Eisenberg v. University of N.M.*, 936 F.2d 1131, 1134 (10th Cir.1991) (affidavit obtained in settlement negotiations admissible to impose Rule 11 liability); *Urico v. Parnell Oil Co.*, 708 F.2d 852, 854–55 (1st Cir.1983) (evidence of settlement negotiations admissible to show interference with efforts to mitigate damages); *Resolution Trust Corp. v.*

███████████████████

*Blasdell*, 154 F.R.D. 675, 681 (D.Ariz.1993) (evidence of settlement negotiations admissible to prove retaliatory motive); *see also* 23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5314, at 282 (1980) ("Rule 408 is [ ] inapplicable when the claim is based upon some wrong that was committed in the course of settlement discussions; e.g., libel, assault, breach of contract, unfair labor practice, and the like.").

Dr. Lynde discusses these communications to show that ██████████████████████ ██████████████████████████████████████████ Ex. 5, ¶ 76; s*ee In re MSTG, Inc.*, 675 F.3d 1337 (Fed. Cir. 2012). ("For example, settlement negotiation evidence would be admissible where the settlement itself or its interpretation is at issue or where evidence of the ingredients of the settlement might be relevant to an issue of double recovery."). *see also* 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 408.08[5] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997) ("If the settlement negotiations and terms explain and are a part of another dispute, they must often be admitted if the trier is to understand the case."). Netlist's communications with Micron and Samsung are a part of Micron's antitrust counter claim and patent misuse affirmative defense. Thus, Rule 408 does not prohibit Dr. Lynde from discussing these communications and the Court should deny Netlist's motion.

**E.    Dr. Lynde's References to RAND are Relevant and Reliable.**

Dr. Lynde's RAND references are relevant and reliable. In Netlist -203, this Court struck portions of Dr. Lynde's report that referenced RAND because the Court decided that the asserted patents are not standard essential. Ex. 4 at 5. However, the facts of the current proceeding differ from Netlist -203 and support Dr. Lynde's references to RAND.

First, as explained in Micron's motion for summary judgment of noninfringement of U.S. Patent Nos. 7,619,912 and 11,093,417, Netlist's infringement theory is predicated on the Accused Products implementing JEDEC standards. Dkt. 345. During the Markman hearing, Netlist's

Counsel noted that "these patents are built on a baseline of JEDEC specifications." Ex. 8 at 8:13-14. This Court then inquired whether that requires the asserted patents to "take on the obligations of FRAND and other things that are applicable to standard essential patents." *Id*. at 8:18-19. Netlist's Counsel responded, noting that "these patents are a different species than the patents last time. For at least the '912 Patent, my understanding is the '912 Patent, the ultimate contentions, and an expert will have to do this, is that it's actually essential." *Id*. at 8:23-9:2. Because Netlist primarily relies on JEDEC standards to prove infringement and has contended to this Court that at least the '912 Patent is essential, Dr. Lynde's references to RAND are relevant and reliable.

Additionally, Netlist sent Micron a licensing proposal on April 1, 2022. Ex. 9. In that proposal, Netlist offered ███████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████" *Id*. Within the attached exhibit, ████████████████████████████████████████████ ████████████ Ex. 10. Netlist has consistently held out that the patents are standard essential and based its infringement analysis on the standard. Dr. Lynde's references to RAND are both relevant and reliable. This Court should deny Netlist's motion.[2]

### F.    Dr. Lynde's References to NIAs are Admissible.

Netlist moved to strike Dr. Lynde's expert report in Netlist -203 for the same reason. Ex. [X]. The paragraphs that Netlist moved to strike do not reference non-infringing alternatives; instead, Netlist appears to be citing paragraphs from Dr. Lynde's Netlist -203 report. Ex. 3 at ¶¶ 77, 79, 257-58. Nonetheless, in Netlist -203, this Court found "that Dr. Lynde's opinions explicitly reference Mr. Kennedy's opinions regarding non-infringing alternatives and as such are not being

---

[2] A RAND commitment "limits the market value to (what the patent owner can reasonably charge for use of) the patented technology." *Ericsson*, 773 F.3d at 1231. As a matter of economics, it is proper for Dr. Lynde to opine that the non-exclusive nature of a RAND commitment results in a lower royalty.

introduced as new theories within the expert report." Ex. 4 at 6. Thus, the Court should deny Netlist's motion to strike.

Netlist injected non-infringing alternatives as a benchmark to value the asserted patents for the first time in Mr. Kennedy's opening report. Ex. 2 at ¶¶ 147-155, 192-193, 202-204, 544-547, 724. Dr. Lynde may respond. The non-infringing alternatives raised by Dr. Lynde are not new but are instead proper rebuttal testimony to Mr. Kennedy's attempt to assign a dollar value to the technical benefits of the accused products over purported non-infringing alternatives identified by Netlist's technical experts. *Id*. Dr. Lynde relies on Micron's technical experts—not his own opinion to rebut Mr. Kennedy's non-infringing alternatives claims. *See* Ex. 1 at ¶ 66 ███████████████

████████████████████████████████████████████████████

███████████████████████████. Ultimately, Netlist—not Micron—introduced non-infringing alternatives as a benchmark to value the asserted patents. Ex. 2 at ¶¶ 193, 202. Dr. Lynde's opinions constitute proper rebuttal to those opinions and should not be struck. Accordingly, Micron respectfully requests that the Court deny Netlist's motion to strike Dr. Lynde's opinions regarding non-infringing alternatives.

### G.     A Nexus Exists Between JEDEC Contributions to the Relevant Standards and the Accused Products in This Case.

A proper damages analysis must apportion the value of the accused technology in the accused products. *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014). The standards with which certain accused products comply are the result of a development effort of dozens of companies through the standards organization JEDEC. Netlist claims that Dr. Lynde fails to identify any nexus between the contributions made by these companies to the standards to the technology accused in this case. Dkt. No. 354 at 13. But Netlist's infringement theory is predicated on the Accused Products implementing JEDEC standards and Netlist communicated to

█████████████████

Micron that the '912 Patent is standard essential. Dr. Lynde relies on Micron's technical experts that the accused products comply with the applicable standards, and Netlist's representations, that the accused products are standard compliant. Ex. 1 ¶¶ 12, 37-38, 99-100.

Dr. Lynde looks to the industry's relative contributions to the JEDEC standards as a more exacting apportionment methodology than Mr. Kennedy's arbitrary attempt to apportion by the parties' relative ratio of investments in R&D over revenue. Mr. Kennedy claims that ████████ ████████████████████████████ at the hypothetical negotiation would be is the respective R&D investments divided by revenue, which he declares without any factual basis to be their relative technical contribution. Ex. 2 at ¶ 220, 223. Mr. Kennedy ignores the contributions of the other JEDEC members and also ignores the significant R&D expenditures of Micron and other JEDEC participants. Netlist, thus, has not apportioned between the patented and unpatented features at all, which is a fundamental requirement. *Ericsson*, 773 F.3d at 1226.

Given the absence of any connection between company-wide R&D budgets and the accused products, Dr. Lynde rebuts Mr. Kennedy's conclusion by noting contributions of other technology to the benefits achieved by standard-compliant products. Dr. Lynde relies on John Halbert's analysis that ███████████████████████████████████ ██████████████████████████████████████████ ███████████████ Ex. 1 at ¶ 74. Mr. Halbert engages in reliable analysis to quantify the relative contributions of Netlist, Samsung, and other JEDEC members to the specific standards relevant to DDR4. *See Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304 (Fed. Cir. 2015); *Ericsson*, 773 F.3d at 1232. Mr. Halbert's analysis provides the necessary nexus and relevance for Dr. Lynde to rebut the technical contribution analysis performed

by Kennedy. Unlike Mr. Kennedy, Dr. Lynde relies on the technical experts in this case to apportion the incremental value of the patented technology.

Lastly, while this Court granted Netlist's similar motion to strike in Netlist -203 because of its ruling that the asserted patents are not standard essential, as explained above, the facts of the current proceeding differ from Netlist -203. *See* discussion *supra* Section I.D. Accordingly, Micron respectfully requests that the Court deny Netlist's motion to strike Dr. Lynde's opinions regarding JEDEC contributions.

**H.    Dr. Lynde's Discussions of Patent Hold-Up and Royalty Stacking are Admissible.**

Dr. Lynde's discussions of patent hold-up and royalty stacking is proper rebuttal. While this Court granted Netlist's similar motion to strike in Netlist -203 because of its ruling that the asserted patents are not standard essential, as explained above, the facts of the current proceeding differ from Netlist -203. *See* discussion *supra* Section I.D. Additionally, Dr. Lynde is directly responding to Mr. Kennedy's own analysis of patent hold-up and royalty stacking. Ex. 2 at ¶¶ 540-547. Accordingly, the Court should deny Netlist's motion to strike Dr. Lynde's discussions of patent hold-up and royalty stacking—to allow Dr. Lynde to rebut the opinions of Mr. Kennedy.

**II.    CONCLUSION**

For the foregoing reasons, Micron respectfully requests that the Court deny Netlist's motion to strike opinions of Dr. Matthew Lynde.

Dated: January 30, 2024

Respectfully submitted,

*/s/ Michael R. Rueckheim*
Thomas M. Melsheimer
State Bar No. 13922550
TMelsheimer@winston.com
Natalie Arbaugh
State Bar No. 24033378
NArbaugh@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

David P Enzminger (*pro hac vice*)
denzminger@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael R. Rueckheim
State Bar No. 24081129
MRueckheim@winston.com
Ryuk Park (*pro hac vice*)
RPark@winston.com
Matthew R. McCullough
MRMcCullough@winston.com
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

Matthew Hopkins (*pro hac vice*)
State Bar No. 1500598
mhopkins@winston.com
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

William M. Logan
State Bar No. 24106214
wlogan@winston.com
Juan C. Yaquian (*pro hac vice*)
State Bar No. 24110559
JYaquian@winston.com
WINSTON & STRAWN LLP
800 Capital Street, Suite 2400

Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Vivek V. Krishnan (*pro hac vice*)
vkrishnan@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive, Suite 4200
Chicago, IL 60601
Telephone: 312-558-9508
Facsimile: 312-558-5700

Wesley Hill
State Bar No. 24032294
wh@wsfirm.com
Andrea Fair
State Bar No. 24078488
andrea@wsfirm.com
Charles Everingham IV
State Bar No. 00787447
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DEFENDANTS
MICRON TECHNOLOGY, INC.,
MICRON SEMICONDUCTOR PRODUCTS,
INC., MICRON TECHNOLOGY TEXAS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that, on January 30, 2024, a copy of the foregoing was served on all counsel of record via the Court's ECF system and email.

/s/ Michael R. Rueckheim
Michael R. Rueckheim

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

/s/ Michael R. Rueckheim
Michael R. Rueckheim