# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2:22-cv-293-JRG |
| vs. | ) | (LEAD CASE) |
| | ) | |
| SAMSUNG ELECTRONICS CO, LTD; | ) | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC.; SAMSUNG SEMICONDUCTOR INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2:22-cv-294-JRG |
| vs. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MICRON TECHNOLOGY, INC.; MICRON | ) | |
| SEMICONDUCTOR PRODUCTS, INC.; | ) | |
| MICRON TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON MICRON'S ANTITRUST COUNTERCLAIM AND AFFIRMATIVE DEFENSE OF PATENT MISUSE

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   RESPONSE TO NETLIST'S STATEMENT OF ISSUES TO BE DECIDED
      BY THE COURT ................................................................................................ 1

III.  RESPONSE TO NETLIST'S STATEMENT OF UNDISPUTED FACTS ................... 1

IV.   MICRON'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS ..................... 4

V.    LEGAL STANDARD ......................................................................................... 7

VI.   ARGUMENT ..................................................................................................... 8

      A.   Genuine Issues of Material Fact Preclude Summary Judgment on
           Micron's Antitrust Counterclaim. ....................................................... 8

           1.   Netlist's Conduct Supports Micron's Interpretation of the
                Agreement. ............................................................................... 8

           2.   Micron Has Provided Evidence of Injury. ................................. 11

           3.   Micron Has Properly Defined the Relevant Markets. ............... 14

           4.   Micron Has Provided Evidence of Netlist's Market Power. ....... 17

      B.   Genuine Issues of Material Fact Preclude Summary Judgment on
           Micron's Patent Misuse Affirmative Defense. ..................................... 19

           1.   Micron Has Established Issues of Material Fact Regarding the
                Hynix Agreement's Restrictive Provisions. ............................... 20

           2.   Netlist's Patent-to-Patent Tying Is Patent Misuse. .................... 20

           3.   Expanding the Royalty Base by Including Non-Infringing Products
                Constitutes Misuse. ................................................................. 22

           4.   Micron Has Provided Evidence of Market Power. ..................... 23

           5.   RAND Violations Can Constitute Patent Misuse. ...................... 23

           6.   Micron Need Not Accept a Collusive License to Claim Patent
                Misuse. .................................................................................... 24

VII.  CONCLUSION ................................................................................................. 25

█████████████

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AMA v. United Healthcare Corp.*,
  2007 WL 683974 (S.D.N.Y. Mar. 5, 2007) ...................................................................14

*Apple, Inc. v. Motorola Mobility, Inc.*,
  886 F. Supp. 2d 1061 (W.D. Wis. 2012) ..................................................................12

*B. Braun Med., Inc. v. Abbott Labs.*,
  124 F.3d 1419 (Fed. Cir. 1997)..................................................................................19

*Bayer AG v. Housey Pharms., Inc.*,
  228 F. Supp. 2d 467 (D. Del. 2002)...........................................................................22

*Brooke Group v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993).....................................................................................................14

*Brown Shoe Co., Inc. v. United States*,
  370 U.S. 294 (1962).....................................................................................................15

*Brown v. Goldstein*,
  34 Cal. App. 5th 418 (Ct. App. 2019).........................................................................8

*Cont'l Auto. Sys. v. Avanci*,
  485 F. Supp. 3d 712 (N.D. Tex. 2020) .......................................................................24

*Cordance Corp. v. Amazon*,
  631 F. Supp. 2d 484 (D. Del. 2009)......................................................................24, 25

*Dairy Foods Inc. v. Dairy Maid Prods. Coop.*,
  297 F.2d 805 (7th Cir. 1961) .....................................................................................12

*Deslandes v. McDonald's United States, LLC*,
  81 F.4th 699 (7th Cir. 2023) ......................................................................................17

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992).....................................................................................................18

*Erco Indus., Ltd. v. Seaboard C. L. R. Co.*,
  644 F.2d 424 (5th Cir. Unit B 1981)............................................................................8

*Fireman's Fund Ins. Co. v. Murchison*,
  937 F.2d 204 (5th Cir. 1991) .....................................................................................11

*FTC v. Indiana Fed'n of Dentists*,
    476 U.S. 447 (1986)...................................................................................17

*FTC v. RxCare of Tenn.*,
    121 F.T.C. 762 (1996)...............................................................................10

*GFI, Inc. v. Franklin Corp.*,
    88 F. Supp. 2d 619 (N.D. Miss. 2000)..............................................17, 23

*Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*,
    2017 WL 750700 (D. Del. Feb. 27, 2017).............................................21

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
    416 F. Supp. 2d 525 (E.D. Tex. 2006)......................................................9

*Gould v. Control Laser Corp.*,
    462 F. Supp. 685 (M.D. Fl. 1978).............................................................9

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984)....................................................................................18

*K.M.B. Warehouse Distribs. v. Walker Mfg. Co.*,
    61 F.3d 123 (2d Cir. 1995).....................................................................18

*Knitting Corp. v. Morgan*,
    244 F. Supp. 235 (E.D. Pa. 1965), *rev'd on other grounds*, 361 F.2d 451 (3rd
    Cir. 1966)................................................................................................10

*MacDermid Printing Solutions LLC v. Cortron Corp.*,
    833 F.3d 172 (2d Cir. 2016)...................................................................13

*Maffei v. N. Ins. Co.*,
    12 F.3d 892 (9th Cir. 1993) ...................................................................11

*McCullough Tool Co. v. Well Surveys, Inc.*,
    343 F.2d 381 (10th Cir. 1965) ...........................................10, 12, 20, 21

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)................................................................................24

*Microsoft Corp. v. Motorola, Inc.*,
    696 F.3d 872 (9th Cir. 2012) .................................................................19

*Monsanto Co. v. McFarling*,
    363 F.3d 1336 (Fed. Cir. 2004), *cert. denied*, 545 U.S. 1139 (2005)......................19

*Morton Salt Co. v. G.S. Suppiger Co*.,
    314 U.S. 488 (1942)................................................................................19

*Multimedia Pat. Tr. v. Apple Inc.*,
2012 WL 6863471 (S.D. Cal. Nov. 9, 2012) .................................................................7, 23

*Murray v. Earle*,
405 F.3d 278 (5th Cir. 2005) ...........................................................................................7, 8

*Nynex Corp. v. Discon*,
525 U.S. 128 (1998).............................................................................................................14

*On Track Innovations Ltd. v. T-Mobile USA, Inc.*,
106 F. Supp. 3d 369 (S.D.N.Y. 2015)..............................................................................24

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
940 F. Supp. 2d 367 (E.D. La. 2014)................................................................................12

*Princo Corp. v. ITC*,
616 F.3d 1318 (Fed. Cir. 2010) (en banc), *cert denied*, 563 U.S. 987 (2011)................ *passim*

*Rambus Inc. v. FTC*,
522 F.3d 456 (D.C. Cir. 2008) ..........................................................................................12

*Rsch. in Motion Ltd. v. Motorola, Inc.*,
644 F. Supp. 2d 788 (N.D. Tex. 2008) .............................................................................18

*Sony Elecs., Inc. v. Soundview Techs., Inc.*,
157 F. Supp. 2d 180 (D. Conn. 2001)................................................................................9

*SPEX Techs. v. Kingston Tech. Corp.*,
2020 WL 4342254 (C.D. Cal. June 16, 2020) .................................................................14

*Spirit Airlines, Inc. v. Northwest Airlines, Inc.*,
431 F.3d 917 (6th Cir. 2005) ............................................................................................16

*St. Lawrence Commc'ns LLC v. Motorola Mobility LLC*,
2018 WL 915125 (E.D. Tex. Feb. 15, 2018) .............................................................21, 23

*Tex. Instruments v. Hyundai Elecs.*,
49 F. Supp. 2d 893 (E.D. Tex. 1999)................................................................................23

*Thompson v. Metro. Multi-List, Inc.*,
934 F.2d 1566 (11th Cir. 1991) ........................................................................................16

*Transweb, LLC v. 3M Innovative Props. Co.*,
812 F.3d 1295 (Fed. Cir. 2016)........................................................................................12

*U.S. Philips Corp. v. ITC*,
424 F.3d 1179 (Fed. Cir. 2005)........................................................................................21

*United States v. Apple,*
791 F.3d 290 (2d Cir. 2015)...........................................................................10, 12

*United States v. Delta Dental Plan of Ariz., Inc.,*
1995 WL 454769 (D. Ariz. May 19, 1995) ............................................................10

*United States v. Paramount Pictures, Inc.,*
334 U.S. 131 (1948)...............................................................................................21

*Virginia Panel Corp. v. MAC Panel Co.,*
133 F.3d 860 (Fed. Cir. 1997), *cert. denied,* 525 U.S. 815 (1998)..............19, 22, 24

*Vizio Inc. v. Funai Elec. Co.,*
2010 WL 7762624 (C.D. Cal. Feb. 3, 2010).........................................................14

**Statutes**

15 U.S.C.S. § 1...........................................................................................................12

15 U.S.C.S. § 2.....................................................................................................12, 19

Robinson-Patman Act ................................................................................................14

Sherman Act...........................................................................................................9, 12

## I.    INTRODUCTION

Netlist's motion for summary judgment seeks summary judgment on Micron's antitrust counterclaim and patent misuse defense when:

- Netlist has failed to interpret the key anticompetitive provision of the Agreement at issue, while Netlist's conduct supports Micron's interpretation;

- Netlist misstates the law of tying and patent misuse; and

- Netlist's only critiques of Micron's market definitions, and market power and harm to competition evidence and opinions come from a CPA, while its own economic expert stays conspicuously silent on these fact-intensive antitrust economic issues.

The Court should deny Netlist's motion.

## II.    RESPONSE TO NETLIST'S STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

Netlist has correctly articulated the issues to be decided, *i.e.*, whether the Court should grant summary judgment on Micron's antitrust counterclaim and affirmative defense of patent misuse, or whether genuine issues of material fact preclude summary judgment.

## III.    RESPONSE TO NETLIST'S STATEMENT OF UNDISPUTED FACTS

1.    Micron disputes alleged Netlist Undisputed Fact #1.  Procedural arguments are inappropriate here.  In any event, as set forth in Micron's Response to Netlist's Motion to Dismiss, Dkt. 171, Micron denies any procedural impropriety.  Micron sought an extension of time to "move, answer, *or otherwise respond* to Plaintiff's Second Amended Complaint," (emphasis added) which Netlist did not oppose, Dkt. 114, and which the Court granted, months before discovery was over.  Dkt. 117.

2.    Micron admits that Netlist has accurately quoted part of Micron's Answer and Counterclaim, but respectfully refers the Court to that document as a whole.

█████████████

3.    Micron disputes alleged Netlist Undisputed Fact #3.   Micron denies Netlist's

unsupported assertion that the ██████████ in the agreement between Netlist and SK hynix (the

"Agreement") is "standard."   The Agreement unlawfully requires ████████████████████

██████████████████████████████████████████████.  Micron admits

that Netlist has accurately quoted part of the Agreement, but respectfully refers this Court to the

Agreement as a whole.

4.    Micron admits that Netlist has accurately quoted part of the Agreement, but

respectfully refers this Court to the Agreement as a whole.   The Agreement further provides for

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████Ex. A at 7-8.  This Provision therefore requires that ████████

████████████████████████████████████████r.

5.    Micron admits that Netlist has accurately quoted part of the Agreement.   Micron

respectfully refers this Court to the Agreement as a whole.

6.    Micron disputes alleged Netlist Undisputed Fact #6. ████████████████████

████████████████████████████████████████████████

████████████████████████████████ Netlist's conduct

shows that this █████████████████████████████████ See

Micron's Statement of Additional Undisputed Facts ("MSAUF") 10–12.   By contrast, Netlist's

30(b)(6) witness refused to interpret this provision. ████████████████████. Thus,

Netlist has failed to dispute that this provision restricts Netlist's ability to freely negotiate

███████████████

Subsequent License Agreements with Micron.

7.    Micron disputes alleged Netlist Undisputed Fact #7.  First, Micron never disputed that Netlist "can offer and negotiate deals with Micron and Samsung," so that point is irrelevant. However, Micron has set forth evidence that any such offers by Netlist are constrained by the anticompetitive terms of the Agreement.  *See* Response to Netlist's Statement of Undisputed Facts ("RNSUF") #4 and #6.   Second, as noted above, Netlist refused to take a position on the interpretation of a key restriction in the Agreement.  Ex. B, Hong 30(b)(6) Tr. 156:12–157:6.  And

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████ In short, Netlist failed to take an interpretation position during discovery and now pretends there is no interpretation dispute at summary judgment.  At a minimum, there is a material factual dispute as to whether the Agreement constrains Netlist's ability to give a "better deal" to a subsequent licensee.

8.    Micron disputes alleged Netlist Undisputed Fact #8 as misleading.  Micron objected to Netlist's Interrogatory No. 14 as "propound[ing] a single Interrogatory for seventeen defenses." If Netlist was dissatisfied with the response, it should have moved to compel rather than import a waived discovery complaint into summary judgment briefing.

9.    Micron disputes alleged Netlist Undisputed Fact #9.  Netlist did not merely disclose ████████████████████████████████████████ Rather, Netlist disclosed any ████████████████████████████████████████████████

████████████

████████████████████████ Therefore, Netlist disclosed that ███████

████████████████████████████████████████████

████████████████████ These disclosures as to certain (but not all) Netlist patents

which it offered to license to Micron confirm that Netlist offers to Micron tied potentially essential

patents like the asserted '912 patent with patents that it has never asserted are potentially essential.

Netlist further warranted in the disclosures that ███████████████████████

████████████████████████████████████████████

███████████████████████

## IV.    MICRON'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS

1) Netlist and Samsung Electronics Co., Ltd. ("Samsung") entered into a ████

████████████████████████████████████████████

███████████████████ Ex. D § 8.2.  *See also* Ex. B, Hong 30(b)(6) Tr.

163:4–6 (authenticating same).

2) In the ███████████████████████. Ex. D § 3.1.

3) On April 5, 2021, Netlist and ██████████████████

████████████████████ Ex. A.  The Agreement provides that it ████████

████████████████████████████████████████████

███████████████ *Id.* § 13.

4) The Agreement acknowledges that ███████████████████. *See id.* at 1

████████████████████████████████████████████

███████████████.

5) █████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

4

█████████████████████████████████ *Id.* at 7.

6) ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ *Id.* Micron submits that Netlist's conduct

confirms that this provision ████████████████████████████████████

████████████████. By contrast, Netlist refused to take a position as to the meaning of this

provision. Ex. B, Hong 30(b)(6) Tr. 156:12–157:6.

████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ Ex. A at 7–8.

8) ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ *Id.* at 8.

9) ████████████████████████████████████████████

███████████████████████████ *Id.* § 8.1.

10) In April 2021, Netlist demanded that ████████████████████████████

████████████████████████████████████████████████████████

████████ Ex. E at 2. Netlist also demanded ████████████████████████

████████████████████████████. *Id.* at 3.

██████████████████

11) In April 2022, Netlist sent another letter to Micron regarding ████████████████ ████████████████████████████████████████████████████████████████ Ex. F at 1. Netlist noted that ███████████████████████████████████████████████ ████████████████████████████████████████████ *Id.* (emphasis added).

12) In August 2023, Netlist made an offer to Micron regarding ███████████████ ███████████████████████████████████████████████████████████████████ Ex. G

§ 7(i)-(iii). *See also* Ex. B, Hong 30(b)(6) Tr. 220:15–24 (acknowledging offer).

13) As of December 2022, Netlist had over 120 U.S. patents. Ex. O, Hong *Samsung* Tr. 171:15–18.

14) ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████ Exs I–L. These disclosures ███████████████████████████████████. *Id.*

15) In these disclosures, Netlist stated that it was disclosing ██████████████ ████████████████████████████████████████████████████████████████ ███████ *See, e.g.*, Ex. I at 2. Therefore, Netlist's disclosures referred to █████████████ ██████████████████████.

16) ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ *Compare* Ex. E *with* Exs. I–L. █████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████ *Compare* Ex. F *with* Exs. I–L. Thus, Netlist has never asserted that at least 32 of its patents are actually potentially standard-essential.

17) Netlist has never offered licenses to patents on an individual basis. *See* Ex. B, Hong

██████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████  Rather, Netlist has always offered potentially standard-

essential patents packaged together with those that it has never asserted are standard-essential.  In

fact, Netlist rendered itself incapable of licensing only potentially essential patents by its admitted

failure to ever do an essentiality analysis on its patents.  *Id.* at ██████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████

18) Since executing the Agreement with Hynix, Netlist has not executed any other licenses.

*See* Ex. O, ██████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████

## V.    LEGAL STANDARD

"Summary judgment may be granted if the moving party shows there is no genuine issue

of material fact, and it is entitled to judgment as a matter of law."  *Murray v. Earle*, 405 F.3d 278,

284 (5th Cir. 2005).  Courts must "construe all facts and inferences in the light most favorable to

████████████████████

the nonmoving party" when considering to whether to grant summary judgment. *Id.* "The burden of proof falls upon the party seeking the summary judgment and all reasonable doubts as to the existence of a genuine issue of material fact are to be resolved against the moving party." *Erco Indus., Ltd. v. Seaboard C. L. R. Co.*, 644 F.2d 424, 428 (5th Cir. Unit B 1981).

## VI.    ARGUMENT

### A.    Genuine Issues of Material Fact Preclude Summary Judgment on Micron's Antitrust Counterclaim.

#### 1.    Netlist's Conduct Supports Micron's Interpretation of the Agreement.

There is no dispute here that there is a written agreement between two competitors. MSAUF 3 and 4.  Rather, Netlist disputes whether the Agreement unreasonably restrains trade, a matter which depends in part on contract interpretation.  Under the Agreement's applicable law, California, "when a contract is ambiguous, a construction given to it by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight." *Brown v. Goldstein*, 34 Cal. App. 5th 418, 437 (Ct. App. 2019) (quoting *Universal Sales Corp. v. Cal. Press Mfg. Co.*, 20 Cal. 2d 751, 761 (Cal. 1942)).  As discussed below, Netlist's undisputed conduct supports Micron's interpretation.

Several clauses of the Agreement constrain Netlist's ability to offer competitive licensing terms to Netlist's competitors.  ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████.[1]   MSAUF 6.   Under the ████████████ ████████████████████████████████████████

---

[1] Netlist claims that its corporate representative did interpret the contract but notably fails to mention that he refused to interpret this ████████████████ (*see* RNSUF #6, 7, *supra*).  And while Netlist chides Micron for failing to elicit more testimony supporting its interpretation, Mot. at 7, this is disingenuous given that Micron executives were denied access to the Agreement due to Netlist's confidentiality designation.  Netlist's conduct supports Micron's interpretation.

█████████ MSAUF 7.  And █████

███████████████████████████████████

████████████████ MSAUF 8.

The combined economic effect of these collusive provisions is to raise rivals' costs and hurt competition.  *See* Ex. C, █████████████████████████

████████    ███████████████████████

███████████████████████████████

██████████████ This anticompetitive effect is demonstrated by the fact that the asking price for a license to Netlist's patents has gone from █████████

███████████████████████████████████

█████ MSAUF 2, 9, 12.  Thus, the per-unit royalties that Netlist demanded from Micron are

███████████████████████████████████

███████████████ ; *see also id.* Ex. 2.

These facts are sufficient to support a Sherman Act claim.  *See, e.g.*, *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 416 F. Supp. 2d 525, 530 (E.D. Tex. 2006) (agreement to refuse to deal with plaintiff seeking to secure patent licenses "exemplif[ied] a classic group boycott" (citing *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284 (1985))); *Gould v. Control Laser Corp.*, 462 F. Supp. 685, 691 (M.D. Fl. 1978) (agreement not to take a license from the plaintiff except upon terms approved by the group as a whole "unquestionably restrained the freedom of each group member to act as an individual … free to contract or not contract with whom it chooses."); *Sony Elecs., Inc. v. Soundview Techs., Inc.*, 157 F. Supp. 2d 180, 185, 187 (D. Conn. 2001) (concerted refusal to license can affect the price "that would obtain if usual market forces of supply and demand were at work" and "do involve claims of anticompetitive behavior"

9

where the "license offer was not the result of marketplace economics"); *Knitting Corp. v. Morgan*, 244 F. Supp. 235, 238–39 (E.D. Pa. 1965), *rev'd on other grounds*, 361 F.2d 451 (3rd Cir. 1966) (agreement restraining subsequent licensing activity constituted a group boycott).

Netlist does not dispute Micron's interpretation that ███████████████ encompasses products that do not infringe on any Netlist asserted patents.  This too is unlawful. *McCullough Tool Co. v. Well Surveys, Inc.*, 343 F.2d 381, 405 (10th Cir. 1965) (holding unlawful requirement that royalty base for subsequent licensees extend to all methods related to the technology at issue, whether or not a licensed means).

Netlist's assertion that the ███████████ is "standard" is unsupported, as is Netlist's suggestion that it is *per se* legal.  Mot. at 4–5.  That is not the law.[2]  In any event, the Agreement's ██████████ is far from "standard."  Rather, the Agreement's provisions operate collectively to improperly expand the scope of Netlist's patent rights.  For example, Netlist refuses to interpret the ██████████, ████████████████████████████████.  MSAUF 6. This raises the costs of doing business for Netlist's competitors.

On the other hand, Micron's interpretations are supported by extrinsic evidence, including Netlist's conduct.  The only offers to Micron by Netlist were ████████████████████ ████████████████████████████ *See* MSAUF 10–12, 16.  And Netlist continued to ████████████████████████████████████████ ██████████████████████████ MSAUF 12.

---

[2] *See, e.g.*, *United States v. Apple*, 791 F.3d 290, 320 (2d Cir. 2015) (MFNs "can be misused to anticompetitive ends") (internal quotations omitted); *FTC v. RxCare of Tenn.*, 121 F.T.C. 762 (1996) (consent order banning MFN clauses that discouraged pharmacists from joining networks that promised additional business but offered a lower reimbursement rate); *United States v. Delta Dental Plan of Ariz., Inc.*, 1995 WL 454769 (D. Ariz. May 19, 1995) (consent decree banning enforcement of an MFN clause by a health plan that had signed up 85% of all dentists in the state).

██████████████

Netlist's bundling of essential and nonessential patents is consistent with Netlist licensing policy and practice. While Netlist owned or controlled over 120 patents as of December 2022, █ ████████████████████████████████████████████████ MSAUF 13–14. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████. MSAUF 17.

Netlist insists that the Agreement's provisions allowing a ████████████████ ████████████████████ defeats Micron's interpretation. Mot. at 6 (citing Mot. Ex. 1 § 7.12). However, this ignores that ████████ can also refer to temporal or geographic coverage. *See Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (en banc), *cert denied*, 563 U.S. 987 (2011) (referencing "the physical or temporal scope" of a patent grant) (internal quotations omitted). Thus, █████████████████████████ and Netlist does not identify anything in the Agreement to the contrary.

Accordingly, Micron has provided ample extrinsic evidence supporting its interpretation of the Agreement, including Netlist's prior conduct in offers made to Micron, supracompetitive and dramatic price increases for licenses to Netlist's patents, and Netlist's stated inability to provide individual patent licensing. In any event, Netlist cannot show the absence of a material disputed issue of fact. Even if the Agreement is found ambiguous, this raises a question of fact and prevents summary judgment. *Fireman's Fund Ins. Co. v. Murchison*, 937 F.2d 204, 207 (5th Cir. 1991); *Maffei v. N. Ins. Co.*, 12 F.3d 892, 898 (9th Cir. 1993) (applying California law).

## 2. Micron Has Provided Evidence of Injury.

Micron has provided evidence of both antitrust injury and injury to competition.

Micron's expert economist reported that █████████████████████████

████████████████████████████████████████████████

11

¶¶ 20, 93.  This constitutes antitrust injury.  *See Transweb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1311–12 (Fed. Cir. 2016) (holding that "attorney fees incurred defending the infringement suit are antitrust injury"); *see also Dairy Foods Inc. v. Dairy Maid Prods. Coop.*, 297 F.2d 805 (7th Cir. 1961) (refusing to dismiss Sherman Act conspiracy counterclaims and patent misuse defense where party had shown injury to its "business or property").  Netlist ignores this precedent, instead citing inapposite California district court cases which did not even involve a Sherman Act Section 1 claim.  Mot. at 10 (citing *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 956 (N.D. Cal. 2018); *Chip-Mender, Inc. v. Sherwin-Williams Co.*, 2006 WL 13058, at \*5–6 (N.D. Cal. Jan. 3, 2006)).[3]  The Federal Circuit, which will hear any appeal of this case, has held that attorneys' fees spent in defending a patent case constitute antitrust injury where, as here, the antitrust plaintiff is forced into the choice of ceasing competition, taking an anticompetitive license, or defending an infringement litigation.  *Transweb,* 812 F.3d at 1311–12.  Thus, under applicable precedent, Micron has demonstrated antitrust injury.

Micron has also shown injury to competition, which can be demonstrated by a competitor raising its rivals' costs, increasing prices above competitive levels, or reducing output or quality.  *See In re Pool Prods. Distrib. Mkt. Antitrust Litig.,* 940 F. Supp. 2d 367, 397, 399–400 (E.D. La. 2014) (pricing above competitive levels, raising rivals costs, and lower output support antitrust injury under Section 1 (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977)));

---

[3] Netlist also relies on *Rambus* and *Apple* but both cases, unlike this one, involved *unilateral* exercises of patent rights challenged as monopolization under Section 2 of the Sherman Act, not Sherman Act Section 1 claims challenging a *collusive* agreement to restrain one's future licensing. *Rambus Inc. v. FTC*, 522 F.3d 456, 459 (D.C. Cir. 2008); *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1076 (W.D. Wis. 2012).  Such collusion to restrict one's future licensing conduct is both a Sherman Act Section 1 violation and patent misuse.  15 U.S.C.S. § 1; *McCullough*, 343 F.2d at 408 (noting that "a patentee unlawfully uses a patent monopoly when, for a fixed royalty, he refuses to grant a license under one or more of his patents unless a license is taken under all of his patents.").

███████████████████

*MacDermid Printing Solutions LLC v. Cortron Corp.*, 833 F.3d 172, 192 (2d Cir. 2016) ("plaintiff may prove an adverse effect on competition… by offering evidence of higher prices, lower output, or reduced quality").  Here, Micron has developed evidence of each of these effects from Netlist's conduct.

Micron's economic expert explained in detail how ████████████████████████

███████████████████ Ex. C, █████████████; *see also id.* ████

Harm to competition is also shown by the supracompetitive rise in price for Netlist's license portfolio, as Netlist's licensing offers ████████████████████████ *Compare* MSAUF 2, 9, 12; *see also* Ex. C, ██████████████████████

Micron has also shown evidence of reduction of output that flows from the anticompetitive terms of the Agreement.  Micron was prevented from licensing Netlist's patents because of the supracompetitive prices demanded by Netlist and the tying of potentially essential patents to nonessential patents.  Nor has Netlist entered into any other licenses since the license to Hynix.  MSAUF 18.  This shows a decrease in licensing output.  Finally, injury to competition has also resulted from a decrease in quality of the licensed product as licensees are forced to pay for patents that they do not need.

Netlist's cited caselaw is inapposite.  In *Nynex*, the Supreme Court merely held that the *per se* rule of illegality for group boycotts did not apply to a decision by a purchaser to favor one supplier over another.  *Nynex Corp. v. Discon*, 525 U.S. 128, 135 (1998).  In *American Medical Association*, there was "no allegation that the adverse effect is experienced by anyone other than Counterclaim Plaintiffs."  *AMA v. United Healthcare Corp.*, 2007 WL 683974, at *5 (S.D.N.Y. Mar. 5, 2007).  Here, Micron has shown harm to Netlist's competitors by increased prices,[4] as well as harm to consumers through reduced output.  MSAUF 18.  *Brooke Group* is inapposite because it involved claims of predatory (too low) pricing in violation of the Robinson-Patman Act, 509 U.S. at 216–17; here, it is alleged that Netlist's licensing demands are supracompetitive.  In *SPEX*, the court found that the counterclaimant's expert report "d[id] not contain any opinions on the anti-competitive effect of [plaintiff's] purported action," nor did he rebut the plaintiff's expert report which claimed that "anti-competitive effects from SPEX's conduct were unlikely[.]"  *SPEX Techs. v. Kingston Tech. Corp.*, 2020 WL 4342254, at *23 (C.D. Cal. June 16, 2020).

### 3.    Micron Has Properly Defined the Relevant Markets.

Micron alleged two types of relevant markets: (i) memory product markets; and (ii) technology markets for the licensing of technology used to manufacture standard-compliant DRAM chips and memory modules.  Dkt. 122, Micron's Counterclaims ¶¶ 30, 34; *see also* Ex. C, Lynde Report ¶ 74.  Micron's technology market definitions find support not only with its expert economist, but in the case law as well, ignored by Netlist.  Dkt. 171 at 22–23; *Vizio Inc. v. Funai Elec. Co.*, 2010 WL 7762624, at *7 (C.D. Cal. Feb. 3, 2010) (upholding market definition that included all technology that could be used to make the products at issue).  Micron's technology-

---

[4] Thus, unlike *Brooke Group,* where the plaintiff relied only upon prices that were not paid, Micron has shown that the actual payments made to Netlist increased for the same portfolio of patents.  *Brooke Group v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 231 (1993); *see* MSAUF 2, 9, 12.

market definitions are also consistent with the Agency Guidelines. *See* Antitrust Guidelines for the Licensing of Intellectual Property, issued by the U.S. Department of Justice and the Federal Trade Commission ("Antitrust Guidelines") at 9 ("Technology markets consist of the intellectual property that is licensed (the 'licensed technology') and its close substitutes[.]").

Dr. Lynde, a qualified expert economist, submitted a report supporting Micron's pleaded market definitions, relying upon the factors recognized by the leading Supreme Court precedent on defining relevant markets. *Brown Shoe Co., Inc. v. United States*, 370 U.S. 294 (1962). In *Brown Shoe*, the Supreme Court recognized that the boundaries of relevant markets or submarkets "may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Id.* at 325. Dr. Lynde was guided by these factors in corroborating Micron's definition of the relevant markets and submarkets. For example, he enumerated distinct DIMM types and their respective applications, highlighting peculiar characteristics that support the outer bounds of the submarkets comprising the broader DIMM market. *See* Ex. C, █████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████

Micron's market definitions are also supported by testimony of Netlist's own CEO and experts. *See* Ex. █████████████████████████████████████

███████████████████████████████████████████



Remarkably, Netlist has proffered no economic expert to counter any of Micron's market definitions. Instead, it attempts to critique Micron's well-defined markets by the unqualified opinion testimony of a CPA, Mr. Kennedy, whose opinions on antitrust economics are the subject of Micron's pending *Daubert* motion. Dkt. 360. Tellingly, though Netlist does have an economist on this case who works at Mr. Kennedy's firm, that expert is silent on the antitrust economic issues in this case such as market definition, market power, and harm to competition. *See generally* Ex. M, Groehn Report. In any event, Mr. Kennedy's critique is flawed because it mischaracterizes Micron's defined markets and instead relies on market definitions he invents. Dkt. 360 at 14.

Netlist's invitation to this Court to overturn Micron's market definitions ignores longstanding judicial reluctance to summarily determine fact-intensive issues of market definition. *See, e.g.*, *Spirit Airlines, Inc. v. Northwest Airlines, Inc.*, 431 F.3d 917, 945 (6th Cir. 2005) ("'intellectual disagreement' among the parties' experts creates material factual disputes on the relevant market" and precludes summary judgment); *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d

1566, 1573–74 (11th Cir. 1991) ("The parameters of a given market are questions of fact, and therefore summary judgment is inappropriate if there are material differences of fact.") (internal citation omitted). Micron's market definitions are supported both by economist opinions, and Netlist and Micron witness testimony. The only contrary "evidence" are inadmissible ruminations by an accountant.

### 4.    Micron Has Provided Evidence of Netlist's Market Power.

Netlist's contention that Micron must "produce evidence showing that Netlist has power over the relevant market," Mot. at 12, is untrue, except with respect to Micron's tying claim. *See Deslandes v. McDonald's United States, LLC*, 81 F.4th 699, 703 (7th Cir. 2023) ("market power is not essential to antitrust claims involving naked agreements among competitors") (citing *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46 (1990)); *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460–61 (1986) ("proof of actual detrimental effects, such as a reduction of output, can obviate the need for an inquiry into market power, which is but a surrogate for detrimental effects.") (internal quotations omitted). Thus, for example, a showing of market power is not required for the claim that Netlist impermissibly extended the scope of its patents by using a licensing royalty base that includes Micron products that are not alleged to infringe. *Princo Corp.*, 616 F.3d at 1328; *GFI, Inc. v. Franklin Corp.*, 88 F. Supp. 2d 619, 634 (N.D. Miss. 2000) ("The doctrine of patent misuse forbids a patentee from taking actions that … extend the economic effect beyond the physical scope of the patent grant (by charging a royalty on goods not covered under the patent) ….").

Nevertheless, there is significant evidence of Netlist's market power. First, Netlist repeatedly raised the price of its package license. █████████████████████████████

███████████████████████████████████████████████████████████

████ MSAUF 2, 9, 12; Ex. C, Lynde Report ¶ 78; *see also id.* Ex. 2. Second, Netlist has not executed any licenses after executing the Agreement, showing a reduction in licensing output. *See*

MSAUF 18.  Third, as evidenced by Netlist's claims in this case and in licensing nonessential patents, there is evidence that there is a demand for less than the full Netlist patent portfolio. Fourth, Netlist has asserted that its patents are standard essential or potentially standard essential, which can also create market power.  *See* RNSUF #9.  This is supported by testimony from Netlist's own expert, Mr. Kennedy, who admitted that █████████████████████████████ ███████ Ex. Q, Kennedy Rebuttal Report ¶ 63.  The market power created by the Netlist patents was also attested to by Netlist's Vice President of Product Development, Scott Milton, who stated that █████████████████████████████████████ Ex. H, Milton Tr. 77:5–78:2, 161:7–24; *see also* Ex. C, Lynde Report ¶¶ 39–41, 76 ████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ █████ .

Case law supports that these factors—the ability to take price increases, reduced output, coercion, and essentiality—are indicia of market power.  *See, e.g.*, *K.M.B. Warehouse Distribs. v. Walker Mfg. Co.*, 61 F.3d 123, 129 (2d Cir. 1995) (market power demonstrated by ability to profitably and significantly raise prices); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 464 (1992) (stating market power is "the ability of a single seller to raise price and restrict output.") (internal quotations omitted); *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984) (market power demonstrated where a seller can exploit "control over the tying product to force the buyer into the purchase of a tied product that the buyer … might have preferred to purchase elsewhere on different terms."); *Rsch. in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 790–91, 793 (N.D. Tex. 2008) (owners of essential patents gain market power because

standards, "by definition, eliminate[] alternative technologies") (citing *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3rd Cir. 2007)).

Netlist argues that "Micron cannot show market power based on [Netlist's] possession of standard-essential patents" because "███████████████████████████████ ██████████████████████ Mot. at 14, citing inapposite case law involving Sherman Section 2 claims of monopolization based on failure to disclose to a standard-setting organization. Apart from the fact that Micron is asserting no such claim, Netlist's claim is absurd, meaning that one could never show that a standard-essential patent holder who had met its JEDEC disclosure obligations possessed market power. That is not the law. *See, e.g., Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 876 (9th Cir. 2012) ("As a result [of the need to use patented technology to practice standards], standards threaten to endow holders of standard-essential patents with disproportionate market power."). Micron has set forth significant evidence demonstrating Netlist's market power.

### B. Genuine Issues of Material Fact Preclude Summary Judgment on Micron's Patent Misuse Affirmative Defense.

The equitable doctrine of patent misuse will defeat an infringement claim where the patentee has extended the scope of its patents beyond the patent grant. *Princo Corp.*, 616 F.3d at 1328 (restrictive conditions on licenses that broaden the scope of the patent grant may defeat a patentee's infringement claim).[5] In addition, patents become unenforceable where licensing conditions violate public policy, as in tying arrangements. *See, e.g., Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 490–91 (1942); *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1426 (Fed. Cir. 1997). Both types of misuse are at issue here.

---

[5] *See also Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997), *cert. denied*, 525 U.S. 815 (1998); *Monsanto Co. v. McFarling*, 363 F.3d 1336, 1341 (Fed. Cir. 2004), *cert. denied*, 545 U.S. 1139 (2005).

███████████████

### 1.    Micron Has Established Issues of Material Fact Regarding the Hynix Agreement's Restrictive Provisions.

As discussed in Section VI.A.1 *supra*, the Agreement's provisions ████████████ ████████████████████████████████████.  Micron has provided ample extrinsic evidence, including Netlist's licensing conduct, inability to offer individual patent licensing, and its own expert testimony to support Micron's interpretation.  At a minimum, issues of fact preclude summary judgment.

### 2.    Netlist's Patent-to-Patent Tying Is Patent Misuse.

Netlist's licensing policy and practice constitutes patent misuse by tying potentially essential patents to nonessential patents.  Contrary to Netlist's argument, this type of tying can constitute patent misuse.  *See, e.g.*, *McCullough*, 343 F.2d at 408 (noting that "a patentee unlawfully uses a patent monopoly when, for a fixed royalty, he refuses to grant a license under one or more of his patents unless a license is taken under all of his patents.").  While the reason for the tying is beside the point, Netlist's tying conduct is reinforced by the Agreement's ████████████████████████.  ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████  The court found patent misuse, emphasizing that "such agreements are against the public interest."  343 F.2d at 407.

---

[6] *See also* Antitrust Guidelines at 29 ("If a package license constitutes a tying arrangement, the Agencies will evaluate its competitive effects under the same principles they apply to other tying arrangements.").

████████████████

Netlist asserts that "'patent-to-patent tying' does not constitute patent misuse as a matter of law," Mot. at 15, ignoring both *McCullough* and other U.S. Supreme Court precedent on which *McCullough* relied: *United States v. Paramount Pictures, Inc.*, 334 U.S. 131 (1948).  *Paramount* condemned a similar licensing practice, holding illegal "a refusal to license one or more copyrights unless another copyright is accepted."  *Id.* at 159.  This is precisely what Netlist has done here.

Netlist's reliance on *U.S. Philips Corp. v. ITC*, 424 F.3d 1179 (Fed. Cir. 2005), is misplaced.  That case turned on the Federal Circuit's finding that there was no demand for or value to the nonessential patents at issue.  *Id.* at 1191.  Here, by contrast, Netlist asserts that Defendants are infringing both the '417 and '215 patents, Dkt. 101 ¶¶ 44, 58, neither of which has been claimed to be essential by Netlist, MSAUF 14, and for which Netlist is seeking millions of dollars in damages.  *See* Ex. R, Kennedy Opening Report at Ex. 2, p. 254.  This shows that Netlist believes that these patents have value independent of the potentially essential patents, contrary to the situation in *Philips*.  In short, the evidence shows that Netlist's bundling of essential and nonessential patents constitutes patent misuse.

Nor does the fact that portfolio licensing may be "commonly used," Mot. at 17, excuse an agreement among competitors that *requires* it.  In *Saint Lawrence*, the court expressly applied the *Princo* standard and merely found that on the facts presented, patent misuse had not been established because the conduct at issue did not broaden the scope of the patents at issue or harm competition.  *St. Lawrence Commc'ns LLC v. Motorola Mobility LLC*, 2018 WL 915125, at *7–8 (E.D. Tex. Feb. 15, 2018).  And in *Godo Kaisha*, the plaintiff did not allege that the portfolio licensing "restricts the use of the patents-in-suit in a specific way that falls outside the broad scope of the patent grant."  *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 2017 WL 750700, at *8 (D. Del. Feb. 27, 2017).  Here, ████████████████

█████████████████

████████████████████████████████████████████████████. Netlist's other cited

caselaw is also inapposite. *Virginia Panel* involved a patent-to-product tie not alleged here. 133

F.3d at 868. Contrary to Netlist's assertion, Mot. at 16–17, in *Bayer*, the patent owner's "deposition

testimony and correspondence . . . indicate a willingness to consider other licensing terms." *Bayer*

*AG v. Housey Pharms., Inc.*, 228 F. Supp. 2d 467, 471 (D. Del. 2002). Here, Netlist's testimony

indicates both an unwillingness and an *inability* to offer less than a portfolio license. MSAUF 17.

### 3. Expanding the Royalty Base by Including Non-Infringing Products Constitutes Misuse.

Micron has presented evidence that Netlist has impermissibly expanded the scope of its

patents. The ████████████████████████████████████████████████

████████████████████████████████████████████ Ex. A at

8. Yet Netlist has not asserted infringement against all of Micron's products and has admitted that

the various memory products Micron sells are not interchangeable, thus confirming its patent

misuse. ██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

Netlist incorrectly suggests that basing royalties on all products, regardless of infringement,

"does not constitute patent misuse," citing only one case for this remarkable proposition. Mot. at

18–19 (citing *Tex. Instruments v. Hyundai Elecs.*, 49 F. Supp. 2d 893, 901 (E.D. Tex. 1999)).

Collecting royalties on non-infringing products, however, has long been considered classic patent

misuse. *Princo Corp.*, 616 F.3d at 1328; *GFI, Inc.*, 88 F. Supp. 2d at 634. And far from suggesting that this was a "common practice," Mot. at 18, the *Texas Instruments* court noted that both parties admitted the provision at issue there was "unique." 49 F. Supp. 2d at 912. In any event, the provision at issue there had nothing to do with the calculation of royalties, which were fixed at a lump sum payment, but instead governed the term of the license. *Id.* at 917.[7]

### 4.    Micron Has Provided Evidence of Market Power.

Relying on tying cases, Netlist suggests that Micron must show that Netlist has market power to support a patent-misuse defense. Mot. at 19. But there is no such requirement for patent misuse based on an expansion of the scope of the patents at issue, which is one of the types of misuse alleged here. Dkt. 122, Affirmative Defenses ¶ 59; *Princo*, 616 F.3d at 1328; *GFI, Inc.*, 88 F. Supp. 2d at 634. Netlist cites no authority to support the novel proposition that basing royalties on products that wholly do not practice the asserted patents cannot constitute misuse without a showing of market power, and Micron is aware of none. In any event, a number of facts show Netlist's market power to support Micron's tying claim, as explained in Section VI.A.4 *supra*.

### 5.    RAND Violations Can Constitute Patent Misuse.

Contrary to Netlist's suggestion, Mot. at 19, courts have held that a patentee's violation of its RAND obligations may constitute patent misuse. *See, e.g.*, *Multimedia Pat. Tr. v. Apple Inc.*, 2012 WL 6863471, at *23 (S.D. Cal. Nov. 9, 2012) (denying summary judgment on patent-misuse defense premised on patentee's alleged RAND violations). Netlist's case law is not to the contrary. *See Saint Lawrence*, 2018 WL 915125 at *7–8 (noting that "breach of FRAND obligations may

---

[7] This Court, in *Texas Instruments*, said it had to "follow[] the mandate of the Fifth Circuit" and permit adding a patent misuse defense a mere six days before trial, 49 F. Supp. 2d at 895, undermining Netlist's argument that Micron's defense, asserted 20 weeks before any scheduled trial and before the close of discovery, was "procedurally improper." Mot. at 1 n.1.

be relevant to this inquiry" under *Princo* but finding on the facts presented that the conduct at issue did not broaden the scope of the patents at issue or harm competition).  Nor is Micron's patent misuse claim based on a purported violation of a duty to disclose a patent to a standard-setting group.  Mot. at 19–20 (citing *Sycamore IP Holdings LLC v. AT&T Corp.*, 294 F. Supp. 3d 620, 657 (E.D. Tex. 2018)).  For the reasons set forth in Sections VI.A.1 and VI.A.2, *supra,* Netlist's FRAND violations are relevant to patent misuse because they demonstrate the supracompetitive pricing that Netlist demands from its tying of potentially essential to nonessential patents.

### 6.    Micron Need Not Accept a Collusive License to Claim Patent Misuse.

Netlist makes the remarkable assertion that "Micron's patent misuse defense fails at the outset since there is no allegation that Micron and Netlist have entered into a patent license."  Mot. at 20.  But this is not the law.  *See generally MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 134 (2007) ("The rule that a plaintiff must … bet the farm … before seeking a declaration of its actively contested legal rights finds no support in Article III."); *see also Cont'l Auto. Sys. v. Avanci*, 485 F. Supp. 3d 712, 726 (N.D. Tex. 2020) (finding sufficient, for standing, allegations of injury-in-fact, attributable to unsuccessful attempts to obtain a FRAND license plaintiff was purportedly entitled to receive).

None of the cases cited by Netlist support its position.  The patent misuse defense in *On Track* was dismissed because the defendant had "not even provided the contours of [the] putative tying arrangement," in contrast to the written tying arrangement in the Agreement and Netlist's admitted patent licensing practices here.  *On Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 402–04 (S.D.N.Y. 2015).  *Virginia Panel* involved a situation where the patent holder, after a full trial, was found not to have engaged in tying because it "voluntarily and unilaterally revoked the proposal to link the license to the purchase of unpatented items."  133 F.3d at 871.  Summary judgment in *Cordance* depended on the fact that at the time of the attempted

24

license, the plaintiff "had not yet been issued any patents and the [SSO] had not implemented a standard," after which point the plaintiff expressly stated that it was ceasing licensing attempts related to the standard. *Cordance Corp. v. Amazon*, 631 F. Supp. 2d 484, 494–95 (D. Del. 2009). Netlist thus cites no competent authority for the proposition that a potential licensor like Micron is required to accept anticompetitive licensing demands to assert a patent misuse claim.

## VII. CONCLUSION

For the foregoing reasons, Netlist's motion should be denied.


Dated: January 30, 2024                    Respectfully submitted,

                                           By: */s/ Aldo A. Badini*
                                           _____

                                           Aldo A. Badini
                                           State Bar No. (NY) 1934892
                                           State Bar No. (CA) 257086
                                           State Bar No. (DC) 416812
                                           ABadini@winston.com
                                           WINSTON & STRAWN LLP
                                           200 Park Avenue
                                           New York, NY 10166
                                           Telephone: (212) 294-6700
                                           Facsimile: (212) 294-4700

                                           Thomas M. Melsheimer
                                           State Bar No. 13922550
                                           TMelsheimer@winston.com

                                           Natalie Arbaugh
                                           State Bar No. 24033378
                                           NArbaugh@winston.com
                                           WINSTON & STRAWN LLP
                                           2121 N. Pearl Street, Suite 900
                                           Dallas, TX 75201
                                           Telephone: (214) 453-6500
                                           Facsimile: (214) 453-6400

                                           David P Enzminger (*pro hac vice*)
                                           DEnzminger@winston.com
                                           WINSTON & STRAWN LLP
                                           333 South Grand Avenue, 38th Floor

FILED UNDER SEAL

Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael R. Rueckheim
State Bar No. 24081129
MRueckheim@winston.com
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

William M. Logan
State Bar No. 24106214
WLogan@winston.com
Juan C. Yaquian
*Pro Hac Vice*
State Bar No. 24110559
JYaquian@winston.com
WINSTON & STRAWN LLP
800 Capital Street, Suite 2400
Houston, TX 77002-2925
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Wesley Hill
State Bar No. 24032294
wh@wsfirm.com
Andrea Fair
State Bar No. 24078488
andrea@wsfirm.com
Charles Everingham IV
State Bar No. 00787447
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DEFENDANTS
MICRON TECHNOLOGY, INC.;
MICRON SEMICONDUCTOR
PRODUCTS, INC.; AND
MICRON TECHNOLOGY TEXAS LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 30, 2024, a copy of the foregoing was served on all counsel

of record via the Court's ECF system and email.

*/s/ Aldo A. Badini*
Aldo A. Badini

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant

to the Protective Order entered in this case.

*/s/ Aldo A. Badini*
Aldo A. Badini