IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD. ET AL., <br><br> Defendants. | Case No. 2:22-cv-293-JRG (Lead Case) <br><br> JURY TRIAL DEMANDED |
| NETLIST, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MICRON TECHNOLOGY, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; MICRON TECHNOLOGY TEXAS LLC, <br><br> Defendants. | Case No. 2:22-cv-294-JRG <br><br> JURY TRIAL DEMANDED |

**DEFENDANT MICRON'S RESPONSE TO PLAINTIFF NETLIST'S MOTION FOR SUMMARY JUDGMENT DISMISSING MICRON'S AFFIRMATIVE DEFENSE OF BREACH OF RAND OBLIGATION OR, IN THE ALTERNATIVE, FOR SEVERANCE**

■

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. RESPONSE TO STATEMENT OF ISSUE TO BE DECIDED ......................................... 2

III. RESPONSE TO NETLIST'S STATEMENT OF UNDISPUTED MATERIAL FACTS ... 2

IV. ARGUMENT ....................................................................................................................... 3

    A.    This Court Should Exercise Supplemental Jurisdiction over Micron's Affirmative Defense ............................................................................................... 3

        1.    This Court unquestionably has jurisdiction to determine whether Netlist's April 28, 2021 licensing offer was RAND compliant, which covers only U.S. patents and no foreign patents. ........................................................... 4

        2.    Significant evidence exists as to what portion of Netlist's August 23, 2023 and April 1, 2022 licensing offers is attributable to U.S. patents. .............. 6

        3.    This case is materially different from *Huawei*, a case that Netlist analogizes to claiming that it is "directly on point." ................................... 9

V. CONCLUSION................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Netlist, Inc. v. Samsung Elecs. Co.*,
    No. 21-cv-463 (E.D. Tex.) ...................................................................................................3, 7

*Optis Wireless Tech., LLC v. Apple Inc.*,
    2020 WL 999463 (E.D. Tex. Mar. 2, 2020) ........................................................................4, 6

*Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*,
    2019 WL 1244707 (E.D. Tex. Mar. 18, 2019) ................................................................ passim

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) ..................................................................................................................4

**Statutes**

28 U.S.C. § 1331 ..............................................................................................................................4

28 U.S.C. § 1338(a) .........................................................................................................................4

28 U.S.C. § 1367(a) ......................................................................................................................3-4

## I.  INTRODUCTION

Netlist advances three primary arguments in its motion for summary judgment that Micron's affirmative defense (the "Affirmative Defense")—Netlist's breach of RAND obligations—should be dismissed:

1) If the Court grants Netlist's co-pending motion that the Asserted Patents are not standard essential, the Court should also grant the present Motion because the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

2) The Court independently lacks jurisdiction to adjudicate the Affirmative Defense.

3) In the alternative, the Affirmative Defense should be severed from the jury trial because it requests equitable relief.

Addressing arguments one (1) and three (3), Micron has not claimed that a RAND obligation would exist if the Accused Products were not potentially standard essential, nor has Micron claimed this equitable defense should be tried by the jury. Micron does not dispute one (1) and three (3), and Micron agrees that Netlist's co-pending Motion for Summary Judgment that the Asserted Patents are not standard essential should rise and fall with the current Motion. Micron disputes Netlist's position in this co-pending Motion for Summary Judgment, however, and has accordingly filed a response that is also pending.

Addressing argument two (2), Netlist is wrong on its claim that this Court lacks jurisdiction for three reasons: first, Netlist's April 28, 2021 licensing offer only covers U.S. patents and no foreign patents, contradicting Netlist's representations; second, significant evidence exists as to what portion of Netlist's April 1, 2022 and August 23, 2023 licensing offers is attributable to U.S. patents; and third, this case is materially different from *Huawei*, a case that Netlist relies on and analogizes to, claiming that it is "directly on point." Accordingly, the Court should deny Netlist's Motion.

## II.  RESPONSE TO STATEMENT OF ISSUE TO BE DECIDED

Netlist has correctly articulated the issues to be decided; i.e., whether the Court should enter summary judgment dismissing Micron's Affirmative Defense or, in the alternative, sever it from the jury trial.

## III.  RESPONSE TO NETLIST'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Micron responds to Netlist's statement of undisputed material facts as follows. Micron denies any fact not specifically admitted.

1) Micron admits the facts in paragraph No. 1.

2) Micron admits that on April 28, 2021, it received a letter from Netlist ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

3) Micron admits that on April 1, 2022, it received a letter from Netlist ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

---

[1] The Accused Products in this case are Micron's DDR4 RDIMM and LRDIMM products, not NVDIMMs. Thus, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

2



4) Micron admits that on August 23, 2023, ███████████

## IV. ARGUMENT

### A. This Court Should Exercise Supplemental Jurisdiction over Micron's Affirmative Defense

Netlist's entire argument boils down to whether any evidence "demonstrat[es] what portion of Netlist's offers were attributable to the US patents specifically," given that Netlist agrees that this Court has jurisdiction to adjudicate whether a proposed rate for a *U.S. patent* is RAND compliant. *See* Dkt. 340, at 3-4. This Court should exercise supplemental jurisdiction over Micron's Affirmative Defense because its April 28, 2021 licensing offer only covers U.S. patents, and no foreign patents; significant evidence exists as to what portion of Netlist's April 1, 2022 and August 23, 2023 licensing offers is attributable to U.S. patents; and this case is materially different from *Huawei*, a case that Netlist relies on and analogizes to, claiming that it is "directly on point."

Federal courts have statutory authority to exert supplemental jurisdiction over claims that are "so related to claims in the action within such original jurisdiction that they form part of the

3

same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A federal court may exercise constitutional jurisdiction over claims so long as they share a "common nucleus of operative fact" with a federal claim. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Federal courts have subject matter jurisdiction over patent infringement actions arising under the Patent Laws of the United States. 28 U.S.C. §§ 1331, 1338(a). Here, because Micron's RAND defense shares a common nucleus of operative facts with Netlist's federal patent-infringement claims, this Court has supplemental jurisdiction to adjudicate Micron's RAND defense as it pertains to U.S. patents or applications.

When a licensing offer is blended with both U.S. and foreign patents, the Court asks whether "the U.S. components of the license offers could [] be extricated from the foreign components in any meaningful way" when determining whether it can exercise jurisdiction. *Optis Wireless Tech., LLC v. Apple Inc.*, 2020 WL 999463, at *4 (E.D. Tex. Mar. 2, 2020) ("*Apple*"). The Court "does not agree that, as a categorical matter, a patentee must make individual license offers for standard essential patents in each country" for that country to exercise jurisdiction and adjudicate whether there was FRAND compliance. *Id.*

    **1.**    **This Court unquestionably has jurisdiction to determine whether Netlist's April 28, 2021 licensing offer was RAND compliant, which covers only U.S. patents and no foreign patents.**

Netlist's April 28, 2021 letter to Micron included a purported ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1, at 2 (emphasis removed). Netlist asserts that this offer included ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ misquoting the letter. Dkt. 340, at 1-2. It is unclear where Netlist drew this language from. Netlist also mischaracterizes this letter—citing no evidence—as a RAND proposal "international in scope and includ[ing] foreign patents." *Id.* at 3.

4

■ . Netlist fails to address the actual language of the letter. *See* Ex. 2.

The April 28, 2021 letter explicitly defines the term ■

Thus, the April 28, 2021 offer ■ which is an Asserted Patent in this case. The other Asserted Patent, the '417 patent, claims priority to ■

Even if Netlist had identified a foreign patent claiming priority, however, Netlist has failed to put forth any evidence showing that this was included in the calculated RAND royalty rate identified in the letter. And even if it had, there would still be significant "evidence demonstrating what portion of Netlist's offer[] w[as] attributable to the US patents specifically," given all the identified patents were U.S. patents only. *See* Dkt. 340, at 4.

Further, the April 28, 2021 letter explicitly states that the covered ■

■ Ex. 1, at 2. Stated another way, this offer ■

███████████████

███████████████████████████████████████████. ████████

███████████████████████████████████████████████████. Ex. 8. This further supports that the licensing offer was strictly calculated based on U.S. patents.

Because the April 28, 2021 licensing offer strictly includes U.S. patents, and evidence shows it was calculated strictly based on U.S. patents, the Court unquestionably has supplemental jurisdiction to determine whether this licensing offer was RAND complaint. Even Netlist agrees that this Court can adjudicate whether a proposed rate for U.S. patents is RAND compliant. *See* Dkt. 340, at 3-4.

Lastly, Netlist asserts that the April 28, 2021 licensing letter was ███████████ ████████████████████████████████████—at the very least, this is a question of fact. And even if it were, none of Netlist's authority states that this Court lacks jurisdiction to determine whether a licensing offer for ***U.S. patents only*** is RAND compliant simply because it was a worldwide license. Rather, Netlist's cited cases involved licensing offers dealing with numerous foreign patents.

### 2. Significant evidence exists as to what portion of Netlist's August 23, 2023 and April 1, 2022 licensing offers is attributable to U.S. patents.

Unlike Netlist's April 28, 2021 licensing offer, its August 23, 2023 and April 1, 2022 licensing offers to Micron included foreign patents. However, evidence shows that these licensing offers were calculated ***solely*** based on U.S. patents, and thus "the U.S. components of the license offers could [] be extricated from the foreign components in [a] meaningful way." *Apple*, 2020 WL 999463, at *4. There is significant "evidence demonstrating what portion of Netlist's offers were attributable to the US patents specifically." Dkt. 340, at 4.

a. **Netlist's August 23, 2023 Letter**

Netlist's August 23, 2023 settlement letter to Micron is an example of an offer where the portion attributable to U.S. patents is readily ascertainable. This is because it is calculated solely based on U.S. patents asserted in U.S. litigation. Ex. 6. This letter includes the Asserted Patents.

This letter ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.*; *Netlist, Inc. v. Samsung Elecs. Co.*, No. 21-cv-463 (E.D. Tex.) (the "Samsung Litigation"). The Samsung Litigation resulted in a $303 million jury verdict, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Netlist completely ignores the above facts and, without any real analysis, states that no evidence "permit[s] the Court to disentangle the U.S. patents from the worldwide licensing offers." Dkt. 340, at 4. Even more troubling, Netlist fails to acknowledge the explicit language in the letter. The letter explicitly states ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6, at 3. And it states that ▮▮▮▮▮▮▮▮▮

7

██████

*Id.* at 3-4. Thus, material issues of fact exist as to whether this offer purporting to settle U.S. litigation can be parsed from foreign sales and whether this constitutes a RAND offer.

At bottom, the evidence shows that Netlist's August 23, 2023 settlement offer was calculated solely based on U.S. patents asserted in U.S. litigation, and that the U.S. components of the offer could be extricated from the foreign components in a meaningful way. Therefore, the Court has supplemental jurisdiction to determine whether this offer was RAND compliant.

    b.    **Netlist's April 1, 2022 Letter**

Netlist's April 1, 2022 letter is another example of an offer where the portion attributable to U.S. patents is readily ascertainable. This is because it is calculated solely based on U.S. patents disclosed to JEDEC. This letter includes a ██████ ██████ Ex. 3, at 1; Ex. 4.

This letter details thorough calculations for how it arrived at its ██████ ██████ Ex. 3, at 1. ██████

██████

8



*Id.* at 639. Evidence in the record confirms that [REDACTED]. Ex. 8. This further supports that the licensing offer was strictly calculated based on U.S. patents.

Because the purported RAND offer in Netlist's April 1, 2022 letter was calculated solely based on U.S. patents, the U.S. components can be extricated from the foreign components in a meaningful way. Therefore, the Court has supplemental jurisdiction to determine whether this offer was RAND compliant.

### 3. This case is materially different from *Huawei*, a case that Netlist analogizes to claiming that it is "directly on point."

The Court should reject Netlist's reliance on this Court's decision in *Optis Wireless Technology, LLC v. Huawei Device USA, Inc.*, 2019 WL 1244707 (E.D. Tex. Mar. 18, 2019) ("*Huawei*"), which Netlist used to determine that "[a]s in *Optis*, Micron has produced no evidence here permitting the Court to disentangle the U.S. Patents from the worldwide licensing offers."

Dkt. 340, at 3-4. Netlist relies heavily on this case without any real analysis of its facts. *Huawei*, in fact, involved a starkly different set of facts from those of the present case.

Procedurally, *Huawei* involved a declaratory judgment action where the plaintiff requested a declaration that it had complied with its FRAND obligations with its September 2017 offer. *Huawei*, 2019 WL 1244707, at *7. The Court in *Huawei* recognized that it had "unique and substantial discretion" when faced with a declaratory judgment action. *Id.* The decision also came after trial, where both sides had the opportunity to present evidence. *Id.* The current action, however, involves a motion for summary judgment, before trial, where Netlist seeks to deprive Micron of any opportunity to defend itself on its Affirmative Defense.

Even more significantly, in *Huawei*, significant affirmative testimony established that the plaintiff's licensing offer could not be broken down into its U.S. components to address only the U.S. patents for determining FRAND compliance. For example, in *Huawei*, the plaintiff's corporate representative—the plaintiff being the party seeking the RAND determination—repeatedly testified that the offer was "not separable or divisible by product type, technology, region, or country." *Id.* at *5. The plaintiff's corporate representative also affirmatively testified that it would not be "acceptable" to take a blended rate and apply it to a single country like the United States. *Id.* The plaintiff's own economic expert also affirmatively testified that he was unable to opine on what a U.S.-only offer rate was or would be, and that he offered no opinions as to whether there was FRAND compliance with respect to only U.S. patents. *Id.* at *6. The plaintiff had even earlier represented to the Court that its offers "cannot be unpacked to provide a U.S.-only rate" and that "[t]he Court cannot simply pull out a U.S.-only rate from the offers [that the defendants] allege violate FRAND." *Id.* at *5. It was against this backdrop in *Huawei*—filled with the plaintiff's explicit representations and unequivocal testimony that the licensing offer could not

10

be broken into U.S. components to evaluate FRAND compliance—that the Court found there was insufficient evidence to find otherwise.

The present case offers a very different set of facts. Netlist has pointed to no affirmative evidence or testimony that Netlist's offers could not be evaluated as to U.S. patents only. And in fact, the April 28, 2021 offer *only includes U.S. patents*, unlike in *Huawei*, where the license offer "include[d] patents from around the world, including China, Europe, and many other jurisdictions." *Id.* at *4; *see also id.* at *5 ("[T]here is not, and has never been, any offer that [the plaintiff] has made for only the United States patents."), *7 ("The September 2017 offer is an offer for a worldwide license to PanOptis' SEPs and those SEPs include both U.S. and non-U.S. patents.").

Further, Netlist's own damages expert, Mr. Kennedy, directly explained  *See* Ex. 7 (Kennedy Rpt.) ¶¶ 691-692; Ex. 6. This stands in stark contrast to *Huawei*, where both the plaintiff and its expert explicitly represented that there was no way to evaluate its licensing offer as to U.S. patents only. And Netlist's April 28, 2022 letter also explains , unlike in *Huawei*.

For these reasons, this case is distinguishable from *Huawei*, and is yet-another reason this Court has supplemental jurisdiction over Micron's Affirmative Defense.

## V. CONCLUSION

Micron requests that the Court find that it has jurisdiction to adjudicate Micron's Affirmative Defense and, accordingly, deny Netlist's Motion for Summary Judgment.

11

Dated: January 30, 2024                     Respectfully submitted,

*/s/ Michael R. Rueckheim*
Thomas M. Melsheimer
State Bar No. 13922550
TMelsheimer@winston.com
Natalie Arbaugh
State Bar No. 24033378
NArbaugh@winston.com
Barry K. Shelton
State Bar No. 24055029
BShelton@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

David P Enzminger
denzminger@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael R. Rueckheim
State Bar No. 24081129
MRueckheim@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

Matthew Hopkins (*pro hac vice*)
State Bar No. 1500598
mhopkins@winston.com
**WINSTON & STRAWN LLP**
1901 L Street, N.W.
Washington, DC 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

Juan C. Yaquian
State Bar No. 24110559
JYaquian@winston.com
**WINSTON & STRAWN LLP**
800 Capital Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Wesley Hill (State Bar No. 24032294)
wh@wsfirm.com
Andrea Fair (State Bar No. 24078488)
andrea@wsfirm.com
Charles Everingham IV (State Bar No. 00787447)
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DEFENDANTS MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC**

13

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2024, the foregoing document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record, including counsel of record for Plaintiff Netlist Inc.

                                              */s/ Michael R. Rueckheim*
                                              Michael R. Rueckheim

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this case.

                                              */s/ Michael R. Rueckheim*
                                              Michael R. Rueckheim