███████████████

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-293-JRG (Lead Case) |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD, ET AL., | ) | ███████████████ |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-294-JRG (Member Case) |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; MICRON TECHNOLOGY TEXAS LLC, | ) | ███████████████ |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MICRON DEFENDANTS' OPPOSITION TO PLAINTIFF NETLIST, INC.'S MOTION TO STRIKE CERTAIN OPINIONS OF MICRON DEFENDANTS' EXPERT DR. HAROLD STONE

## TABLE OF CONTENTS

I.      Dr. Stone's Essentiality Opinions are Admissible .................................................. 1

II.     Dr. Stone's Non-Infringing Alternatives Are Proper ............................................. 3

III.    Dr. Stone's "Phase Lock Loop" Opinions Are Admissible .................................... 4

IV.     Dr. Stone Applies the Correct Legal Standard in His Direct Infringement Analysis of the '912 Patent ................................................................................................... 5

V.      Dr. Stone's SSPPU Opinions are Admissible ....................................................... 7

VI.     Dr. Stone's Comparability Analysis is Admissible ............................................... 8

VII.    Dr. Stone Applies Proper Claim Construction ...................................................... 9

VIII.   Dr. Stone's Anticipation Analysis Should Not Be Stricken ............................... 10

IX.     Dr. Stone's Written Description Theories were Properly Disclosed During Fact Discovery ............................................................................................................. 11

X.      Dr. Stone's Derivation Opinions are Proper ....................................................... 13

XI.     Dr. Stone's Prior Invention Opinions are Proper ............................................... 13

XII.    Pending IPRs are Part of the Prosecution Histories of the Asserted Patents ........ 14

XIII.   Dr. Stone's Reference to the *Samsung* Litigation is in Rebuttal to Dr. Mangione-Smith's Opinions Mentioning the Samsung Litigation First ............................... 14

XIV.    Dr. Stone's Opinions About JEDEC Standards Qualifying as Prior Art Are Proper ............................................................................................................................. 15

XV.     CONCLUSION ................................................................................................... 15

██████████████

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aventis Pharms. Inc. v. Amino Chemicals Ltd.*,
   715 F.3d 1363 (Fed. Cir. 2013) ..................................... 10

*Aylus Networks, Inc. v. Apple, Inc.*,
   856 F.3d 1353 (Fed. Cir. 2017) ..................................... 14

*ZiiLabs Inc., Ltd. v. Samsung Elecs. Co.*,
   2015 WL 6690403 (E.D. Tex. Nov. 2, 2015) .................... 9, 14

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   954 F. Supp. 2d 509 (E.D. Tex. 2013), *aff'd in part, rev'd in part and remanded*, 773 F.3d 1245 (Fed. Cir. 2014) ................... 11

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*,
   2023 WL 8260866 (E.D. Tex. Nov. 28, 2023) ................... 8

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010) ..................................... 6

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) .................................. 1, 3

*Genband US LLC v. Metaswitch Networks Corp.*,
   2016 WL 122969 (E.D. Tex. Jan. 9, 2016) ...................... 8

*Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*,
   2017 WL 9988630 (E.D. Tex. Aug. 25, 2017) .................. 3

*Metacluster LT, UAB v. Bright Data Ltd., No. 2:22-CV-011-JRG-RSP,
   2022 WL 18859434* (E.D. Tex. Dec. 20, 2022) ............... 14

*Personalized Media Communs., LLC v. Apple, Inc.*,
   No. 2:15-CV-01366-JRG, 2021 WL 310789 (E.D. Tex. Jan. 29, 2021) ............... 12

**Statutes**

35 U.S.C. § 112, ¶ 1 ................................................... 11

**Other Authorities**

Patent Rule 3.3 .......................................................... 11

Patent Rule 3.3(d) ...................................................... 11

████████████

## TABLE OF EXHIBITS

| Ex. No. | Description |
| --- | --- |
| A | Excerpt from Netlist's November 13, 2023, Responses to Micron's Second Set of Interrogatories |
| B | Excerpts from Opening Expert Report of Dr. William Henry Mangione-Smith |
| C | Micron-Netlist agreement to cross-reference produced documents |
| D | Deposition of Peter Gillingham |
| E | Inter Partes Re-examination certificate, U.S. Patent No. 7,619,912 |
| F | Excerpt from Rebuttal Expert Report of Peter Gillingham |
| G | Appendix A-1 of Opening Expert Report of Dr. Harold Stone |
| H | Appendix A-2 of Opening Expert Report of Dr. Harold Stone |
| I | Appendix C-1 of Opening Expert Report of Dr. Harold Stone |
| J | Appendix C-2 of Opening Expert Report of Dr. Harold Stone |

Plaintiff Netlist's motion to strike certain opinions presented by Defendant's expert, Dr. Harold Stone, should be denied for the reasons below.

## I.    Dr. Stone's Essentiality Opinions are Admissible

Netlist argues that its patents "are not standard essential." ECF No. 364 at 1. This argument ignores that Netlist's expert maps the claims to the JEDEC standard without identifying any specific implementation in Micron's products. Such a theory is appropriate "[o]nly in the situation where a patent covers every possible implementation of a standard." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010). Thus, under Netlist's infringement theories, the asserted patent claims are standard essential. Micron's position is that the features relied on by Netlist to prove infringement are optional, and thus, Netlist has failed to meet its burden under *Fujitsu* to prove infringement based on those optional features. *See* ECF No. 345. Netlist should not be permitted to rely primarily on the JEDEC standard to prove infringement while arguing the patent claims are not standard essential. The parties are concurrently briefing Netlist's motion for summary judgment that its patents are not standard essential. *See* ECF No. 362.

Netlist argues that Dr. Stone's opinions are untimely. ECF No. 364 at 1. Not so. Dr. Stone's opinions are proper rebuttal testimony in response to Netlist's expert's infringement theory that relies on JEDEC standards as infringement proof for every claim limitation. *See* ECF No. 364-3 at ¶¶ 400-403. Netlist gave no prior warning that its expert would advance a standard essential theory. To the contrary, Netlist's Interrogatory Response No. 16 stated that only non-asserted claims are standard essential. *See* Rueckheim Decl., EX-A at 10 ███████████████████████

███████████████████████████████████████████████████████

Netlist argues that Dr. Stone's opinions are not legally sufficient. ECF No. 364 at 1. Not so. Dr. Stone's report ███████████████████████████████████████

███████████████████████████████████████████████████████

c█████ ECF No. 364-3 at ¶ 404.  Dr. Stone also identified how Netlist's expert ███

████████████████████████████████████████████████████████████████

████ *Id.* at ████████████████████████████████████████████████

██████████████████ Dr. Stone also explained how Netlist is advancing a standards essential case by focusing its infringement allegations on JEDEC-compliant components, which are provided by different third-party suppliers, without any attempt to show how each and every third-party supplier's component meets the various logical diagram options provided in the standard.  *See, e.g., id.* at ¶ 398.  Without the relevant JEDEC standards, Netlist has no proof as to how many of the third-party components are configured with respect to Netlist's infringement allegations.

Netlist argues that Dr. Stone erroneously concludes that Netlist's DDR3 DIMM RAND obligation for "unasserted" claims of the '912 patent creates a RAND obligation for the asserted claims and the accused DDR4 devices. Not so.  Dr. Stone properly identified factual subject matter that ██████████████████████████████████████████████████████████ ███████████████ ECF No. 364-3 at ¶ 397.  Dr. Stone did not opine that this RAND obligation applies to the accused DDR4 devices.  *See id.*

Netlist alleges that the Court has previously "rejected the exact same arguments."  ECF No. 364 at 2.  Not so.  The Court issued in Case No. 2:22-cv-203 a Report and Recommendation finding different Netlist patent claims were not standard essential when "nothing within the contentions expressly demonstrates that the JEDEC standard is relied upon for the contentions."[1] Case No. 2:22-cv-203, ECF No. 421 at 4.  Dr. Stone's report in the present case, by contrast to this

---

[1] Micron filed an objection to the Report and Recommendation. Case No. 2:22-cv-203, ECF 441.

finding, identifies how Netlist's contentions and expert report relies expressly on the JEDEC standards for infringement of the asserted patent claims. ECF No. 364-3 at ¶¶ 397-405.

Netlist is asserting infringement by citing to logic diagrams, which are admittedly an optional feature provided in the JEDEC standards. For Netlist's infringement theory to be valid, these logic diagrams must "cover[] every possible implementation of a standard," thus making them required portions of the JEDEC specifications. *Fujitsu*, 620 F.3d at 1328. Dr. Stone's report properly analyzed Netlist's approach and responded in rebuttal. Dr. Stone's opinions should not be struck.

## II.    Dr. Stone's Non-Infringing Alternatives Are Proper

Netlist's Motion should be denied because expert analysis and noninfringement contentions are not required in response to interrogatories. *See Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-00052-JRGRSP, 2017 WL 9988630, at *1 (E.D. Tex. Aug. 25, 2017) ("The district's local patent rules do not require noninfringement contentions, and a party is not entitled to early disclosure of expert opinions through interrogatory."). That rule is particularly applicable here because Netlist's infringement allegations focus on features in third-party supplied components (not designed by Micron) which require expert analysis of, and opinions regarding, the third-party components.

Netlist's Motion should also be denied because Micron provided interrogatory responses identifying non-infringing alternatives. ECF No. 364-8 at 20-23. Dr. Stone's opinions, in contrast, provide rebuttal *expert* analysis. For example:

-

[REDACTED]

- [REDACTED]

- [REDACTED]

Netlist's Motion should also be denied because Dr. Stone's additional non-infringing alternative opinions are proper rebuttal to theories raised for the first time in Netlist's expert's opening report. Specifically, with respect to [REDACTED] [REDACTED] this opinion was offered to rebut Netlist's untimely new infringement theory that Maximum Power Saving Mode infringes the '912 patent claim. *See* ECF No. 369 at 2-5 (Micron's Motion to Strike).

Netlist's expert introduced the concept of non-infringing alternatives in his opening report as a way to allegedly value the patents (a burden Netlist must carry for damages), opining that no other memory module designs could achieve the performance benchmarks of LRDIMMs. Ex. B (Mangione-Smith Opening Rpt.) at Ex. C, ¶¶ 255-256, 259-260. Dr. Stone should be permitted— in rebuttal—to point out where Netlist's expert's analysis is flawed. As such, Dr. Stone's NIA opinions constitute proper rebuttal opinions and should not be struck.

### III.    Dr. Stone's "Phase Lock Loop" Opinions Are Admissible

As discussed in the prior section, Netlist's Motion should be denied because expert noninfringement contentions are not required by this District, and Netlist's infringement allegations focus on features in third-party supplied components (not designed by Micron) which require expert analysis and opinions. *See*, *supra*, § II.

Netlist's Motion should also be denied because Netlist's infringement contentions did not identify sufficient detail for Micron to provide additional noninfringement contentions without

███████████████

expert analysis.  Specifically, Netlist's infringement contentions broadly point to a JEDEC ████

████████████████████████████████████████

████████████████████████████████████████

██████████████████ These contentions did not identify any actual physical implementation of any circuitry within this Logic Diagram for Micron to review and understand Netlist's allegations as to what Netlist contends is coupled versus operatively coupled.

Netlist's Motion should be denied because Dr. Stone's opinions properly respond to a new infringement theory offered for the first time in Netlist's opening expert report.  Specifically, Netlist's expert pointed to the same Logic Diagram and argued that the claim terms "coupled" and "operatively coupled" should both be construed as "electrically connected."  Rueckheim Decl., EX-B (Mangione-Smith Opening Report), ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████ Netlist had never previously offered this claim construction position.  Dr. Stone properly responded to the new claim construction opinion by identifying (i) that a skilled artisan would not understand the terms as Netlist's expert urges, and (ii) Netlist's expert nonetheless failed to identify any operative coupling of a phase-locked loop in his citations to the logic diagrams he references. *See, e.g.,* ECF No. 364-3 at pp. 126-132.  Consequently, Dr. Stone's non-infringement opinions are in direct rebuttal to Netlist's opening expert report, including the untimely claim construction argument provided therein, and are proper.

## IV. Dr. Stone Applies the Correct Legal Standard in His Direct Infringement Analysis of the '912 Patent

Netlist argues that Dr. Stone applied the incorrect legal standard because the '912 patent's claim 16 is an apparatus claim.  ECF 364 at 5.  Not so.  Claim 16 recites an apparatus in active

████████████████

communication with a computer system.  The claim recites a "logic element *receiving a set of input signals from the computer system*." Rueckheim Decl., EX-E, Claim 16 (3:18-20) (emphases added).  The *computer system* sends specific input signals: "comprising at least one row/column address signal, bank address signals, and at least one chip-select signal" and "configured to control a second number of DDR memory devices."  *Id*. (3:20-24). The claim also requires a "circuit *generating* a set of output signals *in response* to the set of input signals" and "*further responds to a command signal* and the set of input signals *from the computer system by selecting* one or two ranks … and *transmitting* the command signal."  *Id*. (3:28-35) (emphases added). The claim further requires that the "command signal … *from the computer system* … *is transmitted* to only one DDR memory device at a time." *Id*. (3:42-43) (emphases added).  Dr. Stone properly opined that the accused modes ███████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████ ECF No. 364-3 at ¶ 69.

Netlist's citation to *Finjan, Inc. v. Secure Computing Corp*., 626 F.3d 1197 (Fed. Cir. 2010) is misplaced. ECF No. 364 at 5.  *Finjan* examined "non-method claims" that "describe capabilities without requiring any software component be "'active' or 'enabled.'"" *Id*. at 1204-1205.  For example, the claim language at issue recited "software components with specific purposes" such as a "a logical engine *for* preventing execution." *Id*. at 1205 (emphases added).  By contrast, here, the claims do not recite mere capability language—they recite affirmative actions by a circuit and logic in communicating with a computer system.  Netlist has not shown these actions take place, there is no infringement here, and Dr. Stone's opinions should not be struck.  These limitations do not simply recite what the components are "for" or are "configured to" perform those actions or any other capability language.  *C.f. Finjan* at 1205 ("This language [in Finjan claims] does not

require that the program code be "active," only that it be written "for causing" a server ('194 patent claim 65) or a computer ('780 patent claim 18) to perform certain steps.").

## V.    Dr. Stone's SSPPU Opinions are Admissible

Netlist's motion to strike Dr. Stone's opinions regarding SSPPU should be denied for several reasons. As an initial matter, in Micron's response to Netlist's interrogatory, Micron properly objected on the basis that the interrogatory was "prematurely seeking expert analysis and contentions" and responded that "Defendants' expert reports will identify Defendants' damages contentions." ECF No. 364-6 at 51-52. Netlist bears the burden on damages here, and Dr. Stone's rebuttal expert opinions are proper.

Further, Dr. Stone's opinions regarding SSPPU are proper rebuttal opinions in response to Netlist's expert's opinions regarding alleged ██████████████████████████████████



████████████████████████████ Rueckheim Decl. EX-B (Mangione-Smith Opening Rpt.) at Ex. I, ¶ 1. More specifically, Dr. Stone analyzed Netlist's opening report and identified that ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ ECF No. 364-3, ¶ 369.

Netlist also cannot claim any purported prejudice by Dr. Stone's opinions regarding SSPPU because, as Netlist concedes, the ████████████████████████████████████████

██████████ ECF No. 364 at 6. Dr. Stone was entitled to review the information *provided by Netlist* and respond. There is no prejudice here—Netlist clearly had notice of its own witness' testimony.

Furthermore, Dr. Stone's SSPPU analysis does not contradict the Court's claim construction, nor the language of the claims. Dr. Stone's opinions regarding SSPPU identify that Netlist's corporate representative conceded that many features of the claims were well-known and conventional components that existed before the priority date of the '912 and '417 patents. ECF



No. 364-3, ¶ 368.  Dr. Stone then further opines that, as a result of those concessions by Netlist's

corporate representative, and consistent with ███████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ ¶¶ 370-372. Thus,

Dr. Stone is not ignoring well-known elements of the claims, he explains that any value derived

from the alleged claimed inventions come from the allegedly novel RCD and data buffer elements

of the claims.  *Id.*, ¶ 370 ██████████████████████████████████████████

████████████████████████████████

## VI.    Dr. Stone's Comparability Analysis is Admissible

Dr. Stone's rebuttal opinions are proper because they respond to Netlist's expert's

discussion of comparability for several Micron licenses.

Netlist's argument that Micron was required to provide this analysis through earlier

interrogatory responses is flawed.  Netlist's interrogatory prematurely sought expert opinion about

license comparability before the Court's deadline for expert reports. *Genband US LLC v.*

*Metaswitch Networks Corp.,* No. 2:14-CV-33-JRG-RSP, 2016 WL 122969, at *1 (E.D. Tex. Jan.

9, 2016) ("In responding to interrogatories, a party is 'not required [] to disclose its experts'

opinions in advance of the deadline for serving expert reports.'").

Netlist's citation to *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, 2023 WL

8260866, at *3–4 (E.D. Tex. Nov. 28, 2023) is inapposite.  ECF No. 364 at 9.  In *Entropic*, the

expert discussed a "license that was not disclosed during discovery." *Entropic*, 2023 WL 8260866

at *3.  Here, in contrast, Micron produced the licenses at issue in its previous *Netlist v Micron* Case

No. 2:22-cv-203 litigation, and the parties agreed that the production could be used in the current

litigation. Rueckheim Decl., EX-C.  Using these licenses, Netlist's expert's opening report

████████████████████

addressed the comparability of nineteen licenses. Rueckheim Decl. EX-B (Mangione-Smith Opening Rpt.), Ex. E) at pp. 360-412.  In response, Dr. Stone offered a rebuttal opinion for a subset of the licenses where his opinion differed.  *C.f. ZiiLabs Inc., Ltd. v. Samsung Elecs. Co.,* No. 2:14-CV-203-JRG-RSP, 2015 WL 6690403, at *2 (E.D. Tex. Nov. 2, 2015) (finding plaintiff was "not prejudiced by an expert's statements in response to its expert's statements.").

### VII.    Dr. Stone Applies Proper Claim Construction

There is nothing improper about Dr. Stone's interpretation of the claim term "logic . . . further configurable to output data buffer control signals."   Netlist contends that Dr. Stone's analysis ████████████████████████████████████████████████████████████

████████████    ECF No. 364 at 9.  But it is completely reasonable and proper for Dr. Stone to interpret the plain and ordinary meaning of "data buffer control signals" as signals that control the output of the data buffer (the recited "circuitry") in the context of the remainder of claim 1, where it recites "the circuitry being configurable to transfer the burst of N-bit wide data signals . . . *in response to the data buffer control signals*."  ECF 101-2 ('417 patent), Claim 1 (emphasis added).  Dr. Stone's interpretation of "data buffer control signals" takes into account the rest of the claim that requires the data buffer ("circuitry") to transfer the burst of data signals, i.e., output the burst of data signals, in response to the data buffer control signals, i.e., the data buffer control signals control the output of the data buffer.  This is exactly what Dr. Stone opined about, as Netlist admits. ECF No. 364 at 9 ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████  Dr. Stone then simply compares his plain and ordinary interpretation of "data buffer control signals" to the accused products and properly concludes that ████████████████████████████████████████████████████ *Id.*

███████████████

Netlist further contends that "Dr. Stone's analysis ignores the Court's order" about not construing the term "based on 'the limited disclosure of 'control signals' in the specification.'" ECF No. 364 at 10. Dr. Stone's analysis, as shown above however, does no such thing. The Court's reference to not basing the construction "on the limited disclosure of 'control signals' in the specification" related to not "introduc[ing] the 'fork-in-the-road' approach into the claims," an approach not at issue in Dr. Stone's opinions. ECF No. 228 (Claim Construction Memorandum and Order) at 30. Moreover, completely disregarding the specification when interpreting claim terms is improper. Claims "must be construed in light of the appropriate context in which the claim term is used. The written description and other parts of the specification, for example, may shed contextual light on the plain and ordinary meaning." *Aventis Pharms. Inc. v. Amino Chemicals Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (internal citation omitted). As explained above, Dr. Stone's opinions properly interpret the plain and ordinary meaning of "data buffer control signals" in the context of the claims and specification.

## VIII.    Dr. Stone's Anticipation Analysis Should Not Be Stricken

Contrary to Netlist's contentions, Dr. Stone provides an analysis of how the prior art, based on ██████████████████████████████████ (ECF No. 364-12, ¶ 150), anticipate at least the independent claims of the '912 and '417 patents in Appendices A-1, A-2, C-1, and C-2. For example, in Appendix A-1, Dr. Stone provides cites to Perego to show how Perego discloses each and every limitation of claim 16. *See* Rueckheim Decl., EX-G, Appendix A-1 *generally*. To be clear, Dr. Stone's invalidity analysis also explains how the knowledge of a skilled artisan or another reference further renders a limitation obvious. *See, e.g., id.* at 17 ██████████

████████████████████████████████████████████

██████████████████     Dr. Stone provides similar analysis for Amidi in A-2, Ellsberry in C-1, and Halbert in C-2. *See* Rueckheim Decl., EX-H, Appendix A-2 *generally*, EX-I and EX-J,

Appendices C-1, C-2 for claim 1. Having shown how at least Perego and Amidi disclose each and every limitation of claim 1 of the '912 patent and how at least Ellsberry and Halbert disclose each and every limitation of claim 1 of the '417 patent, Netlist's request that "all of Dr. Stone's references to invalidity via anticipation should be stricken" (ECF No. 364 at 11) should be denied.

## IX.    Dr. Stone's Written Description Theories were Properly Disclosed During Fact Discovery

Netlist admits that "Micron's Invalidity Contentions included a section on written description that … listed all the claim elements of the asserted claims." ECF No. 364 at 11. Even if true, this fact is dispositive because identifying the claim elements that fail to satisfy written description is all that is required by Patent Rule 3-3(d). In the context of discussing Patent Rule 3-3(d), this Court held that "[o]ne purpose of Patent Rule 3.3 is for early disclosure and notice of the Defendant's invalidity-based defenses . . . a § 112(2) defense must at least identify the claim element that causes a claim to fail for lack of enablement." *DDR Holdings, LLC v. Hotels.com, L.P.*, 954 F. Supp. 2d 509, 531–32 (E.D. Tex. 2013), *aff'd in part, rev'd in part and remanded*, 773 F.3d 1245 (Fed. Cir. 2014). If Netlist had believed Micron's identification of claims terms was deficient, it should have moved to compel instead of lying behind the log and waiting to strike Dr. Stone's report submitted much later.

In this case, however, Micron did not merely list all the claim elements of the asserted claims, as Netlist asserts. Rather, Micron only disclosed the claim elements of the Asserted Claims that it contends "the application that became the '912[/'417] patent fails to sufficiently describe or enable [the following limitations] as required by 35 U.S.C. § 112, ¶ 1." ECF No. 364-14 at 190, 214-215. All of Dr. Stone's written description theories disclosed at ECF No. 364-12, ¶¶ 37-83 are part of Micron's list of claim elements that it contends fail to satisfy the written description requirement, in accordance with Patent Rule 3-3(d). For example, Dr. Stone opined on the failure

of the following terms in the '912 patent to satisfy the written description requirement: "'*logic element*' that receives '*at least one row/column address signal, bank address signals, and at least one chip-select signal*'" (*compare* ECF No. 364-12, ¶ 41 *with* ECF No. 364-14 at 190-191) and "'*circuit*' comprising '*a logic element*' and '*a register*' or the claimed use of '*row*' and/or '*bank address signals*'" (*compare* ECF No. 364-12, ¶ 42 *with* ECF No. 364-14 at 190-191).  Further, Dr. Stone opined on the failure of the following terms in the '417 patent to satisfy the written description requirement: "'logic...configurable to output **data buffer control signals** in response to the read or write memory command' and 'circuitry coupled between the data signal lines in the N-bit wide memory bus and corresponding data pins of memory devices in each of the plurality of N-bit wide ranks, the **circuitry** being configurable to **transfer the burst of N-bit wide data signals** between the N-bit wide memory bus and the memory devices in the one of the plurality of N-bit wide ranks **in response to the data buffer control signals**'" (*compare* ECF No. 364-12, ¶¶ 66, 70 *with* ECF No. 364-14 at 215-216) and "wherein data transfers through the circuitry are registered for an amount of time delay such that the overall CAS latency of the memory module is greater than an actual operational CAS latency of each of the memory devices" (*compare* ECF No. 364-12, ¶ 77, *with* ECF No. 364-14 at 216).  Thus, Micron's contentions sufficiently put Netlist on notice as to the grounds of invalidity based on written description.

Netlist's cited cases are inapposite.  In *Firtiva*, the Court found the expert's rebuttal written description opinions not to be disclosed in defendant's invalidity contentions at all, as required by P. R. 3-3(d).  Moreover, *Personalized Media* did not involve written description at all and simply examined the use of boilerplate language with respect to the prior art references.  *Personalized Media Communs., LLC v. Apple, Inc.*, No. 2:15-CV-01366-JRG, 2021 WL 310789, at *2 (E.D.



Tex. Jan. 29, 2021). Netlist was "sufficiently notified" of the claim elements Micron contends cause a claim to fail for lack of written description.

## X.    Dr. Stone's Derivation Opinions are Proper

Netlist is incorrect that Dr. Stone has not made a showing for derivation that encompasses all limitations of the claimed invention. Dr. Stone opined that ███████████████████ ████████████████████████████████████████████ ████████████████████████████████████ ECF No. 364-12, ¶ 161. Dr. Stone further opined that ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████ ECF No. 364-12, ¶ 160. In other words, because Netlist has solely relied on JEDEC standards to show infringement, it is Dr. Stone's opinion that the prior art JEDEC standards Mr. Solomon was aware of disclosed the same limitations of the claims of the Asserted Patents. Thus, Dr. Stone's derivation opinions are not facially deficient.

## XI.    Dr. Stone's Prior Invention Opinions are Proper

For at least the reasons discussed in the section immediately above, Netlist is incorrect in arguing that Dr. Stone's prior invention opinions are deficient. *See* ECF No. 364 at 13 ("Dr. Stone's 102(g) analysis is facially deficient for the same reason as his 102(f) analysis because he 'has not produced evidence sufficient to show that [the JEDEC Standards] disclosed every element of the claimed invention.'"). For prior invention, Dr. Stone opined that ████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████ ECF No. 364-12, ¶ 165; *see also id.*, 168. Dr. Stone's opinion is again that because Netlist has solely relied on JEDEC

standards to show infringement, the prior art JEDEC standards Mr. Solomon was aware of disclosed the same limitations of the claims of the Asserted Patents. Thus, Dr. Stone's prior invention opinions are not facially deficient.

## XII. Pending IPRs are Part of the Prosecution Histories of the Asserted Patents

Dr. Stone's reference to IPR arguments are proper. Dr. Stone explained that he reviewed

███████████████████████████████████████████████████████ ECF No. 364-12, ¶ 18. It is indisputable that pending IPRs are part of the prosecution histories for the '912 and '417 patent. *Metacluster LT, UAB v. Bright Data Ltd., No. 2:22-CV-011-JRG-RSP, 2022 WL 18859434,* at *1 (E.D. Tex. Dec. 20, 2022), report and recommendation adopted, No. 2:22-CV-0011-JRG-RSP, 2023 WL 416417 (E.D. Tex. Jan. 25, 2023) ("The prosecution history also includes proceedings before the Patent Trial and Appeal Board (the 'PTAB'), such as inter partes review."); *Aylus Networks, Inc. v. Apple, Inc.*, 856 F.3d 1353, 1362 n.3 (Fed. Cir. 2017). Furthermore, Dr. Stone's references to IPR arguments do not violate Court MIL No. 13 because they simply acknowledge certain statements in the prosecution histories of the asserted and related patents that support his opinions. *See, e.g.*, ECF No. 364-12, ¶ 25 ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

## XIII. Dr. Stone's Reference to the *Samsung* Litigation is in Rebuttal to Dr. Mangione-Smith's Opinions Mentioning the Samsung Litigation First

Dr. Stone's opinion in Stone Rebuttal ¶ 365 is a proper direct rebuttal to Netlist's expert who opined that ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████

██████████████████ Rueckheim Decl., EX-B (Mangione-Smith Opening Rpt.), Ex. A, ¶ 121.

Dr. Stone's opinion is also a proper rebuttal to Netlist's expert's assertion that ███████████

████████████████████████████████████████████████ *Id.*, ¶ 121, n.63.

There is nothing improper with Dr. Stone responding to Netlist's expert opinions.

## XIV.    Dr. Stone's Opinions About JEDEC Standards Qualifying as Prior Art Are Proper

Dr. Stone properly relies on four finalized JEDEC standards in his opening report in

addressing invalidity of the '912 and '417 patents: █████████████████████████████████

*See* ECF No. 364-12, ¶ 106. Contrary to Netlist's contention, there is sufficient evidence that such

standards are made available to the public. Both parties' experts agree that the final JEDEC

standards were made available to the public. ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████ █████████████

████████████████████████████████████████████████

████████████████████████████████████████ Micron's expert also

explained how the JEDEC website had a search capability as early as 2003. ECF No. 364-16 at ¶

68. This testimonial evidence and Netlist's expert admissions show that there is a genuine dispute

of material fact still present regarding the public accessibility of the JEDEC standards. Thus, Dr.

Stone's opinions regarding the JEDEC standards qualifying as prior art should not be stricken.

## XV.    CONCLUSION

For the foregoing reasons, Netlist's motion to strike should be denied in its entirety.

Dated: January 30, 2024

Respectfully submitted,

*/s/ Michael R. Rueckheim*
Thomas M. Melsheimer
State Bar No. 13922550
TMelsheimer@winston.com
Natalie Arbaugh
State Bar No. 24033378
NArbaugh@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

David P Enzminger (*pro hac vice*)
denzminger@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael R. Rueckheim
State Bar No. 24081129
MRueckheim@winston.com
Ryuk Park (*pro hac vice*)
RPark@winston.com
Matthew R. McCullough
MRMcCullough@winston.com
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

Matthew Hopkins (*pro hac vice*)
State Bar No. 1500598
mhopkins@winston.com
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

William M. Logan
State Bar No. 24106214
wlogan@winston.com
Juan C. Yaquian (*pro hac vice*)
State Bar No. 24110559
JYaquian@winston.com

WINSTON & STRAWN LLP
800 Capital Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Wesley Hill
State Bar No. 24032294
wh@wsfirm.com
Andrea Fair
State Bar No. 24078488
andrea@wsfirm.com
Charles Everingham IV
State Bar No. 00787447
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DEFENDANTS
MICRON TECHNOLOGY, INC., MICRON
SEMICONDUCTOR PRODUCTS, INC.,
MICRON TECHNOLOGY TEXAS, LLC**

17

## CERTIFICATE OF SERVICE

I certify that, on January 30, 2024, a copy of the foregoing was served on all counsel of record via the Court's ECF system and email.

/s/ Michael R. Rueckheim
Michael R. Rueckheim

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

/s/ Michael R. Rueckheim
Michael R. Rueckheim