# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 2:22-cv-293-JRG ) |
| SAMSUNG ELECTRONICS CO, LTD; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SEMICONDUCTOR INC., | ) JURY TRIAL DEMANDED ) (Lead Case) ) ) ) ) |
| Defendants. | ) |
| NETLIST, INC., | ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 2:22-cv-294-JRG ) |
| MICRON TECHNOLOGY, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; MICRON TECHNOLOGY TEXAS LLC, | ) JURY TRIAL DEMANDED ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF NETLIST, INC.'S OBJECTIONS TO REPORT AND RECOMMENDATION OF THE SPECIAL MASTER [DKT. 377]**

**TABLE OF CONTENTS**

**Page**

I. The JDLA Motions ...................................................................................................................1

    A. Samsung's Motion for a Protective Order (Dkt. 193) ..................................................1

    B. Netlist's Motion to Preclude Samsung from Introducing Witness Testimony (Dkt. 225) ............................................................................................5

    C. Netlist's Motion to Compel Deposition of Mr. Choi (Dkt. 224) ................................6

II. Samsung's Motion to Compel the Deposition of Dr. Hyun Lee (Dkt. 202) ...........................7

    A. Dr. Lee's Prior Testimony on the '506 Patent and Samsung's Expert's Reliance on It Shows There is No Need for an Additional Deposition ......................8

    B. Dr. Lee's Prior Testimony on JEDEC and Samsung's Expert's Reliance on It Shows There is No Need for an Additional Deposition ......................9

III. Samsung's Motion to Compel Information Regarding Netlist's Negotiations with SK Hynix (Dkt. 139) .........................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*,
  2023 WL 4936210 (E.D. Tex. Aug. 2, 2023) ..................................................................... 6

*Denman Springs, LLC v. L.G. Burke, Inc.*,
  2021 WL 2794697 (E.D. Tex. Apr. 20, 2021) ................................................................... 6

*Fam. One v. Isaacks*,
  No. 9:22-CV-00028-MJT, 2023 WL 4503537 (E.D. Tex. Apr. 25, 2023) ........................ 7

*Guidry v. Cont'l Oil Co.*,
  640 F.2d 523 (5th Cir. 1981) ............................................................................................ 6

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*,
  259 F. Supp. 3d 530 (E.D. Tex. 2017) ............................................................................. 5

*Kamatani v. Benq Corp.*,
  2005 WL 2455825 (E.D. Tex. Oct. 4, 2005) .................................................................... 6

*Maxell Ltd. v. Apple Inc.*,
  2019 WL 7905454 (E.D. Tex. Nov. 13, 2019) ............................................................... 11

*Mobile Equity Corp. v. Walmart Inc.*,
  2022 WL 36170 (E.D. Tex. Jan. 4, 2022) ........................................................................ 6

*Netlist v. Samsung*,
  No. 21-cv-463 .................................................................................................................. 4

*Software Tree, LLC v. Red Hat, Inc.*,
  No. 09-cv-97, 2010 WL 2788202 (E.D. Tex. June 24, 2010) ........................................ 11

**Rules**

Fed. R. Civ. P. 30(b)(1) ............................................................................................................. 1

Fed. R. Civ. P. 30(b)(6) ................................................................................................. 1, 2, 3, 5

Fed. R. Civ. P. 37 ...................................................................................................................... 6

Fed. R. Civ. P. 37(b)(2) ............................................................................................................. 5

I. **The JDLA Motions**

The report and recommendation: (1) granted Samsung's motion for a protective order against discovery related to allegations of breach/termination of the Parties' Joint Development and License Agreement (Dkt. 193), (2) denied Netlist's motion for a protective order precluding Samsung from introducing witness testimony in support of its license defense (Dkt. 225), and (3) denied Netlist's motion to compel deposition of Joo Sun Choi (Dkt. 224). Dkt. 377. Netlist respectfully submits the following objections and incorporates its previous briefings on these motions. Dkts. 209, 224, 225.

A. **Samsung's Motion for a Protective Order (Dkt. 193)**

Netlist agrees with the Special Master that issues such as "whether the accused products are within the *scope of the JDLA's license grant* . . . remains before this Court." Dkt. 377 (R&R) at 5. Given the Special Master's instruction (as well as the parties' concession that the scope of the license grant is an issue before this court), Samsung's motion to block all discovery relating to the JDLA should be denied. To properly determine the scope of the license agreement, discovery is necessary at least as to the negotiation history of the JDLA, the purpose of the agreement, Samsung's interpretation of the license scope, as well as the parties' course of dealing relating to the execution of the joint development project.

Samsung's Motion for Protective Order (and its refusal to produce the witnesses, ESI, and other discovery requests) unilaterally blocked Netlist's entire effort to seek all types of discovery that touched on Samsung's license defense and the JDLA, far exceeding issues unique to Samsung's alleged breach and termination. As Samsung's motion made clear, it blocked Netlist from pursuing:

(1) "All ESI requests related to Mr. Indong Kim and Hojung Kim," whereas Samsung identified Mr. Kim as the negotiator of the JDLA and Mr. Kim as the main person in charge of the parties' joint development project.

(2) Deposition of certain individual witness noticed under Rule 30(b)(1); and

(3) Rule 30(b)(6) deposition topics on:



Dkt. 193 at 5.

Although Samsung's motion indicated that it only seeks a protective order with respect to the above-mentioned topics "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," Dkt. 193 at 5, Samsung never offered a single Rule 30(b)(6) corporate representative for any of these Topics other than Topic 115 (subject to the court's order) throughout the entire discovery.[1]

To be clear, it is Samsung that injected the license defense and asked this Court to find that the JDLA was still valid as of July 15, 2020 and throughout this entire Action. *See* Ex. 1 (2023-11-20 Samsung Supp. Rog Responses) at 104 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; *see also* Dkt. 337 (motion for summary judgment finding all accused products are subject to the patent license in the parties' 2015 JDLA"); Dkt. 341 (Samsung moved for summary judgment for no willfulness based on its purported good faith belief of a license defense). Samsung's refusal to produce any witness for deposition on top of its motion for summary judgment causes significant prejudice to Netlist.

Samsung argued in its motion that "Netlist has had a full and fair opportunity to take discovery

---

[1] Although Samsung initially designated Mr. Hyun Ki Ji as a witness on Topic 115, it was conditional and subject to this Court's ruling. As of today, Samsung has not made it clear whether it would offer Mr. Ji for deposition or rely on his testimony at trial.

from Samsung" from former proceedings before the C.D. Cal. and *Samsung I* action. Dkt. 183 at 6. Samsung's counsel also made the same representation before the Special Master during the hearing. *See, e.g.*, Dkt. 380-2 (2024-01-05 Hearing Tr. before the Special Master) at 54:6 ("We produced our license witnesses."). Not so.

**First**, the scope of the JDLA's license grant was not at issue in C.D. Cal. That case concerns whether Samsung breached the JDLA's supply provision and Netlist properly terminated the JDLA as a result. The scope of the license is squarely before this Court and Netlist is entitled to take discovery on it.

**Second,** the "license witness" Samsung's counsel referred to during the hearing was Mr. ▇▇▇ who was only designated to testify in this Action as to ▇▇▇



. Ex. 2 (Netlist's Rule 30(b)(6) depo notice set 1); Dkt. 437-26 (2023-11-05 Tishman Email) ▇▇▇ In fact, during a previous deposition, ▇▇▇ Ex. 3 (2022-12-21 ▇▇▇.) at 30:17-29, 21-22 ▇▇▇

**Third**, even if Netlist and Samsung agreed to cross-use some deposition transcripts from the C.D. Cal. Action, Samsung refused to allow that until the tail end of fact discovery despite Netlist's repeated requests. *See* Ex. 4 (2023-11-02 Email between Zhao and Tishman) ("Further, Netlist has asked for production of C.D. Cal. transcripts at least on: October 31, October 30, October 29, October

26, and October 25. The parties met and conferred on this last week as well.").

Further, Samsung substantively changed its position with respect to the license scope after the C.D. Cal. court entered judgment and after the *Samsung I* matter (*Netlist v. Samsung*, No. 21-cv-463) went to trial. Specifically, at the pretrial conference of the *Samsung I* action, Samsung stated:

> MR. CORDELL: You are correct. . . . My point is that as the briefing was developed, no one seemed to -- to be focused on whether or not these products were the jointly developed products or not. That issue seemed to kind of go by the boards, as it should, **because the reality is that JDLA was in no way limited to jointly developed products [or its subsidiaries]**. *Samsung I*, Dkt. 426 (PTC Tr.) at 28:8-29:14, 26:2-8 (emphasis added).

Later, before the Ninth Circuit, Samsung stated:

> [T]he recitals are very clear -- and parties put recitals in agreements to make sure language isn't tortured down the road by lawyers and courts. . . Here's what our purpose is, interpret this agreement consistent with our purpose. And when you look at the recitals, what does it say about the licenses? Whereas in connection with their collaboration hereunder, the parties wish to grant to each other a cross-license under each party's patents. **The licenses are being given in connection with the collaboration. That's the joint development project**.

Dkt. 237-2 at 15:10-21.

In light of the complete change in Samsung's position, Netlist should be allowed to conduct discovery regarding Samsung's interpretations of the JDLA and its basis for that interpretation, which is directly relevant to Samsung's license defense and its good faith of license defense as to Netlist's willful infringement claim.

**Fourth**, this Court has decided to take up Netlist's motion for summary judgment as well as Samsung's cross-motion on the license defense. Dkt. 310 (denying Samsung's motion to strike Netlist's motion for summary judgment, rejecting Samsung's argument that "Netlist improperly invited the Court to take up issues within the clear jurisdiction of the [Central District of California]" and denying Samsung's motion to extend the deadline to respond to Netlist's summary judgment motion). In light of this Court's decision, allowing discovery to proceed on the effectiveness of the JDLA is appropriate and can reach the most efficient resolution of the parties' disputes on Samsung's

license defense.

Thus, Samsung's motion for a protective order should be denied at least as to Netlist's request for ESI and Rule 30(b)(6) Topic Nos. 101, 115, 116, 117, and 118.

The Special Master granted Samsung's motion for a protective order against discovery related to allegations of breach/termination of the Parties' JDLA. The C.D. Cal. court has now scheduled a trial on this issue for March 26, 2024. Nonetheless, solely to preserve its rights, Netlist objects to the Special Master's recommendation with respect to breach/termination of the JDLA. This Court remains the only court that can address the entire dispute between the parties, i.e., (1) whether Samsung breached the patents in suit, (2) whether the JDLA's license grant covers the accused products, and (3) whether Netlist properly terminated the JDLA based on Samsung's material breach. Dkt. 209 at 5-6. Thus, this Court should adjudicate each of these issues. This would not only be more efficient, but would also prevent Samsung from taking inconsistent positions in this case and in C.D. Cal. as detailed above. The Court should thus permit Netlist to take discovery on the full scope of Samsung's license defense, including questions relating to Samsung's breach and Netlist's subsequent termination. In the event this Court decides that discovery on issues unique to Samsung's breach and termination as to the JDLA should not proceed, Netlist respectfully asks the court to enter an order allowing Netlist to conduct discovery subject to such limited exception.

### B. Netlist's Motion to Preclude Samsung from Introducing Witness Testimony (Dkt. 225)

Relatedly, because Samsung unilaterally halted discovery without waiting for this Court's order on its motion, Samsung should be precluded from raising its license defense. And at a minimum, Samsung should not be allowed to rely on any documents or witnesses' testimony produced after fact discovery closed on November 20, 2023. Dkt. 225; Fed. R. Civ. P. 37(b)(2); *see also Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*, 259 F. Supp. 3d 530, 552 (E.D. Tex. 2017) ("The sanctions

available under Rule 37 are flexible, and the court has the authority to apply them in many varied forms, depending on the facts of each case. 'Rule 37 only requires the sanction the Court imposes hold the scales of justice even") (quoting *Guidry v. Cont'l Oil Co.*, 640 F.2d 523, 533 (5th Cir. 1981)); *Kamatani v. Benq Corp.*, 2005 WL 2455825, at *15 (E.D. Tex. Oct. 4, 2005) (striking defense upon finding defendant's conduct "demonstrate[d] a conscious intent to evade the discovery orders of the Court"); *Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*, 2023 WL 4936210, at *4 (E.D. Tex. Aug. 2, 2023) ("**GRANTS** the motion such that the sales figures in the IDC reports relied upon by Plaintiff's expert shall be deemed established and may not be attacked by Defendants"); *Denman Springs, LLC v. L.G. Burke, Inc.*, 2021 WL 2794697, at *2 (E.D. Tex. Apr. 20, 2021) (because the defendants failed to comply with the Court's order for document production, holding "it will be taken as established" that defendants "failed to pay the vendors mentioned in Request Numbers 4, 7, 10, 13, 16, 19, and 22").

### C. Netlist's Motion to Compel Deposition of Mr. Choi (Dkt. 224)

The Special Master also recommended denial of Samsung's motion to compel the deposition of Joo Sun Choi. First, the Special Master concluded that "Mr. Choi's deposition would not be relevant to the issues in this case" given the Special Master's recommendation to grant Samsung's motion to bar discovery on Samsung's material breach of the JDLA's supply provision. Dkt. 377 (R&R) at 5. To preserve its rights, Netlist objects to this recommendation for the same reasons as explained in Section I(A), *supra*.

Second, the Special Master's report further states that "even if Mr. Choi's deposition were relevant to issues of this case, his high-level position at Samsung Display is another sufficient basis for denial pursuant to the apex doctrine." Dkt. 377 (R&R) at 5. Netlist objects to this finding. The mere fact that Samsung has given Mr. Choi the title "President" does not confer "apex" status. *See Mobile Equity Corp. v. Walmart Inc.*, 2022 WL 36170, at *1 (E.D. Tex. Jan. 4, 2022) ("[b]eing one of 110 senior vice presidents" of a multinational corporation does not necessarily make a witness protected by the

apex doctrine). At best, Mr. Choi's current position is relatively high up for his particular division. Samsung does not assert that he is the CEO or a high-level executive of any of the named Defendants in this action. Rather, after his involvement in the events of this case, Mr. Choi was promoted to head a subsidiary within the Samsung family of divisions. Samsung, however, is a multinational conglomerate with 233 subsidiaries as of June 30, 2023, not to mention numerous divisions. *See* Dkt. 224-14 (Samsung 2023 Half-year Business Report) at 55. If the "president" of a division were considered to be an apex witness solely due to their title, Samsung would likely have 250 or more apex witnesses.

Further, even if Mr. Choi qualifies for apex status, he has unique knowledge that is relevant to this litigation. *Fam. One v. Isaacks*, No. 9:22-CV-00028-MJT, 2023 WL 4503537, at *6 (E.D. Tex. Apr. 25, 2023) (Apex deposition warranted where party cannot obtain the "desired information through less-intrusive means."). ▇

▇

▇. Dkt. 224 at 1-3. ▇

▇

▇ Dkt. 224-04 at SEC006047.

▇

▇ Dkt. 224 at 1-2. This demonstrates that he has unique knowledge, and Netlist is entitled to his deposition. *Fam. One*, 2023 WL 4503537, at *8 (Apex witness possessed unique knowledge where "lower-ranked employees' depositions . . . pointed fingers at LLB CEO Stephen Keener as either responsible for the failure to implement child sexual abuse training, or as the only individual with authority to make this decision.").

**II.      Samsung's Motion to Compel the Deposition of Dr. Hyun Lee (Dkt. 202)**

The report and recommendation finds that a five-hour deposition of Dr. Lee is warranted

- 7 -

because he is "the only surviving named inventor of the '608 Patent, which alone is sufficient to compel his deposition" and he "has knowledge of JEDEC standards and their relation to the asserted patents." Dkt. 377 at 11. Netlist respectfully submits the following objections and incorporates Netlist's opposition to Samsung's motion. Dkt. 238.

Dr. Lee is an inventor on one of the patents in suit, U.S. Patent No. 10,268,608 ("'608 patent"). In prior litigation between Netlist and Samsung, Dr. Lee was deposed for 12 hours on U.S. Patent No. 10,860,506 ("'506 patent"), which is a continuation of the '608 patent. Dkt. 62-4. The '506 and '608 patents claim priority to the same provisional application, and share a common specification. Dr. Lee is not a named inventor on the other two patents-in-suit. *See* Dkt. 12-01 at 2; Dkt. 12-02 at 2.

A. **Dr. Lee's Prior Testimony on the '506 Patent and Samsung's Expert's Reliance on It Shows There is No Need for an Additional Deposition**

Netlist respectfully disagrees that Samsung has demonstrated a need for additional information regarding the patents in the '506/'608 family. In his prior deposition, Dr. Lee was asked about the conception/reduction to practice of the invention of the '608 patent, which claims priority to the same provisional as the '506 patent, and stems from the same October 12, 2011 invention disclosure. For example, Dr. Lee was examined ███████████████████████

███████████████████. *See* Ex. 5 at 158:7-17 ████████████████████████

████████████████████████████████████████████ 172:21-82:13

████████████████████████████████ While there are some differences in the claims of the '506 and '608 patents, Samsung's expert Mr. McAlexander takes the position that the differences between these claims are "de minimis." Dkt. 359-6 ("[O]ther patents in the same family or related to the '608 Patent have claims that ***mirror the claims of the '608 Patent*** . . . . In fact, U.S. Patent No[.] 10,860,***506*** and 9,824,035 have claims that are ***so close to the claims of the '608 Patent*** that the Examiner rejected the '608 Patent claims . . . .").

Moreover, Dr. Lee testified that he ███████████████████████████

███████████████████████

████████████████████████████████████
████████████████████████████████████
███████████████████████
████████████████████████████████████

Ex. 5, 126:5-18.

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

*Id.*, 34:11-35:9.

### B. Dr. Lee's Prior Testimony on JEDEC and Samsung's Expert's Reliance on It Shows There is No Need for an Additional Deposition

Dr. Lee was questioned about JEDEC-related issues at his prior deposition as well, including Netlist's motivation for attending JEDEC, Dr. Lee's role as a JEDEC representative, and how Netlist's JEDEC participation impacted patent prosecution. *See, e.g.*, Ex. 5 at 87:14-88:24 ███████

████████████████████████████████████

███████; Ex. 5 at 91:20-93:1 ██████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████ *See id.*, 121:22-122:24 (examination on ████████), *id.* 126:5-127:2 (████████████████), 130:10-22 █████████████████████).

To the extent Samsung contends that Dr. Lee may have knowledge of JEDEC documents relevant to the two other patents at issue in this case, ███████████████████████

██████████████████████████████. Ex. 5 at 127:4-128:6 ██████

████████████████████████████████████

- 9 -

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Moreover, Dr. Lee is not a named inventor on the two other patents at issue in this case. Dkt. 12-01 at 2 ('912 patent); Dkt. 12-02 at 2 ('417 patent).

### III. Samsung's Motion to Compel Information Regarding Netlist's Negotiations with SK Hynix (Dkt. 139)

The Report and Recommendation finds that "Netlist must produce settlement and license negotiation documents showing any valuation or apportionment of value by Netlist or SK hynix to the patents asserted against Samsung in this case." Dkt. 377 at 9. Netlist respectfully submits the following objections and incorporates Netlist's opposition to Samsung's motion. Dkt. 156.

***First***, Judge Payne has considered and squarely rejected the same arguments advanced in a related matter, *Micron I*, No. 22-cv-203, including Samsung's new argument that it would need the "negotiation documents" for its damages' expert apportionment analysis.

As Judge Payne held:

> [T]he concern that has always deterred the Court from ordering the production of the negotiations themselves is that doing that would chill settlement negotiations in current cases if there was a concern that those negotiations would become open for discovery in future cases, and that's what I guess weighs against the probative value. And I just don't know what the probative value of those negotiations would be when you have a consummated license. . . I will deny the request for the settlement negotiations as long as the consummated settlement license agreement has been produced.

Dkt. 156-3 (Hearing Tr.) at 46:22-47:5; 50:1-4.

At the hearing, Samsung's counsel argued that "importantly, Judge Payne did not consider the contradictory positions Netlist [] has taken about the relevancy of negotiation." Dkt. 380-2 (2024-01-05 Hearing Tr.) at 66:20-24. Not so. After Judge Payne denied Micron's motion to compel the same negotiation materials, Micron filed a motion for reconsideration, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Micron I*, Dkt. 168, ("▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

███████████████████████████████████████████████

███████████████████████████████████). On October 23, 2023, Judge Payne entered an order, again, rejecting Micron's same argument, *Micron I*, Dkt. 255:

> **N. Dkt. No. 168**
>
> Defendants' Motion For Reconsideration of the Court's August 29, 2023 Order Granting-In-Part and Denying-In-Part Defendants' Motion To Compel Production Of Certain Materials From Netlist's SK Hynix Litigation And Negotiation Documents (Dkt. No. 168) is **DENIED**.

**Second**, the Report and Recommendation is also inconsistent with this District's ordinary practices of denying motion to compel licensing negotiations. *See, e.g. Maxell Ltd. v. Apple Inc.*, 2019 WL 7905454, at *3 (E.D. Tex. Nov. 13, 2019) (denying the patentee's motion to compel the accused infringer to, regarding its license agreements, "identify how the parties arrived at such royalty rate and/or consideration"); *Software Tree, LLC v. Red Hat, Inc.*, No. 09-cv-97, 2010 WL 2788202, at *1 (E.D. Tex. June 24, 2010) ("[T]he Eastern District of Texas has historically followed a bright-line rule protecting settlement negotiations from discovery").

**Third**, the Special Master ordered production of negotiation materials specifically about "valuation or apportionment of value by Netlist or SK hynix **to the patents asserted** against Samsung in this case." Dkt. 377 at 9 (emphasis added). However, none of the patents asserted here (the '912, '417, and '608 patents) were at issue in Netlist's previous litigations or other disputes with SK hynix. In fact, the '417 patent did not issue until August 17, 2021, after the SK hynix license agreement was executed in April 2021. Samsung cannot show the relevance of SK hynix negotiation materials.

**Fourth**, Samsung's prejudice argument is not well taken. The error of Samsung expert's damages analysis falls on ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████████ Discovery regarding additional settlement negotiation materials would not resolve the error or otherwise provide more information beyond the license itself.

Thus, this Court should not adopt the Special's Master's report and recommendations and should deny Samsung's motion to compel, Dkt. 139.

Dated: February 8, 2024                    Respectfully submitted,

/s/ *Jason G. Sheasby*
Jason G. Sheasby

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, Ph.D. (*pro hac vice*)
hzhong@irell.com
Andrew J. Strabone (*pro hac vice*)
astrabone@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

- 13 -

_____

***Attorneys for Plaintiff Netlist, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 8, 2024, a copy of the foregoing was served to all counsel of record for the relevant defendants via Email as agreed by the parties.

*/s/ Jason Sheasby*
Jason Sheasby

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Jason Sheasby*
Jason Sheasby