UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>      Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.,<br><br>      Defendants. | Civil No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**REPLY IN SUPPORT OF SAMSUNG'S *DAUBERT* MOTION AND MOTION TO STRIKE EXPERT TESTIMONY OF DR. ANDREAS GROEHN (DKT. 348)**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................................ii

TABLE OF EXHIBITS TO SAMSUNG'S MOTION....................................................................iii

TABLE OF EXHIBITS TO SAMSUNG'S REPLY......................................................................iii

TABLE OF ABBREVIATIONS..........................................................................................................iii

I.     Dr. Groehn's Failure To Account for Market Realties Renders His Regression Analysis Unreliable ...........................................................................................................1

     A.     The Foundations of Dr. Groehn's Model Are Inconsistent with the Supply, Demand, and Pricing Dynamics of the DRAM Market.....................................1

     B.     Dr. Groehn's Regression Analysis Is Unreliable Because It Disregards Customer Level Differences ................................................................................3

     C.     The Court's Denial of Samsung's *Daubert* Motion in *EDTX1* Does Not Control .................................................................................................................3

     D.     Cross-Examination Does Not Remedy the Problems with Dr. Groehn's Analysis.....................................................................................................................4

II.     The Court Should Exclude Dr. Groehn's Regression Because It Has No Utility Outside of Dr. Kennedy's Flawed Analysis ...........................................................................4

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Coward v. ADT Sec. Sys., Inc.*,
   140 F.3d 271 (D.C. Cir. 1998) ................................................................................................3

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ........................................................................................................ 1, 3, 4

*Stragent, LLC v. Intel Corp.*,
   No. 6:11-CV-421, 2014 WL 1389304 (E.D. Tex. Mar. 6, 2014) ............................................4

**Other Authorities**

Fed. R. Evid. 403 ............................................................................................................................5

Fed. R. Evid. 702 .......................................................................................................................1, 3

## TABLE OF EXHIBITS TO SAMSUNG'S MOTION

| # | Description |
|---|---|
| 1 | Corrected Expert Report of Andreas Groehn (Nov. 21, 2023) |
| 2 | Deposition Transcript of Andreas Groehn (Jan. 8, 2024) (excerpts) |
| 3 | Expert Report of Ray Perryman (Dec. 21, 2023) (excerpts) |
| 4 | Expert Report of David Kennedy (Nov. 21, 2023) (excerpts) |

## TABLE OF EXHIBITS TO SAMSUNG'S REPLY

| # | Description |
|---|---|
| 5 | Expert Report of David Kennedy (Nov. 21, 2023) (additional excerpts) |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| DRAM | Dynamic random-access memory |
| Samsung | Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor Inc. |

Netlist's response fails to resolve both of Samsung's primary criticisms, each of which is a reason for the Court to exclude Dr. Groehn's opinions.  **First**, as to Dr. Groehn's failure to account for market realities in his hedonic regression analysis, Netlist argues this issue goes to the weight of Dr. Groehn's analysis and not the admissibility of his opinions.  However, Dr. Groehn did not reliably apply hedonic regression to the facts of this case, rendering his opinions unreliable and inadmissible under *Daubert*.  **Second**, Netlist concedes that Dr. Groehn's regression analysis has no evidentiary value other than as an input into Dr. Kennedy's flawed damages opinions.  Samsung would be prejudiced if Dr. Groehn were permitted to testify about the alleged relationship between speed and price in the accused products, absent other expert testimony on how that incremental change in price relates to a reasonable royalty determination.  Dr. Groehn's opinions should be excluded.

## I. Dr. Groehn's Failure To Account for Market Realties Renders His Regression Analysis Unreliable

The Court should exclude Dr. Groehn's opinions because his failure to account for the realities of the DRAM market, including how prices are set, renders his opinion unreliable.  Netlist spends much of its brief explaining why hedonic regression is a reliable methodology for evaluating the relationship between product features and price, generally.  Dkt. 438 at 1-2.  However, even setting aside whether hedonic regression **can** be reliable in a patent damages analysis (and Samsung does not concede that it can), Dr. Groehn's opinions do not reflect "a reliable application of the principles and methods" of hedonic regression **to the facts of the case** because they ignore how prices are set in the DRAM market, rendering his opinions inadmissible under Fed. R. Evid. 702, as well as *Daubert*.

### A. The Foundations of Dr. Groehn's Model Are Inconsistent with the Supply, Demand, and Pricing Dynamics of the DRAM Market

Netlist's opposition ignores that the basic assumptions of Dr. Groehn's hedonic regression are inconsistent with basic DRAM market dynamics.  For example, despite assuming that the "coefficient of Time is negative, indicating that prices decline over time," Ex. 1, ¶ 50.a, Dr. Groehn

1

ignores the supply issues that impact price throughout time, as acknowledged by Netlist's damages expert, Mr. Kennedy.  For example, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  Ex. 4, ¶¶ 74-90; Ex. 5, ¶ 350.  In fact, ████████████████████████████████████████████████████████████████████," *id.*, ¶ 164, further showing that variable supply and demand affect price, which is inconsistent with prices declining over time.

Moreover, differences in supply and demand issues in different product segments in the DRAM market are irreconcilable with the fundamental assumption in Dr. Groehn's regression analysis of a single, unified market.  Dr. Groehn's hedonic regression assumes a single hedonic price function (i.e., a single supply and demand curve for all DRAM products) across distinct product segments.  Ex. 1, ¶ 54.  However, the accused products span multiple market segments and use cases.  Ex. 4, ¶¶ 86-89, n.125.  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  Ex. 2 at 137:25-138:6.  His assumption that prices will continue to decrease over time is fundamentally irreconcilable with these realities of the DRAM market.  *See* Dkt. 348 at 3-4.

The Court should reject Netlist's argument that Dr. Groehn's model cannot be unreliable if Samsung's experts were able to make corrections to it.  *See* Dkt. 438 at 7-8 ("Samsung's experts' attempts at remediation would not make sense if Dr. Groehn's model were *incapable* of estimating the relationship between speed and price[.]" (emphasis original)).  Samsung's experts address—at length— the irreconcilable issues between Dr. Groehn's application of hedonic regression and the realities of the DRAM market that render it entirely unreliable.  The corrections that Samsung's experts make serve only to demonstrate the foundational problem with his analysis that warrants exclusion—that his model cannot provide a reliable estimate and produces results that are inconsistent with the relevant market realities.  *E.g.*, Dkt. 438-3, ¶¶ 322-26; Dkt. 438-4, ¶¶ 96-98; *see also Daubert v. Merrell*

2

*Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) ("[T]he rules of evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.").

> **B.     Dr. Groehn's Regression Analysis Is Unreliable Because It Disregards Customer Level Differences**

Netlist's claim that Dr. Groehn analyzed ▇▇▇▇▇▇▇▇▇▇ to determine that there was a direct relationship between speed and price, Dkt. 438 at 2, is a disingenuous representation of his methodology. Netlist's opposition implicitly admits that there are customer-level differences that should be taken into account in a proper regression analysis. In particular, an individual customer can have experiences that are not reflective of other customers. Dkt. 438 at 5 ("Indeed, views of a particular customer would skew the data to lean in favor of that particular customer's experiences."). But instead of analyzing individual entries, Dr. Groehn aggregated them to a monthly series while disregarding economically important information in each entry (i.e., customer information). Dkt. 348 at 2-3. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Ex. 2 at 140:21-25, 143:22-25, 149:10-24. To survive *Daubert*, an expert must justify the economic reasoning behind his modeling decisions to ensure that the model accurately measures what it claims; yet, Dr. Groehn offers no explanation as to why excluding customer-specific information in his model renders it reliable. *See Coward v. ADT Sec. Sys., Inc.,* 140 F.3d 271, 274 (D.C. Cir. 1998) ("Qualifying this rule, the Court added that '[t]here may, of course, be some regressions so incomplete as to be inadmissible as irrelevant.'"). His opinions, therefore, do not reflect "a reliable application of the principles and methods" to the facts of the case. *See* Fed. R. Evid. 702.

> **C.     The Court's Denial of Samsung's *Daubert* Motion in *EDTX1* Does Not Control**

Netlist argues that, because the Court in *EDTX1* denied a motion by Samsung to exclude Dr. Groehn's opinions there, it should simply do so again here because Samsung has allegedly "not

3

identified any differences between Dr. Groehn's regressions in the two cases that would merit a different decision in this case." Dkt. 438 at 2. Samsung's motion in *EDTX1* was based on entirely different grounds (e.g., Dr. Groehn's application of DDR4 calculations to DDR5 products, multicollinearity, and Netlist's failure to timely disclose its hedonic regression model approach during fact discovery). *See EDTX1*, Dkt. 242. This motion raises different arguments, regarding a different report. In fact, Netlist has not even produced Dr. Groehn's report from *EDTX1* in this case.

### D. Cross-Examination Does Not Remedy the Problems with Dr. Groehn's Analysis

The Court should reject Netlist's suggestion that cross-examination is sufficient to remedy the problems with Dr. Groehn's opinions. *See, e.g.*, Dkt. 438 at 4. Because jurors have little or no inherent ability to evaluate hedonic regression, the Court's gatekeeper role is especially important here. Cross-examination is an ineffective remedy given the arcane nature of regression (including an aggregation of 190,000 invoice entries). *See, e.g.*, *Stragent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 1389304, at *4 (E.D. Tex. Mar. 6, 2014), *order clarified*, No. 6:11-CV-421, 2014 WL 12611339 (E.D. Tex. Mar. 12, 2014) (finding regression lacked connection to the facts of the case which is a "precondition" to allow jury to hear testimony).

## II. The Court Should Exclude Dr. Groehn's Regression Because It Has No Utility Outside of Dr. Kennedy's Flawed Analysis

As Samsung explained in its opening brief, should the Court exclude the opinions of Mr. Kennedy regarding damages, then it should exclude Dr. Groehn's regression analysis as well. Dkt. 348 at 5-6. Dr. Groehn's regression (coupled with Dr. Mangione-Smith's technical benefits analysis) is an input into Mr. Kennedy's flawed damages opinions, which should be excluded. *See* Dkt. 346 at 6-7. Netlist spends much of its response arguing that Dr. Groehn's opinion is based on Dr. Mangione-Smith's opinions regarding technical benefits. Dkt. 438 at 8-9. However, Samsung is not arguing that Dr. Groehn was responsible for and failed to explain the benefits of the asserted patents. Rather, Dr.

4

Groehn's regression is used, in combination with Dr. Mangione-Smith's unreliable technical opinion, to support Mr. Kennedy's unreliable damages opinions. Without Mr. Kennedy's damages opinions, there is no utility in quantifying the correlation between speed and price; such an analysis would serve only to confuse the jury. *See* Fed. R. Evid. 403. If Mr. Kennedy's opinions are excluded (as they should be), Dr. Groehn's regression cannot support a reasonable royalty for the asserted patents—he was "█████████████████████████████████████████." Ex. 2 at 41:4-5.

\*     \*     \*

Accordingly, the Court should grant Samsung's motion and exclude Dr. Groehn's unreliable regression analysis.

Dated: February 7, 2024

Respectfully submitted,

By:   */s/ Daniel A. Tishman*

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:    (903) 934-8450
Facsimile:    (903) 934-9257

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130

5

| | |
|---|---|
| Telephone: (202)-662-6000 | Telephone: (858) 678-5070 |
| | Facsimile: (858) 678-5099 |
| Alice J. Ahn | |
| CA Bar No. 271399/DC Bar No. 1004350 | Thomas H. Reger II |
| aahn@cov.com | reger@fr.com |
| COVINGTON & BURLING LLP | Texas Bar No. 24032992 |
| 415 Mission Street, Suite 5400 | FISH & RICHARDSON P.C. |
| San Francisco, CA 94105 | 1717 Main Street, Suite 5000 |
| Telephone: (415) 591-7091 | Dallas, Texas 75201 |
| Facsimile: (415) 955-6571 | Telephone: (214) 747-5070 |
| | Facsimile: (214) 747-2091 |

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on February 7, 2024. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

　　　　　　　　　　　　　　　　　　　　　　　/s/ Daniel A. Tishman

6