# Exhibit 19

Case 2:21-cv-00463-JRG Document 588 Filed 05/31/23 Page 1 of 72 PageID #: 59370
Case 2:22-cv-00293-JRG Document 538-4 Filed 02/16/24 Page 2 of 10 PageID #: 57621

1

```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE EASTERN DISTRICT OF TEXAS
                              MARSHALL DIVISION

NETLIST, INC.,                    (  CAUSE NO. 2:21-CV-463-JRG
                                  )
        Plaintiff,                (
                                  )
vs.                               (
                                  )
SAMSUNG ELECTRONICS CO., LTD.,    (
et al.,                           )  MARSHALL, TEXAS
                                  (  MAY 30, 2023
        Defendants.               )  8:30 A.M.
_____




_____

                    BENCH TRIAL ON THE MERITS

              BEFORE THE HONORABLE RODNEY GILSTRAP
               UNITED STATES CHIEF DISTRICT JUDGE

_____







                    SHAWN McROBERTS, RMR, CRR
                      100 E. HOUSTON STREET
                     MARSHALL, TEXAS  75670
                         (903) 923-8546
                  shawn_mcroberts@txed.uscourts.gov
```

```
 1                      A P P E A R A N C E S

 2      FOR THE PLAINTIFF:      IRELL & MANELLA, LLP -
                                LOS ANGELES
 3                              1800 AVENUE OF THE STARS
                                SUITE 900
 4                              LOS ANGELES, CA 90067-4276
                                (310) 203-7096
 5                              BY:  MR. JASON SHEASBY
                                     MR. STEPHEN PAYNE
 6
                                McKOOL SMITH, P.C. - MARSHALL
 7                              104 E. HOUSTON ST., SUITE 300
                                MARSHALL, TEXAS  75670
 8                              (903) 923-9000
                                BY:  MR. SAM BAXTER
 9                                   MS. JENNIFER TRUELOVE

10      FOR THE DEFENDANTS:     FISH & RICHARDSON, PC -
                                WASHINGTON DC
11                              1000 MAINE AVE. SW, SUITE 1000
                                WASHINGTON, D.C.  20024
12                              (202) 783-5070
                                BY:  MR. RUFFIN CORDELL
13                                   MR. MICHAEL McKEON
                                     MS. LAUREN DEGNAN
14                                   MR. BRIAN LIVEDALEN

15                              GILLAM & SMITH, LLP
                                303 SOUTH WASHINGTON AVENUE
16                              MARSHALL, TEXAS  75670
                                (903) 934-8450
17                              BY:  MS. MELISSA SMITH

18      OFFICIAL REPORTER:      SHAWN M. McROBERTS, RMR, CRR
                                100 E. HOUSTON STREET
19                              MARSHALL, TEXAS  75670
                                (903) 923-8546

20

21

22

23

24

25
```

Case 2:12-cv-00693-JRG Document 5384-1 Filed 05/31/24 Page 4 of 19 PageID #: 59372
Case 2:12-cv-00693-JRG Document 5384-1 Filed 05/02/16 Page 3 of 10 PageID #: 57764

3

# INDEX

**EXAMINATION**

**Witness Name**                                                                Page
SCOTT MILTON
    Direct By MR. CORDELL ............................................... 5
    Cross By MR. SHEASBY ................................................ 20
    Direct By MR. CORDELL ............................................... 45
    Cross By MR. SHEASBY ................................................ 64
    Redirect By MR. CORDELL ............................................. 70
MARIO MARTINEZ
    BY DEPOSITION ....................................................... 24
HYUN LEE
    BY DEPOSITION ....................................................... 32
HYUN-JOONG KIM
    BY DEPOSITION ....................................................... 34
BRUCE LO
    BY DEPOSITION ....................................................... 38
GARRETT DAVEY
    BY DEPOSITION ....................................................... 40
JOE McALEXANDER
    Direct By MR. McKEON ................................................ 73
    Cross By MR. SHEASBY ................................................ 97
    Redirect By MR. McKEON .............................................. 110
PAUL MEYER
    Direct By MR. McKEON ................................................ 112
    Cross By MR. SHEASBY ................................................ 120
    Direct By HYUN-JOONG KIM ............................................ 124
    Direct By BY DEPOSITION ............................................. 124
SEUNG MO JUNG
    BY DEPOSITION ....................................................... 128
KYUNGSOO PARK
    BY DEPOSITION ....................................................... 130
PETER GILLINGHAM
    Direct By MR. PAYNE ................................................. 133
    Cross By MR. McKEON ................................................. 142
    Redirect By MR. PAYNE ............................................... 150
INDONG KIM
    BY DEPOSITION ....................................................... 154

1        THE COURT: Be seated, please.

2        All right. This is the time set for a bench trial
3   before the Court on the equitable defenses raised in the
4   Netlist versus Samsung Electronics matter. This is Civil Case
5   No. 2:21-CV-463.

6        As the parties will recall, the Court conducted a jury
7   trial in April of this year. At the conclusion of that trial
8   the jury returned a verdict, and post the return of the jury's
9   verdict, the Court is now prepared to take up in this bench
10  trial those equitable issues that were raised as a part of
11  this case. The Court's designated four hours of trial time
12  with two hours allocated to each side.

13       Let me ask for announcements from both sides and then
14  we'll proceed with the case in chief from Defendant Samsung.

15       What's the announcement from Plaintiff Netlist?

16            MS. TRUELOVE: Good morning, Your Honor. Jennifer
17  Truelove here for Plaintiff Netlist. With me today I have
18  Mr. Jason Sheasby, Steven Payne--they will be presenting today
19  on behalf of Plaintiff--and also at counsel table is our
20  client representative Mr. Scott Milton. And we're ready to
21  proceed, Your Honor.

22            THE COURT: All right. Thank you.

23       What's the announcement for Samsung, the Samsung
24  entities?

25            MS. DEGNAN: Good morning, Your Honor. Lauren

```
 1   take a penalty of 10 minutes on our time to deal with it.
 2           THE COURT:  I'll determine if there's additional
 3   time to be given.  We're not -- Samsung's not at the end of
 4   their rope yet.
 5           MR. CORDELL:  Thank you, Your Honor.
 6           THE COURT:  Let's go onto the next witness, please.
 7           MR. SHEASBY:  We call Seung-Mo Jung--2 minutes and
 8   27 seconds, all charged to Netlist.
 9           THE COURT:  All right.  Let's proceed with this next
10   witness by deposition.
11                         SEUNG-MO JUNG,
12                        BY VIDEO DEPOSITION
13   Q.   Good morning, sir.  Can you state your name for the
14   record?
15   A.   My name is Seung-Mo Jung.
16   Q.   Sir, you're employed by Samsung?
17   A.   That's correct.
18   Q.   What is your position at Samsung?
19   A.   Senior engineer.
20   Q.   You've been designated to speak on behalf of Samsung as
21   to technical topics relating to DDR4 LRDIMMs?
22   A.   That's correct.
23   Q.   Do you test to confirm that the RCDs and data buffers
24   comply with the JEDEC standard for LRDIMM DDR4?
25   A.   You mean the RCD and DB?
```

Case 2:21-cv-00463-JRG Document 588 Filed 05/14/23 Page 127 of 176 PageID #: 58899
Case 2:22-cv-00462-JRG Document 535 Filed 07/31/23 Page 7 of 19 PageID #: 59375
129

1    Q.    Yes.

2    A.    Yes.

3    Q.    Have you ever encountered any instances or sold any

4    LRDIMM DDR4s that did not implement the JEDEC standard for

5    LRDIMM DDR4?

6    A.    No, I have not.

7    Q.    Has Samsung?

8    A.    Samsung has not.

9    Q.    Sir, is there any position of Exhibit 1 that Samsung's

10    DDR4 LRDIMMs do not implement?

11    A.    Do you mean Samsung's LRDIMM?

12    Q.    Yes. Do you know if your DBs use tri-state buffers?

13    A.    I don't know whether it uses internally within the DB.

14    Q.    Do you test to determine if there is a tri-state buffer?

15    A.    We test to test the operations that are defined in JEDEC.

16    Q.    And you understand that JEDEC specifies a tri-state

17    buffer for the DBs?

18    A.    Let me check. If you could tell me where in JEDEC it is

19    specified. I'm going to check that part.

20    Q.    Let's go to the DDR4 data buffer standard logic diagram

21    4.6.1.

22    A.    Okay. Please go ahead.

23    Q.    The DB standard JEDEC standard specifies the use of

24    tri-state buffers. Those are the TX and RX triangles on the

25    right-hand side of this document.

Case 2:21-cv-00463-JRG Document 538 Filed 05/14/23 Page 129 of 176 PageID #: 59376
Case 2:22-cv-00293-JRG Document 584 Filed 05/12/23 Page 176 of 196 PageID #: 55890
130

```
 1   A.   To the extent of my knowledge, it doesn't specify here
 2   that these are related to tri-state buffers.
 3            THE COURT:  Does that complete this witness?
 4            MR. SHEASBY:  It does, Your Honor.
 5            THE COURT:  Call your next witness, please.
 6            MR. SHEASBY:  Plaintiffs call Kyungsoo Park,
 7   corporate representative of Samsung--3 minutes and 50 seconds,
 8   all charged to Netlist.
 9            THE COURT:  Please proceed.
10                         KYUNGSOO PARK,
11                       BY VIDEO DEPOSITION
12   Q.   Good morning, Mr. Park.  Can you state your full name for
13   the record?
14   A.   Kyungsoo Park.
15   Q.   What is your position at Samsung LSI?
16   A.   TL.
17   Q.   What does TL stand for?
18   A.   Technical leader.
19   Q.   You said you are a technical leader.  In which project or
20   which group are you the technical leader for?
21   A.   I am in the group that works on PMIC for the DDR5.
22   Q.   I have one question for you on Exhibit Number 2, page 13,
23   that's on the screen right now.  In Section 2.1.1, the last
24   bullet point says:  "3 LDO regulators:  VBias, VOUT_1.8V, and
25   VOUT_11.0 volts.  Do you see that?
```

Case 2:21-cv-00463-JRG Document 588 Filed 05/14/23 Page 132 of 176 PageID #: 59377
Case 2:22-cv-00293-JRG Document 538 Filed 07/18/23 Page 13 of 19 PageID #: 54893
133

```
1   Netlist never disclosed any JEDEC materials to the United
2   States Patent and Trademark Office."
3        The next supplemental response in November 2022, "Netlist
4   has not shown that any of the asserted claims are essential to
5   any JEDEC standard identified in Netlist's infringement
6   contentions.  Samsung disagrees that any claim is essential
7   to any JEDEC standard, and incorporates its response to
8   Interrogatory No. 1."
9              THE COURT:  All right.  Now call your next witness.
10             MR. PAYNE:  Yes, Your Honor.  Netlist calls
11  Mr. Peter Gillingham.
12             THE COURT:  All right.  Mr. Gillingham, if you'll
13  come forward and be sworn, please.
14             (Whereupon, the oath was administered by the Clerk.)
15             THE COURT:  Please have a seat at the witness stand,
16  sir.
17             MR. SHEASBY:  May I approach the witness?
18             THE COURT:  You may.
19        All right, counsel.  You may proceed.
20             MR. PAYNE:  Thank you, Your Honor.
21                        PETER GILLINGHAM,
22  testified on direct examination by Mr. Payne as follows:
23  Q.  Good afternoon.  Could you please introduce yourself to
24  the Court?
25  A.  My name is Peter Gillingham.
```

| | |
|---|---|
| 1 | Q.   What are you going to be testifying regarding today, |
| 2 | Mr. Gillingham? |
| 3 | A.   I'm here to address Samsung's claim that Netlist did not |
| 4 | properly disclose the '918 and '054 Patents to JEDEC. |
| 5 | Q.   Can you please describe your education? |
| 6 | A.   Yes.  I have a Bachelor's degree and a Master's degree in |
| 7 | engineering from Carleton University and a Master of Science |
| 8 | degree in management from Stanford University. |
| 9 | Q.   After your education, where have you worked? |
| 10 | A.   I first worked for six years at Mitel Semiconductor, and |
| 11 | in 1989 I moved to MOSAID Technology where I worked for 25 |
| 12 | years. |
| 13 | Q.   And what kind of company was MOSAID? |
| 14 | A.   MOSAID was a small memory-focused company.  In the |
| 15 | early days we designed memory products, and in later years |
| 16 | we transitioned to become a patent licensing company. |
| 17 | Q.   And can you tell us a little bit about the work you did |
| 18 | at MOSAID? |
| 19 | A.   When I first started, I was managing DRAM design teams, |
| 20 | designing DRAMs for our licensees.  In about 2006 I became |
| 21 | chief technology officer of the company, and also became |
| 22 | MOSAID's named representative at JEDEC. |
| 23 | THE COURT:  Mr. Gillingham, pull the microphone a |
| 24 | little closer to you, please.  Thank you. |
| 25 | And did you get your master's at Stanford? |

```
 1              THE WITNESS:  Stanford University, yes.
 2              THE COURT:  I just want to make sure I heard you
 3   correctly.
 4         Please continue, Mr. Payne.
 5   Q.   (BY MR. PAYNE)  You mentioned being MOSAID's JEDEC
 6   representative.  Can you describe your experience attending
 7   JEDEC meetings?
 8   A.   Well, I first started attending JEDEC meetings in the
 9   1990s, but then I was not one of the named representatives of
10   MOSAID; I was just there as an observer or, as I would be
11   listed on the minutes of a JEDEC meeting, 'others present'.
12   But in 2006 I became -- I was named as the MOSAID
13   representative with authority to vote and make presentations
14   on behalf of MOSAID, so from that point on I would have been
15   listed under -- on meeting minutes as under the 'members
16   present' category.
17   Q.   What JEDEC committees did you participate in?
18   A.   We participated in JC-16, JC-42, JC-45, and JC-64.
19   Q.   Do you have experience with patent disclosures at JEDEC?
20   A.   Yes, I do.
21   Q.   And have you been retained by Netlist to perform analysis
22   in this litigation?
23   A.   Yes, I have.
24   Q.   What did you review to prepare for your testimony today?
25   A.   I reviewed Mr. Halbert's expert report, I reviewed the
```

Case 2:22-cv-00293-JRG Document 538 Filed 05/01/24 Page 135 of 175 PageID #: 59380
Case 2:22-cv-00293-JRG Document 585 Filed 07/02/24 Page 12 of 19 PageID #: 59896
136

1  JEDEC patent policy, and I reviewed numerous JEDEC documents
2  relating to Netlist's participation at JEDEC.
3           MR. PAYNE:  Your Honor, Plaintiff offers
4  Mr. Gillingham as an expert on the JEDEC organization and
5  the procedures at JEDEC.
6           THE COURT:  Any objection?
7           MR. McKEON:  No objection, Your Honor.
8           THE COURT:  Without objection, the Court will
9  recognize this witness as an expert in those designated
10 fields.
11      Please continue.
12 Q.   (BY MR. PAYNE)  Let's turn to the patents in the case.
13      Has Samsung expressed an understanding in the case about
14 whether disclosure of patents to JEDEC is required?
15 A.   Yes, they have.
16 Q.   And what understanding has Samsung expressed about
17 whether disclosure of patents to JEDEC is required?
18 A.   Well, Mr. Kim, who was Samsung's JEDEC representative,
19 stated that JEDEC recommends disclosure, but it's not a
20 mandatory obligation.
21 Q.   Do you recognize PX 1067?
22 A.   Yes, I do.  It is the JEDEC manual of organization and
23 procedure, JM21.
24 Q.   And how does the JEDEC policy define an essential patent
25 claim?

```
1   A.  An essential patent claim are those claims which would
2   necessarily be infringed by a product that is compliant with
3   required portions of an approved JEDEC standard.  So it would
4   not include optional portions of a standard or examples or
5   reference designs, for example.
6   Q.  Do you recall some testimony earlier this morning about
7   family members of the '918 and '054 Patents being disclosed to
8   JEDEC?
9   A.  Yes, I do.
10  Q.  Does the JEDEC policy say anything about whether
11  disclosure of a patent extends to other patents in the family?
12  A.  Yes, it does.
13  Q.  And what does the policy say?
14  A.  The policy states that disclosure of a patent is deemed
15  to include all patents claiming priority to a single filing.
16  Q.  Did Netlist disclose to JEDEC patents that claim priority
17  to the same filing as the '918 and '054 Patents?
18  A.  Yes, they did.
19  Q.  What patents in the '918 and '054 family did Netlist
20  disclose?
21  A.  Netlist disclosed the '831 Patent and the '833 Patent,
22  which are parent patents of both the '918 and the '054
23  Patents.
24  Q.  Now, when did Netlist disclose the '831 Patent to JEDEC?
25  A.  Netlist first disclosed the '831 Patent to JEDEC in
```

```
1   February of 2015 on a notice of refusal to offer licenses on
2   RAND terms form, but they subsequently notified them again on
3   August 7th, 2018, of the same patent when they did agree to
4   RAND terms.
5   Q.   And that 2018 form, that's PX 176?
6   A.   That's correct.
7   Q.   When did Netlist disclose the '833 Patent to JEDEC?
8   A.   Netlist disclosed the '833 Patent to JEDEC on the same
9   dates and on the same forms as the '831 Patent; so in February
10  2015 on a notice of refusal to offer RAND licenses and on
11  August 2018 when they did agree to RAND licensing.
12  Q.   What JEDEC committee did Netlist disclose the '831 and
13  '833 Patents to?
14  A.   Netlist disclosed those patents to the JC-40 committee.
15  Q.   Which JEDEC committee was responsible for preparing the
16  DDR5 component specification?
17  A.   JC-40 was responsible for providing the PMIC -- the DDR5
18  PMIC specification.
19  Q.   If a JEDEC member were attempting to determine what
20  patents had been disclosed relating to on-module power
21  management, what committees would they look at?
22  A.   I think they would look first to the JC-40 committee
23  because the JC-40 committee standardizes components that go on
24  to a module, but they would also look to the JC-45 committee
25  because that's the committee that standardizes the overall
```

```
1    module.
2    Q.  Would Samsung have been aware of activity in JC-40?
3    A.  Of course they would.  They were members of that
4    committee.
5    Q.  And do you recall some testimony earlier today about
6    whether Netlist was required to redisclose the patents for
7    DDR5?
8    A.  I do.
9    Q.  In the regular practice at JEDEC, is there a practice to
10   redisclose patents that have already been disclosed?
11   A.  No, there's not a practice to redisclose patents relating
12   to a continuation of a prior standard to which the patent had
13   initially been disclosed.
14   Q.  And why is it the practice not to redisclose for a
15   continuation of a prior standard?
16   A.  Well, JEDEC participants would be well aware that -- if I
17   take the example of DDR4 and DDR5, that most if not all of the
18   features of DDR4 would be carried over into DDR5, and then
19   there would be some additional features added to achieve the
20   higher performance that -- you know, of DDR5.  So the members
21   would be able to look at the past history of those features
22   through the previous versions of the standard.
23   Q.  Do you have an understanding of whether DDR5 is a
24   continuation of the DDR4 standard?
25   A.  Yes.  DDR5 is a continuation of the DDR4 standard.
```

```
 1   Q.   And how does JEDEC actually identify the DDR4 and DDR5
 2   standards?
 3   A.   Well, they are identified by the standard number.  So in
 4   the case of DDR4, that is standard JESD79-4, and for DDR5, the
 5   standard number is JESD79-5.  So clearly the 5 is a
 6   continuation of the 4.
 7   Q.   Now, has Samsung expressed a view in this case about
 8   whether DDR5 is a continuation of DDR4?
 9   A.   Yes, they have.
10   Q.   What view did Samsung express?
11   A.   Well, Samsung's expert Mr. McAlexander stated that DDR5
12   DIMMs are an extension and further development of DDR4 DIMMs.
13   Q.   Do you also recall some testimony earlier this morning
14   about a period where Netlist was withdrawn from JEDEC?
15   A.   Yes, I do.
16   Q.   How did the timing of Netlist's withdrawal coincide with
17   the development of the DDR5 PMIC standard?
18   A.   My understanding is that the DDR5 PMIC standard was first
19   discussed at JEDEC in August 2016 during the period when
20   Netlist had withdrawn from those committees.
21   Q.   And when did Netlist rejoin the JEDEC committees?
22   A.   Netlist rejoined in August 2018.
23   Q.   When was the approved DDR5 PMIC standard publicly
24   released?
25   A.   The approved standard was publicly released in June 2020.
```

1  Q.   When did Netlist begin to pursue patent claims regarding
2  on-module power management?
3  A.   My understanding is that the first claims regarding
4  on-module power management were submitted with the application
5  ending in '766 in December 2020, which was after the DDR5 PMIC
6  standard had been publicly released.
7  Q.   Is it the regular course of practice at JEDEC for a
8  company like Netlist to disclose patents when it was withdrawn
9  from JEDEC?
10 A.   No, and it's -- it would not be the policy and it would,
11 frankly, be impossible because Netlist was not privy to the
12 discussions or the documents created during the time period
13 when they were absent.
14 Q.   And is it the regular practice at JEDEC to disclose
15 potentially essential patents where claims have not yet been
16 filed?
17 A.   Well, potentially essential patents are defined as those
18 that are reasonable -- a person could reasonably conclude
19 contain one or more essential patent claims, so if the claims
20 don't exist, there's really no obligation to disclose.
21 Q.   Did Netlist take any action once it returned to the JEDEC
22 committees after its withdrawal?
23 A.   Yes, they did.  They immediately submitted RAND letters
24 for those patents.
25 Q.   And in your experience, have technical discussions at

Case 2:21-cv-00463-JRG Document 538 Filed 05/21/24 Page 142 of 178 PageID #: 59386
Case 2:21-cv-00463-JRG Document 585 Filed 07/02/24 Page 18 of 19 PageID #: 59902
142

```
 1   JEDEC ever stopped when a member discloses a patent that is
 2   potentially essential to the technology being discussed?
 3   A.   In my experience, I have never witnessed that.
 4           MR. PAYNE:  Pass the witness, Your Honor.
 5           THE COURT:  All right.  Cross examination by
 6   Samsung?
 7           MR. McKEON:  Thank you, Your Honor.
 8       May I proceed?
 9           THE COURT:  Please do.
10           MR. McKEON:  Thank you, Your Honor.
11                      CROSS EXAMINATION
12   BY MR. MCKEON:
13   Q.   Good morning, Mr. Gillingham.
14   A.   Good morning.
15   Q.   You agree that the JEDEC patent policy contains a patent
16   disclosure provision.  Correct?
17   A.   Yes, it does.
18   Q.   And you agree that under the JEDEC patent policy that  if
19   a member knows of a patent that is relevant to a given
20   standard, that it must disclose that patent to JEDEC.
21   Correct?
22   A.   If a member is aware of a potential essential patent,
23   which is defined as a patent that has claims that would read
24   on the standard, yes, the representative attending the
25   committee meeting has the obligation to disclose.
```

```
1            MR. McKEON:  Sorry about that, Your Honor.  I
2   thought we --
3            (Pause in proceedings.)
4            THE COURT:  You can use the counsel table.  You
5   don't need to get down on the floor, Mr. Sheasby.
6            MR. SHEASBY:  Thank you, Your Honor.
7       DTX 14 is fine, Your Honor.
8            THE COURT:  All right.  So both of you have heard
9   the offering from the other.  I gather there are no objections
10  to either's rendition into the record.
11           MR. McKEON:  No objection, Your Honor.
12           MR. SHEASBY:  No objections, Your Honor.
13           THE COURT:  All right.  Thank you, counsel.  You're
14  excused.
15      As I stated earlier, the matters raised in the bench
16  trial are under submission.
17           MR. SHEASBY:  Thank you, Your Honor.
18           MR. McKEON:  Thank you, Your Honor.
19           THE COURT:  Thank you.
20           (The Proceedings were concluded at 2:30 p.m.)
21
22
23
24
25
```