███████████████████

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>      Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.,<br><br>      Defendants. | Civil No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S REPLY IN SUPPORT OF
ITS *DAUBERT* MOTION AND MOTION TO STRIKE
EXPERT TESTIMONY OF DR. WILLIAM HENRY MANGIONE-SMITH (Dkt. 350)**

███████████████████████████

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

TABLE OF EXHIBITS TO SAMSUNG'S MOTION .................................................... iii

TABLE OF EXHIBITS TO SAMSUNG'S REPLY ........................................................ iii

TABLE OF ABBREVIATIONS ..................................................................................... iii

I.      The Court Should Strike Dr. Mangione-Smith's New Infringement Theories ...................... 1

II.     The Court Should Strike Dr. Mangione-Smith's Doctrine of Equivalents
        Opinions ................................................................................................................. 3

III.    The Court Should Strike Dr. Mangione-Smith's New Claim Construction
        Opinions ................................................................................................................. 3

IV.     The Court Should Strike Dr. Mangione-Smith's Technical Valuation
        Opinions ................................................................................................................. 3

V.      The Court Should Strike Dr. Mangione-Smith's Written Description
        Opinions ................................................................................................................. 5

VI.     Dr. Mangione-Smith Should Not Opine about Samsung's State of Mind ........................... 5

VII.    The Court Should Strike Dr. Mangione-Smith's Essentiality Opinions ............................. 5

\* In this brief, all emphasis is added unless noted otherwise.

████████████████████████

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Astrazeneca AB v. Apotex Corp.*,
   782 F.3d 1324 (Fed. Cir. 2015)...............................................................................................5

*Intel Corp. v. Tela Innovations, Inc.*,
   2021 WL 1222622 (N.D. Cal. Feb. 11, 2021) ........................................................................4

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
   10 F.4th 1358 (Fed. Cir. 2021) ...............................................................................................4

*Papst Licensing GmbH & Co., KG v. Apple, Inc.*,
   2017 WL 11638426 (E.D. Tex. June 16, 2017).......................................................................5

*PersonalWeb Techs. LLC v. IBM Corp.*,
   2017 WL 3476082 (N.D. Cal. Aug. 14, 2017)..........................................................................5

*Phenix Longhorn, LLC v. Wistron Corp.*,
   No. 2:17-CV-711, 2019 WL 6873029 (E.D. Tex. Aug. 16, 2019)................................2, 3

*Rapid Completions LLC v. Baker Hughes Inc.*,
   No. 6:15-CV-724, 2016 WL 3407688 (E.D. Tex. June 21, 2016) ........................................1

*VLSI Tech. LLC v. Intel Corp.*,
   87 F.4th 1332 (Fed. Cir. 2023) ...........................................................................................3, 4

*Ziilabs, Inc. v. Samsung Elecs. Co.*,
   2015 WL 8274055 (E.D. Tex. Dec. 8, 2015)...........................................................................3

████████████████████████████

## TABLE OF EXHIBITS TO SAMSUNG'S MOTION

| # | Description |
|---|---|
| 1 | 2023-11-20 Opening Expert Report of Dr. William Henry Mangione-Smith (excerpts) |
| 2 | 2022-11-17 Netlist Infringement Contentions (excerpts) |
| 3 | United States Patent No. 7,619,912 ("'912 patent") |
| 4 | 2024-01-12 Mangione-Smith Tr. (Rough) (excerpts) |
| 5 | 2023-02-07 Netlist 2nd Suppl Infringement Contentions Exhibit D (excerpts) |
| 6 | JEDEC 82-32A Specification (SAM-NET-293_00015377) (excerpts) |
| 7 | 2023-11-19 Netlist Revised 4th Amended Supp Resp to Samsung's 2nd Set of Interrog. (excerpts) |
| 8 | Public Trial Tr., from *EDTX1* (excerpts) |
| 9 | 2023-12-21 Mangione-Smith Rebuttal Report (excerpts) |
| 10 | 2023-06-22 Ltr to Sheasby fr Tishman re Interrog. Deficiencies |
| 11 | Ord. Pretrial Mots., Dkt. 432 from *EDTX1* |

## TABLE OF EXHIBITS TO SAMSUNG'S REPLY

| # | Description |
|---|---|
| 12 | 2023-10-20 Ltr to Sheasby fr Tishman re Validity Contentions |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| '912 patent | U.S. Patent No. 7,619,912 |
| '608 patent | U.S. Patent No. 10,268,608 |
| '417 patent | U.S. Patent No. 11,093,417 |

## I.     The Court Should Strike Dr. Mangione-Smith's New Infringement Theories

*Maximum Power Saving Mode ('912):*  Netlist argues it accused this feature by highlighting the initials "MPSM" in a figure in its contentions.  But Netlist described that figure by stating "***[i]n PDA mode***, PDA commands include Mode Register Set (MRS) with DQ0=Low of the target DDR memory device to be programmed, *as shown in the Simplified State Diagram of Figure 6, reproduced below*," and highlighted every possible state transition associated with PDA mode, including MPSM.  Dkt. 454-2 at 26-27, 33-34.  Thus, Netlist described that figure as illustrating the accused PDA mode, which did not provide notice that MPSM was separately accused.  *See Rapid Completions LLC v. Baker Hughes Inc.*, No. 6:15-CV-724, 2016 WL 3407688, at *6 (E.D. Tex. June 21, 2016) (pictures alone do not "put Defendants on notice as to [patentee's] theory of infringement.").

*Master die in 3DS Package ('912).*  Netlist argues exclusion would be improper because it cited the JEDEC specification in it is contentions; but generally citing a specification does not address the issue.  Netlist fails to identify where it accused the "master die" as satisfying the "only one" DDR device limitation.  Netlist claims it cites only "new evidence," but this is an entirely new theory.[1]

*MRS Command or DQ0 as the alleged "command signal" ('912).*  Netlist argues that "MRS commands *and* DQ0 values" in its contentions means MRS command *and/or* DQ0 values.  But Netlist's contentions do not state that one or the other would infringe, they use the conjunctive, which requires both.  And Netlist explained that only MRS command "with" DQ0 was accused: "***the PDA feature*** for transmitting ***the command signal*** to only one DDR memory device at a time" . . . "[i]n PDA mode ***PDA commands include Mode Register Set (MRS) with DQ0=Low***."  Dkt. 454-2 at 33.

*Edge connectors as part of the alleged "circuit" ('912).*  Netlist argues it accused edge

---

[1] Netlist's "new evidence" is deposition testimony of Mr. Jang who testified he did not know about how the PDA mode works in the 3DS packages.  Dkt. 454-4 at 40:2-12; 44:24-45:12.

connectors because its contentions included two topology figures that illustrate the entire topology of the memory modules, which includes "data and strobe" and many other features.  But Netlist labeled the DDR4 RCD in those figures as accused, not the data and strobe.  Ex. 2 at 14-15.  Netlist's contentions accused the RCD, *id.* at 12, and Netlist described its topology figures as illustrating that the "RCD is coupled to the printed circuit board," which did not provide notice that data and strobe lines were separately accused.  *Id.*

  **Commands "configured to control" one rank ('912).**  Netlist apparently argues it can change its infringement theories because Samsung contested Netlist's original theory, but this is incorrect.  *See Phenix Longhorn, LLC v. Wistron Corp.*, No. 2:17-CV-711, 2019 WL 6873029, at *4 (E.D. Tex. Aug. 16, 2019) (rejecting argument that defendant "would suffer no prejudice because [plaintiff] is merely responding to [defendant's] belated non-infringement theories").

  **Alleged data buffer control signals other than BCOM ('417).**  Netlist fails to identify where it accused any signal other than BCOM as the "buffer control signals."  The annotations in the contentions confirm Netlist accused only BCOM as the "buffer control signal" because those annotations distinguish "control signals" (a separate claim term) and "buffer control signals."  Dkt. 454-6 at 48.  Netlist argues its highlighting and use of "e.g.," are non-limiting, but its contentions identify only BCOM as the alleged buffer control signal that allegedly meets all the claim limitations. *Id.* at 23-55 (never stating BCKE, BODT, BCK, or BVrefCA were "buffer control signals," let alone "in response to the read or write memory command" required in the claims).  Netlist's use of non-limiting language does not give it license to accuse any other control signal found in the standard.

  **MWD Training Mode ('608).**  Netlist again points to "non-limiting language" to accuse the MWD training mode.  But Netlist's contentions accused specific features, the MRD and MREP training modes, not "training modes" generally or MWD training mode.  *See* Ex. 5.  Netlist's attorney argument that there is no prejudice because MWD training mode is similar to other disclosed modes

is unsupported—Netlist itself filed a motion to compel seeking additional testimony on MWD training.  Dkt. 226 at 1-2.

## II.    The Court Should Strike Dr. Mangione-Smith's Doctrine of Equivalents Opinions

*Untimeliness.*  Netlist argues it should be permitted to add new DoE theories after fact discovery because Samsung disputed Netlist's infringement positions, but precedent forecloses this argument.  *See Phenix,* 2019 WL 6873029, at *4 (rejecting argument that defendant "would suffer no prejudice because [plaintiff] is merely responding to [defendant's] belated non-infringement theories").

*Insufficiency.*  Netlist attempts to limit the Court's precedent to striking only "boilerplate" DoE opinions.  But Dr. Mangione-Smith does not substantively address the "way" or "result" prongs of the function-way-result test for the '912 patent or any prong for the '417 and '608 patents.  His opinions therefore fail as a matter of law, *VLSI Tech. LLC v. Intel Corp.,* 87 F.4th 1332, 1344 (Fed. Cir. 2023) (holding DoE theory failed as a matter of law because there was "no meaningful explanation of why the way" prong was satisfied), and they facially constitute "boilerplate" opinions in any event.

## III.    The Court Should Strike Dr. Mangione-Smith's New Claim Construction Opinions

Netlist argues that Dr. Mangione-Smith should be permitted to respond to Samsung's non-infringement theory, but he may not do so by changing the plain language of the claims.  Dr. Mangione-Smith should not be permitted to "serve as a conduit for putting these [claim construction] arguments before the jury."  *Ziilabs, Inc. v. Samsung Elecs. Co.,* 2015 WL 8274055, at *2 (E.D. Tex. Dec. 8, 2015).  As to his "capability" construction, his analysis is contrary to the law.  Dkt. 353 at 6-8.  As to his "transmitting" construction, Dr. Mangione-Smith never suggested he applied the plain meaning, and Netlist fails to show that he did.  As detailed in Samsung's briefing concerning partial summary judgment of noninfringement, Dr. Mangione-Smith's new claim construction opinions are wrong.

## IV.    The Court Should Strike Dr. Mangione-Smith's Technical Valuation Opinions

*Untimeliness.*  Netlist argues that these valuation opinions are not untimely as they are

███████████████████████████████████████

"expert analysis," but Rule 26(a) requires disclosure of the facts supporting Netlist's damages calculation. *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1369 (Fed. Cir. 2021). Netlist failed to disclose these supporting facts, including its reliance on several alleged benefits for the '912 patent (*i.e.,* Maximum Power Saving Mode, multi-rank design, and addressing), the '417 patent (*i.e.,* BBAR operations and high/low chip-select signals), and the '608 patent (*i.e.*, precision timing). Dkt. 350 at 9-10; Dkt. 454 at 10-13. Netlist's cited interrogatory responses do not mention these.

    ***Insufficiency ('912/'608):***  Netlist argues that the opinion that 2400 MT/s is the threshold speed above which PDA mode is allegedly required is supported with documents and witness testimony. Simply citing documents and testimony then plucking a specific number out of thin air is not permissible expert testimony. Netlist's failure to explain the basis for that number in its opposition demonstrates there is none. *See* Dkt. 454 at 10-11. Even if such opinion was supported (which it is not), Netlist admits that infringement requires other features in addition to PDA mode, *e.g.* Dkt. 353 at 3 (¶ 3); Dkt. 446 at 1 (¶ 3), and does not address Dr. Mangione-Smith's failure to opine that the ***totality*** of features alleged to infringe are necessary for 2400 MT/s.[2] Thus, his technical benefits opinion is not commensurate with the scope of the claimed invention.

    ***Failure to apportion ('912/'417/'608):***  Netlist argues that Dr. Mangione-Smith sufficiently addresses the incremental value of the claims, but his analysis fails as a matter of law. Whether a benefit could not be achieved "without" a feature does not apportion the value of the accused features. Netlist further argues Dr. Mangione-Smith apportions the value of the accused features when he alleges the '912 and '608 patents both provide the ***same alleged benefit*** because the patents are largely overlapping.[3] But in any system, there are many features that contribute to the performance

---

  [2] Netlist also claims the '608 patent is required for speeds above 2400 MT/s. Dkt. 350 at 12-13.
  [3] Netlist's cited cases are inapposite. In *Intel*, the five asserted "overlapping" patents were all in the same patent family and claimed priority to the same provisional application. *Intel Corp. v. Tela*

of the accused products, and removing any would prevent the benefit.  Apportionment requires a determination of the value of the claimed feature independent of the unaccused features and Dr. Mangione-Smith has not done so.  Netlist also argues that he did not have to consider the prior art in assessing technical benefit, citing *Astrazeneca*.  But there the court held "the question is how much new value is created by the novel combination, beyond the value conferred by the conventional elements alone," and Dr. Mangione-Smith admitted the patents' purported benefits were taught in the prior art. *Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015); Dkt. 350 at 14.

## V.     The Court Should Strike Dr. Mangione-Smith's Written Description Opinions

Netlist argues that it disclosed its written description positions by incorporating Netlist's IPR papers in an interrogatory response.  But Netlist's conclusory assertion does not address where in the IPR positions Netlist addressed all the limitations that are disputed in this case.  Netlist further argues that it was not obligated to provide its written description positions, citing *Pabst*.  But there, the defendant moved to compel **all** invalidity contentions, *Papst Licensing GmbH & Co., KG v. Apple, Inc.*, 2017 WL 11638426 at \*5 (E.D. Tex. June 16, 2017), whereas here Samsung requested only that Netlist identify where in the specification specific claim limitations were supported.  Ex. 12.  The fact that Samsung bears the burden does not give Netlist license to ignore its discovery obligations.

## VI.    Dr. Mangione-Smith Should Not Opine about Samsung's State of Mind

Netlist concedes that an expert should not be permitted to opine on Samsung's state of mind.

## VII.   The Court Should Strike Dr. Mangione-Smith's Essentiality Opinions

Netlist concedes that it did not disclose these essentiality opinions during fact discovery.

Netlist was capable of providing its position on this issue but refused to do so, prejudicing Samsung.

---

*Innovations, Inc.*, 2021 WL 1222622, at \*1, 33 (N.D. Cal. Feb. 11, 2021).  In *PersonalWeb,* the expert used a "forward citation analysis" to apportion the value of one of the asserted patents relative to a portfolio.  *PersonalWeb Techs. LLC v. IBM Corp.*, 2017 WL 3476082, at \*1-2 (N.D. Cal. Aug. 14, 2017).  Dr. Mangione-Smith does no such apportionment analysis here.

Dated:  February 7, 2024

Respectfully submitted,

By:     */s/ Francis J. Albert*

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:      (903) 934-8450
Facsimile:       (903) 934-9257

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile:   (415) 955-6571

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

████████████████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on February 7, 2024.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

*/s/ Francis J. Albert*

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

████████████████