# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:22-cv-293-JRG |
| vs. ) | |
| ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO, LTD; ) | (Lead Case) |
| SAMSUNG ELECTRONICS AMERICA, ) | |
| INC.; SAMSUNG SEMICONDUCTOR ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |
| NETLIST, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:22-cv-294-JRG |
| vs. ) | |
| ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC.; ) | |
| MICRON SEMICONDUCTOR ) | |
| PRODUCTS, INC.; MICRON ) | |
| TECHNOLOGY TEXAS LLC, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF NETLIST INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON MICRON'S ANTITRUST COUNTERCLAIM AND AFFIRMATIVE DEFENSE OF PATENT MISUSE (DKT. 344)**

## **TABLE OF CONTENTS**

**Page**

I. MICRON HAS NOT SHOWN AN AGREEMENT TO RESTRAIN TRADE..................1

II. MICRON CANNOT SHOW A COGNIZABLE MARKET..................................5

III. MICRON CANNOT SHOW MARKET POWER..........................................6

IV. MICRON CANNOT SHOW ANTITRUST INJURY.......................................8

V. MICRON CANNOT SHOW PATENT MISUSE..........................................9

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................... 3

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993) ............................................................................................................ 4, 6

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962) ............................................................................................................... 6

*Brullotte v. Thys Co.*,
  379 U.S. 29 (1964) ................................................................................................................. 4

*Cellport Sys. v. Peiker Acustic GMBH*,
  762 F.3d 1016 (10th Cir. 2014) ............................................................................................. 9

*Dairy Foods Inc. v. Dairy Maid Prod. Coop.*
  297 F.2d 805 (7th Cir. 1961) ................................................................................................. 8

*Deslandes v. McDonald's USA, LLC*,
  81 F.4th 699 (7th Cir. 2023) .................................................................................................. 7

*F.T.C. v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ................................................................................................. 4

*JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*,
  823 F.3d 1006 (5th Cir. 2016) ............................................................................................... 1

*McCullough Tool Co. v. Well Surveys, Inc*
  343 F.2d 381 (10th Cir. 1965) ........................................................................................ 3, 10

*Miscione v. Barton Dev. Co.*,
  52 Cal. App. 4th 1320 (1997) ................................................................................................ 1

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018) ........................................................................................................... 8

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ................................................................................................. 6

*Saint Lawrence Commc'ns. LLC v. Motorola Mobility LLC*,
  2018 WL 915125 (E.D. Tex. Feb. 15, 2018) ........................................................................ 3

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993) ............................................................................................................. 4

*Stewart Glass & Mirror, Inc. v. U.S.A. Glas, Inc.*,
    940 F. Supp. 1026 (E.D. Tex. 1996) .................................................................................... 6

*Texas Instruments v. Hyundai Elecs.*,
    49 F. Supp. 2d 893 (E.D. Tex. 1999) ............................................................................. 3, 7

*Transweb, LLC v. 3M Innovative Props. Co.*,
    812 F.3d 1295 (Fed. Cir. 2016) ........................................................................................... 8

*U.S. Philips Corp. v. Int'l Trade Comm'n*
    424 F.3d 1179 (Fed. Cir. 2005) ......................................................................................... 10

**Statutes**

Sherman Act ...................................................................................................................................7

Sherman Act Section 1 ............................................................................................................. 4, 8

Sherman Act § 4 ........................................................................................................................... 8

## I. MICRON HAS NOT SHOWN AN AGREEMENT TO RESTRAIN TRADE

Micron's opposition fails to identify any "facts showing that" the SK Hynix License "unreasonably restrained trade." *Marucci*, 751 F.3d at 375. Mot. 4. Contrary to Micron's Opposition, this agreement does not in any way prevent Netlist from offering Micron a license with a different royalty rate, licensing terms, or scope of patents than what Netlist offered to SK Hynix. Opp. 8. Micron continues to ignore the key language of the SK hynix License—s█████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████ This is a standard most-favored-nation clause, which are common in IP license agreements, not a conspiracy to fix prices. *See, e.g., JP Morgan Chase Bank, N.A. v. DataTreasury Corp.,* 823 F.3d 1006, 1009 (5th Cir. 2016) (quoting licensing provision, "[i]f DTC grants to any other Person a license to any of the Licensed Patents, it will so notify JPMC, and JPMC will be entitled to the benefit of any and all more favorable terms with respect to such Licensed Patents.").

Indeed, Micron's interpretation renders sections ███████████ completely meaningless contrary to law. *See, e.g., Miscione v. Barton Dev. Co.,* 52 Cal. App. 4th 1320, 1330 (1997) (rejecting contract interpretation because "violate[d] the rule of contractual interpretation that requires meaning to be given to every part of a contract"). For example, if the MFL clause sets a "minimum price for subsequent licenses" as Micron contends, Opp. at 9, then Sk Hynix's adjustment rights could never be triggered because Netlist can only offer *higher* prices to subsequent licensees, not lower ones.

Ignoring sections ███████████, Micron instead relies on a plain misreading of two isolated sentences in the MFL clause. First, Micron claims that the MFL clause requires Netlist to license as a portfolio based on the following sentence: ████████████████████████████████████

- 2 -

[redacted]

Second, Micron's assertion that the MFL Clause somehow requires that royalties be based on "on all memory products, whether they infringe or not," Opp. at 9, is similarly baseless. [redacted]

[redacted] It is a common practice to base royalties on total sales rather than infringement since it is often "impossible

---

[1] Micron's contention that Netlist's corporate representative, Mr. Hong, "refus[ed] to interpret the this key Scope Provision" is false. Opp. 8. [redacted]

to determine whether a specific product is 'covered by' a patent without litigation," which would defeat the very purpose of entering into a license in the first place. *See, e.g., Texas Instruments v. Hyundai Elecs.*, 49 F. Supp. 2d 893, 901 (E.D. Tex. 1999).[2]

Because Micron's interpretation finds no support in the License's actual text, Micron relies instead on Netlist's supposed "conduct," including "(1) the only offers to Micron by Netlist were on a portfolio basis," and (2) Netlist made "offers at supracompetitive rates such as its 2023 offer to Micron demanding $150 million." Opp. 10. But offering portfolio licenses and trying to extract the highest possible royalties for one's patents are perfectly rational business behaviors, not evidence of an antitrust conspiracy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (Conduct "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market" cannot be used to show an antitrust violation).

As Netlist's moving brief explained, portfolio licenses are standard practice in high tech patent licenses because they "help[] both parties avoid the extraordinary transaction costs of litigating or licensing a global patent portfolio… country-by-country or patent-by-patent." *Saint Lawrence Commc'ns. LLC v. Motorola Mobility LLC*, 2018 WL 915125, at *9 (E.D. Tex. Feb. 15, 2018). Moreover, according to Micron, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ So according to Micron's account of the facts, Netlist's strategy of offering portfolio licenses is not the result of any conspiracy with SK Hynix.

Similarly, the Supreme Court has made clear that "rising prices do not themselves permit an

---

[2] Micron's relies on *McCullough Tool Co. v. Well Surveys, Inc.*, which is a case 10th Circuit case from nearly 60 years ago that has nothing to do with modern high tech patent license agreements. Regardless, that case involved patent-to-product tying, which Micron has not alleged here. 343 F.2d 381, 404 (10th Cir. 1965) (licensee "was required to purchase from [the patentee] all detecting and recording instruments").

inference of a collusive market dynamic . . . or supracompetitive pricing." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 237 (1993) (finding that no reasonable jury could find an antitrust violation based on such evidence). This is because "rising prices are equally consistent with growing product demand." *Id.* Moreover, a patent "empowers the owner to exact royalties as high as he can negotiate." *Brullotte v. Thys Co.*, 379 U.S. 29, 33 (1964). It is therefore improper to "conflate[]" a patentee's "desire to maximize profits" by virtue of its exclusive rights "with an intent to 'destroy competition itself.'" *F.T.C. v. Qualcomm Inc.*, 969 F.3d 974, 994 n.15 (9th Cir. 2020) (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993)). In sum, the mere fact that Netlist has sought to increase its prices—as any rational patent holder would try to do—does not constitute evidence that it somehow engaged in antitrust conspiracy with SK Hynix.

Regardless, the alleged ███████████████ that Netlist made to Micron is actually ***inconsistent*** with Micron's antitrust conspiracy theory. Again, the crux of Micron's Complaint is that the SK Hynix license ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████████████████████████

In sum, Micron's arguments against summary judgment not only contradict the plain language of the SK Hynix license, but they also flatly contradict Micron's own antitrust theory. Thus, no reasonable jury could find in Micron's favor on Micron's Sherman Act Section 1, conspiracy claim, which is the only antitrust claim Micron has brought.

## II. MICRON CANNOT SHOW A COGNIZABLE MARKET

Micron does not dispute that it has the burden to demonstrate the existence of a cognizable market, which consists of the technology at issue and all of its substitutes. Mot. 3-4, 10-12. Micron's Opposition, however, does not even identify what the specific alleged markets at issue are, let alone identify the relevant substitutes. While Micron claims that its alleged market is at a high level based on "standard-compliant DRAM chips and memory modules," Opp. 14, it does not identify—let alone produce evidence showing—(1) which specific standards are at issue, (2) which patents read on these standards, or (3) even whether Netlist actually owns any standard essential patents in this field. Likewise, Micron has not produced any evidence on the number of SEP technology or licensing markets that would fall within its definition, identify competing technologies, nor any entity that owns competing technologies, such that the patent licenses covering these technologies would be interchangeable. Micron has also failed to offer any evidence of which patents are in this market, let alone whether they have economic substitutes or exhibit cross-elasticity of demand. Mot. 11. By failing to identify or produce evidence on substitute technologies in any of the alleged technology licensing markets, Micron fails to assess the number of competitors in those alleged markets and the extent to which such substitutes would place a competitive constraint on the pricing of the Netlist technology

Micron also relies on the report of its antitrust expert, Dr. Lynde, who claims that ▮ ▮ ▮ Dkt. 427-03, (Lynde Rpt.) ¶ 74. But other than providing a few examples, ▮ ▮ Micron cannot satisfy its burden of identifying a cognizable market simply by wide swath of potentially related technologies.

- 5 -

Mot. 12. And absent a properly defined market, this Court has no way of determining whether the SK Hynix license in any way restrained competition. *Brown Shoe Co. v. United States*, 370 U.S. 294, 335 (1962) ("[T]he proper definition of the market is a 'necessary predicate' to an examination of the competition that may be affected.").

### III.  MICRON CANNOT SHOW MARKET POWER

Micron does not dispute that it produced no evidence that Netlist has a "predominant" share of any market. Mot. 12-13. Instead, Micron's Opposition attempts to rely on other supposed indicia of market power, none which are availing.

First, Micron again relies on Netlist's so-called increased prices. Opp. 17-18. As explained above, however, "[t]he occurrence of a price increase does not in itself permit a rational inference" of market power since it could as easily reflect increased demand. *Brooke Grp.*, 509 U.S. at 237. Moreover, Micron primarily relies on the allegation that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. 17. But a demand is not a price, as anyone can make a demand. The question is whether the defendant can use its market power to force customers to *actually pay* more than they would have in a competitive market. *See Brooke Grp. Ltd.*, 509 U.S. at 235 (1993) (cannot infer market power based on "list prices [that] were not the actual prices paid by consumers.").

Second, Micron argues that "Netlist has not executed any licenses after executing the Agreement, showing a reduction in licensing output." Opp. 17. This is specious. If anything, Netlist's supposed failure to license its patents to any customer would show that it lacks market power. Moreover, for purposes of assessing market power, the question is not whether Netlist can reduce its **own** output—any market participant can do that—but whether Netlist can reduce **market wide output.** *Stewart Glass & Mirror, Inc. v. U.S.A. Glas, Inc.*, 940 F. Supp. 1026, 1032 (E.D. Tex. 1996) (test is whether defendant have impose a "market wide effect on the output"); *see also Rebel Oil Co. v. Atl.*

*Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) ("A predator has sufficient market power when, by restricting its own output, it can restrict marketwide output and, hence, increase marketwide prices."). Micron has produced no evidence whatsoever showing a market wide decrease in output in any market.

Third, Micron argues that there "is evidence that there is a demand for less than the full Netlist patent portfolio." Mot. at 18. But Micron does not even attempt to explain how this shows Netlist has market power. Moreover, portfolio licenses are highly common with high-tech patents because of the "the costly and inefficient endeavor of a patent-by-patent licensing scheme." *Tex. Instruments, Inc.*, Co., 49 F. Supp. 2d, at 901.

Finally, Micron argues that Netlist possesses patents that are "standard essential or potentially standard essential." Opp. 18. But Micron does not dispute that it has never even alleged, much less offered any evidence, that Netlists **actually has any such patents**, and it wholly ignores the numerous authorities cited in Netlist's Motion holding that a patentee's mere assertions about its own patents cannot possibly create market power. Mot. 12-15. Were this true, every company that ever declared a single one of its patents as standard essential would thereby possess market power.

Realizing that it has no evidence of market power, Micron instead argues that it only has to prove market power for its tying claim. Opp. 17. This is wrong. Micron cites *Deslandes v. McDonald's USA, LLC*, 81 F.4th 699 (7th Cir. 2023), which held that a plaintiff does not have to prove market power when they've alleged a "*per se*" violation of the Sherman Act, i.e., a "horizontal restraint" such as a "naked" price fixing agreement. *Id.* at 703. But Micron has not alleged (let alone proven) a per se horizontal agreement to restrain trade among competitors. First, with respect to the SK Hynix License, SK Hynix is Netlist's **customer**, not its competitor. Second, there is no allegation that SK Hynix has agreed to any restriction whatsoever on its ability to license its patents. At best, Micron has alleged a *vertical* agreement between a licensor (Netlist) and a licensee (Micron). In contrast to certain types of

horizontal restraints, vertical restraints are not anticompetitive "unless the entity imposing them has market power." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285, n.7 (2018).

## IV. MICRON CANNOT SHOW ANTITRUST INJURY

Micron does not dispute that the only alleged injury it has suffered is the attorneys' fees it has paid defending against Netlist's infringement suits. This is categorically **not** antitrust injury because attorneys' fees constitute, at best, harm to a competitor, not competition. Mot. 7-10. Netlist's Motion cited no fewer than five cases from jurisdictions across the country holding that such costs constitute harm to Micron only, not harm to competition. *Id.* The Opposition addresses none of them. Instead, Micron fixates on a Federal Circuit case, *Transweb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1311–12 (Fed. Cir. 2016), where the Court found an antitrust injury-in-fact based on attorneys' fees, but what Micron fails to address is that *Transweb* involved a violation under § 4 of the Sherman Act, not § 1. Opp. 12. Moreover, unlike in *TransWeb*, where the antitrust defendant "indicated that it would not license its patents to TransWeb," forcing TransWeb to choose between "ceasing competition altogether or defending the suit," Micron admits that Netlist made "offers made to Micron." Opp. 4. Micron also relies on *Dairy Foods Inc. v. Dairy Maid Prod. Coop.*, which also did not involve a section 1 claim and is similarly unavailing. There, the issue was whether the plaintiff had "adequately set forth an injury to defendant in its business or property" at all, not whether it had suffered an anticompetitive injury. 297 F.2d 805, 808 (7th Cir. 1961) (emphasis added). *Dairy Foods* did not hold that litigation costs constitute a harm to competition more generally.

Micron also argues that it has shown that injury to competition in the form of increased prices and decreased output, but those arguments fail for all of the reasons explained above. Finally, the mere conclusory speculation of Micron's expert that Netlist's conduct will "likely" raise market costs without providing any supporting evidence whatsoever clearly does not constitute evidence of antitrust injury. Dkt. 427-03 ¶ 65.

## V.      MICRON CANNOT SHOW PATENT MISUSE

Micron's patent misuse defense fails for many of the same reasons as it its antitrust counterclaim fails plus some additional ones.

First, Micron does not dispute that its patent misuse defense is predicated on the same blatant misreading of the SK Hynix License as its antitrust claim. Opp. 20. Because that reading finds no support in the text of the agreement or the record evidence, Micron's patent misuse defense also fails.

Second, Micron cannot show that Netlist possesses market power as explained above. Micron also argues that Netlist's alleged assessment of royalties based on Micron's product revenue, as opposed to infringement, constitutes patent misuse regardless of whether Netlist has market power. Opp. 23. With portfolio licenses, however, it is common for royalties to be based on total sales rather than infringement. *See, e.g., Cellport Sys. v. Peiker Acustic GMBH*, 762 F.3d 1016, 1022 (10th Cir. 2014) ("Royalties from a license agreement do not need to be based on the actual use of a patent . . . ."). This does not constitute patent misuse.

Third, Micron cannot dispute that "numerous courts have held [that] an unconsummated offer to license cannot constitute patent misuse." Mot. 20. Micron tries to distinguish these cases by reducing them to their facts but ignores their actual holding, which is clear and unequivocal. Micron's citation to cases addressing Article III standing has no bearing on whether its patent misuse defense fails on the merits as a matter of law.

Finally, Micron's tying theory of patent misuse fails as a matter of law for multiple reasons. First, Micron does not dispute that it has never even requested that Netlist license individual patents, let alone that Netlist has ever refused such a request. Mot. 16. Second, Micron also ignores that patent packaging licenses have numerous pro-competitive benefits because they dramatically decrease transactions costs. Mot 18. Micron, who bears the burden of proof, has not even attempted to show that any supposed anticompetitive effects of alleged tying outweigh these benefits. Finally, Micron's

- 9 -

reliance on *McCullough* is misplaced, as that out-of-circuit case from nearly fifty years ago involved *patent-to-product tying*. 343 F.2d, at 404. As the Federal Circuit held in U.S. *Philips Corp. v. Int'l Trade Comm'n*, a "package license is thus not anticompetitive in the way that a compelled purchase of a tied product would be." 424 F.3d 1179, 1189-90 (Fed. Cir. 2005). Micron tries to distinguish *Philips* because this case involves the "bundling of essential and non-essential patents" where the non-essential patents have value. Opp. 21. As explained above, however, Micron does not even allege that Netlist possesses any standard essential patents at all.

Dated: February 7, 2024                           Respectfully submitted,

                                                  */s/ Jason G. Sheasby*

                                                  Samuel F. Baxter
                                                  Texas State Bar No. 01938000
                                                  sbaxter@mckoolsmith.com
                                                  Jennifer L. Truelove
                                                  Texas State Bar No. 24012906
                                                  jtruelove@mckoolsmith.com
                                                  **MCKOOL SMITH, P.C.**
                                                  104 East Houston Street Suite 300
                                                  Marshall, TX 75670
                                                  Telephone: (903) 923-9000
                                                  Facsimile: (903) 923-9099

                                                  Jason Sheasby (*pro hac vice*)
                                                  jsheasby@irell.com
                                                  Annita Zhong, PhD (*pro hac vice*)
                                                  hzhong@irell.com
                                                  Thomas C. Werner (*pro hac vice*)
                                                  twerner@irell.com
                                                  Andrew Strabone (*pro hac vice*)
                                                  astrabone@irell.com
                                                  Yanan Zhao (*pro hac vice*)
                                                  yzhao@irell.com
                                                  Michael W. Tezyan (*pro hac vice*)
                                                  mtezyan@irell.com
                                                  **IRELL & MANELLA LLP**
                                                  1800 Avenue of the Stars, Suite 900
                                                  Los Angeles, CA 90067
                                                  Tel. (310) 277-1010

Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that, on February 7, 2024, a copy of the foregoing was served to all counsel of record.

*/s/ Yanan Zhao*
Yanan Zhao

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao