# EXHIBIT 16
# FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | § § § | |
| *Plaintiff*, | § § | CIVIL ACTION NO. 2:22-cv-203-JRG-RSP |
| v. | § § | |
| MICRON TECHNOLOGY, INC. *et al.*, | § § § | |
| *Defendants*. | § | |

# MEMORANDUM ORDER

Before the Court are five motions filed by Netlist, Inc. and Micron Technology, Inc. *et al* regarding witness testimony. First, Netlist's Motion to Supplement Expert Reports. **Dkt. No. 316**. Second, Netlist's Motion to Strike Newly Disclosed Witnesses. **Dkt. No. 197**. Third, Netlist's Motion to Strike Certain Opinions of Defendants' Expert John B. Halbert. **Dkt. No. 267**. Fourth, Micron's Motion to Strike Expert Report of Dr. Brogioli. **Dkt. No. 271**. Fifth, Micron's *Daubert* Motion and Motion to Strike Expert Testimony of Dr. William Henry Mangione-Smith. **Dkt. No. 282**.

## I.  BACKGROUND

Netlist's Complaint originally asserted six patents, U.S. Patent Nos. 10,860,506; 10,949,339; 11,016,918; 11,232,054; 8,787,060; and 9,318,160. Dkt. No. 1. Netlist has since dropped the '506 and '339 Patents from this case. *See* Dkt. No. 406 at 108; Dkt. No. 250.

Generally, the Asserted Patents relate to computer memory. U.S. Patents 11,016,918 and 11,232,054, which are related and share a common specification, concern computer memory devices that use different types of memory. '918 Patent at 1:66–2:2; *see also* '054 Patent at 1:66–2:2. U.S. Patents 8,787,060 and 9,318,160, which are related and share a common specification,

concern "systems and methods for reducing the load of drivers of memory packages included on memory modules." '060 Patent at 1:19–21; *see also* '160 Patent at 1:21–23.

## II. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and

2

relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III. MOTION TO SUPPLEMENT EXPERT REPORTS (DKT. NO. 316)

Netlist moves to serve supplemental expert reports for Dr. Mangione-Smith and Dr. Brogioli. Dkt. No. 316.[1] Micron agrees to supplementation regarding evidence disclosed after the close of fact discovery. Dkt. No. 386 at 2 n.1, 3, 6. Accordingly, Netlist's Motion is GRANTED for the agreed upon portions detailed below. The Court turns to the remaining portions of the Motion.

#### A. Portions Addressed by Pending Motions to Strike

Several portions of Micron's opposition rely on reasoning provided in pending motions to strike. *See* Dkt. No. 386 at 3, 4, 5, 6-9 (Mangione-Smith 1st Supp. Rep. ¶¶ 8, 10, 12, 15-17; Mangione-Smith 2nd Supp. Rep. ¶¶ 7, 9-10; all disputes regarding Dr. Brogioli). The disputed

---

[1] Netlist's Motion addresses two supplemental reports proffered by Dr. Mangione-Smith (Mangione-Smith 1st Supp. Rep.; Mangione-Smith 2nd Supp. Rep.).

3

paragraphs that are at issue in the Motions to Strike will be addressed below. *See* Dkt. No. 282 (Motion to Strike Dr. Mangione-Smith); Dkt. No. 271 (Motion to Strike Dr. Brogioli). The Court turns to the remaining disputes regarding new arguments raised in the supplemental reports.

**B. Disputed Paragraphs**

1. <u>Mangione-Smith 1st Supp. Rep. ¶¶ 15-17; Mangione-Smith 2nd Supp. Rep. ¶ 21.</u>

Micron asserts that Dr. Mangione-Smith's citation to Micron's rebuttal expert opinions and argument in response is indicative of new arguments not disclosed previously. Dkt. No. 386 at 3-4; Dkt. No. 407 at 3. Netlist replies that it is willing to remove references to Micron's rebuttal expert report, and it refers to portions of Dr. Mangione-Smith's original report to show that no new theories are presented. Upon review of the original reports and the supplements, the Court finds that no new opinions are presented by these paragraphs.

2. <u>ii. Mangione-Smith 2nd Supp. Rep. ¶¶ 4-5</u>

Micron asserts that the opinion that on-module voltage regulation requires more than PMIC is newly presented in the disputed paragraphs of the second supplemental report. Dkt. No. 386 at 4. Netlist replies that the paragraphs analyze new testimony from Micron's expert and that the original report does not support Micron's characterization. Dkt. No. 390 at 5. The Court finds that the opinions contained in these disputed paragraphs are not impermissible new opinions.

3. <u>iii. Mangione-Smith 2nd Supp. Rep. ¶¶ 15-16</u>

Micron asserts that these paragraphs are in violation of the Court's Standard *Limine* Order No. 18 barring comparison of the accused products to the patent specifications, and further that they discuss matters not present in the original report. Dkt. No. 386 at 5; Dkt. No.407 at 4-5 (asserting that Netlist did not contest these aspects of the objection in reply). Netlist replies that

4

the testimony is not used to prove infringement but to establish that "a module with a power management with non-volatile memory is a type of hybrid memory design." Dkt. No. 390 at 6. In view of the fact that Netlist does not contest that the opinions are new, the argument regarding intended use fails. Leave is denied as to those paragraphs.

4. iv. Mangione-Smith 2nd Supp. Rep. ¶¶ 17-21

Micron asserts that the paragraphs offer "new opinions that the Rambus license is technically comparable to the '918 and '054 patents, based on an analysis of licensed U.S. Pat. No. 9,712,373" and that the original report did not make the comparison to the '373 Patent. Dkt. No. 386 at 5. Netlist replies that Dr. Mangione-Smith's opening report asserted the "technical filed of the Rambus Agreement is DDR SDRAM, which . . . is technically comparable to the Asserted Patents." Dkt. No. 390 at 6-7. The Court finds that the disputed paragraphs do not contain new arguments.

### C. Conclusion

For the foregoing reasoning, Netlist's Motion for Leave to Serve Supplemental Expert Reports is **GRANTED-IN-PART** for the paragraphs agreed upon by both parties (*see* Dkt. No. 386 at 3, 6) and **DENIED** for paragraphs 15-16 of Dr. Mangione-Smith's Second Supplemental Report.

## IV. MOTION TO STRIKE MICRONS' NEWLY DISCLOSED WITNESSES (DKT. NO. 197)

Netlist's Motion seeks to strike John Halbert and Matt Freeman as witnesses for Micron due to untimeliness. Dkt. No. 197 at 5. Mr. Halbert was deposed after the filing of this Motion. *See* Dkt. No. 225 at 1; Dkt. No. 242 at 4. The Court notes that, in reply, Netlist merely requests excluding testimony that is the subject of a pending Motion to Strike. Dkt. No. 242 at 6-8. Regarding Mr. Freeman, Micron asserts that the witness is being offered only as rebuttal regarding

5

"pre-suit notice of certain asserted patents in the 2015 and 2018 time-frame." Dkt. No. 224 at 1. The Court notes that pre-suit notice has recently been found to begin as of April 28, 2021, and that Mr. Freeman would no longer be necessary based on Micron's representation. Dkt. No. 429. Accordingly, Netlist's Motion is **DENIED AS MOOT**.

## V. MOTION TO STRIKE CERTAIN OPINIONS OF DEFENDANTS' EXPERT JOHN B. HALBERT (DKT. NO. 267)

Netlist's Motion seeks to strike several portions of John B. Halbert's expert report. Dkt. No. 267; Dkt. No. 337. Micron opposed the Motion with a response and sur-reply. Dkt. No. 304; Dkt. No. 358.

### A. Public Availability of JEDEC Documents

Netlist asserts that fact evidence involving publication dates of certain JEDEC materials, and search terms that could be used to locate the materials, were not timely disclosed during fact discovery. Dkt. No. 267 at 1.[2] Netlist specifically identifies in reply the documents purportedly without dates or not present in the invalidity contentions. Dkt. No. 337 at 1. Micron responds that "all the JEDEC documents for which Mr. Halbert identifies prior art dates have associated Bates numbers and were produced to Netlist during fact discovery as part of its invalidity contentions." Dkt. No. 304 at 1. Regarding the search terms, Micron responds "Mr. Halbert properly identified this information in advance of his deposition and as part of his expert report." *Id.* at 2. Further, Micron contends that Netlist's attempt in reply to strike all of the JEDEC documents based on a subset is improper. Dkt. No. 358 at 1.

The Court finds that Mr. Halbert's testimony regarding public availability of the JEDEC documents is sufficiently reliable and relevant to be helpful to the trier of fact. Over the course of

---

[2] All page citations for Section V are to the page numbers internal to the document, not the ECF assigned page numbers.

6

the briefing the dispute narrowed to whether a subset of the documents was publicly available. This dispute is a question of fact for the jury and Mr. Halbert's testimony does not supplant the role of the jurors in determining the public availability of the documents. No substantial violation of the disclosure rules has been shown.

### B. Available Alternatives

Netlist asserts that Mr. Halbert's report asserts two non-infringing alternative designs were not disclosed during fact discovery: "placing the PMIC on the motherboard" and "having PMICs that include 'fewer than three buck converts.'" Dkt. No. 267 at 5. Netlist contends that the first appearance of the NIAs in a rebuttal report is prejudicial. *Id.* at 6. Micron responds that the supplemental report opinions "are all properly raised in response to NIA opinions raised by Netlist's expert." Dkt. No. 304 at 5. Netlist contests that the opinions were in response to those raised by their experts. Dkt. No. 337 at 2–3. After consideration of the briefing and the expert report, the Court finds that the opinions were in response to those raised by Netlist's experts. *See* Dkt. No. 267-3 ¶¶ 5–8. The Court is not persuaded to otherwise find that the opinions were not disclosed timely such that striking the opinions would be the proper remedy.

### C. Withdrawal from JEDEC

Netlist asserts that this portion of the report rises and falls with their Motion for Summary Judgment seeking to dismiss Micron's RAND defenses. Dkt. No. 267 at 7. Micron does not contest that these opinions are connected to the RAND defense, rather that the RAND defense should not be removed from the case. Dkt. No. 304 at 9 n.4. In light of the Court's recommendation that Netlist's Motion for Summary Judgment should be granted regarding the RAND defense, the Court finds that this section of Mr. Halbert's report is no longer relevant. *See* Dkt. No. 421. The motion is granted as to this section.

### D. Outcome of ITC Investigations

Netlist asserts that these opinions either involve patents not at issue in this case or are irrelevant if the Court finds that the patents are not standard essential. Dkt. No. 267 at 9–10. Micron's opposition assumes the opposite, that the opinions are still relevant due to being connected to standard essentiality. Dkt. No. 304 at 10. In light of the determination that the patents in suit are not standard essential, the Court finds that Mr. Halbert's opinions contained in paragraph 48 should be stricken. *See* Dkt. No. 421.

### E. Contributions to the JEDEC Standards

Netlist asserts that sections involving "supposed 'contributions' of Netlist and others to JEDEC standards" should be stricken for various reasons. Dkt. No. 267 at 11. First, Netlist asserts that the chart summarizing the contributions has "no nexus to actual damages in the case." *Id.* at 11–12. Second, Netlist asserts that the contributions were not disclosed, the opinions are irrelevant, and the rebuttal report cannot cure the deficiencies. *Id.* 12–15. Micron responds that the nexus between the identified contributions and the accused products for damages is present in the rebuttal report. Dkt. No. 304 at 11. Further, Micron bases its opposition on the assumption that Netlist is relying on the JEDEC standards to prove infringement. Dkt. No. 304 at 12–13; Dkt. No. 358 at 5. As discussed above, the Court has found that the patents are not standard essential. *See* Dkt. No. 421. Accordingly, the Court finds that these opinions are irrelevant and are stricken.

In conclusion, the Court finds that Netlist's Motion to Strike Certain Opinions of Defendants' Expert John B. Halbert is **GRANTED-IN-PART** for Dkt. No. 267 Sections III–V.

## VI.   MOTION TO STRIKE EXPERT REPORT OF DR. BROGIOLI (DKT. NO. 271)

Micron filed this Motion to strike the report of Netlist's expert Dr. Brogioli. Dkt. No. 271; Dkt. No. 323. Netlist opposed the Motion with a response and a sur-reply. Dkt. No. 296; Dkt. No. 368. Micron asserts six aspects of the report warranting a strike. Dkt. No. 271.

### A.  Discussion of the Netlist-Samsung Litigation

Micron asserts that Dr. Brogioli's opening report includes opinions on certain technical features of Samsung's products that are accused outside of the instant case and opinions based on outcome of the outside trial. Dkt. No. 271 at 8. Netlist responds that that the contested paragraphs do not refer to the other litigation at all. Dkt. No. 296 at 4.

Dr. Brogioli's report facially refers to the Samsung litigation in several paragraphs, referring both to discovery documents and the outcome of the litigation. *See* Dkt. No. 271-2 ¶¶ 103, 215, 221, 362 Accordingly, paragraphs 103, 215, 221, 362, 370 of Dr. Brogioli's opening report are stricken. The remaining paragraphs, while mentioning Samsung, are done in the context of explaining developmental progress in relation to Micron or SK Hynix. The Court finds that these paragraphs have not been shown to refer to the prior litigation and, thus, should not be stricken.

### B.  State of Mind Opinions

Micron asserts that certain portions of Dr. Brogioli's report contain opinions "regarding Micron's alleged state of mind." Dkt. No. 271 at 10. In addition to asserting the opinions are improper non-technical opinions, Micron asserts that the bases for the opinions are unreliably based on documents created prior to issuance of the patents or do not have a sponsoring witness. *Id.* at 11–13. Netlist responds that Dr. Brogioli's discussion of indirect infringement is proper and mischaracterized by Micron. Dkt. No. 296 at 7. After reviewing Dr. Brogioli's report, the Court

9

finds that, while Micron disagrees with the conclusions reached by Dr. Brogioli, Micron's concerns can be addressed through cross-examination at trial. The Court is not persuaded that Dr. Brogioli engaged in an impermissible method for reaching conclusions related to indirect infringement. *See* Dkt. No. 271-2 ¶¶ 359–379, 383–386 (with the exception of ¶ 362 stricken above). Micron has not shown that Dr. Brogioli is speculating as to Micron's state of mind. Rather, he is merely characterizing certain evidence.

### C. Financial Success of Prior Art and Accused Products

Micron asserts that Dr. Brogioli "lacks the proper scientific, technical, or other specialized knowledge, namely economic, financial, and business expertise, that would qualify him to opine on the financial success . . . of Micron's products." Dkt. No. 271 at 13. Netlist responds that Dr. Brogioli is not offering economic opinions but rather is opining on the technical inferiority of the alleged alternatives. Dkt. No. 296 at 9–10. The Court finds that most of the paragraphs do not engage in economic theories, but paragraph 298 offers nothing more than recitation of economic value for the proposition that the alleged alternative products were less successful. *See* Dkt. No. 271-2 ¶¶ 67, 297-299, 323, 327, 330. Accordingly, paragraph 298 is stricken.

### D. Untimely Claim Construction Opinions

Micron asserts that Dr. Brogioli's opinions on two terms are not in compliance with the claim constructions either found by the Court or agreed to by the parties. Dkt. No. 271 at 14, 17.

1. "array die"

Micron asserts that Dr. Brogioli's opinions include a meaning of "array die" that "materially deviates from the parties' agreed-upon construction of the term." Dkt. No. 271 at 14. Micron further asserts that the opinions include untimely discussion regarding the prosecution

history of the '060 Patent. *Id.* Micron asserts that the agreed-upon construction of "array die" was "array die that is different from a DRAM circuit." *Id.* at 15.

First, addressing the prosecution history aspects of the report, Dr. Brogioli relies on commentary from the *Markman* hearing that occurred in the *Samsung* trial to anchor further understanding of terms within the patent. Dkt. No. 272-1 ¶ 71; Dkt. No. 296 at 11. In accordance with the above discussion, ¶ 71 is stricken due to reference to the previous litigation. Absent the reference to the prior litigation, the Court finds that the analysis that Dr. Brogioli engages in to understand the meaning of DRAM circuit within the agreed upon interpretation is not impermissible. Micron has demonstrated that they disagree with the conclusions that Dr. Brogioli reaches in reading the claims onto the accused products but has not shown the Court that an impermissible methodology was employed. Particularly, the dispute centers on whether the products are DRAM circuits. *See* Dkt. No. 271-2 ¶ 205. Thus, only Paragraph 71 is stricken.

### 2. "electrical communications"

Micron asserts that Dr. Brogioli employs an incorrect construction of the term "electrical communications." Dkt. No. 271 at 17.

This Court construed "electrical communications" holding:

> the Court agrees with Netlist that "electrical communication" is different from "electrical connection." The Court also agrees with Micron that the existence of data ports, without more, does not satisfy the "electrical communication" requirement in the claims. With this guidance, however, the Court will give this term a "plain and ordinary meaning" construction.

Dkt. No. 249 at 11.

The Court finds that Dr. Brogioli relies on mere electrical connection to data ports as constituting electrical communication. Netlist's argument that Dr. Brogioli does not, due to referring to connections to circuitry, is unpersuasive, where after every reference to circuitry there is a parenthetical of "data port." *See* Dkt. No. 271-2 ¶¶ 225-228, 232 ("As such, the first die

11

interconnect (e.g., a channel A die interconnect) is in electrical communication with core dies 0, 2, 4, etc. because it is coupled to active circuitry such as data ports"). This is contrary to the Claim Construction Order. Accordingly, any such opinions are stricken.

### E. New, Undisclosed Infringement Theories

Micron asserts that Netlist did not disclose Dr. Brogioli's theories applying "TsvForce" and "pass gate" as the claimed "data conduit/conduits." Dkt. No. 271 at 18–19. Specifically, for the '060 Patent, Micron asserts that the infringement chart does not identify test circuits. *Id.* at 19. For the '160 Patent, Micron asserts that the chart only refers to an unspecified "driver circuitry." *Id.* Netlist responds that failure to identify the circuits was due to delays in fact discovery. Dkt. No. 296 at 15–16 ("While Netlist did not update its infringement contentions with citations to the HBM3E source code, Micron cannot credibly argue that Dr. Brogioli's theories are different than those in Netlist's infringement contentions."). Generally, Netlist argues that Dr. Brogioli's theories related to the '060 and '160 Patents are not different from the disclosed infringement contentions. Dkt. No. 296 at 17. The Court is not persuaded that the contentions are new or undisclosed and finds that the infringement theories are consistent with the contentions as disclosed.

In conclusion, Micron's Motion to Strike Expert Report of Dr. Brogioli is **GRANTED-IN-PART** as specified above.

## VII. DAUBERT MOTION AND MOTION TO STRIKE EXPERT TESTIMONY OF DR. WILLIAM HENRY MANGIONE-SMITH (DKT. NO. 282)

Micron filed this Motion to address several opinions contained in the expert report of Dr. Mangione-Smith. Dkt. No. 282; Dkt. No. 330. Netlist opposed the Motion with a response and sur-reply. Dkt. No. 298; Dkt. No. 367.

12

### A. Opinions Related to No Longer Asserted Patents

Micron asserts that Exhibit A of Dr. Mangione-Smith's expert report should be stricken as it only relates to the no longer asserted '506 and '339 patents. Dkt. No. 282 at 5. Micron further asserts that reference to "distributed buffer" is no longer relevant for the same reasoning. *Id.* Netlist responds that striking every paragraph involving the phrase "distributed buffer" is overly broad and would include paragraphs that are still relevant to the '918 and '054. Dkt. No. 298 at 4. The Court finds that references to the now unasserted '506 and '339 Patents should be stricken but declines to broadly strike any mention of "distributed buffer" as it unnecessarily sweeps up still relevant portions of the report.

### B. State of Mind and 2015 Slide Decks as Unreliable

Micron asserts that Dr. Mangione-Smith's opinions regarding willfulness should be stricken as they only summarize documents Micron asserts are inadmissible. Dkt. No. 282 at 6. The Court recently determined that the April 2015 Slide Deck would be pre-admitted[3] and the February 2015 could be admitted if proper foundation is given as expected by Netlist's witness, Mr. Hong. *See* Dkt. No. 436. Turning to Dr. Mangione-Smith's Report the Court finds that the opinions are not impermissibly offering state of mind opinions, but rather are referring to the documents Micron contests. *See* Dkt. No. 282-3 ¶ 652. Nor is the Court persuaded that Dr. Mangione-Smith's report extends beyond technical evaluation of the indirect infringement question. Accordingly, the opinions are not stricken.

### C. New, Undisclosed Theories

Micron asserts that several theories contained in Dr. Mangione-Smith's report were undisclosed. Dkt. No. 282 at 10.

---

[3] Based upon the affidavit at Dkt. No. 294-19.

First, Micron asserts that theories regarding "voltage monitor circuit" relying on inclusion of an "analog to digital converter" based on "an unidentified component of a PMIC located on the accused products" were not disclosed in the infringement contentions. Netlist responds that the theories were disclosed with specificity. Dkt. No. 298 at 10–11. Upon review of the contentions and the report, the Court finds that the theories were disclosed.

Second, Micron argues that new theories are asserted for the claimed "input voltage" and "voltage monitor circuit" due to a "new, different, and not-previously- identified input voltage—a 5v input voltage signal." Dkt. No. 282 at 11. Netlist responds that the infringement contentions for claim 16 of the '918 Patent properly identify the 5v input voltage signal. Dkt. No. 298 at 11–12. Upon review of the contentions and the report, the Court finds that the theories were disclosed in the infringement contentions and Dr. Mangione-Smith has not exceeded the contentions.

Third, Micron asserts theories regarding the "converter circuit," relying on two new theories involving critical terms "combination" and "internal LDO," appear for the first time. Dkt. No. 282 at 12. Further, Micron asserts that Dr. Mangione-Smith's report involves a new theory asserting that the "converter circuit" is met by "the 1.0V LDO or 1.8V LDO when the PMIC has not triggered a VIN_Mgmt input voltage switchover to the VIN_Bulk input voltage." *Id.* Netlist responds that the theory involving "combination" was disclosed and the exact circuit structure is evidence to support the theory rather than a new theory. Dkt. No. 298 at 12. Further, regarding the "switchover," Netlist responds that "Netlist disclosed that UDIMMs and SODIMMs never switchover. The input voltage is always 5V, and thus the converter circuit always receives that same 5V, without a switchover." *Id.* The Court finds that both contested theories sufficiently appeared in the infringement contentions.

14

For each of the contested theories, the Court finds that the parties have identified competing readings of the claim terms onto the accused products that can be properly explored through direct and cross examination at trial. Accordingly, the opinions will not be stricken.

### D. "converter circuit"

Micron asserts that Netlist did not offer claim construction argument for "converter circuit" and therefore Dr. Mangione-Smith's opinions involving interpretation of the term should be stricken. Dkt. No. 282 at 14–16. Netlist asserts that Dr. Mangione-Smith is using the plain and ordinary meaning of the term identified prior to the claim construction stage, specifically that "converter circuit" means "a circuit that converts voltage." Dkt. No. 298 at 14. Micron asserts that Dr. Mangione-Smith is reading the term "converter circuit" as "any circuit that 'converts a higher input voltage to a lower output voltage.'" Dkt. No. 282 at 14–15. Upon review of the report, the Court finds that Dr. Mangione-Smith is not utilizing an impermissible claim construction. Further, the Court finds that Dr. Mangione-Smith is not putting forth the construction Micron represents, namely that a converter circuit is any circuit that converts from high to low voltage. *See* Dkt. No. 282-3 ¶ 172. Therefore the opinions will not be stricken.

### E. Doctrine of Equivalents Opinions

Micron asserts that Netlist belatedly disclosed doctrine of equivalents theories that must be stricken as untimely. Dkt. No. 282 at 16. Micron asserts that opinions related to DoE using "converter circuit" and "non-volatile memory" were not disclosed in the infringement contentions. *Id.* Netlist responds that the doctrine of equivalents was identified in the initial infringement contentions and "Dr. Mangione-Smith simply provides the bridging analysis between the evidence (disclosed in the contentions) and the expert opinion regarding doctrine of equivalents." Dkt. No. 298 at 16.

15

The Court finds that doctrine of equivalents theories were timely disclosed. While the original infringement contentions employed somewhat generic language, the Court finds that Micron was not on notice of the specific theories that Netlist contends were disclosed as interrogatory responses. Micron offers no real analysis showing the interrogatory response was insufficient. Therefore, the opinions will not be stricken.

### F. Technical Valuation Opinions

Micron asserts "[Dr. Mangione-Smith's] opinions— attributing extraordinary worth to the '918 and '054 patents—are based on pure fiction, not any facts or data that can survive Rule 702. Moreover, Netlist once again failed to disclose these contentions during fact discovery." Dkt. No. 282 at 17–18. First, Micron asserts that Dr. Mangione-Smith's opinion that any non-infringing implementation would increase power consumption by 19% is unsupported. *Id.* at 18. "Similarly, Dr. Mangione-Smith's statement that 'Micron would need to reduce the speed to below 4800 MT/s to maintain the same thermal budget' is unsupported." *Id.*

Regarding the power consumption and thermal budget opinions, the Court is not persuaded that Dr. Mangione-Smith engaged in an impermissible method for arriving at his conclusions. Rather Micron has identified issues that can be explored during cross-examination that question Dr. Mangione-Smith's credibility.

Additionally, Micron asserts that opinions regarding the alleged benefits of the asserted patents and availability of alternatives were not disclosed as damages theories. Dkt. No. 282 at 18–19. Netlist responds that the theories were disclosed in interrogatory responses. Dkt. No. 298 at 17–18. Upon review of the contentions, the interrogatory response, and Dr. Mangione-Smith's report, the Court finds that the opinions do not reflect untimely theories, and will thus not be stricken.

### G. Previous Litigation

Micron asserts that reference to the previous litigation involving Netlist and Samsung is inadmissible and in contradiction to Standing MIL # 13. Dkt. No. 282 at 19. Micron does not identify what portion of Dr. Mangione-Smith's report references the previous litigation. Accordingly, the Court finds that there is no remedy the Court can provide outside what is already present within the Standing MILs.

In conclusion, Micron's Motion to Strike for Dr. Mangione-Smith is **GRANTED-IN-PART** for references to the unasserted '506 and '339 Patents.

**SIGNED this 26th day of January, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE