# EXHIBIT 22

# FILED UNDER SEAL

CONFIDENTIAL – ATTORNEYS' EYES ONLY

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| NETLIST, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO, LTD;<br>SAMSUNG ELECTRONICS AMERICA,<br>INC.; SAMSUNG SEMICONDUCTOR INC.,<br><br>        Defendants. | Civil Action No. 2:22-cv-00293-JRG<br>(LEAD CASE)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY, INC., MICRON<br>SEMICONDUCTOR PRODUCTS, INC., AND<br>MICRON TECHNOLOGY TEXAS LLC,<br><br>        Defendants. | Civil Action No. 2:22-cv-00294-JRG<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANTS' SECOND SET OF INTERROGATORIES (NOS. 16-32)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants Micron

Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas LLC

("Defendants" or "Micron") request that Plaintiff Netlist, Inc. ("Plaintiff" or "Netlist") answer the

following interrogatories fully and separately, in writing and under oath, within 30 days.

## DEFINITIONS

The following definitions shall apply throughout these interrogatories, even if upper or

lower case letters are used:

1.    "You," "Your," "Plaintiff," or "Netlist" shall mean Netlist, Inc., including, but not

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

limited to, their predecessors, all parent companies, partners, wholly or partially owned subsidiaries, divisions, past or present affiliated corporations, and each of their present and former employees, agents, officers, directors, representatives, consultants, accountants, and attorneys.

2.      "Micron" or "Defendants" mean and include Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas LLC, together with their respective departments, divisions, subsidiaries, predecessors, and affiliates, past and present, and all present and former employees, representatives, and/or agents acting or purporting to act on their behalf.

3.      "Patent-in-Suits" means the patents that Netlist has asserted in the Present Litigation, including U.S. Patent Nos. 7,619,912 (the "'912 Patent"); 9,858,215 (the "'215 Patent"); 11,093,417 (the "'417 Patent").

4.      "Related Patent" means any patent or patent application related to one or more of the Patents-in-Suit genealogically and/or by common subject matter or inventorship, including but not limited to, any U.S. patent applications, such as continuation applications, continuation-in-part applications, and divisional applications, and all foreign counterpart applications, whether pending, allowed, issued, expired, or abandoned.

5.      "Asserted Claims" mean each claim of the Patents-in-Suits that You contend is or has been infringed by Defendants.

6.      "Accused Product" means any product or service made, used, sold, offered for sale, or imported by Micron that You contend infringes or has infringed one or more Asserted Claims.

7.      "Portfolio" means the group of patents and patent applications owned and/or licensable by one or more persons or entities.  For example, "Your Portfolio" includes all patents and patent applications that You contend You own or have a right to license.

8.      "Present Litigation" or "This Litigation" means the lawsuit in the United States

CONFIDENTIAL – ATTORNEYS' EYES ONLY

District Court for the Eastern District of Texas styled *Netlist, Inc. v. Micron Technology, Inc.*, Civil

Action No. 2:22-cv-00294.

9.      The term "Document" is defined to be synonymous in meaning and equal in scope

to the usage of this term in Federal Rule of Civil Procedure 34(a). A nonidentical copy is a separate

Document within the meaning of this term.

10.     "SPSLA" means the Strategic Product Supply and License Agreement between

Netlist and SK hynix, Inc. ("Hynix").

11.     "PPSA" means the Product Purchase and Supply Agreement between Netlist and

Hynix.

12.     "JDLA" means the Joint Development and License Agreement between Netlist and

Samsung Electronics Co., Ltd. ("Samsung").

13.     "Prior Art" means any patent, publication, system, product, device, or activity that

may fall within the scope of 35 U.S.C. §§ 102 and/or 103.

14.     "Refer to," "referring to," "relate to" and "relating to" mean pertaining to,

concerning, commenting on, connected with, discussing, analyzing, explaining, dealing with,

comprising, mentioning, containing, reflecting, resulting from, evidencing, constituting,

describing, displaying, showing, identifying, proving, disproving, consisting of, supporting,

contradicting, tending to prove or disprove any matter referenced, or regarding a particular subject

in whole or in part, either directly or indirectly.

15.     "JEDEC" means the JEDEC Solid State Technology Association.

16.     "JEDEC Standard(s)" means one or more of any standards, guidelines, or

specifications set by the JEDEC, including (without limitation) DIMM-LABEL4.19.4, JEDEC

Standard No. 21C, JEDEC Standard No. 21C – Appendix: Serial Presence Detect (SPD) for Fully

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Buffered DIMM, JEDEC Standard No. 21C DDR3 LRDIMM – Annex A, JEDEC Standard No.

21C DDR3 LRDIMM – Annex C, JEDEC Standard No. 21C DDR3 LRDIMM – Annex K, JESD

79-2F, JESD 79-3F, JESD 79-4, JESD 79-4-1B, JESD 79-4C, JESD 79-4D, JESD 82-20A, JESD

82-30, JESD 82-31A, JESD 82-31A.01, JESD 82-32A, JESD 205, JESD 206, JESD 248A,

JESD403-1B,          MODULE4.20.27,          MODULE4.20.27.A,          MODULE4.20.27.B,

MODULE4.20.27.C,  MODULE4.20.27.D,  MODULE4.20.27.E,  SPD4.1.2.L-6,  and  any  other

JEDEC specifications referenced in Your infringement contentions and/or charts, and any prior or

subsequent revisions thereto.

17.    "Communication" (or any variant thereof) means the transmittal or exchange of

information (in the form of facts, ideas, inquiries, or otherwise).

18.    "Person" and "Entity" as used herein are synonymous, and mean any natural Person

or business, legal, or governmental Entity or association.

19.    "Identify," when referring to a Person, means to give, if known, the Person's full

name, present or last known address, e-mail address, and telephone number, and when referring to

a natural Person, additionally, the present or last known place of employment. Once a Person has

been identified in accordance with this subparagraph, only the name of that Person needs to be

listed in response to subsequent discovery requesting the identification of that Person.

20.    "Identify," when referring to Documents, means to give, if known, the (i) type of

Document; (ii) general subject matter of the Document; (iii) date of the Document; and (iv)

author(s), addressee(s), and recipient(s) of the Document.

21.    "Concerning" means relating to, concerning, referring to, describing, evidencing,

or constituting.

22.    "Including" means including, but not limited to.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

23.     The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender in each case as most appropriate.

24.     The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive. The terms "any" and "all" shall be given their most inclusive meaning and should be construed to mean "any and all."

25.     "Thing" shall mean any tangible object other than a Document as defined herein, and includes objects of every kind and nature.

## INSTRUCTIONS

A.     Each interrogatory shall be answered separately and fully in writing and under oath, unless it is objected to, in which case the reasons for each objection shall be stated with specificity. If Netlist claims that an interrogatory is in any way objectionable, respond to the portion of the interrogatory believed to be unobjectionable and specifically identify that aspect of the interrogatory that Netlist claims to be objectionable and why.

B.     The interrogatories set forth herein shall be deemed continuing pursuant to Federal Rule of Civil Procedure 26(e) and the applicable Local Rules and thus require further and supplemental response if Netlist discovers additional responsive information after the date of its response hereto, despite a diligent effort to provide all such information within the time specified by Federal Rule of Civil Procedure 33.

C.     Each response shall include such information as is within Netlist's custody, possession, or control, or that of Netlist's attorneys, investigators, agents, employees, or other representatives.

D.     If, after exercising due diligence to make inquiry and secure the information requested, You cannot answer any interrogatory or any part thereof fully, completely, and in

- 5 -

CONFIDENTIAL – ATTORNEYS' EYES ONLY

detail, (1) answer such interrogatory or portion thereof to the fullest extent possible; (2) specify

the interrogatory or portion thereof which You cannot answer fully, completely, and in detail;;

and (3) state what information, knowledge, or belief Netlist has concerning the unanswered

portion. If Your response is qualified in any respect, set forth the details of such qualification.

E.        If, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, You opt

to produce Documents in lieu of a written response to an interrogatory, identify in Your

response to such interrogatory the production number(s) of the Documents produced in lieu of

a narrative response.

## INTERROGATORIES

**INTERROGATORY NO. 16.**        Identify each element of each Asserted Claim, if any,

You contend is not required by the appliable JEDEC Standard(s), and for each such element,

describe Your contention in complete detail, including all factual and legal bases supporting Your

contention, including how the JEDEC Standard(s) can be practiced without practicing the claim

element.

**INTERROGATORY NO. 17.**        Describe in detail, and on a section-by-section and

on an annual basis, all revenues, profits, and other benefits or values Netlist obtained or derived

from the SPSLA and PPLA, including (1) Section 2 of the SPSLA; (2) Section 5 of the SPSLA,

including (without limitation) the types and quantities of products Netlist made, offered for sale,

or sold that include "DRAM and NAND wafers, components, and finished products" supplied by

SK hynix pursuant to Section 5.1 of the SPLA, and Netlist's revenues, costs, and profits from the

manufacture and/or sales of such products; (3) Section 7.1 of the SPSLA, including (without

limitation) the types of quantities of "Netlist Licensed Products" (as defined in the SPSLA) Netlist

made, sold, or offered for sale, and Netlist's assessment of the value of the granted license to

Netlist under Section 7.1 of the SPSLA; (4) Section 7.9 of the SPSLA; (5) Section 7.12 of the

CONFIDENTIAL – ATTORNEYS' EYES ONLY

SPSLA; and (6) Section 2 (including all subsections) of the PPSA, including (without limitation) the types and quantities of "Products" (as defined in the PPSA) that Netlist distributed and resold and Netlist's revenues, costs, and profits attributable to sales of such Products.

**INTERROGATORY NO. 18.**        Describe in detail, and on a section-by-section basis (including, specifically and without limitation, Sections 2, 5, 7.1, 7.2, 7.9, and 7.12 of the SPSLA and Section 2 of the PPSA), facts relating to Netlist's negotiation of the provisions of its SPSLA and/or PPSA with SK hynix Inc., including: (1) the party that initially proposed each section of the SPSLA and/or the PPSA; (2) changes Netlist or SK hynix proposed to each section of the SPSLA and/or the PPSA (if any); (3) Netlist's assessment of the value of each section of the SPSLA and/or the PPSA, and (4) whether any party sought to license less than all of the Licensed Patents (as that term is defined therein) and the royalty rates or other pricing discussed in connection with such request.

**INTERROGATORY NO. 19.**        Describe in detail, and on a section-by-section basis, all revenues, profits, and other benefits or values Netlist obtained or derived from the JDLA, including (1) Section 2 of the JDLA; (2) Section 3 of the JDLA; (3) Section 5 of the JDLA; (4) Section 6.1 of the JDLA, including (without limitation) the types and quantities of any NVDIMM-P controller Netlist provided to Samsung pursuant to Section 6.1, and Netlist's costs, revenues, and profits attributable to sales of such products; (5) Section 6.2 of the JDLA, including (without limitation) the types and quantities of products Netlist made, offered for sale, or sold that include "NAND and DRAM products" supplied by Samsung pursuant to Section 6.2, and Netlist's costs, revenues, and profits attributable to sales of such products; (6) Section 8.1 of the JDLA, including (without limitation) the types of quantities of "Netlist Licensed Products" Netlist made, sold, or

CONFIDENTIAL – ATTORNEYS' EYES ONLY

offered for sale, and Netlist's assessment of the value of the granted license to Netlist under Section 8.1 of the JDLA; and (7) Section 8.2 of the JDLA.

**INTERROGATORY NO. 20.** Describe in detail, and on a section-by-section basis (including, specifically and without limitation, Sections 2, 3, 5, 6.1, 6.2, 8.1, and 8.2 of the JDLA), facts relating to Netlist's negotiation of the provisions of the JDLA, including: (1) the party that initially proposed each section of the JDLA; (2) changes Netlist or Samsung proposed to each section of the JDLA (if any); (3) Netlist's assessment of the value of each section of the JDLA, and (4) whether any party sought to license less than all of the Licensed Patents (as that term is defined therein) and the royalty rates or other pricing discussed in connection with such request.

**INTERROGATORY NO. 21.** For each product, system, or service that You have granted a license to one or more of the Patents-in-Suit, including without limitation any Samsung or SK hynix DDR4 LRDIMMs or RDIMMs, DDR3 LRDIMMs, or DDR2 FBDIMMs (during the time periods of the Samsung or SK hynix licenses), whether such product was sold by Samsung or SK hynix or resold by You, describe in detail how You contend that the product, system, or service complied with the marking provisions in 35 U.S.C. § 287, including identifying any Documents and Things that You contend support Your contention, or to the extent that You contend that any such product, system, or service is not subject to the marking provisions of 35 U.S.C. § 287, describe the factual bases for that contention.

**INTERROGATORY NO. 22.** For each Patent-in-Suit in Netlist's Portfolio, identify the percentage share of the total value of Your Portfolio that You contend is attributable to that patent (and/or the patent family to which it belongs), and describe in detail the methods used to calculate such percentages.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**INTERROGATORY NO. 23.**        Provide a narrative description of Your business practices, including but not limited to describing the types of products or services provided, the products sourced from SK hynix or Samsung, any value Netlist adds to SK hynix or Samsung products it has resold, the revenues and profits Netlist generated or gained from the sale of products or services in the United States and globally during the last ten years, including identifying all of Your past and present customers, and the amount of revenues and profits Netlist generated or gained from enforcing or licensing patents in the United States and globally during the last ten years.

**INTERROGATORY NO. 24.**        For each Asserted Claim of each Patent-in-Suit, identify the benefit(s) to Micron and/or Micron's customers, if any, You contend is provided by each Asserted Claim.

**INTERROGATORY NO. 25.**        If You contend that there are no acceptable non-infringing alternatives to the Accused Products, or that any alleged non-infringing alternative identified by Micron in this action is not acceptable, describe in detail the basis for Your contention, including but not limited to why You contend there are no acceptable alternatives or the alternative is not acceptable, whether, and if so, why, the alternative infringes any claim of any of the Patents-in-Suit, when the alternative was available if you contend it was not available at the time of hypothetical negotiation, and the costs associated with implementing and using the alternative, if you contend it renders the alternative unacceptable.

**INTERROGATORY NO. 26.**        If You ever formed a belief that any of the Patents-in-Suit were standard essential, state the date you formed such a belief, and describe the circumstances, including describing with particularity any evaluation, investigation, observation, review, or analysis supporting or contradicting any such belief, including any claim charts or

CONFIDENTIAL – ATTORNEYS' EYES ONLY

analysis of the JEDEC Standards.    Such description should include, without limitation, an identification of all Documents reviewed, when such evaluation or analysis was undertaken, the Persons involved in such evaluation or analysis, and a description of any analysis of systems, methods, processes, devices, products or services that comply with the JEDEC Standards.

**INTERROGATORY NO. 27.**    Identify Your F/RAND royalty terms for each Patent-in-Suit, including but not limited to royalty rate, and describe in detail the reasons You believe those terms to be F/RAND, and identify all communications in which You have asserted that You would be willing to license any Patent-in-Suit under F/RAND terms.

**INTERROGATORY NO. 28.**    Describe in detail any Third Party involvement in the research, development, design, production, manufacture, assembly, packaging and/or testing of each of the products identified in your response to Interrogatory No. 2 and each product you contend is licensed under the Patents-in-Suit and describe in detail that each Third Party's precise role in the aforementioned activities.

**INTERROGATORY NO. 29.**    For any Accused Product for the '912 Patent that You contend is not subject to intervening rights, including statutory or absolute intervening rights under 35 U.S.C. § 252 and/or equitable intervening rights, identify that Accused Product with specificity, including at least the model number and the time period(s) during which You contend that Accused Product was sold without being subject to intervening rights, and describe in detail Your factual and legal basis for contending that intervening rights does not apply for that Accused Product, including without limitation, identifying any material differences between such Accused Product and any product that you admit is subject to intervening rights.

**INTERROGATORY NO. 30.**    If You contend that it would be consistent with Netlist's FRAND obligations and obligations in connection with Netlist's JEDEC membership to

CONFIDENTIAL – ATTORNEYS' EYES ONLY

obtain a higher royalty rate from Micron for the same patents as compared to the royalty rate it obtain from Samsung in the JDLA or Hynix in the SPLSA, describe in detail the basis for Your contention, including but not limited to describing what obligations govern and how the royalties sought or obtained from each of these entities complies with these obligations.

**INTERROGATORY NO. 31.**    Identify procompetitive justifications for Section 7.12 of the SPSLA with Hynix, including, but not limited to, each of the following provisions:

   i.    "Following the Effective Date, Netlist shall ensure that the terms of this Agreement (excluding product supply and joint development terms) shall be no less favorable than the terms provided to either Micron or Samsung in a license agreement (excluding any and all non-patent licensing terms such as any product supply, product development, joint venture or lending agreements) involving the Netlist Licensed Patents (the "Subsequent License Agreement")."

   ii.   "For the avoidance of any doubt, a Subsequent License Agreement shall not include an agreement that does not contain a license to the Netlist Licensed Patents."

   iii.  "The Auditor shall also, upon SK hynix's request, identify the patents licensed, the license terms of each patent licensed, the royalties paid for said license and any other terms the Auditor identifies to Netlist that are reasonably necessary to allow SK hynix to exercise its right under this section."

   iv.   "The Auditor shall determine the favorability of the Subsequent License Agreement based on a pro rata basis, by comparing the royalty paid under

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

this Agreement and any Subsequent License Agreement, the total memory revenue reported by the public source OMDIA for all of SK hynix, Samsung and Micron and other relevant factors [] such as patent license duration, patent license scope, licensed products and aggregate license payments of this Agreement and the Subsequent License Agreements."

v.    "SK hynix and Netlist agree that the royalty attributed to SK hynix shall be adjusted up or down on a pro rata basis by comparing the total memory revenue reported by the public source OMDIA for all of SK hynix, Samsung and Micron, and the patent license period, patent license scope, licensed products and aggregate license payments of this Agreement and the Subsequent License Agreements."

**INTERROGATORY NO. 32.**    If You contend that there are no less restrictive alternatives to the provisions in Section 7.12 of the SPLSA, describe in detail the basis for Your contention, including but not limited to why You contend there are no less restrictive alternatives, whether less restrictive alternatives were considered, what those alternatives were, and the basis for arriving at the executed SPLSA in lieu of each of these considered alternatives.

Dated: October 13, 2023                    Respectfully submitted,

By: */s/ Michael R. Rueckheim*
    Thomas M. Melsheimer
    State Bar No. 13922550
    TMelsheimer@winston.com
    Natalie Arbaugh
    State Bar No. 24033378
    NArbaugh@winston.com
    WINSTON & STRAWN LLP
    2121 N. Pearl Street, Suite 900

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

David P Enzminger (pro hac vice)
denzminger@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael R. Rueckheim
State Bar No. 24081129
MRueckheim@winston.com
Ryuk Park (pro hac vice)
RPark@winston.com
Matthew R. McCullough
State Bar No. 301330
MRMcCullough@winston.com
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

William M. Logan
State Bar No. 24106214
wlogan@winston.com
Juan C. Yaquian *(pro hac vice)*
State Bar No. 24110559
JYaquian@winston.com
WINSTON & STRAWN LLP
800 Capital Street, Suite 2400
Houston, TX 77002-2925
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Wesley Hill
State Bar No. 24032294
wh@wsfirm.com
Andrea Fair
State Bar No. 24078488
andrea@wsfirm.com
Charles Everingham IV
State Bar No. 00787447

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DEFENDANTS
MICRON TECHNOLOGY, INC.,
MICRON SEMICONDUCTOR
PRODUCTS, INC., AND MICRON
TECHNOLOGY TEXAS LLC**

CONFIDENTIAL – ATTORNEYS' EYES ONLY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served via email on all counsel of record on October 13, 2023.

/s/ *Michael R. Rueckheim*
Michael R. Rueckheim