# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-293-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO, LTD; | ) | (Lead Case) |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC.; SAMSUNG SEMICONDUCTOR | ) | ▬▬▬▬▬▬▬▬▬ |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-294-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC.; | ) | |
| MICRON SEMICONDUCTOR | ) | |
| PRODUCTS, INC.; MICRON | ) | |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**NETLIST, INC.'S MOTION TO STRIKE PORTIONS OF THE
REBUTTAL EXPERT REPORT OF LAUREN KINDLER [DKT. 355]**

# TABLE OF CONTENTS

                                                                                           **Page**

A.  Ms. Kindler's Apportionment Methodology Violates Federal Circuit Law ................................................................................................1

B.  Ms. Kindler's Conclusions Regarding The SK Hynix Licenses/JDLA Are Arbitrary ........................................................................3

C.  Ms. Kindler's Analysis Of Other Samsung Licenses Is Unreliable ..................................................................................................3

D.  References to RAND/JEDEC Contributions (¶¶ 61-71, 150-51, 170-74, 230-234) ......................................................................4

E.  References to Other Litigation and IPRs Should Be Excluded ....................................................................................................4

F.  Improper Testimony On JDLA/SK Hynix License (¶¶ 18, 27, 28, 85, 89(e), 91, 96-100) ....................................................................5

G.  Improper Use of Rule 408 Communications (¶¶ 70, 230, 231) ........................................................................................................5

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple Inc. v. Wi-LAN Inch.*,
   25 F.4th 960 (Fed. Cir. 2022) ................................................................................................2

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015) ..............................................................................................2

*Fujitsu Ltd. v. Belkin Int'l, Inc.*,
   2012 WL 5835741 (N.D. Cal. Nov. 16, 2012) ......................................................................6

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ............................................................................................3, 4

*Realtek Semiconductor Corp. v. LSI Corp.*,
   2014 WL 46997 (N.D. Cal. Jan. 6, 2014) ..............................................................................3

*SJB Grp. v. TBE Grp.*,
   2013 WL 4092575 (M.D. La. Aug. 12, 2013) .......................................................................5

*Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*,
   609 F.3d 1308 .......................................................................................................................4

A.   **Ms. Kindler's Apportionment Methodology Violates Federal Circuit Law**

Samsung does not engage with the fact that Ms. Kindler's apportionment analysis for the JDLA and SK Hynix License is nearly identical to the approach the Court excluded in *Samsung I* as violating *Wi-LAN*, much less explain why the Court should reach a different result here. Samsung's claim that Netlist's (and by implication, the Court's) interpretation of *Wi-LAN* is "misguided" is wrong. In *Wi-LAN*, the Federal Circuit rejected an opinion that two patents-in-suit were key patents covered by the comparable licenses such that those licenses could be used to derive a royalty rate. *Id.* 973-74. Specifically, the court noted that (1) "all three licenses were obtained prior to any litigation" involving the patents-in-suit; and (2) "those licenses treated the asserted patents as chaff, not wheat." *Id.* at 973. The licenses divided licensed patents into two categories: Asserted and Non-Asserted Patents—no license listed one of the patents-in-suit as an Asserted Patent, and only one listed that patent at all "in a schedule listing hundreds of Non-Asserted Patents." *Id.* Two of the licenses did not list the other patent-in-suit as an "Asserted Patent," and for the third, the patent was one of six Asserted Patents, with no evidence as to how the other Asserted Patents drove value. *Id.* For these reasons, the court concluded that use of the licenses to derive a royalty was not tethered to the facts.

Ms. Kindler's analysis has the same flaws. She  But none of the Asserted Patents had been asserted in litigation against SK Hynix or Samsung at the time the licenses were executed, nor are any listed on the face of the licenses. Ms. Kindler points to no evidence that SK Hynix used or was concerned it may use the Asserted Patents, nor does she identify evidence that the Asserted Patents were relevant to the ▮▮▮ Ex. 2 at 1. In fact, under Samsung's view, ▮▮▮. Dkt. 341.

Samsung's argument that Ms. Kindler considers how the parties "treated" the Asserted Patents

- 1 -

because she relies on Netlist's "assertion" activities is misplaced. Opp. at 2. There is no evidence that the mere fact that Netlist asserted patents against *other* parties impacted the royalties paid by Samsung/SK Hynix. The Federal Circuit is clear that a comparable license analysis must analyze the circumstances of the "contracting parties." *Wi-LAN*, 25 F.4th at 971.

Samsung also points to ███████████████████████████████████████████████████████████████████████ Opp. at 2. But Ms. Kindler does not explain how she assigns value based on those terms. Rather, her analysis is nothing more than a black box, in which these qualitative statements go into the box and a conveniently apportioned number ███████████████████████████████████) comes out. Indeed, while Ms. Kindler purports to rely on Mr. McAlexander to ███████████████████████████████████████████████████████████████████, Mr. McAlexander did not value the 40 other patents in those families relative to the patents-in-suit. Instead, Ms. Kindler ███████████████████████████████████████████████████████████████████████. The Federal Circuit has expressly rejected the use of such black box qualitative inputs to justify an arbitrary and not reproducible quantitative apportionment. *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015) ("[A]s damages models are fact-dependent . . .qualitative testimony that an invention is valuable—without being anchored to a quantitative market valuation—[is] insufficiently reliable.").[1]

With respect to Ms. Kindler's patent citation approach, Samsung fails to identify a single case where this approach was found to be a reliable way to value specific patents in a portfolio when those

---

[1] Samsung's assertion that Netlist is arguing that Ms. Kindler must consider "negotiation documents" or "parol evidence" to comply with *Wi-LAN* is misdirection. Netlist never made such an argument, but instead pointed out that there must be some basis in the factual record to assign a subset of the value of a portfolio license to specific patents within that portfolio, which Ms. Kindler has not done. Samsung's claim that Netlist has not complied with its discovery obligations is likewise false. There are no negotiation documents that reference the Asserted Patents and thus nothing to produce.

patents had not been issued as of the date of the license. Under the facts here, this approach is "not appropriate for determining the value of individual patents." *Realtek*, 2014 WL 46997, at *3–4.[2]

### B. Ms. Kindler's Conclusions Regarding The SK Hynix Licenses/JDLA Are Arbitrary

Tellingly, Samsung fails to identify any quantitative evidence that supports Ms. Kindler's ███████████████████████████████████. As to the JDLA, Samsung does not point to any quantitative analysis to support ████████████████████████████████████████ ████████████████████. Opp. at 7-8.[3] This is not "adjusted" at all, she simply opines ██████ ██████████████████████████████. As to the SK Hynix license, Mr. McAlexander opined that ██ ████████████████████████████████████████████████████████████████████████████ ███████████████████████████████ Ex. 4 (McAlexander Attach. D) ¶ 103. This opinion—which suggests that the Asserted Patents could have up to the same value as the SK Hynix patents—does not quantitatively support ████████████████████████████. Samsung also points to Ms. Kindler's patent citation analysis, but that analysis does not suggest a 50% apportionment, either. The Federal Circuit has made clear that numbers "plucked out of thin air" masquerading as quantitative damages analysis are not admissible. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) (such "arbitrariness" "would alone justify excluding [expert]'s opinions").

Ms. Kindler uses the ████████████████ factor for the JDLA, again without any evidence that the Asserted Patents—two of which had not even issued at the time the JDLA was entered—were responsible for driving the terms of that agreement.

### C. Ms. Kindler's Analysis Of Other Samsung Licenses Is Unreliable

---

[2] The inherent unreliability of Ms. Kindler's analysis is evident in her use of time periods that span the first 4.5 and 8 years after patent publication, even though the '608 Patent was first published less than 6 years ago and the '417 Patent was first published less than 4 years ago.

[3] Samsung claims Ms. Kindler opines that the adjusted rate under the JDLA is a range of $8 to $24.2 million, but that is not true. While she opines that the value Netlist received under the agreement may be up to $24.2 million, she asserts the $8 million would cap the royalty at the hypothetical negotiation. *See, e.g.*, Ex. 1 at ¶ 91 ████████████████████████████████████████████ ████████████████████████████████████████████ ¶ 179 (same).

- 3 -

Samsung claims Mr. McAlexander opined that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. That was not his opinion. He merely opined that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 4, ¶¶ 46 (▮▮▮▮▮▮); 53 (▮▮▮▮▮▮), 61 (▮▮▮▮▮▮), 68 (▮▮▮), 75 (▮▮). Samsung does not cite a single case suggesting that an opinion that as little as one patent in a license is technically comparable is legally sufficient to establish that the license as a whole is technically comparable, particularly where (as here) there is no evidence or analysis indicating the patent(s) analyzed were relevant to setting the rate in the license, much less key patents.[4] Moreover, Samsung does not dispute that the Federal Circuit requires a party alleging comparability of a lump sum license to perform a basic analysis of "how the parties [to each license she relied on] calculated each lump sum, the licensees' intended products, or how many products each licensee is expected to produce," which is needed to provide a "basis for comparison with [defendant's] sales." *Wordtech*, 609 F.3d at 1322. Nor does it dispute that Ms. Kindler failed to perform such an analysis. Without this, any attempt to "adjust" the lump sum to account for other differences (such as geographic scope) is inherently unreliable. *LaserDynamics*, 694 F.3d at 69 (such "arbitrariness" "would alone justify excluding [expert]'s opinions").[5]

**D.     References to RAND/JEDEC Contributions (¶¶ 61-71, 150-51, 170-74, 230-234)**

Samsung's claim that Ms. Kindler should be permitted to discuss RAND and JEDEC because the patents are SEPs is contrary to its own ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This Court rejected the "if infringed, then essential" tactic in both *Samsung I* and *Micron I*, and should do so again.

**E.     References to Other Litigation and IPRs Should Be Excluded**

---

[4] Samsung's argument that Netlist did not move to exclude Mr. McAlexander's underlying opinion misses the point. Netlist does not contend his ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is inadmissible; Netlist contends his opinion is legally insufficient to support **Ms. Kindler's** conclusion of comparability.

[5] Samsung does not dispute it failed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as comparable during discovery, despite Netlist's interrogatory seeking this information. It has thus waived the ability to advance such a position at trial. Samsung's claim that Ms. Kindler's ▮▮▮▮▮▮▮▮▮▮▮ is merely a rebuttal to Mr. Kennedy is false. The paragraphs Netlist seeks to exclude (Ex. 1 ¶¶ 107-108) are in Ms. Kindler's affirmative damages analysis (¶¶ 72-181), not in her rebuttal to Mr. Kennedy (¶¶ 209-221).

**C.D. Cal. History/Verdict (¶¶ 30-34, 89(e)(ii))**: Ms. Kindler can tell the jury she assumed that the JDLA terminated in 2020 without reference to the procedural history of the prior lawsuit. Ms. Kindler should also not be permitted to introduce the C.D. Cal. jury verdict, which was based on the ███████████████████████████████████████████████████████████████████████.

**SK Hynix Litigation (¶¶ 92-93)**: Samsung claims Netlist's prior litigations and IPRs involving SK Hynix are somehow relevant to "how to apportion the Sk Hynix Agreement." Opp. at 12. As explained in Netlist's motion, Ms. Kindler discusses ███████████████████████ ██████████████████████████████████████████████████████.

**Samsung 1 Patents (¶¶ 236-37)**: Ms. Kindler may refer to other patents in Netlist's portfolio that provide similar benefits, but she should not be permitted to testify about the IPRs or state Netlist's patents are "invalid." Such testimony would result in a prejudicial sideshow about the IPRs and their finality, and would also open the door to evidence that a prior jury found the patents to be valid.

F.  **Improper Testimony On JDLA/SK Hynix License (¶¶ 18, 27, 28, 85, 89(e), 91, 96-100)**

While Ms. Kindler may rebut Mr. Kennedy's opinions regarding the value of the supply provisions in the JDLA and SK Hynix license, she may not engage in legal contract interpretation or speculate about what SK Hynix and Netlist considered to be compensation. *SJB Grp. v. TBE Grp.*, 2013 WL 4092575, *3 (M.D. La. Aug. 12, 2013) ("opinions as to the interpretation of the contract and the intention of the parties to the contract shall be excluded as they are legal conclusions.").

G.  **Improper Use of Rule 408 Communications (¶¶ 70, 230, 231)**

Ms. Kindler does not use the ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████. This use is forbidden. *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 2012 WL 5835741, *6 (N.D. Cal. Nov. 16, 2012) ("Rule 408 bars admission of communications during a compromise negotiation to prove validity or invalidity of a claim **or its amount**.").

| | |
|---|---|
| Dated: February 7, 2024 | Respectfully submitted,<br><br>*/s/ Jason G. Sheasby*<br><br>Samuel F. Baxter<br>Texas State Bar No. 01938000<br>sbaxter@mckoolsmith.com<br>Jennifer L. Truelove<br>Texas State Bar No. 24012906<br>jtruelove@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>104 East Houston Street Suite 300<br>Marshall, TX 75670<br>Telephone: (903) 923-9000<br>Facsimile: (903) 923-9099<br><br>Jason Sheasby (*pro hac vice*)<br>jsheasby@irell.com<br>Annita Zhong, PhD (*pro hac vice*)<br>hzhong@irell.com<br>Thomas C. Werner (*pro hac vice*)<br>twerner@irell.com<br>Andrew Strabone (*pro hac vice*)<br>astrabone@irell.com<br>Yanan Zhao (*pro hac vice*)<br>yzhao@irell.com<br>Michael W. Tezyan (*pro hac vice*)<br>mtezyan@irell.com<br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>Tel. (310) 277-1010<br>Fax (310) 203-7199<br><br>Rebecca Carson (*pro hac vice*)<br>rcarson@irell.com<br>**IRELL & MANELLA LLP**<br>840 Newport Center Drive, Suite 400<br>Newport Beach, CA 92660<br><br>**Attorneys for Plaintiff Netlist, Inc.** |

## CERTIFICATE OF SERVICE

I hereby certify that, on February 7, 2024, a copy of the foregoing was served to all Samsung counsel of record.

*/s/ Isabella Chestney*
Isabella Chestney

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in the Case.

*/s/ Isabella Chestney*
Isabella Chestney