UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| NETLIST, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY TEXAS, LLC, et al.,<br><br>Defendants. | Civil No. 2:22-cv-00294-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S SUR-REPLY TO NETLIST'S MOTION TO STRIKE
CERTAIN OPINIONS OF SAMSUNG'S EXPERT MS. LAUREN KINDLER (DKT. 355)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................................ii

TABLE OF EXHIBITS TO NETLIST'S MOTION................................................................................iii

TABLE OF EXHIBITS TO SAMSUNG'S OPPOSITION ....................................................................iii

TABLE OF ABBREVIATIONS..............................................................................................................iv

I.    Ms. Kindler's Apportionment Methodology Is Consistent with *Apple v. Wi-LAN*...................1

II.   Ms. Kindler's Adjusted JDLA/SK hynix Rates Are Based on Reliable Methodologies ...........3

III.  Ms. Kindler's Analysis of Samsung's Inbound Licenses Is Reliable............................................3

IV.  Ms. Kindlers RAND and JEDEC-Related Opinions are Relevant to This Case .......................4

V.   Ms. Kindler's References to Other Litigation and IPRs Are Relevant.........................................4

VI.  Ms. Kindler's Report Does Not Perform Any Legal Contract Interpretation............................5

VII. Ms. Kindler's Report's Reliance on Netlist's "RAND" Offer Is Proper.....................................5

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Wi-LAN Inc.*,
    25 F.4th 960 (Fed. Cir. 2022) ..................................................................................................1

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ....................................................................................................3

*Lucent Techs. Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ................................................................................................3

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010) ................................................................................................4

**Other Authorities**

Fed. R. Evid. 408 ............................................................................................................................5

Fed. R. Evid. 703 ............................................................................................................................5

## TABLE OF EXHIBITS TO NETLIST'S MOTION

| # | Description |
|---|---|
| 1 | Rebuttal Expert Report of Lauren Kindler (Dec. 21, 2023) |
| 2 | Joint Development License Agreement (NETLIST- SAMSUNG - EDTX00037780) |
| 3 | Strategic Product Supply and License Agreement between Netlist and SK hynix (Apr. 5, 2021) (NETLIST SAMSUNG_EDTX00037749) |
| 4 | Attachment D to the Rebuttal Expert Report of Joseph C. McAlexander III (Dec. 23, 2023) |
| 5 | Samsung's Suppl. Objs./Resps. to Netlist's 1st Interrogs. (Nov. 20, 2023) |
| 6 | JEDEC Manual of Organization and Procedure (JM21V) (November 2023) |
| 7 | Netlist's Fourth Suppl. Objs./Resps. to Samsung's Second Interrogs. (Nov. 19, 2023) |
| 8 | Deposition Transcript of Hyun Joong "Johnny" Kim from *EDTX1* (Dec. 6, 2023) |
| 9 | Hearing Transcript from Oral Argument in the Ninth Circuit Appeal (Jun. 8, 2023) |
| 10 | Letter from Netlist to Samsung (June 8, 2022) (NETLIST_SAMSUNG_EDTX00037348) |

## TABLE OF EXHIBITS TO SAMSUNG'S OPPOSITION

| # | Description |
|---|---|
| A | Exhibit 9 to Rebuttal Report of Lauren Kindler (Dec. 21, 2023) (excerpts) |
| B | Expert Report of David Kennedy (Nov. 20, 2023) (excerpts) |
| C | Deposition Transcript of Tobin Hobbs (Nov. 20, 2022) (excerpts) |
| D | Deposition Transcript of David Kennedy (Jan. 15, 2024) (excerpts) |
| E | Expert Report of John Halbert (Nov. 20, 2023) (excerpts) |
| F | (NETLIST_SAMSUNG_EDTX00064073) |
| G | (NETLIST_SAMSUNG_EDTX00064006) |
| H | Trial Transcript from *EDTX1* (public, excerpts) |
| I | Samsung's Suppl. Objs. & Resps. to Netlist's 1st Interrogs. (Nov. 20, 2023) (addl. excerpts) |
| J | Attachment A to McAlexander Initial Expert Report (2023-11-20) (excerpts) |
| K | Attachment B to McAlexander Initial Expert Report (2023-11-20) (excerpts) |
| L | Attachment C to McAlexander Initial Expert Report (2023-11-20) (excerpts) |
| M | Exhibit A-4 to Attachment A to McAlexander Initial Expert Report |
| N | Exhibit B-6 to Attachment B to McAlexander Initial Expert Report |
| O | Exhibit C-4 to Attachment C to McAlexander Initial Expert Report |
| P | Netlist's 4th Suppl. Objs./Resps. to Samsungs 2nd Interrogs. (Nov. 19, 2023) (addl. excerpts) |

## TABLE OF EXHIBITS TO SAMSUNG'S SUR-REPLY

| # | Description |
|---|---|
| Q | Letter from Netlist to Micron (April 1, 2022) (NETLIST_SAMSUNG_EDTX00042440) |
| R | Exhibits to Rebuttal Report of Lauren Kindler (Dec. 21, 2023) (excerpts) |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
| --- | --- |
| C.D. Cal. Case | *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-CV-00993 (C.D. Cal.) |
| *EDTX1* | *Netlist Inc. v. Samsung Electronics Co. Ltd.*, No. 2:21-CV-463 (E.D. Tex.) |
| JDLA | Joint Development and License Agreement |
| MFL | Most Favored Licensee |
| Ninth Circuit Appeal | *Netlist Inc. v. Samsung Elecs. Co.*, Ltd., No. 22-55209 (9th Cir.). |
| SK hynix Agreement | Strategic Product Supply and License Agreement between SK hynix, Inc. and Netlist, Inc. (April 5, 2021) |

### I. Ms. Kindler's Apportionment Methodology Is Consistent with *Apple v. Wi-LAN*

Netlist's reply focuses extensively on *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960 (Fed. Cir. 2022), in which the plaintiff's expert (Netlist's Mr. Kennedy) attributed special value to the asserted patents, despite the complete lack of evidence to justify his treatment. *Wi-LAN*, 25 F.4th at 973. Here, unlike the expert in the *Wi-LAN* case, Ms. Kindler supports her apportionment opinion as to the JDLA and SK hynix Agreement with extensive evidence tied to the facts of this case and those agreements.

**Ms. Kindler's Analysis Is Supported by the Evidence:** Unlike the plaintiff's expert in *Wi-LAN*, Ms. Kindler analyzed the JDLA and the SK hynix Agreement to determine that the asserted patents in this case were **not** the key drivers of value—as such, these few patents could not drive 100% of the royalty. So she analyzed **Netlist's** evidence to derive **Netlist's** value of the asserted patents in her apportionment methodology. Ex. 1, ¶¶ 89(g)(i), 100(e)(i). For example, she considered Netlist's characterization of certain patent families as ▮▮▮▮ which indicated that Netlist viewed those particular patents as having higher value than other patents in Netlist's portfolio. *Id.* Based on Netlist's characterization that several other patents in Netlist's portfolio were valuable to Netlist and its licensees, Ms. Kindler calculated the approximate value of these few patents would be ▮. Given the upward pressure for the assumption of validity and infringement and the downward pressure of other "valuable" patents, it was both reasonable and conservative for Ms. Kindler to then assign ▮ ▮▮▮▮ to the asserted patents. *Id.* ▮▮▮▮ ▮▮▮▮ ▮▮▮▮. Ms. Kindler's methodology is reliable. Indeed, "any reasonable royalty analysis necessarily involves an element of approximation and uncertainty." *Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009).

1

**Netlist's Admission That There Are No Documents Identifying the Asserted Patents as Valuable to SK hynix Supports Ms. Kindler's Opinion:** Netlist's reply ignores that Netlist deliberately deprived Samsung of the discovery Netlist contends Samsung needs to perform a reliable apportionment of the SK hynix Agreement. Netlist forced Samsung to move to compel negotiation documents between SK hynix and Netlist, and Netlist also moved for a protective order to prohibit discovery into those negotiations. *See* Dkts. 139, 142. Recognizing the fundamental unfairness of Netlist's position, Judge Folsom recommended Netlist be compelled to produce "settlement and license negotiation documents showing any valuation or apportionment of value by Netlist or SK hynix to the patents asserted against Samsung." Dkt. 377 at 9. In its reply, Netlist—while simultaneously objecting to that recommendation—alleges that "[t]here are no negotiation documents that reference the Asserted Patents." Dkt. 517 at 2, n.1. If true, the fact that Netlist negotiated with SK hynix as to other patents in its portfolio **corroborates** Ms. Kindler's conclusion that the license royalty must be apportioned downward. Ex. 1, ¶ 100.

**Ms. Kindler's Patent Citation Analysis Addresses Netlist's Criticisms:** Netlist's reply does nothing to address the several cases that have endorsed patent citation analyses conducted on portfolio licenses to determine the value of asserted patents. *Compare* Dkt. 434 at 5 *with* Dkt. 517 at 2-3. Netlist cites no economic or legal authority that Ms. Kindler's citation analysis for unissued patents—as of the precise date of the license—is unreliable. *See* Dkt. 517 at 2-3. At the outset, Netlist ignores that the '912 patent ( ) **had issued** by the time of the JDLA and both the '912 and '608 patents **had issued** by the time of the SK hynix Agreement. *See, e.g.*, Ex. R at Exs. 1.1, 1.3. Moreover, Netlist's reply ignores the book of wisdom, which allows experts to consider information that post-dates the hypothetical negotiation. *See, e.g.*, *Sinclair Refin. Co. v. Jenkins Petrol. Process Co.*, 289 U.S. 689, 698 (1933). Further, Ms. Kindler's citation analysis addresses the timing of issuance of the asserted patents, and demonstrates that

2

regardless of whether she limits the analysis to the patents that had issued at the time of the agreements or uses all three asserted patents, the result will be the same because she focused on patent families. *See, e.g.*, Ex. R at Ex. 1.4 & n.(c). Netlist's arguments go to weight, not admissibility.

## II. Ms. Kindler's Adjusted JDLA/SK hynix Rates Are Based on Reliable Methodologies

Netlist is wrong that Ms. Kindler provides no quantitative analysis to support adjustments to the JDLA and SK hynix rates. *See* Dkt. 517 at 3. **First**, as to the JDLA, Netlist erroneously claims that Ms. Kindler simply opines that the $8 million paid by Samsung to Netlist would be the appropriate royalty in this case, without any adjustment. *Id.* Netlist conveniently ignores that Ms. Kindler actually calculated an adjusted range based on the JDLA and the circumstances of the hypothetical negotiation, from $8 million to ▇▇▇▇. Ex. 1, ¶ 91. **Second**, as to SK hynix, Ms. Kindler's analysis is not "plucked out of thin air," *contra* Dkt. 517 at 3, but rather flows from two methodologies.[1] Specifically, Ms. Kindler first relied on Mr. McAlexander's analysis of the technical value of the asserted patents and the patents asserted against SK hynix to determine relative technical contribution. Ex. 1, ¶ 102(b)(i). She further conducted a patent citation analysis to conclude that the asserted patents account for no more than ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, which she then compared to the citations provided to the other patent families listed in the SK hynix agreement. *Id.*, ¶ 102(b)(iv). These methodologies support her reduction by ▇▇▇▇▇▇ of the SK hynix payment. *Id.*, ¶¶ 100-02. Netlist's criticisms again go to weight, not admissibility.

## III. Ms. Kindler's Analysis of Samsung's Inbound Licenses Is Reliable

Ms. Kindler's report compares six of Samsung's inbound licenses to the hypothetical negotiation and adjusts them to account for the differences between those licenses and the

---

[1] *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) is not analogous. There, the expert's testimony contained a "complete lack of economic analysis" to support apportionment. *Id.* Here, Ms. Kindler considered multiple analyses, including a quantitative citation analysis, to support and corroborate her conclusion. *See, e.g.*, Ex. 1, ¶ 102.

3

hypothetical negotiation. Netlist's reply fails to address why cross-examination is not adequate to remedy its critiques about the degree of comparability. Dkt. 517 at 4.

On technical comparability, Netlist cites no case that requires exact technical overlap of all patents for an agreement to comparable. Indeed, Mr. McAlexander's report concludes that certain patents in each agreement are technically comparable, and Ms. Kindler then relies on his opinion to adjust for the difference in scope compared to the hypothetical negotiation. *E.g.*, Ex. 1,

On economic comparability, Netlist's only criticism is that Ms. Kindler allegedly did not describe "how the parties [to each license she relied on] calculated each lump sum, the licensees' intended products, or how many products each licensee is expected to produce." Dkt. 517 at 4 (quoting *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1322 (Fed. Cir. 2010)). However, Netlist ignores that Ms. Kindler evaluated Samsung's inbound licenses, specifically concluded that the covered sales are the same or broader, and performed adjustments to account for the number of covered products, for example. *See, e.g.*, Ex. 1, ¶ 113 (discussing adjustments based on the scope of accused products). This distinguishes her analysis from that of the plaintiff's expert in *Wordtech*, where the record lacked "any idea of the volume of sales or projected sales" covered by the plaintiff's lump sums to companies other than the defendant. *Wordtech*, 609 F.3d at 1320.

### IV. Ms. Kindlers RAND and JEDEC-Related Opinions are Relevant to This Case

Netlist seeks to prevent Ms. Kindler from opining that Mr. Kennedy's proposed rates are not RAND based on Netlist's (most recent and belatedly disclosed) view that the asserted patents are not essential. *See* Dkt. 517 at 4. However, the parties' experts genuinely dispute essentiality, as set forth in Samsung's opposition to Netlist's motion for summary judgment of non-essentiality. *See* Dkt. 423.

### V. Ms. Kindler's References to Other Litigation and IPRs Are Relevant

Netlist's reply focuses on potential prejudice from discussing other court proceedings at trial,

4

but does not dispute relevance. *See* Dkt. 517 at 4-5. Consistent with the Court's standing order on motions *in limine*, Samsung will seek the Court's permission before mentioning other litigations. However, discussion of some court proceedings may be warranted in this case. **First**, to the extent that Mr. Kennedy is permitted to discuss the value of the JDLA's supply provision (contrary to Samsung's *Daubert* motion, Dkt. 346), certain details from the C.D. Cal. Case may be necessary to put Ms. Kindler's rebuttal in the proper context. **Second**, the patents Netlist chose to assert against SK hynix are directly relevant to Ms. Kindler's and Netlist's valuation of Netlist's portfolio in the SK hynix agreement. Ex. 1, ¶¶ 92-93, ¶ 100(e). **Third**, Samsung agrees with Netlist, Dkt. 517 at 5, that it can inform the jury that Mr. Kennedy has previously opined that other patents account for the same benefits at issue in this case without specifically referencing the *EDTX1* litigation or IPRs.

## VI. Ms. Kindler's Report Does Not Perform Any Legal Contract Interpretation

Ms. Kindler's report does not engage in any "legal contract interpretation" or speculate about the beliefs of the parties as Netlist contends. *See* Dkt. 517 at 5. Rather, it addresses Netlist's statements to the SEC regarding the scope and consideration for the JDLA and the SK hynix Agreement, which corroborate her economic conclusions about each agreement. Ex. 1, ¶¶ 98-100.

## VII. Ms. Kindler's Report's Reliance on Netlist's "RAND" Offer Is Proper

Netlist seeks to shield its June 8, 2022 letter to Samsung (Ex. 10) under Fed. R. Evid. 408, Dkt. 517 at 5, but ignores the exception to that rule. Ms. Kindler does not use Netlist's RAND offer to prove the amount of any claim, but rather to demonstrate that Mr. Kennedy's damages demand dwarfs Netlist's licensing offers. *See* Ex. 1, ¶¶ 67-68, 70. Moreover, even if the Court determined that the June 8, 2022 letter were inadmissible, Ms. Kindler is entitled to rely upon it in forming her opinions under Fed. R. Evid. 703 because it is the type of information on which experts reasonably rely—in fact, Netlist's own expert relied upon the very same letter. *See, e.g.*, Ex. B, ¶ 60.

The Court should deny Netlist's motion.

5

Dated: February 14, 2024

Respectfully submitted,

By: /s/ *Daniel A. Tishman*

| | |
|---|---|
| Melissa Richards Smith<br>melissa@gillamsmith.com<br>GILLAM & SMITH, LLP<br>303 South Washington Ave.<br>Marshall, Texas 75670<br>Telephone: (903) 934-8450<br>Facsimile: (903) 934-9257<br><br>J. Travis Underwood<br>Texas Bar No. 24102587<br>travis@gillamsmithlaw.com<br>GILLAM & SMITH, LLP<br>102 North College Avenue, Suite 800<br>Tyler, Texas 75702<br>Telephone: (903) 934-8450<br>Facsimile: (903) 934-9257<br><br>Brian R. Nester<br>DC Bar No. 460225<br>bnester@cov.com<br>COVINGTON & BURLING LLP<br>One CityCenter 850 Tenth Street, N<br>Washington, DC 20001-4956<br>Telephone: (202)-662-6000<br><br>Alice J. Ahn<br>CA Bar No. 271399/DC Bar No. 1004350<br>aahn@cov.com<br>COVINGTON & BURLING LLP<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105<br>Telephone: (415) 591-7091<br>Facsimile: (415) 955-6571 | Ruffin B. Cordell<br>TX Bar No. 04820550<br>cordell@fr.com<br>Michael J. McKeon<br>D.C. Bar No. 459780<br>mckeon@fr.com<br>Lauren A. Degnan<br>D.C. Bar No. 452421<br>degnan@fr.com<br>Daniel A. Tishman<br>DC Bar No. 1013923<br>tishman@fr.com<br>FISH & RICHARDSON P.C.<br>1000 Maine Avenue, SW<br>Washington, DC 20024<br>Telephone: (202) 783-5070<br>Facsimile: (202) 783-2331<br><br>Francis J. Albert<br>CA Bar No. 247741<br>albert@fr.com<br>FISH & RICHARDSON P.C.<br>12860 El Camino Real, Ste. 400<br>San Diego, CA 92130<br>Telephone: (858) 678-5070<br>Facsimile: (858) 678-5099<br><br>Thomas H. Reger II<br>reger@fr.com<br>Texas Bar No. 24032992<br>FISH & RICHARDSON P.C.<br>1717 Main Street, Suite 5000<br>Dallas, Texas 75201<br>Telephone: (214) 747-5070<br>Facsimile: (214) 747-2091 |

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on February 14, 2024. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

/s/ Daniel A. Tishman