# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION NO. 2:22-cv-203-JRG-RSP |
| | § | |
| v. | § | |
| | § | |
| MICRON TECHNOLOGY, INC. *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM ORDER

Before the Court is Micron Technology, Inc.'s *Daubert* Motion and Motion to Strike Expert Testimony of Mr. David Kennedy. **Dkt. No. 273.** Additionally, Plaintiff Netlist, Inc. has filed a Motion for Leave to Supplement Expert Report of Mr. David Kennedy. **Dkt. No. 425**.

### I.   BACKGROUND

Netlist's Complaint originally asserted six patents, U.S. Patent Nos. 10,860,506; 10,949,339; 11,016,918; 11,232,054; 8,787,060; and 9,318,160. Dkt. No. 1. Netlist has since dropped the '506 and '339 Patents from this case. *See* Dkt. No. 406 at 108; Dkt. No. 250.

Generally, the Asserted Patents relate to computer memory. U.S. Patents 11,016,918 and 11,232,054, which are related and share a common specification, concern computer memory devices that use different types of memory. '918 Patent at 1:66–2:2; *see also* '054 Patent at 1:66–2:2. U.S. Patents 8,787,060 and 9,318,160, which are related and share a common specification, concern "systems and methods for reducing the load of drivers of memory packages included on memory modules." '060 Patent at 1:19–21; *see also* '160 Patent at 1:21–23.

### II.   LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine

1

a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under

Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III.   ANALYSIS

Micron asserts several reasons for striking the opinions of David Kennedy. Dkt. No. 273; Dkt. No. 321. Netlist opposes the Motion with a response and sur-reply. Dkt. No. 300; Dkt. No. 369.

#### A.   Opinions Regarding the Samsung Litigation Jury Verdict

Micron asserts that "Mr. Kennedy bases a substantial amount of opinion on a jury verdict entered earlier this year against Samsung." Dkt. No. 273 at 8. Micron asserts this is an improper opinion due to the unreliability of prior jury verdicts. *Id.* (citing Court MIL No. 13; *Saint Lawrence Commc'ns LLC v. ZTE Corp.,* 2017 WL 3476978, at *2 (E.D. Tex., 2017); *VirnetX Inc. v. Apple, Inc.*, No. 6:12-CV-0855-RWS, 2020 WL 11647826, at *5 (E.D. Tex. Sept. 1, 2020)). Netlist responds that the verdict is relevant and proper, and Micron's cited authorities are inapposite. Dkt. No. 300 at 5–10. Both parties agree that the hypothetical negotiation date would have been April 2021 as to two of the asserted patents, with the Samsung verdict occurring in April 2023. *See* Dkt. No. 273; Dkt. No. 300 at 9.

The primary case relied upon by Netlist, *Sprint Communications Co., L.P. v. Time Warner Cable, Inc.*, 760 Fed.Appx 977 (Fed. Cir. 2019), affirmed the admission of a prior jury verdict, but

in a context with two key differences. The verdict in that case was final and was rendered before the hypothetical negotiation date. Here, the *Samsung* verdict is not yet final, even at the district court level, and it was rendered after the hypothetical negotiation date for two of the asserted patents.

Similar to this Court's prior ruling in *Saint Lawrence*, the previous Samsung case has not resulted in a final judgment, with motion practice related to the damages awarded still ongoing. *See Netlist, Inc. v. Samsung Elec. Co., Ltd.,* No. 21-cv-463; *Saint Lawrence*, 2017 WL 3476978, at *2 (E.D. Tex., 2017)., 2020 WL 11647826, at *5 (E.D. Tex. Sept. 1, 2020). While this Court has recognized that "some verdicts issued after the negotiation date may be admissible . . . their probative value must not be substantially outweighed by a risk of unfair prejudice." *VirnetX Inc.*, *supra*. The Court finds that the subsequent date of the verdict and its lessened reliability due to not being final, cause the risk of unfair prejudice to outweigh the probative value. Accordingly, the Court holds that Mr. Kennedy's opinions that rely on the *Samsung* verdict are hereby stricken.

### B. Rambus License Agreement

Micron asserts that "Mr. Kennedy relies on the opinions of Dr. Mangione-Smith that the '506 patent is technically comparable to certain patents in the Rambus license. . . . But the Rambus Agreement could only be relevant if technology comparability exists between the Asserted Patents and the patents licensed by Rambus." Dkt. No. 273 at 11. Further, Micron asserts that since Dr. Mangione-Smith's report relied on the no longer asserted '506 Patent, Mr. Kennedy's comparability opinions for the Rambus License Agreement should be stricken since "Dr. Mangione-Smith provided no analysis that the remaining Asserted Patents share any technical comparability to Rambus's '263 and '195 Patents." *Id.* at 12. Netlist responds, "Mr. Kennedy opines that, based on the underlying facts relating to the Rambus agreement and based on the

technical opinion of Dr. Mangione-Smith that the Rambus agreement is technically comparable to the asserted claims, that the Rambus agreement is relevant to the hypothetical negotiation in this case." Dkt. No. 300 at 12. Further, Netlist responds that the '506 Patent no longer being in the trial is not a reason to strike the Rambus License Agreement opinions since "Dr. Mangione-Smith did not limit that opinion to the '506 Patent." *Id.* Micron replies that asserting "a person of skill in the art would understand that this is technically comparable to the Asserted Patents" is too loose of a comparison for purposes of analyzing a reasonable royalty. Dkt. No. 321 at 7 (citing *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012)). Netlist replies that "Micron did not move to strike those opinions from Dr. Mangione-Smith's report. It cannot use a motion to strike Mr. Kennedy's report as a collateral attack against Dr. Mangione-Smith." Dkt. No. 369 at 5–6.

      The Court finds that Mr. Kennedy can rely on the Rambus License Agreement. Micron did not move to exclude the testimony regarding the Rambus License Agreement. It only disputed the opinions when Netlist sought leave to serve a supplemental report. *See* Dkt. No. 316; Dkt. No. 386. In its opposition to granting leave, Micron did argue, like in its current Motion, that a comparable connection has not been sufficiently made for the remaining Asserted Patents. *See* Dkt. No. 386. However, the motion to strike Dr. Mangione-Smith that Micron did file did not assert this basis. *See* Dkt. No. 271. Further, the Court finds that there is an adequate basis for the technological comparability of the Rambus agreement. *See LaserDynamics*, 694 F.3d at 79 (finding where no discernible link to the accused technology or accused products is present the comparability is too loose). Accordingly, the motion is denied as to these opinions.

### C. Running Royalty Rates for Future Sales of HBM3E Products

Micron asserts that no HBM3 products have been sold, and that Netlist is no longer asserting allegations related to HBM2E products. Dkt. No. 273 at 12. "Nonetheless, Mr. Kennedy purports to set a running royalty based on highly speculative future sales and future projections of HBM3E products." *Id.* Micron requests exclusion of the opinions because they "opine on a future royalty that may, or may not, accrue from infringement that has not yet occurred." *Id.* at 13 (citing *Allergan Sales, LLC v. UCB, Inc.*, No. 2:15-CV-01001-JRG-RSP, 2016 WL 8222619, at *3 (E.D. Tex. Nov. 7, 2016). Netlist responds, distinguishing *Allergan Sales*, "Mr. Kennedy is not opining on a future royalty, but is instead setting a royalty rate that would only apply to actual infringing units. Separately, in his lump sum analysis, Mr. Kennedy has determined the amount to which the parties would agree if they chose to enter into a lump sum agreement." Dkt. No. 300 at 16.

Mr. Kennedy's opinion addresses HBM3E as part of the damages base by first expressing "I understand from Counsel that Micron has not disclosed the record for its sales record for HBM3E products as of today, although Micron's witness testimony and other evidence exist showing that Micron has shipped samples to its customers . . . ." Dkt. No. 273-2 ¶ 895. Based on testimony from the "leader of Micron's HBM3E design team," Mr. Kennedy asserts that those samples were shipped to Nvidia and AMD as the main customers of Micron's HBM3E. *Id.* ¶ 897. Mr. Kennedy concludes "thus, I use the quantities of Micron's HBM2E samples as an indicator of those for Micron's HBM3E products." *Id.* ¶ 898. Regarding post-trial sales, Mr. Kennedy uses Micron's projected sales of HBM3E through "FY'28" describing "I have applied the Nvidia U.S. import share of 35.3% to project out Micron HBM3E U.S. Import Units. . . ." *Id.* ¶¶ 899–900; *see* Dkt. No. 273-2 at 361 ("Exhibit 15A – HBM3E Micron Unit Projections").

Turning to the royalty rate, Mr. Kennedy opines "Micron prefers to structure royalty payments as lump sum. However, a running royalty best reflects the actual use of Patented Technology, and as such, would have been what the parties would have agreed to." Dkt. No. 273-2 ¶¶ 903, 951. Mr. Kennedy asserts a lump sum payment in the alternative. *Id.* Mr. Kennedy indicates that "I have been asked by Counsel to analyze damages under two Hypothetical License forms . . . [2.] a License that covers Accused Product sales through the lifetime of the Patents in Suit . . . the results are set out in [Exhibit 2]." *Id.* ¶¶ 953–954. Exhibit 2 values the hypothetical license post-trial inclusive of HBM3E, pointing to Exhibit 13, rows [C], [K], and [M] as the source of the values. Dkt. No. 273-2 at 340, 358.

A running royalty does not accrue until a sale or use occurs, whereas a lump sum royalty compensates the patent holder for both past and anticipated future infringement, usually for the remainder of the patent's term. *Allergen Sales, LLC v. UCB, Inc.*, 2016 WL 8222619, at *2 (E.D. Tex. 2016); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–26 (Fed. Cir. 2009). Running royalties based on projected sales are speculative because they are "applied to future acts of infringement that have not yet occurred." *Allergen*, 2016 WL 8222619, at *2. This is true even if the sales projections are provided by the accused infringer. *See id.* (striking the opinion despite the expert's use of the defendant's projections). Lump sum royalties, however, can include projected future sales. *Finesse Wireless LLC v. AT&T Mobility LLC*, 2023 WL 5612448, at *3 (E.D. Tex. Aug. 30, 2023) (distinguishing *Allergen*).

Accordingly, Mr. Kennedy's opinions using HBM3E projected sales in determining a running royalty rate are inadmissible. The opinions are speculative and unreliable because they depend on Micron's projected sales of HBM3E and not actual sales of the alleged infringing units. To the extent the opinion asserts a lump sum royalty, use of the HBM3E projected sales are

admissible. The portions of Mr. Kennedy's report concerning a running royalty damages model that includes the projected HBM3E sales are stricken. This decision does not preclude Mr. Kennedy from relying on actual sales of HBM3E produced by Micron, should that occur before trial.

### D. Opinions Regarding Willfulness

Micron asserts that the Court should "strike Mr. Kennedy's opinions regarding willfulness, wherein Mr. Kennedy characterizes certain documents provided by Netlist's counsel to opine regarding Micron's alleged knowledge of patents in suit." Dkt. No. 273 at 14. The "certain documents" are the February 2015 and April 2015 slide decks. *See* Dkt. No. 436. These slide decks are being relied upon for pre-suit damages notice. Dkt. No. 300 at 17 ("Mr. Kennedy explains what the presentations disclose and how it is relevant to Micron's awareness of Netlist's patented technology. This is necessary because the presentations in certain instances cite the parents of the patents in suit.")

In light of the determination that the February 2015 and April 2015 Slide Decks are not sufficient for pre-suit damages notice, the Court finds that Mr. Kennedy's report should be stricken in so far as it relies on the two slide decks for pre-suit damages. Similarly, Mr. Kennedy shall not be permitted to testify to "Micron's awareness of Netlist's patented technology" in any other context.

## IV. MOTION FOR LEAVE TO SUPPLEMENT EXPERT REPORT OF MR. DAVID KENNEDY (DKT. NO. 425)

Netlist has filed this motion seeking to update Mr. Kennedy's report based on a recent press release by Micron that included updated sales projections for HBM3E. Dkt. No. 425. Micron's opposition is similar to the dispute discussed above regarding use of projected sales in determining a running royalty. Dkt. No. 446; *supra* Section III(C). Additionally, Micron asserts that the

8

increase of almost 70 million dollars for the damages model highlights the prejudice in allowing service of the supplemental report. Dkt. No. 446 at 7–9.

In light of the above rulings, Netlist's Motion is **GRANTED** for the limited purpose of allowing Mr. Kennedy to update any damages model based on a lump sum payment and not for any running royalty model. *Allergen*, 2016 WL 8222619, at *2; *Finesse Wireless*, 2023 WL 5612448, at *3. The Court is not persuaded that the request for leave is untimely in view of the recent nature of Micron's press release, December 20, 2023, and service of the supplemental report to Micron on December 29, 2023. Dkt. No. 425 at 4–5.

## V.    CONCLUSION

For the foregoing reasons, Micron's *Daubert* Motion and Motion to Strike Expert Testimony of Mr. David Kennedy, Dkt. No. 273, is **GRANTED-IN-PART** as detailed above in Section III.

**SIGNED this 27th day of January, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE