# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION NO. 2:22-cv-203-JRG-RSP |
| | § | |
| v. | § | |
| | § | |
| MICRON TECHNOLOGY, INC. *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM ORDER**

Before the Court are two motions to strike filed by Plaintiff Netlist, Inc. First is Netlist's Motion to Strike Opinions of Dr. Matthew Lynde. **Dkt. No. 268**. Second is Netlist's Motion to Strike Certain Opinions of Defendants' Expert Dr. Harold Stone. **Dkt. No. 269**.

## I.    BACKGROUND

Netlist's Complaint originally asserted six patents, U.S. Patent Nos. 10,860,506; 10,949,339; 11,016,918; 11,232,054; 8,787,060; and 9,318,160. Dkt. No. 1. Netlist has since dropped the '506 and '339 Patents from this case. *See* Dkt. No. 406 at 108; Dkt. No. 250.

Generally, the Asserted Patents relate to computer memory. U.S. Patents 11,016,918 and 11,232,054, which are related and share a common specification, concern computer memory devices that use different types of memory. '918 Patent at 1:66–2:2; *see also* '054 Patent at 1:66–2:2. U.S. Patents 8,787,060 and 9,318,160, which are related and share a common specification, concern "systems and methods for reducing the load of drivers of memory packages included on memory modules." '060 Patent at 1:19–21; *see also* '160 Patent at 1:21–23.

## II.    LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine

1

a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under

2

Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## III.    MOTION TO STRIKE OPINIONS OF DR. MATTHEW LYNDE (DKT. NO. 268)

Netlist's Motion seeks to strike certain opinions of Micron's damages expert Dr. Matthew Lynde. Dkt. No. 268; Dkt. No. 336. Micron opposed the Motion with a response and sur-reply. Dkt. No. 292; Dkt. No. 357.

### A.  Comparable License Analysis

Netlist seeks to strike various aspects of Dr. Lynde's comparable license analysis. Dkt. No. 268 at 5–11. The Court considers each request in turn.

First, Netlist asserts that Dr. Lynde assigns the same value to every patent. Dkt. No. 268 at 5. Specifically, Netlist asserts that "Dr. Lynde's analysis looks at four licenses, and treats each family of patents included in these agreements as equal in value." Dkt. No. 268 at 5. Micron responds that the asserted paragraphs "do not deal with patent valuation, and instead relate to other aspects of commercial comparability." Dkt. No. 292 at 5. Further, Micron asserts that Dr. Lynde's analysis is well reasoned and tied to the facts of the case. *Id.* at 6–7.

The Court does not find that Dr. Lynde assigns the same value to every patent, nor treats each family of patents as equal in value. *See* Dkt. No. 268-2 ¶¶ 224–247, 265–285.

Second, Netlist asserts that Dr. Lynde provides improper legal interpretation of the SK Hynix agreement. Dkt. No. 268 at 6. Netlist asserts that Dr. Lynde engages in contract interpretation of the "most favored license" clause. *Id.* at 7. Micron responds that "Dr. Lynde does not opine on the legal enforceability of the clause, but opines on the clause from an "economic perspective." Dkt. No. 292 at 7. Micron contends that "it is proper for Dr. Lynde as an economist to opine here on the economic effects that the MFL clause, or any clause, could have on his damages analysis." *Id.* (citing *Metaswitch*, 2016 WL 874775, at *2).

The Court finds that Dr. Lynde impermissibly engages in contract interpretation with regards to the MFL clause. Contrary to Micron's assertion, this Court has not previously held that economists are free to engage in contract clause interpretation under the guise of "economic perspective." Far from permission to opine on the "economic effects" of any contractual clause, previously this Court held that assumption of a FRAND obligation was not improper legal opinion but cautioned "he should not offer legal conclusions about whether Genband is actually bound by a contractual FRAND obligation." *Metaswitch Networks Ltd. v. Genband US LLC*, 2016 WL 874775, at *2 (E.D. Tex. 2016). Here, Dr. Lynde often relies on the plain meaning of the contract language but on other occasions he offers a controverted opinion on the legal effect of that language. *See* Dkt. No. 268-2. He lapses into improper legal interpretation at ¶ 142 (2d sentence only), 143 (2d sentence only), 145 (all), 147 (last sentence only), 237-239 (all). Accordingly, the Court strikes the paragraphs of his opinion just listed.

Third, in light of the ruling that the asserted patents are not standard essential and that RAND defenses are dismissed, Netlist's request that paragraph 249 be struck for claiming that the agreement is under a RAND obligation is granted. Dkt. No. 268 at 9; *see* Dkt. No. 421.

Fourth, Netlist asserts Dr. Lynde adjusts the proposed reasonable royalty based on the value of patents after opining that the patents-in-suit provide no incremental benefit. Dkt. No. 268 at 10. The Court does not find that the report supports Netlist's assertion and will not strike the indicated paragraphs. *See* Dkt. No. 268-2 ¶¶ 274, 276–279, 284.

Fifth, Netlist asserts that Dr. Lynde's comparability analysis of the "Goodman and ELM Licenses" is improper. Dkt. No. 268 at 10–11. Particularly, Netlist contends that reference to the size of Netlist is prejudicial. *Id.* Micron responds that consideration of the company size to determine license comparability is permissible. Dkt. No. 292 at 11. The Court finds that relative size of a company is relevant in determining comparability of licenses. *See Personalized Media Communications, LLC v. Apple, Inc.*, 2021 WL 662237, at \*5 (E.D. Tex. 2021). Netlist's concern with the report's use of "very minor supplier" in reference to Netlist can be handled through the standing MILs, but the paragraphs are not stricken.

## B.  RAND Related Opinions

Netlist asserts that Dr. Lynde applies a "modified *Georgia-Pacific* analysis" and views the factors "through a RAND rubric" for the '060 and '160 Patents. Dkt. No. 268 at 11–12. The Court finds that paragraphs 213–285 are within a section entitled "determination of RAND Royalties for the Patents-in-Suit" which entails a hypothetical negotiation "constrained by Netlist's RAND obligation." Dkt. No. 268-2 at 35. Accordingly, due to rulings that the asserted patents are not standard essential and that the RAND defenses have been dismissed, the Court strikes paragraphs 31, 34, 47–65, 104–112, 213–285 which are related to the irrelevant topic of RAND. This also extends to Dr. Lynde's references to standard setting organizations, and the Court strikes paragraphs 10, 47–65, and 88.

### C.  Undisclosed Alleged NIAs

Netlist asserts that certain NIA opinions by Dr. Lynde and Dr. Stone were untimely as they were not disclosed during the fact discovery period. Dkt. No. 268 at 14. Micron responds that the NIAs are "not new but proper rebuttal testimony" to Netlist's expert Mr. Kennedy who "introduced non-infringing alternatives as a benchmark to value the asserted patents." Dkt. No. 292 at 15. The Court finds that Dr. Lynde's opinions explicitly reference Mr. Kennedy's opinions regarding non-infringing alternatives and as such are not being introduced as new theories within the expert report.

### D.  Alleged JEDEC Contributions

Regarding alleged JEDEC contributions, Micron asserts "Dr. Lynde relies on Micron's technical experts that the accused products comply with the applicable standards, and the testimony of fact witnesses, including Netlist's corporate designee, that the accused products are standard compliant." Dkt. No. 292 at 16. The Court finds that since the JEDEC contributions are again related to standard essentiality, the opinions in paragraphs 86–87, 53 are no longer relevant and are stricken.

### E.  Patent Hold-Up and Royalty Stacking

Netlist asserts that Dr. Lynde's opinions related to patent hold-up and royalty stacking are "tied to the RAND obligation." Dkt. No. 268 at 16. Micron again asserts that the patents are standard essential in response. Dkt. No. 292 at 17. Accordingly, the Court finds that paragraphs 47–65, 106, 111, 222, 257 are stricken as being irrelevant in light of the ruling that the asserted patents are not standard essential.

### F.  SSPPU

Netlist asserts that Micron did not identify the theory that damages should be limited to an SSPPU that is different than the accused products during discovery. Dkt. No. 268 at 18. Micron responds that SSPPU is not a legal theory, but a "step toward meeting the requirements of apportionment" to rebut Mr. Kennedy's apportionment opinion. Dkt. No. 292 at 18. The Court finds that Dr. Lynde's report does not introduce a new theory with respect to SSPPU. *See VirnetX v. Cisco Systems, Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) ("In other words, the requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is simply a step toward meeting the requirement of apportionment.").

### G.  Lump Sum, Through the Life of the Patents Opinions

Netlist asserts that Dr. Lynde's opinions for *Georgia-Pacific* Factor 7 are inconsistent with his opinions that only propose a reasonable royalty for sales through trial. Dkt. No. 268 at 18. Micron responds that the basis for finding the royalty would last through the life of the patents is in paragraph 254 stating "assuming a hypothetical negotiation date of December 2020, the term of the license in the hypothetical negotiation would be approximately 13 years . . ." Dkt. No. 292 at 18. Further, Micron contends that the opinion is proper rebuttal testimony in response to Mr. Kennedy's analysis. *Id.* The Court finds that Netlist's dispute is one that is related to consistency and reliability of the expert which can be handled through vigorous cross-examination.

### H.  Regression Analysis

Netlist asserts that Dr. Lynde's regression analysis is improper because his underlying regression model and programming were never produced. Dkt. No. 268 at 19. Micron admits that production of the materials was late, but claims that it took the filing of the instant motion for it to realize the non-disclosure. Dkt. No. 292 at 19. Nevertheless, Micron contends the disclosure was

still timely in relation to the deadline to complete expert discovery and "substantially more than 30 days before trial." Dkt. No. 292 at 19. The Court is unpersuaded to allow the disclosure after the motion to strike to stand and accordingly strikes the regression analysis found in paragraphs 91–103.

In conclusion, Netlist's Motion to Strike Opinions of Dr. Matthew Lynde, Dkt. No. 268, is **GRANTED-IN-PART** as detailed above.

## IV.    MOTION TO STRIKE CERTAIN OPINIONS OF DEFENDANTS' EXPERT DR. HAROLD STONE (DKT. NO. 269)

Netlist's Motion seeks to strike opinions from Micron's technical expert Dr. Harold Stone. Dkt. No. 269; Dkt. No. 334. Dr. Stone authored an expert report for invalidity of the '918 and '054 Patents and a rebuttal expert report for non-infringement of the '918 and '054 Patents. Dkt. No. 269-2 ("Stone Report"); Dkt. No. 269-3 ("Stone Rebuttal"). Micron opposed the Motion with a response and sur-reply. Dkt. No. 297; Dkt. No. 361.

### A.  Dr. Stone's Essentiality Opinions

Netlist asserts that Dr. Stone "relies on the non-essentiality of the '918 and '054 patents to argue that there is no evidence of industry praise" and "to argue that Micron's accused products do not infringe." Dkt. No. 269 at 4.  Micron confirms in response that these opinions are tied to the notion of standard essentiality contending that "Dr. Stone has showed that the claims of the '054 and '918 are essential[.]" Dkt. No. 297 at 4.

As discussed above, the Court has ruled that the asserted patents are not standard essential. Accordingly, the Court strikes paragraphs 172–177 of Dr. Stone's rebuttal report as neither relevant nor helpful to the jury.