UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2:22-cv-293-JRG |
| vs. | ) | (LEAD CASE) |
| | ) | |
| SAMSUNG ELECTRONICS CO, LTD; | ) | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC.; SAMSUNG SEMICONDUCTOR INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2:22-cv-294-JRG |
| vs. | ) | |
| | ) | |
| MICRON TECHNOLOGY, INC.; MICRON | ) | **JURY TRIAL DEMANDED** |
| SEMICONDUCTOR PRODUCTS, INC.; | ) | |
| MICRON TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' SUR-REPLY IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON MICRON'S ANTITRUST COUNTERCLAIM AND AFFIRMATIVE DEFENSE OF PATENT MISUSE**

## **TABLE OF CONTENTS**

                                                                   **Page**

I.    Micron Has Shown the Agreement Restrains Trade ............................................................. 1

II.   Micron Has Properly Defined the Relevant Markets ............................................................ 3

III.  Though Not Required, Micron Has Shown Netlist's Market Power ..................................... 5

IV.  Micron Has Shown Antitrust Injury ....................................................................................... 6

V.   Micron Has Provided Evidence Supporting Its Patent Misuse Defense ................................ 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
    483 F. Supp. 3d 38 (D. Mass. 2020) .................................................................................... 4

*Brooke Group v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) ............................................................................................................. 1

*Brown Shoe Co., Inc. v. United States*,
    370 U.S. 294 (1962) ............................................................................................................. 3

*Cellport Sys. v. Peiker Acustic GmbH*,
    762 F.3d 1016 (10th Cir. 2014) ........................................................................................... 7

*Corrente v. Charles Schwab Corp.*,
    2023 WL 2244680 (E.D. Tex. Feb. 24, 2023) .................................................................. 3, 4

*Deslandes v. McDonald's United States, LLC*,
    81 F.4th 699 (7th Cir. 2023) ................................................................................................ 5

*Eastman Kodak Co. v. Image Tech. Servs.*,
    504 U.S. 451 (1992) ......................................................................................................... 5, 6

*GFI, Inc. v. Franklin Corp.*,
    88 F. Supp. 2d 619 (N.D. Miss. 2000) ................................................................................. 7

*Heatransfer Corp. v. Volkswagenwerk, A.G.*,
    553 F.2d 964 (5th Cir. 1977) ............................................................................................... 6

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    2008 WL 73689 (N.D. Cal. Jan 5, 2008) ............................................................................. 5

*Illumina, Inc. v. FTC*,
    88 F.4th 1036 (5th Cir. 2023) .............................................................................................. 3

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984) ................................................................................................................. 6

*Marucci Sports, L.L.C. v. NCAA*,
    751 F.3d 368 (5th Cir. 2014) ............................................................................................... 1

*McCullough Tool Co. v. Will Surveys, Inc.*,
    343 F.2d 381 (10th Cir. 1965) ............................................................................................. 8

Table of Authorities (continued)

Page

*Princo Corp. v. ITC*,
  616 F.3d 1318 (Fed. Cir. 2010) ............................................................................................7

*Saint Lawrence Commc'ns LLC v. Motorola Mobility LLC*,
  2018 WL 915125 (E.D. Tex. Feb. 15, 2018) ........................................................................2

*SanDisk Corp. v. Kingston Tech. Co.*,
  2010 WL 11595034 (W.D. Wis. Nov. 15, 2010) ..................................................................4

*Summit Tech., Inc.*,
  127 F.T.C. 208 (1999) ..........................................................................................................2

*In the Matter of Summit Tech., Inc. and VISX, Inc.*,
  No. 9286, 1998 WL 129323 (F.T.C. Mar. 24, 1998) ............................................................2

*Transweb, LLC v. 3M Innovative Props. Co.*,
  812 F.3d 1295 (Fed. Cir. 2016) ........................................................................................3, 6

*U.S. v. Apple Inc.*
  952 F. Supp. 2d 638 (S.D.N.Y. 2013), *aff'd*, 791 F.3d 290 (2d Cir. 2015) ......................1, 3

*United States v. Paramount Pictures, Inc.*,
  334 U.S. 131 (1948) ..............................................................................................................8

**Statutes**

15 U.S.C.S. § 1 ..............................................................................................................................1, 5, 6

15 U.S.C.S. § 15(a) ..............................................................................................................................6

### I. Micron Has Shown the Agreement Restrains Trade

Micron has shown that the terms of the Agreement[1] between Netlist and its competitor, Hynix, are anticompetitive,[2] as confirmed by Netlist's conduct. Opp'n at 8–11. In response, Netlist calls the Agreement's MFN provisions "standard," Reply at 1, but fails to provide any record citation for this alleged "fact." Instead, Netlist's CEO declined to interpret the key contractual provision which, far from being "standard," ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp'n at MSAUF 6. Moreover, the Agreement also has an ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp'n at MSAUF 7–8. Nor does Micron's interpretation of the MFN "render[] sections ▮▮▮▮ completely meaningless," as Netlist claims. Reply at 1. Rather, even if it is technically *possible* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, what matters is that the MFN poses such a "severe financial penalty" on any subsequent lower-priced license that it effectively eliminates pricing competition, as did the one at issue in *U.S. v. Apple Inc.* 952 F. Supp. 2d 638, 648, 694 (S.D.N.Y. 2013) (financial penalty of MFN terms make the agreement *per se* illegal), *aff'd*, 791 F.3d 290 (2d Cir. 2015).

---

[1] Capitalized terms have the meanings given in Micron's Response in Opposition to Netlist's Motion for Summary Judgment on Micron's Antitrust Counterclaim and Affirmative Defense of Patent Misuse ("Opp'n"), Dkt. 427. Exhibits thereto are cited as "Opp'n Ex. __." Netlist's Reply supporting its Motion, Dkt. 531, is cited as "Reply at __."

[2] *Marucci*, cited by Netlist, is not to the contrary. Reply at 1 (quoting *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 375 (5th Cir. 2014)). The court there never reached the issue of whether the restraint was "unreasonable," as it found that Marucci failed to present any "independent allegation of actual agreement" among the alleged conspirators. *Marucci*, 751 F.3d at 375. Similarly, *Brooke Group* was a Robinson-Patman predatory pricing case, not a Sherman Act Section 1 case, and the court there found no evidence of "price coordination." *Brooke Group v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 243 (1993). Here, in contrast to both cases, the existence of the pricing Agreement is undisputed.

Netlist also asserts that "portfolio licenses are standard practice," again without record support. Reply at 3. This is also irrelevant to a *per se* tying violation, as the one here. *See* § III *infra*. Even assuming that package licenses are common, the restraint of trade stems from the Agreement's ▮▮▮▮▮. *See, e.g.*, Compl. at ¶¶ 9–10, *In the Matter of Summit Tech., Inc. and VISX, Inc.*, No. 9286, 1998 WL 129323 (F.T.C. Mar. 24, 1998) (alleging that licensor's veto power to prevent the other licensor in a two-licensor pool from independently licensing was anticompetitive); *see also Summit Tech., Inc.*, 127 F.T.C. 208, at *219–220 (1999) (consent agreement dissolved the licensing pool). While Netlist relies on *Saint Lawrence* for the benefits of portfolio licensing, Reply at 3, it neglects to mention that the Court there expressly recognized that in addition to being available through a patent pool portfolio, the patents were also available through "bilateral negotiations" with the patent holder; thus, there was no restraint of trade. *Saint Lawrence Commc'ns LLC v. Motorola Mobility LLC*, 2018 WL 915125, at *4 (E.D. Tex. Feb. 15, 2018). Here, by contrast, Netlist admits that it ▮▮▮▮▮ Reply at 3, further demonstrating the antitrust violation.

Micron's interpretation of the Agreement is consistent with Netlist's conduct, such as the supracompetitive demands it made to Micron for a portfolio license. Opp'n at 9–11. In response, Netlist nowhere controverts that it made a ▮▮▮▮▮ demand to Micron, or that this demand translated to a per-unit royalty that was ▮▮▮▮▮ *Id.* at 9 (citing Opp'n Ex. C, Lynde Report ¶ 78, and Opp'n Ex. C at Ex. 2). Rather, Netlist makes the inexplicable claim that this is somehow "***inconsistent*** with Micron's antitrust conspiracy theory" because ▮▮▮▮▮

2

Reply at 4 (emphasis in original). There is no inconsistency here; Netlist's demands of Micron ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to avoid the anticompetitive "severe financial penalty." *Apple*, 952 F. Supp. 2d at 648.

## II. Micron Has Properly Defined the Relevant Markets

Micron's market definitions are supported by the factual record and the opinions of a Ph.D economist, Dr. Lynde. Opp'n at 14–17. Netlist's opposition to these markets consists of the unqualified testimony of a CPA. *See* Dkts. 360, 522. And while Netlist finally acknowledges the leading U.S. Supreme Court case on market definition, *Brown Shoe*, Reply at 6, it ignores Fifth Circuit authority applying it.[3] For example, it critiques Dr. Lynde's application of the *Brown Shoe* "practical indicia" factors,[4] but there is "no precise formula" when applying these factors. *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1055 (5th Cir. 2023) (quoting *Freuhauf Corp. v. FTC*, 603 F.2d 345, 353 (2d Cir. 1979)). Netlist also ignores that "product market definition is ultimately a fact-intensive inquiry" not suitable for summary adjudication. *Corrente v. Charles Schwab Corp.*, 2023 WL 2244680, at *3 (E.D. Tex. Feb. 24, 2023). Indeed, Netlist's critique that Micron's market definition is too narrow because it does not include unidentified allegedly "competing technologies … that … would be interchangeable," Reply at 5, echoes the criticism that was rejected by the *Corrente* court, which noted that "the mere fact that a firm may be termed a competitor in the overall marketplace does not necessarily require that it be included in the relevant product market

---

[3] In considering the appeal of any market definition issues, the Federal Circuit will apply the law of the regional circuit. *Transweb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1307 (Fed. Cir. 2016).

[4] Dr. Lynde applied the market definition factors set forth in *Brown Shoe Co., Inc. v. United States*, 370 U.S. 294 (1962). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

for antitrust purposes." *Corrente*, 2023 WL 2244680, at *4 (quoting *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1075 (D.D.C. 1997)).

Netlist faults Micron's technology markets for failing to identify "(1) which specific standards are at issue, (2) which patents read on these standards, or (3) even whether Netlist actually owns any standard essential patents in this field." Reply at 5. But this argument ignores Micron's actual technology market definition, which does not depend on any of Netlist's patents being standard *essential*. Rather, Micron defined the technology market as the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. 122, Counterclaim ¶ 30 (emphasis added). Standard essential or not, Netlist has asserted that its patents are ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This is enough under the case law to properly define a technology market. *See, e.g., Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, 483 F. Supp. 3d 38, 57 (D. Mass. 2020) ("Technology markets are certainly easier to discern when coextensive with a technological standard, but they may also be defined as the underlying technologies required to manufacture, import or sell a specific downstream product.") (internal citations and quotations omitted); *SanDisk Corp. v. Kingston Tech. Co.*, 2010 WL 11595034, at *2 (W.D. Wis. Nov. 15, 2010) ("The flash memory technology market includes the technology needed to manufacture, import or sell flash memory systems in the United States.").

Moreover, courts have stated that "a flexible approach to defining technology markets accords with economic research on technology markets. Commentators have recognized that

---

[5] Netlist asserted ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp'n at RNSUF 9, MSAUF 14–15. It also asserted ▇▇▇▇▇▇▇▇▇▇ *Id.* at MSAUF 10–11. It has never denied ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

creating a 'bright-line' market definition in innovative sectors of the economy is often difficult and can be counterproductive." *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 73689, at *4 (N.D. Cal. Jan 5, 2008) (citing Katz & Shelanski, 74 Antitrust L.J. at 33–34). In any case, this is no grounds for summary judgment, as the law "demands only that the nonmoving party's inferences be reasonable in order to reach the jury." *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 468 (1992).

### III.  Though Not Required, Micron Has Shown Netlist's Market Power

Netlist fails to dispute that the law does not require a showing of market power where the antitrust claim is a *per se* horizontal agreement among competitors. Rather, it asserts that "Micron has not alleged (let alone proven)" such an agreement. Reply at 7. Netlist is wrong.

Micron alleged that Netlist and Hynix are competitors and that they entered into an illegal agreement. Dkt. 122, Counterclaim ¶¶ 9–10. And while Netlist now denies it is Hynix's competitor, the facts ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ show otherwise. Opp'n at MSAUF 4; *see also* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *see also* Ex. C, Netlist 2023 10-K, at 7, 17 ("We face competition from DRAM suppliers, memory module providers and logic suppliers for many of our products.") ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ And, as Dr. Lynde notes, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Opp'n Ex. C ¶ 66. Thus, Micron is not required to show Netlist's market power for Micron to prevail on its Sherman Act Section 1 claim. *See Deslandes v. McDonald's United States, LLC*, 81 F.4th 699, 703 (7th Cir. 2023) ("market power is not essential to antitrust claims involving naked agreements among competitors") (citing *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46 (1990)).

In any event, Micron has provided evidence of Netlist's market power, including that

5

Netlist increased license prices, reduced licensing output, coerced purchasers to accept package licensing, and asserted its patents are standard essential, all of which create market power. *See* Opp'n at 17–18 (citing *K.M.B. Warehouse Distribs. v. Walker Mfg. Co.*, 61 F.3d 123, 129 (2d Cir. 1995) (market power demonstrated by ability to profitably and significantly raise prices); *Kodak*, 504 U.S. at 464 (stating market power is "the ability of a single seller to raise price and restrict output"); *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984) (market power demonstrated where a seller can exploit "control over the tying product to force the buyer into the purchase of a tied product that the buyer … might have preferred to purchase elsewhere on different terms")).

### IV.  Micron Has Shown Antitrust Injury

Finally forced to deal with the leading Federal Circuit case on whether attorneys' fees can constitute antitrust injury, Netlist now mischaracterizes it. First, Netlist falsely claims that "*Transweb* involved a violation under § 4 of the Sherman Act." Reply at 8. In fact, *Transweb* relied on Section 4 of the *Clayton* Act, which relates to damages available for violation of **all** of the antitrust laws, including the Sherman Act Section 1 claim at issue here. 812 F.3d at 1308 (quoting 15 U.S.C.S. § 15(a)). *Transweb* held, citing authority, that even though Transweb did not take an anticompetitive license and therefore "prevented the harmful impacts to consumers," nonetheless, "Transweb … suffer[ed] a very real injury of its own, the cost of defending the suit," which qualified as antitrust injury. *Id.* at 1311.

Injury to competition is also shown by Micron's evidence of increased prices and reduced output. *See* § III *supra and* Opp'n at 12–14. In any event, Netlist ignores Fifth Circuit precedent that injury to competition is presumed for a *per se* tying violation, which is present here. *See Heatransfer Corp. v. Volkswagenwerk, A.G.*, 553 F.2d 964, 976–77 (5th Cir. 1977) ("It is well established that tying arrangements are illegal *per se* …. 'The *per se* label indicates that a plaintiff

6

need not demonstrate that the effects of the tie are unreasonable … but in addition the defendant is not free to demonstrate that the effects are reasonable or even affirmatively desirable.'") (quoting *Ky. Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 374–75 (5th Cir. 1977)).

## V.  Micron Has Provided Evidence Supporting Its Patent Misuse Defense

Netlist's attacks on Micron's patent misuse defense continue to be meritless.

First, Netlist's conduct supporting Micron's interpretation of the Hynix Agreement is given "great weight" under California law, which governs the Agreement. Opp'n at 8 (quoting *Brown v. Goldstein*, 34 Cal. App. 5th 418, 437 (Ct. App. 2019)). At a minimum, genuine issues of material fact preclude summary judgment.

Second, Netlist cites no authority supporting its assertion that a showing of market power is required for a patent misuse defense based on an expansion of the patent scope by, for example, ▮. *See Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010); *GFI, Inc. v. Franklin Corp.*, 88 F. Supp. 2d 619, 634 (N.D. Miss. 2000) ("The doctrine of patent misuse forbids a patentee from taking actions that … extend the economic effect beyond the physical scope of the patent grant (by charging a royalty on goods not covered under the patent) ….").  Nonetheless, Micron has provided extensive evidence of market power. *See* § III *supra.*  The fact that parties may agree between themselves ▮ does not excuse an agreement between competitors ▮.[6]

---

[6] Netlist's only citation to caselaw on this point, Reply at 9, conveniently omits part of the quoted sentence: "Royalties from a license agreement do not need to be based on the actual use of a patent, **and can be dictated by the 'convenience of the parties.'**" *Cellport Sys. v. Peiker Acustic GmbH*, 762 F.3d 1016, 1022 (10th Cir. 2014) (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 138 (1969)) (emphasis added). Micron is not a party to the Agreement and its "convenience" was therefore not considered in the drafting of the Agreement's provisions ▮.

7

Third, Micron need not accept an anticompetitive license to claim patent misuse. Opp'n at 24 (citing *Cont'l Auto. Sys. v. Avanci*, 485 F. Supp. 3d 712, 726 (N.D. Tex. 2020) (finding Article III standing based on allegations of unsuccessful attempts to obtain a FRAND license)). Netlist fails to provide any substantive response to Micron's distinction of the case law cited in Netlist's motion, Opp'n at 24–25.

Finally, Netlist's tying constitutes patent misuse. Whether portfolio licensing is common or not is a red herring, as the anticompetitive effect results when individual patent licensing is not available, forcing the licensee to take the package or nothing. Here, it is undisputed that Netlist has never offered a license to individual patents. Opp'n at MSAUF 17. Second, Netlist seeks to import elements into the doctrine of patent misuse which do not exist. It relies on asserted pro-competitive benefits of package licensing and says it is Micron's "burden of proof" to show that anticompetitive effects outweigh those benefits. Reply at 9. Netlist cites no authority for this proposition, which is not the law. As *McCullough* found: "a patentee unlawfully uses a patent monopoly when, for a fixed royalty, he refuses to grant a license under one or more of his patents unless a license is taken under all of his patents." *McCullough Tool Co. v. Will Surveys, Inc.*, 343 F.2d 381, 408 (10th Cir. 1965); *see also United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 159 (1948) (finding illegal "a refusal to license one or more copyrights unless another copyright is accepted"). Third, contrary to Netlist's misreading of the cases, Reply at 10, both *McCullough* and *Paramount Pictures* involved IP-to-IP tying, not just patent-to-product tying. And there is nothing in the tying case law that requires that one or more of the tied patents be "standard essential." *Id.* Standard essential or not, Netlist's conduct conditions the licensing of certain patents on the licensing of others; that is a classic, illegal tie.

For the foregoing reasons, Netlist's motion should be denied.

| | |
|---|---|
| Dated: February 15, 2024 | Respectfully submitted,<br>By: */s/ Aldo A. Badini* |
| | Aldo A. Badini<br>State Bar No. (NY) 1934892<br>State Bar No. (CA) 257086<br>State Bar No. (DC) 416812<br>ABadini@winston.com<br>WINSTON & STRAWN LLP<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: (212) 294-6700<br>Facsimile: (212) 294-4700 |
| | Thomas M. Melsheimer<br>State Bar No. 13922550<br>TMelsheimer@winston.com |
| | Natalie Arbaugh<br>State Bar No. 24033378<br>NArbaugh@winston.com<br>WINSTON & STRAWN LLP<br>2121 N. Pearl Street, Suite 900<br>Dallas, TX 75201<br>Telephone: (214) 453-6500<br>Facsimile: (214) 453-6400 |
| | David P. Enzminger (*pro hac vice*)<br>DEnzminger@winston.com<br>WINSTON & STRAWN LLP<br>333 South Grand Avenue, 38th Floor<br>Los Angeles, CA 90071-1543<br>Telephone: (213) 615-1700<br>Facsimile: (213) 615-1750 |
| | Michael R. Rueckheim<br>State Bar No. 24081129<br>MRueckheim@winston.com<br>WINSTON & STRAWN LLP<br>255 Shoreline Drive, Suite 520<br>Redwood City, CA 94065<br>Telephone: (650) 858-6500<br>Facsimile: (650) 858-6559 |
| | William M. Logan<br>State Bar No. 24106214 |

WLogin@winston.com
Juan C. Yaquian
*Pro Hac Vice*
State Bar No. 24110559
JYaquian@winston.com
WINSTON & STRAWN LLP
800 Capital Street, Suite 2400
Houston, TX 77002-2925
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Wesley Hill
State Bar No. 24032294
wh@wsfirm.com
Andrea Fair
State Bar No. 24078488
andrea@wsfirm.com
Charles Everingham IV
State Bar No. 00787447
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DEFENDANTS MICRON TECHNOLOGY, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; AND MICRON TECHNOLOGY TEXAS LLC**

## CERTIFICATE OF SERVICE

I hereby certify that, on February 15, 2024, a copy of the foregoing was served on all counsel of record via the Court's ECF system and email.

*/s/ Aldo A. Badini*
Aldo A. Badini

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Aldo A. Badini*
Aldo A. Badini