**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-293-JRG (Lead Case) |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD, ET AL., | ) ) | ███████████ |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-294-JRG (Member Case) |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| MICRON TECHNOLOGY, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; MICRON TECHNOLOGY TEXAS LLC, | ) ) ) | ███████████ |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MICRON DEFENDANTS' SUR-REPLY TO PLAINTIFF NETLIST, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE CERTAIN OPINIONS OF MICRON DEFENDANTS' EXPERT DR. HAROLD STONE**

███████████

## **TABLE OF CONTENTS**

I.      Dr. Stone's Essentiality Opinions Are Admissible.................................................. 1

II.     Dr. Stone's Non-Infringing Alternatives Are Proper.............................................. 2

III.    Dr. Stone's "Phase Lock Loop" Opinions Are Admissible..................................... 2

IV.     Dr. Stone Applies the Correct Legal Standard for the '912 Patent ........................ 3

V.      Dr. Stone's SSPPU Opinions are Admissible ........................................................ 3

VI.     Dr. Stone's Comparability Analysis is Admissible ................................................ 4

VII.    Dr. Stone Applies Proper Claim Construction ....................................................... 4

VIII.   Dr. Stone's Anticipation Analysis Should Not Be Stricken ................................... 4

IX.     Dr. Stone's Written Description Theories were Properly Disclosed....................... 4

X.      Dr. Stone's Derivation and Prior Invention Opinions are Proper .......................... 5

XI.     Pending IPRs are Part of the Prosecution Histories of the Asserted Patents .......... 5

XII.    Dr. Stone References the *Samsung* Litigation to Rebut Netlist's Expert............... 5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CoreLogic Info. Sols., Inc. v. Fiserv, Inc.*,
  No. 2:10-CV-132 (E.D. Tex. Sept. 13, 2012) ............................................................5

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
  424 F.3d 1293 (Fed. Cir. 2005) ............................................................................2

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010) ............................................................................1

*INVT SPE LLC v. Int'l Trade Comm'n*,
  46 F.4th 1361 (Fed. Cir. 2022) ............................................................................3

*Silicon Graphics, Inc. v. ATI Techs., Inc.*,
  607 F.3d 784 (Fed. Cir. 2010) ............................................................................3

*VirnetX v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ............................................................................3

**TABLE OF EXHIBITS**

| Ex. No. | Description |
|---------|-------------|
| K | Excerpts from Expert Report of Mr. David Kennedy dated November 20, 2023 |
| L | Appendix C-3 of Opening Expert Report of Dr. Harold Stone |

## I.    Dr. Stone's Essentiality Opinions Are Admissible

The claims are standard essential under Netlist's infringement theories.  Dr. Stone showed how Netlist is alleging, on an element-by-element basis, that every element is satisfied by JEDEC standards.  ECF 364-3, ¶ 404; *see id.*, ¶¶ 400-403 ('912 patent and '417 patent claims).

Netlist's argument that its expert "specifically analyzes the circuitry of the accused products to prove infringement" (ECF 525, 1) is wrong.  Dr. Stone identified that ███████████ ███████████████████████████████████████████████████████████ ███████ ECF 364-3, ¶ 400.  Dr. Stone further identified that Netlist relies upon JEDEC ***logic*** diagrams ██████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████ This is no different from relying solely on the standard for infringement.

Netlist's argument that the logic diagrams it relies upon are "optional" is misplaced.  Unrebutted testimony from two witnesses identified that the logic diagrams do not reflect the actual circuitry in components. ECF 524. Therefore, Netlist's reliance upon these diagrams to allege infringement is an assertion that its "patent covers every possible implementation of [the] standard." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010).  Dr. Stone's essentiality arguments respond to such a theory and should not be stricken.

Netlist cannot point to the JEDEC standards for infringement while arguing the claims are not standard essential.  *See Fujitsu*, 620 F.3d at 1328.  Either Netlist failed to show infringement and summary judgment is warranted (*see* ECF 524), or Netlist is alleging a standard essential case, and the Court should deny Netlist's present motion.

## II.    Dr. Stone's Non-Infringing Alternatives Are Proper

The Court in EDTX Case No. 2:22-cv-203 ("-203 Case") previously rejected Netlist's argument that Dr. Stone's NIA opinions are untimely.  *See* -203 Case, ECF 466, 9.  Here, like in the -203 Case, Micron's interrogatory responses identified known NIAs regarding ***third-party components*** (*see, e.g.,* ECF 536), and Dr. Stone properly opined on NIAs in response to Netlist's opening expert report.  For example, Netlist's expert opined that ███████████████████ ██████████████████████████████████████████████████████████████████████████ ████████████████████████  Dr. Stone properly responded, for example, by identifying alternative connection schemes, alternative latency configurations, and alternative chip select configurations to Dr. Mangione's Smith's specific infringement theories and explained the benefits, advantages and similarity to other products of which he was aware.  *See, e.g.,* ECF 364-3, ¶¶ 386-389, 390-392, and 393-396.  Netlist's citations to its infringement contentions are inapposite.  As discussed *infra* Section III, the contentions merely point to logic diagrams and do not show ***any specific*** circuitry connections.

## III.    Dr. Stone's "Phase Lock Loop" Opinions Are Admissible

It is undisputed that Netlist did not identify that it was interpreting "operatively coupled" and "coupled" the same (as "electrically connected") until opening expert reports.  This is an improper new claim construction.  *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1306 (Fed. Cir. 2005) (reversing claim construction that rendered "operatively" superfluous).  Dr. Stone properly responded to this untimely claim construction argument.

Netlist's argument that its contentions disclosed a PLL "operatively coupled . . . "via connections" is inapposite.  First, the disclosures of "connections" is not the same as Dr. Mangione-Smith's argument that the term means "electrically connected."  Second, it is uncontested that the contentions merely point to a "Logic Diagram" and do not show ***any specific***

connections at all.  ECF 364-9, 32.  Micron had no notice that Netlist was broadly asserting that *any* electrical connection satisfied the "coupled" or the "operatively coupled" claim language.

## IV.    Dr. Stone Applies the Correct Legal Standard for the '912 Patent

Micron is not advancing "a new claim construction."  ECF 525, 3.  The plain claim language recites a "capability" for the circuitry with respect to the computer system.  *See* ECF 441, 5-6.  That the claimed module is "connectable to a computer system" does not change the analysis. *See, e.g., INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1374-75 (Fed. Cir. 2022) (finding for "capability" claims that "although the asserted '439 claims do not include the base station itself, the base station's operation is a part of the infringement analysis").  Here, like in *INVT*, "the claims have specific requirements for the [signals]" that are "handle[d] and process[ed] when the device is activated and put into operation."  *Id.* at 1375.  For example, the computer system sends specific input signals: "comprising at least one row/column address signal, bank address signals, and at least one chip-select signal" and "configured to control a second number of DDR memory devices" and a "command signal" transmitted "*from the computer system* … to only one DDR memory device at a time."  ECF 441, 5-6.  These claims are vastly different than the present-tense-only "rasterization circuit coupled to the processor *that rasterizes*" language at issue in *Silicon Graphics, Inc. v. ATI Techs., Inc*., 607 F.3d 784, 795 (Fed. Cir. 2010).  Dr. Stone's opinions properly respond to Netlist's infringement theory for these elements.  *See, e.g.*, ECF 364-3, ¶ 69.

## V.    Dr. Stone's SSPPU Opinions are Admissible

The Court in the -203 Case previously rejected Netlist's argument that Dr. Stone's SSPPU opinions should be struck based on Micron's interrogatory responses.  -203 Case, ECF 466, 7 (citing *VirnetX v. Cisco Sys., Inc*., 767 F.3d 1308, 1327 (Fed. Cir. 2014) ("the requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is simply a

step toward meeting the requirement of apportionment.")).  Similarly, here, Dr. Stone's SSPPU opinions rebut Mr. Kennedy's apportionment opinion.  EX-K (Kennedy Report), ¶¶ 207-224.

## VI.    Dr. Stone's Comparability Analysis is Admissible

Dr. Stone properly responds to Netlist's expert's discussion of license comparability. Netlist acknowledges that it analyzed Micron's licenses in opening reports.  ECF 525, 4. Netlist also deposed Micron's witnesses in the -203 Case, and the parties agreed the depositions can be used in the present case.  There is no prejudice, and Dr. Stone's opinions are proper.

## VII.    Dr. Stone Applies Proper Claim Construction

Netlist alleges that Dr. Stone is construing the "data buffer control signal" term to require it to "'control the output of the data buffer' as opposed to simply a control signal for data buffers." ECF 364, 9-10. This is not true.  Dr. Stone properly opined that the plain meaning refers to "control signals for the data buffer."  ECF 364-3, ¶¶ 254-255.  Dr. Stone then provides an example why the alleged ████████ is different, ███████████████████████████████████████ *Id.,* ¶ 257.  This is a proper rebuttal to Netlist's expert who opined that ████████ controls what is output from the data buffer. ECF 441-4, ¶ 104 ███████████████████████████████████ ███████████████████████████  Indeed, the claims expressly recite circuitry "configurable to transfer the burst . . . in response to the data buffer control signals." '417 patent claim 1.

## VIII.    Dr. Stone's Anticipation Analysis Should Not Be Stricken

It is undisputed that Dr. Stone identified passages from the prior art for every element of the asserted independent claims.  As explained in detail by Dr. Stone, these passages can anticipate or render obvious the claims based on Netlist's assertion of claim scope.  *See* ECF 441, 10.

## IX.    Dr. Stone's Written Description Theories were Properly Disclosed

It is undisputed that Micron's invalidity contentions identified the specific subparts of the '417 patent claim limitations that did not have written description support, such as "wherein the

logic is further configurable to output data buffer control signals in response to the read or write memory command." ECF 364-14, 215. Netlist's argument that Micron "cites all or nearly all of the limitations" (ECF 525, 4) is inapposite because Netlist did not move for more clarity on Micron's contentions or seek additional written description contentions through discovery. Netlist's reliance on *CoreLogic Info. Sols., Inc. v. Fiserv, Inc*., No. 2:10-CV-132, ECF 396 (E.D. Tex. Sept. 13, 2012)—involving a motion to strike contentions—is misplaced.

## X.    Dr. Stone's Derivation and Prior Invention Opinions are Proper

Dr. Stone's opinions are proper. Dr. Stone explained how Netlist maps JEDEC features to each claim limitation and how these features are disclosed in the standards known to Mr. Solomon. ECF 364-12, ¶¶ 158-151 and 163-168. Dr. Stone also mapped the same JEDEC standards to the asserted claims. *See* ECF 441, 13-14; EX-L (Appendix C-3).

## XI.    Pending IPRs are Part of the Prosecution Histories of the Asserted Patents

Netlist does not point to any Dr. Stone opinions where he is freely discussing IPRs outside the context of "the '912 patent and its file history" and "the '417 patent and its file history." ECF 441, 14. Dr. Stone should be permitted to rely on the prosecution histories, including any conclusions of facts made in IPRs of the asserted and related patents.

## XII.    Dr. Stone References the *Samsung* Litigation to Rebut Netlist's Expert

Micron disclosed the ███ license facts during fact discovery. ECF 443, 2-3. Dr. Stone properly references the *Samsung* litigation in rebuttal to Netlist's expert's *Samsung* opinions. ECF 441 at 14-15. Netlist's complaints that "(2) Dr. Stone performs no analysis of any allegedly relevant agreement," and "(3) Dr. Stone is not qualified to testify on licensing or contract interpretation" are inconsistent. Regardless, these complaints are misplaced because Dr. Stone cites primarily to Netlist's expert's testimony in the relevant ¶ 365 without further contract interpretation. ECF 364-3, ¶ 365.

Dated: February 15, 2024

Respectfully submitted,

*/s/ Michael R. Rueckheim*
Thomas M. Melsheimer
State Bar No. 13922550
TMelsheimer@winston.com
Natalie Arbaugh
State Bar No. 24033378
NArbaugh@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

David P Enzminger (*pro hac vice*)
denzminger@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Michael R. Rueckheim
State Bar No. 24081129
MRueckheim@winston.com
Ryuk Park (*pro hac vice*)
RPark@winston.com
Matthew R. McCullough
MRMcCullough@winston.com
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

Matthew Hopkins (*pro hac vice*)
State Bar No. 1500598
mhopkins@winston.com
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

William M. Logan
State Bar No. 24106214
wlogan@winston.com
Juan C. Yaquian (*pro hac vice*)
State Bar No. 24110559
JYaquian@winston.com

6

WINSTON & STRAWN LLP
800 Capital Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Wesley Hill
State Bar No. 24032294
wh@wsfirm.com
Andrea Fair
State Bar No. 24078488
andrea@wsfirm.com
Charles Everingham IV
State Bar No. 00787447
ce@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DEFENDANTS
MICRON TECHNOLOGY, INC., MICRON
SEMICONDUCTOR PRODUCTS, INC.,
MICRON TECHNOLOGY TEXAS, LLC**

**CERTIFICATE OF SERVICE**

I certify that, on February 15, 2024, a copy of the foregoing was served on all counsel of record via the Court's ECF system and email.


/s/ Michael R. Rueckheim
Michael R. Rueckheim


**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.


/s/ Michael R. Rueckheim
Michael R. Rueckheim