**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NETLIST, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO, LTD; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SEMICONDUCTOR INC.,<br><br>Defendants. | ) | Case No. 2:22-cv-293-JRG<br><br>JURY TRIAL DEMANDED<br>(Lead Case)<br><br>[redacted] |
| NETLIST, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MICRON TECHNOLOGY, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; MICRON TECHNOLOGY TEXAS LLC,<br><br>Defendants. | ) | Case No. 2:22-cv-294-JRG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF NETLIST INC.'S ADDITIONAL MOTIONS *IN LIMINE***
**(MICRON CASE NO. 2:22-CV-294)**

# TABLE OF CONTENTS

Page

1. Preclude Micron from Presenting any Evidence or Argument that [REDACTED] ........ 1

2. Preclude Micron from Presenting any Allegation that Netlist Has Failed to Comply with JEDEC Obligations ........ 5

3. Preclude Micron from Presenting Evidence, Argument, or Testimony that Practicing a Standard Is a Defense to Infringement or Willfulness ........ 7

4. Preclude Micron from Presenting Testimony on Non-infringement or Claim Terms from Fact Witnesses. ........ 9

5. Preclude Micron from Presenting Evidence, Argument, or Testimony that Micron Allegedly Disables Encoded QuadCS Mode ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adv. Thermal Sci. Corp. v. App. Materials Inc.*,
2009 WL 10671185 (C.D. Cal. July 20, 2009) .......... 4

*Air Turbine Tech., Inc. v. Atlas Copco AB*,
410 F.3d 701 (Fed. Cir. 2005) .......... 10, 11

*Cardiovascular Sys. Inc. v. Scimed Life Sys. Inc.*,
887 F.2d 1070 (Fed. Cir. 1989) .......... 9

*Cybergym Research, LLC v. ICON Health and Fitness, Inc.*,
2007 WL 9724237 (E.D. Tex. Oct. 7, 2007) (J. Folsom) .......... 11

*EdgeCo. Inc. v. Fastcap, LLC*,
2005 WL 1630836 (D.N.J. July 11, 2005) .......... 11

*Fid. Nat. Title Ins. Co. v. Doubletree Partners, L.P.*,
866 F. Supp. 2d 604 (E.D. Tex. 2011) .......... 1

*Fiteq Inc. v. Venture Corp.*,
2015 WL 3987912 (N.D. Cal. June 30, 2015) .......... 5

*Kona Tech. Corp. v. S. Pac. Transp. Co.*,
225 F.3d 595 (5th Cir. 2000) .......... 1

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) .......... 9

*Nanology Alpha LLC v. WITec Wissenschaftliche Instrumente und Technologie GmbH*,
*No. 6:16-CV-00445, 2018 WL 4289342, at *4 (E.D. Tex. July 11, 2018)* .......... 12

*Netword, LLC v. Centraal Corp.*,
242 F.3d 1347 (Fed. Cir. 2001) .......... 9

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .......... 9

*Protech Wheel Indus. Co. Ltd. v. Velox Enters., Inc.*,
2011 WL 13213578 (C.D. Cal. Jan. 12, 2011) .......... 5

*Sparton Corp. v. United States*,
77 Fed. Cl. 1 (Fed. Cl. 2007) .......... 1

*SSL Servs., LLC v. Citrix Sys., Inc.*,
769 F.3d 1073 (Fed. Cir. 2014) ..... 10

**Other Authorities**

FED. R. CIV. P. 37(c)(1) ..... 12

Fed. R. Evid. 403 ..... 11

Fed. R. Evid. 701 ..... 11

Fed. R. Evid. 702 ..... 9, 11

Fed. R. Evid. 708 ..... 11

1. **Preclude Micron from Presenting any Evidence or Argument that**

. In so doing, Micron would be asking the jury to conduct contract interpretation, which is properly the purview of the Court. "[T]he interpretation of a contract is a question of law for the Court to decide." *Fid. Nat. Title Ins. Co. v. Doubletree Partners, L.P.*, 866 F. Supp. 2d 604, 614-15 (E.D. Tex. 2011) (citing *Kona Tech. Corp. v. S. Pac. Transp. Co.,* 225 F.3d 595, 604 (5th Cir. 2000)). "In the absence of specialized trade usage, expert testimony regarding proper contract interpretation is inadmissible, as is expert testimony regarding the legal significance of the contract language." *Id.* (quoting *Sparton Corp. v. United States*, 77 Fed. Cl. 1, 8 (Fed. Cl. 2007)).

This Court twice granted this motion *in limine* in related litigations. *Netlist v. Micron*, No. 22-cv-203 (E.D. Tex.) ("*Micron I*"), Dkt. 413 at 1-2 ( ), Dkt. 467 (adopting Dkt. 413); *Netlist v. Samsung*, No. 21-cv-463 (E.D. Tex.) ("*Samsung I*"), Dkt. 432 at 10 (granting the same MIL). There is no reason such evidence would be appropriate in this case either.

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████

Micron cannot lie behind a log as to a legal issue such as the enforceability of a contract clause until a rebuttal expert report. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]





Under the law of California, which governs, this represents a binding supply obligation. *Adv. Thermal Sci. Corp. v. App. Materials Inc.*, 2009 WL 10671185, at *3 (C.D. Cal. July 20, 2009) (finding contract language "Upon [AMI's] request, [ATS] shall supply and

sell to [AMI] Components" was reasonable susceptible to interpretation as "an affirmative supply obligation."); *Fiteq Inc. v. Venture Corp.*, 2015 WL 3987912, at *7 (N.D. Cal. June 30, 2015) (finding that where agreement between parties indicated that "when a purchase order was forwarded… to Venture, Venture had two options: it could accept the purchase order in writing pursuant to Section 5.3.2(b)… or it could reject the purchase order pursuant to Section 5.3.3" but agreement specified conditions surrounding any rejection, "[t]his shows a clear intent by Venture to bind itself to fulfill the orders."); *Protech Wheel Indus. Co. Ltd. v. Velox Enters., Inc.*, 2011 WL 13213578, at *6 (C.D. Cal. Jan. 12, 2011) (finding that reading section of supply agreement as "not binding [seller] to accept purchase orders would essentially relieve [seller] of its most basic obligation under the contract—to sell [products] to [buyer]" and thus refusing to adopt this interpretation.).

## 2. Preclude Micron from Presenting any Allegation that Netlist Has Failed to Comply with JEDEC Obligations

Netlist requests that the Court preclude Micron from presenting argument or evidence concerning any allegation that Netlist breached any duty to JEDEC, such as the violation of a disclosure obligation or a RAND obligation. There is no breach of JEDEC obligation allegation that will be presented to the jury. Micron has no breach-related counterclaims. Micron has admitted that it is not pursuing an equitable estoppel/standards-based estoppel defense." Dkt. 443 at 2 ("Defendants ("Micron") are not pursuing . . . Waiver and Estoppel (Affirmative Defense No. 5) . . . ."). Micron has asserted an affirmative defense of "breach of RAND licensing objection," but in opposing Netlist's motion for summary judgment as to that defense, Micron affirmed that this is an equitable defense that should not be tried to the jury. Dkt. 340 at 1 ("nor has Micron claimed this equitable defense should be tried by the jury"). Moreover, Micron's interrogatory responses do not discuss any breach of an obligation to JEDEC. *See* Dkt. 523-3 (2024-01-22 Micron's Corrected Sixth

Supp. Resp. to Netlist Amd. ROG Set 1); Dkt. 523-4 (2024-01-22 Micron's Corrected Second Supp. Resp. to Netlist 2nd ROGs).

Micron has suggested that JEDEC disclosure obligations are relevant to whether an obligation to license on reasonable and non-discriminatory ("RAND") exists. [REDACTED] But the JEDEC policy does not make RAND contingent on disclosure. Rather, the JEDEC Patent Policy automatically takes RAND rights to all patents that contain Essential Patent Claims for a Standard generated by a committee on which a Committee Member is a member, regardless of disclosure. Dkt. 362-1 (JM21V) at § 8.2.4; *see also* 8.2.5 ("If a Committee Member, at its discretion, elects not to submit a License Assurance/Disclosure Form (see Annex A.3) at or before the time the ballot closes and does not otherwise provide notice of an unwillingness to license in accordance with 8.2.3.1, the Committee Member and its Affiliates will be deemed to have agreed to offer to grant licenses on RAND terms and conditions for all of its Essential Patent Claims of the balloted Standard, if and as consistent with 8.2.4."). Further, Netlist has filed notices of willingness to license on RAND terms with JEDEC for each of the families of patents at issue in this case, and has not filed active notices of unwillingness to license. As a result, if either party had sought to establish the patents were essential, a RAND commitment would exist.

Moreover, RAND obligations only attach to standard-essential patents ("SEP"), which Micron has admitted. Dkt. 433 at 1 ("Micron has not claimed that a RAND obligation would exist if the

Accused Products were not potentially standard essential . . . ."). As explained in Netlist's Motion for Summary Judgment That the Asserted Patents Are Not Standard-Essential, there is no genuine dispute that any of the asserted claims are essential under the JEDEC Patent Policy. *See* Dkt. 362 (motion), 530 (reply). For purposes of infringement in this case, no expert contends that any of the Asserted Patents are SEPs. Moreover, even if RAND obligations were somehow relevant to issues the jury will be considering, the jury can be informed of such obligations without either party having to discuss disputes about compliance with JEDEC obligations.

For these reasons, the Court granted Netlist's similar MIL in the *Micron I* case. *See Micron I*, Dkt. 413 at 2 (granting "Plaintiff's MIL No. 3: Preclude Micron from presenting any allegation that Netlist has failed to comply with JEDEC obligations" because "neither party properly contends that the asserted patents actually are standard essential."). Similarly, the Court granted Netlist's similar MIL in the *Samsung I* litigation to preclude argument Netlist failed to comply with its JEDEC obligations, and ruled it would act as gatekeeper for any evidence about JEDEC. Ex. 2 (*Samsung I* PTC Tr. Vol. 2) at 198:24-99:1, 200:14-201:6 ("THE COURT: All right. In regard to Plaintiff's MIL No. 4, I'm going to grant this MIL, but I want the parties to understand why I'm doing it. I'm granting it so that the Court can be an active gatekeeper on what does and doesn't come in before this jury about JEDEC. I have a fear that without any constraints there's going to be confusion created, especially in light of the fact that these are not standard essential patents, and there are not obligations under JEDEC because they're not standard essential patents submitted to this standard setting body.").

**3. <u>Preclude Micron from Presenting Evidence, Argument, or Testimony that Practicing a Standard Is a Defense to Infringement or Willfulness</u>**

Micron should be precluded from suggesting to the jury that the fact its products practice JEDEC standards inoculates it from liability in this case. There are two ways Micron may do this.

First, Micron may suggest that all it does is innocently practice the standard, and it believed

that it could not be infringing any Netlist patents by doing so. Micron's witnesses have already suggested that at deposition.

Micron never disclosed "practicing the standard" as a defense to willfulness in its interrogatory response on non-willfulness. *See* Dkt. 523-3 (2024-01-22 Micron's Corrected Sixth Supp. Resp. to Netlist Amd. ROG Set 1) at 59. Moreover, this argument would be an end-run-around the Court's MIL No. 7, which precludes Micron from introducing evidence, testimony, or argument suggesting that there is anything legally improper in filing a patent application or writing patent claims to cover an adverse party's product.

Second, Micron may argue that it does not infringe because Netlist has not shown that the asserted claims cover the standard. To be clear, to the extent foundation is laid that an accused product implements a particular passage from a standard or that a standard accurately describes the operation of a particular aspect of the product, either party should be free to use this to argue the presence or absence of an element. What this motion *in limine* is directed to is an attempt by Micron to confuse the jury that it must find essentiality of the patents in order to find infringement. Further,

[redacted]

The Court granted Netlist's similar MIL in the *Micron I* case. *Micron I*, Dkt. 413 ("**GRANTED** to exclude evidence or argument that Defendant has simply been following the standard in designing its products. ***To the extent that such an argument has any relevance to infringement, or even willful infringement, that relevance is substantially outweighed by unfair prejudice and jury confusion.***") (emphasis added). The Court also granted this portion of Netlist's similar MIL in the *Samsung I* case, holding that "To the extent Samsung might be tempted to communicate to the jury that by practicing the standard they're somehow being immunized from an infringement allegation, I think that's improper. And even though Samsung says they're not going to do this, to that extent I'm going to grant this MIL." Ex. 2 (*Samsung I* PTC Tr. Vol. 2) at 206:13-207:2. The argument should be excluded for the same reasons here.

**4. <u>Preclude Micron from Presenting Testimony on Non-infringement or Claim Terms from Fact Witnesses.</u>**

Micron fact witnesses should be precluded from testifying about the presence or absence of any claim limitation in Micron's products. Applying technical understanding of a product to the limitations of the claim is a quintessential function of an expert. *See, e.g.*, Fed. R. Evid. 702; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980-81 (Fed. Cir. 1995); *Cardiovascular Sys. Inc. v. Scimed Life Sys. Inc.*, 887 F.2d 1070, 1076 (Fed. Cir. 1989) ("The purpose of expert testimony is to provide assistance

to the court in understanding, when the claims are technologically complex or linguistically obscure, how a technician in the field, reading the patent, would understand the claims."). *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1355-56 (Fed. Cir. 2001) (expert's opinion as to the technological aspects of the claim limitations properly relied on by the district court, particularly when dealing with complex technologies outside the court's expertise). For construed terms, the Court's construction must be applied; and for plain and ordinary meaning, the POSITA standard must be applied. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

[redacted]

[redacted]

Whether Micron's accused product satisfies the proper construction requires specialized testimony, fully disclosed and subject to questioning at deposition. *See Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 713–14 (Fed. Cir. 2005) (lay testimony as to "the structural components of the accused device and to their respective functions" excluded); *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1092 (Fed. Cir. 2014) (affirming exclusion of lay "non-infringement" testimony proffered by fact witness: "[B]eliefs formed by a lay person without the benefit of the court's claim construction determinations render[s] them of little probative value and potentially prejudicial."). This analysis necessarily "would have required an expert report based on 'scientific, technical, or other specialized knowledge within the scope of Rule 702." *See Cybergym Research, LLC v. ICON Health and Fitness, Inc.*, 2007 WL 9724237, at *2 (E.D. Tex. Oct. 7, 2007) (J. Folsom) (precluding a "technical" lay witness from "providing a legal determination of infringement" under Rule 701).

Courts routinely hold that a comparison of a patent claim or claim language to an instrumentality by a fact witness is inappropriate under Fed. R. Evid. 701. *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 713-14 (Fed. Cir. 2005) (district court properly excluded testimony of lay witness as to "both the structural components of the accused device and to their respective functions"). Moreover, Micron's fact witnesses did not submit any type of expert analysis of infringement in this case, and therefore their testimony would be improper under Fed. R. Evid. 708. To have a lay witness who did not perform a proper infringement analysis based on the appropriate claim constructions opine on his views of what a claim term means and requires completely frustrates the expert process. *EdgeCo. Inc. v. Fastcap, LLC*, 2005 WL 1630836, at *19-22 (D.N.J. July 11, 2005) (striking declaration of lay witness that addressed issues of validity and infringement).

Such testimony, therefore, is subject to exclusion under Fed. R. Evid. 403 (unduly prejudicial as compared to probative value), and Fed. R. Evid. 701 (improper lay opinion). Micron should thus be precluded from having any fact witness testify as to the presence or absence of any limitation of the Asserted Patents in the accused product.

**5. Preclude Micron from Presenting Evidence, Argument, or Testimony that Micron Allegedly Disables Encoded QuadCS Mode**

[redacted]

The Court should exclude any such evidence, argument, or testimony that Encoded QuadCS Mode is disabled because this theory was never disclosed during discovery and flatly contradicts Micron corporate representative testimony.

"If a party fails to provide information as required by Rule 26(e), 'the party is not allowed to use that information ... to supply evidence ... at a trial, unless the failure was substantially justified or is harmless.' FED. R. CIV. P. 37(c)(1)." *Nanology Alpha LLC v. WITec Wissenschaftliche Instrumente und Technologie GmbH*, No. 6:16-CV-00445, 2018 WL 4289342, at *4 (E.D. Tex. July 11, 2018) (excluding any reference to non-infringement theory not mentioned in interrogatory responses and disclosed for

the first time in expert rebuttal report). Micron did not disclose disabling Encoded QuadCS as a non-infringement argument during discovery. Netlist's Interrogatory 1 asked Micron: "For each asserted claim of Netlist Patents-in-Suit that You deny liability for infringement or damages, Set Forth Your Complete Basis (including both factual and legal) for that denial . . . ." Dkt. 523-3 (2024-01-22 Micron's Corrected Sixth Supp. Resp. to Netlist Amd. ROG Set 1). Micron never stated that Encoded QuadCS was disabled in their devices in response to this interrogatory. Rather, in addition to a boilerplate assertion that "Netlist has failed to satisfy its burden of showing that any Micron Accused Product satisfies" each limitation of '912, claim 16, Micron provided a generic response that simply parroted the claim language:

> Micron Accused Products for the '912 patent do not include a set of input signals configured to control a second number of DDR memory devices arranged in a second number of ranks, the second number of DDR memory devices smaller than the first number of DDR memory devices and the second number of ranks less than the first number of ranks.

*Id.* at 26-27. Nor did Micron mention disabling Encoded QuadCS as a non-infringing alternative or next-best alternative to the claimed invention of '912, claim 16. *See id.* at 46-47; Dkt. 523-4 (2024-01-22 Micron's Corrected Second Supp. Resp. to Netlist 2nd ROGs) at 23-27. Thus, Micron should be precluded from presenting this theory, which it never disclosed during fact discovery.

Additionally, evidence regarding this theory should be excluded because it directly contradicts the testimony of Micron's corporate representatives on the accused products.

 Micron should be precluded from introducing contrary argument or evidence for the first time at trial.

Dated: February 20, 2024

Respectfully submitted,

*/s/ Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 20, 2024, a copy of the foregoing was served to all counsel of record.

*/s/ Michael Tezyan*
Michael Tezyan

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Michael Tezyan*
Michael Tezyan

**CERTIFICATE OF CONFERENCE**

I hereby certify that, on February 20, 2024, counsel for Netlist met and conferred with Micron's counsel regarding the subject matter of Netlist's motion. Micron opposes Netlist's motion.

*/s/ Michael Tezyan*
Michael Tezyan