UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., et al., <br><br> Defendants. | Civil No. 2:22-CV-00293-JRG <br> (Lead Case) <br><br> **JURY TRIAL DEMANDED** |
| NETLIST, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY TEXAS, LLC, et al., <br><br> Defendants. | Civil No. 2:22-CV-00294-JRG <br> (Member Case) <br><br> **JURY TRIAL DEMANDED** |

**SAMSUNG'S OMNIBUS MOTION *IN LIMINE***

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

TABLE OF EXHIBITS ...................................................................................................................... iii

TABLE OF ABBREVIATIONS ......................................................................................................... iii

I.  MIL No. 1: Exclude Evidence and Argument That Employees Lack Knowledge of Patents, Noninfringement Positions, or NIAs ................................................................ 1

II. MIL No. 2: Exclude Evidence or Argument on a Corporate Representative's Lack of Knowledge Outside of Personal Knowledge or 30(b)(6) Topics ............................... 2

III. MIL No. 3: Exclude Evidence or Argument on the JDLA, Including Its Alleged Breach or Termination, and Its Use as Proof That Samsung Allegedly Needs a License to Netlist's Patents ................................................................................................ 4

    A.  Evidence or Argument That the JDLA Shows That Samsung Needed or Needs a License to Netlist's Patents ............................................................... 4

    B.  Evidence or Argument About Alleged Breach/Termination ........................... 5

    C.  The Court Should Exclude All Evidence and Argument About the JDLA Unless Samsung Opens the Door ........................................................... 8

IV. MIL No. 4: Exclude Evidence and Argument Regarding Any Valuation of JDLA Supply Provision ............................................................................................................. 9

V.  MIL No. 5: Exclude Evidence and Argument That Implies That Foreign Companies and/or Foreign Nationals Do Not Follow U.S. Law or Commit Crimes ............................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chrimar Sys., Inc. v. Adtran, Inc.*,
  No. 6:15-CV-618-JRG-JDL, 2017 WL 131587 (E.D. Tex. Jan. 13, 2017) ......................................10

*DataTreasury Corp. v. Wells Fargo & Co.*,
  No. 2:06-CV-72-DF, Dkt. 2392 (E.D. Tex. Oct. 5, 2010) ...................................................................3

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
  140 S. Ct. 1589 (2020) ........................................................................................................................10

*Netlist, Inc. v. Samsung Elec. Co.*,
  No. 2:21-CV-00463-JRG (E.D. Tex. Apr. 5, 2023) ........................................................................2, 3

*Solas OLED Ltd. v. Samsung Elecs. Co., Ltd.*,
  No. 2:21-CV-105-JRG-RSP, 2022 U.S. Dist. LEXIS 100437 (E.D. Tex. Jan. 4, 2022) .............2, 12

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
  930 F.3d 1295 (Fed. Cir. 2019) ..............................................................................................................1

*Union Pump Co. v. Centrifugal Tech. Inc.*,
  404 F. App'x 899 (5th Cir. 2010) ..........................................................................................................3

*Westbrook v. Gen. Tire & Rubber Co.*,
  754 F.2d 1233 (5th Cir. 1985) ............................................................................................................12

**Other Authorities**

Fed. R. Evid. 401 ............................................................................................................................................11

Fed. R. Evid. 402 .............................................................................................................................. 2, 3, 11

Fed. R. Evid. 403 .............................................................................................................................. 2, 3, 11

Fed. R. Evid. 404 ............................................................................................................................................11

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| 1 | Order on Motions *in Limine* from *EDTX1*, Dkt. 432 (public) |
| 2 | *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72-DF, Dkt. 2392 (E.D. Tex. Oct. 5, 2010) (excerpts) |
| 3 | Trial Tr. (April 14-21, 2023) from *EDTX1* (public, excerpts) |
| 4 | Trial exhibit PX 1756 from *EDTX1* |
| 5 | Trial exhibit PX 1663 from *EDTX1* |
| 6 | Deposition Transcript of Indong Kim (Dec. 8, 2022) from *EDTX1* (excerpts) |
| 7 | Samsung's Objections and Counter Designations to Netlist's Initial Deposition Designations (served Feb. 12, 2024) (highlighted) |
| 8 | *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55247, Dkt. 77-1 (9th Cir. Oct. 17, 2023) |
| 9 | Deposition Transcript of Mr. Joseph Calandra (Nov. 8, 2023) (excerpts) |
| 10 | Email Correspondence re Joseph Calandra Deposition Designations (Nov. 6, 2023) |
| 11 | Opening Report of Mr. David Kennedy (Nov. 20, 2023) (excerpts) |
| 12 | *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-CV-00993, Dkt. 276 (C.D. Cal. Dec. 3, 2021) |
| 13 | *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-CV-00993, Dkt. 306 (C.D. Cal. Feb. 15, 2022) |
| 14 | *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55247, Dkt. 19 (9th Cir. Aug. 4, 2022) |
| 15 | Deposition Transcript of Chuck Hong (Dec. 16, 2022) from *EDTX1* (excerpts) |
| 16 | Deposition Transcript of Gail Sasaki (Dec. 16, 2022) from *EDTX1* (excerpts) |
| 17 | *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-CV-00993, Dkt. 186 (C.D. Cal. Oct. 14, 2021) |
| 18 | Joint Development and License Agreement (JDLA) |
| 19 | Trial Transcript from *G+ Comms. LLC. v. Samsung Elec. Co.*, No. 2:22-CV-00078-JRG (public, excerpts) |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| '912 patent | U.S. Patent No. 7,619,912 |
| '608 patent | U.S. Patent No. 10,268,608 |
| '417 patent | U.S. Patent No. 11,093,417 |
| C.D. Cal. Case | *Netlist Inc. v. Samsung Elecs. Co.*, No. 8:20-CV-00993 (C.D. Cal.) |
| Court MIL | Court MIL from Standing Order on Motions *in Limine* in Cases Assigned to Chief Judge Rodney Gilstrap Involving Allegations of Patent Infringement |
| *EDTX1* | *Netlist Inc. v. Samsung Electronics Co. Ltd.*, No. 2:21-CV-463 (E.D. Tex.) |
| JDLA | Joint Development and License Agreement |
| KTT | Korean Tax Tribunal |
| MIL | Motion *in Limine* |
| NIA | Noninfringing Alternative |
| Ninth Circuit Appeal | Netlist Inc. v. Samsung Elecs. Co., No. 22-55247 (9th Cir.) |

## I. MIL No. 1: Exclude Evidence and Argument That Employees Lack Knowledge of Patents, Noninfringement Positions, or NIAs

The Court should preclude Netlist from presenting evidence, testimony, or argument that Samsung's fact witnesses have not read the asserted patents or formed opinions regarding the asserted patents, including noninfringement positions and positions regarding NIAs, unless the witnesses were designated as 30(b)(6) witnesses on such topics. As this Court recognized when it recently granted this MIL in *G+ Comms. LLC v. Samsung Elec. Co.* case, No. 2:22-CV-00078-JRG, the prejudice of such evidence, testimony, or argument greatly outweighs its probative value.

***First***, a plaintiff has the burden to establish infringement. Evidence that Samsung's fact witnesses (e.g., engineers) have not reviewed the asserted patents or formed opinions concerning infringement flips that burden on its head and improperly suggests that Samsung and its employees have an affirmative duty to review patents and form opinions concerning noninfringement. Such a duty does not exist. The fact that Samsung's engineers may not have reviewed the asserted patents is an unremarkable fact that has no impact on infringement or willfulness. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019) (vacating a jury's willfulness finding as not supported by substantial evidence in part because it was "unremarkable" that engineers without legal training did not analyze the asserted patents). Any argument implying the opposite may confuse and inflame the jury, prejudicing Samsung and shifting the jury's focus away from probative evidence.

***Second***, asking fact witnesses whether they have read the asserted patents or formed opinions about infringement, validity, or NIAs improperly treats Samsung's fact witnesses as expert witnesses. The parties have engaged technical experts that have reviewed the asserted patents and formed opinions regarding infringement, validity, NIAs, and other technical issues. Samsung's fact witnesses are not qualified as experts, were never disclosed as experts, have not issued expert reports, and should not be treated as experts. Evidence that Samsung's fact witnesses have not reviewed the patents, or formed opinions about infringement, validity, or NIAs, as an expert witness would, may cause the jury

to conflate the roles of experts with fact witnesses.

**Third**, any evidence that a Samsung fact witness has not reviewed the asserted patents is likely to mislead the jury on willfulness. A Samsung witness's lack of awareness of the asserted patents does not show that Samsung has willfully infringed the asserted patents. To the contrary, it should lead to the opposite conclusion, as willfulness requires knowledge of the patents. As discussed above, presenting evidence and argument about Samsung witnesses' not reviewing the asserted patents creates the improper suggestion that Samsung has a duty to investigate the issue of infringement when no such duty exists. *See Solas OLED Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:21-CV-105-JRG-RSP, 2022 U.S. Dist. LEXIS 100437, at *6 (E.D. Tex. Jan. 4, 2022) (granting motion to preclude suggestion that Samsung had a duty to investigate a patent). The jury may be confused into concluding that a witness's failure review patents leads to a finding of willfulness.

In short, the fact that certain of Samsung's fact witnesses may not have reviewed the asserted patents or formulated opinions about them has little probative value, but is highly prejudicial and likely to lead to jury confusion. Fed. R. Evid. 402, 403. The Court should preclude Netlist from presenting such evidence or argument, except for witnesses designated as 30(b)(6) witnesses on those topics within the confines of the Court's guidance.

## II.     MIL No. 2: Exclude Evidence or Argument on a Corporate Representative's Lack of Knowledge Outside of Personal Knowledge or 30(b)(6) Topics

Samsung's trial witnesses have no obligation to prepare to testify on topics outside their personal knowledge. Ex. 1, *Netlist, Inc. v. Samsung Elec. Co.*, No. 2:21-CV-00463-JRG, Dkt. 432 at 12 (E.D. Tex. Apr. 5, 2023) (granting MIL on this topic). The Court should not permit Netlist to present any argument, evidence, or testimony suggesting that any Samsung trial witness is obligated to prepare on any particular topic or is charged with knowledge of others within the company unless that

2

individual was previously designated as a 30(b)(6) witness on such a topic.[1]  *Id.*

For example, if Samsung's corporate representative works in sales, Netlist should not be permitted to question the witness on the technical details of the products and components at issue, or pre-suit communications between the parties.  The witness's lack of knowledge on these topics—which is the subject of other witnesses' knowledge and testimony—is not relevant to the claims of any party and can only unfairly prejudice the jury against Samsung.  Indeed, traditional foundational requirements prohibit questioning witnesses outside of their personal knowledge and responsibilities.  Fed. R. Evid. 402, 403; Ex. 1 at 12 (granting Samsung's MIL on this topic in *EDTX1* "[a]s to any witness testifying on behalf of Samsung who was never noticed or deposed as a 30(b)(6) witness"); Ex. 2, *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72-DF, Dkt. 2392 at 48-9 (E.D. Tex. Oct. 5, 2010) ("The Parties should be precluded from asserting that a person who is acting as a Party's corporate representative at trial (1) has a legal obligation to prepare to testify on any particular topic, (2) is charged with the knowledge of others within the company, or (3) has the ability to bind the Party with his or her trial testimony.").

Courts have even held that a "corporate representative **may not** testify to matters outside his own personal knowledge to the extent that information is hearsay not falling within one of the authorized exceptions." *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, at 907-908 (5th Cir. 2010) (internal quotations and alterations omitted).  It would be unfairly prejudicial for Netlist to point to Samsung's corporate representatives as lacking knowledge when the corporate representative would not be permitted to offer such testimony in the first place.

---

[1] The Court also granted this MIL in the recent *G+ Comms.* case.

### III. MIL No. 3: Exclude Evidence or Argument on the JDLA, Including Its Alleged Breach or Termination, and Its Use as Proof That Samsung Allegedly Needs a License to Netlist's Patents

Because instructing the jury that Samsung is "no longer" licensed by the JDLA is so inflammatory and prejudicial to Samsung on the issues of noninfringement and invalidity, Samsung has moved to bifurcate the trial in this case such that trial on noninfringement and invalidity would occur before a second phase involving the issues of Samsung's license defense, willfulness, and damages. *See* Dkt. 383. Under this approach, the JDLA should be excluded wholesale from the first phase of the trial (noninfringement and invalidity). *Id.* at 6.

In addition, regardless of whether the case is bifurcated or not, the Court should exclude, at a minimum, all evidence and argument that the JDLA's existence shows that Samsung allegedly needed or still needs a license to Netlist's patents (*see* Section A, below), and all evidence and argument about alleged breach or termination of the JDLA (*see* Section B, below).

Furthermore, Samsung respectfully requests that the Court exclude all evidence and argument about the JDLA unless Samsung first opens the door, for example, by referencing certain aspects of the JDLA in connection with license-defense, no willfulness, and damages issues (*see* Section C, below). This exclusion would apply to both the second phase of a bifurcated trial and a single trial on all issues.

#### A. Evidence or Argument That the JDLA Shows That Samsung Needed or Needs a License to Netlist's Patents

The Court should bar evidence and argument that Samsung "needed" a license to any Netlist patent prior to entering into the JDLA. The record from *EDTX1* illustrates the confusion and unfairness that can result when a jury tasked with technical fact finding is confronted with these issues. In that case, Netlist's counsel repeatedly and improperly argued that the previous existence of the JDLA, and Netlist's purported termination thereof, were evidence of infringement: "[Samsung] did this [came to Netlist] . . . because they wanted to access our patents . . . . **And as the Court said, Samsung no longer has a license, no longer as a right to use the patents in this case**, and it's in

4

this forum, a federal court, that the consequences of its actions will be determine[d]." Ex. 3 at 1327:121-1328:7; *see also id.* at 1370:20-25 (arguing Mr. Ji "flew 6,000 miles to tell us that they needed access to our patents"). In that same vein, Netlist's counsel used Samsung's statements in response to questions from the KTT about the JDLA to argue that Samsung "said [] again and again and again that they wanted our LRDIMM patents . . . . [Samsung] wanted our technology, and they did not want to compensate for it. And **this lawsuit exist [sic] because they took the technology and they did not want to compensate us for it**." *Id.* at 1332:25-1333:7 (discussing PX 1756 (Ex. 4)).[2] Such inflammatory rhetoric was deeply unfair to Samsung in *EDTX1* because it suggested, with no evidentiary support whatsoever, that Samsung's entry into the JDLA was equivalent to an admission of infringement. Here, the '608 and '417 patents had not even issued in 2015, when the parties entered into the JDLA, and the '912 patent was in reexamination from 2011 until February 8, 2021. *See* Dkt. 100-2; Dkt. 137-4; Dkt. 341-2. As a result, any assertion by Netlist that Samsung entered the JDLA because it supposedly "needed" a license to the asserted patents—or in Netlist's counsel's words "access to [Netlist's] patents," Ex. 3 at 1370:20-25—is patently false and unduly prejudicial.

Further, to the extent the JDLA is discussed at all at trial, the Court should instruct the jury that the JDLA is not proof that Samsung infringes any Netlist patent, and that the jury may not rely on the JDLA to find infringement.

### B.  Evidence or Argument About Alleged Breach/Termination

The Court also should preclude Netlist from mentioning Samsung's alleged breach of the JDLA, including its supply provision (§ 6.2), and Netlist's alleged termination of the JDLA, which is the basis of the separately pending lawsuit in the C.D. Cal. This Court, the Special Master, and both

---

[2] *See also* Ex. 3 at 147:9-15 (discussing Ex. 4 (PX 1756), stating "Samsung candidly admitted that they were focused on obtaining rights to our patents on LRDIMM . . . they wanted our patents on LRDIMM."); *id.* at 219:19-220:6 (eliciting Netlist witness testimony on Exs. 4 (PX 1756) and 5 (PX 1663) that Samsung "wants to enter into a license agreement so they don't have to pay a separate royalty," and to "resolve the patent risk related to LRDIMM").

5

parties have recognized that these issues are not before this Court at this time:

- **The Court:** "The effectiveness of Netlist's termination of the JDLA is not an issue that must be decided at this time, and there are other significant issues in this case that are not before the Central District of California, including Netlist's claims for patent infringement. . . . The Court reasonably may defer issues of Netlist's alleged termination of the JDLA to the Central District of California and simultaneously proceed on the other issues in this case, including Netlist's claims for patent infringement." Dkt. 278 (Order Denying Stay) at 5.

- **The Special Master:** "The Special Master finds that discovery regarding issues solely before the Central District of California, including Netlist's allegations that Samsung breached the payment provision (§ 3) and supply provision (§ 6.2) of the JDLA, and Netlist's subsequent termination of the JDLA on July 15, 2020, should be precluded from this case." Dkt. 377 at 4-5.

- **Netlist:** "SPECIAL MASTER FOLSOM: But do you take the position, though, the termination issue is in some fashion in front of Judge Gilstrap? Because I certainly don't read his order for that proposition, Mr. Sheasby. MR. SHEASBY: I agree with that, Your Honor." Dkt. 459-2 at 51:7-11.

- **Samsung:** "[Netlist's] breach of contract and termination claims related to the JDLA… must be decided only in the first-filed, dominant forum, which is the C.D. Cal." Dkt. 193 at 1.

Given this agreement, alleged breach and termination should be off-limits during the trial. This evidence is not relevant, for example, to the alleged infringement or invalidity of the asserted patents and is far more prejudicial than probative. *See* Court MIL No. 13 (regarding prior litigations).

Moreover, before trial in this case, the C. D. Cal. jury should reach a verdict regarding whether the JDLA was, in fact, materially breached or terminated. Regardless how the jury finds, any discussion of breach or termination of the JDLA will be irrelevant to this case.

If the jury finds in Samsung's favor, it will moot the present litigation. Dkt. 278 at 6. In particular, if, as Samsung has consistently maintained, the C.D. Cal. jury finds no material breach and the C.D. Cal. court enters judgment to that effect, then Netlist will have to accept that the JDLA license remains in full force and effect. The JDLA will thus continue to immunize Samsung against the entirety of the infringement claims in this case and issue preclusion would bar Netlist from

6

relitigating its breach/termination theory here.

In the unlikely event the C.D. Cal. jury does find that there was a material breach and the termination of the JDLA was effective on July 15, 2020, **there would still be no need for the jury in this case to hear any evidence or argument mentioning the breach or termination of the JDLA**. First, this decision would be subject to appeal. Second, the underlying facts of the alleged breach and termination will have been already litigated and should not be relitigated here. *See* Ex. 1 at MILs 1, 3. Court MIL No. 13 also applies to preclude discussion of decisions in the C.D. Cal. Case and the underlying facts. The date of July 15, 2020 need be referenced, if at all, only as the date of the hypothetical negotiation, with no discussion of whether or not the JDLA was terminated, or why.

Nonetheless, Netlist appears intent on presenting issues related to alleged breach and termination to the jury. For example, Netlist apparently intends to present testimony from Mr. Indong Kim regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which is highly prejudicial and not probative of any issue.[3] Ex. 6 at 47:22-48:6; Ex. 7 at 36 (Netlist's designation of this testimony). This example is just one of many in which Netlist designated testimony regarding alleged breach/termination of the JDLA, all of which Samsung objected to. *See* Ex. 7. Such evidence is not relevant and can serve only to prejudice the jury against Samsung. Moreover, the evidence is irrelevant and prejudicial even on its own terms. Netlist characterizes Samsung's supply-related conduct as improper, but the Ninth Circuit's interpretation of the JDLA's supply provision (§ 6.2)—i.e., that Samsung's interpretation of the JDLA was reasonable—defeats any suggestion that Samsung's interpretation of it reflects bad faith or that Samsung acted unethically. Ex. 8.

Netlist also designated testimony from Mr. Joseph Calandra regarding ▮▮▮▮▮▮▮

---

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6 at 89:4-91:3.

7

██████ Ex. 9 at 18:7-21:19. That testimony is likewise irrelevant and prejudicial, and also entirely improper. Mr. Calandra lacks **any** foundation to testify about the JDLA because he was not at the company when the JDLA was executed, has no personal knowledge about it, and was not designated on any 30(b)(6) topics about it. *Id.* at 15:5-18, 33:10-15; Ex. 10 (email correspondence regarding Mr. Calandra's 30(b)(6) topics). Moreover, Samsung will be prejudiced by having to spend limited trial time providing context on the JDLA supply provision and whether the JDLA was breached or terminated. *See generally* Ex. 7 (counter-designations in response to Netlist's improper designations).

This Court recognized the sensitivity of these issues in *EDTX1* and granted Samsung's related MIL Nos. 1 (regarding "Samsung's Alleged Failure to Supply Memory to Netlist") and 3 (regarding "the Korean Tax Tribunal Opinion").[4] Here, the Court should similarly exclude any reference to the alleged breach and termination in this case, as well as the underlying factual issues, like Samsung's alleged failure to supply memory to Netlist and the KTT decision regarding Korean taxes, which the Court properly excluded in *EDTX1*.

## C. The Court Should Exclude All Evidence and Argument About the JDLA Unless Samsung Opens the Door

Samsung recognizes that some aspects of the JDLA are relevant to certain license-defense, no willfulness, and damages issues, which Samsung proposes should be addressed in the second phase of a bifurcated case. Whether the Court bifurcates the case or holds a single trial, given the highly prejudicial nature of the existence of the JDLA, the Court should exclude all evidence and argument about the JDLA unless Samsung first opens the door by relying on aspects of the JDLA to support its license defense, no willfulness, or damages positions.

For example, as discussed in the briefing on Samsung's Motion for Partial Summary Judgment

---

[4] As this Court found in *EDTX1*, the KTT decision is irrelevant to any claim or defense in this case. Ex. 2 at 11 ("The Court noted that this MIL is subsumed by the Court's standing MIL No. 13, but for clarity, the Court GRANTED the MIL so as to facilitate the Court's role as gatekeeper."). Because that MIL was subsumed by Court MIL No. 13, Samsung does not bring it here.

8

That All Accused Products Are Covered by Netlist's License to Samsung in the JDLA, this Court has already interpreted the scope of the JDLA's license as covering the accused products and Netlist did not dispute that none of the accused products are Foundry Products. Dkt. 337 at 7-9; Dkt. 516 at 1-3. As a result, there is no issue remaining for the jury here to resolve relating to Samsung's license defense, which removes this issue as a reason to inform the jury about the JDLA.

Once the Court rules on the pending motions, including the summary judgment motions on license and willfulness and *Daubert* motions on damages issues,[5] Samsung will be in a position to inform the Court as to whether it intends to open the door on certain, limited aspects of the JDLA. Once Samsung confirms whether or not it will present evidence or argument regarding the JDLA (before trial begins), Samsung respectfully requests that the Court set appropriate boundaries on JDLA-related evidence and argument consistent with this motion. To be clear, in no event should the Court permit any evidence or argument that the JDLA's existence shows that Samsung allegedly needed or still needs a license to Netlist's patents (*see* Section A, above), or any evidence and argument about alleged breach or termination of the JDLA (*see* Section B, above).

### IV.    MIL No. 4: Exclude Evidence and Argument Regarding Any Valuation of JDLA Supply Provision

In addition to precluding Netlist from relying on the JDLA generally in an effort to prejudice Samsung (e.g., by suggesting that Samsung entered into the JDLA because it needed Netlist's patents, or by rehashing evidence related to alleged breach and termination issues being litigated in the C.D. Cal., *see supra* MIL No. 3), the Court should also preclude Netlist from offering its speculative and prejudicial valuation of the supply provision in JDLA § 6.2. Specifically, Netlist intends to argue that the value of the JDLA supply provision ▮▮▮▮▮▮▮▮▮, based on an analysis by Mr. Kennedy that purports to estimate the damages flowing from the alleged breach of § 6.2 of the JDLA. Ex. 11, ¶¶

---

[5] *See, e.g.*, Dkts. 273, 337, 341, 346, 355, 382.

9

323-24 (██████████████████████████████████████████████████████████); *see also* Dkt. 346 at 12-13 (seeking to exclude Mr. Kennedy's improper consequential contract damages opinions). This valuation is inconsistent with the verdict in the C.D. Cal. Case which was a jury award of no damages. Ex. 12. There, the jury determined that Netlist was **not damaged** by Samsung's discontinuing of supply to Netlist.[6] *Id.* This decision is binding on Netlist under both issue and claim preclusion doctrines. *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594-95 (2020) (listing claim preclusion factors); *Chrimar Sys., Inc. v. Adtran, Inc.*, No. 6:15-CV-618-JRG-JDL, 2017 WL 131587, at *1 (E.D. Tex. Jan. 13, 2017) (listing issue preclusion factors). Netlist did not appeal this aspect of the final judgment in the C.D. Cal. Case, and the Ninth Circuit remand has no bearing on this issue. *See, e.g.*, Ex. 14 at 28-35. The Court should preclude Netlist from presenting argument, evidence, or testimony inconsistent with this jury verdict.

Despite the fact that the jury found that Netlist suffered no damages as a result of Samsung's failure to fulfill NAND and DRAM orders, Netlist's damages expert calculated his own estimates of the profits Netlist would have earned "but for" Samsung's breach of § 6.2 of the JDLA. Ex. 11, ¶ 326. Netlist's witnesses parroted this same unsubstantiated ███████ "but for" valuation, but never produced evidence substantiating such a valuation. Ex. 15 at 215-216; Ex. 16 at 125-128. Netlist posits that the Court should permit it to present its unsupported, inflated valuation because the C.D. Cal. jury was not permitted to evaluate consequential damages. Ex. 11, ¶ 325. The "rest of the story" here is that the C.D. Cal. court entered summary judgment barring Netlist from recovering consequential damages as a remedy for its breach of contract claims. Ex. 17 at 21-22. That judgment was unchallenged on appeal before the Ninth Circuit, ████████████████████████ ████████████████ Ex. 18 at 11 ████████████████████

---

[6] The C.D. Cal. court subsequently entered judgment in the amount of $1.00 for "breach of the supply provision in the parties' contract." Ex. 13, ¶ 1.

10

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████ Allowing Netlist to re-litigate the consequential damages issue thus would violate issue and claim preclusion.

Doing so would also be highly prejudicial and likely to confuse the jury; such prejudice outweighs any possible probative value. *See* Fed. R. Evid. 403. At the hypothetical negotiation, Netlist would know that it could not get consequential damages for breach, destroying any basis for Mr. Kennedy to offer such opinions at all. All that remains is prejudice and confusion. Moreover, Court MIL No. 13 prevents the parties from raising references to other litigation, thereby preventing Samsung from presenting the rebuttal to Mr. Kennedy's unfounded opinions. To avoid such prejudice and confusion, this Court should prevent Netlist from providing argument or evidence regarding the alleged value to Netlist of the JDLA's supply provision § 6.2.

**V.    MIL No. 5: Exclude Evidence and Argument That Implies That Foreign Companies and/or Foreign Nationals Do Not Follow U.S. Law or Commit Crimes**

It would seem far-fetched that the Court need be concerned that a party or its counsel would accuse a patent infringement litigant of being a criminal or breaking the law; however, recent experience (including in *EDTX1* as well as the *G+ Comms.* case discussed below) has proved such concerns to be well-taken. The Court should preclude Netlist from making disparaging statements that imply that Samsung or its Korean-national employees do not follow the laws of the United States or commit crimes—these statements are irrelevant and lack any foundation. Suggesting that Samsung does not follow U.S. law is inflammatory, unfairly prejudicial, and is certain to confuse and mislead the jury, who is tasked with determining liability in this case. Fed. R. Evid. 401-404.

Although the spirit of Court MIL No. 2 should cover these types of statements, counsel for Netlist has repeatedly advanced this argument against Samsung—particularly in closing arguments— including in *EDTX1* and other cases:

11

- **EDTX1:** "It doesn't matter what country you are from; in this country, you follow the law." Ex. 3 at 1370:20-25.

- **G+ Comms. v. Samsung:** "I don't care what country you are from, you can sell in this country. But if you sell products in this country, you comply with the law and you don't degrade and destroy a system that ensures we have access to the most important technology." Ex. 19 at 93:4-8.

- **G+ Comms. v. Samsung:** "[T]he party who is—that an individual who is guilty of a serious crime spend the most amount of time complaining about fairness. And in this case Samsung's behavior of accusing us of acting improperly, of attacking us for enforcing our property rights, why? Why are they acting that way? The answer is desperation." Ex. 19 at 182:1-6.

- **January 5 Hearing Before Judge Folsom:** "And them randomly giving us some 30(b)(6) witness, who they say is going to speak on behalf of the company—that's now how discovery works in the United States." Dkt. 459-2 at 61:18-21.

Such an "us-against-them plea can have no appeal other than to prejudice by pitting 'the community' against a nonresident corporation." *Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1238 (5th Cir. 1985). An improper "community conscience" plea is not limited to "specific words; it extends to all impassioned and prejudicial pleas intended to evoke a sense of community loyalty, duty and expectation. Such appeals serve no proper purpose and carry the potential of substantial injustice when invoked against outsiders." *Id.* at 1238-39.

Given that Netlist's counsel continues to advance this derogatory narrative against Samsung, regardless of the case, Samsung respectfully requests the Court's intervention to preclude Netlist from making such characterizations about Samsung or its employees during the trial.

12

Dated: February 20, 2024

Respectfully submitted,

By: /s/ *Daniel A. Tishman*

| | |
|---|---|
| Melissa Richards Smith<br>melissa@gillamsmith.com<br>GILLAM & SMITH, LLP<br>303 South Washington Ave.<br>Marshall, Texas 75670<br>Telephone:  (903) 934-8450<br>Facsimile:  (903) 934-9257<br><br>J. Travis Underwood<br>Texas Bar No. 24102587<br>travis@gillamsmithlaw.com<br>GILLAM & SMITH, LLP<br>102 North College Avenue, Suite 800<br>Tyler, Texas 75702<br>Telephone: (903) 934-8450<br>Facsimile: (903) 934-9257<br><br>Brian R. Nester<br>DC Bar No. 460225<br>bnester@cov.com<br>COVINGTON & BURLING LLP<br>One CityCenter 850 Tenth Street, N<br>Washington, DC 20001-4956<br>Telephone: (202)-662-6000<br><br>Alice J. Ahn<br>CA Bar No. 271399/DC Bar No. 1004350<br>aahn@cov.com<br>COVINGTON & BURLING LLP<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105<br>Telephone:  (415) 591-7091<br>Facsimile:  (415) 955-6571 | Ruffin B. Cordell<br>TX Bar No. 04820550<br>cordell@fr.com<br>Michael J. McKeon<br>D.C. Bar No. 459780<br>mckeon@fr.com<br>Lauren A. Degnan<br>D.C. Bar No. 452421<br>degnan@fr.com<br>Daniel A. Tishman<br>DC Bar No. 1013923<br>tishman@fr.com<br>FISH & RICHARDSON P.C.<br>1000 Maine Avenue, SW<br>Washington, DC 20024<br>Telephone: (202) 783-5070<br>Facsimile:  (202) 783-2331<br><br>Francis J. Albert<br>CA Bar No. 247741<br>albert@fr.com<br>FISH & RICHARDSON P.C.<br>12860 El Camino Real, Ste. 400<br>San Diego, CA  92130<br>Telephone: (858) 678-5070<br>Facsimile:  (858) 678-5099<br><br>Thomas H. Reger II<br>reger@fr.com<br>Texas Bar No. 24032992<br>FISH & RICHARDSON P.C.<br>1717 Main Street, Suite 5000<br>Dallas, Texas 75201<br>Telephone: (214) 747-5070<br>Facsimile:  (214) 747-2091 |

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on February 20, 2024. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

                                                      /s/ Daniel A. Tishman

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred telephonically on February 20, 2024. Michael Tezyan attended for Plaintiff. Katherine Reardon attended for Defendants. The parties discussed their positions on this motion. The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve. Counsel for Plaintiff indicated that they oppose this motion.

                                                      /s/ Katherine H. Reardon