# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

NETLIST, INC.,                    (   CAUSE NO. 2:21-CV-463-JRG
                                  )
        Plaintiff,                (
                                  )
vs.                               (
                                  )
SAMSUNG ELECTRONICS CO., LTD.,    (
et al.,                           )   MARSHALL, TEXAS
                                  (   MARCH 29, 2023
        Defendants.               )   9:00 A.M.
_____


VOLUME 2

_____

PRETRIAL CONFERENCE

BEFORE THE HONORABLE RODNEY GILSTRAP
UNITED STATES CHIEF DISTRICT JUDGE

_____

SHAWN McROBERTS, RMR, CRR
100 E. HOUSTON STREET
MARSHALL, TEXAS  75670
(903) 923-8546
shawn_mcroberts@txed.uscourts.gov

1    hours by email to my staff.

2            MR. CORDELL:  Just for clarity, Your Honor, we're

3    not getting into the who shot John.

4            THE COURT:  I don't see any probative value in doing

5    that.

6            MR. CORDELL:  Excellent.  Thank you.

7            THE COURT:  This is, in effect, a limited exception

8    to MIL 13 simply because I think it's pretty clear that this

9    document is going to be, if not a central part, a material

10   part of the evidence in the case.

11           MR. SHEASBY:  I'll just flag, this is not their

12   non-willfulness interrogatory response.

13           THE COURT:  Let me say this again, counsel.  You

14   submit to me what you want.  I'll look at it.  I'll instruct

15   the jury to a level that I think is appropriate.  If you want

16   to go into this topic beyond what I am going to instruct the

17   jury on, you're going to have to approach leave and convince

18   me to grant leave.

19           MR. SHEASBY:  I understand, Your Honor.

20           MR. CORDELL:  Understood, Your Honor.

21           THE COURT:  That is Plaintiff's MIL No. 3, which

22   technically I'm going to deny because it's already subsumed

23   by standard MIL No. 13.

24       Let's take up Plaintiff's MIL No. 4.  This seeks to

25   preclude Samsung from presenting any evidence that Netlist

1   has failed to comply with JEDEC obligations.

2        All right.  Mr. Cordell, what's the Samsung objection

3   here?

4             MR. CORDELL:  With your permission, Your Honor,

5   Mr. Mosteller will present our arguments.

6             THE COURT:  That's fine.

7             MR. MOSTELLER:  Thank you, Your Honor.

8   Mr. Mosteller for Samsung.

9        And I think that Your Honor has already decided

10  Plaintiff's MIL No. 4 several times over the past couple of

11  days with reference to other JEDEC discussions and Netlist's

12  relations with JEDEC and the scope of what Samsung will be

13  able to present at trial with respect to that relationship.

14       Here, Your Honor, we're dealing with Netlist's

15  obligations to disclose things to JEDEC.  The fact that JEDEC

16  was sitting in on the meetings--I'm sorry--that Netlist was

17  sitting in on the meetings at JEDEC, was silent despite its

18  obligations to disclose patents is highly relevant.  It's

19  relevant to whether Samsung knew about the patents, it's

20  relevant to whether Samsung or Netlist thought that products

21  that practiced these standards were implicated by these

22  patents, and it's relevant to Netlist's perception of these

23  patents to products that practice those standards, Your Honor.

24             THE COURT:  Mr. Sheasby?

25             MR. SHEASBY:  Sure.

1    These patents are not standard essential.  There's no

2  obligation to disclose a patent that's not standard essential.

3  There's no allegation from a legal -- in front of the jury

4  that goes to whether we complied with our obligations to

5  JEDEC, because we have no obligations to JEDEC because they're

6  not essential.  The MIL should be granted.

7    If there's some narrow exception to talking about the

8  relationship with JEDEC, they should seek leave to approach.

9  But on its face that we failed to comply with JEDEC

10  obligations, that's a reasonable MIL.  There is no allegation

11  in front of the jury that we haven't failed to comply with our

12  JEDEC obligations.  It's not pled in the complaint.  It's not

13  pled in the affirmative defenses.

14         THE COURT:  All right.  In regard to Plaintiff's MIL

15  No. 4, I'm going to grant this MIL, but I want the parties to

16  understand why I'm doing it.  I'm granting it so that the

17  Court can be an active gatekeeper on what does and doesn't

18  come in before this jury about JEDEC.  I have a fear that

19  without any constraints there's going to be confusion created,

20  especially in light of the fact that these are not standard

21  essential patents, and there are not obligations under JEDEC

22  because they're not standard essential patents submitted to

23  this standard setting body.  But there may be relevant use of

24  JEDEC and there may be implications that relate to other live

25  issues in the case.

1    And, quite honestly, I don't trust either side to hew the

2    proper line without me being a gatekeeper here.  So I'm going

3    to grant it.  That doesn't mean there's not going to be any

4    mention of it during trial; it's going to be that I'm going to

5    get to supervise and provide oversight for what's mentioned

6    how it's mentioned in real-time.  Okay?

7         MR. MOSTELLER:  Thank you, Your Honor.

8         THE COURT:  All right.  Plaintiff's MIL 4 is granted

9    with that explanation.

10   Plaintiff's MIL 5 seeks to preclude Samsung from

11   introducing evidence that practicing the standard is a defense

12   to infringement or willfulness.

13   What's the dispute here, Mr. Cordell?  These are not

14   standard essential patents.

15   Well, whoever's speaking for Samsung.  I have to look up

16   if I'm going to notice who's at the podium.

17        MR. LIVEDALEN:  Thank you, Your Honor.  Brian

18   Livedalen for Samsung.

19   So this issue's slightly different.  I think it comes in

20   the most clarity here with respect to willfulness.  So

21   Samsung, being a member of JEDEC and being a company that

22   practices a standard, relies on the disclosures we talked

23   about.  Netlist has an obligation also as a member to disclose

24   patents that it believes may be standard essential.  And so

25   Netlist for its willfulness case is going to rely on the

1    disclosure of related patents as evidence that Samsung knew of

2    those patents and knew that it was infringing.

3         In rebuttal --

4              THE COURT:  Wait a minute.  Infringing related

5    patents and not the patents-in-suit?

6              MR. LIVEDALEN:  I should clarify.  Infringing the

7    patents-in-suit simply by disclosure of  related patents.

8              THE COURT:  Say that again.

9              MR. LIVEDALEN:  Sure.

10             THE COURT:  You believe the Plaintiff's going to

11   show infringement of the patents-in-suit by Samsung because

12   Samsung may have disclosed other patents to JEDEC but not

13   these patents?

14             MR. LIVEDALEN:  So Netlist --

15             THE COURT:  I'm trying to follow you.

16             MR. LIVEDALEN:  Yeah, sure.

17        Netlist is going to argue that the disclosure of parent

18   patents, for example, to the '918 and '054 Patents put Samsung

19   -- gave Samsung the requisite knowledge of the '918 and '054

20   Patents.  They may also argue that the disclosure of a parent

21   patent, for example, and the disclosure to that patent was

22   standard essential; also provided Samsung with knowledge or an

23   intent that it is somehow infringing the '918 and '054

24   Patents.

25        And so what Samsung would like to do in response is to

1    say that JEDEC members rely on what is disclosed, but they

2    also rely on what is not disclosed.  So the fact that there

3    was never a disclosure of the '918 and '054 Patents as

4    standard essential is something that they can rely on for no

5    willfulness.

6              THE COURT:  Okay.  Maybe that's where the confusion

7    lies.  I can see the nexus with the willfulness issue.  I

8    don't see the nexus with the underlying infringement issue.

9    The jury's going to determine infringement by comparing the

10   claims -- the elements of the asserted claims to the accused

11   products; no more, no less.

12         But beyond the determination of infringement, I do see

13   what you're arguing with regard to willfulness.  I thought you

14   were arguing with regard to infringement.  Maybe you are.  I

15   don't see the connection on the infringement --

16             MR. LIVEDALEN:  The issue I just argued, Your Honor,

17   is with respect to the willfulness issue.

18             THE COURT:  Okay.

19             MR. LIVEDALEN:  With respect to infringement,  we're

20   not going to argue that practicing the standard alone

21   immunizes Samsung from infringement.  I think that's what the

22   gist of MIL No. 5 is asking.  But we do want to present

23   evidence that Netlist seeks to argue that its patents are

24   simultaneously infringed and not essential, and that argument

25   that Netlist is going to present at trial is inconsistent with

```
1    statements that Netlist made both to the Court in its original

2    complaint and positions that it made in its interrogatory

3    responses.

4             THE COURT:  Well, if you want to attempt to impeach

5    a witness for the other side, you can attempt to impeach them,

6    but that doesn't really move the needle on whether I ought to

7    grant or deny this motion in limine.

8             MR. LIVEDALEN:  Yes, Your Honor.  That's the one

9    point with respect to infringement; again, but we're not going

10   to argue that simply practicing a standard immunizes us from

11   infringement.

12            THE COURT:  Okay.  Mr. Sheasby, the allegation is

13   that you're going to try to show willfulness here because

14   either Samsung knew these were essential and refused to submit

15   them to the standard, or somehow as being involved with the

16   standard Samsung knew about -- I mean, knew about this

17   technology and hid it from the standard body.  Respond to that

18   somehow for me.

19            MR. SHEASBY:  Sure.

20        So two issues.  One, willfulness is a state of mind.

21   What you just heard is a creation of the very able lawyers who

22   are representing Samsung.  We took a 30(b)(6) witness on

23   willfulness.  We have an interrogatory on willfulness.  None

24   of what you just heard has been disclosed anywhere in fact

25   discovery.  And so they're going to be constrained by what
```

1   they say in fact discovery.

2        So if their corporate representative gets up and says,

3   Oh, we're shocked, we're shocked because it wasn't in JEDEC,

4   I'm going to approach the bench show, I'm going to show that

5   it's not in any discovery response that they gave us, it

6   contradicts what they said, and then I'm going to ask for it

7   to be stricken.  That's the first issue.

8        The second issue is that we don't intend to say that

9   these patents are essential and, therefore, the issue that --

10  this convoluted theory that they're spinning -- that we're

11  spinning to is not one that I think is going to be -- even

12  open the door.

13       But I think the thing to do is not to debate it.  The

14  MIL should be granted.  If they have some convoluted theory

15  that they want to try to present because they think the door's

16  been opened, they should approach and they can discuss that

17  theory with the Court.

18       That's my response.

19            THE COURT:  What else from Samsung?

20            MR. LIVEDALEN:  So one thing, Your Honor.

21  Mr. Sheasby faults Samsung for not providing an adequate

22  interrogatory response, but all that Netlist put in its --

23            THE COURT:  You know, counsel.  We are awful late

24  in the day for me to be hearing about discovery disputes.  I

25  mean, we cannot spend the entire trial with each of you

```
1    pointing fingers and casting accusations at the other for

2    failing to do their job a year and a half ago as this case

3    was being developed and discovery was begun and pursued.

4    That's disconcerting for both of you to be focusing on old

5    discovery failures.  The time for addressing those is long

6    gone.  We did have a raft of motions to compel in this case.

7    I've dealt with them as best I could, but I'm growing weary of

8    hearing about discovery disputes.

9                MR. SHEASBY:  Your Honor, I think it's reasonable.

10   This is not a discovery dispute.  They did answer the

11   interrogatory.  They should be constrained by what the answer

12   was.

13               THE COURT:  Well, let me say this.  To the extent

14   Samsung might be tempted to communicate to the jury that by

15   practicing the standard they're somehow being immunized from

16   an infringement allegation, I think that's improper.  And even

17   though Samsung says they're not going to do this, to that

18   extent I'm going to grant this MIL.

19         Willfulness is a totality of the circumstances, as the

20   Supreme Court's made clear.  I don't think there's a basis

21   upon which I can keep the Plaintiff from addressing the

22   standard setting body and Samsung's participation in it with

23   regard to the willfulness issue.

24         I'm going to grant it as to precluding the Defendant from

25   trying to defend against infringement on the basis of
```

```
1    practicing the standard, but in other regards -- any other

2    regard I'm going to deny the motion.

3              MR. LIVEDALEN:  Thank you, Your Honor.

4              THE COURT:  Okay.  Let's go to Defendant's disputed

5    motions in limine.  The first one seeks to prevent improper

6    argument or evidence regarding Samsung's alleged failure to

7    supply memory to Netlist.

8         What's Plaintiff's objection with Defendant's MIL No. 1?

9              MR. SHEASBY:  There will be no discussion of the

10   damages associated with the breach, or lack thereof, but the

11   story of the behavior between Samsung and Netlist goes

12   directly to the willfulness allegations in the case.

13        If we can have the PX Indong Kim exhibit, Mr. Huynh.

14             THE COURT:  And the breach you're talking about is

15   what gave rise to the termination?

16             MR. SHEASBY:  That's correct; the cutting off of our

17   supply.

18        So what the record will show is that in June of 2016, as

19   we were getting ramped up and asking for them to increase our

20   supply --

21        Scroll down.  Scroll down some more.

22         -- the Samsung entities had what is described as a right

23   of first refusal to our patents, which means that if we went

24   bankrupt we would have to give them our patents.

25        Scroll down more.
```