UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>　　　　Defendants. | Civil No. 2:22-cv-00293-JRG<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S OPPOSITION TO
NETLIST'S ADDITIONAL MOTIONS *IN LIMINE* (DKT. 611)**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

TABLE OF EXHIBITS ............................................................................................................. iv

TABLE OF ABBREVIATIONS ............................................................................................... iv

I.  Netlist's MIL No. 1: Preclude Samsung from Presenting Evidence or Argument That SK hynix's Supply Obligation to Netlist Is Not Legally Binding on SK hynix ..........................1

II. Netlist's MIL No. 2: Preclude Samsung from Presenting Any Allegation That Netlist Has Failed To Comply with JEDEC Obligations ..........................................................3

III. Netlist's MIL No. 3: Preclude Samsung from Presenting Evidence, Argument, or Testimony That Practicing a Standard Is a Defense to Infringement or Willfulness ................6

IV. Netlist's MIL No. 4: Preclude Samsung from Presenting Testimony on Noninfringement or Claim Terms from Fact Witnesses ..................................................8

V.  Netlist's MIL No. 5: Preclude Samsung from Presenting Evidence or Argument Regarding RAND Obligations or Any Alleged Failure To License Patents-in-Suit on RAND Terms ..................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acorn Semi, LLC v. Samsung Elecs. Co.*,
   No. 2:19-CV-00347-JRG (E.D. Tex. Apr. 29, 2021) ...................................................................8

*AdvanceMe Inc. v. RapidPay, LLC*,
   509 F. Supp. 2d 593 (E.D. Tex. 2007) .......................................................................................3

*Advanced Thermal Sciences Corp. v. Applied Materials, Inc.*,
   No. 07-CV-01384-JVS-JWJX, 2009 WL 10671185 (C.D. Cal. July 20, 2009) ........................2

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ..................................................................................................2

*Commil USA, LLC v. Cisco Sys., Inc.*,
   575 U.S. 632 (2015) ...................................................................................................................3

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015) ..................................................................................................1

*Core Wireless Licensing S.a.r.l. v. LG Elecs., Inc.*,
   No. 2:14-CV-00911-JRG, 2018 WL 7199139 (E.D. Tex. Sept. 27, 2018) .................................2

*Donlin v. Philips Lighting N. Am. Corp.*,
   581 F.3d 73 (3d Cir. 2009) .........................................................................................................9

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014) ............................................................................................5, 10

*Fidelity National Title v. Doubletree Partners*,
   866 F. Supp. 2d 604 (E.D. Tex. 2011) .......................................................................................2

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ...........................................................................................2

*Immersion Corp. v. Samsung Elecs. Am., Inc.*,
   No. 2:17-CV-00572-JRG (E.D. Tex. May 3, 2019) ...................................................................8

*Laws. Title Ins. Corp. v. Doubletree Partners, L.P.*,
   739 F.3d 848 (5th Cir. 2014) .....................................................................................................2

*Uniloc USA Inc. v. Microsoft Corp.*,
   632 F. Supp. 2d 147 (D.R.I. 2009) .............................................................................................9

████████████████████████████████████

**Other Authorities**

Fed. R. Evid. 702 ................................................................................................................................8, 9

## TABLE OF EXHIBITS

| No. | Description |
|---|---|
| 1 | Order on Motions *in Limine* from *EDTX1*, Dkt. 432 |
| 2 | Pre-Trial Conf. Tr. (March 29, 2023) from *EDTX1* (public, excerpts) |
| 3 | Opening Expert Report of Dr. Mangione-Smith (Nov. 20, 2023) (excerpts) |
| 4 | Opening Expert Report of Dr. Halbert (Nov. 20, 2023) (excerpts) |
| 5 | JEDEC Manual of Organization and Procedure JM21V (JEDEC Patent Policy) (excerpts) |
| 6 | Samsung's Resps. & Objs. to Netlist 2nd Set of Interrogs. (Nov. 20, 2023) (excerpts) |
| 7 | Samsung's Suppl. Resps. & Objs. to Netlist 1st Set of Interrogs. (Nov. 20, 2023) (excerpts) |
| 8 | Exhibit G to Samsung's Interrogatory Responses (Nov. 6, 2023) |
| 9 | Netlist's 4th Supplemental Interrogatory Responses (Nov. 19, 2023) (excerpts) |
| 10 | Opening Expert Report of McAlexander (Nov. 20, 2023) (excerpts) |
| 11 | Netlist's 2nd Supplemental Infringement Contentions (Feb. 7, 2023) |
| 12 | Rebuttal Expert Report of McAlexander (Dec. 21, 2023) (excerpts) |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| '912 patent | U.S. Patent No. 7,619,912 |
| '608 patent | U.S. Patent No. 10,268,608 |
| '417 patent | U.S. Patent No. 11,093,417 |
| *EDTX1* | *Netlist Inc. v. Samsung Electronics Co. Ltd.*, No. 2:21-CV-463 (E.D. Tex.) |
| MIL | Motion *in Limine* |
| LRDIMM | Load-Reduced Dual In-Line Memory Module |
| RDIMM | Registered Dual In-Line Memory Module |
| SK hynix Agreement | Strategic Product Supply and License Agreement between SK hynix, Inc. and Netlist, Inc. (April 5, 2021) |

I.   **Netlist's MIL No. 1: Preclude Samsung from Presenting Evidence or Argument That SK hynix's Supply Obligation to Netlist Is Not Legally Binding on SK hynix**

The Court should reject Netlist's MIL No. 1 because it is an untimely motion to strike Ms. Kindler's opinions, and also because it misrepresents her opinions on the SK hynix supply provision.

To support its argument seeking to preclude Samsung from offering any evidence that a provision in the SK hynix Agreement purporting to require SK hynix to supply Netlist memory is not legally binding, Netlist cites to the report of Samsung's expert, Ms. Kindler. Dkt. 611 at 1 (citing Dkt. 355-02, ¶ 100(d)). However, Ms. Kindler does not opine on whether the supply provision of the SK hynix Agreement is legally binding on Netlist and SK hynix. Instead, the paragraph Netlist seeks to preclude—100(d) of her report— Dkt. 355-02, ¶ 100(d). Based on this analysis, Ms. Kindler opines that the *Id*. **Nowhere in her report does Ms. Kindler mention the legal implications, if any, of the supply provision.**

Contrary to Netlist's argument, Ms. Kindler's opinion on the value of the supply provision of the SK hynix Agreement is in no way a "legal" opinion. Rather, Ms. Kindler starts with the rate in the SK hynix Agreement before providing an economic assessment of the contracting parties and circumstances, consistent with the Federal Circuit's guidance that damages analysis "begins with rates from comparable licenses and then 'account[s] for differences in the technologies and economic circumstances of the contracting parties.'" *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809

1

F.3d 1295, 1303 (Fed. Cir. 2015).[1]  Notably, in this case, the SK hynix Agreement is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  In paragraph 100 of her report, Ms. Kindler unpacks the terms of this license, including the supply provision.  Netlist has identified no basis to strike portions of her report, let alone in the context of a MIL.  Further, Netlist should not be permitted to use the MIL process to circumvent the deadline for filing *Daubert* motions.

The cases on which Netlist relies are not controlling; they do not relate to patent damages, in which experts are routinely called upon to analyze and explain license agreements.  The *Fidelity National Title v. Doubletree Partners* case was a contract dispute, and the testimony at issue was from a lawyer about legal obligations—not a damages expert discussing the value of a comparable license in the context of a reasonable royalty opinion.  866 F. Supp. 2d 604, 614-15 (E.D. Tex. 2011), *aff'd in part, rev'd in part on other grounds and remanded sub nom. Laws. Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848 (5th Cir. 2014).  The court there declined to permit testimony on "legal conclusions," *id.* at 615, but Ms. Kindler offers no such conclusions.  Further, the fact that the court in *Advanced Thermal Sciences Corp. v. Applied Materials, Inc.* denied a motion to dismiss a contract case, finding that a contract clause could be interpreted as a supply obligation, has no bearing on the admissibility of Ms. Kindler's opinion on the limited value of the SK hynix supply provision.  No. 07-CV-01384-JVS-JWJX, 2009 WL 10671185, *4 (C.D. Cal. July 20, 2009).

The Court's ruling in *EDTX1* on Netlist's similar MIL does not require the Court to grant the present motion, which involves a different expert and different facts.  *See* Ex. 1 at 10.  In *EDTX1*,

---

[1] *See also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1325 (Fed. Cir. 2014) ("As we have held many times, using sufficiently comparable licenses is a generally reliable method of estimating the value of a patent."); *Core Wireless Licensing S.a.r.l. v. LG Elecs., Inc.*, No. 2:14-CV-00911-JRG, 2018 WL 7199139, at *3 (E.D. Tex. Sept. 27, 2018) ("'[T]he Federal Circuit held that the proper methodology is to start with rates from comparable licenses and then 'account for differences in the technologies and economic circumstances of the contracting parties.'"); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (considering "[t]he royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty").

Netlist argued that Mr. Meyer, Samsung's damages expert in that case, would testify that the product supply agreement between Netlist and SK hynix was legally unenforceable. Ex. 2 at 189:21-190:5. The Court granted Netlist's MIL based on its separate ruling striking certain portions of Mr. Meyer's expert report. *Id.* at 190:6-12 ("I think to be consistent with my prior ruling on the motion to strike regarding Mr. Meyer, I need to grant this[.]"). Here, Ms. Kindler offers **different opinions** that never discuss whether the supply provision of the SK hynix Agreement is legally binding.

Thus, the Court should reject Netlist's untimely attempt to strike paragraph 100(d) of Ms. Kindler's report and should deny Netlist's MIL No. 1.

## II. Netlist's MIL No. 2: Preclude Samsung from Presenting Any Allegation That Netlist Has Failed To Comply with JEDEC Obligations

Netlist's MIL No. 2 seeks to conceal the inconsistency of its positions on essentiality and JEDEC. Netlist's failure to comply with its JEDEC obligations is relevant at least to rebut Netlist's willfulness, indirect infringement, and damages allegations.

Netlist's dereliction of its JEDEC obligations is particularly relevant to the knowledge and intent requirements for willfulness and indirect infringement. Netlist relies on its disclosure to JEDEC to allege that Samsung had knowledge of the asserted patents, as required for Netlist to prove both willfulness and indirect infringement. *See* Dkt. 341.[2] Moreover, Netlist's expert, Dr. Mangione-Smith, asserts that ████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Ex. 3 at Ex. A, ¶ 83; *see also id.* at Ex. A, ¶¶ 31-43, 83-85, 89; Dkt. 350 at 15 (moving to strike Dr. Mangione-Smith's opinion). However, Netlist failed to declare the asserted patents or their applications as essential to the relevant DDR4 standards;

---

[2] *See also, e.g.*, *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."); *AdvanceMe Inc. v. RapidPay, LLC*, 509 F. Supp. 2d 593, 607 (E.D. Tex. 2007) (for willfulness, "[t]he patentee must show that the accused infringer acted without a reasonable belief that its actions avoided infringement.").

3

indeed, Netlist actively concealed its patents from the relevant JEDEC committees. *See* Dkt. 432. If Samsung were expected to divine knowledge of the asserted patents and Samsung's alleged infringement through its participation in JEDEC, it stands to reason that Netlist would be expected to disclose those same patents as potentially essential to the relevant DDR4 standards, as JEDEC policy requires in order to provide other JEDEC members notice of intellectual property that may cover the standards. *See* Ex. 4, ¶¶ 47, 46-48

). The fact that Netlist failed to disclose the asserted patents as to the relevant DDR4 standards bears on whether Samsung had knowledge of the patents, or held a reasonable belief that it did not infringe them.[3]

Netlist's JEDEC activity and RAND obligations are also relevant to damages.[4] *See* Dkt. 611 at 3-4. Given Samsung's position that the asserted patents are essential if they are infringed, and Netlist's apparent belief that the asserted patents are essential to DDR4 (based on, e.g., its 2022 letter to Samsung, Dkt. 342-3), Netlist not only had a duty to disclose the patents as potentially essential to DDR4, but it also had RAND obligations. *See* Ex. 5, § 8.2.2.1 ("All Committee Members, as a condition of committee membership and participation, agree to Disclose Potentially Essential Patents

---

[3] Netlist's allegation that  Dkt. 611 at 2, is false. Samsung did, in fact, reference Netlist's breach of JEDEC obligations in numerous interrogatory responses related to infringement, willfulness, and damages. *See, e.g.*, Ex. 6 at 37

[4] Netlist has conceded that it previously  Dkt. 342 at 1-2.

4

. . . and to offer to license their Essential Patent Claims . . . on RAND terms and conditions."). Here, Netlist's demand for ▇▇▇▇▇▇ is inconsistent with its RAND obligations to JEDEC, and the jury should be apprised of contractual limits to which Netlist is bound. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1231 (Fed. Cir. 2014) ("A RAND commitment limits the market value to (what the patent owner can reasonably charge for use of) the patented technology. The court therefore must inform the jury what commitments have been made and of its obligation (not just option) to take those commitments into account when determining a royalty award."). Further, if Netlist's JEDEC disclosures and RAND obligations for standards other than DDR4 are relevant to proving Samsung's knowledge of the asserted patents, Ex. 9 at 11-12, the jury should be apprised of Netlist's JEDEC-related commitments in considering Netlist's obligation to offer a license to on RAND terms. *See* Dkt. 611-12 at 27.

Netlist's JEDEC activities have not become irrelevant simply because Netlist has altered its trial strategy and now purports to forgo reliance on the JEDEC standards for infringement. Netlist's case exclusively relies on features originally promulgated by JEDEC standards. *See* Dkt. 423; Ex. 10 at Att. A, ¶¶ 206-28; *id.* at Att. B, ¶¶ 193-203, 208-11; *id.* at Att. C, ¶¶ 323-34 (demonstrating Netlist's infringement contentions rely solely on JEDEC standards). Indeed, throughout this case, Netlist and its experts accused Samsung of infringing the asserted patents by developing memory modules in compliance with JEDEC standards. *See, e.g.*, Dkt. 100, ¶¶ 15, 47, 48, 49, 50, 51, 59, 61, 63, 64, 65, 73, 76, 77, 78; Ex. 11 at 4-7; Ex. 3 at Ex. A, ¶ 55. For example, Netlist's technical expert Dr. Mangione-Smith ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[5] Although Netlist now purports not to rely on the standard, for

---

[5] Ex. 10 at Att. A, ¶ 387 (McAlexander Opening Rpt.) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

5

Samsung's JEDEC-compliant products, in light of Netlist's allegations in its complaint, there is no distinction between proving infringement based on the JEDEC standards and proving infringement "based on the technical operation of the products." Dkt. 611 at 9. As set forth in Samsung's opposition to Netlist's motion for summary judgment of non-essentiality, for example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Compare* Dkt. 100, ¶ 76, *with* Ex. 3 at Ex. A, ¶ 63; *id.* at Ex. D, ¶ 53-54. Netlist is simply trying to gain the benefits of essentiality but avoid the associated burdens (e.g., disclosure and RAND commitments) by arguing that the asserted patents are not standard essential but are infringed by standardized features.[6]

Finally, the fact that Samsung is not pursuing a breach of contract claim in this case based on Netlist's failure to offer a license on RAND terms has no bearing on the relevance of Netlist's failure to comply with JEDEC's requirements to Samsung's defenses and rebuttal to Netlist's allegations, for example, of willfulness, indirect infringement, and damages. *Contra* Dkt. 611 at 2. The Court should allow the jury to hear evidence that Netlist failed to disclose the asserted patents to JEDEC or offer them on RAND terms.

### III. Netlist's MIL No. 3: Preclude Samsung from Presenting Evidence, Argument, or Testimony That Practicing a Standard Is a Defense to Infringement or Willfulness

Netlist's MIL No. 3 seeking to preclude an argument that practicing a standard is a defense to infringement or willfulness both misses the mark, and in any event, is unnecessary.

Samsung will not argue to the jury that it does not infringe simply because it practices the JEDEC standards, mooting much of Netlist's MIL on this point. However, the Court should permit Samsung to demonstrate that it practices the relevant JEDEC standards, and that Netlist's

---

[6] Further, Netlist failed to disclose—despite multiple requests from Samsung—its position on essentiality before the close of fact discovery. Dkt. 374 (Samsung's Motion To Preclude Evidence Regarding the Alleged Essentiality of the Asserted Patents). The Court should not now reward Netlist's improper withholding of its position on essentiality.

6

infringement case relies exclusively on standardized features such that Netlist's assertion of infringement is also an assertion of essentiality. In *EDTX1*, the Court granted Netlist's motion of the same name only "to the extent that Samsung shall not communicate to the jury that practicing a standard is a defense to infringement." Ex. 1 at 11. Samsung has no intention of doing so here, either. However, Samsung contends here that the accused products are essential if they are infringed. Specifically, Samsung's position is that its products do not infringe the asserted patents, but because Netlist's infringement allegations depend solely on information in the DDR4 standards, a finding of infringement necessitates a finding of essentiality. As its MIL and prior conduct suggests, Netlist plans to argue the untenable position that its patents are simultaneously infringed and not essential. Samsung has the right to respond to such a position.

Netlist—not Samsung—has put JEDEC squarely at issue in this case at least regarding infringement, willfulness, and damages, as discussed above. *Supra* § II. As to infringement, Netlist and its expert rely on features promulgated by the DDR4 JEDEC standards. *See* Dkt. 423; Ex. 12 at Att. A, ¶ 387; Ex. 10 at Att. A, ¶¶ 206-28; Ex. 10 at Att. B, ¶¶ 193-203, 208-11; Ex. 10 at Att. C, ¶¶ 323-34. As to willfulness, Netlist and its experts rely on Netlist's patent disclosures and Samsung's participation in JEDEC to argue that Samsung has the requisite knowledge and intent, Ex. 3 at Ex. A, ¶ 83 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As for damages, Netlist ignores its reliance on JEDEC standards, which necessarily requires that any license demand be RAND. The Court should not allow Netlist to use JEDEC as both a sword and a shield to conceal its inconsistent essentiality positions from the jury. As discussed in response to Netlist's MIL No. 2, to rebut Netlist's willfulness and indirect infringement allegations, Samsung should be able to explain that, despite Netlist's infringement and willfulness allegations being based on JEDEC standards and purported JEDEC disclosures, Netlist did not declare the asserted patents as essential to the applicable DDR4 standards.

7

*Supra* § II; Dkt. 432; Dkt. 374. This inconsistency calls into doubt Netlist's credibility—which the jury may consider in evaluating Netlist's allegations of infringement and willfulness.

The Court should also reject Netlist's anemic argument that presenting evidence regarding Samsung's compliance with DDR4 standards is somehow "an end-run-around" the Court's MIL No. 7, which bars evidence, testimony, or argument suggesting impropriety in filing a patent application or writing patent claims to cover an adverse party's product. *See* Dkt. 611 at 4. Samsung will not rely on its compliance with JEDEC DDR4 standards and Netlist's failure to disclose its patents as relevant to those standards to show that Netlist engaged in an improper scheme to draft claims to cover the DDR4 standard. Thus, the concerns that the Court's MIL No. 7 addresses are simply not implicated by evidence that Samsung practices DDR4 standards. The Court should deny Netlist's MIL No. 3.

**IV.    Netlist's MIL No. 4: Preclude Samsung from Presenting Testimony on Noninfringement or Claim Terms from Fact Witnesses**

Netlist's MIL No. 4, which seeks to preclude Samsung from presenting testimony on noninfringement positions and claim terms from fact witnesses, is duplicative of Fed. R. Evid. 702, and overbroad because it seeks to exclude fundamental Samsung fact witness testimony regarding the alleged features and functions of Samsung's accused products.

To begin with, this motion is nothing more than a request for an order that Fed. R. Evid. 702 be complied with, which this Court routinely denies as redundant of federal rules or standing orders. *See Acorn Semi, LLC v. Samsung Elecs. Co.*, No. 2:19-CV-00347-JRG, Dkt. 331 at 11 (E.D. Tex. Apr. 29, 2021) (denying a similar MIL as "duplicative of Fed. R. Evid. 702"); *Immersion Corp. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-00572-JRG, Dkt. 188, at 5 (E.D. Tex. May 3, 2019) (similar); *EDTX1*, Dkt. 432 at 10, 12 (similar). Netlist's motion does not seek to strike or exclude any specific instances of fact witnesses providing opinions regarding noninfringement and instead simply speculates that Samsung will violate Fed. R. Evid. 702. Netlist's concerns are best addressed at trial by an objection to the question and testimony actually provided, and a ruling, with sufficient context, by the Court.

8

Of course, in accordance with Fed. R. Evid. 702, Samsung will not elicit expert opinion from any fact witness, and neither should Netlist. However, the Court should permit Samsung's engineer witnesses to answer factual questions regarding the structure, features, and function of the accused products. Such factual testimony will not rise to the level of expert testimony because these witnesses will not provide opinions about infringement, or make any comparisons between the accused products and the asserted claims. All of this is routine in patent trials in this Court and others. Further, Samsung's use of factual testimony is proper also to rebut Netlist's own use of Samsung's fact witness testimony to support its infringement arguments. For example, Netlist has designated substantial technical deposition testimony of Samsung fact witnesses, including on technical issues related to infringement. Dkt. 446 at 3-4. It would be patently unfair to deny Samsung the opportunity to present the same type of fact testimony to rebut Netlist's arguments and support Samsung's positions. Should Netlist believe that any testimony offered by Samsung's fact witnesses violates Fed. R. Evid. 702, it can and should raise such an objection during trial.

Netlist's motion suggests, erroneously, that factual testimony regarding the accused products is actually expert testimony. However, this Court as well as others routinely permit fact witnesses with relevant factual information on a disputed factual issue to testify. *See, e.g., Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009) ("When a lay witness has particularized knowledge by virtue of her experience, she may testify—even if the subject matter is specialized or technical—because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of [Fed. R. Evid.] 702."); *Uniloc USA Inc. v. Microsoft Corp.*, 632 F. Supp. 2d 147, 154-55 (D.R.I. 2009) (fact witness may testify about his/her invention and state of the prior art).

Contrary to Netlist's assertion, Dkt. 611 at 6, Samsung's incorporation of its corporate witnesses' testimony in its interrogatory responses regarding noninfringement does not show that Samsung intends for its fact witnesses to provide expert opinions. Samsung's reference to factual

9

testimony about the structure and operation of the accused products in its interrogatory responses properly supports Samsung's noninfringement theories.

Accordingly, the Court should deny Netlist's motion including its broad request to prevent Samsung's fact witnesses from providing factual testimony on technical issues.

V.  **Netlist's MIL No. 5: Preclude Samsung from Presenting Evidence or Argument Regarding RAND Obligations or Any Alleged Failure To License Patents-in-Suit on RAND Terms**

Netlist's MIL No. 5 improperly seeks to prevent Samsung from demonstrating that Netlist's request for ▮▮▮▮▮▮ in damages violates its RAND obligations. *See* Dkt. 611 at 8-10. The Court denied this MIL in *EDTX1* as "moot," Ex. 1 at 10; however, here, whether or not the asserted patents are essential is a live, disputed issue. *See supra* §§ II-III; Dkt Nos. 338, 423, 425, 432, 374.

Netlist's assertion that "Samsung has not contended that any of Netlist's patents in this case are SEPs," ignores Samsung's position that the asserted patents are essential if the accused products are found to infringe. Samsung has extensively explained its position on this issue in responding to Netlist's motion for summary judgment that the asserted patents are not essential. *See* Dkt. 423; Dkt. 630. In short, Samsung's technical expert, Mr. McAlexander, opines that a finding of infringement leads to a finding of essentiality because Netlist's infringement allegations rely solely on DDR4 functionality. *See* Dkt. 423 at 2-3. Based on that opinion, Samsung's damages expert, Ms. Kindler, opines that Netlist's prior offer and current damages demand do not comply with Netlist's RAND obligations. *See, e.g.*, Dkt. 425-5, ¶¶ 67-71, 230-34. Indeed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 342-3. Ms. Kindler's RAND opinions, which address this letter as well as comparable licenses, are clearly relevant to damages. *See Ericsson*, 773 F.3d at 1231 ("A RAND commitment limits the market value to (what the patent owner can reasonably charge for use of) the patented technology. The court therefore must

10

inform the jury what commitments have been made and of its obligation (not just option) to take those commitments into account when determining a royalty award.").

Contrary to Netlist's suggestion, the Court's MIL order in *EDTX1* does not command exclusion here. In both its *EDTX1* MIL and its MIL in this case, Netlist argued that with respect to any assertion regarding RAND licensing obligations at trial, "Samsung would have needed to offer opinions in its **opening** expert reports in support of is RAND discrimination arguments." Dkt. 611 at 10 (emphasis original). That assertion is perplexing because, in this case, Samsung's expert did exactly that. *See* Dkt. 423 at 2 ("In his opening report, Mr. McAlexander compares at least one asserted claim of each asserted patent, on an element-by-element basis, to the portions of the DDR4 standards Netlist relies upon for infringement. . . . His analysis shows that Netlist relies solely on DDR4 standards for infringement." (citing Dkt. 423-1, ¶¶ 206-28; Dkt. 423-2, ¶¶ 193-203, 208-11; Dkt. 423-3, ¶¶ 323-34; Dkt. 423-4; Dkt. 423-5; Dkt. 423-6)). Moreover, as we have repeatedly noted, Netlist improperly withheld its position on standard essentiality during discovery, and then asserted for the first time that its patents are not standard essential in rebuttal expert reports. Dkt. 374. Granting Netlist's MIL would reward Netlist for withholding its position on essentiality throughout discovery.

This Court should reject Netlist's attempt to exclude evidence regarding Netlist's RAND obligations, including the opinions of Samsung's damages expert. Netlist's RAND obligations are appropriate for the jury to consider in the context of damages (as well as equitable defenses that can be reserved for a bench trial, if needed).

11

Dated:  March 8, 2024

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:    (903) 934-9257

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile:   (415) 955-6571

Respectfully submitted,

By:  /s/ *Daniel A. Tishman*

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on March 8, 2024.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

*/s/ Daniel A. Tishman*