UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>Defendants. | Civil No. 2:22-cv-00293-JRG<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S OPPOSITION TO NETLIST'S MOTION TO STRIKE THE
SUPPLEMENTAL REBUTTAL REPORT OF LAUREN KINDLER (DKT. 669)**

██████████████████████████████████████

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Apple Inc. v. Wi-LAN Inc.*,
   25 F.4th 960 (Fed. Cir. 2022) ................................................................................ 1, 2, 3

*Bmc Software, Inc. v. Servicenow, Inc.*,
   No. 2:14-CV-903-JRG, 2016 WL 379620 (E.D. Tex. Feb. 1, 2016) ..................................... 4

*Ericsson Inc. v. D-Link Corp.*,
   No. 6:10-CV-473, 2013 WL 2242444 (E.D. Tex. May 21, 2013) ......................................... 2

*Guardant Health, Inc. v. Found. Med., Inc.*,
   No. 17-1616-LPS-CJB, 2020 U.S. Dist. LEXIS 86387 (D. Del. Apr. 22, 2020) ................. 4

*Laser Dynamics v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ................................................................................................ 4

*Lucent Techs. Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ............................................................................................ 4

*Wi-LAN. Alacritech Inc. v. CenturyLink, Inc.*,
   No. 2:16-CV-00693-RWS-RSP, 2023 WL 8101872 (E.D. Tex. Nov. 21, 2023) ................ 2

██████████████████████████████████████

**TABLE OF EXHIBITS**

| # | Description |
|---|---|
| 1 | March 5, 2024 Email fr. Payne to Reardon re SK hynix licensing documents |

███████████████████████████████████████████████

Netlist intentionally withheld evidence about its negotiations with SK hynix until after expert reports were due in this case, and then argued (wrongly) that Ms. Kindler's original report failed to consider "how the parties to the [SK hynix] license 'treated' the patents in question." Dkt. 355 at 1. Now that Netlist has produced certain negotiation documents and Ms. Kindler analyzed them, Netlist's entire theory falls apart. Although Ms. Kindler's original report properly analyzed the four corners of the SK hynix agreement and its circumstances relevant to the hypothetical negotiation, now that Netlist has finally produced negotiation documents, Ms. Kindler's supplemental report analyzes **exactly** how Netlist and SK hynix treated ███████████ in negotiating the SK hynix agreement. Specifically, Ms. Kindler's supplemental report considers SK hynix licensing discussion documents that demonstrate which patents Netlist valued in its portfolio, ███████████████████

████████████████████████████████████████████████████████████████████████████

███████, and summarizes Ms. Kindler's findings, which quantitatively and qualitatively corroborate her original opinion that ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████ Dkt. 355-1, ¶ 3 (emphasis added). The Court should reject Netlist's rehash of the flawed arguments Netlist made in its motion to strike Ms. Kindler's original report.

## I.     *Wi-LAN* Does Not Require Proof That the Asserted Patents Drove the License

First, Netlist argues that Ms. Kindler's derived rate for the SK hynix agreement is still "untethered to the facts," Dkt. 669 at 1, despite the fact that Ms. Kindler's supplemental report assigns value to the asserted and non-asserted patents **based on Netlist's documented representations** of the value of those patents. Dkt. 669-2, ¶ 7; *id.* at Supp. Ex. 23. In arguing that there is no evidence that the asserted patents drove the consideration of the license, Dkt. 669 at 1-2, Netlist turns the *Wi-*

1

███████████████████████████████████

*LAN*'s holding on its head.[1]  In *Wi-LAN*, the damages expert opined that specific patents were especially valuable in the portfolio without any evidence suggesting that the asserted patents were given greater value than others within that agreement.  *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 972-74 (Fed. Cir. 2022).  In rejecting this approach, *Wi-LAN* explains that the expert's "opinion that the asserted patents were key patents is untethered to the facts of this case" because the licenses on which he relied "treated the asserted patents as chaff, not wheat" where one or more of the asserted patents were not listed in the agreement(s) and/or not discussed during negotiations.  *Id.* at 973.  Nothing in *Wi-LAN* requires the asserted patents to drive the value of an agreement in order for such agreement to be apportionable to the hypothetical negotiation involving the asserted patents.  Directly contrary to Netlist's claims, no Federal Circuit precedent requires particular patents to be identified in claim charts, accused of infringement, or specifically identified in an agreement in order for the agreement to be relevant in a comparable license analysis, when the damages expert is not treating the particular patents as being especially valuable compared to the portfolio.  Dkt. 669 at 1-2.

Even if evidence about "how the parties . . . 'treated' the patents in question," Dkt. 355 at 1, were required, the Netlist-SK hynix negotiation documents that Ms. Kindler summarized in her supplemental report support her opinions.  Ms. Kindler's supplemental report explains that her

███████████████████████████████████
███████████████████████████████████
████████████ Dkt. 669-2, ¶ 8.  That is exactly what this court has required under *Wi-LAN*.  *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693-RWS-RSP, 2023 WL 8101872, at *3 (E.D. Tex. Nov. 21,

---

[1] Endorsing Netlist's interpretation of *Wi-LAN* leads to absurd damages analyses that are inconsistent with Federal Circuit precedent.  Netlist's interpretation would deem every portfolio agreement unapportionable **unless** the asserted patents specifically drove the value of the license. Dkt. 669 at 1.  However, portfolio license agreements are often some of the most probative evidence of a reasonable royalty in a *Georgia-Pacific* analysis.  *See, e.g.*, *Ericsson Inc. v. D-Link Corp.*, No. 6:10-CV-473, 2013 WL 2242444, *2 (E.D. Tex. May 21, 2013).

███████████████████████████████████████

2023) (finding damages analysis consistent with *Wi-LAN* where damages expert's apportionment addressed the extent to which the non-asserted patents contribute to the royalty rate).

Ms. Kindler's analysis specifically accounts for the general value Netlist placed on ███ ████████████████████████████████████████████ as discussed between the parties. Dkt. 669-2, Supp. Ex. 23. Moreover, Netlist's claim that there is "no evidence" that ███████████████ were discussed during negotiations is a misrepresentation of the facts. Netlist withheld negotiation documents from 2019-2021, and confirmed **after** filing the instant motion that █████████████████████████████████████ (following the Court's order to produce them). Ex. 1. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████ *Wi-LAN*, 25 F.4th at 973 (characterizing as "chaff" patents not listed in the agreement, patents "easily lost in a schedule listing hundreds of Non-Asserted patents," and patents not discussed during negotiations).

**II.     Ms. Kindler's Apportionment of the SK hynix Agreement Is Quantitatively Supported**

Second, Netlist claims that Ms. Kindler's apportionment is "arbitrary" despite Ms. Kindler's having many anchors to ground her analysis. Ms. Kindler's ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

3

███████████████████████████████████████████████████

███████████████████████████████████████[2] Dkt. 355-1, ¶ 102(b). Her forward citation analysis also supports her ████████████████ *Id.* Ms. Kindler's supplemental report provides a third quantitative analysis that again corroborates—based on Netlist's own statements and actions as to the value of ████████████████████████████

████████████████████████████████████████████████████

████████████████. Dkt. 669-2, ¶ 8. In contrast, Netlist's cases involved vague or cursory analyses, such that they are not relevant to the quantitative analyses Ms. Kindler conducted. *See Laser Dynamics v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) (excluding opinion where "vague qualitative notions" of relative importance did not support a quantitative one-third apportionment); *Bmc Software, Inc. v. Servicenow, Inc.*, No. 2:14-CV-903-JRG, 2016 WL 379620, at *3 (E.D. Tex. Feb. 1, 2016) (excluding plaintiff's opinion that failed to apportion out the value of the unpatented features in applying 50% reduction to revenue); *Guardant Health, Inc. v. Found. Med., Inc.,* No. 17-1616-LPS-CJB, 2020 U.S. Dist. LEXIS 86387, *43-44 (D. Del. Apr. 22, 2020) (excluding 50% apportionment as unsupported by anything beyond testimony that the patented technology was "foundational").

Given that Ms. Kindler's supplemental report considers the very evidence Netlist contended was necessary to ascribe value to the patents, and the opinions in her supplemental report are corroborative of the apportionment analysis set forth in her rebuttal report, this Court should deny Netlist's motion to exclude her opinions.

---

[2] "[A]ny reasonable royalty analysis [derived from a comparable license] necessarily involves an element of approximation and uncertainty." *Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009).

4

Dated: March 12, 2024

Respectfully submitted,

By: */s/ Daniel A. Tishman*

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-7091
Facsimile: (415) 955-6571

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

5

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on March 12, 2024. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Daniel A. Tishman*