# EXHIBIT 1

```
                   UNITED STATES DISTRICT COURT

          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

              MARK C. SCARSI, U.S. DISTRICT JUDGE



NETLIST, INC.,                )
                              )
          Plaintiff,          )
                              )
          vs.                 )
                              )    8:20-CV-993-MCS
SAMSUNG ELECTRONICS CO.,      )
LTD.,                         )
                              )
          Defendant.          )
_____)
                              )
                              )



               REPORTER'S TRANSCRIPT OF JURY TRIAL

                            VOLUME I

                      Los Angeles, California

                     Tuesday, May 14, 2024



                 _____

                     AMY DIAZ, RPR, CRR, FCRR
                      Federal Official Reporter
                     350 West 1st Street, #4455
                       Los Angeles, CA 90012
```

*Please order court transcripts here:  www.amydiazfedreporter.com*


AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

```
 1    APPEARANCES OF COUNSEL:
 2
      For the Plaintiff:
 3
 4                IRELL & MANELLA LLP
                  By:  Jason Sheasby, Attorney at Law
 5                     Michael Harbour, Attorney at Law
                  1800 Avenue of the Stars, Suite 900
 6                Los Angeles, California 90067
 7                IRELL & MANELLA LLP
                  By:  Lisa Glasser, Attorney at Law
 8                     Matthew Ashley, Attorney at Law
                  840 Newport Center Drive, Suite 400
 9                Newport Beach, California 92660
10    For the Defendant:
11                O'MELVENY & MYERS, LLP
                  By:  Darin Synder, Attorney at Law
12                Two Embarcadero Center, 28th Floor
                  San Francisco, California 94111
13
                  O'MELVENY & MYERS, LLP
14                By:  Amy Lucas, Attorney at Law
                  1999 Avenue of the Stars, 7th Floor
15                Los Angeles, California 90067
16                O'MELVENY & MYERS, LLP
                  By:  Anton Metlitsky, Attorney at Law
17                     Marc Pensabene, Attorney at Law
                  Times Square Tower
18                7 Times Square
                  New York, New York 10036
19
                  O'MELVENY & MYERS, LLP
20                By:  Marc Feinstein, Attorney at Law
                  400 South Hope Street, 18th Floor
21                Los Angeles, California 90071
22
23
24
25
```

```
15:30:08   1   A. Well, I -- I had a number of calls with Dr. Jeon and
15:30:16   2   Kenny Han as to how to proceed beyond that.  And they -- they
15:30:25   3   explained to me that they wanted a different structure, which
15:30:28   4   is, this is still too large of a sum.  Instead, we will
15:30:35   5   supply you -- we will provide you with a supply guarantee for
15:30:37   6   memory products.
15:30:43   7   Q. And was Netlist interested in making that type of
15:30:46   8   arrangement?
15:30:46   9   A. Yes, we were.
15:30:47  10   Q. Why?
15:30:47  11   A. Well, in order to become -- as I said before, in order to
15:30:52  12   become a real products company.  We had high-end products,
15:30:56  13   Samsung had main stream products.  To become a one-stop shop
15:31:01  14   in a real product company, that supply would be valuable to
15:31:05  15   us.
15:31:05  16   Q. Who did you have those discussions with?
15:31:07  17   A. With Dr. Jeon and Kenny Han.
15:31:11  18   Q. Did Samsung make any statements about whether there would
15:31:16  19   be limits on the product supply in these negotiations?
15:31:19  20   A. No.
15:31:19  21   Q. Did Samsung's president, Dr. Jeon, know about your work
15:31:27  22   at LG memory?
15:31:28  23   A. Yes.  Yeah, he -- we were colleagues back at LG.
15:31:36  24   Q. Was he aware of the LG procedure of patent license for
15:31:41  25   supply?
```

```
15:31:41   1    A. Yes.  All of the executives at LG knew.  And it wasn't an
15:31:45   2    uncommon practice in the industry.
15:31:48   3    Q. I want to show you a document that's already been in
15:31:51   4    evidence.  This is the term sheet that was proposed by
15:31:55   5    Samsung in response.
15:31:56   6         What was the bottom part of the term sheet?
15:31:58   7    A. Supply of products on terms to be negotiated.
15:32:04   8    Q. And it uses the phrase "consideration."  That is jargon
15:32:08   9    again.  What is consideration?
15:32:08  10    A. Consideration is the value that Samsung is willing to
15:32:14  11    provide Netlist in this agreement.
15:32:16  12    Q. And for the jury, if they want to look at this, this is
15:32:19  13    Exhibit 102, is that correct?
15:32:20  14    A. Yes.
15:32:21  15    Q. And did Samsung in its cover e-mail make a statement
15:32:26  16    about what the impact of the product supply would be?
15:32:28  17    A. Yes.  This is -- yes.  I mean, this -- Kyuhan Han, he
15:32:38  18    wrote an e-mail to us, copying Mr. Lee.  He says:  Finally,
15:32:46  19    we hope the supply of products, NAND, DRAM and NDNP related
15:32:51  20    chips that is will help enable your vision of being a
15:32:55  21    products company.
15:32:55  22    Q. Did he make any other statements?
15:32:58  23    A. I believe he said that this proposal that they are
15:33:03  24    making, Samsung's making to Netlist, will enable Netlist to
15:33:07  25    expand its business.
```

```
15:33:09   1   Q.  Were there any statements in either the term sheet or in
15:33:13   2   this e-mail that it would be limited to the joint development
15:33:16   3   project?
15:33:16   4   A.  No.
15:33:17   5   Q.  Going back to the term sheet, it says, on conditions to
15:33:23   6   be negotiated.  What were the conditions that were ultimately
15:33:27   7   negotiated?
15:33:28   8   A.  Well, it is what ended up in the final binding contract,
15:33:33   9   the JDLA.
15:33:34  10   Q.  And is this -- are those the terms?
15:33:37  11   A.  Yes.  Samsung will supply NAND and DRAM products to
15:33:44  12   Netlist on Netlist's request at a competitive price.
15:33:47  13   Q.  After Samsung refused to comply with its obligations,
15:33:50  14   what steps did you take to secure alternative long-term
15:33:54  15   supply?
15:33:54  16   A.  Well, we -- we work with and contracted with SK Hynix for
15:34:04  17   a license to our patents for a stable supply of SK Hynix
15:34:12  18   products back to us.
15:34:12  19   Q.  Who is SK Hynix?
15:34:14  20   A.  SK Hynix, after Samsung, is the second largest memory
15:34:18  21   manufacturer in the world.
15:34:19  22   Q.  Was SK Hynix using Netlist's patents?
15:34:25  23   A.  They were.
15:34:25  24   Q.  How much product supply did SK Hynix provide?
15:34:29  25             MR. SNYDER:  Objection, Your Honor, best evidence
```

```
15:45:06   1              THE COURT:  Please proceed.
15:45:06   2   BY MR. SHEASBY:
15:45:16   3     Q. I want to turn now and speak about the positions that
15:45:21   4   Samsung has taken in this litigation.
15:45:24   5              And if I can go to slide 62.  It says, Samsung's
15:45:30   6   position as you understand it is that the NAND and DRAM
15:45:34   7   supply is limited to chips for use in the joint development
15:45:37   8   project.
15:45:38   9              Is that your understanding?
15:45:39  10     A. That is my understanding that that is their position.
15:45:43  11     Q. Was that position ever expressed to you by the president
15:45:49  12   of Samsung memory, the executive vice president of Samsung
15:45:53  13   memory, Jung-Bae Lee or Kyung Han who negotiated it?
15:45:59  14     A. No one ever did that.
15:46:01  15     Q. And just so the record is clear, do you have an
15:46:04  16   understanding what Samsung's position is regarding the scope
15:46:07  17   of their rights under the patent license versus the scope of
15:46:11  18   their supply obligation?
15:46:12  19     A. Yes.  Samsung's position is that they have a license, a
15:46:21  20   permission to use any of our patents for any of their
15:46:25  21   products, not just the joint development project.
15:46:31  22              But when it comes to their supply obligation to us,
15:46:36  23   it's limited to the joint development project or the product.
15:46:40  24     Q. I want to show you a passage from the agreement that
15:46:43  25   shows the joint development project.  This is Exhibit 47 at
```