**EXHIBIT 3**

108:37:49

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

MARK C. SCARSI, U.S. DISTRICT JUDGE

| | |
|---|---|
| NETLIST, INC., )<br>      Plaintiff, )<br>            vs. )<br>SAMSUNG ELECTRONICS CO., )<br>LTD., )<br>      Defendant. )<br>_____ )<br> ) | 8:20-CV-993-MCS |

REPORTER'S TRANSCRIPT OF JURY TRIAL

VOLUME III

Los Angeles, California

Thursday, May 16, 2024

_____

AMY DIAZ, RPR, CRR, FCRR
Federal Official Reporter
350 West 1st Street, #4455
Los Angeles, CA 90012

*Please order court transcripts here:  www.amydiazfedreporter.com*

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

```
1        APPEARANCES OF COUNSEL:

2
         For the Plaintiff:
3

4                    IRELL & MANELLA LLP
                     By:  Jason Sheasby, Attorney at Law
5                         Michael Harbour, Attorney at Law
                     1800 Avenue of the Stars, Suite 900
6                    Los Angeles, California 90067

7                    IRELL & MANELLA LLP
                     By:  Lisa Glasser, Attorney at Law
8                         Matthew Ashley, Attorney at Law
                     840 Newport Center Drive, Suite 400
9                    Newport Beach, California 92660

10       For the Defendant:

11                   O'MELVENY & MYERS, LLP
                     By:  Darin Synder, Attorney at Law
12                   Two Embarcadero Center, 28th Floor
                     San Francisco, California 94111
13
                     O'MELVENY & MYERS, LLP
14                   By:  Amy Lucas, Attorney at Law
                     1999 Avenue of the Stars, 7th Floor
15                   Los Angeles, California 90067

16                   O'MELVENY & MYERS, LLP
                     By:  Anton Metlitsky, Attorney at Law
17                        Marc Pensabene, Attorney at Law
                     Times Square Tower
18                   7 Times Square
                     New York, New York 10036
19
                     O'MELVENY & MYERS, LLP
20                   By:  Marc Feinstein, Attorney at Law
                     400 South Hope Street, 18th Floor
21                   Los Angeles, California 90071

22

23

24

25
```

1 08:37:50          THE CLERK:  Calling item number one, SACV-20-993,

2 08:37:56    Netlist, Inc. versus Samsung Electronics.

3 08:38:00          Counsel state your appearances, please.

4 08:38:03          MR. SHEASBY:  Good morning, Your Honor.  For the

5 08:38:04    plaintiff, Jason Sheasby, Lisa Glasser, Matt Ashley, Michael

6 08:38:08    Harbour.  And we are ready to proceed.

7 08:38:09          THE COURT:  Good morning.

8 08:38:11          MR. SNYDER:  Good morning, Your Honor.  Darin Snyder

9 08:38:14    of O'Melveny & Myers for the defendant Samsung Electronics.

10 08:38:15    With me at counsel table is Amy Lucas and Calvin Mendez.  And

11 08:38:20    our client representative, Mr. Richard An.

12 08:38:24          THE COURT:  Good morning.

13 08:38:24          So just a couple of preliminary things.

14 08:38:27          I've got a proposed jury instructions that resolve

15 08:38:30    the issue with respect to the damages, and a draft verdict

16 08:38:33    form that resolves the issue that we discussed with respect

17 08:38:38    to competing interpretations.

18 08:38:40          I'll circulate those drafts to you this morning, and

19 08:38:44    then maybe we'll talk about them either at our first break or

20 08:38:48    certainly at the lunch break.  But I wanted to give you a few

21 08:38:51    minutes to kind of look through them.

22 08:38:53          The jury -- we'll probably know this morning whether

23 08:38:57    the jury wants to stay late today or wants to come back

24 08:39:01    tomorrow.  If they decide to come back tomorrow, my thought

25 08:39:03    would be that we would break at the end of testimony today,

1 08:39:07   resolve any remaining jury instruction issues, and then

2 08:39:09   tomorrow morning I would provide the jury instructions first,

3 08:39:14   then let the parties close, and then let the jurors

4 08:39:18   deliberate.

5 08:39:19        Either way, I think -- you know, I don't know how

6 08:39:22   much time you are going to reserve, but we should get them

7 08:39:25   deliberating if they come back tomorrow by 10:30 or so, I

8 08:39:28   would think.  So they should have plenty of time.

9 08:39:31        So those are those two issues.

10 08:39:33       With respect to the ex partes filed last night,

11 08:39:33  they're discovery issues.  So I wanted to deal with that, if

12 08:39:33  we could.

13 08:39:42       One of the issues that Netlist raises is that they

14 08:39:45  don't believe that this document was responsive to the

15 08:39:48  discovery request as they were, I guess, objected to by

16 08:39:53  Netlist.  So Netlist understood that it is their discovery

17 08:39:58  obligation to exclude internal communications with respect

18 08:40:01  to -- with respect to orders.

19 08:40:03       So, yeah, so they said in response, they will

20 08:40:19  produce nonprivileged purchase order and related

21 08:40:22  communications sent by Netlist to Samsung in the relevant

22 08:40:24  time period.  So they essentially said that they have

23 08:40:28  excluded internal communications relating to orders.

24 08:40:32       And so they would say that this document wasn't

25 08:40:34  responsive to the discovery requests as modified.  And I

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

08:40:38  1  wanted to get Samsung's position on that.

08:40:40  2        MR. SHEASBY:  Your Honor, I just want to clarify.

08:40:41  3  We actually did do an internal search as well.  We did not

08:40:45  4  exclude internal communications.  The point of saying that

08:40:50  5  is, we went above and beyond.  So there are many, many

08:40:54  6  internal communications that have been produced.  The reason

08:40:56  7  why this was not produced was because it didn't hit the key

08:40:59  8  word Samsung or JDLA.

08:41:02  9        So I want to be very clear, that was a secondary

08:41:04  10  argument.  So there is no ambiguity, we did not exclude for a

08:41:09  11  search for internal communications.  There are a massive

08:41:13  12  number of internal communications that were produced.

08:41:15  13        THE COURT:  Okay.  But you are making the argument

08:41:17  14  that you weren't obligated to produce this document in

08:41:19  15  discovery, correct?

08:41:20  16        MR. SHEASBY:  We agree -- we -- yes.  We don't think

08:41:25  17  we were obligated to produce it, but it was not a conscious

08:41:28  18  decision not to produce it.  It was just missed in the pull

08:41:31  19  because it didn't hit on the word.

08:41:35  20        I think sometimes things get too legalistic on these

08:41:42  21  issues.  We would have produced the e-mail if we would have

08:41:45  22  found it.  It's a great e-mail for us.  It was missed because

08:41:48  23  it didn't hit on the terms.  Discovery had closed.  That is

08:41:51  24  basically it.  There was no decision not to produce some

08:41:56  25  category of document.  There was no partial searching done.

1  08:42:01   Every single internal/external communication that hit on our

2  08:42:05   search terms was produced.  Every single one.  And I just

3  08:42:09   want to make that emphatically clear.

4  08:42:11          So for this you can stipulate, we were obligated to

5  08:42:14   produce it.  In other words, that -- in other words, I'm

6  08:42:17   not -- I don't want to fight about that.

7  08:42:19          THE COURT:  Okay.  So Netlist is willing to

8  08:42:23   stipulate that this was a document that Netlist was obligated

9  08:42:26   to produce?

10 08:42:27          MR. SHEASBY:  My point is, I don't want it -- I

11 08:42:30   don't think we were, but I don't want it to be a fight about

12 08:42:31   that, because that would turn it into sort of -- a sort of a

13 08:42:36   procedural fight as opposed to a simple fact that the

14 08:42:40   document was found on April 19th, discovery had closed, we

15 08:42:44   didn't think it was responsive to anything that was -- was --

16 08:42:49   we thought there was -- it was over.  There was -- it was

17 08:42:52   over.  The document only helps us, it doesn't help them.  And

18 08:42:56   so it just -- the decision was made to only use it if it came

19 08:43:01   up to rehabilitate the witness.

20 08:43:04          The point I'm trying to make is I don't want this to

21 08:43:07   be about a discovery compliance issue, because if it would

22 08:43:13   have hit, it would have been produced.  There were thousands

23 08:43:15   of internal e-mails -- internal communications that were

24 08:43:18   produced.  That is my only point I'm trying to make.

25 08:43:21          THE COURT:  Right  but I think from the Court's

594

```
108:43:23   standpoint, I think it matters whether it was responsive to a
208:43:26   discovery request and not produced or not.
308:43:28            MR. SHEASBY:  The answer is I don't think it was
408:43:29   responsive.
508:43:30            THE COURT:  Okay.  Thank you.
608:43:31            Okay.  Let me hear from Samsung on that.
708:43:34            MR. FEINSTEIN:  Good morning, Your Honor.
808:43:37            THE COURT:  Good morning.
908:43:37            MR. FEINSTEIN:  So we do think it was responsive to
1008:43:41  this -- to the request, and in particular to their agreement
1108:43:45  to produce.
1208:43:46            So what they agreed to produce were purchase orders
1308:43:49  and related communications sent by Netlist to Samsung.  So
1408:43:54  related communications sent by Netlist to Samsung.
1508:43:58            Now, the document that we are talking about is an
1608:44:01  e-mail chain.  It's not just a single e-mail.  It's an e-mail
1708:44:06  chain.  That is the document.
1808:44:07            And if you -- if you look, the document -- the first
1908:44:16  e-mail in the chain is a communication sent by Netlist to
2008:44:21  Raymond Jiang to Samsung's Neal Knuth.  So that is a
2108:44:25  communication by Netlist to Samsung.
2208:44:27            And that e-mail, if you look at the body of it, it's
2308:44:32  a -- has an agenda.  And one of items on the agenda is
2408:44:37  backlog review.  Right?  A backlog is a -- is purchase orders
2508:44:43  that have not yet been fulfilled.  Okay?  But the word -- so
```

1 08:44:47    that is -- that is actually responsive.

2 08:44:49             But even if they were not searching for the word

3 08:44:52    "backlog," which they should have searched for, they most

4 08:44:55    certainly should have searched for Neal Knuth's name, and PO.

5 08:45:00             So if you look at this document as a whole -- and

6 08:45:03    again, it's -- the e-mail chain is a document, the whole

7 08:45:06    chain is a document.  They are focusing on just the top and

8 08:45:09    saying that is not responsive.  But the document is

9 08:45:13    responsive, because the first e-mail in it is a communication

10 08:45:18   from Netlist to Samsung regarding a purchase order.  And in

11 08:45:24   any event, the -- and the search terms, by the way, that they

12 08:45:27   used -- so it is responsive, I'm going to stop there.  I

13 08:45:30   think it is responsive.

14 08:45:31            There is other issues that are raised about the

15 08:45:34   diligence of their search, which I'm happy to address.

16 08:45:38            THE COURT:  Well, let me -- can we just -- let me

17 08:45:40   look at this e-mail for a second.

18 08:45:42            So the e-mail in the sort of the top part, it's got

19 08:45:49   three -- three items.  Item 2 has some, I guess, for lack of

20 08:45:58   a better word, part numbers.  PM863A and SM863A.

21 08:46:07            Do you know.  What do those stand for, PM and SM?

22 08:46:11            MR. SHEASBY:  So, I do, Your Honor.  Those are the

23 08:46:15   PLEXIS part numbers.  The long e-mail chain about PLEXIS,

24 08:46:21   internal e-mail communications about PLEXIS, all of that was

25 08:46:24   produced.  This is just the follow-up internal e-mail for

08:46:28    1    whatever reason didn't get captured.  So it's talking about

08:46:30    2    the part numbers that were the subject of that long e-mail

08:46:34    3    chain that Samsung was examining on yesterday.

08:46:37    4            THE COURT:  Okay.  And so the PM863A and the SM863A

08:46:41    5    are parts for PLEXIS?

08:46:44    6            MR. SHEASBY:  Yes.

08:46:45    7            MR. FEINSTEIN:  I don't know if they are parts for

08:46:46    8    PLEXIS, they are part numbers.

08:46:48    9            THE COURT:  And so, yeah -- so I guess, I mean, the

08:46:51   10    issue we've got is that the -- we've got some documents

08:46:55   11    produced, then I guess and some documents not produced.  It

08:46:59   12    would seem like if this -- if this came up in production --

08:47:03   13            Well, and let me ask Samsung, the sanctions that you

08:47:09   14    are looking for -- so the Court's already excluded this

08:47:12   15    document from evidence, because it wasn't -- it wasn't

08:47:16   16    produced.  And so I think that -- that ruling I think is --

08:47:21   17    was appropriate.  And the Court is not going to disturb that

08:47:24   18    ruling.

08:47:24   19            But in addition, let me hear from Samsung as to why

08:47:29   20    you think that this -- that this failure to produce this

08:47:35   21    document should result in the testimony of identified being

08:47:40   22    stricken.

08:47:40   23            MR. FEINSTEIN:  So not only did they not produce the

08:47:46   24    document years ago when they should have produced it, but

08:47:49   25    more to the point, to the question that you are asking, what

```
1  08:47:52   did they do when they discovered the document?  Right?

2  08:47:59           One thing we do know is that they did not supplement

3  08:48:02   their disclosures.  Right?  They did not tell us, and that

4  08:48:05   was a violation of their obligations under Rule 26 to

5  08:48:08   supplement.  Right?  If there was something, a correction or

6  08:48:12   incompleteness in their prior production, they should have

7  08:48:15   disclosed it.

8  08:48:16           At a minimum -- at a minimum, they should not have

9  08:48:21   tried to use it in the proceeding, in the trial, and what was

10 08:48:28   essentially an ambush.  Right?  Because they -- they knew --

11 08:48:33   they could have told -- they could tell that we were going to

12 08:48:35   use that -- you know, that e-mail about SLY and the end

13 08:48:41   customer not being -- being made up.  Right?  Because we put

14 08:48:44   it on our exhibit list.  We didn't hide it.  We put it on our

15 08:48:48   exhibit list.  I'm sure they searched for Devon Park's name,

16 08:48:51   they found that e-mail, they knew that was coming.

17 08:48:54           So what did they do -- and they admitted in their

18 08:48:56   declaration, they did their own search -- they asked him

19 08:48:59   about it, they did a search of his files and they turned up

20 08:49:02   this document.

21 08:49:03           And issue number one, they didn't disclose it to us

22 08:49:08   at that time, even though they -- we would assert, Your

23 08:49:11   Honor, it was responsive.

24 08:49:12           And issue number two, they marked it as though it

25 08:49:19   was a trial exhibit.  And then just with a -- and then just,
```

08:49:24  1   you know, tried to use it with the witness without disclosing

08:49:28  2   to us that it's not actually a trial exhibit, it was never

08:49:32  3   disclosed to us previously.  But they tried to pass it off as

08:49:37  4   though it was a trial exhibit.

08:49:39  5           And they also didn't disclose to us, which they

08:49:44  6   should have, that it was never produced.

08:49:46  7           Even if -- I would submit to Your Honor that this

08:49:49  8   document is -- definitely falls within that document request.

08:49:53  9   Okay?  But even if there was some doubt about it, they should

08:49:58  10  have construed that in our favor, and made sure that we were

08:50:01  11  aware of it.  Made sure that we were aware of that document.

08:50:06  12          If we were aware of that document, then -- you know,

08:50:08  13  I was the one responsible for conducting the examination of

08:50:11  14  Mr. Park.  If I was aware of that document, there are a few

08:50:15  15  things that we would have done.  We would have spoken to

08:50:18  16  Mr. Knuth.  Right?  We would have asked him, a former Samsung

08:50:22  17  employee, we would have asked him about it.  And we would

08:50:25  18  have considered how to conduct the examination, whether to do

08:50:28  19  it the same way or to do it different.  We would have had to

08:50:30  20  decide what to do.

08:50:31  21          We have not, by the way, spoken to him about it

08:50:34  22  because he's sequestered.  Right?  And so the situation that

08:50:37  23  they created by not making that document available to us is

08:50:41  24  that they had this evidence in their back pocket, so to

08:50:44  25  speak.  They allowed us to blindly go forward with our

```
 1 08:50:48   examination, and prepared to ambush us.
 2 08:50:53          And so if -- you know, so here are the sanctions
 3 08:50:56   that we think were appropriate.
 4 08:50:58          One, any -- any testimony by Mr. Park where he
 5 08:51:06   either blurted out on his own or in response -- you know, in
 6 08:51:10   response to my questions, anything that is, you know, along
 7 08:51:17   the lines of him saying, Mr. Knuth told us to make up this
 8 08:51:20   story, we would say that should be stricken.  That should be
 9 08:51:23   stricken.
10 08:51:24          They shouldn't be able to ask Mr. Knuth about it.
11 08:51:30   Right?  They shouldn't be asked -- they shouldn't be able to
12 08:51:33   develop that counter case, right, that Mr. Knuth made up this
13 08:51:37   story.
14 08:51:37          By the way, we don't think he made up a story.  We
15 08:51:40   think he told him, you need to find some facts so I can sell
16 08:51:44   this to my management.
17 08:51:45          But in any event, they shouldn't be able to present
18 08:51:48   that evidence, any evidence to the effect that Mr. Knuth told
19 08:51:51   him to make up a story to contradict the line of questioning
20 08:51:55   that we did.  And it should be -- they shouldn't be able to
21 08:51:59   do that.  The testimony should be stricken, and we've
22 08:52:02   identified it in our papers, and the jury should be
23 08:52:05   instructed to disregard it.
24 08:52:06          That is how we think that piece should be handled.
25 08:52:09          But we also think, Your Honor, that there is a
```

| | |
|---|---|
| 1 08:52:12 | serious question, if you want me to address it now, about |
| 2 08:52:16 | their document production.  I mean, you asked them to explain |
| 3 08:52:23 | how it is they didn't produce this.  And you know, now they |
| 4 08:52:26 | are arguing about, you know, kind of going -- waffling, but |
| 5 08:52:31 | arguing that it wasn't actually responsive. |
| 6 08:52:32 | But one of the things that they have revealed is the |
| 7 08:52:35 | way Netlist counsel conducted its document collection.  What |
| 8 08:52:41 | they are telling us is that they did a diligent document |
| 9 08:52:45 | collection, but the explanation that they give for this |
| 10 08:52:48 | diligent document collection is that they simply searched for |
| 11 08:52:51 | the word Samsung.  Right?  Samsung.  Or Samsung.com. |
| 12 08:52:56 | I mean, if you think about this case, that is not a |
| 13 08:52:59 | diligent search.  They should be searching for Neal Knuth, |
| 14 08:53:05 | Steven Metz.  We have a whole list of people in Korea, |
| 15 08:53:08 | Harrison Yoo.  I mean, there are just loads of communications |
| 16 08:53:11 | with these people. |
| 17 08:53:12 | I mean, you may or may not have the word -- I mean, |
| 18 08:53:16 | but you can see from this e-mail, by the way -- and anybody |
| 19 08:53:19 | who has done any kind of document collection will know that |
| 20 08:53:22 | in the intermediate e-mails, you don't necessarily have the |
| 21 08:53:26 | e-mail address, like if you look at the bottom e-mail, it |
| 22 08:53:30 | says Neal Knuth, it doesn't say Samsung, even though his |
| 23 08:53:34 | actual e-mail address would be Samsung.com. |
| 24 08:53:38 | You need to search for the names.  And not to search |
| 25 08:53:40 | for a name like Neal Knuth, I mean, it's just not diligent. |

08:53:44  We all get together, you know, in our firms when somebody
08:53:47  sends us a document request, we go through the search terms.
08:53:51  I can't imagine how somebody wouldn't come up with a search
08:53:54  term Neal Knuth, Steven Metz, or the search term purchase
08:53:59  order or PO.  And if they used those search terms, it would
08:54:03  have pulled up this document, without a question.
08:54:07          The document, again, is the whole thing.  It's both
08:54:09  e-mails.  To not have searched for PO and Neal Knuth is
08:54:15  simply inexcusable.
08:54:18          And at this point, in this trial, it just raises a
08:54:21  serious question, what else is out there that they didn't
08:54:24  produce?
08:54:24          And by the way, counsel says, oh, we would have
08:54:27  produced this document, it's actually a good document for
08:54:29  them.  I don't know how good it is.  If you look under item
08:54:35  number 2, it says, referring to Mr. Knuth, he will get us --
08:54:39  this is the third line down under 2.  It starts out with, he
08:54:43  will get us.  And it says, he will get us as many
08:54:47  allocation -- as many as allocation he can.  But
08:54:52  remaindered -- reminded us to have credit available.
08:54:54          Doesn't sound like something that is so good for
08:54:56  them, that they want to get us all the allocation, but the
08:55:01  problem is credit, okay?  That is not such a good fact for
08:55:04  them, for this to be the explanation for why they are not --
08:55:08  Samsung is not providing product.

602

| | |
|---|---|
| 1 08:55:09 | So anyway, I think there is a serious issue about |
| 2 08:55:12 | their document production.  And here we are in the middle of |
| 3 08:55:14 | trial, and I don't know how to address it, other than through |
| 4 08:55:16 | some kind of -- we suggested an adverse inference, certainly |
| 5 08:55:21 | within the Court's discretion.  We think something -- I mean, |
| 6 08:55:23 | it's just unfair from our standpoint to hear at this point |
| 7 08:55:27 | that we don't know what kind of documents were never |
| 8 08:55:30 | produced. |
| 9 08:55:30 | THE COURT:  Thank you. |
| 10 08:55:31 | Okay.  Let me go back to Netlist. |
| 11 08:55:32 | And so the concern I've got in response to Samsung's |
| 12 08:55:35 | argument is that it kind of seems like you allowed them to |
| 13 08:55:39 | kind of walk into a trap, right?  Because you kind of allowed |
| 14 08:55:42 | them to raise this issue thinking you had this backstop, |
| 15 08:55:44 | which was this document that would -- that would imply that |
| 16 08:55:49 | Neal Knuth told them to make up a customer. |
| 17 08:55:52 | And it seems like that, you know, had they known |
| 18 08:55:57 | about this document, had they known that this existed, they |
| 19 08:56:02 | may not have walked into that trap.  And so I'm wondering |
| 20 08:56:04 | about why the Court shouldn't strike all this testimony from |
| 21 08:56:08 | Mr. Park with respect to what Mr. Knuth told him. |
| 22 08:56:12 | MR. SHEASBY:  I think you can do that. |
| 23 08:56:14 | THE COURT:  So that is that issue. |
| 24 08:56:17 | Now, the other issue is the issue of the request |
| 25 08:56:27 | from Samsung that there is some statement to the jury.  And I |

| | |
|---|---|
| 1 08:56:29 | guess I haven't heard from Samsung on this -- the |
| 2 08:56:34 | justification for this request. |
| 3 08:56:35 | So why don't I just do that first.  Let me hear from |
| 4 08:56:37 | Samsung. |
| 5 08:56:38 | So you want us to tell the jury that Netlist failed |
| 6 08:56:43 | to turn over documents.  And what I'm wondering about is, I |
| 7 08:56:47 | mean, it seems like it's a fairly severe thing to do. |
| 8 08:56:53 | "Severe" is maybe the wrong word.  It's a fairly -- it's a |
| 9 08:57:00 | consequential thing to say to the jury. |
| 10 08:57:02 | What is the justification for that? |
| 11 08:57:04 | MR. FEINSTEIN:  The justification is that you asked |
| 12 08:57:08 | them to explain the diligence related to the -- to explain |
| 13 08:57:12 | why they did not produce this document. |
| 14 08:57:16 | I take it that was a -- that was a serious request, |
| 15 08:57:19 | right, for them to explain why they didn't produce this |
| 16 08:57:21 | document. |
| 17 08:57:22 | Their explanation is scant.  Right?  I mean, they |
| 18 08:57:28 | didn't identify -- I mean, they didn't identify custodians, |
| 19 08:57:34 | they didn't identify search terms, other than that one search |
| 20 08:57:37 | term.  And what is revealed by their declaration is that |
| 21 08:57:42 | their diligence was inadequate.  It was inadequate. |
| 22 08:57:47 | They shouldn't have just used a search term |
| 23 08:57:51 | "Samsung," for the reasons I said before.  Any -- I mean, I |
| 24 08:57:57 | don't think by any stretch of the imagination is using the |
| 25 08:58:00 | word "Samsung" alone a reasonable search term.  That alone, |

```
 1  08:58:06  it cannot be a reasonable search term in a case like this.
 2  08:58:09  They should have been using Knuth or Metz or Harrison Yoo or
 3  08:58:15  purchase order, you know, and combining with those terms.  It
 4  08:58:17  was simply unreasonable.
 5  08:58:18          So how do you deal with that situation now that we
 6  08:58:20  are all the way at the -- you know, into the trial.  I don't
 7  08:58:26  think they get a pass, right?  I don't think they get a pass
 8  08:58:30  for it.  I -- they haven't, you know, they didn't provide an
 9  08:58:38  answer to you that I think shows that -- whether it was
10  08:58:42  willful or not, we can't say, okay, on this record whether it
11  08:58:47  was willful.  But certainly it was grossly negligent,
12  08:58:52  certainly grossly negligent to do it the way they did it.
13  08:58:56  Okay?  And that is not just negligence, grossly negligent.
14  08:59:01  Anybody in any law firm would know you don't just search for
15  08:59:04  the word "Samsung."
16  08:59:05          So what do you do about that?  It's serious
17  08:59:08  misconduct, I think.  So the jury has to be -- so I just
18  08:59:20  think, you know, the jury -- I think it's a concern of the
19  08:59:24  Court that it's a heavy sanction.
20  08:59:25          THE COURT:  Right.  And that is the Court's concern.
21  08:59:28  I mean, I don't want to, you know, the -- a failure to
22  08:59:35  produce document, telling the jury -- in your request, you
23  08:59:41  say the jury should be instructed that Netlist failed to turn
24  08:59:43  over to Samsung all of the documents Netlist was required to
25  08:59:46  turn over to Samsung, and that the jury may infer that
```

1 08:59:49  Netlist has improperly withheld documents that are harmful to

2 08:59:58  its case.

3 08:59:58          That seems like it's telling the jury that Netlist

4 09:00:01  acted improperly, trying to hide something.  And I'm

5 09:00:04  wondering about whether that is too severe of a sanction that

6 09:00:06  could -- that could reasonably lead the jury to decide that

7 09:00:10  Netlist is a bad actor, and they should rule in favor of

8 09:00:14  Samsung.

9 09:00:15          MR. FEINSTEIN:  Could be something along the lines

10 09:00:17  of their -- they were asked -- they were required to produce

11 09:00:22  documents in discovery, there were inadequacies in the manner

12 09:00:26  in which they turned over documents, and there may be

13 09:00:29  documents that they failed to turn over that are damaging,

14 09:00:32  that are harmful to them.  That is all.

15 09:00:34          So it's not so much putting the finger on them, but

16 09:00:36  it is fair to suggest that there may be documents that have

17 09:00:40  never been disclosed to us that could be harmful to them,

18 09:00:44  without saying that they did it deliberately.

19 09:00:46          THE COURT:  Okay.  Let me turn to Netlist.

20 09:00:49          Excuse me one second.

21 09:00:54          So let me turn back to Netlist for a second.  And

22 09:01:01  let me get a response to Samsung's request for that jury

23 09:01:06  instruction.

24 09:01:07          MR. SHEASBY:  Your Honor, I think that is an extreme

25 09:01:09  sanction.  I think an evidentiary hearing would need to be

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

606

```
 1  09:01:13    held for that type of sanction.  And it is based on an

 2  09:01:16    incorrect allegation.

 3  09:01:18            The search term was not only "Samsung."  What

 4  09:01:21    happened was there was a massive pull of documents.  For

 5  09:01:25    whatever reason, this single document did not get into that

 6  09:01:28    massive pull.  There were hundreds of thousands of documents

 7  09:01:31    that were pulled from our databases.  We don't know how this

 8  09:01:35    document didn't get pulled.  We don't know why it didn't get

 9  09:01:38    pulled.  We have only had 24 hours to sort of investigate

10  09:01:41    this.

11  09:01:43            This is -- there is no evidence that there was a

12  09:01:46    systematic problem with this pull.  Randomized documents that

13  09:01:51    have Neal Knuth in the second page, if you saw the first page

14  09:01:55    and you didn't see the second page, you wouldn't necessarily

15  09:01:58    know what this was talking about.  We did not exclude -- we

16  09:02:00    did not search just based on "Samsung."

17  09:02:02            I was not did the production, but we did speak to

18  09:02:06    the firm that did it previously, we have every reason to

19  09:02:09    believe there was good faith.

20  09:02:10            We think post-trial, if the Court wants to have a

21  09:02:13    hearing to determine the quality of our search, the Court

22  09:02:16    should do so.  But to give that level of instruction without

23  09:02:19    an evidentiary hearing, I think is beyond.  Because if it

24  09:02:23    turns out that that is incorrect, that we did do a good faith

25  09:02:27    search, we may have to redo the trial.
```

1 09:02:31    THE COURT:  And then my last question -- and the

2 09:02:33    jury is here, so I want to get started with them.  But this

3 09:02:36    document is labeled IX0013.  How many IX documents are there?

4 09:02:43    MR. SHEASBY:  All the other IX documents are just

5 09:02:46    printed publications that we would use in impeachment.

6 09:02:49    THE COURT:  Okay.  So all -- so this is the only IX

7 09:02:53    document, then, that is not a printed publication?

8 09:02:58    MR. SHEASBY:  Yes.  These were just stuff we would

9 09:03:00    use in impeachment.  That is all it was.

10 09:03:02    THE COURT:  And so the representation is, then, this

11 09:03:05    is the only one that is a -- is a -- when you say the other

12 09:03:12    ones are all publications, the other ones are publically

13 09:03:15    available?

14 09:03:16    MR. SHEASBY:  They are like newspaper articles about

15 09:03:18    Samsung having a large amount of documents.  Samsung making a

16 09:03:22    lot of money.  Or a JEDEC press release.

17 09:03:26    THE COURT:  Okay.  Let me think about this a bit.

18 09:03:29    Do we need to make a decision before we start

19 09:03:31    testimony?  So can we avoid this issue in Mr. Knuth's

20 09:03:38    examination?

21 09:03:39    MR. SHEASBY:  Yes, we can, Your Honor.

22 09:03:40    THE COURT:  Okay.  Then let me think about this a

23 09:03:43    bit, and I'll make a decision at the next break.

24 09:03:47    MR. SNYDER:  Excuse me, Your Honor.  I'm not sure

25 09:03:48    that we can avoid this with Mr. Knuth, because the jury has

| | |
|---|---|
| 1 09:03:52 | heard the testimony, and we need -- when Mr. Knuth is on the |
| 2 09:03:55 | stand, unless the testimony is going to be stricken and |
| 3 09:03:58 | something said to the jury about why that testimony is going |
| 4 09:04:01 | to be stricken, we need to ask Mr. Knuth about this |
| 5 09:04:05 | situation.  That is our only opportunity to do it.  And he's |
| 6 09:04:08 | currently on the stand. |
| 7 09:04:09 | THE COURT:  Okay.  So I think the Court will rule |
| 8 09:04:13 | that the testimony relating to what Mr. Knuth said to |
| 9 09:04:17 | Mr. Park should be stricken.  And I think Netlist counsel has |
| 10 09:04:22 | indicated in agreement with that way to move forward. |
| 11 09:04:26 | So I'll tell that to the jury before we start with |
| 12 09:04:31 | Mr. Knuth's testimony.  The Court will say -- let me just |
| 13 09:04:36 | throw this out here -- that there was some testimony |
| 14 09:04:38 | yesterday from Mr. Park with respect to what Mr. Knuth may |
| 15 09:04:41 | have told him regarding identifying customers.  The jury is |
| 16 09:04:46 | to disregard that testimony. |
| 17 09:04:52 | MR. FEINSTEIN:  That's fine, Your Honor. |
| 18 09:04:55 | MR. SHEASBY:  No objection, Your Honor. |
| 19 09:04:56 | MR. FEINSTEIN:  No objection, Your Honor.  And there |
| 20 09:04:58 | will be no questioning of Mr. Knuth about it either. |
| 21 09:05:00 | THE COURT:  Right.  Exactly.  Okay.  Great. |
| 22 09:05:01 | Let's get the jury in. |
| 23 09:05:03 | Thank you. |
| 24 09:06:51 | (Thereupon, the jury returned to the courtroom.) |
| 25 09:07:27 | THE COURT:  Welcome back to the jurors.  Please have |

16:00:50  1   instructions, so you should be able to work on your closings

16:00:52  2   without any questions.

16:00:54  3           And then we'll get together at 8:30 tomorrow and

16:00:57  4   we'll finalize these four instructions.

16:01:00  5           MR. SHEASBY:  Your Honor, just for planning

16:01:01  6   purposes, there is the ex parte that was filed this morning

16:01:04  7   about whether they were going to ask for some type of

16:01:08  8   sanction against us.

16:01:09  9           THE COURT:  Oh, I'm sorry, yeah.  Thank you for

16:01:11  10  that.

16:01:11  11          I think we instructed the jury with respect to just

16:01:15  12  disregard the testimony.  And the question is, think about

16:01:22  13  whether we need to give them that same instruction again or

16:01:25  14  whether it's done and over with and they don't have to worry

16:01:28  15  about it.

16:01:28  16          With respect to whether we need to sanction Netlist

16:01:31  17  further, I will -- I think the appropriate course is the one

16:01:37  18  that Mr. Sheasby indicated earlier, is that if Samsung wants

16:01:41  19  to bring a motion for an evidentiary hearing on this

16:01:44  20  discovery issue, we can do that at some point after the

16:01:47  21  trial, and deal with that.

16:01:50  22          Then depending on that, we could issue a sanction

16:01:53  23  that would require some, you know, vacating of the --

16:01:57  24  whatever happened at trial.

16:01:59  25          But for now, we'll leave that to post-evidentiary

1 16:02:03    hearing.

2 16:02:04            That was your suggestion, right?

3 16:02:05            MR. SHEASBY:  It was, Your Honor.

4 16:02:06            THE COURT:  I think that makes good sense.

5 16:02:07            MR. SHEASBY:  And the other issue is that the --

6 16:02:11    there was -- and I don't think it was accidental, there was

7 16:02:14    repeated injection of post --

8 16:02:16            THE COURT:  Yes.  Post -- so will you remind me, we

9 16:02:21    should instruct the jury that any conduct after such and such

10 16:02:25    a date is not to be considered in their deliberations.

11 16:02:30            MR. SHEASBY:  And under New York law, the problem

12 16:02:33    is, what that date is, is in dispute.  What we assuredly know

13 16:02:38    is -- we'll try to work on a date.

14 16:02:40            THE COURT:  We've said the close of discovery,

15 16:02:45    amongst us.

16 16:02:47            MR. SHEASBY:  The problem is, Your Honor, there are

17 16:02:48    two close of discovery dates.  The magistrate judge limited

18 16:02:53    Samsung's production on sales information to a date earlier

19 16:02:57    than the formal close of fact discovery date.  And that is

20 16:03:00    why I was trying to articulate, I don't know which one they

21 16:03:03    are talking about.

22 16:03:03            THE COURT:  Okay.  Well, you guys work on that.

23 16:03:05    I've got in my notes August 16, 2021.

24 16:03:12            MR. FEINSTEIN:  Sounds right, Your Honor.  We'll

25 16:03:13    confirm that.

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER