# Exhibit 1

JASON SHEASBY, SBN 205455
jsheasby@irell.com
MICHAEL HARBOUR, SBN 298185
mharbour@irell.com
IRELL & MANELLA LLP
1800 Ave. of the Stars
Los Angeles, CA 90067
Telephone: 310.203.7096
Facsimile: 310.203.7199

A. MATTHEW ASHLEY, SBN 198235
mashley@irell.com
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: 949.760.0991
Facsimile: 949.760.5200

Attorneys for Plaintiff Netlist Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, <br><br> Defendant. | Case No. 8:20-cv-00993-MCS (ADS) <br><br> **NETLIST INC.'S MOTION TO STAY PROCEEDINGS** <br><br> Date:    January 8, 2024 <br> Time:    9 a.m. PT <br> Location:  Courtroom 7C <br> Judge:   Hon. Mark C. Scarsi |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................2

I.   INTRODUCTION ........................................................................................2

II.  FACTUAL BACKGROUND .......................................................................5

    A.   Proceedings Prior To Appeal .............................................................5

    B.   Samsung's Delaware Action ...............................................................6

    C.   The First Eastern District Of Texas Action (*Samsung-1*).................7

    D.   The Infringement Action .....................................................................7

    E.   Samsung's Ninth Circuit Appeal ........................................................8

III. ARGUMENT...............................................................................................11

    A.   Orderly Course Of Justice.................................................................11

    B.   Prejudice To Netlist..........................................................................14

    C.   No Prejudice To Samsung..................................................................14

    D.   Samsung's Arguments Against A Stay All Fail .................................15

CERTIFICATE OF COMPLIANCE.........................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re A.F. Moore*,
    974 F.3d 836 (7th Cir. 2020) ..................................................................... 16

*All Cities Realty, Inc. v. Hollymax Realty*,
    2008 WL 11343119 (C.D. Cal. May 27, 2008) ........................................ 15

*Alltrade, Inc. v. Uniweld Prod.*,
    946 F.2d 622 (9th Cir. 1991) ..................................................................... 17

*Alter v. Walt Disney Co.*,
    2016 WL 9455627 (C.D. Cal. Oct. 31, 2016) ........................................... 15

*Argonaut Ins. v. St. Francis Med.*,
    17 F.4th 1276 (9th Cir. 2021) .................................................................... 13

*Cent. States v. Paramount Liquor Co.*,
    203 F.3d 442 (7th Cir. 2000) ..................................................................... 12

*Chronicle Publ. Co. v. National Broadcasting Co.*,
    294 F.2d 744 (9th Cir. 1961) ..................................................................... 11

*Creech v. Tewalt*,
    84 F.4th 777 (9th Cir. 2023) ...................................................................... 16

*Fed. Ins. Co. v. Skopbank*,
    No. 92-CV-2871, 1994 WL 115999 (S.D.N.Y. Mar. 29, 1994) ............... 12

*Ins. Co. v. City of Long Beach*,
    2005 WL 8155005 (C.D. Cal. Nov. 17, 2005) ......................................... 13

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    342 U.S. 180 (1952) ............................................................................ 11, 12

*Klein v. Cook*,
    2015 WL 2454056 (N.D. Cal. May 22, 2015) .......................................... 15

*Kohn L. Grp. v. Auto Parts Mfg.*,
    787 F.3d 1237 (9th Cir. 2015) .............................................................. 16, 17

*Landis v. North American Co.*,
   299 U.S. 248 (1936) .................................................................................. 11

*Larsen v. City of Los Angeles*,
   2012 WL 12887557 (C.D. Cal. Aug. 3, 2012) .......................................... 14

*Leyva v. Certified Grocers*,
   593 F.2d 857 (9th Cir. 1979) ................................................................... 11

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ................................................................. 12

*Montana Env't Info. v. Bernhardt*,
   2020 WL 4346604 (D. Mont. July 29, 2020) .......................................... 17

*Moqaddem v. Pinto*,
   2023 WL 3431896 (C.D. Cal. Mar. 3, 2023) .......................................... 14

*Nat. Res. Def. Council v. Kempthorne*,
   2015 WL 3750305 (E.D. Cal. June 15, 2015) ......................................... 16

*Netlist Inc. v. Samsung Elecs. Co.*,
   No. 22-55209, 2023 WL 6820683 (9th Cir. Oct. 17, 2023) .............. *passim*

*Pacesetter Sys. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) ..................................................................... 17

*Peck v. Cnty. of Orange*,
   528 F. Supp. 3d 1100 (C.D. Cal. 2021) ................................................... 11

*Pieterson v. Wells Fargo Bank*,
   2019 WL 1466963 (N.D. Cal. Feb. 14, 2019) .................................. 14, 15

*Quadrant Structured Prod. v. Veritin*,
   23 N.Y. 3d 549 (2014) ............................................................................. 19

*Resolution Trust Corp. v. Keating*,
   186 F.3d 1110 (9th Cir. 1999) ................................................................. 12

*Rivers v. Walt Disney Co.*,
   980 F. Supp. 1358 (C.D. Cal. 1997) ....................................................... 11

*Samsung Elecs. Co., Ltd. v. Netlist, Inc.*,
   No. 1:23-cv-1122-UNA (October 9, 2023) ............................................... 6

*Samsung Elecs. Co. v. Netlist, Inc.*,
   No. 1:21-cv-01453, Dkt. 1 (D. Del. Oct. 15, 2021) ...................................... 6

*Travelers Indem. v. Madonna*,
   914 F.2d 1364 (9th Cir. 1990) ...................................................................... 14

*Travelers Indem. v. Monsanto Co.*,
   692 F. Supp. 90 (D. Conn. 1988) .................................................................. 12

*Wiley v. Trendwest Resorts*,
   2005 WL 1910934 (N.D. Cal. Aug. 10, 2005) .............................................. 16

*Willits v. City of L.A.*,
   2010 WL 11594804 (C.D. Cal. Dec. 10, 2010) ............................................ 17

*Zurich Am. v. DS Waters*,
   2013 WL 12128686 (C.D. Cal. Mar. 18, 2013) ............................................ 17

**Other Authorities**

L.R. 7-3 ................................................................................................................ 1

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE that on January 8, 2024, at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 7C of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, Plaintiff Netlist Inc. will and hereby does move the Court to stay these proceedings.

This Motion is based on this Notice; the concurrently filed Memorandum of Points and Authorities, the Declaration of Michael Harbour and accompanying exhibits; the concurrently lodged Proposed Order; such matters of which this Court may take judicial notice; the other records, pleadings, and papers filed in this action; and any other documentary evidence or arguments that may be presented to this Court at hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 22, 2023.

Dated:  November 30, 2023

Respectfully submitted,

IRELL & MANELLA LLP
A. Matthew Ashley
Jason Sheasby
Michael Harbour


By: */s/ A. Matthew Ashley*
    A. Matthew Ashley
    Attorneys for Netlist, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case at one time involved multiple assertions of breach of the Joint Development and License Agreement ("JDLA") and a request for direct and consequential damages. As explained below, it is now down to what is, in effect, a declaratory judgment as to the interpretation of one clause in the JDLA and the materiality of Samsung's breach of it, the sole function of which will be to decide just one half of Samsung's "license" defense in a pending patent infringement case (the "Infringement Action"). That case is in the Eastern District of Texas ("Eastern District") before Chief Judge Rodney Gilstrap and is set for trial on April 15, 2024. For judicial efficiency's sake, and to prevent Samsung from continuing to take inconsistent positions (as explained below), this Court should stay this case until May 15, 2024, by which time this case likely will be mooted.

The Infringement Action was prompted by Samsung rushing for a declaration of patent noninfringement in the District of Delaware (the "DJ Action") the day after this Court issued its summary judgment ruling in Netlist's favor in 2021. Samsung memory modules are manufactured outside of the United States. Samsung's lead U.S. affiliate, Samsung Electronics America, did not join in the DJ Action and cannot be sued in Delaware. Because of the states of incorporation and facility locations for Samsung's infringing U.S. subsidiaries, Netlist in response filed two patent infringement suits against Samsung and its U.S. affiliates in the Eastern District. As between Delaware, the Central District, and the Eastern District, all of the relevant Samsung affiliates can only be sued in the Eastern District. Since this Court issued final judgment in this matter, those infringement suits have proceeded apace. The first suit ("*Samsung-1*") resulted in a finding of infringement and no invalidity. The second suit, the Infringement Action, is a month away from completion of expert discovery (and fact discovery is complete), with an April 15, 2024 trial date. Because Samsung asserted a license defense under the parties' JDLA, the Infringement Action will necessarily decide the issue at stake in this

case. This Court should exercise its discretion to stay this case until the Infringement Action is tried, for the following reasons.

**First**, the Infringement Action is the only case that can address the parties' entire dispute, which includes whether: (1) Samsung and its U.S. subsidiaries infringe Netlist patents; (2) Samsung's accused products are protected by the JDLA's license; and (3) Netlist's termination of the JDLA was proper, following Samsung's breach of its mandatory supply obligation. Of these three issues, the only one that is currently before this Court is number (3). This alone is grounds for a stay of this action.

**Second**, proceeding in parallel with the Infringement Action will allow Samsung to continue to proffer inconsistent interpretations of the JDLA to different courts. The parties' dispute here centers on one JDLA clause: Samsung's supply obligation (§ 6.2):

**Section 6.   SUPPLY OF COMPONENTS**

6.1   Supply by Netlist. Netlist will provide Samsung any NVDIMM-P controller on Samsung's request at a price lower than the price Netlist provides to any other buyer.

6.2   Supply by Samsung. Samsung will supply NAND and DRAM products to Netlist on Netlist's request at a competitive price (*i.e.*, among customers purchasing similar volumes of similar products).

Ex. 1 (JDLA) § 6.2. Samsung's position here, which this Court rejected at summary judgment, is that its supply obligation is implicitly limited to the parties' joint development project, even though it does not mention the project or the anticipated joint development product (NVDIMM-P).

In Texas, Samsung's position is that the supply clause is *not* limited solely to the joint development project or product, but instead: "the parties had understood that there would be **some** parts that were provided primarily for this joint development project, **but there may have been some others**." Ex. 2 (*Samsung-1*, Dkt. 426) at 51:14-25 (emphasis added). This is understandable, as Samsung's license defense depends on the license being broader than the joint development project/product, because none of Netlist's infringement claims involve the joint development project or the NVDIMM-P product that was never fully developed and commercialized.

The second clause at issue in the Infringement Action (but not here) is Netlist's license grant to Samsung, which – like the supply clause – makes no mention of the joint development project or NVDIMM-P:

> 8.2     License to Samsung. Netlist, on its own behalf and on behalf of its Subsidiaries, hereby grants, and shall grant, to Samsung and its Subsidiaries a perpetual (subject to Section 13.3), paid-up, worldwide, non-exclusive, non-transferable, non-sublicensable license under Netlist's Licensed Patents to make and have made (subject to Section 8.4) Samsung's Licensed Products, and to use, sell, offer for sale, import and otherwise transfer or dispose of such products.

Ex. 1 (JDLA) § 8.2. In Texas, Samsung's position is that the license is *not* limited to the joint development project:

- "The plain language of the JDLA unambiguously licenses all semiconductor products except Foundry Products and is not limited to the Joint Development." Ex. 3 (*Samsung-1,* Dkt. 328) at 2.

- "[T]he reality is that JDLA was in no way limited to jointly developed products." Ex. 2 (*Samsung-1,* Dkt. 426) at 28:9-29:14.

But to secure a partial reversal from the Ninth Circuit, Samsung argued the opposite. Citing recital four of the JDLA as a justification for implying a joint development limitation into clauses that do not have an express limitation, Samsung argued that: "**The licenses are being given in connection with the collaboration. That's the joint development project**." Ex. 4 (9th Cir. Hearing Tr.) at 15:10-21 (emphasis added). This argument convinced two of the three panel members to reverse summary judgment on this issue. *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683, at *1 (9th Cir. Oct. 17, 2023) ("Read as an integrated whole, however, the contract's apparent purpose as derived from its title, structure, and related provisions make § 6.2 'reasonably susceptible of more than one interpretation.'"); *id.* at *4 (Desai, J., dissenting) ("Finding no support in the terms of the agreement, the majority's decision settles on the recitals as the basis for its finding that § 6.2 is ambiguous.").

Samsung's tactic is clear. When Samsung's supply clause is at issue, Samsung will argue for an implicit, unwritten joint development/project limitation; but when

Samsung's license is at issue, Samsung will eschew an unwritten joint development/project limitation. Consequently, unless Samsung is required to litigate *both* parts of its JDLA license defense together before the same jury—the scope of its supply obligation *and* its license—Samsung will continue its practice of taking inconsistent positions and create the risk of inconsistent judgments. This is precisely the type of circumstance that warrants a stay.

## II.    FACTUAL BACKGROUND

### A.    Proceedings Prior To Appeal

In May of 2020, Netlist brought suit against Samsung alleging that Samsung had breached the JDLA by failing to supply NAND and DRAM products to Netlist on request, and that Netlist had properly terminated the JDLA as a result, seeking money damages and a declaration. Dkt. 1.[1]

Samsung's interpretation of the JDLA's supply clause has been a moving target. Initially, Samsung claimed that "[t]he JDLA contains no supply obligation of any kind[.]" Dkt. 60 at 8. When that failed, Samsung changed course, arguing that "Samsung's supply obligations would only arise if and to the extent the NVDIMM-P product was commercialized **but this never occurred**." Dkt. 157-2, #21 (emphasis added). At the summary judgment hearing, the Court asked Samsung about other JDLA provisions that do not mention the joint development project or product, and Samsung's counsel conceded that these provisions were not limited to this project:

> Sections 7 [release] and 8 [license] do not deal with the JDLA and the joint development. It does not deal with NVDIMM . . . **So I very clearly will say to the jury in this case, if I get there, your Honor, Section 7 and Section 8 don't apply to joint development.**

Ex. 5 (Dkt. 213) at 23:11-23 (emphasis added).

In rejecting Samsung's (second) interpretation, the Court noted that: "The

---

[1] Netlist also alleged that Samsung breached the JDLA by improperly withholding taxes but the Ninth Circuit has ordered this Court to enter judgment in favor of Samsung on this issue. Thus, the only remaining dispute concerns the supply clause.

coexistence of project-specific provisions and project-nonspecific provisions signals that the parties intended not to restrict the NAND and DRAM supply obligation to the NVDIMM-P project by omitting any mention of it in § 6.2." Dkt. 186 at 9. Moreover, because Samsung admitted that it had failed to supply product that Netlist had requested, breach was undisputed, as was materiality, given that Samsung's sole materiality argument was that its shifting interpretation of the supply provision was correct. *Id.*

This Court then held a trial solely on the issue of damages. Because the Court concluded that a consequential damages waiver in the JDLA prevented Netlist from recovering for the substantial harm Samsung's failure to supply NAND and DRAM had caused Netlist business, the Court held a trial on cost of cover damages (i.e. direct damages) only, which the jury did not award. Dkt. 276. The Court then awarded Netlist nominal damages and entered judgment in Netlist's favor. Dkt. 306.[2] Netlist did not appeal this Court's order regarding consequential damages or the jury verdict on no direct damages. Thus, money damages are no longer a part of this case.

### B. Samsung's Delaware Action

The day after this Court granted summary judgment in October 2021, Samsung filed the DJ Action. Ex. 6 (*Samsung Elecs. Co. v. Netlist, Inc.*, No. 1:21-cv-01453, Dkt. 1 (D. Del. Oct. 15, 2021)). Despite the summary judgment ruling against it, Samsung's complaint signaled the start of its JDLA re-litigation campaign by asserting that "Netlist has, without justification, unilaterally **attempted** to terminate a November 2015 Joint Development and License Agreement ('Agreement') in which Netlist granted Samsung a perpetual, paid-up, worldwide license to, among others, the Patents-in-Suit." *Id.* ¶ 2. After Netlist counter-claimed for infringement, Samsung asserted a license defense. Ex. 7 (*id.*, Dkt. 62) at 26-27. Last month, Samsung filed a new declaratory judgment action in Delaware on another Netlist patent, again asserting that it was licensed. *Samsung Elecs. Co., Ltd. v. Netlist, Inc.*, No. 1:23-cv-1122-UNA (October 9, 2023).

---

[2] Samsung challenged the Court's award of nominal damages and finding of waiver as to Samsung's affirmative defenses, and the Ninth Circuit upheld those rulings.

NETLIST INC.'S MOTION TO STAY PROCEEDINGS
Case No. 8:20-cv-00993-MCS (ADS)

### C.    The First Eastern District Of Texas Action (*Samsung-1*)

After Samsung filed the DJ Action, Netlist filed *Samsung-1* in the Eastern District—the only court where Samsung and all of its infringing sub-entities could be sued. Samsung  asserted a license defense, taking the position that: "The plain language of the JDLA unambiguously licenses all semiconductor products except Foundry Products and is not limited to the Joint Development Project." Ex. 3 (*Samsung-1*, Dkt. 328) at 2. Samsung also claimed that the consideration for this "broad" license was an $ 8 million payment under the JDLA. Ex. 8 (*Samsung-1*, Dkt. 566) at 57 ("Netlist perpetually licensed 87 patents to Samsung, including the asserted patents, in an agreement where Samsung paid $ 8 million.").

On April 5, 2023, the Eastern District (Chief Judge Gilstrap) held—consistent with this Court's summary judgment—that "Samsung had a license until July 15, 2020," i.e. the date on which Netlist terminated the JDLA. Ex. 9 (*Samsung-1,* Dkt. 432) at 2. *Samsung-1* was tried to a jury, which on April 21, 2023 rendered a verdict that Samsung infringed Netlist's patents-in-suit, that Netlist's patents are not invalid, and that Samsung's infringement was willful. *Samsung-1,* Dkt. 479. Samsung has since moved to vacate that verdict, Dkt. 576, and Netlist has opposed, Dkt. 582.

### D.    The Infringement Action

On August 1, 2022, Netlist brought a second infringement action against Samsung and its subentities for their infringement of other Netlist patents. Infringement Action, Dkt. 1. Samsung again asserted an "express license" defense, Dkt. 145 at 24-27, alleging that the JDLA was improperly terminated:

> SEC maintains that it did not breach the Agreement, that the Agreement has not been terminated, and that it continues to hold a paid-up, worldwide, non-exclusive license to Netlist's patents, including the Patents-In-Suit.

Ex. 10 (*Samsung-2*, Dkt. 145) at 27. Samsung also contends the JDLA license covers the accused products at issue in the Infringement Action – none of which relate to the NVDIMM-P joint development project:

> Netlist granted SEC and its subsidiaries, including SSI, a perpetual, paid-up,

worldwide, non-exclusive license to all patents owned or controlled by Netlist or any of its subsidiaries having an effective first filing date on or prior to November 12, 2020. All of the Patents-In-Suit have effective first filing dates prior to November 12, 2020.

*Id*. at 25. In doing so, Samsung reasserted that the consideration for Netlist's broad license was the JDLA's $ 8 million cash payment. *Id*.

Fact discovery in the Infringement Action is complete, expert discovery closes on January 9, 2024, and trial is scheduled for April 15, 2024. *Samsung-2*, Dkt. 205. Samsung has moved to stay the case, and Netlist has opposed. *Id.*, Dkts. 187, 196.

### E.     Samsung's Ninth Circuit Appeal

To secure a partial remand from the Ninth Circuit, Samsung changed course on multiple positions it had taken, both before this Court and the Eastern District.

***First***, Samsung proffered yet a third interpretation of the JDLA's supply clause. As explained above, Samsung first argued that it had no supply obligation at all because § 6.2 was just a pricing term, and then later that § 6.2 was solely to supply for the NVDIMM-P product, which was a supply obligation that never arose. On appeal, however, Samsung admitted that its supply obligation had arisen, but only during the joint development project stage of the parties' collaboration. Ex. 11 (Samsung's First Appellate Brief) at 29 ("Sections 6.1 and 6.2 are, in other words, complementary to each other—they each set forth the components that the other party agreed to supply for the NVDIMM-P joint-development project.").

***Second***, Samsung argued on appeal the $ 8 million paid to Netlist was not a license fee, but instead was payment for the joint development project:

> There's other provisions in the contract that clearly relate to the joint development project, that don't also say in connection with the joint development project. That's why you have to look at the structure of the agreement in order to interpret specific language. For example, in Section 3.1, there's an $ 8 million NRE [non-recurring engineering] fee that's paid. It's clearly for the joint development project, but it doesn't say it's specifically for the joint development project.

Ex. 4 (9th Cir. Hearing Tr.) at 8:16-24. This flatly contradicts not only Samsung's

position in the Eastern District, but also its prior representation to this Court (and the Korean Tax Authority) that Samsung "considered the $ 8 million as consideration for Netlist's grant of patent licenses." Dkt.168-2, #62.

**Third**, as discussed above, Samsung argued that the JDLA's fourth recital, which expressly mentions the license grant, showed that provisions of the JDLA should be read as tied to the parties' joint development project even if they do not mention it:

> [T]he recitals are very clear -- and parties put recitals in agreements to make sure language isn't tortured down the road by lawyers and courts, right? Here's what our purpose is, interpret this agreement consistent with our purpose. And when you look at the recitals, what does it say about the licenses? Whereas in connection with their collaboration hereunder, the parties wish to grant to each other a cross-license under each party's patents. The licenses are being given in connection with the collaboration. That's the joint development project.

Ex. 4 at 15:10-21.

**Fourth**, Samsung told the Ninth Circuit that "No ordinary businessperson in Samsung's position would agree to supply an unquantified amount of DRAM and NAND to a single customer on 'request at a competitive price.'" Ex. 11 (Samsung's First Appellate Brief) at 34-35. Samsung's corporate representative testified under oath to the opposite in the Eastern District. Samsung is so concerned about this contradiction that it threatened sanctions if Netlist shows the court the contradictory testimony, even though Samsung has repeatedly used discovery from the Central District in the Eastern District.

This tactic partially succeeded. In an unpublished 2-1 decision, the majority upheld multiple rulings of this Court, but reversed the grant of summary judgment on the supply clause, § 6.2. The Ninth Circuit conceded that "[s]tanding alone, the plain language of § 6.2 favors Netlist's interpretation: that Samsung must fulfill all NAND and DRAM orders by Netlist for whatever purpose." *Netlist*, 2023 WL 6820683, at *1. But a majority nevertheless found § 6.2 ambiguous based on Samsung's arguments regarding recital four. *Id.* ("Read as an integrated whole, however, the contract's apparent purpose as derived from its title, structure, and related provisions make § 6.2

'reasonably susceptible of more than one interpretation.'").

In its portion of the Joint Case Management Report (Dkt. 343), Samsung tried to reconcile its plainly inconsistent positions regarding the license scope in the Ninth Circuit vs. the Eastern District of Texas, claiming that its argument regarding JDLA recital four "had nothing to do with the scope of the patent license granted in the JDLA," but was instead to refute that "the supply obligation was a primary consideration for getting the licenses." Dkt. 343 at 19:14-17. This is nonsensical. The issue at hand before the Ninth Circuit was contract interpretation, not sufficiency of consideration. Notably, Samsung never explains why it also argued to the Ninth Circuit (contrary to its admissions in this Court and in the Eastern District) that the $ 8 million fee was similarly tethered to the joint development project. The reason is obvious: Samsung argued that both the license grant and the $ 8 million fee were limited to the joint development project, even though they did not mention it, so the supply obligation, too, was arguably limited to the joint development project.

Moreover, regardless of Samsung's current spin, it is clear that the Ninth Circuit understood Samsung to be arguing that the license grant was implicitly limited to the joint development project based on the fourth recital. After Samsung's counsel emphasized that "[t]he licenses are being given in connection with the collaboration," the *very first question* posed to Netlist's counsel by the Presiding Judge who joined the majority opinion was: "But it is, if you will interpreted by the rest of the contract including, for example, the recital that [Samsung's counsel] just gave, and when you look at that in its totality, now it's pretty ambiguous to me. Why am I wrong?" Ex. 4 (9th Cir. Hearing Tr.) at 18:23-19:2. The majority then concluded that the supply clause was ambiguous based on the "contract's apparent purpose as derived from its title, structure, and related provisions," *Netlist*, 2023 WL 6820683, at *1, and the dissenting Judge confirmed that the majority's reasoning was predicated on the very recitals that Samsung's counsel had emphasized at oral argument: "Finding no support in the terms

1   of the agreement, the majority's decision settles on the recitals as the basis for its finding

2   that § 6.2 is ambiguous." *Id.* at *4 (Desai, J., dissenting).

3   **III.   ARGUMENT**

4            This Court has the inherent power to "find it is efficient for its own docket and

5   the fairest course for the parties to enter a stay of an action before it, pending resolution

6   of independent proceedings which bear upon the case." *Leyva v. Certified Grocers*, 593

7   F.2d 857, 864 (9th Cir. 1979) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342

8   U.S. 180 (1952); *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936); *Chronicle*

9   *Publ. Co. v. National Broadcasting Co.*, 294 F.2d 744 (9th Cir. 1961)); *see also Rivers*

10  *v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (courts have the inherent

11  power to stay proceedings "when it serves the interests of judicial economy and

12  efficiency."). Ninth Circuit courts consider the following *Landis* factors when deciding

13  whether to grant a stay in light of a parallel proceeding: (1) "the possible damage which

14  may result from the granting of a stay," (2) "the hardship or inequity which a party may

15  suffer [if the case is allowed] to go forward," and (3) "the orderly course of justice

16  measured in terms of the simplifying or complicating of issues, proof, and questions of

17  law which could be expected to result from a stay." *Peck v. Cnty. of Orange*, 528 F.

18  Supp. 3d 1100, 1106 (C.D. Cal. 2021). Every factor weighs in favor of granting Netlist's

19  request for a limited stay of this case.

20       **A.    Orderly Course Of Justice**

21           A stay pending a jury trial deciding the parties' entire dispute in the Infringement

22  Action would eliminate the need for any further litigation of the parties' dispute here.

23  This is because the scope of the Infringement Action is broader than this action. As

24  explained above, the only issue before this Court is whether the JDLA was properly

25  terminated in light of Samsung's undisputed failure to supply Netlist with requested

26  products. This is only one-half of Samsung's asserted license defense in the

27  Infringement Action. But the Infringement Action will also address whether Samsung's

28  sale of infringing products is protected by the JDLA's license grant at all (regardless of

termination). And all of these pieces are inter-related, such that positions on one aspect of the case (e.g., the scope of the supply clause and thus whether there was breach) can affect the jury's view of a party's position on other aspects of the case (e.g., the scope of the license grant).

Courts favor the "comprehensive disposition of litigation." *See Kerotest*, 342 U.S. at 183. Thus, courts commonly grant a stay where it "permits the more comprehensive of the actions to go forward" because this promotes efficiency. *See Cent. States v. Paramount Liquor Co*., 203 F.3d 442, 444 (7th Cir. 2000); *Fed. Ins. Co. v. Skopbank*, No. 92-CV-2871, 1994 WL 115999, at *3 (S.D.N.Y. Mar. 29, 1994) ("To avoid a piecemeal approach, preference should be given to the more comprehensive of the two litigations."); *Travelers Indem. v. Monsanto Co*., 692 F. Supp. 90, 93 (D. Conn. 1988) ("[T]he overwhelming majority of courts considering motions to stay declaratory actions regarding relatively narrow insurance coverage issues, have granted them in favor of more comprehensive lawsuits better able to resolve the narrower issues in their broader context.").

Indeed, the Infringement Action will likely moot this case. For example, if the Eastern District jury interprets § 6.2 as Netlist does and finds that Samsung's breach of it (which is not in dispute) is material and therefore termination was proper, that finding will be binding on Samsung here. *See Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999) ("Collateral estoppel, or issue preclusion, prevents parties from relitigating an issue of fact or law if the same issue was determined in prior litigation."). Samsung cannot dispute this. In its own motion to stay the Infringement Action, Samsung admitted that its license defense in that case and Netlist's breach and termination claims here "address the same issues." Ex. 12 (*Samsung-2*, Dkt. 194) at 7; *id.* at 14 ("[T]he Court should stay this case pending resolution of the remanded the [sic] C.D. Cal. Case, which will decide whether Samsung is still licensed to Netlist's patents."); *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1111 (9th Cir. 2005) (a factor weighing in favor of granting a stay was that the resolution of one aspect of a case

dealt with in arbitration had the potential to significantly advance the resolution of the matter before the district court).

Alternatively, if the Eastern District jury finds that the accused products are not even covered by the JDLA's license grant because, as Samsung successfully argued to the Ninth Circuit, the license grant is limited only to the joint development project and product, then that will moot this case. The joint development project has ended, and the joint development product (NVDIMM-P) was never commercialized, so Samsung will never be able to use the license to defend against infringement. Consequently, there would be no need for this Court to decide whether Netlist's termination of the JDLA was proper. Whether it was or not, Samsung would have no license defense in the Infringement Action or otherwise.

While resolution of the Infringement Action will provide more certainty for this action, the converse is not true. Hypothetically, a finding here that Samsung's failure to supply requested products was somehow not a material breach would still not resolve the critical question of the JDLA's license *scope,* especially if in order to secure that win, Samsung proffers arguments like it did to the Ninth Circuit. So even if Samsung could prevail here, a trial in the Infringement Action would still be necessary to resolve Samsung's licensing defense. In sum, while the Infringement Action can and likely will comprehensively resolve the parties' entire dispute, this case will not.

A stay is particularly warranted here because this case has now evolved into, in substance if not form, a pure declaratory relief action on the issue of contract interpretation and the corresponding propriety of Netlist's termination. Courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Argonaut Ins. v. St. Francis Med.*, 17 F.4th 1276, 1280 (9th Cir. 2021). This includes the discretion to "stay . . . an action seeking a declaratory judgment" pending resolution of non-declaratory relief action involving the same issues. *See id.; see also Ins. Co. v. City of Long Beach*, 2005 WL 8155005, at *1 (C.D. Cal. Nov. 17, 2005) ("It is proper to decline to issue a declaratory judgment if . . . [it] would require litigation of issues

1 that may be rendered moot by pending proceedings.").

2    **B.    Prejudice To Netlist**

3        If this case is not stayed, Samsung will continue its tactic of advancing
4 contradictory interpretations of the JDLA in different forums, depending on the outcome
5 it seeks in each. *See, e.g., Travelers Indem. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir.
6 1990) (internal citation omitted) (stay is proper "when the party opposing the stay seeks
7 to . . . gain a tactical advantage from the application of federal court rules."). There
8 should not be one jury deciding one half of Samsung's license defense and another jury
9 deciding the other half, where Samsung can speak out of different sides of its mouth to
10 each.

11        In addition to being unfair, Samsung's tactic exacerbates the risk of inconsistent
12 rulings, which is yet another independent basis to grant a stay. *See, e.g.*, *Moqaddem v.*
13 *Pinto*, 2023 WL 3431896, at *3 (C.D. Cal. Mar. 3, 2023) (staying litigation "to avoid
14 the risk of future inconsistent rulings."); *Pieterson v. Wells Fargo Bank*, 2019 WL
15 1466963, at *2 (N.D. Cal. Feb. 14, 2019) ("Duplicative or inconsistent rulings are a
16 concern if this litigation continues unabated" while parallel case proceeds).

17        Finally, Netlist would suffer prejudice in that it would be forced to litigate its
18 parallel claims in two different forums simultaneously, causing Netlist to incur
19 unnecessary expenses. *Larsen v. City of Los Angeles*, 2012 WL 12887557, at *10 (C.D.
20 Cal. Aug. 3, 2012) ("[T]he moving party's burden in litigating the case" can be "a
21 legitimate form of hardship.").

22    **C.    No Prejudice To Samsung**

23        In contrast, Samsung will suffer no prejudice if this case is stayed. Netlist brought
24 the present action, not Samsung, so this is not a forum of Samsung's choice. Moreover,
25 Samsung cannot claim that it has any particular interest in having this Court adjudicate
26 whether the JDLA is still in effect. It was Samsung who rushed to another forum
27 (Delaware) the day after this Court's summary judgment order issued to seek a
28 conflicting determination that it did not infringe Netlist's patents because its JDLA

license applied and was still in effect. Indeed, as noted above, less than two months ago—but still before the Ninth Circuit's decision issued—Samsung filed another declaratory relief action against Netlist in Delaware again asserting its license defense. Samsung therefore cannot legitimately dispute that its license defense is properly adjudicated in the context of an infringement action.

Moreover, it is well established that there is no "fair possibility' of prejudice" where a party "will have a full and fair opportunity to litigate the patent and contract issues in" a parallel federal district court case. *Alter v. Walt Disney Co.*, 2016 WL 9455627, at *2 (C.D. Cal. Oct. 31, 2016); *Pieterson*, 2019 WL 1466963, at *2–*3 (no prejudice where party will have "an opportunity to present [its] arguments" in parallel litigation); *Klein v. Cook*, 2015 WL 2454056, at *4 (N.D. Cal. May 22, 2015) (no prejudice from a stay pending litigation in state court because the state court had before it "nearly identical" "allegations"). The Infringement Action provides Samsung with that opportunity.

Finally, there is also no risk that a stay will delay resolution of the parties' dispute. Indeed, quite the opposite. The Infringement Action is scheduled to be tried on April 15, 2024. *Samsung-2*, Dkt. 205. In contrast, there is no trial set in this case, and Samsung did not even request a trial date in its portion of the Joint Status Report (Dkt. 343). *See All Cities Realty, Inc. v. Hollymax Realty*, 2008 WL 11343119, at *2 (C.D. Cal. May 27, 2008) (finding no prejudice from stay where the other action would be tried soon). This is yet another reason why Netlist's motion should be granted.

### D. Samsung's Arguments Against A Stay All Fail

In its portion of the Joint Status Report (Dkt. 343), Samsung proffered five reasons why a stay should not be granted. All of them are meritless.

**First,** Samsung argues that the Ninth Circuit's mandate precludes a stay. Dkt. 343 at 13-14. But Samsung cites no authority for this proposition, which is incorrect as a matter of law. Contrary to Samsung's assertion, Netlist is not asking the Court to "ignore" the Ninth Circuit's mandate. *Id.* Instead, Netlist is simply asking this Court to

stay this case because the issues may be mooted by another case that is swiftly headed to trial (just as this Court can stay this case while settlement negotiations could resolve it). At least one other court in this circuit has stayed a case following remand because of subsequent developments after an appeal was taken. *See Nat. Res. Def. Council v. Kempthorne*, 2015 WL 3750305, at *4, 14 (E.D. Cal. June 15, 2015) ("[T]he Court finds that imposition of a stay . . . may resolve, narrow, or clarify the issues, thereby avoiding wasteful duplication of effort.") (internal quotation marks and citation omitted).

Samsung cites *Creech v. Tewalt*, 84 F.4th 777 (9th Cir. 2023), but, as that case made clear, "while the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, it leaves to the district court any issue not expressly or implied disposed of on appeal." *Id.* at 787 (internal quotation marks and citation omitted). Here, the Ninth Circuit clearly did not foreclose a stay that could more fairly and efficiently facilitate resolution of the parties' dispute. Samsung also cites *In re A.F. Moore*, 974 F.3d 836 (7th Cir. 2020), but in that case the Seventh Circuit had expressly denied a motion to stay its mandate and then the district court granted that very stay. And the court differentiated that situation—"a stay of the mandate" itself in the face of the Court of Appeal rejecting it—from "an ordinary stay of district court proceedings" where "[t]he district court, of course, has broad discretion to decide what the[e] pace [of litigation] should be." *Id.* at 841-42 (citing *Landis*).

**Second**, Samsung argues that Netlist's stay request violates the first-to-file rule. As an initial matter, the first-to-file rule has no application here. Netlist filed this action, not Samsung. The first to file rule is "invoked to protect the *plaintiff's* choice of forum in cases where the *defendant* has subsequently filed an identical or related suit in a different forum." *Wiley v. Trendwest Resorts,* 2005 WL 1910934, at *5 (N.D. Cal. Aug. 10, 2005). It thus does not apply to cases in which a "*plaintiff* has filed [different cases] in two different jurisdictions." *Id.* Moreover, the first to file rule only applies where the two cases are "substantially similar." *Kohn L. Grp. v. Auto Parts Mfg.*, 787 F.3d 1237, 1239 (9th Cir. 2015). But here the Infringement Action is far broader than this action.

*See, e.g., Montana Env't Info. v. Bernhardt*, 2020 WL 4346604, at *3 (D. Mont. July 29, 2020) ("Courts have recognized that the first-to-file rule may not apply where the second-filed action is broader than the first action."); *Willits v. City of L.A.*, 2010 WL 11594804, at *2 (C.D. Cal. Dec. 10, 2010) (declining to stay a second filed action and noting "most importantly, the scope of this action is broader than all of the state actions").

Even if it applied here, the "'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Sys. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). Here, Court the Court should decline to apply the rule because, "in the individual circumstances of [this] case, the best way to serve the principles of comity and judicial efficiency is to defer to the [later]-filed action." *Zurich Am. v. DS Waters*, 2013 WL 12128686, at *3 (C.D. Cal. Mar. 18, 2013); *see also Kohn Law*, 787 F.3d at 1240 ("[T]he policy of the first-to-file rule . . . is to maximize judicial economy, consistency, and comity."). Staying this case in favor of the Infringement Action would facilitate the "comprehensive disposition" of the parties' dispute. *Alltrade, Inc. v. Uniweld Prod.*, 946 F.2d 622, 627 (9th Cir. 1991) (whether to apply first-filed rule is decided "giving regard to conservation of judicial resources and comprehensive disposition of litigation").

**Third**, Samsung argues that Netlist's stay request contradicts Netlist's position "in the Eastern District of Texas that this Court's decision on contract interpretation must be followed." Dkt. 343 at 16. This is specious. At the time Netlist made that argument, this Court's summary judgment was still in effect. Thus, Netlist argued that Samsung was barred from contesting this Court's determinations under the doctrine of issue preclusion. Ex. 13 (*Samsung-1,* Dkt. 391) at 9. But this Court's order has now been partially reversed, and Samsung has raised a license defense in the pending Infringement Action which is soon heading to trial. This is not a "contradiction" of position. Samsung also contends that license breadth has already been decided in the Eastern District, but that is wrong. See Samsung-(1) Dkt. 426, 59:19-25 ("What falls within that license as

prescribed by the other terms of the JDLA is a fact question."). And there is no better court to decide what it meant by an interlocutory order (and what effect an appeal decision may have had on it) than the court who issued the interlocutory order, which is the Eastern District.

**Fourth**, Samsung argues that discovery is closed in this case, Dkt. 343 at 16, but not in the Infringement Action. But fact discovery has been closed in the Infringement Action since November 20, and expert discovery will be completed in just over a month. *Samsung-2*, Dkt. 205. More importantly, the Infringement Action is soon headed for trial, whereas Samsung is not requesting that this Court even set a trial date, instead asking for a round of threshold summary judgment motions. And even if this case could somehow proceed to trial before the Infringement Action (which seems very unlikely), the Infringement Action is still the only case that can resolve the parties' entire dispute.

**Fifth**, Samsung claims that, if Netlist had wanted the scope of the license grant and the scope of the supply clause to be litigated together, then Netlist should have raised the scope of the license here. Dkt. 343 at 17. But Netlist had no occasion to raise the scope of the license at that time because it was not yet in dispute. Rather, it was Samsung who raised the scope of the license issue when, **the day after this Court issued its summary judgment ruling** (and while Samsung was still seeking reconsideration of it and collaterally attacking it in various other ways), Samsung rushed to the District of Delaware to file the DJ Action of non-infringement. It was **Samsung** whose actions created parallel infringement proceedings, which Samsung was more than happy to have when it did not like the result it had achieved here.

Finally, Samsung accuses Netlist of trying to obtain a stay because "the extrinsic evidence developed in discovery in this case forecloses its position that Section 6.2 imposes an unlimited supply obligation on Samsung." *Id.* at 12. This is lawyer puffery. As **Netlist** told the Ninth Circuit, even if the JDLA is deemed ambiguous and the extrinsic evidence were considered, Netlist would still be entitled to summary judgment. Ex. 4 (9th Cir. Hearing Tr.) at 36:12-18. That is why the Ninth Circuit remand order still

contemplates that the interpretation of Section 6.2 can be decided on summary judgment. *Netlist*, 2023 WL 6820683, at *2 ("[W]e remand to the district court to consider in the first instance whether the extrinsic evidence 'creates a genuine issue of material fact' as to the provision's meaning.)

As initial matter, Samsung cannot rely on extrinsic evidence to insert an implied joint development limitation into the supply clause that the parties chose not to include. It is well settled under New York law that, "**[e]ven where there is ambiguity**, if the parties to a contract omit terms—particularly terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission." *Quadrant Structured Prod. v. Veritin*, 23 N.Y. 3d 549, 560 (2014) (emphasis added). Regardless, the extrinsic evidence clearly supports Netlist's interpretation that the supply clause was not limited.

For example, in January 2018, which was after Samsung had stopped supplying NAND and DRAM product in breach of § 6.2, Ho-jung Kim (whom Samsung has identified in its interrogatories as a negotiator of the JDLA) specifically flagged Section 6.2 in an internal email noting that Samsung was obligated to provide NAND and DRAM to Netlist on request "[p]ursuant to the agreement":

| From: | Ho-jung Kim [hojung4623.kim@samsung.com] |
| Sent: | 1/18/2018 1:09:06 PM |
| To: | Hyeok-sang Yoo[hsang.yoo@samsung.com] |
| Subject: | Netlist JDLA Agreement |
| Attachments: | 151113_Netlist Agreement (Signed version).pdf |

Director,

Please refer to the attached JDLA agreement with Netlist.
Pursuant to the agreement, supply for NAND and DRAM products is necessary if there is a request from Netlist.

6.2   Supply by Samsung. Samsung will supply NAND and DRAM products to Netlist on Netlist's request at a competitive price (*i.e.*, among customers purchasing similar volumes of similar products).

Dkt 145-11. In the Ninth Circuit, Samsung argued that what Mr. Kim really meant was just that the supply obligation was just for the "joint development project." But in addition to the admission not saying that, Samsung forgets that in its sworn

interrogatories in this case it admitted that Samsung had halted the joint development in late 2017, months before this damning email. Ex. 14 at 9. And Samsung knew full well the materiality of its breach. Its own internal personnel wrote: "Samsung had zero allocation in Q3 to support Netlist and/or the end customers Netlist is currently supporting. … Since Samsung is nearly 100% of their support and Revenue this will have a dramatic impact on their financials and future business." Dkt. 168-22 at 2. These are just examples of the overwhelming extrinsic evidence that undercuts Samsung's position.

And Samsung's position has only gotten worse since this Court's summary judgment ruling. Most notably, Indong Kim, Samsung's Vice President of Product Planning, has confirmed under oath that Netlist's interpretation of the supply obligation is correct, and that Samsung's blatant breach of that supply provision was unethical:

> Q. Was it ethical for Samsung to cut off a hundred percent of Netlist product supply knowing that it would destroy Netlist business?
>
> A. If a yardstick based on whether something is ethical or not is forced on me and I think I've been forced to determine this. Then I would consider it to be unethical, so the answer is yes.

Ex. 15 (*Samsung-1*, Bench Trial Tr.) at 155:22-156:3; *see also Samsung-1*, Dkt. 582 at 6; *id.*, Dkt. 582-3 at 47:22-48:6. None of the above can be squared with what Samsung now contends § 6.2 means. And this is just one example of how the evidence has gone for Samsung since this Court's summary judgment ruling. This excerpt was played in open court in a bench trial, but there is other material that Samsung is trying to keep hidden from this Court by protesting (*see* Dkt. 343 at 21-22) a simple and commonplace cross-use provision for depositions and documents in the Infringement Action to be used here (even though Samsung sought and obtained a cross-use agreement for depositions and documents in this case to be used in Infringement Action).

In short, the Court should rest assured that Netlist is not trying to "avoid" this

Court at all, much less for fear of Samsung's proffered extrinsic evidence.[3] What Netlist is trying to do is have the parties' entire dispute be decided by one jury in the one case that can do that and that is set for trial on April 15, 2024.

Dated:  November 30, 2023

Respectfully submitted,

IRELL & MANELLA LLP
Jason Sheasby
A. Matthew Ashley
Michael Harbour

By: */s/ A. Matthew Ashley*
    A. Matthew Ashley
    Attorneys for Netlist, Inc.

---

[3] In contrast, Samsung's proffered extrinsic evidence is mainly the "MOU," which on its face says it is not the agreement (and which the JDLA expressly supersedes), and some deposition testimony of Netlist's CEO about the MOU that does not remotely support what Samsung is trying to argue.

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Netlist, Inc., certifies that this brief contains 6,990 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 30, 2023          By: */s/ A. Matthew Ashley*
                                A. Matthew Ashley

11280279