# Exhibit 2

MICHAEL G. YODER (SB 83059)
myoder@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, Suite 1700
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

MARC F. FEINSTEIN (SB 158901)
mfeinstein@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

AMY R. LUCAS (SB 264034)
alucas@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Attorneys for Defendant Samsung
Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS<br><br>**SAMSUNG'S OPPOSITION TO NETLIST'S MOTION TO STAY**<br><br>Date: February 5, 2024<br>Time: 9:00 a.m. PT<br>Location: Courtroom 7C<br>Judge: Hon. Mark C. Scarsi |

# Table of Contents

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................. 3

     A.     Netlist Files This Case for Breach of Contract and Termination of the JDLA ....................................................................................................... 3

     B.     Samsung Seeks a Declaration of Non-Infringement in Delaware .......... 4

     C.     On the Basis of This Court's Judgment, Netlist Files Patent Infringement Actions Against Samsung in Texas and Elsewhere .......... 5

     D.     Samsung Successfully Appeals the Court's Grant of Summary Judgment ................................................................................................. 6

     E.     Events Following the Ninth Circuit's Remand to This Court ................ 8

III.   LEGAL STANDARD ......................................................................... 10

IV.   ARGUMENT ....................................................................................... 11

     A.     The Stay Should Be Denied Because the Eastern District of Texas Court Has Made Clear It Will Defer to This Court on the JDLA Issues Pending Before It and the Ninth Circuit's Mandate Requires This Court to Decide Those Issues ............................................................................ 11

     B.     Netlist's Inequitable Forum Shopping Provides an Independent Basis to Deny a Stay ....................................................................................... 13

V.     CONCLUSION ................................................................................... 17

# Table of Authorities

**Page**

## Cases

*Adler v. Fed. Republic of Nigeria*,
219 F.3d 869 (9th Cir. 2000) ................................................................. 15

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*,
843 F.2d 1253 (9th Cir. 1988) ............................................................... 14

*Clinton v. Jones*,
520 U.S. 681 (1997) .............................................................................. 10

*In re A.F. Moore & Assocs., Inc.*,
974 F.3d 836 (7th Cir. 2020) ................................................................ 13

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
150 F.3d 1042 (9th Cir. 1998) ............................................................... 15

*Khan v. United States*,
1986 WL 9224 (S.D.N.Y. Aug. 14, 1986) ............................................. 15

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ........................................................ 10, 13

*Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (2000) .............................................................................. 15

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO MOTION TO STAY

## I.     INTRODUCTION

Netlist filed its contract case in this Court three-and-a-half years ago.  It obtained a judgment that Samsung breached Sections 3.1 and 6.2 of the Joint Development and License Agreement ("JDLA"), and that Netlist properly terminated the JDLA (including the patent licenses it had granted Samsung) because Samsung's breaches were material.  And it relied on this Court's judgment when it brought patent infringement actions in the Eastern District of Texas (*EDTX I*[1] and *EDTX II*[2]), District of Delaware (*Delaware*[3]), and Dusseldorf, Germany.

But then the Ninth Circuit[4] reversed this Court's decision.  It held that Samsung had not breached Section 3.1 of the JDLA; that the interpretation of Section 6.2 was not clear in Netlist's favor (as this Court had held) but rather ambiguous; and that whether Samsung's breach of Section 6.2 was material (assuming there was a breach) was subject to factual disputes and thus not amenable to summary judgment.  The Ninth Circuit remanded the matter to this Court to consider the extrinsic evidence concerning the proper interpretation of Section 6.2 and whether summary judgment should be granted on that issue and, only if Samsung is found to have breached Section 6.2 based upon a proper interpretation of that section, to have a trial on materiality.

What Netlist has done since losing in the Ninth Circuit has been remarkable.  Even though Netlist filed its contract action in this Court in 2020, it now asks this Court not to answer the remaining contract interpretation questions that the Ninth Circuit ordered this Court to undertake via its mandate—contract interpretation

---

[1] *See* 2:21-cv-00463 (E.D. Tex. 2021).

[2] *See* 2:22-cv-00293 (E.D. Tex. 2022).

[3] *See* 1:21-cv-01453 (D. Del. 2021).

[4] *See* 22-55209 (9th Cir. 2023) (*Ninth Circuit*).

questions that Netlist itself first raised in this case.  This Court effectively denied Netlist's request to stay the case in an order dated December 1, 2023:  It declined to hear Netlist's stay motion until it hears the parties' arguments on summary judgment regarding the proper interpretation of Section 6.2 in view of the extrinsic evidence, meaning that the Court has not stayed its evaluation of the extrinsic evidence concerning the meaning of Section 6.2.  Yet after the Court's order effectively denying Netlist's stay request (at least through ongoing summary judgment proceedings), Netlist filed an early summary judgment motion in the *EDTX II* action, asking Judge Gilstrap to rule on the exact same contract issues that are currently pending before this Court (and the same issues that the Ninth Circuit mandate requires this Court to address), apparently hoping that the Eastern District of Texas court would do so (in Netlist's favor) before this Court has had a chance to rule.

But that gambit failed.  In an order that first became public on December 20, 2023, Judge Gilstrap acknowledged that the issue of the JDLA's termination "is currently pending before the Central District of California"—*i.e.*, the first-filed action—and made clear that he "will not make comment further while that issue is squarely before another court."  Ex. 1 (*EDTX II*, Dkt. 290-1) at 4-5.  As the order explained, the Eastern District of Texas "need not affirmatively decide any issue that is before the Central District of California in order to proceed with [the Texas] case."  *Id.* at 5.  Rather, it will "defer issues of Netlist's alleged termination of the JDLA to the Central District of California."  *Id.*[5]

Thus, while there has never been any basis for staying this action in favor of the later-filed Eastern District of Texas cases—as this Court appears to have

---

[5] Judge Hall of the District of Delaware has similarly deferred to this Court on JDLA contract issues, granting Samsung's Motion to Stay the Delaware case pending resolution of the case-dispositive contract issues pending in this Court.  *See* Ex. 2 (*Delaware*, Dkt. 223).

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO MOTION TO STAY

recognized by declining to hear Netlist's stay motion before summary judgment—any colorable argument Netlist had for such a stay has now disappeared in view of the orders from the Eastern District of Texas and District of Delaware. The Eastern District of Texas (and District of Delaware) courts will quite properly defer to this Court as to the interpretation of Section 6.2 and whether any breach of Section 6.2 was material. Accordingly, Netlist's motion for a stay should definitively be denied, and the Court should continue to implement the Ninth Circuit's mandate.

## II. FACTUAL BACKGROUND

### A. Netlist Files This Case for Breach of Contract and Termination of the JDLA

Netlist filed this breach of contract action on May 28, 2020, and shortly thereafter amended its complaint to seek a declaration that it validly terminated the November 2015 JDLA it had entered into with Samsung—a first step in Netlist's plan to disavow its agreement to license its patents to Samsung and instead seek damages for patent infringement. The parties agreed in the JDLA to, among other things, (1) jointly develop a new memory product (the "JDP") and (2) exchange patent cross-licenses with each other. Netlist alleges that beginning in 2017, Samsung breached Section 6.2 of the JDLA by failing to supply all the DRAM and NAND requested by Netlist.[6] *See* Dkt. 18-2 ¶¶ 14, 27.

Of course Samsung did not supply Netlist with *all* the chips Netlist requested—that would have been impracticable, if not impossible, given the supply issues that plague the memory industry—and as such Samsung has always been clear that the parties never intended Section 6.2 to encompass an agreement to supply Netlist with unlimited DRAM and NAND for any purpose on request.

---

[6] Netlist also claimed that Samsung breached Section 3.1 of the JDLA by improperly withholding a portion of a contractual payment for taxes. The Ninth Circuit ordered the Court to enter judgment in favor of Samsung on that claim, leaving the alleged breach of Section 6.2 as the only remaining dispute.

1   Rather, as Samsung argued at summary judgment, the text, context, and structure of
2   the JDLA and the extrinsic evidence leave no doubt that any supply obligation in
3   Section 6.2 was limited to the needs of the JDP.  Indeed, under Netlist's faulty
4   interpretation of Section 6.2, Samsung would have been required to supply Netlist
5   memory (for any reason) even for resale by Netlist to Samsung's competitors.

6           This Court, however, disagreed insofar as it concluded that Section 6.2 was
7   unambiguous in imposing an obligation on Samsung to supply unlimited DRAM
8   and NAND on Netlist's request.  Because New York law precluded consideration of
9   any extrinsic evidence absent an ambiguity in the agreement, this Court granted
10  summary judgment in favor of Netlist on its claim that Samsung breached Section
11  6.2.  *See* Dkt. 186 at 6-10, 15, 22; Dkt. 305 at 3; Dkt. 306 at 2.  The Court also
12  entered summary judgment in Netlist's favor on its declaratory relief claim, thereby
13  declaring the JDLA terminated along with Samsung's license to Netlist's patents.
14  *See* Dkt. 186 at 17-22; Dkt. 305 at 9; Dkt. 306 at 2.

15          **B.      Samsung Seeks a Declaration of Non-Infringement in Delaware**

16          Netlist is an aggressive patent litigant that asserts its patents are essential to a
17  number of JEDEC[7] standards.  Aware that Netlist would likely bring an action for
18  patent infringement against Samsung on the basis of this Court's grant of summary
19  judgment, Samsung sought a declaration in the District of Delaware that certain of
20  Samsung's memory modules that comply with those JEDEC standards do not
21  infringe Netlist's patents and that Netlist could not enforce its patents because of
22  inequitable conduct.  *See* Ex. 3 (*Delaware*, Dkt. 1) ¶¶ 29-33.  Netlist later filed a
23  counter-claim for patent infringement in the Delaware action.  In its answer,
24  Samsung asserted an express and implied license defense, explaining that Samsung
25  had appealed the judgment in this case ***and***, even if the JDLA was terminated,

26
27  [7] JEDEC stands for Joint Electron Device Engineering Council, a global industry
28  group that develops open standards for memory chips and other microelectronics.

Samsung had a license defense up until the date of termination on July 20, 2020. *See* Ex. 4 (*Delaware*, Dkt. 62) at 26-30.

### C. On the Basis of This Court's Judgment, Netlist Files Patent Infringement Actions Against Samsung in Texas and Elsewhere

As Samsung anticipated, Netlist sued Samsung for patent infringement. Netlist filed its first suit, accusing Samsung of infringing six patents, in the Eastern District of Texas in December 2021, specifically citing as a basis for its infringement allegations this Court's summary judgment decision and subsequent entry of final judgment. *See* Ex. 5 (*EDTX I*, Dkt. 23) ¶¶ 2, 50-53. In doing so, Netlist brought no claims for breach of the JDLA or a declaration that its purported termination of the JDLA was valid. In April 2023, relying on this Court's order terminating the JDLA, Netlist persuaded a jury in the Eastern District of Texas to award it hundreds of millions of dollars in patent infringement damages. *See* Ex. 6 (*EDTX I*, Dkt. 551) at 1. Samsung asserted a license defense in that case, but that defense was subject to collateral estoppel as to alleged infringements post-JDLA termination given the Court's judgment in this case, although Samsung is now seeking to vacate the judgment in *EDTX I* as a result of the Ninth Circuit's decision.

Notably, contrary to Netlist's suggestion that the scope of the patent license under the JDLA remains a live issue in the patent infringement cases, the Eastern District of Texas court rejected Netlist's interpretation as a matter of law, deciding on summary judgment in *EDTX I* that the license in the JDLA was ***not*** limited to only the jointly developed products. The court found it "replete in the record time and time again, both from the terms of the JDLA itself and the affirmative statements made by Netlist, that until July 15th, 2020, Samsung had a license defense." Ex. 7 (*EDTX I*, Dkt. 426) at 56:4-24. While the Eastern District of Texas court initially permitted the scope of the license ***as to the limited issue of*** alleged

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO MOTION TO STAY

*Foundry Products*[8] to be tried, the court ruled against Netlist on that issue mid-trial, granting judgment as a matter of law in Samsung's favor on the remaining issues as to the scope of the license, thus establishing that Samsung's accused products in *EDTX I* were licensed under the JDLA, at least through the alleged July 2020 termination date. *See* Ex. 8 (*EDTX I*, Dkt. 494) at 1266-67. Those rulings by the Eastern District of Texas court have now culminated in, and led to, a Final Judgment in the Eastern District of Texas, Ex. 6 (*EDTX I*, Dkt. 551), which precludes Netlist (via collateral estoppel) from raising the issue again in this Court, the Eastern District of Texas, the District of Delaware, or anywhere else.

While *EDTX I* and Samsung's appeal of this Court's judgment to the Ninth Circuit were still pending, Netlist filed a second patent infringement suit in the Eastern District of Texas on August 1, 2022, alleging infringement of additional patents. *See* Ex. 9 (*EDTX II*, Dkt. 1). Samsung again asserted a license defense on the basis that this Court's judgment was on appeal to the Ninth Circuit. Mot. Ex. 10 at 24-27. And as in the *EDTX I* action, Netlist did not plead any claim for breach of the JDLA or seek a declaration that its termination of the JDLA was valid in *EDTX II*.

### D. Samsung Successfully Appeals the Court's Grant of Summary Judgment

Samsung appealed the judgment entered by this Court on February 25, 2022. In its appeal before the Ninth Circuit, Samsung argued that the text, context, and structure of the JDLA unambiguously show that Section 6.2's supply obligation is limited to the JDP and that, at minimum, the extrinsic evidence raised no genuine

---

[8] Foundry Products are defined in the JDLA as "any product produced by a Party or its Subsidiary for a third party (a) based on designs, specifications, and working drawings owned by such third party and (b) that the manufacturing Party does not have a right to sell to others as its own product." Per the JDLA, Foundry Products "are not Licensed Product[s]." JDLA, Section 8.3.

issue of material fact and compelled Samsung's interpretation as a matter of law. In contrast, Samsung has always argued that the scope of the cross-licenses under the JDLA are not limited to the JDP. There is nothing inconsistent about the supply provision in Section 6.2 being limited to the JDP, and the patent licenses not being limited to the JDP. Notably, the District of Delaware's order staying that case expressly recognized that Samsung has been consistent with its arguments regarding the scope of Section 6.2 and the scope of the JDLA patent licenses. *See* Ex. 2 (*Delaware*, Dkt. 223) ("Having considered the totality of the circumstances— including in particular . . . that the Court is unpersuaded that Samsung advanced an inconsistent position before the Ninth Circuit Court of Appeals—the Court concludes that the most appropriate course of action is to stay this case.").

In that regard, far from arguing to the Ninth Circuit that the patent license was limited, Samsung argued that the JDLA had two distinct goals: (1) to jointly develop the NVDIMM-P product, and (2) to cross-license patents. The Ninth Circuit concluded that "[r]ead as an integrated whole . . . the contract's apparent purpose as derived from its title, structure, and related provisions make § 6.2 'reasonably susceptible of more than one interpretation.'" Ex. 10 (*Ninth Circuit*, Dkt. 77-1) at 3. The Ninth Circuit explained that "[f]irst, the JDLA has two stated purposes: (1) developing a new NVDIMM-P product (*i.e.*, the JDP), and (2) patent cross-licensing," which is evident not only from the title and preamble of the agreement, but also from the fact that each provision "corresponds entirely to one of the two goals." *Id.* at 3-4.

The Ninth Circuit further explained that the title and structure of Section 6 of the JDLA, "Supply of Components," support a finding of ambiguity, if not adoption of Samsung's construction. As Samsung argued, Sections 6.1 and 6.2 could be reasonably read as "complementary mirror provisions that describe the parties' obligations to provide components of the NVDIMM-P [JDP] product." *Id.* at 4. And finally, the Ninth Circuit pointedly observed that if Netlist's interpretation of

Section 6.2 were correct, "the provision would be a significant outlier in the overall

agreement," since all the other provisions concern one of the two stated purposes,

namely, (1) the JDP or (2) patent cross-licensing, whereas an unlimited supply

agreement would introduce a third element to the JDLA, which is described

nowhere else in the agreement.  *Id.* at 4-5.  The Ninth Circuit accordingly held that

"the district court erred in granting Netlist summary judgment on its claim that

Samsung violated § 6.2 of the Joint Development and License Agreement

('JDLA')."  *Id.* at 2.

In doing so, the Ninth Circuit remanded to this Court to: (1) "consider in the

first instance whether the extrinsic evidence 'creates a genuine issue of material

fact' as to [§ 6.2 of the JDLA]'s meaning," and, if necessary, (2) decide whether any

breach of Section 6.2 was material.  *Id.* at 5.

### E.    Events Following the Ninth Circuit's Remand to This Court

On November 13, 2023, this Court issued a minute order reopening the case

on remand and directing the parties to file a joint status report proposing a schedule

for further proceedings.  *See* Dkt. 341.  The Court made clear in that order that the

case "will proceed consistent with the memorandum decision and mandate" of the

Ninth Circuit.  *Id.*

The parties filed their Joint Report on November 27, 2023.  *See* Dkt. 343.  In

that report, consistent with the Ninth's Circuit decision and mandate, Samsung

requested that the Court enter a schedule for supplemental summary judgment

briefing on the question whether the extrinsic evidence creates a genuine issue of

material fact as to the meaning of Section 6.2.  *See id.* at 12.  Netlist's contrary

proposal included, among other things, a stay of this case until after the April 2024

trial in the much later-filed *EDTX II* case.  *See id.* at 3-6.

On November 30, refusing to wait for the Court's response to the Joint

Report, Netlist filed its Motion to Stay in this Court, and noticed the hearing on its

Motion for January 8, 2024.  *See* Dkt. 344.  Later that day, the Court issued the

8

Order Re: Further Proceedings, "largely adopt[ing] Samsung's proposal to re-brief the remaining issues in the summary judgment proceedings," in view of the extrinsic evidence, which would be limited to the original summary judgment record before this Court, setting a schedule for the supplemental briefing, and noticing the hearing for February 5, 2024. Dkt. 345. The Court also ordered Netlist to notice any request for the relief proposed in its portion of the Joint Report "for hearing on February 5, 2024, at the same time as the summary judgment hearing," effectively denying Netlist's request for a stay at least until the parties' summary judgment arguments are fully briefed and argued. *Id.* On December 1, 2024, the Court issued a scheduling notice directed to Netlist's Motion to Stay, rescheduling the hearing from January 8, 2024 to February 5, 2024. *See* Dkt. 346.

In another attempt to circumvent the Ninth Circuit's mandate and prevent this Court from ruling on the remaining contract issues, on December 12, 2023, Netlist filed an early summary judgment motion in the *EDTX II* action on Samsung's license defense. In its motion, Netlist seeks a ruling from the Eastern District of Texas court that, when considering the extrinsic evidence, Section 6.2 required Samsung to provide Netlist with unlimited quantities of NAND and DRAM for any purpose on request, and that Samsung materially breached this provision. *See* Ex. 11 (*EDTX II*, Dkt. 314) at 13-15. But whether the extrinsic evidence favors Netlist's or Samsung's interpretation of Section 6.2 and whether any breach of Section 6.2 was material, thus entitling Netlist to terminate the JDLA, are the very issues before this Court—issues that the Ninth Circuit ordered this Court to consider.

After Netlist filed its Motion to Stay, Judge Gilstrap issued an order in *EDTX II* on December 14, 2023, expressly **declining** to address any of the JDLA issues pending before this Court. Ex. 1 (*EDTX II*, Dkt. 290-1) at 4-5. Specifically, the *EDTX II* Order acknowledged that the issue of the JDLA's termination "is currently pending before the Central District of California," and that the court "will not make

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO MOTION TO STAY

comment further ***while that issue is squarely before another court***." *Id.* (emphasis added).  The Eastern District of Texas court did not stay the case as Samsung requested because "this Court [*i.e.*, the EDTX] need not affirmatively decide any issue that is before the Central District of California in order to proceed with this [patent infringement] case." *Id.* at 5.  But Judge Gilstrap made clear that he would "defer issues of Netlist's alleged termination of the JDLA to the Central District of California" while "simultaneously proceed[ing] on the other issues in this case, including Netlist's claim for patent infringement." *Id.*  That order became public on December 20, 2023.

In light of Judge Gilstrap's clear deference to this Court, on the day after his order became public, Samsung's counsel sent a letter to Netlist's counsel requesting that Netlist withdraw its Motion to Stay before this Court because the motion lacked any arguable merit.  *See* Ex. 12 (Dec. 21, 2023 Letter from M. Yoder to A. Ashley). The letter asked Netlist's counsel to notify Samsung's counsel by close of business the following day if it agreed to withdraw its motion.  *See id.*  Almost a week later, on December 27, 2023, Netlist's counsel responded by doubling down and refusing to withdraw its stay motion.  *See* Ex. 13 (Dec. 27, 2023 Letter from A. Ashley to M. Yoder); Decl. of A. Lucas ¶ 14.

## III.  LEGAL STANDARD

"The proponent of a stay bears the burden of establishing its need."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  When the proponent requests a stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). Notably, although ordinarily courts examine different factors to weigh those competing interests,[9] here there arguably is no need to do so:  Netlist seeks to stay

_____

[9] *Id.* ("Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in

1  this action so that the issues raised in this action may be decided in another action,

2  *EDTX II*, yet the *EDTX II* judge has made clear that he will defer to this Court in

3  deciding those issues.  Hence, in light of Judge Gilstrap's clear intent to defer to this

4  Court, a stay simply is not warranted.

5  **IV.    ARGUMENT**

6          **A.    The Stay Should Be Denied Because the Eastern District of Texas
7                  Court Has Made Clear It Will Defer to This Court on the JDLA
                   Issues Pending Before It and the Ninth Circuit's Mandate Requires
8                  This Court to Decide Those Issues**

9          Netlist's request to stay this case must be denied for two simple reasons:

10  First, the Eastern District of Texas court having made clear in a recent order that it

11  will defer to this Court on the contract issues remaining in this case, the premise on

12  which Netlist's motion is based has disappeared.  And second, the Ninth Circuit has

13  issued a mandate requiring this Court to take up the remaining contract issues

14  pending before it.

15          Netlist asks the Court to stay the Central District of California action "until

16  [*EDTX II*] is tried," because *EDTX II*  is the "only case that can address the parties'

17  entire dispute."  Mot. at 2-3.  According to Netlist, *EDTX II* will "likely moot this

18  case," and "if the Eastern District jury interprets § 6.2 as Netlist does and finds that

19  Samsung's breach of it (which is not in dispute) is material and therefore

20  termination was proper, that finding will be binding on Samsung here."  *Id.* at 12.

21  But the Eastern District of Texas court, on December 14, already declined to address

22  any of the JDLA issues pending before this Court until this Court addresses them in

23  the first instance.  *See supra* at 9-10.

24          Since the Eastern District of Texas court has expressly deferred issues

25

26  _____

27  being required to go forward, and the orderly course of justice measured in terms of
    the simplifying or complicating of issues, proof, and questions of law which could
28  be expected to result from a stay.").

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO MOTION TO STAY

concerning Samsung's alleged material breach of contract to this Court, the Eastern District of Texas is indisputably not a forum in which those issues can or will be heard before they are heard in this case. When the December 14 order became public on December 20 and available to use in this case, Samsung immediately asked Netlist to withdraw its motion to stay given the underlying premise had become no longer tenable. Ex. 12 (Dec. 21, 2023 Letter from M. Yoder to A. Ashley). Netlist has refused, citing its hope that this Court will stay the case in favor of the Eastern District of Texas. *See* Ex. 13 (Dec. 27, 2023 Letter from A. Ashley to M. Yoder) at 1; Decl. of A. Lucas ¶ 14. But because the Eastern District of Texas has stated (properly) that this Court should take the lead on the contract interpretation and termination questions, the basis for Netlist's request for a stay has disappeared, and Netlist's request for a stay should be denied.

Netlist's suggestion that this Court should nevertheless stay the case so the Eastern District of Texas can decide the contract issues pending before this Court along with the scope of the patent license is deeply misguided. It ignores that the scope of the patent license has already been decided by the Eastern District of Texas. *See supra* at 5-6. It ignores that this Court has already addressed contract issues once on summary judgment and, following an appeal, has already ordered supplemental summary judgment briefing based on the record previously submitted. And, most critically, it ignores the mandate of the Ninth Circuit requiring this Court to decide those remaining contract issues.

In its October 17, 2023 memorandum decision, the Ninth Circuit remanded to this Court "to consider in the first instance whether the extrinsic evidence 'creates a genuine issue of material fact' as to [Section 6.2 of the Joint Development and License Agreement]'s meaning." Ex. 10 (*Ninth Circuit*, Dkt. 77-1) at 5. This Court has said it intends to do so. *See* Dkt. 341. Granting Netlist's motion so Netlist can go ask a different court to consider the very issues the Ninth Circuit directed this Court to consider would be irreconcilable with the letter and spirit of the Ninth

Circuit's mandate. *See In re A.F. Moore & Assocs., Inc.*, 974 F.3d 836, 841 (7th Cir. 2020) ("A district court would be in obvious dereliction of duty if it reopened a remanded case but refused to do anything more because it still thought it lacked jurisdiction. . . . [T]he clear spirit of our mandate entailed more than flipping a flag on the docket sheet from 'closed' to 'reopen.' We presupposed that further proceeding would be had at an ordinary pace.").

### B. Netlist's Inequitable Forum Shopping Provides an Independent Basis to Deny a Stay

Because the entire premise for Netlist's stay motion has been rejected by the Eastern District of Texas court, Samsung will not respond to each of the arguments for a stay made in Netlist's motion. But even under the *Landis* factors discussed in Netlist's motion, a stay of this case in favor of the Eastern District of Texas would be wholly inappropriate. *See Lockyer*, 398 F.3d at 1110 (describing framework for analyzing request for stay under *Landis*). First, Samsung would be damaged by a stay, as deferring to the Eastern District of Texas would result in wasting years of litigation before this Court and the Ninth Circuit. Moreover, the Ninth Circuit has mandated that the Court consider extrinsic evidence in the interpretation of Section 6.2—delaying that determination would contradict the mandate. Second, Netlist would suffer no hardship if a stay is not granted. Suffice it to say, prosecuting the very case a litigant chose to bring is not "prejudicial." And third, the Eastern District of Texas and the District of Delaware have both now made clear that they are deferring to this Court on the questions relating to the interpretation and breach of the JDLA. The orderly course of justice is thus best served by this Court promptly resolving these narrow issues remaining before it.

It is also worth noting, however, that Netlist has acted inequitably since the Ninth Circuit's decision in this case, which is itself an independent basis to deny a stay. The litigation between the parties began when Netlist—not Samsung—filed this suit in the Central District of California in May 2020, asserting that Samsung

13

breached Section 6.2 of the JDLA and seeking a declaration that Netlist's purported termination of the JDLA was legally valid.  Dkt. 1; Dkt. 18-2.  After Netlist prevailed on liability before this Court on summary judgment in October 2021, Netlist filed the *EDTX I* patent infringement action in the Eastern District of Texas, specifically citing as a basis for its infringement allegations this Court's summary judgment decision.  *See* Ex. 5 (*EDTX I*, Dkt. 23) ¶¶ 2, 50-53.

Netlist had no qualms about using this Court's ruling to prosecute its patent claim in *EDTX I*.  Indeed, Netlist successfully argued before the Eastern District of Texas court that this Court's invalidation of Samsung's patent license precluded Samsung's license defense against Netlist's infringement allegations after the termination on July 20, 2020.  *See* Ex. 7 (*EDTX I*, Dkt. 426) at 19:15-22:1, 56:4-24, 58:8-23, 59:9-60:1, 153:4-154:21, 156:15-23.  And Netlist was ultimately awarded hundreds of millions of dollars in infringement damages by a jury.  *See* Ex. 6 (*EDTX I*, Dkt. 551) at 1.

But now the Ninth Circuit has reversed this Court's judgment that Samsung breached the supply provision and that Netlist properly terminated the JDLA, and remanded for further proceedings so this Court can consider the extrinsic evidence that it previously did not consider.  Following the Ninth Circuit's decision, Netlist has evidently decided it no longer likes this Court and would prefer that the Eastern District of Texas consider the very breach of contract and license termination claims that Netlist originally filed in this Court and has actively litigated in this Court for three-and-a half years including up to the Ninth Circuit and back.  This is the epitome of forum shopping.  *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir. 1988) (noting that plaintiff abandoning a state action after two-and-a-half years "because it believes that Federal Rules of Evidence are more favorable to it than the state evidentiary rules" "epitomizes forum shopping").

Netlist's inequitable actions do not end there.  Netlist's first filing in this

Court after the Ninth Circuit remand stated that it would seek a stay of any proceedings, including consideration of the extrinsic evidence relevant to interpreting Section 6.2 (notwithstanding the Ninth Circuit's mandate that this Court do so). *See* Dkt. 343 at 3-6. Netlist's second filing was its stay motion. *See* Dkt. 344. Yet the Court set a briefing schedule and hearing on summary judgment anyway, and ordered that Netlist's stay motion would be heard at the same time as summary judgment—thus effectively denying Netlist's request to stay this Court's consideration of the Section 6.2 extrinsic evidence. *See* Dkts. 345 & 346. Yet still undeterred—Netlist immediately filed a summary judgment motion in the Eastern District of Texas on the very contract issues currently before this Court. And even after the Eastern District of Texas court announced that it would defer to this Court on the JDLA issues remaining before it pursuant to the Ninth Circuit's mandate, Netlist refused to withdraw its stay motion here and has insisted on seeking to move forward with its summary judgment motion in the Eastern District of Texas.

This sort of inequitable forum shopping is itself a reason to deny a stay. After all, a court may stay proceedings ***only*** if equity warrants a stay, and Netlist's inequitable forum shopping more than suffices to deny it an equitable remedy. *See, e.g.*, *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 876-77 (9th Cir. 2000) ("The unclean hands doctrine 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief . . . .'" (quoting *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (2000))); *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1053 (9th Cir. 1998) (holding that party's "inequitable conduct precludes it from receiving equitable relief"); *Khan v. United States*, 1986 WL 9224, at *1 (S.D.N.Y. Aug. 14, 1986) ("The Court denies the request for a stay, and dismisses plaintiffs' action. Khan is not entitled to equitable relief such as a stay, standing before the Court, as he does, with unclean hands.").

Netlist tries in vain to justify its forum shopping by claiming that the Eastern

15

District of Texas is the only court "where Samsung and all of its infringing sub-entities could be sued," and where the parties' entire dispute can be decided. Mot. at 7. Even assuming this were the case—it is not, because the Eastern District of Texas has made clear that it will not rule on the contract issues pending before this Court—it is a problem entirely of Netlist's own making. Nothing prevented Netlist from suing Samsung and its subsidiaries for breach of contract ***and*** patent infringement in the same Eastern District of Texas action in the first instance. But Netlist made the tactical decision to file a more limited breach of contract and declaratory relief action in this Court, and then turned around and used the result from this Court to sue Samsung for patent infringement in what it perceived as a more favorable forum for its patent claims. Netlist must live with that decision.

Netlist's claim that the scope of the patent license—which is not and has never been at issue in this case—was not at issue until Samsung filed a suit in Delaware for a declaration of its rights is similarly nonsensical. *Id.* at 18. For one thing, when Netlist filed this case in mid-2020, there would have been no reason for Netlist to seek a declaration of proper termination of the JDLA if the parties did not dispute that the license is limited to Joint Development Products. Moreover, had Netlist truly believed that the scope of the patent license is as limited as it contends now, Netlist would have had a viable claim of patent infringement from day one, immediately after the JDLA was entered into. The fact that Netlist did not bring an infringement suit until ***after*** the JDLA was terminated betrays Netlist's true belief that it had in fact granted Samsung a license to all of its patents under the JDLA. And this manufactured license scope issue is properly before the Eastern District of Texas court, which has already rejected Netlist's argument and ruled as a matter of law in *EDTX I* that the scope of the patent license is not limited to Joint Development Products. *Supra* at 5-6.

This Court should now definitively reject Netlist's stay motion and make clear the contract interpretation questions left to be decided under the Ninth

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO MOTION TO STAY

1  Circuit's mandate will be decided here, just as Netlist originally thought they should

2  be.

3  **V.  CONCLUSION**

4       For all the foregoing reasons, Samsung respectfully requests that Netlist's

5  motion to stay be denied.

6  DATED:  January 3, 2024            O'Melveny & Myers LLP

7

8

9                                    By:      */s/ Michael Yoder*

10                                            Michael G. Yoder
                                              Attorneys for Defendant Samsung
11                                            Electronics Co., Ltd.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Samsung Electronics Co., Ltd., certifies that this brief contains 5,606 words, which complies with the word limit of Local Rule 11-6.1.

DATED:  January 3, 2024             By:   _/s/ Michael Yoder_

                                                           Michael G. Yoder

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO MOTION TO STAY