# Exhibit 3

```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
                    (SOUTHERN DIVISION - SANTA ANA)



NETLIST, INC.,                  ) CASE NO: 8:20-cv-00993-MCS-ADS
                                )
              Plaintiff,        )            CIVIL
                                )
      vs.                       )      Los Angeles, California
                                )
SAMSUNG ELECTRONICS CO., LTD., )     Monday, February 5, 2024
                                )
              Defendant.        )     (11:00 a.m. to 11:27 a.m.)
```

HEARING RE:

MOTION TO STAY CASE PENDING TRIAL
IN THE EASTERN DISTRICT OF TEXAS [DKT.NO.344];

MANDATE ISSUED FROM THE 9TH CCA ON 11/9/23;

MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO CONTRACT INTERPRETATION [DKT.NOS.356,379];

MOTION TO SUPPLEMENT THE RECORD [DKT.NO.358]


BEFORE THE HONORABLE MARK C. SCARSI,
UNITED STATES DISTRICT JUDGE


APPEARANCES:              SEE PAGE 2


Court Reporter:           Recorded; CourtSmart

Courtroom Deputy:         Isabel Martinez

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

<u>**APPEARANCES**</u>:


For Plaintiff:                A. MATTHEW ASHLEY, ESQ.
                              Irell & Manella
                              840 Newport Center Drive
                              Suite 400
                              Newport Beach, CA 92660
                              949-760-0991

                              JASON G. SHEASBY, ESQ.
                              MICHAEL D. HARBOUR, ESQ.
                              ISABELLA CHESTNEY, ESQ.
                              Irell & Manella
                              1800 Avenue of the Stars
                              Suite 900
                              Los Angeles, CA 90067
                              310-277-1010
                              310-203-7527

Also present:                 ERIC LUCAS
                              JAYSON SOHI
                              Netlist In-House

                              CHUCK HONG, CEO
                              Netlist


For Defendant:                MICHAEL G. YODER, ESQ.
                              O'Melveny & Myers
                              610 Newport Center Drive
                              Suite 1700
                              Newport Beach, CA 92660
                              949-760-9600

                              AMY R. LUCAS, ESQ.
                              MARC F. FEINSTEIN, ESQ.
                              O'Melveny & Myers
                              400 South Hope Street
                              18th Floor
                              Los Angeles, CA 90071
                              213-430-6000

1    **Los Angeles, California; Monday, February 5, 2024; 11:00 a.m.**

2    **(Call to Order)**

3          **THE COURT:**  Please have a seat.

4          **THE CLERK:**  Calling Item Number 3, SACV 20-993,

5    Netlist Inc. v. Samsung Electronics Co. Ltd.

6          Counsel, state your appearances please.

7          **MR. ASHLEY:**  Good morning, Your Honor.  Matt Ashley,

8    counsel for Netlist.

9          **THE COURT:**  Good morning.

10         **MR. ASHLEY:**  With me today are my colleagues, Jason

11   Sheasby --

12         **THE COURT:**  Good morning.

13         **MR. ASHLEY:**  -- Michael Harbour --

14         **THE COURT:**  Good morning.

15         **MR. ASHLEY:**  -- Isabella Chestney.

16         **THE COURT:**  Good morning.

17         **MR. ASHLEY:**  And we also have some representatives

18   from Netlist today; two members of in-house, Eric Lucas and

19   Jayson Sohi.

20         **THE COURT:**  Good morning.

21         **MR. ASHLEY:**  And then Netlist CEO Chuck Hong.

22         **THE COURT:**  Good morning.

23         **MR. ASHLEY:**  Plan was for me to argue the Motion for

24   Summary Judgment and Mr. Harbour to argue the Motion to Stay,

25   Your Honor.

4

1          **THE COURT:**  Thank you.

2          **MR. YODER:**  Good morning, Your Honor.  Mike Yoder for

3   Defendants, with my colleagues, Marc Feinstein and Amy Lucas.

4          **THE COURT:**  Good morning.

5          **MR. YODER:**  And we have client representatives here

6   as well, Your Honor.

7          **THE COURT:**  Okay, thank you.

8          **MR. YODER:**  And I would be arguing the summary

9   judgment issues; and if we go off into other directions,

10  Mr. Feinstein or Ms. Lucas might with the Court's permission.

11         **THE COURT:**  Great.  Thank you very much.

12         Thank you and thank you everybody for being here.  I

13  know the weather could be challenging for some so

14  congratulations on making it.

15         We've got a number of things to discuss.  I've

16  actually read all the papers, I've been through everything so I

17  think I have got a good handle on where we are.

18         What I just wanted to briefly touch on is whether

19  there's anything new in Texas from the time the papers have

20  last been filed or are things still proceeding at pace in Texas

21  with the trial in April, on April 15th?

22         **MR. ASHLEY:**  Yes, Your Honor.  The trial is still set

23  for April 15th.  And the most recent activity is that Samsung

24  has filed a motion for summary judgment on its license defense,

25  at least that portion which goes to the scope of the license.

5

1    So now that's pending before the Eastern District, as is

2    Netlist's motion for summary judgment on the entirety of the

3    license defense, both the scope and the issue of the

4    termination.

5            THE COURT:  And has there been a hearing date set for

6    those motions yet?

7            MR. ASHLEY:  I believe it'll be set for the pretrial

8    conference March 11th.  I think that's how Judge Gilstrap

9    normally does it.

10           THE COURT:  Okay.

11           MR. YODER:  And if I might, Your Honor?

12           THE COURT:  Yes.

13           MR. YODER:  We filed on Friday a Notice of

14    Supplemental Authority relevant to the motion to stay.  It was

15    filed Friday because up until then it was not a matter of

16    public record.  There had been some challenges getting

17    agreed-upon redactions in order to make the document public.

18    But it's a report and recommendation by the discovery referee,

19    Magistrate Judge Folsom, in the Eastern District of Texas case

20    number two, in which Judge Folsom found that he was clear in

21    his mind that Judge Gilstrap was not going to address the

22    issues before Your Honor; and because of that, his

23    recommendation was to Judge Gilstrap that discovery on license,

24    breach and termination issues not be allowed in that action.

25           THE COURT:  Judge Folsom's a discovery referee now?

1          **MR. YODER:**  Correct, Your Honor.

2          **THE COURT:**  I --

3          **MR. YODER:**  There's a smile there.  I'm wondering.

4          **THE COURT:**  I spent a lot of time in the Eastern

5    District of Texas and so I'm very familiar with Judge Folsom

6    and Judge Gilstrap, Judge Ward, so yeah.

7          Okay.  So let me give you my thoughts and then I can

8    hear from the parties.

9          And so obviously, we've had a little bit of history

10   here, right?  We had a summary judgment motion.  The Court

11   ruled that the language in the contract was unambiguous.  And

12   so construing, according to the Court's understanding of the

13   law, since the Court viewed the language as unambiguous, the

14   Court was not allowed to look at extrinsic evidence and so the

15   Court granted summary judgment on that basis.

16         Then we had a damages trial on the breach of

17   contract, assuming the contract was breached, what are the

18   damages?  And so we had a damages trial on that.

19         My understanding of what the Ninth Circuit said is

20   that although the language might not look ambiguous, if you

21   look at the language in conjunction with the whole agreement,

22   it could be ambiguous and so the Court was to look to see --

23   the Court -- it was proper for the Court to look at extrinsic

24   evidence.

25         I've gone through and looked at the extrinsic

7

1   evidence that Samsung has put forward and I looked at both

2   summary judgment motions.  And where I'm left is that I

3   understand the arguments on both sides but I think that the --

4   whether the extrinsic evidence or how the extraneous evidence

5   impacts the interpretation of the language, calls into question

6   fact issues that I think are more appropriately decided by a

7   jury, not decided by the Court on summary judgment.

8           And so where I think we need to go in this case is to

9   move forward with a jury trial on the issues of, did Samsung

10  beach the contract?  Is it appropriately construed by the jury?

11  And if so, is that breach material?  Those, I think, are jury

12  questions that should go to a jury here.

13          I don't think it's appropriate to stay this matter

14  pending what's happened in the Eastern District of Texas.  I

15  think that the matter is firmly before this Court.  The -- this

16  Court's obligation I think is to resolve the matter, not to

17  wait for the Eastern District of Texas to do it.

18          And if I was in Judge Gilstrap's position, I would

19  appreciate this Court resolving the matter because I don't

20  think that had I been in his position, I wouldn't want to move

21  forward with spending time and effort in a matter where it

22  seems like the issue is firmly before another court.  So I'm

23  not inclined to stay the case.

24          So what I would propose to the parties is, let's just

25  go forward and try these issues.  I can -- we can start a trial

8

1  in -- and I don't think this is going to be a particularly long

2  trial but we could actually get this trial in before your April

3  15th date.

4        What I would propose to the parties is we have the

5  trial on March 26th.  And again, I think because we're dealing

6  with contract interpretation issues, we don't have damage

7  issues because those have already been decided.  We're dealing

8  with a limited record because we're looking at what was the

9  intent of the parties when they entered into this agreement?

10 And so my proposal to the parties is that we have the trial the

11 end of March, March 26th.  We could do it -- let's see here.

12 If we had the trial on the 26th, I don't see any reason why --

13 we could select a jury in the morning, we could start to hear

14 opening arguments in the afternoon, we could hear testimony on

15 Wednesday and Thursday and you know probably would get to the

16 jury by Friday.  At the very least, the jury would be able to

17 resolve it I would think on the 1st or 2nd of April which would

18 allow you to have some clarity before your trial.  So those are

19 the Court's thoughts.

20        And so let me hear from the parties on what you think

21 of that, starting with the Plaintiff.

22        **MR. HARBOUR:**  Thank you, Your Honor.

23        So I appreciate Your Honor's statement that you're

24 not inclined to stay and but I wanted to address a few issues

25 with respect to the stay and why I think it particularly makes

1    sense here.

2          Samsung largely doesn't dispute that the Landis

3    factors that the Ninth Circuit uses to determine whether a stay

4    is appropriate would weigh strongly in favor of a stay here.

5    And I think the main issue is that as we explained in the

6    briefing is I think it would benefit a jury to have the full

7    case in front of them, both the license scope issue and the

8    issue about breach and termination.  Those issues both go to

9    the same clauses of the contract, they go to the same evidence,

10   they go to the same witness testimony in a lot of respects.

11   And so under I think well-established precedent, courts

12   generally prefer comprehensive resolution of matters.  I think

13   the reason for that that's particularly acute here is you could

14   have parties arguing one thing to the Texas jury in April and

15   another thing to this jury in March, or whenever the trial ends

16   up being set, and we have I think a risk of inconsistency

17   there, especially given as Samsung as we've argued in the

18   briefing, they've taken different positions on the scope of

19   different clauses of the contract before the Ninth Circuit

20   where they've focused on the fact that it's a narrow

21   interpretation is warranted for clauses of the JDLA (phonetic)

22   that don't expressly mention joint development, they are

23   nonetheless should be read as implicitly limited joint

24   development.  Yet in Texas, when it comes to the scope of the

25   license, their position is the license is broad, not at all

1  limited joint development.

2       Now Samsung disputes that they said anything

3  inconsistent.  We think that's incorrect, the record speaks for

4  itself, but I think it's undeniable that whenever you have one

5  jury deciding one issue and another jury deciding another issue

6  relating to the exact same license defense and the exact same

7  contract, that there is a significant risk of inconsistent

8  verdicts and also a significant risk of just duplication of

9  effort.

10      And given that the entire case is before Judge

11  Gilstrap, both the patent infringement part and both aspects of

12  the license defense, we think it makes more sense to go forward

13  in Texas in April, rather than have two separate trials.

14      **THE COURT:**  I got that from the briefs and I

15  understand that but this -- the case isn't all together,

16  unfortunately.  It would have been better if everything was

17  before one court at the onset.  And so based on the way the

18  cases were filed, it seems like that an orderly way to proceed

19  would be for this case to resolve the issues before it and then

20  the Texas trial can proceed based on a set determination from

21  this case.  And so I definitely understand the issues and I

22  know it can be frustrating when it seems like you believe that

23  somebody's making two different arguments in two different

24  forums but the only things before this Court are the issues

25  that were brought before it by Netlist in the original

1    complaint.

2            And I think that my understanding of what Judge

3    Gilstrap would appreciate -- as I would if I was in his

4    position -- would be for us in this court to resolve the case

5    and then this Court's done and then Judge Gilstrap can do

6    whatever he feels is appropriate in his case.

7            I don't know that -- I think that the fact that we do

8    have the potential to squeeze this in before his trial is to

9    the benefit of the court in Texas.  I mean often we wouldn't

10   have this flexibility but we appear to do now in our schedule.

11           So again, having considered all the arguments -- and

12   I do think that they're good arguments for a stay but I just

13   think the posture of this with this case being proceeding

14   first, I think we have an obligation, I think I have an

15   obligation to resolve the matters before the Court.

16           **MR. HARBOUR:**  We appreciate that, Your Honor, and we

17   would be prepared to go to trial in March here.

18           **THE COURT:**  Okay great, great.  Let me hear from the

19   Defendants.

20           **MR. YODER:**  Yes, Your Honor.  I don't know that I

21   have anything to add on the motion to stay.  We agree with the

22   Court, we understand the ruling.

23           I will just say we don't believe that we've taken

24   inconsistent positions and at the appropriate time we can

25   certainly address that to this Court if it's relevant here, may

12

1   not be.  And we also are prepared to go to trial March 26th.

2          The only request that I would make, Your Honor, is if

3   we could do the final pretrial conference just the week before

4   because of scheduling issues, that would be appreciated.

5          **THE COURT:**  So the week before would be the twenty --

6   so if we did the trial on the 26th, we would have the -- we'd

7   have the pretrial conference on the 18th?  Does that make

8   sense?

9          **MR. YODER:**  Yes, Your Honor.

10         **THE COURT:**  Okay so the 18th.  You okay, Mike?

11         **MR. YODER:**  I am okay.  A little embarrassed.  I

12   don't know how red I am.

13         **THE COURT:**  Okay.

14         **MR. YODER:**  I don't think I've ever done that in 40

15   years, Your Honor, so I don't know.

16         **THE COURT:**  Yeah.  I'm just glad.  There's no

17   personal injury lawyers in the room are there?  Because --

18         **MR. YODER:**  All you have to do is look at a billboard

19   on the freeway and you can find a lot of them.

20         **THE COURT:**  It wasn't our fault, the chair wasn't our

21   fault.  We didn't do anything to the chair.

22         And so let me talk to you a little bit about the

23   scope of what the evidence will be.

24         So we'll have this trial in March.

25         And obviously there are some things that the parties

13

1   are seeking to introduce into evidence that are not really

2   evidence.  So for example, I think there was a request from

3   Netlist to introduce the argument from the Ninth Circuit into

4   evidence.  And again, I don't know that lawyer argument is ever

5   really evidence and so I don't think that's something that we

6   would appropriately deal with.

7           From what I -- my initial thought is this -- and you

8   can tell me if I'm wrong is that there was discovery in this

9   case, discovery closed, and that's the world of evidence that

10  can be submitted into the trial.  So the documents are in

11  discovery, the witnesses identified.  Those things would come

12  in at trial but things that the parties may have stumbled

13  across after discovery closed would not come in to trial.

14          What are the parties thoughts on that?  Starting with

15  the Plaintiff?

16          **MR. SHEASBY:**  May it please the Court?  Jason Sheasby

17  for Netlist.  I think that is generally correct with the

18  following complication:

19          There is corporate testimony, corporate witness

20  testimony that was elicited.  And by the way, I don't expect

21  the Court to rule on this now.  We are going to be making a

22  motion on this, I don't think it's properly before you but it's

23  important for me to be transparent.

24          The only exception is there's corporate testimony

25  that occurred in East Texas that is directly relevant to the

14

1    issues before Your Honor.  And of course in the Ninth Circuit

2    as well as in the Fifth Circuit, you can't contradict corporate

3    testimony even in different fora.  And so we are going to be

4    making a motion for leave narrowly on this focused issue of

5    corporate testimony that was elicited in East Texas that we

6    think goes directly to the issues before Your Honor.

7            Now, there's two ways of handling that.  One is

8    there's an open question as to whether that witness can in

9    effect be called through video and there's this which is what

10   the motion will be.  And there's a second aspect to it which is

11   that if a corporate -- if their corporate representative were

12   to contradict what the corporate representative in East Texas

13   said, then there's an issue of impeachment.  Obviously you can

14   impeach with issues that are not in evidence in front of Your

15   Honor.  And so it seems to me the second issue is a prudential

16   issue that Your Honor will have to decide in the heat of cross

17   examination.  The first issue will be subject to briefing that

18   we'll be making in front of Your Honor.

19           **THE COURT:**  Is there -- just in reading the papers,

20   it seemed to -- there seems to be some issue with respect to

21   protective orders in Texas.  Is this material?  I just want to

22   make sure.  As I'm sure you-all know, the courts, especially

23   the Eastern District, is very concerned about its orders being

24   followed with respect to protective orders.  So to the extent

25   that you want to talk to this Court about something that's

1    under a protective order, make sure you get leave because I

2    don't want to -- again, I don't want to be disrespectful of the

3    court in Texas by considering information that I'm not allowed

4    to see.

5         **MR. SHEASBY:**  Your Honor, I think that's absolutely

6    right.  So what we'll need to do is we'll need to make a motion

7    in front of East Texas, as well as make a motion in front of

8    Your Honor.  My expectation is the East Texas motion will file

9    that promptly so that that will be resolved in advance of our

10   briefing to you.

11        But I think that there's sort of two separate issues

12   here.  One is in the sort of the reasonable execution of

13   justice, should this Court be aware of inconsistent 30(b)(6)

14   testimony taken involving the identical parties?  And we think

15   that we'll ask Judge Gilstrap to allow you to at least see that

16   testimony.  The second issue as to the way and form in which

17   you would allow that testimony to be used in the court which

18   will be squarely before Your Honor.

19        And so for me it's a matter of process.  We can have

20   a principled debate as to whether what the 30(b)(6) witness has

21   said was inconsistent.  That is a perfectly reasonable thing

22   for Your Honor to consider.  The issue is we need to get off

23   the first base so that we can actually consider that.  That is

24   squarely in front of Judge Gilstrap.  We will make that motion

25   in front of Judge Gilstrap.

1          What I hope and as I hope that motion will be

2   unopposed because I can't imagine what would be the principled

3   basis for preventing Your Honor from at least considering what

4   the issues that we're concerned about are.

5          **THE COURT:**  Who is your -- who are the local counsels

6   in Texas on this case?

7          **MR. SHEASBY:**  Yes, Your Honor.  So it's Melissa Smith

8   for Samsung.  It's Sam Baxter and Jennifer Truelove for

9   Netlist.  And Mr. Yoder has appeared in East Texas so everyone

10  in this courtroom that's sitting at this table knows what we're

11  talking about.  The only person who doesn't know what we're

12  talking about is the person with the Article III appointment.

13         **THE COURT:**  Okay, thank you.

14         The question was about scope of discovery and so let

15  me get the position from Samsung and then feel free to respond

16  to what Mr. Sheasby said.

17         **MR. YODER:**  Sure, Your Honor.

18         Our position is, as the Court stated, discovery was

19  closed, this case is teed up, it's ready to go to trial based

20  upon the record that was developed before the summary judgment

21  rulings back in the day.  We think that should be the record

22  that goes to trial.  I think it's for Judge Gilstrap to decide

23  if there's a motion filed what he does with it so I have no

24  real comment on that.

25         I will say though that we very much disagree that

17

1   there was any testimony that was inconsistent.  I would also

2   say that there were objections made to the deposition questions

3   that if it ever was to be considered, would have to be

4   resolved.  And there's also an issue of fairness, quite

5   frankly, because discovery has been shut down on license breach

6   and license termination issues in the Eastern District of

7   Texas, so all of that would have to be sorted out I think if

8   Netlist were going to try to get leave from this Court to be

9   putting in evidence that wasn't part of the existing record.

10          **THE COURT:**  Okay well I think I've got -- so this is

11  what we'll do here.

12          I'll issue an order on the pending motions before the

13  Court probably today if not tomorrow.  As I said, I've been

14  through all the papers, I've got a pretty good sense as to what

15  I think is appreciate for the Court to do.

16          I'll be denying the Motion for a Stay.  I'll be

17  denying the Summary Judgment motions because I believe there's

18  fact issues and we'll set the trial for March 26, with a final

19  pretrial conference on March 18th.

20          The trial filings -- I was originally thinking the

21  trial filings could be February 20th, the first round, and

22  February 27th, the second round, although we are allowing you

23  to have another week.  So why don't we do the first round of

24  trial filings be due February 26th.  Second round of trial

25  filings will be due March 4th.  And the deadline to complete

18

1    the renewed Local Rule 16.2 conference is February 20th.  So

2    the first round of trial filings, February 26th; second round,

3    March 4th, the Rule 16-2 conference will have to be done by

4    February 20th.

5            And so -- and I think we'll figure out how much time

6    each side will get.  I know -- are the lawyers on this side new

7    to this case?

8            **MR. SHEASBY:**  Yes, Your Honor.

9            **THE COURT:**  Okay well welcome.  We'll give each side

10   a number of hours and those hours will include opening, any

11   time you're questioning a witness -- either on direct or cross

12   examination -- and closing.  We're going to make you save some

13   time for closing because sometimes lawyers will use up all

14   their time and then plead with the Court for more time for

15   closing.  So we're going to make you save some time for closing

16   to avoid me having to look like the bad guy there.  So we'll do

17   that.  We'll figure out exactly how much time.  I'll look at

18   what the parties file as some sort of guidance there to see how

19   many witnesses we're going to have but I think it's in

20   everybody's interest to get this done as efficiently and

21   quickly as possible.

22           We tend to we start our trial days at 8:30 in the

23   morning.  This gives us time to kind of discuss things before

24   the jury comes in at 9:00.  And I like to be very respectful of

25   the jury's time so I don't want to take too many breaks while

```
 1    they're here, I want to make sure they don't feel like they're

 2    being kind of given the runaround so we'll try to be pretty

 3    diligent about what we do while the jury is here to make sure

 4    that we're respecting their time.

 5              And jury selection will be on the Tuesday morning.

 6              I do the voir dire from the bench but I take ideas

 7    from the parties with respect to questions.  And then we can

 8    always at sidebar or things if you feel that there's questions

 9    that I haven't asked that you really think I should, you can

10    suggest them to me and we'll do that.  But jury selection

11    should -- we should be have a jury in the morning certainly.

12              You know, civil case so we will have eight and so

13    that should be fairly straightforward.  And opening statements,

14    we can do in the afternoon and so things will move on pretty

15    well.

16              Any questions from anybody about the trial?

17         MR. SHEASBY:  No questions other than to say I know

18    how busy this court is and we are extremely grateful for the

19    trial setting you have given us.  Thank you, Your Honor.

20         THE COURT:  Well I want to make sure things can

21    proceed.  I know how -- I know how Judge Gilstrap is about his

22    schedules and I know he's not going to want to move that trial

23    date.  So since we can get it done, we got it done and so

24    that's how we'll move forward.

25         MR. SHEASBY:  Thank you very much, Your Honor.
```

20

1           **THE COURT:**  Anything else?

2           **MR. YODER:**  I would just echo Counsel's sentiments,

3    Your Honor, very appreciative of the Court setting us.  I think

4    it's good for all parties.

5           **THE COURT:**  Yeah because this is one of my older

6    cases too so I want to try to see if I can't at least get it

7    off of my docket for now.

8           And I appreciate everybody coming up.  With the

9    weather I'm sure it wasn't easy but it's always nice to think

10   -- to get everybody together in person I think and we're glad

11   we've got such professional lawyers on both sides.  I mean very

12   well respected firms, very well respected lawyers.  We should

13   be able to move these things along.

14          And again, if you've got issues that as we get into

15   the trial that the Court needs to resolve, let's get to it and

16   do it and work through it and do the best job we can.  And then

17   if things get appealed, they get appealed but I think we can

18   move forward in a very efficient way.

19       (Attorneys thank the Court)

20          And I appreciate everybody else being here too.

21   Thank you for being here.  We'll see you-all in March.

22          **(Proceeding adjourned at 11:27 a.m.)**

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    **February 6, 2024**

         **Signed**                                              **Dated**


             *TONI HUDSON, TRANSCRIBER*