UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S MOTION TO STRIKE
NETLIST'S BELATED DISCLOSURES, INCLUDING:
(1) THE OCT. 30, 2024 AMENDED EXHIBITS OF MR. DAVID KENNEDY;
AND (2) NETLIST'S THIRD SUPPLEMENTAL DEPOSITION DESIGNATIONS**

██████████████████████████████████████████

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

TABLE OF EXHIBITS .................................................................................................................... iii

I.   FACTUAL BACKGROUND ............................................................................................... 1

   A.   Mr. Kennedy More Than Doubled the RDIMM Per-Unit Rate ............................. 1

   B.   Mr. Kennedy More Than Doubled the LRDIMM Per-Unit Rate .......................... 3

   C.   Mr. Kennedy's Rate Changes Increase His Total by Over ███████ ................... 3

   D.   Netlist Continues To Add Deposition Designations at the Eleventh Hour ............. 4

II.  LEGAL STANDARD ........................................................................................................... 5

III. ARGUMENT ......................................................................................................................... 5

   A.   Mr. Kennedy's Increased Damages Rates Should Be Stricken ............................. 5

      1.   Factor 1: Netlist Has No Valid Explanation To Increase Mr. Kennedy's Per-Unit Rates ......................................................................... 5

      2.   Factor 2: Mr. Kennedy's Increased Rates Are Not Important .................... 6

      3.   Factor 3: Mr. Kennedy's Increased Rates Prejudice Samsung .................. 7

      4.   Factor 4: A Continuance Cannot Cure the Prejudice to Samsung .............. 8

   B.   Netlist's Third Supplemental Deposition Designations Should Be Stricken .......... 9

      1.   Factor 1: Netlist Has No Good Explanation for Its Failure To Comply ..... 9

      2.   Factor 2: The Testimony Netlist Seeks To Add Is Not Important ............ 10

      3.   Factor 3: Netlist's Supplemental Designations Prejudice Samsung ......... 10

      4.   Factor 4: A Continuance Cannot Cure the Prejudice to Samsung ............ 10

IV.  CONCLUSION ................................................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*CEATS, Inc. v. TicketNetwork*,
   No. 15-CV-01470, 2018 WL 453732 (E.D. Tex. Jan. 17, 2018) ......................................... 8, 10

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
   No. 2:22-CV-00343-JRG-RSP, 2024 WL 2154734 (E.D. Tex. May 11, 2024) ..................... 9

*CQ, Inc. v. TXU Min. Co., L.P.*,
   565 F.3d 268 (5th Cir. 2009) .................................................................................................. 5

*of Vackar v. Lowe's Home Centers, LLC*,
   No. 5:20-CV-0682-OLG, 2021 WL 4079132 (W.D. Tex. July 6, 2021) ................................ 9

*Reliance Ins. Co. v. La. Land & Expl. Co.*,
   110 F.3d (5th Cir. 1997) ....................................................................................................... 11

*Young v. Brand Scaffold Servs., LLC*,
   No. 1:07-CV-917, 2009 WL 4674050 (E.D. Tex. Feb. 24, 2009) .......................................... 7

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| A | Mr. Kennedy's October 30, 2024 Exhibits |
| B | Netlist's Third Supplemental Deposition Designations (excerpts) |
| C | Mr. Kennedy's November 21, 2023 Expert Report (excerpts) |
| D | Mr. Kennedy's August 6, 2024 Supplemental Report with Exhibits (excerpts) |
| E | October 8-9, 2024 Pretrial Conference Transcript (excerpts) |
| F | Mr. Kennedy's Deposition Transcript (excerpts) |
| G | Email between Counsel Third Supplemental Deposition Designations (Oct. 15-24, 2024) |
| H | Kyuhan Han Deposition Transcript (excerpts) |

With trial less than two weeks away, Netlist continues to offer new opinions and evidence. The docket control order set deadlines many months ago for these events, and Netlist's unwarranted last-minute changes severely prejudice Samsung. The Court should strike Mr. Kennedy's supplemental damages exhibits (Ex. A), served on October 30, 2024, which more than double the per-unit rate and add more than $█████ in damages with less than two weeks to go before trial. Likewise, the Court should strike Netlist's eleventh-hour deposition designations (Ex. B)—served after the Court already rejected Netlist's efforts to supplement its deposition designations because of Netlist's lack of diligence.

## I.  FACTUAL BACKGROUND

### A.  Mr. Kennedy More Than Doubled the RDIMM Per-Unit Rate

Mr. Kennedy's expert report from November 2023 included a damages calculation for Samsung's DDR4 RDIMM products, assuming a recovery period beginning with the filing of the complaint on August 1, 2022, based on a ████ per unit royalty rate. Ex. C at Ex. 1B (showing "Damages Begin at Filing of Initial Complaint (Aug 1, 2022)" as ████████). On August 2, 2024, Mr. Kennedy supplemented his report, updating that calculation to account for a September 9, 2024 trial date. Ex. D at Ex. 1B (showing "Damages Begin at Filing of Initial Complaint (Aug 1, 2022)" as ████████). Consistent with this scenario, at the pre-trial conference, the Court confirmed that the damages period for the '912 patent for the RDIMM products began with the filing of the complaint. Ex. E at 46:18-21. However, rather than merely update the damages base to reflect that the trial date was moved to November 12, 2024, and use the same ████████, Mr. Kennedy more than doubled the rate, to ████████ with less than two weeks to go before trial. Ex. A at Ex. 1 (showing "RDIMM Damages Begin at Filing of Initial Complaint (Aug 1, 2022)" as ████████ for the '912 patent, based on a ████

per unit rate). To arrive at this significantly higher rate, Mr. Kennedy made two fundamental changes to his methodology.

*First*, Mr. Kennedy applied entirely different regression results from Dr. Groehn in his calculation of claimed loss per unit. As shown below, in his opening and supplemental reports, Mr. Kennedy used the "minimum result" of **1.13%** percentage fall in price per percent reduction in speed from Dr. Groehn. In his supplemental report, even with an analysis start date of July 15, 2020, he still, as he should have, used the "minimum result" of **1.13%** percentage fall; he has now changed that amount out of the blue to **1.96%**:

| **Original Report** (Ex. C at Ex. 8B) | **October 30, 2024 Update** (Ex. A at Ex. 8B) |
|---|---|
|  |  |

Indeed, Mr. Kennedy expressly chose to use the lowest 1.13% regression results in his prior reports for reliability reasons: "the product mix in the later periods shows greater price sensitivity with speed" so he "conservatively used the minimum result *over all relevant periods*." Ex. C at Ex. 9; Ex. D at Ex. 9.[1] This change alone results in an increase in RDIMM damages by 73.5%.

*Second*, Mr. Kennedy changed the start date for his analysis of claimed loss per unit from August 1, 2016 to July 15, 2020. He originally calculated a ▮ per unit rate based on the time period beginning in August 2016, and a ▮ per unit rate for the time period beginning with the alleged JDLA termination. *See* Ex. C at Ex. 7. Yet he "conservatively" used the lower ▮ per unit even when calculating damages for the "JDLA Term" in his original report, *id.* at

---

[1] Nor surprisingly, Mr. Kennedy deleted this note in this latest supplement.

2

Ex. 1B,[2] and when he supplemented his report after the Court granted summary judgment that Samsung was licensed until July 15, 2020. Ex. D at Ex. 7. Now, in his latest exhibits, Mr. Kennedy abandoned his use of the lower ▇ rate, as well as his previously calculated ▇ rate, and performed an entirely new calculation to increase the per unit rate to ▇. In doing so, Mr. Kennedy changed the foundational inputs to his calculations less than two weeks before the start of trial, more than doubling the rate.

### B. Mr. Kennedy More Than Doubled the LRDIMM Per-Unit Rate

The same two methodological changes described above as to RDIMMs similarly infect Mr. Kennedy's DDR4 LRDIMM calculations. He increased his rate for DDR4 LRDIMMs from ▇ (for all three asserted patents combined) to ▇ (for the '912 and/or '608 patents) and ▇ (for the '417 patent). *Compare* Ex. C at Ex. 1A (showing rate of ▇ for LRDIMMs, regardless of damages start date) *and* Ex. D at Ex. 1A.1 (showing the same rate of ▇), *with* Ex. A at Ex. 1 (showing ▇ and ▇ for LRDIMMs).

### C. Mr. Kennedy's Rate Changes Increase His Total by Over ▇

The practical result of Mr. Kennedy's changes is astounding, resulting in significantly higher per unit royalty rates for each of the asserted patents, and an increase in total damages through trial of over ▇. For RDIMMs, had Mr. Kennedy simply updated the royalty base using the same ▇ royalty rate, he would have calculated damages of ▇. Ex. A at Exs. 1 and 14 (showing royalty base of ▇ RDIMMs from August 1, 2022 through November 12, 2024). Instead, he altered the foundations of his damages calculation for RDIMM resulting in a demand of ▇. *Compare* Ex. C at Ex. 1B *and* Ex. D at Ex. 1B (both

---

[2] *See* Ex. C at Ex. 1B, n.[A] ("As expected, the product mix in the later period, after the termination of the JDLA agreement, shows greater per unit loss. I have conservatively used the lower (6-Year Statutory Period) per unit loss in my analysis.").

3

showing royalty rate of ▮ per unit for RDIMM), *with* Ex. A at Ex. 1 (showing royalty rate of ▮ per unit for RDIMM). Likewise, for LRDIMM, had Mr. Kennedy simply updated the royalty base using the same ▮ rate, he would have calculated damages of ▮ starting from July 15, 2020 or ▮ starting from June 8, 2022. Ex. A at Exs. 1 and 14 (showing royalty base of ▮ LRDIMMs from July 15, 2020 through November 12, 2024 or ▮ from June 8, 2022 through November 12, 2024). His untimely change to the per-unit rates increased damages significantly as shown in the below table:

| Products | Original Rate | New Rate | Original Total | New Total |
|---|---|---|---|---|
| DDR4 RDIMM | ▮ | ▮ | ▮ | ▮ |
| DDR4 LRDIMM | | | ▮ | ▮ |
| Total | - | - | ▮ | ▮ |

D.   **Netlist Continues To Add Deposition Designations at the Eleventh Hour**

Netlist previously moved for leave to serve supplemental deposition designations in August 2024. Dkt. 746. The Court granted Netlist's motion for leave in part with respect to: (1) modest supplementations that Samsung did not oppose; and (2) designations Netlist intended to provide but "inadvertently failed to do so." Dkt. 784 at 4-6. The Court commented that Netlist's failure to discover the inadvertent omission "shows an unreasonable lack of diligence," and that "[t]his lack of diligence is especially apparent given Netlist's numerous motions to amend and supplement." *Id.* at 5. However, the Court *denied* Netlist's motion to add designations from a Samsung witnesses' trial testimony because Netlist "provides no explanation for its three-month delay in filing this motion," and its "failure to timely supplement [this] testimony is more egregious than its failure to discover its omission . . . given that it should have known whether it wanted to rely on such testimony as early as May 2024." *Id.* at 6.

Despite these prior supplementations, and the Court's guidance nearly two months ago that "at this point, both parties should be narrowing the scope of the case, not expanding or

4

changing it," *id.* at 4, Netlist served new deposition designations on October 15, 2024. *See* Ex. B. These additional deposition designations were for three witnesses for whom Netlist previously provided designations. *See* Dkt. 694-3 (providing 78 pages of deposition designations, including for Samsung witnesses Mr. Han and Mr. Yoon); Dkt. 777-3 (providing two additional pages of designations for Samsung witness Mr. Jeon). Although Samsung diligently objected to these designations and offered to meet and confer with Netlist about the motion **Netlist** is required to file seeking leave to add these designations, Netlist refused to engage. Ex. G at 1. Accordingly, Samsung had not choice but to move to strike the designations.

## II.  LEGAL STANDARD

This Court must consider four factors to determine whether to exclude untimely expert reports or pre-trial disclosures (such as deposition designations): "(1) [The untimely party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the objecting party] in allowing the evidence, and (4) the availability of a continuance." *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009).

## III.  ARGUMENT

### A.  Mr. Kennedy's Increased Damages Rates Should Be Stricken

#### 1.  Factor 1: Netlist Has No Valid Explanation To Increase Mr. Kennedy's Per-Unit Rates

Netlist cannot show good cause to more than double Mr. Kennedy's damages rates at this late juncture. No new data has been made available, and the Court's recent order does nothing but shorten the damages period, and thus shrink the damages base. Specifically, when the Court granted-in-part Samsung's motion for summary judgment of no pre-suit damages, it reduced the damages base by _____ units of DDR4 RDIMMs for the '912 patent and _____ units

5

of DDR4 LRDIMMs for the '608 and '417 patents, as confirmed by Mr. Kennedy's supplemental Exhibit 1.  *Compare* Ex. D at Ex. 1A.1, 1B (showing base of ▮▮▮▮ units of RDIMMs and ▮▮▮▮ units of LRDIMMs sold since July 15, 2020), *with* Ex. A at Ex. 1 (showing base of ▮▮▮▮ units of RDIMMs sold since August 1, 2022 and ▮▮▮▮ units of LRDIMMs sold since June 8, 2022).  Applying Mr. Kennedy's previously-disclosed per-unit rate to this reduced base, the resulting damages should have been, at most, ▮▮▮▮.  However, Mr. Kennedy more than doubled his rates, as discussed above.  In doing so, he changed the regression coefficient from Dr. Groehn (whom Netlist has indicated it will not call to testify at the trial and who is unavailable to testify at trial) by more than 70% (from 1.13% to 1.96%) despite previously acknowledging that the higher rates were less reliable.  *See* Ex. A at 8B; Ex. C at Ex. 9.  The result is incredible, more than doubling Netlist's damages ask to ▮▮▮▮.  There is no legitimate reason to change the regression coefficient or per-unit rate based on the Court's order reducing the damages base.[3]

The only conceivable "explanation" for Netlist's last minute, ▮▮▮▮ change is that Netlist, recognizing the impact of the Court's rulings on damages, wished to put forward a higher number at trial.  This factor strongly favors striking Mr. Kennedy's rate change.

### 2. Factor 2: Mr. Kennedy's Increased Rates Are Not Important

If Mr. Kennedy's increased rates and regression coefficients were important, Mr. Kennedy would have applied them in his initial report, or at least should have tried to do so in the supplemental report that he issued nearly nine months later.  Mr. Kennedy consciously chose

---

[3] In its September 9, 2024 order rejecting Netlist's previous motion to supplement Mr. Kennedy's report, the Court acknowledged that "Mr. Kennedy knew it would be possible to 'make adjustments,'" based on "real world information."  Dkt. 784 at 2-3.  The same logic applies here—Mr. Kennedy could have applied these higher rates during expert discovery, but instead intentionally relied on lower and more conservative rates.

not to apply these increased rates with an analysis start date of July 15, 2020 even when damages were limited to after July 15, 2020.[4] He did not change his rates until the Court granted in-part Samsung's motion for summary judgment on pre-suit damages, which reduced the damages base by two thirds. Mr. Kennedy's increased rates are thus plainly results-oriented. Netlist would not be prejudiced by seeking the same per-unit rate it sought before the pre-trial conference. Even if the rate increases were important, "[t]he importance of a witness's testimony cannot singularly override the enforcement of local rules and scheduling orders." *Young v. Brand Scaffold Servs., LLC*, No. 1:07-CV-917, 2009 WL 4674050, at *3 (E.D. Tex. Feb. 24, 2009) (internal quotation omitted).

### 3. Factor 3: Mr. Kennedy's Increased Rates Prejudice Samsung

Mr. Kennedy's increased rates prejudice Samsung by tainting the jury with an astonishing request for over ▮▮▮▮▮▮. First, Samsung will be deprived of its opportunity to counter Netlist's highly prejudicial argument. With only two weeks left before trial, Samsung will not even have chance to analyze this brand new opinion by Mr. Kennedy. Second, the Court denied Samsung's *Daubert* motion as to Mr. Kennedy after Netlist assured the Court Mr. Kennedy was applying conservative rates:

> So I firmly reject any suggestion that there was a capture of a hundred percent of the technical benefit of 2DPC and 2400 MT/s. There wasn't because he didn't apply the EMV, even though he concluded it would be applicable; and there wasn't because in the regression analysis **he used the lowest regression**, not the regression that actually corresponds to the time period at issue in the case.

Ex. E at 268:1-7; *see also* Ex. C at Ex. 9 (Mr. Kennedy explaining he "conservatively used the minimum result over all relevant periods in [his] analysis."); Ex. D at Ex. 9 (same); Ex. E at

---

[4] Mr. Kennedy acknowledges in his supplemental report that "he has been asked . . . to update his analysis to reflect 1) the Court's Order . . . that sets damages to begin no later than July 15, 2020." Ex. D at ¶ 2.

267:20-25 ("So when Mr. Reger – and it was a very powerful, persuasive tactic to say that Mr. Kennedy claims 99.99 percent of the technical value, he doesn't; he claims one – the lowest possible amount – 1.14. You see it right there. For all forms he uses 1.14. And yet he could have used up to 1.93."). Those representations no longer hold true—Mr. Kennedy is now using the higher rates, and it is too late to redo the *Daubert* process.

Mr. Kennedy made similar representations in his deposition, none of which now hold true, thereby rendering Mr. Kennedy's analysis even more unreliable after the Court has already considered and denied Samsung's *Daubert* motion. Ex. F at 39:16-40:16 (". . . Samsung is sharing in aspects of the value that I've calculated by the approaches that I've taken in probably five or six different places where I've taken the lowest of a particular number to benefit Samsung in the hypothetical negotiation.").[5]

In denying-in-part Netlist's motion to amend Mr. Kennedy's August supplement report, the Court clearly expressed that "Netlist has no excuse for these delayed opinions and that allowing supplementation now would be highly prejudicial." Dkt. 784 at 2. This prejudice is even more significant now, less than two weeks from trial.

### 4. Factor 4: A Continuance Cannot Cure the Prejudice to Samsung

There is no room in the schedule to cure the prejudice. Trial is less than two weeks away, and "a continuance would greatly undermine the Court's trial schedule and is impractical at this stage of the proceeding." *CEATS, Inc. v. TicketNetwork*, No. 15-CV-01470, 2018 WL 453732,

---

[5] *See also* Ex. F at 47:14-48:2, 66:20-67:1, 67:23-68:2, 69:19-23, 76:5-15 (describing his use of "the lowest of the numbers that Dr. Groehn calculated, 1.130"), 112:3-15 ("But I've used the lower rate – the lowest rate, which happens to be for the '912, for the earliest time period. So that's another point of conservatism where the parties would – might negotiate and say, let's do the calculation with this lower ratio, percentage."), 113:5-9, 142:14-25.

8

at * 4 (E.D. Tex. Jan. 17, 2018). The Court has made clear that it "does not intend to alter this setting or again continue this trial." Dkt. 791.

### B. Netlist's Third Supplemental Deposition Designations Should Be Stricken

The Court should also strike Netlist's third supplemental deposition designations, as they are untimely and prejudicial. Indeed, Netlist should have sought leave to add these late designations, but inexplicably refused to do so. Scheduling modifications requiring Netlist to seek leave "include[] deposition designations made in advance of trial." *Correct Transmission, LLC v. Nokia of Am. Corp.*, No. 2:22-CV-00343-JRG-RSP, 2024 WL 2154734, *1 (E.D. Tex. May 11, 2024). None of the good cause factors support Netlist's new designations.

#### 1. Factor 1: Netlist Has No Good Explanation for Its Failure To Comply

Netlist failed to provide any explanation for why these designations were not submitted months ago—either (1) when it first served designations on January 29, 2024, in the original pretrial order filed March 15, 2024, Dkt. 694-3; (2) in its motion for leave to supplement deposition designations on August 17, 2024, Dkt. 746-3; or (3) in the updated pretrial order filed September 6, 2024, Dkt. 777-3. The Court previously recognized that Netlist's additional designations in August showed an unreasonable lack of diligence. Dkt. 786 at 6-7. These new designations are even more untimely, being first identified nearly nine months after Netlist's original designations and over six months after the filing of the pretrial order. Dkt. 694-3. The Court characterized Netlist's prior lack of diligence as "weigh[ing] heavily against allowing supplementation." Dkt. 786 at 6; *see also Vackar as next friend of Vackar v. Lowe's Home Centers, LLC*, No. 5:20-CV-0682-OLG, 2021 WL 4079132 (W.D. Tex. July 6, 2021) (finding lack of diligence for a mistake not being discovered for 2.5 months). Netlist's lack of diligence weighs heavily against allowing these supplements.

9

### 2. Factor 2: The Testimony Netlist Seeks To Add Is Not Important

Netlist's characterization that "the additional designations are necessary to give context to the testimony that Netlist included in its initial designations," Ex. G at 3, demonstrates that they are not particularly important. The second good cause factor weighs towards exclusion.

### 3. Factor 3: Netlist's Supplemental Designations Prejudice Samsung

Third, allowing the additional testimony would be prejudicial to Samsung, requiring Samsung to adjust its case strategy to address the new designations, rather than focus on preparing for trial. For example, the newly designated testimony from Mr. Han, Ex. H at 32:18-22, 33:1-3, is particularly prejudicial because ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ which would require significant time to contextualize this testimony. Mr. Han's testimony—in another litigation in another forum where patent infringement was not at issue, and certainly not directed to the patents asserted here (two of which had not even issued when the parties entered into the JDLA)—creates the incorrect appearance that ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄. *Id.* at 32:18-22, 33:1-3. This highly prejudicial testimony with minimal probative value (given the lack of a nexus to the asserted patents) should not be admitted at the eleventh hour, particularly when no explanation is provided for the delay.

### 4. Factor 4: A Continuance Cannot Cure the Prejudice to Samsung

A continuance is not practical to cure the prejudice created by Netlist's unjustified, untimely new deposition designations. As noted above, the Court has made clear that it "does not intend to alter this setting or again continue this trial." Dkt. 791. Trial is now less than two weeks away, and "a continuance would greatly undermine the Court's trial schedule and is impractical at this stage of the proceeding." *CEATS, Inc. v. TicketNetwork*, No. 15-CV-01470,

10

2018 WL 453732, at * 4 (E.D. Tex. Jan. 17, 2018); *see also Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d at 257, 258 (5th Cir. 1997).

## IV. CONCLUSION

The Court should therefore strike Netlist's belated disclosures.  **First**, Mr. Kennedy's efforts to increase the damages rate are neither substantially justified nor harmless, and exclusion of those increased rates is the only appropriate remedy.  Instead, Mr. Kennedy should be held to the per unit rates he disclosed in his August 2, 2024 supplemental report.  **Second**, the Court should strike Netlist's third supplemental deposition designations in their entirety.

Dated: November 1, 2024

Respectfully submitted,

By: */s/ Michael J. McKeon*

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:     (903) 934-8450
Facsimile:     (903) 934-9257

J. Travis Underwood
Texas Bar No. 24102587
travis@gillamsmithlaw.com
GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
degnan@fr.com
Daniel A. Tishman
DC Bar No. 1013923
tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070

11

| | |
|---|---|
| Alice J. Ahn<br>CA Bar No. 271399/DC Bar No. 1004350<br>aahn@cov.com<br>COVINGTON & BURLING LLP<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105<br>Telephone:  (415) 591-7091<br>Facsimile:   (415) 955-6571 | Facsimile:  (858) 678-5099<br><br>Thomas H. Reger II<br>reger@fr.com<br>Texas Bar No. 24032992<br>FISH & RICHARDSON P.C.<br>1717 Main Street, Suite 5000<br>Dallas, Texas 75201<br>Telephone: (214) 747-5070<br>Facsimile:  (214) 747-2091 |

*Attorneys for Defendants Samsung Electronics Co., Ltd.;*
*Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on November 1, 2024. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

    /s/ Michael J. McKeon

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred on October 31, 2024. Jennifer Trulove attended for Plaintiff and Melissa Smith attended for Defendants. The parties discussed their positions on this motion, which ended conclusively ended in an impasse, leaving an open issue for the court to resolve. Counsel for Plaintiff indicated that they oppose/do not oppose this motion.

    /s/ Michael J. McKeon