UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>             Plaintiff,<br><br>      v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>             Defendants. | Civil No. 2:22-cv-00293-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S OPPOSITION TO NETLIST'S MOTION
FOR A CURATIVE INSTRUCTION REGARDING THE JDLA (DKT. 836)**

The Court should deny Netlist's motion for a curative instruction regarding the JDLA (Dkt. 836). ***First***, Samsung did not open the door into any evidence regarding the reasons for the JDLA's alleged termination. Instead, Netlist is the one who has repeatedly and improperly referenced issues regarding supply of memory and emphasized the termination of the JDLA. ***Second***, Netlist waived any objection to Samsung's statements by not objecting at the time, and by not seeking leave to explore these issues while Samsung's witnesses were still on the stand. ***Third***, the Court should reject Netlist's audacious request for an instruction that casts Samsung in a bad light merely because Netlist does not like the testimony Netlist itself elicited from Mr. Hyun Ki Ji. If any party has opened a door it is Netlist, which has consistently attempted to inject the JDLA's supply provision into this trial. ***Fourth***, to the extent that the Court finds a curative instruction is warranted, Netlist's proposal is improper because it addresses the alleged breach of the supply provision at issue in the C.D. Cal. Case.

## I.    SAMSUNG DID NOT OPEN THE DOOR ABOUT ALLEGED TERMINATION

Samsung has not introduced any evidence regarding the reasons for the JDLA's alleged termination, which has been precluded by the Court's pretrial order. *See* Dkt. 818 at 7.

Samsung's counsel's observation during its opening statement that "[u]nfortunately, the project didn't work out and they couldn't make a product and ultimately it was terminated," related specifically to the failure of the joint development project under JDLA—not the JDLA as a whole.  Trial Tr. 188:2-14.  In fact, Samsung's counsel did not make **any** mention of the JDLA's termination in its opening statement.  Similarly, the testimony of Mr. Ji on which Netlist relies, Dkt. 836 at 2, related to the parties' joint efforts to develop an NVDIMM product, not the termination of the JDLA.  *See* Trial Tr. 758:2-7; 765:11-13 ("Q. At the end of the collaboration, Mr. Ji, were the parties able to create this new NVDIMM product?  A. The joint development efforts failed.").

Contrary to Netlist's argument that "Samsung has suggested to the jury multiple times that the failure of the joint development project was the cause of its termination," Dkt. 836 at 2, Samsung has not put forth any evidence regarding the reasons for the JDLA's alleged termination.  Samsung has no intention of doing so and will continue to follow the Court's instruction that "we are not going to talk about the JDLA having been breached or terminated; we're going to talk about it existed from this point in time to that point in time, and after that point in time it was no longer applicable or existed.  We're not going to talk about who violated, breached it, whose fault it was."  PTC Vol. II at 313:5-11.

Samsung has not, and does not intend to, put forth evidence regarding the reasons for the JDLA's alleged termination.  Rather, Mr. Ji's testimony and counsel's statements made during its opening statement support Samsung's rebuttal to Netlist's willfulness and damages positions. *See* PTC Vol. II at 314:6-8 ("[T]he JDLA and its application and use and interaction with the parties does go to the issue of willfulness.").  Specifically, throughout trial, Netlist has argued that Samsung knew that Netlist's patents were necessary and valuable to Samsung's existing

2

LRDIMM products. *See, e.g.*, Trial Tr. at 168:4-13; 169:3-6; 233:24-234:11. Samsung is entitled to inform the jury that access to Netlist's patent portfolio was useful ***to advance the joint development project***, and that once the project failed, it did not have any use for Netlist's patents.[1] Moreover, this evidence counters Netlist's narrative that Samsung believed Netlist's patents were valuable and Netlist's improper[2] suggestion that Samsung now needs a license for the same reasons it took one in 2015. *See, e.g.,* Trial Tr. at 164:5-8.

## II.    NETLIST WAIVED ITS RIGHT TO OBJECT TO SAMSUNG'S STATEMENTS

Netlist's motion is a belated and improper attempt to object to statements made by Samsung during opening statements and during the examination of Mr. Ji. Netlist had the opportunity during opening statements (or shortly thereafter) to object to Samsung's counsel's statement during trial last week, and to inform the Court that it believed Samsung opened the door to discussion of the reasons for the JDLA's termination. It did not. In fact, the Court specifically told Netlist that it should inform the Court ***during its cross examination of Mr. Ji*** if it believed Samsung opened the door. *See* Trial Tr. at 761:15-20 ("If during cross examination you believe the door is opened to allow you to pursue something previously you've been restrained from pursuing, then you need to approach at that time and tell me specifically what it is and how you believe the door is opened, and then I'll give you guidance.").[3] Netlist chose not

---

[1] Notably, Netlist itself raised the termination of the joint development project through Mr. Scott Milton, who testified that Samsung did not want to go forward with the second phase of the joint development project. *See* Trial Tr. at 248:4-16. Samsung was therefore within its right to rebut Mr. Milton's testimony regarding the progression of the joint development project through Mr. Ji without opening the door to discussion of the (alleged) termination of the JDLA.

[2] The Court instructed the jury as follows: "And I want to be clear, members of the jury, that the JDLA itself does not evidence that Samsung, in fact, needed a license to the Asserted Patents owned by Netlist. Now, you may not rely on the JDLA as evidence of infringement as to any of the asserted Netlist patents." Trial Tr. at 135:25-136:4 (paragraphing omitted).

[3] Netlist notably failed to include this ruling in its discussion of Netlist's objection at Trial Tr. 761:3-10. *See* Dkt. 836 at 2.

to pursue these issues while Mr. Ji was still on the stand and thus, to the extent Netlist's arguments have any merit (they do not), Netlist waived its objection.

## III.   NETLIST, NOT SAMSUNG, INJECTED THE JDLA SUPPLY PROVISION INTO THIS TRIAL

Netlist's assertion that Mr. Ji testified "that the supply clause between the parties was limited to the joint development project," Dkt. 836 at 2, omits important context—it was ***Netlist's counsel*** that elicited this testimony on cross-examination. On direct, Mr. Ji testified that Netlist's 2015 proposal to Samsung (DTX-23) mentioned supply of flash and DRAM components. *See* Trial Tr. at 760:19-22 ("Q. Does anything in Netlist's proposal even mention supply? A. Yes, there is. Q. And where is that? A. Yes. It talks about supply of flash and DRAM."). Mr. Ji did not discuss the supply provision of the JDLA (JX-51) in his direct or re-direct testimony at all. *See id.*; *id.* at 762:10-15 (authenticating the JDLA (JX-51)); *see generally id.* at 780:11-783:21 (re-direct).

During cross-examination, Netlist's counsel showed Mr. Ji Netlist's opening demonstrative, PD1.32, which depicts §§ 6.2, 8.2 of the JDLA (JX-51):



Netlist's counsel then: (1) inquired about the supply provision in the JDLA (JX-51) itself, rather than Netlist's proposal (DTX-23) about which Mr. Ji had testified; and (2) asked Mr. Ji to read a portion of the supply provision (§ 6.2) into the record. *Id.* at 774:17-775:24 (referring to PD1.32, stating "[Y]ou spoke about the supply obligation in this agreement just briefly. Is that correct? A. Yes. I was talking about the supply provision and this supply provision relates to the development of the new product NVDIMM-P. Q. It says Samsung will supply NAND and DRAM products. Correct? A. Yes, it says that.").

Netlist notably did not move to strike any of Mr. Ji's answers.[4] If any door was opened about the JDLA's supply provision, Netlist is the one who improperly opened it.[5] Such actions do not justify the sweeping and prejudicial instruction Netlist proposes in its motion.

---

[4] Contrary to Netlist's assertion, Dkt. 836 at 2, the C.D. Cal. Case has not finally resolved the issues of breach and termination of the JDLA. No final judgment has been entered and the parties' post-trial motions remain pending. Indeed, Samsung has requested an evidentiary hearing on Netlist's discovery violations in the C.D. Cal. case—violations that deprived the jury of evidence directly supporting Samsung's interpretation of the JDLA. *See* Ex. 1 at Dkt. 589. Because there is no final judgment in the C.D. Cal. Case, Samsung is not collaterally estopped from arguing that: (1) the supply provision is limited, (2) Samsung did not breach the JDLA, and (3) the license has not been terminated. *See Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 548 (5th Cir. 2013) (In the Fifth Circuit, issue preclusion applies "when: '(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision.'" (quoting *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005))). As this Court has observed, Fifth Circuit precedent applies a "strict approach" to the final judgment requirement, requiring judgment to be entered and appealable before it can be given issue-preclusive effect. *TQ Delta, LLC v. CommScope Holding Co.*, 657 F. Supp. 3d 892, 902-04 (E.D. Tex. 2023).

[5] *See* Trial Tr. at 173:22-174:6 (issuing curative instruction: "Ladies and gentlemen, let me clarify one thing for you. As I told you earlier, you're going to see and hear about this JDLA, this joint development agreement between these parties. I want you to understand that any provisions of it with regard to supplying product from Samsung to Netlist does not impact and does not have any bearing on the question of whether or not Samsung has infringed Netlist's patents. The supply portion of the agreement does not apply to or impact the infringement question at all." (paragraphing omitted)).

## IV.    NETLIST'S PROPOSED INSTRUCTION IS IMPROPER

Even if Samsung had opened the door to discussion of the reasons for the JDLA's alleged termination, Netlist's proposed curative instruction is improper and prejudicial.  First, Netlist's proposed instruction would intrude on the jurisdiction of the court in the C.D. Cal. Case despite the Court's clear ruling that it has deferred judgment regarding termination of the JDLA to the C.D. Cal, which has yet to issue a final judgment.  *See* Dkt. 739 at 1; Dkt. 768 at 2-3.

Second, the reason for the JDLA's alleged termination is irrelevant to the specific issues in this case—alleged infringement, invalidity, damages, and willfulness.  The Court has already ruled that Netlist must not imply or invite the jury to infer that the JDLA's existence means that Samsung needed a license to the patents-in-suit.  *See* PTC Vol. II at 313:23-314:5; Dkt. 818 at 7. The Court should say no more on this issue than it did in the preliminary jury instructions.  *See* Trial Tr. at 135:25-136:4 ("And I want to be clear, members of the jury, that the JDLA itself does not evidence that Samsung, in fact, needed a license to the asserted patents owned by Netlist.  Now, you may not rely on the JDLA as evidence of infringement as to any of the asserted Netlist patents.").  Netlist's proposed curative instruction violates both the Court's pretrial order (PTC Vol. II at 313:5-11, 313:23-314:5; Dkt. 818 at 7) and motions *in limine* orders, by providing a specific reason for the JDLA's (alleged) termination and intruding on the purview of the C.D. Cal. Case.  *See* Dkt. 836 at 2; CMIL 13.

Furthermore, if the Court were inclined to adopt Netlist's instruction and instruct the jury that Samsung breached the supply provision of the JDLA, Samsung respectfully submits that fairness would require that the jury also be informed that Netlist suffered no monetary damages as a result of that breach, given the C.D. Cal. jury's finding of no damages for the alleged breach of the supply provision (an issue that Netlist is collaterally estopped from challenging).  *See* Dkt. 315-24.

## V.     IF ANY INSTRUCTION IS GIVEN ON REASONS FOR THE JDLA'S (ALLEGED) TERMINATION, IT SHOULD BE A NEUTRAL ONE

Samsung maintains that no curative instruction should be given.  If the Court finds that a curative instruction is necessary, then it should simply and neutrally inform the jury that the reasons for the termination are irrelevant:

> There may have been suggestions during this trial about the reasons for the JDLA's termination.  The reasons for the termination of the JDLA are wholly irrelevant to this case.  You should not let any discussion about the JDLA influence your decisions in this case.

This proposal addresses any of Netlist's concerns, without injecting the reasons for the alleged termination of the JDLA into this case.  It also counteracts Netlist's repeated assertions, over Samsung's objections, that Samsung failed to supply memory to Netlist and its insinuations that such actions were somehow improper.  *See, e.g.*, Trial Tr. at 168:23-174:6; 241:5-244:20.

## VI.    CONCLUSION

The Court should deny Netlist's motion for a curative instruction regarding the termination of the JDLA.  However, should the Court agree with Netlist that a curative instruction is warranted, the Court should adopt Samsung's neutral proposed instruction.

Dated:  November 20, 2024                     Respectfully submitted,

                                              By:    */s/ Lauren A. Degnan*

Melissa Richards Smith                        Ruffin B. Cordell
melissa@gillamsmith.com                       TX Bar No. 04820550
GILLAM & SMITH, LLP                           cordell@fr.com
303 South Washington Ave.                     Michael J. McKeon
Marshall, Texas 75670                         D.C. Bar No. 459780
Telephone:     (903) 934-8450                 mckeon@fr.com
Facsimile:     (903) 934-9257                 Lauren A. Degnan
                                              D.C. Bar No. 452421
J. Travis Underwood                           degnan@fr.com
Texas Bar No. 24102587                        Daniel A. Tishman
travis@gillamsmithlaw.com                     DC Bar No. 1013923

GILLAM & SMITH, LLP
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

Brian R. Nester
DC Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, N
Washington, DC 20001-4956
Telephone: (202)-662-6000

Alice J. Ahn
CA Bar No. 271399/DC Bar No. 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile:  (415) 955-6571

tishman@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Thomas H. Reger II
reger@fr.com
Texas Bar No. 24032992
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

*Attorneys for Defendants Samsung Electronics Co., Ltd.;
Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on November 20, 2024.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Lauren A. Degnan*